RACHEL S. BRASS, SBN 219301
    rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice forthcoming*
    rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-2911
Telephone: 214.698.3100

JOHN B. QUINN, SBN 90378
    johnquinn@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN
LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
    bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile:  650.801.5100

*Attorneys for Plaintiffs Talor Gooch, Hudson
    Swafford, Matt Jones, Bryson DeChambeau,
    Abraham Ancer, Carlos Ortiz, Ian Poulter, Pat
    Perez, Jason Kokrak and Peter Uihlein*

WILLIAM V. ROPPOLO, *pro hac vice forthcoming*
    william.roppolo@bakermckenzie.com
BAKER McKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131 USA
Telephone: 305.789.8900

*Attorneys for Phil Mickelson*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHIL MICKELSON, TALOR GOOCH, HUDSON SWAFFORD, MATT JONES, BRYSON DECHAMBEAU, ABRAHAM ANCER, CARLOS ORTIZ, IAN POULTER, PAT PEREZ, JASON KOKRAK and PETER UIHLEIN, <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | CASE  NO. 3:22-cv-04486 <br><br> **DECLARATION OF TALOR GOOCH** |

Gibson, Dunn &
Crutcher LLP

1.      My name is Talor Gooch.  I am a resident of Dallas, Texas.

2.      I am a professional golfer and a member of the PGA Tour.  I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates.  If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

3.      I earned my PGA Tour card in 2018.  I have been a PGA Tour member every year from 2018 to the present.  Upon earning my PGA Tour card, I signed a PGA Tour player contract and was required to be bound by the terms of the PGA Tour Player Handbook and Tournament Regulations (the "Regulations").  *See* Brass Decl. Ex. 12.  There was no negotiation with the PGA Tour.  In my experience, from a player's perspective, the terms in the PGA Tour player contract and the Regulations are non-negotiable.  Because I wanted to play on the PGA Tour, I had no choice but to agree to be bound by the Regulations.  As a professional golfer desiring to play in elite professional golf events, the PGA Tour was the only option.  The Regulations give the PGA Tour Commissioner the discretion to interpret and apply the Regulations and discretion to waive application of any Regulation.  *See* Brass Decl. Ex. 12 (Regs., at 87).  The Regulations give the PGA Tour Commissioner the discretionary authority to put a golfer on probation and suspend him immediately for any two Regulation violations.  *Id.* at 134 (Regs. VII.C).  The Regulations give the PGA Tour Commissioner the authority to find violations and assess punishment.  *Id.* at 133–36 (Regs. VII).  The Regulations give the PGA Tour Commissioner the authority to determine a golfer's appeal of any punishment.  *Id.* at 136 (Regs. VII.E).  The Regulations even provide that I admit violation(s) and the propriety of a sanction if I do not appeal, *id.* at 135 (Regs. VII.E.2), and the Regulations provide that I release any challenge to any punishment that imposed on me.  *Id.* at 133 (Regs. VII).

4.      The Conflicting Events Regulation of the PGA Tour Player Handbook and Tournament Regulations prohibits PGA Tour members, without exception, from playing in any tournament in the United States that takes place at the same time as a PGA Tour event.  Brass Decl. Ex. 12 at 125 (V.A.2.a), 128 (V.A.3).  It also prohibits PGA Tour members from playing in any international tournament that takes place at the same time as a PGA Tour event, unless the PGA Tour Commissioner grants a conflict release, and even then, only a maximum of three conflict releases may be granted in a

DECLARATION OF TALOR GOOCH
CASE NO.

Gibson, Dunn &
Crutcher LLP

season unless the Commissioner gives further permission.  *See id.* at 125–28 (V.A.2–V.A.3).  Because the PGA Tour holds events 47 to 49 weeks of the year, this rule ensures that PGA Tour members cannot participate in a competing golf tour in the United States and only in a maximum of three international tournaments if unless the PGA Tour approves.

5.    The PGA Tour maintains that the Media Rights Regulation of the Handbook and Tournament Regulations prohibits PGA Tour members from participating in any live or recorded golf program without prior approval of the PGA Tour Commissioner—even when they are not playing in a PGA Tour event:

> No PGA Tour member shall participate in any live or recorded golf program without the prior written approval of the Commissioner…. 'Golf program' for purposes of this section means any golf contest, exhibition or play that is shown anywhere in the world in any form of media now known or hereinafter developed.  *See* Brass Decl. Ex. 12 at 128 (Regs. V.B.1.b).

6.    The PGA Tour claims the discretion to permanently ban a player who violates these regulations, *see id.* at 129 (Regs. VI), and the PGA Tour Commissioner made clear he believes the Regulations give him that discretion.  Brass. Decl. Exs. 6–8, 19.   Taken together, the Media Rights and Conflicting Events Regulations ensure that no golf event anywhere in the world has access to any Tour members "without the prior written approval of the [PGA Tour] Commissioner."  Brass Decl. Ex. 12 at 128 (Regs.V.B.1.b).  In the last three years in response to new tours emerging, the PGA Tour has amended the Media Rights Regulation and the Conflicting Events Regulation release request process to make it even harder for PGA Tour members to participate in a competing golf tour by expanding the Media Rights Regulation to prohibit my participation in any golf contest or exhibition of play shown on any media anywhere **in the world**.  *Compare* Brass Decl. Ex. 12 (Regs. V.B.1.b); *with* Ex. 23 (2018 Regs. V.B.1.b).

7.    My representatives and I have been engaged in communications, discussions, and negotiation with LIV Golf, Inc. ("LIV Golf") representatives for months.

8.    From the beginning, I was interested in participating in the LIV Golf League and the LIV Golf Invitational Series.  The fair and market compensation being offered to players by LIV Golf was appealing, as were LIV Golf's concepts, business model, structure, schedule, and behavior in terms of engaging and listening to the views of golf professionals.  I was intrigued by the innovative aspects

Gibson, Dunn & Crutcher LLP

of LIV Golf's plans and I feel that LIV Golf as an organization has the potential to generate new golf fans and significantly enrich the entertainment golf provides and expand the sport and broaden its appeal.

9.      Last year, a PGA Tour representative stated that I would incur a lifetime ban from the PGA Tour were I to join the LIV Golf League.

10.      The PGA Tour's lifetime ban threat affected my decision whether to join the LIV Golf League.  I discussed the threat with other players, and I saw and heard their reactions to the threat.  The PGA Tour's lifetime ban threat adversely affected the decision of many other golfers whether to join the LIV Golf League.

11.      I was disappointed and angered when the PGA Tour threatened lifetime bans.  By endeavoring to prevent me and other golfers from participating in events run by another organization, the PGA Tour denied me an opportunity and reduced the number of professional golf tournaments I and other professional golfers could play in and fans could watch.

12.      I was excited when I learned that LIV Golf resolved to continue to try to introduce new professional golf tournaments with its LIV Golf Invitational Series.

13.      After LIV Golf announced its LIV Golf Invitational Series, the PGA Tour informed me that I would incur a lifetime ban from the PGA Tour were I to participate in the LIV Golf Invitational Series.

14.      The PGA Tour's lifetime ban threat affected my decision whether to participate in the LIV Golf Invitational Series.  I discussed the threat with other players, and I saw and heard their reactions to the threat.  The PGA Tour's lifetime ban threat affected the decision of many other golfers whether to join the LIV Golf Invitational Series.

15.      I initially decided I could not risk violating the PGA Tour's Player Regulations, subjecting myself to possible punishment from or liability to the PGA Tour.  I was afraid the PGA Tour would take away my ability to pursue my profession and jeopardize my ability to support my family.

16.      LIV Golf offered to compensate me amounts in addition to its already strong compensation offering—including the highest purses in golf history and guaranteed compensation.

17.    I eventually decided to join LIV Golf.  My decision was based on my desire to exercise my independent contractor right to free agency to play where and when I could to best support my professional efforts and my family.  My decision was based on my belief that LIV Golf is good for the game of golf, that LIV Golf offers innovation to the golf entertainment product, that LIV Golf is offering fair and market compensation for my and my fellow professionals' services, and treats caddies well rather than as second-class citizens—like the PGA Tour treats them (e.g., not allowed in certain clubhouses, forced to seek refuge under tents or metal sheds while golfers, officials, and the public are permitted indoors, not compensated from the Tour if their player misses the cut, not compensated for travel expenses, and not receiving healthcare until recently—*see also* Scott Van Pelt, Scott's "One Big Thing", ESPN Radio, http://espn.go.com/espnradio/play?id=12409670)).

18.    Under the Regulations, I requested the PGA Tour grant me a release to participate in the LIV Golf Invitational Series event occurring in London at the Centurion Golf Club.  The event on the PGA Tour occurring the same week was the RBC Canadian Open.  Had I not played in the LIV Golf London Invitational Series event, I would *not* have participated in the RBC Canadian Open.

19.    On May 10, 2022, the PGA Tour enforced its Conflicting Events and Media Rights Regulations to deny me and several other PGA Tour Members permission to participate in LIV Golf events.  PGA Tour Vice President of Competition Administration Kristen Burgess wrote me and said, "Dear Talor, We have received and reviewed your request for a conflicting event release and media release ("Release") to participate in the LIV Golf Invitational London on June 9-11, which is scheduled to be played the same week as the RBC Canadian Open.  The Commissioner has denied the Release pursuant to Article V, Section A.3 of the PGA TOUR Handbook & Tournament Regulations ('Regulations') because granting such a Release would 'significantly and unreasonably harm the PGA TOUR and [TOUR] sponsors.'  For the same reasons, the Commissioner does not approve a Release for your media rights under Article V, Section B.  The Commissioner evaluates all release requests based on their individual circumstances.  However, Article V of the Regulations clearly states that TOUR members are not eligible to request or receive waivers for conflicting events held in North America.  While releases have been granted in limited circumstances for one off-events outside North America or for events outside of North America on tours based exclusively outside of North America,

DECLARATION OF TALOR GOOCH
CASE NO.

