# EXHIBIT 34

Dear Mr. Levinson:

My purpose in writing is to respond to your (i) June 1, 2022 "Notice of Disciplinary Inquiry"; (ii) June 3, 2022 letter informing us of the PGA Tour's view that we have violated Article V, Section A.2., of the PGA Tour Player Handbook & Tournament Regulations and that, as a result, the PGA Tour placed me on probation; and (iii) June 9, 2022 letter informing me that the PGA Tour has suspended me based on its view that I have violated Article V, Section B.1.b., and Article VI, Section E., of the regulations. As you might imagine, as a devoted member of the PGA Tour, I was disappointed to receive this correspondence, which suggests that I have engaged in 'conduct unbecoming of a professional golfer' merely by playing in a golf event sponsored by an entity other than the PGA Tour. To be clear, I strongly disagree, and I submit this letter to provide you with additional facts and circumstances for your consideration.

I do not invite this dispute with the PGA Tour. But your positions are inconsistent with my status as an independent contractor, the Tour's own practices, the laws governing sports competition, and the Tour's professed non-profit purpose of promoting the common interests of *all* professional golfers. Honestly, it troubles me greatly to witness the PGA Tour's efforts to prevent competitive tours from emerging solely to advance its own interests, when competition is what drives players to succeed and is foundational to our economic prosperity. Yet by engaging in that competition the PGA Tour has apparently concluded that I and other players should be punished for playing golf for financial rewards—the very purpose of the Tour.

First, and as the PGA Tour has repeatedly acknowledged, its members are independent contractors. Yet PGA Tour regulations impermissibly restrict my freedom to play professional golf as an independent contractor. The Tour neither compensates me nor pays for my coaching, travel, training, lodging, or the support necessary to play in tournaments across the world. I invest in and bear the risks myself.

The PGA Tour's Regulations do not provide me the opportunity to experience the rights independent contractors enjoy. Yet Articles V.A. and V.B. purport to give the Tour the power to prevent me from playing in the tournaments of another promoter. As I am sure you are aware, by law one acquirer of an independent contractor's services does not have the right to prevent others from dealing with him. Simply put, when I am not playing golf on the PGA Tour, the PGA Tour cannot tell me that I cannot play golf in another event, be it LIV Golf, the European DP World Tour, or any other tour or event. Indeed, the PGA Tour has historically permitted other PGA Tour members to play professional golf both for the PGA Tour and other promoters. It seems obvious that the Tour only now restricts my freedom because a competitor has emerged.

Moreover, by suspending me and subjecting me to further punishment for playing with a competing promoter, the PGA Tour is unlawfully maintaining its monopoly. As Michael Hausfeld, the lawyer who represented college athletes in a successful federal antitrust lawsuit against the National Collegiate Athletic Association, recently observed:

"The PGA [Tour] has crossed a line, legally, because they've basically decided that no player with whom they contract can play outside of their contracts. . . . Those players are foreclosed from participating in the sport for other potential competitor organizations. That's an antitrust violation."[1]  How do you respond?  How are you not breaking the law by punishing me?

Competition for player services will benefit all PGA Tour members, not only those who have chosen to play with LIV Golf.  Competition benefits sponsors and fans, and it encourages innovation that will advance the game.  Competition is good for golf, both on and off the course.  Your actions, which are aimed solely at defeating this competition, are antithetical to the ideals and interests of professional tournament golfers, promise to diminish the PGA Tour's product, and harm the sport as a whole.  Suspending popular golfers from PGA Tour events could hardly benefit the PGA Tour or its sponsor, but rather serves to diminish competition on the PGA Tour and with the PGA Tour.

In addition, the PGA Tour's application of Article VI.E. is a pretext and transparent effort to defeat competition.  I should be clear—I have made no comments that "unreasonably attack or disparage others."  Instead, my comments were "[r]esponsible expressions of legitimate disagreement with PGA Tour polices," which are expressly permitted under the regulation the PGA Tour contends I violated.  My comments about LIV Golf related to how I made a decision for my family so that I can spend time with my children and be present as a father.[2]  How does that violate this Rule?  Worse, the Tour is wrong to claim I violated a regulation aimed at "hateful, abusive, obscene and divisive" speech, without at least identifying the comments that supposedly violated this policy.  It is the height of hypocrisy for the PGA Tour to claim I made public comments to harm the Tour in violation of this rule, while simultaneously making its own public comments aimed at tarnishing my reputation and disparaging me for playing professional golf.

In fact, I made comments in that interview advocating my continued interest in playing on the PGA Tour.  *See* Interview[3] (Q: "Do you have interest in continuing to play on the PGA Tour?" A: Oh, yes[!]."  Please direct me to the portion of my interview during the Memorial Tournament where you claim I violated this Regulation.

The PGA Tour also purports to be a 501(c)(6) non-profit organization whose principal tax-exempt purpose is to "promote the common interests of professional tournament golfers."  As a consequence, the PGA Tour is bound to promote professional golf and *all* professional golfers—not merely the interests of Tour management or a segment of its membership.  By banning members who chose to participate in LIV Golf events, the PGA Tour acts contrary to its purpose and claimed non-profit status.  Indeed, the LIV Golf event  broadened golf's audience.  For the sake of the PGA Tour, I request

---

[1]  https://www.washingtonpost.com/sports/2022/06/15/pga-tour-liv-golf-discord/?utm_source=rss&utm_medium=referral&utm_campaign=wp_homepage

[2]  https://theathletic.com/3344629/2022/06/01/liv-golf-matt-jones-pga-tour/.

[3]  https://theathletic.com/3344629/2022/06/01/liv-golf-matt-jones-pga-tour/.

that the PGA Tour refrain from punishing members to benefit management and others, and thus jeopardize its non-profit status.

In sum, PGA Tour management violates its fiduciary duty to the members by harming the Tour and its membership by risking the Tour's tax-exempt status, rendering the Tour susceptible to antitrust liability, artificially suppressing golfer wages by endeavoring to suppress competition and reduce professional golf opportunities, and forcing members to resign their memberships—thus weakening the PGA Tour's membership and revenues—based on unjust punishment from the Tour. For these reasons, I respectfully request that the PGA Tour reconsider its position and permit me—as a long-standing member—to play professional golf without restriction and fear of punishment.

In the meantime, if there is any further action or remedy of any sort that the PGA Tour seeks to take against me, I expect you to inform me and provide me with a full and fair opportunity to respond.

Respectfully,



# EXHIBIT 35



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

June 25, 2022

*Via Email*

Mr. Matt Jones
7253 East Gallego Lane
Scottsdale, AZ 85255

Dear Mr. Jones:

This Notice of Disciplinary Inquiry ("Notice") is being executed by Commissioner Monahan and provides notice of your violation of Article V, Section A.2. of the *PGA TOUR Player Handbook & Tournament Regulations* ("Regulations"), which states, "To contribute to the success of a PGA TOUR tournament or event and to permit PGA TOUR to fulfill its contractual obligations concerning representative fields, no PGA TOUR member shall participate in any other golf tournament or event on a date with a PGA TOUR (Regular TOUR) cosponsored tournament or event for which such member is exempt is scheduled" unless an exception is met.

On June 22, 2022, you were announced as part of the field in the LIV Golf event scheduled June 30 – July 2, 2022 in Portland, Oregon (the "event"), which will be played the same week as the John Deere Classic. As there is no exception for your participation in the event, this announcement constitutes a violation of a rule of PGA TOUR.

If there are mitigating circumstances or facts that you feel that the Commissioner should consider before determining an appropriate course of action, please provide them to me through submission of written statements and/or written evidence within the fourteen (14) day period outlined in the *PGA TOUR Player Handbook & Tournament Regulations.*

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT 36



Andy Levinson
*Senior Vice President*
*Tournament Administration*

June 29, 2022

*Via Email*

Mr. Matt Jones
7253 East Gallego Lane
Scottsdale, AZ 85255

Dear Mr. Jones,

This letter is to notify you of the disciplinary action imposed by the Commissioner based upon the Notices of Disciplinary Inquiry dated June 1, 2022 and June 9, 2022 (the "Disciplinary Notices"). You have been afforded the full 14 day period to provide information in response to each of the Disciplinary Notices, during which time we have received and reviewed your response dated June 17, 2022[1] (the "Response"). However, the positions set forth in the Response are directly contrary to the obligations clearly articulated in the *PGA TOUR Player Handbook & Tournament Regulations* ("Regulations"), to which you have agreed every year that you have been a member.

Specifically, as reflected in the Disciplinary Notices, Article V, Section A.2. of the Regulations states, "To contribute to the success of a PGA TOUR tournament or event and to permit PGA TOUR to fulfill its contractual obligations concerning representative fields, no PGA TOUR member shall participate in any other golf tournament or event on a date with a PGA TOUR (Regular TOUR) cosponsored tournament or event for which such member is exempt is scheduled" unless an exception is met. No exception to this clear rule had been met that would permit you to participate in the LIV Golf Invitational London event that was held from June 9 – June 11, 2022 (the "event"). In addition, PGA TOUR Article V, Section B.1. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner, which approval you did not receive.

In your Response, you simply claim that as an independent contractor, you should be able to play the events of your choosing, even though this is not what you agreed to when you promised to abide by the Regulations. Players have the right to choose where and for whom they will play, but if they choose to play on the PGA TOUR, they agree — as you had — to do so in accordance with the Regulations. By participating in the broadcasted event, you violated Article V, Sections A.2 and B.1 of the Regulations. You also claim that the PGA TOUR has prohibited you "from participating in the sport for other potential

---

[1] In fact, while the June 17, 2022 Response is outside of the 14 day window in which you were required to submit a response to the June 1, 2022 Disciplinary Action, we have nevertheless considered it in response to both Disciplinary Notices.



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

competitor organizations." That is simply false, as demonstrated by the fact that you played in the event even though it was not sanctioned or approved by the PGA TOUR. Because your participation in this event violated the Regulations, the PGA TOUR is obligated and wholly within its rights to enforce the Regulations through its disciplinary procedures.

Furthermore, you have promoted the event and a tour in which you were not authorized to participate through your comments to a reporter while at a PGA TOUR sanctioned event, which you knew or should reasonably have known were not in the best financial or reputational interests of PGA TOUR in violation of Section V, E. of the Regulations.   While you claim you should not be sanctioned because you believe you did not make any comments to "unreasonably attack others" or that were intended to be "hateful, abusive, obscene" or divisive," you did in fact make "public comments that a member knows, or should reasonably know, will harm the reputation or financial best interest of PGA TOUR." Promoting an event for which you were not authorized to participate while playing in a PGA TOUR event is clearly not in the financial best interests of PGA TOUR, its sponsors, and its membership.

Therefore, upon due consideration of all the facts and circumstances including those set forth in the Response, the Commissioner is imposing a Major Penalty of suspension from participation in any PGA TOUR-affiliated tournaments including PGA TOUR, PGA TOUR Champions, Korn Ferry Tour, PGA TOUR Latinoamérica, and PGA TOUR Canada that will end no earlier than March 31, 2023.   Your privileges at Tournament Players Clubs are suspended during this time period as well.  After March 31, 2023, you may seek in writing to have the suspension lifted.

While you are suspended from participation in TOUR-affiliated tournaments, you remain a Member of the PGA TOUR and, therefore, subject to the Regulations.  Any additional violation of the Regulations may result in further disciplinary action that may be imposed in addition to the sanction outlined above.

In accordance with Article VII, Section E.2 of the Regulations, you may appeal these sanctions within 14 days of the date of this Notice of Disciplinary Inquiry by written notice to the Commissioner.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT 37



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

June 30, 2022

*Via Email*

Mr. Matt Jones
7253 East Gallego Lane
Scottsdale, AZ 85255

Dear Mr. Jones,

This Notice of Disciplinary Inquiry ("Notice") is being executed by Commissioner Monahan and provides notice of your violation of the of the PGA TOUR Player Handbook & Tournament Regulations ("Regulations").  Specifically, PGA TOUR Article V, Section B.1.b. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner.  As you were not granted a media release for the LIV Golf Invitational Portland scheduled for June 30-July 2, 2022 (the "event"), your participation in this live and/or recorded event is a violation of the Regulations.

If there are mitigating circumstances or facts that you feel that the Commissioner should consider before determining an appropriate course of action separate from your current suspension, please provide them to me through submission of written statements and/or written evidence within the fourteen (14) day period outlined in the Regulations.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT 38

July 13, 2022

Dear Messrs. Levinson and Monahan:

In accordance with Section VII.E(2) of the PGA Tour Player Handbook & Tournament Regulations (the "Regulations"), I write to appeal the Major Penalty determination and the suspension imposed on me in your June 29, 2022 Disciplinary Action Letter. The principal grounds of my appeal, set out in more detail below, are that:

(a)     Provisions of Sections V.A.2, V.A.3, and V.B.1.b are patently unlawful restraints of trade that violate Section 2 of the Sherman Act, 15 U.S.C. § 2, and various state laws, and therefore (i) no punishment for purportedly violating those unlawful provisions may issue and (ii) any purported agreement by any person to adhere to those unlawful provisions is void and unenforceable;

(b)     Commissioner Monahan and the PGA Tour (the "Tour") violate Section 2 of the Sherman Act by applying Sections VII.E. and VII.C to unlawfully punish me and other golfers in an effort to thwart LIV Golf as a competitor for golfers' services, and therefore no punishment for purportedly violating those provisions may issue;

(c)     Provisions of Sections V.A.2, V.A.3, and V.B.1.b enable Commissioner Monahan to unlawfully control what I do (as an independent contractor, as the Tour acknowledges) when I am not playing on the PGA Tour (the "Tour"), and thus no punishment for purportedly violating those provisions may issue;

(d)     The Tour (1) has unlawfully coordinated with other entities in the purported golf "ecosystem," including the DP World Tour ("DPWT"), the PGA of America, and others, to establish a group boycott to prevent LIV Golf from succeeding and (2) has targeted its Regulations to punish me to carry out its coordinated dealings with its co-conspirators in violation of Section 1 of the Sherman Act;

(e)     Commissioner Monahan has violated the Tour's purported non-profit purpose and violated his fiduciary duties to the Tour and its members by seeking to punish me in this way;

(f)     There was a lack of fair process and injustice because Commissioner Monahan cannot be impartial in his determination whether to sanction me. He has engaged in a two-year vendetta against prospective and new competitor professional golf promoter(s), and I am being punished for participating in a competitive promoter's events;

(g)     There was a lack of fair process and injustice because the Regulations' Disciplinary Process is procedurally and substantively unconscionable; and

(h)     In the alternative, the sanction imposed by Commissioner Monahan is grossly disproportionate to the seriousness of the alleged breaches of the Regulations that the Tour contends I committed.

Under Section VII.E.2 of the Regulations, my appeal of the Major Penalty "shall operate to stay the effective date of any penalty . . . until after the final decision on the appeal."

(a)     **Provisions of Sections V.A.2, V.A.3, and V.B.1.b violate Section 2 of the Sherman Act, 15 U.S.C. § 2, and various state laws, and therefore no punishment for purportedly violating them should issue;**

Commissioner Monahan's Major Penalty should be vacated because it relies on violations of provisions that plainly violate the U.S. antitrust laws.  The PGA Tour is a monopolist.  Among other devices and practices, the Tour uses Sections V.A.2. and V.A.3 ("Conflicting Events Regulation") and Section V.B.1.b. ("Media Rights Regulation") to harm competition by choking off the supply of top golfers to potential entrants.  These provisions serve no competitively beneficial purpose.  Rather, they serve only to limit output, constrain the rights of independent contractors to participate in competing events, and position the Commissioner of the incumbent monopolist as a gatekeeper who has the power to thwart any competitive threat in its infancy.  That is the design of these provisions, and in fact Commissioner Monahan has used these provisions in my case (and that of other golfers who have participated in LIV Golf events) for the purpose of thwarting emerging competition to the PGA Tour.  These provisions, as well as the exercise of the provisions through the punishments handed down to me and others who have participated with LIV Golf, reflect blatant antitrust violations.  For this reason, the punishment imposed on me is not enforceable and must be overturned.  As Michael Hausfeld, for example, the lawyer who represented college athletes in a successful federal antitrust lawsuit against the National Collegiate Athletic Association, recently and correctly observed:  "The PGA [Tour] has crossed a line, legally, because they've basically decided that no player with whom they contract can play outside of their contracts. . . . Those players are foreclosed from participating in the sport for other potential competitor organizations.  That's an antitrust violation."  I asked Commissioner Monahan to respond to this quote in my June 17, 2022 letter.  Commissioner Monahan refused to do so and imposed his egregious punishment nonetheless.  His refusal to respond speaks volumes.

Competition benefits fans, players, sponsors, and the sport itself, and it encourages innovation that will advance the game.  Competition is good for golf, both on and off the course.  Competition for players' services will redound to the benefit of all Tour members, not only those who have chosen to play with LIV Golf.  Indeed, competition has caused the Tour to respond by increasing player compensation and offering limited-field, no-cut events—like LIV Golf's events.

Suspending golfers like me from Tour events serves no competitively beneficial purpose.  It degrades the quality of fields in the events in which I am otherwise qualified to participate.  And it serves no purpose of the Tour *other than* through its detrimental effect on competition.  If the Tour wishes to maintain strong fields, it should not be excluding players like me from those fields.  And if the Tour feels pressure from

competitors for independent contractors' services, it should compete to retain those services—not act to harm the careers of members in its misguided and unlawful effort to thwart competition and perpetuate its monopoly and boycott.

The Tour has made clear the reason for my suspension is to try to thwart a competitor, namely LIV Golf, and to protect its place as the dominant force in professional golf. The Tour has historically permitted me and others to play both for the PGA Tour and other promoters. The Tour is only now restricting my freedom because it feels pressure from a competitor that has not bowed down to its dominance as the DP World Tour and other tour operators around the world have done. As you are aware, for many years Tour members have been allowed to be members of multiple tours (e.g., DP World Tour, Sunshine Tour, Asian Tour, etc.) and to play in tournaments promoted by the DP World Tour and other tours occurring the same weekend as Tour events.

Historically, the Tour granted releases or took no action, did not deem there to have been a violation of the Regulations, and sent no notice of discipline to members who also were members on other tours. It appeared that everyone recognized that these worldwide opportunities were good for the players who played in them, and good for the game of golf. It therefore is clear that the new approach under which I have been punished is inconsistent with past practice because the Tour is trying to prevent me from playing for a promoter with which the Tour fears it cannot compete on the merits for my services.

Your actions are unlawful, unenforceable as violations of the antitrust laws, antithetical to the ideals and interests of professional tournament golfers, promise to diminish the PGA Tour's product, obviously harmful to me and others who have been unfairly punished, and will harm the sport as a whole. Suspending popular and high-ranking golfers from PGA Tour events could hardly benefit the PGA Tour or its sponsors absent its destructive effects on competition. These actions violate the antitrust laws, and therefore no suspension may issue and my playing privileges should be restored.

**(b)   Commissioner Monahan violates Section 2 of the Sherman Act by applying Sections VII.E to unlawfully punish me to thwart a competitor for their services, and therefore no punishment for purportedly violating them may issue;**

Commissioner Monahan's application of Article VI.E. is a pretext and a transparent effort to defeat nascent competition. I should be clear—I have made no comments that "unreasonably attack or disparage others." Instead, any comments I made were "[r]esponsible expressions of legitimate disagreement with PGA Tour polices," which are expressly permitted under the regulation Commissioner Monahan contends I violated.

In the Disciplinary Action letter, Commissioner Monahan now claims he has the right to impose punishment on me for making reasonable comments that might in the Commissioner's estimation harm the Tour's interests. Apparently Commissioner Monahan has interpreted this provision to include any comments that promote competing

3

events in which I participate, thus demonstrating that this provision is being enforced solely as an effort to defeat competition.  Commissioner Monahan makes no effort to establish that I should have reasonably known that my comments promoting golf events—which is something professional tournament golfers do when they are playing in an event—would be interpreted to constitute a violation of this provision.  Indeed, if any group of members had gotten together and agreed never to promote any competing events, that agreement would be a *per se* violation of the antitrust laws and potentially subject to criminal prosecution.  I never agreed to such a restriction, and I was never notified that these provisions would be interpreted in this manner.  It is equally clear that Commissioner Monahan has interpreted this novel approach to these provisions in his effort to punish participants in LIV Golf events and scare golfers from playing in competing events.  That is a violation of the antitrust laws.

Further, this provision cannot be read to give the Commissioner such broad discretion to punish comments expressing reasonable opinions.  Commissioner Monahan's interpretation of Section VII.E to impose this punishment is clear error and pretextual to cover his real purpose of punishing golfers who have played in LIV Golf events.

(c)     **Provisions of Sections V.A.2, V.A.3, and V.B.1.b enable Commissioner Monahan to unlawfully control what I do (as an independent contractor) when I am not playing on the PGA Tour;**

Despite Commissioner Monahan's public recognition that I am an independent contractor, the Tour is preventing me from and punishing me for exercising my legal right and freedom to play professional golf as an independent contractor by subjecting me to onerous and extremely harmful sanctions.  The Tour neither compensates me nor pays for my coaching, caddies, travel, training, lodging, or the support necessary to play in tournaments across the world.  I bear these risks myself.  When I have been injured, the Tour pays me nothing.  Yet the Conflicting Events Regulation and the Media Rights Regulation purport to give the Tour the power to prevent me from playing in the tournaments of another promoter.  Simply put, when I am not playing golf on the Tour, the Tour has no right to keep me from playing in another event, be it LIV Golf, the DP World Tour, or any other tour or event.

I am a free agent and independent contractor.  The Tour cannot have its cake and eat it too by trying to control me as one might an employee, while not providing me the rights and benefits an employee would receive.  As a result, the Tour's Major Penalty must be reversed because the Conflicting Events and Media Rights Regulations violate laws prohibiting this control over me as an independent contractor.

(d)     **The Tour has unlawfully coordinated with others in the so-called golf "ecosystem," including the DP World Tour ("DPWT"), to prevent LIV Golf**

**from succeeding and has applied its Regulations to unfairly punish me to carry out its group boycott in violation of Section 1 of the Sherman Act;**

The Tour and others in the golf "ecosystem," including the DP World Tour, have been acting in concert to deny a new entrant access to players that are members of their respective Tours. Public evidence and statements by Commissioner Monahan and DP World Tour Commissioner Keith Pelley reveal the Tour is conspiring with the DP World Tour, among others, to thwart competition by excluding all who might play in, partner with or associate with LIV Golf from, to use your own words, the current golf "ecosystem." In a formal appeal hearing I will present evidence showing the Tour's conspiracy with the DP World Tour and others in this regard—this evidence being too voluminous for this initial submission. The Tour's coordination with DP World Tour and others trying to thwart LIV Golf violates Section 1 of the Sherman Act and its punishment of me is part of the Tour's efforts to carry out its coordinated effort with the DP World Tour to frighten golfers from joining LIV Golf and punish those who do. In this regard, I would expect the Tour to make available all communications between it and any other entities regarding LIV Golf and related subjects for purposes of assessing the propriety of the penalties the Tour seeks to impose, as well as internal communications regarding LIV Golf or what the Tour has denominated "private equity" golf.

The Tour's conspiracy with the DP World Tour and others to exclude LIV Golf from the existing golf "ecosystem" also highlights the hypocrisy of the Tour's pretextual justifications for attacking LIV Golf and any member who plays in its events. The Tour and others in its conspiracy claim that they are protecting the sport, and that LIV Golf is somehow detrimental to the sport, because LIV Golf is operating outside the current "ecosystem." As the facts have emerged, however, it is clear that LIV Golf made extensive efforts to work with those in the "ecosystem" and develop the sport along with, for example, the DP World Tour. Indeed, representatives of the DP World Tour are on record lauding the "appeal and fit" of the new series that has become LIV Golf, but rejected efforts to work with the new entrant because of the "mighty power and need to avoid a collision course between [DP World Tour] and PGA." Having strong-armed the rest of the golf "ecosystem" to exclude LIV Golf in order to stave off a perceived competitive threat, it is disingenuous and obviously pretextual for the Tour now to claim that it is punishing golfers for participating in the events of a new tour that is outside this "ecosystem."

Similarly, the Tour's conspiracy with others in the existing golf "ecosystem" undermines the Tour's claim that it can lawfully ban me (and others) for an extended period (in effect, for life) because we have made the choice to play with a competing tour. This position suffers from a number of flaws. First, the Tour has for many years accepted, and indeed facilitated, members' participation on multiple tours at once. The only difference with LIV Golf is that the Tour views LIV Golf as a competitor. There is thus nothing inherent in a golfer's participation on another tour that requires or justifies expulsion from the Tour. Second, the Tour is complicit with others in the "ecosystem" to ensure that only Tour members—and not LIV golfers—can qualify for events promoted by others, including the majors and the Ryder Cup, and earn OWGR points. The Tour is also working

with its conspirators in the "ecosystem" to prevent me and other LIV golfers to move from one tour to another from season to season, which is a characteristic that has long been part of the existing "ecosystem." Thus, if the Tour's position is that it has the right to ban golfers who participate in LIV Golf events, at a minimum it must get out of the way of golfers having a free and fair choice with no constraints on their movement, no restriction on OWGR points, and no restriction on the majors, the Ryder Cup, and other events throughout the "ecosystem." Otherwise, the Tour is not providing me or any other golfer with a fair choice, and it should not be permitted to impose draconian punishments on me or other golfers under the guise that we have chosen to play elsewhere.

(e)     **Commissioner Monahan has violated the Tour's purported non-profit purpose and violated his fiduciary duties to the Tour and its members;**

As I mentioned in my June 17 letter that Commissioner Monahan refused to respond to, the Tour purports to be a 501(c)(6) non-profit organization whose principal tax-exempt purpose is to "promote the common interests of professional tournament golfers." As a consequence, the Tour is bound to promote professional golf and *all* professional golfers— not merely the interests of Tour management or a segment of its membership. By banning members who chose to participate in LIV Golf events, the Commissioner acts contrary to the Tour's ostensible purpose and claimed non-profit status, and in doing so threatens harm to the Tour and its members. Moreover, LIV Golf has already broadened golf's audience, and will do so for the foreseeable future if it is not thwarted by the Commissioner's actions. For the sake of the Tour, I request that the Commissioner refrain from punishing members and thereby jeopardizing its non-profit status. Commissioner Monahan similarly has violated his fiduciary duties to Tour members by prioritizing his desire to thwart LIV Golf over the interests of Tour members.

(f)     **There was injustice because Commissioner Monahan cannot be impartial in his determination whether to sanction me because he has engaged in a two-year vendetta against prospective and new competitor professional golf promoters, and I am being punished for participating in such a competitive promoter's events;**

For over two years, Commissioner Monahan has made crystal clear that he is personally against any competitor emerging to compete with the Tour for players' services. Now that I have participated in a new competitor's events, Commissioner Monahan is clearly biased against me in determining whether punishment should issue. It is not fair for Commissioner Monahan to sit in judgement of me, when he has staunchly opposed LIV Golf and made his predisposition known. He is not capable of being a neutral arbiter.

Moreover, I am also concerned that the PGA Tour's Disciplinary Procedures do not provide opportunity for me to have a neutral judge given the options are Commissioner Monahan and the PGA Tour Policy Board, rather than a neutral and independent third-party tribunal. The Tour's Regulations are clearly designed to ensure that a member has the opportunity to have his appeal heard by a neutral tribunal. While the Tour's Policy Board could provide a neutral tribunal in certain cases, it does not do so here, as the Tour

has designed and employs these sanctions to thwart LIV Golf as a competitor.  Under the protocols the Tour envisions, the entire process will have been prejudged and is plainly unfair to me and other similarly situated golfers.

### (g)   There was injustice because the Regulations' Disciplinary Process is procedurally and substantively unconscionable; and

The Tour's Disciplinary Procedures are procedurally and substantively unfair because they permit the Commissioner to rule on this matter himself, and to disbar me from exercising my independent contractor rights—a right the Tour has historically endorsed golfers exercising—without imposing any rules or processes for the Commissioner to follow in circumstances, but instead granting him unfettered discretion.

First, in your Disciplinary Action letter, you appear to suggest that I had a choice to agree to the Regulations. That is false. To play professional golf at the highest level in the United States, I had no choice but to agree to the Regulations.  I was not offered a chance to negotiate the Regulations.  And the player members have no opportunity to amend the Conflicting Events, Media Rights, and Disciplinary Procedure Regulations that govern them, as the non-player PGA Tour Policy Board members control the Policy Board and amendments to the Regulations.  We are simply told if you want to play professional tournament golf in the United States, you must abide by the Regulations.  To then impose on me procedures that give the Commissioner unfettered discretion to apply the Regulations as he sees fit and without regard to articulable standards and to have the authority to impose a penalty on me as severe as a lifetime ban (and here an effective lifetime ban if I play with LIV Golf) without any real opportunity to be heard by an independent decision-maker is unconscionable.

Second, the Tour has included within this contract of adhesion a "release" provision wherein the Tour claims I have no right to challenge the Tour, Commissioner Monahan, the PGA Tour Policy Board, or anyone involved in the process to punish me and deny me the opportunity to pursue my livelihood on the Tour.  To the extent the Tour argues that this "release" applies to my claims against the Tour, this provision is patently unconscionable and unfair.  Commissioner Monahan has claimed absolute discretion to apply the Regulations as he sees fit and to punish me as he sees fit, and then purports to deny me the right to challenge his decision to anyone other than a panel of Tour Policy Board members who are equally complicit in Commissioner Monahan's unlawful scheme to defeat competition.  The release reveals the balance of power:  The Tour is in absolute control and I have no voice in the matter.  Furthermore, the release is unenforceable to the extent it purports to insulate the Commissioner, the Tour, and their co-conspirators from claims under the antitrust laws.  The release is clearly unenforceable.

Third, this process has been unfair in that Commissioner Monahan did not respond to the facts and circumstances in my letter relating to the assertion that the Tour is violating the antitrust laws.  It is unconscionable to respond to my good faith and credible assertion

that the Tour is violating the antirust laws by imposing on me the effect of a lifetime ban so long as I play with LIV Golf without even bothering to respond to my contention.

Fourth, the sanction is either arbitrarily set or designed squarely to punish me so significantly that I have now lost any real chance of keeping my Tour card in 2024 even were I permitted to play on the Tour starting in April 2023.

Fifth, the Commissioner has had no hearing and has stated no reasons for the length of the suspension other than to simply note that I have purportedly violated the Regulations—which is no explanation at all for the specific suspension imposed. Where participation in one event sponsored by another promoter is met with a suspension of at least nine months, spanning two Tour seasons, the punishment is obviously disproportionate to any perceived offense and is revealed to be designed to thwart competition, not any lawful objective of the Tour.

Finally, Commissioner Monahan has publicly attacked me throughout this process in a deliberate effort to vilify me for simply wanting to play professional golf for another promoter when I am not playing on the Tour. The Commissioner appears to have taken it personally that I (and other golfers who have played in LIV Golf events) have not backed down in the face of his threats. He thus is in no position to fairly adjudge an appropriate sanction. The PGA Tour's nine-month suspension of my playing rights for playing in one competing event, while threatening even more punishments to come, is unjust and unfair.

I have earned the right to play in Tour events, including the upcoming FedEx Cup playoffs as the 53rd ranked golfer in the current rankings. The Tour's suspension is unfairly denying me the opportunity to make the BMW Championship and the Tour Championship and to try to earn the privileges and compensation that come with it. I have put myself in a position through dedicated play on the Tour to have good chance at achieving those privileges. I have earned the privilege of participating in the FedEx Cup by playing in Tour events and contributing my time, efforts, talents, and personal brand to the benefit of the Tour. And yet the Tour is now denying me opportunities to pursue my profession. And it is just as offensive and unlawful that the Tour, having unjustly banned me from participating in Tour events, now promises to punish me further for participating in any additional competing events on another tour.

You should note that a few days ago the Chief of the Sports Resolution panel in the United Kingdom addressed these very procedural and disciplinary infirmities in reviewing lesser penalties assessed by Commissioner Pelley of the DP World Tour against its member players, and enjoined the enforcement of those penalties based on the biased and unfair procedures employed by Mr. Pelley and the DP World Tour. Again, we request that the Tour's charges and penalties be assessed by an acceptable neutral and independent third-party tribunal.

**(h)    In the alternative, the sanction imposed by Commissioner Monahan is grossly disproportionate to the seriousness of the alleged breaches of the Regulations that the Tour contends I committed.**

Finally, and in the alternative, the sanction imposed by Commissioner Monahan was grossly disproportionate to the seriousness of the alleged breaches of the Regulations the Tour contends I committed.  Commissioner Monahan has imposed on me:  (a) a nine-month suspension from participation "in any PGA Tour-affiliated tournaments including PGA Tour, PGA Tour Champions, Korn Ferry Tour, PGA Tour Latinoamerica and PGA Tour Canada; (b) suspending me from playing at golf courses owned by the PGA Tour for nine months; and (c) indicated to that if I continue to participate in LIV Golf events even while banned from the PGA Tour, its owned tours and its courses that I am subject to sanctions "in addition to" the suspensions under (a) and (b).  This sanction operates as an effective lifetime ban from the Tour if I continue to participate in LIV Golf events.  Commissioner Monahan would rather deny me my ability to apply my trade to earn a living for nine months and dramatically affect my ability to qualify for the Tour in 2024 (at minimum) than see any golfers play golf with LIV Golf.  Commissioner Monahan unreasonably and unjustly punishes me to deter others and harm LIV Golf.  That is unlawful and unfair.  That is grossly disproportionate to the purported violation.  There is no correlation whatsoever between the fact that I played in a LIV Golf event and promoted it and the penalty the Tour has imposed on me.

In addition, the Tour informs me that I will now be subject to escalating suspensions in addition to the already unreasonably and penal initial sanctions for continuing to exercise my independent contractor rights.  The escalation was announced only after I had chosen to participate in the LIV Golf Portland event.  I have therefore been placed in a position in which I have to either sit on the sidelines for nine months without any income earning opportunities or face an effective career ban.  That is unfair and grossly disproportionate to my actions—all of which are consistent with my status as a professional tournament golfer.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

I have been a dedicated and passionate member of the PGA Tour, and I very much hope and intend to remain a member moving forward.  For the reasons I have outlined in this appeal, I respectfully request that the Tour rescind the sanctions and permit me—and my fellow members—to play professional golf with others without restriction and fear of punishment, as we have done for many years.  In the alternative, I request that an acceptable independent and neutral third-party tribunal be appointed to consider these matters.

Finally, if there is any action or remedy of any sort that the Tour seeks to take against me before the appeal process is concluded, I expect you to inform me and provide me with a full and fair opportunity to respond.

Respectfully,

Matthew Jones

# EXHIBIT 39



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

July 23, 2022

*Via Email*

Mr. Matt Jones
7253 East Gallego Lane
Scottsdale, AZ 85255

Dear Mr. Jones:

This letter is to notify you of the disciplinary action imposed by the Commissioner based upon the Notices of Disciplinary Inquiry dated June 25, 2022 ("June 10 Disciplinary Notice") and June 30, 2022 ("June 30 Disciplinary Notice") (collectively, the "Disciplinary Notices"). You have been afforded the full 14 day period to provide information in response to the June 25 Disciplinary Notice. However, we have received no response. We also have received no response to date to the June 30 Disciplinary Notice.

The violations identified in the Disciplinary Notice have been reviewed under the provisions of the *PGA TOUR Player Handbook & Tournament Regulations* ("Regulations"), to which you have agreed every year that you have been a member. Specifically, as reflected in the Disciplinary Notice, Article V, Section A.2. of the Regulations states that "[n]o conflicting event releases will be approved for tournaments held in North America." You participated in the LIV Golf Invitational Portland event that was held in North America from June 30 – July 2, 2022 (the "event") in clear violation of the Regulations.

In addition, PGA TOUR Article V, Section B.1. prohibits your participation in any live or recorded golf program without the prior written approval of the Commissioner. As the event was broadcast on streaming platforms, your participation constituted an additional violation of the Regulations.

You have been previously warned about your participation in events in violation of the Regulations and the sanctions that will be imposed through the Notice of Disciplinary Action dated June 30, 2022. However, you have continued to flagrantly violate the Regulations.

Therefore, upon due consideration of all the facts and circumstances, the Commissioner is imposing a Major Penalty and has extended your suspension from participation in any PGA TOUR-affiliated tournaments including PGA TOUR, PGA TOUR Champions, Korn Ferry Tour, PGA TOUR Latinoamérica, and PGA TOUR Canada for an additional minimum period of one (1) year from the prior suspension imposed for your prior violations of the Regulations related to the LIV GOLF London Invitational. Thus, you will be eligible to request reinstatement no earlier than March 31, 2024. Your privileges at Tournament Players Clubs are suspended during this additional suspension period as well. After March 31, 2024, you may seek in writing to have the suspension lifted.



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

While you are suspended from participation in TOUR-affiliated tournaments, you remain a Member of the PGA TOUR and, therefore, subject to the Regulations. Any additional violation of these Regulations may result in further disciplinary action that may be imposed in addition to the sanction outlined above.

In accordance with Article VII, Section E.2 of the Regulations, you may appeal these sanctions within 14 days of the date of this Notice of Disciplinary Action by written notice to the Commissioner.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT 40



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

July 27, 2022

*Via Email*

Mr. Matt Jones
7253 East Gallego Lane
Scottsdale, AZ 85255

Dear Mr. Jones:

We are in receipt of your letter dated July 13, 2022. This letter is to inform you that pursuant to Article VII, Section E-2 of the PGA TOUR Player Tournament Handbook & Regulations (the "Regulations"), the Commissioner has determined it is in the best interest of the PGA TOUR to transfer the appeal of the initial penalty he imposed to the Appeals Committee. Accordingly, contemporaneously with this letter, the Appeals Committee has been provided notice of your appeal.

In accordance with Section E-3 of Article VII of the Regulations, if you would like to submit any written evidence, documentation, affidavits, witness statements, legal memoranda, or other materials relevant to the appeal or any penalties imposed for consideration by the Appeals Committee, you must forward them to me within fourteen (14) days from the date of this letter. Any such materials along with your appeal letter as well as your response to the Notice of Disciplinary Inquiry will be forwarded to the Appeals Committee.

Please note that in accordance with the Regulations, the Appeals Committee, in its discretion, may request that you or another witness respond to questions that the Appeals Committee may have. The Regulations further provide that based upon the evidence before it, including any evidence previously submitted to the Commissioner, the Appeals Committee may affirm, modify (increase or decrease), or reverse the decision of the Commissioner.

Please let me know if you have any questions.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan

# EXHIBIT 41



**Andy Levinson**
*Senior Vice President*
*Tournament Administration*

July 29, 2022

*Via Email*

Mr. Matt Jones
7253 East Gallego Lane
Scottsdale, AZ 85255

Re:     Ongoing Violations of PGA TOUR Regulations

Dear Mr. Jones,

We have repeatedly issued Notices of Disciplinary Inquiry (the "Notices") informing you of your violations of the PGA TOUR Player Handbook & Tournament Regulations ("Regulations") and specifically Article V, Section A.2. regarding conflicting event releases and Article V, Section B.1.b regarding media releases. Since the Notices were issued, you have continued to violate the Regulations and have demonstrated an intent to continue to do so (the "Ongoing Violations").

Therefore, rather than continuing to issue individual notices of disciplinary inquiry for the Ongoing Violations, PGA TOUR will initiate the disciplinary process for the Ongoing Violations at such time PGA TOUR determines that the Ongoing Violations have ceased or otherwise determines that the disciplinary process should proceed with respect to any or all of the Ongoing Violations on or after the date of this letter. At such time, you will be afforded all rights in accordance with the disciplinary procedures set forth in the Regulations including the opportunity to respond and provide any mitigating information as well as avail yourself of any appeal rights.

Nothing herein shall be deemed a waiver of PGA TOUR's rights with respect to the Ongoing Violations, as all such rights are expressly reserved. Further, nothing herein shall be construed to be a waiver by you of any rights afforded to you under the Regulations.

Sincerely,

Andy Levinson

Cc: Commissioner Monahan