**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PHIL MICKELSON, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PGA TOUR, INC.,<br><br>　　　　Defendant. | Case No. 22-cv-04486-BLF<br><br>**ORDER DENYING PLAINTIFFS TALOR GOOCH, HUDSON SWAFFORD, AND MATT JONES'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF No. 2] |

　　　Three elite golfers who joined LIV Golf, accepting lucrative signing deals, now seek this Court's protection from tournament suspensions imposed by PGA TOUR under the terms of the TOUR regulations the golfers previously agreed to. That emergency request is DENIED.

　　　Before the Court is Plaintiffs Talor Gooch, Hudson Swafford, and Matt Jones's (collectively, "TRO Plaintiffs") motion for temporary restraining order in this antitrust and breach of contract case against Defendant PGA Tour, Inc. ("PGA TOUR"). TRO Plaintiffs are three of the eleven Plaintiffs, who are all professional golfers and PGA TOUR members. Plaintiffs are suing PGA TOUR for its conduct related to Plaintiffs' involvement with LIV Golf, a recently established competing golf league financed by Saudi Arabia's sovereign wealth fund that has held events in and outside of the United States. PGA TOUR allegedly used its regulations to exclude LIV Golf from the elite professional golf market and keep players from contracting with LIV Golf, including via 2-year suspensions from PGA TOUR events and threats of lifetime bans from the PGA TOUR. Plaintiffs assert claims under (1) Section 1 of the Sherman Act, 15 U.S.C. § 1, based on PGA TOUR's alleged group boycott alongside the DP Tour (the "European Tour") of LIV Golf and its players; (2) Section 2 of the Sherman Act, 15 U.S.C. § 2, based on PGA TOUR's unlawful maintenance of

a monopsony over elite professional golf; and (3) California's Cartwright Act, Cal. Bus. & Profs. C. §§ 16720(a), 16726. Plaintiffs further assert a breach of contract claim, arguing that PGA TOUR violated its own regulations by suspending Plaintiffs and declining to stay their suspensions pending their appeal through PGA TOUR's internal disciplinary process. TRO Plaintiffs seek an order enjoining PGA TOUR from continuing to suspend TRO Plaintiffs pending the appeal of their suspensions so that TRO Plaintiffs can play in the PGA TOUR's FedExCup Playoffs, which begin on August 11, 2022. *See* Motion, ECF No. 2. PGA TOUR opposes TRO Plaintiffs' motion. *See* Opposition, ECF No. 50. The Court held a hearing on TRO Plaintiffs' motion on August 9, 2022.

Based on the below reasoning, the Court hereby DENIES TRO Plaintiffs' motion WITHOUT PREJUDICE to filing a motion for preliminary injunction.

## I. BACKGROUND

### A. PGA TOUR, Plaintiffs, and LIV Golf

PGA TOUR is a Maryland 501(c)(6) non-profit corporation that sponsors an annual series of golf tournaments primarily in the United States from September to September each year called the PGA Tour. The PGA Tour is the largest professional golf tour in the world, and prior to LIV Golf's entry, it was the only tour for elite golfers in the United States. *See* Leitzinger Decl., ECF No. 2-13 ¶ 18. PGA TOUR golfers are independent contractors who pay their own expenses and are compensated through prize money. *See, e.g.*, Gooch Decl., ECF No. 2-11 ¶ 40. Plaintiffs are some of the world's top-ranked golfers and members of PGA TOUR. Mr. Gooch is currently ranked 20th in the 2022 FedExCup season standings; Mr. Jones is ranked 62nd; and Mr. Swafford is ranked 63rd. *See* Brass Decl., ECF No. 2-2, Ex. 40.

The PGA TOUR regular season culminates in the FedExCup Playoffs in August, for which the top 125 players qualify to compete. *See* Brass Decl., ECF No. 2-2, Ex. 39. The top 30 players in the FedExCup Playoffs qualify to play in the Majors—a series of four prestigious championship events (Masters, PGA Championship, U.S. Open, and The Open)—the following year. *See id.* The top 75 players in the FedExCup Playoffs qualify for the following years' PGA Tour Invitationals. *See id.* This year's FedExCup Playoffs begin on August 11, 2022. TRO Plaintiffs—along with four other Plaintiffs who do not seek a temporary restraining order (Jason Kokrak, Abraham Ancer,

Carlos Ortiz, and Pat Perez)—qualified for this year's FedExCup Playoffs. *See* Levinson Decl., ECF No. 50-4 ¶ 97.

LIV Golf was established with plans to set up a rival golf league to the PGA TOUR with 48 of the world's top golfers. *See* Khosla Decl., ECF No. 2-12 ¶ 8. LIV Golf touts that its events offer an "extremely fan-friendly" change from the established PGA TOUR model, including larger rewards or "purses;" a team-based tournament format; and no "cut," such that all golfers receive a monetary reward for participating in events. *See id.* ¶¶ 8, 11–17; Brass Decl., ECF No. 2-2, Exs. 41–42. In 2022, LIV Golf scheduled its first series of events—the LIV Golf Invitational Series, a series of eight events starting in June 2022. *See* Khosla Decl., ECF No. 2-12 ¶ 16. The first event was held in London from June 9–11, 2022; the second was held in Portland, Oregon from June 30 to July 2, 2022; and the third was held in Bedminster, New Jersey from July 29–31, 2022. *See id.* At present, golfers do not earn Official World Golf Ranking ("OWGR") points—which are used to qualify in a variety of elite golf events—by participating in LIV Golf events, although this may change in the future. *See, e.g.*, Leitzinger Decl., ECF No. 2-13 ¶ 69.

### B. PGA TOUR Regulations

PGA TOUR golfers are required to comply with the TOUR's regulations (the "PGA TOUR Regulations"). *See* PGA TOUR Regulations, ECF No. 1-1. The "Media Rights Regulation"—Section V.B.1.b—prohibits participating in any live or recorded golf program not sponsored by PGA TOUR without the prior written approval of the Commissioner. *See id.* § V.B.1.b. The "Conflicting Events Regulation"—Section V.A.2–3—prohibits PGA TOUR members from (1) playing in any other golf tournament in North America during any week when PGA TOUR sponsors or co-sponsors an event and (2) playing in any events *outside of* North America during any week when PGA TOUR sponsors or co-sponsors an event unless the PGA TOUR Commissioner grants a release—three of which a player can request per year. *See id.* §§ V.A.2–3. Further, the PGA TOUR Regulations prohibit "conduct unbecoming a professional golfer." *See id.* § VII.C.

For PGA TOUR members who violate the Regulations, the Regulations outline a disciplinary process. *See id.* § VII. The Regulations define three classes of penalties—minor, intermediate, and major—and indicate that any member subject to intermediate or major penalties

shall first be notified in writing. *See id.* § VII.A. Members are required to submit to the Commissioner facts or evidence of mitigating circumstances within 14 days of the notification, and the Commissioner will notify the member of the imposition of any penalty within an additional 14 days. *See id.* Upon imposition of any penalty, a member can appeal to the Commissioner within 14 days, and the Commissioner may transfer the appeal to the Appeals Committee if he "deems it in the best interest of PGA TOUR." *See id.* § VII.E. The Regulations provide that "[a]n appeal shall operate to stay the effective date of any penalty, except suspension from a tournament then in progress or scheduled for the calendar week in which the alleged violation occurred, until after the final decision on the appeal." *See id.* § VII.E.2. The Regulations further provide that a member can be placed on probation for an infraction, such that if the member violates any rule during the probation period, "irrespective of whether that violation carries with it a penalty designated minor, intermediate or major . . . the Commissioner may immediately suspend the member's playing privileges." *See id.* § VII.C.

### C. TRO Plaintiffs' Alleged Infractions and Disciplinary Process

While remaining PGA TOUR members, TRO Plaintiffs signed contracts to join LIV Golf's newly established league in 2022. *See* Peters Decl., ECF No. 50-1, Exs. 2–4. Before participating in the first LIV Golf Invitational Series in London, TRO Plaintiffs Gooch and Jones requested a release under the Conflicting Events Regulation, but the requests were denied on May 10, 2022. *See* Gooch Decl., ECF No. 2-11 ¶ 19; Jones Decl., ECF No. 2-10 ¶ 19. TRO Plaintiffs nonetheless participated in the first three events of the LIV Golf Invitational Series. *See* Peters Decl., ECF No. 50-1, Exs. 2–4; Gooch Decl., ECF No. 2-11 ¶¶ 29–30; Jones Decl., ECF No. 2-10 ¶¶ 28, 31; Swafford Decl., ECF No. 2–9 ¶¶ 28, 31.

On June 1, 2022, PGA TOUR sent TRO Plaintiffs a letter indicating that it considered them in violation of the Conflicting Events Regulation based on their upcoming participation in the first LIV Golf Invitational Series event. *See, e.g.*, Jones Decl., ECF No. 2-10, Ex. B. On June 1 and 2, 2022, Mr. Gooch communicated with a Tour representative who told him that if a player chooses to play in LIV Golf events, "he should not expect to be welcomed back." *See* Gooch Decl., ECF No. 2-11, Ex. C. On June 3, 2022, PGA TOUR sent TRO Plaintiffs a letter indicating that they were

4

1   "being placed on probation until further notice" under Article VII, Section C of the PGA TOUR
2   Regulations based on TRO Plaintiffs' violation of the Conflicting Events Regulation. *See, e.g.*,
3   Swafford Decl., ECF No. 2-9, Ex. A.  On June 9, 2022, shortly after TRO Plaintiffs teed off in the
4   first LIV Golf Invitational Series event in London, PGA TOUR notified TRO Plaintiffs that they
5   had violated the Media Rights Regulation while on probation and were suspended immediately from
6   playing in PGA TOUR events "until further notice" under Article VII, Section C of the PGA TOUR
7   Regulations. *See, e.g.*, Gooch Decl., ECF No. 2-11 ¶ 29.  At the start of the second LIV Golf
8   Invitational Series event in Portland, Oregon, PGA TOUR sent TRO Plaintiffs another disciplinary
9   notice regarding their participation in the Portland event. *See, e.g.*, Gooch Decl., ECF No. 2-11,
10  Ex. I.
11           On June 30, 2022, PGA TOUR notified TRO Plaintiffs that based on their participation in
12  the first LIV Golf Invitational Series event, the PGA TOUR would suspend TRO Plaintiffs from
13  playing in PGA TOUR events through March 31, 2023. *See, e.g.*, Gooch Decl., ECF No. 2-11,
14  Ex. G.  On July 13, 2022, TRO Plaintiffs appealed the June 30, 2022 disciplinary action, indicating
15  that their suspensions should be stayed pending appeal under Section VII.E.2 of the PGA TOUR
16  Regulations. *See, e.g.*, Gooch Decl., ECF No. 2-11, Ex. J.  On July 23, 2022, PGA TOUR notified
17  TRO Plaintiffs that they were suspended through March 31, 2024 based on their participation in the
18  second LIV Golf Invitational Series event. *See, e.g.*, Gooch Decl., ECF No. 2-11, Ex. B.  On July
19  27, 2022, PGA TOUR Commissioner Jay Monahan notified TRO Plaintiffs that he was referring
20  TRO Plaintiffs' appeals to the Appeals Committee. *See* Gooch Decl., ECF No. 2-11 ¶ 35.  On
21  August 1, 2022, Mr. Gooch asked a PGA TOUR representative if his suspension would be stayed
22  pending his appeal. *See* Gooch Decl., ECF No. 2-11, Ex. L.  On August 2, 2022, PGA TOUR and
23  its counsel notified Mr. Gooch that his July 13, 2022 appeal does not effectuate a stay of his
24  suspension under Article VII, Section C of the PGA TOUR Regulations, because any "interim
25  suspension under Section C is separate and distinct from any 'penalty' that may be imposed by the
26  Commissioner," and only such penalties are stayed pending appeal. *See* Gooch Decl.,
27  ECF No. 2-11, Exs. M–N.
28

### D. Filing of Action and Motion for Temporary Restraining Order

The above-captioned action and TRO Plaintiffs' motion was filed on August 3, 2022. *See* ECF Nos. 1–2. TRO Plaintiffs seek an order enjoining PGA TOUR from prohibiting them from playing in the FedExCup Playoffs starting August 11, 2022. *See* Proposed Order, ECF No. 56 ¶ 2.

First, TRO Plaintiffs argue that the Court should grant the TRO based on their breach of contract claim. TRO Plaintiffs allege that PGA TOUR is in breach of Article VII, Section E of the PGA TOUR Regulations by failing to stay their suspensions pending appeal. *See* Motion, ECF No. 2 at 11–12.

Second, TRO Plaintiffs argue that the Court should grant the TRO based on their antitrust claims. Plaintiffs' Sherman Act § 2 claim for unlawful maintenance of monopoly is based on PGA TOUR's alleged efforts to maintain its position as a monopsonist—a buy-side monopolist—for the services of professional golfers for elite golf events. Relying on a declaration from their expert Jeffrey Leitzinger, PhD, *see* ECF No. 2-13, TRO Plaintiffs argue that PGA TOUR's monopsony power is supported by evidence that PGA TOUR has increased player pay in response to LIV Golf's entry, indicating that it has been paying PGA TOUR members sub-competitively. *See* Motion, ECF No. 2 at 12–14 (citing Leitzinger Decl., ECF No. 2-13 ¶¶ 54–61). TRO Plaintiffs further argue that PGA TOUR has unlawfully maintained its monopsony through its Media Rights and Conflicting Events Regulations, which limit golfer output and threaten the viability of competitors like LIV Golf by restricting the availability of elite golfer talent. *See id.* at 14–17. Additionally, TRO Plaintiffs argue that the unlawfulness of these provisions is evidenced by how PGA TOUR has arbitrarily denied releases for Tour members to play in LIV Golf events and has otherwise used penalties and threats of penalties based on these provisions as a cudgel to dissuade PGA TOUR member attrition to LIV Golf. *See id.* at 15–16. TRO Plaintiffs argue that there is no procompetitive justification for PGA TOUR's conduct, including because such conduct degrades PGA TOUR's product by forcing golfers to sit on the sidelines. *See id.* at 17–19.

Plaintiffs' Sherman Act § 1 claim alleges that PGA TOUR has entered a "strategic alliance" with the European Tour to refuse to deal with LIV Golf and its players. *See* Motion, ECF No. 2 at 19–20 (citing Brass Decl., ECF No. 2-2, Ex. 22). TRO Plaintiffs assert that such conduct is a *per*

*se* violation of the Sherman Act. *See id.* At the hearing on August 9, 2022, TRO Plaintiffs also argued that PGA TOUR's group boycott conduct constituted a rule of reason violation, as briefed in a footnote in TRO Plaintiffs' motion. *See* Motion, ECF No. 2 at 19 n.7.

PGA TOUR opposes TRO Plaintiffs' motion, arguing that TRO Plaintiffs have not established any of the elements necessary to meet the standard for a temporary restraining order. *See* Opposition, ECF No. 50.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking emergency injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Irreparable Harm

The Court first considers whether TRO Plaintiffs have adequately shown irreparable harm. *Winter*, 555 U.S. at 20. TRO Plaintiffs argue that they will suffer irreparable harm based on their suspension from participating in the FedExCup Playoffs, because the Playoffs are professional golf's "Super Bowl." If TRO Plaintiffs are not allowed to participate in the FedExCup Playoffs, then they will lose the opportunity to qualify for the 2023 Majors and other premier tournaments;

7

1  lose opportunities to accumulate OWGR points; lose income earning opportunities; and suffer losses
2  to goodwill, reputation, and brand.  *See* Gooch Decl., ECF No. 2-11 ¶¶ 42–46; Swafford Decl.,
3  ECF No. 2-9 ¶¶ 41–46; Jones Decl., ECF No. 2-10 ¶¶ 41–46.  At the August 9, 2022 hearing,
4  TRO Plaintiffs further emphasized that the FedExCup Playoffs come with particularly significant
5  income opportunities, including up to around $20 million in individual earnings.  TRO Plaintiffs
6  cite to cases in which courts have found irreparable harm where a sports player was prevented from
7  playing professionally or playing as he or she saw fit.  *See Jackson v. NFL*, 802 F.Supp. 226, 231–35
8  (D. Minn. 1992); *O.M. by & through Moultrie v. Nat'l Women's Soccer League, LLC*,
9  544 F.Supp.3d 1063, 1077 (D. Or. 2021); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir.
10  1991); *Denver Rockets v. All-Pro Mgmt., Inc.*, 325 F.Supp. 1049, 1057 (C.D. Cal. 1971); *Linseman*
11  *v. World Hockey Ass'n*, 439 F.Supp. 1315, 1319–20 (D. Conn. 1977).  Additionally, at the
12  August 9, 2022 hearing, TRO Plaintiffs argued that they did not delay seeking relief, because
13  August 2, 2022—the day before TRO Plaintiffs filed their motion—was the first time PGA TOUR
14  asserted that it was not staying TRO Plaintiffs' suspensions pending appeal.
15  　　　　In response, PGA TOUR argues that TRO Plaintiffs' delay in seeking relief undermines their
16  claim of irreparable harm.  *See* Opposition, ECF No. 50 at 12.  PGA TOUR argues that TRO
17  Plaintiffs failed to seek a TRO until two months after they were notified of their suspensions.  *See*
18  *id.*  Further, PGA TOUR argues that TRO Plaintiffs' asserted irreparable harm boils down to either
19  easily calculable monetary injury or speculative reputational harm—neither of which is sufficient
20  to show irreparable harm.  *See id.* at 12–14.  PGA TOUR argues that tournaments and points are
21  "merely means to earn financial and reputational rewards."  *See id.* at 12.  PGA TOUR asserts that
22  courts regularly award compensation for lost income, including projected future income.  *See id.*
23  at 14.  As evidence that the cost of TRO Plaintiffs' lost opportunities are calculable, PGA TOUR
24  points out that TRO Plaintiffs' expert opines that golfers have calculated those costs in determining
25  the size of upfront payments necessary to woo them to LIV Golf.  *See* Leitzinger Decl.,
26  ECF No. 2-13 ¶ 9.  As to reputational harm, PGA TOUR argues that TRO Plaintiffs have provided
27  only boilerplate claims of harm, which is insufficient.  *See* Opposition, ECF No. 50 at 15.
28  Additionally, PGA TOUR argues that the fact that only three of seven Plaintiffs that qualify for the

1 FedExCup Playoffs are moving for a temporary restraining order suggests that any injury to TRO
2 Plaintiffs is not irreparable. *See id.* at 15–16. PGA TOUR supports its contention that TRO
3 Plaintiffs have failed to show irreparable harm with cases in which courts have found a lack of
4 irreparable harm where a professional sports player is barred from playing in one professional sports
5 league but is free to play professionally in a separate league. *See Heldman v. United States Lawn*
6 *Tennis Ass'n*, 354 F.Supp. 1241, 1251 (S.D.N.Y. 1973); *Elite Rodeo Ass'n v. Prof. Rodeo Cowboys*
7 *Ass'n, Inc.*, 159 F.Supp.3d 738, 745 (N.D. Tex. 2016).

As to the timeliness of TRO Plaintiffs' motion, the Court agrees with TRO Plaintiffs. Although the claim would have been ripe upon receipt of the initial suspension on June 9, 2022, TRO Plaintiffs have demonstrated the reasonableness of their decision to withhold filing this motion until PGA TOUR confirmed that it would not grant a stay of the suspensions on August 2, 2022. Since TRO Plaintiffs filed their motion on August 3, 2022—the day after the relevant date—the Court finds that TRO Plaintiffs timely sought relief.

As to whether TRO Plaintiffs have adequately shown irreparable harm, the Court agrees with PGA TOUR. TRO Plaintiffs are not barred from playing professional golf against the world's top players,[1] from earning lucrative prizes in some of golf's highest-profile events, from earning sponsorships, or from building a reputation, brand, and fan following in elite golf. *See, e.g.*, Khosla Decl., ECF No. 2-12 ¶¶ 11–13. The only thing TRO Plaintiffs are barred from is pursuing these goals *at PGA TOUR events*. Considering the major playing and earning opportunities still open to TRO Plaintiffs as LIV Golf players, the Court finds that the suspension from PGA TOUR events is not enough to show irreparable harm. *See, e.g.*, *Heldman*, 354 F.Supp. at 1251 (no irreparable harm to tennis player given that "other tournament opportunities may be lost to her" where she "saw a valuable opportunity in [competitor] plaintiff's contract and opted for it; she has available to her the chance to win large sums of prize money and with that the subsequent opportunities of endorsements that accrue to athletic stars"); *Elite Rodeo*, 159 F.Supp.3d at 746 (no irreparable harm where plaintiffs "are unable to compete in the PRCA because they own and are competing professionally

---

[1] PGA presented evidence at the August 9, 2022 hearing that of the top ten PGA TOUR players in 2021, half of them are now LIV Golf players.

in the competing ERA, arguably at a higher level of competition, and which they claim will lead to increased exposure to fans, improved ability to attract sponsors, better health, and longer careers").

The Court recognizes that if TRO Plaintiffs are not allowed to play in the 2022 FedExCup Playoffs, TRO Plaintiffs will lose the opportunity to qualify for next year's Majors and several other high-profile tournaments. The Court accepts that the FedExCup Playoffs are a major tournament of the year, and that they serve as a gateway to the Majors, future sponsorships, and career status. Further, the Court acknowledges that TRO Plaintiffs each had a reasonable opportunity to make it into the top 30 or top 75 golfers in the 2022 FedExCup Playoffs. Nonetheless, the Court finds that these facts are not sufficient to show irreparable harm. TRO Plaintiffs each knew, going into negotiations with LIV Golf, that they were virtually certain to be cut off from TOUR play. TRO Plaintiffs' own expert indicated that PGA TOUR members that have "already elected to participate in LIV Golf events" required "large upfront payments" at least in part because their calculus included the "loss of opportunities to earn ranking points [and] to earn entry into the Majors." *See* Leitzinger Decl., ECF No. 2-13 ¶ 9. Based on this evidence, TRO Plaintiffs have not even shown that they have been harmed—let alone irreparably. It is clear that the LIV Golf contracts negotiated by the TRO Plaintiffs and consummated between the parties were based on the players' calculation of what they would be leaving behind and the amount of money they would need to compensate for those losses. TRO Plaintiffs have signed contracts that richly reward them for their talent and compensate for lost opportunity through TOUR play. In fact, the evidence shows almost without a doubt that they will be earning significantly more money with LIV Golf than they could reasonably have expected to make through TOUR play over the same time period.

Further, TRO Plaintiffs' contention that they will irreparably lose future sponsorship opportunities and career status is undermined by TRO Plaintiffs' evidence that LIV Golf offers a refreshing new "extremely fan-friendly" business model that will lead to "an improved broadcast output and entertainment experience" compared to the staid old golf world built by PGA TOUR. *See* Khosla Decl., ECF No. 2-12 ¶¶ 11–13; *see also* Complaint, ECF No. 1 ¶¶ 49–57 ("Elite Professional Golf Has Stagnated Under the PGA Tour's Monopoly"). If LIV Golf is elite golf's future, what do TRO Plaintiffs care about the dust-collecting trophies of a bygone era?

1    The Court further appreciates the ample case law TRO Plaintiffs have presented where courts have found irreparable harm based on professional sports players being barred from play. However, the Court finds persuasive Judge Lynn's reasoning in the *Elite Rodeo* case that "[i]n cases recognizing lost playing time alone as constituting irreparable harm, athletes were entirely locked out of their sports"—a fate that has not befallen TRO Plaintiffs given their continued involvement with LIV Golf. *See* 159 F.Supp.3d at 745; *O.M., by and through Moultrie v. Nat'l Women's Soccer League, LLC*, 541 F.Supp.3d 1171, 1184 (D. Or. 2021) ("[T]here are no substitutes to actual professional competition to help [plaintiff] realize her full potential."); *Linseman*, 439 F.Supp. at 1319 ("The nature of [hockey player's] occupation is it requires constant practice against the very best competition possible in order to finely hone his hockey skills."); *Denver Rockets*, 325 F.Supp. at 1057 ("If Haywood is unable to continue to play professional basketball for Seattle, he will suffer irreparable injury in that a substantial part of his playing career will have been dissipated, his physical condition, skills and coordination will deteriorate from lack of highlevel [sic] competition[.]"). TRO Plaintiffs' other cases involve harms and issues not present in the above-captioned case. *See Gilder*, 936 F.2d at 423 (irreparable harm where a PGA TOUR ban on clubs will have an "unquantifiable adverse impact on [golfers'] earnings, their ability to maintain their eligibility for the tour, and for endorsement contracts"); *Jackson*, 802 F.Supp. at 231 (irreparable harm given players' "inability to play for teams that may better utilize their skills, and thus maximize their value, [and] their inability to switch to teams that would allow them to start or [] to play on natural grass (which may prolong a player's career), may be impossible to quantify in monetary terms"); *see also Elite Rodeo*, 159 F.Supp.3d at 746 n.36 ("Such demonstrated harms [as were at issue in *Jackson*] were not proven here."). And to the extent that the case law supports irreparable harm based on a professional sports player's lost opportunity to become a "superstar," the Court finds that there is evidence to suggest that superstar status is still available—potentially even *more* available—to TRO Plaintiffs in LIV Golf's "extremely fan-friendly" league. *See* Khosla Decl., ECF No. 2-12 ¶¶ 11–13.

Based on the above reasoning, the Court finds that TRO Plaintiffs have failed to meet their burden of showing irreparable harm.

11

### B. Likelihood of Success on the Merits

Since the Court finds that TRO Plaintiffs have failed to show irreparable harm, the Court does not need to reach the issue of whether TRO Plaintiffs have shown a likelihood of success on the merits. Nonetheless, as it did at the August 9, 2022 hearing, the Court will provide a brief summary of its impressions of the merits of TRO Plaintiffs' claims at this stage.

As a threshold matter, the Court determines whether TRO Plaintiffs are seeking a mandatory or a prohibitory injunction, since this impacts the applicable standard for satisfying the likelihood of success on the merits requirement. *See, e.g.*, *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Because [plaintiff] seeks a mandatory injunction, she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed.") (emphasis in original). A mandatory injunction goes beyond simply maintaining the status quo, *i.e.* "the state of affairs 'at the time the complaint was filed.'" *Animal Legal Def. Fund v. U.S.D.A.*, No. 17–cv–00949–WHO, 2017 WL 2352009, at *3 (N.D. Cal. May 31, 2017); *see also N.D. ex rel. Parents v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n. 6 (9th Cir.2010) ("The status quo means the last, uncontested status which preceded the pending controversy."). Here, TRO Plaintiffs seek to "enjoin[] [PGA TOUR] from prohibiting [TRO Plaintiffs] from playing in the FedExCup Playoffs." *See* Proposed Order, ECF No. 56 ¶ 2. At the time TRO Plaintiffs filed their Complaint, they had been suspended for over one month from playing in PGA TOUR events and their disciplinary action was pending appeal. Whether they would be granted a stay was unclear. Accordingly, the relief TRO Plaintiffs are seeking is a mandatory—not a prohibitory—injunction. Therefore, TRO Plaintiffs would be required to show that the law and facts "clearly favor" their success on the merits—not simply that they are likely to succeed. *See Garcia*, 786 F.3d at 740.

#### 1. Breach of Contract

Regarding their breach of contract claim, TRO Plaintiffs argue that the PGA TOUR Regulations unambiguously provide that "any penalty" is stayed pending appeal. *See* PGA TOUR Regulations, ECF No. 1-1 § VII.E.2. Since PGA TOUR has not stayed TRO Plaintiffs' suspension pending their appeals, TRO Plaintiffs argue that PGA TOUR has breached its regulations. In response, PGA TOUR argues that the language of Article VII, Section C of the PGA TOUR

1   Regulations, which allows the Commissioner to "immediately suspend" a member's playing
2   privileges upon a probation violation, clearly indicates that such a suspension is "irrespective of
3   whether that violation carries with it a penalty designated minor, intermediate or major." *See id.*
4   § VII.C.  Since the Regulations provide appeals only for minor, intermediate, and major penalties,
5   PGA TOUR argues that the stay-of-appeal right does not pertain to an immediate suspension based
6   on a probation violation.  Further, PGA TOUR argues that courts must defer to the judgment of
7   private organizations on how their regulations and disciplinary procedures for their members should
8   operate.  *See* Opposition, ECF No. 50 at 23 (citing *Scheire v. Int'l Show Car Ass'n (ISCA)*,
9   717 F.2d 464, 465 (9th Cir. 1983)).

10  The Court agrees with PGA TOUR as to TRO Plaintiffs' breach of contract claim.  Giving
11  proper deference to the PGA TOUR's interpretation and application of its disciplinary rules, the
12  Court finds that PGA TOUR's interpretation of the Commissioner's authority under Article VII,
13  Section C of the PGA TOUR Regulations is not unreasonable.  Accordingly, the Court finds that at
14  this early stage of the case TRO Plaintiffs have failed to make the necessary showing that the facts
15  clearly favor their success on the merits of their breach of contract claim.

### 2. Antitrust Claims

17  TRO Plaintiffs argue that the merits of their two federal antitrust claims—under Sections 1
18  and 2 of the Sherman Act—are sufficient to warrant a temporary restraining order.  *See* Motion,
19  ECF No. 2 at 11–22.  TRO Plaintiffs claim that the disciplinary actions and the PGA TOUR
20  Regulations they are based on violate the Sherman Act.  PGA TOUR raises significant deficiencies
21  as to each claim at this stage.  *See* Opposition, ECF No. 50 at 17–25.

22  Regarding the Section 1 claim that PGA TOUR and the European Tour engaged in a group
23  boycott, TRO Plaintiffs argue that such a group boycott is a *per se* violation of the Sherman Act.
24  But PGA TOUR accurately points out that group boycotts are only considered to be a *per se*
25  violation when they involve horizontal competitors—which TRO Plaintiffs' own expert opines PGA
26  TOUR and the European Tour are not.  *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998);
27  Leitzinger Decl., ECF No. 2-13 ¶¶ 42–46.  While a group boycott may still be considered a violation
28  of the Sherman Act under the rule of reason, TRO Plaintiffs' rule of reason analysis is limited to a

single footnote and not alleged in the Complaint. *See* Motion, ECF No. 2 at 19 n.7. Accordingly, the Court finds TRO Plaintiffs' showing as to the Sherman Act Section 1 claim to be insufficient to meet their burden of showing that the facts clearly favor their success on the merits at this stage.

Regarding the Section 2 claim that PGA TOUR engaged in unlawful maintenance of a monopoly, PGA TOUR argues that TRO Plaintiffs' evidence of LIV Golf's early success in entering the elite professional golf market undermines TRO Plaintiffs' contention that PGA TOUR has the power to exclude competitors from the market. *See* Opposition, ECF No. 50 at 18–19. On this claim, as well as the Section 1 claim, the Court acknowledges that TRO Plaintiffs raise significant antitrust issues that are facially appealing. But PGA TOUR has responded with preliminary evidence and argument potentially exposing fundamental flaws in Plaintiffs' claims. These complex issues are best resolved on a more developed record.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that TRO Plaintiffs' motion is DENIED WITHOUT PREJUDICE to filing a motion for preliminary injunction.

Dated: August 10, 2022

_____
BETH LABSON FREEMAN
United States District Judge