1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                SAN JOSE DIVISION.

4

   MICKELSON ET AL,               )   CV-22-4486-BLF

5                          )

              PLAINTIFF,     )   SAN JOSE, CALIFORNIA

6                          )

         VS.                 )   AUGUST 18, 2022

7                          )

   PGA TOUR, INC.,             )   PAGES 1-25

8                          )

            DEFENDANT.     )

9                          )

   _____ )

10              TRANSCRIPT OF PROCEEDINGS

11      BEFORE THE HONORABLE BETH LABSON FREEMAN

             UNITED STATES DISTRICT JUDGE

12              A P P E A R A N C E S

13

14      FOR THE PLAINTIFF:    **BY: ROBERT C. WALTERS**

                         GIBSON DUNN

15                     2100 MCKINNEY, STE. 1100

                    DALLAS, TX 75201

16

17      FOR THE DEFENDANT:    **BY:  ELLIOT PETERS**

                         **SOPHIA HOOD**

18                        **ERIC MACMICHAEL**

                       **NICHOLAS GOLDBERG**

19                     KEKER, VAN NEST & PETERS LLP

                    633 BATTERY STREET

20                     SAN FRANCISCO, CA 94111

21

22        APPEARANCES CONTINUED ON THE NEXT PAGE

23    OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR

                         CERTIFICATE NUMBER 13185

24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY

        TRANSCRIPT PRODUCED WITH COMPUTER

```
 1          APPEARANCES CONTINUED:

 2

 3      FOR THE PLAINTIFF:        BY:  WILLIAM ROPPOLO
                                  BAKER MCKENZIE
 4                                1111 BRICKELL AVE., 1700
                                  MIAMI, FL 33131
 5

 6      FOR THE PLAINTIFF:        BY:  DOMINIC SURPRENANT
                                  QUINN EMANUEL URQUHART & SULLIVAN
 7                                865 S. FIGUEROA STREET
                                  10TH FLOOR
 8                                LOS ANGELES, CA 90017

 9

10      FOR THE PLAINTIFF:        BY:  RACHEL S. BRASS
                                  GIBSON, DUNN & CRUTCHER LLP
                                  555 MISSION STREET
11                                SAN FRANCISCO, CA 94105

12

13      FOR THE DEFENDANT:        BY:  KAREN HOFFMAN LENT
                                  SKADDEN ARPS
                                  4 TIMES SQUARE
14                                NEW YORK, NY 10036

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SAN JOSE, CALIFORNIA                    AUGUST 18, 2022

 2                        P R O C E E D I N G S

 3           (COURT CONVENED AT 11:30 A.M.)

 4               THE CLERK:  I'M GOING TO CALL THE MICKELSON VERSUS

 5        PGA TOUR MATTER.

 6           IF COUNSEL WILL PLEASE RAISE YOUR HANDS.  AND IF YOU WOULD

 7        PLEASE ACCEPT THE INVITATIONS TO JOIN.  AND IF YOU WOULD ENGAGE

 8        YOUR VIDEOS, PLEASE.

 9               THE COURT:  GOOD MORNING, EVERYONE.  THANK YOU FOR

10        JOINING ON ZOOM.  THIS IS PROBABLY A LITTLE EASIER THAN COMING

11        TO MY COURTROOM.

12           WE ARE GOING TO CALL THE CASE AND GET ALL OF YOUR

13        APPEARANCES ON THE RECORD.

14               THE CLERK:  CALLING CASE 22-486.  MICKELSON, ET AL.

15        VERSUS PGA TOUR.

16           COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

17        IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANT.

18               MR. ROPPOLO:  YOUR HONOR, WILLIAM ROPPOLO ON BEHALF

19        OF PHIL MICKELSON.

20               THE COURT:  GOOD MORNING.

21               MR. ROPPOLO:  GOOD MORNING.

22               THE COURT:  MR. HITZ, YOU ARE ON MUTE.

23               MR. WALTERS:  ROB WALTERS, GIBSON, DUNN & CRUTCHER,

24        ON BEHALF OF PLAINTIFFS.

25               THE COURT:  OH, YOU'VE GOT THE WRONG NAME ON YOUR --
```

```
 1        THANK YOU.  GOOD MORNING, MR. WALTER.

 2              MR. SURPRENANT:  GOOD MORNING, YOUR HONOR.

 3        DOMINIC SURPRENANT FROM QUINN EMANUEL FOR THE PLAINTIFFS.

 4              MS. BRASS:  AND GOOD MORNING, YOUR HONOR.

 5        RACHEL BRASS, ALSO GIBSON, DUNN & CRUTCHER, FOR THE

 6    PLAINTIFFS.

 7              THE COURT:  GOOD MORNING.

 8              MR. PETERS:  GOOD MORNING, YOUR HONOR.

 9        ELLIOT PETERS, ALONG WITH MY PARTNERS, NICK GOLDBERG,

10    SOPHIA HOOD AND ERIC MACMICHAEL, FOR PGA TOUR, THE DEFENDANT.

11        AND I ALSO SEE THAT OUR COLLEAGUE, KAREN LENT, FROM

12    SKADDEN ARPS IN NEW YORK IS ON THE CALL ALSO.

13              THE COURT:  GOOD MORNING, MS. LENT.

14        ALL RIGHT.  WHEN WE CONCLUDED LAST WEEK, I HAD SUGGESTED A

15    FAIRLY AMBITIOUS TRIAL SCHEDULE, AND I WANTED TO TOUCH BASE

16    WITH YOU RIGHT AWAY TO SEE IF THAT SCHEDULE IS AT ALL

17    INTERESTING TO YOU OR NOT.  BECAUSE IF IT IS, OF COURSE, AS

18    MR. WALTERS SUGGESTED LAST WEEK, YOU NEED TO JUMP OUT OF THE

19    GATE RIGHT AWAY ON THE CASE.

20        SO MR. WALTERS, YOUR VIEW ABOUT THAT SCHEDULE?

21              MR. WALTERS:  YES, YOUR HONOR.  THANK YOU.

22        WE THINK IT IS IMMINENTLY DOABLE, YOUR HONOR, TO REACH

23    THAT SCHEDULE.  IN FACT, WE THINK IT'S IMPERATIVE THAT WE

24    ADHERE TO THAT SCHEDULE.

25        TWO OBSERVATIONS.  THE FIRST IS THERE ARE ANY NUMBER OF
```

1   MATTERS, MANY OF WHICH THESE LAWYERS ON THIS CALL HAVE BEEN

2   INVOLVED IN, THAT ARE SUBSTANTIALLY LARGER AND BROADER

3   ANTITRUST CASES THAT HAVE BEEN TRIED TO CONCLUSION WELL WITHIN

4   A YEAR, THE AT&T CASE, OBVIOUSLY THE EPIC APPLE CASE, AND

5   OTHERS.

6        MORE TO THE POINT, YOUR HONOR, YOUR HONOR MADE THE

7   OBSERVATION THAT, INDEED, THIS IS AN IMPORTANT CASE, AND IT IS

8   A VERY IMPORTANT CASE, BUT IT'S PARTICULARLY IMPORTANT THAT IT

9   BE TRIED ON AN EXPEDITED OR ON A REASONABLY RAPID PACE.

10        AND THE REASON IS THIS:  THE CORE OF THIS CASE IS THAT THE

11   PGA, AS A MONOPOLIST, HAS CONSTRICTED THE SUPPLY OF THE KEY

12   ELEMENT TO A COMPETITOR'S SUCCESS, AND THAT IS BOTH THE TALENT

13   AND THEN ALSO THE MEDIA RIGHTS ACCESS TO THE MEDIA MARKET.

14        AND I WOULD SAY, YOUR HONOR, THIS HAS BEEN A LONG AND

15   STORIED TRADITION IN THE SPORTS INDUSTRY IN NORTH AMERICA,

16   EVERY MONOPOLIST IN SPORTS HAS ATTEMPTED TO RESTRICT THESE

17   SUPPLIES AGAINST COMPETITORS, AND ULTIMATELY THEY ARE

18   CHALLENGED AND THE ANTITRUST LAWS HAVE BEEN UNSUCCESSFUL.

19        THE REASON IT'S SO IMPORTANT TO DO THIS CASE ON THAT KIND

20   OF TIME TABLE IS TWOFOLD.  FIRST OF ALL, FROM THE PLAYER'S

21   PERSPECTIVE, IT REALLY MATTERS.  WHAT THE PLAYERS ARE SAYING

22   IS, LOOK, WE ARE INDEPENDENT CONTRACTORS, WE WANT TO JUST

23   ACHIEVE OUR HIGHEST AND BEST USE IN THE MARKETPLACE.  WE --

24   THIS SHOULD OPEN UP THE ERA OF FREE AGENCY IN GOLF AND WE OUGHT

25   TO BE ABLE TO MAXIMIZE OUR VALUES OUT THERE.

1    WHAT THAT REQUIRES IS A PERMANENT INJUNCTION KNOCKING DOWN

2    THESE ANTICOMPETITIVE RESTRICTIONS.  AND THE LONGER THAT TAKES,

3    THE GREATER COMPROMISE AND THE GREATER EFFECT THAT HAS ON

4    GOLFERS WHO HAVE, OBVIOUSLY, A LIMITED SHELF LIFE.  IF IT TOOK

5    ANOTHER TWO OR THREE YEARS, THEN THEY WOULDN'T HAVE THEIR

6    ABILITY TO MAXIMIZE THEIR VALUE AS AN INDEPENDENT CONTRACTOR.

7    SO THAT'S A REAL SPECIFIC, PALPABLE NEED FOR US TO HAVE A TRIAL

8    THAT COMES QUICKLY.

9    THE SECOND IS EQUALLY IMPORTANT, AND THAT IS THIS, THIS

10   INDUSTRY, ELITE PROFESSIONAL GOLF IN NORTH AMERICA, HAS HAD NO

11   COMPETITION FOR 50 YEARS, SINCE REALLY IT'S INCIPIENCY.  THIS

12   IS THE FIRST REALLY, TRULY FORMIDABLE COMPETITOR TO COME ALONG

13   IN A HALF CENTURY.  THIS COMPETITOR IS CONFERRING HEADWINDS,

14   VERY SERIOUS HEADWINDS.  THEY ARE PRIMARILY AROUND THESE

15   SPECIFIC RESTRICTIONS AND REGULATIONS THAT THE PGA HAS IN PLACE

16   IN ORDER TO CHOKE OFF LABOR AND IN ORDER TO CHOKE OFF ACCESS TO

17   THE BROADCAST MARKETS.

18   IN ADDITION TO THAT, THERE'S THIS WHOLE OTHER RANGE OF

19   CONDUCT WHERE THE PGA IS INFLUENCING OTHERS, LIKE THE RANKINGS

20   ORGANIZATIONS AND OTHERS, TO MAKE COMPETITION MUCH MORE

21   DIFFICULT.

22   NOW, NOTWITHSTANDING THOSE MASSIVE HEADWINDS, LIV GOLF HAS

23   ENDEAVORED TO BE AS COMPETITIVE AS POSSIBLE.  UNLESS WE HAVE A

24   CHANCE, THE PLAYERS HAVE A CHANCE, TO ACTUALLY KNOCK THOSE

25   RULES DOWN AND LEVEL THE PLAYING FIELD, YOU KNOW, THERE'S THE

1    POTENTIAL THAT THAT KIND OF COMPETITION WILL NOT EXIST,

2    CERTAINLY WITH THE VIBRANCY THAT IT COULD.

3          AND I SAY THAT BECAUSE A COUPLE OF THINGS ARE GOING ON

4    RIGHT NOW.  ONE IS THE COMPETITOR IS, YES, IT'S OBTAINING

5    TALENT, BUT THERE'S PLENTY OF TALENT OUT THERE THAT IT CAN'T

6    GET TO BECAUSE OF THE THREAT OF LIFETIME BANS THAT ARE

7    PREDICATED ON THESE RULES, NUMBER ONE.

8          NUMBER TWO, THESE RULES AND THE THREAT OF THE LIFETIME

9    BANS HAVE ALREADY CAUSED THE COMPETITOR TO PUSH THEIR SCHEDULE

10   OUT A YEAR, SO IT'S ALREADY RESTRICTED OUTPUT.

11         AND THIRD, THESE RULES, PARTICULARLY THIS MEDIA RIGHTS

12   RULE, IS VERY MUCH COMPROMISING THE HOLY GRAIL OF BEING A

13   SUCCESSFUL COMPETITOR, AND THAT'S BEING ABLE TO ACHIEVE

14   BROADCAST CONTRACTS.

15         AND SO IT IS CRITICALLY IMPORTANT TO ENSURE THAT WE DON'T

16   FIND OURSELVES IN A SITUATION WHERE THE TRIAL COMES TOO LITTLE,

17   TOO LATE, AND WE'VE LOST THE BENEFIT OF COMPETITION IN THIS

18   MARKET, AND PERHAPS NOT SEE IT AGAIN FOR ANOTHER 50 YEARS.

19         SO WE VERY MUCH URGE THAT WE HOLD THIS TRIAL DATE FOR

20   THOSE REASONS.  WE HAVE PROVIDED TO PGA COUNSEL, A PROPOSED

21   SCHEDULE THAT WORKS THROUGH, IN GREAT DETAIL, HOW ALL THIS

22   COMES TOGETHER, THAT WOULD THEN LEAD TO A MARCH 9TH SUMMARY

23   JUDGEMENT DATE.  IT'S EMINENTLY DOABLE.  BOTH SIDES HAVE AMPLE

24   RESOURCES AND AMPLE ABILITY TO DO IT.

25         WE, PLAINTIFFS, HAVE ALREADY TOLD THE DEFENDANT THAT WE

1    ARE GOING TO BE INCREDIBLY USER-FRIENDLY.  I MEAN, WE WOULD

2    VERY MUCH WELCOME EVEN A MASTER OR A MAGISTRATE AS SOME WAY TO

3    RESOLVE ANY ISSUES THAT WE HAVE.

4         BUT THERE'S JUST NO REASON IN THE WORLD THAT WORKING

5    COOPERATIVELY, WE CAN'T MAKE THIS SCHEDULE, AND DO SO IN A WAY

6    THAT MEETS YOUR HONOR'S COMMITMENT TO A MARCH 9TH SUMMARY

7    JUDGEMENT DATE AND THEN TO AN AUGUST 7TH TRIAL DATE.

8         AND WE STAND READY TO MOVE HEAVEN AND EARTH, DO WHATEVER

9    IS NECESSARY, TO REACH THAT TRIAL DATE.

10            THE COURT:  ALL RIGHT.  MR. WALTERS, THANK YOU.

11         MR. ROPPOLO, DO YOU JOIN IN MR. WALTER'S COMMENTS?

12            MR. ROPPOLO:  YOUR HONOR, I DO.  THANK YOU.

13            THE COURT:  OKAY.  GOOD.

14         MR. PETERS, LET ME HEAR FROM YOU.

15            MR. PETERS:  THANK YOU, YOUR HONOR.

16         WHEN WE WERE BEFORE YOU JUST A WEEK AGO YESTERDAY, YOU

17    THREW OUT THIS AUGUST 7TH DATE, YOU PROPOSED THE AUGUST 7TH

18    DATE.  AND WHAT YOU SAID WAS, IS IT REASONABLE, AND ARE THERE

19    CONFLICTS?  AND WE UNDERSTAND THAT THE COURT MAY WANT TO MOVE

20    THIS CASE QUICKLY, WE ARE PREPARED TO COMPLY WITH THAT, BUT

21    THIS SCHEDULE, AN AUGUST 7TH TRIAL DATE, IS NOT REASONABLE, AND

22    THERE ARE CONFLICTS.  AND LET ME TELL YOU WHY, AND THEN I CAN

23    MAKE SORT OF TWO PROPOSALS ABOUT HOW THE COURT MAY WANT TO

24    PROCEED, IF YOU WILL ALLOW ME TO DO THAT.

25         IT'S NOT REASONABLE, IN FIRST PART, BECAUSE WE DON'T EVEN

1    HAVE THE OPERATIVE PLEADING.  WE WERE TOLD YESTERDAY THAT THE

2    PLAINTIFFS ARE GOING TO AMEND THEIR COMPLAINT, HOPEFULLY SOON,

3    BUT WE DON'T KNOW WHEN.

4        THEY ARE DROPPING PLAINTIFFS, BUT THERE'S 11 DIFFERENT

5    PLAINTIFFS NOW, MAYBE THERE WILL BE NINE, OR I'M NOT SURE HOW

6    MANY THERE WILL BE, AND SO THERE'S UNCERTAINTY ABOUT WHAT THE

7    PLEADING IS.

8        DOCUMENT DISCOVERY IN THIS CASE WHERE YOU ARE INVOLVING

9    NINE INDIVIDUAL PLAYERS AND YOU HAVE TO THEN HARVEST -- FIRST

10   THE PARTIES HAVE TO AGREE ON CUSTODIANS, SEARCH TERMS, HARVEST

11   ELECTRONIC DATA, REVIEW IT AND PRODUCE IT FROM A VARIETY OF

12   ENTITIES, AND AT LEAST NINE INDIVIDUAL PLAINTIFFS, THAT, AS A

13   PRACTICAL MATTER, IS TIME CONSUMING.  THEIR PROPOSED SCHEDULE,

14   I THINK THAT HAS THAT HAPPENING IN 45 DAYS.  THAT IS NOT

15   REASONABLE OR REALISTIC TO DO THAT.

16       ALSO, THEIR SECTION 1 CLAIM INVOLVES FOREIGN PARTIES.  IT

17   INVOLVES THE DP WORLD TOUR, WHICH IS LOCATED IN THE UK.  IT

18   INVOLVES THE OFFICIAL WORLD GOLF RANKINGS, WHICH IS LOCATED IN

19   THE UK.  OF COURSE LIV IS OWNED BY THE SAUDI PUBLIC INVESTMENT

20   FUND, AND WILL WANT TO TAKE DISCOVERY, I WOULD ASSUME, FROM KEY

21   DECISION MAKERS OF THE BE OWNERS OF LIV.

22       UNFORTUNATELY, SAUDI ARABIA IS NOT A SIGNATORY TO THE

23   HAGUE TREATY, SO IT'S NOT CLEAR TO ME EXACTLY HOW WE ARE GOING

24   TO DO THAT.  AND WHEN I ASKED COUNSEL YESTERDAY, WHETHER THEY

25   WERE IN A POSITION TO ACCEPT SERVICE OF THE SUBPOENA, PRODUCE

1    DOCUMENTS, IF THAT'S APPROPRIATE, AND WITNESSES FROM THE SAUDI

2    PUBLIC INVESTMENT FUND, WE WERE TOLD NO, THAT THEY WEREN'T AT

3    THIS POINT, AND THEY WOULD MAKE INQUIRY, BUT THEY ARE NOT.  SO

4    I DON'T KNOW HOW WE ARE GOING TO DO THAT.

5         OF COURSE, THIS CASE IS MIGHTILY ABOUT LIV, GIBSON DUNN IS

6    ALSO LIV'S LAWYERS.  LIV IS NOT A PARTY, SO WE ARE GOING TO

7    HAVE TO TAKE DISCOVERY FROM LIV AS A THIRD PARTY.  AND WHILE

8    MR. WALTERS PLEDGES COOPERATION, AND I HAVE NO REASON TO DOUBT

9    THE SINCERITY OF THAT PLEDGE RIGHT NOW, THIS IS GOING TO BE AN

10   ADVERSARIAL PART FOR OUR CASE, AND I'M NOT SURE HOW MUCH THE

11   SPIRIT OF COOPERATION IS GOING TO EXTEND INTO THE FUTURE.

12        SO THERE ARE SOME REAL PROBLEMS ABOUT THINKING THAT YOU

13   COULD GET TO TRIAL A YEAR FROM NOW.  AND A SUMMARY JUDGEMENT

14   DATE OF MARCH OF NEXT YEAR IS JUST, I THINK, BORDERLINE

15   IMPOSSIBLE TO DO IT.  WE WILL FILE SUMMARY JUDGEMENT MOTIONS,

16   BUT THAT'S REALLY, REALLY TIGHT.

17        MR. WALTER'S SCHEDULE, FOR EXAMPLE, HAS THEM SERVING THEIR

18   EXPERT REPORTS RIGHT BEFORE CHRISTMAS, AND US RESPONDING RIGHT

19   AFTER NEW YEAR'S.  WELL, THANK YOU VERY MUCH FOR GIVING US THE

20   OPPORTUNITY TO SPEND OUR CHRISTMAS HOLIDAY WRITING THE EXPERT

21   REPORTS, BECAUSE THEY DRAFTED THIS PROPOSED SCHEDULE.

22        LET ME TALK A LITTLE BIT ABOUT CONFLICTS.

23        OBVIOUSLY, AS YOUR HONOR NOW WELL KNOWS, AUGUST 7TH IS

24   WHEN THE FEDEX CUP STARTS.  SO FOR OUR WITNESSES TO BE IN A

25   TRIAL IN SAN FRANCISCO, LITERALLY THAT'S THE DATE -- AUGUST 7TH

1    IS THE DATE IN 2023, THE DAY THE FEDEX CUP STARTS.  SO THE

2    COMMISSIONER AND THE OTHER SIGNIFICANT PEOPLE FROM THE PGA

3    TOUR, THAT'S A TOUGH DATE, AND YOU KNOW THAT BECAUSE THAT WAS

4    WHAT YOU WERE MOVING HEAVEN AND EARTH TO DECIDE EIGHT DAYS AGO.

5            I HAVE A TRIAL THAT'S GOING TO BE LENGTHY STARTING

6    JUNE 6TH, IT'S POSSIBLE IT WILL BE OVER BY AUGUST 7TH OF NEXT

7    YEAR, BUT IT'S GOT NINE PLAINTIFFS, EIGHT DEFENDANTS, AND A

8    BILLION DOLLARS AT STAKE.  IT'S IN STATE COURT IN L.A., AND

9    IT'S GOING TO BE VERY DIFFICULT FOR ME, IN TERMS OF HANDLING

10   THAT.

11           SO I THINK THERE ARE SUBSTANTIVE REASONS WHY IT ISN'T

12   REASONABLE TO DO IT.  THERE'S CONFLICTS, AND OBVIOUSLY IN THIS

13   DISTRICT, THE AVERAGE TIME TO TRIAL IS 34 MONTHS.  THE

14   PLAINTIFFS HAVE CHOSEN NOT TO SEEK A PRELIMINARY INJUNCTION,

15   AND SOME OF THESE OTHER ANTITRUST CASES, OBVIOUSLY IF THERE'S A

16   PRELIMINARY INJUNCTION IN PLACE, THAT DOES CHANGE THE CALCULUS

17   OF GETTING TO TRIAL.  BUT THEY ARE NOT SEEKING ONE HERE, SO

18   THAT ISN'T AN ISSUE.

19           I UNDERSTAND THE COURT WANTS TO MOVE QUICKLY, WE ARE

20   PREPARED TO DO THAT, BUT I JUST THINK AUGUST 7TH IS A BRIDGE

21   TOO FAR.  SO IF I MAY MAKE TWO SUGGESTIONS FOR THE COURT TO

22   CONSIDER ABOUT WHAT TO DO.

23               THE COURT:  OKAY.

24               MR. PETERS:  SINCE THERE ISN'T EVEN AN OPERATIVE

25    PLEADING ON FILE AND SINCE THIS KIND OF DISCUSSION USUALLY

1    TAKES PLACE IN THE CONTEXT OF AN INITIAL CASE MANAGEMENT

2    CONFERENCE, FOLLOWING YOUR RULE 26(F) CONFERENCE AMONG COUNSEL,

3    AND WE HAVE LOOKED AT YOUR HONOR'S STANDING ORDER 3(B), WE HAVE

4    LOOKED AT LOCAL RULE 16-2, ONE OPTION IS TO HAVE A FAIRLY

5    PROMPT INITIAL CMC, SHORTEN THE TIME FOR RULE 26(F) CONFERENCE

6    TO 14 DAYS, AND WHAT WE WERE THINKING ABOUT, AND I DON'T MEAN

7    TO PRESUME, THIS IS JUST A SUGGESTION, BUT IF WE HAD AN INITIAL

8    CMC ON SEPTEMBER 8TH, THE PARTIES HAD TO FILE THEIR JOINT

9    INITIAL CASE MANAGEMENT CONFERENCE REPORT ON SEPTEMBER 1ST, AND

10   THE RULE 26(F) CONFERENCE TOOK PLACE ON AUGUST 25TH, WHICH

11   WOULD BE A WEEK FROM TODAY, WE WOULD HOPEFULLY HAVE AN

12   OPERATIVE PLEADING.  WE COULD HAVE A DISCUSSION AMONG THE

13   EXPERIENCED LAWYERS INVOLVED IN THIS CALL ABOUT WHAT'S REALLY

14   GOING TO BE REQUIRED, AND THEN WE COULD HAVE A MORE CONSIDERATE

15   DISCUSSION, AND THE COURT WOULD HAVE THE BENEFIT OF SEEING

16   PARTIES' SUBMISSIONS ON SEPTEMBER 8TH.

17       I DON'T THINK THAT ANYBODY LOSES ANYTHING BY DOING THAT, I

18   GUESS THREE WEEKS, BUT THE IDEA THAT WE SHOULD EXCHANGE INITIAL

19   DISCLOSURES TOMORROW, WHICH WAS MR. WALTER'S SUGGESTION,

20   INITIAL DISCLOSURES TOMORROW, DISCOVERY OPENS TOMORROW, THEY

21   ARE PROBABLY READY TO START SERVING REQUESTS FOR PRODUCTION OF

22   DOCUMENTS ON US, AND DEPO NOTICES AND THE LIKE, BUT WE HAVE

23   ALREADY BEEN AMBUSHED ONCE IN THIS CASE, YOUR HONOR, AND WE HAD

24   TO MOVE HEAVEN AND EARTH TO COMPLY AND TO GET READY FOR THAT

25   TRO HEARING, AND WE WOULD LIKE TO AT LEAST HAVE THE OPPORTUNITY

1   TO GET OUR DUCKS IN A ROW, TO CONSIDER WHAT THIS IS GOING TO

2   TAKE, AND TO FOLLOW A SHORTENED, NORMAL PROCEDURE.

3        IF THE COURT DOESN'T WANT TO DO THAT, BUT WANTS TO SET A

4   TRIAL DATE TODAY, WE WOULD ASK THAT YOU SET A TRIAL DATE, IF

5   POSSIBLE, IN THE SPRING OF 2024.  IT WOULD GIVE US 17 OR

6   18 MONTHS TO GET TO TRIAL, THAT'S HALF THE NORMAL TIME IN THIS

7   DISTRICT.

8        THAT'S REALLY PUSHING IT IN A CASE OF THIS MAGNITUDE,

9   GEOGRAPHIC SCOPE AND COMPLEXITY.  I KNOW THE COURT IS VERY

10  BUSY, AND SO THERE'S LIMITED OPTIONS, BUT I ALSO KNOW THAT

11  CASES DO SETTLE AND THERE MAY BE WAYS TO DO THAT.

12       IN SUM, YOUR HONOR, WE ARE PREPARED TO WORK VERY HARD TO

13  ADDRESS THE ISSUES IN THIS CASE.  WE DISAGREE WITH ALMOST

14  EVERYTHING MR. WALTERS SAID ABOUT THE MERITS, BUT THAT'S TO BE

15  EXPECTED AND NOT PRODUCTIVE IN THIS CALL, BUT WE ALSO WANT THE

16  CHANCE TO LITIGATE THE CASE FAIRLY, THOROUGHLY, AND GIVEN THE

17  COMPLEXITY OF THE ISSUES, THE ABSENCE OF AN OPERATIVE PLEADING,

18  THE NEED FOR FOREIGN TESTIMONY, THE UNCERTAINTY ABOUT THE SAUDI

19  EVIDENCE, TO RUSH AHEAD WHERE WE ARE TAKING DISCOVERY TOMORROW

20  WHERE WE HAVE NEVER EVEN HAD A RULE 26(F) CONFERENCE OR AN

21  INITIAL CMC, I THINK IT'S PENNYWISE AND POUND FOOLISH, AND I

22  DON'T THINK IT'S THE BEST WAY, RESPECTFULLY, FOR THE COURT TO

23  MANAGE THIS CASE.

24            THE COURT:  MR. WALTERS?

25            MR. WALTERS:  YES.  MAY I RESPOND BRIEFLY,

1    YOUR HONOR?  THANK YOU.

2        FOR STARTERS, WE ARE THE PLAINTIFFS, WE KNOW WHAT IT TAKES

3    TO GET TO TRIAL, AND WE WILL MOVE HEAVEN AND EARTH.  I MEAN,

4    SOME OF THESE OBJECTIONS ARE JUST NON ISSUES.

5        THESE PLAYERS, WE ARE GOING TO WINNOW IT DOWN, BECAUSE

6    SOME PLAYERS WERE INTERESTED IN THE TRO, BUT THEY DON'T HAVE

7    MANY DOCUMENTS, THOSE ARE QUITE EASY TO DO.

8        LIV, ITSELF, WILL BE HIGHLY COOPERATIVE AND WON'T INSIST

9    ON ANY TIME TABLES, THEY CAN SEND US THEIR REQUEST TOMORROW IF

10   THEY WANT, AND WE WILL BE UNDER WAY.  IT'S NOT GOING TO BE AN

11   ISSUE.

12       TO THE EXTENT THERE'S APPROPRIATE DISCOVERY OF THE PUBLIC

13   INVESTMENT FUND, WE WILL FIND A WAY TO COOPERATE WITH THAT.  WE

14   WOULD NEVER INSIST THAT THEY DO ANY SORT OF FORMAL SERVICE, SO

15   WE WILL FIGURE OUT A WAY TO DO THAT.  ALL OF THAT WILL COME

16   TOGETHER SWIMMINGLY.

17       YOU KNOW, IT'S PRETTY CLEAR TO ME THAT THEY LIKE TO THROW

18   AS MUCH FURNITURE IN THE WAY AND AVOID THIS TRIAL FOR AS LONG

19   AS POSSIBLE, BECAUSE IT REALLY, REALLY DOES MATTER ABOUT THE

20   STATE OF THE MARKETPLACE AND COMPETITION, AND SORT OF WHETHER

21   THESE PLAYERS CAN GET TO FREE AGENCY STATUS.  SO, YOU KNOW, WE

22   REALLY HEARD NOTHING THAT IS AN ENCUMBRANCE.

23       AS FOR THE PLEADING, IT'S NOT GOING TO CHANGE THAT MUCH,

24   WE ARE GOING TO WINNOW IT DOWN, WE ARE GOING TO RESHAPE IT

25   SLIGHTLY.  WE TOLD THEM THAT WE COULD HAVE IT TO THEM EARLY

 1    NEXT WEEK.  WE WILL TELL THEM THEY CAN HAVE IT SUNDAY AFTERNOON

 2    IF THEY WANT IT.  WE WILL MAKE ALL OF THESE THINGS HAPPEN FOR

 3    THEM.

 4         ON THE SCHEDULE ITSELF, WE PROPOSED IT TO THEM, I THINK IT

 5    WAS YESTERDAY OR THE DAY BEFORE, I DON'T RECALL EXACTLY.  WE

 6    ASKED FOR COMMENTS, NO COMMENTS FORTHCOMING.  WE CAN ADJUST THE

 7    EXPERT DATES, IF THAT WORKS.  WE WILL DO ALL OF THOSE THINGS

 8    NECESSARY TO GET TO TRIAL ON AUGUST 7TH.  WE KNOW WHAT IT MEANS

 9    TO BE A PLAINTIFF, WE KNOW WHAT THAT TAKES AND WE WILL MAKE IT

10    HAPPEN.

11         AND ON THAT SCORE, IF THERE'S ANY MECHANISM AT ALL SO THAT

12    WE DON'T GO INTO, YOU KNOW, LONG PERIODS OF TIME ON DISPUTES SO

13    WE CAN JUST -- IF THERE ARE ANY DISPUTES, WE HOPE THERE AREN'T

14    ANY, BUT IF THERE ARE, WE CAN RESOLVE THEM QUICKLY AND MOVE ON.

15         THE COURT:  SO THE ONLY THING THAT I THOUGHT WAS

16    INTERESTING, MR. PETERS, I APPRECIATE THAT THESE CASES TAKE AN

17    ENORMOUS EFFORT, THE BEST LAW FIRMS IN THE COUNTRY HAVE BEEN

18    ASSEMBLED BY EACH SIDE, AND THE DEPTH AND BREADTH OF YOUR

19    BENCHES IS EXTRAORDINARY.

20         I DID FIND IT ALMOST AMUSING THAT -- IT DIDN'T OCCUR TO ME

21    WHEN I SUGGESTED AUGUST, THAT THE FEDEX CUP WOULD BE GOING ON,

22    IT WILL BE A GOLF EXTRAVAGANZA FOR THOSE WEEKS, IF THAT'S WHEN

23    THE TRIAL IS.  AND WITNESSES WILL BE SUBPOENAED, AND IT REALLY

24    WON'T MATTER WHETHER THEY HAVE A PRIOR ENGAGEMENT OR NOT, AND

25    THEY WILL JUST MISS THE TOURNAMENT.

1    THE ONLY THING I WOULD BE WILLING TO DO IS TO MASSAGE THE

2    DATES A LITTLE BIT.  AND I THINK IT'S THE SUMMARY JUDGEMENT

3    DATE, ALTHOUGH I'M SKEPTICAL THAT SUMMARY JUDGEMENT DOES

4    ANYTHING OTHER THAN HELP YOU FLESH OUT YOUR OPPONENT'S

5    EVIDENCE.

6    IN MARCH IS, I RECOGNIZE DIFFICULT, YOU WOULD BE FILING

7    THOSE MOTIONS BY THE END OF JANUARY, AND THAT'S NOT VERY LONG

8    FROM NOW.  I WOULD BE WILLING, AND I WILL SEND YOU THESE DATES,

9    BUT JUST IN LOOKING AT MY CALENDAR, AND IT'S MY INFORMAL

10   CALENDAR, I HAVE TO CONFIRM IT WITH THE COURT CALENDAR, I WOULD

11   BE WILLING TO CONSIDER MOVING SUMMARY JUDGEMENT TO JULY 23RD OF

12   2023, AND TRIAL ON JANUARY 8TH OF 2024.

13   IT'S A MODEST CHANGE, MERRY CHRISTMAS TO EVERYBODY, I

14   CAN'T STOP -- I MEAN, THAT'S JUST THE WAY IT IS, AND I'M SORRY.

15   THE FINAL PRETRIAL CONFERENCE, HOWEVER, WOULD PROBABLY BE IN

16   OCTOBER.  SO YOU WILL HAVE ALL OF THAT DONE WELL IN ADVANCE OF

17   THE HOLIDAY, BUT I KNOW THAT YOU WILL BE WORKING AROUND THE

18   CLOCK OVER THE HOLIDAYS, I RECOGNIZE THAT.

19   THAT IS A MODEST ADJUSTMENT THAT I THINK ACTUALLY

20   ADDRESSES MR. PETERS'S CONCERN ABOUT HAVING THE DISCOVERY

21   COMPLETED IN TIME FOR SUMMARY JUDGEMENT AND MOTION.

22   MR. WALTERS, ANY COMMENT ON THAT?

23   MR. WALTERS:  NO.  THANK YOU, YOUR HONOR.

24   WE CAN OBVIOUSLY -- THANK YOU VERY MUCH FOR ACCOMMODATING

25   US, AND WE WILL MAKE THAT SCHEDULE WORK.

1        THE COURT:  MR. PETERS?

2        MR. PETERS:  IT'S TOUGH, BUT HAVING RECEIVED SOME

3   CONSIDERATION FROM THE COURT, I'M NOT GOING TO COMPLAIN.

4        I APPRECIATE YOUR HONOR'S WILLINGNESS TO GIVE US A BIT

5   MORE BREATHING ROOM.  I THINK IT MAKES IT A LITTLE MORE

6   CIVILIZED SINCE WE ARE GOING TO HAVE TO MOVE HEAVEN AND EARTH

7   AND WE ARE GOING TO HAVE TO WORK TOGETHER TO WORK OUT SOME

8   DATES.

9        THE COURT:  OKAY.

10       MR. PETERS:  I THINK THAT A JULY -- CAN I HAVE JUST A

11  MOMENT TO JUST MUTE AND TALK TO MY TEAM FOR ONE SECOND?

12       THE COURT:  SURE, OF COURSE.

13       MR. PETERS:  OKAY.

14      (PAUSE IN PROCEEDINGS.)

15       MR. PETERS:  SO THANK YOU FOR AGREEING TO ADJUST THE

16  SCHEDULE IN THAT WAY.  I'M NOT GOING TO BOTHER YOU ANY MORE

17  ABOUT IT.

18       THE COURT:  OKAY.

19      WELL, ALL RIGHT.  I WILL SEND YOU AN ORDER WITH THE EXACT

20  DATES.  AS I SAID, I WAS JUST LITERALLY WORKING OFF MY INFORMAL

21  CALENDAR.  THAT WILL BUMP OTHERS, AND SO I'M GOING TO HAVE TO

22  LOOK TO SEE WHERE THEY GO, BUT THE TWO DATES THAT I KNOW THAT

23  ARE IMPORTANT TO YOU ARE THE SUMMARY JUDGEMENT DATE AND THE

24  TRIAL DATE, AND THOSE I CAN ACCOMMODATE.

25       I GATHER, MR. WALTERS, YOU'VE DECIDED NOT TO PURSUE A

1        PRELIMINARY INJUNCTION, IS THAT ACCURATE?

2                MR. WALTERS:  THAT'S CORRECT, YOUR HONOR.

3                THE COURT:  OKAY.  I APPRECIATE THAT.

4        IT SEEMED LIKE WE WENT OVER THE ISSUES PRETTY THOROUGHLY

5        LAST WEEK AND THERE WOULDN'T BE A LOT MORE TO SAY IN A COUPLE

6        OF WEEKS.

7        YOU SUGGESTED A SPECIAL MASTER, AND I NEVER ORDER A

8        SPECIAL MASTER BECAUSE I KNOW IT'S VERY EXPENSIVE TO THE

9        PARTIES.  I DON'T THINK MONEY -- IT'S NOT MY PLACE TO SAY

10       WHETHER THE MONEY MATTERS TO YOUR CLIENTS OR NOT, BUT I THINK A

11       SPECIAL MASTER WOULD BE A GOOD IDEA TO MOVE THINGS ALONG.  SO I

12       WANT YOU TO MEET AND CONFER WITH MR. PETERS AND MAKE THAT

13       DECISION RIGHT AWAY.

14       THERE IS ALWAYS A MAGISTRATE JUDGE TO HANDLE DISCOVERY,

15       BUT THIS COULD BE HARD FOUGHT AND OVERWHELMING FOR THE COURT

16       AND ULTIMATELY SLOW YOU DOWN.  SO I'M SURE YOU'VE WORKED WITH

17       MANY SPECIAL MASTER'S FOR DISCOVERY, YOU MAY CHOOSE TO DO THAT.

18               MR. PETERS:  MAY I SAY ONE THING ABOUT THAT,

19        YOUR HONOR?

20               THE COURT:  YES.

21               MR. PETERS:  I JUST KNOW THAT MAGISTRATE

22        JUDGE VAN KEULEN IN SAN JOSE, WHO OBVIOUSLY THE COURT WORKS

23        WITH, IS REALLY EXCELLENT, A FORMER ANTITRUST LITIGATOR AT

24        O'MELVENY, AND HE IN MANY WAYS, I THINK WOULD BE EXCELLENTLY

25        SUITED TO WORK ON THIS CASE AND IS RIGHT THERE IN THE COURT.

1          AND I'VE -- SOMETIMES OUTSIDE SPECIAL MASTERS ARE GOOD AND

2     SOMETIMES THEY JUST CREATE MORE ISSUES THAN PEOPLE JUST

3     SUBMITTING THINGS TO THE COURT.  SO YOU GET ANOTHER STEP IN THE

4     PROCESS AND IT ISN'T THAT EFFICIENT.

5          SO I'M HAPPY TO MEET AND CONFER WITH MR. WALTERS ABOUT IT,

6     BUT WE'VE DISCUSSED IT INTERNALLY, AND OBVIOUSLY MAGISTRATE

7     JUDGE VAN KEULEN SEEMS UNUSUALLY WELL SUITED TO HANDLE THIS

8     CASE, AND SHE'S VERY SKILLFUL, SO I THROW THAT OUT AS A

9     POSSIBILITY TOO.

10              THE COURT:  TIFFANY, WHO IS THE MAGISTRATE ASSIGNED

11     TO THE CASE?

12              THE CLERK:  YES, YOUR HONOR, IT'S ACTUALLY

13     JUDGE VAN KEULEN.

14              THE COURT:  GOOD.  THAT'S FINE.

15          MR. THE WALTERS?

16              MR. WALTERS:  YES, YOUR HONOR.

17          WE REALLY HAVEN'T HAD A CHANCE TO DELIBERATE ON THAT AS

18     MR. PETERS HAS.  WHY DON'T WE HAVE A CHANCE TO CONFER WITH HIM

19     ON THE ADVISABILITY OF A SPECIAL MASTER AND COMPARE THE TWO AND

20     COME RIGHT BACK TO YOU; WOULD THAT BE APPROPRIATE?

21              THE COURT:  I APPRECIATE THAT.

22          I ASSIGN ALL DISCOVERY DISPUTES TO THE MAGISTRATE JUDGE

23     ASSIGNED TO THE CASE.  AND BECAUSE I DON'T ORDER PARTIES TO GO

24     TO SPECIAL MASTERS, BECAUSE THERE IS THE COST ELEMENT, IT'S

25     ONLY DONE BY STIPULATION.  SO IF YOU DON'T STIPULATE TO IT, YOU

1     DON'T NEED TO GET BACK TO ME.

2           MR. WALTERS:  ALL RIGHT.  VERY GOOD.  THANK YOU VERY

3     MUCH, BUT I URGE YOU TO CONTINUE TALKING ABOUT IT.

4           ALL RIGHT.  THE -- I THINK THAT WE PROBABLY NEED REGULAR

5     CASE MANAGEMENT CONFERENCES.  THIS IS STILL AN AMBITIOUS TRIAL

6     SCHEDULE, AND SO SCHEDULING, WE NEED OUR RULE 26 CONFERENCE.

7           I'M NOT ACTUALLY HERE ON SEPTEMBER 8TH.  THAT'S NOT AN

8     UNREASONABLE DATE, I'M JUST NOT AVAILABLE.  AND WE COULD

9     CERTAINLY MAKE IT THE FOLLOWING WEEK ON THE 15TH, IF THAT

10    WORKS.  BUT I THINK THAT YOU NEED TO -- I THINK I REALLY WANT

11    YOUR CASE MANAGEMENT STATEMENT, AND I THINK -- AND I NEED A

12    DISCOVERY SCHEDULE WORKED OUT.

13          I WILL SEND YOU, BY THE END OF TODAY, THE SCHEDULE, AND IF

14    YOU ULTIMATELY PREPARE YOUR CASE MANAGEMENT STATEMENT AND DON'T

15    FEEL THAT -- AND A HEARING ON ZOOM IS NECESSARY ON THE 15TH,

16    YOU CAN LET ME KNOW THAT.

17          MR. WALTERS:  VERY GOOD, YOUR HONOR.

18          THE COURT:  ALL RIGHT.

19          MR. PETERS, I'M GLAD TO DO A HEARING, BUT WE MAY NOT NEED

20    IT.

21          MR. PETERS:  SO THEN WE WILL JUST WORK BACKWARDS FROM

22    THE 15TH, BASED ON YOUR HONOR'S STANDING ORDER 3(B) AND

23    RULE 26(F) FOR THE TIMING DEADLINES.  WE WILL HAVE OUR 26(F)

24    CONFERENCE.  WE WILL SUBMIT A JOINT -- INITIAL CASE MANAGEMENT

25    STATEMENT TO THE COURT.

1          THE COURT:  THAT'S RIGHT.

2          MR. PETERS:  AND THEN WE WILL LET YOU KNOW IF WE

3    THINK THAT THERE'S ISSUES TO BE ADDRESSED ON THE 15TH.

4          THE COURT:  YEAH.

5       LET ME MENTION A FEW THINGS, BECAUSE THIS IS GOING TO GO

6    QUICKLY, AND IT'S THINGS THAT I SAY AT MY INITIAL CASE

7    MANAGEMENT CONFERENCE.

8       IN ADDITION TO THE DISCOVERY BEING SENT TO THE MAGISTRATE

9    JUDGE, WHICH IS STANDARD, AND I THINK THAT WILL WORK, YOU DO

10   NEED TO READ MY STANDING ORDERS.  I DO HAVE REQUIREMENTS.

11   THERE ARE SOME IMPORTANT REQUIREMENTS, THOUGH.

12      ON SUMMARY JUDGEMENT, I'M GOING TO REQUIRE CROSS MOTIONS.

13   I AM NOT GOING TO ACCEPT TWO FULL SETS OF SUMMARY JUDGEMENT.

14   SUMMARY JUDGEMENT, ONE SUMMARY JUDGEMENT PER SIDE, NOT PER

15   PARTY.  AND EVEN THOUGH MR. MICKELSON IS SEPARATELY

16   REPRESENTED, MR. ROPPOLO, YOU WILL HAVE THE PLEASURE OF WORKING

17   WITH MR. WALTERS ON A COMBINED BRIEF.  IF YOU CAN'T DO THAT,

18   THEN YOU STILL SHARE THE PAGE NUMBERS AND FILE TWO SEPARATE

19   BRIEFS.  I'M SURE THAT WON'T BE A PROBLEM, BUT THAT'S FOUR

20   BRIEFS AND NOT SIX BRIEFS.

21      SO TYPICALLY THE DEFENDANT FILES THE OPENING BRIEF, THE

22   OPPOSITION IS BOTH A RESPONSE AND A MOTION, AND THEN THERE ARE

23   TWO REPLY BRIEFS.  SO I WANT TO PLANT THAT RIGHT NOW.

24      SOMETIMES EXPERTS ARE VERY IMPORTANT TO THESE MOTIONS, AND

25   THERE ARE OBJECTIONS TO THE EXPERT TESTIMONY, SOMETIMES OF THE

1    DAUBERT SORT.  ANY EVIDENTIARY OBJECTION, NO MATTER WHAT THE

2    GROUNDS, MUST BE CONTAINED WITHIN THE BODY OF YOUR PAPERS, AND

3    IT'S WITHIN THE PAGE LIMITS THAT YOU ARE GIVEN, AND THAT'S

4    25 PAGES PER BRIEF.  IT'S HIGHLY UNLIKELY I WILL GIVE YOU

5    ADDITIONAL BRIEFING, SO KEEP THAT IN MIND.

6         IF YOU HAVE DAUBERT MOTIONS AND YOU WANT STANDALONE

7    HEARING ON DAUBERT MOTIONS, YOU ARE REQUIRED TO OBTAIN A

8    HEARING DATE AT LEAST 60 DAYS BEFORE TRIAL.

9         I DON'T RESERVE IT NOW LIKE I RESERVE THE SUMMARY

10   JUDGEMENT DATE.  THAT MEANS YOU ARE FILING YOUR DAUBERT

11   MOTIONS, I WOULD SAY EIGHT MONTHS IN ADVANCE OF TRIAL.  DO THE

12   MATH, THAT WOULD BE TOMORROW, MORE OR LESS, SO THAT'S PROBABLY

13   NOT GOING TO BE VERY HELPFUL TO YOU, BUT THOSE ARE THE RULES.

14   AND THEN THERE ARE PAGE LIMITS FOR DAUBERT MOTIONS.

15        THERE IS A BACKUP METHOD THAT MOST PARTIES FIND VERY

16   ACCEPTABLE.  IN YOUR MOTIONS IN LIMINE, YOU MAY USE MOTIONS IN

17   LIMINE, YOU MAY USE DAUBERT MOTIONS THERE.  YOU ARE LIMITED TO

18   FIVE PAGES PER EXPERT AND FIVE MOTIONS TOTAL.

19        I THINK YOU ALL KNOW THAT DAUBERT MOTIONS NEVER BENEFIT

20   FROM MORE THAN FIVE PAGES, IT'S JUST FLUFF AND UNNECESSARY, I'M

21   READING THEIR REPORTS.

22        AND IT'S ONLY FIVE MOTIONS PER SIDE, SO IF YOU HAVE THREE

23   DAUBERT MOTIONS, THERE ARE ONLY TWO MORE ISSUES THAT YOU ARE

24   GOING TO GET TO BRIEF.  BUT THEN YOU ARE ONLY FILING THAT

25   TWO-WEEKS IN ADVANCE OF THE FINAL PRETRIAL CONFERENCE, THAT

1    TEAM SEEMS TO BE A GOOD TIME TO DO IT, UNLESS IT'S KEY TO THE

2    SUMMARY JUDGEMENT MOTION.

3         PLEASE -- I EXPECT THAT YOU WON'T BE USING SUMMARY

4    JUDGEMENT AS A WAY TO FISH OUT THE ARGUMENTS OF YOUR OPPONENT.

5    THAT'S A MOTION THAT IS TO ME, AND FOR ME TO DECIDE, AND IT'S A

6    WASTE OF MY TIME IF YOU ARE JUST ON A FISHING EXPEDITION FOR

7    YOUR OPPONENTS, BUT I JUST WANT TO MAKE THAT CLEAR.

8         WHEN -- AS I SAID, WHEN YOU FILE THAT PRETRIAL -- THAT CMC

9    STATEMENT IN A FEW WEEKS, LET ME KNOW WHETHER YOU WOULD LIKE A

10   HEARING.  I WILL SCHEDULE IT FOR A HEARING.  BUT IF YOU DON'T

11   NEED US TO GET BACK TOGETHER, THAT'S FINE.

12        AND WOULD YOU ALSO PLEASE LET ME KNOW IF YOU WOULD FIND

13   REGULAR CASE MANAGEMENT BENEFICIAL IN THE CASE.  I DON'T

14   NORMALLY SCHEDULE IT.  THIS IS EXPENSIVE FOR EVERYONE TO GET

15   TOGETHER, EVEN ON ZOOM, BUT LET ME KNOW IF YOU WOULD LIKE IT

16   REGULARLY SCHEDULED OR IF YOU PREFER TO LET ME KNOW WHEN THE

17   OCCASION ARISES WHEN IT WOULD BE BENEFICIAL, WHICH IS WHAT I

18   NORMALLY DO, AND I NORMALLY JUST ASK YOU TO SUBMIT A JOINT

19   STATEMENT, IDENTIFY THE ISSUE AND YOUR DISAGREEMENT ON IT AND

20   ASK FOR CASE MANAGEMENT, AND THEN IT'S EASY TO GET YOU TOGETHER

21   WITH A DAY'S NOTICE, AS YOU CAN SEE, AND I CAN DO IT THAT WAY.

22        ALL RIGHT.  THEN I WILL SEND OUT THAT TRIAL SCHEDULE TO

23   YOU, AS I SAID, BY THE END OF THE DAY, I JUST NEED TO CONFIRM

24   SOME DATES.  BUT YOU HAVE A TRIAL DATE, AND I THINK THAT

25   WILL -- THAT DOES EASE THE CONCERNS MR. PETERS RAISES.

1          I KNOW YOU WILL ALL BE WORKING HARD, AND YOUR TEAMS, FROM

2     NOW UNTIL THAT TRIAL DATE.

3          MR. WALTERS, ANYTHING ELSE?

4              MR. WALTERS:  NO.

5          THANK YOU, YOUR HONOR.  THANK YOU FOR THE TIME SET THIS

6     MORNING.

7              THE COURT:  MR. PETERS, ANYTHING ELSE?

8              MR. PETERS:  NOTHING FURTHER.

9          THANK YOU, YOUR HONOR.

10             THE COURT:  ALL RIGHT.

11         MR. ROPPOLO, ANYTHING ELSE?

12             MR. ROPPOLO:  NOTHING, YOUR HONOR.

13         THANK YOU SO MUCH FOR YOUR TIME.

14             THE COURT:  GOOD.  THANK YOU ALL.

15         (THE PROCEEDINGS WERE CONCLUDED AT 12:03 P.M.)

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10  THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11  FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12  CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14  CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16  SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17  HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18  TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24  _____

25  SUMMER A. FISHER, CSR, CRR
    CERTIFICATE NUMBER 13185          DATED: 8/18/22