| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>ELLIOT R. PETERS - # 158708<br>epeters@keker.com<br>DAVID SILBERT - # 173128<br>dsilbert@keker.com<br>R. ADAM LAURIDSEN - # 243780<br>alauridsen@keker.com<br>NICHOLAS S. GOLDBERG - # 273614<br>ngoldberg@keker.com<br>SOPHIE HOOD - # 295881<br>shood@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:   415 391 5400<br>Facsimile:    415 397 7188<br><br>Attorneys for Defendant PGA TOUR, INC. | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>ANTHONY J. DREYER - (*pro hac vice*)<br>anthony.dreyer@skadden.com<br>KAREN M. LENT - (*pro hac vice*)<br>karen.lent@skadden.com<br>MATTHEW M. MARTINO (*pro hac vice*)<br>Matthew.martino@skadden.com<br>One Manhattan West<br>New York, Ny 10001<br>Telephone:       212 735 3000<br>Facsimile:        212 735 2000<br><br>PATRICK FITZGERALD (*pro hac vice*)<br>patrick.fitzgerald@skadden.com<br>155 North Wacker Drive<br>Chicago, Il 60606<br>Telephone:       312 407 0700<br>Facsimile:        312 407 0411 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIL MICKELSON; TALOR GOOCH; HUDSON SWAFFORD; MATT JONES; BRYSON DECHAMBEAU; IAN POULTER; PETER UIHLEIN, and LIV GOLF INC.,<br><br>         Plaintiffs,<br><br>     v.<br><br>PGA TOUR, INC.,<br><br>         Defendant. | Case No. 5:22-cv-04486-BLF<br><br>**JOINT STATEMENT REGARDING ESI STIPULATION AND [PROPOSED] PROTECTIVE ORDER DISPUTES**<br><br>Judge:        Hon. Beth Freeman<br><br>Dept.:         Courtroom 1, 5th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |

Plaintiffs Phil Mickelson, Talor Gooch, Hudson Swafford, Matt Jones, Bryson DeChambeau, Ian Poulter, Peter Uihlein ("Player Plaintiffs") and LIV Golf, Inc. ("LIV") (collectively, "Plaintiffs"), and Defendant PGA TOUR, INC. ("the TOUR") (collectively, "the Parties") jointly submit this statement pursuant to the Court's Civil and Discovery Referral Matters Standing Order. The TOUR sent a draft Stipulation Regarding Discovery of Electronically Stored Information ("ESI Stipulation") and [Proposed] Protective Order to Plaintiffs on Wednesday, September 14, 2022. The Parties have since exchanged multiple rounds of revisions and held meet-and-confers via videoconference on September 21 and 23, 2022. The Parties have reached agreement on most terms, however, the Parties dispute (1) whether the ESI Stipulation should exempt from the privilege-logging requirement all privileged communications with outside counsel "regardless of whether the communications were before or after the date the complaint was filed"; and (2) whether the [Proposed] Protective Order should permit one "Consulting Outside Counsel" for each receiving party to access a designating party's Confidential and Highly Confidential information.

The Parties' disputed ESI Stipulation is attached as **Exhibit A** and the [Proposed] Protective Order is attached as **Exhibit B**. These documents include each side's competing proposals presented to the Court in context. Trial has been set for January 8, 2024; the close of fact discovery is March 3, 2023.

## I.     PRIVILEGE LOG (ESI STIPULATION)

*Plaintiffs' Position*:

Plaintiffs propose that the Parties should not be required "to log privileged communications with outside counsel that were retained to represent them in this case, regardless of whether the communications were before or after the date the complaint was filed." As alleged in the Amended Complaint, Defendant has engaged in anticompetitive conduct since at least January 2020. Accordingly, Plaintiffs engaged outside counsel to advise them, and began preparing for the hundred-plus page complaint and fully briefed motion for a temporary restraining order (including four supporting declarations and an expert report) ultimately filed, well before initiating this case on August 3, 2022. As courts regularly acknowledge, communications with outside counsel hired for litigation relating to the litigation is privileged, and the requirement to log such communications would be costly, time consuming and unduly burdensome. Magistrate Judge Hixson's order in *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2021 WL 1222492, at *3 (N.D. Cal. Ap. 1, 2021) is instructive. There, Judge Hixson "decline[d] to order Plaintiffs to log their communications with outside counsel that were retained to represent them in this case, regardless of whether the communications were before or after the date the complaint was filed," because he recognized such communications with outside counsel "are so overwhelmingly likely to be privileged and work product that requiring them to log them all is a pointless waste of time." *Id.* Plaintiffs' proposal to the ESI stipulation tracks precisely the language in Judge Hixson's recent decision because his reasoning applies fully in this case; Plaintiffs' communications with their outside litigation before and after the filing of this case are "overwhelmingly likely to be privileged and work product," such that it will cause undue burden on Plaintiffs to require them to log such communications. *See also Vasudevan Software, Inc. v. IBM*, 2010 WL 3629830, at *6 (N.D. Cal. Sept. 14, 2010) (Lloyd, M.J.), (concluding that parties should not be required to log privileged communications related to litigation pre-litigation, noting that limiting the exemption to only post-complaint communications would be unfair to the plaintiff who regularly communicated with outside counsel regularly to prepare to file the litigation); *Gaby's Bags, LLC v. Mercari, Inc.*, 2021 WL 211639, at *1 (N.D. Cal. Jan. 21, 2021) (Hixson, M.J.), (holding communications with counsel "prior to the filing of an action" and "in

direct connection with preparation for the litigation" need not be logged). Defendant fails to provide any explanation, let alone a sufficient one, as to the relevancy or purpose that justifies Plaintiffs undertaking the burdensome process of logging privileged communications simply so that Defendant is aware of the "timing of the communications, parties involved, and other information provided in a privilege log." This is particularly true in light of the fact that Plaintiffs offered to stipulate to the respective dates that they engaged outside counsel to represent them in this case, but Defendant rejected that offer. Defendant no doubt demands logging precisely because the associated unnecessary burden falls disproportionately on Plaintiffs, who generally have greater engagement with counsel before filing a complaint.

Contrary to Defendant's statement, Plaintiffs' proposal would not "entirely shield from view communications that are potentially not privileged at all." Responsive non-privileged information would be produced. Plaintiffs further disagree with the assertion that such a log is needed because of a lack of common interest among Plaintiffs. While there are seven player Plaintiffs and one corporate Plaintiff, all have been subject to and injured by the same anticompetitive conduct. Plaintiffs dispute Defendant's suggestion that Plaintiffs' proposal would mean the parties would not log *any* counsel communications before August 3, 2022. That is incorrect. Plaintiffs' proposed exemption would only exclude communications with counsel retained in anticipation of litigation.

Compared to the significant and incommensurate burden Defendant's proposal would place on Plaintiffs, Defendant has simply failed to provide any legitimate explanation for their position.

### *Defendant's Position:*

The TOUR's proposed language comes directly from Paragraph 8(c) of this District's Model ESI Order, exempting only communications with counsel after a plaintiff filed their complaint. Plaintiffs' proposed language departs from the Model ESI Order by exempting **all** outside counsel communications "***regardless of whether the communications were before or after the date the complaint was filed***." (emphasis added). Plaintiffs' proposal deviates from the District's Model ESI Order, contravenes Rule 26 and this Court's Civil and Discovery Referral Matters Standing Order, and would conceal from the TOUR information regarding highly relevant communications.

For each document withheld on a claim of privilege, Federal Rule of Civil Procedure 26(b)(5)(A) requires a description that "will enable other parties to assess the claim." The rule provides no exception to logging. Similarly, neither the Model ESI Order nor this Court's Civil and Discovery Referral Matters Standing Order provide any exception for logging pre-filing communications with counsel. "Unlike the privilege log exception commonly allowed for communications between client and counsel created after the filing of a lawsuit, there is no similar consensus for such an exception to be applied to pre-complaint communications." *Ritchie v. Sempra Energy*, 2014 WL 12638874, at *2 (S.D. Cal. Aug. 4, 2014). "Rather, very few decisions allow parties to unilaterally dispense with pre-complaint logging as this position is inconsistent with Rule 26 and the case law." *Id.* (cleaned up).

Plaintiffs' proposal would also entirely shield from view communications that are potentially not privileged at all, as well as information that is material to the TOUR's defenses and any counterclaims it might bring. In fact, given the various roles played by LIV's counsel, including, on information and belief, representing LIV in its contract negotiations with Player Plaintiffs, it appears that LIV's counsel may have been *adverse* to the Player Plaintiffs for at least some period of time. Yet Plaintiffs suggest that they should be exempt from logging communication ***dating as far back as January 2020, which would include the entire period of time during which the***

***Plaintiff Players were negotiating their contracts with LIV.*** Moreover, Plaintiffs consist of eight different parties, with distinct interests, who joined this case at different times, yet who, with the sole exception of Plaintiff Mickelson, are represented by the same counsel. Despite their common counsel, it is not at all clear that LIV and the Plaintiff Players share a common interest. And even if there *were* such a common-interest privilege, it is not clear when that privilege would attach: it appears that LIV's counsel became counsel for the Players only as they were signed up as Plaintiffs in this lawsuit, while LIV itself waited in the wings. Under Plaintiffs' proposal, the TOUR would never even be aware of such communications—regardless of how much they pre-date the filing of this lawsuit. The Court need not untangle this thicket of potential privilege claims at this juncture; it need only ensure that the TOUR receives the information sufficient to "assess the claim" of privilege to which the TOUR is entitled under Rule 26.

Further, even if some of the pre-filing communications between the Plaintiffs *are* determined to be privileged, they still must be logged. The timing of the communications, parties involved, and other information provided in a privilege log are relevant to rebutting Plaintiffs' allegations of anticompetitive behavior and tortious interference. Such details about putatively privileged pre-filing communications between LIV and the Player Plaintiffs are also relevant to any counterclaims that the TOUR might bring related to LIV's interference with the TOUR's agreements with players.

During the parties' meet and confer, Plaintiffs argued that an exception for logging pre-filing communications is "standard" in this District. But that is belied by not only the Model ESI Order, but by the very cases Plaintiffs cite, none of which permits anything close to the blanket exemption from logging that Plaintiffs seek here; none of which involves the potential for disputed claims of privilege over highly material communications; none of which are in the same procedural posture as the parties are here; and none of which includes more than a single party on either side of the dispute. *See Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021) (addressing pre-filing communications for four RFPs that were "so overwhelmingly likely to be privileged and work product" that logging them would be "a pointless waste of time"); *Gaby's Bags, LLC v. Mercari, Inc.*, 3:20-cv-000734-WHA, Dkt. 194, at 4-5 (N.D. Cal. Nov. 17, 2020) (addressing four specific interrogatories seeking information used to prepare discovery responses and legal pleadings).[1]

Plaintiffs also rely on *Vasudevan Software, Inc. v. Int'l Bus. Mach Corp.*, 2010 WL 3629830, at *5 (N.D. Cal. Sept. 14, 2010), but that case is inapposite (and improper to cite under Local Rule 3-4(e)). The *Vasudevan* court reasoned that logging pre-complaint communications disproportionately burdened the plaintiff, who would have more such communications, and noted that defendants had no compelling basis for seeking the pre-filing communications. Neither point holds here. Plaintiffs' claims of a disproportionate burden are based on nothing but unsubstantiated attorney say-so—and to the extent they seek to exempt nearly ***three years*** of pre-litigation communications from logging, that fact militates ***in favor*** of requiring a log. And even if Plaintiffs face a burden disproportionate to the TOUR's, that burden is justifiable in light of the materiality and unclear privileged status of the pre-filing communications described above. Notably, Plaintiffs claim that Defendant did not offer any "legitimate explanation" for its position – but in fact, the TOUR explained its position in detail during meet and confer, and Plaintiffs have failed to grapple with those explanations altogether.

Plaintiffs have presented no reason to depart from the Model ESI Stipulation's provisions on logging, whereas the TOUR has a compelling need to review pre-complaint privilege logs.

---

[1] Plaintiffs cite a later order from the court that does not include its full reasoning, but which refers the reader to its earlier, November 17, 2020, order.

Accordingly, the TOUR respectfully requests that the Court hold that only communications with counsel that post-date a plaintiff's complaint be exempted from logging.

## II.   CONSULTING OUTSIDE COUNSEL ([PROPOSED] PROTECTIVE ORDER)

***Plaintiffs' Position:***

Plaintiffs disagree with Defendant's proposal to have a provision in the Protective Order that would allow "one Consulting Outside Counsel" to have access to Plaintiffs' Protected Material.

Defendant is represented before the Court by two large and highly regarded law firms who have attended every hearing and meet and confer call. They have provided no explanation for why they need an additional lawyer—who will not or cannot appear as counsel of record in these proceedings—to have access to Plaintiffs' Protected Material in order to adequately advise them in this litigation.

To be clear, Plaintiff LIV Golf Inc. and Defendant are direct competitors. Plaintiffs have a well-recognized interest in preventing their competitively sensitive materials from falling into the hands of the PGA Tour. Still, Plaintiffs acquiesced to Defendant's request to grant two in-house counsel (as opposed to Plaintiffs' proposed one in-house counsel) access to competitively sensitive, Highly Confidential–Attorneys' Eyes Only information. Plaintiffs have further agreed, without limiting the number, that Outside Counsel of Record may have access to Plaintiffs' competitively sensitive material. But for reasons not explained in meeting and conferring, Defendant wants more, and seeks to also provide Plaintiffs' sensitive materials to a "Consulting Outside Counsel," David Anders of Wachtell, Lipton, Rosen & Katz.

First, Defendant has represented, without specificity, that Mr. Anders advises it on certain matters. But pursuant to the uncontested terms of the forthcoming Protective Order, the Federal Rules of Civil Procedure and common practice, Plaintiffs agree to production of competitively sensitive, Highly Confidential–Attorneys' Eyes Only information *only* for purposes of this litigation. Plaintiffs will produce in this litigation information that could be used against them if Defendant's business persons gain access to it or Defendant uses it for purposes other than this litigation. Defendant has asserted that Mr. Anders represents the PGA Tour in other business and legal matters. As Defendant describes, Mr. Anders's role appears to be to generally assist Defendant's in-house legal team as *de facto*, if "not technically," in-house counsel. But that only underscores the concern that Plaintiffs' most sensitive confidential business documents would be at risk of being used for purposes other than this litigation. Producing competitively sensitive information to a lawyer who is not representing Defendant in this case is concerning because the very nature of his representation of the Tour is broad and extends beyond this case. Mr. Anders's access to Plaintiffs' highly sensitive material may inform, even inadvertently, his advice to Defendant on matters unrelated to the litigation, to Plaintiffs' competitive detriment. Put simply, Mr. Anders is not litigation counsel before the Court in these proceedings, and he therefore has no need to see Plaintiffs' confidential business documents.

Second, Ed Herlihy, one of Mr. Anders's partner, is the Chairman of Defendant's Policy Board and is involved in the decisions and facts underlying this dispute. This individual (as well as other non-in-house attorneys who act in a business capacity for Defendant) is likely to be a percipient witness in this case, and, given his business role with the Defendant, he should not be given access to Plaintiffs' Confidential and Highly Confidential business materials. That is an independent reason to deny Defendant's request. The risk of misuse here by an attorney who has not appeared in this Court and who is known to have a fiduciary duty as partner to one of the Defendant's business-side witness representatives far outweighs any need for non-litigation counsel to have access to these materials.

Separately, Defendant unfairly mischaracterizes Plaintiffs' good-faith attempt to resolve the dispute without the Court's intervention. In the spirit of cooperation, Plaintiffs have worked hard to identify reasonable compromises to ensure the parties continue to meet our Court-obligated deadlines and to prevent the parties from needing to seek the Court's involvement. To state the obvious, a willingness to compromise does not undermine Plaintiffs' objections to Defendant's unreasonable requests.

Based on the concerns described above, Plaintiffs believe that any counsel that has access to their Protected Material should be limited to (i) counsel who appear before this Court in an official capacity or (ii) to the two in-house counsel representatives for which the Protective Order will provide.

***Defendant's Position:***

The TOUR seeks to add a single, specifically-identified attorney to those who may access confidential information under the protective order. Because of its lean staffing, the TOUR's in-house legal department has employed an outside attorney to help monitor and manage this litigation—a routine process for smaller legal departments. Because that attorney is not technically an in-house counsel and not counsel of record in this matter, the Northern District Model Protective Order does not have language specifically addressing the role. To address this issue, the TOUR proposed authorizing "no more than one Consulting Outside Counsel for the Receiving Party" to access confidential material. In order to address Plaintiffs' purported concerns with this provision, the TOUR even added requirements that the Consulting Outside Counsel must be (1) a barred attorney in good standing; and (2) disclosed according to the same procedures that apply to experts and designated in-house counsel who will access Highly Confidential material, giving the Designating Party seven days to object to the attorney's access. Indeed, the TOUR even told Plaintiffs who the Consulting Outside Counsel would be: a highly qualified partner at a leading New York firm with a lengthy history of advising the TOUR (but who has not made an appearance in this case). And to be clear – and contrary to Plaintiffs' suggestion above – under the TOUR's proposal, both sides could appoint a "Consulting Outside Counsel."

Plaintiffs lack a good-faith basis for opposing the TOUR's proposed addition of one more authorized recipient of confidential information. "When evaluating a protective order which seeks to bar attorney access to confidential information, a court first looks at the risk of inadvertent disclosure, and then examines the potential injury from such disclosure." *Nazomi Commc'ns, Inc. v. Arm Holdings PLC*, 2002 WL 32831822, at *2 (N.D. Cal. Oct. 11, 2002). Here, the marginal increase to the universe of legal personnel with access to Protected Material poses no risk to Plaintiffs. The attorney filling the Consulting Outside Counsel role is similarly situated to other individuals who will have access to Protected Material. Like those individuals, the attorney filling the Consulting Outside Counsel role will be bound by the Protective Order's terms and subject to the Court's authority regarding any issues with confidential materials. Moreover, the absence of any prejudice to Plaintiffs is demonstrated by the fact that Plaintiffs offered to grant the Consulting Outside Counsel access in exchange for the TOUR dropping its objection to Plaintiffs' proposed exception to pre-filing logging. Plaintiffs have proceeded on this proposed addition as though they have a bargaining chip, not a good faith objection. Because there is no increased risk of inadvertent disclosure or harm to Plaintiffs, the TOUR respectfully requests that the Court adopt its proposed Consulting Outside Counsel provision.

| | | |
|---|---|---|
| Dated: Sept. 26, 2022 | | KEKER, VAN NEST & PETERS LLP |
| | By: | /s/ *Sophie Hood* |
| | | ELLIOT R. PETERS |
| | | DAVID SILBERT |
| | | R. ADAM LAURIDSEN |
| | | NICHOLAS S. GOLDBERG |
| | | SOPHIE HOOD |
| | | |
| | | Attorneys for Defendant |
| | | PGA TOUR, INC. |
| | | |
| Dated: Sept. 26, 2022 | | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | By: | /s/ *Anthony J. Dreyer* |
| | | ANTHONY J. DREYER |
| | | PATRICK FITZGERALD |
| | | KAREN M. LENT |
| | | MATTHEW M. MARTINO |
| | | |
| | | Attorneys for Defendant |
| | | PGA TOUR, INC. |

| | |
|---|---|
| Dated: Sept. 26, 2022 | GIBSON, DUNN & CRUTCER LLP |
| | By: _____/s/ *Rachel S. Brass*_____ |

RACHEL S. BRASS, SBN 219301
　rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
　rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
　shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
　jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
　klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
　johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
　dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
　kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
　bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs Talor Gooch, Hudson Swafford, Matt Jones, Bryson DeChambeau, Ian Poulter, Peter Uihlein, and LIV Golf Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: September 26, 2022                                                                 /s/ Sophie Hood