# Exhibit A

| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>ELLIOT R. PETERS - # 158708<br>epeters@keker.com<br>DAVID SILBERT - # 173128<br>dsilbert@keker.com<br>R. ADAM LAURIDSEN - # 243780<br>alauridsen@keker.com<br>NICHOLAS S. GOLDBERG - # 273614<br>ngoldberg@keker.com<br>SOPHIE HOOD - # 295881<br>shood@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:      415 397 7188<br><br>Attorneys for Defendant PGA TOUR, INC. | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>ANTHONY J. DREYER - (*pro hac vice*)<br>anthony.dreyer@skadden.com<br>KAREN M. LENT - (*pro hac vice*)<br>karen.lent@skadden.com<br>MATTHEW M. MARTINO (*pro hac vice*)<br>Matthew.martino@skadden.com<br>One Manhattan West<br>New York, Ny 10001<br>Telephone:      212 735 3000<br>Facsimile:       212 735 2000<br><br>PATRICK FITZGERALD (*pro hac vice*)<br>patrick.fitzgerald@skadden.com<br>155 North Wacker Drive<br>Chicago, Il 60606<br>Telephone:      312 407 0700<br>Facsimile:       312 407 0411 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIL MICKELSON; TALOR GOOCH; HUDSON SWAFFORD; MATT JONES; BRYSON DECHAMBEAU; IAN POULTER; PETER UIHLEIN, and LIV GOLF INC.,<br><br>          Plaintiffs,<br><br>     v.<br><br>PGA TOUR, INC.,<br><br>          Defendant. | Case No. 5:22-cv-04486-BLF<br><br>**STIPULATION REGARDING ELECTRONIC DISCOVERY AND DOCUMENT PRODUCTION FORMAT**<br><br>Judge:        Hon. Beth Freeman<br><br>Dept.:         Courtroom 1, 5th Floor<br><br>Date Filed:  August 3, 2022<br><br>Trial Date:  January 8, 2024 |

Unless otherwise agreed in a writing signed by the parties' counsel of record in this action, Plaintiffs Phil Mickelson, Talor Gooch, Hudson Swafford, Matt Jones, Bryson DeChambeau, Ian Poulter, Peter Uihlein ("Player Plaintiffs") and LIV Golf, Inc. (collectively, "Plaintiffs"), and Defendant PGA Tour, Inc. (collectively, "parties") hereby stipulate and agree that this Stipulation Regarding Electronic Discovery and Document Production Format ("Stipulation") shall govern the parties' discovery related to electronically stored information ("ESI")—as that term is used in Rule 34(a) of the Federal Rules of Civil Procedure—as well as the form of production of hard copy and source code documents.  Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or object to the authenticity or admissibility of any ESI produced in accordance with this protocol.  The discovery activities covered by this Stipulation are to be conducted as follows:

I. **GENERAL PROVISIONS**

1. This Stipulation will govern discovery of ESI in this case as a supplement to all other discovery rules and orders.  It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

2. This Stipulation may be modified for good cause.  The parties may agree to modifications, and if so agreed to, shall jointly submit any modifications to the Court.  If the parties cannot reach an agreement regarding proposed modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court.

3. The parties have agreed that all electronic materials produced in this action will be exchanged electronically via secure ShareFile, FTP or on CD, DVD, flash drive or hard drive. To the extent the documents are ordinarily maintained by the producing party in a form that is electronically searchable, they must be produced in a form that is electronically searchable.

4. The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-

1  discovery liaison will be, or have access to those who are, knowledgeable about the
2  technical aspects of e-discovery, including the location, nature, accessibility,
3  format, collection, search methodologies, and production of ESI in this matter. The
4  parties will rely on the liaisons, as needed, to confer about ESI and to help resolve
5  disputes without court intervention.

6  II.  **PRODUCTION OF HARD COPY DOCUMENTS**

7  1.  **PRODUCTION FORMAT.** The format of productions of hard copy documents
8  shall comply with the following requirements:

9  a. **IMAGE FORMAT.** Documents that exist in hard copy format only shall be
10  scanned and produced as single page black and white Group IV TIFFs, created
11  with a resolution of at least 300 dots per inch (dpi).  Color documents may be
12  produced in .JPG format in lieu of TIFF images; where so produced, color JPG
13  files should also be provided with a resolution of at least 300 dpi.  Each TIFF or
14  JPG image shall be branded with sequential production numbers and
15  appropriate confidentiality designations.  Each TIFF or JPG image filename
16  shall correspond to the Bates number associated with that page.  TIFF or JPG
17  files shall show all text and images that would be visible to a user of the hard
18  copy documents.

19  b. **DATABASE LOAD FILES/CROSS-REFERENCE FILES**. A production
20  shall be provided with (a) an ASCII delimited data file (.dat) using Concordance
21  default delimiters, and (b) an Opticon (Concordance Image) image load file
22  (.opt) that can be loaded into Concordance version 8 or above.  In addition:

23  i.  The total number of documents referenced in a production's data load file
24  should match the total number of designated document breaks in the
25  Image Load file(s) in the production.

26  ii.  The Opticon file should provide the beginning and ending Bates number
27  of each document and the number of pages it comprises. Each TIFF or
28  JPG in a production must be referenced in the corresponding image load

file.

  iii. In addition to the metadata fields identified for production in II(1)(d) below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

 c. **OCR TEXT FILES.** A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. The filename for the multi-page text file described above in II(1)(b)(iii) shall correspond to the beginning production number of the document. If a document is redacted, the text files shall not contain the redacted text of the documents, but should contain the remaining unredacted text.

 d. **METADATA.** The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) CUSTODIAN, and (d) CONFIDENTIALITY.

 e. **UNITIZING OF DOCUMENTS.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly to avoid producing large numbers of documents in single "clumps".

**III. PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)**

 1. **TIMING.** The collection and production of ESI shall begin pursuant to the Court's Scheduling Order (Dkt. 92).

 2. **CUSTODIANS.** The parties shall meet and confer to reach agreement on a reasonable list of custodians and search terms for purposes of collection, review, and production of ESI. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case. The parties shall then meet and confer to reach agreement on the custodians to be collected from and relevant time periods for electronic searches of the files from those custodians.

3. **SEARCH TERMS.** Each producing party shall propose a list of search terms for pending discovery requests. Search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The parties shall then meet and confer to reach agreement on the search terms for electronic searches of the files from the previously agreed to custodians. Parties have the right to review documents with search terms hits for responsiveness, and there is no obligation to produce search-term positive documents that a producing party determines are not responsive.

4. **CULLING\FILTERING.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NRSL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

5. **DEDUPLICATION.** Each producing party shall de-duplicate ESI on a global

level (across all custodians) prior to production. The basis for such de-duplication shall be the MD5 or SHA1 Hash values, or some other later agreed to de-duplication method such as full text de-duplication. For generating either the MD5 or SHA1 hash values for email, the parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation. The custodians of deduplicated copies of documents should be included in the database load file, either in the CUSTODIAN field or, alternatively, in a field for duplicative or other custodians (e.g., DUPE CUSTODIAN).

6. **STRUCTURED DATA.** The parties shall meet and confer with respect to structured data sources that contain relevant information to determine what information the reports should contain. As a general rule, data that is stored in a database, whether maintained internally by the party or through a third party provider, shall be produced as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format.

7. **BACKUP DATA.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

8. **PRODUCTION FORMAT FOR ESI.** The format of productions of ESI shall comply with the below listed requirements:

    a. **IMAGE FORMAT.** All documents covered by Sec. III of this stipulation shall be produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi), unless so excepted by Sec. III(11)(d). Color documents may be produced in .JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi. Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations.

Each TIFF or JPG image filename shall correspond to the Bates number associated with that page. TIFF or jpg files shall show all text and images that would be visible to a user of the ESI documents.

   a. **PRESENTATIONS.** The parties shall take reasonable efforts to process presentations (e.g., PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF of jpg image.

   b. **DATABASE LOAD FILES/CROSS-REFERENCE FILES.** A production should be provided with (a) an ASCII delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above.

      i. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

      ii. The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF in a production must be referenced in the corresponding image load file.

      iii. In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

   c. **TEXT FILES.** The multi-page text files described above in III(11)(b)(iii) shall include text extracted from ESI with extractable text. For electronic files without extractable text (e.g., scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the producing party shall use optical character recognition software (OCR) to generate text for the document. OCR generated text shall be provided for all documents without extractable text in the original native file unless the document is handwritten notes, drawings or is otherwise not easily convertible into a searchable format. The filename for

the multi-page text file shall correspond to the beginning production number of the document.

    d. **NATIVE FILES.** Any file produced in native format should be produced with a link in the NativeLink field, along with extracted full text and applicable metadata fields set forth in Appendix 1. Any file produced in native format should be named to match the beginning Bates number of their corresponding entries in the database load files. Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format. Only the files discussed below may be produced in native format unless both parties agree otherwise in writing.

        i. **SPREADSHEETS.** Except for the placeholder referenced in III(11)(d) above, TIFF or JPG images of spreadsheets need not be produced unless redacted. Where produced in TIFF or JPG format, the parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF or JPG images are formatted so as to be readable.

        ii. **VIDEO AND AUDIO FILES.** Audio and Video files will be produced in native format, with TIFF placeholders and available metadata provided in database load files.

        iii. **EXCEPTIONS.** For any processing exception (i.e., a file that cannot be processed by standard ESI processing tools) that is being produced due to document family relationships, the producing party shall provide a placeholder image that includes the file name of the document, a Bates number and a confidentiality designation, in addition to associated metadata.

        iv. **REQUEST(S) FOR ADDITIONAL NATIVE FILES.** If good cause exists to request production of specified files, other than those specifically set forth above, in native format, the requesting party may request such

production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder. Any dispute regarding the production of documents in native format shall be resolved by the assigned magistrate judge, as set forth in the Standing Order for the Northern District of California, San Jose Division.

e. **METADATA FIELDS AND PROCESSING.** Each of the metadata and coding fields set forth in Appendix 1 that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH; (e) CUSTODIAN; and (f) CONFIDENTIALITY, which should be populated by the party or the party's vendor.

9. **FORMAT & FOLDER STRUCTURE.** The production data may be exchanged between counsel in encrypted form (e.g., TrueCrypt, password-protected Zip, or RAR files). Productions should be made via ShareFile, FTP or secure server where possible; larger productions should be made on hard media (e.g., hard drives). Each production shall be provided in the following folder structure:

   a. **Top-level folder: This folder will indicate the production volume;**
      i. Sub-folders:
         1. IMAGES: This folder will contain multiple sub-folders with ONLY TIFF (or .jpg) files in them. No other type of file should reside in the "IMAGES" folder. Sub-folders shall not contain more than 1000 images per folder.
         2. TEXT: This folder will contain the full text files in UNICODE, UTF8 or

ANSI format in a separate folder labeled TEXT. Sub-folders shall not contain more than 1000 text files per folder.

  3. DATA: This folder will contain load files compatible with Concordance version 8 or above and Opticon.

  4. NATIVES: This folder will contain native files that the parties agree to produce during the course of this litigation. Sub-folders shall not contain more than 1000 native files per folder.

## IV. PRIVILEGE LOGS

1. For all documents withheld on the basis of privilege, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

 a. A unique number for each entry on the log.

 b. The date of document. For emails this should be the sent date of the document and for loose ESI this should be the last-modified or create date of the document.

 c. The Author of the document. For emails this should be populated with the metadata extracted from the "Email From" field associated with the file. For loose ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

 d. Recipient(s) of the document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

 e. A narrative description of why privilege is being asserted over the document. This description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

      f.    The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

2. The parties shall identify on their logs where counsel is present in the fields described in paragraphs 1(c) and (d) above.  Where counsel creating the privilege is not readily ascertainable from those fields, the parties shall include a reference to appropriate counsel in the privilege description field described in 1(e) above.

3. **[Plaintiffs' Proposal:** "Parties are not required to log privileged communications with outside counsel that were retained to represent them in this case, regardless of whether the communications were before or after the date the complaint was filed."**]**
**[Defendant's Proposal: delete this provision and rely solely on Defendant's proposed exception in Section VI, below]**

4. Email families must be logged as separate entries such that attachments have a separate narrative description.

5. Privilege logs shall be produced on a rolling basis, prior to the close of discovery. If any log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

## V. REDACTION LOGS

1. For each document that is redacted, in addition to providing the redacted version of the document, the parties agree to furnish logs which comply with the legal requirements under Federal Law, but at a minimum will include the following information:

   a. The Begin Production ID of the document.
   b. The End Production ID of the document.
   c. A description of why privilege is being asserted over the document.
   d. The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

2. Redaction logs shall be produced on a rolling basis, prior to the close of discovery.

If any log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

## VI. EXCEPTION TO LOGGING - POST FILING DATE PRIVILEGE DOCS

[**Plaintiffs' Proposal:** Communications involving inside or outside counsel for the parties related to this case, and materials withheld from discovery on grounds of privilege, work product or similar doctrines, that were created on or after August 3, 2022, need not be included on the parties' privilege and redaction log(s) as a matter of course.] [**Defendant's Proposal**: Communications involving inside or outside counsel for the parties to this case, and materials withheld from discovery on grounds of privilege, work product, or similar doctrines, that were created on or after the party asserting the privilege was named as a party to this case need not be included on the parties' privilege and redaction log(s) as a matter of course.] These exceptions are made without prejudice to any party's ability and right to assert that such materials are discoverable and not privileged or protected. These exceptions also do not apply to the redacted documents and their respective redaction log(s).

## VII. INADVERTENT PRODUCTION OF PRIVILEGED INFORMATION

Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected ESI is not a waiver of privilege or protection from discovery in the pending case or in any other federal or state proceeding. This ESI Protocol provides a general framework for the production of ESI. The parties and their attorneys do not intend by this protocol to waive their rights to the attorney work-product privilege, except as specifically required herein, and any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information not specifically described herein. All parties preserve their attorney client privileges and other privileges and there is no intent by this ESI Protocol, or the production of documents pursuant to this ESI Protocol, to in any way waive or weaken these privileges. For example, the mere production of privileged or work-product-protected information in a litigation as part of a mass production shall not itself constitute a waiver for any purpose..

If a producing party inadvertently produces ESI that the producing party believes is subject

to the attorney-client privilege or work product protection, the producing party shall inform the receiving party in writing as soon as possible. On receipt by a receiving party notice that a producing party has inadvertently produced ESI that the producing party contends is subject to the attorney-client privilege or work product protection, the receiving party shall immediately take steps to sequester the inadvertently produced ESI and shall agree to meet and confer with the producing party regarding its assertion of the attorney-client privilege or work product protection within 7 days. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection. If a receiving party receives information that appears to be subject to the attorney-client privilege or work product protection, the receiving party shall inform the producing party in writing as soon as possible.

**VIII.   COMMUNICATIONS WITH EXPERTS**

Drafts of reports, declarations, or affidavits prepared by an expert who may give testimony in this case ("Testifying Expert"), or his or her assistants, as part of the Testifying Expert's investigation and/or in developing the Testifying Expert's opinions and reports shall not be subject to discovery. This limitation applies regardless of whether such draft reports have been disclosed, or otherwise transmitted to, or contain any notes, writing, or markings created by in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert.

Notes and other documents prepared by a Testifying Expert, or his or her assistants, as part of the investigation and/or in preparing an expert report shall not be subject to discovery.

Discovery of materials provided to Testifying Experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the Testifying Expert in formulating his/her final report(s), trial or deposition testimony or any opinion in the above-captioned Investigations.

No discovery may be taken from any consulting expert that will not provide testimony and/or an expert opinion ("Consulting Expert"), including with respect to drafts of reports, if any, prepared by an expert except to the extent that the Consulting Expert has provided information,

opinions, or other materials that a Testifying Expert relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned Investigations.  Where a Consulting Expert has provided materials or information that a Testifying Expert has relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion, discovery (other than depositions) may be taken of the Consulting Expert regarding those specific materials and information.  The limitations herein do not preclude a party from discovery of prior opinions or testimony of an expert in matters other than the above-captioned Investigations, to the extent the prior opinions or testimony are related to and/or may be inconsistent with the opinions given in the above- captioned Investigations.

Written or oral communications between any Testifying Expert or Consulting Expert, his or her assistants, and/or in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert or Consulting Expert, are not subject to discovery unless the conversations or communications are relied upon by a Testifying Expert in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned Investigations.

Notwithstanding the foregoing, experts reports must disclose all documents and things considered or relied upon by the expert with reference to this case, including definitions and possible prior art, and including any documents or things provided by counsel or by the expert's staff, although communications forwarding or otherwise concerning such source documents or things are not discoverable.

## IX.    MISCELLANEOUS

This Stipulation is entered into without prejudice to the right of any party to apply to the Court at any time for modification of this Stipulation.  Furthermore, without application to this Court, the parties may agree in a signed writing to modify the terms of this Stipulation.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| Dated:  Sept. 26, 2022 | KEKER, VAN NEST & PETERS LLP |
| | By: /s/ *Elliot R. Peters* |
| | ELLIOT R. PETERS |
| | DAVID SILBERT |
| | R. ADAM LAURIDSEN |
| | NICHOLAS S. GOLDBERG |
| | SOPHIE HOOD |
| | |
| | Attorneys for Defendant |
| | PGA TOUR, INC. |
| | |
| Dated:  Sept. 26, 2022 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | |
| | By: /s/ *Anthony J. Dreyer* |
| | ANTHONY J. DREYER |
| | PATRICK FITZGERALD |
| | KAREN M. LENT |
| | MATTHEW M. MARTINO |
| | |
| | Attorneys for Defendant |
| | PGA TOUR, INC. |

| | |
|---|---|
| Dated: Sept. 26, 2022 | GIBSON, DUNN & CRUTCER LLP |
| | By: _____/s/ Rachel S. Brass_____ |

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
  shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
  jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
  klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile:   650.801.5100

*Attorneys for Plaintiffs Talor Gooch, Hudson Swafford, Matt Jones, Bryson DeChambeau, Ian Poulter, Peter Uihlein, and LIV Golf Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: Sept. 26, 2022                                            /s/ Sophie Hood

**Appendix 1:  ESI Metadata and Coding Fields**

A. **Imagebase Load File (.opt) must be in Concordance Image/Opticon (.opt) format and include a record for each page with the following fields:** ALIAS, VOLUME, PATH, DOC_BREAK, FOLDER_BREAK, BOX_BREAK, PAGES

B. **Metadata Load File (.dat)** must include a record for each document and use Concordance default delimiters, as follow:

>  Field Delimiter  =  (ASCII 020)
>  Text Delimiter   =  þ (ASCII 254)
>  Line Delimiter   =  ® (ASCII 174)

C. The following fields will appear in the metadata load file in the order displayed below:

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| DUPE CUSTODIAN | Name(s) of any individual(s) who possessed a duplicate copy of the document produced. |
| SUBJECT | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| DATERCVD | Date on which email message was received (MM/DD/YYYY) |
| TIMERCVD | Time at which email message was received |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| CONVERSATIONINDEX | The conversation index extracted from the produced email message where available |

1915771

| Field Name | Field Description |
|---|---|
| AUTHOR | Any value populated in the Author field of the document properties |
| LASTAUTHOR (Edoc only) | Last author or editor of document, from document properties |
| FILENAME (Edoc only) | Filename of an electronic document |
| FILEEXT | File extension |
| FILEPATH | Path to file or message |
| FILESIZE | The original file size of the produced document |
| DATELASTMOD (Edoc only) | Date an electronic document was last modified (format: MM/DD/YYYY) |
| TIMELASTMOD | Time at which document was last modified |
| DATECREATED (Edoc only) | Date the document was created (format: MM/DD/YYYY) |
| TIMECREATED | Time at which document was created |
| TITLE | Title of document, from document properties |
| CONFIDENTIALITY | All Confidentiality designations |
| PAGE COUNT | The number of pages of the produced document |
| MD5HASH | A calculated value unique to each identical file. The producing party may substitute the SHA1 Hash value, but will name the field accordingly to indicate such substitution |
| TEXTPATH | Path to the associated multi-page/document level text file for each produced document |
| NATIVEPATH | Path to the associated native file where applicable |
| PRODVOLUME | The production volume associated with the produced file |
| TXT-CHATROOMNAME | Name of chat room used in the communications |
| TXT-PARTICIPANTS | List of participant names and/or telephone numbers. |
| TXT-BODY | Body of text messages, instant messages, notes, or chats. Do not populate for emails or calendar items. |
| TXT-STATUS | Indicate whether text was Sent or Read on the device. |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in a conversation or chat. |

1915771