RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOHN B. QUINN (Bar No. 090378)
johnquinn@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

ROBERT P. FELDMAN, SBN 69602
bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs LIV Golf, Inc., Matt Jones, Bryson DeChambeau, and Peter Uihlein*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIL MICKELSON; TALOR GOOCH; HUDSON SWAFFORD; MATT JONES; BRYSON DECHAMBEAU; IAN POULTER; PETER UIHLEIN, and LIV GOLF INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant. | Case No. 5:22-cv-04486-BLF<br><br>**JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1**<br><br>Judge:     Hon. Susan van Keulen<br><br>Dept.:      Courtroom 1, 5th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |
| PGA TOUR, INC.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF, INC.,<br><br>Counter-Defendant. | |

Plaintiff LIV Golf, Inc. ("LIV") and Defendant PGA Tour, Inc. ("the Tour") jointly submit this statement pursuant to the Court's Standing Order. LIV served a single interrogatory on the Tour on August 31, 2022. On September 27, 2022, the Tour responded with objections only. On September 28, 2022, LIV requested that the Tour meet and confer and provide a response. The parties met-and-conferred by video conference on September 30, 2022 and through subsequent correspondence, but were unable to reach agreement. Pursuant to the Standing Order, a joint chart that sets forth the disputed request and the response thereto is attached as **Exhibit A**. The close of discovery is March 3, 2023.

## I.   LIV'S POSITION

The Amended Complaint alleges the Tour violated the antitrust laws, in part through (a) numerous communications to professional golfers and other businesses threatening consequences for associating with LIV;[1] and (b) numerous communications regarding LIV between the Tour and others in the self-proclaimed global golf "ecosystem" it controls.[2] These communications evidence the Tour's efforts to harm LIV and golfers who play with it, and to coordinate with other golf entities to prevent competitive entry by LIV and others. These communications by the Tour are central to this case. It appears that the Tour either is trying to hide them or to slow-roll discovery as part of a larger attempt to stall the Court's approved case schedule (dkt. 92).

LIV's Interrogatory asks that the Tour "[i]dentify each individual who communicated on behalf of the PGA Tour with any other person (including Tour Members) or entity regarding any New Tour" and with whom they communicated ("New Tour" being a defined term that includes LIV Golf and other potential entrants). The Interrogatory also requests the Tour to identify with whom its agents spoke and the date and the mode of communication. This Interrogatory is well within the scope of permissible discovery.

The Tour's communications to players, small businesses, and other professional golf stakeholders are crucial to LIV's case. The Tour has used its dominance to pressure key stakeholders to stay away from LIV or face certain loss of Tour business. Since the lawsuit was filed, the Tour has continued to make these threats—forcing Japan Golf Tour to agree to the Tour's (and the DP World Tour's) demand that it not allow Japan Tour members to play in LIV events, which caused Japanese Tour golfers to withdraw from them.[3] The Tour has also threatened broadcasters who might carry LIV events. These are two of many examples of the Tour threatening others to forestall competition with LIV. Plaintiffs also allege that the Tour has communicated with the European Tour, other Tours, the four Majors tournaments, and the golf ranking association, seeking their assistance to prevent or hamper LIV's entry. Those communications are continuing and Plaintiffs are entitled to discovery of them through this Interrogatory. These threats and communications harm LIV, Player Plaintiffs, competition, and are an afront to the antitrust laws. The Tour is trying to prevent discovery of these communications, the identity of those who made them and with whom they were made. This information will inform the rest of discovery in the case, party and third-party alike. And the Federal Rules envision this type of discovery at the outset, because parties need to know the identity of persons having discoverable matter. *See* Rule

---

[1] *See, e.g.*, Amended Complaint ¶¶ 3, 6, 11, 26, 89-92, 123-130, 144-145, 147, 155-160, 164-168, 186, 188, 194, 203, 218, 222, 226, 230, 234, 238.

[2] *See, e.g.*, *id.* ¶¶ 11, 86, 87, 97, 126, 137, 145, 146, 147, 153, 161, 182, 199, 309, 343.

[3] "Japan Golf Tour Releases Statement Amid Golf's Civil War," Golf Monthly, Oct. 2, 2022, *available at* https://www.golfmonthly.com/news/japan-golf-tour-releases-statement-amid-golfs-civil-war.

1

JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF

26(a)(1)(A)(i).  LIV needs to know the means and dates of the communications to seek the documents and testimony to which it is entitled.

An interrogatory requesting "the identity and location of persons having knowledge of any discoverable matter" is appropriate.  Wright & Miller, FED. PRAC. & PROC. § 2165 (3d ed., updated Apr. 2022).  *Compare* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information").  The Comments to the 2015 amendment to Rule 26 underscore the point, stating that the "discovery of 'the identify and location of persons who know of any discoverable matter' . . . is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with [that] example[]."  Rule 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)."  "One of the most useful provisions of [Rule 26(b)] is that allowing discovery of 'the identity and location of persons who know of any discoverable matter."  Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2013 (3d ed.); *see also id*. n.5 (citing cases).

Initially, the Tour responded with boilerplate objections and refused to answer the Interrogatory at all.  Instead, it offered to produce unspecified documents at some unspecified date from which LIV could try to find the information on its own and to identify oral communications from a handful of custodians even later.  After the Tour made a proposal that failed to cure the defects in its initial response, LIV rejected it and proposed that the Tour email the 83 officers and employees in the organization charts it had produced and others "likely" to have knowledge of the relevant communication.  That would have been an easy email to write, an obvious way to gather the information to which LIV is unquestionably entitled, and had the Tour done so, LIV would have had that information ten days ago.  The Tour rejectd LIVs proposal and countered that in addition to five custodians to which it had agreed, it would agree to add five custodians of LIV's choosing.  The Tour's email also strongly suggested that in the 36 days since receiving the Interrogatory, it had not contacted *anyone* to seek the information sought by the Interrogatory.

The Tour's initial response was patently inadequate, its "compromise" only slightly less so.

Under Rule 33(b)(1), the "grounds for objecting to an interrogatory must be stated with **specificity**" (emphasis added).  Posing an objection is not enough; the party must explain how the objection applies to the interrogatory at issue.  *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981).  The Tour explains none of its objections; it simply asserts them.  Parroting "vague" and "ambiguous" without specifying how does not suffice.  *Davis*, 650 F.2d at 1160.

While Rule 33(d) permits "[a] party [to] answer an interrogatory by specifying records from which the answers may be obtained and by making the records available for inspection," a party that elects to avail itself of this option must, at a minimum, "specify where in the records the answers [can] be found." *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  It cannot rely on vague references to documents yet to be possibly produced in the future. *Kaneka Corp. v. Zhejiang Med. Co. Ltd.*, 2016 WL 11266869 *8 (C.D. Cal. 2016).  *See also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D.295, 305 (D. Kan. 1996) ("Under the guise of Fed. R. Civ. P. 33(d)[,] defendants may not simply refer generically to past or future production of documents").

The Tour's "compromise" is wholly inadequate.  To frame proper discovery, Plaintiffs need to know at the outset (not near the end of discovery) who at the Tour spoke to whom at the other Interrogatory 1 entities about LIV Golf and the other failed new entrants, information Plaintiffs are entitled to receive under Rule 26, Rule 33, and case law applying them.  Rather than undertake a reasonable investigation to identify those communications and timely provide them, the Tour (a) initially provided no information at all; (b) after burning through a ten day meet-and-confer period, offered at some point in the future to identify the entities (but not the individuals) with whom **ten** custodians communicated; and (c) to identify at a more distant date documents on a narrow set of

2

JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF

topics from a small number of custodians which address that issue (without identifying where in the document). This proposal is well-calculated to shield the great majority of the most relevant communications in the case and has stymied LIV's ability to properly plan discovery.

During the meet-and-confer conference, the Tour's principal objection was that the interrogatory did not put subject matter limits on its communications with other entities, hence, was vastly overbroad and unduly burdensome. Whatever merit that argument has in other cases, one can scarcely imagine a case to which it is less suited. The Tour's communication with the Majors, other leagues, golfers, broadcasters, advertisers, sponsors and vendors about LIV and other failed new entrants are unquestionably relevant here. After Plaintiffs pointed that out in the meet-and-confer, the Tour came up with a fallback justification: the interrogatory would purportedly require it to interview every single of its more than 1000 employees. In a word, nonsense. The Rules contemplate a *reasonable* investigation, not an omniscient one, which is why LIV offered a compromise of the 83 individuals on the organization charts the Tour had produced and others "likely" to have relevant information. Which the Tour rejected and countered that it would contact a total of *ten* custodians, *none* of whom it evidently has yet contacted.

Respectfully, the Tour's conduct at issue is indefensible. The Amended Complaint is replete with specifically identified Tour communications with others that violate the antitrust and other laws. These communications either threaten third parties if they deal with LIV or seek agreement from other entities to act in concert with the Tour to harm LIV. *See supra* n.1. LIV is certainly entitled to know who made those communications to whom. Boiled down, that is all the Interrogatory is asking for. And LIV should have had that information ten days ago.

At the status conference setting a January 2024 trial date, the Court stated that date was achievable if counsel and the parties worked cooperatively to get the necessary work done on time. The Tour's playbook since has been delay—with its non-response to LIV Golf's single interrogatory only the latest example. The Tour and its counsel has not heeded the Court when it instructed them to get to work without gameplaying and delay. They have done the opposite.

LIV Golf's motion to compel should be granted and the Court should grant the relief sought in Plaintiffs' compromise (*see supra* 2:10-11), as set forth more fully in Plaintiffs' Proposed Order.

## II.  THE TOUR'S POSITION

LIV's submission tellingly elides the central issue in this motion: that Interrogatory No. 1, even as revised by LIV, imposes an undue burden on the TOUR, exceeds the bounds of relevant and proportional discovery, and goes well beyond the acceptable parameters of a Rule 33 request. In no world is demanding a party to interview more than *83* individuals (and likely hundreds more) and produce responsive information from those interviews in less than one week a reasonable request. Rather than address this issue, LIV relies on numerous falsehoods and irrelevancies to draw attention from the fact that it cannot justify the discovery it seeks.

For example, contrary to LIV's assertion, the TOUR is not trying to hide documents or delay discovery; in fact, on October 3, the TOUR made an initial production of more than 5,200 documents—totaling nearly 25,000 pages (roughly five times what LIV produced)—hundreds, if not thousands, of which include communications that are responsive to Interrogatory No. 1. Nor is the TOUR refusing to identify the documents in its production that reflect the communications sought in the Interrogatory. The TOUR has met and conferred in good faith by proposing compromises that would provide responsive information to LIV on an expedited timetable, only for LIV to reject summarily the TOUR's compromises in favor of LIV's overbroad, unreasonable and disproportionate request.

LIV deems the TOUR's responses and objections to Interrogatory No. 1 (the "Response") to be "boilerplate objections lacking specificity or explanation." To the contrary, the TOUR's

3

JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF

objections specify the overly broad, unduly burdensome and vague nature of this request. As drafted, Interrogatory No. 1 would require the TOUR to identify *any* TOUR employee who, over a nearly four-year period, communicated with another person or entity (except counsel or the press) *on any topic* related to "any prospective or any new professional golf tour or league or promoter of professional golf events." It would also require the TOUR to list the date and manner of, and participants in, any such communications. Moreover, Interrogatory No. 1 does not limit the request to a specific subset of TOUR employees; it requests all communications for "each individual who communicated on behalf of the [TOUR]." LIV has yet to provide *any* explanation as to what it means—and as a result, who would qualify—to communicate "on behalf of the TOUR."

As a result, it became clear that answering Interrogatory No. 1 would require the TOUR to interview more than *1,100* TOUR employees to identify any and all communications having to do with LIV or any other new golf tour or league over the last four years—which would take months to conduct, and further would require the TOUR to document narratively the "who," "how" and "when" of each communication. Rule 33 does not allow LIV to use interrogatories as a cudgel to force the TOUR to conduct interviews of a workforce of more than 1,100 people. *See, e.g., Eisai Inc. v. sanofi-aventis U.S., LLC*, No. CV 08-4168 (MLC), 2012 WL 12917134, at *8-9 (D.N.J. June 11, 2012) (denying motion to compel interrogatory response in Section 2 monopolization case where response would require defendant to interview 75 sales force representatives allegedly involved in anticompetitive conduct); *Jeffryes v. Hartford Life & Acc. Ins. Co.*, No. 05-CV-01770-EWN-CBS, 2006 WL 1186493, at *2 (D. Colo. May 4, 2006) (denying motion to compel response to interrogatories that sought the identity of every individual on behalf of defendant who was in any way involved with the insurance claim determination at issue in the litigation because interrogatories were "patently overbroad and unduly burdensome by failing to distinguish between those individuals who had played a substantive role in the claim determination and those individuals who had only de minimis contact with" the disputed claim). Not surprisingly, LIV offered no authority to the contrary.

Demanding the TOUR to undertake this onerous process is particularly unreasonable given the fast track on which this case is proceeding—a process that LIV itself requested—with substantial completion of document discovery by November 18, 2022. Given LIV's request for an expedited schedule, both parties must appropriately tailor their requests to discovery that is truly relevant and proportional to the needs of the case. LIV's Interrogatory No. 1 flunks that test.

LIV's assertion that "the [TOUR] intends not to answer the Interrogatory at all" is incorrect and disingenuous. The TOUR merely sought to meet and confer with LIV in good faith to negotiate a more reasonable scope instead of undertaking the expansive and undefines interviews LIV's request demands. In fact, the TOUR has made clear that it would not only produce and specify which documents are responsive to Interrogatory No. 1, but also produce a written supplement following such productions identifying other responsive communications that are not contained within the documents produced.

Far from "dragging its feet," on Monday—one business day after the parties first met and conferred regarding the Interrogatory—the TOUR offered a compromise pursuant to which it would: (i) produce any non-privileged *written communications* with third parties concerning LIV or the PGL that resulted from running agree-upon search terms against the files of agreed-upon custodians; (ii) identify on a rolling basis which documents in its production contained responsive communications; and (iii) interview those same custodians and identify which had any *oral communications* about LIV or the PGL with any of the third parties listed in subparts (a)-(p) of Interrogatory No. 1, and if so, identify which such third parties. This compromise is more than

JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF

fair and reasonable, and is proportionate to the burdens on the TOUR, the needs of LIV and LIV's ability to examine TOUR witnesses on these topics.

LIV rejected the TOUR's proposal out-of-hand two hours after receiving it and later offered a purported "compromise" that was still overbroad and vastly disproportionate to the needs of the case.  Under that proposal, the TOUR would be required to interview via email:  (i) *83* employees on the organizational chart produced by the TOUR and (ii) "[all] other employees of the [TOUR] who are likely to have dealt with broadcasters, sponsors, vendors, the DP World Tour, other golf tours, the majors, and the OWGR," asking such employees to identify all such communications they have had with those entities—including with whom they communicated—regarding LIV, the PGL and/or the Saudi Golf League.  The TOUR would then be required to produce the results of the interviews *within one week* of receiving LIV's proposal.

LIV's proposal, while marginally less onerous, still imposes a drastic and undue burden on the TOUR, and is in no way "reasonable."  It still requires the TOUR to contact and speak with hundreds of TOUR employees—not only the 83 employees LIV specifically identified—but also all other employees "who are likely to have dealt" in any way with the numerous third parties listed in LIV's proposal.  And it forces the TOUR to determine whether any of these employees had any dealings or even communications with third parties about LIV, the PGL or Saudi Golf League, *regardless of the nature of the communications*.  And the TOUR would have to determine all of this information and provide a response to LIV within one week.  In addition, LIV insists that the TOUR also conduct the interviews and related document productions that the TOUR offered as its compromise proposal.

LIV's approach would place an undue burden on the TOUR and take numerous weeks and potentially months to complete given the number of individuals at issue and information LIV has demanded.  This is precisely the type of use of interrogatories that courts have rejected.  *See, e.g.*, *Eisai*, 2012 WL at *8-9; *Jeffryes*, 2006 WL at *2.

As an alternative, the TOUR proposes that it:  (i) contact the agreed-upon TOUR custodians, plus five additional TOUR employees of LIV's choosing; (ii) determine whether any of those individuals spoke with any third party (aside from press or counsel) since 2021 about LIV, the PGL or Saudi Golf League; (iii) provide the identities of any such third parties with whom the TOUR employees spoke, to the extent those third parties' identities are reasonably ascertainable, (iv) conduct a search of agreed-upon custodians using agreed-upon search terms for non-privileged communications with third parties regarding LIV, the PGL or Saudi Golf League; and (v) identify documents containing such communications in conjunction with the TOUR's document productions.  LIV could then pursue these issues through depositions or other discovery tools.

LIV has declined this approach—without any discussion or explanation other than emailing that it is "unacceptable . . . for multiple reasons, as we'll explain in [LIV's] portion of" this statement—and instead seeks to put the TOUR through the unnecessary burden of conducting a time-consuming broad inquiry while at the same time insisting all discovery production (including the production of documents in response to more than 70 requests for production) be substantially completed in a six-week period.  LIV's proposed approach is inconsistent with the rules and would be impossible to complete on the accelerated case schedule LIV demanded in this case.  For these reasons, LIV's motion should be denied, and the TOUR's most recent proposal should be adopted.

Dated: October 7, 2022            GIBSON, DUNN & CRUTCHER LLP

By:     /s/*Rachel Brass*

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
  shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
  jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
  klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile:   650.801.5100

*Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau, Peter Uihlein, and LIV Golf Inc.*

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED:  October 7, 2022 | Respectfully submitted, |
| 3 | | |
| 4 | | /s/ *Anthony J. Dreyer* |
| 5 | KEKER, VAN NEST & PETERS LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |

KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ANTHONY J. DREYER - (admitted pro hac vice)
anthony.dreyer@skadden.com
KAREN M. LENT - (admitted pro hac vice)
karen.lent@skadden.com
MATTHEW M. MARTINO - (admitted pro hac vice)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:     212 735 3000
Facsimile:     212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
PATRICK FITZGERALD - (admitted pro hac vice)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, IL  60606
Telephone:     312 407 0700
Facsimile:     312 407 0411

*Attorneys for Defendant PGA TOUR, INC.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: October 7, 2022

                                            /s/ *Rachel Brass*
                                            Rachel Brass

8

JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF