RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOHN B. QUINN (Bar No. 090378)          ROBERT P. FELDMAN, SBN 69602
johnquinn@quinnemanuel.com              bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &                QUINN EMANUEL URQUHART &
SULLIVAN, LLP                           SULLIVAN LLP
865 South Figueroa Street, 10th Floor   555 Twin Dolphin Dr., 5th Floor
Los Angeles, California 90017-2543      Redwood Shores, California 94065
Telephone:    (213) 443-3000            Telephone: 650.801.5000
Facsimile:    (213) 443-3100            Facsimile: 650.801.5100

*Attorneys for Plaintiffs LIV Golf, Inc.,*
*Matt Jones, Bryson DeChambeau, and Peter*
*Uihlein*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIL MICKELSON; TALOR GOOCH; HUDSON SWAFFORD; MATT JONES; BRYSON DECHAMBEAU; IAN POULTER; PETER UIHLEIN, and LIV GOLF INC.<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant.<br>_____<br>PGA TOUR, INC.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF, INC.,<br><br>Counter-Defendant. | Case No. 5:22-cv-04486-BLF-SVK<br><br>**JOINT STATEMENT REGARDING PGA TOUR'S AMENDED OBJECTIONS AND RESPONSES TO LIV GOLF'S INTERROGATORY NO. 1**<br><br>Judge:    Hon. Susan van Keulen<br><br>Dept.:    Courtroom 1, 5th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |

Plaintiff LIV Golf, Inc. ("LIV") and Defendant PGA Tour, Inc. ("the Tour") jointly submit this statement pursuant the Court's Order Following Discovery Hearing dated October 14, 2022 (Doc. 125) ("Order").  The Tour's Amended Response to LIV's Interrogatory No. 1 ("the Interrogatory") is attached as **Exhibit A-1**; Exhibit A to the Interrogatory is attached as **Exhibit A-2**.

## I.   LIV'S POSITION

This is an antitrust conspiracy and monopolization case in which the incumbent monopolist threatened players, vendors, sponsors and others that if they dealt with LIV, the Tour would blacklist them.  Identifying these communications was the first order of business for LIV as it would guide identification of custodians, potential deponents and the need for third-party subpoenas. Yet the Tour continues to conceal this critical information.

After the hearing on October 14, 2022 and reviewing the Court's Order, LIV took the Court's guidance seriously.  It met-and-conferred with the Tour the next day (Saturday).  It agreed to substantially limit the Interrogatory.  *See* **Exhibit A-1** a 2:23-25 (limiting Subject Matter to five entities) **& Exhibit A-2** (limiting Golfing Bodies to six entities, Golf Tours to six, Broadcasters to 20, Agents and Agencies to 28 and Golfers to 71).  It inquired during the meet-and-confer on how the Tour was interpreting "authorized" as used in the Court's Order (the "Tour is to identify in a verified interrogatory response all individuals who were authorized to speak on behalf of the Tour") and received an acceptable answer (viz., the Tour agreed that if someone at the Tour asked another person to contact a relevant third party on a relevant subject matter and the outside persons did so, both communications would be identified).  Based on the conference and follow-up emails, LIV understood the Tour had agreed on the scope of the Interrogatory and that LIV would receive an acceptable response.  As it turned out, the Tour continued to withhold this critical information.

The Tour's October 19, 2022 *verified* response swore that out of all its more than 1000 employees and officers, its Board Members and its 250-plus Tour member golfers, only *13* people (all of which are Tour employees or officers) were "authorized" to speak on its behalf to five leading golf bodies (all are closely aligned with the Tour), six golf tours (same), 28 agents and agencies, and 71 Tour members, with respect to the Premier Golf League and LIV, which the Tour has stated in internal documents poses a threat to its existence.  This responses defies credulity.  And the facts confirm the Tour's response is grossly deficient.

The parties had agreed to modify the Tour's obligation under the Order to respond by noon Pacific on October 19th, allowing the Tour to respond with respect to vendors, sponsors and broadcasters the next day.  After receiving the Tour's October 19th response, LIV sent a lengthy and specific email to the Tour that same day.  The email stated:

- the Tour's response had identified only one employee in its Player Relations Group as having relevant communications, but LIV had reliable information at least four other Tour employees in that group had relevant communications;
- the Tour's response failed to identify *any* third parties who had relevant communications on its behalf, although LIV has reliable information that Tour has asked a number of third parties to communicate on its behalf—and they did so;
- the Tour's Response did not identify any of its Directors as having relevant communications, but the Tour has produced an email to the PGA Commissioner attaching a memorandum of talking points for the Directors to communicate to players and others about "Saudi golf" (even though the document is not confidential, the Tour designated it Highly Confidential; LIV would respectfully request to show it to the Court *in camera* at the hearing); and
- LIV has reliable information that the Chairman of the Tour's Board (not listed) had relevant communications with the Majors and players.

Since sending that email, LIV has identified another communication, also designated as

Confidential, which shows the Tour's Chief Operating Officer, again not identified in the Response, communicating to a vendor about LIV. And it has identified another communication in which the Tour asked one of the Majors to convey threats to the Asian Tour.

At the meet-and-confer the next day, LIV learned one reason why Tour's Response was so deficient. Although LIV could not understand the Tour's tautological definition of "authorized" (which has no greater granularity than a communication is "authorized" only if it is "authorized"), it learned that the Tour interprets its definition to mean its own ***Directors*** do not have authority to speak on its behalf. For example, according to the Tour, its verified response is complete because:

- If a PGA Tour employee asked golfer Jason Day to communicate to Lexus that it should not work with LIV or players who signed with LIV, and Mr. Day did so (which LIV has reliable evidence happened), Mr. Day would not be identified because he is not "authorized" to speak on behalf of the Tour.
- if the Chairman of the Tour Policy Board, Ed Herlihy, communicated to Majors and players that LIV is a threat and must be attacked, Mr. Herlihy would not be identified because he is not "authorized" to speak on behalf of the Tour;
- if the Commissioner Monahan asked Tiger Woods and Rory McIlroy to publicly comment that golfers who join LIV will not be able to play in future Majors to dissuade young golfers from joining LIV, and they did so, Mr. Woods and Mr. McIlroy would not be identified because they are not "authorized" to speak on behalf of the Tour; and
- if the Board of Directors of the Tour received a memorandum from Commissioner Monahan with talking points they should make throughout the global golf "ecosystem" about "Saudi golf" and they made those communications, the Directors would not be identified because they are not "authorized" to speak on behalf of the Tour.

On Thursday, October 20, 2022, the Tour revised its Amended Response to include individuals who communicated to vendors, broadcasters, and sponsors. Only sixteen additional Tour employees were identified, all of whom were identified as having relevant verbal communications. In total, the final Response identified 31 Tour employees, the 13 identified on October 19th, two the Tour added after the October 20 meet-and-confer, and the final 16. No Directors were identified. No players were identified, although LIV has solid evidence Tour player members were asked by the Tour to make relevant communications and did so. And Ron Price, the Tour's Chief Operating Officer, was not identified, although the Tour's document production (in another document marked Confidential) shows that he communicated to a vendor a message that is highly relevant and which LIV has learned left the vendor "white as a ghost."

The Tour's Response is seriously deficient on a number of fronts, most especially with its Alice-in-Wonderland positions that (a) the Tour's Directors are not authorized to speak on its behalf and (b) Tour employees are only "authorized" to speak on its behalf if they are "authorized." This made-up definition is sharply at odds with governing law. *See* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2, Sec. A, Instr. 3, at 19, (2016 ed.) (Sherman Act Section One – Corporations ("[A] corporation is person, but it acts only through its agents . . . ***A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority."*** (emphasis added))). The Court gave the same instruction at the October 12, 2022 hearing, indicating the Tour needed to identify "[t]hose who speak on the Tour's behalf." (Tr. 29:18.)

The Model Instruction is exactly the position LIV urged the Tour to adopt on "authorized," viz., if an employee had a relevant communication "within the scope of the [employee's] employment or apparent authority," that was a relevant communication. This definition should include Tour employees in its Player Relations Group who were talking to players about LIV, and yet the Tour excluded these employees. And the Tour's position that its Directors lack authority to speak on its behalf is upside down. Under Section 4.02 of its Bylaws, the Board is empowered "to determine

2

the policies of the Corporation, to elect its officers and to supervise its management." The Board *controls* the Company. Its Directors speak for the Tour.

Not only is the Tour's Response seriously deficient, it strongly undermines its adamant position to the Court that a document production was the best way to provide LIV evidence of all relevant communications. Despite its implausibly narrow definition of "authorized," *all 31* persons identified *had verbal communications*. Most of these individuals were not identified in the Tour's Rule 26 disclosures, its proposed custodian list, or on the partial org chart provided by the Tour. Had the Tour's position been accepted, their communications would have remained hidden.

The Response's limited value is reduced even further because the Tour for the most part only identified communications with *groups*, not the entities within the group. For example, Commissioner Monahan is identified as having communicated with "Golfing Bodies, Golf Tours, Broadcasters, Sponsors, Vendors, Agents, [and] Golfers." **Exhibit A-1.** LIV's understanding of the hearing is that LIV asked for *individual persons* to be identified, and the Court indicated that was for later, for now the entity or company had to be identified, not the individual. *See* Oct. 14, 2022 Tr. at 37:3-10 (LIV counsel indicating individuals should be identified when reasonably available), 39:2-14 (same). Then (at 43:21 to 44:6), LIV again asked directly that individuals, not just companies, be identified when possible. To that specific question, the Court stated: "We're going to – we're not going to go there yet . . . because we need to see how big this list is." *Id.* at 44:9-10. As LIV understood at the hearing, and as the transcript appears to support, the Court was indicating that the *individuals* with whom the Tour had communications would be identified later, but for now the Tour had to identify the specific *entities*. Being told Commissioner Monahan had communications with "Golfing Bodies, Golf Tours, Broadcasters, Sponsors, Vendors, Agents, [and] Golfers" does not begin to provide enough information for LIV to plan discovery, including critical third-party discovery.

LIV looks forward to Monday's hearing and to the Court's continued guidance.

## II.    THE TOUR'S POSITION

In the past week, the TOUR undertook a significant investigation to comply with the Court's October 14, 2022 Order. The resulting Amended Response to Interrogatory No. 1 ("Amended Response") provides LIV, as the Court instructed, "a list of … the individuals who are making the representations that you care about in terms of your suit." Oct. 14 Discovery Hr'g Tr. ("Tr.") at 36:22-24. LIV now demands more than the Court ordered—more individuals, beyond those authorized to speak regarding the agreed-upon subject matter; more details, beyond the agreed-upon descriptions of whom received the communications at issue; and, at core, more discovery, beyond what is reasonable for a single interrogatory under Rule 33. LIV ignores the Court's admonition that "[b]oth sides are going to have to let go of what was presented to me as very entrenched positions." Tr. at 16:5-6. The Court should reject LIV's continued efforts to cling to the original scope of its overbroad and unduly burdensome interrogatory.

**Background:** Consistent with the October 14 Order, the parties narrowed Interrogatory No. 1 to require identification of (i) individuals who had the authority to speak on behalf of the TOUR between September 1, 2019 to present *regarding* LIV Golf, Premier Golf League, Super Golf League, Saudi Golf League and Public Investment Fund of the Kingdom of Saudi Arabia's interest in golf ventures (the "Subject Matter"), and (ii) the agreed-upon entities (the "Entities") with which such individuals had the authority to speak on behalf of the TOUR. *See* Order Following Discovery Hr'g (the "Order"), ECF No. 125, at 1-2. In its response, the TOUR was also to denote which of the identified individuals had oral communications regarding the Subject Matter. *See id* at 1.

In its Amended Response, the TOUR has done precisely what the Court directed.  The TOUR identified 31 individuals from across its organization who are or were authorized to speak on the TOUR's behalf with one or more of the nearly 180 golfing bodies, tours, broadcasters, sponsors, vendors, agents and golfers about which LIV sought information. The TOUR also indicated which of those individuals had oral communications regarding the Subject Matter.

**Argument:** LIV has met the TOUR's substantial additions to its response with nothing but further demands. LIV argues that the TOUR must identify everyone authorized to speak on its behalf—regardless of subject matter—ignoring one of the primary ways the Court narrowed the overbreadth of LIV's original interrogatory. This position rests on the faulty premise that if someone at the TOUR is authorized to speak to a sponsor (or vendor, golfer, etc.) on any topic whatsoever, they must have been authorized to speak about the Subject Matter, and thus the TOUR must identify them. LIV's position ignores the limited scope of TOUR employees' authority, granting them power to speak officially on some matters but not others. LIV's current demands are no different in scope from its original interrogatory—an approach the Court already rejected.  Tr. at 17:16-17 (indicating that LIV's "compromise" list of 83 individuals was still too broad).

Likewise, LIV abandons a position it agreed to just days ago in meet-and-confer discussions and argues for a level of detail the Court already rejected at last week's hearing. LIV's original interrogatory sought identification of the specific "person or entity to whom the communication was made." The Court rejected that degree of specificity, instead urging a compromise on a more general approach. Tr. at 40:2-3 ("conversations with -- *categories* that are going to be more deftly defined" (emphasis added)). The parties negotiated those categories during further meet-and-confer discussions, memorialized in the Amended Response's Exhibit A, and the TOUR used them in its Amended Response. Now, LIV again demands that the TOUR provide the granular detail regarding specific communications. But at the October 14 hearing, the Court made clear that such specificity is not required at this stage in the TOUR's Amended Response. Tr. at 44:3-10 ("[Mr. Surprenant]: [W]e would request . . . the declaration identifies the speaker and as it were the listener, who they spoke with . . . . The Court: . . . [W]e're not going to go there yet, Mr. Surprenant, because we need to see how big this list is.").

In short, the information LIV demands far exceeds what the Court ordered or what is generally required for an interrogatory response. LIV still fails to put forth any authority approving of such expansive written discovery, let alone at this early stage. By seeking detailed accounts of specific communications from at least 31 persons with nearly 180 potential recipients or listeners, LIV's approach to this interrogatory remains hopelessly compound and unduly burdensome. Ironically, in response to the TOUR's first interrogatory seeking identification of the TOUR's alleged threats to nine persons or entities identified in the Amended Complaint, LIV states that "it will count this response as nine interrogatories." By LIV's own logic, it now demands that the TOUR answer an exponentially higher number of interrogatories far beyond the limit of 25.  ECF No. 92 at 4 ("Each side is limited to 25 Interrogatories, including all discrete subparts.").

Regardless, the TOUR has answered Interrogatory No. 1 in good faith and as ordered by the Court. LIV now has the information it needs to pursue additional discovery, whether through document production or depositions. Both means are far more efficient mechanisms for obtaining the additional information LIV now seeks, and it would be unduly burdensome to subject the TOUR to further supplement its Amended Response. That the TOUR may have failed to identify each and every one-off conversation occurring months or over a year ago is hardly surprising given the impossibility of identifying all oral communications on a specific topic over a 3-year

period. If anything, it further confirms that the request-for-production and deposition process are far more effective and efficient means of proceeding.

LIV's other complaints about the Amended Response similarly lack merit:

<u>Player Relations Group</u>: The TOUR supplemented its Amended Response following meet-and-confer discussions to include its former (now retired) Senior Vice President of Player Relations Ross Berlin. His previous omission was an oversight based on his retirement. With regards to the three other employees LIV identified after receiving the first submission of the Amended Response, these individuals are authorized to speak to golfers generally, but they are not authorized to speak with golfers about the Subject Matter.  Such discussions were not part of their duties as TOUR employees.

<u>PGA TOUR Members</u>: TOUR Members are not employees of the TOUR. They are—as LIV repeatedly alleges in the Amended Complaint, (ECF No. 83 ("Am. Compl.")) ¶¶ 2, 6, 9, 44)—independent contractors, and thus not authorized to speak on behalf of the TOUR, either generally or regarding the Subject Matter. To the extent Members (or any other PGA TOUR members) speak about the Subject Matter, they do so in their personal capacity, not on behalf of the TOUR.

<u>Independent Directors</u>: The TOUR's independent director's communications do not constitute statements on behalf of the TOUR.  "As a matter of law, an individual director is not the agent of the corporation or its shareholders.  'He has no power of his own to act on the corporation's behalf . . . .'" *Etshokin v. Texasgulf, Inc.*, 612 F. Supp 1220, 1225 (N.D. Ill. 1985) (alteration in original) (citation omitted); *see also Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231, 237-38 (S.D.N.Y 2011) (noting a director lacks power as an individual to act on the company's behalf). The TOUR does not dispute that independent directors have spoken to third parties about the Subject Matter, but as with TOUR members, they do so of their own volition.

For example, while LIV trumpets a document containing *suggested* talking points that *could* be provided to the independent directors for their use *at a board meeting*, the documents make clear that the directors had their own discretion to speak as they saw fit and could freely disregard such talking points. In any event, if the purpose of Interrogatory No. 1 is to identify sources of potential discovery, the identity of the independent directors is hardly a secret; they are listed on the TOUR's website, and LIV has already indicated that it will seek discovery from them.

<u>Oral Communications</u>: There is nothing abnormal or nefarious in the fact that many of those authorized to speak for the TOUR on the Subject Matter may have had discussions in which LIV was mentioned. LIV is a controversial and ubiquitous topic in the golf world, as well as in sports, politics, and culture more broadly. This is particularly so given, among other things: the public debates over the motives of LIV's backer; questions about whether LIV is good or bad for the game of golf; the controversy surrounding Phil Mickelson's highly critical comments about LIV's financial backer; speculation about whether certain players will sign with LIV; and even this litigation. LIV's accusation that oral communications evidence some illicit purpose is nothing more than rhetoric.  In an effort to be as transparent and responsive as possible, TOUR identified those who believe they likely had oral conversations where the Subject Matter may have come up, even as an off-handed remark by the third party. This should be no means be interpreted to mean that the TOUR employee had any substantive communications about the Subject Matter and/or the third party's ability to engage with LIV.

The TOUR has fully satisfied its obligation under the Order and Rule 33 to identify witnesses who may have potentially relevant information for Interrogatory No. 1.  Rule 33 is not a device for turning every possible stone or providing every morsel of information; it is to facilitate a reasonable, proportionate disclosure process within presumptive limits as to breadth. 8 Wright &

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Miller, Fed. Prac. & Proc. Civ. § 2174 (3d ed.) ("An objection will be sustained if [an interrogatory] is thought to be so broad and all-inclusive as to be burdensome . . . . [T]he courts have for decades adopted a proportionality approach that balances the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory.").  With the Amended Response and the ongoing production of documents (over 32,000 pages to date), the TOUR has provided LIV with more than enough information about potentially relevant witnesses and communications for it to pursue its next phase of discovery.

JOINT STATEMENT REGARDING PGA TOUR'S AMENDED OBJECTIONS AND RESPONSES TO
LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF-SVK

1    Dated: October 21, 2022                    GIBSON, DUNN & CRUTCHER LLP

2                                               By:      /s/ *Rachel Brass*

3                                               RACHEL S. BRASS, SBN 219301
4                                                 rbrass@gibsondunn.com
                                                GIBSON, DUNN & CRUTCHER LLP
5                                               555 Mission Street, Suite 3000
                                                San Francisco, California 94105-0921
6                                               Telephone: 415.393.8200
                                                Facsimile:  415.393.8306
7
                                                ROBERT C. WALTERS, *pro hac vice*
8                                                 rwalters@gibsondunn.com
                                                SCOTT K. HVIDT, *pro hac vice*
9                                                 shvidt@gibsondunn.com
                                                GIBSON, DUNN & CRUTCHER LLP
10                                              2001 Ross Avenue, Suite 2100
                                                Dallas, Texas 75201-2911
11                                              Telephone: 214.698.3100

12                                              JOSHUA LIPTON, *pro hac vice*
                                                  jlipton@gibsondunn.com
13                                              KRISTEN C. LIMARZI, *pro hac vice*
                                                  klimarzi@gibsondunn.com
14                                              GIBSON, DUNN & CRUTCHER LLP
                                                1050 Connecticut Avenue, N.W.
15                                              Washington, DC  20036-5306
                                                Telephone: 202.955.8500
16
                                                JOHN B. QUINN, SBN 90378
17                                                johnquinn@quinnemanuel.com
                                                DOMINIC SURPRENANT, SBN 165861
18                                                dominicsurprenant@quinnemmanuel.com
                                                KEVIN TERUYA, SBN 235916
19                                                kevinteruya@quinnemanuel.com
                                                QUINN EMANUEL URQUHART & SULLIVAN LLP
20                                              865 South Figueroa Street, 10th Floor
                                                Los Angeles, California 90017
21                                              Telephone: 213.443.3000

22
                                                ROBERT P. FELDMAN, SBN 69602
23                                                bobfeldman@quinnemanuel.com
                                                555 Twin Dolphin Dr., 5th Floor
24                                              Redwood Shores, California 94065
                                                Telephone:  650.801.5000
25                                              Facsimile:    650.801.5100

26
                                                *Attorneys for Plaintiffs Matt Jones, Bryson*
27                                              *DeChambeau, Peter Uihlein, and LIV Golf Inc.*

28

1

2  DATED:  October 21, 2022                          Respectfully submitted,

3

4                                                    /s/ *Anthony J. Dreyer*

5  KEKER, VAN NEST & PETERS LLP                      SKADDEN, ARPS, SLATE, MEAGHER &
                                                     FLOM LLP
6  ELLIOT R. PETERS - # 158708
   epeters@keker.com                                 ANTHONY J. DREYER - (admitted pro hac
7  DAVID SILBERT - # 173128                          vice)
   dsilbert@keker.com                                anthony.dreyer@skadden.com
8  R. ADAM LAURIDSEN - # 243780                      KAREN M. LENT - (admitted pro hac vice)
   alauridsen@keker.com                              karen.lent@skadden.com
9  NICHOLAS S. GOLDBERG - # 273614                   MATTHEW M. MARTINO - (admitted pro
   ngoldberg@keker.com                               hac vice)
10 SOPHIE HOOD - # 295881                            matthew.martino@skadden.com
   shood@keker.com                                   One Manhattan West
11 633 Battery Street                                New York, NY 10001
   San Francisco, CA  94111-1809                     Telephone:     212 735 3000
12 Telephone:     415 391 5400                       Facsimile:     212 735 2000
   Facsimile:     415 397 7188
13                                                   SKADDEN, ARPS, SLATE, MEAGHER &
14                                                   FLOM LLP
                                                     PATRICK FITZGERALD - (admitted pro hac
15                                                   vice)
                                                     patrick.fitzgerald@skadden.com
16                                                   155 North Wacker Drive
                                                     Chicago, IL  60606
17                                                   Telephone:     312 407 0700
                                                     Facsimile:     312 407 0411
18

19                                                   *Attorneys for Defendant PGA TOUR, INC.*

20

21

22

23

24

25

26

27

28

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

2

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I

3

attest that concurrence in the filing of the document has been obtained from each of the

4

other signatories to this document.

5

6

7  Dated: October 21, 2022

8

                                                    /s/ *Rachel Brass*
9                                                   Rachel Brass

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING PGA TOUR'S AMENDED OBJECTIONS AND RESPONSES TO
LIV GOLF'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF-SVK