RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
LAUREN D. DANSEY, SBN 311886
  ldansey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
  shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
  jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
  klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000

*Attorneys for Plaintiffs Matt Jones, Bryson
  DeChambeau, Peter Uihlein, and LIV Golf Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., <br><br> Counter-Defendant. | CASE NO. 5:22-cv-04486-BLF <br><br> **PLAINTIFF LIV GOLF, INC.'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:  December 6, 2022 <br> Time:  10:00 a.m. <br> Place:  Courtroom 6, 4th Floor <br> Judge:  Hon. Susan van Keulen |

Gibson, Dunn &
Crutcher LLP

105730001.9

PLAINTIFF LIV GOLF INC.'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS
ROGATORY
CASE NO. 5:22-CV-04486-BLF

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on December 6, 2022, at 10:00 a.m., or as soon as the matter may be heard before the Honorable Susan van Keulen of the United States District Court for the Northern District of California at 280 South 1st Street, Courtroom 6, 4th Floor, San Jose, CA 95113, Plaintiff LIV Golf Inc. ("LIV Golf") will and does move the Court, pursuant to 28 U.S.C. § 1781 and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, to issue Letters Rogatory to the Royal & Ancient Golf Club of St Andrews (the "R&A"), the DP World Tour (the "European Tour"), and European Tour CEO Keith Pelley for production of documents and/or deposition testimony in regard to the above captioned matter.  Plaintiff brings this Motion to obtain critical evidence not available to it by any other means.

Plaintiff respectfully requests that this Court issue separate Letters Rogatory directed toward the R&A, European Tour, and Mr. Pelley to the appropriate judicial authority of the United Kingdom. Upon information and belief, the R&A, European Tour, and Mr. Pelley are each located in the United Kingdom, a country that is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  Accompanying this Notice of Motion and Motion for Letters Rogatory are a supporting Memorandum of Points and Authorities; the Declaration of Rachel S. Brass, counsel of record for Plaintiff and partner in the law firm of Gibson, Dunn & Crutcher LLP; a proposed order granting the relief sought by Plaintiff; and certain supporting exhibits, including without limitation the Letters Rogatory directed toward the R&A, European Tour, and Mr. Pelley that Plaintiff requests the Court issue to the appropriate judicial authority of the United Kingdom.

Gibson, Dunn &
Crutcher LLP

105730001.9

1

1   DATED:  November 4, 2022                Respectfully submitted,

2

3                                           By: _____ /s/ Rachel S. Brass _____
                                            RACHEL S. BRASS, SBN 219301
4                                             rbrass@gibsondunn.com
                                            LAUREN D. DANSEY, SBN 311886
5                                             ldansey@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
6                                           555 Mission Street, Suite 3000
                                            San Francisco, California 94105-0921
7                                           Telephone:  415.393.8200
                                            Facsimile:  415.393.8306
8
                                            ROBERT C. WALTERS, *pro hac vice*
9                                             rwalters@gibsondunn.com
                                            SCOTT K. HVIDT, *pro hac vice*
10                                            shvidt@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
11                                          2001 Ross Avenue, Suite 2100
                                            Dallas, Texas 75201-2911
12                                          Telephone:  214.698.3100

13                                          JOSHUA LIPTON, *pro hac vice*
                                              jlipton@gibsondunn.com
14                                          KRISTEN C. LIMARZI, *pro hac vice*
                                              klimarzi@gibsondunn.com
15                                          GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
16                                          Washington, DC 20036-5306
                                            Telephone: 202.955.8500
17
                                            JOHN B. QUINN, SBN 90378
18                                            johnquinn@quinnemanuel.com
                                            DOMINIC SURPRENANT, SBN 165861
19                                            dominicsurprenant@quinnemanuel.com
                                            KEVIN TERUYA, SBN 235916
20                                            kevinteruya@quinnemanuel.com
                                            QUINN EMANUEL URQUHART & SULLIVAN LLP
21                                          865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017
22                                          Telephone:  213.443.3000

23                                          ROBERT P. FELDMAN, SBN 69602
                                              bobfeldman@quinnemanuel.com
24                                          QUINN EMANUEL URQUHART & SULLIVAN LLP
                                            555 Twin Dolphin Drive, 5th Floor
25                                          Redwood Shores, California 94065
                                            Telephone:  650.801.5000
26                                          Facsimile:  650.801.5100

27                                          *Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau,*
                                            *Peter Uihlein, and LIV Golf Inc.*
28

Gibson, Dunn &
Crutcher LLP
                                            2
                    PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY
                                    CASE NO. 5:22-CV-04486-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Plaintiff LIV Golf Inc. ("LIV Golf") brings this Motion For Issuance of Letters Rogatory ("Motion"), pursuant to 28 U.S.C. § 1781 and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, to seek documents and testimony from (i) the Royal & Ancient Golf Club of St Andrews (the "R&A"), (ii) the DP World Tour ("European Tour"), and (iii) Keith Pelley, CEO of the European Tour.

As described in the Amended Complaint, Defendant PGA Tour, Inc. ("PGA Tour") has enlisted golfing bodies around the world in its efforts to foreclose the entry of LIV Golf, which the PGA Tour views as an existential threat to its monopolistic position in the sport and business of professional golf. *See* ECF No. 83, ¶¶ 3, 11.c.  The PGA Tour recognized that it faced a significantly greater threat from LIV Golf were LIV Golf able to partner with other golfing bodies around the world—most notably, the European Tour. *Id.* ¶ 35.  Likewise, the PGA Tour recognized that if it could deter elite professional golfers from joining LIV Golf, it would be able to blunt LIV Golf's entry and mitigate the competitive threat. *Id.* ¶ 111.  As the PGA Tour recognized, the deterrent effect of its bans and punishments on players would be vastly more effective if it could ban golfers not only from playing in PGA Tour events, but also from playing on the European Tour (then the second leading golf tour in the world), the Majors, the Ryder Cup, and other tours and events throughout the world.  *Id.* ¶¶ 131–52.

Accordingly, the PGA Tour set out to enhance its market power by forming alliances and securing commitments from golfing bodies throughout the world to join it in foreclosing LIV Golf's entry and threatening to destroy the career of any golfer who would defy the PGA Tour's threats and join LIV Golf.  ECF No. 83, ¶¶ 3–4.  A primary target of the PGA Tour's plan was the European Tour, which the PGA Tour viewed as a direct competitive threat because of the possibility that it would partner with LIV Golf to accelerate LIV Golf's entry. *Id.* ¶¶ 131–51.  To thwart this competitive threat, the PGA Tour forged an alliance with the European Tour, a key component of which was their agreement to work together to foreclose LIV Golf's entry and to lock arms in excluding golfers who played in LIV events. *Id.*  Documents the PGA Tour has already produced in this litigation support these allegations.  But to complete the picture, for example, and demonstrate how the PGA Tour's heavy-handed conduct changed other golfing bodies' conduct toward LIV Golf and its players,

3

1   discovery of internal deliberation, reaction, and communication of how others reacted to the PGA

2   Tour's calls for action and invitation to join a boycott of LIV Golf is warranted.  Those documents will

3   also illustrate the but-for world that would have prevailed absent the PGA Tour's anticompetitive

4   conduct, as well as provide evidence of (i) how those asked by the PGA Tour to do its bidding executed

5   on those requests, and (ii) the pressure the PGA Tour exerted.

6                                       **BACKGROUND**

7          Evidence relevant to the claims in the Amended Complaint sits with the European Tour, Keith

8   Pelley, and the R&A.  The European Tour and Keith Pelley are domiciled in England, and the R&A is

9   domiciled in Scotland.  LIV Golf therefore seeks to obtain this highly relevant evidence via the Hague

10  Convention.

11         **European Tour and Keith Pelley.**  At all relevant times, European Tour CEO Keith Pelley

12  has been at the forefront of the strategic alliance between the European Tour and the PGA Tour,

13  publicly admitting that the European Tour agreed not to compete with the PGA Tour for players, ECF

14  No. 83, ¶ 35, and threatening to exclude from the world golf "ecosystem" those who affiliated or

15  partnered with LIV Golf,  *id.* ¶¶ 135–137.

16         To that end, the European Tour amended its regulations to facilitate player bans and imposed

17  unprecedented punishments on European Tour members who played in LIV Golf events.  ECF No. 83,

18  ¶ 147.  And, the European Tour has  pressured other global tours (such as the PGA Tour of Australasia,

19  South Africa's Sunshine Tour, the Japan Golf Tour, and the Asian Tour) to secure agreements from

20  those tours to join in a global group boycott of LIV Golf and its players.  Based on these facts and

21  others (for example, those alleged in the Amended Complaint), LIV Golf seeks documents and

22  deposition testimony from the European Tour and from its CEO, Keith Pelley.

23         The European Tour is incorporated in the United Kingdom as a Private company limited by

24  guarantee without share capital under the name PGA European Tour with a registered office address

25  located at European Tour Building, Wentworth Drive, Virginia Water, Surrey, GU25 4LX (Company

26  No. 01867610).  Declaration of Rachel S. Brass ("Brass Decl."), ¶ 4.

27         **Royal & Ancient Golf Club of St Andrews.**  Also as alleged in the Amended Complaint, the

28  PGA Tour has used its established relationship with the R&A to put pressure on the R&A to support

1   its threats and punishments to players and others in the golf "ecosystem" as part of its efforts to thwart

2   LIV Golf's entry.  ECF No. 83, ¶ 11.d.  For example, its CEO directly threatened the Asian Tour in an

3   effort to prevent the Asian Tour from partnering with LIV Golf.  *Id.* ¶ 143.  And when the Asian Tour

4   did not back down from those threats, the R&A rescinded its historical invite to The Open to the Asian

5   Tour Order of Merit winner to punish the Asian Tour for partnering with LIV Golf.  *Id.*  Furthermore,

6   an R&A spokesperson has publicly stated that its support of the PGA Tour is a product of its "deep

7   relationships" with the PGA Tour.  *Id.* ¶ 126.  Based on these facts and others, LIV Golf seeks

8   documents and deposition testimony from the R&A.  The R&A is incorporated in Scotland (United

9   Kingdom) as a Private Limited Company under the name R&A Trust Company (No. 1), Limited Beach

10  House, Golf Place, St Andrews, Fife, KY16 9JA (Company No. SC247045).  Brass Decl., ¶ 3.

11                                           **LEGAL STANDARD**

12          "A letter rogatory is a formal written request sent by a court to a foreign court asking that the

13  testimony of a witness residing within that foreign court's jurisdiction be taken pursuant to the direction

14  of that foreign court and transmitted to the requesting court for use in a pending action."  *Asis Internet*

15  *Servs. v. Optin Global, Inc.*, No. C-05-05124 JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007)

16  (citation omitted); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1

17  (2004) (defining "letter rogatory" as "the request by a domestic court to a foreign court to take evidence

18  from a certain witness").  The Federal Rules of Civil Procedure provide for the taking of depositions

19  within foreign countries through letters rogatory.  *See* Fed. R. Civ. P. 28(b)(1)(B) ("A deposition may

20  be taken in a foreign country . . . under a letter of request, whether or not captioned a 'letter rogatory[.]'

21  ").  A letter rogatory can also include requests for the production of documents.  *Barnes and Noble,*

22  *Inc. v. LSI Corp.*, No. C 11–02709 EMC (LB), 2012 WL 1808849, at *1 (N.D. Cal. May 17, 2012)

23  (citing *United States v. Reagan*, 453 F.2d 165, 168 (6th Cir. 1971)).  The Hague Evidence Convention,

24  to which both the United Kingdom and the United States are signatories, serves as the means for the

25  taking of evidence abroad in civil matters.  *S.E.C. v. Leslie*, No. C 07–03444 JF (PVT), 2009 WL

26  688836, at *3 (N.D. Cal. Mar. 16, 2009).

27          Courts have "inherent power to issue Letters Rogatory," *United States v. Staples*, 256 F.2d 290,

28  292 (9th Cir. 1958), and "[w]hether to issue such a letter is a matter of discretion," *Barnes & Noble,*

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 5:22-CV-04486-BLF

1    *Inc. v. LSI Corp.*, No. C 11–02709 EMC (LB), 2012 WL 1808849, at *2 (N.D. Cal. May 17, 2012).

2    However, "[j]udges in this district have held that motions requesting issuance of a letter of request or

3    a letter rogatory should generally be granted and that [t]he opposing party must show good reason for

4    a court to deny an application for a letter rogatory." *Zoho Corp. Pvt. Ltd. v. Freshworks, Inc.*, No. 20-

5    cv-01869-VC (TSH), 2021 WL 2769009, at *2 (N.D. Cal. July 2, 2021) (citation and internal

6    quotations omitted).

7         "When determining whether to exercise its discretion, "a court will generally not weigh the

8    evidence sought from the discovery request nor will it attempt to predict whether that information will

9    actually be obtained." *Asis Internet Servs.*, 2007 WL 1880369, at *3.  A court must instead apply "Rule

10   26(b) in light of the scope of discovery provided by the Federal Rules of Civil Procedure."  *Id.*

11   (collecting cases).  Under Rule 26(b), "[p]arties may obtain discovery regarding nonprivileged matter

12   that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevancy, for the purposes

13   of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."

14   *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006).

15                                        **ARGUMENT**

16   **A.    Issuance of Letters Rogatory Is an Appropriate Means to Seek Discovery and Gather
            Evidence from the European Tour, Keith Pelley, and the R&A.**
17
          LIV Golf's proposed letters rogatory conform with all necessary formalities and requirements
18
     of Article 3 of the Hague Convention.  Brass Decl., ¶¶ 6–8, Exs. 1–3.  The letters rogatory specify:
19
     (a) the authority requesting its execution and the authority requested to execute it; (b) the names and
20
     addresses of the parties to the proceedings and their representatives; (c) the nature of the proceedings
21
     for which the evidence is required; and (d) the evidence to be obtained or other judicial act to be
22
     performed.  *See* Hague Convention, Art. 3(a)–(d).  The letters also specify the documents to be
23
     inspected.  *See* Brass Decl. ¶¶ 6–8, Exs. 1–3.
24
          Accordingly, the Hague Convention is an appropriate means to seek discovery from the
25
     European Tour, Keith Pelley, and the R&A.
26

27

28

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 5:22-CV-04486-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**B.       The European Tour, Keith Pelley, and the R&A Possess Relevant Evidence To Which LIV Golf Is Entitled.**

LIV Golf requests the issuance of letters rogatory to collect specific relevant documents from the European Tour and the R&A and to depose their corporate representatives regarding their participation in the PGA Tour's scheme to exclude competition.  It also requests the issuance of letters rogatory to depose Mr. Pelley regarding his participation in furthering the PGA Tour's anticompetitive scheme to exclude LIV Golf's entry.

**1.       The European Tour and Keith Pelley Have Unique, Relevant Information.**

*The European Tour*, a potential horizontal competitor to the PGA Tour acting under the direction of its CEO, *Keith Pelley*, has entered into agreements with the PGA Tour to restrict competition.  When the PGA Tour became aware of the possibility of new entry, it recognized a partnership between the European Tour and a new entrant could accelerate entry and heighten the competitive threat to the PGA Tour.  Accordingly, the PGA Tour established an alliance with the European Tour to prevent it from allying with a new entrant.  Pursuant to this alliance, the European Tour has refused to partner with LIV Golf, and instead has amplified the PGA Tour's threats and punishments to golfers in a joint effort to foreclose competition.  Keith Pelley publicly admitted that the European Tour agreed not to compete with the PGA Tour for players as of November 2020, ECF No. 83, ¶ 35, and that it has entered into a market allocation agreement so as not to compete with each other.  *Id.* ¶ 11.c.  That alone justifies the discovery Plaintiff seeks.

Moreover, the PGA Tour sought to entrench its monopoly power by entering into an agreement with the European Tour and PGA Tour prohibiting it from partnering with any new entrants.  *Id.* ¶¶ 93–100.  In the wake of that agreement, Mr. Pelley called LIV Golf a "rebel enterprise" and threatened LIV Golf's prospective partners with exclusion from the world golf "ecosystem."  *Id.* ¶¶ 135–137.  Furthermore, Mr. Pelley has made frequent statements disparaging LIV Golf, while privately acknowledging (as reflected in the DP World's minutes from a meeting in Malta in July 2021) that the European Tour saw the "appeal and fit" with LIV Golf but nonetheless would have to stand against LIV Golf because of the "mighty power" of the PGA Tour.  *See* ECF No. 2-5 (FRE 1006 – Summary of PGA Tour's Agreement with European Tour to Coordinate Against Competition for Elite

7

1    Professional Golfers' Services).  The PGA Tour has denied these allegations.  *See, e.g.*, ECF No. 108,

2    ¶ 11.c.  As a result, the European Tour's and Mr. Pelley's testimony and targeted documents are

3    squarely relevant to the claims and defenses in this case.

4         In addition, the extent of the European Tour's communications with other tours, golf's

5    governing bodies, the Official World Golf Ranking ("OWGR"), and other stakeholders (e.g.,

6    broadcasters, sponsors, advertisers, and vendors) relating to LIV Golf is highly relevant to the case,

7    and evidence in the possession of the European Tour and Mr. Pelley is not likely to be found in the

8    PGA Tour's files.  For example, LIV Golf understands that the European Tour has acted as an

9    instrument of the PGA Tour by reaching out to others in the global golf "ecosystem" to further the

10   PGA Tour's anticompetitive scheme.  For example, LIV Golf understands that the European Tour

11   pressured other global tours (such as the PGA Tour of Australasia, South Africa's Sunshine Tour, the

12   Japan Golf Tour, and the Asian Tour) to secure agreements from those tours to join in a global group

13   boycott of LIV Golf and its players.  In addition, the European Tour sits on the board of the OWGR—

14   the golf ranking body that has excluded LIV's events from its ranking points, thereby punishing LIV's

15   golfers and furthering the PGA Tour's anticompetitive scheme—and shares office space with the

16   OWGR, making it highly likely that the European Tour and Mr. Pelley possess evidence relevant to

17   the OWGR's role in furthering the PGA Tour's scheme.  This evidence uniquely sits in the hands of

18   the European Tour and Mr. Pelley.

19        Furthermore, the structure of the board governing the European Tour makes it particularly

20   susceptible to pressure from the PGA Tour.  PGA Tour Commissioner Jay Monahan sits on the board

21   of the European Tour, ECF No. 83, ¶ 45, a seat he secured as part of the PGA Tour's agreement with

22   the European Tour to exclude any new entrants in exchange for financial incentives.  *Id.* ¶ 98.

23   Discovery of the European Tour's own communications and documents about the PGA Tour's role in

24   its decisions regarding LIV Golf is highly relevant to this lawsuit and outside the scope of information

25   the PGA Tour can provide.

26        **2.      The R&A Has Unique, Relevant Information.**

27        The R&A hosts the Open Championship.  The R&A has indicated at various points that it was

28   supportive of the PGA Tour's anticompetitive conduct toward LIV Golf and its players (though the

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 5:22-CV-04486-BLF

R&A more recently may have backed down from that position).  For example, in the 24 hours after the Tour announced that it would impose a lifetime ban on players who join LIV Golf, a spokesperson for the R&A stated, "we have deep relationships with the [PGA Tour and the European Tour] and are supportive of them."  ECF No. 83, ¶ 126.  In March 2022, the R&A's CEO, Martin Slumbers, called the Asian Tour's CEO, Cho Minn Thant, and encouraged the Asian Tour to stop LIV Golf from going forward with the LIV Golf Invitational Series.  *Id.* ¶ 159.  In July 2022, Mr. Slumbers suggested that players who play in LIV Golf events may not be eligible or qualify for future Open championships, and that it would be harder for them to qualify for the Open.  *Id.*  The R&A also ended its years-long practice of giving the Asian Tour Order of Merit winner entry into the Open to punish the Asian Tour and its players because the Asian Tour had partnered with LIV Golf.  *Id.* ¶ 143.  The R&A also publicly disinvited two-time Open winner Greg Norman from champions events at the R&A because he is the CEO of LIV Golf.  *Id.* ¶ 159.  The R&A has recently appeared to change its tune, but discovery into its role and past actions remains important.  Discovery from the R&A is necessary, *inter alia*, to explore the extent to which the PGA Tour pressured the R&A to take these positions, the terms of any agreement with the PGA Tour, and the extent and impact of any actions by the R&A in furtherance of the PGA Tour's anticompetitive scheme.

### 3.    Issuance of Letters Rogatory Is Warranted Here.

Courts in the Ninth Circuit and this District have issued letters rogatory in similar situations.  In *International Swimming League, Ltd. v. Fédération Internationale De Natation*, No. 18-cv-07394-JSC, 2020 WL 7042861, at *1 (N.D. Cal. Dec. 1 2020), for example, the plaintiff alleged that the defendant enlisted the help of third-parties to ban plaintiff from working with sports organizations to organize its own professional sporting events.  *Id.* at *2.  The plaintiff sought documents and deposition testimony related to the defendant's relationship with the third-parties and any communications relating to the plaintiff.  *Id.*  The court concluded that the requested information was probative of potential antitrust violations and issued a letter rogatory for the production of documents and depositions.  *Id.* at *2–3.

Similarly, in *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420-YGR(DMR), 2017 WL 2615763, at *1 (N.D. Cal. June 16, 2017), Microsoft alleged a price-fixing conspiracy against

Gibson, Dunn & Crutcher LLP

9

Samsung and sought the issuance of a letter rogatory to obtain deposition testimony from a former Samsung employee in Korea.  Microsoft argued that the former employee's testimony was relevant to live claims and the court concluded that the former employee may have possessed "information directly relevant to [the] claims" and granted the motion for issuance of a letter rogatory to compel a deposition. *Id.* at *3–4.

Lastly, in *In re Cedar Shake & Shingle Antitrust Litigation*, No. 2:19-cv-00288-MJP, 2020 WL 39144, at *1 (W.D. Wash. Jan. 2, 2020), the plaintiffs sought documents related to a third-party's role in aiding the defendant's anticompetitive scheme by helping prevent the sale of certain "cedar shakes and shingles." *Id.*  The court granted the motion and executed the letter rogatory. *Id.* at *3.

The documents and testimony Plaintiff seeks from the R&A, the European Tour, and Keith Pelley are not meaningfully different than the evidence at issue in these and other antitrust cases in which this and other courts have issued letters rogatory.  LIV Golf respectfully requests that the Court grant this Motion and sign the Letters Rogatory and have the clerk authenticate the Court's signature by affixing the Court's seal thereto.  LIV Golf further requests that the Letters Rogatory (as required under the Hague Convention) be transmitted directly from the Court to the Central Authority of the United Kingdom, identified in each of the attached Letters Rogatory.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff LIV Golf's motion.

Gibson, Dunn &
Crutcher LLP

10

PLAINTIFF LIV GOLF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 5:22-CV-04486-BLF

1    DATED:  November 4, 2022                    GIBSON, DUNN & CRUTCHER LLP

2                                                By:        */s/ Rachel S. Brass*
3                                                RACHEL S. BRASS, SBN 219301
                                                   rbrass@gibsondunn.com
4                                                LAUREN D. DANSEY, SBN 311886
                                                   ldansey@gibsondunn.com
5                                                GIBSON, DUNN & CRUTCHER LLP
                                                 555 Mission Street, Suite 3000
6                                                San Francisco, California 94105-0921
                                                 Telephone:  415.393.8200
7                                                Facsimile:  415.393.8306

8                                                ROBERT C. WALTERS, *pro hac vice*
                                                   rwalters@gibsondunn.com
9                                                SCOTT K. HVIDT, *pro hac vice*
                                                   shvidt@gibsondunn.com
10                                               GIBSON, DUNN & CRUTCHER LLP
                                                 2001 Ross Avenue, Suite 2100
11                                               Dallas, Texas 75201-2911
                                                 Telephone:  214.698.3100

12                                               JOSHUA LIPTON, *pro hac vice*
                                                   jlipton@gibsondunn.com
13                                               KRISTEN C. LIMARZI, *pro hac vice*
                                                   klimarzi@gibsondunn.com
14                                               GIBSON, DUNN & CRUTCHER LLP
                                                 1050 Connecticut Avenue, N.W.
15                                               Washington, DC 20036-5306
                                                 Telephone: 202.955.8500
16

17                                               JOHN B. QUINN, SBN 90378
                                                   johnquinn@quinnemanuel.com
18                                               DOMINIC SURPRENANT, SBN 165861
                                                   dominicsurprenant@quinnemanuel.com
19                                               KEVIN TERUYA, SBN 235916
                                                   kevinteruya@quinnemanuel.com
20                                               QUINN EMANUEL URQUHART & SULLIVAN LLP
                                                 865 South Figueroa Street, 10th Floor
21                                               Los Angeles, California 90017
                                                 Telephone:  213.443.3000
22
                                                 ROBERT P. FELDMAN, SBN 69602
23                                                 bobfeldman@quinnemanuel.com
                                                 QUINN EMANUEL URQUHART & SULLIVAN LLP
24                                               555 Twin Dolphin Drive, 5th Floor
                                                 Redwood Shores, California 94065
25                                               Telephone:  650.801.5000
                                                 Facsimile:  650.801.5100
26
                                                 *Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau,*
27                                               *Peter Uihlein, and LIV Golf Inc.*

28

PLAINTIFF LIV GOLF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 5:22-CV-04486-BLF

1

\* \* \* \* \* \* \*

2

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

3

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that

4

concurrence in the filing of the document has been obtained from each of the other signatories to this

5

document.

6

7

DATED:  November 4, 2022                    GIBSON, DUNN & CRUTCHER LLP

8

By:      _/s/ Rachel S. Brass_

9

Rachel S. Brass

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

12