KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone: 212 735 3000
Facsimile: 212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone: 312 407 0700
Facsimile: 312 407 0411

Attorneys for Defendant PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant. | Case No. 5:22-cv-04486-BLF<br><br>**JOINT STATEMENT REGARDING NON-PARTY PLAYER OBJECTIONS TO THE TOUR'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS**<br><br>Judge: Hon. Beth Labson Freeman<br><br>Dept: Courtroom 1, 5th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |
| PGA TOUR, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>LIV GOLF, INC.,<br><br>Counterdefendant. | |

Defendant PGA TOUR, Inc. ("the TOUR") and former player-plaintiffs Phil Mickelson, Talor Gooch, Hudson Swafford, and Ian Poulter (collectively, the "Non-Party Players") submit this joint statement pursuant to Paragraph 8 of the Court's Civil & Discovery Referral Matters Standing Order. The TOUR served its first sets of requests for production directed to the Players on August 31, 2022, at which time they were plaintiffs in this action. The Non-Party Players each voluntarily dismissed their claims on September 27, 2022 but (with the exception of Mr. Mickelson) agreed to respond to the TOUR's discovery requests and served responses and objections on September 28, 2022. Mr. Mickelson later agreed to accept service of a subpoena and served objections and responses. The parties dispute whether the Non-Party Players are obligated to search for and produce relevant, non-privileged materials in the possession or custody of their agents, managers, and others who represented them and spoke on their behalf in connection with the issues in dispute in this case (the "Agents"). The TOUR and the Non-Party Players have met and conferred on numerous occasions in September, October, and November by video conference and through written correspondence—most recently on October 28, 2022—but were unable to reach agreement. A joint chart setting forth the dispute is attached as **Exhibit A**. There are one hundred and thirteen days remaining until the close of fact discovery on March 3, 2023.

## I. THE TOUR'S POSITION

The federal rules require production of documents that are within the "possession, custody, or control" of the responding person or entity. Fed. R. Civ. P. 34(a)(1). That standard applies no matter whether the responding person is a party to the litigation or a third-party subject to Rule 45. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("the legal control test is the proper standard under Rule 45"); *see also In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) ("Courts apply the legal control test to requests for documents under both Rule 34 and Rule 45"). Consistent with that obligation, the TOUR's first set of requests for production to the Players defined the responding party as including the Players' "attorneys, agents . . ., member[s], or employee[s], or any other person acting on [their] behalf." Under established Ninth Circuit law, materials in the possession of an agent are within the "control" of the responding person and must be produced. *See, e.g.*, *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638 (N.D. Cal. 2015) (citing *In re Citric Acid Litig.*, 191 F.3d at 1107). Indeed, the players who remain plaintiffs in this case (Messrs. DeChambeau, Jones, and Uihlein) ***have already agreed*** to search the custodial files of their agents and to produce documents that are responsive to the parties' agreed upon search terms.

But these Players—who filed this lawsuit as plaintiffs, are subject to identical document requests, and are represented by the same lawyers—have refused to undertake the same custodial search of their Agents' ESI for relevant, responsive information. On September 28, 2022, each of Messrs. Gooch, Swafford, and Poulter served substantively identical objections to the TOUR's definition of the responding party, purporting to limit collection and production of responsive materials to documents possessed by the Players alone. Mr. Mickelson subsequently served an identical objection to the TOUR's subpoena. Unlike the Player Plaintiffs, the Players continue to refuse to run the TOUR's search terms—to which they have already agreed for documents in their possession—over their Agents' documents. Consistent with Ninth Circuit law, the Court should order the Players to search for and produce all responsive, non-privileged materials within their "control," including materials in the possession or custody of their Agents.

***First***, Messrs. Mickelson, Gooch, Swafford, and Poulter cannot seriously dispute that their Agents possess documents and communications that are highly relevant to the claims asserted in this case. The Agents participated intimately in negotiating the contracts with LIV which are at the heart of this dispute and undoubtedly engaged in numerous discussions with sponsors and other business partners regarding the Player' decisions to leave the TOUR and join LIV. The Agents' communications on behalf of the Players are virtually assured to contain important information related to the antitrust claims asserted against the TOUR, potential damages, and the TOUR's counterclaim against LIV for tortious interference with contract. In addition, the Agents had extensive dealings with the TOUR regarding potential punishment and discipline for Player Plaintiffs' violations of TOUR regulations.

The Players do not and cannot dispute the relevance of this information. Indeed, the Amended Complaint is chock full of allegations related to Agents. For example, the Amended Complaint asserts—falsely—that the TOUR has "threatened . . . agents to coerce players to abandon opportunities to play in LIV Golf events." Dkt. 83 ¶ 3. Likewise, Plaintiffs contend that, "[i]n February 2022, the Tour gathered the agents of players (including the Players' agents) who were assembled for a Tour event in Los Angeles, California and informed them that the Tour would impose a lifetime ban on any player who signed with LIV Golf." *Id.* ¶ 165. Similarly, Plaintiffs contend that the TOUR threatened to "revoke the agency credentials for agencies that represent golfers who join LIV Golf." *Id.*¶ 198. The Amended Complaint also makes clear that player agents are deeply involved in a golfer's choice to continue playing as a TOUR member or to sign a contract with LIV. In Paragraph 180, for example, the Amended Complaint quotes Dustin Johnson's agent as knowing that "Dustin has been contemplating this opportunity off-and-on for the past couple of years. Ultimately, he decided it was in his and his family's best interest to pursue it." *Id.* ¶ 180. In sum, the documents the TOUR has requested are unquestionably relevant and proportional to the allegations in this case and in the possession of the Agents.

***Second***, materials in the possession of the Players' Agents are clearly within the Players' control. "Control is defined as the legal right to obtain documents upon demand." *Citric Acid*, 191 F.3d at 1107. "'Control' may be established by the existence of a principal-agent relationship." *St. Jude Med.*, 305 F.R.D. at 638 (quoting *Allen v. Woodford*, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007)). In this case, the Players resist custodial searches and production from their *literal* "agents"; these are individuals who act on the Players' behalf to negotiate contracts, engage in other business dealings, and to represent them to the media, the TOUR, and LIV.

The Players have protested that they "do not control" their Agents and so have no obligation to conduct custodial searches for responsive documents. That is contrary to established law, incompatible with fundamental principles of agency law, and impossible to square with the fact that the remaining Player Plaintiffs have agreed to search for and produce documents possessed by their Agents. As the Restatement of Agency makes clear, an agent has a *legal duty* "to provide the principal with facts that the agent knows, has reason to know, or should know when . . . the agent knows or has reason to know that the principal would wish to have the facts[.]" Restatement (Third) of Agency § 8.11 (2006). In other words, agents have a *legal duty* to provide information to their principals, particularly when the principals—here, the Players—ask for it. This is substantively identical to the Ninth Circuit's test for "control" in the context of Rules 34 and 45: "the legal right to obtain documents upon demand." *Citric Acid*, 191 F.3d at 1107. Agents' custodial documents related to their representation of the Players are within the Players' legal right to obtain upon demand.

***Third***, the Players provide no compelling reason to depart from fundamental discovery rules governing the control of responsive materials. The Players argue that they do not have control over relevant documents in the Agents' possession. In the nearly two months the parties have disputed this issue, the Non-Party Players have never identified any relevant authority to support their position. *Rojas v. Bosch Solar Energy Corp.*, 2020 WL 8617414 (N.D. Cal. Aug. 28, 2020) cannot bear the weight the Players place on that decision. *Rojas* does not involve discovery from individual agents of a principal, but rather distinct corporate affiliates of a defendant solar panel manufacturer. *See id.* at *1, 3-4. And *Rojas* actually observed that prior agency decisions involved a "fact-specific analysis" and concluded that—on the record before it—the separate corporations lacked "the legal right to obtain" documents from each other. But here, the Non-Party Players aren't corporations, and their agents aren't distinct affiliates. They are literal agents, acting on behalf and at the direction of the Non-Party Players, with all the attendant legal obligations such a relationship entails. *Rojas* is inapposite.

The Players have also protested that, as nominal "third-parties," and despite their pre-existing agreement to conduct identical searches on their own custodial documents, the TOUR's request that they comply with their basic obligation to produce documents in their control is unduly burdensome. That argument fails for two reasons. First, the Players have already negotiated the scope of agreed-upon search terms to run against the ESI in their actual possession, and the TOUR is asking for nothing more than identical searches against the Agents' custodial materials. Moreover, the TOUR has already provided the Players with additional limiting search strings to

append to the agreed-upon search terms to ensure that only materials related to the Players themselves—and not other possible principals represented by the same Agent—are captured by the search. In other words, the TOUR is not asking the Players to expand the scope of responsive materials at all; in fact, just the opposite. Second, to the extent the Players must undertake the minimally burdensome step of requesting that their Agents run the agreed-upon, limited search terms against their custodial documents, that burden is far from "undue," as contemplated by Rule 45. Burden, of course, must be weighed against the likely probative value of the discovery sought. *See Storz Mgmt. Co. v. Carey*, 2019 WL 2615755, at *2 (E.D. Cal. June 26, 2019) ("an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party."). Here, the value of the information sought by the TOUR is significant. It is plain from Plaintiffs' allegations and a contextual understanding of professional sports contracting that Players' Agents are nearly certain to be in sole position of highly relevant communications regarding negotiations with LIV, sponsors, media partners, and others with whom the Players have business relationships that bear directly on the allegations in the Amended Complaint.

Instead of complying with their obligations under Rules 34 and 45, the Players have offered an unacceptable half-measure. They continue to refuse to conduct an actual search for responsive materials in their Agents' possession, but have instead offered to "ask their representatives" for a limited and vaguely-defined set of materials the Players believe may be responsive to the TOUR's requests. This is insufficient because it fails to comply with Players' obligations under the Rules and will not capture critical documents. The TOUR is not required to rely on Player Plaintiffs' unilateral recollection of potentially relevant materials.

The Players were part of this lawsuit at its inception and do not dispute that they and their Agents have relevant and discoverable information. The Court should order them to comply with the requirements of Rules 34 and 45, and to conduct the same custodial searches of their Agents' materials as those the remaining Player Plaintiffs have already agreed to undertake.

## II. NON-PARTY PLAYERS' POSITION

The Tour seeks to compel the Non-Party Players to collect extensive documents and information from third-parties to this case—their sports agents, whose electronically stored files they do not legally control. The Court should deny the Tour's motion, as it seeks to compel an overreaching and burdensome request of non-parties that outweighs any possible benefit or need.

The Non-Party Players voluntarily dismissed their claims against the Tour and are unequivocally no longer parties to this litigation. Dkt. No. 105, 106; *see, e.g.*, *City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1157–58 (9th Cir. 2002) (holding that a voluntary dismissal without prejudice "leaves the situation as if the action never had been filed") (internal quotations omitted); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1158 (9th Cir. 2010) (holding that a former party must be treated as a non-party for discovery purposes). Nonetheless, the Non-Party Players have repeatedly gone above and beyond their obligations under Rule 45 to meet the Tour's discovery demands. For example, the Tour served then-Plaintiffs Hudson Swafford, Talor Gooch, and Ian Poulter with nearly 80 Requests for Production of Documents (the Tour's RFPs), with responses due September 28, 2022. When Messrs. Swafford, Gooch, and Poulter voluntarily withdrew from the litigation, the Tour served them with subpoenas seeking the same materials. Messrs. Swafford, Gooch, and Poulter could have stood on a technicality and waited the full time allotted under the Federal Rules to respond to the subpoenas. They did not. Instead, they served their complete responses and objections to the Tour's RFPs the next day, on September 29, 2022. Then, as a good-faith compromise, they agreed to run the same set of search terms on their individual emails and devices as those that are being run on the emails and devices of the Player Plaintiffs (Messrs. Jones, Uihlein, and DeChambeau)—broader terms than the Tour will agree to run against all but its agreed ESI custodians. And the Non-Party Players have agreed to endeavor

to complete substantial production of their documents by the same November 18 deadline to which the Parties have agreed.

But the Tour asks for more and more. It now demands that the Non-Party Players treat information and documents in the custody of their respective sports agents, including ESI, as if it were their own. It demands that the Non-Party Players run the full gambit of search terms (with identification limiters) across their sports agents' documents and devices. The Non-Party Players object to the Tour's request because they do not exercise the requisite legal control over their sports agents and because forcing these non-parties to acquire documents from other non-parties would impose an unreasonable burden.

The Non-Party Players have explained that the Tour's request would necessarily require them to collect documents from their sports agents that relate to all of those agents' many other clients, and that invariably include information to which the Non-Party Players have no legal entitlement or right of access. This invasion of the information of others, and burden on the Non-Party Players and their sports agents, is particularly unnecessary given that the Non-Party Players are already undertaking a fulsome review of their materials, as are LIV Golf Inc. and the Player Plaintiffs.

What makes this issue particularly inexplicable is that, in the more than six weeks the Tour has spent fighting over it, it could have simply served targeted subpoenas on these non-party sports agents to collect the documents it seeks. But it has not done so. At the same time, the Tour refuses to agree that if the Non-Party Players collect, search, and produce responsive files out of their sports agents' ESI, such effort would satisfy the Tour's purported discovery demands and obviate the need for any subsequent subpoenas directed at the agents. If the Tour legitimately needs information in the sports agents files, it should subpoena them and ensure this need all be done at most—once.

***Player Plaintiffs*** – The Tour makes much of the fact that the Player Plaintiffs have agreed to search their sports agents' files. But whatever the Player Plaintiffs have agreed to do out of a good faith compromise to advance the litigation towards trial—while making clear they disagree with the Tour's position—is irrelevant to the question of burden and proportionality for the third-parties subject to this motion.

***The Non-Party Players Do Not Control Their Sports Agents' ESI*** – The Federal Rules of Civil Procedure do not require non-parties served with a subpoena to search for and collect responsive documents from other non-parties. Rather, non-parties served with a subpoena need only produce those documents that are in their "possession, custody or control." Fed. R. Civ. P. 45(a). The Ninth Circuit defines "control" as "the *legal right* to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999) (quotation omitted and emphasis added). "The existence of this 'legal right' depends on whether the entity who has actual possession of the documents can refuse to turn over such documents legally and without breaching a contract to the party who is being requested to produce such documents under the discovery rules." *Pecover v. Elec. Arts, Inc.*, No. 08-CV-02820 CW (NC), 2012 WL 12921302, at *2 (N.D. Cal. Apr. 9, 2012) (quoting *In re Citric Acid Litig.*, 191 F.3d at 1107).

Here, no such control exists; the Non-Party Players *do not* have the legal right to demand that their sports agents hand over ESI stored on their phones and in their email accounts for search term review. The Non-Party Players' sports agents "could legally—and without breaching any contract—[ ] refuse to turn over such documents[]" to the players they represent. *Citric Acid*, 191 F.3d at 1108; *see also id.* at 1107–08 (rejecting the "practical-ability-to-obtain-documents test" and explaining that a close relationship or practical ability to obtain documents does not give rise to the kind of "control" described in Rule 45). This Court and others within the Ninth Circuit have repeatedly criticized the overly broad application of the legal-control test that the Tour urges here and declined to find the requisite level of control to arise from an agency relationship alone.

For example, in *Rojas v. Bosch Solar Energy Corp.*, this court considered whether a defendant corporation was required to produce documents in the possession of two related non-party entities. No. 18-CV-05841 BLF (NC), 2020 WL 8617414, at *3–4 (N.D. Cal. Aug. 28, 2020). The plaintiffs' theory was that the third-party entities were the defendant's agents; the defendant claimed it neither owned nor controlled the third parties. *Id.* at *3–4. Agreeing with the defendant, this court rejected the plaintiffs' agency theory on the ground that it "d[id] not square with the 'legal control' test set forth in *Citric Acid*[]" and held that the "[p]laintiffs ha[d] not shown that [the defendant] ha[d] a legal right to obtain the requested documents" from the third parties." *Id.*

Here, like in *Rojas*, the Tour has not shown that the Non-Party Players have a legal right to obtain ESI of their sports agents' communications. That they have an agency or other close relationship with their sports agents is not enough to establish legal control. For example, these players have no right to rummage through the emails and phones of agents, all of whom represent other players and deal with business not involving these players. Moreover, it does not resolve the practical problem of the fact that the sports agents electronic devices contain many documents that are indisputably outside the Non-Party Players' control or right of access. Discovery should be sought directly of those in position to parse through those issues, who hold the ESI, and understand the least burdensome way to collect what is a reasonable search for responsive information—that is not the Non-Party Players. And, such an Order is not necessary, as the Non-Party Players *have agreed* to ask their sports agents for specific categories of documents that are not otherwise produced and likely to be in a given agent's ESI.

At bottom, the Non-Party Players do not have legal control over the full collection of their sports agents' ESI based solely on their agency relationship. *See also In re Citric Acid Litig.*, 191 F.3d at 1108 ("Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents."). The Non-Party Players' agreement to accept a subpoena from the Tour and to produce responsive, nonprivileged documents that are in their "possession, custody, or control," along with certain go-get information from their sports agents, is more than sufficient to discharge their discovery obligations under the Federal Rules of Civil Procedure.

***The Tour's discovery requests are duplicative and will unduly burden the Non-Party Players.***

The burden the Tour seeks to impose on Non-Party Players is unjustified given that everything the Tour has requested is likely to be found in the files of the Non-Party Players themselves, the Tour, or LIV Golf. That the files are sought are available from other sources (including parties) distinguishes the Tour's request from the case on which it principally relies. *See St. Jude Medical S.C., Inc. v. Janssen-Counotte,* 305 F.R.D. 630, 639 (D. Ore. 2015) (compelling production where documents sought were in the sole possession of the sister company). And, because the Non-Party Players have agreed to ask their sports agents for specific categories of documents that are not otherwise produced and likely to be in a given agent's ESI.

The Tour's demand that Non-Party Players do more is both unduly burdensome and unnecessary. The Tour asks Non-Party Players to go through the time, burden and expense of performing this collection, search and production of another non-parties' files, and reserve all rights to then subpoena the same information from the sports agents themselves. To the extent this discovery is needed at all—and there is no basis in the Tour's statement to suggest it is—the request should be made to the actual holders of the purportedly necessary information.

Non-Party Players respectfully request that the Court deny the Tour's motion to compel them to collect, search and produce from the ESI of their respective sports' agents files.

Dated: November 10, 2022

KEKER, VAN NEST & PETERS LLP

By: */s/ Eric H. MacMichael*

ELLIOT R. PETERS
DAVID SILBERT
ERIC H. MACMICHAEL
R. ADAM LAURIDSEN
NICHOLAS S. GOLDBERG
SOPHIE HOOD

Attorneys for Defendant
PGA TOUR, INC.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ANTHONY J. DREYER
PATRICK FITZGERALD
KAREN M. LENT

Attorneys for Defendant
PGA TOUR, INC.

GIBSON, DUNN & CRUTCHER LLP

Dated: November 10, 2022

By: */s/ Rachael S. Brass*

RACHEL S. BRASS
ROBERT C. WALTERS
SCOTT K. HVIDT
JOSHUA LIPTON
KRISTEN C. LIMARZI
LAUREN D. DANSEY

QUINN EMANUEL URQUHART & SULLIVAN LLP

JOHN B. QUINN
ROBERT P. FELDMAN
DOMINIC SURPRENANT
KEVIN TERUYA

Attorneys for Plaintiffs MATT JONES, BRYSON DECHAMBEAU, AND PETER UIHLEIN

**ECF ATTESTATION**

Pursuant to Local Rule 5-4.3.4, the filer of this document, Eric H. MacMichael, attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: November 10, 2022

KEKER, VAN NEST & PETERS LLP

By: /s/ *Eric H. MacMichael*
ERIC H. MACMICHAEL

Attorneys for Defendant
PGA TOUR, INC.