RACHEL S. BRASS, SBN 219301
   rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
   rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

*Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC.,<br><br>   Plaintiffs,<br><br>   v.<br><br>PGA TOUR, INC.,<br><br>   Defendant. | CASE NO. CASE NO. 5:22-cv-04486-BLF<br><br>**DECLARATION OF JOHN LOFFHAGEN IN SUPPORT OF SEALING** |

I, John Loffhagen, hereby declare and state:

1. I am the Chief Legal Officer of LIV Golf Inc. ("LIV Golf"). I am authorized by LIV Golf to make this statement in support of sealing portions of the PGA Tour's Motion to Compel Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan's Compliance with Document and Deposition Subpoena ("Motion") and certain supporting exhibits. I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates. If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

2. I understand that in its Motion, Defendant PGA Tour, Inc. ("PGA Tour") conditionally filed under seal internal documents from LIV Golf. These documents contain highly sensitive business and financial terms that LIV Golf goes to extensive lengths to keep confidential. Disclosing this information would allow this filing to become a vehicle for improper purposes, such as obtaining business and financial information about LIV Golf unrelated to the Motion.

3. Exhibits 2, 15, 16 of the Motion and lines 4:14 and 6:19-20 of the Memorandum contain highly confidential information about LIV Golf's ownership structure, percentage ownership by PIF and non-PIF investors, and financial information and projections, including the amount of investment, projected expenditures, revenues, and income, breakdown of LIV Golf's use of capital, rates of return, and valuations. Disclosure of this information would cause harm to LIV Golf, including harming LIV Golf's future ability to obtain investment, including if LIV Golf ever decides to take outside funding, and would harm LIV Golf in its future negotiations and relationships.

4. Exhibits 2, 15, 17, 18, and 40 of the Motion and lines 3:6-9, 4:14 6:26-7:8, 16:28-17:3, and 19:17-20 of the Memorandum contain highly confidential information about LIV Golf's internal decision making processes vis-à-vis its investors. Disclosure of this information could cause harm to LIV Golf, including harming LIV Golf's ability to obtain future investment and by allowing competitors to use knowledge of such processes against it, for example, by attempting to influence LIV Golf's investors or to take advantage of the limitations on LIV Golf's decision making powers.

5. Exhibits 14, 15, and 18 of the Motion and lines 18:11-13 of the Memorandum contain the identity of consultants associated with LIV Golf. Given the publicity given to this litigation,

DocuSign Envelope ID: 3625426C-4EB5-4813-AC8F-451F936A9596

disclosing these exhibits could expose the consultants to unwanted attention or harassment and prejudice LIV Golf's relationships with the consultants and ability to obtain future services.

6. Exhibits 14 and 17 of the Motion and lines 9:8-18 of the Memorandum contain LIV Golf business and media plans. Disclosure of this information would encourage unwanted speculation about LIV Golf's current operation and any deviation from the business and media plans shown in the exhibits, and potentially prejudice LIV Golf in its effort to secure business relationships, including with broadcasters. Disclosure would also allow competitors to copy the same plan or to develop a plan to counter it. Disclosure would also affect LIV Golf's strategy and relationships with the broadcasters and members of the media analyzed in those documents.

7. Exhibit 19 contains LIV Golf's organizational structure, disclosure of which would risk exposing the individuals listed in the chart to unwanted attention and harassment.

8. Exhibit 45 contain emails and slides concerning LIV Golf's internal operations and recruitment efforts and plans for professional golf players. Disclosure of this information would harm LIV Golf's future ability to recruit and negotiate with players, and it would prejudice LIV Golf by providing competitors with information that could be used to counter LIV's efforts to recruit and sign players.

9. The following table summarizes that harm that could result from disclosure:

| Document | Harm From Disclosure |
| --- | --- |
| Dooley Decl.,[1] Ex. 2 | Competitive harm from exposure of financial state, internal decision making, and investment structure and strategy. |
| Dooley Decl., Ex. 14 | Competitive harm from exposure of business strategy, allowing competitors to replicate or counter same; privacy and relationship harm from exposure of identities of business partners and consultants. |
| Dooley Decl., Ex. 15 | Competitive harm from exposure of financial state and payment plans and internal decision making processes; privacy and relationship harm from exposure of identities of business partners and consultants. |
| Dooley Decl., Ex. 16 | Competitive harm from exposure of LIV Golf's ownership, funding, financial projections, and payments to players. |
| Dooley Decl., Ex. 17 | Privacy and relationship harm from exposure of identities of business partners and consultants; relationship harm from exposure of attitude |

---

[1] Declaration of Brook Dooley in Support of PGA Tour Inc.'s Motion to Compel Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan's Compliance with Document and Deposition Subpoenas, Dkt. No. 148-1 ("Dooley Decl.").

| | |
|---|---|
| | towards relationship with media partners; competitive harm from exposure of business strategy and internal decision making processes. |
| Dooley Decl., Ex. 18 (page 2 only) | Competitive harm from exposure of LIV Golf's internal decision making processes; privacy and relationship harm from exposure of identities of business partners and consultants |
| Dooley Decl., Ex. 19 | Privacy harm from exposure of personally identifiable information of LIV employees |
| Dooley Decl., Ex. 40 (page 2 only) | Competitive harm from exposure of LIV Golf's internal decision making processes |
| Dooley Decl., Ex. 45 | Competitive harm from exposure of LIV Golf's player recruitment strategy and status regarding the same. |
| Memorandum[2] at lines 3:6-9, 6:26-7:8, 18:11-13, 16:28-17:3, 19:17-20 | Competitive harm from exposure of LIV Golf's internal decision making process, affecting opportunity to attract future investment and opportunity to conduct independent negotiations |
| Memorandum at lines 4:14 and 6:19-20 | Competitive harm from exposure of LIV Golf's ownership structure and investment strategy |
| Memorandum at lines 18:11-13 | Privacy and relationship harm from exposure of identities of business partners and consultants |
| Memorandum at lines 9:8-18 | Competitive harm from exposure of LIV Golf's business strategy at launch, allowing competitors to replicate or counter the same |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 16, 2022.

/s/ John Loffhagen

John Loffhagen

---

[2] PGA Tour Inc.'s Notice of Motion and Motion to Compel Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan's Compliance with Document and Deposition Subpoenas; Memorandum of Law In Support Thereof, ECF No. 148 ("Memorandum").