QUINN EMANUEL URQUHART &
   SULLIVAN LLP
JOHN B. QUINN, SBN 90378
   johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
   dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
   kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
   bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

*Attorneys for Non-Parties The Public Investment
   Fund of the Kingdom of Saudi Arabia and His
   Excellency Yasir O. Al-Rumayyan.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, IAN POULTER, and LIV GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | CASE NO. 5:22-cv-04486-BLF <br><br> **THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND HIS EXCELLENCY YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO PGA TOUR, INC.'S MOTION TO COMPEL SUBPOENA COMPLIANCE** <br><br> Judge:        Hon. Beth Labson Freeman <br><br> Date Filed:   August 3, 2022 <br><br> Trial Date:   January 8, 2024 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE THAT on a date and time to be determined, or as soon as the

3  matter may be heard, before the Honorable Susan van Keulen of the United States District Court,

4  Northern District of California at Courtroom 6 – 4th Floor, 280 South 1st Street, San Jose,

5  California, non-parties The Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and its

6  Governor His Excellency Yasir Othman Al-Rumayyan ("HE") will and do move this Court for an

7  order quashing the PGA Tour, Inc.'s Subpoenas to Testify at Depositions and Produce Documents

8  for lack of jurisdiction and failure to comply with Federal Rule of Civil Procedure 45.  This motion

9  is based upon this notice of motion, supporting memorandum of points and authorities, the

10  Declarations of Kevin Teruya, His Excellency Yasir O. Al-Rumayyan, and Tim Taylor, and exhibits

11  attached thereto, and such evidence as may be requested or permitted by the Court.

12  **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1**

13       Pursuant to Local Rule 37-1, PIF and HE certify that they have met and conferred with the

14  PGA Tour, Inc. (the "Tour") in an attempt to resolve the issues in this Motion.  *See* Declaration of

15  Kevin Teruya ("Teruya Decl.") ¶¶ 2-8.  As described further below, PIF and HE offered to

16  voluntarily provide discovery in response to narrowed requests during the meet-and-confers and

17  subsequent correspondence.  The Tour rejected these offers and insisted that PIF and HE waive

18  jurisdictional defenses and comply with the requests as written.  PIF and HE bring this motion to

19  respond to those demands.

20

21  DATED:  November 22, 2022       Respectfully submitted,

22            By:     */s/ Kevin Teruya*

23

24

25

26

27

28

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

JOHN B. QUINN, SBN 90378
   johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
   dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
   kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
   bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

*Attorneys for Non-Parties The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan*

iii

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ........................................................................................................3

    A.    The Public Investment Fund and His Excellency ...................................3

    B.    PIF's Investments ...................................................................................4

    C.    PIF's Relationship To The Lawsuit .......................................................5

    D.    The Tour's Subpoenas to PIF and HE ....................................................6

ARGUMENT ..............................................................................................................7

I.    THE COURT LACKS PERSONAL JURISDICTION OVER PIF AND HE ...................7

    A.    The FSIA Precludes Jurisdiction Over PIF ...........................................7

        1.    The Fund Is An Instrument of the Kingdom of Saudi Arabia ..............8

        2.    The Commercial Activity Exception Does Not Apply ..................9

        3.    The Waiver Exception Does Not Apply....................................10

    B.    Common Law Immunity Precludes Jurisdiction Over HE.....................11

    C.    PIF and HE Lack "Minimum Contacts" For the Exercise of Specific Jurisdiction ........................................................................................12

        1.    The Fund and HE Lack Sufficient Contacts With Nexus To the Forum ...........................................................................................13

        2.    Comity Renders The Exercise Of Jurisdiction Unreasonable .....................15

    D.    Tag Jurisdiction Does Not Apply ........................................................16

II.    THE SUBPOENAS VIOLATE THE 100-MILE LIMIT ...................................17

III.    THE DEPOSITION SUBPOENA SHOULD BE QUASHED FOR FAILURE TO TENDER FEES.......................................................................................17

IV.    THE SUBPOENAS ARE UNDULY BURDENSOME AND IMPROPER THIRD-PARTY DISCOVERY ........................................................................18

    A.    The Subpoena's Overbreadth Requires Quashing ...............................19

    B.    The Majority of Requests and Deposition Topics Are Irrelevant ...........................21

    C.    Most Discovery Can Be More Conveniently Obtained From Other Sources .........22

    D.    The PGA Tour Seeks Non-Parties' Confidential Information ................................23

iv

# <u>TABLE OF AUTHORITIES</u>

**Page**

## Cases

*AirWair Int'l v. Zoetop Bus. Co., Ltd., 20-cv-07696-SI (RMI)*,
  2021 WL 6091263 (N.D. Cal. Dec. 23, 2021) ................................................................ 23

*Aldossari v. Ripp*,
  49 F.4th 236 (3d Cir. 2022) ........................................................................................ 11

*AM Tr. v. UBS AG*,
  681 F. App'x 587 (9th Cir. 2017) ............................................................................... 17

*AngioScore, Inc. v. TriReme Med., Inc.*,
  No. 12 CV 3393, 2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) ................................ 17

*In re Application for Order Quashing Deposition Subpoenas*,
  No. M8-85, 2002 WL 1870084 (S.D.N.Y. 2002) ........................................................ 18

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ...................................................................................................... 8

*In re Boon Global Ltd.*,
  923 F.3d 643 (9th Cir. 2019) ................................................................................. 14, 15

*Broidy Cap. Mgmt., LLC v. State of Qatar*,
  982 F.3d 582 (9th Cir. 2020) ............................................................................ 2, 9, 10

*Burnham v. Superior Court of California, Cnty. of Marin*,
  495 U.S. 604 (1990) ............................................................................................... 16, 17

*In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig., MDL*,
  No. 2187, 2014 WL 1660386 (S.D. W. Va. Apr. 22, 2014) ....................................... 25

*In re Cal. Gas. Spot Market Antitrust Litig.*,
  No. 20-cv-03131-JSC, 2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) .................. 14, 15

*California Gasoline Spot Market Antitrust Litigation*,
  2021 WL 4461199,....................................................................................................... 15

*In re Cathode Ray Tube (CRT) Antitrust Litig., MDL*,
  No. 1917, 2018 WL 659084 (N.D. Cal. Feb. 1, 2018)................................................. 10

*Compaq Computer Corp. v. Packark Bell Elecs.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ............................................................................... 22

*Cooper v. Tokyo Elec. Pwr. Co. Holdings, Inc.*,
  960 F.3d 549 (9th Cir. 2020) ...................................................................................... 16

*Corzo v. Banco Cent. de Reserva del Peru*,
  243 F.3d 519 (9th Cir. 2001) ........................................................................................ 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ..................................................................................................... 16

*Dart Indus. Co. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) ...................................................................................... 18

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) ..................................................................................... 11

*Doe v. Unocal*,
  248 F.3d 915 (9th Cir. 2001) ...................................................................................... 15

*Dogan v. Barak*,
932 F.3d 888 (9th Cir. 2019) .................................................................................... 11

*In re eBay Seller Antitrust Litig.*,
No. C09-0735RAJ, 2009 WL 10677051, (W.D. Wash. Aug. 17, 2009) .................................. 25

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
322 F.3d 635 (9th Cir. 2003) ...................................................................................... 9

*Elec. Scripting Prods. v. HTC Am. Inc., 17-cv-05806-RS (RMI)*,
2021 WL 3773607 (N.D. Cal. Aug. 25, 2021) .................................................................. 23

*Embassy of the Arab Repub. of Egypt v. Lasheen*,
603 F.3d 1166 (9th Cir. 2010) .................................................................................... 10

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
No. 12-CV-080082-LHK PSG, 2012 WL 1980361 (N.D. Cal. June 1, 2012) ........................ 21

*Everard Findlay Consulting, LLC v. Republic of Suriname*,
831 F. App'x 599 (2d Cir. 2020) ................................................................................. 10

*Fed. Ins. Co. v. Qaida*,
122 F. Supp. 3d 181 (S.D.N.Y. 2015) ........................................................................... 12

*Flatow v. Islamic Rep. of Iran*,
308 F.3d 1065 (9th Cir. 2002) .................................................................................... 10

*Fujikura Ltd. v. Finisar Corp.*,
No. 15-mc-80110-HRL(JSC) (N.D. Cal. May 14, 2015) .................................................... 18

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
No. 18-cv-07603-WHO, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) ......................... 19, 23

*Giraldo v. Drummond Co., Inc.*,
808 F. Supp. 2d 247 (D.D.C. 2011), *aff'd*, 493 Fed. Appx. 106 (D.C. Cir. 2012) ..................... 11

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) ................................................................................. 24

*Gopher Media, LLC v. Spain*,
No.: 3:19-cv-02280-CAB-KSC, 2020 WL 6741675 (S.D. Cal. Nov. 17, 2020) ...................... 21

*Henry v. Morgan's Hot. Grp.*,
No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, ............................................................... 21

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ...................................................................................... 14

*In re iPhone/iPad Application Consumer Privacy Litig.*,
No. 11-MD-2250-LHKPSG, 2012 WL 5897351 (N.D. Cal. Nov. 21, 2012) ........................... 22

*Laxalt v. McClatchy*,
116 F.R.D. 455 (D. Nev. 1986) ................................................................................... 21

*Leisure Hosp., Inc. v. Hunt Props., Inc.*,
No. 09-cv-272, 2010 WL 3522444 (N.D. Okla. Sept. 8, 2010) .......................................... 21

*LNS Enter. LLC v. Continental Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ...................................................................................... 13

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ..................................................................................... 2

*Matar v. Dichter*,
563 F.3d 9 (2d Cir. 2009) ........................................................................................... 12

vi

*Mattel Inc. v. Walking Mt. Prods.*,
   353 F.3d 792 (9th Cir. 2003) .................................................................................... 19

*Ministry of Supply, Cairo v. Universe Tankships, Inc.*,
   708 F.2d 80 (2d Cir. 1983) ....................................................................................... 11

*Mireskandari v. Mayne*,
   800 Fed. Appx. 519 (9th Cir. 2020) ......................................................................... 12

*Moses v. Halstead*,
   236 F.R.D. 667 (D. Kan. 2006) ................................................................................. 21

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   No. 09-cv-01967 CW(NC), 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012) .................. 18

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) .............................................................................. 23

*NIKE, Inc. v. Wu*,
   349 F. Supp. 3d 346 (S.D.N.Y. 2018) ...................................................................... 13

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) ............................................................................................... 8, 9

*Pablo Star Ltd. v. Welsh Gov't*,
   961 F.3d 555 (2d Cir. 2020 ............................................................................... 10, 11

*Perez v. Porgenics Pharms., Inc.*,
   2015 WL 4111551 (S.D.N.Y. June 24, 2015) ........................................................... 18

*Peterson v. Islamic Republic of Iran*,
   627 F.3d 1117 (9th Cir. 2010) .................................................................................... 8

*Price Waterhouse LLP v. First Am. Corp.*,
   182 F.R.D. 56 (S.D.N.Y. 1998) ................................................................................ 17

*U.S. v. R. Enterp., Inc.*,
   498 U.S. 292 (1991) ................................................................................................. 24

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ........................................................................ 2, 14, 15

*Richmark Corp. v. Timber Falling Consults.*,
   959 F.2d 1468 (9th Cir. 1992) .................................................................................. 16

*Ridgeway v. Phillips*,
   383 F. Supp. 3d 938 (N.D. Cal. 2019) ................................................................. 16, 17

*Rosasen v. Kingdom of Norway*,
   No. 221CV06811JWHSP, 2022 WL 409679 (C.D. Cal. Feb. 10, 2022) .................... 12

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ................................................................................................. 12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................................... 13

*Shaffer v. Heitner*,
   433 U.S. 186 (1977) ................................................................................................. 13

*Simplex Mfg. Co. v. Chien*,
   No. C12-835RAJ, 2012 WL 3779629 (W.D. Wash. Aug. 31, 2012) ......................... 19

*Soto v. Castlerock Framing & Transp., Inc.*,
   282 F.R.D. 492, (E.D. Cal. 2012) ............................................................................. 19

vii

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................................. 15, 16

*U.S. E.P.A. v. Gen. Elec. Co.*,
    197 F.3d 592 (2d Cir. 1999) ........................................................................................ 8

*U.S. v. R. Enterp., Inc.*,
    498 U.S. 292 n.4 (1991) ............................................................................................ 24

*U.S. Sec. & Exch. Comm'n v. Ahmed*,
    No. 3:15CV675(JBA), 2018 WL 1541902 (D. Conn. Mar. 29, 2018) ........................ 21

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983) .................................................................................................. 12

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................................. 2, 14

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) .................................................................................. 14

*Wultz v. Bank of China Ltd.*,
    32 F. Supp. 3d 486 (S.D.N.Y. 2014) ......................................................................... 11

*Wye Oak Tech., Inc. v. Rep. of Iraq*,
    24 F.4th 686 (D.C. Cir. 2022) ............................................................................ 10, 11

**Statutory Authorities**

28 U.S.C. § 1603(a) ........................................................................................................ 8

28 U.S.C. § 1603(b) ..................................................................................................... 8, 9

28 U.S.C. § 1603(e) ...................................................................................................... 11

28 U.S.C. § 1605(a)(2) ............................................................................................ 8, 9, 10

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................. 24

Fed. R. Civ. P. 45 ........................................................................................................... 17

Fed. R. Civ. P. 45(b)(1) .................................................................................................. 18

Fed. R. Civ. P. 45(c)(1)(A) ....................................................................................... 17, 18

Fed. R. Civ. P. 45(d)(3) ............................................................................................ 24, 25

Fed. R. Civ. P. 45(d)(3)(A) ....................................................................................... 17, 18

Fed. R. Civ. P. 45(d)(3)(A)(ii) ....................................................................................... 17

Local Rule 37-1 ............................................................................................................... ii

**Additional Authorities**

Wright & Miller, 8B FED. PRAC. & PROC. CIV. § 2204 (3d ed.) ...................................... 23

1   The Public Investment Fund of the Kingdom of Saudi Arabia ("PIF" or the "Fund") and its

2   Governor His Excellency Yasir Othman Al-Rumayyan ("HE") submit this memorandum of law in

3   support of their Motion to Quash and in opposition to the PGA Tour, Inc.'s (the "Tour") Motion to

4   Compel, pursuant to the Court's Order dated November 10, 2022, Dkt. No. 152.

5   **PRELIMINARY STATEMENT**

6   This discovery dispute should have been resolved.  Non-parties PIF and HE told the Tour

7   time and again that they were willing to voluntarily provide appropriate discovery.  But the Tour

8   refused to meet-and-confer or compromise.  Back on September 13, 2022, PIF reiterated: "we again

9   invite you to identify the discovery you seek so we can begin the process of attempting to reach an

10  agreement to facilitate an expeditious disclosure process."  Counsel for the Tour never responded to

11  this offer.  Instead, nine days later, the Tour served subpoenas demanding that the Fund and HE

12  (non-parties to this dispute) produce documents in response to *82* and *79* requests, respectively, and

13  produce a witness to testify on *19* deposition topics.  At the meet-and-confer on October 10, 2022,

14  PIF and HE again offered to engage in voluntary disclosure, but the Tour insisted that the only way

15  it would accept discovery was if they abandoned their jurisdictional defenses and submitted to the

16  power of a U.S. court.  PIF and HE offered to explore various other enforcement means, but the

17  Tour shut down the discussion.

18  Having walked away from offers of voluntary discovery in favor of an all-or-nothing

19  approach, the Tour has insisted on discovery that it cannot compel.  PIF and HE cannot agree to

20  waive their jurisdictional defenses.  PIF has investments in many companies in the U.S.  To accept

21  jurisdiction here could set a dangerous precedent allowing PIF to be sued in U.S. courts any time

22  one of its portfolio companies is involved in a dispute.  But the Tour cannot establish jurisdiction

23  over PIF or HE because (1) sovereign immunity applies to the Fund as an instrument of Saudi Arabia

24  and to HE acting in his official capacity, (2) PIF and HE lack sufficient contacts with the U.S., and

25  (3) international comity makes exercise of jurisdiction unreasonable.

26  The Tour seeks to establish jurisdiction based on misstatements of law and unsupported

27  factual assertions.  *First*, the Tour conflates *statutory* jurisdiction with *constitutional* requirements

28  to argue that as long as the Foreign Sovereign Immunities Act ("FSIA") does not confer immunity,

1

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

due process is satisfied.  That is not the case.  Exercise of jurisdiction must still comport with constitutional due process, which fails here for the reasons stated below.

Rather than establishing jurisdiction, the case law under FSIA shows that it does not exist here.  The Fund is an organ and integral part of the Kingdom of Saudi Arabia.  As such, it is entitled to sovereign immunity unless the Tour can establish an exception.  It cannot.  The commercial activity exception does not apply because PIF's conduct "is not what the suit 'is based' on." *Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 594 (9th Cir. 2020).  The lawsuit relates to *the Tour's* conduct and counterclaim against LIV Golf, Inc. ("LIV"), not PIF's or HE's conduct.  Likewise, the waiver exception does not apply.  PIF and HE did not waive.  Rather, the Tour argues waiver based on *LIV's* decision to file a lawsuit; but LIV is a wholly separate entity from PIF.

*Second*, PIF and HE lack sufficient minimum contacts for constitutional due process.  The only contacts the Tour identifies involve PIF's investment in U.S. companies, including LIV.  But those are contacts with "persons who reside [in the forum]," not the forum itself, which is "an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 285-86 (2014).  Apparently relying on alter ego or agency, the Tour claims that PIF controls LIV.  But the Tour's own evidence shows that PIF only provides high-level oversight, not the "pervasive control" over day-to-day operations required to impute the subsidiary's contacts to a foreign owner. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

*Third*, international comity makes the exercise of jurisdiction over PIF and HE unreasonable.  PIF's governing law prohibits disclosure of internal information.  Enforcing the subpoenas would require an organ and official of a foreign government to comply with U.S. law while violating their own.  The comity concerns here are overwhelming.

*Fourth*, the PGA Tour's tag jurisdiction argument is meritless.  Tag jurisdiction does not apply to non-natural persons, such as PIF. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1069-70 (9th Cir. 2014).  As to HE, the Tour's argument is premised on a *service* stipulation, not on the physical presence that is the basis of the doctrine.

Even if the Court determines that it has jurisdiction and may exercise it despite comity concerns, the subpoenas should be quashed because (1) they violate the 100-mile limitation of Rule

45, (2) the Tour failed to tender fees required by Rule 45, and (3) the Tour's subpoenas are unduly burdensome and improper third-party discovery.

The Tour served its third-party subpoenas at the beginning of discovery, seeking all of the documents it was separately seeking from LIV, without waiting to see LIV's own production.  The only fair inference to be drawn from the Tour's hasty third-party subpoenas and failure to pursue PIF's offers of voluntary discovery is that the Tour is not actually interested in getting documents from PIF and HE (which it will get from LIV).  Rather, its interest is to burden PIF and HE with unnecessary motion practice in the U.S. in pursuit of its goal to make this lawsuit about the government of Saudi Arabia, rather than engaging on the merits.

PIF and HE respectfully request that the Tour's Motion be denied and PIF's and HE's Motion to Quash be granted.

## BACKGROUND

### A.  The Public Investment Fund and His Excellency

The Fund is the sovereign wealth fund of the Kingdom of Saudi Arabia, established in 1971 by Royal Decree.  Teruya Decl. Ex. 3, Declaration of His Excellency Yasir Al-Rumayyan ("PIF Decl.") ¶ 2.  It was formed "for the purpose of serving the public interest; promoting economic development in the Kingdom and diversifying its sources of income; and maintaining the interest of future generations."  *Id*. ¶ 12.  The Fund is its own legal entity.  *Id.* ¶ 3.

The Fund is regulated by a special legal framework, the Public Investment Fund Law ("PIF Law"), which provides for a Board of Directors appointed by Royal Order.  *Id*.  ¶¶ 2, 4.  The Board is comprised of government Ministers and an advisor at the Royal Court, including the Governor, HE Yasir Al-Rumayyan, who holds the rank of Minister in the Kingdom of Saudi Arabia.  *Id*. ¶¶ 4-5.  The Board governs PIF.  *Id.* ¶¶ 4, 6.  Day-to-day management is overseen by the Executive Management, which reviews PIF's operations and evaluates investment proposals before submitting them to the Board of Directors for decision.  *Id*. ¶ 4.

PIF is headquartered and has its principal place of business in Riyadh and has historically had a few operations outside of the country. *Id.* ¶ 18.  In 2022, a PIF subsidiary—which is a separate

1    legal entity with full administrative autonomy—opened a New York City office.[1]  *Id.* ¶¶ 18-19.  That

2    office has a skeletal crew and leases office space, but PIF itself has no real estate or employees in

3    the U.S.  *Id.* ¶¶ 19-20.  HE is a citizen of Saudi Arabia, who resides in Riyadh.  Teruya Decl. Ex. 4,

4    Declaration of His Excellency Yasir Al-Rumayyan ("HE Decl.") ¶ 3.[2]  Although he travels to the

5    U.S. periodically for pleasure, and sometimes for business, he does not regularly travel to New York

6    or California in connection with LIV.  *Id.* ¶¶ 5, 6.  Nor has HE regularly transacted business in

7    person within 100-miles of New York City.  *Id.* ¶ 6.  HE is neither referenced nor mentioned in the

8    Amended Complaint or the PGA Tour's Counterclaim.  *See* ECF Nos. 83, 108.

9    **B.    PIF's Investments**

10   The Fund assets total around $676 billion.  Dkt. No. 148-4 at 112.  Around $40 billion of

11   those assets were held in U.S. public companies, including Uber, Meta, Microsoft, Alphabet, Zoom,

12   Starbucks, Paypal, Costco, the Home Depot, Amazon, and Walmart, last year.  *Id.* at 122.  Many of

13   those companies are involved in antitrust lawsuits, including in this District, *see, e.g.*, *Klein v. Meta*

14   *Platforms*, Case No. 5:20-cv-08570-LHK (N.D. Cal.), and before this Court, *see In re Google Dig.*

15   *Advert. Antitrust Litig.*, Case No. 5:20-cv-03556-BLF (N.D. Cal.).

16   PIF invested in an entity based in Jersey (a UK dependency), which owns another entity

17   based in Jersey, which, in turn, owns LIV; PIF does not own shares in LIV.  PIF Decl. ¶¶ 13-14.

18   PIF's decision to invest in the Jersey entity was made outside the U.S.  *Id.* ¶¶ 14-15.  PIF employees

19   that manage PIF's investment in the Jersey entity are based in Riyadh.  *Id.* ¶ 15.  Although PIF

20   provides high-level oversight for LIV through the Jersey entity in which it invested, it does not

21   manage or control LIV's day-to-day operations.  *Id.* ¶ 14.  Like many investors, PIF and its

22   employees enjoy non-monetary benefits from their investment—e.g., tickets to LIV events—but

23   they do not conduct business, such as contract negotiation, at such events.  *Id.* ¶ 15.  HE also does

24   not control day-to-day operations of LIV.  HE Decl. ¶ 4.

25   _____

26   [1]   The PGA Tour's motion asserts that the PIF subsidiary was created by PIF "[t]o manage its
     United States investments," but that assertion is unsupported and factually inaccurate.

27   [2]   PIF and HE respectfully request leave to file the Declarations of Excellency Yasir Al-Rumayyan
28   on conforming paper, to the extent required, which were formatted for filing in New York.

**C.      PIF's Relationship To The Lawsuit**

As alleged in the Amended Complaint, the Tour has sought to prevent golfers from playing in LIV events and conspired to exclude LIV players from the golf "ecosystem."  Dkt. No. 83 ¶ 3. Several golfers sued the Tour for these actions.  Dkt. No. 1.  LIV later joined this lawsuit.  Dkt. No. 83.  The Tour counterclaimed against LIV for tortious interference with contract.  The counterclaim mentions PIF twice, alleging that it finances and oversees LIV.  Dkt. No. 108, ¶¶ 1, 6.

In its Motion, the Tour claims that PIF "had effective control over LIV," plays "a direct role in LIV's day-to-day affairs," and "likely" had a role "in bringing this lawsuit."  Mot. at 2, 6, 20. These claims lack support.  PIF does not control LIV's day-to-day-operations.  PIF Decl. ¶ 14. ████ ██████████████████████████████████████████████ Declaration of Tim Taylor ("Taylor Decl.") ¶ 2. ████████████████████████████████████ *Id.* ¶ 3.

The Tour's evidence to the contrary does not support its claims.  The Tour relies on news articles that contain clear errors, such as a statement that PIF invested in Premier Golf League (it never did).  Mot. Ex. 50 at 7; PIF Decl. ¶ 17.  These articles show that LIV employees referred to HE as "the boss" when asking about whether to launch LIV (which is not a "day-to-day" decision). Mot. Ex. 50 at 20.  The articles also show that HE enjoys privileges reserved for investors, such as attending events and making public announcements at events.  *Id.* Ex. 47 at 9, 19.

The Tour also cites internal LIV documents ████████████████████████████ ████████████████████████████. *Id.* Exs. 45, 15. ███████████████████ ████████████████████████████████████████████████ ████████████████████████ Taylor Decl. ¶¶ 4-5. ███████████████████ ████████████████████████████████████████████ *Id.* ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████ Mot. Ex. 18; PIF Decl. ¶ 14.  Last, the Motion cites a paragraph in the Amended Complaint, which does not mention or refer to PIF.  Mot. at 12; Dkt. No. 83 ¶ 183.

The Tour proffers no other evidence that PIF exercised "day-to-day" control over LIV, much less any control over decisions related to this lawsuit.

D.     The Tour's Subpoenas to PIF and HE

During the August 18, 2022 case management conference, counsel for LIV and PIF promised that notwithstanding PIF's sovereign immunity and U.S. courts' lack of jurisdiction, PIF would "find a way to cooperate" with "appropriate discovery."  Dkt. No. 76 at 14.

Following up on those statements, in September 2022, PIF proactively contacted the Tour, and proposed to work toward an agreement on discovery, while offering to accept service of any subpoenas (but preserving its objections thereto).  Teruya Decl. ¶ 3 & Ex. 1.  PIF soon reiterated that "we want to be cooperative in facilitating reasonable discovery." *Id*. (formatting altered).  The Tour did not respond.  PIF followed up, "again invit[ing] [the Tour] to identify the discovery you seek so we can begin the process of attempting to reach an agreement to facilitate an expeditious disclosure process." *Id*.  The Tour again ignored this request.

On September 22, 2022, the Tour served subpoenas, with 82 requests to the Fund and 79 to HE.  Dkt. No. 148-2 at 21 (HE Subpoena), 43 (PIF Subpoena).  (Counsel for PIF accepted service, preserving all objections, as agreed to by the Tour.)  During the subsequent meet-and-confer, PIF again offered to voluntarily produce materials if the Tour narrowed its requests.  Teruya Decl. ¶ 5.  The Tour rejected that proposal out of hand. *Id*.  The Tour insisted that PIF withdraw its objections as to personal jurisdiction, sovereign immunity, international comity, and the 100-mile limitation, and identify what it is willing to produce. *Id*.  PIF reiterated its offer to voluntarily produce documents in response to narrower requests and even to agree to an enforcement mechanism. *Id*. ¶ 6.  The Tour shut down the discussion and filed a motion to compel instead. *Id*. ¶¶ 8-9.

The Tour's insistence that PIF identify what the Fund and HE would produce is the reverse of what the law requires, viz., that the party seeking discovery narrowly tailor third-party demands to fill the gaps, if any, from party discovery.  The Tour never identified specific topics in which it was interested until *its Motion* (at 11:19 to 13:9), and many of the outstanding requests seek documents unrelated to those five topics, which are very broad.[3]

---

[3]  *See* PIF Subpoena at Requests Nos. 3, 7, 8, 11, 12, 18, 21, 23, 25, 33, 39, 41, 44-49, 51, 54, 55, 60-63, 74, 76, 78, 81, 82; HE Subpoena at Requests Nos. 3, 6, 8, 10, 11, 19, 21, 31, 39, 41-46, 51, 52, 59, 65, 78, 79.

The Tour's ostensible narrowing of the subpoenas by withdrawal of certain requests was window dressing. *First*, the remaining requests subsume most of the withdrawn requests. For example, the Tour withdrew Requests Nos. 1, 2, and 4 to HE, which sought all communications and agreements with, and all documents related to the formation of, LIV, but did not withdraw Request No. 3, which seeks all documents and communications related to LIV. The Tour also withdrew as to the Fund and HE several requests seeking "all agreements" with certain categories of persons (e.g., "sponsors"), but did not withdraw requests asking for "all documents and communications" related to those same categories of persons. *Second*, the Tour withdrew some requests as to the Fund but not as to HE, the Governor of the Fund, and vice-versa. *Compare* HE Subpoena at Request No. 60 (withdrawn), *with* PIF Subpoena at Request No. 65. This was no narrowing at all.

Nonetheless, despite these serious deficiencies, counsel for PIF and HE have begun to explore the processes needed to collect, review and produce documents in this action. The effort would be extraordinarily difficult. PIF is not accustomed to U.S. discovery. Teruya Decl. ¶ 13. PIF is a government instrumentality, so document collection, review, and production would require additional precautions to maintain information in the Kingdom of Saudi Arabia and avoid disclosure of government information. *Id*. ¶ 14. This would include potentially flying a server into Riyadh, which would take many weeks and cost tens of thousands of dollars. *Id*. ¶ 15. The burden is correspondingly high.

## ARGUMENT

The Tour's Motion should be denied and the subpoenas quashed because U.S. courts lack jurisdiction over PIF and HE under principles of sovereign immunity, constitutional due process, and international comity. The subpoenas also violate the 100-mile limitation of Rule 45 and the requirement to tender witness fees required by Rule 45. Finally, the subpoenas should be quashed as unduly burdensome and improper third-party discovery.

## I.     THE COURT LACKS PERSONAL JURISDICTION OVER PIF AND HE

### A.     The FSIA Precludes Jurisdiction Over PIF

Foreign states and instrumentalities are "presumptively immune from the jurisdiction of United States courts unless one of [FSIA's] express exceptions to sovereign immunity applies."

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 32 (2015). "[T]he text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts . . . [and that] the FSIA must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–35 (1989) (quotation omitted).

Immunity under the FSIA is analyzed using a burden-shifting framework. A proponent bears the initial burden to "make a prima facie case that it is a foreign state," then "the burden of production shifts to the plaintiff to offer evidence that an exception applies." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-25 (9th Cir. 2010). Sovereign immunity deprives the court of personal jurisdiction, *Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 522-23 (9th Cir. 2001), and prevents the enforcement of a third-party subpoena. *See U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 597-98 (2d Cir. 1999).

### 1.    The Fund Is An Instrument of the Kingdom of Saudi Arabia

The FSIA applies to a foreign state or "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Under the FSIA, an agency or instrumentality is any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state … or a majority of whose shares or other ownership interest is owned by a foreign state . . . ., and (3) which is neither a citizen of the United States . . . nor created under the laws of any third country." 28 U.S.C. § 1603(b). In evaluating whether an entity is an "organ" of a foreign state under section 1603(b)(2), courts consider several nonexclusive factors:

> the circumstances surrounding the entity's creation, the purpose of its activities, its independence from the government, the level of government financial support, its employment policies, and its obligations and privileges under state law.

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003) (citation omitted). "An entity may be an organ of a foreign state even if it has some autonomy from the foreign government." *Id.*

The Fund meets these elements. *First*, the Fund has a separate corporate and legal personality from the Kingdom of Saudi Arabia. PIF Decl. ¶ 3. *Second*, the Fund satisfies the factors

8

to be an "organ" of the Kingdom of Saudi Arabia.  The Fund was created by Royal Decree to provide financial support for projects of national significance.  *Id.* ¶ 12.  It is governed by a Board of Directors of government Ministers and an advisor at the Royal Court.  *Id.* ¶¶ 4-5.  PIF is regulated by a special law, the PIF law.  *Id.* ¶ 2.  *Third*, PIF is not a citizen of the United States or any third country.  *Id.* ¶ 3.  The Fund satisfies every element of 28 U.S.C. § 1603(b) and is presumptively immune from jurisdiction under the FSIA.  The Tour does not argue otherwise.

### 2.    The Commercial Activity Exception Does Not Apply

The commercial activity exception does not apply because PIF's conduct is not the basis of the lawsuit or counterclaim, and any relevant activity occurred outside the U.S.

The commercial activity exception applies where "the action is based upon" one of the enumerated categories of conduct.  28 U.S.C. § 1605(a)(2).  "[A]n action is 'based upon' the 'particular conduct that constitutes the 'gravamen' of the suit."  *OBB Personenverkehr*, 577 U.S. at 35.  Merely being "connected to other allegedly commercial conduct" is insufficient where "that other conduct is not what the suit 'is based' on."  *Broidy*, 982 F.3d at 594 (citing § 1605(a)(2)).  The "crucial first step" in "determining whether the basis of this suit was a [foreign state's] commercial activity is defining the act complained of.'"  *Id.* at 593 (citation omitted).

The "gravamen" of this case is that the Tour sought to exclude LIV from relevant markets in violation of the antitrust laws.  That has nothing to do with PIF.  Neither does the Tour's counterclaim against LIV.  The Tour alleges that LIV encouraged its golfers to breach their contracts.  That implicates LIV's conduct, not PIF's.  These alleged "torts, and not the arguably commercial activities [by PIF] that preceded or followed their commission, . . . form the basis for Plaintiffs' suit."  *See id.* at 594 (citation omitted).

The Tour cannot rely on LIV's alleged acts to establish this exception.  The commercial activity exception requires cases based on conduct (1) "carried on in the United States by the foreign state," (2) "performed in the United States in connection with a commercial activity of the foreign state elsewhere," or (3) performed "outside the territory of the United States" that "causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  "[T]he first and third clauses have long been interpreted to relate only to the conduct of the foreign state—i.e., it is the foreign state that has to

9

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

have engaged in activity that took place in the United States, or that has to have engaged in acts elsewhere that have an effect inside the United States." *Wye Oak Tech., Inc. v. Rep. of Iraq*, 24 F.4th 686, 700-01 (D.C. Cir. 2022). The second clause is likewise limited to "the foreign state's *own* activities" in the U.S. *Id.* at 701. It would be "entirely anomalous for [the court] to now read clause two to dispense with immunity if just *anyone* performs an act in the United States in connection with the foreign state's commercial activity." *Id.*

LIV's conduct cannot be attributed to PIF under the first clause. *See Flatow v. Islamic Rep. of Iran*, 308 F.3d 1065, 1073 (9th Cir. 2002) ("[A]n entity fully owned by a foreign state is still accorded the presumption that it is a separate juridical entity."). Nor is LIV's alleged interference a "direct effect" of PIF's activities under the third clause. An effect is "direct" if it "follows as an immediate consequence of the defendant's activity." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2018 WL 659084, at *5 (N.D. Cal. Feb. 1, 2018). PIF's funding and oversight of LIV in no way caused LIV to allegedly induce golfers to breach contracts (the Tour's statement to the contrary has no evidentiary citation, Mot. at 18). As to the second clause, the Tour does not argue that it applies and has waived any such argument.[4] But even if it did, LIV's alleged torts are not PIF's "own activities" in the U.S. *Wye*, 24 F.4th at 701. The "substantial contact with the United States" standard of § 1603(e) also requires a "tighter nexus than the 'minimum contacts' standard for due process," and fails for the same reasons. *Pablo Star*, 961 F.3d at 565.

Accordingly, the commercial activity exception does not apply.

### 3.    The Waiver Exception Does Not Apply

The Tour has not met its burden to show that the waiver exception applies. "[V]irtually unanimous precedent . . . construes the waiver exception strictly and requires strong evidence—in

---

[4]   The Tour may argue that a different standard should apply because the Motion involves a third-party subpoena. That argument fails because the commercial activity exception applies to *cases*, not to *conduct*. § 1605(a)(2). All of the Tour's cited cases involve suits against the foreign state itself, not a third party. *See Embassy of the Arab Repub. of Egypt v. Lasheen*, 603 F.3d 1166, 1171 (9th Cir. 2010); *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 565 (2d Cir. 2020; *Everard Findlay Consulting, LLC v. Republic of Suriname*, 831 F. App'x 599, 601 (2d Cir. 2020); *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir. 1983).

the form of 'clear and unambiguous' language or conduct—that the foreign state intended to waive its sovereign immunity." *Aldossari v. Ripp*, 49 F.4th 236, 250 (3d Cir. 2022). Any waiver must be "unequivocally expressed" and read "narrowly." *Id.* The Tour claims that PIF waived immunity because *LIV* filed this antitrust lawsuit. Mot. at 19. PIF did not direct LIV to enter this lawsuit. Taylor Decl. ¶ 2. The only basis for its claim that PIF "authorized" this lawsuit lies is PIF's purported approval of LIV's *finances* and retention of the *same lawyers*. Mot. at 19.

Under that standard, the Fund would waive sovereign immunity any time one of its portfolio companies sues another party. That is the opposite of the "strict construction" required by the case law. LIV is a separate entity, and its actions cannot be attributed to PIF without alter ego or agency. *See Doe v. Holy See*, 557 F.3d 1066, 1077-79 (9th Cir. 2009). Because the Tour does not attempt to show that either doctrine applies, this exception does not apply.

### B.   Common Law Immunity Precludes Jurisdiction Over HE

"Common-law foreign sovereign immunity extends to individual foreign officials for acts performed in their official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Dogan v. Barak*, 932 F.3d 888, 893-94 (9th Cir. 2019). The immunity is both immunity from suit and "the attendant burdens of litigation." *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 496 (S.D.N.Y. 2014) (quashing subpoena served on former national security officer); *Giraldo v. Drummond Co., Inc.*, 808 F. Supp. 2d 247, 249 (D.D.C. 2011), *aff'd*, 493 Fed. Appx. 106 (D.C. Cir. 2012) (former government official immune from testifying about "information he received and acts he took in his official capacity").

HE is entitled to conduct-based immunity because the subpoenas seek documents and testimony regarding "acts performed in his official capacity." *See Fed. Ins. Co. v. Qaida*, 122 F. Supp. 3d 181, 187 (S.D.N.Y. 2015) ("[T]he immunity enjoyed by the government of Saudi Arabia and its officials extends … to [the official at issue] under the common law for acts performed in his official capacity." (quotation omitted)). Here, at issue is HE's role as Governor of PIF. HE Decl. ¶¶ 2, 4, 7. The 33 requests seek discovery of HE that concern his role as an official of Saudi Arabia.

HE is entitled to immunity.[5]  *See Mireskandari v. Mayne*, 800 Fed. Appx. 519, 519 (9th Cir. 2020) ("The allegations as to these defendants consistently stated that they acted to further the objectives of foreign government entities . . . .  Because the defendants performed the alleged conduct in their official capacities, they are entitled to common-law foreign sovereign immunity.").

Compelling HE to produce documents or attend a deposition "would enforce a rule of law against a foreign state" because the sought-after documents are official documents of Saudi entities or the Kingdom itself.  Moreover, PIF would be responsible for all costs and activities associated with any document production or deposition.  HE Decl. ¶ 12; *see Rosasen v. Kingdom of Norway*, No. 221CV06811JWHSP, 2022 WL 409679, at *6 (C.D. Cal. Feb. 10, 2022) (finding that "the effect of exercising jurisdiction over them would be to enforce a rule of law against the state" where it was "likely that any potential damages would be paid by the government of Norway given the nature of plaintiff's allegations").  Common law official immunity applies.

### C.     PIF and HE Lack "Minimum Contacts" For the Exercise of Specific Jurisdiction

"[D]ue process necessitates that a nonresident [party] have 'certain minimum contacts' with a forum state before the state can exercise personal jurisdiction over that individual or entity."  *LNS Enter. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022).  The Tour does not argue that PIF or HE are "at home" in the relevant fora for general jurisdiction.  Only specific jurisdiction (and "tag" jurisdiction, addressed below) can provide a basis here.

The "minimum contacts" test for specific jurisdiction has three requirements:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one

---

[5]   There is no commercial activity exception.  The Tour's argument, Mot. at 23, is based on three cases discussing a 1952 letter, as historical background for the FSIA's adoption, by the State Department regarding a "restrictive" theory of sovereign immunity.  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983); *Samantar v. Yousuf*, 560 U.S. 305, 312 (2010); *Matar v. Dichter*, 563 F.3d 9, 13 (2d Cir. 2009).  But even the State Department did not follow its 1952 theory.  *Samantar*, 560 U.S. at 312 (recounting how, due to inconsistent application, "immunity determinations [by the State Department were thrown] into some disarray").  And the Tour does not cite to a single case applying a commercial activity exception to common law sovereign immunity.

which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 859.  "The plaintiff bears the burden on the first two prongs," and "the burden then shifts to the [movant] to present a compelling case that the exercise of jurisdiction would be unreasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Here, the Tour fails to identify sufficient *relevant* contacts, and the exercise of personal jurisdiction would be unreasonable under principles of comity.[6]

### 1.    The Fund and HE Lack Sufficient Contacts With Nexus To the Forum

The Tour assumes that PIF's and HE's contacts with LIV create jurisdiction, instead of PIF and HE's contacts with the forum.  The Tour's assumption is incorrect.

The Supreme Court has long rejected the argument that mere investment in a U.S. company creates jurisdiction in that company's foreign investor.  *See Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) (finding "it strains reason" to suggest that investment alone subjects the investor to jurisdiction).  "It is well established that . . . where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

To establish jurisdiction over a foreign owner, a party must either "(1) show each [company's] sufficient, direct contacts with the forum state, or (2) use the alter ego theory to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliates."  *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).  An agency theory may also be available.  *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017).  The alter ego test requires "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073.  The agency test requires that the parent "had the right to substantially control" the subsidiary to have "in

---

[6]  The New York long-arm statute is "largely identical" and fails for the same reasons.  *See NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 354 (S.D.N.Y. 2018).

1   effect taken over the performance of the subsidiary's day-to-day operations." *In re Cal. Gas. Spot*
2   *Market Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021).

3   The Tour can show neither that PIF's direct contacts create jurisdiction nor that LIV's
4   contacts can be imputed to PIF. *First*, the Tour cannot identify contacts by PIF itself to create
5   jurisdiction. The Tour focuses on PIF's creation, funding, and oversight over LIV. Mot. at 2, 22.
6   But those are contacts with "persons who reside [in the forum]," not the forum itself. *Walden*, 571
7   U.S. at 286. Any financing or oversight by PIF takes place *abroad*, as explained above. PIF Decl.
8   ¶¶ 14-15. PIF's funding and oversight for LIV are therefore not contacts with the U.S., even if they
9   relate to a plaintiff that resides here.

10   Neither the claims nor the discovery at issue arise from these contacts. The Tour argues that
11   "PIF created LIV to recruit United States golfers [and] host golf tournaments in the United States."
12   Mot. at 19. But neither the Tour's conduct nor LIV's alleged contract interference arise from PIF's
13   decision to fund LIV. Likewise, the Tour's incorrect claim that PIF "likely" authorized the filing
14   of this lawsuit has no bearing. *Id.* at 20. This is not an abuse of process case.

15   The rest of the Tour's proposed jurisdictional contacts are similarly misplaced. This
16   litigation is not about PIF's investments in Lucid or other U.S. companies, Mot. at 8; PIF's New
17   York subsidiary, *id.*; HE's attendance at PIF or philanthropic events, *id.* at 9; PIF's relationships
18   with corporate investors, *id.*; LIV's "in person media summit," *id.*; or PIF's New York consultants
19   or lawyers. *Id.* at 18. None of PIF's identified contacts *with the U.S.* have nexus to the claims or
20   discovery, and the contacts having relevance (funding, oversight) all take place abroad.

21   *Second*, because PIF's direct contacts are insufficient, the Tour must show that LIV's
22   contacts can be imputed to PIF under principles of alter ego or agency. *Boon Global*, 923 F.3d at
23   650. That appears to be the Tour's intention in arguing that PIF has "effective control" over LIV.
24   Mot. at 2. But the Tour fails to identify the correct legal test or show that PIF exercises the
25   "pervasive control" needed for attribution. *See Ranza*, 793 F.3d at 1073. PIF, LIV, and LIV Golf
26   Investments (the Jersey subsidiary that manages PIF's investment in LIV) are separate legal entities
27   and observe corporate formalities. PIF Decl. ¶ 14. The Tour's evidence of control amounts to
28   oversight, such as that PIF and HE ███████████████████████████████████████████

1   █████████████████████████████████████████████ attend LIV events.  *See*

2   *supra* p. 5.  None of this suggests that PIF "dictates every facet" of LIV's business or its "day-to-

3   day policy."  *Ranza*, 793 F.3d at 1073; *Cal. Gas. Spot*, 2021 WL 4461199, at *2.

4   "A parent corporation may be directly involved in financing and macro-management of its

5   subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego."

6   *Ranza*, 793 F.3d at 1074.  In *Ranza*, the Ninth Circuit rejected alter ego jurisdiction where Nike

7   "exercises control over NEON's overall budget," has "approval authority" for large purchases,

8   makes some hiring decisions, "operates information tracking," and requires reporting by some

9   employees.  *Id*.  In *Doe v. Unocal*, the Ninth Circuit confirmed no jurisdiction where the parent

10  corporation "guaranteed loans for the subsidiary, reviewed and approved major decisions, placed

11  several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing

12  decisions."  248 F.3d 915, 928 (9th Cir. 2001).  And in *California Gasoline Spot Market Antitrust*

13  *Litigation*, Judge Corley found no agency jurisdiction where the parent company "engaged in

14  regular oversight" over a subsidiary, developed its "Biz Plan," shared several employees, and used

15  shared email domains.  2021 WL 4461199, at *4.  In each case, the parent company's actions were

16  "consistent with the parent's investor status."  *See U.S. v. Bestfoods*, 524 U.S. 51, 72 (1998).  So

17  here.  There is no alter ego or agency, and no jurisdiction.

18  **2.    Comity Renders The Exercise Of Jurisdiction Unreasonable**

19  "International comity is the recognition which one nation allows within its territory to the

20  legislative, executive or judicial acts of another nation, having due regard both to international duty

21  and convenience, and to the rights of its own citizens or of other persons who are under the

22  protection of its laws."  *Cooper v. Tokyo Elec. Pwr. Co. Holdings, Inc.*, 960 F.3d 549, 565-66 (9th

23  Cir. 2020).  The Tour conflates international comity and sovereign immunity, but these are separate

24  doctrines that courts consider independently.  *See, e.g.*, *id.* at 566; *Daimler AG v. Bauman*, 571 U.S.

25  117, 141 (2014).  In *Daimler*, the Supreme Court rejected an expansive agency test for general

26  jurisdiction due, in part, to "[c]onsiderations of international rapport," which informed the "fair play

27  and substantial justice" analysis.  *See* 571 U.S. at 142.

28

1    Here, two comity considerations strongly counsel against the exercise of jurisdiction.  *First*,

2    exercising jurisdiction would unfairly subject PIF and HE to jurisdiction based on typical "investor"

3    activities like financing and supervision.  *See Bestfoods*, 524 U.S. at 72.  PIF, with HE as its

4    Governor, invests billions of dollars in U.S. companies and exercises high level supervision over

5    many of them.  Subjecting PIF and HE to jurisdiction based on these activities would violate

6    principles of "fair play and substantial justice."  *Daimler*, 571 U.S. at 142.

7    *Second*, enforcing the subpoenas here would force PIF and HE to violate PIF's governing

8    law.  *See Richmark Corp. v. Timber Falling Consults.*, 959 F.2d 1468, 1475 (9th Cir. 1992).  PIF is

9    a governmental entity, and its governing law prohibits employees from disclosing "confidential"

10   information.  PIF Decl. ¶ 10.  Disclosure also violates other laws, including High Order No.

11   (M/1676), which could expose PIF employees and HE to imprisonment.  *Id.* ¶ 11.  PIF and HE

12   should not have to choose between complying with governing law and obeying a U.S. court order.

13   Considerations of comity render the exercise of jurisdiction unreasonable.

14   **D.    Tag Jurisdiction Does Not Apply**

15   Tag jurisdiction extends jurisdiction "over nonresidents who are physically present in the

16   State."  *Burnham v. Sup. Ct. of Cal., Cnty. of Marin*, 495 U.S. 604, 610 (1990).  "[T]ag jurisdiction

17   exists only over *natural* persons who are physically present in a forum state."  *Ridgeway v. Phillips*,

18   383 F. Supp. 3d 938, 945 (N.D. Cal. 2019) (emphasis added).  "It does not apply to corporations."

19   *Id.*  The Tour's tag jurisdiction argument for the Fund is misplaced.

20   As to HE, the Tour's argument is premised on a *service* stipulation, not on *physical presence*

21   in the forum.  Mot. at 22.  But "[s]ervice of process and personal jurisdiction are two different

22   things."  *AM Tr. v. UBS AG*, 681 F. App'x 587, 589 (9th Cir. 2017).  Tag jurisdiction is based on

23   "19th and early 20th centuries [cases that] held that personal service upon a *physically present*

24   defendant sufficed to confer jurisdiction, without regard to whether the defendant was only briefly

25   in the State or whether the cause of action was related to his activities there."  *Burnham*,  495 U.S.

26   at 612.  It is expressly "based on physical presence alone," not on service.  *Id.* at 619.

27   Here, by contrast, HE was not served while physically present; rather, counsel agreed to

28   stipulate to service.  The central rationale is absent, and tag jurisdiction over HE should be rejected.

## II.     THE SUBPOENAS VIOLATE THE 100-MILE LIMIT

Rule 45 provides that "[a] subpoena may command a person to attend a … deposition only," or "command production of documents, electronically stored information, or tangible things at a place," "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (2)(A). "[T]he court for the district where compliance is required must quash or modify a subpoena" that "requires a person to comply beyond the geographical limits specified."[7]  Fed. R. Civ. P. 45(d)(3)(A)(ii); *see also AngioScore, Inc. v. TriReme Med., Inc.*, No. 12 CV 3393, 2014 WL 6706873, at *1, n.1 (N.D. Cal. Nov. 25, 2014) (holding that a subpoena violating the 100-mile limit was "invalid on its face").

Here, the subpoenas are noticed for the offices of Skadden, Arps, Slate, Meagher & Flom LLP, at One Manhattan West, New York, NY 10001, which is more than 100 miles from any place where the Fund or HE reside, are employed, or regularly transact business in person.  PIF Decl. ¶ 22.  The Tour argues otherwise but identifies only "one-off" event attendance, such as for a LIV Golf tournament in Bedminster, New Jersey; a "dinner hosted in [HE's] honor"; and an ARAMCO event.  Mot. at 9-10.  Such events are, by definition, irregular and too sparse to constitute "regularly" transacting business.  *See, e.g.*, *Perez v. Porgenics Pharms., Inc.*, 2015 WL 4111551, *2 (S.D.N.Y. June 24, 2015) (being "periodically physically present" within 100 miles of court for quarterly board meetings "do[es] not appear to fit within the meaning of Rule 45(c)(1)(A)"); *In re Application for Order Quashing Deposition Subpoenas,* No. M8-85, 2002 WL 1870084, at *3 (S.D.N.Y. 2002) (a person who comes to New York for business four times within five years "does not 'regularly transact [ ] business in person'").  For this additional reason, the Motion should be denied and the subpoenas quashed.

## III.     THE DEPOSITION SUBPOENA SHOULD BE QUASHED FOR FAILURE TO TENDER FEES

"Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed

---

[7]   Modification is not an option if it would cause the subpoena to violate Rule 45.  *See Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 63-64 (S.D.N.Y. 1998).

by law." Fed. R. Civ. P. 45(b)(1).  Here, the PGA Tour did not tender any fees to PIF when it served the Subpoena.  Teruya Decl. ¶ 4.  For this reason, service was invalid and the deposition Subpoena should be quashed.  *See Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL (JSC), at *7-8 (N.D. Cal. May 14, 2015) (collecting cases).

## IV.    THE SUBPOENAS ARE UNDULY BURDENSOME AND IMPROPER THIRD-PARTY DISCOVERY

A subpoenaing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  When a party violates this obligation, "the court for the district where compliance is required must quash or modify [the] subpoena."  Fed. R. Civ. P. 45(d)(3)(A).  "While discovery is a valuable right and should not be unnecessarily restricted . . . , the 'necessary' restriction may be broader when a nonparty is the target of discovery." *Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980).  "[T]he word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Id*.; *see also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.").

Here, the Tour has violated its Rule 45 obligations to avoid imposing an undue burden on PIF and HE because: (1) the requests and topics require an unduly burdensome effort to identify what they seek; (2) the requests and topics seek irrelevant documents and information; (3) the requests and topics seek documents and information that can be more conveniently obtained from Plaintiffs or other non-parties to which the information relates; and (4) the Tour cannot meet its burden to show that its need for certain documents and information outweighs the potential privacy and economic harms resulting from divulgence.

The concerns here are not theoretical.  PIF and HE have explored ways to produce discovery in this action and found that it would take an extraordinary effort costing tens of thousands of dollars, as well as significant attorney and vendor hours, to even set up a document collection process. Teruya Decl. ¶¶ 12-14.  Given PIF's status as a government entity, the effort to collect and review highly sensitive government documents will be neither cheap nor easy.  *Id*.

18

The first three issues underscore the backwardness of the Tour's Subpoena.  The Tour issued the Subpoena *before* receiving any party discovery.  This flies in the face of the bedrock principle of non-party discovery that it is meant to fill gaps remaining after party discovery.  "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."  *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 7313047, *4 (N.D. Cal. Dec. 30, 2019) (quoting *Soto v. Castlerock Framing & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012)).

### A. The Subpoena's Overbreadth Requires Quashing

In its own words, the Tour has failed to "appropriately tailor [its] requests to discovery that is truly relevant and proportional to the needs of the case."  ECF No. 112 at 4:18-19.  The Tour has failed to do so in three significant ways, counseling in favor of quashing the Subpoena.  *See, e.g.*, *Simplex Mfg. Co. v. Chien*, No. C12-835RAJ, 2012 WL 3779629, at *3 (W.D. Wash. Aug. 31, 2012) ("Simplex made no good faith attempt to narrow the scope of the document subpoenas. The court will accordingly quash the subpoenas."); *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (quashing subpoena that contained some reasonable requests where other requests were "way too broad for the explanation given by [the party issuing the subpoena]," who had not attempted to "tailor the information request to the immediate needs of the case").

*First*, the Tour's requests and topics include "Definitions" of "Saudi PIF," "LIV," "Golf Saudi," "PGA TOUR," "DP World Tour," "Asian Tour," and "Official World Golf Ranking," which are defined to include "without limitation all predecessors, predecessors-in-interest, affiliates, parents, subsidiaries, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationship of each and others acting on behalf of each."  Determining who falls within each definition is unreasonable and unduly burdensome.

*Second*, the Tour attempts to force PIF and HE to identify specific individuals from general categories of individuals, the identity of which are necessary to prepare a corporate representative for deposition and produce documents in response to the requests for production.  This places an

19

undue burden on them because the Tour can do so itself.  And if it cannot, then it must first attempt

to do so via party discovery.  For example:

- Topic Nos. 9-13: communications and agreements between PIF and "any professional golfer," " any professional golf league or tour," "any actual or potential sponsor, advertiser,  media partner, vendor, or tournament host of LIV or the PGL," "any Major tournament," and "the OWGR" (the governing body of golf's official world rankings).

- PIF Request No. 7: "[a]ll communications with professional golfers, their agents, or anyone acting on their behalf…."

- PIF and HE Request No. 29: "All documents and communications related to LIV or the PGL's actual or potential sponsors…."

- HE Request No. 52: "All documents and communications related to reservations or concerns about doing business with you, LIV or any of your other portfolio companies…."

The Tour has stood on these requests to these non-parties, despite the fact that the Tour

argued to the Court in the underlying action, and the Court agreed, that an interrogatory to the Tour

with similar general categories was overbroad.  *See* ECF No. 125 at 2:2-6; ECF No. 116-1

(interrogatory at issue).  Non-parties should not be subject to greater burden than the Tour.

*Third*, almost every request seeks "all" documents, communications, or agreements that are

"related to" general topics.  *See, e.g.*, PIF Request Nos. 3, 6, 7, 8, 11, 12, 15, 18, 21, 23-25, 29, 31,

33, 35, 37, 39, 41-49, 51, 54, 55, 61-63, 70, 76, 78, 80-82; Deposition Topic Nos. 9-14, 19; HE

Request Nos. 3, 5, 6, 8, 10-12, 16, 19, 21, 27, 29, 31, 33, 35, 37, 39-46, 48, 51, 52, 59, 65, 78.

"Courts have often found that such blanket requests are overbroad and impermissible.  This

overbreadth is, on its own, a basis to quash the Subpoena.  *U.S. Sec. & Exch. Comm'n v. Ahmed*,

No. 3:15CV675 (JBA), 2018 WL 1541902, at *2 (D. Conn. Mar. 29, 2018); *see Henry v. Morgan's

Hot. Grp.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (collecting cases finding that

requests for "all documents" are overbroad, and quashing subpoenas); *Gopher Media, LLC v. Spain*,

No.: 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at *5 (S.D. Cal. Nov. 17, 2020) ("As a rule,

requests for 'any and all' documents or communications (or testimony about those materials) are

facially overbroad."); *Leisure Hosp., Inc. v. Hunt Props., Inc.*, No. 09-cv-272, 2010 WL 3522444,

at *3 (N.D. Okla. Sept. 8, 2010) ("Such 'omnibus' phrases as 'relating to,' 'referring to,' or

20

'concerning' have been held objectionable unless whatever follows that phrase is clearly and narrowly defined."); *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006) (finding that a document request is overbroad if it: "(1) uses an omnibus term such as 'relating to or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information").

## B.     The Majority of Requests and Deposition Topics Are Irrelevant

"A Rule 45 subpoena is subject to the relevance requirements set forth in Rule 26(b)." *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-CV-080082-LHK PSG, 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012).  Yet, "[i]n spite of the extremely broad interpretation given Rule 26(b) in regard to party discovery, the cases have construed this provision more narrowly when it is applied to non-parties." *Laxalt v. McClatchy*, 116 F.R.D. 455, 457 (D. Nev. 1986).  "[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *EON Corp.*, 2012 WL 1980361, at *1 (citation omitted).  "Obviously, if the sought after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Compaq Comp. Corp. v. Packark Bell Elecs.,* 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

The majority of the requests and deposition topics have so much overbreadth and such little relevance that subjecting PIF and HE to collect, search for, and produce responsive documents, and to prepare a representative to attend a deposition in New York City, would be an undue burden.

*First*, the Tour focuses on conduct and the internal workings of PIF, topics that are irrelevant to the underlying action.  The Tour claims it needs discovery from PIF and HE because PIF is the primary investor in LIV.[8]  PIF is not alleged to have any liability in relation to the Tour's counterclaim nor to have taken any acts (other than investing in LIV) in furtherance thereof.  Nor is PIF alleged to have any relevance to Plaintiffs' claims.  *See In re iPhone/iPad Application Consumer Privacy Litig.*, No. 11-MD-2250-LHKPSG, 2012 WL 5897351, at *6–7 (N.D. Cal. Nov. 21, 2012) (denying the plaintiffs' discovery where the plaintiffs' claims "involve Apple's representations to

---

[8]   It is undisputed that PIF is the primary investor of LIV.  In addition to likely being discoverable from LIV, the need for discovery on this topic from PIF is dubious.

21

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

consumers, [and] its failure to comply with those representations," and, therefore, the company's internal communications were "beyond the scope of [the plaintiffs'] claims"). The following, which focus on PIF and the Kingdom of Saudi Arabia's conduct and internal workings, are not relevant: Topic Nos. 2, 5, 8-14, 16, 17; PIF Request Nos. 11, 15, 24, 25, 42-49, 54, 55, 60-63, 70, 80, 82; HE Request Nos. 3, 5, 6, 8, 10, 12, 21, 40-46, 48, 51, 52, 78, 79.

*Second*, the Tour's argument—that it justifiably enforced regulations to prevent Tour members from playing in LIV events to avoid the reputational harm of being associated with PIF, an organ of the Saudi government (Mot. at 12:23 to 13:3)—is premised solely on the Tour's knowledge at the time that the Tour enforced those regulations against its members who played in LIV events. But PIF's documents and information unknown to the Tour at the time has no bearing on the Tour's justification for enforcing its regulations. Discovery from PIF and HE in furtherance of that topic, i.e., Topic Nos. 16 and 17, PIF Request Nos. 51, 54, 55, and HE Request Nos. 48, 51, 52, is not relevant to the underlying action.

*Third*, PIF has no relationship with, equity interest in, or other control over Golf Saudi. PIF Decl. ¶ 17. Discovery regarding Golf Saudi is irrelevant (as the Tour all but concedes by not having a single deposition topic related to Golf Saudi). *See* PIF Request Nos. 7, 21, 61, 74, 76; HE Request Nos. 6, 12, 19, 48, 51, 52.

## C.   Most Discovery Can Be More Conveniently Obtained From Other Sources

It is well-settled that a subpoena is unnecessary, and should be quashed, if the documents and information sought from a *non-party* can be obtained through *party* discovery. *See*, *e.g*., Wright & Miller, 8B FED. PRAC. & PROC. CIV. § 2204 (3d ed.) ("Ordinarily, it is thought preferable that documents should be sought from a party using Rule 34 rather than from a nonparty."); *Genus Lifesciences*, 2019 WL 7313047, *4 (alterations in original) ("When the requesting party has 'not shown [that it] attempted to obtain documents from the [opposing party] in an action prior to seeking documents from a non-party, a subpoena duces tecum places an undue burden on a non-party.'"). "[A]ny party seeking third-party discovery must be able to explain not only why that discovery is relevant and proportional, but also why it could not be obtained from a party to the litigation." *AirWair Int'l v. Zoetop Bus. Co., Ltd.*, 20-cv-07696-SI (RMI), 2021 WL 6091263, at *2 (N.D. Cal.

Dec. 23, 2021); *Elec. Scripting Prods. v. HTC Am. Inc.*, 17-cv-05806-RS (RMI), 2021 WL 3773607, at *9 (N.D. Cal. Aug. 25, 2021) (quashing subpoena where "each and every piece of information sought by ESPI's third-party subpoena is either irrelevant to this action, or constitutes information that should have been more properly sought from Defendant HTC rather than a non-party"); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena where "vast majority of the discovery" was available from a party).

The subpoenas circumvent party discovery to target one of LIV's investors, PIF, and its Governor, HE.  If Defendant is entitled to such information at all, Defendant should seek *from Plaintiffs* discovery related to the following deposition topics and requests in the Subpoena: Topic Nos. 2, 8-16, 17; PIF Request Nos. 3, 7, 8, 11, 15, 18, 29, 31, 33, 35, 37, 39, 41-44, 47-49, 54, 81, 82; HE Request Nos. 3, 5, 6, 8, 10, 16, 21, 27, 29, 31, 33, 35, 37, 39-41, 43-46, 59, 61, 78.

Defendant also seeks information about the PGL, solely on the basis that PIF considered investing (like many other entities) in the PGL.  Before burdening PIF and HE about another non-party's internal information, the PGA Tour should first seek that information from the PGL itself or entities that actually invested in the PGL, which are plainly better suited to provide it.[9]  *See* Fed. R. Civ. P. 26(b)(2)(C) (providing that a court may limit discovery if "the discovery sought ... is obtainable from some other source that is more convenient, less burdensome, or less expensive"). Further, the Amended Complaint has numerous allegations related to the PGL.  *See, e.g.*, ECF No. 83 ¶¶ 77-81, 88-89, 93-101.  Prior to burdening a non-party, the Tour should identify any gaps in LIV's productions regarding the PGL, and then seek to fill those gaps from non-parties.  These improper topics and requests are: Topic Nos. 5, 6, 7, 8; PIF Request Nos. 7 29, 31, 33, 35, 37, 39, 41, 42, 61, 68-70, 72, 74, 76, 78; HE Request Nos. 6, 12, 21, 27, 29, 31, 33, 35, 37, 39, 52, 65, 67.

### D.    The PGA Tour Seeks Non-Parties' Confidential Information

Defendant also cannot show, as required, that PIF, Saudi Arabia, Golf Saudi, and the PGL's confidential and competitively sensitive information sought by the requests and deposition topics

---

[9]    Similarly, before seeking discovery from PIF and HE, the Tour should first request it from the unidentified "professional golfers," "professional golf leagues or tours," and the "actual or potential sponsors, advertisers,  media partners, vendors, or tournament hosts of LIV or the PGL."

23

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

would be "sufficiently relevant and necessary to [its] case to outweigh the harm disclosure would cause[.]" *U.S. v. R. Enterp., Inc.*, 498 U.S. 292, 306 n.4 (1991) (Stevens, J., concurring) (citing with approval).   To obtain "trade secret or other confidential research, development, or commercial information" from a non-party, a subpoenaing party must demonstrate "substantial need" for the information "that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3). Substantial need "is particularly important in the context of enforcing a subpoena when discovery of trade secret or confidential commercial information is sought from non-parties." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006).

With the following topics and requests, which do not bear sufficient relevance to the underlying litigation, the Tour—a golf promoter just like LIV, the PGL, and Golf Saudi, which sponsor a women's global golf series, *see https://aramcoteamseries.com/en-us/* and the Saudi International, an annual professional golf tournament, *see https://www.golfsaudi.com/en-us/si/*— seeks non-parties PIF, the Kingdom of Saudi Arabia, Golf Saudi, and the PGL's confidential commercial information: Topic Nos. 2, 5-13,16, 18; PIF Request Nos. 3, 7, 8, 11, 15, 18, 21, 24, 25, 29, 31, 33, 35, 37, 39, 41-43, 51, 60-63, 70, 74, 76, 78, 80, 82; HE Request Nos. 3, 6, 8, 10, 12, 16, 19, 27, 29, 31, 33, 35, 37, 39, 40, 48, 59, 61, 65, 67, 78.

This Court should reject the Tour's attempt to obtain commercially sensitive documents and information that have little-to-no relevance to the underlying litigation. *See, e.g.*, *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 1660386, at *5 (S.D. W. Va. Apr. 22, 2014) (stating that confidential information includes material that provides financial or competitive advantage, including marketing strategy and financial information); *In re eBay Seller Antitrust Litig.*, No. C09-0735RAJ, 2009 WL 10677051, at *5-6 (W.D. Wash. Aug. 17, 2009) (finding internal plans regarding marketing, strategy, and competition protected by Rule 45(d)(3), and holding that "Amazon need not produce any documents that reveal its strategic thinking, its assessment of relevant markets, its marketing plans, or any other competitively sensitive internal information.").   Any need by the Tour for this discovery is undercut by the sheer breadth and irrelevance of the requests and topics, the Subpoena issuing before Plaintiffs' productions had begun, and the lack of any particularized showing of need.

1

## **<u>CONCLUSION</u>**

2

     For the foregoing reasons, PIF and HE respectfully request that the Court deny the Tour's

3

Motion to Compel and grant their joint Motion to Quash.

4

5

DATED:  November 22, 2022         Respectfully submitted,

6

         By:      */s/ Kevin Teruya*

7

         JOHN B. QUINN, SBN 90378
          johnquinn@quinnemanuel.com

8

         DOMINIC SURPRENANT, SBN 165861
          dominicsurprenant@quinnemmanuel.com

9

         KEVIN TERUYA, SBN 235916
          kevinteruya@quinnemanuel.com

10

         QUINN EMANUEL URQUHART & SULLIVAN LLP

11

         865 South Figueroa Street, 10th Floor
         Los Angeles, California 90017

12

         Telephone: 213.443.3000

13

14

         ROBERT P. FELDMAN, SBN 69602
          bobfeldman@quinnemanuel.com

15

         QUINN EMANUEL URQUHART & SULLIVAN LLP
         555 Twin Dolphin Dr., 5th Floor

16

         Redwood Shores, California 94065
         Telephone:  650.801.5000

17

         Facsimile:   650.801.5100

18

         *Attorneys for Non-Parties Public Investment Fund of*
         *the Kingdom of Saudi Arabia and His Excellency*

19

         *Yasir O. Al-Rumayyan.*

20

21

22

23

24

25

26

27

28

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION TO QUASH AND OPPOSITION TO MOTION TO COMPEL
CASE NO. 5:22-CV-04486-BLF

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Executed on November 22, 2022.

/s/ Kevin Teruya
Kevin Teruya