# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, | Misc. Case No. |
| Petitioner, | Underlying Case Pending in the United States District Court for the Northern District of California: |
| v. | |
| PGA TOUR, INC. | Case No.  5:22-cv-04486-BLF |
| Respondent. | |

**DECLARATION OF HIS EXCELLENCY YASIR O. AL-RUMAYYAN IN SUPPORT OF
MOTION TO QUASH SUBPOENA**

I, Yasir O. Al-Rumayyan, declare under penalty of perjury of the laws of the United States pursuant to 28 U.S.C. § 1746 as follows:

1.          I am the Governor of the Public Investment Fund of the Kingdom of Saudi Arabia ("Public Investment Fund," or "PIF").  I respectfully submit this Declaration in Support of the Public Investment Fund's Motion to Quash Subpoena.  Based on my position as Governor of PIF, I have knowledge of the facts set forth in this Declaration.  I am fluent in Arabic and English and have elected to prepare this declaration in English.

**PIF Law and Governance**

2.          The Public Investment Fund is the sovereign wealth fund of the Kingdom of Saudi Arabia.  It was established in 1971 by Royal Decree No. M/24 of the Kingdom of Saudi Arabia.  PIF is regulated by the Public Investment Fund Law of the Kingdom of Saudi Arabia, a true and correct copy of which is attached as **Exhibit A**.

3.        PIF is a separate legal entity from the Kingdom of Saudi Arabia.  Under Article 2 of the Public Investment Fund law, PIF "shall have a public legal personality as well as financial and administrative independence."  Ex. A at 1.  PIF is an integral part of the Kingdom of Saudi Arabia.  PIF is not a citizen of any other country.

4.        PIF has a Governor who holds the rank of a Minister in the Kingdom of Saudi Arabia.  *Id.* at 5.  PIF is governed by a Board of Directors.  Day-to-day management is overseen by the Executive Management, which is responsible for reviewing PIF's operations and evaluating (and, in certain cases based on the Delegation of Authority in place, approving) investment or non-investment proposals before submitting them to the Board of Directors for decision.

5.        The members of PIF's Board of Directors include His Royal Highness Mohammad bin Salman Al-Saud (as Chairman); two Ministers of State; the Minister of Commerce; the Minister of Finance; the Minister of Tourism; the Minister of Investment; the Governor, HE Yasir Al-Rumayyan; and an Advisor at the Royal Court.  All Board members are appointed by royal order under Article 5 of the Public Investment Fund Law.

6.        Under Article 6 of the Public Investment Fund Law, the Board and its Chairman "shall supervise the Fund, including its management and affairs, and shall ensure its objectives are achieved and its powers—as stipulated in this Law—are exercised."  *Id*. at 3.  The Board also determines the Governor's powers and duties.  *Id*. at 5.  To that end, the Board has power for "setting investment strategies, policies, and procedures"; "approving the Fund's organizational structure and the manner of regulating and distributing its functions and duties"; "setting rules for nominating and appointing the Fund's representatives to the boards of directors of companies and other entities that the Fund owns or holds shares therein, and determining their

renumeration, as well as their rights and duties"; and "designating the persons authorized to sign on behalf of" PIF. *Id*. at 3-4.

7.          PIF is not created under the laws of the United States or any third country. As explained above, PIF was created by a Royal Decree in the Kingdom of Saudi Arabia and is presently regulated by the Public Investment Fund Law.

8.          As an integral part of the Kingdom of Saudi Arabia, PIF is subject to a number of restrictions on disclosing information to outside parties.  I understand that High Order No. (M/1676) dated 24/12/1416H (corresponding to 12/05/1996) of the Kingdom of Saudi Arabia prohibits disclosing official documents to any party outside the workplace and provides that whoever violates such order will be subject to discipline and imprisonment.

9.          Similarly, I understand that the Penal Law on Dissemination and Disclosure of Classified Information and Documents of the Kingdom of Saudi Arabia prohibits disclosing classified information and documents.  I understand that Article 2 of the Penal Law on Dissemination and Disclosure of Classified Information and Documents provides that "[a] public employee or a person of a similar capacity shall not disseminate or disclose classified information or documents which he obtains or is privy to by virtue of office even after the end of his service if such dissemination or disclosure remains restricted."  I understand that violating such an obligation will be punishable "by imprisonment for a period not exceeding 20 years or a fine not exceeding one million riyals."  I understand that classified information is not defined.

10.         The Public Investment Fund Law itself prohibits disclosing confidential information.  Article 17 states that "Board members and Fund employees shall not disclose any confidential information not benefit from any information they become privy to in the course of

carrying out their duties, even after their relationship with the Fund ends." Article 17 does not list any exceptions that would allow PIF to comply with a foreign subpoena.

11.          I understand that producing documents or providing testimony in response to the Subpoena could violate the laws discussed above, including at least the Public Investment Fund Law and High Order No (M/1676). I understand that disclosing this information to outside parties could subject PIF employees to penalties under the laws of the Kingdom of Saudi Arabia, including imprisonment.

### PIF's Activities and Investments

12.          PIF was established to provide financial support for projects of strategic significance to the national economy in Saudi Arabia. Under Article 3 of the Public Investment Fund Law, PIF makes investments "for the purpose of serving public interest; promoting economic development in the Kingdom and diversifying its sources of income; and maintaining the interest of future generations." Ex. A at 3.

13.          I understand that LIV Golf, Inc, a US entity, is one plaintiff in the underlying antitrust litigation against the PGA Tour. PIF does not own shares in LIV Golf, Inc. PIF does not have day-to-day control over LIV Golf Inc., in the United States or otherwise.

14.          PIF owns shares in LIV Golf Investments Ltd., a Jersey entity. Jersey is a self-governing dependency of the United Kingdom. LIV Golf Investments Ltd. is a separate entity from PIF. LIV Golf Investments Ltd. is adequately capitalized, pays its own debts, and does not commingle its property with PIF's property. PIF and LIV Golf Investments Ltd. observe corporate formalities. Although PIF provides high level oversight for LIV Golf, Inc. through LIV Golf Investments Ltd., it does not exercise day-to-day control over its decisions or

operations.  LIV Golf Investments Ltd. owns LIV Golf Holdings Ltd., another Jersey entity, which owns LIV Golf, Inc.

15.     PIF decided to invest in LIV Golf Investments Ltd. in Jersey (the UK dependency), not in the United States.  All Board meetings of LIV Golf Investments Ltd. are chaired in Jersey, with the option for members to connect remotely.  PIF employees responsible for managing and monitoring investments in LIV Golf Investments Ltd., including those PIF employees that represent PIF on the Board and Board Committees of LIV Golf Investments Ltd. and LIV Golf Holdings Ltd., are all based in Riyadh, Saudi Arabia.  PIF employees have attended meetings related to LIV Golf, Inc. in the United States to observe and show support, but they did not negotiate contracts for, vote on decisions of, or exercise control over LIV Golf, Inc. in its daily operations.  I am not aware of any transaction that PIF has purposefully undertaken or consummated related to LIV Golf, Inc. in the United States, including in New York or California.

16.     In addition, PIF has previously retained the services of M. Klein & Company to provide financial and strategy advice for the investment in LIV Golf Investments Ltd.  Those services were not provided with respect to any activities by PIF in the United States. To the extent PIF has also retained the services of other New York-based firms, those services were not provided with respect to any activities by PIF in the United States.

17.     PIF does not own or control Golf Saudi or the Saudi Golf Federation. Because PIF did not invest in the Premier Golf League, PIF employees have not negotiated contracts for, voted on decisions of, or exercised control over the Premier Golf League.

### PIF's Contacts in the United States

18.       PIF is headquartered and has its principal place of business in Riyadh and has historically operated exclusively out of the Kingdom of Saudi Arabia.  In February 2022, PIF subsidiaries opened offices in London, New York City, and Hong Kong.  Prior to that time, PIF and its affiliates had no office in the United States.

19.       The New York office is owned and run by a subsidiary of PIF, USSA International LLC. ("USSA").  USSA is a distinct separate legal entity with full administrative autonomy, as well as independence in carrying out its operations and activities.  PIF is not involved in carrying out any of those activities.  The extent of USSA's reporting to PIF is limited to USSA's general internal rules and policies and the rules and procedures which govern its operations, being of a general nature and applicability and not of an executive, specific prescriptive nature.

20.       PIF has no presence or offices in the United States and no employees, bank accounts, or real estate of its own in the country.  PIF employees may from time to time visit New York and other locations in the U.S., but such contacts with the states are coincidental.  PIF also has contacts with U.S.-based companies, including those based in New York or California, but the presence of those companies in the U.S. is coincidental.  Moreover, PIF has not purposefully directed any action to the United States, including New York, related to LIV Golf, Inc., the PGA Tour, or the underlying lawsuit.  As stated above, PIF's activities related to LIV Golf Investments Ltd. have generally taken place outside of the United States.

21.       PIF has no operations in California.  Although PIF employees may visit California, such visits are sporadic and not systematic.  PIF has no offices in California and does not maintain a presence there.

22.          No PIF officer, director, or employee who has knowledge of the subject matter sought in the deposition topics in the subpoena resides, is employed, or regularly transacts business in person in New York City, or within 100-miles of New York City.  Likewise, no PIF officer, director, or employee who has knowledge of the subject matter sought in the deposition topics in the subpoena resides, is employed, or regularly transacts business in person in California, or within 100-miles of any location in California.  USSA's employees based in its New York office do not govern, oversee, or interact with LIV Golf, Inc..  Rather, the PIF employees responsible for the LIV Golf investment are based in Riyadh, Saudi Arabia.  Further, the electronic documents and data possessed by PIF related to LIV Golf, Inc. is stored on PIF's servers in Riyadh.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in ___London___ on __Nov. 10, 2022__

The Public Investment Fund

By: _____
Name: His Excellency Mr. Yasir O. Al-Rumayyan
Title:   Governor

# EXHIBIT A

**Public Investment Fund**

# Law



# Chapter 1

## Definitions

### Article 1

In this Law, the following terms and phrases shall have the meanings assigned thereto, unless the context requires otherwise:

Fund: Public Investment Fund.

Law: Public Investment Fund Law.

Board: The Fund's Board of Directors.

Chairman: The Board's Chairman.

Governor: The Fund's Governor.

Bylaws and Policies: The set of regulations, instructions, and procedures issued by the Board to regulate the Fund's internal affairs.

### Article 2

The Fund shall report to the Council of Economic and Development Affairs. It shall have a public legal personality as well as financial and administrative independence. The Fund's headquarters shall be in the city of Riyadh; it may, as needed, establish branches within the Kingdom or abroad.

# Chapter 2

## Purposes and Powers

### Article 3

The Fund aims to generate returns by investing its funds, whether in cash or in-kind, in accordance with the highest standards, for the purpose of serving public interest; promoting economic development in the Kingdom and diversifying its sources of income; and maintaining the interest of future generations.

### Article 4

The Fund shall have the powers to achieve its objectives and carry out its functions and duties under this Law, including the following:

1. Investing within the Kingdom or abroad, and acquiring and disposing of assets, including real property, in-kind rights, stakes, securities, foreign currencies, commodities, and any kind of financial derivatives.
2. Incorporating companies and other special-purpose establishments within the Kingdom or abroad and entering therein as a sole partner or with a third party.
3. Extending loans and other forms of financing.
4. Taking out loans and other forms of debt, including the issuance of sukuk and bonds.
5. Issuing securities for companies and other special-purpose establishments that the Fund owns or holds shares therein.
6. Concluding agreements and memoranda of understanding relating to its activities with relevant agencies in other countries and international organizations.
7. Carrying out any other activity or task approved by the Board to achieve the Fund's objectives.

# Chapter 3
## The Board

### Article 5

The Fund shall have a board of directors to be chaired by the President of the Council of Economic and Development Affairs. Its membership shall include the Governor, as well as a minimum of four experts and specialists, provided they include representatives from relevant agencies; they shall be appointed pursuant to a royal order for a renewable term of five years.

### Article 6

The Board shall supervise the Fund, including its management and affairs, and shall ensure its objectives are achieved and its powers—as stipulated in this Law—are exercised. To this end, the Board shall have all necessary authorities and powers. It shall also approve and issue the Fund's Bylaws and Policies, including the following:

1. Setting investment strategies, policies, and procedures, including targeted returns; and the mechanism for deciding on an investment, monitoring its performance, and exiting therefrom.
2. Setting a policy for distribution of Fund profits.
3. Setting risk management procedures and systems.
4. Determining the accounting standards and policies for drafting and auditing the Fund's financial statements, and determining the beginning and end of the fiscal year.
5. Approving the Fund's loans and other forms of debt, including issuing sukuk and bonds, in accordance with relevant rules.
6. Setting rules for nominating and appointing the Fund's representatives to the boards of directors of companies and other entities that the Fund owns or holds shares therein, and determining their remuneration, as well as their rights and duties.
7. Setting policies and procedures for tax liability.
8. Designating the persons authorized to sign on behalf of the Fund.
9. Approving the procedures regulating the Fund's communication with the media.
10. Approving the Fund's financial and administrative regulations.

11. Approving the Fund's organizational structure and the manner of regulating and distributing its functions and duties.

12. Approving the Fund's annual budget and annual report.

The Board may, when necessary, form committees to carry out any of its duties and responsibilities. It may also delegate certain powers to the Governor or any of the Fund's officers, in accordance with the Fund's Bylaws and Policies.

## Article 7

The Board shall submit to the Council of Economic and Development Affairs the Bylaws and Policies that regulate matters referred to in Article 6 (1), (2), (3), (4), and (5) of this Law, as well as the rules and procedures regulating its activities referred to in Article (8) of this Law, or any amendments thereto, within a period not less than 15 days or more than 30 days from the date set for their entry into force. The Council of Economic and Development Affairs may, within such period, direct the Board to make any amendments to the Bylaws and Policies, as it deems appropriate.

## Article 8

The Board shall set the rules and procedures regulating its activities, including calling for and holding meetings, and voting on decisions, whether at Board meetings or by circulation. In any case, the Board shall meet at least once every 90 days.

## Article 9

The Board shall appoint a secretary general who shall carry out the duties of the Board secretariat and any other assigned duties. The Board shall determine his remuneration in accordance with the Fund's Bylaws and Policies.

# Chapter 4

## Employees

### Article 10

The Fund shall have a Governor at the rank of Minister. If the Governor's position becomes vacant, the Board may assign another person to temporarily carry out his duties.

### Article 11

The Board shall determine the Governor's powers, responsibilities, and duties, including:

1. Implementing Board decisions.
2. Representing the Fund before third parties and judicial authorities;
3. Overseeing the drafting of the Fund's Bylaws and Policies, as well as the Fund's annual budget and annual report, and any other documents required to be presented to the Board; and
4. Overseeing the Fund's administrative and financial affairs as well as its employees, and ensuring that the Fund's operations and activities are in compliance with its Bylaws and Policies.

### Article 12

Subject to relevant Bylaws and Policies, the Governor may, if necessary, delegate some of his powers to certain Fund employees or others.

### Article 13

1. Except for the Governor, Fund employees shall be subject to the Labor Law and the Social Insurance Law.
2. Except for cases specified by the Fund's Bylaws and Policies, Fund employees may not engage in any other profession or work, including holding any position or job in the public or private sectors.

# Chapter 5
## Professional Conduct

### Article 14

Each Board member and Fund employee shall, in the manner specified in the Fund's Bylaws and Policies, disclose his personal investments and any changes thereto.

### Article 15

1. Any Board member with a direct or indirect personal interest or benefit in any matter presented to the Board shall disclose thereto the nature of such interest or benefit. In any case, said member may not vote on the decision issued regarding such matter.
2. Any Fund employee with a direct or indirect personal interest or benefit in any matter presented to him in the course of carrying out his duties shall, in the manner specified in the Fund's Bylaws and Policies, disclose the nature of that interest or benefit.

### Article 16

Board members and Fund employees shall, in carrying out their duties,
act in good faith and exercise due diligence to achieve the Fund's interests.

### Article 17

Board members and Fund employees shall not disclose any confidential information nor benefit from any information they become privy to in the course of carrying out their duties, even after their relationship with the Fund ends.

### Article 18

The Fund's Bylaws and Policies shall specify the investments and funds that Board members and Fund employees may invest in for their personal benefit, provided such investment does not involve any conflict of interest or inappropriate practice.

### Article 19

Subject to the provisions of this Chapter, the Fund's Bylaws and Policies shall determine the provisions governing the professional conduct of Board members and Fund employees to ensure they comply with acceptable professional and ethical practices. Such provisions shall determine the consequences of professional and ethical violations committed by any Board member or Fund employee.

# Chapter 6

## Financial Affairs and Operations

### Article 20

1. The Fund shall have an annual budget funded by its revenues.
2. Fund revenues shall comprise:
   a) Returns on its assets and investments;
   b) State appropriations, cash and in-kind; and
   c) Borrowed funds.

### Article 21

The Fund shall maintain records of all its transactions, operations, and investments, in accordance with its Bylaws and Policies.

### Article 22

The Fund's financial statements shall be drafted and audited in accordance with accounting standards and policies determined by the Board, and shall be audited by an external auditor appointed by the Board.

### Article 23

The competent monitoring authorities shall, upon conducting any audit of the Fund's operations and accounts, adhere to the provisions of this Law as well as the Fund's Bylaws and Policies.

# Chapter 7
## Annual Report

### Article 24

The Board shall, within 150 days from the end of the Fund's fiscal year, submit to the Council of Economic and Development Affairs a detailed report on the Fund's operations and activities. The report shall, at a minimum, include:

1. The final accounts of the last fiscal year;
2. A detailed account of the Fund's assets and investments and their performance during the last fiscal year;
3. The Fund's audited financial statements;
4. An account of any compensations received by Board members; and
5. Any other information required by the Council of Economic and Development Affairs.

### Article 25

The Council of Economic and Development Affairs may, upon reviewing the report referred to in Article 24 of this Law, direct the Board to take any action it deems appropriate.

### Article 26

The Board may fully or partially publish the report referred to in Article 24 of this Law, and it may publish any other report or information on Fund operations and activities.

# Chapter 8

## Final Provisions

### Article 27

1. The Fund may conclude contracts and agreements, within the Kingdom or abroad, in language other than Arabic, if the Fund's interest so dictates.
2. Contracts and agreements concluded by the Fund shall, as specified in the Fund's Bylaws and Policies, be subject to the laws in force in the Kingdom, unless it is in the interest of the Fund that they be subject to the jurisdiction of foreign courts or international arbitration.

### Article 28

Promulgation of this Law shall not affect the Fund's rights and obligations established prior to its entry into force.

### Article 29

Companies that the Fund incorporates or co-founds in the Kingdom shall be subject to the Companies Law. The Board may, pursuant to a decision issued thereby, include specific exemptions from the provisions of the Companies Law in the articles of incorporation and articles of association of the companies in which the Fund owns more than 50% of its capital. The incorporation of such companies shall be approved pursuant to a decision by the Ministry of Commerce and Investment, in accordance with the Companies Law.

### Article 30

The Fund may not be dissolved or liquidated except by royal decree, and cases related to dissolution or liquidation shall be heard by the competent judicial authority.

### Article 31

This Law shall supersede the Public Investment Fund Law promulgated by Royal Decree No. M/24, dated 25/6/1391H.

### Article 32

This Law shall enter into force from the date of its publication in the Official Gazette.