KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:    212 735 3000
Facsimile:    212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone:    312 407 0700
Facsimile:    312 407 0411

Attorneys for Defendant PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC., <br><br>Plaintiffs, <br><br>v. <br><br>PGA TOUR, INC., <br><br>Defendant. | Case No. 5:22-cv-04486-BLF <br><br>**JOINT STATEMENT REGARDING LIV GOLF INC.'S RESPONSE TO PGA TOUR, INC.'S INTERROGATORY NO. 1** <br><br>Judge:      Hon. Beth Labson Freeman <br><br>Date Filed: August 3, 2022 <br>Trial Date: January 8, 2024 <br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| PGA TOUR, INC., <br><br>Counterclaimant, <br><br>v. <br><br>LIV GOLF, INC., <br><br>Counterdefendant. | |

1

Defendant and Counterclaimant PGA TOUR, INC. ("the TOUR") and Plaintiff and Counterdefendant LIV Golf, Inc. ("LIV") and (collectively, "the Parties") jointly submit this statement pursuant to the Court's Civil and Discovery Referral Matters Standing Order. On September 19, 2022, the TOUR served two interrogatories on LIV, including Interrogatory No. 1, which asks that LIV "[d]escribe every instance in which you contend the PGA TOUR threatened or leaned on (a) a PGA TOUR member; (b) another professional golf tour, including the Asian Tour; (c) a professional golf organization, including the PGA of America, Augusta National, the R&A or the OWGR; (d) a PGA TOUR member's agent or business partner; (e) a vendor or small company in the golf and sports production industry; (f) a golfer who is not a PGA TOUR member; (g) a sponsor; (h) a broadcaster; or (i) any other third party. In responding, please identify (a) the name of the person who made the alleged threat; (b) the name of the person who was allegedly threatened; (c) the substance of the alleged threat; (d) when the alleged threat was made; and (e) how the alleged threat was made (*i.e.*, orally, by email, by text message, etc.)."

On October 19, 2022, LIV served its objections and responses. On November 2, the TOUR notified LIV that its response to Interrogatory No. 1 was deficient because it failed to include all requested categories of information for each alleged threat. The TOUR requested that LIV immediately supplement its response to include these categories of information. In lieu of a meet-and-confer, LIV supplemented its response on November 11. On November 18, the TOUR notified LIV that it believed LIV's amended response failed to provide all required categories of information. The parties held a meet-and-confer via videoconference on November 22. On November 23, LIV served a second amended response. On November 29, the TOUR informed LIV that it believed LIV's second amended response remained deficient and that, in light of the unsuccessful meet-and-confer and ongoing deficiencies that the TOUR believe existed in LIV's response, the dispute required resolution by the Court.

LIV's second amended objections and responses to the TOUR's Interrogatory No. 1 are attached as **Exhibit A**. The chart required by the Court's standing order is attached as **Exhibit B**. Trial has been set for January 8, 2024; the close of fact discovery is March 3, 2023.

I.     **THE TOUR'S POSITION**

After levying scattershot allegations in its Amended Complaint that the TOUR threatened or "leaned on" virtually every entity or person connected to professional golf, LIV now refuses to provide basic information necessary for the TOUR to test the veracity of those allegations and to narrow the issues in this dispute. In its Amended Complaint, LIV sets out in conclusory fashion a litany of alleged threats made by the TOUR against numerous categories of "companies and individuals in the golf and sports production industry." Dkt. 83 ¶ 242; 243-262. These alleged threats, while lacking in any specificity, are central to LIV's case that the TOUR engaged in anticompetitive conduct in violation of Section 2 of the Sherman Act. *Id.* ¶¶ 312 (Count I); 320 (Count II); 330 (Count III). Accordingly, in its first interrogatory, the TOUR sought basic, foundational information related to these allegations in order to plan further discovery and to streamline and develop its defenses to the relevant claims.

For many categories of recipients of the alleged threats, however, LIV responded with only general assertions that parroted back the bare allegations in the Amended Complaint and that lacked much of the information requested. LIV's responses are especially defective as to the allegedly threatened professional golf organizations, vendors, non-TOUR golfers, sponsors, and broadcasters. *See* Ex. A, §§ (c) (golf organizations), (e) (vendors), (f) (non-TOUR golfers), (g) (sponsors) and (h) (broadcasters). For these categories, LIV steadfastly avoids providing any of the information to which the TOUR is entitled and instead advances non-responsive or evasive answers. LIV's efforts to obfuscate fall into three basic categories:

*Category 1: Entities who merely declined to work with LIV.* For many of the allegedly threatened entities, LIV does not even assert that any threat was made, much less provide any of the "who, what, when" information requested by the TOUR. Rather, LIV simply asserts that these entities refused to work with LIV, and then speculates that a threat must have been made by someone at the TOUR. In many instances—including allegations relating to Aggreko Event Services Ltd, Top Tracer, and Callaway Golf company—LIV does not even assert that the TOUR was ever mentioned as a reason for the business's refusal to engage with LIV. Ex. A at 18, 19, 21. In others, such as the allegation regarding Dick's Sporting Goods, LIV writes that the company declined to work with LIV "because of its relationship" with the TOUR—a position which in no way implies a threat. Ex. A at 23.

*Category 2: Threat alleged with no supporting detail.* In other instances, LIV repeats its conclusory allegation that a threat was made but fails to provide *any* of the information required by the interrogatory. For example, in its Amended Complaint LIV alleged that the TOUR "threatened numerous golf courses with adverse consequences if they hosted LIV Golf events." Dkt. 83, ¶ 260. When asked to explain the basis for this allegation, LIV simply copy and pasted that exact sentence into its interrogatory response without providing a single additional detail—not even the name of a specific golf course, much less the individual threatened, or the date or substance of the threat, Ex. A at 25. The same is true of the alleged threats against others, including Master Fence Rental and all of the "broadcast networks."

*Category 3: Threat supported only with improper citation to the TOUR's own interrogatory response.* In its first and second amended responses, LIV improperly incorporates the TOUR's own response to LIV's second interrogatory (which asked about the TOUR's communications with many of the allegedly threatened entities), in an attempt to present the illusion of a meaningful response. This is pure sophistry, and is most evident in LIV's response relating to alleged threats against sponsors. Ex. 2 at 27-31. Here, LIV does not even attempt to provide any information that formed the basis for its allegations in the Amended Complaint and instead presents a chart that comes directly from the *TOUR's* own interrogatory response (which obviously could not have formed the basis for LIV's allegations since LIV did not have this response at the time it filed the Amended Complaint). LIV's reliance on the TOUR's interrogatory response is improper on numerous other grounds, including that the information that the TOUR provided merely listed potential communications between the TOUR and other entities and in no way states, or even suggests, that the potential communications listed therein constituted threats. Moreover, the TOUR's response specifically stated that the information "should in no way be construed as an admission that [any] discussion [listed therein] was in any way substantive in nature." Ex. A to the TOUR's Nov. 15 R&Os to LIV's 2nd Set of Interrogatories.

For each of these categories, one of two things must be true: either LIV has some factual basis for its allegations that it is withholding for strategic reasons, or (more likely) LIV has no factual basis and it is trying to obfuscate that fact in order to prevent the TOUR from narrowing the universe of alleged threats to those that are actually at issue. Either way, LIV's response is deficient and thwarts the purpose of discovery. LIV's failure to provide this information regarding its core allegations wastes all parties and the Court's resources by preventing the narrowing of issues appropriate at this stage of litigation. The TOUR should not be forced to guess about which of LIV's allegations have factual support and which do not; nor should the TOUR be forced to waste deposition time trying to sift through the morass of LIV's current response. In order to defend itself against allegations that it engaged in anticompetitive behavior by threatening players and "other agencies, businesses or individuals who would otherwise work with Plaintiffs and/or LIV Golf," the TOUR must know *who* allegedly made the threat, *who* it is alleged to have threatened, and what the substance of the supposed threat was. Indeed, as LIV itself has argued in a

dispute over its own interrogatory seeking information about the TOUR's communications with third parties, "*individual person[s]*" must be identified, and the identification of entities at a general level "does not begin to provide enough information … to plan discovery, including critical third-party discovery." Dkt. 133.

LIV's response below is just more misdirection. LIV highlights portions of its response that the TOUR is *not* challenging while ignoring those portions that are the subject of this dispute. Moreover, LIV thinks it is permissible to essentially list the phonebook in response to Interrogatory No. 1 so long as it promises to supplement if and when LIV develops any factual basis for the vast majority of its response. That is backwards. LIV's response should be limited to alleged threats for which there is some factual basis that LIV is willing to disclose. LIV can then supplement its response if it develops evidence of others.

LIV's failure to provide straightforward responses is especially prejudicial in light of the condensed discovery schedule for which LIV advocated. Having sought out and obtained an expedited discovery schedule, LIV cannot now prejudice the TOUR by serving a response that deliberately prevents the parties from narrowing the issues and instead seeks to force the TOUR to chase wild geese. Moreover, LIV has never objected that the requested information is not within its custody or control, and indeed LIV **must** have the requested information in order to have had some basis to include the allegations of threats in its Amended Complaint. If that is not the case, however, and LIV simply lacks any factual support for these allegations, it should state so clearly rather than seeking to muddle this fact by repeating its threadbare allegations from the complaint or copying voluminous and irrelevant passages from the TOUR's own substantive interrogatory response.

To the extent that LIV objects that Interrogatory No. 1 is a "contention" interrogatory and thus premature, it is wrong on both counts. Interrogatory No. 1 seeks "the names of witnesses or other people with knowledge about the alleged events that give rise to the litigation," which is not a contention interrogatory and is appropriate at any stage of litigation. *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 332–33 (N.D. Cal. 1985). And even if the request *were* fairly characterized as a contention interrogatory, it is nonetheless appropriate at this stage in the litigation where the question is "well-tailored" and "will contribute meaningfully to clarifying the issues in the case, [and] narrowing the scope of the dispute." *Id.* at *339. Identification of the specific individuals making and receiving the alleged threats, the dates when the alleged threats were made, and the substance of the alleged threats, will allow the TOUR to focus and narrow its discovery requests, avoiding a wasteful fishing expedition to determine what exactly LIV has accused it of doing.

Finally, to the extent that LIV contends that the requested information about the alleged threats is in the TOUR's possession rather than LIV's, it neglects its burden of proof as Plaintiff. It is incumbent upon LIV to present evidence that the alleged threats were made—not upon the TOUR to prove that they were not. This point is especially relevant here, where the TOUR *denies* that *any* threats were made, and the allegedly threatened parties are business partners with whom the TOUR may have had a number of communications in recent years. LIV cannot evade its discovery obligations by repeatedly saying, without any basis, that the TOUR must know what LIV is referring to

Because LIV's delay in providing a complete response to Interrogatory No. 1 has already prejudiced the TOUR's ability to plan further discovery, because LIV's supplemental responses have failed to remediate these deficiencies, and because the Interrogatory seeks critical, relevant information at a reasonable stage in the litigation, the TOUR respectfully requests that the Court order LIV to immediately produce all outstanding categories of information requested in Interrogatory No. 1. If LIV simply lacks factual support for any of these allegations, as the TOUR

suspects, it should state so clearly in its interrogatory response.

## II.  LIV GOLF'S POSITION

It is not clear to LIV Golf what relief the Tour seeks from the Court. In response to a contention interrogatory the Tour served prematurely, at the outset of discovery, demanding that LIV describe **all** details regarding **every** instance in which it contends that the Tour threatened (outside the presence of LIV) third parties with consequences for working with LIV, LIV provided a 30-page response detailing the facts known to it based on its reasonable investigation. LIV has worked steadfastly to comply with its discovery obligations by supplementing its response to the Tour's Interrogatory No. 1 on two separate occasions—all within the span of a month. And, LIV has committed to supplement its response further on a periodic basis as it continues its investigation—as one would expect for any contention interrogatory.

The Tour attempts to present LIV's routine approach to contention discovery as some kind of subterfuge:  either LIV has every last detail of the threats (who, when, exactly what was said) and is strategically withholding it, or LIV has no basis for its claims. Neither is true—rather, Plaintiffs have evidence to show that these threats took place, but the Tour is in possession of the specific details and has not yet produced them in discovery. Notably, all of the information the Tour seeks through its motion is information *in the Tour's* possession, which it has concealed from LIV and has *refused to provide* in its own parsimonious interrogatory responses.

The Tour suggests that LIV is withholding information for strategic reasons—but it is unclear what "strategy" the Tour suggests LIV is employing as it would be counterproductive to hide information that supports Plaintiffs' claims; regardless, LIV has done nothing of the sort. And, since the Tour took the actions about which it seeks discovery from LIV, it is beyond strange to think LIV could hide the information. Moreover, LIV's responses belie the Tour's accusations. For example, LIV describes threats made by Tour representatives to R2, a company that had *contracted with* LIV until R2 "need[ed] to rescind the contract" after Tour representatives, including Gordon Strickland and Karen Davidson, threatened R2 with consequences for working with LIV. The Tour's production provides further proof of this threat, as ███ ███ PGA_TOUR0363807. This evidence, which LIV has detailed in its response, provides ample reason for LIV to maintain that the Tour threatened R2, but further details about this threat are *in the possession of the Tour*.

Similarly, LIV's response provided details of threats made by the Tour's Chief Operating Officer, Ron Price, to Gene Hallman of Bruno Events. Throughout early 2022, LIV had been negotiating with Bruno. On multiple occasions, Bruno expressed its excitement to work with LIV. Yet, after the 2022 Players Championship, in a rapid turn of events, Mr. Hallman stated that Bruno was no longer able to work with LIV. A Bruno employee told LIV that Mr. Price had called Mr. Hallman, who, after the call, "looked like he had seen a ghost." In response to learning that Mr. Hallman and Bruno would cave under the Tour's threat, ███ PGA_TOUR0006947. And, when the cousin of ███, dared to work with ███ ███"—when he yelled at ███ for daring to work for LIV. PGA_TOUR0054941. There is ample evidence—detailed in LIV's response—that these threats took place. To the extent additional details are missing, they are *in the Tour's possession*.

LIV's response also details the Tour's threats to other types of business partners. On

multiple occasions, Commissioner Monahan threatened to ban any independent contractor golfer from the Tour for life if he dared to play professional golf for another buyer of his services. The Tour threatened to take away the livelihood of player agents for acting in their clients' best interests. The Tour threatened the Japan Golf Tour that it could either work with LIV or work with the Tour—and if it worked with LIV, then no Japan Golf Tour golfers could play in PGA Tour or Korn Ferry Tour events. The Tour put the entire professional golf marketplace on notice: us or them (LIV).

While these threats would be unlawful even if the Tour were not a monopolist, its market power alters the character of the Tour's us-or-them ultimatums. Thus, when the Tour asks LIV to identify details about threats the Tour made to third parties, it is entirely appropriate for LIV to cite communications the Tour had with those third parties about LIV. Moreover, it is appropriate for LIV to respond with details about third parties who were excited to work with LIV as a new customer but then suddenly pulled out without explanation and contrary to their own economic interests. *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 (1983) (describing as conduct giving rise to antitrust injury "[c]oercive activity that prevents its victims from making free choices between market alternatives") (citation omitted). The Tour may (and apparently does) disagree as to what it describes as *Category 1*, but that is a fact question for the jury—not a discovery dispute.

The Tour's complaints about *Category 2* are equally misguided. The Tour's Interrogatory No. 1 is a classic contention interrogatory that seeks a detailed description of "every instance in which [LIV] contend[s] the PGA TOUR threatened or leaned on" third parties to thwart LIV's entry and to provide details about who at the Tour made the threat, the date, the victim, and the substance of the threat. This Court has consistently declined to compel responses to contention interrogatories of this kind, particularly where, as here, they (i) are served during the early stages of discovery, and (ii) seek information in the movant's possession. *See, e.g.*, *Amgen Inc. v. Sandoz Inc.*, No. 14-CV-04741-RS (MEJ), 2016 WL 1039029, at *3–4 (N.D. Cal. Mar. 15, 2016); *Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK-VKD, 2020 WL 4260736, at *5 (N.D. Cal. July 23, 2020). Accordingly, and contrary to the Tour's argument, it is entirely appropriate for LIV to cite the allegations in the complaint in its response where, as here, the contention interrogatory is served at the outset of discovery. *See, e.g.*, *Amgen*, 2016 WL 1039029, at *3 ("[T]he Court may postpone answers to [contention] interrogatories until designated discovery is complete."); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 339 (N.D. Cal. 1985) ("The Court will be especially vigilant in its evaluation of proffered justifications when a complaint is not facially infirm and when defendants appear to have control over or adequate access to much of the evidence relevant to their alleged misconduct.").

Moreover, LIV has demonstrated a commitment to regularly amend its response. The Tour identifies no reason that is insufficient or prejudicial at this stage of discovery: there are four months of discovery remaining, and neither party has taken a single deposition. *HTC Corp. v. Tech. Props. Ltd.*, No. C08-00882 JF (HRL), 2011 WL 97787, at *2 (N.D. Cal. Jan. 12, 2011). And LIV has acknowledged that it does not yet possess all responsive information—that is the point of discovery. *See, e.g.*, *Nelson v. Cap. One Bank*, 206 F.R.D. 499, 501 (N.D. Cal. 2001) (disfavoring contention interrogatory when the information sought is in the hands of the proponent); *Am. President Lines, LLC v. Matson, Inc.*, No. 21-CV-02040 (CRC), 2022 WL 4598538, at *9 (D.D.C. Sept. 30, 2022) (explaining that discovery would uncover details supporting allegations of threatening, anticompetitive conduct). This is not a Response where LIV rested only on its allegations. LIV performed a reasonable investigation and provided a lot of detail regarding the threats and Tour communication to third parties about LIV that it has learned in discovery; it will continue to do so.

Unfortunately, the Tour has lost sight of its *own* discovery obligations, refusing time and again to provide LIV with the very information that it now asks the Court to compel LIV to produce.

This Court no doubt recalls that LIV's Interrogatory No. 1 seeks information from the Tour about communications that occurred between Tour representatives and third parties about LIV. The Tour refused to provide any response at all to this interrogatory (and others), and claimed it is too difficult for it to extract the required information from its own representatives. The Court sustained the Tour's objection. And when it ultimately responded, the Tour provided *no information* about the substance of any discussion. It is doing the same for LIV Golf's Third Set of Interrogatories seeking specific information in the Tour's possession. Document discovery has shown that the reason for the Tour's discovery tactics: a practice to ███████████████████████████ regarding its us-or-them ultimatums. PGA_TOUR0018387.

Lastly, as it relates to *Category 3*, the Tour complains that LIV cannot answer its interrogatory with information that LIV has learned in discovery. LIV is aware of no such rule, and the Tour has cited no source. That is not surprising; the Tour did the same in an interrogatory response it served last week. It cannot be the case that if the Tour's witness admitted to threatening a vendor in a deposition, LIV cannot cite that deposition in a supplemental response. The Tour's suggestion there is anything improper with LIV's response should be disregarded.

In all, LIV's latest response to this Interrogatory comprises 30 pages of responsive, substantive information describing evidence of the Tour's threats and coercive communications across the golf ecosystem. These responses set forth the facts known to LIV after a reasonable and diligent investigation. The Tour has provided no facts suggesting LIV is withholding information because that serious accusation is false. And LIV has committed to regularly supplementing is responses as it learns additional facts throughout discovery—a commitment the Tour not only has yet to reciprocate, but has affirmatively rejected with respect to LIV's Interrogatory 1. LIV respectfully submits that nothing more is required at this time, but also asks that if the Court enters an order requiring that LIV set forth every detail known to it in response to the Tour's interrogatories, that it make clear its order applies equally to Tour responses to LIV's interrogatories.

| | | |
|---|---|---|
| Dated: December 5, 2022 | | KEKER, VAN NEST & PETERS LLP |
| | By: | /s/ *Eric H. MacMichael* |
| | | ELLIOT R. PETERS |
| | | DAVID SILBERT |
| | | R. ADAM LAURIDSEN |
| | | ERIC H. MACMICHAEL |
| | | NICHOLAS S. GOLDBERG |
| | | SOPHIE HOOD |
| | | |
| | | Attorneys for Defendant |
| | | PGA TOUR, INC. |
| | | |
| | | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | | |
| | | ANTHONY J. DREYER |
| | | PATRICK FITZGERALD |
| | | KAREN M. LENT |
| | | MATTHEW M. MARTINO |
| | | |
| | | Attorneys for Defendant |
| | | PGA TOUR, INC. |

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: December 5, 2022 | GIBSON, DUNN & CRUTCER LLP |
| 3 | | |
| 4 | | By: _____/s/ *Rachael S. Brass*_____ |
| 5 | | RACHEL S. BRASS, SBN 219301 |
| | | rbrass@gibsondunn.com |
| 6 | | GIBSON, DUNN & CRUTCHER LLP |
| | | 555 Mission Street, Suite 3000 |
| 7 | | San Francisco, California 94105-0921 |
| | | Telephone: 415.393.8200 |
| 8 | | Facsimile: 415.393.8306 |
| 9 | | ROBERT C. WALTERS, *pro hac vice* |
| | | rwalters@gibsondunn.com |
| 10 | | SCOTT K. HVIDT, *pro hac vice* |
| | | shvidt@gibsondunn.com |
| 11 | | GIBSON, DUNN & CRUTCHER LLP |
| | | 2001 Ross Avenue, Suite 2100 |
| 12 | | Dallas, Texas 75201-2911 |
| | | Telephone: 214.698.3100 |
| 13 | | JOSHUA LIPTON, *pro hac vice* |
| | | jlipton@gibsondunn.com |
| 14 | | KRISTEN C. LIMARZI, *pro hac vice* |
| | | klimarzi@gibsondunn.com |
| 15 | | GIBSON, DUNN & CRUTCHER LLP |
| | | 1050 Connecticut Avenue, N.W. |
| 16 | | Washington, DC 20036-5306 |
| | | Telephone: 202.955.8500 |

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

*Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau, Peter Uihlein, and LIV Golf Inc.*

JOINT STATEMENT REGARDING LIV GOLF INC.'S RESPONSE TO PGA TOUR, INC.'S INTERROGATORY NO. 1
Case No. 5:22-cv-04486-BLF

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: December 5, 2022                              /s/ Eric H. MacMichael