**EXHIBIT A**

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
LAUREN D. DANSEY, SBN 311886
  ldansey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
  shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
  jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
  klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000

*Attorneys for Plaintiffs Matt Jones, Bryson
  DeChambeau, Peter Uihlein, and LIV Golf Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., <br><br> Counter-Defendant. | CASE  NO. 5:22-cv-04486-BLF-SVK <br><br> **PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES** <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

Gibson, Dunn &
Crutcher LLP

1

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff LIV Golf Inc. ("LIV Golf") submits the following Second Amended Responses and Objections to the First Set of Interrogatories propounded by Defendant PGA Tour, Inc. ("PGA Tour") served September 19, 2022.  LIV Golf is willing to meet and confer with Defendant in good faith to address any questions or disputes regarding the Interrogatories, Definitions, and LIV Golf's general and specific objections thereto.

## GENERAL RESPONSES

1.      Investigation, discovery, and preparation for trial are ongoing in this action.  LIV Golf has not yet completed its factual investigation, reviewed all documents related to this action, interviewed all witnesses in this action, or completed discovery from the Defendant or any third parties. These responses are made without prejudice to LIV Golf's right to introduce facts, documents, witnesses, or other evidence that may be subsequently discovered or that was omitted from these responses due to mistake, error, oversight, or inadvertence.  LIV Golf reserves the right to supplement its responses pursuant to Rule 26(e) as warranted.  LIV Golf further reserves the right to revise, amend, correct, clarify, or add to its responses and objections to the Interrogatories.

2.      LIV Golf does not concede that information provided in response to the Interrogatories is properly discoverable and reserves its right to object to further discovery PGA Tour may seek regarding the subject matter of any of the Interrogatories.  LIV Golf additionally reserves all objections to the information produced in response, including but not limited to competency, relevancy, authenticity, propriety, materiality, privilege, and admissibility; all objections as to vagueness, ambiguity, or undue burden; all objections on any ground as to the use of any information provided in response to these discovery requests; all objections on any ground to any request for further responses to these or other discovery requests; and any and all other objections and grounds which would or could require or permit the exclusion of any document or statement therein from evidence, all of which objections and grounds are reserved and may be interposed at the time of trial.

## GENERAL OBJECTIONS

The following General Objections apply to each of Defendant's Definitions, Instructions, and Request for Production; are incorporated by reference into each individual response and objection; and

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

shall have the same force and effect as if fully set forth in the individual responses and objections to each Request for Production.

1.      LIV Golf generally objects to the Interrogatories to the extent that they seek documents and information that are unrelated and irrelevant to the claims in, or defenses to, this litigation, are disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden of providing responsive information.

2.      LIV Golf generally objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, the common interest doctrine, Federal Rule of Evidence 502, or by any other applicable privilege, rule, doctrine, immunity or the laws, regulations, or policies of other countries.  Any specific objections raised below on the grounds of privilege or the work-product doctrine in no way limit this general objection.  Nothing contained herein is intended to be nor should be construed as a waiver of the attorney-client privilege, the attorney work product protection, the right to privacy, or any other applicable privilege, protection, immunity, or doctrine.  Nor shall inadvertent production of any information or documents that are privileged or otherwise immune from discovery constitute a waiver of any privilege or of any other ground for objecting to the discovery with respect to such information or documents or the subject matter thereof, or the right of LIV Golf to object to the use of any such information or documents or the subject matter thereof during these or any other proceedings.  The production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding to the fullest extent of Federal Rule of Evidence sections 502(d) and (e).  For example, the production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

3.      LIV Golf generally objects to the Interrogatories to the extent that they seek proprietary or other confidential information, particularly to the extent they seek third party information that may be subject to non-disclosure or confidentiality agreements.  Where necessary, LIV Golf will only provide such information after providing any required notice to third parties and giving them an opportunity to object.  To the extent any proprietary or confidential information, trade secret, or other

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

sensitive or protected business information is non-privileged, responsive, and not otherwise objectionable, LIV Golf will produce such information in accordance with the Stipulated Protective Order entered in this litigation, as well as the ESI Protocol entered in this litigation, and such other procedures as the parties or Court may establish to protect sensitive or confidential information.

4.      LIV Golf generally objects to the Interrogatories on the grounds and to the extent that they seek information that is non-public, confidential, or competitively sensitive, or which contain proprietary business or financial information, including customer information, personnel information, trade secrets, or other competitively or commercially sensitive information ("Confidential Information"). Any such Confidential Information will only be disclosed subject to the protective order in this litigation.

5.      LIV Golf objects to these interrogatories to the extent that they call for information not within the LIV Golf's possession, custody, or control, or that is otherwise beyond the scope and limits of discovery as defined by Federal Rule of Civil Procedure 26.

6.      LIV Golf objects to each of the Defendant's interrogatories to the extent they call for documents or information (i) otherwise as readily available to Defendant or Defendant's counsel as to LIV Golf, (ii) are not in LIV Golf's possession, custody, or control, or (iii) are available from a more convenient, less expensive, more efficient, or less burdensome source than LIV Golf.

7.      To the extent these interrogatories purport to require LIV Golf to conduct more than a reasonable and diligent investigation, LIV Golf objects that they are overly broad, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.

8.      LIV Golf objects to the Interrogatories to the extent that they purport to seek the discovery of information that is not in LIV Golf's possession, custody, or control.

9.      LIV Golf objects to the Interrogatories to the extent that they seek to impose obligations or requirements beyond those authorized by the Federal Rules of Civil Procedure, the Local Rules of this Court, any orders of this Court, or any other applicable laws, rules or regulations (the "Applicable Rules").

10.      LIV Golf objects to the Interrogatories to the extent that they purport to impose a duty on LIV Golf to undertake a search for documents and information beyond a diligent, good faith search

4

of the files where LIV Golf would reasonably expect to find information responsive to each individual Interrogatory.

11. LIV Golf objects to the Interrogatories to the extent they improperly assume the existence of incorrect facts or the occurrence of events that did not take place. LIV Golf's Responses are not intended, and shall not be construed, as an admission that any factual predicates stated in the Interrogatories are accurate.

12. LIV Golf's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any grounds or grounds. LIV Golf reserves the right to amend and/or supplement its Responses consistent with further investigation and discovery.

13. LIV Golf expressly reserves its right to apply for reimbursement of any costs incurred in responding to the Interrogatories.

## OBJECTIONS TO DEFINITIONS

LIV Golf raises the following objections to the Definitions and Instruction in the Interrogatories, which apply to and are incorporated into each Specific Response and Objection set forth below, as if fully set forth therein.

1. PGA Tour defines "Asian Tour," "PGA of America," "Augusta National," "R&A," and "OWGR" to include "all predecessors, predecessors-in-interest, affiliates, parents, subsidiaries, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationship of each and others acting on behalf of each." This definition is, however, nearly identical to the definition that LIV Golf used in its First Set of Interrogatories served on PGA Tour, and to which PGA Tour objected as "overly broad, unduly burdensome, vague, and ambiguous" in its Responses and Objections. PGA Tour cannot have it both ways by simultaneously attempting to restrict its own discovery obligations and expand LIV Golf's discovery obligations. One definition must prevail for both parties. Thus, to the extent PGA Tour stands on its objections to these terms, LIV Golf similarly objects to PGA Tour's definitions as overly broad, unduly burdensome, vague, and ambiguous. And LIV Golf will interpret these terms to refer only to the Asian Tour, PGA of America, Augusta National, R&A, and OWGR.

2. LIV Golf objects to the definitions of the terms "Plaintiff," "LIV Golf Holdings Ltd,"

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

"LIV Golf Inc.," "LIV Golf Investments Ltd," "LIV Golf Ltd," "You," and "Your" as overly broad, unduly burdensome, vague, and ambiguous.  LIV Golf will interpret "Plaintiff," "LIV Golf Holdings Ltd," "LIV Golf Inc.," "LIV Golf Investments Ltd," "LIV Golf Ltd," "You," and "Your" to refer only to LIV Golf.

3.      LIV Golf objects to the definition of "Communication" as overbroad and unduly burdensome to the extent that it seeks any communications other than written communications.  The definition should further expressly exclude any communications protected by any applicable privilege, protection, or immunity.

4.      LIV Golf objects to the definition of "Document" as overly broad, as unnecessarily duplicative of the definition of "Communication," and to the extent it alters the scope of discovery defined in the Electronically Stored Information ("ESI") protocol.  LIV Golf further objects to the definition of "Document" to the extent any Interrogatory calls for the production of Documents protected by any applicable privilege, protection, or immunity.

5.      LIV Golf observes that PGA Tour has defined the term "Person" identically to how LIV Golf defined the term in its First Set of Interrogatories.  PGA Tour objected to that definition in its Responses and Objections, but now propounds the same definition in its first set of interrogatories to LIV Golf.  LIV Golf would prefer to simply accept the definition that both parties have now used, but to the extent that PGA Tour maintains its objections, LIV Golf also objects to the definition of the term "Person" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes any individuals or entities outside LIV Golf's control.  And LIV Golf will interpret the term "Person" to mean natural persons.

6.      LIV Golf objects to the definition of the terms "related to," "relating to," or "concerning" because calling for all documents "relating to" the subject matter of a particular interrogatory without limitation renders each interrogatory in which it is used overly broad and unduly burdensome.

**OBJECTIONS TO INSTRUCTIONS**

1.      LIV Golf objects to the Instruction to the extent that they attempt to broaden the obligations imposed by the applicable Rules.

Gibson, Dunn & Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

2.       LIV Golf objects to the Instructions to the extent that they do not specify a time frame for the response.  LIV Golf will respond to each Interrogatory with information dating back to January 1, 2019.  LIV Golf is willing to meet and confer regarding the relevant time period for each Interrogatory.

### SECOND AMENDED RESPONSES AND OBJECTIONS TO INTERROGATORY NO. 1

LIV Golf's General Objections are hereby incorporated into the Specific Responses and Objections below.  No specific response should be construed to waive the General Objections.  LIV Golf specifically provides an amended response to Interrogatory No. 1, but reserves right to further supplement the same with facts learned in discovery, including any facts regarding the individuals and entities identified in Defendant's interrogatory responses.

**INTERROGATORY NO. 1**:

Describe every instance in which you contend the PGA TOUR threatened or leaned on (a) a PGA TOUR member; (b) another professional golf tour, including the Asian Tour; (c) a professional golf organization, including the PGA of America, Augusta National, the R&A or the OWGR; (d) a PGA TOUR member's agent or business partner; (e) a vendor or small company in the golf and sports production industry; (f) a golfer who is not a PGA TOUR member; (g) a sponsor; (h) a broadcaster; or (i) any other third party. In responding, please identify (a) the name of the person who made the alleged threat; (b) the name of the person who was allegedly threatened; (c) the substance of the alleged threat; (d) when the alleged threat was made; and (e) how the alleged threat was made (i.e., orally, by email, by text message, etc.).

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 1**:

LIV Golf incorporates by reference the foregoing General Objections.  LIV Golf objects that Interrogatory No. 1 is a contention interrogatory to which LIV Golf does not have to respond until later in discovery.  The parties' investigations are ongoing at this point, and LIV Golf objects that any demand that LIV Golf describe "every instance" in which PGA "threatened or leaned on" various entities is premature.  In this regard, LIV Golf notes and specifically objects that much of the information sought by this Interrogatory is in the Defendant's possession, and that the Defendant has improperly refused to provide this information to LIV Golf in discovery.  Specifically by way of

7

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

example, Defendant has only provided limited information in response to LIV Golf's Interrogatory No. 1, and only did so pursuant to a Court order, which sought foundational discovery relating to this subject matter.  This information is in Defendant's control, and it is premature for Defendant to demand that LIV Golf provide a recitation of the information possessed and wrongfully withheld by the Defendant.  Additionally, LIV Golf objects to this Interrogatory because it calls for a legal conclusion.  LIV Golf further objects to this Interrogatory to the extent it seeks materials that are more convenient, less burdensome, or less expensive for Defendant to obtain itself.  LIV Golf further objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad as written, and unduly burdensome.  LIV Golf further objects to this Interrogatory to the extent that it would require the production of information protected from disclosure by the attorney client privilege, the attorney work product doctrine, the common interest privilege, and/or any other applicable privilege, doctrine, or protection.  LIV Golf further objects to the definitions of "you" and "your" as overly broad and unduly burdensome.

Subject to and without waiver of these objections, LIV Golf responds as follows.  LIV Golf specifically reserves its right to supplement the following information.

a)      **PGA TOUR members:**

LIV Golf is presently aware of the following threats by the PGA Tour to its members.  LIV Golf expressly reserves its right to supplement this response as it uncovers additional information about threats PGA Tour has made to its members, whether all members, a specific subset of its membership, or individual players.

On or around January 24, 2020, PGA Tour Commissioner Jay Monahan ("Commissioner Monahan") threatened the four professional golfers on the PGA Tour Policy Board that the Tour would enforce and tighten the PGA Tour Regulations to deny them the benefits of competition for their services.  *See* Dkt. No. 2-3, R. Brass Decl. Ex. 4.  On or around January 27, 2020, Commissioner Monahan threatened all PGA Tour Members via a written memorandum that they could not remain on the PGA Tour and participate in a league that operates the "Team Golf Concept."  He then read the memorandum aloud to PGA Tour members present at a PGA Tour players meeting in La Jolla, California at the Farmers Insurance Open on or around the same date.

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

On February 20, 2020, the PGA Tour's Chief Tournaments and Competitions Officer, Andy Pazder, told Kevin Kisner—a professional golfer and Member of the PGA Tour's Player Advisory Council—that (a) ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████ PGA_TOUR0000309.
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████ PGA_TOUR0008700; 8680.

On May 4, 2021, Commissioner Monahan informed PGA Tour Members during a meeting of Tour players in Charlotte, North Carolina at the Quail Hollow Club that any golfer who joined LIV Golf would immediately lose his status as a PGA Tour member and face a lifetime ban from the PGA Tour. *See* Dkt. No. 2-5, R. Brass Decl. Ex. 21.

███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████ PGA_TOUR0006003–4; 37; 70; 71.; PGA_TOUR0006782 (Commissioner Monahan's "we're moving on" message).

███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████ PGA_TOUR0011098.
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ PGA_TOUR0011486.

In June 2022, the PGA Player Advisory Council held an emergency players meeting in Ohio with representatives from Augusta National present in which PGA Tour, including but not limited to Andy Pazder, threatened those who joined LIV Golf that they would be banned from the PGA Tour.

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn & Crutcher LLP

On June 9, 2022, Commissioner Monahan sent a letter to all PGA Tour Members and publicly released the letter identifying which players the PGA Tour was punishing.  Commissioner Monahan took the opportunity to reiterate that any players participating in future LIV Golf events would suffer the "same fate."  *See* Dkt. No. 2-4, R. Brass Decl. Ex. 18.  The Commissioner also announced that non-PGA Tour members playing in LIV Golf events would not be permitted to play in PGA Tour tournaments as a non-member via any exemption.

In June 2022, the PGA Tour sent letters to PGA Tour Members signed up to participate in LIV Golf's London tournament notifying them that they were in violation of the Member regulations and that the Commissioner would take an "appropriate course of action" against the players unless they withdrew within forty-eight hours.  For example, ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

██████████████████ PGA_TOUR0020933

          ████████████████████████████████████████████████████

██████████████████████████████████████████████ PGA_TOUR0020927. ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ PGA_TOUR0020930.

Between June and September 2022, Commissioner Monahan has publicly threatened PGA Tour Members, in press conferences and on national television, with consequences if they join LIV Golf.

The PGA Tour has additionally made specific threats to individual players through individual communication, including verbal threats from the Chairman of the PGA Tour Policy Board, Ed Herlihy, to Shane Lowry on or around February 28, 2022 at the Seminole Pro-Member in Florida.  For example, PGA Tour Chief Tournament & Competitions Officer, Andy Pazder, sent a text to Talor Gooch in June 2022 to confirm that he would be banned from PGA Tour if he participated in even one LIV Golf event, and that Mr. Gooch should not expect to be welcomed back.  *See* Dkt. No. 2-11, Ex. C.  The PGA Tour, through Andy Levinson, sent Andy Ogletree a letter on June 8, 2022 placing him on probation for promoting an upcoming LIV Golf event—and notifying him that he would be further punished by the PGA Tour for participating in the same—despite the fact that he had not qualified for the PGA Tour event that week.  *See* Dkt. No. 2-6, R. Brass Decl. Ex. 36.  The PGA Tour communicated

10

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1  to its Members through in person meetings, emails, text messages, and other means that they would

2  suffer consequences if they played with LIV Golf.  █████████████████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████

6  ██████  *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

7       In addition to these threats made directly by the PGA Tour, the PGA Tour has requested,

8  encouraged, or otherwise prompted third parties to make numerous threats to Members expressing

9  consequences if they played with LIV Golf.  For example, Davis Love III expressed consequences to

10  Hudson Swafford if he played with LIV Golf; the DP World Tour has expressed consequences to its

11  members at the behest of the PGA Tour; and the Japan Tour has expressed consequences to its members

12  at the behest of the PGA Tour.

13       LIV Golf reserves the right to amend its response to add additional threats it discovers in this

14  litigation or uncovers through its ongoing investigation.

15  **b)**    **Other professional golf tours:**

16  ██████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████

19  █████████████████████████████████████████████.  *See* Ex. A. to Tour's Nov. 15,

20  2022 R&Os to LIV's 2nd Set of Interrogatories.

21       ***European Tour***:  In the Fall of 2020 (and prior instances) the PGA Tour pressured the European

22  Tour into entering an agreement with the PGA Tour to not do business with any new entrant

23  professional golf tours.  ████████████████████████████████████████

24  ███████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████████

28  ████████████████████████████████████  the PGA Tour has exerted pressure on

11

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

the European Tour to do as it says with respect to LIV Golf.  Between November 2020 and the date of these responses, the PGA Tour has enhanced the pressure it imposes on the European Tour to boycott LIV Golf and those who associate with it (including professional golfers, like Player Plaintiffs).

For example, ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ PGA_TOUR0009274.

Later, in July 2021, after LIV Golf made an offer to partner with the European Tour, the European Tour said that LIV Golf's offer appealed to the European Tour and the partnership would be a good fit, but that it could not enter that arrangement due to the "US PGA mighty power."  Dkt. 2-5, Brass Decl. Ex. 5.  The pressure the PGA Tour exerts on the European Tour is evidenced by the European Tour's response to LIV Golf, including its attempts to suspend golfers from its events, its decisions to deny waivers it would otherwise grant, and its decision to act against its interest in excluding LIV Golf-affiliated players who would otherwise improve its events for the benefit of the European Tour, its sponsors, fans, and members.  The European Tour's actions make sense through the prism of the unlawful agreement the PGA Tour pressured it to enter. █████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ PGA_TOUR0008412.   Throughout, 2020, 2021, and 2022, Jay Monahan, Rick Anderson, and Christian Hardy, among others, have leaned on the European Tour to do the PGA Tour's bidding.██ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

12

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

*Asian Tour*:  In May 2021, writing under the logos of both the European Tour and the PGA Tour, European Tour CEO Keith Pelley sent the Asian Tour a list of "consequences" it would suffer if it partnered with LIV Golf, including (1) eliminating a "[p]athway for Asian Tour members onto European Tour," (2) taking away "[e]xisting tournaments we co-sanction, totaling in excess of US $10m of prize money and 250 playing opportunities," (3) eliminating all future "co-sanctioned tournaments between the European Tour/PGA TOUR and Asian Tour" and (4) representing that the Asian Tour would lose its "[p]osition within existing global golf ecosystem."  Dkt. 2-5, Brass Decl. Ex. 22-e.  The PGA Tour and European Tour coordinated with respect to this threat to the Asian Tour.

*See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

*Japan Tour*:  The Japan Golf Tour notified its members—via a letter dated August 28, 2022—that the PGA Tour had threatened that if it allowed any of its members to participate in LIV Golf events in 2022 or during the 2022–23 season, it would not permit those players to play in the co-sanctioned PGA Tour-Japan Golf Tour ZoZo Championship or gain access to qualifying for the PGA Tour-owned Korn Ferry Tour.  https://www.si.com/golf/news/pga-tour-threatens-ban-japan-golf-tour-players-who-compete-liv-golf-events.  The PGA Tour has similarly threatened consequences for the Japan Golf Tour if it permits LIV Golf to schedule a tournament in Japan, depriving the people of Japan the opportunity to see live and in-person competition by many of the world's finest golfers.  In 2021 and 2022, Rick Anderson and Christian Hardy, among others, threatened the Japan Tour with repercussions if the Japan Tour partnered with LIV Golf.

*See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn & Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

In addition, the PGA Tour has pressured the PGA Tour Australasia and the Sunshine Tour, either directly or indirectly through its Strategic Alliance with the European Tour, to not permit their members to play in LIV Golf events that conflict with their scheduled events and to not do business with LIV Golf or other new entrant tours.  *See, e.g.*, PGA_TOUR0010856; PGA_TOUR0017130.  In 2021 and 2022, Rick Anderson, among others, threatened the Sunshine Tour with repercussions if the Sunshine Tour partnered with LIV Golf.  ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████  *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

LIV Golf reserves the right to amend its response to add additional threats it discovers in this litigation or learns through its investigation.

**c)      Professional golf organizations:**

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.  *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

***PGA of America***:  In 2021 and 2022, the PGA Tour pressured the PGA of America to announce it would disallow participants in LIV Golf events from playing in the PGA Championship and the Ryder Cup.  ████████████████████████████████████████████████

████████████████████████████████.  PGAA_00004845.  In May 2021, immediately after the PGA Tour issued a lifetime ban threat to its players, the PGA Tour leaned on the PGA of America to issue a statement in support of the PGA Tour.  Commissioner Monahan communicates regularly with the PGA of America's CEO, Seth Waugh, in person, over the phone, and in writing.  In those communications, he leans on Mr. Waugh to act consistent with the Tour's interests.

For example, on May 5, 2021, one day after Commissioner Monahan first delivered the lifetime ban threat at the Quail Hollow Club, the Tour pressured the PGA of America to release a public

14

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1    comment in support of the Tour. ███████████████████████████████████████

2    ██████████████████████████████    PGAA_00002847.

3        ***Augusta National***:   Around January 2020, Commissioner Monahan leaned on Will Jones of

4    Augusta National to oppose the competitive entry of the Premier Golf League.  The PGA Tour leaned

5    on Augusta National representatives to dissuade golfers from joining LIV Golf prior to the 2022

6    Masters, at the 2022 Honda Classic, at the 2022 Masters, and after the 2022 Masters.  Around January

7    2020, the PGA Tour leaned on Augusta National to oppose the competitive entry of the Premier Golf

8    League.

9    ████████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████████

16   ███████████████████████████████████    PGA_TOUR0033940.

17   ████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████████████

25   ██████████████████████████████████████████████████████████████

26   ████████████████████████████████    PGA_TOUR0011096.

27

28

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1 [REDACTED]

2 [REDACTED]

3 [REDACTED] PGA_TOUR0011096.

4 **Royal & Ancient**:  Around January 2020, Commissioner Monahan leaned on Martin Slumbers

5 of the Royal & Ancient to oppose the competitive entry of the Premier Golf League.  The PGA Tour

6 leaned on Royal & Ancient representatives to dissuade golfers from joining LIV Golf prior to the 2022

7 Open Championship.  Around January 2020, the PGA Tour leaned on the Royal & Ancient to oppose

8 competitive entry by the Premier Golf League.  In May 2021, immediately after the PGA Tour issued

9 a lifetime ban threat to its players, the PGA Tour leaned on the Royal & Ancient to issue a statement

10 in support of the PGA Tour. [REDACTED]

11 [REDACTED]

12 [REDACTED] *See* PGA_TOUR0010317.

13 **OWGR**:  Commissioner Monahan sits on the Governing Board of the OWGR and the PGA

14 Tour has regularly had representatives on the Technical Committee of the OWGR.  As of the date of

15 this response, Billy Schroder of the PGA Tour sits on the Technical Committee.  Through these

16 positions, PGA Tour causes and leans on the OWGR to do its bidding as it relates to all matters of

17 business, including with respect to dealings with LIV Golf.  Commissioner Monahan has leaned on

18 OWGR Chair Peter Dawson regarding New Tours since New Tours threatened to enter the professional

19 golf market.  For example, OWGR Chair Peter Dawson, after reviewing the Premier Golf League's

20 business model, communicated to the Premier Golf League that it would receive OWGR eligibility if

21 it launched with the proposed model.  He explained that OWGR would lose credibility if it did not rank

22 the world's best golfers regardless of where they played.  After that communication, Commissioner

23 Monahan leaned on Mr. Dawson to change OWGR's position and the OWGR has changed its position

24 as exhibited through its treatment of LIV Golf's OWGR application.  Through its control of the OWGR

25 and its communications to OWGR, the PGA Tour has leaned on the OWGR to do its bidding to deny

26 LIV Golf OWGR eligibility and delay the process.  At OWGR meetings for the last several years, the

27 PGA Tour, through Jay Monahan and Billy Schroder, has leaned of the other members to change the

28 OWGR ranking system to benefit it at the expense of global tours.

16

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

*Golf Saudi:*  The PGA Tour reviewed and revised an email threat that the European Tour CEO Keith Pelley sent Golf Saudi in May 2021 that demanded, on behalf of the European Tour and the PGA Tour, that Golf Saudi publicly denounce LIV Golf or else the European Tour would close dialogues with Golf Saudi and force them to operate outside the golf ecosystem by no longer sanctioning them. *See* Dkt. No. 2-5, R. Brass Decl. Ex. 22c.  The PGA Tour thereafter pressured the European Tour to cease recognizing the Saudi International as a European Tour event.

*Ladies Professional Golfers Association (LPGA):*  Around January 2020, Commissioner Monahan leaned on Mike Whan of the LPGA to oppose the competitive entry of the Premier Golf League.  In 2022, the PGA Tour, including Commissioner Monahan, have leaned on the LPGA to not do business with LIV Golf.

*Ladies European Tour (LET):*  In 2022, the PGA Tour, including Commissioner Monahan, have leaned on the LET to not do business with LIV Golf.

LIV Golf reserves the right to amend its response to add additional threats it discovers in this litigation or learns through its investigation.

**d)     PGA TOUR members' agents or business partners:**

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████. *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

The PGA Tour threatened certain players' representatives by promising to harm the representatives' and the players' business interests if they continued to engage in discussions with LIV Golf.

In 2021, the PGA Tour implicitly and explicitly threatened the business interests of players' managers and agents if they continued to engage in discussions with LIV Golf on behalf of the players they represent.  ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn & Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1 ████████████████████████████████████████████████████

2 ████████████████████████████ PGA_TOUR000331.

3      During the week of February 14, 2022, Commissioner Monahan met with a number of the

4 biggest agencies in golf, including without limitation Impact Point, GSE Worldwide, and other

5 agencies and informed them that any golfer who joins LIV Golf would be banned from the PGA Tour

6 for life.  ECF No. 2-3, Brass Ex. 6.

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ██████████████████ ██████████████████████████████████

11 PGA_TOUR0369490.

12      The PGA Tour has also leaned on PGA Tour Members' business partners to drop them as

13 sponsors if they associate with LIV Golf, as detailed more below in sub-part (g).

14      LIV Golf reserves the right to amend its response to add additional threats it discovers in this

15 litigation or learns through its investigation.

16 **e)**     **Vendors:**

17      The PGA Tour has embarked on a campaign to inform its business partners, including vendors,

18 that the PGA Tour will boycott those who work with LIV Golf.  LIV Golf is aware of instances in

19 which vendors turned down a partnership with LIV Golf expressly due to the PGA Tour.  In addition,

20 LIV Golf is aware of instances in which vendors turned down a partnership with LIV Golf and refused

21 to provide to LIV Golf the *reason* they were turning down the partnership, but believe the vendor

22 refusal was motivated by the PGA Tour's communications to them.  LIV Golf's understands that the

23 PGA Tour made the following threats to vendors:

24      *Aggreko Event Services Ltd.*: In February and March of 2022, LIV Golf was negotiating with

25 Aggreko Event Services Ltd., a company offering power solutions crucial to major athletic and

26 entertainment events with special teams working on-site, regarding power and HVAC systems and

27 services for LIV Golf events.  During these discussions, Kevin Brownhill, Global Partnership Manager,

28 of Aggreko Event Services stated that Aggreko Event Services could not work with LIV Golf in the

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1   United States or the United Kingdom this year—an abrupt reversal. ███████████████

2   ████████████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████████████   *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of

5   Interrogatories.

6          *Arena Americas*: In January of 2022, LIV Golf was negotiating with Arena Americas, a global

7   event rental company, regarding tent rental for LIV Golf events.  On April 5, 2022, John Tabeling

8   stated that Matt Rapp of the PGA Tour gave an ultimatum to Arena Americas, stating if Arena

9   Americas works for LIV Golf, Arena America loses the PGA Tour's business.  As a result, John

10  Tabeling stated that Arena Americas was pulling out of providing tent rentals for LIV Golf events. █

11  ████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████   *See* Ex.

16  A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories. ████████████████

17  ████████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████

19  ████████████████████████ *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

20  ████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████

23  *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

24         *Top Tracer*:  In March 2022, LIV Golf was in active discussions with Top Tracer, a golf shot

25  tracing technology company, until Top Tracer cut off all communications, ultimately sending an email

26  refusing to work with LIV Golf weeks later.  In various oral and written communications, ███████

27  ████████████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1   ███████████████████████████   *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd

2   Set of Interrogatories.   In various oral and written communications, ████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ██████████████████████████   *See id.*  In written communication, ████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████.  *See* Ex. A. to Tour's

8   Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.  ████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████.  *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd

12  Set of Interrogatories.  ████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████.  *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

16      *R2*:  On or around March 23, 2022, Rich Schoenfeld of R2—a technology company that had

17  contracted with LIV Golf—notified LIV Golf that it "need[ed] to rescind the contract" due to a

18  "potential business issue" that he needed to discuss with R2's attorney.  Mr. Schoenfeld shared with

19  LIV Golf that PGA Tour representatives—Gordon Strickland, Senior Vice President, Finance, and

20  Karen Davidson, Vice President, Tournament Operations—had threatened R2 not to work with LIV

21  Golf and had threatened to blacklist any vendor working with LIV Golf.  ████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████.  *See* Ex. A. to Tour's Nov.

25  10, 2022 R&Os to LIV's 2nd Set of Interrogatories.  ████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████.  *See* Ex. A. to

28  Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.  ████████████████

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1 ███████████████████████████████████████████████████████████

2 ████████████████████████████████████████████ *See*

3 Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories. ██████████

4 ███████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████████

6 ████████████████████████████████████████ *See* Ex. A. to Tour's

7 Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.

8      *Levelwear*: On or around March 25, 2022, Heidi Cohen-Brugliera from Levelwear athletic

9 apparel informed LIV Golf, after a period of negotiations, that it would not sell LIV Golf any apparel

10 because doing so could jeopardize its relationship with PGA Tour.  When LIV Golf inquired why,

11 Heidi ominously told LIV Golf that she "Would like to chat. Not on text." ████████████

12 ███████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████████

14 ███████████████████ *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of

15 Interrogatories.

16      *Callaway Golf Company*: In early April 2022, LIV Golf was negotiating with Callaway Golf

17 Company regarding the purchase of Ogio golf bags for a LIV Golf event in London.  The parties

18 discussed an order and pricing.  Then, on April 26, 2022, Hunter Martin, Strategic Partnerships

19 Manager of Callaway Golf Company, told LIV Golf: "I was just speaking with our EU team.  We will

20 not be able to supply bags for that event.  We are the official supplier to the DP World Tour so this

21 could be a conflict for us for those events." ████████████████████████████

22 ███████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████

24 ████████████████████████████████████████ *See* Ex. A. to Tour's Nov. 10, 2022

25 R&Os to LIV's 2nd Set of Interrogatories. ████████████████████████

26 ███████████████████████████████████████████████████████████

27 ███████████████████████████████████████████████████████████

28

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1     ███████████████████████████████████████████████████████ *See* Ex. A. to

2     Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

3            *American Needle*: LIV Golf and American Needle, a manufacturer of quality headwear and

4     apparel, had been negotiating in 2022.  Mike Ray, a sales representative for American Needle, said that

5     the owner did not want to do business with LIV Golf due to the PGA Tour and Augusta National and

6     accordingly cancelled LIV Golf's order.  ████████████████████████████████████

7     ████████████████████████████████████████████████████████████████████████

8     ██████████████████████████████████████████████████████████████████████████.

9     *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

10           *Yardage Book Companies*: In April 2022, the PGA Tour threatened yardage book companies,

11    including Mark Long, not to work with LIV Golf.  For example, Michael Etherington of Pro Secrets,

12    another provider of yardage books, informed LIV Golf that Mr. Long "has been asked by PGA Tour

13    not" to work with LIV Golf.  █████████████████████████████████████████████

14    ████████████████████████████████████████████████████████████████████████

15    ████████████████████████████████████████████████████████████████████████

16    ██████████  *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories.  ██

17    ████████████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████████████

19    █████████████████████████████████ *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's

20    2nd Set of Interrogatories.

21           *Ticketmaster*: In April 2022, PGA Tour pressured Ticketmaster not to work with LIV Golf, as

22    a result of which, it did not do so.  █████████████████████████████████████████

23    ████████████████████████████████████████████████████████████████████████

24    ██████████████████████████████████████████████████████████████████████████.

25    *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

26           *Cueto*: In April 2022, PGA Tour threatened Cueto to not work with LIV Golf.  Accordingly,

27    on or around April 19, 2022, Cueto notified LIV Golf  that it was no longer willing to work with LIV

28    Golf . 7517091_00045917. ███████████████████████████████████████████████

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████████████████████    *See* Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of

4 Interrogatories.    ███████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ██████████████████    *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ██████████████████████.    *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of

11 Interrogatories.

12    *Dick's Sporting Goods*: In May 2022, Dick's Sporting Goods declined to consider a business

13 relationship with LIV Golf because of its relationship with the PGA Tour. ███████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████.    *See* Ex. A. to Tour's

17 Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

18    *Peter Millar and Hudson Sutler*: In May of 2022, Jake Lecky, a sales representative of Hudson

19 Sutler, told two LIV Golf representatives that Peter Millar told Hudson Sutler that it could not do

20 business with LIV Golf. █████████████████████████████████████████████

21 ████████████████████████████████████████████████████    *See*

22 Ex. A. to Tour's Nov. 10, 2022 R&Os to LIV's 2nd Set of Interrogatories. █████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ███████████████████████████    *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's

26 2nd Set of Interrogatories.

27    *Galvin Green*: In May 2022 and at other points during 2022, LIV Golf was negotiating with

28 Galvin Green, a golf clothing brand, regarding a partnership where LIV Golf would purchase golf

23

Gibson, Dunn & Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

clothing from Galvin Green at a discount, and Galvin Green would be publicly affiliated with LIV Golf. Galvin Green indicated to LIV Golf that it would sell golf clothing to LIV Golf, but no longer wanted to be publicly affiliated with LIV Golf, because of pressure from the PGA Tour. ███

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████ *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

*Bruno Event Team*: Throughout early and mid-2022, LIV Golf was negotiating with Bruno Event Team, the self-described industry leader in dedicated sports event management, based in Birmingham, Alabama. Gene Hallman, President and CEO of Bruno Event Team, and Sean Sovacool, former President of the Golf Division of Bruno Event Team, stated that Bruno Event Team was excited to work with LIV Golf and to manage its golf events. After the PLAYERS Championship, however, Gene Hallman stated that Bruno Event Team was no longer able to work with LIV Golf. A Bruno Event Team employee told LIV Golf that Ron Price, Chief Operating Officer of the PGA Tour, had called Gene Hallman of Bruno Event Team, who, after the call, "looked like he had seen a ghost." ███

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███ *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories. ███

███████████████████████████████████████

███████████████████████████████████████

████████████████ *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

*Endeavor Company and IMG*: In 2021 and 2022, Commissioner Monahan and others at the PGA Tour have directly or indirectly pressured the Endeavor Company and IMG—specifically Endeavor's CEO Ari Emanuel and its President Mark Shapiro—not to work with LIV Golf. ███

███████████████████████████████████████

███████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

*See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

*See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

*Golf Courses*: During 2022, the PGA Tour has threatened numerous golf courses with adverse consequences if they host LIV Golf events.

*Master Fence Rental*: In the Summer of 2022, the PGA Tour threatened Master Fence Rental not to work at LIV Golf events and explained it would lose its work with the PGA Tour if it did so.

*Broadcast Networks*: In 2022, the PGA Tour leaned on its broadcast partners to lean on their respective crews, employees, producers, representatives, and talent, and communicated that they would be blacklisted by the PGA Tour if they worked for LIV Golf.  This includes in March 2022, when NBC/Golf Channel and CBS refused to work with LIV Golf because of pressure from the PGA Tour. Specifically, executives at NBC/Golf Channel told potential live producers or production personnel that they would not be hired by NBC/Golf Channel if they took work with LIV Golf.

*Czarnowski*: In 2022, Czarnowski, the vendor LIV Golf intended to use for its branding, terminated its relationship with LIV Golf in response to pressure from the PGA Tour.

In addition to the foregoing specific descriptions, which LIV Golf provides to the best of its knowledge and belief based on the information in its possession, LIV Golf also believes the PGA Tour is responsible for the following vendors, among others, being unable to work with LIV Golf:  Intersport, Provision Events, Hawk-eye, Holderness & Bourne, Summit Golf Brands, Drug Free Sport, Troy Martin, Maui Jim, the Chainsmokers, and Visi.

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████.  *See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of

7 Interrogatories.

8       LIV Golf reserves the right to amend its response to add additional threats from the same

9 vendors as listed above, or from different vendors, that it discovers in this litigation or learns through

10 discovery and investigation.

11 **f)      Golfers who are not PGA TOUR members:**

12       The PGA Tour banned from participation in events the European Tour co-sanctioned with the

13 PGA Tour professional golfers who the European Tour had authorized to participate in the LIV Golf

14 London Invitational.  These individuals include without limitation Oliver Bekker.  In July 2022, the

15 PGA Tour denied members in good-standing with the European Tour the opportunity to participate in

16 European Tour sanctioned tournaments.

17       In the Summer of 2022, the PGA Tour threatened Japanese Golf Tour members that they would

18 be prohibited from playing in the ZoZo Championship if they continue to participate in LIV Golf events

19 and that they would lose access to the Korn Ferry Tour if they continue to play in LIV Golf events.

20 The threats were targeted at Yuki Inamori, Ryosuke Kinoshita, Jinichiro Kozuma and Hideto Tanihara

21 who had participated in LIV Golf events and were not permitted to participate in the 2022 ZoZo

22 Championship.

23       In 2022, the PGA Tour has threatened amateur status college golfers that they will not be

24 allowed to participate in the pathway onto the Korn Ferry Tour or the PGA Tour if they play in LIV

25 Golf events.

26       The PGA Tour has threatened young golfers that they would not be able to play on the PGA

27 Tour or in the Majors if they ever play in a LIV Golf event.  The PGA Tour has similarly leaned on

28 PGA Tour Members to make this same message in public statements to enhance the threat.

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

Through the extensive public disclosure of its repeated threats to PGA Tour members of a lifetime ban, the PGA Tour has extended that threat to any aspiring professional golfer.

LIV Golf reserves the right to amend its response to add additional threats it discovers in this litigation or learns through discovery and investigation.

**g)      Sponsors:**

Between at least 2020 and the present, the PGA Tour has communicated to sponsors that they would face adverse consequences for sponsoring a golfer who plays on a New Tour and has leaned on those sponsors to drop golfers who join the a New Tour.   This list of sponsors includes UBS, MasterCard, Lexus and Rolex.  In one particular example, in 2022, the PGA Tour pressured Jason Day to communicate to Lexus that the company would lose its partnership opportunities were it to sponsor LIV Golf or LIV Golf players.

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

Gibson, Dunn &
Crutcher LLP
PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

| ████████ | |
|---|---|

*See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

LIV Golf reserves the right to amend its response to add additional threats it discovers in this litigation or learns through its investigation.

**h)    Broadcasters:**

The PGA Tour has locked up the major golf broadcasting companies in the United States and throughout the world with arrangements that prevent them from working with LIV Golf.  This group includes Columbia Broadcasting System (CBS), National Broadcasting Company (NBC/Golf Channel), American Broadcasting System/Disney (ABC/ESPN), and Discovery (international).  The PGA Tour has also specifically threatened broadcasting companies with consequences if they broadcast or air LIV Golf.  For example, in 2022, the PGA Tour threatened to pull all PGA Tour content from Juniper Broadcasting in Japan if it entered a broadcasting agreement with LIV Golf.  In 2022, the PGA Tour has communicated illegal and untrue threats to many broadcasters that LIV Golf does not have media rights for its events and the broadcasters would face intellectual property liability if they air LIV Golf events.

In late May 2022, the PGA Tour, through Miller Brady, the president of the PGA Tour Champions, informed Darren Clarke, a professional golfer who was being considered as an on-air personality for LIV Golf, that any involvement with LIV Golf would be subject to a ban from playing in the PGA Tour Champions.  The PGA Tour similarly has threatened other on-air and behind the scenes talent and support from working with LIV Golf.

The PGA Tour in 2022, through Thierry Pascal, threatened key Southeast Asia broadcasters and incumbent PGA Tour rights holders such as SPOTV, ASTRO Malaysia, True Vision Thailand, and Mola Indonesia/Singapore/Malaysia to not carry LIV Golf; threatening that they would terminate their relationship if they did.  Similarly, STAR India, an ESPN affiliate, explained that it was ESPN's policy to not involve itself with LIV Golf because of their involvement with the PGA Tour.  In June 2022, Thai Golf Channel also chose to not do business with LIV Golf during the LIV Invitational Series

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

as it stood to lose a $500,000 PGA Tour sponsorship contribution if it did.  Mr. Pascal has also threatened Sky Sports and Sky Deutschland not to work with LIV Golf.

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY



Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

*See* Ex. A. to Tour's Nov. 15, 2022 R&Os to LIV's 2nd Set of Interrogatories.

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

1    LIV Golf reserves the right to amend its response to add additional threats it discovers in this

2    litigation or learns through discovery and investigation.

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

DATED:  November 23, 2022

                                   Respectfully submitted,


                                   By: _____/s/ Rachel S. Brass_____

                                   RACHEL S. BRASS, SBN 219301
                                     rbrass@gibsondunn.com
                                   LAUREN D. DANSEY, SBN 311886
                                     ldansey@gibsondunn.com
                                   GIBSON, DUNN & CRUTCHER LLP
                                   555 Mission Street, Suite 3000
                                   San Francisco, California 94105-0921
                                   Telephone:  415.393.8200
                                   Facsimile:  415.393.8306

                                   ROBERT C. WALTERS, *pro hac vice*
                                     rwalters@gibsondunn.com
                                   SCOTT K. HVIDT, *pro hac vice*
                                     shvidt@gibsondunn.com
                                   GIBSON, DUNN & CRUTCHER LLP
                                   2001 Ross Avenue, Suite 2100
                                   Dallas, Texas 75201-2911
                                   Telephone:  214.698.3100

                                   JOSHUA LIPTON, *pro hac vice*
                                     jlipton@gibsondunn.com
                                   KRISTEN C. LIMARZI, *pro hac vice*
                                     klimarzi@gibsondunn.com
                                   GIBSON, DUNN & CRUTCHER LLP
                                   1050 Connecticut Avenue, N.W.
                                   Washington, DC 20036-5306
                                   Telephone:  202.955.8500

                                   JOHN B. QUINN, SBN 90378
                                     johnquinn@quinnemanuel.com
                                   DOMINIC SURPRENANT, SBN 165861
                                     dominicsurprenant@quinnemanuel.com
                                   KEVIN TERUYA, SBN 235916
                                     kevinteruya@quinnemanuel.com
                                   QUINN EMANUEL URQUHART & SULLIVAN LLP
                                   865 South Figueroa Street, 10th Floor
                                   Los Angeles, California 90017
                                   Telephone:  213.443.3000

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:  650.801.5100

*Attorneys for Non-Party Ian Poulter*

Gibson, Dunn &
Crutcher LLP

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

# PROOF OF SERVICE

I, Daniel K. Tom, declare as follows:

I am employed in the County of San Francisco, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, CA 94105-0921, in said County and State.

On November 23, 2022, I served the following document(s):

**PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

on the parties stated below, by the following means of service:

### *Defendant PGA Tour, Inc.*

| | |
|---|---|
| John W. Keker | Email: jwk@kvn.com |
| Brook Dooley | bdooley@keker.com |
| Nicholas S. Goldberg | ngoldberg@keker.com |
| Thomas E. Gorman | tgorman@keker.com |
| Sophie A. Hood | shood@keker.com |
| Leo L. Lam | llam@keker.com |
| Robert A. Lauridsen | alauridsen@keker.com |
| Eric H. MacMichael | emacmichael@keker.com |
| Nicholas D. Marais | nmarais@keker.com |
| Elliot R. Peters | epeters@keker.com |
| David J. Silbert | dsilbert@keker.com |

**Keker, Van Nest & Peters LLP**
633 Battery Street
San Francisco, CA 94111-1809

| | |
|---|---|
| Anthony J. Dreyer | Email: anthony.dreyer@skadden.com |
| Karen H. Lent | karen.lent@skadden.com |
| Matthew M. Martino, I | matthew.martino@skadden.com |

**Skadden Arps Slate Meagher Flom LLP**
One Manhattan West
New York, NY 10001

| | |
|---|---|
| Patrick J Fitzgerald | Email: patrick.fitzgerald@skadden.com |

**Skadden, Arps, Slate, Meagher & Flom LLP**
155 N. Wacker Drive, Suite 2700
Chicago, IL 60606

Gibson, Dunn &
Crutcher LLP

Contains Information the PGA Tour designated ATTORNEYS EYES ONLY

☑ **BY ELECTRONIC SERVICE:** On the above-mentioned date, I caused the documents to be sent to the persons at the electronic notification addresses as shown above.

☑ **(FEDERAL)**      I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 23, 2022.

_____
/s/ Daniel K. Tom
Daniel K. Tom

PLAINTIFF LIV GOLF INC.'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES
5:22-cv-04486-BLF

Gibson, Dunn & Crutcher LLP