QUINN EMANUEL URQUHART &
   SULLIVAN LLP
JOHN B. QUINN, SBN 90378
   johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
   dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
   kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
   bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

*Attorneys for Non-Parties The Public Investment
Fund of the Kingdom of Saudi Arabia and His
Excellency Yasir O. Al-Rumayyan.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, IAN POULTER, and LIV GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | CASE NO. 5:22-cv-04486-BLF <br><br> **THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND HIS EXCELLENCY YASIR O. AL-RUMAYYAN'S REPLY IN SUPPORT OF JOINT MOTION TO QUASH** <br><br> Judge:   Hon. Beth Labson Freeman <br><br> Date Filed:   August 3, 2022 <br><br> Trial Date:   January 8, 2024 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................1

I.   SOVEREIGN IMMUNITY PRECLUDES THE EXERCISE OF JURISDICTION............1

II.  THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE TOUR HAS
     FAILED TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION...............5

III. THE SUBPOENAS SHOULD BE QUASHED AS PATENTLY OVERBROAD
     AND UNDULY BURDENSOME, ESPECIALLY IN LIGHT OF THE TOUR'S
     REFUSAL TO MEET-AND-CONFER OR COMPROMISE. ............................................8

IV.  THE TOUR FAILS TO REBUT TWO OTHER DISPOSITIVE DEFECTS. ...................10

     A.   The Subpoenas Violate The 100-Mile Rule...........................................................10

     B.   Failure to Tender Fees............................................................................................10

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
  425 U.S. 682 (1976) .................................................................................................................. 5

*Atlantica Holdings v. Sov. Wealth Fund Samruk-Kazyna JSC*,
  813 F.3d 98 (2d Cir. 2016) ....................................................................................................... 3

*Broidy Cap. Mgmt., LLC v. State of Qatar*,
  982 F.3d 582 (9th Cir. 2020) .................................................................................................... 2

*Burnham v. Sup. Ct. of Cal., Cnty. of Marin*,
  495 U.S. 604 (1990) .................................................................................................................. 7

*CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*,
  713 F.2d 494 (9th Cir. 1983) .................................................................................................. 10

*Daimler AG v. Bauman*,
  517 U.S. 117 (2014) .................................................................................................................. 6

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) .................................................................................................. 4

*Embassy of the Arab Repub. of Egypt v. Lasheen*,
  603 F.3d 1166 (9th Cir. 2010) .................................................................................................. 2

*Flatow v. Islamic Rep. of Iran*,
  308 F.3d 1065 (9th Cir. 2002) .................................................................................................. 4

*Fujikura Ltd. v. Finisar Corp.*,
  No. 15MC80110HRLJSC, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ................................ 10

*In re Cal. Gas. Spot Market Antitrust Litig.*,
  No. 20-cv-03131-JSC, 2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) .................................... 7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2018 WL 659084 (N.D. Cal. Feb. 1, 2018) .............................................................................. 4

*In re Hydroxycut Mktg. & Sales Pract. Litig.*,
  810 F. Supp. 2d 1100 (S.D. Cal. 2011) .................................................................................... 7

*In re Packaged Seafood Prod. Antitrust Litig.*,
  277 F. Supp. 3d 1167 (S.D. Cal. 2017) .................................................................................... 7

*OBB Personenverkehr AB v. Sachs*,
  577 U.S. 27 (2015) ............................................................................................................... 2, 3

*Olagues v. Schmidt*,
  897 F.2d 533 (9th Cir. 1990) .................................................................................................. 10

*Pablo Star Ltd. v. Welsh Gov't*,
  961 F.3d 555 (2d Cir. 2020) ..................................................................................................... 2

*Pebble Beach v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ............................................................................................. 5, 6

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010) .................................................................................................. 2

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .................................................................................................. 5

*Republic of Phil. v. Marcos*,
  806 F.2d 344 (2d Cir. 1986) .................................................................................................. 5

*Ridgeway v. Phillips*,
  383 F. Supp. 3d 938 (N.D. Cal. 2019) ................................................................................. 7

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ............................................................................................................. 5

*Saud Arabia v. Nelson*,
  507 U.S. 349 (1993) ............................................................................................................. 3

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) ............................................................................................................. 5

*Shapiro v. Rep. of Bolivia*,
  930 F.2d 1013 (2d Cir. 1991) .............................................................................................. 5

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) ............................................................................................................... 3

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................................................ 6

*Wye Oak Tech., Inc. v. Rep. of Iraq*,
  24 F.4th 686 (D.C. Cir. 2022) ............................................................................................. 3

**Rules/Statutes**

28 U.S.C. § 1330 .......................................................................................................................... 5

28 U.S.C. § 1605(a) ..................................................................................................................... 2

28 U.S.C. § 1605(a)(2) ............................................................................................................ 2, 3

F.R.C.P Rule 45 ..................................................................................................................... 8, 10

**PRELIMINARY STATEMENT**

The Tour seeks to establish lack of sovereign immunity as to a foreign sovereign and its Minister based on their (i) approving capital expenditure increases, (ii) exercising high-level oversight, and (iii) requesting information from a domestic investment. Accepting the Tour's unprecedented position would require this Court to make new law, with serious implications for foreign policy, international comity, and investment in the US. Rather than showing extraordinary facts to warrant this extraordinary result, the Tour resorts to mischaracterizing the evidence to distort PIF's ordinary investor activities. Sovereign immunity requires quashing the Tour's subpoenas.

The subpoenas should also be quashed because the Tour has failed to show that this Court may exercise personal jurisdiction. The Tour offers an *ipse dixit* assertion that PIF exercises "day-to-day control" over LIV but identifies no evidence beyond the routine activities of an investor, which is insufficient to confer personal jurisdiction. The subpoenas should also be quashed because of their extraordinarily burdensome demands on a non-party, which the Tour stubbornly refused to narrow. Nor does the Tour rebut two other dispositive defects of its subpoenas (the 100-mile rule and failure to post fees). The Tour's attempt to abuse non-party discovery in pursuit of a misplaced tactical advantage should be rejected.

The Tour misleadingly claims that "[a]fter promising the Court that PIF would cooperate by providing this discovery, it has now backtracked and engaged in every form of foot-dragging and straw-grasping imaginable to delay the process" (at 2:24-26). The promise was that PIF would not insist on process through the Hague but accept service, which it did, and cooperate in "appropriate discovery," which it did. Neither PIF nor HE ever agreed to waive sovereign immunity or jurisdictional objections, and the Tour has never sought "appropriate discovery." Instead, it has refused to discuss anything but complete compliance with its blunderbuss 161 requests for production directed to PIF and HE. The Motion to Quash should be granted.

**ARGUMENT**

**I.   SOVEREIGN IMMUNITY PRECLUDES THE EXERCISE OF JURISDICTION.**

In the opening brief ("OB"), PIF and HE explained that the subpoenas should be quashed because the FSIA precludes exercise of jurisdiction over PIF. (OB at 7:26 to 12:12.) The Tour

1

argues that (i) PIF has not met its burden of showing the exceptions to the FSIA do not apply, (ii) the commercial activity and waiver exceptions apply to PIF, and (iii) HE does not have common law immunity.  None of these arguments has merit.

**The Tour has the burden of showing exceptions to the FSIA apply.**  The Tour claims (at 7:6-8) that PIF did not contest that it has the burden to show that the FSIA exceptions do not apply. The Tour is wrong.  PIF contested this in its opening brief at 8:7-13—once the foreign sovereign shows the entity involved is an organ of the state, "the burden of production shifts to the plaintiff [away from the foreign state] to offer evidence that an exception applies." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010).

**The commercial activity exception does not apply.**  The commercial activity exception does not apply because PIF's conduct is not what "the action is based upon." 28 U.S.C. § 1605(a)(2). It is neither "the 'gravamen' of the suit" nor "the act complained of." *OBB Personenverkehr AB v. Sachs*, 577 U.S. 27, 35 (2015); *Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 593 (9th Cir. 2020).  In applying the commercial activity exception, a court must "zero[] in on the core of the[] suit," *i.e.*, the "acts that allegedly injured the [plaintiffs]," not activities that merely "led to the conduct that eventually injured" them. *OBB Personenverkehr*, 577 U.S. at 33-34 (citation omitted). Under that demanding standard, the exception cannot apply here.

As an initial matter, the Tour has cited no case ever finding a lawsuit to be "based on" the commercial activities of a *non-party* to the case.  As PIF explained in its opening brief (at 10:24-28), all the Tour's cited authorities involve suits *against a foreign state defendant*.[1]  It would be a rare case indeed where an action is somehow "based upon" non-party conduct, 28 U.S.C. § 1605(a), and this is not the case to break new ground.  PIF has done little more than invest in LIV.

Despite the lack of precedent supporting its position, the Tour argues that LIV's antitrust claims are "based on" PIF's conduct because that conduct is relevant to its intended defenses and procompetitive justifications. (Opp. at 9:9-18.) But that argument conflates general *relevance* with

---

[1]  For example, in *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 560-61 (2d Cir. 2020), a foreign state was sued for distributing copyrighted material.  In *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1169 (9th Cir. 2010), a foreign state itself allegedly breached a contract.

1  the far stricter FSIA requirement that an action be "based upon" the foreign sovereign's commercial
2  activity. The Supreme Court has held that the FSIA "calls for something more than a mere
3  connection with, or relation to, commercial activity." *Saud Arabia v. Nelson*, 507 U.S. 349, 358
4  (1993). Whether or not LIV's claim relates to PIF's conduct, it is not "based upon" it.

   Nor is the Tour's tortious-interference counterclaim "based upon" PIF's conduct. Neither
the Tour's allegations nor its evidence indicate that PIF had any role in allegedly inducing players
to breach their contracts—the "acts that allegedly injured the [Tour]." *OBB Personenverkehr*, 577
U.S. at 33-34. The Tour resorts to mischaracterizing evidence to argue otherwise. For example,

▮ (*Id.* Ex. 1.) ▮

▮ (*Id.* Exs. 18, 19, 36.) For instance, ▮ (*Id.* Ex. 18 at 2.) ▮

▮ (*Id.* Ex. 19 at 2.) ▮

▮, but he played no role in player negotiations. (Dkt. No. 166-4 ¶ 15.)

   The remainder of the Tour's documents ▮ (Opp. Exs. 20, 38, 14, 25.)
None of this shows that *PIF* or *HE* induced prospective players. PIF only provided funding for
*LIV's requests* to expend funds, consistent with "typical" investor activities. *See U.S. v. Bestfoods*,
524 U.S. 51, 72 (1998) ("supervision of the subsidiary's finance and capital budget decisions" is
"consistent" with investor status). Indeed, the Tour cites no case holding that investor approval of
funding and related acts could amount to tortious interference.

   Finally, the "direct effect" prong of Section 1605(a)(2) is inapposite for precisely the same
reasons. This action is no more "based upon" PIF's foreign conduct than its U.S. conduct. *See Wye
Oak Tech., Inc. v. Rep. of Iraq*, 24 F.4th 686, 700-01 (D.C. Cir. 2022) (the direct effect clause has
"long been interpreted to relate only to the conduct of the foreign state"); *Atlantica Holdings v. Sov.
Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 112 (2d Cir. 2016) (the "focus" of the direct effect

3

clause is "the activity of the sovereign").  The Tour misreads the statute to argue that the case is based on an alleged "direct effect" of PIF's conduct, rather than the conduct itself.  (Opp. at 9:19-28.)  In any event, at minimum, LIV's decisions about which players to recruit constitutes an intervening cause, such that PIF's funding could not "directly" cause any purported breach.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2018 WL 659084, at *5 (N.D. Cal. Feb. 1, 2018).

***The waiver exception does not apply.***  The Tour argues that *PIF* waived sovereign immunity because *LIV*—not PIF—filed this lawsuit.  (Opp. at 10:16-27.)  That novel position would dramatically expand the FSIA's waiver exception.  No precedent supports the notion that another party's filing of a lawsuit could constitute a waiver for one of its investors.  PIF and LIV are "separate juridical entit[ies]," *Flatow v. Islamic Rep. of Iran*, 308 F.3d 1065, 1073 (9th Cir. 2002), so attributing LIV's conduct to PIF requires alter ego or agency.  *See Doe v. Holy See*, 557 F.3d 1066, 1077-79 (9th Cir. 2009).  The Tour does not attempt to show this.

PIF's "agreement" to provide capital to fund LIV's budget has nothing to do with waiver.  That PIF may request reasons for capital expenditures is not evidence that PIF "authorized" this lawsuit.  The Tour's argument would subject *every* foreign state investor to sovereign immunity waiver for ordinary investor activities. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Dkt. No. 166-6 ¶ 2.)  The Tour's expansive definition of waiver is untenable, and it fails to meet its burden.

***HE is protected by common law immunity.***  The Tour claims that the subpoena is not directed to HE's official acts.  To reach this conclusion, the Tour ignores that (1) the HE subpoena seeks the same information as the PIF subpoena; (2) HE provided evidence that the subpoena seeks documents to which he has access or possession solely due to his role as Governor of PIF, *i.e.*, in his official capacity, (Dkt. No. 166-4 ¶ 2); and (3) many of the requests concern PIF on their face. (*E.g.,* HE Requests 55 ("PIF's organizational structure and personnel"), 56 ("PIF's current leadership"), 57 ("all stockholders, owners, and investors in [] PIF"), 58 ("PIF board minutes.").)

The Tour claims that HE acts as "CEO and Commissioner" of LIV Golf Investments by misreading a document that actually refers to two separate people:  HE (who, as PIF's representative, acts as Chairman), and a "CEO & Commissioner." (Dkt. No. 89-2 at 11.)  The very next page states that Greg Norman is the CEO and Commissioner. (*Id*. at 12.)  The remaining eight (out of ten)

4

Board members are appointed. (*Id.* at 11.) HE is not the CEO and Commissioner. And as explained before, LIV Golf Investments is a separate legal entity from the plaintiff in this lawsuit.

Furthermore, as shown in the opening brief, there is no "commercial activity" exception for foreign *official* immunity. The Tour's main case addresses the commercial activity of a foreign *government*, not an official. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695 (1976) (addressing conduct of "the Cuban Government"). The other authority states that "purely private acts," which are by definition not "official" acts, are not subject to immunity. *Republic of Phil. v. Marcos*, 806 F.2d 344, 359 (2d Cir. 1986). And the Tour has not argued that the HE subpoena is directed at "purely private" conduct, because it is not. (Dkt. No. 166-4 ¶ 2.)

Even if the Court breaks new ground and recognizes such an exception, it fails against HE for the same reasons as stated for PIF.

## II. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE TOUR HAS FAILED TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION.

***Irrespective of the FSIA analysis, the Tour must establish personal jurisdiction.*** The Tour is wrong (at 7:3-6) that once jurisdiction is shown under FSIA, jurisdiction is "automatic." PIF and HE contested it on the first page of their brief (at 1:26 to 2:2), and the law is to the contrary. *Both* statutory and constitutional requirements must be satisfied to exercise jurisdiction, as the Tour's cases recognize. *See Pebble Beach v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006); *Shapiro v. Rep. of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) ("There is of course a constitutional constraint on the assertion of personal jurisdiction" in addition to FSIA). The Tour's case, *Samantar v. Yousuf*, refers to statutory jurisdiction. 560 U.S. 305, 325 n.20 (2010). Moreover, the relevant statute applies only to "nonjury civil action[s] *against* a foreign state," which this case is not. 28 U.S.C. § 1330.

***PIF's role as foreign investor does not confer personal jurisdiction.*** PIF and HE are not subject to jurisdiction by virtue of their status as beneficial owners of a plaintiff. *See Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) (finding that "it strains reason" to suggest that investment alone subjects the investor to jurisdiction); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (parent-subsidiary tie insufficient). The Tour's claims based on direct contacts and agency fail.

***PIF's and HE's direct contacts are insufficient.*** The Tour relies on three categories of

contacts to argue that PIF and HE have minimum contacts for specific jurisdiction: (i) contacts with US golfers and agents, (ii) contacts with consulting companies, and (iii) purported negotiations on behalf of LIV with US sponsors, broadcasters, and advertisers. None is sufficient.

The Tour mischaracterizes the evidence to claim that PIF and HE "have repeatedly and personally negotiated" with US players and agents. The Tour's evidence actually shows ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Opp. Ex. 1 at 2 (▇▇▇▇▇▇).) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.*, Exs. 18, 20, 39). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.* Ex. 4, 18, 39.) These are not negotiations with prospective players. Other evidence cited by the Tour—including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—have no bearing on the claims. (*Id.* Exs. 14, 17, 38.) None of this is evidence of relevant contacts.

PIF's and HE's contacts with consulting companies and "sponsors, broadcasters, and advertisers" are likewise irrelevant. These companies did not cause LIV to sign up players or the Tour to seek to exclude LIV. They lack nexus to the conduct at issue in the claims. *See Pebble Beach*, 453 F.3d at 1155 (requiring that "the claim arises out of or results from" contacts). The same holds true for emails. The Tour emphasizes PIF's "hundreds of emails" sent to the US (at 13:10-12) but does not show any connection to the claims. Nor is it relevant that PIF or HE made the initial contact with some LIV agents and sponsors. Any relevant conduct would occur after that initial contact, and the information can be obtained from the US parties themselves (LIV, consultants, etc.). PIF and HE acted as *investors*, which is insufficient.

**The Tour's agency arguments fail.** The Tour's agency test is incorrect. Following the Supreme Court decision in *Daimler AG v. Bauman*, 517 U.S. 117 (2014), the law is unsettled whether an agency theory is available for specific jurisdiction. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023-24 (9th Cir. 2017). Nonetheless, courts that have considered an agency theory required a parent company to have "taken over performance of day-to-day operations" of a subsidiary. *In re Cal. Gas. Spot Market Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 4461199,

1  at *2 (N.D. Cal. Sept. 29, 2021). The Tour's cited cases require the same. *See In re Packaged
2  Seafood Prod. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1189 (S.D. Cal. 2017) (same); *In re
3  Hydroxycut Mktg. & Sales Pract. Litig.*, 810 F. Supp. 2d 1100, 1115 (S.D. Cal. 2011) (similar).

   The Tour does not meet this standard. The Tour's evidence amounts to oversight, including ▮▮▮ (Opp. Ex. 7), ▮▮▮ (*Id*. Exs. 4, 5, 12), and ▮▮▮ (*Id*. Exs. 3, 6). PIF does not itself perform these operations; it merely reviews LIV's performance. Indeed, ▮▮▮. (*Id*. at Ex. 44.) ▮▮▮ "he does not perform the operations in question. (*Id*. Exs. 6, 8-11.) PIF does not perform LIV's operations, and personal jurisdiction based on agency fails.[2]

   ***The exercise of jurisdiction would be unreasonable.*** Exercising jurisdiction based on these common investor activities would be an affront to international comity. The Tour's response (at 14:10-11) is premised on misstatements of fact, such as that PIF recruited Tour members or orchestrated this litigation (it did neither, and the Tour has identified no such evidence). Nor did the Tour rebut the showing that producing certain documents would violate the PIF law. The PIF law, attached to HE's declarations, clearly forbids disclosure. (Dkt. No. 166-4, Ex. A art. 17.)

   ***Tag jurisdiction does not apply.*** The Tour does not address that tag jurisdiction does not apply to non-natural persons, such as PIF. *See Ridgeway v. Phillips*, 383 F. Supp. 3d 938, 945 (N.D. Cal. 2019). As to HE, the Tour relies on a *service* stipulation (a stipulation that expressly preserved all objections). (Dkt. No. 148-2 at 19.) Service is not relevant to a doctrine based expressly "on physical presence alone." *Burnham v. Sup. Ct. of Cal., Cnty. Of Marin*, 495 U.S. 604, 619 (1990). HE was not physically present, and tag jurisdiction does not apply.

---

[2] ▮▮▮ (Opp. Ex. 1 at 12.) HE does not negotiate with players, regardless of title. (Dkt. No. 166-4 ¶ 15.)

III. **THE SUBPOENAS SHOULD BE QUASHED AS PATENTLY OVERBROAD AND UNDULY BURDENSOME, ESPECIALLY IN LIGHT OF THE TOUR'S REFUSAL TO MEET-AND-CONFER OR COMPROMISE.**

The Tour's subpoenas to non-parties PIF and HE mirrored the full scope of its subpoena to Plaintiff LIV. As such, they violated every prescription of limited Rule 45 discovery. PIF and HE could not be expected to waive sovereign immunity or jurisdiction. Instead, they asked the Tour about what it actually needs and offered to discuss voluntary compliance. At the meet-and-confer, the Tour's counsel refused to discuss compromise or voluntary production. The Tour buries its response to these points at the end of its brief and says nothing of relevance.

***The Tour fails to justify its refusal to meet-and-confer or narrow the subpoenas.*** The opening brief filed by PIF and HE quoted their multiple offers to make voluntary discovery; showed that the Tour refused to even discuss voluntary production or compromise; and noted that late in the day the Tour "narrowed" a few requests on a cosmetic basis that did not lessen their overbreadth. (OB at 6:1 to 7:18.) The Tour responds (at 1:4-15) by saying (twice) it was "false" that PIF/HE offered voluntary production and even if they did the Tour did not have to accept it; and (at 20:1-8), that PIF/HE only "gestured in the direction of voluntary discovery" but "offered nothing."

*First*, the Tour does not contest that its supposed "narrowing" was cosmetic. Given the overlapping nature of its dozens of requests, the requests withdrawn remained in substance, as it concedes by its silence. *Second*, the Tour's claim that PIF and HE "offered nothing" goes nowhere. PIF and HE's written requests to the Tour to identify its core needs and its offer to discuss voluntary compliance is the in the record. The Tour (again, by its silence) admits that it refused to engage or respond to PIF and HE's multiple invitations to discuss voluntary production. PIF could not discuss voluntary production with itself and there was no way for PIF and HE to guess at what the Tour really wanted or would accept. *Third*, the Tour's argument that it did not have to pursue voluntary production because PIF and HE were unwilling to abandon their sovereign immunity and jurisdictional defenses *at the outset* before discussion could even begin—before the Tour made a single compromise—demonstrates the Tour's view of meet-and-confer as an ultimatum. This argument sits very poorly in the Tour's mouth in any event because it refused (as its silence admits) to discuss ways a voluntary production could be enforced. The record is plain: the Tour refused to

meet-and-confer or to compromise in any way its patently overbroad non-party discovery. Its bullying tactics should not be rewarded.

***The Tour fails to justify the breadth and burden of its subpoenas.*** The opening brief demonstrated that the subpoenas (i) were patently overbroad in their definitions, failed to narrow such broad categories of "professional golfers," and consistently demanded "all documents" (at 19:8 to 21:4); (ii) sought irrelevant discovery, such as PIF's investments (at 19:9 to 22:17, citing dozens of irrelevant demands); (iii) sought discovery readily ascertainable from others, principally LIV (at 22:18 to 23:22, citing dozens of demands); and (iv) sought non-parties' confidential information (at 23:22 to 24:28). The Tour's brief response fails to rebut any of these points.

*First*, the Tour argues that LIV's agreement (before discovery even began) to facilitate discovery from PIF and HE itself demonstrates relevance (at 17:26 to 18:3). No. LIV never indicated it thought discovery of PIF and HE was relevant, and surely not relevant enough to justify the enormous burden of the subpoenas the Tour actually served. At an early conference with the Court, LIV's counsel were acting as good soldiers of the Court to accommodate the Tour's insistence it would seek such discovery, not suspecting at the time the patent overbreadth of the subpoenas the Tour would ultimately serve or its utter refusal to even discuss compromise.

*Second*, the Tour asserts that PIF and HE did not respond to the Tour's arguments that discovery from PIF and HE was relevant because it would cast light on "competitive pricing" and it needed PIF's communications to sponsors, vendors and others (at 18:4-14). The Tour does not explain why competitive pricing is relevant, why these tertiary topics justify the burden imposed, or why discovery from LIV would not satisfy whatever need the Tour has on these topics.

*Third*, the Tour argues its discovery is relevant to its "reputational harm" defense and it properly seeks discovery on Golf Saudi (at 18:15-24). Again, the Tour fails to discuss the limited, if any, relevance of these tertiary topics to the burden imposed on non-parties, or why discovery from LIV would not be sufficient.

*Fourth*, the Tour argues that the information it seeks from PIF and HE is not available from other parties, including LIV (at 18:25 to 19:16). It identifies only *two* topics (PIF's communications with professional golfers, vendors, and broadcasters and the demise of the Premier Golf League).

The Tour again fails to analyze burden-to-relevance but, critically, does not address the many *dozens* of requests that fall outside of *any* topic discussed in the Tour's Motion or Reply (*see* OB at 23:10-11). This is the very offensive discovery taken from LIV; on this record, there is no reason to believe anything meaningful is not available from LIV.

## IV. THE TOUR FAILS TO REBUT TWO OTHER DISPOSITIVE DEFECTS.

### A. The Subpoenas Violate The 100-Mile Rule

The Tour reverts to misdirection because it cannot show that PIF or HE *regularly* transact business *in person* within 100-miles of New York City. As to PIF, the Tour again ignores that the New York City office it alludes to belongs to a PIF *subsidiary*, not PIF. (Dkt. No. 166-4 ¶ 19.) The Tour then argues that "PIF regularly transacts business on New York City's stock exchanges," which is irrelevant. The business must be transacted *in person*. As PIF has shown, neither ownership nor investment suffice. As to HE, the Tour states (at 17:16-18) that "when asked in September 2020 whether he 'come[s] to New York often,' he responded, 'our portfolio companies are [in New York and the United States], so I do go *quite often*.'" Exhibit 41 states in full: "I'm a frequent visitor *to the U.S.—New York, Miami, San Francisco*. Some of our portfolio companies are there, so I do go quite often." This quote is of no value; it contains no specifics of HE's frequency of visits to *New York*, the only venue that matters. The Tour also does not dispute that HE's visits to New York are for one-off events, and hence irregular by definition.

### B. Failure to Tender Fees

The Tour's failure to tender fees invalidated the subpoenas *on their face*, which cannot later be "cured." *See, e.g.*, *Olagues v. Schmidt*, 897 F.2d 533, at *2 (9th Cir. 1990) ("[T]he subpoenas were invalid on their faces, because they stated that no fees were tendered with service of the subpoena"); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983) ("the plain meaning" of Rule 45 "requires simultaneous tendering of witness fees"); *Fujikura Ltd. v. Finisar Corp.*, No. 15MC80110HRLJSC, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015) (quashing subpoena because the subpoenaing party "did not *initially* tender fees") (emphasis added).

## CONCLUSION

PIF and HE respectfully request that the Court grant their joint Motion to Quash.

DATED: December 6, 2022

Respectfully submitted,

By:     */s/ Dominic Surprenant*
JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Non-Parties Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Executed on December 6, 2022.

/s/  Dominic Surprenant
Dominic Surprenant