RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100
Facsimile: 650.801.5100

*Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | CASE NO. CASE NO. 5:22-cv-04486-BLF <br><br> **DECLARATION OF JOHN LOFFHAGEN IN SUPPORT OF SEALING** |

I, John Loffhagen, hereby declare and state:

1. I am the Chief Legal Officer of LIV Golf. I am authorized by LIV Golf to make this statement in support of sealing portions of the PGA Tour, Inc.'s Opposition to Motion to Quash and Reply to Motion to Compel Subpoena Compliance by Non-Parties the Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir Othman Al-Rumayyan and supporting exhibits. I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates. If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

2. Exhibits 1, 2, 25, 26, 44 contains highly confidential information about LIV Golf's formation, valuation, business plan, financial projections, projected returns, and investment risks. Exhibit 2 consists entirely of financial data, while exhibits 1, 25, and 26 contain both financial data and business strategy. Exhibit 44 contains business strategy. LIV Golf goes to great length to keep this information confidential. Disclosure of this information would seriously harm LIV Golf, including by exposing its financial details to the public, prejudicing its ability to obtain future investment, impacting existing and future negotiations (e.g., by exposing ability to pay), including the ability to sign up golf players, and exposing the parties listed in the document to unwanted attention. The information could also be used by the PGA Tour, LIV Golf's competitor whose exclusionary conduct is at issue in this lawsuit, to counter the business strategy and market assessment shown in this document.

3. Exhibits 1, 3-36, and 44 describe LIV Golf's internal corporate decision-making and are highly confidential to LIV Golf. For example, Exhibit 3 describes decision-making around LIV Golf's media strategy and partnerships; exhibit 13 describes decision-making around player fees; exhibit 16 describes decision-making around hiring and negotiating with player agents; exhibit 24 concerns overall business strategy; exhibit 27 describes communications strategy; and exhibit 33 describes sponsorship strategy and priorities. LIV Golf goes to extensive lengths to keep this information confidential. Disclosure of this information would cause competitive harm to LIV Golf by allowing competitors (such as the PGA Tour) to exploit the information to counter LIV Golf. For example, competitors could attempt to offer better non-financial terms or target the same sponsors, agents, or media members that LIV Golf seeks to recruit. They could also develop recruiting strategies

specifically intended to counter LIV Golf's.  Disclosure would also expose the third-party firms identified in the documents (such as in exhibit 31) to unwanted attention.

4. Exhibits 13, 16-19, 22-23, and 32-36 describe specific negotiations with players, agents, sponsors, and marketing firms, which includes specific amounts offered, the terms of the offers, and strategy for recruitment and hiring.  LIV Golf goes to great lengths to keep this data confidential. Disclosure would harm LIV Golf by impacting existing and future negotiations.  For example, future sponsors, agents, players, and service providers could demand the same or better terms than the ones shown and cabin LIV Golf's ability to negotiate different terms.  Competitors (such as the PGA Tour) could also exploit the information to offer better terms on particular metrics and counter LIV Golf's proposals, which are otherwise confidential.  Disclosure of this information would allow competitors to counter LIV Golf's entry in the relevant markets and cause competitive harm.

5. Exhibits 7 and 37 describe LIV Golf's investor structure and oversight.  LIV Golf goes to great lengths to keep this information confidential.  Disclosure of this information would cause competitive harm.  For example, exhibit 7 describes how LIV Golf's progress is evaluated by investors, which could be targeted by competitors to drive down investment in LIV.  Exhibit 37 describes LIV Golf's ownership structure, which is not widely known and which could be exploited to target the individuals and entities shown to influence LIV Golf.  Disclosure would also expose the investors and entities identified in the documents to unwanted attention.

6. The PGA Tour's memorandum of law quotes and describes these exhibits and would cause the same harm if disclosed.  For example, lines 1:21, 3:3-5, and 18:22-24 describes specific investment details, including corporate structure, investment amount, and risk allocation of the investment, which implicates the harms described in paragraphs 2.  Lines 3:10-18, 3:22-25, 4:9, -4:11, 10:17-27, 12:14-16, 12:21-23, and 13:24-14:4 describe LIV Golf's internal decision making processes and implicate the harms described in paragraph 3.  Lines 4:14-5:1, 5:5-21, 6:4-5, 6:10-18, 6:22-26, 8:22-9:1, 11:26-12:4, 12:7-9, 12:11, 13:7, and 13:24-14:4 describe specific negotiations with players, agents, and sponsors and implicate the harms described in paragraph 4, as well as those described in paragraph 3.  Lines 1:21, 3:3-5, 10:17-18, 10:21-27, 16:8-9 and 16:11-17 describe internal corporate governance and implicate the harms described in paragraph 5.

7. The following table summarizes that harm that could result from disclosure:

| Document | Harm From Disclosure |
|---|---|
| Memorandum of Law at lines 1:21, 3:3-5, and 18:22-24<br><br>Exhibits 1, 2, 25, 26, 44 | Competitive harm from exposure of LIV Golf's financials, formation details, valuation, business plan, financial projections, projected returns, and investment risks. |
| Memorandum of Law at lines 3:10-18, 3:22-25, 4:2-11, 10:17-27, 12:14-16, 12:21-23, and 13:24-14:4<br><br>Exhibits 1, 3-36, and 44 | Competitive harm from exposure of internal decision-making processes, including strategy regarding communications, player and agent recruitment, and sponsorships. |
| Memorandum of Law at lines 4:14-5:1, 5:5-21, 6:4-5, 6:10-18, 6:22-26, 8:22-9:1, 11:26-12:4, 12:7-9, 12:11, 13:7, and 13:24-14:4<br><br>Exhibits 13, 16-19, 22-23, and 32-36 | Competitive harm from exposure of specific negotiations with players, agents, sponsors, and marketing firms, including specific amounts offered, the terms of the offers, and strategy for recruitment and hiring. |
| Memorandum of Law at lines 1:21, 3:3-5, 10:17-18, 10:21-27, 16:8-9 and 16:11-17<br><br>Exhibits 7 and 37 | Competitive harm from exposure of investor structure and oversight procedures, including the identities of LIV Golf's investors and procedures used to evaluate their investment in LIV Golf. |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on December 9, 2022.

                                             /s/ John Loffhagen
                                             John Loffhagen

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from the signatory to this document.

Executed on December 9, 2022.

/s/ Rachel Brass
Rachel Brass