RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOHN B. QUINN, SBN 090378
johnquinn@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: 213.443.3000
Facsimile: 213.443.3100

ROBERT P. FELDMAN, SBN 069602
bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs* LIV Golf, Inc., Matt Jones, Bryson DeChambeau, and Peter Uihlein

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | Case No. 5:22-cv-04486-BLF-SVK <br><br> **JOINT STATEMENT REGARDING PLAINTIFF'S INTERROGATORIES NOS. 4-6** <br><br> Judge:  Hon. Susan van Keulen <br><br> Dept.:  Courtroom 1, 5th Floor <br><br> Date Filed: August 3, 2022 <br><br> Trial Date: January 8, 2024 |

PGA TOUR, INC.,

                Counter-Plaintiff,

   v.

LIV GOLF, INC.,

                Counter-Defendant.

Defendant PGA Tour, Inc. ("the Tour") and Plaintiff LIV Golf Inc. ("LIV Golf") jointly submit this statement pursuant to the Court's Civil and Discovery Referral Matters Standing Order. LIV Golf believes that the Tour is improperly refusing to answer Plaintiff's Third Set of Interrogatories, Numbers 4 through 6 ("ROGs 4-6"). Pursuant to the Court's Order Following October 24, 2022 Discovery Hearing, ECF No. 140, Defendant was ordered to respond to portions of LIV Golf's First Set of Interrogatories, Number 1 ("ROG 1"), and Plaintiff was to serve certain additional interrogatories to supplement the information it sought through ROG 1. Plaintiff served LIV Golf's Second Set of Interrogatories on October 25, 2022, to which the TOUR has responded. *See* Plaintiff LIV Golf Inc.'s Expedited Second Set of Interrogatories ("ROGs 2-3"). On October 26, 2022, Plaintiff served a third set of interrogatories (containing ROGs 4-9) on the Tour. On November 25, 2022, the Tour served its responses and objections. The Tour and LIV Golf met and conferred by video conference on December 1, 2022 and through prior and subsequent correspondence. There are 81 days until the close of fact discovery on March 3, 2023.

## I.     PLAINTIFF'S POSITION

The Tour has refused to substantively respond to Plaintiff's ROGs 4-6, arguing that it has satisfied its Interrogatory obligations entirely through its response to ROG 1. *See, e.g.*, Exhibit B at 8-9 ("[T]he Court made clear that the parties need to move past Interrogatory No. 1 and seek use different discovery devices to identify the requested communications. In light of the foregoing objections, the TOUR will not answer this Interrogatory."). Those interrogatories seek discovery of information related to communications by the Tour's Board members (ROG 4), Player Relations Representatives (ROG 5), and those speaking or acting at the Tour's direction (ROG 6) about the Tour's response to LIV Golf. None of these is the subject of the Tour's response to ROG 1; indeed, as interpreted by the Tour, none of these was responsive to ROG 1 at all. The Tour's refusal to answer ROGs 4-6 is thus unfounded, and would result in the Tour *concealing* information that is highly relevant to LIV's claims. It is nonsensical to suggest that the Court's order granting LIV's motion to compel a response to ROG 1, and the follow-on ROGs 2-3, absolved the Tour from having to meaningfully respond to any additional interrogatory requests about other types of anti-competitive or collusive communications by individuals *not* within the scope of ROGs 1-3.

The Tour has further indicated that any additional discovery on the topics covered by ROGS 4-6 must occur solely through document discovery and depositions. That approach is inconsistent with the Federal Rules, which plainly authorize LIV Golf to ask interrogatories that seek information of this nature. (Indeed, the Tour itself has asked interrogatories of this nature that are much broader than these targeted interrogatories.) Moreover, forcing LIV Golf to rely primarily on document discovery would result in the Tour's concealing of information known to it and relevant to the case. This is because, as shown in the Tour's document production, the Tour rigorously *avoided* creating a paper trail of these communications because it wanted to conceal discovery of them. PGA_TOUR0018387 (PGA Tour Chief Media Officer Rick Anderson suggesting that a European Tour employee " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "). Accordingly, having adopted a policy of communicating orally, the Tour should not be heard to argue that it need only respond with documents. Similarly, LIV Golf should not be forced to pursue these facts solely through depositions. That would result in LIV Golf hunting blindly through depositions, discovering relevant information only by happenstance if it happens to ask the right question to the right witness—and at a great waste of limited deposition time even if it happens to stumble across the right question of the right witness. The bottom line is that all of the information sought in these interrogatories is *known to the Tour*. It was Tour directors, Tour employees, and others acting at the Tour's direction that made these communications. All of these communications are relevant to the litigation. And there is no sense in which the burden of answering these questions outweighs the importance of this discovery in this case. The Tour should not be permitted to hide this information.

Nor did the Court say anything to absolve the Tour of responding. To the contrary, at the hearing on October 24, 2022, the Court explicitly recognized that Plaintiff could serve additional interrogatories seeking information of this nature. *See* Hr'ing Tr. 10/24/2022 at 26:21-25 (stating that if Plaintiff "want[ed] an interrogatory that relates to the – you know, the directors, if you want to follow up as to the people identified in interrogatory 1, who is talking to directors, to whom did

they speak and in what year, you can serve that as well tomorrow."). LIV Golf did so, but now the Tour refuses to answer. The Court further recognized that the parties agreed to, and the Court approved, "the standard limit on interrogatories," allowing for up to 25 Interrogatories per party. *Id.* at 15:10-17; ECF 92 at 4:19-20. At no point did the Court suggest that ROG 1, and the subsequent follow-on Interrogatories the Court helped craft, constituted the full universe of potential interrogatories about communications with respect to LIV Golf that the Tour had an obligation to answer. Instead, the Court specifically noted that LIV Golf could "drill down again through an interrogatory" to seek, for example, further information related to communications with directors. *Id.* at 17:12-17. The Court further stated that its intention was "not necessarily to foreclose additional information pursuant to this interrogatory and certainly not as to follow-on interrogatories." *Id.* at 12:8-10.

ROGs 4-6 were drafted consistent with that guidance. Thus, in ROG 4, LIV Golf seeks communications that the PGA Tour is aware of made by its Directors related to LIV Golf. *See* Exhibit A. The Tour argued this information was not responsive to ROG 1, so LIV Golf served a more tailored request seeking different information. And LIV Golf has good cause to believe there is, in fact responsive information, because the Tour prepared talking points for the PGA Tour Chairman to send to other board members about issues relevant to this litigation. *See* PGA_TOUR0009948. Moreover, documents produced by third parties make clear that the Tour's directors are central actors in the Tour's anticompetitive scheme: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ANI-LIV-00011839. Yet despite this smoking gun evidence, the Tour refuses to answer ROG 4. If those conversations occurred, and the Tour is aware of them, they are responsive. It is inefficient and unnecessary to require depositions of all of the Tour's directors if, for example, the Tour is aware only one had such discussions; and, if those discussions were oral (as talking points suggest), they will not be discoverable through third-party subpoenas. Thus an interrogatory is an appropriate and tailored means to discover the requested information.

ROG 5 is similarly tailored. It seeks information related to communications between the Tour's Player Relations Representatives and professional golfers regarding LIV Golf. *See* Exhibit A. Based on the Tour's org chart, there are 5 such individuals, none of whom were within the scope of ROG 1. For example, LIV Golf is aware that individuals in the Player Relations division communicated with players regarding LIV Golf at the pro-am before the 2022 Byron Nelson PGA Tour Tournament. *See* PGA_TOUR0007297. If other Player Representatives were similarly involved in attempting to dissuade players from joining LIV Golf, such information should be discoverable. And because the Tour only agreed to make ONE of the current Player Representatives a document custodian, that is not a viable path to discovering this information.

Finally, ROG 6 seeks to understand if there are others known to the Tour who were asked to work as proxies, agents, or otherwise in communicating with others with respect to LIV Golf. *See* Exhibit A. The Tour has argued that various communications by third parties at the Tour's request somehow don't matter, because the speakers were not agents of the Tour or authorized to speak on its behalf (taking an extremely narrow definition of who was "authorized" to speak on behalf of the Tour). But the Tour is artfully dodging the question about individuals it asked to speak with third parties about LIV. For example, LIV Golf is aware that the Tour prepared talking points ▮▮▮▮▮ *See* PGA_TOUR0008166. The Tour did not identify these conversations ▮▮▮, and it seeks to shield them entirely from discovery, even though they are plainly relevant to the issues in this litigation. Nor did the Tour identify its requests to ▮▮▮ regarding LIV Golf. *See* ANI-LIV-00011839 ▮▮▮▮▮). If this information was responsive to ROG 1, the Tour should have provided it there; and if it was not responsive to ROG 1, the Tour should provide it in response to ROG 6. But there is simply no legitimate reason that has been offered to conceal this information in toto.

As noted, the Tour also objects that the Directors, Player Relations Representations, and other third parties, like Tiger Woods, were not agents of the Tour. But that is not the topic of LIV's discovery. The question here is not, for example, whether Directors are always agents of the

company, but as to whether these Directors were acting at the Tour's direction or request. Whether that request is then binding on the Tour is a factual question to be resolved by the jury at trial. *See Rookard v. Mexicoach*, 680 F.2d 1257, 1261 (9th Cir. 1982) ("the question of whether an 'agency' existed is a question of fact, for the jury's resolution"); *ING Bank, FSB v. Chang Seob Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010) (same); *Javitch v. Simply Solar*, 2020 WL 13547896 at *4 (N.D. Cal. May 8, 2020) (same); *see also* Hr'ing Tr. 10/24/2022 at 8:10-15 (the question of who is "authorized" is for the finder of fact). If the Tour refuses to tell LIV when it asked or directed someone to do something, as opposed to "when someone was its agent," LIV is left with nothing but the Tour's say-so. The very purpose of discovery is to allow for the probing and impeachment of those representations. And, because Defendant has made clear it will not supplement its ROG 1 response, even when the Plaintiff identifies missing information, Plaintiff served the more tailored ROGs 4-6 to target particular groups of individuals who made relevant communications.

Finally, the problem with the Tour's refusal to answer ROGs 4-6 is worsened by its broader discovery positions. It insists Plaintiff must seek communications through document discovery, but then refuses to produce those documents. For example, LIV Golf's Request for Production 95 seeks documents from Player Representatives to professional golfers or their representatives related to LIV Golf. The Tour has *refused* to produce documents in response to this request that are not within the scope of prior document requests, or agreed custodians. It has simply stonewalled at every turn.

The Court articulated as a "guiding principle" that identifying "which communications took place, oral and in writing; and at least the framework of those communications . . . to the extent it exist . . . is in the knowledge of the folks associated with the Tour. So the Tour has that information and LIV has asked for it so it needs to be imparted. There is no hiding the ball at this level." Hr'ing Tr. 10/24/2022 30:24-31:9. The Defendant's refusal to answer ROGs 4-6 is plainly an effort to hide the ball. With respect to timing, Plaintiffs request that the Tour's time to provide a complete response be expedited and shortened by three days, because the Tour took five days to provide its response to Plaintiffs' portion of the joint letter (in contrast to the two-day turnaround the Tour has demanded when it raises issues). This was after the Tour took 30 days to respond to the Interrogatories but provided no substantive information at all in response to ROGs 4-6.

## II.     PGA TOUR'S POSITION

In response to LIV's prior interrogatories and the Court's guidance, the TOUR has identified persons authorized to speak on its behalf regarding subjects relevant to this litigation, detailed the recipient and timing of those communications, and produced responsive written communications following a reasonable search. Unsatisfied with these significant efforts, LIV now seeks to relitigate discovery previously rejected by the Court and seeks to far exceed the permissible scope of interrogatories under Rule 33, particularly in accelerated discovery such as this.

ROGs 4 and 5 seek information regarding the actions of third parties or those not authorized to speak on the TOUR's behalf and are a transparent end-run around the Court's rulings on ROG 1 rejecting such overbroad discovery on precisely these topics. LIV has already served third parties with subpoenas, obtained broad document discovery from the TOUR (now substantially complete), and has 150 deposition hours to question TOUR employees and third parties. Any permissible discovery covered by ROGs 4 and 5 may be obtained through those processes.

ROG 6 seeks the type of overbroad, open-ended make-work that the Court expressly declined to order when it adjudicated the ROG 1 dispute. ROG 6 improperly conflates three materially distinct categories of information: (1) communications by those authorized to act on the TOUR's behalf made to third parties on agreed-upon issues reasonably relevant to LIV's claims; (2) communications by those same persons on issues *beyond* those reasonably relevant to LIV's claims; and (3) communications by those *not* authorized to speak on the TOUR's behalf. To the extent ROG 6 seeks discovery regarding those authorized to act on the TOUR's behalf (Category 1), LIV already received the requested information in earlier discovery responses. But to the extent it seeks information regarding information beyond that reasonably relevant to its claims (Category 2) or from individuals not authorized to speak for the TOUR (Category 3), ROG 6 is wildly overbroad, unduly burdensome, and unnecessary given the minimal relevance of the requested information and other means of discovery available to LIV.

These disputed interrogatories must be viewed in the context of the significant discovery the TOUR has already provided LIV. The TOUR not only identified 31 individuals authorized to speak on its behalf (the "Identified Persons") and provided responsive information in its amended responses to ROGs 1-2, but also collected, reviewed and produced documents responsive to ROG 1 from the files of the 19 Identified Persons (in addition to 14 custodians) prior to the substantial completion deadline. These responses provide LIV all the discovery it needs (and to which it is entitled) at this stage. Nevertheless, despite having fully briefed and argued the propriety and proper scope of interrogatories related to communications with third parties, LIV raises yet more disputes regarding information it sought as part of its original, overbroad ROG 1. The Court should reject LIV's attempts to weaponize the interrogatory process, so that proper discovery on core issues may move forward in this expedited case.

**Argument**: The TOUR has complied with the Court's directives regarding ROG 1 and related follow-on discovery, comprehensively answered ROGs 2-3, and produced hundreds of thousands of pages of documents, providing LIV with more than enough information to review and pursue with depositions and other discovery devices. The TOUR should not be compelled to answer ROGS 4-6 because they are extremely overbroad, unduly burdensome, revisit discovery sought but not obtained in its prior motion to compel, and blatantly disregard the Court's directives regarding an efficient framework for discovery. The TOUR remains willing to answer reasonable interrogatories that adhere to the Court's framework, but it will not allow the interrogatory process to be manipulated in a manner that serves no purpose other than to burden the TOUR.

Each interrogatory at issue lacks merit for the following reasons:

ROG 4: ROG 4 seeks identification of and details regarding "*every*" communication that the Independent Directors (*not* the TOUR) had with anyone else about LIV or its predecessors. The Directors are by definition *independent*, and not controlled by the TOUR. Because the Independent Directors are third parties, if ROG 4 were somehow appropriate—and it is not—the TOUR could not compel them to respond because it does not control them. LIV's discovery statement ignores this fatal deficiency, and none of its other arguments can overcome it.

LIV disingenuously suggests that the TOUR refuses to answer any interrogatory or is withholding evidence about TOUR communications with the Independent Directors. This is false. LIV ignores that it already raised the issue of communications with and by the Directors at the October 24 hearing. *See* Oct. 24 Tr. at 10:18-11:17. The Court properly limited responses to communications between those authorized to speak on behalf of the TOUR regarding LIV and the Directors. *See id*. at 17:13-22 ("[T]here are many paths to get information from the directors. . . . but if LIV wants to drill down again through an interrogatory, that is one way to do it . . . It would be interrogatory number 3 if, in fact, you just move down this path, which . . . would be for everyone who was authorized to speak on behalf of the Tour . . .").

Following the hearing, LIV served ROG 3 as part of its Second Set of Interrogatories, requesting that "[f]or each Identified Person [among the 31 in the TOUR's amended response to ROG 1], identify each member of the Board of Directors with whom the Identified Persons had oral communications with respect to any of the Subject Matters and the year(s) of such communication(s)." The TOUR provided this information for all 31 Identified Persons as part of its response to ROG 3. ROG 4 is nothing more than a thinly veiled attempt to add the Directors to the list of 31 Identified Persons and obtain discovery from them as if they are parties, which the Court made clear was not appropriate. *See id.* at 17:12-17:22. In any event, as a result of the TOUR's response to ROG 3, LIV has ample topics of discovery to pursue with the Independent Directors and has pursued that information through document and deposition subpoenas to the these very individuals.

ROG 5: With ROG 5, LIV is transparently attempting—*for the third time*—to add the entire Player Relations Group to the list of Identified Persons, even though the Court has rejected the prior two attempts. The first time LIV tried was when the entire Player Relations Group was included in LIV's "compromise" proposal of 83 individuals for ROG 1. *See generally* ECF No. 112. At the October 14 Discovery hearing, the Court made it clear that such a proposal was inappropriate and should be narrowed to those with authority to speak on behalf of the TOUR. *See* Oct. 14 Discovery Hr'g Tr. at 17:16-17 (indicating that LIV's "compromise" list of 83 individuals was still too broad); *see also* Oct. 24 Tr. at 5:21-6:1 ("[W]e have made progress. . . . I'm pleased to see that. We have gone from org charts of 80 some odd numbers . . . [to] 31.").

The second time occurred when LIV disputed the omission of the Player Relations

4

representatives in its portion of the parties' joint submission regarding the TOUR's Amended Response to ROG 1 in advance of the October 24 hearing. *See* ECF No. 133 at 1-2. But when LIV attempted to relitigate the scope of ROG 1 at the hearing, claiming that it was "skeptical that that 31-person list is thorough," the Court made it clear that the parties needed to move on. *See* Oct. 24 Tr. at 10:4-9. The Court's subsequent comments further confirm that the scope of ROG 1 is limited to the list of 31 Identified Persons who were authorized to speak on behalf of the TOUR regarding LIV and its predecessors. *See id*. at 17:24-18:2 (discussing the framework for ROG 3 and explaining that "we are trying to get some framework around people and dates and we are dealing with a group of 30 or 31, which is a substantial improvement over 80").

LIV notes that not all of the Player Relations Group was included in the Court-narrowed scope of ROG 1 (although VP of Player Relations and TOUR custodian Phil Marburger was), as if that supports its position, but ignores the fact that the Court specifically rejected precisely this type of interrogatory directed at these individuals. LIV's attempt to relitigate the Court's clear guidance from the previous discovery hearings by adding the Player Relations Group to the list of Identified Persons through the guise of ROG 5 should be denied.

ROG 6: ROG 6 is wildly overbroad, hopelessly attenuated, and far exceeds the scope of the allegations in the First Amended Complaint. Going well beyond seeking the identity of those who were authorized by the TOUR to speak to others, it broadly seeks discovery about anyone the TOUR might have asked to speak with others about LIV, regardless of whether that person would be speaking on behalf of the TOUR or on matters reasonably relevant to LIV's claims.

Specifically, ROG 6 asks the TOUR to "[i]dentify any Person whom **You** requested, encouraged, directed, instructed, or assisted . . . to Communicate to **any other Person** about LIV or any other Subject Matter," with "You" defined as not only the TOUR, but also all of its employees, affiliates, partners and representatives (among many other categories) (emphasis added). By ROG 6's plain language, the TOUR would be required to interview all of its employees—more than 1000—and all of the other categories of individuals and entities included in the definition of "You," an extremely burdensome, if not impossible task. And, as with ROGs 4-5, LIV already raised this type of communication before the Court and the Court rejected it as duplicative of ROG 1. *See* Oct. 24 Tr. at 9:4-9:11 (Counsel for LIV: "I think we just have a fundamental disagreement about . . . if they go and ask Tiger Woods to make a presentation on their behalf to people if that is an authorized person or not." The Court: "Well, but [the communication] from the authorized person to Tiger Woods will show up [in the ROG response]. I mean, we will toss this out a little bit. We will get some of these communications identified. So that first one will show up; right?").

But even if the universe of individuals whom the TOUR had to interview were narrowed to, for example, the 31 Identified Persons, the rest of ROG 6 is similarly overbroad and not at all tailored to lead to relevant information. It seeks details about any possible conversations—not limited to the subjects challenged in the complaint—that third parties may have had about LIV. The Court made it clear at the October 14 hearing that an open-ended interrogatory that seeks communications about LIV with any person would be prohibited. *See* Oct. 14 Tr. at 35:13-17 ("The subcategory Q in [ROG 1] for basically anybody else not excluded by this question, I will strike that in a heartbeat. If you come back to me and that is a hangup, because that is just – we're not going there. Don't do that."). Such overbroad discovery is a fishing expedition on immaterial issues that will result in delays and disputes when the parties should be focused on finalizing document productions and depositions.

In response to ROG 1, the TOUR has already identified who was authorized to speak on behalf of the TOUR with sponsors, vendors, broadcasters, other tours, golf bodies such as the OWGR and the Majors, golfers, and agents. To use LIV's example of Tiger Woods, if one of the TOUR employees identified in response to ROG 1 had a communication with Woods on one of the agreed-upon subjects for discovery, that communication has been noted and, if written, a reasonable search has been conducted for it. As for the talking points LIV cites, while LIV claims that the TOUR is attempting to "shield" such communications from discovery, the TOUR plainly produced the document in question, which, for the avoidance of doubt, was an internal TOUR document, and as a result, not responsive to ROG 1. *See* PGA_TOUR0008166. As such, LIV already has the information it claims it needs. If LIV wishes to pursue other immaterial communications, it may do so during depositions. But if the parties are to move to this next stage of discovery in a timely manner, LIV must move past serving overbroad interrogatories on attenuated issues that will

inevitably result in unnecessary disputes.

Dated: December 12, 2022                              GIBSON, DUNN & CRUTCHER LLP

By: _____/s/ *Rachel S. Brass*_____

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
  shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
  jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
  klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs Talor Gooch, Hudson Swafford, Matt Jones, Bryson DeChambeau, Ian Poulter, Peter Uihlein, and LIV Golf Inc.*

Dated:  December 12, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By:   /s/ Anthony J. Dreyer
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ANTHONY J. DREYER - (admitted *pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (admitted *pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (admitted *pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:     212 735 3000
Facsimile:     212 735 2000

|   |   |
|---|---|
| 1 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| 2 | PATRICK FITZGERALD - (admitted *pro hac vice*) |
|   | patrick.fitzgerald@skadden.com |
| 3 | 155 North Wacker Drive |
|   | Chicago, IL  60606 |
| 4 | Telephone:       312 407 0700 |
|   | Facsimile:        312 407 0411 |

KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:       415 391 5400
 Facsimile:        415 397 7188

*Attorneys for Defendant*
*PGA TOUR, INC.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: December 12, 2022        /s/    *Rachel S. Brass*
                                                    Rachel S. Brass