1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

   MICKELSON ET AL,                 )   CV-22-4486-BLF
5                                    )
                        PLAINTIFF,   )   SAN JOSE, CALIFORNIA
6                                    )
            VS.                      )   DECEMBER 16, 2022
7                                    )
   PGA TOUR, INC.,                   )   PAGES 1-32
8                                    )
                        DEFENDANT.   )
9                                    )
   _____  )
10
                   TRANSCRIPT OF PROCEEDINGS
11         BEFORE THE HONORABLE BETH LABSON FREEMAN
                  UNITED STATES DISTRICT JUDGE
12

13                   A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:      **BY:  RACHEL S. BRASS**
                               GIBSON DUNN & CRUTCHER LLP
16                             555 MISSION STREET, SUITE 3000
                               SAN FRANCISCO, CA 94105
17

18     FOR THE DEFENDANT:      **BY:  ELLIOT PETERS**
       PGA TOUR                     **NICHOLAS GOLDBERG**
19                             KEKER, VAN NEST & PETERS LLP
                               633 BATTERY STREET
20                             SAN FRANCISCO, CA 94111

21

22          APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

1        APPEARANCES CONTINUED:

2        FOR THE PLAINTIFF:       **BY:  SCOTT HVIDT**
                                  GIBSON DUNN
3                                 2001 ROSS AVENUE, SUITE 2100
                                  DALLAS, TX 75201
4
         FOR THE PLAINTIFF:       **BY:  DOMINIC SURPRENANT**
5                                     **KEVIN TERUYA**
                                  QUINN EMANUEL URQUHART & SULLIVAN
6                                 865 S. FIGUEROA STREET, 10TH FL
                                  LOS ANGELES, CA 90017
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              SAN JOSE, CALIFORNIA              DECEMBER 16, 2022

 2                        P R O C E E D I N G S

 3         (COURT CONVENED AT 10:00 A.M.)

 4              THE CLERK:  OKAY.  WE ARE GOING TO BE CALLING THE

 5      MICKELSON VERSUS PGA CASE MANAGEMENT CONFERENCE.  AND I WOULD

 6      ASK THAT REGISTERED COUNSEL PLEASE RAISE YOUR HANDS.

 7              I DO HAVE QUITE A FEW OF YOU REGISTERED, AND WE WANT TO

 8      KEEP THE TILES DOWN TO A MINIMUM, SO I'M GOING TO ASK ONLY

 9      THOSE THAT INTEND TO ADDRESS THE COURT RAISE THEIR HANDS,

10      PLEASE.  AND IF YOU WOULD ACCEPT THE INVITATIONS TO JOIN.

11              AND COUNSEL, IF YOU WOULD ENGAGE YOUR VIDEOS, PLEASE.

12              OKAY, YOUR HONOR, I BELIEVE WE ARE READY TO BEGIN.

13              THE COURT:  GOOD MORNING, EVERYONE.  THANK YOU FOR

14      JOINING ON ZOOM. LET'S CALL THE CASE AND GET YOUR APPEARANCES.

15              SOME OF YOU I HAVE NOT MET YET ON THE CASE, ALTHOUGH I

16      HAVE NO DOUBT YOU HAVE BEEN WORKING HARD.

17              THE CLERK:  CALLING CASE 22-4486.  MICKELSON, ET AL.

18      VERSUS PGA TOUR, INCORPORATED.

19              COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES.  AND

20      IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANTS.

21              (PLAINTIFF COUNSEL SPEAKING, BUT MUTED.)

22              THE COURT:  WHO HAVE I GOT HERE APPEARING FOR

23      PLAINTIFF?

24              MR. BRASS:  GOOD MORNING, YOUR HONOR.

25              RACHEL BRASS FROM GIBSON, DUNN & CRUTCHER.  I'M JOINED BY
```

1       MY COLLEAGUE FROM GIBSON DUNN, SCOTT HVIDT.

2               MR. SURPRENANT:  GOOD MORNING, YOUR HONOR.

3           DOMINIC SURPRENANT OF QUINN EMANUEL, AND I'M JOINED BY MY

4       PARTNER, KEVIN TERUYA.

5               THE COURT:  GOOD MORNING.

6               MR. PETERS:  GOOD MORNING, YOUR HONOR, AND HAPPY

7       HOLIDAYS.

8           ELLIOT PETERS, ALONG WITH MY PARTNER, NICK GOLDBERG FOR

9       THE PGA TOUR.

10              THE COURT:  GOOD MORNING.

11          ALL RIGHT.  WELL, THIS IS NOT THE HOLIDAY GREETING I WAS

12      ANTICIPATING OR WELCOMING, BUT I HAVE READ YOUR VERY DETAILED

13      JOINT STATEMENT.  I APPRECIATE HAVING YOU BRING ME UP TO SPEED

14      ON THE DISCOVERY.  OF COURSE I DON'T HEAR ALL OF THOSE MOTIONS,

15      SO IT WAS VERY HELPFUL TO ME.

16          THIS IS PGA'S TOUR'S REQUEST TO MODIFY THE SCHEDULE.  IT

17      APPEARS THAT THE PLAINTIFFS -- AND I GUESS WE NEED TO RENAME

18      THIS CASE, DON'T WE.  I DON'T KNOW WHETHER YOU WANT US TO START

19      CALLING IT LIV GOLF, OR USE ONE OF THE INDIVIDUAL'S NAMES.  WE

20      WILL GET TO THAT AT THE END.

21          SO MR. PETERS, DO YOU WANT TO START, SINCE IT APPEARS THAT

22      YOU'RE THE ONE WHO IS ASKING FOR THIS MODIFICATION?

23              MR. PETERS:  SURE, YOUR HONOR.

24          THANK YOU VERY MUCH, AND THANK YOU FOR HEARING US ON SUCH

25      SHORT ORDER.

1          YOU KNOW, YOUR HONOR MENTIONS THE NAME, AND THAT'S A GOOD

2     PLACE TO START, BECAUSE -- BUT FOR A SUBSTANTIVE REASON.  WHEN

3     WE WERE BEFORE YOU AND THIS SCHEDULE WAS SET ON AUGUST 18TH,

4     AND BACK IN EARLY AUGUST WHEN WE HEARD A TRO APPLICATION, THIS

5     WAS A CASE BROUGHT BY GOLFERS.  IT WAS BROUGHT BY PLAYERS, AND

6     THE TRO WAS BASED ON THE EXIGENCIES OF THE PLAYERS.  I THINK

7     THE PLAINTIFF SAID THIS IS A CASE ABOUT PLAYERS NOT BEING ABLE

8     TO PLAY GOLF.  THE COURT TOOK THAT VERY SERIOUSLY.  WE

9     UNDERSTOOD THAT AND SET A VERY, VERY AGGRESSIVE SCHEDULE, AND

10    THAT HAPPENED ON AUGUST 18TH.

11         ON AUGUST 26TH, OF COURSE, THE REAL PLAINTIFF, WHO WAS

12    BEHIND THIS THING FROM THE BEGINNING, EMERGED, BECAUSE THIS WAS

13    ALL OBVIOUSLY PLANNED, AND LIV JOINED THE CASE.  AND THEN ON

14    THE DAY BEFORE THEIR DISCOVERY RESPONSES WERE DUE, ALL BUT

15    THREE OF THE PLAINTIFFS, THE GOLFERS, THE INDIVIDUALS DEPARTED

16    THE CASE.  SO IT'S NOW QUITE A DIFFERENT CASE THAN IT WAS

17    ORIGINALLY.

18         AND THE COURT MAY OR MAY NOT, BUT MAY WANT TO REVISIT THE

19    NEED FOR THIS EXTREMELY AGGRESSIVE SCHEDULE ON THE EXIGENCIES

20    OF THE THEME THAT THE PLAINTIFFS WERE PRESENTING WAS, DON'T

21    STOP GOLFERS FROM PLAYING GOLF.

22         WELL, NOBODY IS STOPPING ANYBODY FROM PLAYING GOLF, AND

23    LIV IS DOING JUST GREAT, ACCORDING TO THEM.  THEY HAVE AN

24    EXPANDED SCHEDULE FOR NEXT YEAR, THEY'RE OVERFLOWING WITH

25    GOLFERS WHO WANT TO JOIN THEIR ROSTERS, AND THEY'RE DOING

1      GREAT, SO THE EXIGENCIES MAY WELL HAVE GONE AWAY.

2           BUT WHAT WE HAVE IS A VERY DIFFICULT SITUATION.  AND I

3      THINK THE PLAINTIFFS AGREE WITH US THAT THE CURRENT SCHEDULE IS

4      UNWORKABLE.  THEY ACKNOWLEDGE THAT THE DISCOVERY CUTOFF HAS TO

5      BE MOVED A COUPLE OF MONTHS.  AND SO WHAT WE ARE REALLY TALKING

6      ABOUT IS WHAT THE IMPLICATIONS OF THAT ARE FOR THE REST OF THE

7      SCHEDULE.

8           AND IT'S JUST -- YOU KNOW, I DON'T THINK IT'S HELPFUL TO

9      THE COURT TO ENGAGE IN FINGER POINTING.  WE CAN IF YOU WANT TO,

10     BUT I'M NOT HERE TO DO THAT.  IT'S JUST THERE'S SO MUCH TO BE

11     DONE.  THE OWNER -- LIV IS A FAIRLY NEW ENTITY.  THE OWNERS OF

12     LIV, PERFORMANCE 54, AND PIF, THE SAUDI INVESTMENT FUND, WERE

13     INVOLVED IN SETTING THIS UP AND USING SOMETHING CALLED PROJECT

14     WEDGE, BEFORE THERE WAS A LIV.  SO IT'S CRITICAL THAT WE GET

15     DISCOVERY FROM THEM ABOUT THEIR ACTIVITIES, THEIR PLANS, THEIR

16     EXPECTATIONS, THEIR BUDGET, AND SO ON.  AND SO FAR, WE HAVE

17     BEEN COMPLETELY STONEWALLED ON THAT.

18          SO NOBODY HAS TAKEN A DEPOSITION YET, THERE'S STILL

19     DOCUMENTS TO BE PRODUCED, THERE'S FINGER POINTING, WHICH WE ARE

20     NOT GOING TO ENGAGE IN.  AND WE NEED -- WE ARE JUST GOING TO

21     NEED MORE TIME.

22          SOME OF THE BACK END OF THIS SCHEDULE OBVIOUSLY WAS SET BY

23     THE COURT BASED ON THE COURT'S NEEDS AND REQUIREMENTS, IN TERMS

24     OF TIMING FOR SUMMARY JUDGEMENT MOTIONS AND IN LIMINE MOTIONS.

25     WE UNDERSTAND THAT VERY CLEARLY, AND NEEDLESS TO SAY, ARE AND

1    HAVE TO BE COMPLETELY DEFERENTIAL TO THE COURT'S NEEDS IN THAT

2    REGARD, BUT WE ALL AGREE WE ARE GOING TO NEED MORE TIME TO DO

3    THE DISCOVERY.

4         THE PLAINTIFF'S PROPOSED SCHEDULE, WHICH HAS THE DISCOVERY

5    ENDING, AND TWO BUSINESS DAYS LATER, OUR FILING A SUMMARY

6    JUDGEMENT MOTION, AND SUBSTANTIAL OVERLAP BETWEEN FACT AND

7    EXPERT DISCOVERY IN THIS CASE DOESN'T MAKE ANY SENSE.

8         THEY CITE A MEDICAL MALPRACTICE CASE FOR THE AUTHORITY

9    THAT THAT WORKS, BUT THIS IS AN ANTITRUST CASE WHERE THE

10   EXPERTS ARE GOING TO BE IMPORTANT, AND THE EXPERTS ON DAMAGES

11   AND ANTITRUST ISSUES ARE GOING TO NEED TO DIGEST THE FACTS.

12   AND WE DON'T EVEN KNOW WHEN THESE DEPOSITIONS ARE GOING TO TAKE

13   PLACE.

14        SO ON HOW THE SCHEDULE WORKS FOR THE COURT, I'M GOING TO

15   COMPLETELY DEFER TO YOUR HONOR.  THE PARTIES ARE IN AGREEMENT

16   THAT WE'VE GOT TO MOVE THIS DISCOVERY CUTOFF BACK

17   SUBSTANTIALLY.  WE SAY THREE MONTHS, THEY SAY TWO MONTHS.  I

18   THINK THEY ARE BEING OVERLY AMBITIOUS.  WHETHER THIS TRIAL DATE

19   CAN HOLD, IS SOMETHING THAT WE CAN OR CAN'T ADDRESS TODAY,

20   THAT'S UP TO THE COURT.  BUT I THINK SOME OF THE EXIGENCIES

21   HAVE CHANGED.

22        AND WHAT WE MOST WANT, ON BEHALF OF THE PGA TOUR, WE

23   RECOGNIZE OUR DISCOVERY OBLIGATIONS, WE ARE WORKING VERY HARD

24   TO FULFILL THEM.  WE NEED ACCESS TO THE DISCOVERY THAT WE NEED.

25        THERE'S A LOT OF INTERNATIONAL DISCOVERY THAT THE

1    PLAINTIFFS WANT.  THEY'VE PURSUED HAGUE REQUESTS.  THERE ARE

2    INTERNATIONAL PLAYERS THAT RELATE TO THE ANTITRUST CLAIMS IN

3    THIS CASE.  AND BY INTERNATIONAL PLAYERS, I MEAN INTERNATIONAL

4    ENTITIES.

5         IT MAY BE UNREALISTIC TO GET ALL THIS DONE, GIVEN THE NEED

6    TO GET FOREIGN EVIDENCE AND PRODUCE A LOT OF DOCUMENTS,

7    INCLUDING FROM A LOT OF THIRD PARTIES WHO HAVE BEEN SUBPOENAED,

8    AND THEN TAKE A BUNCH OF DEPOSITIONS.  AND SO WE'VE ASKED FOR

9    WHAT WE'VE ASKED FOR, MINDFUL OF THE COURT'S DIRECTIVE THAT WE

10   BE PREPARED TO WORK REALLY HARD TO GET THIS DONE.

11        WE STILL THINK THAT'S AMBITIOUS, BUT TO THEN TO SORT OF --

12   FOR THE PLAINTIFFS TO AGREE AND SAY, OH YEAH, WE'VE GOT TO MOVE

13   BACK DISCOVERY SUBSTANTIALLY, BUT LET'S KEEP ALL THE DEADLINES

14   THE SAME, AND JUST KIND OF JAM EVERYBODY, IN TERMS OF EXPERT

15   DISCOVERY AND SUMMARY JUDGEMENT MOTIONS, I DON'T THINK THAT

16   MAKES SENSE.

17        AND AT THE END OF THE DAY, I DON'T THINK THAT'S GOING TO

18   BE HELPFUL TO THE COURT, BECAUSE THERE'S A LOT OF WORK, THERE'S

19   A LOT OF FACTS, THERE'S A LOT OF LEGAL ISSUES, AND WE NEED TO

20   TEE THEM UP FOR THE COURT IN A WAY THAT WORKS FOR YOUR HONOR.

21        SO THAT'S OUR POSITION.  WE THINK OUR SCHEDULE IS THE MOST

22   AGGRESSIVE ONE THAT IS REALISTIC AT THIS POINT IN TIME, AND WE

23   DON'T THINK THAT PLAINTIFF'S PROPOSAL MAKES SENSE, ALTHOUGH WE

24   DO APPRECIATE THEIR ACKNOWLEDGEMENT THAT WE'VE GOT TO HAVE A

25   COUPLE OF EXTRA MONTHS FOR DISCOVERY, AT A MINIMUM.

1          THANK YOU, YOUR HONOR, FOR HEARING FROM US.

2              THE COURT:  AND BEFORE I HEAR FROM THE PLAINTIFFS, I

3      WILL ONLY COMMENT THAT YOUR SCHEDULE MOVING THE SUMMARY

4      JUDGEMENT HEARING MEANS THAT I WOULD BE GLAD TO DECIDE SUMMARY

5      JUDGEMENT AFTER THE VERDICT IS RENDERED BY THE JURY, WHICH

6      WOULD BE A ONE LINE ORDER SAYING IT IS NOW MOOT.  YOU HAVE

7      JAMMED ME, AND THAT'S SOMETHING WE WILL NEED TO TALK ABOUT.

8          LET ME HEAR FROM THE DEFENDANTS.  MS. BRASS, ARE YOU

9      TAKING THE LEAD ON THIS?

10             MS. BRASS:  I AM.  THANK YOU, YOUR HONOR.

11         SO AS I'M SURE YOU CAN IMAGINE, WE DISAGREE, RESPECTFULLY,

12     WITH MR. PETERS.

13         FIRST OF ALL, THIS CASE IS STILL ABOUT PLAYERS WHO ARE

14     BEING EXCLUDED FROM THE OPPORTUNITY TO PLAY GOLF.  THERE ARE

15     THREE PLAYERS ACTIVELY PURSUING THIS LITIGATION, THEY ARE

16     JOINED BY LIV GOLF, BUT THEIR INTERESTS ARE EXTREMELY REAL.

17             AND TO GET TO THE QUESTION YOU ASKED AT THE BEGINNING, WE

18     THINK THAT THE CASE SHOULD BE RENAMED AFTER MR. JONES, WHO

19     REMAINS IN THE CASE.

20             THE COURT:  OKAY.

21             MS. BRASS:  WE ALSO DISAGREE, OF COURSE, ON THE

22     EXIGENCIES.  THEY ARE NOT BETTER, THEY ARE WORSE.

23         SINCE THIS LAWSUIT WAS FILED, THE TOUR CONTINUES ITS

24     BRAZEN CAMPAIGN TO EXCLUDE LIV FROM FAIR COMPETITION TO

25     NEGOTIATE EXCLUSIVE AGREEMENTS THAT BLOCK LIV FROM ACCESSING

1    TALENT, AND IT APPEARS INCREASINGLY, ARE ENGAGED IN A BROAD

2    RANGE OF COLLUSIVE CONDUCT, FAR WORSE THAN WHAT IS ALLEGED IN

3    OUR COMPLAINT.

4        THAT INCLUDES A MEETING AS RECENTLY AS LAST WEEK, BROADLY

5    PUBLICIZED BETWEEN THE TOUR, THE EUROPEAN TOUR, THE R&A, THE

6    USGA, THE PGA OF AMERICA, AND POSSIBLY OTHERS, TO "DRAW UP

7    PLANS ON HOW TO RESPOND TO LIV."

8        THAT'S HOW IT WAS REPORTED IN THE *SPORTS BUSINESS JOURNAL*

9    AND *TELEGRAPH*.  WE ARE, OF COURSE, SEEKING DISCOVERY OF WHAT

10    HAPPENED THERE.  I'M SURE THE TOUR WILL HAVE THEIR VIEW, BUT

11    THIS WAS JUST LAST WEEK.

12        AND OTHER EVENTS CONTINUE TO EVOLVE, CONTINUE TO PRESS.

13    JUST THIS WEEK, THE TOUR ANNOUNCED THAT IT HAD REACHED

14    AGREEMENTS LOCKING UP THE KOREAN PROFESSIONAL GOLF ASSOCIATION,

15    THE KOREAN TOUR, TO AN EXCLUSIVE AGREEMENT THAT BANS IT FROM

16    WORKING WITH LIV AND BANS ITS PLAYERS FROM PLAYING WITH LIV.

17    THIS FOLLOWS AN AGREEMENT REACHED AFTER THE TRO HEARING WITH

18    THE JAPAN GOLF TOUR, WHICH DOES EXACTLY THE SAME THING.

19        AND AS I MENTIONED AT THE TOP, WE HAD ALLEGED COLLUSION

20    ABOUT PLAYER BANS IN OUR COMPLAINT, BUT DISCOVERY HAS REVEALED

21    IT APPEARS TO BE MORE AND APPEARS TO BE ONGOING.  COLLUSION

22    ABOUT PRICES, WAGES AND COMPENSATION TO BE PAID FOR PLAYERS,

23    COLLUSION ABOUT OUTPUT, HOW MUCH GOLF WILL OCCUR, WHEN IT WILL

24    OCCUR.

25        ALL OF THIS ONGOING ANTICOMPETITIVE CONDUCT IS WRONGFUL,

1    IT HARMS US DAILY.  OUR PLAYERS WANT THE ABILITY TO FAIRLY SELL

2    THEIR SERVICES, AND LIV WANTS A FAIR LANDSCAPE TO COMPETE.

3         AND SO OF COURSE THE TOUR WANTS TO DENY THAT JUDGMENT DAY.

4    BUT TO OUR VIEW, THE EXIGENCIES ARE WORSE, NOT BETTER THAN WHEN

5    WE FILED THE COMPLAINT.

6         WHICH BRINGS US TO MR. PETERS'S COMMENT THAT WE AGREE THAT

7    THE SCHEDULE PROPOSED IS UNWORKABLE.  HAD HE JOINED THE MEET

8    AND CONFER, HE WOULD KNOW THAT'S NOT CORRECT.  WE BELIEVE THE

9    SCHEDULE ORDERED IS AMPLE, BUT WE ARE INTERESTED IN COMPROMISE,

10   AND SO OFFERED THE BEST WE COULD DO THAT PRESERVED THE DATES

11   THAT WE THOUGHT WERE CRITICAL THAT THE COURT HAD ESTABLISHED,

12   KEEPING OUR CURRENT TRIAL DATE, THE SUMMARY JUDGEMENT DEADLINE,

13   AND THE PRETRIAL CONFERENCE.

14        WE ARE CERTAINLY HAPPY TO WORK WITH THE TOUR IF IT

15   BELIEVES IT NEEDS MORE TIME, BUT WE DO BELIEVE MANY OF THE

16   COMPLAINTS THEY RAISE ARE OVERSTATED.  THERE ARE AMPLE MONTHS

17   BETWEEN NOW AND MARCH 3RD.  WE OFFERED MARCH 5TH AS THE END OF

18   DISCOVERY BECAUSE THEY SAID THEY NEEDED LOTS OF TIME.  BUT WE

19   ALSO SAID IF THAT JAMS THEM TOO MUCH ON EXPERTS, WE COULD AGREE

20   ON LATE MARCH OR MID-APRIL, OR A DIFFERENT DAY OF THEIR

21   CHOOSING THAT PRESERVED THE SUMMARY JUDGEMENT DEADLINE.

22        MR. PETERS SAYS HE DOESN'T KNOW WHEN DEPO'S WILL HAPPEN.

23   WELL, HE HASN'T ASKED.  WE ARE HAPPY TO SIT DOWN WITH THE TOUR

24   LATER THIS AFTERNOON, EARLY NEXT WEEK, IN JANUARY.  THEY CAN

25   GIVE US THE NAMES OF WHO THEY WANT TO DEPOSE, WE CAN START TO

1   GET DATES FOR THEM.

2        WE CAN DO THE SAME WITH PEOPLE WE WANT TO DEPOSE.  WE HAVE

3   ALL NOTICED SCORES OF THIRD PARTY SUBPOENAED DEPOSITIONS.

4   THERE'S SIMPLY NO REASON, IN THE THOUSANDS OF HOURS BETWEEN NOW

5   AND MARCH, APRIL OR MAY, WE CAN'T WORK TOGETHER TO ACCOMPLISH

6   THIS DISCOVERY.

7        A COUPLE OF OTHER POINTS MR. PETERS MADE.  HE ACCUSES PIF

8   AND P54 OF STONEWALLING DISCOVERY.  THIS IS OBVIOUSLY SOMETHING

9   THE PARTIES DISAGREE ON.  IF THERE ARE QUESTIONS,

10  MR. SURPRENANT CAN ANSWER THEM ABOUT PIF AND P54, BUT AS STATED

11  IN THE CMC STATEMENT, I KNOW MR. PETERS, HE DIDN'T WANT TO

12  FINGER POINT, AND I DON'T EITHER, BUT WE THINK ON THESE ISSUES,

13  THE TOUR HAS BEEN ITS OWN WORST ENEMY TO DATE.

14       AND FOR PIF, P54, FOR EXAMPLE, A UK COMPANY, AS OF

15  DECEMBER 15TH OR 16TH, THERE'S STILL NO LETTERS ROGATORY BEING

16  PURSUED, THERE'S STILL NO INTERNATIONAL PROCESS BEING PURSUED.

17  WE BELIEVE THE TOUR HAS NOT WORKED TO ADVANCE ITS OWN

18  INTERESTS.

19       NOW MR. PETERS SAID IT WOULD JUST BE IMPOSSIBLE TO DO

20  EXPERT DISCOVERY ON THE DATES AS WE PROPOSED, BUT AS WE STARTED

21  TO LAY OUT IN OUR CMC STATEMENT, WE THINK THAT IS ILL SUITED TO

22  THIS CASE.  SURE, WE CITED A MEDICAL MALPRACTICE CASE IN OUR

23  STATEMENT, BUT WE CAN JUST LOOK AT THE RECORD HERE, WHERE

24  DR. ISRAEL, AN EXTREMELY ACCOMPLISHED EXPERT, SUBMITTED A

25  53-PAGE EXPERT REPORT IN AN OPPOSITION TO A TRO.

1    DR. LEITZINGER IS ALSO EXTREMELY ACCOMPLISHED.  AND WE BELIEVE

2    THEY, OR ANYONE ELSE OF THEIR CALIBER, WHO ANY OF THE PARTIES

3    IS GOING TO RETAIN, IS A PROFESSIONAL, AS PROFESSIONAL AS ANY

4    OF THE 20 LAWYERS WHO HAVE APPEARED FOR THE TOUR IN THIS CASE.

5    THEY CAN GET THEIR WORK DONE QUICKLY.

6         BUT EVEN MORE THAN THAT, THIS IS NOT A CASE ABOUT A CARTEL

7    THAT ENDED OR A BUSINESS PRACTICE THAT ENDED OR A CAR ACCIDENT,

8    IT'S ABOUT CONDUCT THAT IS AND WILL CONTINUE, AND A MARKET THAT

9    WILL CHANGE, RIGHT UP TO THE DATE THAT WE EMPANEL A JURY AND

10   RIGHT UP TO THE DATE THAT THE EXPERTS TAKE THE STAND.

11        AND SO IT'S NOT A DATE WHERE WE NEED A MAGICAL END TO

12   DISCOVERY TO INFORM THEIR REPORTS.  I THINK WE ALL NEED TO

13   ACKNOWLEDGE THAT THIS IS GOING TO BE FLUID, HOW THE EXPERTS

14   RENDER THEIR OPINIONS IS GOING TO CHANGE, AND THE NEED FOR

15   ABSOLUTE FINALITY AND CERTAINTY IN HOW THE EXPERTS APPROACH

16   THEIR OPINIONS IS JUST TOTALLY UNSUITED TO THE KINDS OF

17   LITIGATION THAT WE HAVE IN FRONT OF US.

18        BUT AGAIN, WE ARE VERY HAPPY TO END DISCOVERY MARCH 30TH

19   OR APRIL 15TH, OR WHATEVER DATE IT IS, IF MR. PETERS BELIEVES

20   DR. ISRAEL, AND ANY OTHER EXPERTS THAT ARE RETAINED, NEED MORE

21   TIME TO LOOK AT THE EVIDENCE.  WE TEND TO THINK DR. ISRAEL AND

22   DR. LEITZINGER ARE VERY COMPETENT AND THEY WILL FIND A WAY TO

23   GET IT DONE, WHATEVER THE COURT ORDERS.

24        I THINK THAT IS ALL THE ISSUES THAT MR. PETERS RAISED.

25        YOU KNOW, IN CLOSING, YOUR HONOR, WE ARE HAPPY TO WORK ON

1    A SCHEDULE THAT MEETS THE COURT'S NEEDS, THAT MEETS THE TOUR'S

2    NEEDS, AND AS WE SAID IN OUR STATEMENT, WE THINK THIS IS ALL

3    ABOUT MOVING THE TRIAL DATE, AND THAT TRIAL DATE SHOULD STAND.

4              THE COURT:  WELL, THANK YOU.  THAT'S --

5              MR. PETERS:  YOUR HONOR, MAY I RESPOND VERY BRIEFLY?

6              THE COURT:  SURE.

7              MR. PETERS:  IN LISTENING TO MS. BRASS, I'M REMINDED

8    OF THE COMMENTS MADE BY HER PARTNER, MR. WALTERS, GIVING THE

9    COURT ASSURANCES ON AUGUST 18TH WHEN WE RAISED OUR CONCERNS

10   ABOUT GETTING DISCOVERY FROM THE SAUDI ENTITIES.

11             AND SINCE WE ARE NOT GOING TO ENGAGE IN FINGER POINTING,

12   BUT I GUESS WE ARE, THEY TOLD YOUR HONOR THAT IT WOULD GO

13   SWIMMINGLY, THAT THEY WOULD BE COOPERATIVE, THAT THEY TOLD US

14   THAT THEY AGREED TO ACCEPT SERVICE OF A SUBPOENA, AND THEN THEY

15   CHALLENGED SERVICE, THEY CHALLENGED JURISDICTION.  THEY HAVEN'T

16   PRODUCED A SINGLE DOCUMENT.

17             THEY CLAIM OH, THEY PRODUCED DOCUMENTS VOLUNTARILY.  THEY

18   HAVEN'T PRODUCED A THING, AND THAT ISN'T HOW DISCOVERY IS DONE.

19   YOU DON'T SAY TO THE OTHER SIDE, OH, WHAT DOCUMENTS WOULD YOU

20   LIKE TO GIVE US?  WE NEED TO BE ABLE TO COMPEL THEM TO GIVE US

21   RELEVANT DOCUMENTS, AND THEY HAVE MERCILESSLY PLAYED GAMES WITH

22   US, FORCING US TO GO TO NEW YORK, RAISING EVERY ARGUMENT THEY

23   COULD THINK OF, INCLUDING IMPROPER SERVICE AFTER THEY AGREED TO

24   ACCEPT SERVICE.

25             PERFORMANCE 54 REALLY IS CONTROLLED BY LIV.  LIV SHOULD BE

1      PRODUCING THEIR DOCUMENTS.  BUT PERFORMANCE 54 AND PIF, THE

2      SAUDI -- A SOVEREIGN WEALTH FUND, ARE THE REAL PARTIES IN

3      INTEREST BEHIND LIV.  LIV IS A BUSINESS THEY SET UP TO DO THIS

4      WORK.

5           AND SO WE CAN'T -- MS. BRASS SAYS WE WILL SIT DOWN AND

6      SCHEDULE DEPOSITIONS.  I'M SURE THEY WOULD LOVE TO SCHEDULE

7      DEPOSITIONS UNDER CIRCUMSTANCES WHERE THEY HAVE PREVENTED US

8      FROM GETTING THE DOCUMENTS AND THE COMMUNICATIONS, BUT THAT'S

9      JUST NOT FAIR.

10          AND THE LAST THING I WANT TO SAY, BECAUSE IT IS REALLY SO

11     SHAMELESS, THIS THING THEY PUT IN THEIR STATUS CONFERENCE

12     STATEMENT, THEIR CMC STATEMENT, AND WHICH MS. BRASS MENTIONED

13     THIS MORNING, THAT THERE WAS A MEETING LAST WEEK THAT THE PGA

14     TOUR PARTICIPATED IN, SOME COLLUSIVE NATURE, THEY ARE RELYING

15     ON A PRESS STORY THAT THEY PLANTED IN THE PRESS.  THERE WAS NO

16     MEETING.  THE PGA TOUR COMMISSIONER WASN'T EVEN AT THAT EVENT.

17     IT IS COMPLETE FICTION.

18          SO THEY ARE TELLING YOU INFORMATION ABOUT THESE ONGOING

19     COLLUSIVE EVENTS BASED ON A NEWS ARTICLE THAT THEY PLANTED,

20     WHICH I CAN ASSURE THE COURT IS CATEGORICALLY FALSE.

21          SO LET'S STOP THE FINGER POINTING, LET'S GET BACK TO THE

22     SCHEDULE.  WE CAN'T TAKE DEPOSITIONS IN JANUARY AND FEBRUARY,

23     WE DON'T HAVE THE DOCUMENTS, BECAUSE THEY HAVEN'T COOPERATED

24     WITH US.  LIV HAS EXISTED FOR A SHORT PERIOD OF TIME.  THE REAL

25     PARTIES IN INTEREST OF THESE OTHER ENTITIES THAT THEY

1    REPRESENT, WHO THEY COME INTO THE COURT AND THEY SAY WE WILL BE

2    ALL COOPERATIVE, IT'S GOING TO GO SWIMMINGLY, AND THE SECOND

3    THAT YOUR HONOR PRESSES THE EXIT BUTTON ON THE ZOOM PROGRAM,

4    THEIR TUNE COMPLETELY CHANGES AND THEY STONEWALL US.  AND

5    THAT'S WHAT THEY HAVE DONE, AND THE RECORD ESTABLISHES THAT.

6              MR. SURPRENANT:  YOUR HONOR, MAY I ADDRESS THE PIF

7     ISSUE?

8              THE COURT:  HOLD ON ONE SECOND, MR. SURPRENANT.

9         TIFFANY, I THINK MR. WALTERS IS TRYING TO JOIN, AND IF WE

10    COULD ASSIST THAT, THAT WOULD BE GREAT.

11             THE CLERK:  I DID SEND HIM AN INVITATION TO JOIN

12    ORIGINALLY, AND I DID SEE HE JUST TOOK HIS HAND DOWN.  LET ME

13    TRY -- I WILL GIVE HIM THE OPTION TO JOIN.

14             THE COURT:  GOOD.  ALL RIGHT.

15        MR. SURPRENANT, LET ME HEAR FROM YOU.

16             MR. SURPRENANT:  THANK YOU, YOUR HONOR.

17        WHAT HAPPENED WITH PIF IS RATHER DRAMATICALLY DIFFERENT

18    THAN COUNSEL FOR THE TOUR HAS REPRESENTED.

19        I CAN GO THROUGH THE FACTS THAT ARE UNDISPUTED, I HAVE

20    WRITTEN THEM IN BRIEFS, AND THE TOUR HASN'T DISPUTED THEM.

21        WHAT HAPPENED IS SHORTLY AFTER THAT CMC, MY COLLEAGUE, MY

22    PARTNER, MR. QUINN, WROTE TO COUNSEL FOR THE TOUR AND SAID HEY,

23    LET'S START TALKING ABOUT PIF AND THE DISCOVERY YOU WANT.  WE

24    WERE EAGER TO WORK OUT SOMETHING VOLUNTARILY.  AND HE DIDN'T

25    GET A RESPONSE.

1    WELL, I'VE KNOWN JOHN FOR A LONG TIME, HE'S PRETTY

2    PERSISTENT, HE SENT ANOTHER E-MAIL, AND HE SAID HEY, I DIDN'T

3    HEAR ANYTHING, PLEASE LET ME KNOW, LET'S SIT DOWN AND DISCUSS

4    WHAT PRODUCTION, WHAT DOCUMENTS YOU WANT FROM PIF.  AND HE

5    DIDN'T GET A RESPONSE, FOR THE SECOND TIME.

6    HE THEN GOT A SORT OF RESPONSE, HE GOT TWO SUBPOENAS, WE

7    GOT TWO SUBPOENAS ABOUT TEN DAYS LATER, WITH 161 CATEGORIES OF

8    PRODUCTION.

9    SO MY COLLEAGUE, MR. TERUYA AND I, WE ASKED TO SPEAK WITH

10   COUNSEL FOR THE TOUR TO SEE IF WE COULD MEET AND CONFER AND DO

11   WHAT MR. QUINN HAD TRIED TO DO, WHICH IS TO COME TO SOME KIND

12   OF AGREEMENT ON WHAT COULD BE PRODUCED.

13   THE COURT:  BUT MR. SURPRENANT, I HAVE TO INTERRUPT

14   HERE.

15   I APPRECIATE THAT THE PARTIES ARE TRYING TO WORK

16   COOPERATIVELY, BUT THERE'S A BIG DIFFERENCE FROM TRYING A CASE

17   BASED ON WHAT YOUR OPPONENT WANTS YOU TO SEE, AND TRYING A CASE

18   BASED ON WHAT THEY ARE LEGALLY OBLIGATED TO PRODUCE.

19   I'M SYMPATHETIC TO MR. PETER'S CIRCUMSTANCE.  I UNDERSTAND

20   THAT BEFORE JUDGE VAN KEULEN, YOU HAVE RAISED SOME ISSUES OF

21   SOVEREIGNTY AND OTHER ISSUES REGARDING RESPONDING TO A

22   SUBPOENA.  AND I'M STILL HOPEFUL THAT WORKING WITH

23   JUDGE VAN KEULEN, YOU CAN FIND AWAY TO ASSURE THE DEFENDANTS

24   THAT THEY ARE GETTING THE DOCUMENTS THAT THEY ARE ENTITLED TO

25   AS IF IT WERE A SUBPOENA AND IT HAD THE SAME FORCE AND

1       CONSEQUENCES AS IF IT WERE A SUBPOENA.

2            BUT YOUR GOOD WILL IN SAYING YOU WILL PRODUCE DOCUMENTS

3       ONLY GOES SO FAR, BECAUSE MR. PETERS IS STILL GOING TO BE

4       TRYING A CASE BASED ON WHAT YOU DEEM -- NOT YOU PERSONALLY,

5       WHAT YOUR CLIENT DEIGNED TO LET HIM SEE.

6                 MR. SURPRENANT:  MAY I ADDRESS THAT, YOUR HONOR?

7                 THE COURT:  SURE.

8                 MR. SURPRENANT:  BECAUSE THAT WAS NOT OUR INTENT.

9                 THE COURT:  I'M SURE IT'S NOT YOUR INTENT, BUT THAT'S

10      THE EFFECT OF IT, MR. SURPRENANT.

11                MR. SURPRENANT:  LET ME EXPLAIN WHY, RESPECTFULLY, WE

12      DIFFER.

13                THE COURT:  OKAY.

14                MR. SURPRENANT:  AND IT GOES TO HOW THIS PROCESS HAS

15      WORKED.

16           SO THEY SERVED THEIR SUBPOENA, 161 REQUESTS, AND WE ASKED

17      TO MEET AND CONFER, AND WE WERE TOLD THAT THEY WOULD NOT

18      DISCUSS ANY COMPROMISE AT ALL UNLESS WE AGREED TO WAIVE AND

19      GIVE UP OUR JURISDICTIONAL DEFENSES, PERSONAL JURISDICTION AND

20      SOVEREIGN IMMUNITY.

21           MR. TERUYA TRIED TO ENGAGE IN DISCOVERY, I TRIED TO ENGAGE

22      IN A DISCUSSION, IT WOULD NOT HAVE BEEN A QUESTION, YOUR HONOR,

23      AND IT WASN'T OUR INTENT, TO MAKE IT A QUESTION.  HERE IS WHAT

24      WE ARE WILLING TO PRODUCE.  THE QUESTION WAS, WHAT IS IT OUT OF

25      ALL OF THIS MASSIVE 161 REQUESTS, THAT YOU REALLY WANT TO

1    PRODUCE.  IF WE DRAFTED IT IN A WAY AS TO SUGGEST THAT IT WAS

2    WHAT WE WOULD BE WILLING TO DEIGN TO PRODUCE, THAT WAS NOT OUR

3    INTENT.

4            THE COURT:  I HAVE REAL CONCERN ABOUT THE POTENTIAL

5    GAP BETWEEN YOUR PROFESSIONAL RESPONSIBILITY AS A CALIFORNIA

6    LAWYER VERSUS A FOREIGN ENTITY'S OBLIGATIONS, AND EVEN THEIR --

7    AND AS TO WHETHER THERE IS GOING TO BE A GAP BETWEEN WHAT THEY

8    THINK THEIR OBLIGATION IS AND WHAT YOUR ABILITY TO DO A GOOD

9    FAITH INVESTIGATION TO MAKE SURE THE DOCUMENTS HAVE BEEN TURNED

10   OVER.

11       I THINK IT'S -- I THINK IT -- I THINK THESE ARE ISSUES YOU

12   HAVE TO WORK OUT WITH JUDGE VAN KEULEN.  I DON'T MEAN TO

13   SUGGEST I'M RULING ON THIS, BUT I DO UNDERSTAND THE COMPLEXITY

14   HERE.

15           AND QUITE FRANKLY, I NOTE THAT THIS MOTION IS WORKING ITS

16   WAY WITH JUDGE VAN KEULEN, IT MAY ALREADY BE UNDER SUBMISSION

17   WITH HER, AND SHE WILL ISSUE -- I DON'T KNOW HOW COMPLEX THE

18   MATTER IS BEFORE HER, SHE WILL ISSUE AN ORDER AS SOON AS SHE

19   CAN.

20           OBVIOUSLY, IT'S THE HOLIDAY SEASON ALMOST, BUT I ALSO HAVE

21   A REAL CONCERN THAT THERE WILL BE A WINNER AND A LOSER IN HER

22   ORDER, AND THAT LOSER IS GOING TO BEAT A PATH TO MY DOOR TO TRY

23   TO OVERTURN THAT DECISION.  SO WE HAVE SOME TIMING ISSUES HERE

24   THAT I'M CONCERNED ABOUT.

25           MR. SURPRENANT:  I HEAR YOU.  I HEAR YOU LOUD AND

1    CLEAR, YOUR HONOR.  I DO THINK IT WAS JUST TO FINISH THE POINT.

2              THE COURT:  OKAY.

3              MR. SURPRENANT:  IT WAS OUR INTENT TO ENGAGE IN A

4    SUBSTANTIVE DIALOG WITH COUNSEL FOR THE TOUR, WHAT IS IT YOU

5    REALLY WANT TO SEE FROM PIF?  AND THAT CONVERSATION WAS

6    UNFORTUNATELY -- THE DOOR WAS SHUT, THERE WAS NO DISCUSSION.

7         AND I DO THINK, YOUR HONOR, IF THE PGA TOUR HAD TAKEN A

8    DIFFERENT APPROACH, WE WELL COULD HAVE COME TO COMPROMISE.  BUT

9    YOU CAN'T COME TO COMPROMISE IF THE OTHER SIDE WON'T TALK.  WE

10   TRIED, YOUR HONOR.

11             THE COURT:  ALL RIGHT.  SO --

12             MR. PETERS:  YOUR HONOR, I DON'T KNOW IF IT'S

13   HELPFUL --

14             THE COURT:  I DON'T QUITE UNDERSTAND WHY YOU WEREN'T

15   WILLING TO ACCEPT WHAT THEY WERE WILLING TO GIVE YOU, AND ON A

16   PARALLEL TRACK CONTINUE WORKING ON YOUR SUBPOENAS, SO THAT YOU

17   CAN AT LEAST GET STARTED.

18             MR. PETERS:  I WILL TELL YOU EXACTLY WHY, YOUR HONOR.

19        I PARTICIPATED IN THOSE DISCUSSIONS WITH MR. QUINN

20   ORIGINALLY.  WE DIDN'T IGNORE HIM.  WE WORKED OUT A STIPULATION

21   THAT THEY WOULD ACCEPT SERVICE OF A SUBPOENA.  BUT WE WENT BACK

22   AND FORTH BECAUSE WE WANTED TO MAKE SURE THERE WAS NO MONKEY

23   BUSINESS ABOUT IT, AND THEY AGREED TO ACCEPT SERVICE OF THE

24   SUBPOENA AS IF THEY WERE SERVED IN THE UNITED STATES, AND NOW

25   THEY CLAIM THAT THERE WAS NO TAG JURISDICTION, AND SO IT'S AS

1        IF THEY WEREN'T SERVED IN THE UNITED STATES.

2            THEN THEY SERVED ON US A DETAILED SET OF OBJECTIONS.  THEY

3    RESPONDED, REQUEST BY REQUEST, AND AS TO EVERY SINGLE REQUEST,

4    THEY SAID THE COURT LACKS JURISDICTION, AND WE ARE IMMUNE UNDER

5    SOVEREIGN IMMUNITY FROM HAVING TO RESPOND.

6            AND SO THEN WE MET AND CONFERRED, AND I PARTICIPATED IN

7    THAT PHONE CALL, AND I SAID, IS IT YOUR POSITION THAT THE COURT

8    LACKS JURISDICTION TO ENFORCE ANY AGREEMENT WE MAKE OR ANYTHING

9    THAT HAPPENS HERE, BECAUSE IF YOU TAKE THE POSITION THAT THE

10   COURT LACKS JURISDICTION AND THAT YOU ARE IMMUNE FROM THE

11   COURT, THEN HOW CAN WE WORK OUT AN AGREEMENT IN WHICH WE CAN

12   FEEL THAT WE HAVE ANY ASSURANCE THAT YOU ARE GOING TO PRODUCE

13   TO US ANYTHING OTHER THAN WHAT YOU WANT?

14           AND THEY SAID, WELL, WHY DON'T YOU TELL US WHAT YOU WANT.

15   AND WE SAID, WE WANT YOU TO BE COMPELLED TO PRODUCE DOCUMENTS.

16   WE ARE WILLING TO NEGOTIATE ABOUT THE SCOPE OF THEM, AND IF WE

17   NEED TO -- WE DID NARROW IT, WE ELIMINATED SOME OF THE

18   REQUESTS, AND WE WERE WILLING TO DISCUSS WITH THEM, NARROWING

19   THE SUBPOENA.  BUT WHAT WE MADE VERY CLEAR, OR AT LEAST TRIED

20   TO MAKE VERY CLEAR, WAS THAT IT HAD TO BE ENFORCEABLE, THAT A

21   VOLUNTARY, OH, WE WILL GIVE YOU SOME STUFF, APPROACH TO THIS,

22   WASN'T GOING TO BE SATISFACTORY TO US, FOR EXACTLY THE REASONS

23   THAT THE COURT HAS INDICATED, BECAUSE THEN WE WOULD HAVE

24   NOTHING OTHER THAN THE PURPORTED GOOD WILL OF THE SAUDI

25   GOVERNMENT IN DECIDING WHAT TO GIVE US, AND THAT JUST WASN'T

1    GOING TO BE ENOUGH.

2         AND THEY WERE STEADFAST IN SAYING THE COURT LACKS

3    JURISDICTION.  WE SAID, WELL THEN WE ARE GOING TO MAKE SOME

4    AGREEMENT, WHICH IS ENTIRELY VOLUNTARY, WE HAVE NO ABILITY TO

5    ENFORCE IT, AND THEN WE SHOULD -- WE ARE GOING TO HAVE TO GO TO

6    COURT.  SO THAT'S WHAT HAPPENED.

7              THE COURT:  SO MR. PETERS, IT DOES SEEM TO ME THAT --

8    AND IT'S BASED ON WHAT YOU JUST SUGGESTED -- THAT IF LIV GOLF

9    IS CONTROLLED BY THESE ENTITIES, THEN LIV GOLF IS THE ENTITY

10   THAT SHOULD BE PRODUCING THESE DOCUMENTS.  AND THEIR FAILURE TO

11   DO SO MAY GIVE YOU GROUNDS FOR SEEKING A TERMINATING SANCTION

12   ON SOME OF THE CLAIMS BEING BROUGHT.

13        THERE MAY JUST BE OTHER WAYS TO SKIN THIS CAT, AND IT'S

14   UGLY AND IT'S AGGRESSIVE, YOU KNOW, BUT THAT'S WHAT THIS

15   LITIGATION IS ALL ABOUT.

16        AND I'M NOT GOING TO -- I'M NOT GOING TO SPIN MY WHEELS

17   AND HAVE THE COURT HELD HOSTAGE BY THESE DISCUSSIONS.  YOU

18   KNOW, IF -- BECAUSE JUST AS I SAID THAT THE LOSER WILL BEAT A

19   PATH TO MY DOOR, I AM ONLY THE WEIGH STATION TO THE

20   NINTH CIRCUIT, AND I RECOGNIZE THAT AND RESPECT THAT.  BUT THIS

21   WHOLE CASE WILL COME TO A SCREECHING HALT IF THIS ISN'T WORKED

22   OUT.

23        I DON'T KNOW WHO BENEFITS FROM THAT, PLAINTIFFS RARELY

24   BENEFIT FROM DELAY, BUT IT DEPENDS ON WHAT -- ON WHO IS CAUSING

25   THAT DELAY.  SO IT SEEMS TO ME THAT THIS INTERNATIONAL

1    DISCOVERY IS REALLY A PROBLEM HERE, AND I THINK WE NEED TO WAIT

2    FOR JUDGE VAN KEULEN TO ISSUE HER ORDER SO THAT WE KNOW WHICH

3    WAY IT'S GOING.

4         IF SHE SAYS THAT SOVEREIGNTY OVERRIDES THE DISCOVERY

5    NEEDS, THEN YOU WILL HAVE TO LOOK AT OTHER AVENUES TO GET THE

6    MATERIALS OR OTHER WAYS OF HANDLING THE CASE.  IF SHE SAYS THAT

7    THE SOVEREIGNTY DOESN'T APPLY, THEN, YOU KNOW, WE WILL SEE WHAT

8    HAPPENS, BECAUSE I DON'T KNOW THAT THESE ENTITIES WILL BE

9    WILLING TO ACCEPT THE DISTRICT COURT DECISION.  THAT'S UP TO

10   THEM.

11        AND ARE THEY -- MR. SURPRENANT, ARE THEY SEPARATELY

12   REPRESENTED OR ARE YOU REPRESENTING THOSE ENTITIES AS WELL?

13             MR. SURPRENANT:  WE ARE, YOUR HONOR.

14             THE COURT:  YOU ARE.  OKAY.  WELL, THAT'S BOTH GOOD

15   AND BAD, I SUPPOSE.  I WILL LEAVE IT AT THAT.

16             MR. PETERS:  THAT'S TRUE.  THE SAUDI ENTITIES,

17   YOUR HONOR, JUST TO BE CLEAR, PERFORMANCE 54, WHICH IS NOT

18   QUITE IN THE SAME BUCKET BECAUSE IT'S NOT, AT PRESENT, A

19   SUBJECT OF MOTION BEFORE JUDGE VAN KEULEN, WAS REPRESENTED BY

20   GIBSON DUNN, AND NOW THEY ARE REPRESENTED BY SQUIRE PATTON, AND

21   WE'VE HAD DIFFICULTY GETTING A STRAIGHT ANSWER OUT OF THEM.

22        AND WE HAVE CONSIDERED, AND I APPRECIATE THE COURT'S

23   COMMENTS, ABOUT WHETHER OR NOT LIV IS RESPONSIBLE FOR PRODUCING

24   THESE DOCUMENTS, AND BASED ON DOCUMENTS THAT WE HAVE GOTTEN

25   FROM LIV, WE BELIEVE THAT THIS INDIVIDUAL, MR. AL-RUMAYYAN, WHO

1    IS A VERY SENIOR PERSON IN THE SAUDI SOVEREIGN WEALTH FUND,

2    BASICALLY FUNCTIONS AS A MANAGING AGENT, AS A FUNCTIONAL

3    CHAIRMAN OF LIV.  SO WE HAVE THOUGHT ABOUT THAT, BUT BY THE

4    TIME WE GOT THOSE DOCUMENTS AND THOSE THOUGHTS, THIS MOTION

5    WHICH HAS TRAVELLED TO THE SOUTHERN DISTRICT OF NEW YORK AND

6    THEN BACK TO JUDGE VAN KEULEN, AND WE TRIED TO EXPEDITE THE

7    BRIEFING AND THEN THEY OPPOSED IT, AND THEN JUDGE VAN KEULEN

8    COMPROMISED.

9        IT'S NOW FULLY SUBMITTED, AND SO HERE WE ARE, AND I THINK

10   YOU'RE ABSOLUTELY RIGHT, THAT THAT RULING IS GOING TO INFORM

11   THINGS, ALTHOUGH IT HADN'T OCCURRED TO ME, QUITE HONESTLY, THAT

12   I WAS A WEIGH STATION TO YOUR HONOR, BECAUSE WE ALL HAVE A LOT

13   OF RESPECT FOR JUDGE VAN KEULEN.

14       THE COURT:  AS DO I, AND I'M NOT SUGGESTING MY

15   DECISION WOULD BE ANY DIFFERENT THAN HERS, BUT I JUST RECOGNIZE

16   THE DIFFERENT STEPS.

17       MR. PETERS:  FAIR.  THAT'S VERY FAIR.  WELL TAKEN.

18       THE COURT:  I WAS ACTUALLY SAYING I WAS THE WEIGH

19   STATION TO THE NINTH CIRCUIT, NOT THAT SHE'S -- SHE IS NOT A

20   WEIGH STATION HERE, SHE IS THE DECISION MAKER, AND I HAVE

21   LIMITED REVIEW OF WHAT SHE SAYS ONCE I'VE REFERRED THINGS TO

22   HER.  I WAS THE WEIGH STATION HERE.

23       MR. SURPRENANT:  YOUR HONOR, THERE'S MORE I MIGHT SAY

24   IN RESPONSE TO MR. PETERS, BUT I DON'T THINK IT WOULD BE

25   HELPFUL AT THIS TIME.

1      THE COURT:  ALL RIGHT.

2      AND MR. PETERS, AGAIN, THIS IS SOMETHING YOU NEED TO

3  ADDRESS WITH JUDGE VAN KEULEN, BUT I THINK THAT

4  MR. SURPRENANT'S POINT, AND I THINK MS. BRASS MAY HAVE MADE IT

5  AT FIRST, IS THAT IF YOU ARE NOT DOING THE WORK OF THE LETTERS

6  ROGATORY FOR PERFORMANCE 54 SO THAT THEY ARE AT LEAST ON RECORD

7  AS PENDING, THAT'S A PROBLEM, BECAUSE THEN YOU MAKE THE PROCESS

8  SLOWER BY NOT DOING THAT.

9      SO I DON'T NEED YOU TO -- YOU SHOULD JUST DECIDE AMONG

10  YOUR TEAMMATES AS TO WHETHER YOU ARE GOING TO DO THAT.  I WANT

11  THAT ISSUE TO BE ADDRESSED TO JUDGE VAN KEULEN AND NOT TO ME.

12      SO I THINK YOU'VE GIVEN ME A GOOD SENSE OF WHERE WE ARE.

13  I HAVE TWO OPTIONS FOR YOU.  IT HAS BEEN MY HOPE THAT WE COULD

14  KEEP THE WRITTEN DISCOVERY ON THE CURRENT SCHEDULE, AND THAT

15  WOULD HAVE -- AND THAT WOULD BE THE MARCH 3RD DEADLINE.  AND TO

16  THE EXTENT THAT MIGHT DRIFT TO MARCH 30TH, I THINK THAT IS JUST

17  A MODEST CHANGE.  BUT I AM -- I RECOGNIZE THAT THE FOREIGN

18  DISCOVERY MAY NOT BE WRAPPED UP BY THAT TIME.

19      I AM MORE SYMPATHETIC TO GIVING YOU MORE TIME ON THE

20  DEPOSITION SCHEDULE, PARTLY BECAUSE YOU ARE GOING TO HAVE THIRD

21  PARTIES WHOSE GOOD WILL YOU WILL BE SEEKING, EVEN IF THERE'S A

22  SUBPOENA, AND LESS CONTROL OVER THEM.

23      AND SO I WAS NOT OPPOSED TO EXTENDING THE DEPOSITION

24  CUTOFF DATE TO THE END OF MAY, AS MR. PETERS HAD SUGGESTED, FOR

25  THE DEPOSITIONS.

1        HERE'S -- YOU KNOW, IN A LOT OF WAYS, I ONLY CARE ABOUT

2   THREE DATES, AND YOU CAN DO WHATEVER YOU WANT WITH THE REST OF

3   THEM.  I CARE ABOUT THE DATE I SEE YOU ON SUMMARY JUDGEMENT

4   MOTIONS, I CARE ABOUT THE FINAL PRETRIAL CONFERENCE, AND THE

5   START OF THE TRIAL.

6        I RECOGNIZE, AND MR. PETERS, YOU DID A NICE JOB POINTING

7   OUT HOW BY MOVING CERTAIN DISCOVERY DATES, THERE'S REALLY NO

8   TIME TO WRITE A MOTION, AND THAT'S A FAIR OBSERVATION.  THIS IS

9   AS MUCH AS I'M ABLE TO DO.  I WANT TO PUT SOME DATES OUT THERE

10  FOR YOU TO SEE IF IT HELPS TO ACCOMPLISH SOME ADDITIONAL

11  CUSHION IN MAINTAINING THE CURRENT TRIAL DATE, AND SO THAT I'M

12  ADDRESSING TOO, I THINK A PRIMARY GOAL FOR THE PLAINTIFFS.

13       I WOULD BE WILLING TO MOVE YOUR HEARING DATE ON SUMMARY

14  JUDGEMENT TO AUGUST 17TH, WITH THE DEPOSITIONS CONCLUDING AT

15  THE END OF MAY.  I WOULD BE WILLING TO MOVE YOUR PRETRIAL

16  CONFERENCE TO NOVEMBER 16TH, AND THEN WE MAINTAIN THE CURRENT

17  TRIAL DATE.

18       IF THAT'S NOT GOING TO WORK, I COULD MOVE -- I DON'T WANT

19  TO DO THIS, I'M NOT EVEN SAYING I WOULD AGREE TO IT, I JUST

20  WANT TO GENERALLY SAY THAT I COULD MOVE THE TRIAL TO APRIL OF

21  '24, BUT IT'S NOT SOMETHING I PARTICULARLY WANT TO DO.  BUT IN

22  LOOKING AT MY CALENDAR AND TRYING TO GIVE YOU SOME OPTIONS, I

23  DID COME UP WITH DATES OF MOVING THE SUMMARY JUDGEMENT MOTION

24  HEARING, THE FINAL PRETRIAL AND THE TRIAL SCHEDULE AS LITTLE AS

25  POSSIBLE.

1    SO I DON'T KNOW WHO FROM PLAINTIFFS WANTS -- MS. BRASS,

2    DID YOU WANT TO ADDRESS YOUR THOUGHTS ABOUT MY MODIFIED DATES?

3        MS. BRASS:  YOUR HONOR, WE WOULD WORK WITH WHICHEVER

4    MODIFIED DATES YOU ORDER, FOR THE REASONS YOU EXPLAINED.

5        WE DO STILL VERY MUCH CARE ABOUT THAT JUNE DATE, FOR

6    MR. JONES AND MR. UIHLEIN, IN PARTICULAR, THAT VERY MUCH

7    AFFECTS THEIR LIVES.  AND SO, YOU KNOW, WE WILL WORK WITH THE

8    TOUR ON THE SCHEDULE THAT ACCOMMODATES THE DATES YOU PROPOSED,

9    INCLUDING WE CAN TALK ABOUT DOING CROSS-MOTIONS AT THE SAME

10   TIME OR ADJUST THE SUMMARY JUDGEMENT SCHEDULE.

11       THE COURT:  WELL, WE HAD TALKED ABOUT CROSS-MOTIONS.

12       MS. BRASS:  YES.

13       THE COURT:  THAT'S HOW WE LOOKED AT THIS, AND IT WAS

14   GOING TO BE FOUR BRIEFS AND NOT SIX BRIEFS.  I'M NOT CHANGING

15   THAT, BECAUSE YOUR ISSUES WILL OVERLAP ALMOST COMPLETELY, AND I

16   JUST DON'T NEED 300 PAGES OF BRIEFING.

17       MS. BRASS:  UNDERSTOOD, YOUR HONOR.

18       THE COURT:  OKAY.

19    MR. PETERS?

20       MR. PETERS:  JUST SO I -- YOUR HONOR, FIRST OF ALL,

21   THANK YOU FOR TRYING TO ACCOMMODATE US.  WHAT THE COURT IS

22   SUGGESTING AS A POSSIBILITY IS PUSHING BACK THE CLOSE OF

23   DEPOSITION DISCOVERY, FACT WITNESS DEPOSITION DISCOVERY, UNTIL

24   THE END OF MAY, MOVING THE SUMMARY JUDGEMENT HEARING TO

25   AUGUST 17TH, WHICH WOULD EFFECTIVELY PUSH THE FILING DEADLINE A

1       MONTH OR SO.

2               THE COURT:  GIVES YOU UNTIL ABOUT THE 5TH OF JULY TO

3       FILE, IT GIVES YOU ABOUT FIVE WEEKS AFTER THE CLOSE OF

4       DISCOVERY.

5               MR. PETERS:  YEP.  AND THEN THE FINAL PRETRIAL

6       CONFERENCE IN NOVEMBER, SO THAT'S ABOUT A MONTH OR SO, A LITTLE

7       BIT -- FIVE WEEKS LATER.

8           WE APPRECIATE THE COURT'S ACCOMMODATING OUR NEEDS IN THAT

9       WAY, AND I WOULD SIMPLY SAY THAT I THINK THAT THAT HELPS US A

10      LOT, AND WE ARE GOING TO KEEP WORKING HARD.

11          AND ALL OF THE COMMENTS ABOUT OUR NEFARIOUS MOTIVES, I

12      DON'T ACCEPT.  WE JUST WANT A SCHEDULE WE CAN WORK WITH.

13      THAT'S ONE WE CAN WORK WITH.  AND I'M NOT GOING TO SAY ANYTHING

14      ABOUT THE TRIAL DATE.  I HOPE WE CAN HANG ON TO IT.  I HAVE MY

15      DOUBTS, GIVEN THE PROBLEMS THIS FAR IN EVIDENCE AND THE

16      UNCERTAINTIES ABOUT, YOU KNOW, HAGUE CONVENTION REQUESTS AND

17      THE SAUDIS, BUT LET'S TALK ABOUT THAT ANOTHER DAY, IF WE NEED

18      TO.

19          AND IF WE NEED TO, I HOPE THAT APRIL DATE IS STILL THERE

20      FOR US, BECAUSE MAYBE WE WILL, BUT WE ARE NOT -- WE DIDN'T --

21      IN OUR CMC STATEMENT, WE DIDN'T ASK TO MOVE THE TRIAL DATE, WE

22      ARE NOT HERE ASKING THE COURT TO MOVE THE TRIAL DATE.  SO WE

23      ARE VERY APPRECIATIVE THE COURT CAN ACCOMMODATE US AND ALLOW US

24      TO DO THE WORK WE HAVE TO DO, THERE'S A LOT OF IT.  AND IT

25      DOESN'T GIVE US BREATHING ROOM REALLY, BECAUSE WE ARE

1    BREATHLESS, BUT IT MAKES IT POSSIBLE FOR US TO GET THE WORK

2    DONE, SO THANK YOU.

3            THE COURT:  ALL RIGHT.

4        SO IT'S HARD FOR ME TO WORDSMITH THIS SCHEDULE MYSELF.  SO

5    I'M GOING TO HAVE YOU SEND ME A STIPULATED MODIFIED SCHEDULE.

6    I JUST WANT TO GIVE YOU DIRECTION ON IT.

7        I AM WILLING TO MOVE THE WRITTEN DISCOVERY AND DOCUMENT

8    PRODUCTION CUTOFF TO MARCH 30TH OF 2023.  I THINK AN EXTRA FEW

9    WEEKS WILL BE HELPFUL BECAUSE OF THE MATTER PENDING BEFORE

10   JUDGE VAN KEULEN, AND THE FACT THAT I DON'T -- I MEAN, I KNOW

11   SHE'S WORKING ON IT, I JUST -- I HAVE NO WAY OF KNOWING WHEN

12   THAT ORDER WILL BE AVAILABLE, SO I WANT TO JUST BUILD IN A

13   LITTLE BREATHER THERE.

14       I WILL MOVE THE FACT WITNESS DEPOSITION CUTOFF DATE TO

15   MAY 26TH, AS REQUESTED BY THE DEFENDANTS.

16       IN TERMS OF THE OTHER DATES, I'M GOING TO THEN SKIP THE

17   DETAILS HERE AND LET YOU FILL IN THE CHART, CONSISTENT WITH

18   WHAT I'M GIVING YOU.

19       I WILL MOVE THE HEARING DATE ON THE SUMMARY JUDGEMENT

20   MOTION TO AUGUST 17TH OF 2023.  I WILL MOVE THE FINAL PRETRIAL

21   CONFERENCE TO NOVEMBER 16TH OF 2023, AND TRIAL WILL REMAIN AS

22   SET ON JANUARY 8TH, I BELIEVE IT IS, NO CHANGE IN THE TRIAL.

23       I THINK THAT IS -- AND MR. WALTERS, GOOD MORNING, IT'S

24   NICE TO SEE YOU.  I IMAGINE IT'S GETTING TO BE LUNCH TIME FOR

25   YOU.  DID YOU WANT TO MAKE ANY COMMENT ON THIS,

1          MR. WALTERS:  NONE AT ALL, YOUR HONOR.

2          WE DID APPRECIATE YOU HEARING FROM US, AND THE SCHEDULE

3     YOU SUGGEST IS QUITE WORKABLE, AND WE WILL CONTINUE IN EARNEST

4     TO MAKE SURE THAT WE STAY ON THE SCHEDULE.

5          THANK YOU.

6          THE COURT:  OKAY.  GOOD.

7          ALL RIGHT.  THEN WHY DON'T YOU PUT TOGETHER A MODIFIED

8     CASE SCHEDULE FOR ME WITH THESE DATES THAT I'VE GIVEN YOU, AND

9     THEN YOU CAN MASSAGE THE OTHER DATES THAT ARE IN HERE, SOMEONE

10    CAN TAKE OUT A CALENDAR AND MAKE ALL OF THAT WORK.  AND THEN

11    JUST SEND THAT TO ME AS A STIPULATION AND PROPOSED ORDER.

12         I THINK THAT ADDRESSES THE MATTERS YOU WANTED ME TO

13    CONSIDER THIS MORNING; IS THAT CORRECT?

14         MR. PETERS:  IT DOES.

15         THANK YOU, YOUR HONOR.

16         THE COURT:  OKAY.  ALL RIGHT.

17         I DON'T -- MY DOCKET IS PRETTY EMPTY FROM THIS CASE, IT'S

18    JUDGE VAN KEULEN WHO IS TAKING THE LABORING OAR RIGHT NOW,

19    THAT'S GENERALLY THE WAY THINGS WORK.  I MEAN, THE PLEADINGS

20    ARE SET, AND SO I WELCOME FURTHER CASE MANAGEMENT, BUT I'M NOT

21    GOING TO BURDEN YOU WITH MY REQUEST FOR AN UPDATE.  IT'S NOT

22    USEFUL TO YOU, AND IT MAY NOT BE USEFUL TO ME JUST TO GET AN

23    UPDATE FROM YOU.

24         PLEASE USE THIS MECHANISM OF REQUESTING CASE MANAGEMENT AS

25    NEEDED.  AND AS YOU SEE, I'M CERTAINLY ABLE TO PULL ALL OF YOU

1     TOGETHER QUICKLY SO THAT WE CAN ADDRESS THE ISSUE.

2          ALL RIGHT.   THANK YOU ALL.   HAPPY HOLIDAYS.   I KNOW YOU

3     ARE GOING TO WORK THROUGH THE HOLIDAYS ON THIS CASE, BUT I HOPE

4     YOU GET SOME FAMILY TIME AS WELL.

5               MR. SURPRENANT:   THANK YOU, YOUR HONOR.

6               MS. BRASS:   THANK YOU, YOUR HONOR.

7               MR. PETERS:   THANK YOU, YOUR HONOR.

8               MR. WALTERS:   THANK YOU, YOUR HONOR.

9          (THE PROCEEDINGS WERE CONCLUDED AT 10:43 A.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 12/16/22