# EXHIBIT B

| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>ELLIOT R. PETERS - # 158708<br>epeters@keker.com<br>DAVID SILBERT - # 173128<br>dsilbert@keker.com<br>R. ADAM LAURIDSEN - # 243780<br>alauridsen@keker.com<br>NICHOLAS S. GOLDBERG - # 273614<br>ngoldberg@keker.com<br>SOPHIE HOOD - # 295881<br>shood@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:      415 397 7188 | SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>ANTHONY J. DREYER - (*pro hac vice*)<br>anthony.dreyer@skadden.com<br>KAREN M. LENT - (*pro hac vice*)<br>karen.lent@skadden.com<br>MATTHEW M. MARTINO - (*pro hac vice*)<br>matthew.martino@skadden.com<br>One Manhattan West<br>New York, NY 10001<br>Telephone:     212 735 3000<br>Facsimile:      212 735 2000<br><br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>PATRICK FITZGERALD - (*pro hac vice*)<br>patrick.fitzgerald@skadden.com<br>155 North Wacker Drive<br>Chicago, Il 60606<br>Telephone:     312 407 0700<br>Facsimile:      312 407 0411 |

Attorneys for Defendant PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC.,<br><br>            Plaintiffs,<br><br>      v.<br><br>PGA TOUR, INC.,<br><br>            Defendant.<br><br>PGA TOUR, INC.,<br><br>            Counterclaimant,<br><br>      v.<br><br>LIV GOLF, INC.,<br><br>            Counterdefendant. | Case No. 5:22-cv-04486-BLF (SVK)<br><br>**PGA TOUR, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN'S COMPLIANCE WITH DOCUMENT AND DEPOSITION SUBPOENAS AND OPPOSITION TO MOTION TO QUASH**<br><br>Judge:         Hon. Susan van Keulen<br>Date Filed:  August 3, 2022<br><br>Trial Date:   January 8, 2024 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

---

SUPP. MEMO. ISO MOTION TO COMPEL AND OPPOSITION TO MOTION TO QUASH
Case No. 5:22-cv-04486-BLF (SVK)

2035934

I.      INTRODUCTION

The PGA TOUR submits this Supplemental Memorandum because evidence produced belatedly by LIV after the Public Investment Fund ("PIF") and Yasir Othman Al-Rumayyan filed their Opposition and Motion to Quash and their Reply dramatically contradicts their claims and establishes their extensive control over LIV and the decision to bring this lawsuit. PIF and Mr. Al-Rumayyan should not be permitted to conduct business in the United States—including providing the final authority in the initiation and ongoing conduct of this litigation—only to hide behind a shell corporation to evade the jurisdiction of this Court.

In their Opposition and Motion to Quash, PIF and Mr. Al-Rumayyan strenuously disputed that they "exercise[] 'day-to-day' control over LIV, much less any control over decisions related to this lawsuit." Dkt. 166 at 5:27-28. They claimed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 5:11, and that neither PIF nor Mr. Al-Rumayyan "manage[s] or control[s] LIV's day-to-day operations," *id* at 4:20-21. They also claimed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 4:9-10, and that the TOUR's "claim that PIF … authorized the filing of this lawsuit" is "incorrect," *id.* at 14:13-14. And, in their reply, they maintained that there was "no evidence" that they engaged in conduct "beyond the routine activities of an investor." Dkt. 173 at 1:10-12. This was all false, and PIF, Mr. Al-Rumayyan, and LIV knew it.

On December 21, after the deadline for substantially completing document production, and after repeated requests for the document, LIV produced the Subscription and Shareholders' Agreement that governs the relationship between PIF and LIV. *See* Ex. 1. ***The Agreement directly contradicts PIF and Mr. Rumayyan's representations***. Under the Shareholders' Agreement, LIV is *required* to obtain PIF's consent to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 1 at 45-47. Moreover, contrary to the assertion that PIF did not "authorize[] the filing of this lawsuit"—and contrary to the artful statement that the decision to bring this lawsuit was ▓

1 ▌▌▌▌▌"—the Shareholders' Agreement is crystal clear that PIF's ▌▌▌▌▌

2 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *Id.* at 47. In short, PIF authorized the filing of this lawsuit and controls LIV's ongoing conduct of this litigation. This belatedly produced, critical document establishes that PIF and Mr. Al-Rumayyan misstated their central role in running LIV and making decisions related to this lawsuit. And they strategically withheld the document that reveals PIF's extensive control over LIV until after the briefing was complete.

The Shareholders' Agreement thus casts doubt on the credibility of *all* of PIF and Mr. Al-Rumayyan's claims as well as the exercise of their duty of candor to the Court. It also confirms that this Court has jurisdiction over PIF and Mr. Al-Rumayyan under the commercial activity and waiver exceptions to FSIA. As to the former exception, the Shareholders' Agreement confirms that LIV's interference with the TOUR's contracts with its members *was* a "direct effect" of PIF's actions; indeed, we now know that PIF's consent was *required* for ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. As to the waiver exception, the Shareholders' Agreement is dispositive, as it proves that PIF ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌—an unmistakable waiver of any sovereign immunity claim.

## II.    THE SHAREHOLDERS' AGREEMENT

The Shareholders' Agreement, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Ex. A at 1. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *See id.* at 2.[1] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Ex. A at 65. ▌▌▌▌▌▌▌▌▌▌▌▌

---

[1] *See also* https://www.jerseyfsc.org/registry/registry-entities/entity/3020094.

[2] This corporate structure is disclosed in LIV's corporate disclosure, Dkt. 84, and is illustrated in Exhibit 37 to the Hood Declaration, Dkt. 168-37.

1. ████████████████████████████████████████████████████████
2. ███████████
3.     ████████████████████████████████████████████████
4. ███████████████████████ Ex. A, Schedule 5 at 44. ██████████████████
5. ████████████████████████████████████████████████████████
6. ████████████████████████ Ex. A at ¶ 6.1; ¶ 6.9. ████████████████
7. ████████████████████████████████████████████████████████
8. ██████████████████████████████████████████████████
9. ████ *Id.* at 66. ███████████████████████████████████████
10. ██████████████████████████████ Ex. A at 2. ████████████████
11.  ████████████████████████████████████████████████
12. █████
13.     ████████████████████████████████████████████████
14. ██████████████████████████████████████████████████
15. | ████████████████████████████████████████████████
16. | █
17. | ████████████████████████████████████████████████
18.     ████████████████████████████████████████████████
19.     ███████████████████████████████████████████████
20.     ████████████████████████████████████████████████
21.     ████████████████████████████████████████████████
22.     ████████████████
23. | ████████████████████████████████████████████████
24.     ████████████████████████████████████████████████
25. | ███████████████████████████████████████████
26. | ████████████████████████████████████████████
27.     ██████████████████████████████████
28. ████████████████████████████████████████████████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 4, ¶ 5.1(a).

## III. ARGUMENT

The Shareholders' Agreement is conclusive proof that the Court has jurisdiction over PIF and Mr. Al-Rumayyan under the commercial activity and waiver exceptions to FSIA.

### A. The Court has jurisdiction under the commercial activity exception.

The Court has jurisdiction over PIF if there is a nexus between LIV's lawsuit and the TOUR's counterclaims and defenses, on the one hand, and "commercial activity carried on in the United States" by PIF or actions outside of the United States that "cause[] a direct effect in the United States," on the other hand. 28 U.S.C. § 1605(a)(2) (first and third clauses); *see also Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1170 (9th Cir. 2010). The evidence already submitted to the Court readily establishes the applicability of the commercial activity exception here. *See* Dkt. 148 at 6-8, 14-16; Dkt. 169 at 3-5, 7-9. The Shareholders' Agreement now removes all doubt, conclusively proving how deeply entwined PIF is in the conduct upon which LIV's and the TOUR's claims and defense are based. LIV's claims rest on its alleged inability to sign agreements with other tours, with golfers, and with broadcasters and sponsors, Dkt. 83 at ¶¶ 314, 322, 333, 343, and the Shareholders' Agreement confirms that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A at 45-46. Likewise, the Shareholders' Agreement attests that PIF has the ultimate say on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which are at the core of the TOUR's defense that LIV's attempt to enter the market with unstainable contracts is not pro-competitive. *Id.* at 45. Finally, the TOUR's tortious interference counterclaim is based on LIV's illegal efforts to recruit PGA TOUR members and induce them to breach their agreements with the TOUR through extravagant guaranteed contracts and provisions that make it impossible for PGA TOUR members to comply with their contractual obligations to the TOUR. Dkt. 108 at ¶¶ 55-64. The Reserved Matters Schedule conclusively proves that PIF ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. at 45-46. PIF's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—whether it occurred "in the United States" or took place elsewhere but had a "direct effect in the United States," 28 U.S.C. § 1605(a)(2)—establishes this Court's jurisdiction over PIF.

**B.     The Court has jurisdiction under the waiver exception.**

The Court also has jurisdiction over PIF if it "has waived its immunity either explicitly *or by implication*." 28 U.S.C. § 1605(a)(1) (emphasis added). It is not necessary for the Court to find that PIF subjectively intended to waive; rather, the Court should look to PIF's "actions in relation to the conduct of the litigation." *Smith v. Soc. People's Libyan Arab Jamahiriya*, 101 F.3d 239, 244 (2d Cir. 1996). An agreement to litigate in another country is a canonical example of conduct that amounts to a waiver. *Id.* at 243. The Reserved Matter provision shows that PIF ███████████████████████████████████████████████████████████████. Ex. A at 47.  It also shows that PIF controls ████████████████████████████████ *Id.* In other words, PIF is ███████████████████████████████████████. Thus, by its "actions in relation to the conduct of the litigation," ██████████████████████ and cannot now claim it is immune. No amount of carefully worded, misleading argument by PIF can avoid this conclusion now that the Court has access to the Shareholders' Agreement.

**IV.    CONCLUSION**

For the reasons set forth in its Motion to Compel, in its Reply and Opposition and, and in this Supplemental Memorandum, the TOUR respectfully requests that the Court grant the TOUR's Motion to Compel and deny PIF and Mr. Al-Rumayyan's Motion to Quash.

Dated:  January 9, 2023                                          KEKER, VAN NEST & PETERS LLP

By: /s/ *Elliot R. Peters*
ELLIOT R. PETERS
DAVID SILBERT
R. ADAM LAURIDSEN
NICHOLAS S. GOLDBERG
SOPHIE HOOD

Attorneys for Defendant
PGA TOUR, INC.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANTHONY J. DREYER
PATRICK FITZGERALD
KAREN M. LENT
MATTHEW M. MARTINO

Attorneys for Defendant
PGA TOUR, INC.