RACHEL S. BRASS, SBN 219301
 rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
 rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOHN B. QUINN, SBN 090378
 johnquinn@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: 213.443.3000
Facsimile: 213.443.3100

ROBERT P. FELDMAN, SBN 69602
 bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs LIV Golf, Inc., Matt Jones, Bryson DeChambeau, and Peter Uihlein*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF INC.<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant. | Case No. 5:22-cv-04486-BLF<br><br>**JOINT STATEMENT REGARDING PGA TOUR'S OBJECTIONS TO THE ADDITION OF THREE CUSTODIANS**<br><br>Judge:   Hon. Susan van Keulen<br><br>Dept.:   Courtroom 1, 5th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |

| | |
|---|---|
| 1 | PGA TOUR, INC., |
| 2 | Counter-Plaintiff, |
| 3 | v. |
| 4 | LIV GOLF, INC., |
| 5 | Counter-Defendant. |

LIV Golf, Inc. ("LIV") and PGA Tour, Inc. ("the Tour") submit this statement pursuant to the Court's Standing Order. Plaintiffs respectfully request that the Court order the Tour to include 3 specific custodians in its document collection and production in response to LIV's written discovery. The Parties met and conferred by video conference on January 5, 2022 and through correspondence but were unable to reach agreement. A joint chart setting forth the dispute is attached as Exhibit A. There are 77 days remaining until the close of written discovery on March 30, 2023.

## I.   PLAINTIFFS' POSITION

The Tour orchestrated a global conspiracy with a potential competitor—European Tour—and others to prevent competition from new pro golf tours. Throughout the discovery process, the Tour has refused to disclose the names or roles of the employees centrally involved in that conduct. First, the Tour offered only **five** custodians, and provided wholly incomplete org charts. The Tour agreed to increase to fourteen custodians only after LIV was forced to send letter briefing on the issue. And the Tour fought producing documents about player, vendor, sponsor and media threats and intimidation until ordered to do so by this Court. That discovery has shown three additional Tour employees (Christian Hardy, Allison Keller and Tyler Dennis) were centrally involved both in the Tour's misconduct, and, in some instances, in directing others not to put their conduct in writing. Having identified them as central actors through discovery, LIV asked the Tour to supplement—just as the Tour has asked LIV to supplement to facilitate the discovery of third-party affiliate Performance54 (a separate U.K. entity) by adding three of its employees as custodians of LIV—which LIV agreed to do. The Tour refuses to show LIV the same goodwill. LIV had no reason to ask for them at the outset: **none of the three were disclosed in the Tour's initial disclosures.** Only **one of the three** is in the org chart the Tour first provided Plaintiffs. And, after Plaintiffs pressed for a more fulsome org chart, that chart still did not include Mr. Hardy. Plaintiffs did not, and could not, know the role they played when custodians were negotiated.

**Mr. Christian Hardy**: Christian Hardy is the Senior Vice President Int'l, PGA Tour. Plaintiffs allege that the Tour and the European Tour—███████████ PGA_TOUR0077291—illegally entered agreements to keep new golf tours, including LIV, from competing with them, prevented global tours from partnering with LIV, and coordinated their restrictions on and punishment of golfers desiring to play for LIV. Since 2020, Mr. Hardy has led the Tour's coordination with the European Tour. Throughout 2021 and 2022, ███████████ PGA_TOUR0516088 (Mr. Hardy, ███████); PGA_TOUR0016165 (███████). And, Mr. Hardy ███████ PGA_TOUR0016720 (███████).

The Tour contends that Mr. Hardy reports to Mr. Rick Anderson, who is a custodian, and his inclusion is duplicative. But the record shows Mr. Hardy had extensive independent contacts and communications. In February 2022, Mr. Hardy described himself to a colleague as ███████. PGA_TOUR0192126. He is thus likely to have non-duplicative responsive communications with the European Tour. Furthermore, there is nothing in the record to suggest that Mr. Hardy's relevant contacts and discussions about LIV are necessarily captured in any documents reported up the line—to the contrary, the PGA Tour's documents repeatedly indicate that the Tour was carefully avoiding such documentation. While the Tour has produced some targeted documents (92) from his PGA Tour email in fulfilling its Court-ordered obligations, the Tour has not done a full custodial search of his files and has not collected his phone.

**Ms. Allison Keller**: Allison Keller is the Chief Administrative Officer of the Tour. She was not disclosed and was not in the org chart the Tour initially provided for custodial selection. Ms. Keller ███████ *see* PGA_TOUR0054967. Commissioner Jay Monahan ███████ *Id.*

███████████████████████████████████████ PGA_TOUR0042603. Ms. Keller is also likely to be a source of relevant Tour communications with the service firms the Tour has engaged to aid its strategy in responding to LIV and to aid its aggressive public relations campaign against LIV and players who joined LIV. Ms. Keller ██████████████ PGA_TOUR0012472. And, Ms. Keller is the ████████████████████████████████████████████████████████████████████████████████ PGA_TOUR0037080. ███████████████████████████████ PGA_TOUR0517288 ██████████████████████████████████████████████████████████████). Plaintiffs are missing however, Ms. Keller's communications with Clout and other service firms the Tour hired to oppose LIV Golf, see Tour's Resp. to ROG No. 7, which are likely to be a valuable source of relevant information. And, production of Ms. Keller's custodial file is particularly important since █████████████████████████████████████ PGA_TOUR0181727. Her files are thus likely to be a unique source of information about directives to others that she instructed not to be repeated in writing.

When LIV Golf asked to add her as a custodian for certain requests, the Tour opposed. The Tour now claims it would entertain targeted search terms for her. But, the Tour refused to agree to collect her phone. ████████████████████████████████████ PGA_TOUR0352777 ███████████████████████████████████████████████████. Her role is expansive and central, and thus targeted search terms for only a few requests (especially with no phone collection) is not sufficient to capture her relevant repositories. Ms. Keller reported to the Tour's board of directors that the Tour ███████████████████████████████████████████████████. PGA_TOUR0050442.

*Mr. Tyler Dennis*: Tyler Dennis is the President of the PGA Tour. Despite his title, he was not initially disclosed by the Tour, yet discovery has revealed Mr. Dennis's central role in the Tour's opposition to LIV. He ██████████████████████████ PGA_TOUR0501251, ████████████████████ PGA_TOUR0501138 ███████████████████████████████████████ PGA_TOUR0479043 ████████ PGA_TOUR0287255, ██ Mr. Dennis texted with other Tour executives about how █████████████████████████████ PGA_TOUR0037064. By the Tour's own admission, Mr. Dennis communicated with dozens of players and agents regarding LIV. Tour's Resp. to ROG No. 1–3. But, the Tour has produced only a small handful of such messages as Mr. Dennis is not a full custodian. And the Tour refuses to produce his phone data despite documents showing ███████████████████████████████████. PGA_TOUR0054199. The Tour argues that LIV is trying to "relitigate the TOUR's response to ROG 1." Not so. In fact, these three custodians represent just a small subset of the individuals finally identified by the Tour only after LIV won a motion to compel. Moreover, the Tour evaded providing more complete responses to LIV's interrogatories about contacts with third parties by arguing that document requests were a more appropriate way to discover those facts. Now that LIV is seeking documents from a narrowly defined set of highly relevant individuals, the Tour pivots and refuses to produce documents.

Adding these custodians is proportional to the needs of the case. Courts analyze requests

for more custodians through the rubric of the proportionality factors enumerated in Rule 26(b)(1). *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at *1–2 (N.D. Cal. Dec. 3, 2015). With the exception of its burden arguments, the Tour does not seriously contest that these factors weigh in favor of LIV. Nor could it. As detailed above, each individual possesses highly relevant information. Plaintiffs intend to depose all three and believe they may be necessary trial witnesses.

The Tour contends it is too great a burden to collect documents from more custodians under the Court's schedule. It carries the burden as the objecting party. *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *3 (C.D. Cal. Nov. 30, 2009). And in antitrust cases, "courts generally take an expansive view of relevance and permit broad discovery." *Kleen Prods. LLC v. Packaging Corp. of Am.* 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012), because evidence is often "in the hands of the alleged conspirators." *U.S. v. IBM Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974). The Tour has offered no details about why these 3 custodians amount to a disproportionate burden justifying their refusal to collect, review and produce documents. It is not enough to simply say, 'that's too many custodians given the accelerated schedule the Court has entered.' Rather, the Tour here must show with specificity "how, despite the broad and liberal construction afforded the federal discovery rules, each [discovery request] is overly broad, burdensome, or oppressive." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 13108021, at *1 (C.D. Cal. June 25, 2019) (ordering 5 more custodians). It has failed to substantiate any suggestion of burden, offering only say so. And adding these 3 custodians would bring the Tour's total to 17, well within the norm for a complex antitrust lawsuit. *See, e.g.*, *Oracle*, 2015 WL 7775243, at *1–2 (ordering 10 more custodians to total 37 custodians); *Kleen*, 2012 WL 4498465, at *15 (allowing plaintiffs to select 8 more custodians for a total of 83 custodians in antitrust case). Search terms can be negotiated if the volume is high. And, to the extent the Tour is correct that this review will involve duplicative data, that also is addressable in the ESI process. And, if the time remaining were truly an issue for the Tour's two sophisticated law firms, it could have started the review process when LIV first asked for the custodians on December 27, 2022. Plaintiffs request that the Court order the Tour to review and produce custodial documents from Messrs. Hardy and Dennis and Ms. Keller.

## II.     DEFENDANT'S POSITION

Plaintiffs' request to add three duplicative party custodians more than a month ***after*** the deadline for substantially completing document productions imposes an unnecessary and undue burden and will further delay the case schedule. Plaintiffs seek to add Christian Hardy, Allison Keller, and Tyler Dennis as full custodians for more than 100 Requests for Production ("RFPs") and dozens of lengthy search terms, rather than rely on searches targeted to the narrow areas for which they were involved. In making this request, Plaintiffs ignore the substantial discovery they already possess and the fact that the TOUR has already produced documents on behalf of 14 custodians—including Ms. Keller's direct report and two immediate supervisors—and have agreed to targeted searches ***for another 24*** TOUR employees, including Messrs. Dennis and Hardy.

Plaintiffs' sole explanation for the delay in seeking Ms. Keller and Messrs. Dennis and Hardy as full custodians is a claim that the TOUR failed to promptly disclose a full org chart. This is yet another attempt to mislead the Court. Plaintiffs received the TOUR's full org chart on October 3rd, 2022, (*see* PGA_TOUR0021070), ***over two and a half months*** before they initially requested to add Ms. Keller and Messrs. Dennis and Hardy as custodians. Thus, Plaintiffs had sufficient information about Ms. Keller's and Messrs. Dennis and Hardy's positions with the TOUR long before seeking to add them as full custodians on December 16 and 27, respectively, especially given that Mr. Dennis' and Ms. Keller's roles and titles are listed on the TOUR's publicly available website under Executive Leadership. Further, the TOUR did not identify these individuals in its original initial disclosures because it did not anticipate using them "to support its claims or defenses" in this case. Fed. R. Civ. P. 26(a)(1)(A)(i).

Moreover, on October 19, 2022, Messrs. Dennis and Hardy were identified as partial custodians in the TOUR's amended Interrogatory No. 1 ("ROG 1") response as being authorized to speak on behalf of the TOUR with certain third parties—for Mr. Dennis, certain sponsors, golfing

bodies, golf associations, agents, and golfers, and for Mr. Hardy, certain golf associations, broadcasters, and vendors.

As if this weren't enough, before the November 18, 2022 deadline for substantial document production, the TOUR produced countless communications involving these three individuals. Indeed, the documents Plaintiffs cite to support this motion only prove the TOUR's point that Plaintiffs have ample documents reflecting communications with Ms. Keller and Messrs. Dennis and Hardy by way of the TOUR's agreed-upon 14 full custodians and the 24 additional employees for which the TOUR has conducted targeted searches.

Recognizing this flaw, Plaintiffs contend that Ms. Keller and Messrs. Dennis and Hardy should be custodians because Plaintiffs have agreed to add three custodians from Peformance54. But this is a false equivalency, as the circumstances of each party's requests are entirely dissimilar. The three Performance54 custodians (from whom the TOUR has been seeking documents since October) were responsible for creating and organizing LIV on behalf of Saudi Arabia's Public Investment Fund ("PIF") and are now responsible for the day-to-day operations of LIV after LIV's COO, Atul Khosla, resigned. *See* https://frontofficesports.com/liv-golf-adds-leadership-trio-as-coo-exits/. Despite this, the TOUR has no Performance54 documents at all because Plaintiffs for months took the erroneous positions that these documents were not within their "control." Only when faced with a motion did Plaintiffs abandon that position and agree to treat these critical witnesses as custodians. That is a far cry from the underpinnings of this dispute, where the TOUR has produced documents from 14 full custodians and 19 partial custodians—with documents from five more partial custodians to come—in addition to documents from the five independent directors of the TOUR Policy Board. Plaintiffs' suggestion that the TOUR fought to limit its document searches to only five custodians is false. In fact, the TOUR has agreed to *more* full party custodians than those who own, control and operate LIV Golf, Performance54, and PIF (who is currently fighting all discovery efforts).

***Tyler Dennis and Christian Hardy***: As to Messrs. Dennis and Hardy, Plaintiffs' attempts to once again relitigate the TOUR's response to ROG 1 should be rejected. At the October 24 hearing, Plaintiffs sought to treat Messrs. Dennis and Hardy and 17 others as full custodians. But as this Court made clear, "these people aren't all custodians." Oct. 24 Discovery HR'g Tr. ("Tr.") at 20:22-23. This Court then directed that Messrs. Dennis and Hardy (and the others identified in ROG 1) should be subjected only to significantly narrower searches related to the entities with which they had responsive communications, and not Plaintiffs' far broader RFPs. Tr. at 21:8-21. Even after this hearing, and in direct conflict with this Court's guidance, Plaintiffs sought to add Messrs. Dennis and Hardy, as well as 17 other TOUR employees, as custodians. The TOUR rejected this proposal, but in the spirit of compromise, agreed to search terms that were broader than what the Court required.

The TOUR then reviewed documents that hit on these search terms, and produced the documents responsive to ROG 1 from both of Messrs. Dennis and Hardy's files. Thus, Plaintiffs already possess the key documents from both Messrs. Dennis and Hardy that go to the core of Plaintiffs' claims, i.e., communications about LIV with entities—for Mr. Dennis, those sponsors, golfing bodies, golf associations, agents, and golfers, and for Mr. Hardy, those golf associations, broadcasters, and vendors—that both Messrs. Dennis and Hardy are authorized to communicate with as part of their daily responsibilities.

***Allison Keller***: There is simply no need to add Ms. Keller as a full custodian when weighed against the substantial burden—which is even larger for Ms. Keller than for Messrs. Dennis and Hardy. Because the TOUR has not yet collected Ms. Keller's documents or devices, doing so now is particularly burdensome, given that the TOUR season is now in full swing and such a collection would interfere with Ms. Keller's job responsibilities. Further, as noted above,

the TOUR has already treated as full custodians Ms. Keller's direct supervisors, i.e., TOUR Commissioner Jay Monahan and TOUR Chief Operating Officer Ron Price, and her direct report, Executive Vice President Media Content & Communications, Laura Neal.  Accordingly, Plaintiffs already have, and will continue to receive, a significant number of Ms. Keller's communications. Indeed, the TOUR has already produced more than 4,500 emails involving Ms. Keller.  Any suggestion by Plaintiffs that the TOUR could have alleviated this burden by beginning the review process when Plaintiffs first asked about Ms. Keller (and Messrs. Dennis and Hardy) a few weeks ago is a strawman.  Putting aside that Plaintiffs know that the "review" process first begins with time-consuming collections that alone can take weeks, Plaintiffs disregard that the TOUR, just like Plaintiffs would if the roles were reversed, will not begin the costly and burdensome process that it believes it is duplicative, unwarranted, and inconsistent with the Court's prior directives. The TOUR will consider targeted requests pertaining to Ms. Keller, but there is no need to treat her as a full custodian at this late stage.

Plaintiffs' authority to the contrary is misplaced.  For example, relying on *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, (N.D. Ill. Sept. 28, 2012) and *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, (N.D. Cal. Dec. 3, 2015), Plaintiffs contend that their request merely brings the TOUR's total custodians to 17, which is normal in antitrust cases.  But Plaintiffs miss the point.  The TOUR's objections are not focused solely on the total number of custodians in the case, but the duplicative nature and the timing and burden of adding these custodians late in the discovery period.  In *Kleen*, unlike here, "the case [was] still in the early stages of discovery"—plaintiffs were only 20% complete with their first-level review of defendants' documents, no discovery cutoff date had been set, and (unlike here) plaintiffs "had no input on the initial custodian determinations" made by defendant.  2012 WL 4498465 at *16, *18.  And in *Oracle*, which involved "limited discovery" in advance of a "partial retrial," the court rejected Oracle's request to add 22 new custodians and required Oracle to "make a more refined selection" of custodians.  *Oracle*, 2015 WL 7775243, at *1-2.

At bottom, Plaintiffs' request at this juncture is disingenuous.  Plaintiffs have time and time again accused the TOUR of aiming to delay discovery.  But Plaintiffs ignore that requesting to add three custodians this late in the discovery period of an already compressed schedule of Plaintiffs' own making would lead to a further delay.  This is especially true for Ms. Keller, whose files and devices the TOUR has not yet collected.  If Plaintiffs were truly concerned with ensuring the case schedule is not subjected to any further delay, they would not be asking the TOUR to undergo this protracted document collection process this late in the game, especially when the discovery Plaintiffs currently possesses more than covers what they need to move forward in this compressed action.  Plaintiffs' request to add Ms. Keller and Messrs. Dennis, and Hardy as full custodians should be denied.

| | |
|---|---|
| Dated: January 12, 2023 | GIBSON, DUNN & CRUTCHER LLP |
| | By: _____/s/ *Rachel S. Brass*_____ |

RACHEL S. BRASS, SBN 219301
 rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
 rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
 shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
 jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
 klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
 johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
 dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
 kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
 bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau, Peter Uihlein, and LIV Golf Inc.*

| | |
|---|---|
| Dated: January 12, 2023 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | By:    /s/ *Anthony J. Dreyer* |
| | ANTHONY J. DREYER<br>PATRICK FITZGERALD<br>KAREN M. LENT<br>MATTHEW M. MARTINO |
| | KEKER, VAN NEST & PETERS LLP |
| | ELLIOT R. PETERS<br>DAVID SILBERT<br>R. ADAM LAURIDSEN<br>NICHOLAS S. GOLDBERG<br>SOPHIE HOOD |
| | Attorneys for Defendant<br>PGA TOUR, INC. |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: January 12, 2023                    /s/    *Rachel S. Brass*
                                                                    Rachel S. Brass