10:00AM

1                    UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                         SAN JOSE DIVISION

3

        MATT JONES, BRYSON DECHAMBEAU,
4       PETER UIHLEIN, AND LIV GOLF
        INC.,
5                                    CASE CV-22-04486 BLF SVK

6             PLAINTIFFS,
                                     SAN JOSE, CALIFORNIA
        V.
7                                    JANUARY 13, 2023
        PGA TOUR, INC.,
8                                    PAGES 1 - 117

9             DEFENDANT AND
              COUNTER-PLAINTIFF,

10            V.

11      LIV GOLF INC.,

12            COUNTER-DEFENDANT.

13
                     TRANSCRIPT OF PROCEEDINGS
14        BEFORE THE HONORABLE SUSAN VAN KEULEN
                 UNITED STATES MAGISTRATE JUDGE
15
        A-P-P-E-A-R-A-N-C-E-S
16
          FOR THE PLAINTIFFS:   QUINN EMANUEL URQUHART & SULLIVAN LLP
17                              BY:  DOMINIC SURPRENANT
                                     KEVIN TERUYA
18                              865 S. FIGUEROA STREET, 10TH FLOOR
                                LOS ANGELES, CALIFORNIA 90017
19
                                BY:  JOHN BASH
20                              300 WEST 6TH STREET, SUITE 2010
                                AUSTIN, TEXAS 78701
21
                  (APPEARANCES CONTINUED ON THE NEXT PAGE.)
22

23        OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                     CERTIFICATE NUMBER 8074
24
              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
25        TRANSCRIPT PRODUCED WITH COMPUTER.

```
1        A P P E A R A N C E S: (CONT'D)

2        FOR THE PLAINTIFFS:
                                     WHITE AND CASE LLP
3                                    BY:  CAROLYN LAMM
                                          HANSEL PHAM
4                                    701 THIRTEENTH STREET, NW
                                     WASHINGTON, DC 20005
5
                                     BY:  JACK E. PACE, III
6                                    1221 AVENUE OF THE AMERICAS
                                     NEW YORK, NEW YORK 10020
7

8        FOR THE DEFENDANT:          KEKER, VAN NEST & PETERS LLP
                                     BY:  ELLIOT R. PETERS
9                                         NICHOLAS GOLDBERG
                                          MAILE YEATS-ROWE
10                                   633 BATTERY STREET
                                     SAN FRANCISCO, CALIFORNIA 94111
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
          1    SAN JOSE, CALIFORNIA                    JANUARY 13, 2023
10:03AM   2                      P R O C E E D I N G S
10:03AM   3        (COURT CONVENED AT 10:03 A.M.)
10:03AM   4            THE CLERK:  CALLING CASE 22-C V-4486, JONES, ET AL.,
10:04AM   5    VERSUS PGA TOUR, INC.
10:04AM   6        COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD AND I
10:04AM   7    BELIEVE WE CAN START WITH THE DEFENDANT.  THAT WORKS.
10:04AM   8            MR. PETERS:  GOOD MORNING, YOUR HONOR.
10:04AM   9        ELLIOT PETERS OF KEKER, VAN NEST & PETERS ON BEHALF OF THE
10:04AM  10    PGA TOUR.
10:04AM  11        I'M APPEARING THIS MORNING WITH MY COLLEAGUES,
10:04AM  12    NICK GOLDBERG AND MAILE YEATS-ROWE.
10:04AM  13            THE COURT:  THANK YOU.  GOOD MORNING AND WELCOME.
10:04AM  14            MR. SURPRENANT:  GOOD MORNING, YOUR HONOR.
10:04AM  15        DOMINIC SURPRENANT, QUINN EMANUEL, ON BEHALF OF PIF.  I'D
10:04AM  16    LIKE TO INTRODUCE TO YOUR HONOR MY COLLEAGUES.
10:04AM  17            THE COURT:  PLEASE.
10:04AM  18            MR. SURPRENANT:  JOHN BASH.
10:04AM  19            THE COURT:  MR. TERUYA.
10:04AM  20            MR. SURPRENANT:  KEVIN TERUYA.
10:04AM  21            THE COURT:  MR. TERUYA.
10:04AM  22            MR. SURPRENANT:  AND OLGA MUSAYEV.  AND I'M SURE I
10:04AM  23    MISPRONOUNCED HER NAME, AND I APOLOGIZE TO BOTH YOU AND HER.
10:04AM  24            THE COURT:  ALL RIGHT.  MR. SURPRENANT, THANK YOU.
10:04AM  25            MS. LAMM:  GOOD MORNING, YOUR HONOR.
```

10:04AM  1          CAROLYN LAMM WITH WHITE & CASE FOR PIF TOGETHER WITH MY

10:05AM  2     COLLEAGUES, HANSEL PHAM AND JACK PACE.

10:05AM  3               THE COURT:  GOOD MORNING.

10:05AM  4               MR. PACE:  GOOD MORNING, YOUR HONOR.

10:05AM  5               THE COURT:  THANK YOU ALL FOR BEING HERE.

10:05AM  6          ALL RIGHT.  WE ARE ON TODAY FOR THE PARTIES -- THAT IS,

10:05AM  7     THE PARTIES THAT ARE HERE TODAY, MOTIONS, A MOTION TO COMPEL

10:05AM  8     BROUGHT BY DEFENDANT PGA AND THE MOTIONS TO QUASH BROUGHT BY

10:05AM  9     THE PARTIES UPON WHOM THE SUBPOENAS WERE SERVED, AND THAT IS

10:05AM  10    THE PUBLIC INVESTMENT FUND, WHICH WE REFER TO AS PIF FOR EASE

10:05AM  11    OF COURT REPORTING, AND WE HAVE MR. AL-RUMAYYAN.

10:05AM  12         HOW DO I PRONOUNCE THAT?

10:05AM  13              MR. BASH:  YOUR HONOR, I BELIEVE IT'S AL-RUMAYYAN.

10:05AM  14              THE COURT:  AL-RUMAYYAN.

10:05AM  15              MR. BASH:  IN OUR BRIEFING WE HAVE REFERRED TO HIM

10:05AM  16    AS "HE."

10:05AM  17              THE COURT:  OKAY.  WE'LL REFER TO HIM AS

10:06AM  18    MR. AL-RUMAYYAN FOR TODAY'S PURPOSES.  GOT IT.  YOU MAY HAVE TO

10:06AM  19    REMIND ME ON THE PRONUNCIATION AS WE GO.  I'LL DO MY BEST.

10:06AM  20         ALL RIGHT.  WE WILL PROCEED AS FOLLOWS:  WE HAVE A LOT OF

10:06AM  21    GROUND TO COVER IN SOME INTERESTING AND SOME COMPLEX AND SOME

10:06AM  22    NOT-AS-COMPLEX ISSUES.

10:06AM  23         AS A PRELIMINARY MATTER, THESE SUBPOENA RELATED DISPUTES

10:06AM  24    ARE BEFORE THIS COURT PURSUANT TO FEDERAL RULE OF CIVIL

10:06AM  25    PROCEDURE 45(F) AND IN AGREEMENT BETWEEN PGA AND THE RECIPIENTS

10:06AM 1    OF THE SUBPOENA, PIF AND MR. AL-RUMAYYAN, TO TRANSFER THE

10:07AM 2    DISPUTES TO THIS DISTRICT FROM THE SOUTHERN DISTRICT OF

10:07AM 3    NEW YORK.

10:07AM 4         ALSO PURSUANT TO THAT AGREEMENT, THE PARTIES AGREED UPON A

10:07AM 5    BRIEFING SCHEDULE FOR THEIR CROSS-MOTIONS.  I HAVE RECEIVED ALL

10:07AM 6    OF THE BRIEFS, ALL OF THE SUPPORTING EVIDENCE, AND I HAVE HAD

10:07AM 7    AN OPPORTUNITY TO REVIEW AND WORK THROUGH ALL OF THAT.

10:07AM 8         I WANT TO PROCEED AS FOLLOWS:  WE WILL FIRST ADDRESS

10:07AM 9    BRIEFLY THE GOVERNING LAW.  I HAVE A QUESTION FOR EACH SIDE.

10:07AM 10   AND THEN WE WILL MOVE TO THE ISSUES OF SOVEREIGN IMMUNITY; AND

10:07AM 11   THEN COMMON LAW IMMUNITY AS IT RELATES TO MR. AL-RUMAYYAN; THE

10:07AM 12   ISSUE OF PERSONAL JURISDICTION, AND THEN THE RULES GOVERNING

10:07AM 13   SUBPOENAS.  THERE ARE CHALLENGES TO THE SUBPOENAS AT ISSUE IN

10:07AM 14   THIS CASE UNDER THOSE RULES.  AND THEN WE WILL ADDRESS

10:08AM 15   SEPARATELY THE SCOPE ISSUES RELATING TO THE SUBPOENA OR

10:08AM 16   SUBPOENAS.

10:08AM 17        SO I THINK IT MAKES SENSE, BECAUSE THERE ARE SO MANY FACTS

10:08AM 18   THAT RELATE TO ALL OF THE ISSUES OF IMMUNITY, JURISDICTION,

10:08AM 19   ET CETERA, WE'RE JUST GOING TO TAKE THEM ALL AT ONCE.  I WILL

10:08AM 20   HEAR FIRST FROM THE TOUR, AND THEN I WILL HEAR AFTER THEIR

10:08AM 21   ARGUMENT -- OR EXCUSE ME, FROM PGA, AND THEN I WILL HEAR FROM

10:08AM 22   PIF AND MR. AL-RUMAYYAN'S REPRESENTATIVES.

10:08AM 23        I WILL BE SURE -- SOME OF THESE TOPICS COME UP IN THE

10:08AM 24   MOTION TO QUASH AS OPPOSED TO THE MOTION TO COMPEL.  I WILL BE

10:08AM 25   SURE THAT EVERYONE HAS AN OPPORTUNITY TO REPLY AND RESPOND.

10:08AM 1      ALL RIGHT.

10:08AM 2          OKAY.  SO LET'S START THEN WITH GOVERNING LAW.  I'LL HEAR

10:08AM 3      FROM PGA FIRST.  AND THE OPEN -- THE FIRST ISSUE IS THIS, WHICH

10:09AM 4      IS NEITHER PARTY ADDRESSES WHICH LAW GOVERNS, THAT IS, THE

10:09AM 5      SECOND CIRCUIT OR THE NINTH CIRCUIT, AND MAYBE IT'S BOTH, MAYBE

10:09AM 6      IT'S ONE OR THE OTHER, MAYBE IT DOESN'T REALLY MATTER IN THIS

10:09AM 7      CONTEXT.

10:09AM 8          AND I JUST WANT TO KNOW IF THERE'S A POSITION ON THIS

10:09AM 9      QUESTION OR NOT.  SO I WILL START WITH YOU, MR. -- EXCUSE ME.

10:09AM 10         MR. PETERS:  IF I MAY, ELLIOT PETERS ON BEHALF OF

10:09AM 11     THE PGA TOUR.

10:09AM 12         ON THE GOVERNING LAW ISSUE, YOUR HONOR, WE HAVE LOOKED AT

10:09AM 13     IT.  IT'S NOT CRYSTAL CLEAR WHETHER IT'S SUPPOSED TO BE UNDER

10:09AM 14     THESE PROCEDURAL CIRCUMSTANCES SECOND CIRCUIT LAW WHERE THE

10:09AM 15     SUBPOENA WAS SERVED WHERE THE MOTION WAS FILED FOR THAT REASON

10:09AM 16     AND NOW WE AGREED TO TRANSFER IT BACK TO THIS COURT, WHICH IS,

10:09AM 17     OF COURSE, WHERE THE CASE IS PENDING BEFORE JUDGE FREEMAN AND

10:09AM 18     YOUR HONOR.

10:10AM 19         I DON'T BELIEVE -- THERE'S RELEVANT LAW FROM THE SECOND

10:10AM 20     CIRCUIT, THERE'S RELEVANT LAW FROM THE NINTH CIRCUIT, AND

10:10AM 21     THERE'S RELEVANT LAW FROM THE UNITED STATES SUPREME COURT.

10:10AM 22         THE SECOND CIRCUIT AND NINTH CIRCUIT LAW DOES NOT APPEAR

10:10AM 23     TO US TO BE MATERIALLY DIFFERENT, SO WE WERE INTENDING TO

10:10AM 24     DISCUSS, TO THE EXTENT THAT THEY'RE OF INTEREST TO YOUR HONOR,

10:10AM 25     AUTHORITIES FROM BOTH OF THOSE JURISDICTIONS.

10:10AM 1    I DON'T BELIEVE IT'S OUTCOME DETERMINATIVE IN ANY WAY ON

10:10AM 2    ANY ISSUE, WHETHER IT'S THE SECOND CIRCUIT OR THE

10:10AM 3    NINTH CIRCUIT.

10:10AM 4        SO I THINK YOUR HONOR IS IN A POSITION TO CONSIDER ALL OF

10:10AM 5    THOSE AUTHORITIES AND RELY ON THOSE WHICH YOU THINK ARE HELPFUL

10:10AM 6    TO THE COURT WITHOUT MAKING THAT DISTINCTION, BECAUSE I DON'T

10:10AM 7    THINK IT MATTERS.

10:10AM 8            THE COURT:  OKAY.

10:10AM 9            MR. PETERS:  BUT IT IS SOMETHING THAT WE HAVE

10:10AM 10   THOUGHT ABOUT, TOO, AND WE HAVE NOT BEEN ABLE TO FIND A CLEAR

10:10AM 11   ANSWER ON THAT QUESTION.

10:10AM 12           THE COURT:  ALL RIGHT.  THAT'S VERY HELPFUL.  THANK

10:10AM 13   YOU, MR. PETERS.

10:10AM 14       BEFORE WE PROCEED THROUGH THE OTHER SUBSTANTIVE ISSUES,

10:10AM 15   LET ME JUST ASK IF THE RESPONDING PARTIES HAVE A DIFFERENT

10:11AM 16   POINT OF VIEW.

10:11AM 17           MR. BASH:  THANK YOU, YOUR HONOR.

10:11AM 18       JOHN BASH FROM QUINN EMANUEL FOR THE PLAINTIFF, FOR PIF

10:11AM 19   AND MR. AL-RUMAYYAN.

10:11AM 20       WE TAKE THE POSITION THAT THE NINTH CIRCUIT LAW APPLIES.

10:11AM 21   WE'RE IN AGREEMENT WITH THE OTHER SIDE THAT IT PROBABLY DOESN'T

10:11AM 22   MAKE A DIFFERENCE IN THIS CASE.  WE HAVEN'T IDENTIFIED A

10:11AM 23   DIVISION OF AUTHORITY IN THE CASES THAT MATTER.

10:11AM 24       BUT TYPICALLY IT'S THE APPELLATE COURT'S PRECEDENT THAT

10:11AM 25   WOULD REVIEW THIS COURT ULTIMATELY, AND THAT'S THE

10:11AM 1    NINTH CIRCUIT.  SO THIS IS NOT LIKE A PATENT CASE WHERE YOU

10:11AM 2    MIGHT BE SITTING AND THEN IT WOULD BE REVIEWED BY THE FEDERAL

10:11AM 3    CIRCUIT.

10:11AM 4         SO I DON'T KNOW OF ANY SPECIAL RULE THAT WOULD MEAN IT'S

10:11AM 5    NINTH CIRCUIT -- OR SECOND CIRCUIT PRECEDENT IN THIS CASE.

10:11AM 6    IT'S ALL FEDERAL LAW, AND IT SHOULD BE THE PRECEDENT OF THE

10:11AM 7    COURT THAT WOULD REVIEW THIS COURT.  THANK YOU.

10:11AM 8             THE COURT:  ALL RIGHT.  THANK YOU, MR. BASH.  THAT'S

10:11AM 9    HELPFUL.

10:11AM 10        THEN LET'S BEGIN.  MR. PETERS, BACK TO YOU OR WHOEVER HAS

10:11AM 11   THE MIKE ON THIS ISSUE, AND WE'LL START WITH SOVEREIGN IMMUNITY

10:12AM 12   AS IT RELATES TO PIF.

10:12AM 13        AS I SAY, I HAVE BEEN THROUGH THE PAPERS, AND WE CAN GET

10:12AM 14   RIGHT TO WHETHER EITHER ONE OR BOTH OF THE EXCEPTIONS ARE

10:12AM 15   VIEWED, COMMERCIAL ACTIVITY OR WAIVER APPLY.

10:12AM 16             MR. PETERS:  OKAY.  YOUR HONOR, I HAVE SOME

10:12AM 17   POWERPOINT SLIDES.  I'D LIKE TO HAND THEM UP TO THE COURT AND

10:12AM 18   YOUR HONOR'S LAW CLERK, JUST TO THE EXTENT THAT THEY'RE

10:12AM 19   HELPFUL, THEY'RE ORGANIZED IN VERY MUCH THE SAME WAY THAT YOU

10:12AM 20   WENT THROUGH THE ISSUES.

10:12AM 21        I DO START WITH A NUMBER OF FACTUAL SLIDES TO HELP

10:12AM 22   IDENTIFY FOR THE COURT SOME OF THE EVIDENCE WHICH THEN INFORMS

10:12AM 23   THE LEGAL ANALYSIS, AND I WOULD LIKE TO WALK THROUGH THAT, BUT

10:12AM 24   TO THE EXTENT THAT IT'S HELPFUL TO YOUR HONOR AND IF I'M

10:12AM 25   TELLING YOU THINGS THAT ARE NOT OF INTEREST OR YOU WANT ME TO

| | |
|---|---|
| 10:12AM | 1 |
| 10:12AM | 2 |
| 10:13AM | 3 |
| 10:13AM | 4 |
| 10:13AM | 5 |

10:12AM  1   MOVE, OF COURSE, YOU'LL TELL ME THAT.

10:12AM  2          THE COURT:  DON'T WORRY, I WILL.  I'M NOT SURE WE'LL

10:13AM  3   GET THROUGH EVERYTHING TODAY.

10:13AM  4          MR. PETERS:  I KNOW YOU WILL.  I'M GOING TO MOVE

10:13AM  5   QUICKLY THROUGH SOME OF THE FACTS.

10:13AM  6      OBVIOUSLY WE START OUT WITH THE FACT THAT BACK IN AUGUST

10:13AM  7   WHEN JUDGE FREEMAN SET A TRIAL DATE, COUNSEL FOR LIV WHO ALSO

10:13AM  8   HAS BEEN COUNSEL FOR PIF, ASSURED JUDGE FREEMAN THAT THEY WOULD

10:13AM  9   MOVE HEAVEN AND EARTH AND DO WHATEVER IS NECESSARY IN TERMS OF

10:13AM 10   DISCOVERY.  THEY PROMISED TO COOPERATE WITH US.  THEY SAID THEY

10:13AM 11   NEVER REQUIRE ANYTHING FORMAL AND THAT EVERYTHING WOULD COME

10:13AM 12   TOGETHER SWIMMINGLY.  THAT ISN'T WHAT HAS HAPPENED SINCE THEN.

10:13AM 13      THEY ACCEPTED SERVICE OF A SUBPOENA AND THEN HAVE RAISED

10:13AM 14   NUMEROUS OBJECTIONS.  THEY HAVE NOT PRODUCED OR AGREED TO

10:13AM 15   PRODUCT A SINGLE THING, AND THEY TAKE THE POSITION OBVIOUSLY

10:13AM 16   THAT THEY HAVE SOVEREIGN IMMUNITY, THAT THEY'RE NOT SUBJECT TO

10:13AM 17   PERSONAL JURISDICTION, THAT THEY WERE NOT PROPERLY SERVED, EVEN

10:13AM 18   THOUGH THEY AGREED TO ACCEPT SERVICE, AND THEY HAVE TAKEN THE

10:13AM 19   POSITION THAT THEY WON'T PRODUCE A THING.

10:13AM 20      SO GOING TO -- I HAVE AN OUTLINE ON PAGE 5.  AND THEN

10:14AM 21   STARTING ON PAGE 7 YOUR HONOR HAS SAID, AND I AGREE WITH YOU

10:14AM 22   COMPLETELY, THAT THE FACTS THAT RELATE TO SOVEREIGN IMMUNITY

10:14AM 23   AND THE FACTS THAT RELATE TO THE JURISDICTIONAL QUESTIONS ARE

10:14AM 24   LARGELY THE SAME.  SO I'M JUST GOING TO WALK THROUGH SOME OF

10:14AM 25   THOSE THAT MATTER, THE POINT BEING TO DEMONSTRATE THE

10:14AM 1    INVOLVEMENT OF PIF AND MR. AL-RUMAYYAN IN COMMERCIAL ACTIVITIES

10:14AM 2    IN THE UNITED STATES, IN NEW YORK FOR PURPOSES OF ADDRESSING

10:14AM 3    BOTH THE FOREIGN SOVEREIGN IMMUNITIES ACT QUESTION AND THE

10:14AM 4    JURISDICTIONAL QUESTION.

10:14AM 5            THE COURT:  STARTING WITH COMMERCIAL ACTIVITY?

10:14AM 6            MR. PETERS:  YEAH.  WELL, I ACTUALLY THINK I'M GOING

10:14AM 7    TO START WITH WAIVER FACTUALLY.  BUT ON SLIDE 7 HERE OBVIOUSLY

10:14AM 8    PIF OWNS 93 PERCENT OF LIV.  PIF FOUNDED LIV UNDER THE

10:14AM 9    INSTRUCTION OF MR. AL-RUMAYYAN, THE GOVERNOR OF PIF.  PIF

10:15AM 10   ASSUMES ALL FINANCIAL RISKS AT THIS PROJECT DUE TO ITS

10:15AM 11   100 PERCENT FUNDING OF THE PROJECTS, AND PIF HAS A PURPOSE TO

10:15AM 12   FUND PIF AND RUN PIF.

10:15AM 13       NOW LET'S LOOK AT --

10:15AM 14           THE COURT:  NOW, ARE YOU REFERENCING THE

10:15AM 15   SUBSCRIPTION AGREEMENT?

10:15AM 16           MR. PETERS:  I'M NOW -- ON PAGE 8 -- BUT IN ORDER TO

10:15AM 17   DO THAT WE HAVE TO ADDRESS THE ADMINISTRATIVE MOTION THAT I

10:15AM 18   THINK WAS UNOPPOSED.

10:15AM 19           THE COURT:  WE DO.  AND I HAVE INADVERTENTLY SKIPPED

10:15AM 20   OVER THAT IN MY NOTES.

10:15AM 21           MR. PETERS:  ME, TOO.

10:15AM 22           THE COURT:  AND I'M GOING TO -- WE'RE GOING TO GO

10:15AM 23   BACK TO THE ADMINISTRATIVE MOTIONS NOW, BUT MR. BASH?

10:15AM 24           MR. BASH:  MY CONCERN IS THAT SOME OF THE MATERIAL

10:15AM 25   THAT MR. PETERS IS REFERENCING, WHILE IT'S REDACTED ON THE

10:15AM 1    PUBLIC SCREEN, HE'S ORALLY SAYING IT AND MUCH OF THAT MATERIAL

10:15AM 2    IS UNDER SEAL.

10:15AM 3            THE COURT:  ALL RIGHT.  THIS HEARING IS NOT SEALED

10:15AM 4    SO LET'S BE CIRCUMSPECT IN OUR COMMENTS.

10:15AM 5            MR. PETERS:  I'LL BE MINDFUL OF THAT.

10:16AM 6            THE COURT:  AND YOU CAN DIRECT ME TO SPECIFIC AREAS.

10:16AM 7            MR. PETERS:  MAY I DISCUSS THE SHAREHOLDER

10:16AM 8    AGREEMENT?  I'M NOT GOING TO DISCUSS IT IN SPECIFIC, BUT MAY IT

10:16AM 9    BE PART OF THE RECORD SO THE COURT CAN CONSIDER IT?

10:16AM 10           THE COURT:  LET ME GO BACK TO THE ADMINISTRATIVE

10:16AM 11   MOTIONS THAT ARE PENDING.  AND I APOLOGIZE.  THAT WAS NEXT IN

10:16AM 12   MY OUTLINE AFTER GOVERNING LAW, AND I WAS ANXIOUS TO GET TO THE

10:16AM 13   OTHER ISSUES.

10:16AM 14       THIS WEEK BOTH SIDES, BY AGREEMENT, FILED ADMINISTRATIVE

10:16AM 15   MOTIONS TO BRING ADDITIONAL EVIDENCE BEFORE THE COURT.  AND I

10:16AM 16   DID REVIEW THE PORTION OF THOSE ADMINISTRATIVE MOTIONS IN THE

10:16AM 17   FIRST INSTANCE.

10:16AM 18       PGA ARGUES TO HAVE A SUBSCRIPTION AND SHAREHOLDERS

10:16AM 19   AGREEMENT THAT WAS PRODUCED BY THE PLAINTIFF LIV AFTER BRIEFING

10:16AM 20   IN THIS CASE CLOSED OR BRIEFING ON THESE ISSUES HAD CLOSED AND

10:17AM 21   REQUESTED PERMISSION TO BRING THAT TO THE COURT'S ATTENTION.

10:17AM 22       I FIND THAT THERE IS GOOD CAUSE TO GRANT PGA'S

10:17AM 23   ADMINISTRATIVE MOTION.  I HAVE GRANTED THAT.

10:17AM 24           AND THEN I LOOKED AT THE SUBSTANTIVE SUBMISSION BY PGA

10:17AM 25   WHICH WAS A SHORT ADDITIONAL ARGUMENT AND THE AGREEMENT ITSELF

10:17AM 1    WHICH I HAVE HAD AN OPPORTUNITY TO REVIEW.

10:17AM 2        I ALSO RECEIVED AN ADMINISTRATIVE MOTION FROM PIF AND

10:17AM 3    MR. AL-RUMAYYAN WITH A REQUEST FOR ADDITIONAL BRIEFING RELATING

10:17AM 4    TO THE IMPACT OF SAUDI LAW OR THE IMPACT OF THE SUBPOENAS, HOW

10:17AM 5    THAT MAY INTERACT WITH SAUDI LAW, AND THAT MOTION I DENY FOR

10:17AM 6    THE FOLLOWING REASONS:

10:17AM 7        THE SUBPOENAS IN THIS CASE WERE SERVED BY AGREEMENT OF THE

10:18AM 8    PARTIES ON SEPTEMBER 22ND.  SO TO THE EXTENT THIS ISSUE WAS

10:18AM 9    KNOWN OR RIPE, WE'LL TAKE IT AT THAT DATE.

10:18AM 10       ALSO THEN A MOTION TO COMPEL WAS FILED BY PGA ON

10:18AM 11   OCTOBER 28TH, AND THE MOTION TO QUASH IN WHICH THESE ISSUES OF

10:18AM 12   THE SAUDI LAW SPECIFICALLY COME UP WERE FILED HERE IN THIS

10:18AM 13   DISTRICT PURSUANT TO AGREEMENT OF THE PARTIES ON NOVEMBER 22ND.

10:18AM 14       SO THIS ISSUE IS -- THE IMPACT OF SAUDI LAW IS NOT NEW.

10:18AM 15   IT'S SOMETHING THAT HAS -- WAS ALREADY PRESENTED TO THE COURT,

10:18AM 16   ARGUED, IT HAS BEEN PENDING FOR A COUPLE OF MONTHS NOW, ALMOST

10:18AM 17   TWO MONTHS, AND THERE'S NO SHOWING THAT THERE'S EITHER SOME NEW

10:18AM 18   DEVELOPMENT IN THE LAW OR SOME NEW FACTS.  THERE'S JUST A

10:18AM 19   REQUEST FOR YET FURTHER BRIEFING ON THE ISSUE, AND WE ARE UNDER

10:19AM 20   SOMEWHAT OF AN EXPEDITED SCHEDULE IN THIS CASE.

10:19AM 21       I THINK THERE WAS AMPLE TIME TO RAISE ANY ADDITIONAL

10:19AM 22   EVIDENCE OR BRING IT TO THE COURT'S ATTENTION OR SEEK LEAVE OF

10:19AM 23   COURT TO BRING IT TO THE COURT'S ATTENTION, AND CERTAINLY IN

10:19AM 24   ADVANCE OF FOUR DAYS BEFORE THE HEARING ON THESE ISSUES.

10:19AM 25       SO I DO NOT FIND GOOD CAUSE TO SUPPORT THE ADMINISTRATIVE

10:19AM 1    MOTION BY PIF AND MR. AL-RUMAYYAN, AND THAT MOTION WILL BE

10:19AM 2    DENIED.

10:19AM 3            MR. SURPRENANT:  YOUR HONOR, RESPECTFULLY, MAY I

10:19AM 4    ADDRESS THAT?

10:19AM 5            THE COURT:  YES, MR. SURPRENANT, BRIEFLY.

10:19AM 6            MR. SURPRENANT:  THANK YOU.

10:19AM 7        WE HAD PREPARED, YOUR HONOR, A REPLY TO THE PGA TOUR'S

10:19AM 8    BRIEF SUPPLEMENTAL MEMORANDUM.  AND WHEN WE RECEIVED

10:19AM 9    YOUR HONOR'S ORDER SAYING THAT YOU WOULD CONSIDER IT, WE HAD

10:19AM 10   UNDERSTOOD THAT THOSE ISSUES WOULD BE PUT OFF UNTIL LATER.

10:20AM 11       WE HAD PREPARED A BRIEF AND A DECLARATION TO ADDRESS THOSE

10:20AM 12   ISSUES, AND WE THINK IT WOULD BE HELPFUL TO YOUR HONOR TO HAVE

10:20AM 13   THAT JUST ON ONE ISSUE, WHICH IS THE TIMING.

10:20AM 14           THE COURT:  UH-HUH.

10:20AM 15           MR. SURPRENANT:  WE HAD A DECLARATION OF

10:20AM 16   SCOTT HVIDT, H-V-I-D-T, OF GIBSON, DUNN, AND WHAT HE EXPLAINED,

10:20AM 17   AND HE'S IN CHARGE OF DISCOVERY FOR GIBSON, AND WHAT HE

10:20AM 18   EXPLAINED IS THAT THE DOCUMENT, THE SHAREHOLDER AGREEMENT, WAS

10:20AM 19   IN PRIVILEGE REVIEW.  AND THE REASON IT WAS IN PRIVILEGE REVIEW

10:20AM 20   IS THE TEXT, THE CAPTION PAGE OF THE DOCUMENT, OTHER THAN THE

10:20AM 21   TITLE SAYS GIBSON, DUNN & CRUTCHER U.K. LLC.  SO IT WAS IN

10:20AM 22   PRIVILEGE REVIEW.

10:20AM 23       WHEN IT WAS MENTIONED PASSINGLY IN A DECLARATION, THE TOUR

10:20AM 24   ASKED FOR IT.  WE IMMEDIATELY RESPONDED AND SAID WE'LL GET BACK

10:20AM 25   TO YOU.

| | | |
|---|---|---|
| 10:20AM | 1 | THE COURT:  I THINK THIS WAS IN PIF'S ADMINISTRATIVE |
| 10:21AM | 2 | MOTION WHERE IT DID ADDRESS THE TOUR'S REQUEST.  THIS SOUNDS |
| 10:21AM | 3 | VERY FAMILIAR AS TO WHAT LED UP TO THE PRODUCTION OF THE |
| 10:21AM | 4 | DOCUMENT AT THE TIME IT WAS PRODUCED. |
| 10:21AM | 5 | MR. SURPRENANT:  OKAY, YOUR HONOR.  THANK YOU, |
| 10:21AM | 6 | YOUR HONOR. |
| 10:21AM | 7 | WE DO THINK THAT BOTH ON THE MERITS -- ON THE TIMING AND |
| 10:21AM | 8 | ON THE ISSUES THAT ARE RAISED, IT WOULD BE HELPFUL TO |
| 10:21AM | 9 | YOUR HONOR TO BE ABLE TO FILE THAT AS WE WOULD HAVE ATTEMPTED |
| 10:21AM | 10 | TO FILE IT THIS WEEK HAD WE NOT MISUNDERSTOOD YOUR HONOR'S |
| 10:21AM | 11 | RULING. |
| 10:21AM | 12 | THE COURT:  AND YOU DIDN'T MISUNDERSTAND MY |
| 10:21AM | 13 | UNDERSTANDING.  WE SAID WE WOULD ADDRESS THE ADMINISTRATIVE |
| 10:21AM | 14 | MOTIONS TODAY, AND HERE WE ARE. |
| 10:21AM | 15 | IF THERE ARE FACTS OR ARGUMENT THAT WERE NOT IN PIF'S |
| 10:21AM | 16 | ADMINISTRATIVE MOTION BECAUSE THE PARTIES AGREED THEY WOULD PUT |
| 10:22AM | 17 | FORTH THEIR ADMINISTRATIVE MOTIONS AND RESPOND TO THE OTHER |
| 10:22AM | 18 | SIDE'S IN A SINGLE FILING. |
| 10:22AM | 19 | MR. SURPRENANT:  YES. |
| 10:22AM | 20 | THE COURT:  SO I DID READ THAT.  SO IF THERE IS |
| 10:22AM | 21 | SOMETHING IN ADDITION, YOU MAY SUBMIT IT, FILE IT AND SUBMIT |
| 10:22AM | 22 | IT, AND I WILL TAKE A LOOK AT IT. |
| 10:22AM | 23 | MR. SURPRENANT:  BUT NOT ARGUE IT NOW. |
| 10:22AM | 24 | THE COURT:  BUT NO NEED TO ARGUE IT NOW.  AND I ONLY |
| 10:22AM | 25 | WANT TO SEE IT IF THERE IS SOMETHING THAT YOU DIDN'T ALREADY |

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 10:22AM  | 1  | ARGUE IN YOUR ADMINISTRATIVE MOTION.                         |
| 10:22AM  | 2  | MR. SURPRENANT:  THERE IS, YOUR HONOR.  I THINK IT           |
| 10:22AM  | 3  | WOULD BE VERY HELPFUL TO THE COURT.                          |
| 10:22AM  | 4  | THE COURT:  OKAY.  DO YOU WANT TO TELL ME WHAT THAT          |
| 10:22AM  | 5  | IS THAT IS NEW, BRIEFLY?                                     |
| 10:22AM  | 6  | MR. SURPRENANT:  ONE OF THE KEY THINGS, YOUR HONOR,          |
| 10:22AM  | 7  | IS WITHOUT ANALYSIS, THE TOUR ASSERTS OR ASSUMES THAT TO     |
| 10:22AM  | 8  | CONSENT, THAT TO PIF CONSENTING TO SOMETHING THAT LIV WANTS TO |
| 10:22AM  | 9  | DO, MEANS THAT PIF CONTROLS LIV OR THAT LIV IS AN AGENT.     |
| 10:22AM  | 10 | THE COURT:  THAT'S A SUBSTANTIVE ARGUMENT THAT WILL          |
| 10:22AM  | 11 | COME UP WHEN WE GET TO THE JURISDICTIONAL ISSUES, AND I'M    |
| 10:23AM  | 12 | CONFIDENT I UNDERSTAND THE PARTIES WILL DISPUTE THAT.        |
| 10:23AM  | 13 | MR. SURPRENANT:  OKAY.  THAT WAS THE CENTRAL POINT           |
| 10:23AM  | 14 | THAT I WANTED TO BRING UP, YOUR HONOR.                       |
| 10:23AM  | 15 | THE COURT:  OKAY.  I UNDERSTAND.  I'M NOT SAYING             |
| 10:23AM  | 16 | THAT I'M ACCEPTING AS TRUE ANYTHING ANYBODY IS SAYING OR     |
| 10:23AM  | 17 | ARGUING OR ACCEPTING AS DISPOSITIVE ANYTHING THAT ANYONE IS  |
| 10:23AM  | 18 | ARGUING.  I'VE SIMPLY ACCEPTED THE PLEADINGS, AND I WILL TAKE |
| 10:23AM  | 19 | THOSE INTO CONSIDERATION.                                    |
| 10:23AM  | 20 | MR. SURPRENANT:  OKAY.  SO TO THE EXTENT THAT WE             |
| 10:23AM  | 21 | WANT TO ADDRESS THAT PLEADING, WE SHOULD DO SO HERE TODAY.   |
| 10:23AM  | 22 | THE COURT:  YOU CAN DO IT TODAY AND IF YOU WANT TO           |
| 10:23AM  | 23 | SUBMIT A WRITTEN REPLY, YOU CAN DO THAT AS WELL.             |
| 10:23AM  | 24 | MR. SURPRENANT:  THANK YOU FOR YOUR CLARIFICATION,           |
| 10:23AM  | 25 | YOUR HONOR.                                                  |

| | |
|---|---|
| 10:23AM | 1 |

THE COURT:  CERTAINLY.

OKAY.  DESPITE MY BEST EFFORTS TO BE VERY ORGANIZED IN OUR HOUSEKEEPING, AS I SAY, THERE ARE A LOT OF LAYERS TO THE ISSUES HERE TO US TODAY.  SO THAT'S WHERE WE ARE IN THE ADMINISTRATIVE MOTIONS.  NOW WE'RE BACK ON --

MR. PETERS:  I'M ON SLIDE 8, YOUR HONOR.  AND MINDFUL OF THE COURT'S REMINDER TO BE CIRCUMSPECT, I'M GOING TO DO THAT, BUT I'M JUST GOING TO POINT OUT RELEVANT EVIDENCE WITHOUT GOING INTO DETAIL ABOUT IT.

THE COURT:  OKAY.  LET ME KNOW IF -- MY QUESTION WAS ON THE TWO BULLET POINTS ON SLIDE 7, ON THE BOTTOM TWO BULLET POINTS.  ARE YOU POINTING TO THE SUBSCRIPTION AGREEMENT OR ARE YOU POINTING TO SOMETHING ELSE?

MR. PETERS:  I'LL TELL YOU WHAT THAT IS.  THAT IS A SORT OF A POWERPOINT SLIDE PREPARED BY PIF THAT WAS I THINK INTERNAL, AND IT REFERS TO THIS THING CALLED PROJECT WEDGE, AND THAT'S WHERE THOSE CITATIONS PRIMARILY COME FROM, AND THEY CAN BE LOCATED IN OUR PAPERS.  THE HOOD DECLARATION WAS PART OF OUR REPLY SUBMISSION, AND THOSE ARE EXHIBITS WITH JUMP CITES TO THE PAGES.

THE COURT:  I JUST -- I DON'T HAVE ALL OF THE EXHIBITS MEMORIZED AS TO WHICH NUMBERS ARE WHICH DOCUMENTS.

MR. PETERS:  YEAH.  AND TO THE EXTENT IT'S HELPFUL, YOUR HONOR, DISCOVERY HAS BEEN ONGOING WHILE WE'VE BEEN DOING THIS BRIEFING.

10:25AM 1          THE COURT:  YES.

10:25AM 2          MR. PETERS:  SO I THINK THAT THE EXHIBITS THAT WE

10:25AM 3   FILED ON BEHALF OF OUR REPLY ARE PROBABLY MORE ON POINT BECAUSE

10:25AM 4   WE HAD A LITTLE BIT MORE ACCESS TO DOCUMENTS.  SO THE HOOD

10:25AM 5   DECLARATION IS A GOOD SOURCE FOR OUR EVIDENCE AS IS THIS

10:25AM 6   SHAREHOLDER AGREEMENT, WHICH IS NOW A PART OF THE RECORD

10:25AM 7   PURSUANT TO YOUR HONOR'S ORDER THIS MORNING.

10:25AM 8          THE COURT:  YEP.

10:25AM 9          MR. PETERS:  PAGE 8 TALKS ABOUT HOW PIF HAS TO

10:25AM 10  CONSENT TO CERTAIN MATTERS BECAUSE PIF IS THE INVESTOR, AND

10:25AM 11  WE'LL JUST FLIP THROUGH AND SEE WHAT THEY HAVE TO CONSENT TO.

10:25AM 12     THE OPERATING BUDGET, THAT'S ON PAGE 8.

10:25AM 13     9, THEY HAVE TO CONSENT TO PLAYER PARTICIPATION

10:25AM 14  AGREEMENTS.

10:25AM 15         THE COURT:  UH-HUH.

10:25AM 16         MR. PETERS:  BROADCASTING AGREEMENTS, WHICH INVOLVE

10:25AM 17  CERTAIN NATIONS OR HAVE A CERTAIN VALUE; ANY BRAND OR

10:26AM 18  SPONSORSHIP AGREEMENT, THEY HAVE TO CONSENT TO AND APPROVE.

10:26AM 19         AND THEN, OF COURSE, ON PAGE 10, THE INITIATION AND

10:26AM 20  SUBSEQUENT CONDUCT OF ANY LITIGATION.

10:26AM 21         AND I'M JUST GOING TO STOP THERE AND ADDRESS THE WAIVER

10:26AM 22  ISSUE BECAUSE WHAT DOES THIS MEAN?  THIS MEANS THAT PIF AND

10:26AM 23  MR. AL-RUMAYYAN, WHO IS THE GOVERNOR OF PIF AND CHAIRMAN OF THE

10:26AM 24  BOARD OF THE LIV JERSEY ENTITY, THAT THEY CONSENTED TO THE

10:26AM 25  FILING OF THIS LITIGATION IN THIS COURT, AND THEY MUST BE

10:26AM  1       CONSENTING TO ITS SUBSEQUENT CONDUCT TODAY BECAUSE HERE WE ARE.

10:26AM  2          SO THEY CONSENT TO THIS LITIGATION.  THEY KNEW IT WAS

10:26AM  3       GOING TO BE FILED IN A U.S. COURT; THEY KNEW IT WAS GOING TO BE

10:26AM  4       BROUGHT BY A SUBSIDIARY THAT THEY FUND COMPLETELY; THEY KNEW IT

10:27AM  5       WAS GOING TO INVOLVE PLAYER AGREEMENTS, WHICH THEY CONTROL;

10:27AM  6       THEY KNEW IT WAS GOING TO INVOLVE SPONSOR ISSUES ON THE

10:27AM  7       ANTITRUST SIDE, WHICH THEY CONTROL; THEY KNEW IT WAS GOING TO

10:27AM  8       INVOLVE BROADCAST AGREEMENTS WHICH IS CENTRAL TO THE ANTITRUST

10:27AM  9       CASE, WHICH THEY CONTROL AND HAD THE ABILITY TO EITHER APPROVE

10:27AM 10       OR DISAPPROVE OF.

10:27AM 11          THE COURT:  SO IT'S YOUR POSITION THAT IF IN A

10:27AM 12       SHAREHOLDER AGREEMENT THERE'S A GENERAL STATEMENT OF THE FUNDER

10:27AM 13       CONTROLS OR MUST CONSENT OR APPROVE LITIGATION GENERALLY, THAT

10:27AM 14       THEN THAT IS THE FUNDER'S CONSENT TO ANY SPECIFIC SUBSEQUENT

10:27AM 15       LITIGATION THAT ARISES OR RELATES TO THAT AGREEMENT?

10:27AM 16          MR. PETERS:  YES, AND A LITTLE BIT MORE THAN THAT

10:28AM 17       BECAUSE WE INFER AND BELIEVE, AND THERE'S NO EVIDENCE TO THE

10:28AM 18       CONTRARY, THAT PURSUANT TO THIS AGREEMENT, PIF MUST IN FACT

10:28AM 19       HAVE CONSENTED TO THE FILING OF THIS LITIGATION.

10:28AM 20          THIS SHAREHOLDER'S AGREEMENT WAS ENTERED INTO RECENTLY.

10:28AM 21       THE EVIDENCE SHOWS THE LITIGATION WAS CONTEMPLATED BY PIF AND

10:28AM 22       LIV FROM THE BEGINNING.

10:28AM 23          PIF'S LAWYERS --

10:28AM 24          THE COURT:  WHAT EVIDENCE SHOWS THE LITIGATION WAS

10:28AM 25       CONTEMPLATED FROM THE BEGINNING?

10:28AM 1        MR. PETERS:  THERE'S EVIDENCE IN THE RECORD, AND I'M

10:28AM 2   ABOUT TO GET TO IT, THAT PIF -- IN FACT, MR. AL-RUMAYYAN

10:28AM 3   PERSONALLY ASSURED GOLFERS THAT FROM A LEGAL PERSPECTIVE, PIF

10:28AM 4   WOULD BACK THEM UP.

10:28AM 5        IN THEIR AGREEMENTS, PIF AGREED TO INDEMNIFY THE GOLFERS.

10:28AM 6   PIF IS PAYING THEIR LEGAL EXPENSES.

10:28AM 7        THE LAW FIRM THAT MR. SURPRENANT JUST REFERRED TO AS

10:28AM 8   HAVING DRAFTED THIS SHAREHOLDER AGREEMENT BECAUSE IT SAYS

10:28AM 9   GIBSON, DUNN & CRUTCHER RIGHT ON THE FRONT PAGE OF IT IS THE

10:29AM 10  LAW FIRM THAT BROUGHT THIS LAWSUIT AND REPRESENTED ORIGINALLY

10:29AM 11  JUST THE PLAYERS AND NOW SOME OF THE PLAYERS AND LIV.

10:29AM 12       SO I THINK THAT THERE IS SUBSTANTIAL -- CIRCUMSTANTIAL

10:29AM 13  EVIDENCE.  I THINK IF WE GET PIF'S DOCUMENTS, WHICH WE'RE

10:29AM 14  SEEKING VIA SUBPOENA, WE'LL KNOW, WE'LL SEE BOARD MINUTES,

10:29AM 15  WE'LL SEE PROBABLY SOME KIND OF INVESTOR, SHAREHOLDER TYPE OF

10:29AM 16  APPROVAL.

10:29AM 17       THE COURT:  LET'S MOVE ON WITH THE EVIDENCE THAT

10:29AM 18  WE'VE GOT BEFORE US TODAY.

10:29AM 19       MR. PETERS:  OKAY.  OKAY.

10:29AM 20       THE COURT:  KEEPING IN MIND THAT IF SOMETHING HAS

10:29AM 21  BEEN PROVIDED CONFIDENTIALLY, TO ADDRESS IT CAREFULLY.

10:29AM 22       MR. PETERS:  GOT IT.

10:29AM 23       THE COURT:  I DO HAVE THE POINT -- THE POWER POINTS

10:29AM 24  HERE IN FRONT OF ME.

10:29AM 25       MR. PETERS:  I'LL BE VERY CAREFUL.

10:29AM 1      THE NEXT SLIDE, NUMBER 11, TALKS ABOUT A LIST OF THE

10:29AM 2   TOPICS THAT WE'RE GOING TO BE DISCUSSING INVOLVING

10:30AM 3   MR. AL-RUMAYYAN AND PEOPLE FROM LIV.

10:30AM 4      AND THE PURPOSE OF THIS IS JUST TO SHOW THE GRANULARITY OF

10:30AM 5   HIS DECISION MAKING.  THEY PORTRAYED HIM IN THEIR PAPERS AS

10:30AM 6   WE'RE MERELY AN INVESTOR, WE'RE A SHAREHOLDER, AND WE BELIEVE

10:30AM 7   EVIDENCE LIKE THIS DEMONSTRATES A TYPE OF INVOLVEMENT.

10:30AM 8      AND OF COURSE WE'RE TALKING ABOUT U.S. GOLFERS BEING PAID

10:30AM 9   IN THE U.S. TO PARTICIPATE IN LIV GOLF EVENTS TAKING PLACE IN

10:30AM 10  THE U.S.  AND I JUST MAKE THAT POINT.  I THINK IT'S OBVIOUS,

10:30AM 11  BUT I MAKE THAT POINT BECAUSE THE COMMERCIAL ACTIVITY EXCEPTION

10:30AM 12  TO THE FOREIGN SOVEREIGN IMMUNITIES ACT IS IMPACTED OBVIOUSLY

10:30AM 13  BY INVOLVEMENT IN COMMERCE THAT EITHER AFFECTS THE

10:30AM 14  UNITED STATES FROM ABROAD OR TAKES PLACE HERE.  WE ARGUE BOTH.

10:30AM 15     SO THE NEXT SLIDE, PAGE 12, SHOWS THAT THERE WAS A WEEKLY

10:30AM 16  MEETING THAT MR. AL-RUMAYYAN PARTICIPATE IN WITH PEOPLE FROM

10:31AM 17  PIF AND THE PEOPLE THAT RUN LIV TO BE BRIEFED ON ISSUES WEEKLY.

10:31AM 18     THE NEXT COUPLE OF SLIDES STARTING ON 13 SHOW THAT LIV

10:31AM 19  MAINTAINED A RUNNING LIST THAT THEY CALLED AN ACTION TRACKER OF

10:31AM 20  THE ISSUES THAT WERE BEFORE MR. AL-RUMAYYAN THAT ALL RELATE TO

10:31AM 21  THE OPERATIONS OF LIV.  AND YOU CAN JUST SEE THAT WE'VE GOT A

10:31AM 22  COUPLE OF EXEMPLARY PAGES FROM THE ACTION TRACKER TO SHOW THE

10:31AM 23  NATURE OF HIS INVOLVEMENT WHICH IS REFLECTED HERE, AND I WON'T

10:31AM 24  BE MORE SPECIFIC THAN THAT, BUT THE COURT HAS THOSE DOCUMENTS.

10:31AM 25     PAGE 15 IS AN EMAIL FROM MR. AL-RUMAYYAN WHERE HE'S

10:31AM 1    INVOLVED IN AN ISSUE ABOUT THE DELAY IN GOLFER'S SCORES BEING

10:31AM 2    POSTED ON A T.V. SCREEN.  OBVIOUSLY A MANAGERIAL ISSUE AND KIND

10:31AM 3    OF IN THE WEEDS ISSUE.  THE POINT OF THIS IS TO SHOW THAT HE'S

10:31AM 4    JUST CONCERNED ON THIS LEVEL OF GRANULARITY.

10:32AM 5         SLIDE 16 WITH CITATIONS SHOWS JUST A LIST OF SIX DIFFERENT

10:32AM 6    BUSINESS ISSUES AND DETAILS THAT THE EVIDENCE SHOWS THAT HE'S

10:32AM 7    INVOLVED IN, AND I'M NOT GOING TO DISCUSS THOSE.  THE COURT CAN

10:32AM 8    SEE WHAT THEY ARE, BUT THEY'RE QUITE GRANULAR.  THESE AREN'T A

10:32AM 9    MERE PASSIVE INVESTOR.  HE'S INVOLVED ON THIS LEVEL OF DETAIL.

10:32AM 10        EXHIBIT 17 I THINK IS VERY SIGNIFICANT.  IT'S AN EMAIL --

10:32AM 11   IT'S A TEXT ACTUALLY BETWEEN MR. AL-RUMAYYAN AND A PARTICULAR

10:32AM 12   GOLFER WHERE REPRESENTATIONS ARE MADE ABOUT THE LEGAL CASE,

10:32AM 13   ABOUT STANDING BEHIND THE GOLFERS IN THE LEGAL CASE, ABOUT

10:32AM 14   WORKING, ABOUT WORKING ON THE DEAL TERMS FOR THE GOLFERS.

10:32AM 15   AGAIN, IT SHOWS AN EXTRAORDINARY LEVEL OF INVOLVEMENT BY

10:33AM 16   MR. AL-RUMAYYAN AND PIF IN THE RECRUITMENT OF GOLFERS.

10:33AM 17             THE COURT:  MR. PETERS, DESCRIBE FOR ME GENERALLY --

10:33AM 18             MR. PETERS:  YES.

10:33AM 19             THE COURT:  -- THE SOURCE OF THE EVIDENCE THAT

10:33AM 20   YOU'RE CITING HERE?  IS THIS FROM LIV'S PRODUCTION?  FROM A

10:33AM 21   THIRD PARTY PRODUCTION?  WHERE IS THIS FROM?

10:33AM 22             MR. PETERS:  IT'S FROM LIV'S PRODUCTION.

10:33AM 23             THE COURT:  OKAY.

10:33AM 24             MR. PETERS:  AND FOR EXAMPLE -- AND THAT'S A VERY

10:33AM 25   GOOD QUESTION.  LIKE, WE GOT THIS EMAIL WHICH IS BETWEEN A

10:33AM 1    GOLFER AND LIV.  IT MAY HAVE COME FROM THE GOLFER'S PHONE.  LIV

10:33AM 2    PRODUCED IT, AND IT HAS A LIV BATES STAMP NUMBER, BUT I WOULD

10:33AM 3    ASSUME AND BELIEVE THAT THERE ARE ADDITIONAL COMMUNICATIONS

10:33AM 4    BASED ON THIS, THAT THERE ARE ADDITIONAL COMMUNICATIONS FROM

10:33AM 5    MR. AL-RUMAYYAN TO INDIVIDUAL GOLFERS, SPONSORS, BROADCASTERS

10:33AM 6    THAT WE WOULD GET IN A PRODUCTION FROM PIF THAT WE HAVEN'T YET

10:33AM 7    GOTTEN.  THIS IS THE ONLY SUCH TEXT THAT WE'VE SEEN INVOLVING

10:33AM 8    MR. AL-RUMAYYAN AND A GOLFER.

10:34AM 9        BUT WE HAVE REQUESTED FROM GIBSON, DUNN THAT THEY PRODUCE

10:34AM 10   ANY --

10:34AM 11            THE COURT:  I'VE SEEN IT.

10:34AM 12            MR. PETERS:  WELL, YOU'VE SEEN THESE OTHER ISSUES,

10:34AM 13   TOO, THAT HAVE BEEN BROUGHT BEFORE YOUR HONOR.  I'M GOING TO

10:34AM 14   KEEP GOING TO JUST POINT OUT WHAT THE SIGNIFICANCE OF THESE

10:34AM 15   ARE.

10:34AM 16       THIS AGENT WHO IS REFERRED TO ON SLIDE 18 IS AN AGENT WHO

10:34AM 17   REPRESENTS A LOT OF DIFFERENT GOLFERS, MANY OF WHOM WERE

10:34AM 18   SUCCESSFULLY RECRUITED OVER TO LIV.

10:34AM 19       AND WHAT THIS SHOWS IS THAT MR. AL-RUMAYYAN OF PIF WAS

10:34AM 20   SPEAKING DIRECTLY TO THIS AGENT ABOUT TRYING TO RECRUIT GOLFERS

10:34AM 21   AND ULTIMATELY SUCCESSFULLY RECRUITING GOLFERS OVER TO LIV.

10:34AM 22       THE NEXT SLIDE, AND YOU CAN SEE IT VERY CLEARLY IF YOU

10:34AM 23   LOOK AT THE EXHIBIT THAT IT REFERS TO, IS THAT MR. AL-RUMAYYAN

10:34AM 24   IS APPROVING THE TERMS OF OFFERS TO GOLFERS THAT ARE BEING

10:34AM 25   RECRUITED TO LIV, AND THEY TALK HERE ACTUALLY ABOUT A DOLLAR

10:35AM 1    RANGE FOR THIS -- IN CONNECTION WITH THE RECRUITMENT OF

10:35AM 2    PLAYERS.

10:35AM 3         AND IT SHOWS THAT MR. AL-RUMAYYAN IS AUTHORIZING AND

10:35AM 4    APPROVING THE RECRUITMENT OF GOLFERS, WHICH IS, OF COURSE, THE

10:35AM 5    CORE OF OUR COUNTERCLAIM IN THIS CASE THAT LIV TORTUOUSLY

10:35AM 6    INTERFERED WITH OUR CONTRACTS BY RECRUITING PLAYERS IN THE WAY

10:35AM 7    THAT THEY DID.

10:35AM 8         SLIDE 20 SHOWS MR. AL-RUMAYYAN DIRECTLY INVOLVED IN

10:35AM 9    SEEKING AND TRYING TO NEGOTIATE BROADCASTING AGREEMENTS.  AND

10:35AM 10   IT REFERS AT THE VERY END THAT MR. AL-RUMAYYAN IS GOING TO CALL

10:35AM 11   A WELL-KNOWN BROADCASTING EXECUTIVE ASSOCIATED WITH A

10:35AM 12   WELL-KNOWN BROADCASTING COMPANY.

10:35AM 13        SLIDE 21 SHOWS PIF USING ITS PORTFOLIO COMPANIES TO

10:35AM 14   CONNECT LIV WITH POTENTIAL SPONSORS SAYING, YOU KNOW, THESE ARE

10:36AM 15   COMPANIES THAT WE HAVE INVESTED IN, WE'LL REACH OUT TO THEM AND

10:36AM 16   HELP YOU GET IN TOUCH WITH THEM SO THAT THEY CAN BE INVOLVED IN

10:36AM 17   SPONSORING.

10:36AM 18        AND THEN 22 SHOWS PIF USING, REFERRING TO MR. AL-RUMAYYAN,

10:36AM 19   TRYING TO GET A PARTICULAR COMPANY THAT PIF HAS A RELATIONSHIP

10:36AM 20   WITH TO SPONSOR LIV GOLF.

10:36AM 21        THE POINT OF ALL OF THIS IS THIS IS COMMERCIAL ACTIVITY.

10:36AM 22   THIS ISN'T WHAT A GOVERNMENT DOES.  THIS IS WHAT SOMEBODY THAT

10:36AM 23   IS RUNNING A GOLF LEAGUE DOES.  THIS IS WHAT A PRIVATE PARTY

10:36AM 24   THAT WANTED TO ENTER GOLF TOURNAMENTS WOULD DO, THEY RECRUIT

10:36AM 25   GOLFERS, THEY TRY AND GET BROADCASTERS, THEY TRY AND GET

10:36AM 1      SPONSORS.  AND HERE YOU HAVE PIF DIRECTLY INVOLVED IN IT DOING

10:36AM 2      IT ON A DAY-BY-DAY, WEEKLY BASIS IN THE U.S.

10:36AM 3          THERE'S A DOCUMENT WHICH TALKS ABOUT MR. AL-RUMAYYAN

10:37AM 4      COMING TO NEW YORK AND COMING TO THE U.S. AND RECRUITING

10:37AM 5      PLAYERS IN THE U.S.  HE COMES TO THESE EVENTS.  WE'VE GOT A

10:37AM 6      PICTURE IN HERE WITH HIM WITH ALL OF THE GOLFERS AT AN EVENT.

10:37AM 7      IT'S HAPPENING IN THE U.S., IT'S COMMERCIAL BEHAVIOR, IT'S

10:37AM 8      THEIR MONEY, IT'S THEIR INVESTMENT, AND THEY HAVE A CONTRACT

10:37AM 9      WHICH CONTROLS IT.  THEY APPROVE THIS LAWSUIT.  THEY CAN'T BE

10:37AM 10     HEARD UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT TO SAY THAT

10:37AM 11     THEY WERE IMMUNE TO SERVICE OF A SUBPOENA.

10:37AM 12         SO LET'S GET TO THE FSIA, AND I'M GOING TO BE TELLING

10:37AM 13     YOUR HONOR THINGS THAT YOU PROBABLY KNOW, SO I'M GOING TO WALK

10:37AM 14     THROUGH IT QUICKLY.

10:37AM 15         ON PAGE 24, OBVIOUSLY THE FSIA CODIFIED --

10:37AM 16             THE COURT:  I DON'T THINK THERE'S ANY DISPUTE THAT

10:37AM 17     WE'RE TALKING ABOUT THE FSIA AS IT RELATES TO PIF.

10:37AM 18             MR. PETERS:  YES, WE DON'T DISPUTE THAT.  IT'S NOT

10:37AM 19     THAT IT'S A GOVERNMENTAL ENTITY, BUT UNDER THE LAW I THINK IT'S

10:37AM 20     CLOSE ENOUGH.  WE DON'T DISPUTE THAT THE FSIA APPLIES TO PIF.

10:38AM 21             THE COURT:  WHAT WE'RE TALKING ABOUT IS --

10:38AM 22             MR. PETERS:  THE EXCEPTION ASKS.

10:38AM 23             THE COURT:  -- THE EXCEPTIONS.

10:38AM 24             MR. PETERS:  AND THE WAY IT WORKS, AND THIS IS WHAT

10:38AM 25     THIS SLIDE SHOWS BASED ON THE JOSEPH CASE, WHICH IS A

10:38AM 1    NINTH CIRCUIT CASE, IS THAT THEY ASSERT IMMUNITY, WHICH THEY

10:38AM 2    DID IN THEIR OBJECTIONS, THEY ASSERTED IMMUNITY TO EVERY SINGLE

10:38AM 3    REQUEST THAT WE MADE.

10:38AM 4        WE'VE NOW COME FORWARD AND IDENTIFIED EXCEPTIONS THAT

10:38AM 5    APPLY AND EVIDENCE THAT SUBSTANTIATES THOSE OBJECTIONS, AND,

10:38AM 6    THEREFORE, THE BURDEN HAS NOW SHIFTED TO THEM TO PROVE BY A

10:38AM 7    PREPONDERANCE OF THE EVIDENCE THAT NEITHER OF THESE EXCEPTIONS

10:38AM 8    THAT WE RELY ON APPLY.

10:38AM 9            THE COURT:  UH-HUH.

10:38AM 10           MR. PETERS:  AND ANOTHER THING YOUR HONOR

10:38AM 11   UNDERSTANDS VERY WELL, BECAUSE YOU REFER TO SOVEREIGN IMMUNITY

10:38AM 12   AND THEN THE COMMON LAW, FSIA APPLIES TO PIF, THEY'RE GOVERNED

10:38AM 13   BY IT.  THE CONGRESS PASSED A STATUTE THAT SAYS HERE'S THE

10:38AM 14   STATUTE, THE COURTS ARE GOING TO INTERPRET IT, BUT THAT APPLIES

10:38AM 15   TO AN ENTITY -- TO A GOVERNMENTAL ENTITY.  FOR MR. AL-RUMAYYAN

10:39AM 16   IT'S COMMON LAW.  IT'S LARGELY THE SAME LAW.  THERE'S A

10:39AM 17   SUPREME COURT CASE WHICH MAKES THAT CLEAR.  THAT'S THE DUNHILL

10:39AM 18   CASE.

10:39AM 19       BUT STARTING OUT -- SO I'M GOING TO TALK FIRST ABOUT THE

10:39AM 20   FSIA, WHICH SOLELY AND EXCLUSIVELY GOVERNS PIF'S CLAIMS UNDER

10:39AM 21   THE BURDEN SHIFTING THAT I JUST DESCRIBED.

10:39AM 22       MY SLIDE 25 TALKS ABOUT WHAT THE COMMERCIAL ACTIVITY IS,

10:39AM 23   COMMERCIAL ACTIVITY CARRIED ON IN THE UNITED STATES BY THE

10:39AM 24   FOREIGN STATE OR IN THIS CASE BY PIF.

10:39AM 25       WE CLAIM THAT APPLIES TO THE ACTIVITIES THAT I'VE JUST

10:39AM  1    OUTLINED TO THE COURT.

10:39AM  2        NUMBER 2, AN ACT OUTSIDE OF THE UNITED STATES IN

10:39AM  3    CONNECTION WITH COMMERCIAL ACTIVITY OF THE FOREIGN STATE

10:39AM  4    ELSEWHERE THAT CAUSES A DIRECT EFFECT IN THE UNITED STATES.

10:39AM  5        AND REALLY THE SIGNIFICANCE OF THAT IS THAT IT DOESN'T

10:39AM  6    MATTER IF, FOR EXAMPLE, MR. AL-RUMAYYAN SENDS A TEXT MESSAGE

10:40AM  7    FROM RIYADH TO A GOLFER IN THE UNITED STATES ATTEMPTING TO

10:40AM  8    RECRUIT A GOLFER WITH MONEY TO PLAY IN A GOLF TOURNAMENT IN THE

10:40AM  9    UNITED STATES.  THAT'S STILL SPECIAL ACTIVITY UNDER THE FSIA

10:40AM  10   EVEN IF HE'S SITTING SOMEWHERE ELSE WHEN HE DOES IT IF HIS

10:40AM  11   INTENTION IS THAT IT HAS AN EFFECT INSIDE OF THE UNITED STATES.

10:40AM  12       THE COURT:  I DO -- I UNDERSTAND THE NEXUS ARGUMENT

10:40AM  13   IN THIS CASE.  LET'S LOOK AHEAD ONLY BECAUSE IT TRACKS MY

10:40AM  14   NOTES, BUT IF YOU GO TO SLIDE -- YOUR SLIDE 28 WHERE YOU'RE

10:40AM  15   TALKING ABOUT SOME OF THE FACTS, WHAT I'M INTERESTED IN IS THE

10:40AM  16   ARGUMENT THAT THIS IS PIF, NOT LIV OR PIF AND LIV.

10:40AM  17       HOW DO YOU MANAGE THAT?  BECAUSE LIV IS THE PLAINTIFF IN

10:40AM  18   THIS CASE AND IT'S LIV'S ACTIONS THAT ARE GOING ON HERE IN THE

10:40AM  19   UNITED STATES.

10:40AM  20       MR. PETERS:  NO -- YES, I UNDERSTAND WHAT YOU'RE

10:41AM  21   SAYING, AND THAT'S CERTAINLY WHAT THEY'VE, WHAT THEY'VE SAID.

10:41AM  22       I WANT TO ANSWER YOUR QUESTION DIRECTLY, BUT I THINK SOME

10:41AM  23   OF THE CASE LAW THAT I CITE ON 26 IS HELPFUL, AND THEN I WANT

10:41AM  24   TO APPLY THE FACTS TO THAT LAW.

10:41AM  25       SO -- AND THERE'S THREE CASES THAT I THINK ARE HELPFUL.

10:41AM 1    THE PABLO STAR CASE, WHICH IS JUDGE LYNCH IN THE SECOND

10:41AM 2    CIRCUIT, WHICH IS THE GOVERNMENT OF WALES DISTRIBUTING

10:41AM 3    PROMOTIONAL MATERIALS ABOUT WALES IN THE UNITED STATES AND

10:41AM 4    USING DYLAN THOMAS TO PROMOTE TRAVEL TO WALES FOUND TO BE

10:41AM 5    COMMERCIAL ACTIVITY.

10:41AM 6        THE LASHEEN CASE, WHICH IS A NINTH CIRCUIT CASE, WHICH IS

10:41AM 7    ABOUT FUNDING AN INSURANCE PLAN IN THE UNITED STATES FOUND TO

10:41AM 8    BE COMMERCIAL ACTIVITY IN THE UNITED STATES.

10:41AM 9        THE EVERARD FINDLAY CONSULTING PLAN, ALSO A SECOND CIRCUIT

10:41AM 10   CASE, NEGOTIATING AND ENTERING INTO -- IT'S BASICALLY A PR

10:42AM 11   CONTRACT IN THE UNITED STATES AND PIF DID THAT.

10:42AM 12           THE COURT:  SO HERE IN THESE CASES AS I RECALL, AND

10:42AM 13   I'M LOOKING AT THEM, THE FOREIGN ENTITY IS A PARTY, IS A NAMED

10:42AM 14   PARTY.

10:42AM 15           MR. PETERS:  UH-HUH.

10:42AM 16           THE COURT:  AND HERE PIF IS NOT A NAMED PARTY.

10:42AM 17       WHAT IS THE THEORY THAT PGA IS REACHING PIF UNDER?  IS IT

10:42AM 18   AGENCY?  IS IT ALTEREGO?  IS IT ONE AND THE SAME?

10:42AM 19           MR. PETERS:  THE FSIA, FOREIGN SOVEREIGN IMMUNITIES

10:42AM 20   ACT, MAKES NO DISTINCTION.  IT SAYS IF THE ACTION IS BASED

10:42AM 21   UPON -- AND HERE OUR POINT IS, I MEAN, A LOT OF THE THINGS LIV

10:42AM 22   SAYS IT DID PIF WAS DOING EITHER HAND IN GLOVE WITH IT OR PIF

10:42AM 23   WAS DOING IT, AND THAT'S THE POINT OF THE EVIDENCE THAT I JUST

10:42AM 24   WALKED THE COURT THROUGH.

10:42AM 25       ACTUALLY, PIF NEGOTIATED WITH A NUMBER OF THESE GOLFERS.

10:43AM 1   ACTUALLY, PIF DECIDED ON WHAT THE TERMS, WHAT THE MONEY WAS

10:43AM 2   GOING TO BE; ACTUALLY, PIF DECIDED THE MONEY TO PAY THE

10:43AM 3   GOLFERS; ACTUALLY, PIF DECIDED WHAT THE LOGO WAS GOING TO LOOK

10:43AM 4   LIKE.

10:43AM 5        PIF WAS CONCERNED ABOUT HOW QUICKLY THE SCORES WOULD

10:43AM 6   APPEAR ON THE SCREEN.  IF YOU LOOK AT THAT LIST OF ACTIONS, IT

10:43AM 7   WAS PIF DOING IT.  PIF, MR. AL-RUMAYYAN, HE'S NEGOTIATING WITH

10:43AM 8   THE BROADCASTERS.  HE'S CALLING THE WELL-KNOWN EXECUTIVE OF A

10:43AM 9   BROADCASTING COMPANY IN ORDER TO TRY AND GET A BROADCASTING

10:43AM 10  CONTRACT.

10:43AM 11       SO THERE -- IT ISN'T SIMPLY AN ALTEREGO, ALTHOUGH IT

10:43AM 12  REALLY IS ALSO AN ALTEREGO.  BUT IT'S MORE THAN THAT,

10:43AM 13  YOUR HONOR, BECAUSE PIF'S INVOLVEMENT WAS SO GRANULAR.  I MEAN,

10:43AM 14  HE'S TEXTING WITH GOLFERS.  HE'S, HE'S ASSURING THEM THAT

10:44AM 15  THEY'RE GOING TO BE PROTECTED IN THIS LITIGATION.  THEY'RE

10:44AM 16  DECIDING TO BRING THIS LITIGATION.

10:44AM 17       AND, YES, I DON'T HAVE THAT DOCUMENT THAT ACTUALLY HAS

10:44AM 18  THEM SAYING WE APPROVE THE FILING OF THE LITIGATION.  IT MUST

10:44AM 19  EXIST BECAUSE HERE WE ARE -- AND THAT'S WHAT IS IN THE

10:44AM 20  AGREEMENT.

10:44AM 21            THE COURT:  UH-HUH.

10:44AM 22            MR. PETERS:  SO I THINK THAT THAT'S A FAIR -- THAT'S

10:44AM 23  A FAIR INFERENCE.

10:44AM 24       27 HAS SOME, JUST SOME QUOTES WHICH I THINK ARE HELPFUL

10:44AM 25  FROM THOSE TWO CASES, AND I THINK THE LAW IS IN HARMONY,

10:44AM 1    ALTHOUGH I DID -- I FOUND THE REASONING IN PABLO STAR HELPFUL

10:44AM 2    BECAUSE I THINK JUDGE LYNCH IS A CLEAR THINKER AND THAT WAS A

10:44AM 3    WELL WRITTEN OPINION.

10:44AM 4        BUT ON 28, WHAT THE POINT OF THIS SLIDE IS REALLY THE

10:44AM 5    DISCONNECT BETWEEN WHAT PIF HAS TOLD THIS COURT AND WHAT THE

10:44AM 6    EVIDENCE SHOWS, AND I JUST WANT TO DIRECTLY ADDRESS SOME OF

10:44AM 7    THOSE THINGS.

10:44AM 8        YOU KNOW, THEY WROTE AL-RUMAYYAN PLAYED NO ROLE IN PLAYER

10:45AM 9    NEGOTIATIONS.

10:45AM 10       WELL, I'VE JUST SHOWED YOU DOCUMENTS WHERE HE IS AGREEING

10:45AM 11   TO AND HAS TO APPROVE THE PLAYER NEGOTIATIONS.  I'VE SHOWN YOU

10:45AM 12   AN AGREEMENT WHERE THAT'S ONE OF THE TOPICS THAT PIF HAS TO

10:45AM 13   APPROVE, AND I'VE SHOWN YOU A TEXT MESSAGE BETWEEN HIM AND A

10:45AM 14   GOLFER IN WHICH IT'S CLEAR THAT THEY HAVE SOME KIND OF PERSONAL

10:45AM 15   RELATIONSHIP AND HE'S MAKING ASSURANCES TO THAT GOLFER.

10:45AM 16       SO THE POINT OF THIS SLIDE IS THAT PIF'S ARGUMENTS ARE NOT

10:45AM 17   CONSISTENT WITH THE FACTS IN THIS RECORD, AND, OF COURSE, WE

10:45AM 18   DON'T HAVE -- WE ONLY HAVE A GLANCE INTO PIF'S DOCUMENTS BASED

10:45AM 19   ON WHAT LIV HAS PRODUCED.

10:45AM 20       AND, OF COURSE, THEY MAKE THE ARGUMENT THAT IT'S JUST LIV.

10:45AM 21   AND WE'RE TRYING TO MEET THAT HEAD ON BY SHOWING YOUR HONOR THE

10:45AM 22   EVIDENCE OF PIF'S INVOLVEMENT AND WHAT MR. AL-RUMAYYAN WAS

10:45AM 23   DOING ON BEHALF OF PIF.

10:46AM 24       AND THEN THE NEXT SLIDE THEY ARGUE THAT PIF HAS DONE A

10:46AM 25   LITTLE MORE THAN INVEST IN LIV.

10:46AM 1      I JUST DON'T THINK THAT THAT STATEMENT HOLDS UP IN THE

10:46AM 2   COLD LIGHT OF MORNING WHEN YOU LOOK AT THE FACTS THAT WE HAVE

10:46AM 3   BEEN ABLE TO MARSHAL AND PRESENT TO YOUR HONOR.

10:46AM 4      LIV'S CLAIMS HAVE NOTHING TO DO WITH PIF.  SAME THING.

10:46AM 5      PIF'S BOARD DOES NOT APPROVE LIV'S BUDGET OR BUDGET

10:46AM 6   CHANGES.

10:46AM 7      THAT'S OUTRIGHT FALSE.  THAT'S JUST FALSE BECAUSE THE

10:46AM 8   SHAREHOLDER AGREEMENT REQUIRES THAT THEY APPROVE THE QUARTERLY

10:46AM 9   BUDGET.

10:46AM 10      THEY ALSO VERY ARTFULLY SAID -- YOU KNOW, WHAT THEY SAID

10:46AM 11   IN A DECLARATION FROM THIS FELLOW MR. TAYLOR, AND THEN THEY

10:46AM 12   ARGUE IN THE BRIEF, WE DIDN'T DIRECT -- THAT PIF DIDN'T DIRECT

10:46AM 13   THIS LITIGATION, AND WE DON'T HAVE EVIDENCE THAT THEY

10:46AM 14   AUTHORIZED IT.

10:47AM 15      WELL, OKAY, MAYBE YOU CAN SAY THAT WITH A STRAIGHT FACE,

10:47AM 16   MAYBE.  BUT IF YOU LOOK AT THAT SHAREHOLDER AGREEMENT AND THE

10:47AM 17   CIRCUMSTANCES OF THIS LAWSUIT, I HAVE A PROBLEM WITH THAT

10:47AM 18   ARGUMENT.  I DON'T THINK IT'S CONSISTENT WITH THE EVIDENCE IN

10:47AM 19   THE CASE.

10:47AM 20         THE COURT:  WELL, YOUR ARGUMENT IS THAT IT'S A

10:47AM 21   REASONABLE INFERENCE BASED ON FACTS, AND YOU'VE REFERRED TO

10:47AM 22   FACTS.  FROM THOSE FACTS, YOU CAN MAKE AN INFERENCE.

10:47AM 23         MR. PETERS:  YEP.

10:47AM 24         THE COURT:  AS A MATTER OF LAW, IS AN INFERENCE

10:47AM 25   SUFFICIENT UNDER THE COMMERCIAL ACTIVITY EXCEPTION?

| | | |
|---|---|---|
| 10:47AM | 1 | MR. PETERS:  ABSOLUTELY. |
| 10:47AM | 2 | AND WHAT COURTS LOOK AT UNDER THE COMMERCIAL ACTIVITY |
| 10:47AM | 3 | EXCEPTION IS THAT THE FACTS -- AND IT OFTEN -- I MEAN, FSIA HAS |
| 10:47AM | 4 | BEEN APPLIED BY COURTS TO SUBPOENAS.  THERE'S CASES IN D.C. |
| 10:47AM | 5 | INVOLVING THE PRESIDENT OF COLUMBIA, INVOLVING A MASAD AGENT, |
| 10:47AM | 6 | SO THERE'S NO QUESTION THAT IT APPLIES TO SUBPOENAS. |
| 10:47AM | 7 | AND I THINK THE ANALYSIS IS THE SAME.  YOU'RE ABSOLUTELY |
| 10:47AM | 8 | RIGHT THAT OFTEN COURTS ARE EVALUATING COMPLAINTS WHICH ARE |
| 10:48AM | 9 | FILED AGAINST AN ENTITY WHICH CLAIMS FOREIGN SOVEREIGN IMMUNITY |
| 10:48AM | 10 | ACT, BUT WE'RE HERE WITH AN UNDERLYING COMPLAINT BROUGHT BY |
| 10:48AM | 11 | PIF'S SUBSIDIARY AND A COUNTERCLAIM AND SUBPOENAS WHICH INFORM |
| 10:48AM | 12 | THE COURT AND THE COURT UNDERSTANDS VERY WELL WHAT THIS LAWSUIT |
| 10:48AM | 13 | IS ABOUT AND THE NEXUS BETWEEN PIF'S COMMERCIAL ACTIVITIES IN |
| 10:48AM | 14 | THIS COUNTRY, WHICH IS EXACTLY WHAT THE LAWSUIT IS ABOUT.  BOTH |
| 10:48AM | 15 | THE ANTITRUST CLAIMS, WHICH RELATE TO ARGUMENTS THAT LIV CAN'T |
| 10:48AM | 16 | GET A FOOTHOLD IN THE GOLF INDUSTRY BECAUSE OF ANTICOMPETITIVE |
| 10:48AM | 17 | CONDUCT. |
| 10:48AM | 18 | THE COURT:  I'M AWARE. |
| 10:48AM | 19 | MR. PETERS:  AND, THEREFORE, THE COMMUNICATIONS WITH |
| 10:48AM | 20 | BROADCASTERS, THE COMMUNICATIONS WITH PLAYERS ARE DIRECTLY |
| 10:48AM | 21 | RELEVANT, AND THEY'RE SQUARELY IN THE BULL'S EYE OF THE |
| 10:48AM | 22 | TORTUOUS INTERFERENCE. |
| 10:48AM | 23 | THE COURT:  OKAY.  LET'S MOVE TO COMMON LAW |
| 10:48AM | 24 | IMMUNITY.  I THINK WE'VE ADDRESSED THE FSIA EXCEPTIONS AS THEY |
| 10:49AM | 25 | RELATE TO PIF -- |

10:49AM  1        MR. PETERS:  YEP, YEP.

10:49AM  2        THE COURT:  -- WITH SOME THOROUGHNESS AND THAT'S

10:49AM  3   HELPFUL.  THANK YOU.

10:49AM  4      SO LET'S TURN TO MR. AL-RUMAYYAN SPECIFICALLY AND COMMON

10:49AM  5   LAW IMMUNITY BECAUSE THAT ALSO DOVETAILS INTO THE PERSONAL

10:49AM  6   JURISDICTION ISSUES.

10:49AM  7        MR. PETERS:  YEAH.  CASES DISCUSSING COMMON LAW

10:49AM  8   IMMUNITY, AND WE CAN START WITH THE SUPREME COURT'S CASE IN

10:49AM  9   DUNHILL ABOUT CUBAN CIGARS, THE FSIA CODIFIED A LOT OF COMMON

10:49AM 10   LAW IMMUNITY ISSUES.

10:49AM 11      SO, FOR EXAMPLE, UNDER COMMON LAW IT'S CLEAR THAT

10:49AM 12   COMMERCIAL AND PRIVATE ACTIVITIES OF FOREIGN STATES DO NOT GIVE

10:49AM 13   RISE TO SOVEREIGN IMMUNITY.

10:49AM 14      SO UNDER THE COMMON LAW THE SAME COMMERCIAL ACTIVITY

10:49AM 15   EXCEPTION APPLIES, AND THE SUPREME COURT DISCUSSED THAT IN THE

10:49AM 16   DUNHILL CASE.

10:49AM 17      SO OUR ARGUMENT IS THAT THE ANALYSIS OF IMMUNITY IS REALLY

10:50AM 18   THE SAME FOR MR. AL-RUMAYYAN AS IT WOULD BE UNDER THE FSIA

10:50AM 19   BECAUSE THE COMMON LAW INCORPORATES THIS IDEA OF THE COMMERCIAL

10:50AM 20   EXCEPTION.

10:50AM 21      I MEAN, THE FSIA REALLY JUST CODIFIED THE COMMON LAW IN

10:50AM 22   THAT REGARD.

10:50AM 23      ANOTHER INTERESTING THING IS THAT SOME OF THESE CASES,

10:50AM 24   PARTICULARLY IN THE NINTH CIRCUIT WHICH TALK ABOUT COMMON LAW

10:50AM 25   IMMUNITY, THE PERSON CLAIMING COMMON LAW IMMUNITY HAS GONE TO

10:50AM 1    THE STATE DEPARTMENT.

10:50AM 2           THE COURT:  WELL, I WAS GOING TO ASK THAT QUESTION

10:50AM 3    BECAUSE THERE IS A FRAMEWORK, WE SEE THAT IN THE CASES.

10:50AM 4    NEITHER SIDE ADDRESSED IT, AND MY QUESTION IS WHY OR DOESN'T IT

10:50AM 5    APPLY OR WHAT, AND THAT'S THE WULTZ V. BANK OF CHINA CASE THAT

10:50AM 6    COMES TO MIND WITH THIS TWO STEP PROCEDURE TO ASSESS COMMON LAW

10:50AM 7    CLAIMS OF FOREIGN SOVEREIGN IMMUNITY AND THE FIRST STEP IS TO

10:51AM 8    GO TO THE STATE DEPARTMENT AND THEN THE STATE DEPARTMENT TELLS

10:51AM 9    THE DISTRICT COURT WHAT TO DO.  IT EITHER MAKES A DECISION OR

10:51AM 10   TELLS THE DISTRICT COURT WHAT TO DO.

10:51AM 11      SO WHY ISN'T THAT ADDRESSED HEAD ON FIRST BY PGA?

10:51AM 12          MR. PETERS:  YOU'RE ABSOLUTELY RIGHT, THE CASES DO

10:51AM 13   IDENTIFY THAT AS SOMETHING THAT HAPPENS.

10:51AM 14      AND NORMALLY SOMEONE CLAIMING IMMUNITY GOES TO THE STATE

10:51AM 15   DEPARTMENT AND SAYS, HEY, SHOULD I GET IMMUNITY?

10:51AM 16      AS FAR AS WE KNOW, THEY HAVE NEVER DONE THAT.  SO THEY'VE

10:51AM 17   NEVER CHECKED THAT BOX.  THEY'VE NEVER MENTIONED IT TO US.

10:51AM 18   THEY HAVE NEVER REFERRED TO IT.  WE DON'T -- MAYBE WE'RE GOING

10:51AM 19   TO HEAR SOMETHING DIFFERENTLY TODAY WOULD BE NEWS TO ME, BUT WE

10:51AM 20   DON'T THINK THEY GET TO FIRST BASE BECAUSE THEY'VE NEVER EVEN

10:51AM 21   TRIED WITH MR. AL-RUMAYYAN.

10:51AM 22          THE COURT:  YOU THINK THAT'S A CONDITION PRECEDENT,

10:51AM 23   IS THAT A REQUIREMENT BEFORE YOU CAN ARGUE PERSONAL IMMUNITY

10:51AM 24   HERE IN DISTRICT COURT?

10:51AM 25          MR. PETERS:  IT'S NOT REALLY CLEAR FROM THE CASES.

10:52AM 1    THE CASES SAY -- AND THAT'S WHY IT'S A GOOD QUESTION FROM

10:52AM 2    YOUR HONOR.

10:52AM 3        THE CASES SAY IT'S A TWO STEP PROCESS.  FIRST, YOU HAVE TO

10:52AM 4    CONSIDER WHAT THE STATE DEPARTMENT'S POSITION IS, AND THEN,

10:52AM 5    SECOND, THE COURT STILL ADDRESSES THE FACTORS UNDER THE COMMON

10:52AM 6    LAW AND DECIDES, I WOULD IMAGINE, THE STATE DEPARTMENT'S

10:52AM 7    OPINION IS SIGNIFICANT.

10:52AM 8        I WOULD -- I JUST VIEW IT AS A WAIVER, THAT IT WAS

10:52AM 9    SOMETHING THAT THEY WERE REQUIRED TO DO WHEN THEY DIDN'T, AND

10:52AM 10   THAT THIS CLAIM, THAT THIS CLAIM THAT MR. AL-RUMAYYAN HAS

10:52AM 11   SOVEREIGN IMMUNITY I THINK IS -- GIVEN THE LEVEL OF HIS

10:52AM 12   ACTIVITY THAT'S COMMERCIAL HERE IN THE UNITED STATES, THE ONLY,

10:52AM 13   THE ONLY REASON I CAN UNDERSTAND THAT THEY DIDN'T GO TO THE

10:52AM 14   STATE DEPARTMENT IS BECAUSE THEY THOUGHT IT WOULD MAKE THE

10:52AM 15   RECORD WORSE, AND I THINK THAT THEY WAIVED THE ARGUMENT BY NOT

10:52AM 16   DOING THAT.

10:52AM 17       I THINK THEY'RE REQUIRED TO DO IT, AND THIS COURT IS NOT

10:52AM 18   REQUIRED TO FOLLOW THE DIRECTION OF THE STATE DEPARTMENT

10:52AM 19   BECAUSE IT'S AN INDEPENDENT BRANCH OF OUR GOVERNMENT AND --

10:53AM 20           THE COURT:  LAST TIME I LOOKED.

10:53AM 21           MR. PETERS:  -- AND THAT DECISION HAS BEEN LEFT TO

10:53AM 22   THE COURTS.

10:53AM 23       BUT I HAVE NO DOUBT THAT THE STATE DEPARTMENT'S POSITION

10:53AM 24   ON IT WOULD BE SIGNIFICANT TO THE COURT.

10:53AM 25       BUT BY NOT HAVING EVEN ASKED THE STATE DEPARTMENT, I THINK

10:53AM   1    THAT MR. AL-RUMAYYAN HAS COMMUNICATED TO US OR FAILED -- HE'S

10:53AM   2    FAILED TO TAKE AN ACTION THAT HE WAS REQUIRED TO TAKE IN ORDER

10:53AM   3    TO MAKE THIS ARGUMENT, SO I THINK HE'S WAIVED IT.

10:53AM   4            THE COURT:  OKAY.  THAT WAS SORT OF A GATING

10:53AM   5    QUESTION ON PERSONAL IMMUNITY THAT I HAVE -- OR NOT GATING,

10:53AM   6    THAT'S NOT FAIR, BUT A QUESTION.

10:53AM   7        AND SO I BELIEVE THE ARGUMENT THAT YOU WERE MAKING,

10:53AM   8    MR. PETERS, IS THAT IF THERE'S COMMERCIAL ACTIVITY UNDER FSIA,

10:53AM   9    THEN IT'S THE SAME FACTS AND ANALYSIS THAT WOULD UNDERMINE

10:54AM   10   PERSONAL IMMUNITY IN THIS CASE AS TO MR. AL-RUMAYYAN.

10:54AM   11           MR. PETERS:  UNDER THE COMMON LAW, YEAH, BECAUSE THE

10:54AM   12   SAME PRINCIPLE EXISTS IN THE COMMON LAW, AND THAT'S THE DUNHILL

10:54AM   13   CASE FROM THE SUPREME COURT THAT YOU JUST APPLY IT BASED ON

10:54AM   14   COMMON LAW.

10:54AM   15       ALSO THE WAIVER ARGUMENT.  HOW CAN MR. AL-RUMAYYAN

10:54AM   16   PERSONALLY APPROVE AS A BOARD MEMBER AND THE GOVERNOR OF PIF

10:54AM   17   THIS LITIGATION, WHICH WE BELIEVE AND INFER THAT HE MUST HAVE

10:54AM   18   DONE, AND THEN HAVE HIS LAWYERS SAY, SURE, WE'LL ACCEPT SERVICE

10:54AM   19   OF THE SUBPOENA AS IF HE WAS SERVED HERE IN THE UNITED STATES,

10:54AM   20   AND THEN COME INTO THIS COURT AND SAY, YEAH, I AUTHORIZED THIS

10:54AM   21   LITIGATION BASED ON PIF'S INVESTMENT OF MONEY AND OUR CONCERNS

10:54AM   22   ABOUT ADVANCING OUR COMMERCIAL ACTIVITY HERE IN THE

10:54AM   23   UNITED STATES, I AUTHORIZE THIS LAWSUIT IN THIS COURT?  YOU

10:54AM   24   HAND ME A SUBPOENA TO PARTICIPATE IN DISCOVERY, AND I SAY I'M

10:54AM   25   IMMUNE.

10:55AM 1       IT JUST -- IT'S, IT'S CLEARLY A WAIVER, AND IT'S SO

10:55AM 2   PATENTLY UNFAIR.

10:55AM 3            THE COURT:  WELL, THE AGREEMENT TO ACCEPT SERVICE --

10:55AM 4            MR. PETERS:  THAT WASN'T A WAIVER OF IMMUNITY.

10:55AM 5       YOU'RE ABSOLUTELY RIGHT, I SHOULD HAVE BEEN MORE SPECIFIC.

10:55AM 6   THE DECISION TO ACCEPT SERVICE IS NOT A WAIVER OF SOVEREIGN

10:55AM 7   IMMUNITY BECAUSE THEY RESERVED OBJECTIONS IN THAT AGREEMENT.

10:55AM 8       BUT THE DECISION, THE APPROVAL OF THE DECISION AND THE

10:55AM 9   ONGOING -- THE APPROVAL OF THE ONGOING CONDUCT OF THE

10:55AM 10  LITIGATION IN THIS COURT TO MAKE THOSE DECISIONS, TO APPROVE

10:55AM 11  THE FILING OF THE LITIGATION IN THIS COURT, AND THEN WHEN

10:55AM 12  RECEIVING A SUBPOENA FROM THE UNITED STATES COURT TO SAY I

10:55AM 13  DON'T HAVE TO RESPOND TO THAT, IT'S SIMPLY -- IT'S A WAIVER

10:56AM 14  BECAUSE THEY CHOSE THIS FORUM FOR THIS LITIGATION.

10:56AM 15           THE COURT:  I UNDERSTAND.  I UNDERSTAND THE

10:56AM 16  ARGUMENT.

10:56AM 17           MR. PETERS:  OKAY.  AND, UM, YOU KNOW, IF THEY DON'T

10:56AM 18  WANT -- IF THEY WANT TO -- IF THEY DON'T WANT TO PARTICIPATE IN

10:56AM 19  DISCOVERY, IF THEY DON'T WANT US TO SEE THEIR DOCUMENTS, THEY

10:56AM 20  DON'T WANT US TO DEPOSE THEM, THEY CONTROL THE CONDUCT OF THIS

10:56AM 21  LITIGATION.  I SUPPOSE THEY CAN DISMISS IT IF THEY WANT TO.

10:56AM 22      BUT IT REALLY ISN'T RIGHT TO, TO BRING IT, TO HAVE THEIR

10:56AM 23  LAWYERS BRING IT, TO CHOOSE THE FORUM, TO CHOOSE THE CASE AND

10:56AM 24  THEN SAY, HUH-UH, YOU DON'T GET ANY DISCOVERY FROM ME.  THAT'S

10:56AM 25  JUST NOT THE WAY THAT OUR SYSTEM OF JUSTICE WORKS BASED ON MY

10:56AM  1    EXPERIENCE.

10:56AM  2              THE COURT:  OKAY.

10:56AM  3              MR. PETERS:  I CAN MOVE MORE QUICKLY.

10:56AM  4         PERSONAL JURISDICTION.  YOUR HONOR IS VERY FAMILIAR WITH

10:56AM  5    THE MINIMUM CONTACTS TEST AND HOW IT WORKS.  THE FACTS THAT WE

10:57AM  6    HAVE IDENTIFIED ESTABLISHED THE MINIMUM CONTACTS RELATING TO

10:57AM  7    THIS LAWSUIT ALONE OF MR. AL-RUMAYYAN AND PIF WITH THE

10:57AM  8    UNITED STATES.

10:57AM  9         THEY HAVE LOTS MORE CONTACTS.  MR. AL-RUMAYYAN, PIF

10:57AM  10   INVESTS IN A LOT OF U.S. COMPANIES.  HE COMES HERE FREQUENTLY

10:57AM  11   HE'S ADMITTED.  I THINK HE'S TAKEN 13 TRIPS HERE, OR HE'S BEEN

10:57AM  12   HERE 13 DAYS ALL ON BUSINESS.  HE SITS ON THE BOARD OF UBER.

10:57AM  13        SO WE PUT IN FACTS ABOUT HIS CONTACTS RELATING TO THIS

10:57AM  14   CASE WITH THE U.S., WHICH WAS SUBSTANTIAL.  HE'S GOT LOTS --

10:57AM  15             THE COURT:  SO LET ME ASK A COUPLE OF PRELIMINARY

10:57AM  16   QUESTIONS.

10:57AM  17             MR. PETERS:  SURE.

10:57AM  18             THE COURT:  DOES PGA AGREE THAT WE'RE TALKING

10:57AM  19   ABOUT -- THAT THE ISSUE IS SPECIFIC JURISDICTION AND NOT

10:57AM  20   GENERAL JURISDICTION?  AND I THINK THAT'S A POINT THAT THE

10:57AM  21   RESPONDENTS MAKE.

10:57AM  22             MR. PETERS:  YEAH, I THINK -- WE'RE FOCUSSED ON

10:57AM  23   SPECIFIC JURISDICTION, THAT'S WHY ALL OF THE FACTS THAT I

10:57AM  24   IDENTIFIED FOR THE FIRST 10 OR 15 MINUTES THAT I WAS TALKING TO

10:58AM  25   THE COURT ARE -- RELATE TO THIS CASE AND GO TO THE ISSUE OF

38

10:58AM  1    SPECIFIC JURISDICTION.  ALL OF THAT EVIDENCE IS FOCUSSED ON

10:58AM  2    SPECIFIC JURISDICTION IN TERMS OF THIS CASE.

10:58AM  3         I GUESS I POINT OUT THAT THERE ARE OTHER CONTACTS, JUST

10:58AM  4    TO -- CONTACTS TO GIVE CONTEXT TO THE DEGREE OF THEIR

10:58AM  5    INVOLVEMENT.

10:58AM  6         BUT, BOY, WHEN YOU APPROVE, WHEN YOU APPROVE AND SUPERVISE

10:58AM  7    A LAWSUIT AND PAY FOR IT -- I'M REPEATING MYSELF.  I'M NOT

10:58AM  8    GOING TO.

10:58AM  9              THE COURT:  OKAY.  SO I WANT TO BE SURE I UNDERSTAND

10:58AM  10   PGA'S ARGUMENT.

10:58AM  11        IS IT, IS IT PGA'S POSITION THAT IF AN FSIA EXCEPTION

10:58AM  12   APPLIES, THEN JURISDICTION IS AUTOMATIC OR IS IT A SEPARATE

10:58AM  13   ANALYSIS?  IT MAY BE SUPPORTED BY THE SAME FACTS, BUT IS IT A

10:59AM  14   SEPARATE QUESTION?

10:59AM  15             MR. PETERS:  THE SUPREME COURT HAS SAID THAT IF FSIA

10:59AM  16   JURISDICTION APPLIES, THEN JURISDICTION IS AUTOMATIC, PERSONAL

10:59AM  17   JURISDICTION IS AUTOMATIC, AND THAT APPLIES TO PIF.

10:59AM  18        AS TO PERSONAL JURISDICTION FOR MR. AL-RUMAYYAN, HE AGREED

10:59AM  19   TO ACCEPT SERVICE AS IF HE WERE PRESENT IN THE UNITED STATES,

10:59AM  20   SO TAG JURISDICTION APPLIES TO HIM, AND YOU DON'T EVEN NEED TO

10:59AM  21   GET INTO THE MINIMUM CONTACTS ANALYSIS BECAUSE YOU GET IT

10:59AM  22   AUTOMATICALLY.

10:59AM  23             THE COURT:  YOU DON'T THINK THAT THE RESERVATION OF

10:59AM  24   ALL OBJECTIONS IN THE SERVICE AGREEMENT MITIGATES AGAINST TAG

10:59AM  25   JURISDICTION?

10:59AM 1        MR. PETERS:  NO, BECAUSE OF THE LANGUAGE --

10:59AM 2        THE COURT:  WHY NOT?

10:59AM 3        MR. PETERS:  -- THAT PRECEDES IT IN THE AGREEMENT

10:59AM 4   THAT SAYS AS IF HE WERE SERVED HERE IN THE UNITED STATES.

10:59AM 5        THE REASON THAT LANGUAGE WAS PUT IN THERE WAS PRECISELY

10:59AM 6   THIS REASON, WE WANTED IT TO BE CLEAR THAT HE WAS ACCEPTING

11:00AM 7   SERVICE AS IF HE WAS IN THE UNITED STATES AND THE AGREEMENT

11:00AM 8   SAYS THAT, TOO.

11:00AM 9        SO WHILE HE PRESERVED OTHER OBJECTIONS, WE DON'T BELIEVE

11:00AM 10  UNDER THAT AGREEMENT HE PRESERVED THAT ONE.

11:00AM 11       THE COURT:  OKAY.

11:00AM 12       MR. PETERS:  BUT IF YOU ALSO -- SO THERE'S THE FSIA

11:00AM 13  CONFERS JURISDICTION OVER PIF; TAG JURISDICTION CONFERS

11:00AM 14  JURISDICTION OVER MR. AL-RUMAYYAN.

11:00AM 15       BUT ALL OF THE FACTS THAT UNDERLIE THE COMMERCIAL

11:00AM 16  ACTIVITIES EXCEPTION ALSO ESTABLISH MINIMUM CONTACTS UNDER A

11:00AM 17  TRADITIONAL PERSONAL JURISDICTION ANALYSIS, THAT'S WHY I THINK

11:00AM 18  THE SUPREME COURT HAS SAID IF THERE'S ENOUGH FOR COMMERCIAL

11:00AM 19  ACTIVITY, THERE'S ENOUGH FOR PERSONAL JURISDICTION.

11:00AM 20       I THINK THAT'S THE LOGIC OF THAT.

11:00AM 21       BUT IF YOU WANT TO ANALYZE THEM SEPARATELY OR YOU THINK

11:00AM 22  THAT IT'S APPROPRIATE TO ANALYZE THEM SEPARATELY, YOU WALK

11:00AM 23  THROUGH A LOT OF THE SAME FACTS, WHICH ESTABLISHED MINIMUM

11:01AM 24  CONTACTS.

11:01AM 25       THE STANDARD I THINK UNDER THE FSIA IS PROBABLY A LITTLE

11:01AM  1    HIGHER THAN FOR MINIMUM CONTACTS, SO IF YOU ESTABLISH THAT

11:01AM  2    STANDARD, AND WE BELIEVE WE DO COMFORTABLY, THEN YOU ALSO

11:01AM  3    ESTABLISH THE DUE PROCESS MINIMUM CONTACTS STANDARD.

11:01AM  4            THE COURT:  DO YOU AGREE THAT WE'RE TALKING ABOUT

11:01AM  5    CONTACTS WITH THE U.S. AS A WHOLE OR ARE WE TALKING ABOUT

11:01AM  6    CONTACTS IN NEW YORK?  OR ARE WE TALKING ABOUT --

11:01AM  7            MR. PETERS:  WE'RE TALKING ABOUT CONTACTS WITH THE

11:01AM  8    U.S. AS A WHOLE FOR PURPOSES OF PERSONAL JURISDICTION.

11:01AM  9        THERE IS ALSO SUBSTANTIAL CONTACTS WITH NEW YORK.  THEY

11:01AM 10    HAVE AN OFFICE THERE.  MR. AL-RUMAYYAN GOES THERE AND STAYS AT

11:01AM 11    THE PLAZA HOTEL ON 59TH STREET AND CONDUCTED BUSINESS FROM

11:01AM 12    THERE.  HE'S BEEN INTERVIEWED SAYING SO.

11:01AM 13        SO A LOT OF THEIR ACTIVITIES HAVE TAKING PLACE IN NEW YORK

11:01AM 14    BUT THE ANALYSIS IS NATIONWIDE FOR PURPOSES OF JURISDICTION IN

11:01AM 15    THIS ANTITRUST CASE.

11:01AM 16            THE COURT:  OKAY.  I TOOK YOU A LITTLE BIT OFF OF --

11:02AM 17            MR. PETERS:  NO, NO, NO.  I WANT TO TALK ABOUT WHAT

11:02AM 18    YOUR HONOR WANTS TO TALK ABOUT.

11:02AM 19        I DON'T KNOW -- I MEAN, THOSE ARE ALL OF THE ISSUES EXCEPT

11:02AM 20    IF WE GET INTO THE -- IF YOU WANT TO TALK ABOUT THE SCOPE OF

11:02AM 21    THE SUBPOENAS, AND THE SUBPOENAS ARE SIMILAR TO EACH OTHER.

11:02AM 22            THE COURT:  ARE THE DOCUMENT CATEGORIES IDENTICAL?

11:02AM 23    I READ THROUGH THEM.

11:02AM 24            MR. PETERS:  PRETTY MUCH.  THEY'RE VERY CLOSE.

11:02AM 25    THERE'S A COUPLE OF VERY MINOR DIFFERENCES.

11:02AM  1         AND IF YOU KIND OF WORK YOUR WAY THROUGH THEM.

11:02AM  2              THE COURT:  YES, I HAVE.

11:02AM  3              MR. PETERS:  THERE'S A COUPLE -- I ASSUME -- I

11:02AM  4    DIDN'T ASSUME, I FIGURED YOU PROBABLY HAD.

11:02AM  5         BUT THE, THE -- THERE'S MULTIPLE QUESTIONS ABOUT EACH

11:02AM  6    TOPIC THAT ARE REALLY DESIGNED TO CLARIFY RATHER THAN CREATE

11:02AM  7    BURDEN.

11:02AM  8         AND THE TOPICS -- YOU KNOW, IT'S EASY TO GROUP THEM, BUT

11:02AM  9    THERE'S SOME ABOUT PIF'S INVOLVEMENT IN THIS LITIGATION.

11:02AM  10             THE COURT:  WELL, WHAT I WOULD LIKE TO TALK ABOUT --

11:03AM  11   I WANT TO PUT ASIDE THE SCOPE AND BREADTH OF THE SUBPOENAS AND

11:03AM  12   TALK ABOUT THE ISSUES THAT ARISE UNDER RULE 45 AS TO THE

11:03AM  13   WITNESS FEES AND IN PARTICULAR THE 100-MILE LIMIT BECAUSE I'D

11:03AM  14   LIKE TO HEAR FROM PGA ITS BASIS AS TO HOW IT SATISFIES THE

11:03AM  15   100-MILE LIMIT FOR THESE SUBPOENAS FOR WHICH SERVICE OR THE

11:03AM  16   DEPOSITION AND PRODUCTION WERE SET IN NEW YORK.

11:03AM  17             MR. PETERS:  YEAH.

11:03AM  18             THE COURT:  BEFORE WE GO THERE, LET ME BACK UP

11:03AM  19   BECAUSE THERE IS A QUESTION THAT I HAD BACK AS IT RELATED TO I

11:03AM  20   THINK IT'S COMMERCIAL ACTIVITY.  LET ME JUST -- I WANTED TO BE

11:03AM  21   SURE --

11:03AM  22             MR. PETERS:  OKAY.

11:03AM  23             THE COURT:  -- THAT I HEARD FROM YOU ON THIS BECAUSE

11:03AM  24   IN THE PAPERS PGA MAKES THE ARGUMENT -- MAKES AN ARGUMENT THAT

11:04AM  25   BECAUSE OF OR RESULTING FROM PIF'S INVOLVEMENT OR FUNDING, THAT

11:04AM 1    LIV DOESN'T HAVE A PROFIT MOTIVE AND THAT SOMEHOW THIS RELATES

11:04AM 2    TO PGA'S DEFENSE ON THE ANTITRUST CLAIMS, AND I NEED YOU TO

11:04AM 3    EXPLAIN THAT TO ME.

11:04AM 4           MR. PETERS:  WELL, THE -- AND I THINK THIS IS IN ONE

11:04AM 5    OF THE EARLY SLIDES.  IT SAYS THAT PIF TAKES ALL OF THE

11:04AM 6    FINANCIAL RISK OF THE TRANSACTION BECAUSE IT'S SUPPLYING ALL OF

11:04AM 7    THE MONEY.

11:04AM 8           THE COURT:  RIGHT.

11:04AM 9           MR. PETERS:  AND SO, SO LIV IS PRETTY MUCH OF A

11:04AM 10   SHELL AND THE FINANCIAL CONSEQUENCES, BE THEY GOOD OR BAD OF

11:04AM 11   THE INVESTMENT, FLOW THROUGH TO PIF, AND PIF HAS ADMITTED THAT,

11:04AM 12   WHICH DEMONSTRATES FURTHER TO US THAT THIS IS A COMMERCIAL

11:04AM 13   ACTIVITY, THAT IT'S BEING ENTERED INTO FOR PURPOSES OF BUSINESS

11:04AM 14   OF TRYING TO MAKE A PROFIT AND THE PROFIT BELONGS TO PIF.

11:05AM 15          THE COURT:  OKAY.  DOES THAT SOMEHOW RELATE TO THE

11:05AM 16   TOUR'S DEFENSE TO ITS ANTITRUST CLAIMS?  MAYBE I WAS MISREADING

11:05AM 17   THE ARGUMENT.

11:05AM 18          MR. PETERS:  NO.  I THINK THE PRO OR ANTICOMPETITIVE

11:05AM 19   NATURE OF THE CONDUCT RELATES TO THE ANTITRUST CLAIMS.

11:05AM 20      AND SO, FOR EXAMPLE, ONE OF THE ARGUMENTS WE'VE MADE FROM

11:05AM 21   THE BEGINNING THAT WE MADE TO JUDGE FREEMAN IN CONNECTION WITH

11:05AM 22   THE TRO AT THE BEGINNING OF THIS CASE WAS THAT THERE'S PLENTY

11:05AM 23   OF COMPETITION, ESPECIALLY IF YOU HAVE $2 BILLION TO SPEND AND

11:05AM 24   YOU'RE PIF.

11:05AM 25          THE ONLY REASON THAT LIV HAS ACCESS TO ALL OF THAT MONEY

11:05AM   1       IS BECAUSE IT'S AN ALTEREGO OF PIF, WHICH HAS VIRTUALLY

11:05AM   2       UNLIMITED SUPPLY OF MONEY TO SPEND.

11:05AM   3              AND WE ARGUE THAT ITS ACCESS TO MONEY, ITS WILLINGNESS TO

11:05AM   4       SPEND MONEY, ITS ABILITY TO HIRE PLAYERS, ITS ABILITY TO PURSUE

11:06AM   5       SPONSORSHIPS BECAUSE OF ITS STATUS AS EVIDENCE OF COMPETITION,

11:06AM   6       AND A FREE COMPETITION, AND THAT -- AND SIMILARLY, THAT THE PGA

11:06AM   7       TOUR'S PLACEMENT IN ITS CONTRACTS OF AGREEMENTS THAT LIMIT

11:06AM   8       PEOPLE UNDER CONTRACT WITH THE PGA TOUR FROM PLAYING GOLF IN

11:06AM   9       COMPETING EVENTS ON THE SAME WEEKEND THAT ARE NOT PGA TOUR

11:06AM   10      EVENTS IS PROCOMPETITIVE BECAUSE THEY'RE TRYING TO MAINTAIN

11:06AM   11      THEIR ABILITY TO COMPETE WITH NOT ONLY OTHER POTENTIAL GOLF

11:06AM   12      TOURS, BUT WITH OTHER SPORTING EVENTS THAT BROADCASTING

11:06AM   13      COMPANIES MAY WANT TO BROADCAST.

11:06AM   14              ALL OF THIS GOES TO ISSUES RELATING TO COMPETITION.

11:06AM   15                   THE COURT:  OKAY.  THAT'S HELPFUL.  THANK YOU.

11:06AM   16          LET'S GO BACK TO --

11:06AM   17                   MR. PETERS:  THE SUBPOENAS, YOU SAID YOU DIDN'T WANT

11:06AM   18      TO HEAR ABOUT THE SCOPE SO I'M NOT GOING TO TALK ABOUT THE

11:06AM   19      SCOPE.

11:06AM   20                   THE COURT:  NOT YET.  NOT YET.

11:06AM   21                   MR. PETERS:  OKAY.

11:06AM   22                   THE COURT:  AND LET'S GO TO THE --

11:07AM   23                   MR. PETERS:  OH, THE 100 MILE.

11:07AM   24                   THE COURT:  -- THE 100 MILE AND REGULARLY TRANSACTS

11:07AM   25      BUSINESS.

11:07AM 1          MR. PETERS:  PIF HAS AN OFFICE IN NEW YORK.

11:07AM 2     MR. AL-RUMAYYAN GOES THERE REGULARLY.  THEY HOSTED A GOLF

11:07AM 3     TOURNAMENT AT BEDMINSTER, WHICH IS 100 MILES FROM NEW YORK, A

11:07AM 4     TRUMP GOLF COURSE IN NEW JERSEY NOT FAR FROM NEW YORK CITY.

11:07AM 5          WE -- THIS LITIGATION IS IN NORTHERN CALIFORNIA.  MY

11:07AM 6     OFFICE IS IN NORTHERN CALIFORNIA.  WE WOULD RATHER TAKE

11:07AM 7     DEPOSITIONS HERE.

11:07AM 8          WE SUBPOENAED PIF AND MR. AL-RUMAYYAN IN THE SOUTHERN

11:07AM 9     DISTRICT OF NEW YORK AND WENT THROUGH -- JUMPED THROUGH THOSE

11:07AM 10    HOOPS OF FILING THIS MOTION THERE TO ADDRESS THE ISSUE THAT

11:07AM 11    THEY HAVE AN OFFICE IN NEW YORK, THEY -- WE HAVE EVIDENCE THAT

11:07AM 12    THEY CONDUCT BUSINESS THERE.

11:07AM 13         THE COURT:  WHOSE OFFICE?  IS IT PIF OR A

11:08AM 14    SUBSIDIARY?

11:08AM 15         MR. PETERS:  PIF.  WELL, I DON'T KNOW IF IT'S A

11:08AM 16    SUBSIDIARY OF PIF.  I THINK IT'S RIGHT IN MIDTOWN MANHATTAN,

11:08AM 17    AND THEY CONDUCT BUSINESS THERE IN RELATING TO THEIR

11:08AM 18    INVESTMENTS, INCLUDING LIV.

11:08AM 19         AND SO WE --

11:08AM 20         THE COURT:  AND WHAT IS THE EVIDENCE OF THAT, OF THE

11:08AM 21    REGULARLY TRANSACTIONAL BUSINESS BY PIF IN NEW YORK OTHER THAN

11:08AM 22    THE ADDRESS OF THE OFFICE?

11:08AM 23         MR. PETERS:  WELL, THAT -- I MEAN, BUT THAT'S, I

11:08AM 24    THINK, SIGNIFICANT THAT THEY HAVE OPENED AN OFFICE THERE.  AND

11:08AM 25    MR. AL-RUMAYYAN HIMSELF WAS INTERVIEWED ABOUT THE USE OF THE

11:08AM 1    OFFICE, THE ACTIVITIES OF THE OFFICE, WHY THEY OPENED IT TO

11:08AM 2    SUPPORT THEIR INVESTMENTS AND ONE OF THEIR INVESTMENTS IS LIV.

11:08AM 3         WITHOUT DISCOVERY -- I MEAN, I WOULD RATHER NOT GET INTO

11:08AM 4    THIS, BUT WITHOUT MORE DISCOVERY FROM PIF, WE -- WE'RE NOT ABLE

11:08AM 5    TO SHOW ON A GRANULAR LEVEL WHAT THAT -- WHAT THEY DO IN THAT

11:09AM 6    OFFICE, BUT HE SAID IT'S AN ENTIRE FLOOR IN AN OFFICE BUILDING,

11:09AM 7    I THINK IT'S ON FIFTH AVENUE RIGHT IN MIDTOWN AND IT MAY HAVE A

11:09AM 8    CENTRAL ADDRESS, AND IT MAY BE ONE OF THOSE OFFICE BUILDING

11:09AM 9    RIGHT NEAR GRAND CENTRAL STATION.

11:09AM 10        SO WE IDENTIFIED THE LOCATION OF THE DEPOSITION AS

11:09AM 11   SKADDEN'S NEW YORK OFFICE, BECAUSE SKADDEN IS OUR COCOUNSEL,

11:09AM 12   BELIEVING THAT WOULD BE THE MOST CONVENIENT THING TO DO AND

11:09AM 13   COMPLYING WITH THE 100-MILE BULGE, THE 100-MILE RULE.

11:09AM 14        WHAT THEY'RE TRYING TO DO IS BASICALLY TO SAY, NO, YOU

11:09AM 15   CAN'T GET ANY DISCOVERY FROM US.  WE ACCEPTED SERVICE OF THE

11:09AM 16   SUBPOENA.  AND WE'RE -- ASSUMING THAT THE COMMERCIAL ACTIVITY

11:09AM 17   EXCEPTION APPLIES, THE WAIVER EXCEPTION APPLIES, THIS COURT HAS

11:09AM 18   JURISDICTION OVER THEM BECAUSE THEY'RE LOCATED IN, IN

11:09AM 19   SAUDI ARABIA, THAT'S THE RESIDENCE AND THE HOME OFFICE, THAT

11:10AM 20   THE SUGGESTION I GUESS IS, HA, HA, YOU CAN NEVER GET DISCOVERY

11:10AM 21   FROM US BECAUSE YOU CAN NEVER LOCATE SOMEPLACE WITHIN THE

11:10AM 22   100-MILE RULE EVEN THOUGH WE -- THEY HAVE AN OFFICE IN

11:10AM 23   MANHATTAN, AND WE SUBPOENAED THEM TO A DEPOSITION AT SKADDEN'S

11:10AM 24   OFFICE, WHICH IS ABOUT FOUR BLOCKS FROM THEIR, FROM THEIR

11:10AM 25   OFFICE.

11:10AM  1        SO I DON'T THINK THAT THE 100 MILE -- WE'VE COMPLIED WITH

11:10AM  2    THE 100 RULE.  WE WOULD PREFER -- IF THEY WANT TO NEGOTIATE A

11:10AM  3    LOCATION FOR THE DEPOSITION, THAT'S -- IN THE UNITED STATES

11:10AM  4    THAT IS MORE CONVENIENT FOR MR. AL-RUMAYYAN, WE'LL DO IT.  THE

11:10AM  5    100-MILE RULE IS NOT MEANT TO BE AN ESCAPE FROM IT HAVING TO DO

11:10AM  6    DISCOVERY.  IT'S MEANT TO BE DON'T HARASS THE WITNESS AND TAKE

11:10AM  7    INTO ACCOUNT THE LOCATION OF THE WITNESS SO THAT YOU'RE NOT

11:10AM  8    UNDULY INCONVENIENCING THAT PERSON.

11:10AM  9        I ASSURE YOU WE'LL NEGOTIATE ABOUT THAT.  I SUSPECT

11:10AM 10    NEW YORK IS THE MOST CONVENIENT PLACE FOR HIM.  IF HE WANTS TO

11:10AM 11    COME TO SAN FRANCISCO OR PIF WANTS TO SEND ITS WITNESSES TO

11:10AM 12    SAN FRANCISCO, WE'LL BE DELIGHTED.  BUT WE'LL GO TO NEW YORK.

11:11AM 13        IT'S NOT -- THE 100-MILE RULE IS NOT THE OPPORTUNITY FOR A

11:11AM 14    FOREIGN PARTY OR WITNESS TO AVOID ENTIRELY A SUBPOENA IF THE

11:11AM 15    COURT DECIDES THAT THE SUBPOENA IS VALID AND GRANTS OUR MOTION

11:11AM 16    TO COMPEL ON OTHER GROUNDS.

11:11AM 17        THE COURT:  BUT REGULARLY TRANSACTING BUSINESS IS

11:11AM 18    THE, IS THE RULE; RIGHT?  I MEAN, IT HAS TO BE A VALID

11:11AM 19    SUBPOENA, IT HAS TO CALL FOR DEPOSITION OR PRODUCTION NOT MORE

11:11AM 20    THAN 100 MILES FROM WHERE THE TARGET REGULARLY CONDUCTS

11:11AM 21    BUSINESS.

11:11AM 22        MR. PETERS:  AND WE HAVE SHOWN WITH ABUNDANT

11:11AM 23    EVIDENCE THAT PIF REGULARLY TRANSACTS BUSINESS IN NEW YORK

11:11AM 24    BECAUSE THEY HAVE AN OFFICE THERE, AND THEY'RE REGULARLY

11:11AM 25    TRANSACTING LIV'S BUSINESS.

11:11AM  1       I THINK THAT'S ENOUGH TO PROVE THE SCOPE AND CONSISTENCY

11:11AM  2    AND DEGREE OF PIF AND MR. AL-RUMAYYAN'S BUSINESS WITH RESPECT

11:12AM  3    TO LIV GOLF AND THEIR SAUDI ENTITY, AND THAT THEY HAVE A LARGE

11:12AM  4    OFFICE IN NEW YORK THAT HE HAS BEEN QUOTED AS SAYING IS THERE

11:12AM  5    TO SERVICE THEIR INVESTMENTS.  THAT'S ADEQUATE TO SHOW WHAT

11:12AM  6    THEY'VE DONE.

11:12AM  7       AND ALSO, YOUR HONOR, THEY'RE REGULARLY TRANSACTING

11:12AM  8    BUSINESS IN THE NORTHERN DISTRICT OF CALIFORNIA BY HAVING THIS

11:12AM  9    BEVY OF LAWYERS SHOW UP HERE.  AND I'M NOT TALKING ABOUT ON

11:12AM  10   THIS PROCEEDING BECAUSE THEY'RE NONPARTIES, BUT THE

11:12AM  11   GIBSON, DUNN LAWYERS AND QUINN LAWYERS THAT HAVE FILED AND HAVE

11:12AM  12   LITIGATED THIS CASE AND REGULARLY COME HERE IN SERVICE OF PIF'S

11:12AM  13   INTERESTS ARE ALSO CONDUCTING AND TRANSACTING BUSINESS IN THE

11:12AM  14   NORTHERN DISTRICT OF CALIFORNIA.

11:12AM  15      I MEAN, TO AVAIL THEMSELVES OF THIS FORUM -- SO IF A

11:12AM  16   BETTER PLACE FOR THE SUBPOENA IS SAN JOSE OR SAN FRANCISCO,

11:13AM  17   THAT'S FINE WITH US, BUT TO SAY THAT THEY'RE NOT REGULARLY

11:13AM  18   TRANSACTING BUSINESS IN NEW YORK IS UNSUPPORTED BY THE

11:13AM  19   EVIDENCE, AND TO SAY THAT THEY'RE NOT REGULARLY TRANSACTING

11:13AM  20   BUSINESS IN THE NORTHERN DISTRICT OF CALIFORNIA IS ALSO FALSE

11:13AM  21   BECAUSE THEY ARE.

11:13AM  22          THE COURT:  ALL RIGHT.  EXCELLENT.

11:13AM  23      THANK YOU, MR. PETERS.  WE WILL COME BACK SEPARATELY TO

11:13AM  24   THE BREADTH OF THE SUBPOENA, AND YOU WILL HAVE AN OPPORTUNITY

11:13AM  25   OBVIOUSLY TO RESPOND TO PIF AND MR. AL-RUMAYYAN'S ARGUMENTS TO

11:13AM   1        THE EXTENT THAT YOU HAVE NOT ALREADY ADDRESSED THOSE.

11:13AM   2             MR. PETERS:  GREAT.

11:13AM   3        THANK YOU FOR YOUR PATIENCE THIS MORNING, YOUR HONOR.

11:13AM   4             THE COURT:  THANK YOU.

11:13AM   5             MR. BASH:  YOUR HONOR, DID YOU WANT TO HEAR FROM US

11:13AM   6   NOW?

11:13AM   7             THE COURT:  I WOULD LIKE TO HEAR FROM YOU NOW,

11:13AM   8   MR. BASH.

11:13AM   9             MR. BASH:  OKAY.

11:13AM   10            THE COURT:  MR. BASH.

11:13AM   11            MR. BASH:  THANK YOU, YOUR HONOR.

11:13AM   12       JOHN BASH FOR PIF AND MR. AL-RUMAYYAN.

11:13AM   13       I WOULD JUST NOTE AT THE OUTSET THAT MY COLLEAGUES FROM

11:13AM   14  WHITE & CASE ARE HERE, AND THEY WOULD BE PREPARED TO ADDRESS

11:13AM   15  ANY QUESTIONS ABOUT COMITY OR SAUDI ARABIAN LAW TO THE EXTENT

11:14AM   16  THE COURT HAS ANY QUESTIONS ABOUT THOSE ISSUES.

11:14AM   17       BUT I'LL START WITH THE JURISDICTIONAL AND IMMUNITY

11:14AM   18  ISSUES.

11:14AM   19       VIRTUALLY EVERYTHING THAT MR. PETERS JUST SAID ABOUT THE

11:14AM   20  LAW AND THE FACTS OF THIS CASE IS INCORRECT, AND I WANT TO KIND

11:14AM   21  OF PROCEED THROUGH THAT VERY SYSTEMATICALLY, OF COURSE

11:14AM   22  ANSWERING THE COURT'S CONCERNS AND QUESTIONS.

11:14AM   23       BUT I WOULD LIKE TO JUST SET THE TABLE WITH THREE

11:14AM   24  OVERARCHING POINTS THAT I THINK ARE IMPORTANT TO THE ANALYSIS

11:14AM   25  OF MULTIPLE ISSUES IN THIS CASE.

11:14AM  1     SO THE FIRST POINT IS THAT CONGRESS DID NOT ENACT A THIRD

11:14AM  2   PARTY FOREIGN SOVEREIGN IMMUNITY STATUTE.  IT DID NOT ENACT A

11:14AM  3   STATUTE THAT AS A GENERAL MATTER AUTHORIZES DISCOVERY AGAINST

11:14AM  4   THIRD PARTY SOVEREIGNS, AND THAT'S WHY A LOT OF THE ARGUMENTS

11:14AM  5   THAT THEY MAKE DON'T REALLY FIT THE LANGUAGE OF THIS STATUTE.

11:14AM  6     THE COMMERCIAL ACTIVITIES EXCEPTION, FOR EXAMPLE, TALKS

11:14AM  7   ABOUT WHAT THE ACTION IS BASED ON, NOT WHAT THE SUBPOENA IS

11:14AM  8   BASED ON OR THE DISCOVERY ORDER IS BASED ON, THE ACTION.

11:14AM  9     THERE MAY BE CASES, AND YOUR HONOR ALLUDED TO THE ALTEREGO

11:15AM  10   THEORY WHERE THAT LANGUAGE WOULD BE SATISFIED BY A THIRD PARTY

11:15AM  11   SUBPOENA, SO WE'RE NOT ARGUING THAT IT COULD NEVER BE

11:15AM  12   SATISFIED.

11:15AM  13     BUT AS A GENERAL MATTER, CONGRESS'S JUDGMENT WAS THAT IT

11:15AM  14   WAS IMPORTANT FOR SOVEREIGNS ACTUALLY CONDUCTING COMMERCIAL

11:15AM  15   ACTIVITY TO BE HELD ACCOUNTABLE THROUGH BREACH OF CONTRACT

11:15AM  16   ACTIONS, TORT ACTIONS AND SO FORTH.

11:15AM  17     THERE'S NO EVIDENCE THAT CONGRESS REACHED A SIMILAR

11:15AM  18   JUDGMENT THAT FOREIGN SOVEREIGN IMMUNITY SHOULD BE WAIVED TO

11:15AM  19   FACILITATE THIRD PARTY DISCOVERY.  SO THERE'S NO GENERAL

11:15AM  20   STATUTE THAT AUTHORIZES THAT.

11:15AM  21     THE SECOND POINT IS THAT --

11:15AM  22       THE COURT:  SO YOU'RE SEEKING SOVEREIGN IMMUNITY

11:15AM  23   UNDER THE FSIA?

11:15AM  24       MR. BASH:  THAT'S RIGHT.

11:15AM  25     SO SECTION 1604 OF THE FSIA PRESUMPTIVELY CONFERS ON PIF

11:15AM  1    AND -- OR PIF AND OTHER FOREIGN STATES OR FOREIGN

11:15AM  2    INSTRUMENTALITY'S IMMUNITY.

11:15AM  3         THE POINT I'M MAKING IS THAT THE EXCEPTION SET FORTH IN

11:15AM  4    SECTION 1605 DON'T GENERALLY PROVIDE FOR AN EXCEPTION TO THAT

11:15AM  5    IMMUNITY FOR THIRD PARTY DISCOVERY.  IT'S ALL BASED ON --

11:15AM  6         THE COURT:  SO YOU GET THE BENEFIT OF THE PROTECTION

11:15AM  7    OF FSIA AND YOU DON'T -- AND YOU ARE IMMUNE FROM THE

11:16AM  8    EXCEPTIONS?

11:16AM  9         MR. BASH:  WELL, THAT'S GENERALLY TRUE, YOUR HONOR.

11:16AM 10    IF YOU REMEMBER, UNDER THE COMMON LAW, PRIOR TO THE 1952 TATE

11:16AM 11    LETTER, FOREIGN SOVEREIGNS WERE GENERALLY IMMUNE IN U.S.

11:16AM 12    COURTS.

11:16AM 13         CONGRESS -- FIRST THE STATE DEPARTMENT IN 1952 AND THEN

11:16AM 14    CONGRESS WENT AND ENACTED THE FOREIGN SOVEREIGNS IMMUNITY ACT,

11:16AM 15    MADE A JUDGMENT THAT THAT IMMUNITY CATEGORICALLY SHOULD BE

11:16AM 16    WAIVED IN CERTAIN CIRCUMSTANCES.

11:16AM 17         AND THE ONES THAT ARE RELEVANT HERE ARE WAIVER AND

11:16AM 18    COMMERCIAL ACTIVITIES.

11:16AM 19         BUT THE LANGUAGE THAT CONGRESS CHOSE, I THINK ASSUMED THAT

11:16AM 20    THE CONDUCT OF THE SOVEREIGN IS WHAT IS ACTUALLY AT ISSUE IN

11:16AM 21    THE ACTION, NOT THAT THE SOVEREIGN IS COMING IN AS A THIRD

11:16AM 22    PARTY.

11:16AM 23         SO, AGAIN, WE'RE NOT SAYING CATEGORICALLY IT COULD NEVER

11:16AM 24    BE TRUE THAT THE COMMERCIAL ACTIVITY EXCEPTION IS SATISFIED IN

11:16AM 25    A THIRD PARTY CASE, BUT THAT'S NOT GENERALLY WHAT THE FSIA IS

11:16AM  1    FOCUSSED ON.

11:16AM  2         AND THE SECOND POINT I WANTED TO MAKE WAS JUST TO

11:17AM  3    UNDERSCORE HOW SIGNIFICANT AN ORDER ORDERING DISCOVERY AGAINST

11:17AM  4    PIF OR MR. AL-RUMAYYAN WOULD BE DIPLOMATICALLY.  I JUST WANTED

11:17AM  5    TO PUT THE SHOE ON THE OTHER FOOT FOR A MOMENT.

11:17AM  6         THE COURT:  IT IS ADDRESSED IN THE PAPERS, BUT I

11:17AM  7    HAVE SEEN IT AND I DO -- I UNDERSTAND, BUT PLEASE GO AHEAD.  IT

11:17AM  8    DOESN'T MEAN DON'T SAY IT, I JUST WANT YOU TO BE -- TO

11:17AM  9    UNDERSTAND THAT I'M AWARE OF IT.

11:17AM 10         MR. BASH:  I WANTED TO GIVE A QUICK ANALOGY THAT IS

11:17AM 11    NOT IN THE PAPERS.  I'M SURE YOU'RE AWARE THAT --

11:17AM 12         THE COURT:  SLOW DOWN.

11:17AM 13         MR. BASH:  I'M SURE YOU'RE AWARE THAT THE

11:17AM 14    UNITED STATES TOOK SHARES OF AUTO COMPANIES ABOUT 15 YEARS AGO

11:17AM 15    DURING THE BAILOUT, AND I THINK IT HAD A MAJORITY STAKE IN AT

11:17AM 16    LEAST ONE OF THOSE COMPANIES.

11:17AM 17         AND THE ANALOGOUS SITUATION HERE IS THAT IF THERE WAS A

11:17AM 18    DESIGN DEFECT CASE IN RIYADH, AND A COURT IN RIYADH SAID, YOU

11:17AM 19    KNOW WHAT, THE UNITED STATES TREASURY IS THE MAJORITY

11:17AM 20    SHAREHOLDER OF THIS AUTO COMPANY AND SO I'M GOING TO ISSUE AN

11:17AM 21    ORDER DEMANDING THAT THE TREASURY PRODUCE CONFIDENTIAL, PERHAPS

11:18AM 22    CLASSIFIED DOCUMENTS, THAT IT WOULD BE ILLEGAL TO PRODUCE UNDER

11:18AM 23    U.S. LAW, AND I AM GOING TO DEMAND THAT THE SECRETARY OF THE

11:18AM 24    TREASURY OR THE RELEVANT DEPUTY SIT FOR A DEPOSITION IN RIYADH.

11:18AM 25    THAT'S THE EQUIVALENT DIPLOMATICALLY, AND IT'S WHY THE STAKES

| | |
|---|---|
| 11:18AM | 1 |

OF THIS ORDER ARE PRETTY SIGNIFICANT FOR PIF, FOR SAUDI ARABIA,

AND THAT'S WHY THERE IS A FOREIGN SOVEREIGNTIES ACT.

          THE COURT:  LET'S EXAMINE THAT BECAUSE I SEE A

COUPLE OF IMPORTANT DISTINCTIONS BETWEEN THAT ANALOGY AND THE

FACTS, WHAT I THINK ARE NOT DISPUTED FACTS, IN THIS CASE.  AND

I'LL LET YOU CHALLENGE THEM AS APPROPRIATE.

          MR. BASH:  I'M SORRY.  GO AHEAD, YOUR HONOR.

          THE COURT:  BUT THERE IS A DIFFERENCE.  AND I LOOKED

AT THIS WITH THE CASES THAT ARE CITED WHERE IN YOUR EXAMPLE THE

SOVEREIGN IS AN INVESTOR IN AN ONGOING ENTERPRISE.

     HERE WE HAVE THE SOVEREIGN, OR THE ENTITY, FOREIGN ENTITY,

ACTUALLY IS THE FOUNDER, THE FUNDER STARTS THE ENTERPRISE FOR

THE PURPOSE OF COMMERCIAL ACTIVITY.

     I MEAN, I -- LIV IS -- THE PURPOSE OF LIV IS THE

COMMERCIAL ACTIVITY OF DEVELOPING A NEW PROFESSIONAL GOLF TOUR.

     SO I DON'T THINK THAT THAT FITS.  I UNDERSTAND THE ANALOGY

AND HOW IT APPLIES UNDER YOUR REASONING TO FSIA, BUT I JUST

WANT YOU TO UNDERSTAND, I SEE THAT AS A CRITICAL AND IMPORTANT

DISTINCTION.

          MR. BASH:  MAYBE I SHOULD JUST DIVE RIGHT INTO THE

STATUTORY LANGUAGE BECAUSE I THINK IT ADDRESSES THAT POINT.

     SO STARTING FIRST WITH THE COMMERCIAL ACTIVITIES

EXCEPTION, THE SUPREME COURT IN 2015 IN OBB ESTABLISHED A VERY

HIGH STANDARD FOR WHETHER THE ACTION, TO USE THE LANGUAGE OF

THE STATUTE, IS BASED ON THE COMMERCIAL ACTIVITY.

11:20AM  1    THE NINTH CIRCUIT HAD PREVIOUSLY HELD, WELL, AT LEAST IF

11:20AM  2  THE COMMERCIAL ACTIVITY MEETS AN ELEMENT OF THE TORT, THAT'S

11:20AM  3  ENOUGH.

11:20AM  4    THE SUPREME COURT OVERRULED THEM.  THEY SAID IT'S EVEN

11:20AM  5  HIGHER THAN THAT.  IT HAS TO BE THE GRAVAMEN OF THE CLAIM BY

11:20AM  6  WHICH THE COURT MEANT THE THING THAT CAUSES THE INJURY, THE

11:20AM  7  THING THAT YOU NEED TO PROVE TO RECOVER, THE CORE OF THE SUIT.

11:20AM  8    AND THE NINTH CIRCUIT SINCE THEN HAS ELABORATED ON THAT

11:20AM  9  STANDARD IN THE BROIDY CASE FROM 2019 AND SAID IT'S NOT ENOUGH

11:20AM  10  THAT THE ACTION PROCEEDS LOGICALLY, OR THAT THE COMMERCIAL

11:20AM  11  ACTIVITY PROCEEDS LOGICALLY, THE INJURY CAUSING ACTION, IT'S

11:20AM  12  NOT ENOUGH THAT IT'S RELATED TO IT.  IT HAS TO BE THE ACTUAL

11:20AM  13  THING THAT CAUSES THE INJURY.

11:20AM  14    AND SO IN RESPONSE TO YOUR HONOR'S QUESTION, THE FACT THAT

11:20AM  15  PIF LAUNCHED OR INITIATED OR CONCEIVED OF LIV, THAT'S ALL

11:20AM  16  CONDUCT THAT PRECEDES WHAT IS AT ISSUE IN THE ACTION.

11:20AM  17    AND I'M SPEAKING PRIMARILY OF THE COUNTERCLAIM RIGHT NOW,

11:21AM  18  BECAUSE THE CLAIM TO ME VERY CLEARLY IS NOT BASED ON PIF

11:21AM  19  ACTION.  THE ANTITRUST CLAIM BY LIV IS BASED ON THE TOUR'S

11:21AM  20  ACTIONS.

11:21AM  21    THE COUNTERCLAIM, THE CLAIM THAT THEY'RE MAKING IS THAT

11:21AM  22  THE LIV MADE REPRESENTATIONS AND ENTERED INTO CONTRACTS WITH

11:21AM  23  PLAYERS THAT CAUSED THEM TO BREACH THEIR CONTRACTS TO PGA.

11:21AM  24    PIF'S LAUNCHING OF LIV MAY BE ACTION THAT PRECEDED IN SOME

11:21AM  25  LOGICAL OR CAUSAL SENSE THAT ULTIMATE CONDUCT, BUT IT IS

11:21AM   1    CERTAINLY NOT THE CORE OF THAT CONDUCT.  AND I DON'T THINK --

11:21AM   2         THE COURT:  IF THERE'S EVIDENCE OF PIF OR

11:21AM   3    MR. AL-RUMAYYAN, NEGOTIATING CONTRACTS WITH PGA PLAYERS THAT

11:21AM   4    LEAD TO A PGA PLAYER SIGNING WITH LIV, DOESN'T -- ISN'T THAT

11:21AM   5    CORE?  DOESN'T THAT GO TO THE ACTION?  AND UNDER YOUR

11:22AM   6    ARTICULATION OF THE STANDARD, DOESN'T THAT GO RIGHT TO PGA'S

11:22AM   7    COUNTERCLAIM?

11:22AM   8         MR. BASH:  TAKING THE ASSUMPTION OF THAT QUESTION,

11:22AM   9    YOUR HONOR, I STILL THINK THE ANSWER IS NO.  BUT I WOULD ALSO

11:22AM  10    LIKE TO THEN FOLLOW UP AND FIGHT THE ASSUMPTION BECAUSE I DON'T

11:22AM  11    THINK THE EVIDENCE SUPPORTS THAT AT ALL.

11:22AM  12         I THINK THE ANSWER IS STILL NO BECAUSE THE COUNTERCLAIM

11:22AM  13    THAT THEY BROUGHT IS AGAINST LIV.  THEY NEED TO PROVE LIV'S

11:22AM  14    CONDUCT IN ORDER TO RECOVER, TO USE THE LANGUAGE OF OBB.

11:22AM  15         WHETHER THEY THINK PIF ENGAGED IN SIMILAR CONDUCT, THEY

11:22AM  16    HAVEN'T ALLEGED THAT, PROVING PIF'S CONDUCT WOULD NOT ENTITLE

11:22AM  17    THEM TO RELIEF, IT'S ONLY PROVING LIV'S CONDUCT.

11:22AM  18         THE COURT:  YOU'RE BACK TO AN ARGUMENT THAT, WELL,

11:22AM  19    PIF IS NOT A PARTY, SO THE EXCEPTIONS UNDER FSIA DON'T REACH

11:22AM  20    IT, DON'T APPLY.

11:22AM  21         MR. BASH:  I DID FRAME THE ARGUMENT THAT WAY BECAUSE

11:22AM  22    I THINK IT IS SIGNIFICANT.  AS I SAID, I THINK THERE COULD BE

11:22AM  23    EXCEPTIONS TO THAT, FOR EXAMPLE, IF THEY WERE TRUE ALTEREGOS,

11:22AM  24    YOU MIGHT SAY THAT THE CONDUCT IS ONE AND THE SAME BECAUSE BY

11:22AM  25    LAW THEY'RE THE SAME ENTITY.

|  |  |
|---|---|
| 11:23AM | 1 |
| 11:23AM | 2 |
| 11:23AM | 3 |
| 11:23AM | 4 |
| 11:23AM | 5 |
| 11:23AM | 6 |
| 11:23AM | 7 |
| 11:23AM | 8 |
| 11:23AM | 9 |
| 11:23AM | 10 |
| 11:23AM | 11 |
| 11:23AM | 12 |
| 11:23AM | 13 |
| 11:23AM | 14 |
| 11:23AM | 15 |
| 11:23AM | 16 |
| 11:23AM | 17 |
| 11:23AM | 18 |
| 11:23AM | 19 |
| 11:23AM | 20 |
| 11:23AM | 21 |
| 11:24AM | 22 |
| 11:24AM | 23 |
| 11:24AM | 24 |
| 11:24AM | 25 |

BUT WE DON'T THINK THEY'RE ALTEREGOS, AND I'M HAPPY TO
ADDRESS THAT LATER, BUT THEY'RE NOT ALTEREGOS.  THEY OBSERVE
CORPORATE FORMALITIES AND EVEN IF THEY WERE NEGOTIATING
CONTRACTS, PROVING THAT IN THIS CASE WOULD NOT ENTITLE THEM TO
RELIEF BECAUSE THAT'S NOT THE CLAIM THAT THEY BROUGHT.

BUT I REALLY WOULD BE REMISS IF I DON'T FIGHT THE
HYPOTHETICAL BECAUSE --

THE COURT:  YOU MEAN CHALLENGE IT.  LET'S NOT FIGHT.

MR. BASH:  WE'RE NOT GOING TO FIGHT.  IT'S A LEGAL
CHALLENGE.

THE OTHER SIDE HAS MADE A NUMBER OF SWEEPING FACTUAL
CLAIMS BOTH HERE AND IN THEIR BRIEF THAT ARE NOT CORRECT WITH
RESPECT TO INVOLVEMENT IN PLAYER NEGOTIATIONS.

THERE'S AFFIRMATIVE EVIDENCE IN THE RECORD THAT THAT IS
NOT TRUE, THAT PIF AND HE -- PIF AND MR. AL-RUMAYYAN WERE NOT
INVOLVED IN PLAYER NEGOTIATIONS, AND THAT AFFIRMATIVE EVIDENCE
IS THE DECLARATIONS SUBMITTED BY BOTH OF THEM.  BOTH OF THOSE
DECLARATIONS STATE UNEQUIVOCALLY THAT THEY WERE NOT INVOLVED IN
PLAYER NEGOTIATIONS.

NOW, MR. PETERS HAS ESSENTIALLY CITED TWO CATEGORIES OF
INFORMATION TO ARGUE THAT THEY WERE INVOLVED IN PLAYER
NEGOTIATIONS.  IT'S REALLY TWO EMAILS IN THE RECORD AND THE
SHAREHOLDER AGREEMENT THAT WAS FILED EARLIER THIS WEEK.

SO LET ME ADDRESS EACH OF THOSE IN TURN.

ONE OF THE EMAILS IS AN EMAIL BETWEEN MR. AL-RUMAYYAN AND

11:24AM 1     A WELL-KNOWN GOLFER THAT WAS ALREADY DISPLAYED ON THE SCREEN

11:24AM 2     THAT BASICALLY SAYS THANKS FOR COMING ABOARD.  IT DOES NOT

11:24AM 3     ENGAGE IN CONTRACT NEGOTIATION.  IT CERTAINLY DOESN'T NEGOTIATE

11:24AM 4     THE TERMS THAT THEY SAY CONSTITUTE A BREACH OF THE AGREEMENT TO

11:24AM 5     THE PGA TOUR.  THERE'S NO EVIDENCE THAT HE HAD ANY INVOLVEMENT

11:24AM 6     AT THAT LEVEL.

11:24AM 7         I DON'T THINK THE TOP OFFICIAL, THE PRIMARY INVESTOR OF A

11:24AM 8     COMPANY SAYING THAT IT'S A MAJOR TALENT, THANKS FOR JOINING,

11:24AM 9     GLAD YOU'RE COMING ABOARD, IS THE LEGAL EQUIVALENT TOWARD THE

11:24AM 10    FACTUAL EQUIVALENT OF NEGOTIATING A CONTRACT.

11:24AM 11        THE OTHER THING THAT THEY CITE IS A PRESENTATION ISSUED

11:24AM 12    BEFORE THE FORMATION OF LIV, WHEN LIV WAS NOT IN EXISTENCE AS

11:24AM 13    PART OF THE DUE DILIGENCE PROCESS FOR PIF TO SEE IF THIS WAS

11:25AM 14    SOMETHING THAT THEY REALLY WANTED TO DO.  AND THEY SAID THAT

11:25AM 15    THEY MET WITH PLAYERS AND AGENTS.  THOSE ARE THE TWO THINGS

11:25AM 16    THAT THEY CITE.

11:25AM 17        I THINK THAT PRETTY CLEARLY IS NOT A NEGOTIATION OVER

11:25AM 18    SPECIFIC CONTRACT TERMS, CONFLICTING TERMS AND MEDIA RIGHTS.

11:25AM 19    THE RELEVANT ORGANIZATION WAS NOT EVEN IN EXISTENCE AT THE

11:25AM 20    TIME.

11:25AM 21        THOSE ARE THE ONLY, AS FAR AS I CAN TELL, RECORD EVIDENCE

11:25AM 22    THAT THE OTHER SIDE CITES ON THIS POINT.

11:25AM 23            THE COURT:  WOULD YOU AGREE THAT THAT RECORD

11:25AM 24    EVIDENCE PROVIDES A SUFFICIENT BASIS IF THE COURT IS NOT

11:25AM 25    SATISFIED THAT THAT MEETS THE STANDARD OF COMMERCIAL ACTIVITY

11:25AM 1    AND IT AT LEAST PROVIDES AN ADEQUATE BASIS TO ORDER FURTHER

11:25AM 2    DISCOVERY?

11:25AM 3              MR. BASH:  ADEQUATE IS A FUNNY WORD BECAUSE THIS

11:25AM 4    COURT HAS BROAD POWER.  SO I WOULDN'T SAY ANYTHING IS

11:25AM 5    INADEQUATE.  I DO NOT THINK IT'S A PERSUASIVE BASIS TO ORDER

11:25AM 6    JURISDICTIONAL DISCOVERY.

11:25AM 7              THE COURT:  IF I WERE TO ORDER JURISDICTIONAL

11:25AM 8    DISCOVERY, WHAT IS PIF AND MR. AL-RUMAYYAN'S RESPONSE TO THAT?

11:26AM 9              MR. BASH:  OUR RESPONSE IS THAT THE ORDER SHOULD NOT

11:26AM 10   BE ISSUED AND HERE'S THE REASON WHY.

11:26AM 11             THE COURT:  I UNDERSTAND.  BUT LET'S ASSUME THAT IF

11:26AM 12   I ORDERED IT, THEN DO THEY PARTICIPATE IN JURISDICTIONAL

11:26AM 13   DISCOVERY?

11:26AM 14             MR. BASH:  I WOULD NEED TO CONFER WITH MY CLIENT ON

11:26AM 15   THAT.  AS YOU KNOW, THERE HAVE BEEN REPRESENTATIONS IN THE

11:26AM 16   RECORD FROM OUR SIDE THAT THESE PRODUCTIONS COULD VIOLATE

11:26AM 17   CRIMINAL SAUDI ARABIAN LAW.  AND WHILE, OF COURSE, OUR CLIENTS

11:26AM 18   DEEPLY RESPECT THE U.S. COURTS AND THE U.S. COURT SYSTEM, I

11:26AM 19   WANT TO CONFER BEFORE MAKING A REPRESENTATION TO THE COURT

11:26AM 20   ABOUT EXACTLY WHAT THE RESPONSE WOULD BE ON JURISDICTIONAL

11:26AM 21   DISCOVERY.

11:26AM 22        COULD I JUST MAKE ONE FOOTNOTE ON JURISDICTIONAL DISCOVERY

11:26AM 23   THOUGH?

11:26AM 24             THE COURT:  YES.

11:26AM 25             MR. BASH:  THE FOOTNOTE IS THIS, IN FSIA CASES THE

| | |
|---|---|
| 11:26AM | 1 |
| 11:26AM | 2 |
| 11:26AM | 3 |
| 11:26AM | 4 |
| 11:27AM | 5 |

COURTS HAVE ON OCCASION ORDERED JURISDICTIONAL DISCOVERY.  THIS

IS, I THINK, THE CASE WHERE IT'S LEAST WARRANTED.  AND THE

REASON I SAY THAT IS THAT IN MOST OF THOSE CASES THE DEFENDANT

IS THE FOREIGN SOUTHERN.  SO THE PLAINTIFF HAS NOT RECEIVED ANY

DISCOVERY YET ON ANYTHING.

THIS CASE IS VERY DIFFERENTLY SITUATED.  BECAUSE WE'RE THE

THIRD PARTY, THEY HAVE RECEIVED 100,000 SUM DOCUMENTS FROM LIV.

YOU WOULD THINK THAT IF THEIR THEORIES HAD ANY SUPPORT, WHETHER

IT'S AGENCY OR ALTEREGO OR COMMERCIAL ACTIVITY, THEY WOULD HAVE

BEEN ABLE TO ESTABLISH FROM LIV'S DOCUMENTS, WHICH INCLUDE BY

THE WAY LIV BOARD MINUTES, THEIR CLAIMS.

SO IF THERE WAS A CASE WHERE JURISDICTIONAL DISCOVERY WAS

INAPPROPRIATE ON FSIA GROUNDS, I THINK IT'S THE CASE WHERE

THERE'S A THIRD PARTY SOVEREIGN AND THE OTHER SIDE HAS ALREADY

DECIDED TO SUBPOENA THE SOVEREIGN HAS ALREADY RECEIVED 100,000

DOCUMENTS FROM THE DEFENDANT.

I WOULD LIKE TO, IF I COULD, ADDRESS THE SHAREHOLDER

AGREEMENT NOW BECAUSE WE HAVE NOT, AS YOU KNOW, HAVE NOT HAD AN

OPPORTUNITY TO BRIEF THAT YET.

THE COURT:  GO AHEAD.  I DO WANT TO HEAR YOUR

RESPONSE OR ARGUMENT REGARDING THE SUBSCRIPTION AGREEMENT, AND

THEN I'D LIKE TO MOVE TO SOME COMMON LAW IMMUNITY ISSUES.

MR. BASH:  OF COURSE, YOUR HONOR.

I WILL ADDRESS WHAT YOU WANT TO ADDRESS.  I HAVE NOT

SPOKEN TO WAIVER YET, AND I WOULD LOVE TO GET A FEW SENTENCES

11:28AM 1   ON THAT IF I COULD.

11:28AM 2           THE COURT:  BUT THAT DOESN'T MEAN SPEED UP, THAT

11:28AM 3   DOESN'T MEAN TALK FASTER.

11:28AM 4           MR. BASH:  OKAY.  SO THE SHAREHOLDER AGREEMENT --

11:28AM 5   AND MR. PETERS HAS MISREAD THE SHAREHOLDER AGREEMENT.  HE HAS

11:28AM 6   SAID REPEATEDLY UP HERE, AND I BELIEVE THEY SAID IN THEIR

11:28AM 7   MOTION, THAT THE SHAREHOLDER AGREEMENT REQUIRES PIF'S CONSENT,

11:28AM 8   THE ENTITY PIF'S CONSENT TO THE ACTIONS SET FORTH IN SCHEDULE 5

11:28AM 9   OF THE AGREEMENT WHICH INCLUDE SIGNIFICANT LITIGATION AND

11:28AM 10  CERTAIN PLAYER AGREEMENTS, NOT ALL ACTUALLY BUT CERTAIN PLAYER

11:28AM 11  AGREEMENTS.

11:28AM 12      THAT'S NOT ACCURATE.  THE INVESTOR CONSENT IS A DEFINED

11:28AM 13  TERM IN THE AGREEMENT, AND THAT'S DEFINED IN SCHEDULE 12 OF THE

11:28AM 14  AGREEMENT.  I DON'T KNOW IF YOUR HONOR HAS THE AGREEMENT.

11:28AM 15          THE COURT:  I HAVE PORTIONS OF IT.

11:28AM 16          MR. BASH:  BUT I'LL JUST SAY INTO THE RECORD THE

11:28AM 17  RELEVANT PROVISIONS.

11:28AM 18          THE COURT:  MINDFUL OF YOUR CONFIDENTIALITY,

11:29AM 19  MR. BASH.

11:29AM 20          MR. BASH:  I'LL JUST NOTE THAT THE INVESTOR CONSENT

11:29AM 21  PROVISION DOES NOT REQUIRE PIF AS AN ENTITY TO CONSENT TO

11:29AM 22  ANYTHING.  IT CERTAINLY DOESN'T ALLOW PIF AS AN ENTITY TO

11:29AM 23  DIRECT ANYTHING.

11:29AM 24      I'LL JUST GIVE A COPY OF THE FULL AGREEMENT TO THE COURT

11:29AM 25  IF THAT'S OKAY.

| | | |
|---|---|---|
| 11:29AM | 1 | THE COURT:  OKAY.  AND TELL ME -- OVER HERE |
| 11:29AM | 2 | (INDICATING).  AND TELL ME WHAT PAGE YOU'RE ON, PLEASE. |
| 11:29AM | 3 | MR. BASH:  66, YOUR HONOR. |
| 11:29AM | 4 | THE COURT:  AND IS THAT -- OKAY.  PRINTED PAGE 66 OF |
| 11:29AM | 5 | THE DOCUMENT. |
| 11:29AM | 6 | ALL RIGHT. |
| 11:29AM | 7 | MR. BASH:  SO INVESTOR CONSENT IS A DEFINED TERM AND |
| 11:29AM | 8 | TO PARAPHRASE, BUT TO PARAPHRASE ACCURATELY, INVESTOR CONSENT |
| 11:29AM | 9 | MEANS ANY TWO OF THE DIRECTORS APPOINTED BY PIF. |
| 11:29AM | 10 | SO PIF MAY APPOINT MORE THAN TWO, BUT ANY TWO OF THE |
| 11:29AM | 11 | INVESTORS APPOINTED BY PIF HAVE TO CONSENT TO CERTAIN |
| 11:30AM | 12 | SIGNIFICANT ACTIONS. |
| 11:30AM | 13 | SO ESSENTIALLY -- |
| 11:30AM | 14 | THE COURT:  OR IF THERE IS ONLY ONE APPOINTED. |
| 11:30AM | 15 | MR. BASH:  OR IF THERE IS ONLY ONE APPOINTED, THAT'S |
| 11:30AM | 16 | RIGHT. |
| 11:30AM | 17 | SO ESSENTIALLY THEY HAVE A VETO RIGHT OVER CERTAIN |
| 11:30AM | 18 | SIGNIFICANT ACTIONS.  THAT DOES NOT REQUIRE ANY ACTION BY PIF |
| 11:30AM | 19 | AS SUCH, AND THAT'S DIRECTLY RELEVANT TO THE LEGAL ISSUES |
| 11:30AM | 20 | BEFORE THE COURT. |
| 11:30AM | 21 | A PIF APPOINTED DIRECTOR SAYING THAT I'M NOT GOING TO |
| 11:30AM | 22 | OBJECT TO LITIGATION IS NOT THE SAME THING AS PIF AS AN ENTITY |
| 11:30AM | 23 | ACTUALLY DOING THE LITIGATION, WAIVING THEIR RIGHTS TO THE |
| 11:30AM | 24 | LITIGATION. |
| 11:30AM | 25 | IT'S NOT THE SAME THING AS PIF AS AN ENTITY ENGAGING IN |

11:30AM 1    THE COMMERCIAL CONDUCT THAT IS BEING AUTHORIZED.  AND JUST TO

11:30AM 2    GIVE THE COURT AN ANALOGY FROM THE WORLD OF SOVEREIGNS, THE

11:30AM 3    UNITED STATES HAS, AS YOU KNOW, A VETO RIGHT ON THE U.N.

11:30AM 4    SECURITY COUNCIL.  BUT WHEN THE U.N. PASSES A RESOLUTION AND

11:30AM 5    THE UNITED STATES REPRESENTATIVE TO THE U.N. DECLINES TO OBJECT

11:30AM 6    TO THE RESOLUTION OR TO VETO THE RESOLUTION, THAT'S NOT

11:31AM 7    CONSIDERED AN ACTION OF THE UNITED STATES.  IT'S A RESOLUTION

11:31AM 8    BY THE UNITED NATIONS.  IT'S NOT A TREATY SIGNED BY THE

11:31AM 9    PRESIDENT AND RATIFIED BY THE SENATE, AND IT'S NOT SOMETHING

11:31AM 10   THAT THE UNITED STATES COULD DIRECT BECAUSE WHILE THE VETO

11:31AM 11   POWER ALLOWS THE UNITED STATES TO OBJECT, IT DOESN'T MEAN THE

11:31AM 12   UNITED STATES COULD DIRECT THE SAME RESOLUTION.

11:31AM 13        BY PARITY OF REASONING HERE, THE FACT THAT APPOINTED

11:31AM 14   DIRECTORS BY PIF CAN OBJECT TO SPECIFIC ACTIONS IS NOT THE SAME

11:31AM 15   THING AS SAYING THAT PIF ITSELF CAN DIRECT THOSE ACTIONS, WHICH

11:31AM 16   IS WHAT THEY'RE USING THE AGREEMENT TO SAY.

11:31AM 17        I THINK THE PURPOSE OF THIS PROVISION, YOUR HONOR, AND

11:31AM 18   I'LL REFER THE COURT FOR COMPLETENESS TO SECTION 16 -- 6.9 OF

11:31AM 19   THE AGREEMENT --

11:31AM 20             THE COURT:  UH-HUH.

11:31AM 21             MR. BASH:  -- IS ESSENTIALLY IF THERE ARE FUTURE

11:31AM 22   INVESTORS OF SIGNIFICANT STAKES, THEY CAN PROTECT PIF'S

11:31AM 23   INTERESTS ON THE BOARD.

11:31AM 24        BUT THAT'S VERY DIFFERENT THAN HOW MR. PETERS HAS USED

11:31AM 25   THIS AGREEMENT AT ARGUMENT.

11:32AM 1      AND THE ONLY OTHER THING I WILL SAY ABOUT THAT IS THAT I

11:32AM 2  DON'T THINK THERE'S ANYTHING UNUSUAL ABOUT A SIGNIFICANT

11:32AM 3  INVESTOR IN AN ENTERPRISE HAVING THAT KIND OF VETO RIGHTS.

11:32AM 4      IF YOU IMAGINE A SILICON VALLEY INVESTOR WHO IS FUNDING AS

11:32AM 5  AN ANGEL INVESTOR A STARTUP, IT WILL BE OFTEN TRUE WHETHER AS A

11:32AM 6  MATTER OF AGREEMENT OR DE FACTO THAT THE MANAGEMENT MAY GO TO

11:32AM 7  THE INVESTOR AND SAY, HEY, WE'RE GOING TO UNDERTAKE SOMETHING

11:32AM 8  SIGNIFICANT, DO YOU HAVE A PROBLEM WITH THAT?

11:32AM 9      THAT DOESN'T MEAN THAT CORPORATE FORMALITIES HAVEN'T BEEN

11:32AM 10  OBSERVED, THAT DOESN'T MEAN THAT THEY'RE ALTEREGOS, AND THAT

11:32AM 11  DOESN'T MEAN THAT THE INVESTOR IS ENGAGING IN THAT CONDUCT JUST

11:32AM 12  BECAUSE HE OR SHE DOESN'T VETO THE CONDUCT.

11:32AM 13      SO I DON'T THINK THIS AGREEMENT HELPED THEM THE WAY THAT

11:32AM 14  THEY THINK IT DOES.

11:32AM 15      BRIEFLY, I'LL TALK ABOUT WAIVER AND THEN MOVE ON TO COMMON

11:32AM 16  LAW IMMUNITY.

11:32AM 17      THEY CITED NO CASE, AND WE'RE AWARE OF NO CASE EVER WHERE

11:32AM 18  A SOVEREIGN WAS DEEMED TO WAIVE ITS OWN IMMUNITY FROM SUIT IN

11:33AM 19  THE UNITED STATES BECAUSE IT AUTHORIZED -- EVEN AUTHORIZED OR

11:33AM 20  EVEN DIRECTED ANOTHER ENTITY, A SEPARATE LEGAL PERSON TO ENGAGE

11:33AM 21  IN LITIGATION.

11:33AM 22      THE STANDARD FOR WAIVER UNDER THE FSIA, AND THIS IS

11:33AM 23  SUMMARIZED IN THE ALDOSARI CASE WE CITE, WHICH ITSELF CITES

11:33AM 24  OTHER CIRCUIT DECISIONS, IT HAS TO BE CLEAR AND UNEQUIVOCAL.

11:33AM 25  THERE HAS TO BE AN INTENT BY THE SOVEREIGN TO WAIVE.  THAT CAN

11:33AM  1   BE IMPLICIT LIKE WHERE THE SOVEREIGN ITSELF FILES A LAWSUIT,

11:33AM  2   BUT IT HAS TO BE CLEAR AND UNEQUIVOCAL.

11:33AM  3        AND AN INVESTOR AUTHORIZING A SUBSIDIARY OR AN INVESTMENT

11:33AM  4   TO ENGAGE IN A LAWSUIT, I DON'T THINK THERE'S ANY REALISTIC

11:33AM  5   SENSE IN WHICH YOU COULD SAY PIF WAS INTENDING TO WAIVE ITS

11:33AM  6   IMMUNITY BY AUTHORIZING THAT.  AND THAT'S THE STANDARD.  IT HAS

11:33AM  7   TO BE INTENT TO WAIVE ITS OWN IMMUNITY AS WHEN IT SUBJECTS

11:33AM  8   ITSELF TO THE COURT OR WHEN IT ENTERS INTO A CONTRACT PROVISION

11:33AM  9   THAT SAYS, YES, WE WAIVE OR IMMUNITY.

11:33AM 10        I DON'T THINK YOU CAN REALISTICALLY SAY THAT THIS WAS AN

11:34AM 11   INTENT TO WAIVE.  IN FACT, I WAS A LITTLE SURPRISED AT HOW MANY

11:34AM 12   EGGS MR. PETERS PUT IN HIS BASKET TODAY BECAUSE I THINK THAT'S

11:34AM 13   AN EXTRAORDINARY ARGUMENT TO SAY THAT THIS KIND OF CONDUCT IS A

11:34AM 14   WAIVER OF SOVEREIGN IMMUNITY.

11:34AM 15        SO LET ME MOVE ON, YOUR HONOR, TO COMMON LAW IMMUNITY,

11:34AM 16   UNLESS -- IT LOOKS LIKE YOU HAVE A QUESTION.

11:34AM 17             THE COURT:  NO.  I'D LIKE TO START WITH NOT

11:34AM 18   ADDRESSING THE FRAMEWORK.

11:34AM 19        WHAT IS PIF AND MR. AL-RUMAYYAN'S VIEW WITH REGARDS TO THE

11:34AM 20   FRAMEWORK AS SET OUT IN THE WULTZ CASE BECAUSE THAT'S WHERE I

11:34AM 21   SAW IT WITH REGARD TO APPROACHING THE STATE DEPARTMENT IN THE

11:34AM 22   FIRST INSTANCE?

11:34AM 23             MR. BASH:  THE TWO STEP FRAMEWORK WAS A VERY COMMON

11:34AM 24   AGE OLD FRAMEWORK EVEN BEFORE THE FSIA.  BUT WHAT THE MOST

11:34AM 25   RECENT NINTH CIRCUIT AUTHORITY ABOUT THAT SAYS -- THIS IS THE

11:34AM 1    DOGAN CASE FROM 2019 CITED IN OUR BRIEFS -- IS THAT A PARTY

11:34AM 2    MAY, I THINK THEY USE THE WORD "COULD" SEEK STATE DEPARTMENT

11:34AM 3    APPROVAL.

11:34AM 4         AND IT DOES NOT SUGGEST THAT IT IS A PREREQUISITE TO A

11:35AM 5    COURT EXERCISING ITS AUTHORITY TO DECIDE WHETHER IMMUNITY

11:35AM 6    APPLIES.

11:35AM 7         IN ANY EVEN CASE, I THINK PARTIES COULD HAVE DIFFERENT

11:35AM 8    REASONS FOR SEEKING IT OR NOT SEEKING IT.  SEEKING IT GIVES YOU

11:35AM 9    AN EXTRA BITE AT THE APPLE BECAUSE EVEN IF THE COURT MIGHT NOT

11:35AM 10   AGREE WITH YOU, THE COURT MIGHT DEFER TO THE STATE DEPARTMENT.

11:35AM 11        ON THE OTHER HAND, SEEKING IT CAN SLOW DOWN EXPEDITED

11:35AM 12   LITIGATION BECAUSE IT COULD TAKE A YEAR OR MORE FOR THAT

11:35AM 13   DECISION TO BE REACHED AND A PARTY, I THINK AS IN THIS CASE,

11:35AM 14   MIGHT THINK THAT ITS ARGUMENTS ARE SO CLEARLY CORRECT ON THE

11:35AM 15   LAW, THAT THE COURT WILL DECIDE IT THE WAY IT WILL DECIDE IT

11:35AM 16   AND THE VIEWS OF THE STATE DEPARTMENT ON THE MATTER ARE NOT

11:35AM 17   GOING TO BE SIGNIFICANT.

11:35AM 18        SO IN THIS CASE WE DO THINK IT'S CLEAR ON THE LAW, AND THE

11:35AM 19   CLEAREST REASON IS THAT THERE IS NO COMMERCIAL ACTIVITY

11:35AM 20   EXCEPTION TO COMMON LAW IMMUNITY.

11:35AM 21        THE NINTH CIRCUIT IN THE DOGAN CASE I MENTIONED SET OUT

11:35AM 22   THE STANDARD, AND IT'S BASED ON THE RESTATEMENT OF FOREIGN

11:35AM 23   RELATIONS.  AND THE STANDARD IS WHETHER BEFORE AN OFFICIAL

11:35AM 24   IS -- THE CASE IS SEEKING TO HOLD A FOREIGN OFFICIAL LIABLE FOR

11:36AM 25   AN OFFICIAL ACT SUCH THAT HOLDING HIM OR HER LIABLE FOR THAT

11:36AM 1    ACT WOULD BE THE EQUIVALENT OF HOLDING THE FOREIGN STATE

11:36AM 2    LIABLE.

11:36AM 3         I'LL TALK ABOUT COMMERCIAL ACTIVITY EXCEPTION IN JUST A

11:36AM 4    MOMENT, OR THE LACK THEREOF, BUT JUST ON THAT PRIMA FACIE

11:36AM 5    STANDARD, IT'S CLEARLY MET HERE.

11:36AM 6         EVEN ASSUMING IT CAN BE TRANSLATED TO THE THIRD PARTY

11:36AM 7    SUBPOENA CONTEXT WHEN IT SPEAKS OF ACTIONS, THEY'RE NOT SEEKING

11:36AM 8    INFORMATION ABOUT MR. AL-RUMAYYAN'S PERSONAL FINANCIAL

11:36AM 9    TRANSACTIONS.  THEY'RE SEEKING INFORMATION ABOUT CONDUCT AND

11:36AM 10   COMMUNICATIONS HE HAD IN HIS CAPACITY AS A FOREIGN OFFICIAL.  I

11:36AM 11   DON'T THINK IT'S MATERIALLY DIFFERENT THAN A FOREIGN COURT

11:36AM 12   SEEKING OFFICIAL COMMUNICATIONS OF THE SECRETARY OF COMMERCE.

11:36AM 13   SO --

11:36AM 14         THE COURT:  SO IF I WERE TO -- WELL, MY QUESTION IS

11:36AM 15   REALLY THIS, WHICH IS, IS MR. AL-RUMAYYAN'S IMMUNITY DERIVATIVE

11:37AM 16   OF PIF'S IMMUNITY SUCH THAT IF I FOUND THAT PIF WAS IMMUNE

11:37AM 17   UNDER FSIA, DIDN'T MEET AN -- EITHER THE EXCEPTIONS DON'T APPLY

11:37AM 18   OR DIDN'T SATISFY AN EXCEPTION, WOULD THAT AUTOMATICALLY THEN

11:37AM 19   ALSO MEAN THAT THERE WAS NO IMMUNITY AS TO MR. AL-RUMAYYAN --

11:37AM 20   OR THAT THERE WAS IMMUNITY AS TO MR. AL-RUMAYYAN?

11:37AM 21         MR. BASH:  IT WOULD NOT, YOUR HONOR.  AND I WOULD

11:37AM 22   DIRECT THE COURT TO THE SUPREME COURT 'S STATEMENT IN SAMANTAR

11:37AM 23   VERSUS YOUSUF IN 2010 WHERE THE COURT SAID THAT COMMON LAW

11:37AM 24   IMMUNITY IS NOT NECESSARILY COEXTENSIVE WITH FSIA IMMUNITY.

11:37AM 25         AND I JUST WANT TO GIVE THE COURT THE HISTORICAL

11:37AM  1    BACKGROUND ON WHY THAT IS SO.  SO AS I MENTIONED EARLIER,

11:37AM  2    BEFORE 1952, THERE WERE VERY FEW EXCEPTIONS TO IMMUNITY FOR

11:37AM  3    ANYBODY, INDIVIDUAL, STATE.

11:37AM  4        THEN THE TATE LETTER CAME OUT.  THE TATE LETTER WAS

11:37AM  5    FOCUSSED ONLY ON SOVEREIGNS.  AND THE TATE LETTER SAID WE'RE

11:37AM  6    GOING TO HAVE A COMMERCIAL ACTIVITY EXCEPTION FOR SOVEREIGNS

11:38AM  7    BECAUSE IN THIS DAY AND AGE SOVEREIGNS ARE PARTICIPATING MORE

11:38AM  8    IN THE MARKETS.  IT'S IMPORTANT THAT THEY BE SUBJECT TO SUIT

11:38AM  9    FOR COMMERCIAL ACTIVITIES.

11:38AM  10       IT DID NOT REACH THAT JUDGMENT FOR FOREIGN OFFICIALS.  AND

11:38AM  11   WHILE THERE'S NOT AN EXPLANATION FOR THAT, I CAN I THINK YOU

11:38AM  12   CAN SEE WHY.  IT SATISFIES THE INTEREST THAT THE FOREIGN STATE

11:38AM  13   ITSELF CAN BE HELD LIABLE FOR COMMERCIAL ACTIVITIES IN TERMS OF

11:38AM  14   ENSURING THAT PEOPLE CAN RECOVER FOR BREACH OF CONTRACT AND SO

11:38AM  15   FORTH.

11:38AM  16       BUT THERE'S A SPECIAL INDIGNITY THAT CAN CAUSE DIPLOMATIC

11:38AM  17   TENSION ABOUT HALING A FOREIGN OFFICIAL PERSONALLY, BUT, OF

11:38AM  18   COURSE, MEANING IN HIS OFFICIAL CAPACITY OR HER OFFICIAL

11:38AM  19   CAPACITY, INTO COURT.

11:38AM  20       SO NEITHER THE STATE DEPARTMENT IN THE TATE LETTER NOR

11:38AM  21   CONGRESS TWO DECADES LATER IN THE FSIA SOUGHT TO IMPOSE A

11:38AM  22   COMMERCIAL ACTIVITY EXCEPTION FOR INDIVIDUALS.

11:38AM  23       SO THE DEFAULT RULE SHOULD BE THE PRE-1952 IMMUNITY LAW,

11:39AM  24   WHICH DID NOT HAVE A COMMERCIAL ACTIVITY EXCEPTION.

11:39AM  25       AND I'LL JUST NOTE, YOUR HONOR, THE OTHER SIDE HAS CITED

11:39AM   1       NO CASE IN HISTORY WHERE A COMMERCIAL ACTIVITY EXCEPTION WAS

11:39AM   2       RECOGNIZED FOR THE OFFICIAL ACTS OF A FOREIGN OFFICIAL.  THIS

11:39AM   3       WOULD BE THE FIRST CASE.

11:39AM   4            WE DON'T THINK THERE'S ANY LEGAL SUPPORT FOR THAT.

11:39AM   5                 THE COURT:  OKAY.

11:39AM   6                 MR. BASH:  I'M HAPPY TO MOVE ON TO JURISDICTION,

11:39AM   7       YOUR HONOR.  WE HAVEN'T RAISED ANY ISSUES YET IN THIS

11:39AM   8       DISCUSSION ABOUT THE DIRECT EFFECTS PRONG OF THE COMMERCIAL

11:39AM   9       ACTIVITY EXCEPTION.  I DON'T KNOW IF YOUR HONOR MIGHT BE

11:39AM  10       INTERESTED IN THAT.

11:39AM  11                 THE COURT:  GO AHEAD.

11:39AM  12                 MR. BASH:  BUT THE OTHER SIDE HAS MISREAD THAT

11:39AM  13       PRONG.  I THINK IT'S IMPORTANT TO MAKE THAT VERY CLEAR HERE.

11:39AM  14            THE DEFECT EFFECTS PRONG, WHICH IS THAT THIRD CAUSE IN

11:39AM  15       SECTION 1605(A)(2), SAYS ESSENTIALLY THAT THE COMMERCIAL

11:39AM  16       ACTIVITY EXCEPTION CAN APPLY IF THE ACTION IS BASED ON CONDUCT

11:39AM  17       OF THE FOREIGN ENTITY ABROAD THAT CAUSES A DIRECT EFFECT IN THE

11:40AM  18       UNITED STATES.

11:40AM  19                 THE COURT:  UH-HUH.

11:40AM  20                 MR. BASH:  THE TOUR HAS READ THAT PROVISION TO MEAN

11:40AM  21       THAT THE ACTION CAN BE BASED ON THE DIRECT EFFECT.  THAT'S NOT

11:40AM  22       WHAT IT SAYS.

11:40AM  23            THE ACTION STILL HAS TO BE BASED ON THE FOREIGN

11:40AM  24       SOVEREIGN'S CONDUCT, IT'S JUST THAT THE THING THAT MAKES THAT

11:40AM  25       SUFFICIENT TO WAIVE IMMUNITY IS THAT IT HAS A DIRECT EFFECT IN

11:40AM 1       THE UNITED STATES.

11:40AM 2            AND I WOULD POINT THE COURT TO A DECISION OF THE D.C.

11:40AM 3       CIRCUIT LAST YEAR ACTUALLY WRITTEN BY JUDGE, NOW JUSTICE,

11:40AM 4       JACKSON WHERE SHE WENT THROUGH THE STATUTORY ANALYSIS VERY

11:40AM 5       CLEARLY, CITED OTHER CIRCUIT COURTS, AND MADE CLEAR THAT THE

11:40AM 6       ACTION STILL HAS TO BE BASED ON THE CONDUCT OF THE SOVEREIGN.

11:40AM 7       IN THIS CASE FOR ALL OF THE REASONS WE HAVE PREVIOUSLY GIVEN,

11:40AM 8       THE ACTION IS NOT BASED ON PIF'S CONDUCT, EITHER THE

11:40AM 9       COUNTERCLAIM OR THE CLAIM.

11:40AM 10           THE LAST POINT I'LL MAKE ON SOVEREIGN IMMUNITY IS THAT I

11:40AM 11      HEARD MR. PETERS SAY THAT A REASONABLE INFERENCE MIGHT BE

11:40AM 12      ENOUGH.  THAT'S NOT TRUE.

11:41AM 13           I DON'T HAVE THE SUPREME COURT CITATION OFF THE TOP OF MY

11:41AM 14      HEAD, BUT THE SUPREME COURT HAS BEEN VERY CLEAR THAT A

11:41AM 15      REASONABLE INFERENCE THAT AN EXCEPTION APPLIES IS INSUFFICIENT.

11:41AM 16      IT NEEDS -- THE COURT NEEDS TO BE CLEAR THAT IT DOES APPLY

11:41AM 17      BASED ON THE EVIDENCE IN THE RECORD.  THEY DON'T HAVE THAT.

11:41AM 18           WITH THE COURT'S LEAVE, I WILL TURN TO THE JURISDICTIONAL

11:41AM 19      ISSUES, UNLESS THERE'S FURTHER QUESTIONS.

11:41AM 20             THE COURT:  NO.  LET'S MOVE ON TO PERSONAL

11:41AM 21      JURISDICTION.  AND MY FIRST QUESTION, WHICH YOU DON'T WANT TO

11:41AM 22      ANSWER AND YOU DON'T HAVE TO REARGUE THE PREMISE, WHICH IS IF

11:41AM 23      AN FSIA EXCEPTION APPLIES, THEN DOES THERE NEED TO BE A

11:41AM 24      SEPARATE PERSONAL JURISDICTION ANALYSIS OR HAS THAT BEEN

11:41AM 25      ADDRESSED?

11:41AM 1          MR. BASH:  THERE DOES, YOUR HONOR.  AND I WANT TO BE

11:41AM 2    CANDID WITH THE COURT -- LET ME FRAME IT AND THEN GO THROUGH

11:42AM 3    THE ANALYSIS.  THERE ARE SEPARATE LEGAL REQUIREMENTS THAT NEED

11:42AM 4    TO BE SATISFIED SEPARATELY.  IT'S CONCEIVABLE IN ANY GIVEN CASE

11:42AM 5    THAT THE WAY THAT THE COURT RESOLVED THE IMMUNITY OBJECTION

11:42AM 6    COULD AS A MATTER OF LOGIC DICTATE THE PERSONAL JURISDICTION

11:42AM 7    OBJECTION, BUT THAT'S NOT THIS CASE, AND IT'S NOT TRUE

11:42AM 8    CATEGORICALLY OR AS A MATTER OF LAW.

11:42AM 9          SO LET ME FIRST ADDRESS THEIR ARGUMENT THAT AS A MATTER OF

11:42AM 10   LAW PERSONAL JURISDICTION IS SATISFIED AND THEN TURN TO THE

11:42AM 11   FACTS OF THIS CASE.

11:42AM 12          THE COURT:  OKAY.

11:42AM 13          MR. BASH:  SO THEY CITE, I GUESS, A FOOTNOTE IN

11:42AM 14   SUMANTAR, THE SUPREME COURT CASE THAT I REFERENCED EARLIER, FOR

11:42AM 15   THE PROPOSITION THAT WHENEVER THE FOREIGN SOVEREIGN IMMUNITIES

11:42AM 16   ACT IS MET, PERSONAL JURISDICTION IS ALSO SATISFIED.

11:42AM 17          THERE ARE TWO PROBLEMS WITH THAT INFERENCE THAT THEY'RE

11:42AM 18   DRAWING FROM THAT.

11:42AM 19          ONE, THE SUPREME COURT WAS ONLY TALKING ABOUT STATUTORY

11:42AM 20   PERSONAL JURISDICTION.  THE COURT WAS NOT ADDRESSING

11:42AM 21   CONSTITUTIONAL REQUIREMENTS, I.E., INTERNATIONAL SHOE, BURNHAM

11:43AM 22   AND THOSE CASES.

11:43AM 23          SECOND, THE STATUTE THAT THE COURT WAS REFERRING TO IS 28

11:43AM 24   U.S.C. 1330.  AND WHAT THAT STATUTE SAYS IS THAT WHERE THERE IS

11:43AM 25   AN ACTION AGAINST THE FOREIGN SOVEREIGN AND THE FSIA EXCEPTION

11:43AM 1      IS MET, THEN THERE IS PERSONAL JURISDICTION AS A STATUTORY

11:43AM 2      MATTER.

11:43AM 3          OF COURSE THIS IS NOT AN ACTION AGAINST A FOREIGN

11:43AM 4      SOVEREIGN, SO THE PLAIN LANGUAGE OF THE PROVISION THAT THE

11:43AM 5      SUPREME COURT WAS CITING DOES NOT APPLY HERE.

11:43AM 6          THIS DOES KIND OF POINT OUT WHAT I LED WITH, WHICH IS THAT

11:43AM 7      THE LANGUAGE OF ALL OF THESE FSIA PROVISIONS ARE NOT DESIGNED

11:43AM 8      TO DEAL WITH THIS SITUATION WHERE THERE'S A THIRD PARTY WHO IS

11:43AM 9      NOT ACTUALLY A DEFENDANT IN THE CASE WHO IS CLAIMING IMMUNITY.

11:43AM 10         BUT IN ANY EVENT, THAT STATUTE DOES NOT APPLY AND JUST AS

11:43AM 11     A CONSTITUTIONAL MATTER, A STATUTE COULD NOT OVERCOME THE

11:43AM 12     NORMAL MINIMUM CONTACTS DUE PROCESS REQUIREMENTS.  SO THEY'RE

11:44AM 13     WRONG ABOUT THAT.  IT'S NOT CATEGORICAL, AND THE COURT DOES IT

11:44AM 14     HAVE TO SATISFY ITSELF THAT THERE IS PERSONAL JURISDICTION

11:44AM 15     BEFORE IT CAN ISSUE AN ORDER AGAINST THE FOREIGN SOVEREIGN,

11:44AM 16     EVEN IF IT CONCLUDES INITIALLY THAT THE FSIA EXCEPTION IS MET.

11:44AM 17             THE COURT:  OKAY.

11:44AM 18             MR. BASH:  SO THEY'VE RAISED TWO BASES FOR

11:44AM 19     PERSONAL -- WELL, THREE IF YOU INCLUDE TAG JURISDICTION.

11:44AM 20         THE FIRST IS THE TRADITIONAL MINIMUM CONTACTS ANALYSIS;

11:44AM 21     THE SECOND IS WHAT THEY CALL AN AGENCY THEORY, WHICH IS NOT

11:44AM 22     NECESSARILY EVEN A REAL THEORY ANYMORE GIVEN INTERVENING

11:44AM 23     SUPREME COURT CASES; AND THE THIRD IS TAG JURISDICTION OVER

11:44AM 24     MR. AL-RUMAYYAN.

11:44AM 25         SO LET ME ADDRESS --

11:44AM  1           THE COURT:  JUST ADDRESS MINIMUM CONTACTS BY

11:44AM  2     MR. AL-RUMAYYAN IN THE UNITED STATES.

11:44AM  3           MR. BASH:  OF MR. AL-RUMAYYAN?

11:44AM  4           THE COURT:  UH-HUH.

11:44AM  5           MR. BASH:  OKAY.  SO THE MINIMUM CONTACTS ANALYSIS,

11:44AM  6     THE BASIC STANDARD I'M SURE THE COURT IS FAMILIAR WITH, IS YOU

11:44AM  7     HAVE TO PERSONALLY AVAIL YOURSELF OF THE FORUM; AND THEN THE

11:44AM  8     CLAIMS HAVE TO ARISE OUT OF THE CONTACTS CREATED BY THAT

11:45AM  9     PURPOSEFUL AVAILMENT OF THE FORUM; AND THEN THE THIRD PRONG, IT

11:45AM 10     HAS TO BE OTHERWISE REASONABLE.  SO THOSE ARE THE THREE

11:45AM 11     REQUIREMENTS.

11:45AM 12           IN THIS CASE MANY OF THE CONTACTS THAT MR. PETERS CITES

11:45AM 13     NOT ONLY FOR MR. AL-RUMAYYAN BUT ALSO FOR PIF ARE NOT U.S.

11:45AM 14     DIRECTED CONTACTS.  THEY'RE MEETINGS THAT OCCURRED IN OTHER

11:45AM 15     COUNTRIES.  THEY'RE NOT -- THEY MAY BE MEETINGS WITH U.S.

11:45AM 16     PERSONS, BUT UNDER WALDEN VERSUS FIORE, A 2014 U.S.

11:45AM 17     SUPREME COURT CASE, YOU HAVE TO ACTUALLY AS THE DEFENDANT, OR

11:45AM 18     IN THIS CASE THE PARTY WE ARE SEEKING TO EXERCISE JURISDICTION

11:45AM 19     OVER, DIRECT YOUR CONTACTS TO THE FORUM AS A FORUM, NOT JUST TO

11:45AM 20     A PERSON YOU KNOW IS A RESIDENT OF THAT FORUM.

11:45AM 21           SO JUST TO GIVE A COUPLE OF EXAMPLES, AND I'M GOING TO

11:45AM 22     SPEAK BROADLY BECAUSE I DON'T WANT TO VIOLATE THE SEALING

11:46AM 23     ORDER, MR. PETERS CITES MEETINGS THAT WERE TRYING TO BE SET UP

11:46AM 24     WITH A CERTAIN SPORTS AGENT AT ONE POINT IN TIME.

11:46AM 25           WELL, IF YOU ACTUALLY LOOK AT THOSE EMAILS, THE MEETINGS

11:46AM  1    WERE SET FOR A FOREIGN COUNTRY, NOT FOR THE UNITED STATES.  AND

11:46AM  2    IT'S BLACK LETTER LAW AT THIS POINT UNDER WALDEN THAT THE MERE

11:46AM  3    FACT THAT MR. AL-RUMAYYAN MIGHT HAVE KNOWN THAT THAT AGENT WAS

11:46AM  4    A U.S. CITIZEN DOES NOT ESTABLISH A RELEVANT CONTACT FOR

11:46AM  5    PURPOSE OF THE MINIMUM CONTACTS ANALYSIS.

11:46AM  6        SO THEY HAVE A NUMBER, AND I WOULD ENCOURAGE THE COURT TO

11:46AM  7    LOOK CLOSELY AT THE EVIDENCE CITED, BUT THEY HAVE A NUMBER OF

11:46AM  8    SUPPOSED CONTACTS THAT THERE IS NO INDICATION AT ALL THAT THEY

11:46AM  9    WERE DIRECTED TO THE UNITED STATES.

11:46AM 10        SO I THINK THOSE ARE ALL OUT ON THAT FIRST PRONG.  THIS IS

11:46AM 11    NOT PURPOSEFUL AVAILMENT TO THE UNITED STATES.

11:46AM 12        THEY DO HAVE SOME CONTACT THAT ARGUABLY ARE PURPOSEFUL

11:46AM 13    AVAILMENT TO THE UNITED STATES, BUT THEY DON'T RELATE TO THE

11:47AM 14    CLAIMS.  SO, FOR EXAMPLE, THEY CITED -- I THINK I HEARD

11:47AM 15    MR. PETERS SAY UP HERE THAT MR. AL-RUMAYYAN ATTENDING GOLF

11:47AM 16    TOURNAMENTS WHEN HE WAS HERE OR ATTENDING AWARDS CEREMONIES IN

11:47AM 17    THE UNITED STATES.  THEY DON'T RELATE TO CLAIMS THAT LIV

11:47AM 18    INDUCED BREACH OF CONTRACTS, I MEAN, NOT IN ANYTHING BUT THE

11:47AM 19    MOST TANGENTIAL WAY.

11:47AM 20        AND I POINT THE COURT TO THE SUPREME COURT'S DECISION IN

11:47AM 21    FORD TWO YEARS AGO.  WHAT THE COURT SAID THERE WAS THAT YOU

11:47AM 22    DON'T HAVE TO HAVE A STRICT CAUSAL CONNECTION BETWEEN THE

11:47AM 23    CLAIMS AND THE CONTEXT, BUT THE "RELATED TO" LANGUAGE

11:47AM 24    IMPOSES -- AND THIS WAS JUSTICE HAGAN'S WORDS -- "IMPOSES REAL

11:47AM 25    LIMITS."

11:47AM 1       IN ESSENCE, WHAT MR. PETERS IS ARGUING IS THAT ANY

11:47AM 2   INVOLVEMENT IN A U.S. SUBSIDIARY'S BUSINESS BY THE PARENT OR

11:47AM 3   THE OFFICER OF AN PARENT IS ENOUGH TO ESTABLISH THE REQUISITE

11:47AM 4   MINIMUM CONTACTS FOR ANY CLAIM AGAINST THE SUBSIDIARY RELATED

11:48AM 5   TO ITS BUSINESS BECAUSE THE CONTACTS THEY'RE CITING OF

11:48AM 6   MR. AL-RUMAYYAN AND EVEN PIF IN THE UNITED STATES ARE NOT

11:48AM 7   CONTACTS WITH ANY REAL DIRECT RELATION TO THE ACTUAL

11:48AM 8   COUNTERCLAIM THAT THEY HAVE BROUGHT.  THEY'RE CONTACTS THAT

11:48AM 9   ALMOST ANY INVESTOR MIGHT HAVE IN A SUBSIDIARY.

11:48AM 10      AND IF YOU GET TO THAT POINT THAT A ESSENTIALLY ANY

11:48AM 11  CONTACTS WITH A SUBSIDIARY SUBJECTS THE PARENT TO PERSONAL

11:48AM 12  JURISDICTION FOR ANY CLAIM AGAINST THE SUBSIDIARY, YOU'VE

11:48AM 13  VIOLATED DAIMLER, YOU HAVE VIOLATED NINTH CIRCUIT DECISIONS IN

11:48AM 14  RANZA, AND HOLLAND, AND UNICAL ALL CITED IN OUR BRIEFS, ALL OF

11:48AM 15  WHICH SAY THE MERE FACT THAT YOU HAVE A U.S. SUBSIDIARY AND A

11:48AM 16  NORMAL RELATIONSHIP WITH THAT SUBSIDIARY DOES NOT SUBJECT THE

11:48AM 17  FOREIGN PARENT TO JURISDICTION IN THE UNITED STATES.

11:48AM 18      AND I KNOW WE'VE GOTTEN INTO IS MR. AL-RUMAYYAN OR IS PIF

11:48AM 19  ENGAGED IN CONDUCT THAT IS MORE THAN A TYPICAL PARENT

11:48AM 20  SUBSIDIARY RELATIONSHIP.  AND I THINK THE REALLY IMPORTANT

11:49AM 21  DECISION ON THAT IS THE NINTH CIRCUIT DECISION IN RANZA.

11:49AM 22  THAT'S A PERSONAL JURISDICTION CASE, AND THE NINTH CIRCUIT

11:49AM 23  CONSIDERS WHAT IS A NORMAL RELATIONSHIP BETWEEN A PARENT AND A

11:49AM 24  SUBSIDIARY THAT JUSTIFIES FOR JURISDICTIONAL PURPOSES TREATING

11:49AM 25  THEM AS SEPARATE ENTITIES.

11:49AM 1    AND THESE ARE THE THINGS THAT THE NINTH CIRCUIT SAID WAS

11:49AM 2   OKAY, MEANING DID NOT MAKE THEM ONE AND THE SAME FOR

11:49AM 3   JURISDICTIONAL PURPOSES:  THE PARENT OVERSEEING THE OPERATIONS

11:49AM 4   OF A SUBSIDIARY, THE PARENT HAVING BUDGET AUTHORITY OVER THE

11:49AM 5   SUBSIDIARY, THE PARENT APPROVING LARGE PURCHASES BY THE

11:49AM 6   SUBSIDIARY, THE PARENT HEAVILY INVOLVED IN THE MARKETING OF A

11:49AM 7   SUBSIDIARY'S BRAND.  THOSE ARE ESSENTIALLY THE SORTS OF THINGS

11:49AM 8   THAT MR. PETERS IS ARGUING.

11:49AM 9    THE OPEN QUESTION IN THE NINTH CIRCUIT IS WHETHER

11:49AM 10  DAY-TO-DAY CONTROL WOULD WAIVE THE PARENT'S SEPARATE STATUS IN

11:49AM 11  SENSE FOR JURISDICTION, BUT WE DON'T HAVE THAT HERE.  AND I'M

11:49AM 12  HAPPY TO WALK THROUGH THE FACTS.

11:49AM 13    THE COURT:  BUT IF THE EVIDENCE DEMONSTRATED THAT

11:49AM 14  MR. AL-RUMAYYAN WAS NEGOTIATING CONTRACTS WITH PGA PLAYERS TO

11:50AM 15  SIGN WITH LIV, AND WAS CONTACTING AND NEGOTIATING WITH

11:50AM 16  BROADCASTERS AND SPONSORS FOR THE PURPOSE OF -- BEFORE GOING

11:50AM 17  THERE, RELATIONSHIP WITH PGA AND SIGNING WITH LIV, IF THERE

11:50AM 18  WERE EVIDENCE OF THAT, WOULD THOSE CONTACTS BE SUFFICIENT FOR

11:50AM 19  JURISDICTION?

11:50AM 20    MR. BASH:  THE ANSWER IS DIFFERENT FOR THE TWO

11:50AM 21  GROUPS, YOUR HONOR.  SO CAN I TAKE THEM IN TURN?

11:50AM 22    LET ME START WITH WHAT I THINK IS THE EASIER ONE FOR MY

11:50AM 23  POSITION, THE SPONSORSHIPS.

11:50AM 24    NO, I DON'T THINK IT WOULD.  EVEN ASSUMING THAT THOSE

11:50AM 25  CONVERSATIONS HAPPENED IN THE UNITED STATES VERSUS JUST A

11:50AM  1    MEETING WITH NIKE AND RIYADH, WHICH I DON'T THINK WOULD EVEN

11:50AM  2    MEET THE FIRST STEP OF THE ANALYSIS BECAUSE IT'S NOT U.S.

11:50AM  3    DIRECTED.  A MEETING WITH NIKE IN THE UNITED STATES I DO NOT

11:50AM  4    THINK HAS THE REQUISITE CONNECTION TO THE CLAIMS IN THIS CASE.

11:51AM  5    THAT'S ON THE MARGINS.

11:51AM  6         BUT AS JUSTICE HAGAN SAID, THAT "RELATED TO" STANDARD IS

11:51AM  7    REAL LIMITS, AND IT'S NOT THAT DIFFERENT THAN THE "ARISES OUT

11:51AM  8    OF" STANDARD.  IT'S NOT STRICT CAUSATION.  IT'S NOT THAT

11:51AM  9    DIFFERENT THAN THE OTHER HALF OF THIS JURISDICTIONAL STANDARD,

11:51AM  10   WHICH THIS ARISES OUT OF.  IT'S NOT QUITE STRICT CAUSATION, BUT

11:51AM  11   IT'S CLOSE.  AND I DON'T THINK CONVERSATIONS WITH SPONSORS ARE

11:51AM  12   CLOSE TO THE COUNTERCLAIM OR CERTAINLY NOT TO THE CLAIM.

11:51AM  13         THE COURT:  WHAT ABOUT CONVERSATIONS WITH GOLFERS?

11:51AM  14         MR. BASH:  SO, FIRST, IF THOSE CONVERSATIONS

11:51AM  15   OCCURRED IN RIYADH, THEN I THINK WE'RE IN WALDEN TERRITORY,

11:51AM  16   MEANING THAT'S A CONVERSATION WITH A U.S. PERSON, BUT IT'S NOT

11:51AM  17   DIRECTED TO THE U.S. FORUM SO --

11:51AM  18         THE COURT:  TO ASK A PLAYER TO FOREGO A CONTRACT

11:51AM  19   WITH THE PGA AND TO NOT PARTICIPATE IN PGA TOURS IN THE

11:51AM  20   UNITED STATES, TO HAVE THAT CONVERSATION CROSS THE BORDER THEN

11:51AM  21   MEANS -- THEN THAT IS NOT A CONTACT FOR JURISDICTIONAL

11:52AM  22   PURPOSES?

11:52AM  23         MR. BASH:  WELL, WHAT THE COURT SAID IN WALDEN IS

11:52AM  24   JUST THE MERE KNOWLEDGE THAT THIS IS GOING TO HAVE EFFECTS IN

11:52AM  25   ANOTHER -- IN THE RELEVANT FORUM IS NOT ENOUGH.  SO WHILE I

| | | |
|---|---|---|
| 11:52AM | 1 | DON'T THINK -- |
| 11:52AM | 2 | THE COURT:  NOT JUST EFFECT BUT INTENTION, INTENTION |
| 11:52AM | 3 | THAT IT HAS, THAT IT IMPACTS COMMERCIAL ACTIVITY OR THAT PGA'S |
| 11:52AM | 4 | ACTIVITY IN THE UNITED STATES. |
| 11:52AM | 5 | MR. BASH:  CANDIDLY, I DON'T THINK IT'S CLEAR IN THE |
| 11:52AM | 6 | COURT'S CASES.  THE CASES WHERE THE SUPREME COURT SAID AN |
| 11:52AM | 7 | EFFECT WAS ENOUGH FOR PURPOSEFUL AVAILMENT WAS CAULDER, BUT |
| 11:52AM | 8 | CAULDER, AS LATER EXPLAINED IN WALDEN, WAS VERY SPECIFIC TO THE |
| 11:52AM | 9 | TORT OF DEFAMATION. |
| 11:52AM | 10 | AND THE IDEA WAS THAT YOU CLEARLY INTEND THE EFFECT TO BE |
| 11:52AM | 11 | HAD IN CALIFORNIA, OR IN WHATEVER THE FORUM IS, IF YOU'RE |
| 11:52AM | 12 | DEFAMING SOMEONE IN A WAY THAT WILL REACH THAT FORUM. |
| 11:52AM | 13 | I'M NOT SURE FOR CONTRACT NEGOTIATION PURPOSES THAT IT |
| 11:52AM | 14 | WOULD GET TO THE SAME POINT.  BUT LET ME JUST TAKE THE REST OF |
| 11:52AM | 15 | THE QUESTION.  I THINK THERE ARE TWO OTHER CONSIDERATIONS. |
| 11:53AM | 16 | ONE, WE WOULD STILL HAVE THE REASONABLENESS PRONG OF PERSONAL |
| 11:53AM | 17 | JURISDICTION AND WE'VE MADE THE POINTS ABOUT COMITY AND |
| 11:53AM | 18 | VIOLATING SAUDI ARABIAN -- |
| 11:53AM | 19 | THE COURT:  WE WILL GET TO THOSE. |
| 11:53AM | 20 | MR. BASH:  SO THAT WOULD BE ONE DISTINCTION ON THAT. |
| 11:53AM | 21 | BUT THE OTHER THING I WOULD SAY, AND I KNOW THIS IS |
| 11:53AM | 22 | FIGHTING A HYPOTHETICAL, BUT THAT IS THEIR MOST SIGNIFICANT |
| 11:53AM | 23 | ALLEGED FACT FOR PERSONAL JURISDICTION PURPOSES, BUT FOR THE |
| 11:53AM | 24 | REASONS I HAVE ALREADY SAID, IT IS JUST NOT FACTUALLY SUPPORTED |
| 11:53AM | 25 | BY THE RECORD. |

11:53AM 1      THERE ARE DECLARATIONS, SWORN DECLARATIONS SAYING THAT

11:53AM 2  NEITHER MR. AL-RUMAYYAN NOR PIF HAD ANY RELATIONSHIP TO

11:53AM 3  CONTRACT NEGOTIATIONS.  THEY'VE CITED A COUPLE OF EMAILS, AND I

11:53AM 4  WON'T BORE THE COURT WITH GOING OVER WHY WE DON'T THINK THOSE

11:53AM 5  ARE RELEVANT.

11:53AM 6      BUT ESSENTIALLY WHAT THEY POINTED TO IS THE FACT THAT FOR

11:53AM 7  MAJOR BUDGETARY OUTLAYS, INCLUDING SOME THAT WOULD HAVE

11:53AM 8  REQUIRED ADDITIONAL CAPITAL INVESTMENT BY PIF, THERE WAS

11:53AM 9  CONSULTATION.

11:53AM 10      THE COURT:  ISN'T IT FAIR TO SAY THAT THE RECORD

11:53AM 11  BEFORE THE COURT, GOING BACK TO THE PLAYER NEGOTIATIONS, IS

11:54AM 12  THAT THERE IS CONFLICTING EVIDENCE?  AND I APPRECIATE THE

11:54AM 13  PARTIES DISPUTE THE WEIGHT OF THE EVIDENCE, BUT THERE IS

11:54AM 14  CONFLICTING EVIDENCE.

11:54AM 15      THE DECLARATIONS BY MR. AL-RUMAYYAN, FOR EXAMPLE, IS --

11:54AM 16  THAT'S EVIDENCE, BUT IT'S NOT NECESSARILY DISPOSITIVE, AND THE

11:54AM 17  PGA POINTS TO DOCUMENTS THAT APPEAR TO CONFLICT WITH THAT, AT

11:54AM 18  LEAST AT SOME LEVEL.

11:54AM 19      AGAIN, ISN'T THE RESPONSE TO THAT OR IS A RESPONSE TO THAT

11:54AM 20  THAT THERE THEN SHOULD BE DISCOVERY AS TO MR. AL-RUMAYYAN AND

11:54AM 21  PIF'S INVOLVEMENT IN PLAYER NEGOTIATIONS?

11:54AM 22      MR. BASH:  RESPECTFULLY, YOUR HONOR, I DON'T THINK

11:54AM 23  THERE IS CONFLICTING EVIDENCE.  THE DOCUMENTS THAT THEY HAVE

11:54AM 24  POINTED TO, NONE OF THEM, I REALLY URGE THE COURT TO LOOK AT

11:54AM 25  THEM AND I KNOW THE COURT PROBABLY ALREADY HAS, I WOULD URGE

11:54AM 1   THE COURT TO TAKE A SECOND LOOK, THEY'RE NOT ABOUT NEGOTIATING

11:54AM 2   THE TERMS OF THE CONTRACT, THE SPECIFIC PROVISIONS ON

11:55AM 3   CONFLICTING EVENTS AND MEDIA RIGHTS THAT ARE AT THE HEART OF

11:55AM 4   THEIR COUNTERCLAIM.  HEY ARE ABOUT CONSULTING WITH PIF FOR

11:55AM 5   ADDITIONAL BUDGETARY OUTLAYS.  THAT'S NOT -- IF THEY PROVE THAT

11:55AM 6   HAPPENED, THAT DOES NOT PROVE THEIR CLAIM IN TERMS OF THE

11:55AM 7   SOVEREIGN IMMUNITY ANALYSIS AND IN TERMS OF THE JURISDICTIONAL

11:55AM 8   ANALYSIS AND THAT WOULD NOT ESTABLISH ANY LIABILITY ON BEHALF

11:55AM 9   OF PIF AND MR. AL-RUMAYYAN.

11:55AM 10      THE ONLY OTHER POINT I WOULD MAKE, AND I KNOW I'M

11:55AM 11  REPEATING MYSELF, BUT YOU MENTIONED JURISDICTIONAL DISCOVERY

11:55AM 12  AGAIN.  THIS IS THE RARE FSIA CASE, FOREIGN SOVEREIGN

11:55AM 13  IMMUNITIES ACT, WHERE THEY HAVE ALREADY RECEIVED 100,000 PAGES

11:55AM 14  OF DOCUMENTS -- 100,000 DOCUMENTS, I'M SORRY.  I THINK IT'S

11:55AM 15  300,000 SOMETHING PAGES.  THOSE INCLUDE MINUTES OF THE LIV

11:55AM 16  BOARD.

11:55AM 17      YOU WOULD THINK IF THEY HAD BEEN ABLE TO ESTABLISH -- IF

11:55AM 18  IT WERE TRUE THAT PIF WAS INVOLVED IN SUCH AN INTEGRAL ACTIVITY

11:56AM 19  AS CONTRACT NEGOTIATIONS, THEY WOULD HAVE COME UP WITH SOME

11:56AM 20  EVIDENCE AFTER RECEIVING 300,000 PAGES OF DOCUMENTS IF THAT WAS

11:56AM 21  TRUE.

11:56AM 22      MY UNDERSTANDING IS THAT JURISDICTIONAL DISCOVERY IS RARE

11:56AM 23  IN FSIA CASES TO BEGIN WITH, BUT IN A CASE LIKE THIS WHERE THE

11:56AM 24  PLAINTIFF HAS ALREADY RECEIVED 100,000 PAGES OF DOCUMENTS, I

11:56AM 25  JUST DON'T THINK THERE'S ANY BASIS FOR IT.

11:56AM 1        THE COURT:  OKAY.  LET'S KEEP GOING BECAUSE I DO

11:56AM 2   WANT TO WRAP UP THIS PORTION OF THE DISCUSSION.

11:56AM 3        AND I DIDN'T HEAR ANYTHING IN YOUR COMMENTS THAT INDICATED

11:56AM 4   THAT CONTACTS UNDER THIS ANALYSIS, UNDER THE JURISDICTIONAL

11:56AM 5   ANALYSIS HAS TO BE WITH ANY SPECIFIC PLACE SUCH AS NEW YORK.

11:56AM 6   THAT WE'RE TALKING ABOUT CONTACTS WITH THE U.S. AS A WHOLE.

11:56AM 7        MR. BASH:  THAT'S CORRECT, YOUR HONOR, BECAUSE THE

11:56AM 8   ANTITRUST -- I THINK IT'S BECAUSE THE ANTITRUST LAWS HAVE A

11:56AM 9   NATIONAL OF SERVICE OF PROCESS PROVISION, AND SO THE ORDINARY

11:57AM 10  RULE 4(K) ANALYSIS DOES NOT APPLY, AND SO THIS COURT IS NOT

11:57AM 11  BOUND BY THE JURISDICTIONAL CONNECTION WITH CALIFORNIA.

11:57AM 12       THE COURT:  I JUST WANTED TO BE SURE THERE'S NO

11:57AM 13  DISPUTE ON THAT.

11:57AM 14       MR. BASH:  NO DISPUTE.

11:57AM 15       THE COURT:  THANK YOU.  OKAY.

11:57AM 16    LET'S GO TO THE PODIUM POINT.

11:57AM 17       MR. BASH:  WELL, LET ME CEDE THE PODIUM TO MY

11:57AM 18  COLLEAGUES FROM WHITE & CASE WITH LEAVE OF THE COURT.

11:57AM 19       THE COURT:  OKAY.  THANK YOU.  THANK YOU, MR. BASH.

11:57AM 20       MS. LAMM:  THANK YOU VERY MUCH, YOUR HONOR, AND MAY

11:57AM 21  IT PLEASE THE COURT.

11:57AM 22       THERE REALLY ARE TWO VERY SIGNIFICANT ISSUES HERE, ONE, OF

11:57AM 23  COURSE, THAT YOU FOCUSSED ON, UNDER THE FSIA.  AND IN THAT I

11:57AM 24  THINK THE NINTH CIRCUIT IS CLEAR AND THE SUPREME COURT IS CLEAR

11:57AM 25  THAT THOSE ISSUES MUST BE DECIDED UP FRONT IN THE LITIGATION,

11:57AM 1    THAT IS, THEY SHOULD BE DECIDED NOW.

11:58AM 2        UNDER PHANEUF VERSUS INDONESIA, WHICH WE CITE, IT MAKES

11:58AM 3    CLEAR THAT WHEN THE DISTRICT COURT ACTUALLY DENIED A MOTION TO

11:58AM 4    DISMISS TEMPORARILY AND SAID LET'S DO SOME DISCOVERY, THAT THE

11:58AM 5    DISTRICT COURT HAD IMPROVIDENTLY POSTPONED THE DECISION.

11:58AM 6        AND SO I THINK WE NEED TO BE CLEAR ON THE SEQUENCE OF HOW

11:58AM 7    THIS SHOULD PROGRESS, AND IT LOOKS LIKE YOU ARE.

11:58AM 8        THE OTHER ONE QUESTION THAT YOU RAISED ON THE SOVEREIGN

11:58AM 9    IMMUNITY ISSUES THAT I WOULD JUST LIKE TO MENTION, AND IT'S

11:58AM 10   IMPORTANT BOTH ON IMMUNITY AND ON COMITY, BUT THE SUPREME COURT

11:58AM 11   IN EXAMINING THE FACTS TO SEE WHAT HAS BEEN ESTABLISHED IN

11:59AM 12   TERMS OF THE APPLICATION OF AN IMMUNITY EXCEPTION, NOW THEY'RE

11:59AM 13   GENERALLY TALKING ABOUT WITH RESPECT TO A PARTY, NOT A

11:59AM 14   NONPARTY, BECAUSE OF ALL OF THE ISSUES THAT MR. BASH HAS

11:59AM 15   EXPLAINED, BUT IN THE VENEZUELA V. HOMERIC CASE, IT'S CLEAR THE

11:59AM 16   FACTS MUST SHOW, NOT ARGUABLY SHOW, AN IMMUNITY EXCEPTION

11:59AM 17   APPLIES.

11:59AM 18       AGAIN, THERE ARE TWO OTHERS THAT I'M SURE YOU'RE VERY

11:59AM 19   FAMILIAR WITH, TWOMBLY AND IQBAL, AND THE FACTS HAVE TO BE

11:59AM 20   PLAUSIBLE ON THEIR FACE.

11:59AM 21       AND A LOT OF WHAT YOU HAVE HEARD THIS MORNING, WHAT THE

11:59AM 22   DEFENDANTS HAVE DONE, WHAT THE TOUR HAS DONE IS TO CONFLATE ALL

11:59AM 23   OF THE PARTIES BEFORE THE COURT AND PIF AND THE NATURE OF THE

11:59AM 24   INVESTMENT AND I THINK IT'S VERY --

12:00PM 25           THE COURT:  I THINK WE HAVE COVERED THAT ARGUMENT.

12:00PM   1              MS. LAMM:  OKAY.

12:00PM   2              THE COURT:  I THINK MR. BASH ADDRESSED THAT.  I

12:00PM   3      REALLY WANT TO GET TO THE IMPACT OF SAUDI LAW.

12:00PM   4              MS. LAMM:  OF COMITY.

12:00PM   5          THE SUPREME COURT IN HOMERIC EXPLAINED, AND IT'S AT PAGE

12:00PM   6      170, 171, THAT THE BASE OBJECTIVE OF THE FSIA AND SOVEREIGN

12:00PM   7      IMMUNITY IS BOTH TO RECOGNIZE THE ABSOLUTE INDEPENDENCE OF

12:00PM   8      EVERY SOVEREIGN AUTHORITY AND TO INDUCE EACH NATION STATE AS A

12:00PM   9      MATTER OF INTERNATIONAL COMITY TO RESPECT THE INDEPENDENCE AND

12:00PM   10     INDIGNITY OF THE OTHER.  AND THAT HAS VERY IMPORTANT

12:00PM   11     SIGNIFICANCE HERE.

12:00PM   12         CENTRAL TO YOUR DECISION, OF COURSE, OF IMMUNITY IS SAUDI

12:01PM   13     LAW WITH RESPECT TO PIF'S STATUS AS AN INTEGRAL PART OF THE

12:01PM   14     KINGDOM OF SAUDI ARABIA, AND INTERNATIONAL COMITY REQUIRES THAT

12:01PM   15     YOU BALANCE THE COMPLEX ISSUES OF SAUDI LAW AND U.S. LAW AND

12:01PM   16     CONSIDERING THE INTERESTS OF BOTH STATES.

12:01PM   17         AND PIF URGED THAT, OF COURSE.  WE SEE EVEN MORE SAUDI

12:01PM   18     LAW.  BUT EVEN THE SAUDI LAW THAT IS ON THE RECORD, YOUR HONOR,

12:01PM   19     ATTACHED TO MR. AL-RUMAYYAN'S DECLARATION AND ADDRESSED IN HIS

12:01PM   20     DECLARATION PARAGRAPHS 8, 9, AND 10, WAS ENOUGH FOR YOU TO SEE.

12:01PM   21     THERE IS A TENSION.

12:01PM   22         UNDER F.R.C.P. 441, IT'S ENTIRELY APPROPRIATE TO DEVELOP A

12:02PM   23     FULL RECORD, BUT EVEN ON THE BASIS OF THE RECORD THAT YOU HAVE,

12:02PM   24     IT'S ENOUGH FOR YOU TO KNOW THAT IN PIF'S OWN GOVERNING LAW, IT

12:02PM   25     DEFINES WHAT PIF IS WITH A PUBLIC PURPOSE, AND IT PROHIBITS THE

12:02PM   1    DISCLOSURE OF CONFIDENTIAL INFORMATION.

12:02PM   2         AND --

12:02PM   3              THE COURT:  SO LET ME -- I APPRECIATE THAT POINT,

12:02PM   4    AND IN THE SUBSCRIPTION AGREEMENT, WHICH IS DATED FROM 2021,

12:02PM   5    THERE IS A PROVISION THAT ADDRESSES CONFIDENTIALITY, AND I'M ON

12:02PM   6    PAGE 4 OF THAT AGREEMENT, SECTION 24.  AND IT HAS THE VERY

12:03PM   7    PROVISION THAT WE OFTEN SEE IN AGREEMENTS, WHICH IS THAT THE

12:03PM   8    PARTIES WILL NOT DISCLOSE INFORMATION UNLESS OTHERWISE ORDERED

12:03PM   9    BY THE COURT.

12:03PM  10         AND ASSUMING THE JURISDICTIONAL ARGUMENT OBVIOUSLY, WHICH

12:03PM  11    I UNDERSTAND IS DISPUTED, IT SEEMED THAT PIF AGREED THAT IT

12:03PM  12    WOULD PRODUCE DOCUMENTS -- ADMITTEDLY WE'RE TALKING ABOUT THE

12:03PM  13    SUBSCRIPTION AGREEMENT THAT RELATE TO THIS RELATIONSHIP, IF THE

12:03PM  14    COURT ORDERED IT.

12:03PM  15              MS. LAMM:  WELL, VIS-A-VIS LIV, YOUR HONOR, AND

12:03PM  16    THERE IS, WITH RESPECT TO ALL OF THESE, THEN A PROCEDURE THAT,

12:04PM  17    IN FACT, WOULD HAVE TO BE FOLLOWED, THERE WOULD HAVE TO BE A

12:04PM  18    REQUEST, AND THERE WOULD HAVE TO BE PERMISSION GIVEN.  I DON'T

12:04PM  19    KNOW WHAT THINGS IN FACT VIOLATE THE KINGDOM'S SECRECY LAWS.

12:04PM  20              THE COURT:  RIGHT.  BUT IF WE HAVE THE KINGDOM'S

12:04PM  21    SECRECY LAWS OVER HERE, AND WE HAVE MR. AL-RUMAYYAN ON BEHALF

12:04PM  22    OF PIF SIGNS THE SUBSCRIPTION AGREEMENT, WITH THE PREDECESSOR

12:04PM  23    TO LIV THAT LAYS OUT THE FUNDING PROTOCOLS AND THE MILESTONES,

12:04PM  24    ET CETERA, AND ADDRESSES CONFIDENTIALITY AND SAYS, OKAY, BUT

12:04PM  25    THE CONFIDENTIALITY PROVISION WON'T APPLY TO DISCLOSURE OF

12:04PM 1      INFORMATION UNDER THESE CIRCUMSTANCES, AND ONE OF THE

12:05PM 2      CIRCUMSTANCES IS THAT A COURT OF COMPETENT JURISDICTION, WHICH

12:05PM 3      IS OUR FIRST SET OF ISSUES, ORDERS PRODUCTION OF THE DOCUMENTS.

12:05PM 4           MS. LAMM:  WELL, YOUR HONOR, THERE ARE CAVEATS WHEN

12:05PM 5      YOU READ 24 IN TERMS OF WHAT INFORMATION IT IS REFERRING TO,

12:05PM 6      WHETHER IT'S REQUIRED BY LAW AND A NUMBER OF OTHER CAVEATS.

12:05PM 7           SO I THINK YOU REALLY DO NEED A FULL APPRECIATION OF THE

12:05PM 8      SAUDI LAW ON THE OTHER SIDE AND THE CONSEQUENCES.

12:05PM 9           I DON'T KNOW THAT THIS PROVISION THAT IS DEALING WITH THE

12:05PM 10     RELATIONSHIP BETWEEN PIF AND THE INTERMEDIARIES BETWEEN PIF AND

12:05PM 11     LIV IS A BLANKET WAIVER OF ALL OF THE SAUDI LAW.

12:06PM 12          I DON'T THINK THAT IS THE CASE.

12:06PM 13          THE COURT:  OKAY.  THEN WHAT ABOUT A RICHMARK

12:06PM 14     ANALYSIS IN THIS CASE?  AND THAT'S OFTEN WHERE WE GO IN THESE

12:06PM 15     CASES WHERE FOREIGN LAW --

12:06PM 16          MS. LAMM:  THAT'S RIGHT.  THAT'S WHERE I WANT TO

12:06PM 17     TAKE YOU, TO THE RICHMARK ANALYSIS.

12:06PM 18          THE COURT:  GOOD.

12:06PM 19          MS. LAMM:  AND I REALLY CALL IT THE AEROSPATIALE

12:06PM 20     ANALYSIS BECAUSE RICHMARK --

12:06PM 21          THE COURT:  IT'S RICHMARK IN MY NOTES.

12:06PM 22          MS. LAMM:  YES.  OKAY.

12:06PM 23          WELL, RICHMARK YOU SHOULD RECALL IS DECIDEDLY DIFFERENT.

12:06PM 24     RICHMARK INVOLVED A PARTY, CHINA, THAT WAS A JUDGMENT DEBTOR,

12:06PM 25     AND THE INFORMATION SOUGHT WAS AS TO ASSETS IN THE U.S. OR

12:06PM  1    ELSEWHERE.  SO IT'S VERY DIFFERENT FROM A SITUATION WHERE YOU

12:06PM  2    HAVE A THIRD PARTY UNINVOLVED IN THE LITIGATION WHO RECEIVES A

12:07PM  3    RULE 45 SUBPOENA THAT IS CALLING UPON IT TO PRODUCE HIGHLY

12:07PM  4    CONFIDENTIAL INFORMATION.

12:07PM  5         AND LET ME TAKE YOU THROUGH THAT.

12:07PM  6              THE COURT:  UH-HUH.

12:07PM  7              MS. LAMM:  THE COURTS REALLY DO APPROACH THE

12:07PM  8    RICHMARK FACTORS WITH A FAIR AMOUNT OF RESPECT FOR THE FOREIGN

12:07PM  9    SOVEREIGN AND ITS EVIDENCE.  AND THE INFORMATION -- AND YOU'RE

12:07PM 10    GOING TO DISCUSS FURTHER WITH OTHER COLLEAGUES THE SCOPE AND

12:07PM 11    THE BREADTH OF WHAT IS SOUGHT.

12:07PM 12         THE INFORMATION SOUGHT IS EXTRAORDINARY.  BUT IN LOOKING

12:07PM 13    AT THE RICHMARK FACTORS, YOU HAVE TO ANALYZE THE IMPORTANCE TO

12:07PM 14    THE LITIGATION OF THE REQUESTED DOCUMENTS AND INFORMATION.

12:07PM 15         HERE A PIF IS A NONPARTY.  IT'S BARELY MENTIONED IN THE

12:08PM 16    COMPLAINT MENTIONING MONOPOLY AND FOCUSSING ON THE

12:08PM 17    ANTICOMPETITIVE ACTIVITY IN THE MARKETPLACE, AND IT'S HARDLY

12:08PM 18    MENTIONED IN THE COUNTERCLAIM.

12:08PM 19         WE HAVE HEARD A LOT WHERE THEY'VE CONFLATED THINGS TODAY

12:08PM 20    ABOUT WHAT BOARD MEMBERS HAVE SAID, ET CETERA, BUT THEY DO HAVE

12:08PM 21    ALL OF THE BOARD MINUTES AND THERE HAS BEEN NO EVIDENCE OF

12:08PM 22    EXERTED DOMINATION OR CONTROL OR ANYTHING ELSE THAT PIF WAS

12:08PM 23    DOING HERE.

12:08PM 24         AND IN LOOKING AT THAT, PIF'S DOCUMENTS APPEAR TO BE OF

12:08PM 25    MARGINAL RELEVANCE TO THE ALLEGATIONS OF WHAT THE GRAVAMEN OF

12:08PM  1      THE COMPLAINT IS IN EITHER RESPECT, AND IT REALLY IS RECALLING

12:08PM  2      THAT PIF IS A SHAREHOLDER IN LIV GOLF BUT NOT IN LIV GOLF INC.

12:09PM  3      IN THE UNITED STATES.  THERE ARE TWO JERSEY COMPANIES IN

12:09PM  4      BETWEEN.

12:09PM  5          IN ANY EVENT, THE NEXT FACTOR YOU LOOK TO IS THE DEGREE OF

12:09PM  6      SPECIFICITY OF THE REQUEST.  AND IN LOOKING AT THOSE, THEY ARE

12:09PM  7      NUMEROUS, THEY ARE OVERBROAD, AND THEY'VE BEEN ENTIRELY

12:09PM  8      CHALLENGED.  AND I THINK MY COLLEAGUES WILL DISCUSS THIS IN

12:09PM  9      GREATER DETAIL.

12:09PM  10         AND WHETHER THE INFORMATION SOUGHT WAS -- IN FACT

12:09PM  11     ORIGINATED IN THE U.S.  HERE NONE OF IT IS, YOUR HONOR.  NONE

12:09PM  12     OF IT ORIGINATES IN THE U.S.  THEY SEEK GOVERNMENTAL DOCUMENTS

12:09PM  13     IN RIYADH.  AND, IN FACT, WE HEARD SOMETHING ABOUT THE ENTITY

12:10PM  14     ON MADISON AVENUE.  THERE'S NO EVIDENCE THAT THAT ENTITY HAD

12:10PM  15     ANYTHING TO DO WITH THE COMPLAINT ON EITHER SIDE, WHETHER IT'S

12:10PM  16     THE COUNTERCLAIM OR THE COMPLAINT.

12:10PM  17         THERE IS REALLY NOTHING.  WHEN YOU'RE ANALYZING THIS PRONG

12:10PM  18     OF THE TEST, YOU HAVE TO LOOK TO WHAT IS BEING SOUGHT AND WHERE

12:10PM  19     IT IS, AND THEN YOU HAVE TO BALANCE THE INTEREST.  AND THIS IS

12:10PM  20     THE MOST IMPORTANT FACTOR ACCORDING, OF COURSE, TO THE COURTS.

12:10PM  21     AND HERE COMPLIANCE WITH THE SUBPOENAS REQUIRE VIOLATING

12:10PM  22     SIGNIFICANT SAUDI LAW WHERE THE KEY ENTITY, THE KINGDOM'S

12:10PM  23     PUBLIC INVESTMENT FUND, AND ONE OF ITS MINISTERS, RISK SEVERE

12:11PM  24     PENALTIES.

12:11PM  25         PIF'S STATUS HERE IN THE UNITED STATES AS A FOREIGN

| | |
|---|---|
| 12:11PM | 1 |

INVESTOR MAKES DEMONSTRABLE ITS INTEREST IN BUSINESS THAT IT
DOES HERE AND IN A MYRIAD OF SITUATIONS.  IT'S NOT ONLY WITH
LIV.

     SO THE ASSESSMENT NECESSARILY INCLUDES THINKING ABOUT THE
RIPPLE EFFECTS OF ALL OF SUCH AN ORDER WITH RESPECT TO A MYRIAD
OF POTENTIAL CASES.

     PIF RESPECTS ITS OWN LAWS.  BY A CLAUSE IN THIS AGREEMENT,
IT CERTAINLY DOESN'T AGREE TO HAND OVER CONFIDENTIAL SAUDI
DOCUMENTS.  THAT'S ONE OF THE REASONS WE REALLY WANTED YOU TO
SEE IN MORE DETAIL WHAT THE SAUDI LAW REACHES AND NOT JUST BY
ME RECITING SAUDI LAWS TO YOU, BUT BY HEARING FROM AN EXPERT ON
SAUDI LAW.  THIS IS AN IMPORTANT THING.

          THE COURT:  AS I INDICATED --

          MS. LAMM:  YOU'VE DENIED THAT.

          THE COURT:  PIF HAD AMPLE OPPORTUNITY TO BRING THAT
TO THE COURT.

          MS. LAMM:  RIGHT.  WELL, YES AND NO.

          THE COURT:  LET'S MOVE ON.

          MS. LAMM:  PIF DOES OPERATE IN THE PUBLIC INTEREST,
IN A VERY SIGNIFICANT PUBLIC INTEREST, PROMOTING ECONOMIC
DEVELOPMENT IN THE KINGDOM, DIVERSIFYING SOURCES OF REVENUE FOR
THE KINGDOM, AND ASSURING A FINANCIAL FUTURE FOR THE COUNTRY.

     SO IT IS AN INTEGRAL PART AND EXCEEDINGLY IMPORTANT IN
TERMS OF WHAT IT DOES.  AND IT HAS OVER 679 BILLION IN
INVESTMENTS THAT IT MANAGES GLOBALLY.  SO THAT THE IMPLICATIONS

12:13PM  1    HERE OF HAVING TO TURN OVER ALL COMMUNICATIONS WITH THIRD

12:13PM  2    PARTIES OR ALL, I MEAN, IT'S JUST PROFOUND, AND IT REACHES FAR

12:13PM  3    BEYOND WHAT IS PERMISSIBLE UNDER SAUDI LAW.

12:13PM  4         I THINK YOU SHOULD ALSO CONSIDER THE U.S. COURT'S DO

12:13PM  5    RESPECT IN A NUMBER OF CASES THAT WE'VE CITED IMPORTANT FOREIGN

12:13PM  6    STATE INTERESTS, AND WE EXPECT FOREIGN STATES TO RESPECT OURS

12:13PM  7    AS WELL AS MR. BASH HAS IN FACT RECITED.

12:13PM  8         SO THE OTHER FACTOR THAT ARISES IN A NUMBER OF THE CASES

12:13PM  9    IS AN ENTITY'S NONPARTY STATUS REALLY MITIGATES THE U.S.'S

12:14PM  10   GENERAL INTEREST AND IN ENFORCING ITS DISCOVERY LAWS.

12:14PM  11        AND IN FACT UNDER THE FSIA, AS MR. BASH HAS INDICATED,

12:14PM  12   IT'S EXCEEDINGLY DIFFICULT TO EVEN FIND A CASE WHERE COURTS

12:14PM  13   HAVE DONE IT AFTER GOING THROUGH THE FSIA ANALYSIS.

12:14PM  14        THE UNITED STATES HAS EVEN ARGUED RECENTLY THAT IN AN

12:14PM  15   AMICUS BRIEF BEFORE THE SUPREME COURT IN LINDE VERSUS ARAB BANK

12:14PM  16   THAT, IN FACT, IN COMPELLING DISCOVERY, YOU REALLY MUST

12:14PM  17   CONSIDER THE BROAD RANGE OF UNITED STATES FOREIGN RELATION'S

12:14PM  18   INTEREST AND AFFORD SUFFICIENT WEIGHT TO THOSE INTERESTS.

12:14PM  19   THAT'S THE U.S.'S WORDS, NOT MINE.

12:15PM  20        SO REALLY TO DECIDE THESE FUNDAMENTAL ISSUES, YOU DO HAVE

12:15PM  21   TO HAVE SOME DEFERENCE TO THE REQUIREMENTS OF SAUDI LAW.

12:15PM  22   CERTAINLY A CLAUSE IN AN AGREEMENT DOESN'T SAY WE'RE OPENING

12:15PM  23   THE COFFERS TO CONFIDENTIAL DOCUMENTS.  THAT IS ABSOLUTELY NOT

12:15PM  24   THE CASE.  WE CAN DETAIL THEM AT GREAT LENGTH.

12:15PM  25             THE COURT:  I THINK THAT'S HELPFUL.  I WOULD LIKE IT

12:15PM 1    IF YOU COULD WRAP UP ON COMITY.

12:15PM 2            MS. LAMM:  SURE.

12:15PM 3            THE COURT:  I WANT TO MAKE SURE WE GET A BREAK HERE

12:15PM 4    SHORTLY.

12:15PM 5            MS. LAMM:  OKAY.  SO GIVEN THE SENSITIVITIES HERE

12:15PM 6    FOR A NONPARTY, FOREIGN SOVEREIGN, A MAJOR INVESTOR IN THE

12:15PM 7    UNITED STATES BEING ASKED TO, IN FACT, VIOLATE MANY OF ITS OWN

12:15PM 8    CONFIDENTIAL LAWS, INCLUDING ITS OWN STATUTE, THERE IS REALLY A

12:16PM 9    SIGNIFICANT RISK OF TENSION BEING CREATED AS A RESULT WITH

12:16PM 10   RESPECT TO FUTURE INVESTMENTS WITH RESPECT TO THE

12:16PM 11   RELATIONSHIPS.

12:16PM 12       AND, IN FACT, THE COURTS HAVE REFERENCED THAT IN PRIVATE

12:16PM 13   SUITS TO IMPOSE SUCH A BURDEN IS A SIGNIFICANT THING BECAUSE

12:16PM 14   YOU DON'T HAVE THE SAME OF COURSE RETICENCE ON THE PART OF

12:16PM 15   PRIVATE PLAINTIFFS OR DEFENDANTS TO RESPECT OTHER COUNTRY'S

12:16PM 16   LAWS.

12:16PM 17       HERE, THERE ARE REALLY SIGNIFICANT ISSUES THAT WOULD, IN

12:16PM 18   FACT, PREJUDICE PIF TO HAVE DISCOVERY IN ALL OF THESE AREAS.

12:16PM 19            THE COURT:  THANK YOU.

12:16PM 20            MR. BASH:  YOUR HONOR, I WAS NOT SURE IF YOU WANTED

12:16PM 21   ME TO APPROACH TO DISCUSS TAG JURISDICTION OR NOT.

12:17PM 22            THE COURT:  NOT AT THIS TIME.  THANK YOU.

12:17PM 23       WHAT WE'LL DO IS THAT WE'LL TAKE A BREAK NOW.

12:17PM 24       HOLD ON ON THAT, MS. FANTHORPE.  WE'LL DISCUSS IT AT THE

12:17PM 25   RECESS.

| | | |
|---|---|---|
| 12:17PM | 1 | THE CLERK:  YES. |
| 12:17PM | 2 | THE COURT:  AND WE'LL TAKE A RECESS OF PROBABLY |
| 12:17PM | 3 | ABOUT 20 MINUTES.  I WANT TO REVIEW MY NOTES FROM THE PARTY'S |
| 12:17PM | 4 | ARGUMENTS HERE THIS MORNING AND SEE IF I HAVE ADDITIONAL |
| 12:17PM | 5 | QUESTIONS, AS WELL AS TO CONSIDER WHAT MIGHT MAKE SENSE IN |
| 12:17PM | 6 | TERMS OF SENSIBLE NEXT STEPS MOVING FORWARD PENDING THE COURT'S |
| 12:17PM | 7 | DETERMINATION. |
| 12:17PM | 8 | SO LET'S TAKE A BREAK, AND YOU ALL GET SOME FRESH AIR AND |
| 12:17PM | 9 | STRETCH YOUR LEGS, AND WE'LL RECONVENE SHORTLY. |
| 12:17PM | 10 | MR. PETERS:  THANK YOU, YOUR HONOR. |
| 12:18PM | 11 | THE COURT:  THANK YOU. |
| 12:18PM | 12 | MR. BASH:  THANK YOU. |
| 12:18PM | 13 | (RECESS FROM 12:18 P.M. UNTIL 1:15 P.M.) |
| 01:16PM | 14 | THE COURT:  ALL RIGHT.  WE ARE BACK ON THE RECORD |
| 01:16PM | 15 | AFTER A RECESS.  DURING THE RECESS AT THE COURT'S REQUEST THE |
| 01:16PM | 16 | PARTIES MET AND CONFERRED AS TO WHETHER THERE WAS ANY BENEFIT |
| 01:16PM | 17 | TO FURTHER MEET AND CONFER BETWEEN THE PARTIES WITH REGARDS TO |
| 01:16PM | 18 | THE SUBPOENAS THAT HAVE GIVEN RISE TO THE MOTIONS BEFORE US, |
| 01:16PM | 19 | AND THE PARTIES ARE GOING TO TAKE SOME TIME TO CONFER WITH |
| 01:16PM | 20 | THEIR CLIENTS AND FIGURE THAT OUT, FIGURE OUT WHAT THE ANSWER |
| 01:16PM | 21 | TO THAT IS. |
| 01:16PM | 22 | AND THE PIF AND MR. AL-RUMAYYAN COUNSEL WILL HAVE UNTIL |
| 01:17PM | 23 | WEDNESDAY AT 10:00 A.M., THAT IS JANUARY 18TH, TO INFORM THE |
| 01:17PM | 24 | PGA AS TO THE RESULTS OF THEIR -- AS TO WHETHER OR NOT THEIR |
| 01:17PM | 25 | POSITION ON THE MEET AND CONFER, PROPOSED MEET AND CONFER, AND |

01:17PM 1       IF THE ANSWER IS THAT THERE IS NO BENEFIT TO MEET AND CONFER AT

01:17PM 2   THIS TIME, THE COURT WILL ALSO BE PROMPTLY INFORMED.

01:17PM 3       IF THE PARTIES BOTH AGREE THAT SOME MEET AND CONFER,

01:17PM 4   FURTHER MEET AND CONFER MAY BE BENEFICIAL, THEN THEY WILL FILE

01:17PM 5   A SHORT JOINT STATUS REPORT WITH THE COURT BY 10:00 A.M. ON

01:17PM 6   THURSDAY WITH REGARDS TO NEXT STEPS AND THE TIMING OF NEXT

01:17PM 7   STEPS.

01:17PM 8       I WILL AT THIS POINT ONLY CAUTION THE PARTIES AND ADMONISH

01:18PM 9   THE PARTIES THAT TIME IS OF THE ESSENCE, AND I WOULD EXPECT A

01:18PM 10   FOCUSSED SCHEDULE TO ADDRESS THESE ISSUES AND TO BRING ANY

01:18PM 11   DISPUTES BACK TO THE COURT.

01:18PM 12       OKAY.  THAT BEING SAID, THERE IS ONE STILL OPEN ISSUE OF

01:18PM 13   ARGUMENT THAT EACH SIDE WOULD LIKE TO ADDRESS, AND THAT IS WITH

01:18PM 14   REGARDS TO THE RULE 45 CHALLENGES TO THE SUBPOENAS.  I'LL HEAR

01:18PM 15   FROM PIF AND MR. AL-RUMAYYAN FIRST.

01:18PM 16           MR. SURPRENANT:  THANK YOU, YOUR HONOR.  DOMINIC

01:18PM 17   SURPRENANT FROM QUINN EMANUEL.

01:18PM 18       I APPRECIATE YOUR HONOR'S PATIENCE ON WHAT HAS ALREADY

01:18PM 19   BEEN A LONG DAY.

01:18PM 20       AS YOUR HONOR KNOWS, UNDER RULE 45 WHEN A COURT IS FACED

01:18PM 21   WITH AN OVERBROAD SUBPOENA, IT CAN EITHER NARROW THAT SUBPOENA

01:18PM 22   OR QUASH IT.  WE WOULD ASK YOUR HONOR TO QUASH IT FOR REASONS

01:18PM 23   THAT I WILL EXPLAIN.

01:18PM 24       FIRST, I WANT TO GET TO I THINK IMPORTANTLY THE CONTEXT OF

01:18PM 25   THE RULE 45 WITH RESPECT TO THE OVERALL SITUATION FACING

01:19PM 1    YOUR HONOR.

01:19PM 2         FIRST, IT'S OBVIOUS FROM THIS MORNING THAT THERE ARE REAL

01:19PM 3    SERIOUS ISSUES OF SOVEREIGN IMMUNITY.  HOWEVER YOUR HONOR

01:19PM 4    RESOLVES THAT, THERE CERTAINLY ARE VERY SUBSTANTIAL ISSUES

01:19PM 5    BEFORE THE COURT, INCLUDING INTERNATIONAL COMITY, INCLUDING AS

01:19PM 6    MY COLLEAGUE ARGUED, YOU KNOW, EFFECTS ON COMMERCE AND ON

01:19PM 7    INVESTMENT WAY BEYOND THIS CASE.

01:19PM 8         ON THE OTHER HAND, I THINK THAT THE RULE 45 ISSUE COULD

01:19PM 9    RESOLVE THE COURT'S NEED TO ADDRESS THOSE WEIGHTY ISSUES.

01:19PM 10        IN ADDITION, OF VERY IMPORTANT CONTEXT, YOUR HONOR, AND

01:19PM 11   IT'S BEEN ALLUDED TO BY MY COLLEAGUE, MR. BASH, IS THE

01:19PM 12   PRODUCTION THAT LIV HAS ALREADY MADE.  AND WHAT I WANT TO DO IS

01:19PM 13   BRIEFLY TALK ABOUT THE CATEGORIES OF PRODUCTION BECAUSE I THINK

01:19PM 14   THAT'S VERY IMPORTANT.

01:19PM 15        YOU HEARD MR. BASH SAY OVER 100,000 DOCUMENTS TOTALLING

01:20PM 16   SOME 360,000 PAGES.  THESE INCLUDE BOARD MEETINGS FROM LIV,

01:20PM 17   PRESENTATIONS TO THE LIV BOARD, HUNDREDS OF DOCUMENTS ABOUT

01:20PM 18   LIV'S FINANCIAL PROJECTIONS, HUNDREDS OF DOCUMENTS ABOUT LIV'S

01:20PM 19   FINANCIALS --

01:20PM 20             THE COURT:  DOESN'T THE SCOPE OF LIV'S PRODUCTION

01:20PM 21   THEN GO TO OR SUPPORT A POSITION OF NARROWING THE SUBPOENA

01:20PM 22   RATHER THAN QUASHING IT?

01:20PM 23             MR. SURPRENANT:  NO.  NO.  I THINK IT COULD GO IN

01:20PM 24   THE ABSTRACT, YOUR HONOR, TO EITHER.

01:20PM 25             THE COURT:  AND IN FACT IT DOES UNDER THE RULE.

01:20PM 1       MR. SURPRENANT:  YEAH.  I THINK IN THIS CASE IT

01:20PM 2   SUPPORTS QUASHING ALTOGETHER IN ADDITION TO THE TWO POINTS I'M

01:20PM 3   GOING TO MAKE.

01:20PM 4       THERE ARE 2,000 DOCUMENTS PRODUCED, EMAILS BACK AND FORTH

01:20PM 5   BETWEEN PIF AND LIV, MORE THAN 80 DOCUMENTS RELATING TO BUDGET

01:20PM 6   APPROVALS, OVER 250 DOCUMENTS REGARDING WEEKLY UPDATES BY LIV

01:21PM 7   TO PIF, DOCUMENTS ABOUT PIF'S INDIVIDUAL MEETINGS WITH PLAYERS,

01:21PM 8   OVER 80 AGREEMENTS BETWEEN LIV AND PIF.  SO THERE HAS BEEN VERY

01:21PM 9   SUBSTANTIAL PRODUCTION BY LIV OF PIF RELATED DOCUMENTS.

01:21PM 10      AND I THINK THE THING THAT IS PERHAPS MOST IMPORTANT,

01:21PM 11  YOUR HONOR, IS THAT THE TOUR HAS NOT RELIED ON A SINGLE ONE OF

01:21PM 12  THOSE DOCUMENTS TO SUPPORT ANY OF THE ARGUMENTS THAT'S MADE.

01:21PM 13      MOVING NOW TO THE RULE 45, AND I'LL DO THIS, YOUR HONOR,

01:21PM 14  AS EFFICIENTLY AS I CAN.  THERE ARE TWO FACTORS UNDER THE CASE

01:21PM 15  LAW THAT STRONGLY SUPPORT QUASHING THE SUBPOENA ALTOGETHER AS

01:21PM 16  OPPOSED TO NARROWING IT.  ONE OF THOSE IS WHERE THE SUBPOENA

01:21PM 17  THAT WAS FILED WAS CLEARLY OVERBROAD, WHICH IS TRUE HERE, AND

01:21PM 18  ONE IN WHICH THE PARTY SEEKING DISCOVERY HAS MADE NO MEANINGFUL

01:22PM 19  ATTEMPT TO NARROW IT.

01:22PM 20      AND I CAN ESTABLISH THAT, YOUR HONOR, BY CITATIONS TO THE

01:22PM 21  BRIEFING AND THE DECLARATIONS BEFORE YOUR HONOR.

01:22PM 22      MR. BASH SAID ABOUT MY COLLEAGUE ON THE OTHER SIDE OF THE

01:22PM 23  V, MR. PETERS, IS THAT HE MAKES SWEEPING FACTUAL ALLEGATIONS.

01:22PM 24  HE DOES SO BRILLIANTLY, YOUR HONOR, OKAY.  AND LEGAL, SWEEPING

01:22PM 25  LEGAL.  BUT THEY'RE NOT TETHERED TO THE RECORD.  AND MY

01:22PM  1    COMMENTS ARE GOING TO BE TETHERED TO THE RECORD.

01:22PM  2         AND THEN THE SECOND, THE SECOND INDEPENDENT FACTOR THAT

01:22PM  3    COUNSEL STRONGLY, FOR QUASHING THE SUBPOENA ALTOGETHER AS

01:22PM  4    OPPOSED TO NARROWING IT, WHERE IT IS REASONABLE TO CONCLUDE

01:22PM  5    THAT THE PARTY SEEKING DISCOVERY WAS NOT PRINCIPALLY, IF AT

01:22PM  6    ALL, INTERESTED IN THE DISCOVERY, BUT WAS INTERESTED IN USING

01:22PM  7    THE DISCOVERY TO ACHIEVE OTHER STRATEGIC AIMS.  THAT IS THE

01:23PM  8    TEACHING AND THE HOLDING OF THE MATTEL CASE WHICH WE CITED 353

01:23PM  9    F.3D 792 AND A NINTH CIRCUIT CASE FROM 2003.

01:23PM  10        AND THERE WHAT THE COURT DID IS THAT IT AFFIRMED QUASHING

01:23PM  11   THE SUBPOENA BECAUSE IT FOUND THAT MATTEL HAD ISSUED OVERBROAD

01:23PM  12   SUBPOENAS ON THIRD PARTIES TO KIND OF PRESSURE THEM TO NOT LET

01:23PM  13   THESE PARTIES ALLOW THEIR EMPLOYEES TO TESTIFY AS EXPERTS

01:23PM  14   AGAINST MATTEL.  SO IT WAS A STRATEGIC PURPOSE.

01:23PM  15        AND I THINK HERE, YOUR HONOR, AND I THINK THIS IS ALREADY

01:23PM  16   CLEAR.  I BELIEVE IT WILL BE EVEN CLEARER WHEN I FINISH MY

01:23PM  17   PRESENTATION, WHICH WON'T BE VERY LONG, MAYBE TEN MINUTES, IS

01:23PM  18   THAT WE KNOW WHAT THE TOUR IS TRYING TO ACHIEVE.  IT'S BOTH

01:23PM  19   IMPLICIT BUT TODAY IT BECAME EXPLICIT.  THEY WANT TO USE THIS

01:23PM  20   DISCOVERY DISPUTE TO FORCE PIF TO QUOTE, "DISMISS IF THEY WANT

01:23PM  21   TO," IN OTHER WORDS, MAKE DISCOVERY, IF YOU DON'T, YOU'RE GOING

01:24PM  22   TO HAVE TO DISMISS.  THEY WANT TO AVOID -- AND I WOULD TRY TO

01:24PM  23   PLAY THAT CARD IF I WAS IN THEIR POSITION, TO CREATE THIS

01:24PM  24   DISCOVERY DISPUTE, KNOWING THAT PIF IS A SOVEREIGN, KNOWING

01:24PM  25   THAT THEY WERE ENCUMBERED WITH ALL KINDS OF ISSUES THAT PREVENT

01:24PM  1    THEM FROM MAKING DISCOVERY AT LEAST IN THE SENSE OF A NORMAL

01:24PM  2    COMMERCIAL PARTY, AND TO USE THAT AS A BASIS TO SEEK

01:24PM  3    TERMINATING SANCTIONS.  THAT IS WHAT IS GOING ON HERE, AND I

01:24PM  4    THINK WE ALL KNOW IT.

01:24PM  5         NOW, WHAT I'M NOW GOING TO GO TO AS EFFICIENTLY AS I CAN,

01:24PM  6    THINGS THAT I THINK ARE UNDISPUTED THAT SHOW THIS WAS IMPROPER

01:24PM  7    THIRD PARTY DISCOVERY, THERE WAS NO MEANINGFUL ATTEMPT TO

01:24PM  8    NARROW IT, AND IT'S TRYING TO ACHIEVE THE STRATEGIC GOALS THAT

01:24PM  9    I JUST IDENTIFIED.

01:24PM 10         FIRST, THE TIMING OF THE SUBPOENA.  THERE WERE TWO THIRD

01:24PM 11    PARTY SUBPOENAS TOTALLING 161 REQUESTS, AT THE VERY BEGINNING

01:25PM 12    OF A LAWSUIT, BEFORE RECEIVING A PIECE OF PAPER FROM LIV.

01:25PM 13         THE COURT:  ISN'T THE TIMING OF SUBPOENAS -- AND I

01:25PM 14    SAW THOSE ARGUMENTS AND I LOOKED AT IT CAREFULLY.  BUT AGAIN,

01:25PM 15    ISN'T THAT DRIVEN BY THE EXPEDITED SCHEDULE THAT LIV ASKED FOR?

01:25PM 16         MR. SURPRENANT:  PERHAPS IN PART, YOUR HONOR, BUT

01:25PM 17    THAT'S NOT THE ONLY REASON.  AND I THINK LOOKING AT IT IN THE

01:25PM 18    TOTALITY IT ALL TELLS A COHESIVE STORY, A COHESIVE NARRATIVE.

01:25PM 19         THEN WE HAVE THE SCOPE.  THE SCOPE IS NOT EXPLAINED BY

01:25PM 20    EXPEDITED DISCOVERY, 161 REQUESTS, ESSENTIALLY MIRRORING THE

01:25PM 21    DISCOVERY THEY SERVED ON LIV.

01:25PM 22         NO ATTEMPT TO NARROW.  THAT'S IMPORTANT UNDER THE MATTEL

01:25PM 23    CASE.

01:25PM 24         NOW, THEY DID, YOUR HONOR, I'M AWARE --

01:25PM 25         THE COURT:  WHEN YOU SAY "NO ATTEMPT TO NARROW,"

01:25PM  1      WHAT ARE YOU TALKING ABOUT, FAILED MEET AND CONFER EFFORTS?

01:25PM  2              MR. SURPRENANT:  I'M TALKING ABOUT THAT, BUT I WANT

01:26PM  3      TO START ON AN EASIER TOPIC, WHICH IS THEY DIDN'T NARROW THE

01:26PM  4      161 REQUESTS.

01:26PM  5          BUT AS WE EXPLAIN IN OUR MOTION, YOUR HONOR, AT PAGE 7, 1

01:26PM  6      THROUGH 10, AND WE HAVE NO RESPONSE TO IT, I BELIEVE THAT IS

01:26PM  7      ECF 166, WE EXPLAIN THAT BECAUSE THE REQUESTS WERE OVERLAPPING

01:26PM  8      AND DUPLICATIVE, THAT THERE WAS NO MEANINGFUL NARROWING OF THE

01:26PM  9      REQUEST, AND THEY DID RESPOND TO THAT.  IT WAS A PRINCIPLE

01:26PM  10     ARGUMENT THAT WE MADE, AND WE EXPLAINED WHY, INCLUDING IN THE

01:26PM  11     FOOTNOTE, YOU KNOW, THAT THEY JUST DIDN'T NARROW THEIR REQUEST.

01:26PM  12     THEY DID NOT RESPOND.

01:26PM  13         I DO NOW WANT TO MOVE TO THE FAILURE TO MEET AND CONFER

01:26PM  14     BECAUSE I THINK THIS IS VERY IMPORTANT.  NOW, I WANT TO START

01:26PM  15     OFF WITH WHAT THEY SAY.  THEY SAY -- AND THIS WOULD BE AT ECF

01:26PM  16     169, THE REPLY IN SUPPORT OF THE MOTION TO COMPEL, PAGE 1,

01:27PM  17     LINES 1 TO 5, AND PAGE 20, LINES 1 TO 10.  I WON'T QUOTE THEM.

01:27PM  18     BUT WHAT THEY SAY IN SUBSTANCE IS THAT WE SAID WE WILL CHERRY

01:27PM  19     PICK WHAT WE'RE WILLING TO PRODUCE.  AND IF WE DON'T WANT TO

01:27PM  20     GIVE IT TO YOU, WE'RE NOT GOING TO GIVE IT TO YOU.  AND YOU

01:27PM  21     HAVE NO ENFORCEMENT MECHANISM.  THAT'S WHAT THEY DESCRIBE IN

01:27PM  22     THE CITES THAT I JUST GAVE.

01:27PM  23         LET ME TAKE THE COURT THROUGH WHAT IS ACTUALLY BEFORE

01:27PM  24     YOUR HONOR.  PRIOR TO THE SUBPOENAS, AND THIS IS MR. TERUYA'S

01:27PM  25     DECLARATION, EXHIBIT 1.

01:27PM 1          THE COURT:  I'M FAMILIAR WITH THE EVIDENCE ON THE

01:27PM 2     MEET AND CONFER.

01:27PM 3          MR. SURPRENANT:  AND I THINK IT BEARS REPEATING

01:27PM 4     BECAUSE I THINK IT'S AN OBVIOUS CONTRADICTION TO THE TOUR'S

01:27PM 5     POSITION.

01:27PM 6          "WOULD YOU HAVE ANY TIME --" THIS IS MR. QUINN ON

01:27PM 7     SEPTEMBER 12TH TO MR. ELLIOT, MR. PETERS.

01:27PM 8          "WOULD YOU HAVE ANY TIME TO SPEAK WITH ME TOMORROW ABOUT

01:28PM 9     DISCOVERY PGA MAY WANT IT FROM PIF AND ITS OFFICIALS?"

01:28PM 10         SAME DAY.  "WE WANT TO BE COOPERATIVE IN FACILITATING

01:28PM 11    REASONABLE DISCOVERY OF PIF RECOGNIZING THAT THERE ARE REAL

01:28PM 12    QUESTIONS AS TO WHETHER PIF IS AMENABLE TO DISCOVERY AND TO

01:28PM 13    U.S. AT ALL.  IT SEEMS TO ME THAT UNLESS THAT ISSUE IS ACTUALLY

01:28PM 14    LITIGATED AND RESOLVED BY A COURT, WE END UP IN THE SAME PLACE.

01:28PM 15    AN AGREEMENT AS TO WHAT DOCUMENTS WILL BE PRODUCED.  THIS MAY

01:28PM 16    BE MORE FLIES THAN HONEY."

01:28PM 17         SO AGAIN, WE'RE LOOKING FOR AN AGREEMENT.  THERE'S NOT A

01:28PM 18    WHIFF OF A SUGGESTION OF CHERRY PICKED DOCUMENTS.

01:28PM 19         VERY BRIEFLY.  THE NEXT DAY MR. QUINN AND MR. ELLIOT,

01:28PM 20    MR. PETERS, "WE AGAIN INVITE YOU TO THE DISCOVERY THAT YOU SEEK

01:28PM 21    SO WE CAN BEGIN THE PROCESS."

01:28PM 22         SO WE WERE NOT TRYING TO NEGOTIATE, CHERRY PICK STUFF.

01:29PM 23    THAT'S JUST NOT TRUE.

01:29PM 24         NOW, WITH RESPECT TO THE -- AND THEN WE GOT THE TWO

01:29PM 25    SUBPOENAS, 161 REQUESTS, MR. TERUYA AND I WENT -- WE DIDN'T GO.

01:29PM  1    WE APPEARED BY ZOOM.  I WAS ACTUALLY IN ITALY.  WE APPEARED BY

01:29PM  2    ZOOM IN A MEET AND CONFER, AND THAT'S ADDRESSED BY TWO

01:29PM  3    DECLARATIONS.

01:29PM  4         THE DECLARATION FROM THE OTHER SIDE IS ECF 148-2, A

01:29PM  5    DECLARATION BY PERHAPS MR. -- I'LL PERHAPS MISPRONOUNCE HIS

01:29PM  6    NAME BECAUSE MY HANDWRITING IS SO BAD -- MR. DOOLEY

01:29PM  7    DECLARATION, PARAGRAPH 2.  IT'S JUST VANILLA.  JUST VANILLA.

01:29PM  8    WE TRIED TO MEET AND CONFER, AND IT DIDN'T WORK.

01:29PM  9         MR. TERUYA PUT IN A DECLARATION AT PARAGRAPH 5, ECF 166,

01:29PM  10   PARAGRAPH 5, AND HE SAYS EXACTLY WHAT HAPPENED.  WHAT HAPPENED

01:29PM  11   WAS FAIRLY STARTLING.

01:29PM  12        MR. PETERS IN HIS FALSTAFFIAN-WAY I WOULD SAY SAID, LOOK,

01:30PM  13   YOU GIVE UP ALL OF YOUR JURISDICTIONAL DEFENSES OR WE'RE NOT

01:30PM  14   TALKING.  OKAY.  WE WILL NOT TALK.

01:30PM  15        AND I WAS A LITTLE BIT TAKEN ABACK.  MR. TERUYA IS VERY

01:30PM  16   PERSISTENT.  BUT THEN I TRIED TO JUMP IN LATER AND I SAID,

01:30PM  17   LOOK, THERE HAS TO BE A WAY THAT WE CAN, A, AT LEAST DISCUSS

01:30PM  18   NARROWING THE SCOPE AND COME UP WITH AN ENFORCEMENT, AT LEAST

01:30PM  19   DISCUSS COMING UP WITH AN ENFORCEMENT MECHANISM.  AND THE SAME

01:30PM  20   THING, BOOM, DOOR SLAM, WOULDN'T DISCUSS.

01:30PM  21        AND SO WHAT WE HAVE IS AN INABILITY BY THE TOUR TO TELL US

01:30PM  22   WHAT THEY REALLY WANT.  I THINK THAT'S SIGNIFICANT.  THAT GOES

01:30PM  23   TO THE POINT IT'S REALLY NOT ABOUT DISCOVERY.  THEY DIDN'T TELL

01:30PM  24   MR. QUINN WHAT THEY WANTED, THEY DIDN'T TELL MR. TERUYA OR I

01:30PM  25   WHAT THEY WANTED.  THEY HAVEN'T MATERIALLY NARROWED THE SCOPE.

01:30PM  1        NOW, WHAT COULD HAVE HAPPENED HAD WE HAD A DISCUSSION?

01:31PM  2   WE'LL NEVER KNOW.

01:31PM  3        BUT WE CERTAINLY STOOD READY TO DISCUSS APPROPRIATE

01:31PM  4   DISCOVERY AND APPROPRIATE ENFORCEMENT.

01:31PM  5            THE COURT:  AND NOW YOU HAVE ANOTHER OPPORTUNITY.

01:31PM  6            MR. SURPRENANT:  WELL, YOUR HONOR, THAT WAS MY LAST

01:31PM  7   POINT.  THAT WAS A BEAUTIFUL DUET.

01:31PM  8        INSTEAD, WHAT THEY CHOSE, YOUR HONOR -- AND YOUR HONOR'S

01:31PM  9   POINT IS ABSOLUTELY COMMON SENSE.  BUT WHAT THEY CHOSE IS AN

01:31PM  10  ABSOLUTIST ALL OR NOTHING POSITION.  AND WHAT THEY DID IS PUSH

01:31PM  11  VERY, VERY, VERY HARD AT US TO SAY, OKAY, WELL, IF YOU'RE GOING

01:31PM  12  TO TAKE YOUR GLOVES OFF AND FIGHT, WE HAVE A REALLY STRONG

01:31PM  13  SOVEREIGN IMMUNITY DEFENSE THAT YOU CAN'T GET AROUND.  AND

01:31PM  14  AFTER THEY HAVE MADE US ADOPT THAT ARGUMENT AND ARGUE IT, I

01:31PM  15  THINK THEY HAVE TO LIVE WITH THE CONSEQUENCES.

01:31PM  16       AND SO, YOUR HONOR, I JUST REALLY DO THINK THAT THIS IS A

01:32PM  17  MATTEL CASE.  HUGE, HUGE REQUEST.  NO ATTEMPT TO NARROW.  AND

01:32PM  18  WHAT THEY ARE SEEKING IS TERMINATING SANCTIONS.

01:32PM  19       AND JUST ONE LAST POINT AND I'LL STOP.  THIS NOTION WHICH,

01:32PM  20  AGAIN, MR. PETERS DID BRILLIANTLY WITH HIS SWEEPING FACTUAL

01:32PM  21  ALLEGATIONS, THAT THIS PIF DISCOVERY IS CRITICAL, IS PIVOTAL.

01:32PM  22  AND WAY YOU LOOK AT IT, YOUR HONOR, IT IS EITHER IRRELEVANT OR

01:32PM  23  AT MOST TERTIARY, AND THEY'VE GOTTEN HUGE AMOUNTS OF DISCOVERY

01:32PM  24  WHICH GOES TO IT.

01:32PM  25       SO, YOUR HONOR, I DO THINK THAT THIS IS AN UNUSUALLY

01:32PM 1    COMPELLING CASE WHERE YOUR HONOR CAN SAY, LOOK, IN LIGHT OF ALL

01:32PM 2    OF THIS DISCOVERY YOU'RE GETTING FROM LIV, IN LIGHT OF THIS

01:32PM 3    STRATEGIC OVERBROAD SUBPOENA, NO ATTEMPT TO NARROW IT, I'M JUST

01:32PM 4    GOING TO STRIKE, AND I WOULD URGE YOUR HONOR TO CONSIDER THAT

01:32PM 5    AS THE APPROPRIATE WAY FORWARD.

01:32PM 6          THE COURT:  THANK YOU, MR. SURPRENANT.

01:33PM 7          MR. SURPRENANT:  THANK YOU, YOUR HONOR.

01:33PM 8          THE COURT:  MR. PETERS.

01:33PM 9          MR. PETERS:  I JUST HAD TO LOOK UP THE DEFINITION OF

01:33PM 10   FALSTAFFIAN SO I KNOW WHAT I'VE BEEN ACCUSED OF.

01:33PM 11         MR. SURPRENANT:  IT'S A COMPLIMENT.

01:33PM 12         MR. PETERS:  FAT, JOLLY, AND DEBAUCHED.  SO THANK

01:33PM 13   YOU FOR THAT, MR. SURPRENANT.

01:33PM 14         MR. SURPRENANT:  IT'S FROM HENRY THE IV.

01:33PM 15         THE COURT:  ARE YOU ASKING FOR LEAVE FROM YOUR FIVE

01:33PM 16   MINUTE -- SELF-IMPOSED FIVE MINUTE LIMIT?

01:33PM 17         MR. PETERS:  WELL, I REALLY JUST WANT TO MAKE SOME

01:33PM 18   POINTS.  I DON'T WANT TO BE LONGER THAN FIVE MINUTES.  I WANT

01:33PM 19   TO BE DIRECT WITH THE COURT.  AND I WANT TO RESPOND TO JUST --

01:33PM 20   I HAVE SIX POINTS THAT THEY MADE IN THEIR COLLECTIVE

01:33PM 21   PRESENTATION, AND I REALLY JUST WANT TO HELP THE COURT.

01:33PM 22         THE COURT:  LET ME TAKE YOU TO A POINT THAT IS OF

01:33PM 23   PARTICULAR CONCERN TO THE COURT WHICH IS I DO APPRECIATE THE

01:33PM 24   TIMING OF THESE SUBPOENAS, THE TIMING.  THEY WERE SERVED EARLY

01:33PM 25   IN THE PROCESS, AND THEY WERE SERVED BEFORE THE LIV PRODUCTION.

01:34PM 1    I HAVE BEEN THROUGH THE PRODUCTIONS.  IT WOULD APPEAR THAT

01:34PM 2    THERE HAVE BEEN OVERLAP WITH REGARD TO DOCUMENTS RECEIVED BY

01:34PM 3    LIV.  YOU HAVE RECEIVED A SUBSTANTIAL PRODUCTION, IF NOT

01:34PM 4    ENTIRELY COMPLETE FROM LIV, AND SO IT SEEMS TO ME THAT AT LEAST

01:34PM 5    THERE IS A NEED FOR NARROWING AND REFINEMENT OF THE OUTSTANDING

01:34PM 6    REQUESTS SHOULD THE COURT ALLOW DISCOVERY.

01:34PM 7             MR. PETERS:  YOUR HONOR, WE HAVE ASKED ACTUALLY IN

01:34PM 8    THE REQUESTS FROM LIV THAT THEY PRODUCE DOCUMENTS FROM THEIR

01:34PM 9    PARENT.  AND WE HAVE SENT THEM A MEET AND CONFER LETTER SAYING

01:34PM 10   HAVE YOU SEARCHED THE FILES OF PIF TO PRODUCE THOSE DOCUMENTS?

01:34PM 11   THAT'S A VERY SIMPLE AND STRAIGHTFORWARD WAY THAT THEY COULD

01:34PM 12   HAVE ADDRESSED OUR DESIRE FOR INFORMATION WITHOUT HAVING THIS

01:34PM 13   FIGHT ABOUT OF SOVEREIGN IMMUNITY, BUT THEY HAVEN'T.  LIV HAS

01:34PM 14   NOT AGREED TO PRODUCE DOCUMENTS FROM PIF.

01:34PM 15       WE WANT EVIDENCE RELATING TO PIF'S ROLE -- AND WE'VE

01:35PM 16   COVERED THOSE TOPICS TODAY.  AND I THINK THAT'S WHAT THE

01:35PM 17   SUBPOENAS SET FORTH.  WE REDUCED THE NUMBER OF REQUESTS IN AN

01:35PM 18   EFFORT TO FOCUS THE SUBPOENA.  WE WOULD BE WILLING TO SIT DOWN

01:35PM 19   AND HAVE ALWAYS BEEN WILLING TO SIT DOWN, AND I TOLD

01:35PM 20   MR. SURPRENANT AND MR. TERUYA THAT IN OUR MEET AND CONFER.  IF

01:35PM 21   YOU WANT TO TALK ABOUT SCOPE, IF YOU WANT TO HAVE A NEGOTIATION

01:35PM 22   ABOUT THIS IS TOO BURDENSOME, YOU DON'T NEED THIS, WE WILL

01:35PM 23   PRODUCE THAT.

01:35PM 24       IT'S OBVIOUS WHAT WE WANT.  WE WANT INFORMATION ABOUT

01:35PM 25   NEGOTIATIONS, WE WANT INFORMATION ABOUT NEGOTIATIONS WITH

```
01:35PM   1    PLAYERS, BROADCASTERS, SPONSORS, THE PLANS FOR THE LEAGUE, THE

01:35PM   2    INTENTIONS OF SETTING UP LIV, EFFORTS TO UNDERMINE THE PGA

01:35PM   3    TOUR.  THOSE ARE OBVIOUSLY THE TOPICS THAT WE ARE LOOKING FOR.

01:35PM   4        WE HAVE ALREADY NEGOTIATED SEARCH TERMS TO FIND THOSE

01:36PM   5    THINGS FROM LIV.  WE CAN PROBABLY APPLY THE SAME SEARCH TERMS

01:36PM   6    TO PIF AND SEARCH FOR THOSE.  WE DON'T HAVE ANY ULTERIOR

01:36PM   7    MOTIVE.  WE WANT TO LITIGATE THIS CASE.  WE FILED THE SUBPOENAS

01:36PM   8    IMMEDIATELY BECAUSE OF THE SCHEDULE.  YOU'RE 100 PERCENT RIGHT,

01:36PM   9    THAT'S THE ONLY REASON.

01:36PM  10        BUT THEY HAVE AT EVERY TURN TAKEN POSITIONS THAT AMOUNT TO

01:36PM  11    YOU'RE NOT GOING TO GET ANYTHING FROM PIF.  AND ALTHOUGH THEY

01:36PM  12    SAID -- THEY DID SAY, CAN WE HAVE A DISCUSSION ABOUT

01:36PM  13    VOLUNTARILY PRODUCING THINGS?  I SAID, HOW ARE WE GOING TO

01:36PM  14    ENFORCE IT?  YOU'RE GOING TO JUST PICK WHAT YOU WANT.

01:36PM  15        AND EVEN JUDGE FREEMAN WHEN WE WERE TALKING ABOUT THIS TWO

01:36PM  16    WEEKS AGO SAID I REALLY WOULDN'T EXPECT A LAWYER TO TRY A CASE

01:36PM  17    WHERE HE HAS ONLY GOTTEN DOCUMENTS THAT THE OTHER SIDE CHOSE TO

01:36PM  18    GIVE THEM.

01:36PM  19        HOW CAN WE DO THAT WITH A RESPONSIBILITY TO OUR CLIENT?

01:36PM  20    SO WE'RE NOT TRYING TO TRICK THEM OR GET SOME ADVANTAGE.  IT

01:36PM  21    WAS JUDGE FREEMAN WHO MENTIONED TERMINATING SANCTIONS, NOT ME.

01:36PM  22    WE HAVEN'T SOUGHT ANY TERMINATING SANCTIONS.  WE WANT THE

01:36PM  23    DISCOVERY, AND THERE'S WAYS FOR THEM TO GIVE IT TO US WITHOUT

01:36PM  24    PROVOKING THIS ISSUE OF SOVEREIGN IMMUNITY.

01:37PM  25        BUT IN THE ABSENCE OF SOME WAY TO ENFORCE AN AGREEMENT,
```

01:37PM 1    WHAT ARE WE SUPPOSED TO DO?  THAT'S ALWAYS BEEN OUR POSITION.

01:37PM 2    I WOULD HAVE VASTLY PREFERRED BACK IN OCTOBER TO HAVE GOTTEN A

01:37PM 3    PRODUCTION OF DOCUMENTS.  NOW WE'VE GOT A MARCH DISCOVERY

01:37PM 4    CUTOFF.  WE'VE GOT NO DOCUMENTS.  WE'VE GOT DEPOSITIONS COMING

01:37PM 5    UP.

01:37PM 6         I MEAN, THE COURT IS RIGHT ABOUT THE IMPLICATIONS OF THIS

01:37PM 7    ON THE ENTIRE MANAGEMENT OF THIS CASE.  AND IT'S NOT LIKE PIF

01:37PM 8    AND MR. AL-RUMAYYAN OR SOME PERIPHERAL CHARACTERS THAT DON'T

01:37PM 9    HAVE MUCH TO DO WITH THE STORY.  THEY CREATED LIV.  IT'S THEIR

01:37PM 10   MONEY.  I MEAN, IT'S THEIR THING.  YOU KNOW.

01:37PM 11             THE COURT:  WE'VE BEEN THERE.

01:37PM 12             MR. PETERS:  OKAY.  WE'VE BEEN THERE.

01:37PM 13        I WANT TO RESPOND -- DID I ANSWER YOUR HONOR'S QUESTION?

01:37PM 14             THE COURT:  WELL, MY QUESTION WAS REALLY MUCH MORE

01:37PM 15   PRACTICAL --

01:37PM 16             MR. PETERS:  OKAY.

01:37PM 17             THE COURT:  -- WHICH IS YOU SERVED THESE REQUESTS

01:37PM 18   AND THEY'RE NUMEROUS AND SOME OF THEM ARE QUITE BROAD AS

01:37PM 19   DRAFTED, INDEED OVERBROAD I WOULD SAY, AND YOU HAVE SINCE

01:38PM 20   RECEIVED SUBSTANTIAL PRODUCTIONS FROM LIV AND A NUMBER OF THOSE

01:38PM 21   REQUESTS GO TO LIV, PIF COMMUNICATIONS AND INVOLVEMENT AND

01:38PM 22   TIES.

01:38PM 23        SOME OF WHAT YOU HAVE RECEIVED WOULD NECESSARILY IT WOULD

01:38PM 24   SEEM BE RESPONSIVE TO REQUESTS THAT ARE CURRENTLY PENDING WITH

01:38PM 25   REGARDS TO PIF AND MR. AL-RUMAYYAN.

01:38PM 1      IT SEEMS LIKE THE PRODUCTION FROM LIV WARRANTS -- AGAIN,

01:38PM 2  WOULD PROVIDE A BASIS FOR SOME NARROWING AND MORE FOCUS ON THE

01:38PM 3  REQUESTS TO PIF AND MR. AL-RUMAYYAN.

01:38PM 4          MR. PETERS:  AND WE WOULD BE HAPPY -- I THINK THAT

01:38PM 5  THAT'S A FAIR COMMENT, AND WE WOULD BE HAPPY TO MEET AND CONFER

01:38PM 6  ABOUT IT.

01:38PM 7      BUT, FOR EXAMPLE, COMMUNICATIONS BETWEEN PIF AND PLAYERS,

01:38PM 8  WE'RE GOING TO GET THAT FROM PIF OR FROM THE PLAYERS.

01:38PM 9      COMMUNICATIONS BETWEEN PIF AND BROADCASTERS.

01:39PM 10         THE COURT:  I'M NOT SAYING ALL CATEGORIES.  EXCUSE

01:39PM 11 ME, MR. PETERS.  I'M NOT SAYING THAT THEY ENTIRELY OVERLAP.

01:39PM 12 I'M JUST SAYING THAT IT IS COMMON SENSE AND INDEED IT'S ALSO

01:39PM 13 SUPPORTED BY THE CONSTRUCT -- BY THE WAY SOME OF THE REQUESTS

01:39PM 14 ARE CONSTRUCTED OR DRAFTED THAT THERE WOULD BE SUBSTANTIAL

01:39PM 15 OVERLAP OR AT LEAST SOME OVERLAP, NOT INSIGNIFICANT OVERLAP,

01:39PM 16 WITH REGARDS TO YOUR PRODUCTION FROM LIV.

01:39PM 17         MR. PETERS:  I THINK THAT'S A FAIR POINT.

01:39PM 18     WOULD YOU LIKE US AS PART OF A MEET AND CONFER, IF WE HAVE

01:39PM 19 ONE, TO ADDRESS THAT?  BECAUSE I ASSUME THAT WE WOULD.  IF, FOR

01:39PM 20 EXAMPLE, THEY AGREE TO PRODUCE DOCUMENTS, WE WOULD DISCUSS THIS

01:39PM 21 -- AN ENFORCEMENT MECHANISM AND WE WOULD DISCUSS THE SCOPE OF

01:39PM 22 IT.  WE'RE HAPPY TO DO THAT.

01:39PM 23         THE COURT:  WELL, ON YOUR SIDE YOU'LL HAVE TO -- IF

01:39PM 24 THERE'S A MEET AND CONFER, IF THERE'S AUTHORITY TO MEET AND

01:39PM 25 CONFER, THERE WILL NEED TO BE A DEMAND FROM YOUR SIDE.  AND I'M

01:40PM 1    SIMPLY SAYING IT APPEARS, GIVEN THAT THE SUBPOENAS WERE SERVED

01:40PM 2    VERY EARLY AND THERE HAS SINCE BEEN A SUBSTANTIAL PRODUCTION,

01:40PM 3    THERE WOULD NECESSARILY HAVE TO BE A NARROWING OF SCOPE ON THAT

01:40PM 4    BASIS AND UNDOUBTEDLY OTHER BASES AS WELL.

01:40PM 5            MR. PETERS:  I'M HAPPY TO DO IT.  AND IF THE COURT

01:40PM 6    THINKS THAT WE SHOULD DO IT IN ADVANCE -- I MEAN, I CAME HERE

01:40PM 7    WITH AUTHORITY TO NEGOTIATE THAT WAY ABOUT THE SCOPE OF THE

01:40PM 8    REQUESTS.  SO --

01:40PM 9            THE COURT:  WELL, IT WOULD SEEM TO ME THAT YOU BEING

01:40PM 10   INFORMED WITH REGARDS TO THE SCOPE OF THE PRODUCTION FROM LIV

01:40PM 11   AND HOW THAT IMPACTS THE CURRENT OUTSTANDING REQUESTS WILL --

01:40PM 12   WOULD INFORM YOUR MEET AND CONFER WITH PIF AND MR. AL-RUMAYYAN

01:40PM 13   IN A VERY CONSTRUCTIVE WAY.

01:40PM 14           MR. PETERS:  POINT TAKEN.

01:40PM 15           THE COURT:  YOU HAD SOME OTHER RESPONSIVE POINTS YOU

01:40PM 16   WANTED TO MAKE?

01:40PM 17           MR. PETERS:  I DID.

01:40PM 18       COUNSEL ARGUED THAT WE MISUNDERSTOOD THE SHAREHOLDER

01:40PM 19   AGREEMENT BECAUSE WE SEEM TO --

01:41PM 20           THE COURT:  THIS SEEMS LIKE REBUTTAL.

01:41PM 21       OUTSIDE OF RULE 45?

01:41PM 22           MR. PETERS:  YES.  WELL, I HAVE ONE MORE COMMENT

01:41PM 23   ABOUT RULE 45.  I WANTED TO RESPOND TO SOME OTHER POINTS

01:41PM 24   OUTSIDE OF RULE 45.

01:41PM 25           THE COURT:  OKAY.  LET'S FINISH UP RULE 45, AND THEN

01:41PM  1    YOU CAN RESPOND.  AND IF PIF AND MR. AL-RUMAYYAN NEED A FINAL

01:41PM  2    REPLY TO YOUR RESPONSE, I'LL TAKE THAT.

01:41PM  3              MR. PETERS:  OKAY.

01:41PM  4              THE COURT:  HOPEFULLY IT ALL HAPPENS TODAY.

01:41PM  5              MR. PETERS:  RULE 45.  THE 100-MILE LIMIT WHICH

01:41PM  6    YOUR HONOR ASKED ABOUT, THAT'S NOT CASE SPECIFIC UNDER THE LAW.

01:41PM  7    THE 100-MILE LIMIT AND THE TRANSACTING BUSINESS IS ANY BUSINESS

01:41PM  8    THAT IS TRANSACTED IN THAT PLACE.

01:41PM  9        AND I THINK I MISSPOKE EARLIER IN RESPONSE TO YOUR HONOR'S

01:41PM  10   QUESTION, AND I WANTED TO CLARIFY THAT.  AND I DO HAVE

01:41PM  11   MR. AL-RUMAYYAN SUBMITTED TWO DECLARATIONS TO THE COURT.

01:41PM  12       IN THE SECOND ONE, OF COURSE, HE CONFIRMS THAT HE HAS MADE

01:42PM  13   NINE TRIPS WITHIN 100 MILES OF NEW YORK CITY SINCE JANUARY 1,

01:42PM  14   2021, SO IN THE LAST TWO YEARS, FOR A TOTAL OF 44 DAYS.

01:42PM  15       AND HE DESCRIBES ATTENDING LIV GOLFING EVENTS AS SOCIAL.

01:42PM  16   WE WOULDN'T ACCEPT THAT CHARACTERIZATION OF HIS ATTENDING LIV

01:42PM  17   GOLF EVENTS.

01:42PM  18       BUT HE COMES TO NEW YORK A GREAT DEAL, AND HE HAS BEEN

01:42PM  19   INTERVIEWED FROM THE PLAZA HOTEL ABOUT THE BUSINESS THAT THEY

01:42PM  20   TRANSACT, AND WITH -- SO COMBINED WITH THE OTHER FACTUAL POINTS

01:42PM  21   THAT I'VE ALREADY IDENTIFIED, HIS TRANSACTING BUSINESS, WHICH

01:42PM  22   DOESN'T -- IT ISN'T LIMITED TO LIV FOR PURPOSES OF RULE 45.

01:42PM  23       IF HE TRANSACTS BUSINESS WITHIN 100 MILES OF NEW YORK, AND

01:42PM  24   HE SPENT 34 DAYS THERE IN THE LAST 2 YEARS, THEY HAVE AN OFFICE

01:42PM  25   THERE AND SO ON AND SO FORTH.

01:42PM   1          BUT WHAT I REALLY WANTED TO CLARIFY IS THAT I MISSPOKE

01:43PM   2     ABOUT THAT RULE 45 ISSUE.

01:43PM   3              THE COURT:  ALL RIGHT.

01:43PM   4              MR. PETERS:  NOW I WANT TO TURN TO A COUPLE OF

01:43PM   5     POINTS IN RESPONSE TO THE THINGS THAT COUNSEL SAID.

01:43PM   6          YOUR HONOR WAS TOLD THAT WE MISUNDERSTOOD THE AGREEMENT

01:43PM   7     BECAUSE THIS INVESTOR CONSENT REALLY WAS JUST DIRECTORS OF PIF

01:43PM   8     CONSENTING AS DIRECTORS AND NOT REALLY -- AND IT WAS NOT PIF

01:43PM   9     HAVING TO CONSENT TO THESE VARIOUS THINGS THAT WE'VE IDENTIFIED

01:43PM  10     ALREADY.

01:43PM  11          AND JUST DIRECTING YOUR HONOR TO THAT LANGUAGE, IT'S AT

01:43PM  12     PAGE 66, AND THERE'S A CLAUSE WHICH BEGINS, "SPECIFICALLY."

01:43PM  13              THE COURT:  LET ME GET MY COPY.  OKAY.

01:43PM  14              MR. PETERS:  PAGE 66.  IT BEGINS, "SPECIFICALLY."

01:43PM  15     AND I'M NOT GOING TO READ IT OUT LOUD ONLY BECAUSE IT'S BEEN

01:44PM  16     DESIGNATED CONFIDENTIAL.  BUT THAT LANGUAGE SPECIFICALLY IN THE

01:44PM  17     THIRD LINE GOES ON TO MAKE CLEAR THAT THE CONSENT DESCRIBED

01:44PM  18     HERE IS THESE DIRECTORS ACTING ON BEHALF OF THE INVESTOR AND

01:44PM  19     NOT SIMPLY IN THEIR CAPACITY AS A DIRECTOR.  THEY'RE ACTING IN

01:44PM  20     THE INTEREST OF THE INVESTOR, PIF.  AND IF THERE'S ANY DOUBT

01:44PM  21     ABOUT THAT, GO TO PAGE 10, SECTION 6.9, AND IT SAYS EXPLICITLY

01:44PM  22     THAT THE OBLIGATIONS IN THE RESERVED MATTERS PORTION ARE GIVEN

01:44PM  23     FOR THE BENEFIT OF THE INVESTOR AND NO OTHER PERSON.

01:44PM  24          AND SO I THINK THAT THAT ADDRESSES THE FACT THAT THE

01:45PM  25     CONSENT AT ISSUE IS FOR THE BENEFIT OF PIF AND THEREFORE -- AND

01:45PM  1    THAT IS WHO THE DIRECTORS ARE ACTING ON BEHALF OF WHEN THEY

01:45PM  2    CONSENT TO PLAYER CONTRACTS, BROADCASTER CONTRACTS, THE FILING

01:45PM  3    OF THIS LITIGATION.

01:45PM  4        YOU HEARD, YOUR HONOR, THAT WE HAVE NO EVIDENCE OF

01:45PM  5    CONTRACT NEGOTIATIONS.  AND I JUST WANT TO REFER THE COURT TO

01:45PM  6    PAGE 18 OF OUR POWERPOINT.  AND THIS IS AN EMAIL ABOUT

01:45PM  7    MR. AL-RUMAYYAN NEGOTIATING WITH HIS AGENT, MR. WASSERMAN WHO

01:46PM  8    SPECIFICALLY -- AND MR. WASSERMAN, HE'S NOT A GOLFER.  HE'S AN

01:46PM  9    AGENT WHO REPRESENTS A BUNCH OF GOLFERS ALL OF WHOM THEN SIGN

01:46PM  10   CONTRACT OF LIVE AND A NUMBER OF WHO SIGN CONTRACTS WITH LIV.

01:46PM  11         THE COURT:  I'M GOING TO REMIND YOU OF THE

01:46PM  12   CONFIDENTIALITY.

01:46PM  13         MR. PETERS:  YES.

01:46PM  14       19 IS AN EMAIL WHICH SHOWS MR. AL-RUMAYYAN APPROVING

01:46PM  15   CERTAIN AGREEMENTS, AND IT CITES THE HOOD DECLARATION,

01:46PM  16   EXHIBIT 19.

01:46PM  17       IF YOUR HONOR GOES TO EXHIBIT 19 AND LOOKS AT THE REST OF

01:46PM  18   THAT EMAIL, THERE ARE SPECIFIC TERMS LISTED HERE IN THAT EMAIL

01:46PM  19   THAT MR. AL-RUMAYYAN IS AUTHORIZING, IS ACCEPTING.

01:46PM  20       SO THIS IS NOT JUST SOME GENERAL THING.  AND IT NEEDS TO

01:46PM  21   BE -- OUR SLIDE 19 -- I WOULD URGE THE COURT TO LOOK AT THE

01:47PM  22   KIND OF TERM SHEET THAT HE'S APPROVING RELATING TO HIRING

01:47PM  23   GOLFERS TO PLAY GOLF EVENTS IN THE U.S.

01:47PM  24       AND THEN WE WERE TOLD THAT THE TEXT BETWEEN

01:47PM  25   MR. AL-RUMAYYAN AND THIS GOLFER DIDN'T INVOLVE THE NEGOTIATION,

01:47PM 1   AND I WOULD DIRECT THE COURT TO THE SENTENCE RIGHT BEFORE WHERE

01:47PM 2   IT SAYS, "ALL MY BEST."

01:47PM 3             THE COURT:  WHAT ARE YOU READING FROM?

01:47PM 4             MR. PETERS:  PAGE 17 OF OUR POWERPOINT, YOUR HONOR.

01:47PM 5   AND THE LAST TWO LINES OF THAT SLIDE THERE'S A SENTENCE THAT

01:47PM 6   BEGINS WITH, "THE TEAM."

01:47PM 7       THERE'S A SENTENCE THERE WHICH I THINK MAKES VERY CLEAR

01:47PM 8   THAT THEY'RE NEGOTIATING ABOUT DEAL TERMS AND A FUTURE

01:47PM 9   PARTNERSHIP.  I DON'T THINK THERE'S ANY OTHER WAY TO READ THAT.

01:48PM 10      JUST A FEW MORE POINTS.

01:48PM 11      YOU WERE TALKING TO COUNSEL ABOUT COMMON LAW.

01:48PM 12            THE COURT:  COMMON LAW IMMUNITY.

01:48PM 13            MR. PETERS:  COMMON LAW IMMUNITY.

01:48PM 14            THE COURT:  YES.

01:48PM 15            MR. PETERS:  AND HE SAID THERE'S NO, THERE'S NO --

01:48PM 16  UNDER THE COMMON LAW THERE'S NO COMMERCIAL ACTIVITY EXCEPTION.

01:48PM 17  THAT'S WHAT I UNDERSTOOD HIM TO SAY.

01:48PM 18            THE COURT:  UH-HUH.

01:48PM 19            MR. PETERS:  AND I JUST WANTED TO READ A QUOTE FROM

01:48PM 20  THE UNITED STATES SUPREME COURT IN THE DUNHILL CASE, 1976,

01:48PM 21  QUOTE, "IT IS BEYOND CAVIL THAT PART OF THE FOREIGN RELATIONS

01:48PM 22  LAW RECOGNIZED BY THE UNITED STATES IS THAT THE COMMERCIAL

01:48PM 23  OBLIGATIONS OF A FOREIGN GOVERNMENT MAY BE ADJUDICATED IN THOSE

01:49PM 24  COURTS OTHERWISE HAVING JURISDICTION TO ENTER SUCH JUDGMENTS."

01:49PM 25      IT COULDN'T BE CLEARER THAT FOREIGN SOVEREIGN IMMUNITY

01:49PM 1    UNDER THE COMMON LAW INCLUDES THE COMMERCIAL ACTIVITY

01:49PM 2    EXCEPTION.

01:49PM 3         WE HEARD COUNSEL SAY A NUMBER OF TIMES THAT WE HADN'T MET

01:49PM 4    OUR BURDEN.  IT'S THEIR BURDEN.  WE'VE COME FORWARD WITH

01:49PM 5    EVIDENCE ON THE ISSUE OF BOTH WAIVER AND THE COMMERCIAL

01:49PM 6    ACTIVITY EXCEPTION.  IT'S THEIR BURDEN TO COME FORWARD WITH

01:49PM 7    EVIDENCE TO OVERCOME THAT, AND ALL THEY'VE SUPPLIED THE COURT

01:49PM 8    WITH, NO DOCUMENTS WHATSOEVER, THEY HAVE SUPPLIED THE COURT

01:49PM 9    WITH A COUPLE OF SELF-SERVING DECLARATIONS WHICH TURN OUT IN

01:49PM 10   SIGNIFICANT PART TO BE CONTRADICTED BY THE SHAREHOLDER

01:49PM 11   AGREEMENT, AND, THEREFORE, ARE ENTITLED TO MINIMAL WEIGHT,

01:49PM 12   PARTICULARLY AS COMPARED TO THE CONTEMPORANEOUS DOCUMENTS WE

01:50PM 13   HAVE PRODUCED.

01:50PM 14        THOSE ARE THE POINTS I WANTED TO MAKE, YOUR HONOR.  I DID

01:50PM 15   SPEAK LONGER THAN FIVE MINUTES.  WE'RE HAPPY TO TRY TO NARROW

01:50PM 16   THE SCOPE TO SOMETHING REASONABLE, BUT I THINK THE COURT

01:50PM 17   UNDERSTANDS VERY CLEARLY, AND I THINK THAT THE -- OUR OPPONENTS

01:50PM 18   ALSO UNDERSTAND WHAT WE'RE LOOKING FOR BY WAY OF EVIDENCE, AND

01:50PM 19   WE WOULD WELCOME THE OPPORTUNITY TO GET IT AND MOVE AHEAD WITH

01:50PM 20   LITIGATING THIS CASE.

01:50PM 21        WE'VE ALREADY -- IT WAS BACK IN AUGUST THAT COUNSEL TOLD

01:50PM 22   JUDGE FREEMAN IT WILL ALL GO SWIMMINGLY AND HERE WE ARE.  IT'S

01:50PM 23   JANUARY, AND WE DON'T HAVE ANYTHING.

01:50PM 24        THE COURT:  YOU WOULD AGREE OR DO YOU AGREE,

01:50PM 25   MR. PETERS, THAT IF I FIND THAT THE -- IF I REACH THE RULE 45

01:50PM  1      ISSUES AND FIND THAT THE SUBPOENAS ARE OVERBROAD AND/OR WERE

01:51PM  2      FILED FOR AN IMPROPER PURPOSE, THAT UNDER THE RULE I CAN MODIFY

01:51PM  3      OR QUASH?

01:51PM  4              MR. PETERS:  I THINK IT WOULD BE AN ABUSE OF THIS

01:51PM  5      COURT'S DISCRETION TO QUASH THE SUBPOENAS ON THIS RECORD BASED

01:51PM  6      ON SOME IDEA THAT THEY WERE SERVED FOR AN IMPROPER PURPOSE.

01:51PM  7          EVERY SINGLE REQUEST, AND NOBODY HAS POINTED ME TO ONE

01:51PM  8      WHICH IS IMPROPER, EVERY SINGLE REQUEST IS DIRECTED TO THE

01:51PM  9      ACTIVITIES OF PIF VIS-A-VIS LIV, GOLFERS, BROADCASTERS,

01:51PM  10     SPONSORS.

01:51PM  11         AND THE ONLY REQUEST THAT TALKS ABOUT ANY OF THE KIND OF

01:51PM  12     INCENDIARY TOPICS LIKE 9/11 OR JAMAL KHASHOGGI WAS DIRECTED AT

01:51PM  13     WHETHER THERE WAS ANY EVIDENCE THAT OTHERS HAD COMMUNICATED TO

01:51PM  14     PIF, HAD LACK OF DESIRE TO DO BUSINESS WITH PIF BECAUSE OF

01:51PM  15     THOSE ISSUES.

01:51PM  16         AND I'LL TELL YOU WHY THAT'S RELEVANT TO THIS CASE,

01:51PM  17     YOUR HONOR.

01:51PM  18             THE COURT:  I UNDERSTAND YOU HAVE AN ARGUMENT AS TO

01:51PM  19     WHY THAT IS RELEVANT, AND I WILL SIMPLY SAY IT WILL TAKE SOME

01:52PM  20     SUBSTANTIAL NARROWING EFFORTS BY PGA IN A MEET AND CONFER

01:52PM  21     PROCESS IF THERE'S GOING TO BE ABLE TO BE A NEGOTIATED

01:52PM  22     AGREEMENT, AND YOU WENT RIGHT TO THE REQUESTS THAT FIRST CAME

01:52PM  23     TO MY MIND THAT DO NOT RELATE TO THE CATEGORIES THAT YOU'VE

01:52PM  24     JUST ENUMERATED WITH REGARDS TO PIF'S RELATIONS WITH PLAYERS,

01:52PM  25     ET CETERA.

01:52PM 1        I UNDERSTAND.  I'M CONFIDENT THAT EACH AND EVERY REQUEST

01:52PM 2   WAS DRAFTED IN GOOD FAITH, WITH SOME RELATIONSHIP TO THE CASE,

01:52PM 3   BUT WE'RE PAST THAT NOW, AND I'M HOPEFUL THAT THE PARTIES CAN

01:52PM 4   MOVE PAST THAT AND HAVE A CONSTRUCTIVE MEET AND CONFER.

01:52PM 5        AND IF NOT, THEN I'LL ISSUE MY ORDER.

01:52PM 6            MR. PETERS:  WE'RE DELIGHTED TO HAVE THAT MEET AND

01:52PM 7   CONFER, ALWAYS HAVE BEEN AS LONG AS IT'S ENFORCEABLE AND

01:52PM 8   REASONABLE.  WE JUST WANT TO GET THE EVIDENCE.

01:52PM 9        WE DO THINK THAT THAT ONE REQUEST THAT I JUST REFERRED TO,

01:53PM 10  WE DO THINK THAT THAT'S REASONABLE BECAUSE THAT IS AN

01:53PM 11  EXPLANATION FOR WHY THEY MAY BE HAVING TROUBLE GETTING

01:53PM 12  BROADCAST DEALS OR SPONSORS.  IT HAS NOTHING TO DO WITH ANY

01:53PM 13  ANTICOMPETITIVE ACTIVITY OF THE TOUR.  I THINK THAT'S NOT ONLY

01:53PM 14  PROPERLY DISCOVERABLE BUT ADMISSIBLE IN FACT.

01:53PM 15            THE COURT:  ALL RIGHT.  THANK YOU, MR. PETERS.

01:53PM 16            MR. PETERS:  THANK YOU, YOUR HONOR.

01:53PM 17            MR. SURPRENANT:  YOUR HONOR, I BELIEVE MR. BASH

01:53PM 18  WANTS TO ADDRESS THE COURT, BUT COULD I HAVE 15 SECONDS?

01:53PM 19  LITERALLY 15 SECONDS.

01:53PM 20       I THINK IT IS ABSOLUTELY 100 PERCENT 360 DEGREE CLEAR THAT

01:53PM 21  THIS WAS A STRATEGIC MOTION TO TIE UP PIF.  AND I WOULD

01:53PM 22  INVITE -- SO THAT ISSUE COULD BE PUT TO BED, I WOULD INVITE

01:53PM 23  MR. PETERS TO STIPULATE THAT THEY WILL NOT MOVE FOR TERMINATING

01:53PM 24  SANCTIONS, WHATEVER THE OUTCOME OF THIS RULE 45 SUBPOENA.

01:53PM 25  THANK YOU.

01:53PM  1        THE COURT:  THAT REQUEST WILL NOT BE ENTERTAINED BY

01:53PM  2   THE COURT OR IN THIS COURTROOM TODAY.  THANK YOU, SURPRENANT.

01:53PM  3   PLEASE HAVE A SEAT.

01:53PM  4      MR. BASH, FINAL COMMENTS IN RESPONSE TO THE REBUTTAL

01:53PM  5   COMMENTS RAISED BY MR. PETERS?

01:54PM  6        MR. BASH:  THAT IS WHAT I'LL LIMIT MYSELF TO,

01:54PM  7   YOUR HONOR.

01:54PM  8        THE COURT:  AND SLOWLY.

01:54PM  9        MR. BASH:  SLOW DOWN.

01:54PM 10        THE COURT:  EVEN THOUGH IT'S BEEN A LONG DAY, NOW

01:54PM 11   MORE THAN EVER IT'S IMPORTANT.

01:54PM 12        MR. BASH:  I'LL JUST TAKE THEM CONSEQUENTIALLY.

01:54PM 13        THE COURT:  DO SPEAK SLOWLY.

01:54PM 14        MR. BASH:  OKAY.  SO MR. PETERS IS STILL

01:54PM 15   MISCONSTRUING THE SHAREHOLDER AGREEMENT.  FIRST, I HEARD HIM

01:54PM 16   SAY THAT DIRECTORS OF PIF ARE APPOINTED.  THAT'S NOT WHAT IT

01:54PM 17   IS.  IT'S PIF APPOINTED DIRECTORS OF LIV.

01:54PM 18      I HAD MENTIONED IN MY INITIAL COMMENTS THAT THEY WERE TO

01:54PM 19   PROTECT THE INTERESTS OF LIV, AND I EVEN CITED WHAT HE -- I

01:54PM 20   MEAN, THE INTERESTS OF PIF.  AND I EVEN CITED WHAT HE CITED,

01:54PM 21   SECTION 6.9.  THAT'S TRUE.  BUT THAT DOESN'T MEAN THE ACTIONS

01:54PM 22   OF LIV SOMEHOW BECOME THE ACTIONS OF PIF.

01:54PM 23      I'VE GIVEN YOUR HONOR THE EXAMPLE OF THE UNITED NATIONS,

01:54PM 24   IF THE U.S. REPRESENTATIVE REFUSES TO VETO A UNITED NATIONS

01:54PM 25   RESOLUTION, THAT DOESN'T MAKE IT THE ACTION OF THE

01:54PM   1    UNITED STATES.

01:54PM   2         AND THE ONLY OTHER COLOR I'LL PUT ON THAT IS THAT IF

01:54PM   3    YOU'LL NOTICE FROM SECTION 5.1 OF THE AGREEMENT, PIF CAN

01:55PM   4    APPOINT UP TO FIVE DIRECTORS, BUT ONLY TWO OF THE DIRECTORS

01:55PM   5    CONSENT, AS WE'VE DISCUSSED, IS REQUIRED.

01:55PM   6         SO THAT MEANS A MAJORITY OF THE PIF APPOINTED DIRECTORS

01:55PM   7    COULD OBJECT TO THE ACTION AND IT COULD STILL GO FORWARD

01:55PM   8    BECAUSE AS LONG AS YOU HAVE TWO, IT'S OKAY.  SO I THINK THAT

01:55PM   9    JUST UNDERSCORES.

01:55PM  10         THIS IS IN NO WAY EITHER -- IT IN NO WAY EITHER RENDERS

01:55PM  11    THE CONDUCT OF LIV, THE CONDUCT OF PIF UNDER THE FSIA, NOR DOES

01:55PM  12    IT CREATE AN AGENCY OR ALTEREGO RELATIONSHIP.  THESE ARE

01:55PM  13    DIRECTORS WHO AT SOME POINTS PUT ON A HAT TO PROTECT PIF'S

01:55PM  14    INTEREST.  THAT'S ALL THAT IS.

01:55PM  15         I WILL NOT ADDRESS THE CONFIDENTIALITY PROVISION

01:55PM  16    YOUR HONOR RAISED BECAUSE THAT WASN'T RAISED IN MR. PETERS'S

01:55PM  17    PRESENTATION, UNLESS YOU WOULD LIKE ME TO.

01:55PM  18              THE COURT:  NOT NECESSARY.

01:55PM  19              MR. BASH:  OKAY.  HE -- MR. PETERS NEXT WENT BACK TO

01:55PM  20    HIS EXHIBITS OR HIS POWERPOINT, AND HE WAS FOCUSSED ON THE

01:55PM  21    QUESTION OF WHETHER PIF OR MR. AL-RUMAYYAN WERE INVOLVED IN

01:56PM  22    PLAYER NEGOTIATIONS AND POINTED TO SLIDES 17, 18, AND 19.

01:56PM  23         AND SO JUST AGAIN SPEAKING GENERALLY TO AVOID BREAKING

01:56PM  24    CONFIDENTIALITY, THE FIRST SLIDE THAT HE CITED, NUMBER 17, THIS

01:56PM  25    IS THE EMAIL BETWEEN MR. AL-RUMAYYAN AND A PROMINENT GOLFER.

01:56PM 1      THE COURT:  AND WE'VE BEEN OVER IT.

01:56PM 2      MR. BASH:  THE SENTENCE HE CITED DOES NOT SAY PIF OR

01:56PM 3  MR. AL-RUMAYYAN ARE INVOLVED.  IT JUST REFERS TO A TEAM.  AND

01:56PM 4  THAT'S NOT EVIDENCE THAT THEY WERE INVOLVED, WHICH WOULD

01:56PM 5  CONFLICT WITH THEIR DECLARATIONS.

01:56PM 6      THE NEXT PAGE IS AN EMAIL INVOLVING A PROMINENT AGENT

01:56PM 7  WHICH WE DISCUSSED EARLIER.  THIS IS LEAGUES AWAY FROM CONTRACT

01:56PM 8  NEGOTIATIONS.  IT SAYS NOTHING ABOUT THAT.  IT'S MAKING

01:56PM 9  CONNECTIONS.

01:56PM 10      AND AGAIN, THE QUESTION UNDER OBB, WHICH IS THE GOVERNING

01:56PM 11  STANDARD UNDER THE FSIA, IS WHETHER THE CONDUCT THAT WOULD

01:56PM 12  ENTITLE THEM TO RELIEF IS WHAT PIF OR HE ENGAGED IN, NOT

01:57PM 13  PRECEDING OR SUBSEQUENT CONDUCT.  IT IS CONDUCT THAT WOULD

01:57PM 14  ENTITLE THE PLAINTIFF IN THIS CASE, THE COUNTERCLAIM PLAINTIFF,

01:57PM 15  TO RELIEF.  IT IS NOT CONDUCT THAT OCCURRED BEFORE OR AFTER

01:57PM 16  THAT.

01:57PM 17      AND MAKING A CONNECTION WITH AN AGENT IS NOT THE GRAVAMEN

01:57PM 18  OF THE CONDUCT.  IT'S NOT THE CORE OF THE CONDUCT.  IT'S AT

01:57PM 19  MOST CONDUCT THAT PRECEDES IT.

01:57PM 20      THE LAST EXHIBIT HE CITED ON REBUTTAL WAS NUMBER 19 IN THE

01:57PM 21  POWERPOINT, AND THAT IS VERY CLEARLY ABOUT SIGNIFICANT CAPITAL

01:57PM 22  OUTLAYS.  I BELIEVE, BUT I MAY BE SPEAKING OUTSIDE OF THE

01:57PM 23  RECORD, THAT THAT IS ACTUALLY ABOUT AN INCREASE IN THE

01:57PM 24  INVESTMENT, BUT AT A BEAR MINIMUM, IT'S ABOUT A VERY

01:57PM 25  SIGNIFICANT BUDGETARY OUTLAY, WHICH, ONE, COULD IMPACT THE

01:58PM   1   CAPITAL INVESTMENT VERY OBVIOUSLY, AND, TWO, UNDER RANZA, THAT

01:58PM   2   KIND OF OVERSIGHT OF BUDGET DOES NOT RENDER A PARENT THE SAME

01:58PM   3   AS THE SUBSIDIARY.  THAT'S NORMAL PARENT/SUBSIDIARY ACTION.  SO

01:58PM   4   THAT'S ALL ON THE EXHIBITS.

01:58PM   5       I'LL TURN NOW TO COMMON LAW IMMUNITY, AND IT'S REALLY

01:58PM   6   QUICK.  MR. PETERS CITED THE DUNHILL CASE FROM 1976 FOR THE

01:58PM   7   PROPOSITION THAT THERE IS A COMMERCIAL ACTIVITY EXCEPTION FOR

01:58PM   8   OFFICIAL IMMUNITY, MEANING IMMUNITY OF A FLESH AND BLOOD HUMAN

01:58PM   9   BEING, NOT THE STATE.

01:58PM  10       THE SENTENCE HE QUOTED WAS ABOUT FOREIGN STATE.  THAT CASE

01:58PM  11   SAYS ABSOLUTELY NOTHING ABOUT INDIVIDUAL OFFICIAL IMMUNITY.

01:58PM  12       MR. PETERS HAS NOT CONTESTED TODAY THAT THE NINTH CIRCUIT

01:58PM  13   STANDARD FOR OFFICIAL IMMUNITY IS MET, AN OFFICIAL ACT THAT

01:58PM  14   WOULD ESSENTIALLY RENDER THE FOREIGN STATE LIABLE, THAT

01:58PM  15   STANDARD IS MET, NOR HAS HE CITED A SINGLE CASE IN THE HISTORY

01:58PM  16   OF THIS COUNTRY WHERE A COMMERCIAL ACTIVITY EXCEPTION WAS

01:58PM  17   RECOGNIZED FOR AN OFFICIAL ACT FOR AN INDIVIDUAL.  SO IT HAS NO

01:59PM  18   BASIS.

01:59PM  19       THE LAST -- WELL, THE LAST TWO POINTS, LIMITING MYSELF

01:59PM  20   AGAIN TO WHAT HE SAID ON REBUTTAL.  HE SAID THAT WE HAVE THE

01:59PM  21   BURDEN ON THE -- WELL, I DON'T KNOW WHAT ISSUE HE WAS REFERRING

01:59PM  22   TO.  I'LL JUST GIVE YOU THE LAW, YOUR HONOR.  HE HAS THE BURDEN

01:59PM  23   OF PRODUCTION ON THE FOREIGN SOVEREIGN IMMUNITY, AND WE HAVE

01:59PM  24   THE BURDEN OF PERSUASION.  AND OUR SUBMISSION IS THAT THEY HAVE

01:59PM  25   NOT SUBMITTED SUFFICIENT EVIDENCE, BUT THE KEY POINT IS THAT

01:59PM 1    IT'S NOT ENOUGH TO FIND A WAIVER THAT YOU COULD DRAW A

01:59PM 2    REASONABLE INFERENCE.  YOU HAVE TO BE SURE.  AND THAT'S THE

01:59PM 3    STANDARD.  WE HAVE THE BURDEN OF PERSUASION UNDER THAT

01:59PM 4    STANDARD, BUT THAT IS THE STANDARD.  REASONABLE INFERENCE IS

01:59PM 5    NOT ENOUGH.

01:59PM 6        FINALLY, I DIDN'T ADDRESS 100-MILE RULE IN MY OPENING, BUT

01:59PM 7    HE JUST ADDRESSED IT ON REBUTTAL SO I'LL JUST SAY TWO QUICK

01:59PM 8    THINGS ABOUT THAT.

01:59PM 9        ONE, YOUR HONOR ALREADY MENTIONED THIS, BUT IT KEEPS

01:59PM 10   GETTING BLURRED.  THE OFFICE IN NEW YORK IS THE OFFICE OF THE

01:59PM 11   SUBSIDIARY OF PIF, AND THERE'S NO CLAIM THAT IT'S AN ALTEREGO,

02:00PM 12   THERE'S NO CLAIM THAT CORPORATE FORMALITIES IS NOT OBSERVED.

02:00PM 13   IT'S A SUBSIDIARY.

02:00PM 14           THE COURT:  WHICH SUBSIDIARY?

02:00PM 15           MR. BASH:  I'M BLANKING ON THE NAME.  IT'S

02:00PM 16   REPRODUCED IN OUR BRIEF, BUT IT IS NOT ONE OF THE SUBSIDIARIES

02:00PM 17   INVOLVED IN LIV.  IT'S A SEPARATE PIF SUBSIDIARY.  I THINK IT

02:00PM 18   MAY HAVE PIF IN THE TITLE.

02:00PM 19           MS. LAMM:  IT'S USSA.

02:00PM 20           MR. BASH:  USSA.  I'M SORRY, YOUR HONOR.

02:00PM 21           THE COURT:  THAT'S ALL RIGHT.  I WASN'T REMEMBERING

02:00PM 22   FROM THE BRIEF.

02:00PM 23           MR. BASH:  BUT AS FAR AS I KNOW UNRELATED TO LIV.

02:00PM 24       THE CONTEXT THAT THEY HAVE IDENTIFIED, I THINK THEY SAID 9

02:00PM 25   OR 13 TRIPS WITHIN SOME SPAN OF TIME.

| | |
|---|---|
| 02:00PM | 1 |

THE COURT:  UH-HUH.

02:00PM  2          MR. BASH:  THEY'RE IRREGULAR.  THEY'RE ONE-OFFS.

02:00PM  3     THEY HAVE NOT POINTED TO ANY EVIDENCE THAT MR. AL-RUMAYYAN

02:00PM  4     TAKES REGULAR BUSINESS TRIPS HERE AS OPPOSED TO ONE-OFF EVENTS,

02:00PM  5     SO I DON'T THINK THE 100-MILE RULE IS SATISFIED.

02:00PM  6          I'LL LIMIT MY COMMENTS TO THAT.

02:00PM  7          THE COURT:  ALL RIGHT.  THANK YOU, MR. BASH.

02:00PM  8          ALL RIGHT.  COUNSEL, THERE'S BEEN A TREMENDOUS EFFORT IN

02:00PM  9     THE BRIEFING AND THE ARGUMENT HERE TODAY, AND THE COURT

02:00PM  10    APPRECIATES IT.  THIS IS WHY I WANTED TO HAVE YOU ALL HERE IN

02:01PM  11    PERSON AND SO WE COULD WORK THROUGH AND ADDRESS THESE ISSUES,

02:01PM  12    AND BOTH SIDES WERE AMPLY PREPARED TO DO THAT.  SO THANK YOU.

02:01PM  13         I LOOK FORWARD TO HEARING FROM YOU NEXT WEEK PROMPTLY, AND

02:01PM  14    WE'LL TAKE WHATEVER NEXT STEPS WE CAN GET ON THE PHONE FOR A

02:01PM  15    ZOOM CONFERENCE, IF NEEDED, TO CLARIFY SOME ISSUES OR HELP MOVE

02:01PM  16    IT FORWARD, BUT IF WE'RE AT AN IMPASSE, LET ME KNOW, AND I'LL

02:01PM  17    GET AN ORDER AS SOON AS I CAN.

02:01PM  18         ALL RIGHT.  THANK YOU VERY MUCH.

02:01PM  19         MR. SURPRENANT:  THANK YOU, YOUR HONOR.

02:01PM  20         MR. PETERS:  THANK YOU, YOUR HONOR.

02:01PM  21         THE COURT:  IT'S GOING TO TAKE ME A MINUTE TO

02:01PM  22    COLLECT MY DOCUMENTS, SO WE ARE ADJOURNED AND PLEASE BE SEATED

02:01PM  23    AND PROCEED.

24         (COURT CONCLUDED AT 2:01 P.M.)

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16                      IRENE RODRIGUEZ, CSR, RMR, CRR
                        CERTIFICATE NUMBER 8074
17

18                      DATED:  JANUARY 13, 2023

19

20

21

22

23

24

25