| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN LLP<br>JOHN B. QUINN, SBN 90378<br>  johnquinn@quinnemanuel.com<br>DOMINIC SURPRENANT, SBN 165861<br>dominicsurprenant@quinnemmanuel.com<br>KEVIN TERUYA, SBN 235916<br>  kevinteruya@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: 213.443.3000<br><br>ROBERT P. FELDMAN, SBN 69602<br>  bobfeldman@quinnemanuel.com<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, California 94065<br>Telephone:  650.801.5000<br>Facsimile:   650.801.5100<br><br>*Attorneys for Non-Parties The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan.* | **WHITE & CASE LLP**<br>Carolyn Lamm (*pro hac vice*)<br>Hansel Pham (*pro hac vice*)<br>Nicolle Kownacki (*pro hac vice*)<br>701 Thirteenth Street, NW<br>Washington, District of Columbia 20005<br>Telephone:  (202) 626-3600<br>Facsimile: (202) 639-9355<br>clamm@whitecase.com<br>hpham@whitecase.com<br>nkownacki@whitecase.com<br><br>Jack E. Pace III (*pro hac vice*)<br>Kimberly A. Havlin (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>jpace@whitecase.com<br>kim.havlin@whitecase.com<br><br>Heather M. Burke (SBN 284100)<br>3000 El Camino Real<br>2 Palo Alto Square, Suite 900<br>Palo Alto, CA  94306-2109<br>Telephone: (650) 213-0300<br>Facsimile: (650) 213-8158<br>hburke@whitecase.com |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant and Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF INC.,<br><br>Counter-Defendant. | Case No. 5:22-cv-04486-BLF-SVK<br><br>**RESPONSE TO PGA TOUR, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN'S COMPLIANCE WITH DOCUMENT AND DEPOSITION SUBPOENAS AND OPPOSITION TO MOTION TO QUASH**<br><br>Judge: Hon. Susan van Keulen<br>Date Filed: August 3, 2022<br>Trial Date: January 8, 2024 |

**REDACTED VERSION**

Further to the Court's authorization (H'rg Tr., Jan. 13, 2023, 15:22-23) that Non-Parties could "submit a written reply" to the PGA Tour's January 17, 2023 Supplemental Memorandum (Docket 225), Non-Parties respectfully submit this Response.

### PRELIMINARY STATEMENT

The Tour's overheated assertions in its January 9, 2023 Supplemental Memorandum ("Supp.") in support of its motion to compel do not affect the issues before the Court. Nothing in the Shareholder Agreement disproves the facts laid out in the motion to quash: PIF's and HE's conduct is not the basis or "gravamen" of the action; they have not waived their immunity; and they exercise only ordinary oversight and approval "consistent" with investor status, *see U.S. v. Bestfoods*, 524 U.S. 51, 72 (1998), which is insufficient for jurisdiction. On the contrary, the Tour's supplemental brief makes admissions that prove the lack of jurisdiction.

### ARGUMENT

**1.   The Shareholder Agreement Has No Effect on Sovereign Immunity.**

The Shareholder Agreement does not impact sovereign immunity because according to the Tour's own supplemental brief, it does not show PIF's conduct is the basis of any claim or that PIF waived immunity under the governing law.

**Commercial Activity Exception:** The Tour admits that its counterclaim "is based on **LIV's** [purportedly] illegal efforts to recruit PGA Tour members and induce them to breach their agreements with the Tour." Supp. at 4:21-23. According to the Tour's own brief, PIF's involvement was limited to "approval of player contracts." *Id*. at 4:26. Under its own argument, the Tour thus admits that PIF's and HE's conduct is not the "basis" of the counterclaim—PIF did ***not*** "recruit PGA Tour members" or "induce them to breach their agreements" in the Tour's telling.

The admission is fatal to the Tour's claim that PIF's conduct forms the basis of the counterclaim for tortious interference. At most, PIF's conduct only "led to the conduct that eventually injured [the Tour]"; it is not conduct that "actually injured [it]." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 34 (2015). Likewise, the Tour's statement that "LIV's [antitrust] claims rest on *[LIV's]* alleged inability to sign agreements with other tours, with golfers, and with

broadcasters and sponsors" admits that PIF's conduct is not the basis of the Tour's counterclaim. Supp. at 4:14-16.

**Waiver:** As explained before, investor approval of litigation is not sufficient for waiver. *See Aldossari v. Ripp*, 49 F.4th 236, 250 (3d Cir. 2022) (explaining that FSIA waiver is "strictly" construed). The Tour is simply wrong that intent is "not necessary" for the waiver exception. Supp. at 5:3-5. FSIA waiver requires "clear and unambiguous" conduct that shows "the foreign state **intended** to waive its sovereign immunity." *Id.* (compiling cases). The Tour's cited case expressly did not reach this issue. *See Smith v. Soc. People's Libyan Arab Jamahiriya*, 101 F.3d 239, 244 (2d Cir. 1996) (stating that intent is "an issue we need not decide").

### 2.     The Shareholder Agreement Has No Effect on Personal Jurisdiction.

Ninth Circuit cases are uniform that even when the investor parent has to "***approve***" "major decisions" of a subsidiary, the right of such approval does ***not*** establish day-to-day control or make the subsidiary an agent of the parent for personal jurisdiction. *See, e.g., Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001)); *Kramer Motors Inc. v. British Leyland Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980); *see also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983) (establishing extensive-control test in context of foreign sovereign entities).

The Shareholder Agreement shows (at most) exactly that: approval of major decisions. *See Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 58-59 (2d Cir. 2021) (explaining that "[a]ppointing loyal board members is a due exercise of power incidental to ownership" which is "not synonymous with [day-to-day] control" (cleaned up)). The Tour asserts that the Shareholder Agreement contradicts PIF's and HE's representations that PIF "does not approve LIV's budget," "does not manage or control LIV's day-to-day operations," and did not direct LIV "to bring [this] lawsuit." Supp. at 1:17-18. The Tour has one basis for this extraordinary attack on its adversaries' honesty: it purports to understand "consent" as PIF's ability to "control" LIV—an interpretation that is flatly inconsistent with the plain terms of the Agreement, the English language, commonsense, and the evidence before this Court.

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. at 1:22-27 & Exh. 1 at 44.[1]  T▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮  *Id*. at 2:1-2, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*.

6 at 4:25-26.  But that reflects a basic misreading of the agreement.  ▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The basic premise of the

9 Tour's arguments—that the Shareholder Agreement requires the consent of **PIF** for the specified

10 actions—is simply a misreading of the agreement.

11        Even putting aside that fatal problem, the Tour's legal arguments largely rest on the premise

12 that "consent" means "control."  It does not.  The leading dictionary of the English language defines

13 "consent" as "to accede to or acquiesce in what another propose."  OXFORD ENGLISH DICTIONARY,

14 vol. III, at 760.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The Tour's attack fails

16 as a matter of both logic and vocabulary.

17        The Tour's casual assumption "consent" means "control," which it translates immediately

18 into vitriolic attacks on PIF's, HE's and LIV's honesty, is also flatly at odds with how business

19 works.  PIF is an investor in U.S. tech companies like Meta, Alphabet, Microsoft, Amazon, Pay Pal

20 and Zoom, and in consumer companies like Uber, Walmart, Starbucks and Costco.  Does the Tour

21 seriously mean to contend that whenever PIF gives shareholder consents to those companies it is

22 "controlling" them?

23        In short, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25

26 [1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ██████████████████████████—which are the type of major decisions that do not create
2 personal jurisdiction for a parent corporation. *See* Supp., Exh. A at 45-46. Other than volume and
3 *ad hominem*, the Tour has offered nothing to call that testimony into question.

### 3. PIF and HE Did Not "Misrepresent" Facts In Their Briefs.

In their motion to quash, PIF and HE explained that PIF (1) did not authorize LIV's entry in this lawsuit, (2) did not approve player contracts beyond the capital expenditures required for those decisions, and (3) does not control LIV's day-to-day operations. All of that remains true, notwithstanding the Tour's efforts to say otherwise.

Neither PIF nor HE approved LIV's entry in the lawsuit. Docket 166-6 (Taylor Decl.), ¶ 2. This is evident from the fact that ████████████████████████████████████████ ██████████████████████ *see* Supp. Ex. 1 at 66, but none of the LIV Board Meetings (all of which have been produced) show such consent.

████████████████████████████████████████
████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

Supp., Exh. A at 66 (emphasis added). ████████████████████ ████████████████████████ there would be evidence of either ***written approval*** or ***approval at a board meeting***. To date, LIV has produced (a) 100,871 documents totaling 361,842 pages; (b) all LIV Board meeting minutes; (c) all LIV Board presentations; (d) nearly 2,000 communications from LIV to PIF or PIF to LIV; (e) 270 LIV weekly updates to PIF; (f) more than 80 documents relating to PIF budget approvals; (g) more than 20 PIF and LIV agreements; (h) documents concerning PIF meeting with players; and (i) PIF board approvals. Hvidt Decl. ¶ 14. Out of those hundreds of thousands of pages, the Tour fails to identify a single page to show PIF approval.

### 4. Production of The Shareholder Agreement Was Timely.

The Tour complains LIV "belatedly" produced the Shareholder Agreement. Not true. LIV's Chief Financial Officer Tim Taylor briefly referenced the Shareholder Agreement in his November 22, 2022 Declaration. Docket 166-6 (Taylor Decl.), ¶ 3. The Tour requested the document on November 28, 2022, and LIV produced the document after privilege review. Hvidt Decl., ¶¶ 6-7. The Tour then waited nearly three weeks before bringing it to the Court's attention on January 9, 2023. The Tour has in any event had ample opportunity to respond to the document in its supplemental brief and at argument.

### CONCLUSION

The Tour's Supplemental Memorandum lacks merit. The Tour's motion to compel should be denied and PIF's and HE's motion to quash granted.

DATED: January 20, 2023          Respectfully submitted,

By /s/ Dominic Surprenant
JOHN BASH
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, TX 78701-3901
Telephone: (737) 667 6100
Facsimile: (737) 667 6110

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  213.443-3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor

Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801-5100

**WHITE & CASE LLP**

Carolyn Lamm (*pro hac vice*)
Hansel Pham (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)
701 Thirteenth Street, NW
Washington, District of Columbia 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
clamm@whitecase.com
hpham@whitecase.com
nkownacki@whitecase.com

Jack E. Pace III (*pro hac vice*)
Kimberly A. Havlin (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jpace@whitecase.com
kim.havlin@whitecase.com

Heather M. Burke (SBN 284100)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com

*Attorneys for Non-Parties The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan.*