JOHN B. QUINN (Bar No. 090378)
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

ROBERT P. FELDMAN, SBN 69602
bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs LIV Golf, Inc.,
Matt Jones, Bryson DeChambeau, and Peter
Uihlein*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC.<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant and Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF INC.,<br><br>Counter-Defendant | Case No. 5:22-cv-04486-BLF<br><br>**JOINT STATEMENT REGARDING REQUEST FOR PRODUCTION NO. 8 OF SUBPOENAS TO INDEPENDENT PGA TOUR DIRECTORS AND FORMER PGA TOUR COMMISSIONER FINCHEM**<br><br>Judge:    Hon. Susan van Keulen<br><br>Dept.:    Courtroom 1, 5th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

Plaintiff LIV Golf, Inc. ("LIV") subpoenaed non-parties Mary Meeker, Ed Herlihy, Randall Stephenson, Mark Flaherty, Victor Ganzi, and Tim Finchem (the "Subpoenaed Persons"). LIV and the Subpoenaed Persons jointly submit this statement pursuant to Federal Rule of Civil Procedure 45(d)(2)(B) and Paragraph 8 of the Court's Standing Order. Five of the Subpoenaed Persons are independent directors on Defendant PGA Tour, Inc.'s (the "Tour") Policy Board (except that Mr. Ganzi retired on January 1, 2023) and the other is Mr. Finchem, the Tour's former Commissioner prior to current commissioner Jay Monahan. LIV and the Subpoenaed Persons submit this joint statement to resolve their dispute over Request 8 of the subpoenas, having resolved their disputes over the other Requests.

As an initial matter, under Rule 45(d)(2)(B), "the serving party [of a Rule 45 subpoena] may move the court for the district where compliance is required for an order compelling production." Here, the district of compliance for the subpoena to Ms. Meeker is the Northern District of California. Accordingly, this Court has jurisdiction to resolve the issue presented as to the subpoena to Ms. Meeker. As to the other Subpoenaed Persons, they and LIV have agreed that this Court's ruling as to Ms. Meeker shall apply to them.

Request 8, which is identical across the subpoenas, seeks "[a]ll Communications between You and any member of Augusta National [Golf Club ("Augusta")] relating to a New Tour, including but not limited to LIV Golf." The Subpoenaed Persons have agreed to provide such communications with four employees of Augusta, seven members of Augusta, and other Subpoenaed Persons. The Subpoenaed Persons refuse to provide communications with any other Augusta members. LIV seeks to compel the Subpoenaed Persons to comply with the full scope of Request 8, but at minimum, to compel the Subpoenaed Person to comply with Request 8 as to the seven Augusta members identified by the Tour and ten additional Augusta members and members of Augusta's Masters Committee.

The parties have met and conferred multiple times via video conference and follow-up emails but were unable to reach agreement. A joint chart setting forth the dispute is attached as Exhibit A. There are 67 days remaining until the close of written discovery on March 31, 2023.

I.   **LIV'S POSITION**

The disputed request seeks communications of five directors on the Tour's Policy Board and its former commissioner about LIV (or other new tours) with members of Augusta National Golf Club ("Augusta"). The Subpoenaed Persons have agreed to produce responsive communications with four employees of Augusta and Augusta's seven-member executive committee, but refuse to produce responsive communications with additional Augusta members. LIV seeks full compliance with the request; the Augusta membership is approximately 300 people, virtually all of whom are in rarefied positions of power and influence, heightening the relevance of the communications of the Subpoenaed Persons with them. Alternatively, LIV seeks the Subpoenaed Persons' responsive communications with: (a) 4 Augusta employees and 17 Augusta members, whom LIV has chosen due to anti-LIV efforts; and (b) members of Augusta's "Masters Committee," which determines whether to invite players to compete in the Masters. The Tour agrees to produce communications as to 11 of these individuals; LIV seeks an additional 10 individuals plus the members of the Masters Committee. There is presumably considerable overlap between the other individuals and members of the Masters Committee, but LIV cannot "count noses" because the Tour has refused to identify who sits on the Masters Committee.[1]

A central component of the Tour's scheme to foreclose competition from LIV was to threaten golfers, other tours, vendors, broadcasters, sponsors and virtually any other third parties if they did business with LIV. Discovery has shown that the Tour delivered these threats not only through its own executives and employees, but by dispatching other influential persons on its behalf. This was no accident; the Tour was careful to avoid putting its "▮▮▮▮▮▮▮" on its anticompetitive conduct. PGA_TOUR0043698 (emphasis added) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); PGA TOUR0047954 (emphasis added) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); PGA_TOUR0516771 (emphasis added) (▮

---

[1] In the spirit of compromise, LIV withdrew Requests 10 and 11 in the subpoenas, which would have captured the Subpoenaed Persons' communications with *anyone* about a New Tour.

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Similarly, the Tour instructed its employees to avoid written communications. PGA_TOUR018127 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); PGA_TOUR0514671 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); PGA_TOUR0018391 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

The glimpses LIV has seen of Augusta members' involvement in the Tour's alleged illegal conduct reveal why the Tour and its directors seek to conceal these communications from discovery. The Tour dispatched the Subpoenaed Persons to make—and those directors, in turn, utilized their connections with Augusta members, who wield extraordinary power both within and outside the golf world, to deliver—threats of consequences to chill golfers and other third parties against working with LIV. Nevertheless, the Subpoenaed Persons have refused to provide their communications about LIV with a number of these individuals. In the following list of examples, the names of Augusta members for whom the Subpoenaed Persons have refused to provide communications are bold-faced.

- Augusta members former Secretary of State **Condoleezza Rice**, and Lee Styslinger "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" PGA_TOUR0086554.

- Augusta members **Secretary Rice** and **Warren Stephens** (CEO/Chairman of Stephens Bank) apparently attempted to influence the DOJ to not investigate the Tour: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" PGA_TOUR0520450.

- Augusta member **Warren Stephens** was apparently asked by Tour employees to lobby

3

1 | Senator Tom Cotton against LIV.  PGA_TOUR0060687.

- Augusta member **Ginni Rometty**, Executive Chairman of IBM, was apparently solicited by the Tour to get on its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" PGA_TOUR0405732.

- Augusta member **Bobby Long**, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ PGA_TOUR0490469.

- Augusta members **Bobby Long** and **John Harris** were considered ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ PGA_TOUR0490444.

These examples show the relevance and need of Request No. 8.  The Tour executed its "us or them" campaign at all levels of golf's ecosystem and discovery into its closest, most powerful messengers'—its directors'—communications with their connected power brokers goes to the heart of Plaintiffs' allegations.  Indeed, the threat of a change in relationship with Augusta's members was used as a stick to discourage one of the top golfers in the world from joining LIV.  ANI-LIV-00009530(▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Further, the Subpoenaed Persons stated to LIV in relation to Request 8 that they would produce "communications with those at August National with decision-making authority related to the Masters tournament."  But they inexplicably refuse to add communications with members of the Masters Committee, who—according to the Masters official website and press releases—decide which golfers to invite to compete in the Masters tournament.  *See, e.g.*, https://www.masters.com/en_US/players/invitees_2018.html (emphasis added) ("***The Masters Committee***, at its discretion, also ***invites international players not otherwise qualified***."); https://www.masters.com/en_US/news/articles/2018-03-12/2018-03-12_2018-03-12_big_masters_dreams_for_veterans_newcomers_alike.html (emphasis added) ("I am deeply honored to be found worthy of ***invitation by the Masters Committee***….");

*https://www.masters.com/en_US/news/articles/2019-04-07/when_the_invitation_arrives_late.html* (emphasis added) ("The only other way into the Tournament in the latter stages (*other than a special invitation from the Masters Committee*) is to win an official PGA Tour title from the time of the previous year's Masters."); *https://ohiogolfjournal.com/reasons-to-love-the-masters-in-november/* (emphasis added) ("There are 19 different criteria by which ***The Masters Committee drafts the list of players who are invited to play in The Masters each year***."). One of the most important decisions to this case as related to Augusta is whether LIV players would be invited to the Masters. The Subpoenaed Persons communications with members of the Masters Committee are critical to that issue.

Finally, there is no support for the Subpoenaed Persons' boilerplate claims of overbreadth and burden. As LIV's counsel stated on November 14, 2022:

> We continue to disagree that Request 8 is unduly burdensome or overbroad. We have identified specific Augusta members that set a floor and to the extent that a particular director has knowledge of additional members, then those additional members should be searched for regarding that director. We are not asking the directors to provide a list of every Augusta member and then to search for communications with each of those members. We are asking for reasonable efforts to provide responsive documents, and we have outlined an approach that is reasonable.

The lack of undue burden is even more so considering LIV's compromise proposal. If these communications about LIV exist in the Subpoenaed Persons' files, they are responsive and relevant, and should be produced. And if there are no such communications, then there is no burden. There is no additional collection required. In short, the Subpoenaed Persons' boilerplate objections do not withstand LIV's showing that their communications about LIV Golf with Augusta members, a club with a small membership comprised of America's most powerful people that hosts the most important professional golf Major, should be produced.

## II. MS. MEEKER'S POSITION

LIV's request for production goes well beyond the issues in this case, imposes an undue burden on third parties, and exceeds the bounds of relevant and proportional discovery. It is a fishing expedition for communications with individuals that LIV considers "America's most powerful people," but who otherwise have no relevance to the issue in dispute. The Subpoenaed Persons have already compromised and agreed to substantial discovery in an effort to avoid burdening the Court with this dispute. Further discovery is unwarranted.

The allegations in the Amended Complaint regarding Augusta National are straightforward and narrow. LIV contends—incorrectly—that the TOUR has "leaned on" or pressured Augusta National to block LIV golfers from the Masters. *See* Amended Complaint ¶¶ 11, 126, 160-63, 182. According to Plaintiffs, the TOUR and Augusta National aligned in response to LIV, which "seed[ed] doubt among top professional golfers whether they would be banned from future Masters Tournaments." *Id.* at ¶ 160. This theory is entirely baseless as demonstrated by the fact that the Masters has allowed LIV golfers to compete in the 2023 tournament.[2] Each and every LIV golfer eligible to participate in the 2023 Masters—16 in total—received invitations, including Plaintiff Bryson DeChambeau.

Plaintiffs have sought and obtained discovery on the issue of Masters eligibility from the PGA Tour and Augusta National itself, agreeing that Augusta limit its production to *five* custodians. Unsurprisingly, LIV has found no information in this discovery or otherwise to support its unfounded allegations. Having struck out twice, Plaintiffs now seek communications between the five independent directors on the Tour's Policy Board and its former commissioner, on the one hand, and every one of the more than 300 Augusta National Golf Club members, on the other hand. Those 300 members include individuals with no involvement in the Masters tournament, as well as individuals with only limited involvement in the Masters on wholly irrelevant matters—like deciding tee box and pin placement, organizing volunteers, providing

---

[2] Mark Schlabach, *Masters Criteria Allow LIV Golfers to Play in 2023 Tournament*, ESPN (Dec. 20, 2022), https://www.espn.com/golf/story/_/id/35291797/masters-criteria-allows-liv-golfers-play-2023-tournament.

player hospitality, and overseeing score reporting. Plaintiffs make no attempt to explain how this discovery could plausibly pertain to allegations in the Amended Complaint.

Despite LIV's baseless position, Ms. Meeker and the other five Subpoenaed Persons nevertheless have agreed to search for and produce communications with all five Augusta National custodians. Through the meet and confer process, the Subpoenaed Persons have further agreed to search for and produce communications with everyone on Augusta's Executive Committee, which includes Augusta National's senior executives and officers. In total, the Subpoenaed Persons have agreed to search for and produce communications with the 12 individuals who they understand determine eligibility for the Masters. That scope of discovery appropriately addresses the allegations in the Amended Complaint.

Recognizing the patent overbreadth of their original demand—to search for and produce communications with each and every of the more than 300 members of the Augusta National Golf Club—Plaintiffs seek as a fallback position the production of communications with a smaller list of Augusta members in addition to those members on the "Masters Committee." As the Subpoenaed Persons have repeatedly explained during the meet and confer process, this narrowed request remains overbroad, unreasonable, and unduly burdensome.

The overwhelming majority of the Masters Committee has no role in setting eligibility for the tournament, as is clear from the Masters' website. *See 2019 Masters Tournament Committee Assignments*, The Augusta Chronicle (Apr. 6, 2019), https://www.augusta.com/masters/story/news/2019-04-06/2019-masters-tournament-committee-assignments. Plaintiffs' request would involve searching for communications with members of wholly-irrelevant subcommittees like the Cup and Tee Marker Placement Committee, the Concession Committee, the First Aid Committee, and the Parking and Traffic Committee, *id.*, who have nothing to do with determining eligibility for the Masters tournament. This would impose an undue burden on the six Subpoenaed Persons and far exceed the bounds of relevant and proportional discovery.

The other snippets of documents Plaintiffs misleadingly cite fail to provide any justification for their overbroad demand. *None* of the documents Plaintiffs reference involve the

7

JOINT STATEMENT REGARDING REQUEST FOR PRODUCTION NO. 8 OF SUBPOENAS TO INDEPENDENT PGA TOUR DIRECTORS AND FORMER COMMISSIONER FINCHEM
Case No. 5:22-cv-04486-BLF

Subpoenaed Persons, and most do not even mention Augusta National or the Masters. Nor do the cited documents support Plaintiffs' allegations—an effort by the TOUR to force Augusta to ban LIV golfers from the Masters or threaten players with bans if they joined LIV. All this evidence shows is that there are many people who dislike LIV Golf, LIV's Saudi backers and what they stand for, and that some of those individuals have chosen to share their personal opinions about LIV with professional golfers and others. Plaintiffs make only vague accusations of "anti-LIV efforts" by people "in rarified positions of power and influence." This does not provide a basis for the third-party discovery Plaintiffs seek. Rather, it exposes LIV's true motivation—to fish for communications among "America's most powerful people" by harassing Augusta National's members through discovery it did not even seek from Augusta National itself.

As a final matter, Plaintiffs misconstrue the burden of discovery. Plaintiffs' statement that "if there are no communications, then there is no burden" ignores the threshold showing they must make regarding the need to establish that the discovery sought is relevant and proportional.

The Subpoenaed Persons' proposal identifies anyone with decision-making authority for Augusta National and the Masters Tournament, exceeds the scope of discovery Plaintiffs have sought from Augusta national itself, and will sufficiently provide Plaintiffs with information relevant to the actual claims in this case. For these reasons, LIV's motion should be denied, and the Subpoenaed Persons' most recent proposal should be adopted.

| | |
|---|---|
| Dated: January 23, 2023 | By: _____/s/ *Dominic Surprenant*_____ |

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: 650.801.5000
Facsimile: 650.801.5100

*Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau, Peter Uihlein, and LIV Golf Inc.*

DATED: January 23, 2023                    Respectfully submitted,

_____/s/ *Anthony Dreyer*_____

| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| ELLIOT R. PETERS - # 158708 | ANTHONY J. DREYER - (admitted pro hac vice) |
| epeters@keker.com | anthony.dreyer@skadden.com |
| DAVID SILBERT - # 173128 | KAREN M. LENT - (admitted pro hac vice) |
| dsilbert@keker.com | karen.lent@skadden.com |
| R. ADAM LAURIDSEN - # 243780 | MATTHEW M. MARTINO - (admitted pro hac vice) |
| alauridsen@keker.com | matthew.martino@skadden.com |
| NICHOLAS S. GOLDBERG - # 273614 | One Manhattan West |
| ngoldberg@keker.com | New York, NY 10001 |
| SOPHIE HOOD - # 295881 | Telephone: 212 735 3000 |
| shood@keker.com | Facsimile: 212 735 2000 |
| 633 Battery Street | |
| San Francisco, CA 94111-1809 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| Telephone: 415 391 5400 | |
| Facsimile: 415 397 7188 | |

PATRICK FITZGERALD - (admitted pro hac vice)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, IL  60606
Telephone:     312 407 0700
Facsimile:      312 407 0411

*Attorneys for Mary Meeker*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: January 23, 2023

>　　　　　　　　　　　　　　　　　　/s/ *Dominic Surprenant*
>　　　　　　　　　　　　　　　　　　Dominic Surprenant