1

KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:     212 735 3000
Facsimile:     212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone:     312 407 0700
Facsimile:     312 407 0411

Attorneys for Defendant and Counter-Claimant PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., | Case No. 5:22-CV-04486-BLF |
| Plaintiffs, | **JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE** |
| v. | Judge:        Hon. Beth Labson Freeman |
| PGA TOUR, INC., | Date Filed:  August 3, 2022 |
| Defendant and Counter-Claimant, | Trial Date:  January 8, 2024 |
| v. | |
| LIV GOLF INC., | |
| Counter-Defendant. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Pursuant to this Court's guidance during the September 15, 2022 and December 16, 2022 case management conferences, the parties hereby submit the following Joint Statement requesting a case management conference to address issues related to the case schedule.

## I.   PGA TOUR'S POSITION

Defendant and Counterclaimant the PGA TOUR, Inc. (the "TOUR") respectfully requests that the Court set a case management conference to discuss: *(1)* vacating the current trial date and *(2)* extending the discovery schedule.

There are at least four reasons why these adjustments are necessary to avoid serious prejudice to the TOUR's ability to defend against LIV's claims and prosecute its tortious interference counterclaims. *First*, the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and its governor, Yasir Al-Rumayyan, continue to resist compliance with the TOUR's subpoenas for documents and testimony, a dispute that remains unresolved and which will likely lead to an appeal. *Second*, the TOUR has sought leave to amend its counterclaims to add PIF and Mr. Al-Rumayyan as counterdefendants, because recently produced documents show that they played a central role in tortiously interfering with the TOUR's contracts. *Third*, LIV, the current and former player plaintiffs, and several third parties have failed to produce key documents and, in some cases, have failed to produce documents at all. *Fourth*, the nature of this case has significantly evolved since the Court set the current January 2024 trial date, from a case about individual golfers to a case about two competing golf leagues, substantially undermining Plaintiffs' stated basis for an expedited case schedule.

The current trial date and discovery schedule are untenable in view of these issues. The deadline to complete document discovery is March 30, 2023, and the fact discovery cutoff is May 26, 2023. Given the present status of discovery (or lack thereof) from PIF and Mr. Al-Rumayyan in particular, it is not realistic for the parties to meet the current deadlines. In fact, PIF and Mr. Al-Rumayyan have already signaled that they are unlikely to comply with any order from this Court compelling them to provide discovery, instead indicating that they will pursue their meritless defenses through lengthy appeals. Thus, it could take several months (or longer) before PIF and Mr. Al-Rumayyan even begin producing discovery or choose to face the consequences of

their noncompliance.  For these reasons, the Court should vacate the trial date and set a new schedule for discovery with sufficient runway to allow for these pending issues to be resolved.

### A.    PIF and Mr. Al-Rumayyan's steadfast refusal to comply with the TOUR's subpoenas is causing significant delay.

As set out in detail in the TOUR's Amended Counterclaim, *see* Def.'s Mot. for Leave to Amend Counterclaims, Ex. A (Dkt. 237-1), discovery has revealed that LIV is in fact just an instrumentality of PIF, highlighting the essential need for discovery from PIF and its governor Mr. Al-Rumayyan.  During the first status conference in this litigation, counsel for Plaintiffs represented that "we will find a way to cooperate" with "appropriate discovery of the Public Investment Fund" and promised that such discovery would go "swimmingly."  *See* Aug. 18, 2022 Hr'g Tr. (Dkt. 76) at 14.  Unfortunately, Plaintiffs' promise to facilitate discovery from PIF was an empty one.  In fact, PIF and Mr. Al-Rumayyan have taken extraordinary steps to avoid producing a single document or providing sworn testimony.

To date, the TOUR has been unable to obtain *any* discovery from either PIF or Mr. Al-Rumayyan.[1]  After agreeing to accept service of the TOUR's subpoenas, PIF and Mr. Al-Rumayyan subsequently asserted that: (1) despite authorizing and controlling LIV's ongoing conduct of this case, no United States court has jurisdiction over them; (2) they are immune from compulsory process; (3) they are forbidden from producing discovery under Saudi Arabian law; and (4) they have no relevant discovery.  *See* Mot. to Compel Compliance with Subpoenas (Dkt. 148) at 5-6; Reply in Supp. of Mot. to Compel (Dkt. 169) at 3-20; Supp. Mem. in Supp. of Mot. to Compel (Dkt. 225) at 1-5.  Each of these arguments is meritless and a smokescreen to obstruct critical discovery, as the TOUR has demonstrated in its motion to compel briefing.  *See id.*  The TOUR's motion to compel PIF and Mr. Al-Rumayyan's compliance and their motion to quash remain pending before Judge van Keulen, who held oral argument on January 13, 2023.  *See* Minute Entry (Dkt. 217).

Despite Judge van Keulen's best efforts to facilitate a compromise, no serious discussions

---

[1] LIV claims that it asked for but cannot obtain any documents from PIF or Mr. Al-Rumayyan, even though all three entities are represented by the same lawyers.

ever materialized.  The TOUR was willing to engage in discussions to try to reach an agreement, and proactively narrowed its subpoenas in hopes of productively moving forward.  But PIF and Mr. Al-Rumayyan refused to even meet and confer unless the TOUR agreed in advance to an unfair and onerous set of preconditions that would have allowed them to cherry-pick what documents to produce while shielding them from testifying under oath and depriving the TOUR of any way of enforcing its rights.  *See* Joint Status Report Following Mot. to Compel and Mot. to Quash Hr'g (Dkt. 228).  As the Court already told PIF and Mr. Al-Rumayyan's lawyers more than a month ago, "there's a big difference from trying a case based on what your opponent wants you to see, and trying a case based on what they are legally obligated to produce."  Dec. 16, 2022 Hr'g Tr. (Dkt. 186) at 17; *see also id.* at 18 ("But your good will in saying you will produce documents only goes so far, because Mr. Peters is still going to be trying a case based on … what your client deigned to let him see.").  PIF and Mr. Al-Rumayyan's intransigence created an impasse, and now Judge van Keulen must resolve the pending motions.

As this Court observed at the December 16, 2022 case management conference, however, it is unlikely that Judge van Keulen's ruling will be the final word on the dispute.  Indeed, PIF and Mr. Al-Rumayyan have already indicated that they will continue pressing their baseless arguments, even if Judge van Keulen orders them to produce discovery.  When Judge van Keulen pressed PIF and Mr. Al-Rumayyan's counsel on whether they would comply with an order compelling them to provide discovery, their counsel demurred, stating: "I would need to confer with my client on that."  Jan. 13, 2023 Hr'g Tr. (Dkt. 221) at 57.  As this Court succinctly put it at the December 16 case management conference, given the implications for both sides, in all likelihood, "the loser will beat a path to" this Court.  Dec. 16, 2022 Hr'g Tr. (Dkt. 186) at 22.  And as PIF all but concedes below, a decision by this Court may be "only the [way] station to the Ninth Circuit" which would cause this case to "come to a screeching halt."  *Id.*

PIF and Mr. Al-Rumayyan are at the very heart of this case.  Despite their counsel's promise last August to facilitate voluntary discovery from PIF and assurance that it would all go "swimmingly," it has been more than five months and the TOUR has nothing to show for it.  The TOUR has no clarity as to when, or whether, PIF or Mr. Al-Rumayyan will produce documents or

appear for depositions.  And PIF and Mr. Al- Rumayyan concede they have taken no steps to even collect or review documents.  *See* Dkt. 166 at 18 (conceding that they have not "even set up a document collection process").  It would be fundamentally unfair to the TOUR to push forward to trial on the current schedule, while PIF and Mr. Al-Rumayyan continue to stonewall discovery and attempt to run out the clock.

Discovery from PIF and Mr. Al-Rumayyan is essential not only to resolving the TOUR's counterclaim but also to the TOUR's ability to defend against the underlying antitrust claims. The TOUR stated this position at the outset during the status conference in August and, contrary to Plaintiffs, has never wavered on the need to obtain discovery from PIF and Mr. Al-Rumayyan. While Plaintiffs now seek to reverse course and assert blithely that PIF and Mr. Al-Rumayyan are "peripheral" and "irrelevant" to LIV's antitrust claims, documents produced by Plaintiffs *after* the last case management conference demonstrate even further that PIF and Mr. Al-Rumayyan exercise near absolute authority over LIV, which is a creature entirely of their own making and which was set up to serve their interests.  PIF and Mr. Al-Rumayyan exercise control over every competitive and strategic decision LIV makes, and they accordingly have had and will continue to have a significant role in defining the contours of competition with the TOUR as well as the market for professional golfers.  Moreover, as the 93% owner and sole source of funding for LIV, PIF has by far the largest stake in Plaintiffs' claims (which were drafted in the first place by PIF's lawyers).

The TOUR cannot—and should not be forced to—defend against the antitrust claims without receiving *any* discovery from the people who created LIV in the first place, and who continue to exercise control over every facet of LIV's business operations.  By ignoring the reality that discovery from LIV's owners and decision-makers is essential to resolving the antitrust claims, Plaintiffs confirm the unworkability of the current schedule.

**B.  The TOUR seeks to bring claims against PIF and Mr. Al-Rumayyan for their tortious interference.**

The evidence the TOUR *has* been able to develop reveals that LIV is nothing more than a corporate shell in the thrall of its managers at PIF.  The evidence shows that LIV and its executives do not make any significant decisions independently and instead act under the

5

1   supervision of senior PIF leadership, including at the direction of Mr. Al-Rumayyan.  PIF and Mr.

2   Al-Rumayyan recruited TOUR players, participated in contractual negotiations, and directly

3   approved player contracts.  Mr. Al-Rumayyan even provided personal assurances about his and

4   PIF's commitment to backing one player in any legal claims by the TOUR.

5         LIV produced this key material in bits and pieces and withheld key documents until *after*

6   briefing on the TOUR's motion to compel compliance with its subpoenas to PIF and Mr. Al-

7   Rumayyan was already complete.  On December 21, 2022, after briefing on the TOUR's motion

8   to compel closed and after the deadline for substantial completion of document production, LIV

9   produced a "Subscription and Shareholders' Agreement executed by Mr. Al-Rumayyan (the

10  "Shareholders' Agreement") that formally defines the relationship between PIF and LIV. █████

11  ███████████████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████████

15  ███████████████  *See* Yeats-Rowe Decl. in Support of Def.'s Admin. Mot. to Supplement Mot. to

16  Compel, Ex. B (Dkt. 208-2) at 1. ███████████████████████████████████████

17  ███████████████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████  *See* Def.'s Mot. for

20  Leave to Amend Counterclaim (Dkt. 238) at 5-6.

21        Given the recently-produced evidence of PIF and Mr. Al-Rumayyan's direct control over

22  LIV's activities, the TOUR has filed a motion for leave to amend its counterclaim to assert claims

23  against PIF and Mr. Al-Rumayyan for tortious interference.  As explained in its motion for leave

24  to amend, the TOUR meets the lenient standard in Fed. R. Civ. P. 15 for amendment, and every

25  factor weighs in favor of granting leave to amend.  *See id*.  Consistent with this Court's Standing

26  Order Re Civil Cases, the TOUR has reserved a hearing date of May 18, 2023 for its motion.  The

27  TOUR will be prepared to address at the case management conference the schedule for remaining

28  briefing on the TOUR's motion, and whether the Court wishes to advance the hearing date.  In the

1    meantime, the Court should extend the discovery schedule and vacate the trial date to allow time

2    to formally bring PIF and Mr. Al-Rumayyan into the case as parties, resolve any sovereign

3    immunity or jurisdictional motions they may bring, and ensure that the TOUR has adequate time

4    to obtain discovery from them.

5        Plaintiffs, in their statement below, do not seriously dispute that it will take significant

6    additional time to resolve the pending issues related to discovery from PIF and Mr. Al-Rumayyan

7    along with their status as counterdefendants in this action.  Plaintiffs' only answer to these

8    obvious problems for the case schedule is to suggest for the first time that the Court should

9    bifurcate the TOUR's counterclaim from Plaintiffs' antitrust case.  This is wrong for at least three

10   reasons.

11       *First*, as explained above, evidence from PIF and Mr. Al-Rumayyan is central to the

12   TOUR's *defenses* in this case, irrespective of the TOUR's counterclaims.  As the TOUR stated

13   back in August (with no disagreement from Plaintiffs), the TOUR needs documents and

14   testimony from PIF and Mr. Al-Rumayyan to defend against LIV's affirmative claims.  So,

15   bifurcation cannot solve the problems associated with their discovery stonewalling.

16       *Second*, bifurcation will only result in *inefficiency* and additional expense, contrary to the

17   purposes of Rule 42.  *See* Fed. R. Civ. P. 42(b) (bifurcation authorized "[f]or convenience, to

18   avoid prejudice, or to expedite and economize").  To state the obvious, the TOUR's counterclaim

19   arises out of the same nucleus of operative facts as Plaintiffs' claims, so the same evidence and

20   witnesses are required for the presentation of both parties' cases.  The TOUR's counterclaim

21   focuses on the events leading up to the suspensions of the current and former player plaintiffs,

22   which is also the focus of the Plaintiffs' claims.  Telling only half of this story is not only illogical

23   and inefficient, but would also be prejudicial to the TOUR.  Courts in this Circuit routinely

24   conclude that bifurcation is inappropriate where a separate trial of one issue "would involve

25   extensive proof and substantially the same facts or witnesses as the other issues in the case[.]"

26   *Bates v. State Farm Mut. Auto. Ins. Co.*, No. C14-1557JLR, 2015 WL 11777838, at *1 (W.D.

27   Wash. May 18, 2015).

28       Plaintiffs' suggestion that the Court should bifurcate the TOUR's counterclaim because

PIF and Mr. Al-Rumayyan may be entitled to a bench trial is a red herring and does not alter the analysis.  The Court can—and should—simply hold a simultaneous bench and jury trial on both Plaintiffs affirmative claims and the TOUR's counterclaims, and then resolve whatever claims are entitled to a bench trial itself, submitting the other claims to the jury.  This is standard practice in FSIA cases.  For example, in cases involving multiple defendants, where one is a foreign state or instrumentality and the other is its domestic subsidiary, courts routinely hold simultaneous jury and bench trials to adjudicate the claims together.  *Gould v. Aerospatiale Helicopter Corp.*, 40 F.3d 1033, 1034-35 (9th Cir. 1994).  Moreover, the FSIA only applies to PIF, and not to LIV or Mr. Al-Rumayyan.  So, the TOUR's counterclaims as to those entities will proceed by jury trial regardless.  Bifurcating only the claims against PIF simply engenders an unnecessary and duplicative trial on the same facts.

*Finally*, bifurcation would in fact prejudice the TOUR.  The TOUR's counterclaims are inextricably linked with LIV's antitrust claims, and the same jury should hear all of the facts related to LIV, PIF, and Mr. Al-Rumayyan's campaign to pay astronomical sums of money to induce TOUR members to breach their contracts with the TOUR in an effort to use the game of golf to sportswash the recent history of Saudi atrocities.  "Bifurcation should be ordered only when the separation will result in judicial economy and will not unduly prejudice any party." *Datel Holdings LTD. v. Microsoft Corp.*, No. C-09-05535 EDL, 2010 WL 3910344, at *2 (N.D. Cal. Oct. 4, 2010).  The opposite is true here.

### C.   LIV, the player plaintiffs, and the former player plaintiffs have delayed their own document productions.

PIF and Mr. Al-Rumayyan's refusal to provide a single document or sit for a deposition is exacerbated by LIV's and the player-plaintiffs and former player-plaintiffs own discovery failings.  These deficiencies are serious and have hindered the TOUR's ability to prepare for depositions.  In some instances, individual players have produced nothing at all, some two months after the original substantial completion deadline *their own lawyers asked for* during the initial case management conference.  The TOUR continues to meet and confer with Plaintiffs and the former player-plaintiffs, who are represented by the same lawyers, in an effort to resolve these issues.  But, the continued delay in the production of fundamental materials renders preparation

for depositions on the current schedule unreasonably difficult.  As a result, depositions have not

commenced, and substantial document discovery remains outstanding.

> **1.   LIV refuses to supplement its production with key recent documents.**

Since August 2022, a number of LIV executives have come and gone, LIV has recruited

TOUR players and doubtless made overtures to others, and engaged in negotiations with

broadcasters that ultimately culminated in a publicly disclosed agreement with the CW network,

to name just a few central developments in this case.  But LIV refuses to fully collect and review

additional documents from its custodians covering the period between LIV's original collections

and January 31, 2022.  An additional collection and production is imperative, so that the TOUR

may review the documents associated with these key recent events and depose Plaintiffs'

witnesses regarding their contents.

Instead of agreeing to a fulsome additional collection and production, LIV has insisted on

an unworkable alternative, suggesting that the parties could somehow re-collect materials only for

a subset of document requests "for events that occurred after the [original] document cut-off

date."  This would require the parties to negotiate a set of requests subject to additional collection,

a task that is likely to lead to additional disputes.  Then, the parties would need to renegotiate

search terms, as the current sets of search terms do not generally distinguish between specific

requests for production.  Nevertheless, the TOUR sought to engage with Plaintiffs' proposal and

provided them with a set of requests for which a supplemental collection should be conducted.

Plaintiffs rejected the TOUR's proposal.  LIV's refusal to recollect and product important

materials significantly prejudices the TOUR's ability to defend this case and prosecute its

counterclaims, and will likely lead to additional motions practice before Judge van Keulen.

> **2.   Player-Agent Materials**

The player plaintiffs and the former player-plaintiffs spent weeks resisting the collection

and production of relevant information from their agents' custodial materials.  Eventually, the

TOUR was forced to seek Judge van Keulen's intervention, who granted the TOUR's motion in

its entirety, ordering the dismissed player-plaintiffs to search for and produce responsive

documents from their agents' custodial files.  *See* Dkt. 160.  As of this filing, the TOUR has

received only a small number of custodial documents from a handful of agents.  Given the nature of the sports entertainment business, these communications are highly likely to contain crucial information relevant to both the TOUR's defenses and its counterclaims.

### 3. Phil Mickelson

Phil Mickelson is the former lead plaintiff in this action, and he accepted service of a subpoena for documents in October.  Yet, to date, Mr. Mickelson has produced fewer than 600 documents, some of which are materials the TOUR sent to Mr. Mickelson, copies of the complaint and discovery requests, and junk files with no content.  Text messages Mr. Mickelson has produced were initially missing important metadata.  More importantly, Mr. Mickelson has failed to produce core responsive documents, such as those detailing his contract negotiations with LIV, communications with his agent, communications with the media regarding interviews in which he discussed his decision to leave the TOUR, and communications with his then-sponsors following his decision to join LIV.  These materials should have been produced long ago.

### 4. Abraham Ancer, Jason Kokrak, Carlos Ortiz, and Pat Perez

These four players were originally named plaintiffs in this case, but voluntarily dismissed their claims.  They subsequently accepted service of subpoenas in November, but to-date they have produced just 522 documents between them, some two months later.  LIV's lawyers, who also represent these four players, have refused to provide a date certain for the completion of their productions, except to promise that it will be finished before the March 30, 2023 document production deadline.  Obviously, the TOUR cannot assess the adequacy of Messrs. Ancer, Kokrak, Ortiz or Perez's productions or use their documents to begin planning for depositions until they are produced.

### D. This case between competing golf leagues does not require an expedited schedule.

At the beginning of this case, Plaintiffs obtained the current expedited trial date on the basis that this was a case about golfers who were supposedly seeking to "achieve [their] highest and best use in the marketplace."  *See* Aug. 18, 2022 Hr'g Tr. at 5.  Plaintiffs pressed for an aggressive schedule, emphasizing that it was "particularly important that [the case] be tried on an

expedited or on a reasonably rapid pace" because "from the players' perspective, it really matters." *Id*.  When Plaintiffs' counsel made those comments, the Plaintiffs were eleven players.  Only three players remain, and LIV has emerged as a Plaintiff.  Discovery has shown that the players are not in fact the central participants in this lawsuit, and never were.  In fact, the former lead plaintiff in this suit stated just this week that he would be "totally at peace" with the prospect of "never [] play[ing] another PGA Tour event." *See* Bob Harig, *Exclusive: Phil Mickelson on LIV Golf's Second Year, His Uncertain Ryder Cup Future and the Upcoming Majors* (Jan. 30, 2023), https://www.si.com/golf/news/exclusive-phil-mickelson-liv-golfs-second-year-uncertain-ryder-cup-future-upcoming-majors.  Nothing has stopped them from playing golf, and they have accepted exorbitant sums of PIF's money to play for LIV.  The players that featured so prominently at the outset of this case were stalking horses for the true interested parties: LIV and its controllers at PIF.  LIV itself is doing just fine, having recently announced a 14-event schedule and a new broadcast partnership.  *See* Bob Harig, *LIV Golf Announces 2023 Schedule, Greg Norman to Take Elevated Role on Executive Team*, Sports Illustrated (Jan. 23, 2023), https://www.si.com/golf/news/liv-golf-2023-schedule-greg-norman-elevated-role.  Put simply, this is a commercial dispute between two competing golf leagues.  There is no emergency and no need to press forward with an untenable case schedule, particularly when LIV's owners and controllers at PIF are refusing to comply with their discovery obligations.

* * * *

When Plaintiffs asked the Court to fast track this case on an expedited trial schedule, they promised that discovery from PIF would "come together swimmingly."  Aug. 18, 2022 Hr'g Tr. at 14.  Unfortunately, that has proven false.  Instead, all but three players have dropped out of the case, LIV has entered, and its overlords at PIF have refused to produce a single page of discovery.  As a result, more than five months later, the TOUR is no closer to receiving PIF's documents or deposing PIF's witnesses.  The prospect of protracted appellate proceedings on discovery from PIF and Mr. Al-Rumayyan will impose significant additional delay.  In the meantime, PIF and Mr. Al-Rumayyan should be added as parties to this case.  Moreover, LIV and its players' document productions remain seriously deficient, and the parties have not even begun taking

depositions.  These challenges make the current trial date and discovery schedule impossible to maintain.  Accordingly, the TOUR proposes that the Court: (1) continue the current fact and expert discovery deadlines by six months; (2) vacate the remaining dates for summary judgment, pretrial filings, and trial; and (3) set a future case management conference in approximately four months to assess the status of discovery and consider the case schedule.

## II.    PLAINTIFFS' POSITION

With the ink barely dry on the on the Tour's last schedule extension request—a schedule set by the Court less than a month ago, ECF 204—the Tour returns with another attempt to blow it up and move the trial date set by this Court.  Its strategy was transparent from the start:  put up every conceivable roadblock to timely resolution; pursue discovery that knows no bounds; and seek any means possible to postpone facing trial on Plaintiffs' claims.  All the while, the Tour continues to harm both LIV and the Player Plaintiffs.  The Tour has made clear that its conduct will not abate until it is enjoined.  Indeed, the Tour recently passed a new and even more onerous regulation intended to prevent any golfer anywhere—including Tour members and non-members alike—from playing in LIV Golf events.  So while the Tour expands its anticompetitive conduct, it asks this Court for extension after extension to shield itself from trial as long as possible.

Now, the Tour asks the Court to postpone reckoning for an additional golf season beyond 2023.  The harm to the Player Plaintiffs and LIV from additional delay would be immeasurable— some of the Player Plaintiffs will likely be unable to pursue their profession at all beyond 2023 if the Tour's conduct is not enjoined.  The Tour's effort to brush aside the ongoing harm to the Player Plaintiffs and LIV reflects the arrogance and perceived impunity that prompted the Tour to engage in its brazen and ongoing anticompetitive scheme in the first place.

The Tour's excuses for its latest bid to postpone trial do not justify modifying a schedule set less than a month ago.  The Tour argues that its efforts to take discovery from the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and Yasir Othman Al-Rumayyan justify a revision of the case schedule.  But as the investors in a plaintiff, their conduct is peripheral to the case, and the Tour has advanced no reasonable argument that the discovery it seeks is relevant to whether the Tour's conduct and policies violate the antitrust laws.  Rather, the Tour seeks the

1 discovery to buttress its legally irrelevant efforts to shift focus from the Tour's anticompetitive

2 conduct to the jury's opinion of Saudi Arabia and its tortious interference counterclaim, which it

3 seeks to make the tail wagging the dog.  Whatever the merit of that tactic, it certainly provides no

4 basis to delay trial on the Tour's ongoing anticompetitive conduct that is inflicting present, serious

5 harm on the Plaintiffs.

6       The Tour now, for the first time, makes the extraordinary claim that LIV is only the

7 "instrumentality" or "shell" of PIF and that PIF and Mr. Al-Rummayan "exercise near absolute

8 authority over LIV."   It makes these assertions without marshalling any supporting evidence,

9 despite obtaining hundreds of thousands of pages of discovery from LIV.  In the briefing over the

10 Tour's efforts to overcome the sovereign immunity of PIF and Mr. Al-Rumayyan, which focused

11 largely on the relationship between PIF and LIV, the Tour never once argued that LIV and PIF

12 were alter egos or otherwise attempted to pierce the (multiple) layers of corporate separateness

13 between LIV and PIF.  The Tour's increasingly hyperbolic claims about PIF's supposed "control

14 over every competitive and strategic decision LIV makes" rest on little more than an elementary

15 misunderstanding of LIV's shareholder agreement.

16       In any event, the Tour's ultimate claim about the relevance of the discovery against PIF and

17 Mr. al-Rumayyan—that LIV's investors "have had and will continue to have a significant role in

18 defining the contours of competition" through LIV—is entirely misplaced.  This case is not about

19 LIV's competitive strategy, but about the Tour's methods of excluding competition.  Discovery

20 against LIV's investors is certainly not (in the Tour's words) "essential to resolving the antitrust

21 claims."  The Tour's anticompetitive methods are inflicting ongoing harm on *LIV* and the *Player*

22 *Plaintiffs*, who need prompt relief.  That relief should not be withheld because LIV's investors, PIF

23 and Mr. Al-Rumayyan, chose to assert good-faith jurisdictional and sovereign immunity defenses.

24       Even if, as the Tour contends, the motions as to PIF and Mr. Al-Rumayyan will be appealed,

25 that does not counsel for delaying the case schedule.  Instead, if resolution of the counterclaims

26 should be delayed pending appeals (which appeal rights PIF and Mr. Al-Rumayyan would have if

27 their immunity claims were denied), the appropriate outcome is to bifurcate those counterclaims

28 and address them on a different schedule, not to permit the Tour to use them to insulate the Tour's

anticompetitive conduct indefinitely.  Indeed, bifurcation is warranted.  If the Tour's attempt to amend the counterclaim is permitted, under the FSIA, the claim as to PIF cannot be tried to a jury. *See, e.g., Universal Consol. Companies, Inc. v. Bank of China*, 35 F.3d 243, 245 (6th Cir. 1994) (joining "all federal appellate courts which have considered the issue" to hold "that jury trials are not available in suits brought under the Act"); *Koirala v. Thai Airways Int'l, Ltd.*, 126 F.3d 1205, 1208 (9th Cir. 1997) (recognizing that a case under the FSIA must be tried "without a jury").  In addition, because the Tour's counterclaim is based on litigation conduct, under blackletter California law, the Tour's counterclaim *cannot* proceed until the Plaintiffs' antitrust claims are resolved.  *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1137 (1990) (holding that tortious interference claim based on litigation conduct requires claimant prove "litigation was brought without probable cause and that the litigation concluded in [claimant's] favor").

Finally, the other discovery issues the Tour identifies come nowhere close to justifying a revision to the case schedule.  The Tour's issues are either better raised with the Magistrate Judge (e.g., potential disagreements about the scope of top-off productions) or are transparently not a basis to extend the schedule (e.g., complaints that third parties have represented that they will produce documents *before* the document production deadlines).

The case schedule works.  And it is important to maintain the trial date to bring the Tour's ongoing conduct to judgment.  The Tour should stop wasting time and get to work.

## A. The Current Case Schedule is Reasonable and Necessary; Resolution of Player Plaintiffs' and LIV's Respective Claims Should Not Be Delayed

The case schedule entered less than a month ago remains not only workable, but critical to the careers of the Player Plaintiffs and the viability of LIV as a legitimate competitor to the Tour. The Court has already extended the trial date once to accommodate the Tour's concerns.  *See* Aug. 18, 2022 Hr'g Tr. at 15:15-16:21 (moving the trial date from August 2023 to January 2024). Critically, however, this trial date still provides Plaintiffs with an opportunity for relief before another golf season (the 2024 season) is impacted by the Tour's conduct.  Since then, the Tour has thrown up every possible obstacle and dragged its feet at every turn to justify delay, including by refusing to respond to Plaintiffs' reasonable and tailored discovery responses, ECF 125, failing to meet its substantial completion deadline, ECF 180-2 at 20–21, and resisting a targeted request for

additional responsive documents from custodians central to the dispute, ECF 216, 232.  The ink is hardly dry on the Court's January 5, 2023 Order modifying the case schedule—a modification that came at the Tour's behest—yet the Tour is already trying to extend the case schedule again.  ECF 204.  Under that Order, the document production deadline is still two months away, and the fact witness deposition deadline is still four months away.  The Tour's goal is clear:  It seeks to delay a merits adjudication as long as possible in the hopes that it can drive LIV out of the market and thereby avoid scrutiny of its illegal behavior.  This Court should not countenance such a brazen effort to circumvent the antitrust laws.

The Tour's claim that this is just "a commercial dispute between two competing golf leagues" that can be fairly adjudicated at some point in the distant future is contradicted by the Tour's marketplace conduct.  The Tour has continued its anticompetitive conduct unabated.  Its bans of the Player Plaintiffs—and all other LIV golfers—remain in place.  These unlawful bans are at the heart of Plaintiffs' claims for injunctive relief.  In fact, since the filing of this suit, the player bans have grown in scope and consequence.  Remarkably, the Tour has recently adopted regulations that extend two-year bans to *non-members* who participate in even a single LIV event.  Under the Tour's new regulations, any non-member—such as a college or foreign player—who participates in a LIV event in 2023 will be banned from the PGA Tour until January *2026* at the earliest.  And the Tour has now entered into unlawful parallel agreements with several other tours around the world to exclude LIV.  The Tour is exploiting litigation delay to choke off air to LIV and players.

Moreover, while the Tour pretends that the Player Plaintiffs are no longer in the case, the Player Plaintiffs not only remain in the case but face critical need to promptly resolve their claims at trial, as they continue to face irreparable harm as a consequence of the Tour's ongoing anticompetitive conduct.  For example, the Plaintiff Players are still suspended from participation in PGA Tour-affiliated tournaments (as well as other tours that have joined the Tour's group boycott), with no indication that the Tour's lifetime ban will be lifted, and they continue to be denied the opportunity to play in Tour events in which they earned the right to play as members or otherwise.  ECF 83 at ¶¶ 226-33, 238-41.  Furthermore, some of the Player Plaintiffs are not under contract with LIV beyond the 2023 season, and if the bans from the Tour and its co-conspirators

1   remain in effect beyond the currently scheduled trial date in early 2024, they may be unable to

2   pursue their professions at all.  Commissioner Monahan's ban removing Mr. Jones's rights at any

3   Tour-owned or managed courses, including Mr. Jones's former practice course of TPC Scottsdale,

4   is also still in effect.  ECF 2 at 10.  Because of the conspiracy among the Tour, the DP World Tour,

5   and others, LIV golfers further remain unable to obtain points from the Official World Golf

6   Ranking ("OWGR"), which prevents many LIV players from being eligible to compete in the

7   majors and to qualify to compete in other premier tournaments.  *See, e.g.*, ECF 83 ¶¶ 40-41, 93-96.

8   The Tour's intimidation campaign that pressured sponsors to drop players who play with LIV Golf,

9   its threats to blacklist player agencies whose golfers played with LIV Golf, and its other

10  anticompetitive conduct also continue unabated.  ECF 83 ¶¶ 196-99.

11          The Tour's anticompetitive conduct also continues to harm LIV Golf and threaten its very

12  existence.  LIV is a nascent competitor, and it remains unable to sign many of the top players in the

13  world who are unwilling to risk a lifetime ban from the Tour.  The Tour's ongoing conduct has a

14  severe and continuing impact on LIV, which prevents LIV from coming to market with the quality

15  of product and playing field that it would in the absence of the Tour's anticompetitive conduct.

16  LIV is preparing to launch its 2023 season, but if its product is further impaired into the 2024 season

17  and beyond, the damage to this new entrant's ability to compete would be severe and irreparable.

18  The Tour knows this, of course, because its commercial strategy centers around criticizing LIV

19  events as (in the words of the Tour's Commissioner) "a series of exhibition matches against the

20  same players over and over again."  It is the Tour's anticompetitive conduct that limits LIV's ability

21  to recruit additional top players.  Given that the Tour is demonstrably exploiting the delay in the

22  adjudication of LIV's antitrust claims to maintain dominance in the marketplace, the Court should

23  not credit the Tour's self-serving claim that delay will have no practical consequence.

24          The Plaintiff Players have only a finite time to capitalize on the success of their careers, and

25  absent relief, LIV has only a finite period in which it will remain a viable entrant.  Forcing the

26  players to wait in purgatory for additional years to obtain a ruling on their claims—while the Tour's

27  satellite counterclaim and sideshow discovery requests are resolved—would only further punish

28  them for asserting their legal rights under the antitrust laws.  Plaintiffs need relief soon and certainly

1   no later than the current January 2024 trial setting.

2   **B.   Plaintiffs' Day in Court Should Not Be Delayed Over the Tour's Discovery Dispute with PIF and Mr. Al-Rumayyan**

3       The Tour's misguided effort to delay the trial schedule based on its efforts to take discovery

4   from non-parties PIF, a sovereign entity, and Mr. Al-Rumayyan, a minister level public official,

5   should be rejected.  The Tour was aware of these issues when it agreed to the present case schedule

6   less than a month ago.  That third-party discovery was not a basis to continue the trial date less than

7   a month ago, and it is not a basis to do so now.

8       Even assuming the Tour's baseless assertions regarding PIF's reasons for investing are

9   correct (they are not), the Tour badly overstates PIF and Mr. Al-Rumayyan's relevance to the case.[2]

10  At heart, this is an antitrust suit challenging the Tour's attempted monopolization and conspiracy

11  in certain golf markets.  LIV is a plaintiff in that case—a nascent competitor.  On these facts, LIV's

12  reasons for competing are not relevant to any claim or defense—let alone "essential," as the Tour

13  claims—because the Sherman Act *presupposes* that competition is good.  *See Nat'l Soc. of Prof.*

14  *Eng'rs v. U.S.*, 435 U.S. 679, 695 (1978) ("The Sherman Act reflects a legislative judgment that

15  ultimately competition will produce not only lower prices, but also better goods and services.").

16  That statutory policy "precludes inquiry into the question whether competition is good or bad." *Id.*

17  LIV's reasons for competing—and PIF's and Mr. Al-Rumayyan's reasons for investing in LIV—

18  are therefore not relevant.   Indeed, despite its sweeping claims about the importance of the

19  discovery that it seeks from those parties, the Tour has yet to articulate a single plausible legal basis

20  for its requests under the antitrust laws.  It thus appears that the Tour's sole purpose is to invite

21  inquiry into LIV's competitive conduct and shift focus from the Tour's ***anti***competitive conduct.

22  The Tour should not be permitted to create a distraction by stirring up prejudice against LIV's

23  foreign investors, much less to delay the trial over it.

24  _____

25  [2] It is incorrect for the Tour to claim it has *no* discovery from either PIF or Mr. Al-Rumayyan.  For

26  example, LIV Golf has produced nearly 2,000 documents of PIF's materials from LIV Golf's files.

27  In addition, the Tour has a rich supply of its materials, which document the Tour's reconnaissance

28  into, among other things, PIF and Mr. Al-Rumayyan since 2020.

Tellingly, the Tour now claims—without evidence—that LIV is an "instrumentality" or "shell" of PIF that has "absolute authority" over it.  Although the relationship between PIF and LIV was a focus of the briefing before the Magistrate, the Tour never argued that before Magistrate Judge van Keulen.  In the subpoena motions, the Tour did not claim that PIF and LIV were anything but separate corporate entities.  Regardless, the details of PIF's alleged "control" over LIV are fully briefed and before Magistrate Judge van Keulen, while the Tour asserts only generalities here.

More importantly, LIV and the Player Plaintiffs should not be penalized because LIV's investors—who have little-to-no relevance to this action—asserted legitimate and good faith sovereign immunity and jurisdictional defenses.  LIV and the Player Plaintiffs need relief from the Court; "justice delayed is justice denied" in this instance.  *See Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021) (permitting months-long "collateral litigation" to delay a case conflicts with "the basic principles of our legal system").  Plaintiffs' relief should not be denied merely because PIF and Mr. Al-Rumayyan asserted defenses they had a right to invoke and had never waived.

## C.     The Trial Schedule Should Not be Delayed Over the Tour's Belated and Meritless Counterclaim and Eleventh-Hour Motion for Leave to Amend

The Tour's belated motion for leave to amend its counterclaim to add PIF and Mr. Al-Rumayyan is a transparent attempt to disrupt the trial schedule.  That is obvious not only from the Tour's extreme, inexplicable delay in filing the motion but also from the substance of the proposed amendment, which is both jurisdictionally barred and clearly foreclosed by blackletter California law.  The Tour could have named PIF and Mr. Al-Rumayyan as counterclaim-defendants at the outset of the litigation, but instead chose to spring the amendment on the Court and Plaintiffs in late January to as a pretext to postpone trial with the goal of driving LIV from the marketplace before Plaintiffs' claims are ever adjudicated.  At most, the amendment may justify bifurcating the counterclaim from Plaintiffs' claims, not imposing still further delay in the antitrust litigation.

***First***, the Tour's principal justification for adding new counterclaim defendants four months after the operative counterclaim was filed—that it only recently became aware of the relationships among LIV Golf, PIF and Mr. Al-Rumayyan—is simply wrong.  To the contrary, it is contradicted by the Tour's own documents and legal arguments.  The Tour has in fact been aware of Mr. Al-

Case 5:22-cv-04486-BLF   Document 255   Filed 02/05/23   Page 19 of 28

Rumayyan and PIF's relationship with LIV since well before this lawsuit's inception.  Indeed, the Tour invoked that relationship months ago to justify its efforts to overcome the ordinary jurisdictional barriers to subpoenaing foreign state agencies and officials.

In reality, the Tour's understanding of the relationship has always been central to its strategy to undermine LIV Golf's entry into the market.  The Tour has known about Mr. Al-Rumayyan and PIF's involvement in supporting a new golf tour since as early as January 2020.  *See* PGA_TOUR0052965.  Text messages between the Tour's Chief Marketing Officer, Ty Votaw, and Commissioner Monahan from that time period confirm the Tour's awareness that PIF was allegedly ████████████████████████████████████████ and that its Governor, Mr. Al-Rumayyan, also chairs the Saudi Golf Federation.  *Id.* at PGA_TOUR0052966; *see also* PGA_TOUR0050987, 989–90 (Guy Kinnings confirming to ██████████████████████████████████████████████ ██████████).

Heads of other golfing bodies have similarly fed the Tour information regarding PIF and Mr. Al-Rumayyan.  For example, in July of 2021, Keith Pelley (CEO of the European Tour) and Martin Slumbers (CEO of the R&A) met with Mr. Al-Rumayyan and Majed Al Sorour to discuss Mr. Al Rumayyan's vision of PIF ██████████████████████████████████████████████ ████████████████████████████████████████████████ PGA_TOUR0009965–66. Messrs. Pelley and Slumbers then relayed to Commissioner Monahan the high points from their meetings with Mr. Al-Rumayyan.

Similarly, in June 2022, Allison Keller of the Tour wrote to Mr. Monahan about a conversation she had with Dan Wald of the Boston Consulting Group.  Mr. Wald shared with Ms. Keller his insights regarding PIF's investment strategy in a new tour:

█ █████████████████████████████████████████████████
   ███████████████████████████████████████
█ ████████████████████████████████████████████████
█ ███████████████████████████████████

PGA_TOUR0030873–74 (emphasis added).  Aware of these facts, the Tour issued its subpoena for PIF and Mr. Al-Rumayyan on September 22, 2022, almost immediately after the litigation began.

19

JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE
Case No. 5:22-CV-04486-BLF
2042131

In the ensuing dispute over those subpoenas, the Tour raised every document it now relies on for its proposed amendment to the counterclaim.  For example, the Tour alleges that PIF and Mr. Al-Rumayyan control LIV, approve and negotiate player contracts, authorized this lawsuit, and approve details like logos, while Greg Norman is only a "nominal" CEO.  ECF 238-2 ¶ 3.  The Tour made precisely these arguments to Judge van Keulen, based on the same documents.  *See* ECF 255 at 1:23-2:3; ECF 169 at 8:22-28, 13:21-14:4.  And while the Tour claims that the Shareholder Agreement was "recently-produced evidence," the Tour's own (incorrect) description of that document shows that it's more of the same:  The Tour claims it shows PIF "consents" to certain LIV's activities, not that it performs or directs them—and in any event the relevant provisions require only the consent of a minority of PIF-appointed LIV directors, not PIF itself.  The (non)impact of this document is briefed and pending before Magistrate Judge van Keulen.  *See* ECF 225, 230.[3]

As this timeline makes clear, the information the Tour possessed virtually all of the information that it cites to support its amendment long before this litigation was initiated, and certainly no later than when it filed its operative counterclaim on September 28, 2022.  There is no legitimate basis for the Tour to have waited until late January to file its amendment and then to use the amendment to seek to a lengthy postponement of the trial.

***Second***, the Tour's counterclaim is facially deficient as a matter of law and therefore provides no basis to continue to postpone a merits adjudication of the Tour's anticompetitive conduct.  The Tour claims that LIV interfered with its contracts by offering its at-will golfers more

---

[3]  In addition, the Tour mischaracterizes the record in arguing that the Shareholder Agreement was improperly withheld from production.  As is already established in the record, that agreement was subject to an ordinary privilege review workstream due its terms, and when the Tour asked about the agreement LIV promptly produced it in its next production and identified it by Bates number to the Tour.  ECF 229-1 at ¶ 8.  The Tour knows all of these facts.  It is therefore not well taken for the Tour now to misrepresent them to the Court to support its baseless effort to undermine the case schedule.

2042131

money and encouraging them to mount a legal challenge to the Tour's anticompetitive provisions. Both of these are protected conduct:   one is legitimate competition, and the other is First Amendment protected conduct that the California Supreme Court has held cannot form the basis of a tortious-interference claim, at least in the absence of the Tour first prevailing against the Plaintiffs' antitrust suit.  *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1137.  On these facts, there is no "independently wrongful act" to establish interference with golfers' at-will contracts with the Tour. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020).  The counterclaim therefore could not survive a motion to dismiss.

Despite the legal inadequacy of the counterclaim, Plaintiffs did not move to dismiss the claim at the outset in  light of the Court's statement at the September 15, 2022 case management conference that motions to dismiss may not be heard in time to efficiently resolve the dispute.  *See* Sept. 15, 2022 Hr'g Tr. at 7:1-15.  But the Tour has now used the counterclaim as a procedural cudgel to drag LIV's investors into the case and seek to delay the trial schedule indefinitely.  In light of the changed circumstances, Plaintiffs intend to file a motion for judgment on the pleadings to demonstrate the facial deficiency of the Tour's counterclaim.  Plaintiffs respectfully contend that delay in the antitrust litigation is not warranted.

***Third***, especially in light of the Tour's admission that there is no urgency to resolve its counterclaim (in contrast to Plaintiffs' consistently expressed view that resolution of the antitrust claims is urgent), if the Court determines either that the Tour should be permitted to add PIF and Mr. Al-Rumayyan to the counterclaim or that discovery from PIF and Mr. Al-Rumayyan is permitted and necessary for the Tour's counterclaim, it would be appropriate to bifurcate the counterclaim and put it on a separate trial schedule.  Bifurcation would be appropriate for multiple reasons.  First, the tortious interference counterclaim arises from different conduct.  Whereas the antitrust claims focus on the Tour's conduct, to prove its counterclaims the Tour must prove independently wrongful conduct to support a claim for tortious interference: "Where no unlawful methods are used," merely offering "more pay or better terms to another's employee" is not illegal for the contracts here.  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151 (2004).  In similar circumstances, courts have found it proper to separate the counterclaim until after resolution of the primary claim.

*See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985), *superseded by statute as stated in Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013) (finding that bifurcation "served judicial efficiency" because "trial of the complaint issues would [not] needlessly have been delayed for a substantial period" by the counterclaims).  Second, because the counterclaim asserts that LIV's litigation-related conduct is a basis for tortious interference, bifurcation is appropriate because, under California law, the counterclaim cannot proceed unless and until, at minimum, the Tour prevails in the antitrust suit.  *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1137.  Indeed, if LIV prevails on its antitrust claim, that would be dispositive of the tortious interference counterclaim.  And third, bifurcation of claims against PIF and Mr. Al-Rumayyan (should the Tour should be permitted leave to amend) is appropriate because the claim against PIF cannot be tried to a jury under the FSIA. *See Universal Consol.*, 35 F.3d at 245.

For present purposes, the point is that none of the Tour's ploys directed at PIF and Mr. Al-Rumayyan justifies postponing the trial date for LIV's and the Player Plaintiffs' antitrust claims against the Tour.[4]

### D.    The Trial Schedule Should Not Be Adjusted for the Tour's Miscellaneous Mischaracterized Discovery Concerns

The Tour's purported litany of discovery issues is not a basis to upend the schedule set less than a month ago or push out discovery deadlines that are months away.  In reality, these disputes either are still being addressed in the meet-and-confer process, relate to non-party productions that are not untimely, or have been overstated.  The Tour has not even raised these issues to the Magistrate for resolution as discovery disputes.  Certainly, none of these "issues" is a justifiable basis for postponing the trial set for January 2024.

***First***, the Tour's argument about a production "top-off" is not ripe for Court resolution (even as a discovery dispute), but LIV Golf has never "refuse[d] to supplement its production." Indeed, it was LIV Golf that sought a document refresh of specific targeted post-litigation events and the Tour that initially refused that request.  As of the date the case schedule was set less than a

---

[4]  If the Court grants the motion to amend, it can address an appropriate schedule and bifurcation of those counterclaims at that point.

2042131

month ago, the Tour's position was that it "will not . . . collect additional documents … beyond August 31, 2022 collection cutoff."  Dec. 9, 2022 A. Dreyer Letter.  Immediately after the case schedule was set, however, the Tour took a diametrically opposing position, now arguing that the parties should have to re-do virtually the entirety of their document review and production, with a full refresh for over 100 requests for production for an additional five month period from September 1, 2022 to January 31, 2023 across all custodian emails and non-custodial files.  The Tour offered no explanation for its about-face, but now it is clear that the Tour sees a document production do-over running through January 2023 as a basis to blow up the case schedule.  In any event, the parties continue to confer over this "top-off" issue.  And if they are unable to reach a resolution, the proper approach is to raise any dispute to the Magistrate Judge, not circumvent the appropriate dispute resolution process through a motion to the Court to upend the entire case schedule.

**Second**, there is nothing in the process or pace of document production from either the Player Plaintiffs or the non-parties from whom the Tour seeks documents that justifies any change in the case schedule.  Player Plaintiffs and non-party players have worked diligently to collect, review, and produce their documents, which has already resulted in substantial productions and which will result in complete productions well before the document production deadline.  There is nothing in the Tour's submission that requires any extension of any deadline in the schedule.  For example, the non-party players collected custodial materials from their sports agents immediately after Magistrate Judge van Keulen issued her order.   That collection has included several complicated international collections.  Player Plaintiffs have collected and produced from their agents.  Non-party players also have collected and produced from their agents.  And, productions from agents will continue on a rolling basis, and will be complete well before the document production deadline.

**Third**, the Tour's complaints regarding non-party player productions are equally unfounded.  With respect to Mr. Mickelson, he has produced responsive, non-privileged materials, and his counsel is working diligently to collect, search, and produce additional documents from Mr. Mickelson's agent.  As Mr. Mickelson's counsel already explained to the Tour, he has produced the responsive documents in his files, including even marginally relevant communications that were

responsive to the Tour's overbroad discovery requests, and even agreed to produce additional documents that were not responsive to the Tour's discovery requests.  Counsel for Mr. Mickelson further represented to the Tour that there will be one further production of documents that will be completed on or about February 10, 2023.  If the Tour has any genuine problems with this third-party production, the appropriate avenue for its concerns is through the Magistrate—not a motion to upend the entire case schedule.

Regarding third-parties Ancer, Kokrak, Ortiz, and Perez, the Tour is well aware that those productions are in process.  All four have already produced documents, and as counsel informed the Tour weeks ago, they are producing documents on a rolling expedited basis and will aim to substantially complete production by the end of February—well before the **party** production deadline.  It is thus disingenuous for the Tour now to raise these non-party productions as a purported basis to blow up the case schedule.  But if the Tour had any genuine concerns about these third-parties' productions, it should have raised the issue with the Magistrate.

Plainly, the Tour's complaints about third party production status—two months before the close of party written discovery and four months before the close of fact discovery, having already received assurances of rolling production and timely completion, and without having raised any issues to the Magistrate—is absolutely not a basis to extend the trial schedule.  The Court should reject the Tour's attempt to manufacture delay and to use non-party productions that are on pace to be completed before the document-discovery cut-off as a basis to upend the case schedule and delay trial.

1  DATED:  February 5, 2023              KEKER, VAN NEST & PETERS LLP
2                                        By:      /s/ Elliot R. Peters

3
4                                        ELLIOT R. PETERS, SBN 158708
                                           epeters@keker.com
5                                        DAVID SILBERT, SBN 173128
                                           dsilbert@keker.com
6                                        R. ADAM LAURIDSEN, SBN 243780
                                           alauridsen@keker.com
7                                        NICHOLAS S. GOLDBERG, SBN 273614
                                           ngoldberg@keker.com
8                                        SOPHIE HOOD, SBN 295881
                                           shood@keker.com
9                                        KEKER, VAN NEST & PETERS LLP
10                                       633 Battery Street
                                         San Francisco, CA 94111-1809
11                                       Telephone:    (415) 391-5400
                                         Facsimile:    (415) 397-7188
12
13                                       ANTHONY J. DREYER, admitted *pro hac vice*
                                           anthony.dreyer@skadden.com
14                                       KAREN M. LENT, admitted *pro hac vice*
                                           karen.lent@skadden.com
15                                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM
16                                       LLP
                                         One Manhattan West
17                                       New York, Ny 10001
                                         Telephone:    (212) 735-3000
18                                       Facsimile:    (212) 735-2000/1
19
                                         PATRICK FITZGERALD, admitted *pro hac vice*
20                                         patrick.fitzgerald@skadden.com
                                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM
21                                       LLP
                                         155 North Wacker Drive
22                                       Chicago, Il 60606
                                         Telephone: 312 407 0700
23                                       Facsimile: 312 407 0411
24
                                         *Attorneys for Defendant and Counterclaimant*
25                                       *PGA Tour, Inc.*
26
27
28

1 | Dated:  February 5, 2023                        Respectfully submitted,

2 |                                                 By:        /s/ Dominic Surprenant
3 |                                                 RACHEL S. BRASS, SBN 219301
   |                                                    rbrass@gibsondunn.com
4 |                                                 LAUREN D. DANSEY, SBN 311886
   |                                                    ldansey@gibsondunn.com
5 |                                                 GIBSON, DUNN & CRUTCHER LLP
   |                                                 555 Mission Street, Suite 3000
6 |                                                 San Francisco, California 94105-0921
   |                                                 Telephone:  415.393.8200
7 |                                                 Facsimile:   415.393.8306

8 |                                                 ROBERT C. WALTERS, *pro hac vice*
   |                                                    rwalters@gibsondunn.com
9 |                                                 SCOTT K. HVIDT, *pro hac vice*
   |                                                    shvidt@gibsondunn.com
10 |                                                GIBSON, DUNN & CRUTCHER LLP
   |                                                2001 Ross Avenue, Suite 2100
11 |                                                Dallas, Texas 75201-2911
   |                                                Telephone:  214.698.3100

12 |                                                JOSHUA LIPTON, *pro hac vice*
   |                                                   jlipton@gibsondunn.com
13 |                                                KRISTEN C. LIMARZI, *pro hac vice*
   |                                                   klimarzi@gibsondunn.com
14 |                                                GIBSON, DUNN & CRUTCHER LLP
   |                                                1050 Connecticut Avenue, N.W.
15 |                                                Washington, DC  20036-5306
   |                                                Telephone:  202.955.8500
16 |

17 |                                                JOHN B. QUINN, SBN 90378
   |                                                   johnquinn@quinnemanuel.com
18 |                                                DOMINIC SURPRENANT, SBN 165861
   |                                                   dominicsurprenant@quinnemmanuel.com
19 |                                                KEVIN TERUYA, SBN 235916
   |                                                   kevinteruya@quinnemanuel.com
20 |                                                QUINN EMANUEL URQUHART & SULLIVAN LLP
21 |                                                865 South Figueroa Street, 10th Floor
   |                                                Los Angeles, California 90017
22 |                                                Telephone: 213.443.3000

23 |

24 |

25 |

26 |

27 |

28 |

JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE
Case No. 5:22-CV-04486-BLF
2042131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:    650.801.5100

*Attorneys for Plaintiffs Matt Jones, Bryson
DeChambeau, Peter Uihlein, and Plaintiff and
Counterclaim Defendant LIV Golf Inc.*

JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE
Case No. 5:22-CV-04486-BLF

2042131

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

2      Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that

3  concurrence in the filing of the document has been obtained from each of the other signatories to

4  this document.

5

6  DATED:  February 5, 2023                KEKER, VAN NEST & PETERS LLP

7
                                       By:      _/s/ Elliot R. Peters_
8                                               Elliot R. Peters

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE
Case No. 5:22-CV-04486-BLF

2042131