QUINN EMANUEL URQUHART & SULLIVAN LLP
JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:  650.801.5100

RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
 Facsimile: 415.393.8306

ROBERT C. WALTERS, *pro hac vice*
rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
 Telephone: 214.698.3100

*Attorneys for Plaintiffs LIV Golf, Inc., Matt Jones, Bryson DeChambeau, and Peter Uihlein*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., <br><br> Counter-Defendant. | CASE NO. 5:22-cv-04486-BLF <br><br> **LIV GOLF, INC.'S OPPOSITION TO PGA TOUR, INC.'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM TO ADD COUNTER-DEFENDANTS** <br><br> Judge:     Hon. Beth Labson Freeman <br><br> Date Filed:  August 3, 2022 <br><br> Trial Date:  January 8, 2024 |

Plaintiff LIV Golf, Inc. ("LIV") and the individual plaintiffs ("Player Plaintiffs") respectfully submit this opposition to the PGA Tour, Inc. (the "Tour")'s motion for leave to amend the counterclaim to add the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and His Excellency Yasir Al-Rumayyan ("HE").[1]  Dkt. No. 238.

## PRELIMINARY STATEMENT

The Tour's motion to amend should be denied because the amendment would be futile, would cause unfair prejudice, was unduly delayed, and is obviously intended to inappropriately delay the case and resolution of Plaintiffs' antitrust claims.

***Futility***.  The Tour bases its counterclaim on the wrong legal standard.  The Tour assumes that the standard for tortious interference with ***contract*** controls.  It does not.  The relevant standard is for interference with an ***at-will*** contract, because the Tour's contracts with players are indisputably at-will as to the players, who may resign from the Tour at any time.  Under black letter California law, for at-will contracts, the plaintiff has to identify not just conduct inducing breach, but "independently wrongful conduct."  *See Ixchel Pharma LLC v. Biogen*, 9 Cal. 5th 1130, 1137 (2020).  The Tour has not tried to identify any "independently wrongful conduct."  There is none.  The Tour's motion fails as based on the wrong standard.

The Tour's counterclaim also targets First Amendment protected conduct.  The California Supreme Court has held that inducing meritorious litigation cannot constitute tortious interference. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1137 (1990) ("*PG&E*").  The Tour alleges that the purported interference was done "to encourage this lawsuit" and "explicitly anticipated" litigation.  *See* Dkt. No. 238-2 ¶¶ 2, 44.  Because the Tour expressly bases its claim on First Amendment protected conduct, its proposed amendment is futile for this reason as well.

***Unfair prejudice.***  LIV and the Player Plaintiffs would be severely prejudiced by a delay of the trial that would occur if the Tour's meritless amended counterclaim is allowed.  LIV is suffering

---

[1] This response is filed on behalf of LIV; while the Tour makes various arguments directed to PIF and HE (*see, e.g.*, Mem. at 7), these parties are not before the Court on this Motion.

every day from the Tour's ongoing anticompetitive conduct. If the trial is put off on the basis of its futile counterclaim, LIV will continue to suffer harms that money damages cannot cure. The Player Plaintiffs' livelihood would also be endangered. Plaintiffs Matt Jones and Peter Uihlein are not under contract with LIV past 2023, and the Tour has banned them. Their careers are at risk.

*Undue delay.* The Tour argues that it has not unduly delayed bringing its proposed amendment because the case is in "the early stages of litigation." Not true. Document discovery is substantially complete. Written and document discovery closes in two months (March 30, 2023), fact deposition discovery in less than four months (May 26, 2023), and expert discovery in less than six (July 12, 2023). The trial is only eleven months off. Beyond that, the Tour's argument that it has not unduly delayed is inconsistent with its emphatic assertions that it raised within days of the complaint being filed back in **August 2022** that PIF's and HE's conduct was critical to the case.

*Improper motive.* The Tour's motion is a transparent attempt to delay the trial schedule. The Tour has claimed that PIF and HE control LIV from the very beginning of the litigation but did not seek to add them until now. The Tour knows that both of the proposed new parties are subject to sovereign immunity and jurisdictional defenses that cannot be quickly resolved. As the recent CMC statement makes clear, the Tour intends to use issues related to its purported counterclaim to delay trial on Plaintiffs' antitrust claims indefinitely. That is the tail wagging the dog. The improper tactics warrant denial.

### BACKGROUND

**A.    Procedural History**

The complaint in this antitrust action was filed on August 3, 2022. Dkt. No. 1. LIV joined the lawsuit as plaintiff on August 26, 2022. Dkt. No. 83. The Tour filed its answer and counterclaim for tortious interference against LIV on September 28, 2022. Dkt. No. 108.

Six days before filing its counterclaim, the Tour served subpoenas on PIF and HE seeking discovery. Dkt. No. 166-1 ¶ 4. In a motion to compel compliance with those subpoenas, filed one month later, the Tour claimed that "PIF created, funded, and owns LIV" and "had effective control over LIV from its inception." *Id.* ¶ 9; Dkt. No. 142-1 at 1. It further argued that HE "is 'the boss' of LIV." Dkt. No. 142-1 at 1. The motion to compel was transferred to this District on November

4, 2022. Dkt. No. 142. PIF and HE filed an opposition and a motion to quash asserting, *inter alia*, sovereign immunity and lack of personal jurisdiction. Dkt. No. 166.

As explained in that motion, PIF and HE asserted these defenses because they only acted as investors in LIV. Dkt. 173 at 1. As investors, their involvement was limited to high-level oversight and control, and occasional ceremonial appearances, which is insufficient for personal jurisdiction and which shows that their conduct is not the "gravamen" of the action, as required to overcome their sovereign immunity. *Id*. at 2-4. (PIF owns LIV through multiple corporate entities; their separate legal status is presumed.) In response, the Tour argued that PIF and HE personally negotiated contracts on behalf of LIV. Dkt. No. 169 at 8-9. PIF and HE disputed that claim and submitted evidence that they did not negotiate such contracts. Dkt. No. 173 at 3. Magistrate Judge van Keulen held a four-hour hearing on the motions on January 13, 2023, Dkt. No. 217, and accepted supplemental briefs about a Shareholder Agreement. Dkt. No. 225. PIF and HE disputed the Tour's characterization of that agreement. Dkt. No. 230.

Eleven days after the hearing, on January 24, 2023, the Tour brought its present motion to add PIF and HE to the counterclaim. Dkt. No. 238. The proposed amendment makes the same allegations as the Tour argued in the subpoena motions. For example, the Tour alleges that PIF and HE control LIV, approve and negotiate player contracts, authorized this lawsuit, and approve details like logos, while Greg Norman is a "nominal" CEO. Dkt. No. 238-2 ¶ 3. The Tour made precisely these arguments to Magistrate Judge van Keulen, based on the same documents. *See* Dkt. No. 225 at 1:23-2:3; Dkt. No. 169 at 8:22-28, 13:21-14:4. In other words, all new issues are *sub judice*.

B. The Tour's Proposed Counterclaim

The Tour alleges that LIV (and, on information and belief, PIF and HE) have "conducted a coordinated campaign of ongoing interference with contracts . . . in the hope that they can convince a court to alter the TOUR's membership structure." Dkt. No. 238-2 ¶ 61. As part of that campaign, counter-defendants "encouraged and funded the pursuit [of] . . . antitrust claims" and, "to encourage that lawsuit," communicated to the Tour players "that their agreements with the TOUR are unenforceable." *Id*. ¶ 2. They allegedly paid players "astronomical sums of money" to compensate them for litigation risk; "committed to funding all legal expenses for LIV Players related to their

breach"; and imposed contractual obligations that purportedly conflicted with the Tour's contracts. *Id*. ¶¶ 2, 71, 6.  In the last case, counter-defendants allegedly "explicitly anticipated not only that their membership conditions would cause LIV Players to breach their TOUR contracts, but also that such breach would result in litigation." *Id*. ¶ 44.

## LEGAL STANDARD

The standard for granting leave to amend differs for "pleadings attempting to amend *claims* from those seeking to amend *parties*." *See Union Pac. R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (emphasis in original). "Amendment seeking to add claims are to be granted more freely than amendments adding parties." *Id.* Courts consider the "*Foman* factors" in evaluating motions for leave to amend: (1) undue delay, (2) improper motive, (3) failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Amendment is futile if an amended complaint "would be immediately subject to dismissal." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011).  The "legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Accordingly, a proposed amendment must state a plausible claim for relief to support leave. *Gibson Brds., Inc. v. John Hornby Skewers & Co., Ltd.*, 2015 WL 4651250, at *4 n.4  (C.D. Cal. Aug. 4, 2015).

## ARGUMENT

### I. THE PROPOSED AMENDMENT IS FUTILE BECAUSE THE TOUR DOES NOT ALLEGE ANY "INDEPENDENTLY WRONGFUL CONDUCT"

The proposed amendment alleges a single claim of tortious interference with the Tour's contracts with players.  But those contracts are at-will with respect to the players, because a player may quit the Tour at any time without breaching his contract.  *See* Dkt. No. 2-4 at 151.  Under black letter California law, to properly allege tortious interference with an at-will contract, the Tour must allege that counter-defendants engaged in an "independently wrongful act" of inducement.  It has entirely failed to plead that essential element.   The amendment would therefore be futile.

### A. The Elements Of A Claim For Interference With An At-Will Contract.

*Reeves v. Hamilton,* held that a plaintiff alleging breach of an at-will **employment** contract had to allege and prove "independently wrongful conduct" beyond the conduct that induced the breach. 33 Cal. 4th 1140, 1145 (2004); *see also Ixchel*, 9 Cal. 5th at 1144-1145. In <u>Ixchel</u>, the court extended the independent wrongfulness requirement to all claims of interference with at-will contracts. *Id.* at 1137, 1148. The *Ixchel* court defined "independently wrongful conduct" as conduct prescribed by "some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1142.

When parties reach agreement for a term, "they cement their bargained-for interests," which are protected from interference "by a stranger to the agreement." *Id.* at 1146. But "[l]ike parties to a prospective economic relationship, parties to at-will contracts have no legal assurance of future economic relations." *Id.* at 1147. As a consequence, "[a]n at-will contract may be terminated, by its terms, at the prerogative of a single party, whether it is because that party found a better offer from a competitor, because the party decided not to continue doing business, or for some other reason. And the other party has no legal claim to the continuation of the relationship. *Id.* "Finally," the court observed, "allowing interference with at-will contract claims without requiring independent wrongfulness risks chilling legitimate business competition." *Id.* at 1148.

Post-*Ixchel*, a claim for interference with an at-will contract requires well-pleaded allegations of interference **and** that the conduct causing breach was "wrongful apart from the interference with the contract itself" because it violated "some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1142.

### B. The Tour's Fails To Allege Independently Wrongful Conduct By Anyone.

Despite having received some 400,000 pages of discovery, including minutes of the LIV board, the Tour improperly makes allegations on "information and belief" in its proposed amended counterclaim. Dkt. No. 238-2 ¶ 2. The Tour alleges that PIF and HE improperly induced breach of its contracts by:

- agreeing to "pay the LIV players astronomical sums of money to induce breach" (*id.,* ¶ 1; *see also* Counterclaim, ¶ 82 ("paid significant funds of upfront cash" to induce breach);

- "communicat[ing] to the LIV Players and other players that their agreements with the Tour are unenforceable" under the antitrust laws and to "support" them if litigation ensued (*id.*, ¶ 2; *see also* ¶¶ 7, 33, 62, 66-69 & 74); and

- agreeing to indemnify the LIV Players and pay their legal fees for both defensive and offensive litigation (*id.* ¶¶ 6, 44, 63, 71 & 85).

The Tour's memorandum, unmoored from case law or evidence, repeats the same narrow allegations: the alleged inducement consisted of representing to Tour players that their contracts are unenforceable under the antitrust laws, "offering highly lucrative contracts," "providing extensive indemnifications and hundreds of millions of dollars to compensate LIV players for these breaches," and pre- and post-offer pleasantries. Mem. at 1:12-17, 5:21-6:12.

None of this is wrongful conduct. A competitor may "offer better contract terms, as by offering an employee of the plaintiff more money to work for him . . . , and he may make use of persuasion or other suitable means, all without liability." *Reeves*, 33 Cal. 4th at 1152. Offering an independent contractor more money than he or she is being paid by his or her current client is not "independently wrongful" and does not violate any constitutional, statutory, regulatory or common law standard. *Ixchel*, 9 Cal. 5th at 1142. It is, rather, the essence of free competition for highly skilled labor. *Ixchel* held that a party to an at-will contract may properly terminate the contract because he or she "found a better offer from a competitor" and failing to protect such conduct "risks chilling legitimate business competition." *Id.* at 1147, 1148. Of course, chilling legitimate business competition from LIV is the Tour's core goal. The Tour's allegation that it is illegal to offer more compensation to an at-will worker than his or her current client defies common sense and controlling precedent. Moreover, encouraging others to pursue meritorious legal claims plainly does not violate any constitutional, statutory, regulatory or common law prohibition, *Ixchel*, 9 Cal. 5th at 1142, and the Tour makes no argument that it does. It therefore could never satisfy the "independently wrongful conduct" requirement.

## II. THE PROPOSED AMENDMENT IS FUTILE BECAUSE IT TARGETS FIRST AMENDMENT PROTECTED CONDUCT

The proposed amendment is also futile because the Tour expressly alleges First Amendment protected conduct, which cannot form tortious interference. *See PG&E*, 50 Cal. 3d at 1136-37; *see also Rubin v. Green*, 4 Cal. 4th 1187, 1193-95 (1993) (litigation privilege).

"Inducing a third party to bring litigation on a colorable claim" does not state a claim for tortious interference unless it lacks probable cause and concluded in plaintiff's favor. *PG&E*, 50 Cal. 3d at 1130, 1137. In *PG&E*, an investment firm approached a California agency to encourage it to terminate a contract with PG&E. *Id.* at 1124. The agency "felt it could not do so without a breach," so the firm paid for studies on the feasibility of termination, solicited new business, and paid a portion of its legal fees. *Id*. PG&E sued the firm for tortious contract interference. *Id.* The California Supreme Court affirmed dismissal. *Id.* at 1137-38.

The court held that "[o]ur legal system is based on the idea that it is better for citizens to resolve their differences in court," and permitting tortious interference claims for legal disputes "is repugnant to this basic philosophy." *Id.* at 1137. To avoid an "an unwarranted expansion of the scope of these torts and a pernicious barrier to free access to the courts," "a plaintiff seeking to state a claim for intentional interference with contract . . . because defendant induced another to undertake litigation, must allege that the litigation was brought **without probable cause** and that **the litigation concluded in plaintiff's favor**." *Id.* at 1123, 1137 (emphases added). Because it was "evident from the face of the complaint" that these elements were not met, the court upheld dismissal. *Id.* at 1137. This conclusion was supported by related doctrines, including the litigation privilege and *Noerr-Perrington* doctrine, both of which protect the constitutional right to petition. *Id*. at 1132-34.

Here, the Tour expressly alleges that the alleged interference was meant to induce litigation. Counter-defendants told players their contracts with the Tour were unenforceable "to encourage litigation." Dkt. No. 238-2 ¶ 2. They paid "astronomical sums" to "reimburse" and "compensate [them] for the risks they incur." *Id*. ¶¶ 2, 71. And LIV's membership obligations (*id*. ¶ 2) "explicitly anticipated not only" breach of the Tour's player contracts, but that "such breach would result in litigation." *Id*. ¶ 44. Under the Tour's own pleading, the alleged interference was part of a litigation campaign designed to "convince a court to alter the TOUR's membership structure." *Id*. ¶ 61.

Because LIV's well-pleaded antitrust claims are pending, the amended counterclaim would be dismissed under California law because it seeks to "impose liability . . . for inducing a potentially meritorious lawsuit." *PG&E*, 50 Cal. 3d at 1127; *cf. Rubin*, 4 Cal. 4th at 1193-94 (communications having "some relation" to anticipated lawsuit are "absolutely immune from tort liability.").

### III. THE PROPOSED AMENDMENT SHOULD BE DENIED BECAUSE LIV AND THE PLAYER PLAINTIFFS WOULD SUFFER UNFAIR PREJUDICE

"Prejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). Here, LIV and the Player Plaintiffs would be severely prejudiced if the Tour's long-delayed motion to amend is granted. The Tour has previously asked for a case management conference to request delay in the trial schedule, based largely on arguments in its present motion. The motion is a second bite at the apple designed to provide another basis for delay. But any delay would be severely prejudicial.

PIF and HE argued to Magistrate Judge van Keulen that they are immune from discovery under the FSIA and principles of international comity, and that this Court lacks personal jurisdiction over them. *See* Dkt. No. 166. In response, the Tour requested jurisdictional discovery. Dkt. No. 169 at 11. Even this would protract the proceeding for months. Depending on how those issues are resolved, there may be appeals to the Ninth Circuit. If the amendment is allowed, PIF and HE will likely move to dismiss. In short, if the untimely amendment is allowed, lengthy delay cannot be avoided absent bifurcation of the counterclaim, which the Tour is already opposing. Dkt. No. 255.

The prejudice to Plaintiffs Jones and Uihlein from delay is clear: they risk being unable to earn a living in their chosen profession during the prime of their careers. Mr. Jones and Mr. Uihlein have no secure ability to pursue their profession in 2024. Some Player Plaintiffs are not under contract with LIV past 2023, and are banned from the PGA Tour, the European Tour, and other tours around the world. Player Plaintiffs are denied playing opportunities they had earned and need resolution on the enforceability of the Tour's Regulations, suspensions, and conduct. And several other golfers in LIV and other professional and collegiate golfers who are considering playing in the Asian Tour or on LIV are making decisions about their future and need clarity from the Court. Plaintiffs need relief soon and certainly no later than the current January 2024 trial.

Delay will equally harm LIV because the Tour continues its anticompetitive conduct while the litigation is pending. The Tour has damaged LIV's brand, driven up its costs by hundreds of millions of dollars, and driven down revenues to virtually zero. For example, just last month, the press reported on a new regulation from the Tour that imposes rolling two-year bans on any player—

Tour member or not—who plays in even a single LIV tournament. The trial is currently scheduled for January 2024, on the eve of the 2024 golf season. If the Tour is permitted to continue its anticompetitive conduct into another season beyond 2023, the damage to LIV and to the nascent competition it has brought to the marketplace would be immeasurable. LIV needs resolution of its claims to limit its ongoing damages.

## IV. THE PROPOSED AMENDMENT SHOULD BE DENIED BECAUSE OF THE TOUR'S LONG DELAY

### A. The Tour Has Argued From the Outset of the Case That PIF's And HE's Conduct Was Central To This Case.

Lacking candor, the Tour never addresses when it first argued that PIF and HE were important to the claims at issue. In fact, the Tour played the PIF card at the first hearing before the Court. At the August 18, 2022 status conference, counsel for the Tour argued that PIF and its employees were the "key decisions makers" for LIV. Aug. 18, 2022 Tr. at 9:19-21. Likewise, in its motion to compel, initially filed in the Southern District of New York on October 21, 2022, and refiled with this Court on November 9, 2022, the Tour alleged:

- "PIF and Mr. Al-Rumayyan have had effective control over LIV from its inception" (Dkt. No. 148 at 2:15-16);

- "Documents produced by LIV indicate that PIF and Mr. Al-Rumayyan in particular play a direct role in managing LIV's day-to-day affairs" (*id.* at 6:24-26);

- "there is plenty of evidence that PIF has exercised control over LIV in the United States, including Mr. Al-Rumayyan's repeated appearance at LIV events in the United States" (*id.* at 16:3-5);

- "Given PIF and Mr. Al-Rumayyan's role in creating and controlling LIV—and likely in bringing this lawsuit—the discovery sought from them is central to the TOUR's defenses and counterclaim in the underlying action brought by LIV" (*id.* at 20:8-10).

Despite having claimed, in August 2022, that PIF and HE were "key decision makers," and, in October 2022, that their conduct was "central to the Tour's defenses and counterclaims," the Tour delayed filing its proposed amendment to add them as counterclaim defendants until January 24, 2023. The Tour's unexplained delay, coupled with LIV and the Player Plaintiffs' undue prejudice, weigh strongly in favor of denying the Tour's proposed amended pleading.

## V. THE PROPOSED AMENDMENT IS AN ATTEMPT BY THE TOUR TO DELAY RESOLUTION OF PLAINTIFFS' CLAIMS INDEFINITELY

Filing a motion to amend for an improper purpose weights in favor in denying the motion. *See Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1520 (9th Cir. 1983). Here, the Tour's motive is to delay the trial by dragging in parties subject to complex sovereign immunity and jurisdictional defenses based on meritless allegations.

Virtually every issue raised by the Tour's present motion is disputed and resolution thereof is pending before Magistrate Judge van Keulen. PIF and HE disputed they control LIV's day-to-day activities and presented extensive evidence that they only exercise the type of investor oversight common for foreign investors in U.S. companies—oversight that does ***not*** subject the investor to the personal jurisdiction of U.S. courts or waive sovereign immunity. There was extensive argument that the Tour's two subpoenas totaling 161 separate requests were improper third party discovery under Federal Rule of Civil Procedure 45. The Tour made contrary arguments. The issues are joined and await resolution by Magistrate Judge van Keulen.

The Tour's motion to amend its counterclaim repeats these same arguments and raises the same issues. As the recent CMC statement makes clear, the Tour is using these claims to delay trial on Plaintiffs' antitrust claims. The Tour knows that adding counterclaim-defendants subject to complex and weighty immunity and jurisdictional defenses with appeal rights—based on flawed arguments it already made to Magistrate Judge van Keulen—may require significant time to resolve. The Tour's clear objective is to continue its anticompetitive conduct for as long as possible by pushing the trial date out. But delaying the entire case over these counterclaims would be allowing the tail to wag the dog. And, as explained above, it would cause immeasurable harm to Plaintiffs. The Tour's improper purpose for seeking amendment warrants denial. *See Wood*, 705 F.2d at 1520.

### CONCLUSION

For the foregoing reasons, LIV respectfully request that the Court deny the Tour's Motion for leave to amend counterclaim to add counter-defendants.

| | |
|---|---|
| DATED:  February 6, 2023 | Respectfully submitted, |
| | By: _____/s/ Dominic Surprenant_____<br>JOHN B. QUINN, SBN 90378<br>  johnquinn@quinnemanuel.com<br>DOMINIC SURPRENANT, SBN 165861<br>  dominicsurprenant@quinnemmanuel.com<br>KEVIN TERUYA, SBN 235916<br>  kevinteruya@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: 213.443.3000<br><br>ROBERT P. FELDMAN, SBN 69602<br>  bobfeldman@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, California 94065<br>Telephone:  650.801.5000<br>Facsimile:    650.801.5100<br><br>RACHEL S. BRASS, SBN 219301<br>  rbrass@gibsondunn.com<br>LAUREN D. DANSEY, SBN 311886<br>  ldansey@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, California 94105-0921<br>Telephone: 415.393.8200<br>Facsimile:   415.393.8306<br><br>ROBERT C. WALTERS, *pro hac vice*<br>  rwalters@gibsondunn.com<br>SCOTT K. HVIDT, *pro hac vice*<br>  shvidt@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201-2911<br>Telephone: 214.698.3100<br><br>JOSHUA LIPTON, *pro hac vice*<br>  jlipton@gibsondunn.com<br>KRISTEN C. LIMARZI, *pro hac vice*<br>  klimarzi@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  20036-5306<br>Telephone:    202.955.8500<br>*Attorneys for Plaintiffs LIV Golf, Inc.,*<br>*Matt Jones, Bryson DeChambeau, and Peter Uihlein* |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Executed on February 6, 2023

*/s/ Dominic Surprenant*
Dominic Surprenant