1  RACHEL S. BRASS, SBN 219301
     rbrass@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
3  San Francisco, California 94105-0921
   Telephone: 415.393.8200
4  Facsimile:  415.393.8306

5  ROBERT C. WALTERS, *pro hac vice*
     rwalters@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   2001 Ross Avenue, Suite 2100
7  Dallas, Texas 75201-2911
   Telephone: 214.698.3100
8  Facsimile:  650.801.5100

9  *Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., <br><br> Counter-Defendant. | CASE NO. CASE NO. 5:22-cv-04486-BLF <br><br> **DECLARATION OF JOHN LOFFHAGEN IN SUPPORT OF SEALING PORTIONS OF PGA TOUR, INC.'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM TO ADD COUNTER-DEFENDANTS** |

LOFFHAGEN DECLARATION IN SUPPORT OF SEALING
CASE NO. 5:22-CV-04486-BLF

I, John Loffhagen, hereby declare and state:

1. I am the Chief Legal Officer of LIV Golf. I am authorized by LIV to make this statement in support of sealing portions of the PGA Tour, Inc.'s motion for leave to amend counterclaim to add counter-defendants. I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates. If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

2. The Tour's motion and proposed amended counterclaim quote and describe documents related to LIV's corporate governance, relationship with investors, and specific negotiations with players, agents, and others. Disclosure of this information would cause significant competitive harm to LIV. As described further below, LIV is a non-public company that may take outside funding in the future. Disclosure of information about its current relationship with investors would prejudice its ability to obtain outside funding, either by deterring outside funders or by influencing the terms that they demand. Disclosure would also allow competitors to exploit information for competitive gain. Last, disclosure of LIV's negotiations with players and agents, including specific terms and offers, would constrain LIV's future bargaining power, as other players and agents may demand the same or better terms as those described. None of this information is public or otherwise disclosed.

3. Paragraph 25 of the proposed amended counterclaim and lines 5:14-16 and 5:18-20 of the motion describe a Shareholder Agreement that sets out LIV's relationship with its investors, including investor rights under that agreement. This information is highly sensitive, and LIV goes to great lengths to keep it confidential. Disclosure of the contents of the Shareholder Agreement would harm LIV, including by prejudicing LIV's ability to obtain outside funding. The current investment structure gives certain investors rights that may deter outside funders or change the terms that those funders demand. If those funders decide to invest, they may demand changes to LIV's investor rights or demand equivalent rights as those disclosed. Outside business partners may also be influenced. For example, if LIV decides to enter into a franchise model, potential franchisees may change the terms they require in light of the investor rights disclosed in the motion and proposed amended counterclaim.

4. Paragraph 26 describes a services agreement that describes LIV's relationship with its investors, including services certain investors provide for LIV. Disclosure of this information would

cause harm to LIV. Competitors may seek to influence LIV's investors to change LIV's business model or functioning or to otherwise exploit this information about the relationship between LIV and its investors and the services rendered by those investors to LIV. Business partners may also be deterred from entering into agreements with LIV in anticipation of participation by or need for services from LIV's investors.

5. Paragraphs 29-31 and 64-65 of the proposed amended counterclaim and lines 5:23-24, 6:1, and 6:3-9 of the motion describe LIV's internal decision-making, including participation of LIV's investors in that decision-making. Disclosure of this information would harm LIV. Competitors may exploit this information, for example, by seeking to influence LIV's investors. Disclosure would also harm LIV by (incorrectly) suggesting that LIV lacks authority to negotiate certain terms. Potential business partners may be deterred from entering into negotiations with LIV if they believe that LIV requires investor consent to make decisions on certain matters. Moreover, certain paragraphs (e.g., 65) reveal internal LIV strategy for dealing with competitors and media cycles. This information is not public, and disclosure would harm LIV by revealing its internal strategy, including its strategy for dealing with the Tour.

6. Paragraphs 31-35 of the proposed amended counterclaim and lines 5:23-24, 6:1, 6:3-9, and 7:23-27 of the motion describe specific negotiations and offers to certain players, agents, sponsors, and broadcasters, including specific terms of offers. This information is not public, and disclosure would cause competitive harm to LIV. Other players, agent, sponsors, and broadcasters may demand the same or better terms. For example, players may demand the same or better financial offers as the one disclosed to a specific player in paragraph 32. Moreover, not all of the entities disclosed in these paragraphs entered into agreements with LIV. Disclosure of the identities of these entities would invite speculation about why these entities decided to do business (or not) with LIV and would expose them to unwanted attention. This would prejudice LIV's ability to obtain future business, as potential partners may be concerned about the attention even talking to LIV creates. LIV's ability to negotiate with potential business partners confidentially is critical to its ability to obtain future business, in light of the anticompetitive public sentiment stirred up by the Tour. Making those confidential negotiations public would severely prejudice LIV.

7. Paragraphs 6 and 44 of the proposed amended counterclaim and lines 3:26-27 of the motion describe the terms of certain LIV indemnification agreements. This information is not public, and disclosure would cause significant harm to LIV. The terms of indemnification reveal the contours of potential litigation, including the parties of the contemplated litigation and amounts offered for indemnification. This information would be exploited by the counter-parties in the litigation (including the Tour) to influence litigation conduct. For example, the Tour could seek to drive up costs to exceed the amount disclosed in these paragraphs, in the hope that certain parties will give up their claims. Although this information was provided to the Tour under an "attorneys eyes only" designation, it is not known to the Tour itself.

8. Exhibit C and lines 6:10-12 to the Tour's motion describe LIV's recruitment of players, including the identities of the players, the number of offers, the structure of the offers, and the terms of the offers, including specific amounts. Disclosure of this information would severely harm LIV. Other players may demand the same or better terms, including allotment in the categories or ranking of players disclosed in this document. Disclosure would also reveal LIV's willingness and ability to pay, which would constrain its bargaining power in future negotiations (e.g., its ability to negotiate lower offers). Disclosure of LIV's recruitment strategy would also be targeted by competitors (such as the Tour) to counter the strategy described in the document. For example, competitors may make counter-offers to target the fees disclosed in the document. LIV's recruitment of players is critical to its continued viability, and disclosure of this information would allow the litigation to become a source of competitive harm: the precise result this lawsuit seeks to prevent.

9. The following table summarizes that harm that could result from disclosure:

| Document | Harm From Disclosure |
|---|---|
| Exs. A, B (ECF 237-1; ECF 237-2) (Proposed Counterclaim) ¶ 25<br><br>Memorandum of Law (ECF 237-4) at lines 5:14-16, 5:18-20 | Contains confidential information about LIV's Shareholder Agreement setting out its relationship with its investors, including investor rights, disclosure of which would prejudice LIV's ability to obtain outside funding, pursue a franchise model in the future, and obtain future business. |

| | |
|---|---|
| Exs. A, B (ECF 237-1; ECF 237-2) (Proposed Counterclaim) ¶ 26 | Contains confidential information about a services agreement setting out LIV's relationship with its investors, disclosure of which would be exploited by competitors for competitive gain and prejudice LIV's ability to obtain future business. |
| Exs. A, B (ECF 237-1; ECF 237-2) (Proposed Counterclaim) ¶¶ 29-31, 64-65<br><br>Memorandum of Law (ECF 237-4) at lines 5:23-24, 6:1, 6:3-9 | Contains confidential information LIV's internal decision-making, including participation of LIV's investors in that decision-making, disclosure of which would harm LIV by allowing competitors to exploit the information, deterring potential business partners, and revealing LIV's non-public strategy for dealing with competitors. |
| Exs. A, B (ECF 237-1; ECF 237-2) (Proposed Counterclaim) ¶¶ 31-35<br><br>Memorandum of Law (ECF 237-4) at lines 5:23-24, 6:1, 6:3-9, and 7:23-27 | Contains confidential information about specific negotiations and offers to certain players, agents, sponsors, and broadcasters, including specific terms of offers. Disclosure of this information would cause competitive harm to LIV, including by constraining its ability to negotiate different terms, inviting speculation about why certain entities decided to do business (or not) with LIV, prejudicing LIV's ability to obtain future business, and constraining LIV's ability to pursue confidential negotiations. |
| Exs. A, B (ECF 237-1; ECF 237-2) (Proposed Counterclaim) ¶¶ 6, 44<br><br>Memorandum of Law (ECF 237-4) at lines 3:26-27 | Contains confidential information about the terms of certain indemnification agreements, disclosure of which would ham LIV by revealing the contours of potential litigation, including the parties of the contemplated litigation and amounts offered for indemnification, which could be exploited by other litigants. |
| Ex. C (ECF 237-3)<br><br>Memorandum of Law (ECF 237-4) at lines 6:10-12 | Contains confidential information about LIV's recruitment of players, including the identities of the players, the number of offers, the structure of the offers, and the terms of the offers, including specific amounts, disclosure of which would harm LIV by constraining its ability to offer different terms, revealing its ability and willingness to pay, and allowing LIV's recruitment strategy to be exploited by competitors. |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on ___06 February 2023___, 2023.

DocuSigned by:<br>
_John Loffhagen_<br>
B047E35ED1C1478...<br>
John Loffhagen