KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:     212 735 3000
Facsimile:     212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone:     312 407 0700
Facsimile:     312 407 0411

Attorneys for Defendant and Counterclaimant PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant. | Case No. 5:22-cv-04486-BLF<br><br>**JOINT STATEMENT REGARDING PRODUCTION OF TEXT MESSAGES**<br><br>Judge:        Hon. Susan van Keulen<br>Dept:          Courtroom 6, 4th Floor<br>Date Filed:  August 3, 2022<br>Trial Date:  January 8, 2024<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| PGA TOUR, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>LIV GOLF, INC.,<br><br>Counterdefendant. | |

Defendant and Counterclaimant PGA TOUR, Inc. ("the TOUR"), Plaintiff and Counterdefendant LIV Golf, Inc., and Player Plaintiffs Matthew Jones, Bryson DeChambeau, and Peter Uihlein submit this joint statement pursuant to Paragraph 8 of the Court's Civil & Discovery Referral Matters Standing Order. The parties dispute which text messages and other chat or device level communications should be produced and seek the Court's guidance. The TOUR and Plaintiffs have met and conferred on numerous occasions by video conference and through written correspondence but were unable to reach agreement. There are forty-three days remaining until the close of document and written discovery on March 30, 2023. Trial is set for January 8, 2024.

I.   **THE TOUR'S POSITION**

***Introduction.*** The parties have agreed to produce text messages, WhatsApp chats, Signal messages, and other device-level communications (collectively, "mobile messages") using search terms to locate responsive communications. Through a series of meet and confer discussions, the parties have also agreed that each side will presumptively produce all non-privileged mobile messages in the same thread that were sent or received within 48 hours of a responsive mobile message to provide necessary context for the communication ("contextual mobile messages").

Plaintiffs, however, insist that they may carve out broad categories of undefined "personal, health-related, or privacy-sensitive" contextual mobile messages from their production, even though: (1) these communications appear within the agreed 48-hour period; (2) there is a two-tier protective order in place in this case; and (3) federal courts across the country disfavor the redactions for relevance that Plaintiffs propose. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 12230960, at *1 (N.D. Cal. March 15, 2013); *see also Kellman v. Whole Foods Mkt. Cal., Inc.*, 2021 WL 4476779, at *2 (N.D. Cal. Sep. 30, 2021) ("courts disfavor redactions for responsiveness except in very limited circumstances.").

The Court should reject Plaintiffs' efforts to fashion several large loopholes in their mobile message productions and instead adopt the TOUR's position, which would limit redactions to the well-recognized objective categories of confidential personally identifiable information ("PII") and individually identifiable protected health information ("PHI").

***Background.*** Although the parties both agreed to conduct device-level collections of

mobile messages in the early stages of the case, Plaintiffs' mobile message productions revealed that the parties took very different approaches to production. The TOUR, for its part, produced all mobile messages within a 24-hour period following any responsive, non-privileged message that hit on Plaintiffs' search terms. The TOUR also produced message threads as single documents instead of producing each mobile message as an individual document. The TOUR did not withhold non-privileged contextual mobile messages within the 24-hours following a responsive mobile message, and did not redact contextual mobile messages for anything other than privilege.

Plaintiffs produced mobile messages on a message-by-message basis, totaling nearly 38,000 individual documents as of the date of this filing. Instead of producing complete threads as coherent single documents, Plaintiffs produced a metadata field for each individual message identifying the first message in the thread (although this data was missing for some tranches of mobile messages). To piece together an entire conversation, the TOUR must parse the metadata of each message before review, requiring the TOUR to reconstruct what amounted to thousands of mobile message threads before beginning meaningful review.

Nonetheless, the TOUR's initial analysis of Plaintiffs' mobile message production indicated that Plaintiffs completely withheld individual messages from otherwise responsive mobile message threads. When pressed during meet and confer, Plaintiffs confirmed that they had in fact withheld entire messages—which, given their production format—amounted to withholding large swaths of documents from otherwise responsive mobile message threads. The TOUR objected to this practice as inconsistent with the federal rules and decisional law regarding the production of contextual message data. Eventually, the parties reached a compromise: each side will produce non-privileged mobile messages sent or received within 48 hours of a responsive message and will not withhold entire contextual mobile messages from production. Instead, where a party believes certain otherwise responsive information in a contextual mobile message may lawfully be withheld, the information protected from disclosure may be redacted within the contextual mobile message itself.

**The Dispute.** The parties have reached an impasse, however, on the nature of the information that may be redacted pursuant to the parties' production agreement for contextual

mobile messages. Plaintiffs have proposed that they be permitted to redact anything that is "personal, health-related, or privacy-sensitive." Plaintiffs have never defined these terms, instead simply stating that "the types of messages [they] propose to exclude from production are easy to identify using objective criteria." But this is plainly not the case. The TOUR has asked Plaintiffs to provide more specific information regarding what constitutes, for example, "personal" information but Plaintiffs have not provided any further clarity. Simply saying that the criteria are "objective" does not make it so.

In contrast, the TOUR proposed that the parties be permitted to redact specific, defined categories of information from otherwise presumptively responsive contextual messages. This includes: (1) social security numbers and taxpayer identification numbers; (2) financial account numbers; (3) the street and number of home addresses; (4) other unique identifying numbers, like passport or drivers' license numbers; (5) protected health information, including medical records, medical billing and payment records, insurance information, clinical laboratory test results, medical images, such as X-rays, wellness and disease management program files, and clinical case notes; and (6) the names of minor children. Plaintiffs have rejected the TOUR's proposal out of hand.

Unlike Plaintiffs' free-form categories of potential redactions, the TOUR's proposal is specific, objective, and consistent with caselaw from this District and the rules governing redactions in electronic filings in federal court. Rule 5.2, for example, requires parties to redact from filings in federal court all but the final four digits of individual social security and taxpayer identification numbers, the full names of minor children, an individual's complete birthdate, and complete financial account numbers. *See* Fed. R. Civ. P. 5.2(a). Courts have also permitted parties to redact home addresses, *Gardias v. Cal. State Univ.*, 2008 WL 4334701, at *1 (N.D. Cal. Sep. 22, 2008), as well as protected health information. *See Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2021 WL 1146216, at *3 (N.D. Cal. Feb. 12, 2021) (permitting sealing of protected health information and collecting cases). Similarly, courts have authorized parties to redact driver's license numbers and other unique identifying numbers. *See Estate of Victorianne v. Cty. of San Diego*, 2015 WL 1757852, at *6 (S.D. Cal. April 17, 2015).

Plaintiffs' proposal, in contrast, is untethered to any specific categories of information, creating a loophole through which Plaintiffs may withhold information of significant relevance. It is unclear, for example, what Plaintiffs believe constitutes "personal" information. A wide swath of relevant communications could fall within this category, including those related to players' personal circumstances directly bearing on their financial motivations for joining LIV. Plaintiffs' out-of-circuit authority does not support their proposed nebulous redactions. *Advanced Magnesium Alloys Corp. v. Dery*, 2022 WL 3139391 (S.D. Ind. Aug. 5, 2022) involved a request seeking contextual text messages for a much broader period—a full month—and even then, the court provided specific guidelines for what might qualify for redaction and ordered the party's attorney to certify that he or she had "personally reviewed all of the text messages" and that any redactions were "unambiguously" "purely personal in nature." *See id.* at *4 & n.6. In *Dufrene v. American Tugs, Inc.*, 2018 WL 6448838 (E.D. La. Dec. 10, 2018), the court ordered production of cell phone data according to a protocol with similarities to the parties' agreed procedure in this case, and said nothing about the appropriate scope of redactions. *Marksman Security Corp. v. P. G. Security, Inc.*, 2021 WL 4990442, at *2 (S.D Fla. March 19, 2021) is inapposite because here, unlike that case, the parties have agreed on a procedure for production of contextual mobile messages.

Plaintiffs' redundant category of "privacy-sensitive information" is similarly capacious. Plaintiffs have to-date declined to explain how this category is different than "personal" information and what might qualify for redaction under this category. Once again, Plaintiffs rely on an out-of-circuit district court decision for support, but that case involved a request for "all delivered and undelivered inbound and outbound calls, and text messages (including but not limited to SMS or MMS) to or from any of" a list of mobile phone numbers. *C.H. v. Sch. Bd. of Okaloosa Cnty. Fla.*, 2020 WL 6572430, at *1 (N.D. Fla. Nov. 4, 2020). That is not this case, where the TOUR has served tailored requests for production and Plaintiffs have agreed to run search terms and then evaluate mobile messages for responsiveness. The TOUR does not dispute that both parties may redact protected health information, but Plaintiffs have not explained why the TOUR's more specific definition—drawn from HIPAA's enabling regulations and D.H.S's

official webpage—is improper. *See* 45 C.F.R. §§ 160.103; 164.501.

Plaintiffs' invocation of vague "privacy concerns" and manufactured hypotheticals are unsupported and fail to account for the two-tier protective order in this case. *See* Dkt. 111. The protective order contemplates that parties may mark "extremely sensitive" material AEO where "disclosure could create a substantial risk of serious harm to the Producing Party . . . that provided the information . . . on a confidential basis." *See id.* § II, ¶ 2.7. Under the terms of the protective order, AEO materials may be distributed on a tightly circumscribed basis. *See id.* § VII, ¶ 7.3. To the extent Plaintiffs are concerned that certain contextual mobile messages may contain sensitive information, they are free to designate those materials as AEO.

Finally, Plaintiffs' focus on the TOUR's supposed "filtering out" mobile messages with purely personal contacts is a red herring. If any party "surreptitiously" filtered out mobile messages it is Plaintiffs, who withheld an untold number of otherwise responsive contextual mobile messages without disclosing it to the TOUR. By contrast, the TOUR filtered out mobile messages between a few TOUR custodians and certain of their purely personal contacts. But where a custodian communicated with a personal contact about professional matters, the TOUR is searching the entirety of the contact's mobile messages and is *not* redacting or withholding from production contextual personal messages. In any event, Plaintiffs' issue is moot because the TOUR agreed to run the agreed-upon search terms across even the filtered out personal contacts and produce any responsive non-privileged mobile and contextual mobile messages. The fact that Plaintiffs have refused to do the same only highlights the lack of merit in their position.

Plaintiffs' proposed redactions for relevance of otherwise responsive contextual mobile messages is improper, contrary to established practice in this District, *see Kellman*, 2021 WL 4476779 at *2, and would allow Plaintiffs to withhold potentially critical discovery.

II.   **PLAINTIFFS' POSITION**

*Introduction:* Both sides agree that sensitive, personal, non-responsive text messages should not be produced. Where the parties differ is in how they have implemented that agreement.

The TOUR has done so in secret. Without saying so much as a *word* to Plaintiffs, the TOUR unilaterally excluded text messages between its custodians and some of their contacts. It was only

after Plaintiffs inquired about a metadata irregularity that the TOUR fessed up: "Prior to searching the devices," it "identified purely personal contacts" and "filtered out" those conversations.

Plaintiffs, by contrast, have forthrightly disclosed their intention to withhold certain sensitive, personal, non-responsive messages and offered to produce a slip sheet whenever such a message has been withheld where it otherwise would have been produced (as explained below, the parties have agreed to include certain non-responsive messages in their productions).

Even now, the TOUR refuses to say which conversations it "filtered out" or how it determined the contacts were "purely personal." The TOUR's conduct displays a troubling lack of candor. But it also reveals that, at bottom, the TOUR agrees that certain non-responsive text messages—personal in nature, sensitive in content, and not necessary to provide context for responsive messages—have no business being produced. Non-responsive documents are outside the scope of discovery, and privacy concerns weigh heavily against compelling Plaintiffs to produce the sensitive personal information the TOUR seeks. Those privacy concerns are especially acute in light of the TOUR's admitted strategy of attacking the personal reputations of LIV golfers.

Plaintiffs have offered a transparent, workable proposal that would (A) exclude from production any non-responsive text message that contains personal, health-related, or privacy-sensitive information and (B) give each side visibility into where the other side has withheld such messages. The Court should adopt that proposal and reject the TOUR's attempt to compel Plaintiffs to produce the very information the TOUR surreptitiously tried to remove from its own production.

***Background:*** The parties have agreed to collect text messages from their custodians, apply search terms, review the messages that hit on the terms, produce responsive messages, and log any privileged responsive messages. The parties agreed—and the Court ordered in the ESI protocol—that text messages would be treated as individual documents and produced message-by-message, not on a full-thread basis, with each message constituting a standalone document and produced with metadata allowing it to be related to other messages in a thread. ECF 110 at Appendix 1.

Plaintiffs' initial approach to production of text messages called for its attorneys to review all individual messages that hit on the parties' search terms and produce all responsive text messages. Plaintiffs' attorneys also reviewed forward and backward in time to capture additional

messages that provided context for responsive messages, produced all messages that provided context, and did not produce any message that was neither responsive nor necessary for context.

After the TOUR expressed concern that Plaintiffs' reviewers might overlook messages that are necessary to provide context for responsive messages, Plaintiffs offered to produce all text messages sent or received within at least 48 hours before and after a responsive message, excepting only non-responsive messages containing personal, health-related, or privacy-sensitive material.

This was not enough for the TOUR—the TOUR claimed it could not trust that the messages Plaintiffs proposed to withhold were actually non-responsive. The TOUR's complaints about a lack of transparency are ironic (to say the least) in light of the later-revealed fact that it had surreptitiously excluded *entire text-message conversations* from its own review set. Be that as it may, Plaintiffs addressed the TOUR's concern head on by offering to include a slip sheet in their production to indicate where a non-responsive message has been withheld where it otherwise would have been produced. This is a generous compromise offer: Plaintiffs would produce all responsive text messages, all non-responsive messages that provide necessary context for responsive text messages, *and* all non-responsive messages sent or received in a 96-hour window around a responsive message (48 hours before, and 48 hours after), *except* for non-responsive messages in that window that contain personal, health-related, or privacy-sensitive material; for those messages, Plaintiffs would provide a slip sheet so the TOUR could see where messages had been withheld. *And*, on top of all that, if the 96-hour minimum window does not capture the full context of the responsive message, Plaintiffs have proposed that the parties review as far forward or backward in time as necessary to ensure that they provide the full context around a responsive message.

But the TOUR rejected that proposal, too, insisting that the parties must produce **all** text messages sent or received 48 hours before or after a responsive text—including texts that are non-responsive, do not contribute necessary context for a responsive text, and invade the custodian's privacy. The only limitation the TOUR will agree to is information already made private under Fed. R. Civ. P. 5.2. In practice, this limitation would allow the withholding of nothing more than home addresses and children's names (when is the last time anyone put their Social Security, bank account, or driver's license number—much less a PDF of a medical record—into a text message?).

*Argument:* Plaintiffs should not be compelled to produce irrelevant, non-responsive text messages that contain personal, health-related, or privacy-sensitive material. Courts cannot compel production of non-responsive documents. *In re Actavis Holdco U.S., Inc.*, 2019 WL 8437021, at *2 n.1 (3d Cir. 2019) ("[N]othing in the civil rules permits a court to compel production of non-responsive and irrelevant documents."). A producing party's obligation under Rule 34 is to produce documents "as requested." Fed. R. Civ. P. 34(b)(2)(B). There is no duty to "produce non-responsive information." *Illumina Cambridge Ltd v. Complete Genomics, Inc.*, 2020 WL 1694353, at *5 (N.D. Cal. Apr. 7, 2020). That alone is enough to end the TOUR's motion.

This principle applies with extra force in the context of producing text messages; there are well-recognized heightened "privacy interests in the data stored on [] cell phones." *Dufrene v. Am. Tugs, Inc.*, 2018 WL 6448838, at *3 (E.D. La. Dec. 10, 2018). Privacy concerns routinely lead courts to refuse to compel production of non-responsive text messages. *See, e.g., C.H. v. School of Okaloosa County Florida*, 2020 WL 6572430, at *4 (N.D. Fla. Nov. 4, 2020) (quoting *Hunting v. Am. Family Mut. Ins. Co.*, 2020 WL 6044509, at *4 (W.D. Wash. Oct. 13, 2020) ("The Court is not inclined to grant Plaintiffs permission to 'rifle through private, irrelevant' communications").

The TOUR fails to cite even a single case about text-message production. The *Kellman* and *High-Tech Employee* cases—which note that a party generally cannot redact irrelevant portions of otherwise responsive documents—miss the point. Plaintiffs are not seeking to redact irrelevant information from otherwise responsive text messages. Plaintiffs' proposal only applies to text messages that both are entirely non-responsive and implicate important privacy interests. No case supports the TOUR's novel, expansive contention that a party can be compelled to produce a non-responsive text message simply because it was sent close-in-time to a responsive text message.

Plaintiffs' proposal would ensure the parties can trace a full conversation, while simultaneously protecting the participants' privacy interests. Courts have endorsed the approach of producing texts from a set time period to provide context but allowing withholding or redaction of sensitive, non-responsive information. *E.g., Advanced Magnesium Alloys Corp. v. Dery*, 2022 WL 3139391, at *4 (S.D. Ind. Aug. 5, 2022) (ordering counsel to produce text messages in a specific time period, but allowing them to "redact any message or portion thereof" that is "purely personal

in nature" or "clearly and unequivocally relate[s] to business matters other than those at issue"); *Hunters Run Gun Civ. Action No. Club, LLC v. Baker*, 2019 WL 507479, at *9 (M.D. La. Feb. 7, 2019) (ordering that "the contents of those nonresponsive text messages must be redacted").

The TOUR's assertion that any message sent or received 48 hours before or after a responsive message is "presumptively responsive" ignores the reality of how text messaging works. People routinely text each other on multiple unrelated topics within the same time period. Consider: Figure A in this hypothetical shows two distinct conversations interwoven with each other that both are responsive and should be produced. Figure B shows conversations about two different subjects that happen to be temporally related. Although the second conversation about dinner is non-



responsive and contributes nothing to the context of the first, Plaintiffs have offered to produce all messages in that conversation. Figure C again shows messages about different subjects, but this time, the two non-responsive, privacy-sensitive messages related to marital troubles would not be produced. There is no reason to require production of every text message exchanged between two people over a four-day span simply because there is one responsive message within that timeframe.

The examples in Figures A through C also illustrate why there is no basis for the TOUR's concern that "what constitutes 'personal' information" is "unclear." Plaintiffs' document review is being conducted by attorneys trained on this case who can readily distinguish responsive from non-responsive messages, contextual documents from non-contextual, and sensitive communications from mundane. Lawyers make these assessments all the time when reviewing documents. The categories of non-responsive texts that will be slip-sheeted—personal, health-related, and privacy-sensitive—are familiar and workable. *Cf.* Fed. R. Civ. P. 30(d)(3)(A).  Counsel routinely review documents for responsiveness, privilege, and privacy.  Nothing about text messages calls for a departure from the normal review process in which attorneys make these kinds of judgment calls.

The TOUR's primary complaint—its concern that "Plaintiffs may withhold information of significant relevance"—ignores that Plaintiffs' proposal only applies to *non-responsive* text messages. "[I]t is not [the requesting party's] place to require production of irrelevant documents so that his counsel may decide which texts are relevant to this case." *Betts v. Work Zone Traffic Control, Inc.*, 2017 WL 11493836, at *2 (D. Colo. Apr. 18, 2017). The producing party is "in the best position to determine which text message conversations require additional context and which do not, and therefore which texts require the surrounding conversation to be produced." *Marksman Sec. Corp. v. P.G. Sec., Inc.*, 2021 WL 4990442, at *2 (S.D. Fla. Mar. 19, 2021).

The TOUR's proposal does not address the privacy concerns Plaintiffs have raised, as it would still require production of irrelevant, sensitive information, such as pictures of children in swimsuits, messages about a sick child, and messages about family matters. This risk is real—the TOUR's own production includes messages of this nature. *E.g.,* PGA_TOUR0522016; PGA_TOUR0517360; PGA_TOUR0513954. That the TOUR has disregarded the privacy interests of its own custodians is no basis to compel Plaintiffs to do the same.

Finally, there are particular sensitivities to producing personal information in this case. The TOUR has made it a core part of its anti-LIV strategy to attack the personal reputations of LIV golfers (or anyone else who does business with LIV). When ▓▓▓▓▓▓▓ decided to play for LIV Golf, the TOUR's advisor, Clout, stated, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ PGA_TOUR0517300–0517301. Then, the PGA TOUR's advisor sent the PGA TOUR ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Producing sensitive personal information risks the TOUR using it to harass professional golfers who have joined or considered joining LIV Golf. The TOUR should not be able to use discovery in this case to gain access to personal non-responsive messages to further its unseemly attacks on LIV and its players.

| | | | |
|---|---|---|---|
| 1 | | | |
| 2 | Dated: February 15, 2023 | | KEKER, VAN NEST & PETERS LLP |
| 3 | | | |
| 4 | | By: | /s/ *Nicholas S. Goldberg* |
| | | | ELLIOT R. PETERS |
| 5 | | | DAVID SILBERT |
| | | | ERIC H. MACMICHAEL |
| 6 | | | R. ADAM LAURIDSEN |
| | | | NICHOLAS S. GOLDBERG |
| 7 | | | SOPHIE HOOD |
| 8 | | | Attorneys for Defendant |
| | | | PGA TOUR, INC. |

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ANTHONY J. DREYER
PATRICK FITZGERALD
KAREN M. LENT

Attorneys for Defendant
PGA TOUR, INC.

GIBSON, DUNN & CRUTCHER LLP

Dated:  February 15, 2023        By:   /s/ *Russell H. Falconer*
RACHEL S. BRASS
ROBERT C. WALTERS
SCOTT K. HVIDT
JOSHUA LIPTON
KRISTEN C. LIMARZI
LAUREN D. DANSEY

QUINN EMANUEL URQUHART & SULLIVAN LLP

JOHN B. QUINN
ROBERT P. FELDMAN
DOMINIC SURPRENANT
KEVIN TERUYA


Attorneys for Plaintiffs MATT JONES, BRYSON DECHAMBEAU, AND PETER UIHLEIN

**ECF ATTESTATION**

Pursuant to Local Rule 5-4.3.4, the filer of this document, Nicholas S. Goldberg, attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: February 15, 2023                                  KEKER, VAN NEST & PETERS LLP

                                                         By: /s/ *Nicholas S. Goldberg*
                                                              NICHOLAS S. GOLDBERG

                                                         Attorneys for Defendant
                                                         PGA TOUR, INC.