RACHEL S. BRASS, SBN 219301
 rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
 rwalters@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100
Facsimile:  650.801.5100

*Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant and Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF INC.,<br><br>Counter-Defendant. | CASE NO. CASE NO. 5:22-cv-04486-BLF<br><br>**DECLARATION OF JOHN LOFFHAGEN IN SUPPORT OF SEALING PORTIONS OF ORDER ON (1) MOTION OF PGA TOUR, INC. TO COMPEL COMPLIANCE WITH SUBPOENAS TO THIRD PARTIES PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN; (2) MOTION OF THIRD PARTIES PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR AL-RUMAYYAN'S MOTION TO QUASH SUBPOENAS; AND (3) ADMINISTRATIVE MOTIONS FOR LEAVE TO SUPPLEMENT MOTION TO COMPEL AND MOTION TO QUASH** |

I, John Loffhagen, hereby declare and state:

DocuSign Envelope ID: 0FA8CABE-9B77-47F4-8129-4F246DEEC7AB
Case 5:22-cv-04486-BLF   Document 277-3   Filed 02/16/23   Page 2 of 4

1.      I am the Chief Legal Officer of LIV Golf. I am authorized by LIV Golf to make this statement in support of redacting portions of the Order on (1) Motion of PGA Tour, Inc. to Compel Compliance With Subpoenas to Third Parties Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan; (2) Motion of Third Parties Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Al-Rumayyan's Motion to Quash Subpoenas; and (3) Administrative Motions for Leave to Supplement Motion to Compel and Motion to Quash (Dkt. No. 265). I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates. If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

2.      Lines 13:20-14:11, 23:11-18, 36:24-25, 36:28-37:2, 37:28, and 38:1 concern LIV's formation and plans at launch. This information is not public, and disclosure would cause competitive harm to LIV. For example, disclosure would invite speculation about LIV's business plan and future in the United States and deviation from its current strategy. The information also discloses LIV's anticipated approach to competitors (including the Tour), which could be exploited by those entities for competitive gain (e.g., in public relations).

3.      Lines 13:27-14:1 and 14:14-16 describe LIV financials, including its ownership, percentage investment, and risk allocation. LIV Golf goes to great length to keep this information confidential. Disclosure of this information would seriously harm LIV Golf, including by exposing its financial details to the public, prejudicing its ability to obtain future investment, and impacting existing and future negotiations. Outside investors may be deterred from investing in LIV given its existing investor structure or may demand different or better terms in response. Disclosure may also impact LIV's ability to change its business model. For example, if LIV decides to enter into a franchise model, potential franchisees may change the terms they require in light of the investor rights disclosed in this information.

4.      Lines 15:3-9, 16:3-17, and 27:5 describe LIV's internal decision making, including the involvement of LIV's investors in that decision making. Disclosure of this information would harm LIV. Competitors may exploit this information, for example, by seeking to influence LIV's investors. Disclosure would also harm LIV by (incorrectly) suggesting that LIV lacks authority to negotiate

2
LOFFHAGEN DECLARATION IN SUPPORT OF SEALING
CASE NO. 5:22-CV-04486-BLF

1   certain terms.  Potential business partners may be deterred from entering into negotiations with LIV if they believe that LIV requires investor consent to make decisions on certain matters.

5. Lines 15:11-16:2 and 36:21-24 describe LIV's negotiations with players, agents, and sponsors, including LIV's investors' involvement in those negotiations.  This information is not public, and disclosure would cause competitive harm to LIV.  For example, these lines reveal specific players and agents who negotiated with LIV and would expose them to unwanted attention.  This would prejudice LIV's ability to obtain future business, as potential partners may be concerned about the attention even talking to LIV creates.  LIV's ability to negotiate with potential partners confidentially is critical to its ability to obtain future business, in light of the anticompetitive public sentiment stirred up by the Tour.  Making those confidential negotiations public would severely prejudice LIV.  These lines also reveal LIV's internal processes for negotiations and decision making.  This information could be exploited by future negotiation partners or competitors to prejudice LIV.

6. Lines 25:20-25; 26:1-7, 26:9-11, and 26:17-21 describe a Shareholder Agreement that sets out LIV's relationship with its investors, including investor rights under that agreement.  This information is highly sensitive, and LIV goes to great lengths to keep it confidential.  Disclosure of the contents of the Shareholder Agreement would harm LIV, including by prejudicing LIV's ability to obtain outside funding.  The current investment structure gives certain investors rights that may deter outside funders or change the terms that those funders demand.  If those funders decide to invest, they may demand changes to LIV's investor rights or demand equivalent rights as those disclosed.  Outside business partners may also be influenced.  For example, if LIV decides to enter into a franchise model, potential franchisees may change the terms they require in light of the investor rights disclosed in the motion and proposed amended counterclaim.

7. The following table summarizes that harm that could result from disclosure:

| Document | Harm From Disclosure |
|---|---|
| Order at lines 13:20-14:11, 23:11-18, 36:24-25, 36:28-37:2, 37:28, and 38:1 | Competitive harm from exposure of LIV's formation and plans at launch, including by inviting speculation about LIV's business plan in the United States and deviation from its current strategy and disclosing LIV's anticipated approach to competitors (including the Tour), which |

| | | |
|---|---|---|
| | | could be exploited by those entities for competitive gain (e.g., in public relations). |
| | Order at lines 13:27-14:1 and 14:14-16 | Competitive harm from exposure of LIV financials, including ownership and percentage investment, including prejudice to obtaining outside funding, entering a franchise model, and negotiating better deal terms. |
| | Order at lines 15:3-9, 16:3-17, and 27:5 | Competitive harm from exposure of LIV's internal decision making processes, including harm from competitors exploiting the information (e.g., by seeking to influence LIV's investors) and harming negotiations by suggesting LIV lacks authority to negotiate terms. |
| | Order at 15:11-16:2 and 36:21-24 | Competitive harm from exposure of LIV's negotiations with players, agents, and sponsors, including by exposing the parties to unwanted attention, prejudicing LIV's ability to obtain future business, and hindering its ability to negotiate confidentially. These lines also reveal LIV's internal processes for negotiations and decision making. This information could be exploited by future negotiation partners and competitors to prejudice LIV. |
| | Order at 25:20-25; 26:1-7, 26:9-11, and 26:17-21 | Competitive harm from exposure of a Shareholder Agreement that sets out LIV's relationship with its investors, including by prejudicing LIV's ability to obtain outside funding, deterring or affecting terms demanded by outside funders, and deterring or affecting terms demanded by outside business partners. |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on <u>15 February 2023</u>, 2023.

                                                    *DocuSigned by:*
                                                    *John Loffhagen*
                                                    B047E35ED1C1478...
                                                    John Loffhagen