Gibson, Dunn &
Crutcher LLP

the event for which you have requested a release is the first in an eight-event '2022 LIV Golf Invitational Series' season, and more than half of them will be held in the United States.  In addition to the above, we simply cannot permit free riding on the investments made by the TOUR in establishing and promoting its members.  Accordingly, your participation in the event is not authorized under the Regulations." Ex. A.  Attached as Exhibit A is a true and correct copy of a letter from Kristen Burgess of the PGA Tour to Talor Gooch, dated May 10, 2022.

20.     I was confused and troubled by the PGA Tour's decision to deny me the release as granted these releases as a matter of course to PGA Tour members.  After being denied the release, I became concerned the PGA Tour would deny me an opportunity to play professional golf—when ostensibly the PGA Tour's purpose was to advance professional golf.

21.     Under different circumstances, I would not have elected to participate in the LIV Golf London Invitational Series event over the PGA Tour's denial.  I elected to remain in the LIV Golf London Invitational Series field despite the PGA Tour's denial because I did not believe the PGA Tour had a lawful right to prevent me from playing in the event and because it was important that I stand up for the rights of professional golfers to achieve their market value as independent contractors, something the PGA Tour, as the only buyer of our services, had denied golfers for decades.

22.     During this time, some players discussed resignation from the PGA Tour.  I elected to remain a PGA Tour member while participating in LIV Golf events because I aspired to play in both PGA Tour and LIV Golf events, just as many players have played on both the European Tour and the PGA Tour for years.

23.     Then the PGA Tour went further to lock up PGA Tour members by making it impossible for me and other PGA Tour Members to submit Conflicting Events/Media Rights Regulation release requests by adding a brand new hurdle—its Contractual Assurance Confirmation.  *See* Brass Decl. Ex. 29.  The PGA Tour added the Contractual Assurance Confirmation to its Conflicting Events/TV Release Request Form to make any PGA Tour Member certify that the conflicting event will not be shown in the United States or will be shown in the United States only on receiving the PGA Tour's permission.  This new belt-and-suspenders requirement makes it even harder for me and other PGA Tour Members to play in any LIV Golf event because we cannot assure the PGA Tour what it is asking.

DECLARATION OF TALOR GOOCH
CASE NO.

Gibson, Dunn & Crutcher LLP

The PGA Tour's addition of this Contractual Assurance Confirmation provides no competitive benefit and only serves to prevent any competing organization from contracting for my services.  Also, the assurance requested is not something I am in the position to assure and seems impossible to assure given the breadth of video sharing on the Internet today.

24.     On May 31, 2022, LIV Golf announced the field for its first LIV Golf Invitational Series event taking place in London, United Kingdom, on June 9–11, 2022.

25.     On June 1, 2022, the PGA Tour sent similarly situated golfers a letter notifying them that the PGA Tour considered them in violation of the PGA Tour Member Regulation Article V, Section A.2., and that the PGA Tour Commissioner would take "appropriate course of action" for alleged violation of the rule unless they withdrew from the LIV Golf Invitational Series event "in a manner reasonably satisfactory to the [PGA] Tour within forty-eight (48) hours."  Jones Decl. Ex. B. I did not receive this correspondence despite being in the LIV Golf London Invitational field.

26.     On June 1 and 2, 2022, I communicated with PGA Tour representatives.  Former PGA Tour player and Board Member, and current PGA Tour representative as the Presidents Cup Captain for the United States team Davis Love III called me and told me that Jay Monahan was going to suspend me long-term for agreeing to play in LIV Golf.  The next day PGA Tour Chief Tournament & Competitions Officer Andy Pazder texted me: "Just want to make sure you understand the implications of playing without an approved conflicting event release."  Ex. C.  Attached as Exhibit C is a true and correct copy of text messages between Andy Pazder of the PGA Tour and Talor Gooch, dated June 2, 2022.  I responded, "Davis [Love III] called yesterday and said jay [Monahan, PGA Tour Commissioner] is going to suspend, is this true?"  In response, Mr. Pazder told me that I would be banned from the Tour for life if I played in a LIV Golf Invitational Series event. *See id.*  ("Our position has been that a player may choose to be a member of the Tour or to play in the Saudi/LIV events, but he can't do both.  If the player chooses the latter, he should not expect to be welcomed back." ).

27.     On June 3, 2022, the PGA Tour sent similarly situated golfer a letter informing them that "pursuant to Article VII, Section C, you are being placed on probation until further notice. Specifically, as reflected in the Notice of Disciplinary Inquiry to you dated June 1, 2022, the rule infraction triggering your probation is violation of Article V, Section A.2 of the PGA TOUR Player

Handbook & Tournament Regulations ("Regulations").  Accordingly, if you violate any other rule of the PGA TOUR while on probation including, but not limited to, violating Article V, Section B.1, which prohibits your participation in a live or recorded golf program, such as the LIV Golf Invitational London, for which a media release has been denied, the Commissioner may immediately suspend your playing privileges."  *See* Swafford Decl. Ex. A.  I did not receive this correspondence despite being listed in the May 31, 2022 LIV Golf London Invitational field and remaining on it through June 3, 2022.  Article VII, Section C of the PGA Tour Regulations relates to "conduct unbecoming a professional."  *See* Brass Decl. Ex. 12 at 134 (Regs. VII.C).  Remarkably, the PGA Tour told me that my playing professional golf constituted conduct unbecoming a professional golfer.  *See* Swafford Decl. Ex. A.  I believe that cannot be the meaning of that regulation, and the PGA Tour's position that playing professional golf for an organization other than it constitutes conduct unbecoming a professional golfer is unfair and illustrates the danger of the PGA Tour's Regulations giving the PGA Tour Commissioner absolute discretion to interpret the Regulations and punish its Members for fulfilling the ostensible purpose of the Tour—to promote professional golf.  *See* Brass Decl. Ex. 2.

28.     I elected to remain in the LIV Golf London Invitational Series field despite the PGA Tour's communications because I did not believe the PGA Tour had a lawful right to prevent me from playing in the event.

29.     On June 9, 2022, LIV Golf London Invitational Series began and I participated in it. Shortly after I teed off in the tournament, PGA Tour Senior Vice President of Tournament Administration Andy Levinson sent me a letter informing me that (a) the PGA Tour considered me in violation of the Media Rights Regulation (V.B.1.b), (b) I was suspended immediately from playing in PGA Tour events "until further notice," and (c) I had 14 days to submit written statements and/or evidence that the PGA Tour Commissioner should consider "before determining an appropriate course of action separate from your current suspension."  Ex. E.  Attached as Exhibit E is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated June 9, 2022.

30.     In response to the PGA Tour's suspension of me for playing in one LIV Golf Invitational during a week I would not have otherwise played on the PGA Tour, I made a decision to play in the LIV Golf Portland and LIV Golf New Jersey events, in which I otherwise was not planning to

DECLARATION OF TALOR GOOCH
CASE NO.

participate, because I needed to continue to play professional golf to earn a living and the PGA Tour was denying me that right on an indefinite and long-term basis.  The PGA Tour's unfair and unlawful response to my participation in the one LIV Golf tournament frustrated me and contributed to my decision to play in more LIV Golf events.

31.     On June 27, 2022, I sent my responses to the PGA Tour explaining why the PGA Tour's position was wrong and contrary to law.  Ex. F.  Attached as Exhibit F is a true and correct copy of an email from Talor Gooch to Andy Levinson of the PGA Tour, dated June 27, 2022.

32.     On June 30, 2022, Andy Levinson sent me a letter informing me that (a) the PGA Tour believed I violated the Conflicting Events and Media Rights Regulations (Article V, Sections A.2 and B.1) by participating in the broadcasted June 9 – 11, 2022 LIV Golf Invitational London event; (b) the PGA Tour Commissioner imposed a Major Penalty of suspension from participation in any PGA Tour-affiliated tournaments, including PGA Tour, PGA Tour Champions, Korn Ferry Tour, PGA Tour Latinoamérica, and PGA Tour Canada for a period ending no earlier than March 31, 2023, at which time I may seek in writing to have my suspension lifted; (c) the PGA Tour may impose further disciplinary action for any additional violation of the Regulations; and (d) I may appeal the sanctions by written notice to the PGA Tour Commissioner within 14 days of the letter.  Ex. G.  Attached as Exhibit G is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated June 30, 2022.

33.     After the Tour suspended me indefinitely from participating in Tour events, I was faced with the decision whether to not play professional golf at all until the Tour permitted to me play again or continue to play professional golf in LIV Golf tournaments.  I opted to continue to pursue my career and earn compensation to support myself and my family.  I participated in the LIV Golf Portland event between June 30 and July 2, 2022 and the LIV Golf New Jersey event between July 29 and 31, 2022.

34.     On June 22, 2022, I was announced in the LIV Golf Portland event player field.  On June 25, 2022, Andy Levinson sent me a letter informing that Commissioner Monahan considered me in violation of Regulation V.A.2 for being listed in the LIV Golf Portland event without release from the PGA Tour.  Ex. H.  Attached as Exhibit H is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated June 25, 2022.  On June 30, 2022, Andy Levinson sent me a

Gibson, Dunn &
Crutcher LLP

letter informing that Commissioner Monahan considered me in violation of Regulation V.B.1.b for participating in the LIV Golf Portland event without release from the PGA Tour. Ex. I. Attached as Exhibit I is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated June 30, 2022.

35.     On July 13, 2022, I appealed the Commissioner's disciplinary action. Ex. J. Attached as Exhibit J is a true and correct copy of an appeal letter from Talor Gooch to Andy Levinson and Jay Monahan of the PGA Tour, dated July 13, 2022. In my appeal, I challenged the suspension on eight separate grounds. On July 27, 2022, Commissioner Monahan referred other similarly situated golfers' appeals to the Appeals Committee and requested that any materials in support of appeal be submitted by August 10, 2022. I did not receive such a letter. I inquired further what the Tour was doing. I received no response for over a day. I informed the Commissioner that he missed his deadline to notify me how he was treating my appeal. I then received a letter similar to the other similarly situated golfers wherein the Commissioner referred my appeal to the Appeals Committee and requested that I submit any further materials by August 10, 2022. Ex. K. Attached as Exhibit K is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated July 31, 2022. In response, I requested confirmation that the Tour would abate their suspensions pending appeal to the Appeals Committee. Ex. L. Attached as Exhibit L is a true and correct copy of an email from Talor Gooch to Andy Levinson of the PGA Tour, dated August 1, 2022. In response, the Tour indicated it would not abate my suspensions pending appeal. Exs. M–N. Attached as Exhibit M is a true and correct copy of a letter from Keker, Van Nest & Peters LLP to Talor Gooch, and attached as Exhibit N is a true and correct copy a letter from Andy Levinson of the PGA Tour to Talor Gooch, both dated August 2, 2022.

36.     While my appeal of the Commissioner's disciplinary action was pending, on July 23, 2022, Andy Levinson sent me a letter informing me that (a) the PGA Tour Commissioner believed I violated the Conflicting Events and Media Rights Regulations (Article V, Sections A.2 and B.1) by participating in the broadcasted June 30 – July 2, 2022 LIV Golf Invitational Portland event; (b) the PGA Tour Commissioner imposed a Major Penalty of suspension from participation in any PGA Tour-affiliated tournaments, including PGA Tour, PGA Tour Champions, Korn Ferry Tour, PGA Tour Latinoamérica, and PGA Tour Canada, and a suspension of my privileges at Tournament Players Clubs,

Gibson, Dunn & Crutcher LLP

for a period ending no earlier than March 31, 2024 (an additional year suspension), at which time I may seek in writing to have my suspension lifted; (c) the PGA Tour Commissioner may impose further disciplinary action for any additional violation of the Regulations; and (d) I may appeal the sanctions by written notice to the PGA Tour Commissioner within 14 days of the letter.  Ex. B.  Attached as Exhibit B is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated July 23, 2022.  The PGA Tour Commissioner unilaterally imposed further sanctions on me while my appeal of the first Notice of Disciplinary Action was pending.

37.     On July 29, 2022, I received a letter from the Commissioner informing me he would abate his obligation to send me continued notice of disciplinary inquiry letters and notice of disciplinary action letters until he felt like following the Regulations' disciplinary procedures again.  Ex. D. Attached as Exhibit D is a true and correct copy of a letter from Andy Levinson of the PGA Tour to Talor Gooch, dated July 29, 2022.

38.     I discussed the Tour's suspension of me and others with other players, and I saw and heard their reactions to the punishment.   The PGA Tour's punishments affected the decisions of other golfers whether to join the LIV Golf.

39.     The PGA Tour claims to be a 501(c)(6) non-profit organization whose principal tax-exempt purpose is to "promote the common interests of professional tournament golfers."  Brass Decl. Ex. 2.  As such, the PGA Tour is bound to promote the professional golf industry and *all* professional golfers—not just PGA Tour management and not just some faction within it.  By banning for life professional golfers who chose to exercise their free agency right to resign from the PGA Tour and for suspending and punishing those like me who participate in LIV Golf events and wish to remain PGA Tour Members, the PGA Tour acts contrary to its purpose and reason for being as a tax-exempt non-profit organization.

40.     I am an independent contractor.  The PGA Tour considers me an independent contractor. Yet the Media Rights and Conflicting Events Regulations restrict my freedom as an independent contractor to pursue my profession.  I am grateful for my opportunities on the Tour.  Yet, as an independent contractor, I am responsible for self-funding my caddie, coaching, travel, training, lodging, sport-related medical care, as well as any other support necessary to play in tournaments across the

world.  I have not received any salary from the PGA Tour for my play in their tournaments.  When I am injured and cannot play, I do not receive any compensation from the PGA Tour.  I must invest in myself and bear all the risk myself.  I am aware of many members of the PGA Tour playing seasons in which their costs exceed their earnings.  Yet through Article V.A and V.B, the PGA Tour gives itself the power to prevent me from playing professional golf in the tournaments of another organization.  When I am not playing golf on the PGA Tour, the PGA Tour should have no right to tell me that I cannot play golf in another event, be it LIV Golf, the European Tour, or any other tour or event.

41.     I am ranked 20th in the FedEx Cup after playing 22 tournaments on the PGA Tour during the 2021-22 season.

42.     Participating in the FedEx Cup would provide me the opportunity to try to qualify for the Major Championships.  Were I to place in the Top 30 of the FedEx Cup, which I believe I have a good chance at doing if I am allowed to play in the FedEx Cup, then I would qualify for the major championships.  I have not yet qualified for the 2023 major championships (The Masters, PGA Championship, U.S. Open, and The Open).  Participating in the major championships is a commercial and professional goal of mine.  At this time, the majors are the pinnacle of golf.  If I am not able to qualify for the majors through playing in the FedEx Cup Playoffs, I am very unlikely to qualify for the 2023 majors due to the fact that LIV Golf is not yet Official World Golf Ranking point eligible.

43.     Participating in the FedEx Cup would provide me tremendous income earning opportunities through purses, bonuses, and retirement plan payments.

44.     Participating in the FedEx Cup would provide me opportunities to enhance my sponsorship relationships and compensation.

45.     I will lose the opportunity to increase my profile and ranking by participating, as well as the chance to be financially compensated for any success in the tournament.  I cannot determine the financial harm I will suffer because (as I have explained) compensation is based on performance, which is difficult to predict. The loss to me in financial terms is therefore difficult to quantify. Additionally there is the unquantifiable value of the sponsorship deals and public exposure that comes from participation in these events. Participation in events is part of developing my career and profile, and if I can't compete I am a less valuable commercial partner to potential sponsors.

46.     To retaliate against me and to disparage me for living out the purpose of the organization the PGA Tour has harmed my reputation and goodwill.

47.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 2, 2022.

_____
Talor Gooch

# EXHIBIT A



**Kirsten Burgess**
*Vice President, Competition Administration*

May 10, 2022

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Talor:

We have received and reviewed your request for a conflicting event release and media release ("Release") to participate in the LIV Golf Invitational London on June 9-11, which is scheduled to be played the same week as the RBC Canadian Open.  The Commissioner has denied the Release pursuant to Article V, Section A.3 of the *PGA TOUR Handbook & Tournament Regulations* ("Regulations") because granting such a Release would "significantly and unreasonably harm the PGA TOUR and [TOUR] sponsors."  For the same reasons, the Commissioner does not approve a Release for your media rights under Article V. Section B.

The Commissioner evaluates all release requests based on their individual circumstances. However, Article V of the Regulations clearly states that TOUR members are not eligible to request or receive waivers for conflicting events held in North America. While releases have been granted in limited circumstances for one off-events outside North America or for events outside of North America on tours based exclusively outside of North America, the event for which you have requested a release is the first in an eight-event "2022 LIV Golf Invitational Series" season, and more than half of them will be held in the United States. In addition to the above, we simply cannot permit free riding on the investments made by the TOUR in establishing and promoting its members.  Accordingly, your participation in the event is not authorized under the Regulations.

Sincerely,

Kirsten Burgess

cc:      Commissioner Monahan



## **<u>Conflicting Event / Media Release Request</u>**

Member Name:             Talor Gooch

Name of PGA TOUR event:  RBC Canadian Open

Name of Conflicting event:   LIV Golf Invitational London

---

ACTION TAKEN BY THE COMMISSIONER

The above request for a CONFLICTING EVENT RELEASE is:

___ (Home Circuit)    _____Approved        _____**X**_____ Denied

The above request for a MEDIA RELEASE is:

_____ Approved        _____ **X** ___ Denied

Signed:

Date:     <u>05/10/22</u>

(Commissioner or his designee) Conditions of approval if any:  <u>None</u>

# EXHIBIT B



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

July 23, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Mr. Gooch,

This letter is to notify you of the disciplinary action imposed by the Commissioner based upon the Notices of Disciplinary Inquiry dated June 25, 2022 ("June 10 Disciplinary Notice") and June 30, 2022 ("June 30 Disciplinary Notice") (collectively, the "Disciplinary Notices").  You have been afforded the full 14 day period to provide information in response to the June 25 Disciplinary Notice.   However, we have received no response.  We also have received no response to date to the June 30 Disciplinary Notice.

The violations identified in the Disciplinary Notice have been reviewed under the provisions of the *PGA TOUR Player Handbook & Tournament Regulations* ("Regulations"), to which you have agreed every year that you have been a member.  Specifically, as reflected in the Disciplinary Notice, Article V, Section A.2. of the Regulations  states that "[n]o conflicting event releases will be approved for tournaments held in North America."  You participated in the LIV Golf Invitational Portland event that was held in North America from June 30 – July 2, 2022 (the "event") in clear violation of the Regulations.

In addition, PGA TOUR Article V, Section B.1. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner.   As the event was broadcast on streaming platforms, your participation constituted an additional violation of the Regulations.

You have been previously warned about your participation in events in violation of the Regulations and the sanctions that will be imposed through the Notice of Disciplinary Action dated June 30, 2022. However, you have continued to flagrantly violate the Regulations.

Case 5:22-cv-04486-BLF   Document 114-1   Filed 09/18/22   Page 18 of 60

Therefore, upon due consideration of all the facts and circumstances, the Commissioner is imposing a Major Penalty and has extended your suspension from participation in any PGA TOUR-affiliated tournaments including PGA TOUR, PGA TOUR Champions, Korn Ferry Tour, PGA TOUR Latinoamérica, and PGA TOUR Canada for an additional minimum period of one (1) year from the prior suspension imposed for your prior violations of the Regulations related to the LIV GOLF London Invitational.  Thus, you will be eligible to request reinstatement no earlier than March 31, 2024. Your privileges at Tournament Players Clubs are suspended during this additional suspension period as well.  After March 31, 2024, you may seek in writing to have the suspension lifted.



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

While you are suspended from participation in TOUR-affiliated tournaments, you remain a Member of the PGA TOUR and, therefore, subject to the Regulations. Any additional violation of these Regulations may result in further disciplinary action that may be imposed in addition to the sanction outlined above.

In accordance with Article VII, Section E.2 of the Regulations, you may appeal these sanctions within 14 days of the date of this Notice of Disciplinary Action by written notice to the Commissioner.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

Case 5:22-cv-04486-BLF   Document 2-11   Filed 08/03/22   Page 19 of 60

# EXHIBIT C

e 5:22-cv-04486-BLF   Document 2-11   Filed 08/03/22   Page 21 o

‹ 3          **A**          ▢◁

Andy Padzer Pga Tour ›

> Hey Talor, if you have a couple minutes today, will you please call me regarding your participation in next week's Saudi event in London?  Just want to make sure you understand the implications of playing without an approved conflicting event release.  Thx. ANDY PAZDER

I can't get on a call until this evening but i can text for a bit. Davis called yesterday and said jay is going to suspend, is this true?

Delivered

> Our position has been that a player may choose to be a member of the PGA TOUR or to play in the Saudi/LIV events , but he can't do both. If the player chooses the latter, he should not expect to be welcomed back.
>
> When we last spoke, after you filed for a release for next week's event in London, you told me

iMessage

10:18 ◁



5G

**‹** 3



A



Andy Padzer Pga Tour ›

true?

Delivered

Our position has been that a player may choose to be a member of the PGA TOUR or to play in the Saudi/LIV events , but he can't do both. If the player chooses the latter, he should not expect to be welcomed back.

When we last spoke, after you filed for a release for next week's event in London, you told me your intention was to play only the first event. If that's still the case, I just want to make sure you understand that a member who participates in one Saudi/LIV event without an approved conflicting event release will be subject to same disciplinary rules as a member who plays in multiple Saudi/LIV events without an approved release.

  iMessage  

      

10:35

A

Andy Padzer Pga Tour >

That's still my position to just play London. That seems like an extremely harsh punishment. Considering I have been nothing but good to the tour. Have never asked anything of the tour until now. This is something that does not conflict at all with my pga tour schedule and won't continue to conflict with my pga tour schedule in any way shape or form. Again, I had no intention of playing Canada from the get go for numerous reasons. Just completely unfair to me and my family.

So I have a question- Personally I don't think there should be any punishment but my question is, why is the punishment going to be so extremely harsh?

Delivered

iMessage

# EXHIBIT D



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

July 29, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Re:     Ongoing Violations of PGA TOUR Regulations

Dear Mr. Gooch,

We have repeatedly issued Notices of Disciplinary Inquiry (the "Notices") informing you of your violations of the PGA TOUR Player Handbook & Tournament Regulations ("Regulations") and specifically Article V, Section A.2. regarding conflicting event releases and Article V, Section B.1.b regarding media releases.  Since the Notices were issued, you have continued to violate the Regulations and have demonstrated an intent to continue to do so (the "Ongoing Violations").

Therefore, rather than continuing to issue individual notices of disciplinary inquiry for the Ongoing Violations, PGA TOUR will initiate the disciplinary process for the Ongoing Violations at such time PGA TOUR determines that the Ongoing Violations have ceased or otherwise determines that the disciplinary process should proceed with respect to any or all of the Ongoing Violations on or after the date of this letter. At such time, you will be afforded all rights in accordance with the disciplinary procedures set forth in the Regulations including the opportunity to respond and provide any mitigating information as well as avail yourself of any appeal rights.

Nothing herein shall be deemed a waiver of PGA TOUR's rights with respect to the Ongoing Violations, as all such rights are expressly reserved.  Further, nothing herein shall be construed to be a waiver by you of any rights afforded to you under the Regulations.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT E



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

June 9, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Mr. Gooch:

This Notice of Disciplinary Inquiry ("Notice") is being executed by Commissioner Monahan and provides notice of your violation of the of the PGA TOUR Player Handbook & Tournament Regulations ("Regulations") as well as your immediate suspension.  Specifically, PGA TOUR Article V, Section B.1.b. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner.  As you applied for and were denied a media release for the LIV Golf Invitational London scheduled for June 9–11, 2022 (the "event"), your participation in this live and/or recorded event is a violation of the Regulations.

You were previously notified by letter dated June 5, 2022, that you had been placed on probation due to your violation of Article V, Section A.2 of the Regulations.  In that letter, you were informed pursuant to Section VII.C. that if you violated any other rule of the PGA TOUR while on probation, the Commissioner could immediately suspend your playing privileges. Because you violated Article V, Section B.1.b. of the Regulations while on probation, your playing privileges are hereby immediately suspended until further notice.

If there are mitigating circumstances or facts that you feel that the Commissioner should consider before determining an appropriate course of action separate from your current suspension, please provide them to me through submission of written statements and/or written evidence within the fourteen (14) day period outlined in the Regulations.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT F

**From:** Talor Gooch <talor.gooch@gmail.com>
**Date:** June 27, 2022 at 1:24:09 PM CDT
**To:** JayMonahan@pgatourhq.com


Dear Mr. Monahan:

I write to response to your letters of June 1, 3, and 9, 2022, which in summary have suspended me from the PGA Tour. I was upset and disappointed by these letters, particularly given the high regard in which I hold theTour. I grinded week after week after college for fouryears to earn my tour card. For the four years after that, I averaged more than twenty PGA Tour events per season. My wife and baby daughter have joined me for numerous Tour events, as I consider many of my fellow golfers to be family. But none of that seemed to matter when the PGA Tour accused me of engaging in "conduct unbecoming of a professional golfer" just because I played a professional golf event for another promoter.

Given my history and the respect I have for the PGA Tour, I would like to continue to have a positive relationship with the Tour. But I am confused by the PGA Tour's position, which appears to be that it need not pay me while I am not playing well or injured, but it can prevent me from playing golf for other promoters. Notably, the PGA Tour has historically permitted other PGA Tour members to play both for the PGA Tour and other promoters. I understand this PGA Tour's position raises numerous antitrust and anti-competitive issues, but that is not the point of this letter.

Put simply, I believe the PGA Tour's indefinite suspension while I await further word from the Tour is unjust and unfair. I don't understand how the PGA Tour is better with me on the sidelines. I registered for and wanted to play in the Travelers Championship. I want to play in other PGA Tour events, including the upcoming FedEx Cup playoffs that I have earned the right to participate in as the 15th ranked golfer in the current rankings. But the Tour has led me to believe that I will be suspended from the playoffs as well. Indeed, through its recent actions, the PGA Tour has put me in a position where I need to play in the LIV Golf Portland Invitational Series to earn compensation.

I hope that we can have a constructive discussion about how to move forward. Along these lines, please let me know for how long I have been suspended, as it will impact how I try support my family going forward. I look forward to our next discussion on these issues and the future of the PGA Tour.


Respectfully,

Talor Gooch


Sent from my iPhone

# EXHIBIT G



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

June 30, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Mr. Gooch,

This letter is to notify you of the disciplinary action imposed by the Commissioner based upon the Notices of Disciplinary Inquiry dated June 1, 2022 and June 9, 2022 (the "Disciplinary Notices"). You have been afforded the full 14 day period to provide information in response to each of the Disciplinary Notices, during which time we have received and reviewed your response dated June 27, 2022[1] (the "Response"). However, the positions set forth in the Response fail to take into account the clearly articulated obligations of players set forth in the *PGA TOUR Player Handbook & Tournament Regulations* ("Regulations"), to which you have agreed every year that you have been a member.

Specifically, as reflected in the Disciplinary Notices, Article V, Section A.2. of the Regulations states, "To contribute to the success of a PGA TOUR tournament or event and to permit PGA TOUR to fulfill its contractual obligations concerning representative fields, no PGA TOUR member shall participate in any other golf tournament or event on a date with a PGA TOUR (Regular TOUR) cosponsored tournament or event for which such member is exempt is scheduled" unless an exception is met. No exception to this clear rule had been met that would permit you to participate in the LIV Golf Invitational London event that was held from June 9 – June 11, 2022 (the "event"). In addition, PGA TOUR Article V, Section B.1. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner, which approval you did not receive.

Case 3:22-cv-04486-BLF   Document 1-11   Filed 08/03/22   Page 35 of 89

In your Response, you claim that because the PGA TOUR has allowed players to participate in tournaments on other tours, the PGA TOUR must grant a release for the event. However, as explained when your conflicting event release was denied, while releases have been granted in limited circumstances for one off-tournaments outside North America or for tournaments outside of North America on  tours based exclusively outside of North America, the event is the first in an eight-event season in which more than half of the tournaments are held in the United States. To be clear, PGA TOUR did not prohibit you from playing in the event, as demonstrated by the fact that you played in it. However, because your participation in this

---

[1] In fact, while the June 27, 2022 Response is outside of the 14 day window in which you were required to submit a response to the Disciplinary Notices, we have nevertheless considered it in response to both Disciplinary Notices.



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

event violated the Regulations, the PGA TOUR is obligated and wholly within its rights to enforce the Regulations through its disciplinary procedures.

Therefore, upon due consideration of all the facts and circumstances including those set forth in the Response, the Commissioner is imposing a Major Penalty of suspension from participation in any PGA TOUR-affiliated tournaments including PGA TOUR, PGA TOUR Champions, Korn Ferry Tour, PGA TOUR Latinoamérica, and PGA TOUR Canada that will end no earlier than March 31, 2023. After March 31, 2023, you may seek in writing to have the suspension lifted.

While you are suspended from participation in TOUR-affiliated tournaments, you remain a Member of the PGA TOUR and, therefore, subject to the Regulations. Any additional violation of the Regulations may result in further disciplinary action that may be imposed in addition to the sanction outlined above.

In accordance with Article VII, Section E.2 of the Regulations, you may appeal these sanctions within 14 days of the date of this Notice of Disciplinary Inquiry by written notice to the Commissioner.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

Case 5:22-cv-04486-BLF   Document 2-11   Filed 08/03/22   Page 33 of 60

# EXHIBIT H



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

June 25, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Mr. Gooch:

This Notice of Disciplinary Inquiry ("Notice") is being executed by Commissioner Monahan and provides notice of your violation of Article V, Section A.2. of the *PGA TOUR Player Handbook & Tournament Regulations* ("Regulations"), which states, "To contribute to the success of a PGA TOUR tournament or event and to permit PGA TOUR to fulfill its contractual obligations concerning representative fields, no PGA TOUR member shall participate in any other golf tournament or event on a date with a PGA TOUR (Regular TOUR) cosponsored tournament or event for which such member is exempt is scheduled" unless an exception is met.

On June 22, 2022, you were announced as part of the field in the LIV Golf event scheduled June 30 – July 2, 2022  in Portland, Oregon (the "event"), which will be played the same week as the John Deere Classic.  As there is no exception for your participation in the event, this announcement constitutes a violation of a rule of PGA TOUR.

If there are mitigating circumstances or facts that you feel that the Commissioner should consider before determining an appropriate course of action, please provide them to me through submission of written statements and/or written evidence within the fourteen (14) day period outlined in the *PGA TOUR Player Handbook & Tournament Regulations*.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT I



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

June 30, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Mr. Gooch:

This Notice of Disciplinary Inquiry ("Notice") is being executed by Commissioner Monahan and provides notice of your violation of the of the PGA TOUR Player Handbook & Tournament Regulations ("Regulations").  Specifically, PGA TOUR Article V, Section B.1.b. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner.  As you were not granted a media release for the LIV Golf Invitational Portland scheduled for June 30-July 2, 2022 (the "event"), your participation in this live and/or recorded event is a violation of the Regulations.

If there are mitigating circumstances or facts that you feel that the Commissioner should consider before determining an appropriate course of action separate from your current suspension, please provide them to me through submission of written statements and/or written evidence within the fourteen (14) day period outlined in the Regulations.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT J

July 13, 2022

Dear Messrs. Levinson and Monahan:

In accordance with Section VII.E(2) of the PGA Tour Player Handbook & Tournament Regulations (the "Regulations"), I write to appeal the Major Penalty determination and the suspension imposed on me in your June 30, 2022 Disciplinary Action Letter.  The principal grounds of my appeal, set out in more detail below, are that:

(a)     Provisions of Sections V.A.2, V.A.3, and V.B.1.b are patently unlawful restraints of trade that violate Section 2 of the Sherman Act, 15 U.S.C. § 2, and various state laws, and therefore (i) no punishment for purportedly violating those unlawful provisions may issue and (ii) any purported agreement by any person to adhere to those unlawful provisions is void and unenforceable;

(b)     Commissioner Monahan and the PGA Tour (the "Tour") violate Section 2 of the Sherman Act by applying Sections VII.E. and VII.C to unlawfully punish me and other golfers in an effort to thwart LIV Golf as a competitor for golfers' services, and therefore no punishment for purportedly violating those provisions may issue;

(c)     Provisions of Sections V.A.2, V.A.3, and V.B.1.b enable Commissioner Monahan to unlawfully control what I do (as an independent contractor, as the Tour acknowledges) when I am not playing on the PGA Tour (the "Tour"), and thus no punishment for purportedly violating those provisions may issue;

(d)     The Tour (1) has unlawfully coordinated with other entities in the purported golf "ecosystem," including the DP World Tour ("DPWT"), the PGA of America, and others, to establish a group boycott to prevent LIV Golf from succeeding and (2) has targeted its Regulations to punish me to carry out its coordinated dealings with its co-conspirators in violation of Section 1 of the Sherman Act;

(e)     Commissioner Monahan has violated the Tour's purported non-profit purpose and violated his fiduciary duties to the Tour and its members by seeking to punish me in this way;

(f)     There was a lack of fair process and injustice because Commissioner Monahan cannot be impartial in his determination whether to sanction me.  He has engaged in a two-year vendetta against prospective and new competitor professional golf promoter(s), and I am being punished for participating in a competitive promoter's events;

(g)     There was a lack of fair process and injustice because the Regulations' Disciplinary Process is procedurally and substantively unconscionable; and

(h)     In the alternative, the sanction imposed by Commissioner Monahan is grossly disproportionate to the seriousness of the alleged breaches of the Regulations that the Tour contends I committed.

Under Section VII.E.2 of the Regulations, my appeal of the Major Penalty "shall operate to stay the effective date of any penalty . . . until after the final decision on the appeal."

**(a)     Provisions of Sections V.A.2, V.A.3, and V.B.1.b violate Section 2 of the Sherman Act, 15 U.S.C. § 2, and various state laws, and therefore no punishment for purportedly violating them should issue;**

Commissioner Monahan's Major Penalty should be vacated because it relies on violations of provisions that plainly violate the U.S. antitrust laws. The PGA Tour is a monopolist. Among other devices and practices, the Tour uses Sections V.A.2. and V.A.3 ("Conflicting Events Regulation") and Section V.B.1.b. ("Media Rights Regulation") to harm competition by choking off the supply of top golfers to potential entrants. These provisions serve no competitively beneficial purpose. Rather, they serve only to limit output, constrain the rights of independent contractors to participate in competing events, and position the Commissioner of the incumbent monopolist as a gatekeeper who has the power to thwart any competitive threat in its infancy. That is the design of these provisions, and in fact Commissioner Monahan has used these provisions in my case (and that of other golfers who have participated in LIV Golf events) for the purpose of thwarting emerging competition to the PGA Tour. These provisions, as well as the exercise of the provisions through the punishments handed down to me and others who have participated with LIV Golf, reflect blatant antitrust violations. For this reason, the punishment imposed on me is not enforceable and must be overturned. As Michael Hausfeld, for example, the lawyer who represented college athletes in a successful federal antitrust lawsuit against the National Collegiate Athletic Association, recently and correctly observed: "The PGA [Tour] has crossed a line, legally, because they've basically decided that no player with whom they contract can play outside of their contracts. . . . Those players are foreclosed from participating in the sport for other potential competitor organizations. That's an antitrust violation."

Competition benefits fans, players, sponsors, and the sport itself, and it encourages innovation that will advance the game. Competition is good for golf, both on and off the course. Competition for players' services will redound to the benefit of all Tour members, not only those who have chosen to play with LIV Golf. Indeed, competition has caused the Tour to respond by increasing player compensation and offering limited-field, no-cut events—like LIV Golf's events.

Suspending golfers like me from Tour events serves no competitively beneficial purpose. It degrades the quality of fields in the events in which I am otherwise qualified to participate. And it serves no purpose of the Tour *other than* through its detrimental effect on competition. If the Tour wishes to maintain strong fields, it should not be excluding players like me from those fields. And if the Tour feels pressure from competitors for independent contractors' services, it should compete to retain those

services—not act to harm the careers of members in its misguided and unlawful effort to thwart competition and perpetuate its monopoly and boycott.

The Tour has made clear the reason for my suspension is to try to thwart a competitor, namely LIV Golf, and to protect its place as the dominant force in professional golf.  The Tour has historically permitted me and others to play both for the PGA Tour and other promoters.  The Tour is only now restricting my freedom because it feels pressure from a competitor that has not bowed down to its dominance as the DP World Tour and other tour operators around the world have done.  As you are aware, for many years Tour members have been allowed to be members of multiple tours (e.g., DP World Tour, Sunshine Tour, Asian Tour, etc.) and to play in tournaments promoted by the DP World Tour and other tours occurring the same weekend as Tour events.

Historically, the Tour granted releases or took no action, did not deem there to have been a violation of the Regulations, and sent no notice of discipline to members who also were members on other tours.  It appeared that everyone recognized that these worldwide opportunities were good for the players who played in them, and good for the game of golf.  It therefore is clear that the new approach under which I have been punished is inconsistent with past practice because the Tour is trying to prevent me from playing for a promoter with which the Tour fears it cannot compete on the merits for my services.

Your actions are unlawful, unenforceable as violations of the antitrust laws, antithetical to the ideals and interests of professional tournament golfers, promise to diminish the PGA Tour's product, obviously harmful to me and others who have been unfairly punished, and will harm the sport as a whole.  Suspending popular and high-ranking golfers from PGA Tour events could hardly benefit the PGA Tour or its sponsors absent its destructive effects on competition.  These actions violate the antitrust laws, and therefore no suspension may issue and my playing privileges should be restored.

**(b)** **Commissioner Monahan violates Section 2 of the Sherman Act by applying Sections VII.E to unlawfully punish me to thwart a competitor for their services, and therefore no punishment for purportedly violating them may issue;**

Commissioner Monahan's application of Article VI.E. is a pretext and a transparent effort to defeat nascent competition.  I should be clear—I have made no comments that "unreasonably attack or disparage others."  Instead, any comments I made were "[r]esponsible expressions of legitimate disagreement with PGA Tour polices," which are expressly permitted under the regulation Commissioner Monahan contends I violated.

In the Disciplinary Action letter, Commissioner Monahan now claims he has the right to impose punishment on me for making reasonable comments that might in the Commissioner's estimation harm the Tour's interests.  Apparently Commissioner Monahan has interpreted this provision to include any comments that promote competing events in which I participate, thus demonstrating that this provision is being enforced solely

3

as an effort to defeat competition. Commissioner Monahan makes no effort to establish that I should have reasonably known that my comments promoting golf events—which is something professional tournament golfers do when they are playing in an event—would be interpreted to constitute a violation of this provision. Indeed, if any group of members had gotten together and agreed never to promote any competing events, that agreement would be a *per se* violation of the antitrust laws and potentially subject to criminal prosecution. I never agreed to such a restriction, and I was never notified that these provisions would be interpreted in this manner. It is equally clear that Commissioner Monahan has interpreted this novel approach to these provisions in his effort to punish participants in LIV Golf events and scare golfers from playing in competing events. That is a violation of the antitrust laws.

Further, this provision cannot be read to give the Commissioner such broad discretion to punish comments expressing reasonable opinions. Commissioner Monahan's interpretation of Section VII.E to impose this punishment is clear error and pretextual to cover his real purpose of punishing golfers who have played in LIV Golf events.

**(c)    Provisions of Sections V.A.2, V.A.3, and V.B.1.b enable Commissioner Monahan to unlawfully control what I do (as an independent contractor) when I am not playing on the PGA Tour;**

Despite Commissioner Monahan's public recognition that I am an independent contractor, the Tour is preventing me from and punishing me for exercising my legal right and freedom to play professional golf as an independent contractor by subjecting me to onerous and extremely harmful sanctions. The Tour neither compensates me nor pays for my coaching, caddies, travel, training, lodging, or the support necessary to play in tournaments across the world. I bear these risks myself. When I have been injured, the Tour pays me nothing. Yet the Conflicting Events Regulation and the Media Rights Regulation purport to give the Tour the power to prevent me from playing in the tournaments of another promoter. Simply put, when I am not playing golf on the Tour, the Tour has no right to keep me from playing in another event, be it LIV Golf, the DP World Tour, or any other tour or event.

I am a free agent and independent contractor. The Tour cannot have its cake and eat it too by trying to control me as one might an employee, while not providing me the rights and benefits an employee would receive. As a result, the Tour's Major Penalty must be reversed because the Conflicting Events and Media Rights Regulations violate laws prohibiting this control over me as an independent contractor.

**(d)    The Tour has unlawfully coordinated with others in the so-called golf "ecosystem," including the DP World Tour ("DPWT"), to prevent LIV Golf from succeeding and has applied its Regulations to unfairly punish me to carry out its group boycott in violation of Section 1 of the Sherman Act;**

The Tour and others in the golf "ecosystem," including the DP World Tour, have been acting in concert to deny a new entrant access to players that are members of their

respective Tours.  Public evidence and statements by Commissioner Monahan and DP World Tour Commissioner Keith Pelley reveal the Tour is conspiring with the DP World Tour, among others, to thwart competition by excluding all who might play in, partner with or associate with LIV Golf from, to use your own words, the current golf "ecosystem."  In a formal appeal hearing I will present evidence showing the Tour's conspiracy with the DP World Tour and others in this regard—this evidence being too voluminous for this initial submission.  The Tour's coordination with DP World Tour and others trying to thwart LIV Golf violates Section 1 of the Sherman Act and its punishment of me is part of the Tour's efforts to carry out its coordinated effort with the DP World Tour to frighten golfers from joining LIV Golf and punish those who do.  In this regard, I would expect the Tour to make available all communications between it and any other entities regarding LIV Golf and related subjects for purposes of assessing the propriety of the penalties the Tour seeks to impose, as well as internal communications regarding LIV Golf or what the Tour has denominated "private equity" golf.

The Tour's conspiracy with the DP World Tour and others to exclude LIV Golf from the existing golf "ecosystem" also highlights the hypocrisy of the Tour's pretextual justifications for attacking LIV Golf and any member who plays in its events.  The Tour and others in its conspiracy claim that they are protecting the sport, and that LIV Golf is somehow detrimental to the sport, because LIV Golf is operating outside the current "ecosystem."  As the facts have emerged, however, it is clear that LIV Golf made extensive efforts to work with those in the "ecosystem" and develop the sport along with, for example, the DP World Tour.  Indeed, representatives of the DP World Tour are on record lauding the "appeal and fit" of the new series that has become LIV Golf, but rejected efforts to work with the new entrant because of the "mighty power and need to avoid a collision course between [DP World Tour] and PGA."  Having strong-armed the rest of the golf "ecosystem" to exclude LIV Golf in order to stave off a perceived competitive threat, it is disingenuous and obviously pretextual for the Tour now to claim that it is punishing golfers for participating in the events of a new tour that is outside this "ecosystem."

Similarly, the Tour's conspiracy with others in the existing golf "ecosystem" undermines the Tour's claim that it can lawfully ban me (and others) for an extended period (in effect, for life) because we have made the choice to play with a competing tour.  This position suffers from a number of flaws.  First, the Tour has for many years accepted, and indeed facilitated, members' participation on multiple tours at once.  The only difference with LIV Golf is that the Tour views LIV Golf as a competitor.  There is thus nothing inherent in a golfer's participation on another tour that requires or justifies expulsion from the Tour.  Second, the Tour is complicit with others in the "ecosystem" to ensure that only Tour members—and not LIV golfers—can qualify for events promoted by others, including the majors and the Ryder Cup, and earn OWGR points.  The Tour is also working with its conspirators in the "ecosystem" to prevent me and other LIV golfers to move from one tour to another from season to season, which is a characteristic that has long been part of the existing "ecosystem."  Thus, if the Tour's position is that it has the right to ban golfers who participate in LIV Golf events, at a minimum it must get out of the way of

golfers having a free and fair choice with no constraints on their movement, no restriction on OWGR points, and no restriction on the majors, the Ryder Cup, and other events throughout the "ecosystem." Otherwise, the Tour is not providing me or any other golfer with a fair choice, and it should not be permitted to impose draconian punishments on me or other golfers under the guise that we have chosen to play elsewhere.

(e)     **Commissioner Monahan has violated the Tour's purported non-profit purpose and violated his fiduciary duties to the Tour and its members;**

The Tour purports to be a 501(c)(6) non-profit organization whose principal tax-exempt purpose is to "promote the common interests of professional tournament golfers." As a consequence, the Tour is bound to promote professional golf and *all* professional golfers—not merely the interests of Tour management or a segment of its membership. By banning members who chose to participate in LIV Golf events, the Commissioner acts contrary to the Tour's ostensible purpose and claimed non-profit status, and in doing so threatens harm to the Tour and its members. Moreover, LIV Golf has already broadened golf's audience, and will do so for the foreseeable future if it is not thwarted by the Commissioner's actions. For the sake of the Tour, I request that the Commissioner refrain from punishing members and thereby jeopardizing its non-profit status. Commissioner Monahan similarly has violated his fiduciary duties to Tour members by prioritizing his desire to thwart LIV Golf over the interests of Tour members.

(f)     **There was injustice because Commissioner Monahan cannot be impartial in his determination whether to sanction me because he has engaged in a two-year vendetta against prospective and new competitor professional golf promoters, and I am being punished for participating in such a competitive promoter's events;**

For over two years, Commissioner Monahan has made crystal clear that he is personally against any competitor emerging to compete with the Tour for players' services. Now that I have participated in a new competitor's events, Commissioner Monahan is clearly biased against me in determining whether punishment should issue. It is not fair for Commissioner Monahan to sit in judgement of me, when he has staunchly opposed LIV Golf and made his predisposition known. He is not capable of being a neutral arbiter.

Moreover, I am also concerned that the PGA Tour's Disciplinary Procedures do not provide opportunity for me to have a neutral judge given the options are Commissioner Monahan and the PGA Tour Policy Board, rather than a neutral and independent third-party tribunal. The Tour's Regulations are clearly designed to ensure that a member has the opportunity to have his appeal heard by a neutral tribunal. While the Tour's Policy Board could provide a neutral tribunal in certain cases, it does not do so here, as the Tour has designed and employs these sanctions to thwart LIV Golf as a competitor. Under the protocols the Tour envisions, the entire process will have been prejudged and is plainly unfair to me and other similarly situated golfers.

**(g)** **There was injustice because the Regulations' Disciplinary Process is procedurally and substantively unconscionable; and**

The Tour's Disciplinary Procedures are procedurally and substantively unfair because they permit the Commissioner to rule on this matter himself, and to disbar me from exercising my independent contractor rights—a right the Tour has historically endorsed golfers exercising—without imposing any rules or processes for the Commissioner to follow in circumstances, but instead granting him unfettered discretion.

First, in your Disciplinary Action letter, you appear to suggest that I had a choice to agree to the Regulations. That is false. To play professional golf at the highest level in the United States, I had no choice but to agree to the Regulations. I was not offered a chance to negotiate the Regulations. And the player members have no opportunity to amend the Conflicting Events, Media Rights, and Disciplinary Procedure Regulations that govern them, as the non-player PGA Tour Policy Board members control the Policy Board and amendments to the Regulations. We are simply told if you want to play professional tournament golf in the United States, you must abide by the Regulations. To then impose on me procedures that give the Commissioner unfettered discretion to apply the Regulations as he sees fit and without regard to articulable standards and to have the authority to impose a penalty on me as severe as a lifetime ban (and here an effective lifetime ban if I play with LIV Golf) without any real opportunity to be heard by an independent decision-maker is unconscionable.

Second, the Tour has included within this contract of adhesion a "release" provision wherein the Tour claims I have no right to challenge the Tour, Commissioner Monahan, the PGA Tour Policy Board, or anyone involved in the process to punish me and deny me the opportunity to pursue my livelihood on the Tour. To the extent the Tour argues that this "release" applies to my claims against the Tour, this provision is patently unconscionable and unfair. Commissioner Monahan has claimed absolute discretion to apply the Regulations as he sees fit and to punish me as he sees fit, and then purports to deny me the right to challenge his decision to anyone other than a panel of Tour Policy Board members who are equally complicit in Commissioner Monahan's unlawful scheme to defeat competition. The release reveals the balance of power: The Tour is in absolute control and I have no voice in the matter. Furthermore, the release is unenforceable to the extent it purports to insulate the Commissioner, the Tour, and their co-conspirators from claims under the antitrust laws. The release is clearly unenforceable.

Third, this process has been unfair in that Commissioner Monahan did not respond to the assertion that the Tour is violating the antitrust laws. It is unconscionable to respond to the good faith and credible assertion that the Tour is violating the antitrust laws by imposing on me the effect of a lifetime ban so long as I play with LIV Golf without even bothering to respond to this contention.

Fourth, the sanction is either arbitrarily set or designed squarely to punish me so significantly that I have now lost the chance to play in the FedEx Cup Playoffs. I was ranked in the top 10 in the FedEx Cup standings at the time of my "suspension." The Tour's unjustified and apparently permanent suspension will prevent me from competing in the upcoming FedEx Cup Playoffs.

Fifth, the Commissioner has had no hearing and has stated no reasons for the length of the suspension other than to simply note that I have purportedly violated the Regulations—which is no explanation at all for the specific suspension imposed. Where participation in one event sponsored by another promoter is met with a suspension of at least nine months, spanning two Tour seasons, the punishment is obviously disproportionate to any perceived offense and is revealed to be designed to thwart competition, not any lawful objective of the Tour.

Finally, Commissioner Monahan has publicly attacked me throughout this process in a deliberate effort to vilify me for simply wanting to play professional golf for another promoter when I am not playing on the Tour. The Commissioner appears to have taken it personally that I (and other golfers who have played in LIV Golf events) have not backed down in the face of his threats. He thus is in no position to fairly adjudge an appropriate sanction. The PGA Tour's nine-month suspension of my playing rights for playing in one competing event, while threatening even more punishments to come, is unjust and unfair.

I have earned the right to play in Tour events, including the upcoming FedEx Cup Playoffs as the 16th ranked golfer in the current rankings. The Tour's suspension is unfairly denying me the opportunity to make the Tour Championship and to try to earn the privileges and compensation that come with it, including automatic entry into the 2023 majors. I have put myself in a position through dedicated play on the Tour to have good chance at achieving those privileges. I have earned the privilege of participating in the FedEx Cup by playing in Tour events and contributing my time, efforts, talents, and personal brand to the benefit of the Tour. And yet the Tour is now denying me opportunities to pursue my profession. And it is just as offensive and unlawful that the Tour, having unjustly banned me from participating in Tour events, now promises to punish me further for participating in any additional competing events on another tour.

You should note that a few days ago the Chief of the Sports Resolution panel in the United Kingdom addressed these very procedural and disciplinary infirmities in reviewing lesser penalties assessed by Commissioner Pelley of the DP World Tour against its member players, and enjoined the enforcement of those penalties based on the biased and unfair procedures employed by Mr. Pelley and the DP World Tour. Again, we request that the Tour's charges and penalties be assessed by an acceptable neutral and independent third-party tribunal.

**(h)** **In the alternative, the sanction imposed by Commissioner Monahan is grossly disproportionate to the seriousness of the alleged breaches of the Regulations that the Tour contends I committed.**

Finally, and in the alternative, the sanction imposed by Commissioner Monahan was grossly disproportionate to the seriousness of the alleged breaches of the Regulations the Tour contends I committed. Commissioner Monahan has imposed on me: (a) a nine-month suspension from participation "in any PGA Tour-affiliated tournaments including PGA Tour, PGA Tour Champions, Korn Ferry Tour, PGA Tour Latinoamerica and PGA Tour Canada; (b) suspending me from playing at golf courses owned by the PGA Tour for nine months; and (c) indicated to that if I continue to participate in LIV Golf events while banned from the PGA Tour, its owned tours and its courses that I am subject to sanctions "in addition to" the suspensions under (a) and (b). This sanction operates as an effective lifetime ban from the Tour if I continue to participate in LIV Golf events. Commissioner Monahan would rather deny me my ability to apply my trade to earn a living for nine months and dramatically affect my ability to qualify for the Tour in 2024 (at minimum) than see any golfers play golf with LIV Golf. Commissioner Monahan unreasonably and unjustly punishes me to deter others and harm LIV Golf. That is unlawful and unfair. That is grossly disproportionate to the purported violation. There is no correlation whatsoever between the fact that I played in a LIV Golf event and promoted it and the penalty the Tour has imposed on me.

In addition, the Tour informs me that I will now be subject to escalating suspensions in addition to the already unreasonably and penal initial sanctions for continuing to exercise my independent contractor rights. The escalation was announced only after I had chosen to participate in the LIV Golf Portland event. I have therefore been placed in a position in which I have to either sit on the sidelines for nine months without any income earning opportunities or face an effective career ban. That is unfair and grossly disproportionate to my actions—all of which are consistent with my status as a professional tournament golfer.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

I have been a dedicated and passionate member of the PGA Tour, and I very much hope and intend to remain a member moving forward. For the reasons I have outlined in this appeal, I respectfully request that the Tour rescind the sanctions and permit me—and my fellow members—to play professional golf with others without restriction and fear of punishment, as we have done for many years. In the alternative, I request that an acceptable independent and neutral third-party tribunal be appointed to consider these matters.

Finally, if there is any action or remedy of any sort that the Tour seeks to take against me before the appeal process is concluded, I expect you to inform me and provide me with a full and fair opportunity to respond.

Respectfully,


Talor Gooch

# EXHIBIT K



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

July 30, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Re:     Appeal of Disciplinary Action

Dear Mr. Gooch,

Thank you for forwarding your letter dated July 13, 2022, to me.  This letter is to inform you that pursuant to Article VII, Section E-2 of the PGA TOUR Player Tournament Handbook & Regulations (the "Regulations"), the Commissioner determined on July 27, 2022 that it is in the best interest of the PGA TOUR to transfer the appeals received on or before that date related to initial penalties he imposed based upon violations of Article V, Section A.2. of the Regulations regarding conflicting event releases and Article V, Section B.1.b of the Regulations regarding media releases to the Appeals Committee.  Accordingly, contemporaneously with this letter, the Appeals Committee has been provided notice of your appeal.

In accordance with Section E-3 of Article VII of the Regulations, if you would like to submit any written evidence, documentation, affidavits, witness statements, legal memoranda, or other materials relevant to the appeal or any penalties imposed for consideration by the Appeals Committee, you must forward them to me within fourteen (14) days from the date of this letter. Any such materials along with your appeal letter as well as your response to the Notice of Disciplinary Inquiry will be forwarded to the Appeals Committee.

Please note that in accordance with the Regulations, the Appeals Committee, in its discretion, may request that you or another witness respond to questions that the Appeals Committee may have. The Regulations further provide that based upon the evidence before it, including any evidence previously submitted to the Commissioner, the Appeals Committee may affirm, modify (increase or decrease), or reverse the decision of the Commissioner.

Please let me know if you have any questions.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT L

**From:** Talor Gooch <talor.gooch@gmail.com>
**Date:** August 1, 2022 at 2:40:51 PM CDT
**To:** Andrew Levinson <AndyLevinson@pgatourhq.com>

Dear Mr. Levinson,

I received your July 30, 2022 letter referring my appeal.  I intend to submit additional "written evidence, documentation, affidavits, witness statements, legal memoranda, or other materials relevant to the appeal" to you for the Appeals Committee's consideration within the next fourteen days, as your letter invites and as contemplated by the PGA Tour Player Handbook & Tournament Regulations.  Notably, under Section VII.E.2 of the Regulations, my appeal "shall operate to stay the effective date of any penalty . . . until after the final decision on the appeal."  This Regulation operates to stay "suspension[s]" unless the tournament is "then in progress or scheduled for the calendar week in which the alleged violation occurred."

The Regulations thus provide that I should be permitted to play in PGA Tour tournaments pending my appeal to the Appeals Committee.  I therefore write to inform you that I intend to participate in the FedEx St. Jude Championship and any FedEx Cup Playoff tournaments for which I qualify while my appeal is pending.  Please confirm by no later than Tuesday, August 2, 2022 that the PGA Tour will comply with Section VII.E.2 and stay my suspension pending my appeal and until the Appeals Committee reaches a final decision.

Sent from my iPhone

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# EXHIBIT M



Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com


**John W. Keker**
**Elliot R. Peters**
jkeker@keker.com
epeters@keker.com

August 2, 2022


**VIA ELECTRONIC MAIL**

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012
Email:  talor.gooch@gmail.com

Re:     *Potential Litigation with PGA TOUR*

Dear Mr. Gooch:

    Our firm represents the PGA TOUR in connection with potential litigation concerning suspended PGA TOUR members who have joined LIV Golf.  I write in response to your August 1, 2022 email to Andrew Levinson claiming that you "intend to participate in the FedEx St. Jude Championship and any FedEx Cup Playoff tournaments."  You remain suspended from the PGA TOUR and are ineligible to participate in the FedExCup Playoffs due to your flagrant violations of the PGA TOUR Handbook & Tournament Regulations ("Regulations").  If you have counsel representing you, please have that person contact us.

    We understand that you may be contemplating filing litigation against the TOUR and seeking a temporary restraining order or preliminary injunction to allow you to participate in the FedExCup Playoffs.  We hope that before you take such action, you consider the impact on your fellow TOUR members who have not violated the Regulations by competing in unauthorized events.  Allowing ineligible players such as yourself, who have negotiated significant guaranteed incomes from LIV Golf, to compete in the FedExCup Playoffs would harm TOUR members in good standing, by negatively impacting the prize money and other benefits they could receive.  If you choose to seek injunctive relief despite this, inform your counsel to serve us by email with all papers contemporaneously with any filing, and to inform the Court that we will represent the PGA TOUR and oppose your application under any schedule set by the Court.

    As you know, your PGA TOUR membership status—including participation in PGA TOUR tournaments—is and always has been conditioned on your agreement to abide by the terms of the TOUR Regulations.  These Regulations are necessary for all TOUR members to enjoy the benefits of the TOUR's unique structure and role in the sport of golf.  By enabling its members to pool media rights, the TOUR has driven media and sponsorship money into the

1878979

Mr. Talor Gooch                                                    **VIA ELECTRONIC MAIL**
August 2, 2022
Page 2

sport, which in substantial part is paid to TOUR members in the form of winnings based on their
performance in TOUR events (as well as through pensions and bonuses).  The TOUR could not
function in this mutually beneficial way without the commitments from its members set forth in
the Regulations that all members agree to and sign.  If TOUR members won't live up to the
terms of their agreements, and instead treat their own promises as optional, the entire mutually
beneficial structure of the TOUR, an arrangement which has grown the sport and promoted the
interests of golfers going back to Arnold Palmer and Jack Nicklaus, would collapse.

　　　As stated in Mr. Levinson's June 9, June 30, July 23, and July 29 letters to you, your
eligibility to participate in PGA TOUR events has been suspended based on serious violations of
the Regulations by your playing in and contributing your media rights to LIV Golf events,
contrary to the terms you expressly agreed to as a condition of PGA TOUR membership.  We
understand that players have been paid tens to hundreds of millions of dollars to sign with and
play for LIV Golf.  We further understand that LIV Golf players must agree ***not*** to play in any
event occurring concurrently with a LIV Golf event, which directly contradicts and breaches
their existing agreements with the PGA TOUR.  Unsurprisingly and consistent with the
Regulations, the PGA TOUR imposed penalties for these obvious and deliberate breaches.
Simply put, the PGA TOUR properly suspended you and other members for choosing to breach
your agreements with the TOUR.

　　　To the extent you are considering any extraordinary claim for injunctive relief, it cannot
satisfy any of the legal requirements for an injunction: (1) likelihood of success on the merits,
(2) irreparable harm that cannot be monetarily compensated, and (3) equities and (4) public
interest in favor of an injunction.  *First*, there is no irreparable harm or emergency
circumstances.  Your two-month-old suspension was entirely foreseeable and self-induced by
your willful breaches of the Regulations.  In any case, any alleged harm would be economic,
capable of being compensated by money (which is, after all, the reason you chose to join LIV
Golf while also insisting on continuing to play in PGA TOUR tournaments) and is at best
speculative.  *Second* and *third*, equities and public interest most certainly do not favor an
injunction.  You willfully breached your commitments to the TOUR for LIV Golf's money,
which comes from the Saudi regime with unlimited funds to spend to try to "sportswash" its
reputation using professional golf.  *Finally*, your legal arguments against the PGA TOUR are
unlikely to succeed on the merits.  The PGA TOUR doesn't question anyone's right to establish
a competing golf tour, as LIV Golf has done, and can't prevent anyone from joining LIV Golf.
The PGA TOUR only seeks to enforce its agreements with its members, the provisions of which
are procompetitive and necessary to protect the interests of all TOUR members.  Preventing the
PGA TOUR from doing so, and instead forcing it to serve as a stage for LIV Golfers, threatens
the TOUR's efforts and investments in promoting its members and the sport of golf, as well as
its charitable initiatives.  No claim for an injunction can be sustained.

　　　Your August 1 email suggests that you should be permitted to participate in TOUR
events during the pendency of your July 13 appeal.  That is incorrect.  You have been notified
repeatedly of your ongoing violations of TOUR Regulations, including without limitation in
communications dated June 3, 2022, June 5, 2022, June 9, 2022, June 25, 2022, June 30, 2022,

Mr. Talor Gooch                                          **VIA ELECTRONIC MAIL**
August 2, 2022
Page 3

July 23, 2022, and July 29, 2022.  On June 5, you were notified that you were being placed on probation pursuant to Article VII, Section C of the Regulations, and that any further violation while on probation could result in immediate suspension of your playing privileges. Unfortunately, rather than bring yourself into compliance, you continued to violate the Regulations willfully and repeatedly, and you made clear that you intend to continue doing so.  On June 9, you were notified that the Commissioner was exercising his authority under Article VII, Section C to suspend your playing privileges based upon your continuing infractions of the Regulations while on probation.  That suspension remains in effect—indeed, your conduct since it was instituted, including multiple further infractions, has only intensified the need for it.  You were also notified on June 30 and July 23 of the imposition of Major Penalties of suspension for minimum predetermined periods, and notified again on July 29 of your continued, ongoing violations.  As the TOUR has repeatedly informed you, your continuing participation in and promotion of LIV Golf is inflicting ongoing harm to the reputation and financial best interest of the TOUR and its rule-abiding members in violation of the Regulations.  Thus, your suspension under Article VII, Section C remains in effect and, under Article VII, Section E, your July 13 appeal does not effectuate a stay of your suspension from tournaments in which your violations continue to occur.  Accordingly, you remain ineligible for competition in the FedExCup Playoffs or otherwise.

Please be advised that, as set forth in Article X of the Regulations, the PGA TOUR reserves its rights to recover all costs and expenses including attorneys' fees incurred in connection with any litigation.  Additionally, in light of potential litigation, please immediately take steps to preserve all potentially relevant documents and information, including electronically stored information (e.g., emails, text messages, computer files) and communications in any form, relating to your dealings with the PGA TOUR and/or LIV Golf.

* * * *

1878979

Mr. Talor Gooch                                          **VIA ELECTRONIC MAIL**
August 2, 2022
Page 4


     The PGA TOUR depends on the good faith of its members—both in competing at the highest levels of golf and in abiding with the Regulations—to maximize benefits to all members, business partners and sponsors, and fans of golf.  Some have resigned from the PGA TOUR to avoid further breaches of the TOUR's Regulations, and to take advantage of LIV Golf's unlimited funds, which is each individual's prerogative.  You of course may also make that choice.  But the PGA TOUR continues to depend on all existing members to honor their membership commitments, and has no legal obligation to hold in good standing and provide playing opportunities to any member who willfully violates those terms.  Please let us know if you or your counsel wish to discuss this matter.

Very truly yours,

KEKER, VAN NEST & PETERS LLP



Elliot R. Peters                            John W. Keker


cc:    Len Brown (by email: LenBrown@pgatourhq.com)
        Nicholas Goldberg (by email: ngoldberg@keker.com)

ERP:jas


1878979

# EXHIBIT N



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

August 2, 2022

*Via Email*

Mr. Talor Gooch
505 NW 188th Street
Edmond, OK 73012

Dear Mr. Gooch:

I write in response to your August 1, 2022 letter.  In that letter you contend that you are eligible to participate in PGA TOUR events (including the FedEx Cup events) during the pendency of your appeal of the discipline imposed by Commissioner Monahan on June 30, 2022.  Your position is incorrect.

The stay provision you reference, by its terms, could apply only to "the effective date of any penalty" imposed by the Commissioner. It does not apply to—let alone stay—the imposition of any suspension imposed by the Commissioner under Article VII, Section C of the PGA TOUR Player Handbook & Tournament Regulations for a violation of TOUR rules while on probation.

In this regard, you were previously notified on June 5, 2022, that you were placed on probation for violating the Regulations.  On June 9, 2022, the Commissioner exercised his authority under Article VII, Section C to immediately suspend your playing privileges because you subsequently violated the Regulations while on probation. As the Regulations and our June 9, 2022 letter to you make clear, such interim suspension under Section C is separate and distinct from any "penalty" that may be imposed by the Commissioner for a minor, intermediate, or major penalty.  Moreover, in light of your continuous and willful violations of the Regulations following your June 9 suspension, it is clear that you have no intention of complying with the Regulations in the future and as such are not entitled to avail yourself of any stay of your suspension.  The June 9 suspension thus remains in effect during the pendency of your appeal.

The remaining points in your letter will be addressed under separate cover.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan