1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3    SAN JOSE DIVISION

4

JONES, ET AL,                    )    CV-22-4486-BLF

5                                 )

              PLAINTIFF,          )    SAN JOSE, CALIFORNIA

6                                 )

          VS.                     )    FEBRUARY 24, 2023

7                                 )

PGA TOUR, INC.,                   )    PAGES 1-51

8                                 )

              DEFENDANT.          )

9                                 )

_____  )

10

                    TRANSCRIPT OF PROCEEDINGS

11         BEFORE THE HONORABLE BETH LABSON FREEMAN
                  UNITED STATES DISTRICT JUDGE

12

13                  A P P E A R A N C E S

14

15    FOR THE PLAINTIFF:      **BY:  JOHN B. QUINN**
                              QUINN EMANUEL URQUHART &
16                            SULLIVAN, LLP
                              865 S. FIGUEROA ST, FL 10
17                            LOS ANGELES, CA 90017

18

19    FOR THE DEFENDANT:      **BY:  ELLIOT PETERS**
      PGA                          **NICHOLAS GOLDBERG**
20                            KEKER, VAN NEST & PETERS LLP
                              633 BATTERY STREET
21                            SAN FRANCISCO, CA 94111

22         APPEARANCES CONTINUED ON THE NEXT PAGE

23    OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185

24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        APPEARANCES CONTINUED:

 2        FOR THE PLAINTIFF:      BY:  JOSHUA LIPTON
                                  GIBSON DUNN
 3                                1050 CONNECTICUT AVE. N.W.
                                  WASHINGTON, DC 20036
 4

 5        FOR THE DEFENDANT:      BY:  CAROLYN B. LAMM
          PIF, AL-RUMAYYAN        WHITE AND CASE LLP
 6                                701 THIRTEENTH STREET, NW
                                  WASHINGTON, DC 20005
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1        SAN JOSE, CALIFORNIA                FEBRUARY 24, 2023

2                      P R O C E E D I N G S

3        (COURT CONVENED AT 10:00 A.M.)

4            THE COURT:  GOOD MORNING, EVERYONE.  THANK YOU FOR

5    JOINING ON ZOOM.

6            THE CLERK:  CALLING CASE 22-4486.  JONES, ET AL

7    VERSUS PGA TOUR, INC.

8        COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

9    IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANT.

10           MR. QUINN:  GOOD MORNING, YOUR HONOR.

11       MY NAME IS JOHN QUINN OF QUINN EMANUEL.  I'M APPEARING FOR

12   MATT JONES, BRYSON DECHAMBEAU AND PETER UIHLEIN, PLAINTIFFS IN

13   THIS MATTER.

14           MR. LIPTON:  GOOD MORNING, YOUR HONOR.

15       I'M JOSHUA LIPTON WITH GIBSON, DUNN & CRUTCHER, CO-COUNSEL

16   TO MR. QUINN, AND APPEARING ON BEHALF OF THE SAME PLAINTIFFS.

17           THE COURT:  GOOD MORNING.

18       IS THAT ALL FOR THE PLAINTIFFS, MR. QUINN, IS THAT YOUR

19   SIDE THAT'S APPEARING?

20           MR. QUINN:  YES, YOUR HONOR.

21           THE COURT:  GOOD.  ALL RIGHT.

22       MR. PETERS.

23           MR. PETERS:  GOOD MORNING, YOUR HONOR.

24       ELLIOT PETERS OF KEKER, VAN NEST & PETERS, APPEARING ALONG

25   WITH MY COLLEAGUE, NICK GOLDBERG, ON BEHALF OF THE PGA TOUR.
```

1          THE COURT:  GOOD MORNING.

2          AND I HAVE ONE OTHER COUNSEL WHO I'M LOOKING AT.  I DON'T

3     KNOW YOUR NAME.  I DON'T KNOW, I'M SORRY.

4          MS. LAMM:  YES.  GOOD MORNING, YOUR HONOR.

5          IT'S CAROLYN LAMM WITH WHITE AND CASE, AND I'M APPEARING

6     FOR PIF, AND HIS EXCELLENCY, MR. RUMAYYAN, WHO ARE SUBPOENA

7     PARTIES, NOT PARTIES YET, BUT SUBPOENAED.

8          THE COURT:  OKAY.  GOOD.  THANK YOU.

9          ALL RIGHT.  YOU HAVE ALL ASKED FOR CASE MANAGEMENT, SO I

10    WILL CERTAINLY LET YOU START THE AGENDA.

11         A LOT HAS HAPPENED IN THE CASE SINCE YOU MADE THAT

12    REQUEST, AND SO I HAVE BEEN READING ALL THE THINGS THAT HAVE

13    BEEN FILED SINCE THEN, BUT I KNOW SOME OF THE THINGS YOU WROTE

14    WERE IN ANTICIPATION OF JUDGE VAN KEULEN'S ORDER, AND NOW YOU

15    HAVE IT, AND NOW YOU ALSO HAVE MY ORDER GRANTING LEAVE TO FILE

16    AN AMENDED COUNTERCLAIM, WHICH I SEE, MR. PETERS, YOU FILED, I

17    THINK LAST NIGHT.

18         MR. PETERS:  CORRECT, YOUR HONOR.

19         THE COURT:  OKAY.  SO IT'S ONLY FILED, IT'S NOT

20    SERVED.  THERE'S BEEN NO ACCEPTANCE OF JURISDICTION UNDER THE

21    COUNTERCLAIM, SO IT DOESN'T ACTUALLY CHANGE ANYTHING, EXCEPT

22    THAT THAT'S GOTTEN STARTED, BUT I CERTAINLY DON'T PERCEIVE THE

23    PUBLIC INVESTMENT FUND OR MR. AL-RUMAYYAN TO BE PARTIES IN ANY

24    SENSE AT THIS POINT.

25         SO MS. LAMM, TO THE EXTENT THAT'S YOUR -- I KNOW THAT

1    WOULD BE YOUR POSITION, AND I THINK WE WOULD BE IN AGREEMENT

2    TODAY ON THAT ISSUE.

3         ALL RIGHT.

4              MR. PETERS:  YOUR HONOR --

5              THE COURT:  YES.

6              MR. PETERS:  IF I MAY.  I THINK IT HAS BEEN SERVED

7    UNDER THE ECF SYSTEM.  MS. LAMM AND HER FIRM FILED NOTICES OF

8    APPEARANCES ON BEHALF OF THOSE PARTIES, ACKNOWLEDGING THAT IT

9    WOULD BE PROPER TO SERVE THEM.

10        IT'S NOW BEEN FILED ON THE ECF SYSTEM, I THINK THAT IS

11   SERVICE.  I'M NOT SURE THAT'S RELEVANT TO THE CASE MANAGEMENT

12   ISSUES, BUT I THINK THEY ARE PARTIES AND THEY HAVE BEEN SERVED.

13             THE COURT:  WELL, I'M NOT AWARE THAT THEY HAVE AGREED

14   TO ACCEPT SERVICE OF A PLEADING BY ECF.  I LEAVE THAT TO YOU.

15   I'M NOT GOING TO RULE ON THAT TODAY.

16        AND MS. LAMM, TO THE EXTENT THAT THAT WAS NOT YOUR

17   INTENTION, YOU AND MR. PETERS WILL HAVE THAT DISCUSSION

18   OFFLINE, I THINK.

19             MS. LAMM:  THANK YOU, YOUR HONOR.

20        THAT IS ABSOLUTELY NOT MY VIEW.  I HAVE NO AUTHORITY TO

21   ACCEPT SERVICE, AND HE KNOWS THAT.

22             THE COURT:  ALL RIGHT.  AS I SAID, YOU TWO WILL TALK

23   ABOUT THAT OFFLINE.  I DON'T NEED TO BE PART OF THAT

24   DISCUSSION.

25        ALL RIGHT.  SO MR. PETERS, I THINK YOU ARE THE ONE WHO

1  ACTUALLY ASKED FOR THIS, OSTENSIBLY WAY BACK, AT LEAST A WEEK

2  AGO WHEN YOU FILED THIS, YOUR CONCERN WAS CONTINUING THE TRIAL

3  DATE.

4        I'VE READ THE LENGTHY SUBMISSION, THANK YOU BOTH FOR

5  LAYING OUT YOUR POSITIONS.  IS THAT THE FIRST ISSUE YOU WANT TO

6  DEAL WITH, OR IS THERE ANOTHER ORDER OF ISSUES THAT WE SHOULD

7  ADDRESS?

8             MR. PETERS:  NO, THAT'S THE ISSUE, YOUR HONOR.

9        I THINK OUR CONCERNS HAVE ONLY BECOME MORE ACUTE IN THE

10  LAST WEEK, NOW THAT WE HAVE BEEN GIVEN LEAVE TO AMEND TO ADD

11  PIF AND MR. AL-RUMAYYAN AS PARTIES, NOW THAT MAGISTRATE

12  JUDGE VAN KEULEN IN, WHAT WE VIEW, IS A CAREFULLY REASONED

13  58-PAGE OPINION, HAS REJECTED THEIR SOVEREIGN IMMUNITY

14  ARGUMENTS AND FOUND THAT THE COURT HAS JURISDICTION OVER BOTH

15  OF THEM.

16        AND WE GO BACK TO LAST AUGUST WHEN THIS SCHEDULE WAS SET,

17  I'M NOT TELLING THE COURT ANYTHING IT DOESN'T KNOW, BUT THE

18  SCHEDULE WAS SET BASED ON VERY CLEAR REPRESENTATIONS MADE TO

19  THIS COURT, BY MR. WALTERS OF THE GIBSON, DUNN & CRUTCHER FIRM,

20  WHO SAID UNEQUIVOCALLY THAT PIF AND THE SAUDI OWNERS OF LIV

21  GOLF WOULD COOPERATE FULLY, THEY WOULD MOVE HEAVEN AND EARTH,

22  IT WOULD ALL GO SWIMMINGLY.

23        THAT TURNED OUT TO NOT TO HAVE BEEN TRUE AT ALL.  IN FACT,

24  THEY HAVE ERECTED EVERY SINGLE BARRIER THEY COULD THINK OF TO

25  NOT ONLY TO PROVIDING DISCOVERY, BUT I'M SURE WE ARE GOING TO

1    SEE IT IN CONNECTION NOW WITH THE AMENDED COUNTERCLAIM.  AND IT

2    WOULD PROBABLY BE HELPFUL TO KNOW WHAT THEY PLAN TO DO, BUT

3    WHAT I ASSUME THEY PLAN TO DO, BECAUSE THEY HAVE SAID SO, IS

4    APPEAL MAGISTRATE JUDGE VAN KEULEN'S RULE TO YOUR HONOR, FILE A

5    MOTION TO DISMISS OUR AMENDED COUNTERCLAIM, OR PERHAPS EVEN

6    CONTEST SERVICE OF THAT NOW.  I'M CATCHING WIND OF THAT FOR THE

7    FIRST TIME THIS MORNING.

8         BUT THERE COULD BE AN APPEAL FROM YOUR HONOR'S RULING IF,

9    FOR EXAMPLE, YOU WERE TO DENY A MOTION TO DISMISS THE AMENDED

10   COUNTERCLAIM, AND I ASSUME THEY WILL MOVE TO DISMISS IT BASED

11   ON THE SAME GROUNDS THAT MAGISTRATE VAN KEULEN HAS REJECTED,

12   THEN THEY MIGHT APPEAL THAT TO THE NINTH CIRCUIT.

13        IN OTHER WORDS, IT COULD NOW TAKE US A VERY LONG TIME, NOT

14   ONLY TO MAKE THEM PARTIES AND FORCE THEM TO COMPLY WITH THEIR

15   DISCOVERY OBLIGATIONS AS PARTIES, WHICH THEY HAVE ALREADY

16   INDICATED TO US THEY HAVE NO INTENTION OF DOING UNTIL THE

17   MOTION TO DISMISS HAS BEEN RESOLVED, EVEN IF THEY WEREN'T

18   PARTIES, IT'S APPARENTLY GOING TO TAKE US A LONG TIME TO GET

19   THEM TO COOPERATE AND PROVIDE US WITH DISCOVERY, FOR REASONS

20   EXPLAINED FROM THE BEGINNING OF THE CASE AND REITERATED IN OUR

21   CASE MANAGEMENT CONFERENCE STATEMENT.

22        THE DISCOVERY WE SEEK FROM THEM IS INTEGRAL, BOTH TO THE

23   DEFENSE OF THE ANTITRUST CLAIMS, AND TO THE PROSECUTION OF OUR

24   COUNTERCLAIMS AGAINST LIV, PIF AND MR. AL-RUMAYYAN.  AND SO

25   THEIR FAILURE TO COMPLY WITH THEIR OBLIGATIONS AND THEIR

1    INTENTION TO CONTINUE TO LITIGATE THEM, AND I DON'T CRITICIZE

2    THEM FOR PURSUING THEIR RIGHTS TO LITIGATE WHATEVER THEY ARE

3    ENTITLED TO LITIGATE, BUT IT'S SIMPLY NOT FAIR TO US TO PROCEED

4    IN A CASE WHERE THEY ARE NOT GOING TO PROVIDE CRITICAL

5    DISCOVERY.  AND IT'S NOT REALLY FAIR TO THE COURT, FOR THIS

6    COURT TO HAVE SET AN EXPEDITED SCHEDULE AT THEIR REQUEST, BASED

7    ON REPRESENTATIONS WHICH TURN OUT NOT TO BE TRUE.

8          THE CASE HAS CHANGED SINCE THE BEGINNING, IT'S PRIMARILY A

9    CASE BETWEEN PIF AND ITS SHELL CORPORATION, REALLY, LIV GOLF,

10   AND THE PGA TOUR.  YES, THERE'S GOLFERS INVOLVED, BUT IT'S

11   REALLY A STRUGGLE BETWEEN THESE TWO COMPETING GOLF LEAGUES, OR

12   TOURS, OR HOWEVER YOU WANT TO DESCRIBE THEM.

13         THE EXIGENCIES THAT WERE IDENTIFIED IN THE BEGINNING,

14   REALLY HAVE DIMINISHED CONSIDERABLY, IN TERMS OF GOLFERS.

15   THERE'S A LOT OF HYPERBOLE BY THE PLAINTIFFS, SAYING THESE

16   GOLFERS CAN'T MAKE A LIVING.

17         AS THE COURT WELL KNOWS, THESE GOLFERS, THE THREE OF THEM

18   THAT REMAIN OF THE ELEVEN, HAVE BEEN PAID A KINGS RANDOM TO

19   PLAY FOR LIV.  THEY ARE NOT STARVING, THEY ARE NOT FACING ANY

20   KIND OF HARM, LET ALONE IRREPARABLE HARM, AS THIS COURT ALREADY

21   RULED IN CONNECTION WITH SOME OF THE OTHER GOLFERS.

22         AND SO THE PRACTICAL REALITIES OF THIS CASE, I THINK ARE

23   VERY, VERY DIFFERENT THAN WHAT THE COURT ENCOUNTERED WHEN THE

24   ORIGINAL SCHEDULE WAS SET.

25         WE, ON BEHALF OF THE PGA TOUR, HAVE BEEN WORKING VERY,

1    VERY HARD TO COMPLY WITH THIS COURT'S SCHEDULE.  I DON'T NEED

2    TO GO INTO THAT CHAPTER AND VERSE, BUT I COULD.  MAGISTRATE

3    JUDGE VAN KEULEN HAS TO RESOLVE CERTAIN ISSUES, BUT WE HAVE

4    BEEN PRESSING AHEAD, BUT WE CAN'T GO AHEAD, WE CAN'T ACCELERATE

5    THE SCHEDULE FOR THIS VERY IMPORTANT DISCOVERY FROM PIF AND

6    MR. AL-RUMAYYAN, WHILE THEY CONTINUE TO ERECT ALL OF THESE

7    LEGAL BARRIERS.

8          AND SOMETHING HAS GOT TO GIVE.  AND I HAVE IN FRONT OF ME,

9    THE TRANSCRIPT FROM WHEN WE WERE BEFORE YOU LAST TIME, AND

10   OBVIOUSLY ALL OF US LAWYERS LISTEN CAREFULLY TO WHAT YOU SAY,

11   AND DESCRIBING ALMOST THIS EXACT SCENARIO, YOUR HONOR SAID,

12   "THIS WHOLE CASE WILL COME TO A SCREECHING HALT IF THIS ISN'T

13   WORKED OUT."  AND WHAT THE COURT WAS REFERRING TO WAS GETTING

14   WORKED OUT, THIS NEED FOR US TO GET ACCESS TO THIS DISCOVERY.

15         WELL, IT HASN'T BEEN WORKED OUT.  WE HAVE LITIGATED IT.

16   SO FAR, OUR POSITION HAS BEEN VINDICATED BY JUDGE VAN KEULEN,

17   AND TO SOME LIMITED EXTENT, BY YOUR HONOR IN ALLOWING US LEAVE

18   TO AMEND THE COUNTERCLAIM.

19         AND I JUST THINK WE ARE AT THAT POINT NOW, OR WE WILL

20   INEVITABLY BE AT THAT POINT VERY SOON, AND SO WE ARE ASKING FOR

21   YOUR HONOR'S ASSISTANCE IN SETTING A -- IN VACATING THE TRIAL

22   DATE AND SETTING NEW DEADLINES.

23         IT'S SIMPLY INCONCEIVABLE THAT THE DOCUMENT DISCOVERY

24   CUTOFF CAN BE COMPLIED WITH AT THE END OF NEXT MONTH, AT THE

25   END OF MARCH, EVEN AS CONTINUED BY THE COURT.  THE DEPOSITIONS

1    CAN'T BE DONE BY THE END OF MAY, BECAUSE PIF AND

2    MR. AL-RUMAYYAN AREN'T GOING TO COOPERATE, AND I DON'T THINK

3    IT'S REALISTIC TO -- I MEAN, IT COULD TAKE QUITE A WHILE BEFORE

4    THOSE ISSUES ARE RESOLVED, AND THEY HAVE CHOSEN TO LITIGATE

5    THEM AND REFUSED TO COMPLY WITH DISCOVERY.

6         SO I THINK THE SCHEDULE -- THEY HAVE THE CHOICE, THEY CAN

7    COMPLY.  IF THEY DON'T WANT TO, THEN THE SCHEDULE HAS GOT TO

8    GIVE.

9         THAT'S OUR VIEW, YOUR HONOR, AND I WOULD BE HAPPY TO

10   ANSWER ANY QUESTIONS.

11             THE COURT:  YES.

12        MR. QUINN'S AND MR. GOLDBERG'S OPPOSITION TO THIS REQUEST,

13   THEY ARGUE THAT THIS DISCOVERY IS ONLY RELEVANT TO YOUR

14   COUNTERCLAIM AND NOT TO THEIR ANTITRUST CASE.  AND THEY SUGGEST

15   THAT NO CONTINUANCE IS NECESSARY OR THAT THERE COULD BE

16   BIFURCATION.

17        I WILL PUT THE BIFURCATION TO THE SIDE FOR RIGHT NOW, BUT

18   FOR YOU TO TELL ME IT'S INTERTWINED IS FINE, BUT THAT DOESN'T

19   PERSUADE ME THAT IT IS.

20        SO WHAT CAN YOU TELL ME ABOUT THIS DISCOVERY THAT IS

21   INTERTWINED WITH THE ANTITRUST CLAIMS THAT ARE BEING PROSECUTED

22   AGAINST YOUR CLIENT?

23             MR. PETERS:  OF COURSE.

24        THE DISCOVERY FROM PIF AND MR. AL-RUMAYYAN IS RELEVANT TO

25   THE DEFINITION OF A MARKET, IT'S RELEVANT TO THE EXISTENCE OF

1    COMPETITION BETWEEN LIV GOLF AND THE PGA TOUR.  THEY CONTEND

2    THAT WE ARE A MONOPOLY.  WE CONTEND THAT THEIR CONDUCT AND

3    ACTIVITIES, WHICH THEY KNOW ABOUT MORE THAN WE DO, WILL

4    ESTABLISH THAT THERE'S ROBUST COMPETITION IN THE WORLD OF GOLF.

5         THEIR CONTRACTS, AS YOUR HONOR WELL KNOWS, CONTAIN MANY OF

6    THE EXACT SAME PROVISIONS THAT THEY CLAIM VIOLATE THE --

7         THE COURT:  SO "THEIR CONTRACTS" MEANING LIV'S

8    CONTRACTS, BECAUSE PIF AND MR. AL-RUMAYYAN ARE NOT SIGNATORIES

9    TO ANY CONTRACT I'M AWARE OF, EXCEPT MAYBE AGREEMENTS --

10   SHAREHOLDER AGREEMENTS BETWEEN LIV AND PIF AND MR. AL-RUMAYYAN;

11   ISN'T THAT CORRECT?

12        MR. PETERS:  YOU ARE ABSOLUTELY RIGHT, YOUR HONOR,

13   BUT EACH OF THOSE CONTRACTS IDENTIFIES THE LAWYERS WHO WERE

14   REPRESENTING PIF, THE GIBSON DUNN FIRM, AS THE PEOPLE WHO

15   DRAFTED THE CONTRACTS.  AND MR. AL-RUMAYYAN, FROM THE DOCUMENTS

16   WE'VE SEEN, AND THEY ARE LIMITED DOCUMENTS WE'VE SEEN, WAS

17   INVOLVED IN THE NEGOTIATIONS, HE WAS INVOLVED IN APPROVING THE

18   CONTRACTS, HE WAS INVOLVED IN FUNDING THE CONTRACTS.

19        THE COURT:  ALL RIGHT.

20        MR. PETERS:  AND SO HIS TESTIMONY ABOUT THOSE

21   CONTRACTURAL PROVISIONS, WHICH GO TO THE HEART OF THE ANTITRUST

22   CLAIMS AND WHY THEY ARE NECESSARY IN THE PIF CONTRACTS, IS

23   GOING TO BE RELEVANT TESTIMONY, HIGHLY RELEVANT ON THE ISSUE OF

24   WHETHER OR NOT THOSE PROVISIONS ARE PRO-COMPETITIVE, AS WE

25   CONTEND, OR ANTI-COMPETITIVE, AS HAS BEEN ALLEGED IN THE

```
1        COMPLAINT.

2             DAMAGES ISSUES ARE ALSO CRITICAL, AND PIF'S WILLINGNESS

3    AND ABILITY TO CONTINUE TO SUPPLY MONEY, WHETHER THEY HAVE BEEN

4    HARMED, IS RELEVANT UNDER THE ANTITRUST LAWS.

5             AND THEN OF COURSE OUR CLAIMS DO INVOLVE THE SAME SET OF

6    OPERATIVE -- SET OF NUCLEUS OF OPERATIVE FACTS, YOUR HONOR,

7    BECAUSE THEY ALSO CENTER ON THE PIF'S/LIV RECRUITMENT OF

8    GOLFERS, NEGOTIATION WITH GOLFERS, OFFER OF MONEY TO GOLFERS,

9    AND THAT'S WHAT THE COUNTERCLAIMS FOCUS ON.

10            AND THE LIV AND PIF COUNTERCLAIMS ARE CLOSELY RELATED

11   BECAUSE THEY INVOLVE THE SAME CONDUCT, AND THAT CONDUCT IS ALSO

12   INTEGRAL TO ASSESSMENT OF THE ISSUES OF MONOPOLY, THE MARKETS,

13   COMPOSITION, DAMAGES, ALL OF WHICH ARE INVOLVED IN THE

14   ANTITRUST CASE.

15            WE THINK THAT THE VENN DIAGRAM IS KIND OF A BULLS-EYE FOR

16   BOTH OF THEM, AND THAT THESE TOPICS ARE CRITICAL.  AND YOU

17   KNOW, LIV, A LOT OF THEIR EXECUTIVES WHO REPORT TO

18   MR. AL-RUMAYYAN, THEY COMMUNICATE WITH HIM WEEKLY, THEY

19   MAINTAIN KIND OF A DASHBOARD OF ISSUES THAT HE'S RESPONSIBLE

20   FOR, THAT'S A DOCUMENT THAT WE SHOWED TO MAGISTRATE

21   JUDGE VAN KEULEN, AND THAT SHE REFERRED TO IN HER OPINION, AND

22   THEN A LOT OF THOSE PEOPLE HAVE LEFT LIV.  SO MR. AL-RUMAYYAN

23   REALLY IS, I THINK, THE PERSON MOST KNOWLEDGEABLE ABOUT LIV AND

24   PIF.

25            AND SO THE IDEA THAT WE CAN GO AHEAD AND DO THAT CASE
```

1    WITHOUT ACCESS TO THEIR DOCUMENTS, THEIR COMMUNICATIONS AND

2    THEIR TESTIMONY, I DON'T THINK IS FAIR TO THE PGA TOUR,

3    YOUR HONOR.

4        THE COURT:  WELL, IT SOUNDS TO ME AS THOUGH YOUR

5    ARGUMENT REALLY IS SEPARATE FROM YOUR COUNTERCLAIM.  I'M ONLY

6    INTERESTED IN THE RELATIONSHIP TO THE CASE IN CHIEF FILED BY

7    THE PLAINTIFFS HERE.  THAT'S WHAT I'M LISTENING FOR.

8        I DO NOTE THAT, SINCE I WENT BACK AND READ THE AMENDED

9    PLEADING, THAT LIV HAS ITS OWN INTENTIONAL INTERFERENCE CLAIMS

10    AGAINST PGA TOUR.  SO IT SEEMS TO ME THAT I AM CERTAINLY NOT

11    BIFURCATING THE CASE THEY FILED.

12        AND SO IT MAY BE THAT THERE IS OVERLAP THAT IF -- UNLESS

13    THEY WANT TO DISMISS THOSE CLAIMS, WHICH THEY ARE ALWAYS

14    WELCOME TO DO, BUT THAT THAT'S A CONCERN FOR YOU TO BE ABLE TO

15    DEFEND AGAINST THE CLAIMS THAT YOU HAVE INTERFERED, THAT YOU

16    MAY NEED DISCOVERY AGAINST PIF AND MR. AL-RUMAYYAN, BUT I WILL

17    LET MR. QUINN ADDRESS THAT.

18        MR. PETERS:  I THINK THAT'S A GOOD POINT, YOUR HONOR,

19    BECAUSE ALL OF THE INTERFERENCE IN THE INDUCING BREACH OF

20    CONTRACT CLAIMS RELATE TO THE COMPETITION FOR THESE GOLFERS,

21    THE OFFERS, THE DISCUSSIONS THAT WERE MADE, OR HAD WITH THEM IN

22    2022 WHEN SOME OF THEM DECIDED TO JUMP FROM THE PGA TOUR TO

23    LIV, THAT'S REALLY WHAT THIS CASE FOCUSES ON.

24        AND THE EVIDENCE REALLY DOES -- THE ANTITRUST CLAIMS DO

25    REQUIRE THE SAME EVIDENCE, THE DEFENSE OF THEM DO, BECAUSE THE

1    REASONABLENESS OF WHAT THE PGA TOUR DID, AND OF OUR

2    CONTRACTURAL PROVISIONS, IS REFLECTED IN THE AGREEMENTS THAT

3    PIF AND LIV MADE WITH THE GOLFERS TOO.

4         THE COURT:  WELL, OF COURSE I DON'T WANT TO LOSE

5    SIGHT OF THE FACT THAT IT IS -- PLAINTIFFS ARE TRYING TO

6    ESTABLISH THAT PGA TOUR VIOLATED THE ANTITRUST LAWS, AND YOU

7    ARE ESSENTIALLY TRYING TO PUT THEM ON TRIAL FOR THEIR CONDUCT.

8         AND THAT'S -- AND YOU CAN DO THAT THROUGH -- MAYBE YOU

9    HAVE SOME DEFENSES, MAYBE YOU HAVE SOME COUNTERCLAIMS WHERE YOU

10   ARE PUTTING THEM ON TRIAL, BUT YOU HAVEN'T ACCUSED THEM OF

11   ANTITRUST VIOLATIONS, AND WE ARE NOT HAVING A TRIAL ON WHETHER

12   THEY VIOLATED THE ANTITRUST LAWS.  THEY DON'T HAVE MARKET

13   SHARE, THAT WOULDN'T GET OUT OF THE GATE, BUT I -- I WANT TO BE

14   SURE THAT WE DON'T LET ALL OF THIS BLEED INTO A FOREVER

15   LITIGATION.

16        MR. PETERS:  UNDERSTOOD, YOUR HONOR.

17        BUT CERTAINLY THEIR CONDUCT IS -- EXCUSE ME -- THEIR

18   CONDUCT AND THEIR CONTRACTURAL PROVISIONS ARE RELEVANT TO THE

19   REASONABLENESS AND THE PRO-COMPETITIVE NATURE OF OUR CONTRACTS.

20        THEIR NEGOTIATIONS WITH THE GOLFERS ARE RELEVANT TO THE

21   PRESENCE OF COMPETITION AND THE ABSENCE OF MONOPOLY POWER.

22   THOSE ARE BULLS-EYE TOPICS IN THE ANTITRUST CASE THAT THEY'VE

23   BROUGHT, AND WE WANT THAT EVIDENCE TO DEFEND AGAINST THEIR CASE

24   AS WELL AS TO PURSUE OUR COUNTERCLAIMS.

25        BUT WE VIEW THIS EVIDENCE AS INTEGRAL TO OUR DEFENSE OF

1    THE ANTITRUST CLAIMS, WHICH IS WHY, YOUR HONOR, BACK IN AUGUST,

2    WHEN WE WERE DISCUSSING THIS SCHEDULE, I SAID TO YOUR HONOR

3    ABOUT THE SCHEDULE, MY CONCERN IS GETTING ACCESS TO THIS

4    EVIDENCE FROM SAUDI ARABIA.  AND COUNSEL FOR THE PLAINTIFFS

5    DIDN'T SAY OH, THAT'S IRRELEVANT, WHAT ARE YOU TALKING ABOUT?

6    THEY SAID, WE WILL MOVE HEAVEN AND EARTH, WE WILL COOPERATE,

7    BECAUSE THEY RECOGNIZED THE RELEVANCE OF IT.

8        WE MAY HEAR A DIFFERENT TUNE TODAY, BUT THAT WAS THEIR

9    POSITION AT THAT TIME, AND THEY AGREED WITH US THAT THE

10   EVIDENCE WAS DISCOVERABLE AND NECESSARY AND THEY WERE GOING TO

11   MOVE HEAVEN AND EARTH TO GET IT FOR US.  INSTEAD, THEY MOVED

12   HEAVEN AND EARTH TO PREVENT US FROM GETTING IT.

13            THE COURT:  ALL RIGHT.

14        MR. QUINN, I THINK YOU KNOW THAT I HAVE WANTED TO GET YOUR

15   CLIENT'S CASE BEFORE A JURY AS QUICKLY AS POSSIBLE FROM THE

16   TIME IT WAS FIRST FILED.  AND IT'S OF COURSE MY GOAL STILL, BUT

17   OF COURSE THE DEFENDANTS HAVE RIGHTS, AND I HAVE TO BE CAREFUL

18   THAT THEY ARE ALLOWED TO PRESENT THEIR CASE AS WELL.

19        IT SEEMS TO ME THAT REGARDLESS OF WHETHER MR. AL-RUMAYYAN

20   IS A PARTY OR NOT, HE IS AN INTEGRAL PARTICIPANT IN LIV'S

21   CONDUCT.

22        AND SO FOCUSING ON THE ANTITRUST CASE ITSELF, WHICH IS

23   REALLY -- AND YOUR OTHER CLAIMS, JUST YOUR DIRECT CASE, I

24   WELCOME YOUR COMMENTS ON THE NECESSITY OF A TRIAL CONTINUANCE.

25            MR. QUINN:  YES.  THANK YOU VERY MUCH, YOUR HONOR.

1    AND I DO APPRECIATE THE OPPORTUNITY TO ADDRESS THE

2    ANTITRUST CLAIMS, AS WELL AS THE COUNTERCLAIMS, AND THE

3    POTENTIAL ROLE OF THE PIF AND MR. AL-RUMAYYAN WITH RESPECT TO

4    THOSE CLAIMS.

5    I MEAN, JUST TO JUMP TO THE BOTTOM LINE, FROM OUR

6    PERSPECTIVE, YOUR HONOR, THIS IS ALL ABOUT DELAY, CANDIDLY.

7    IT'S ABOUT DELAY, IT'S THE THIRD TIME.  YOU KNOW, IT'S -- I

8    LISTENED CAREFULLY TO MR. PETERS, YOU ASKED HIM THE QUESTION

9    ABOUT THE RELEVANCE TO THE ANTITRUST CLAIM, I LISTENED

10   CAREFULLY TO WHAT HE SAID, AND HE SAID, WELL, DISCOVERY OF THE

11   PIF AND MR. AL-RUMAYYAN IS RELEVANT TO THE DEFINITION OF A

12   MARKET, TO THE EXISTENCE OF COMPETITION, AND TO DAMAGES, AS TO

13   WHETHER THERE CAN BE ANY DAMAGES IF THERE'S A SOVEREIGN WEALTH

14   FUND THAT'S BEHIND THIS THAT'S PREPARED TO, PRESUMABLY, WAS THE

15   ARGUMENT, HE DIDN'T SPELL THIS OUT, TO FUND THIS INDEFINITELY.

16   I MEAN, WITH ALL RESPECT, THERE IS -- WHAT PIF HAS TO SAY

17   OR WHAT MR. AL-RUMAYYAN HAS TO SAY HAS NOTHING TO DO WITH THE

18   DEFINITION OF THE MARKET THAT WE ARE TALKING ABOUT HERE.  THE

19   MARKET FOR ELITE GOLF, WHERE I THINK BY A TRADITIONAL ANTITRUST

20   DEFINITION, THERE REALLY CAN'T BE ANY DISPUTE THAT THE PGA TOUR

21   IS ESSENTIALLY A MONOPOLIST.

22   PIF, ITSELF, IS NOT A COMPETITOR.  PIF AND MR. AL-RUMAYYAN

23   ARE NOT PARTICIPANTS IN THAT MARKET.  PIF -- THE PIF IS AN

24   INVESTOR IN A NEW ENTERPRISE THAT SOUGHT TO BE A NEW ENTRANT IN

25   THE MARKET WHERE THE TOUR IS A MONOPOLIST.

1      THIS CASE IS ABOUT THE ACTIONS THAT THE TOUR HAS TAKEN IN

2    RESPONSE TO THAT EFFORT FOR A NEW ENTRANT, LIV, NOT PIF, BUT

3    LIV, TO ENTER THAT MARKET.

4      AND BY THE WAY, JUST AS AN ASIDE, THERE'S BEEN A LOT OF

5    TALK, KIND OF FAST AND LOOSE, WITHOUT CITATION TO EVIDENCE,

6    INCLUDING IN THE BRIEFING LEADING UP TO THIS HEARING, ABOUT HOW

7    LIV IS A MERE SHELL INSTRUMENTALITY, ET CETERA, OF THE PIF.

8    YOU JUST HEARD SOME OF THAT FROM MR. PETERS.

9      THE RELATIONSHIP BETWEEN LIV GOLF AND THE PIF WAS

10   EXTENSIVELY BRIEFED FAIRLY WELL BEFORE THE MAGISTRATE.  THEY

11   NEVER CLAIMED, NEVER ATTEMPTED TO MAKE OUT ANY CASE FOR ALTER

12   EGO, THAT CORPORATE FORMALITIES HAD NOT BEEN OBSERVED.

13     I MEAN, THIS IS RHETORIC THAT WE HAVE HEARD FOR THE FIRST

14   TIME IN THE BRIEFING ON THIS MOTION.  THE STATE OF THE EVIDENCE

15   IS IT'S A -- LIV GOLF IS A SEPARATE ENTITY, THE LARGEST

16   INVESTOR AND THE LARGEST SHAREHOLDER, BENEFICIAL OWNER, IS

17   ULTIMATELY PIF.  THERE ARE MULTIPLE LAYERS OF CORPORATIONS THAT

18   STAND BETWEEN THE PLAINTIFF AND THE PIF, BUT IT JUST WOULDN'T

19   BE ACCURATE TO SAY, ESSENTIALLY, THEY ARE ONE AND THE SAME AND

20   THEY ARE A SHELL AND INSTRUMENTALITY.

21     SIMILARLY, WE HEARD SOME FAST AND LOOSE LANGUAGE ABOUT

22   DAILY COMMUNICATION BETWEEN LIV GOLF AND MR. AL-RUMAYYAN.  I

23   DEFY MR. PETERS TO FIND EVIDENCE OF THAT.  IF WE ACTUALLY LOOK

24   IN THE RECORD, THE RELATIONSHIP HERE IS THAT -- IS WHAT YOU

25   WOULD EXPECT OF A REPRESENTATIVE OF AN ULTIMATE INVESTOR IN A

1    NEW STARTUP.  WE WITH ALL HAVE EXPERIENCE WITH THAT.

2         INVESTORS IN STARTUP ENTERPRISES DO STAY INVOLVED, THEY DO

3    SOMETIMES, AS TO CERTAIN SUBJECTS, THEIR CONSENT IS REQUIRED

4    BEFORE CERTAIN ACTIONS ARE TAKEN.  THERE'S NOTHING MAGICAL OR

5    UNUSUAL ABOUT THAT OR SUGGESTS THAT WE SHOULD IGNORE THE

6    SEPARATENESS OR THE DIFFERENCE BETWEEN PIF --

7              THE COURT:  BUT MR. QUINN, I ACTUALLY THINK THE REAL

8     ISSUE IS, IS IT REASONABLE THAT MR. AL-RUMAYYAN HAS EVIDENCE

9      THAT IS CRITICAL TO THE DEVELOPMENT OF THE CASE.

10        I JUST DON'T -- BASED ON EVERYTHING I'VE READ, REGARDLESS

11   OF WHETHER THEY ARE SEPARATE LEGAL ENTITIES, I WILL GRANT YOU

12   THAT FOR THE TIME BEING, BECAUSE YOU ARE RIGHT, THERE'S BEEN NO

13   PROOF OF IT OTHERWISE, JUST AN ASSERTION.  HE IS IN UP TO HIS

14   EYEBALLS IN EVERYTHING THAT LIV HAS DONE.  AND SO HE

15   POTENTIALLY HAS RELEVANT EVIDENCE THAT MAY BE -- LEAD TO

16   ADMISSIBLE EVIDENCE AT TRIAL.  IT'S A PRETTY LOW STANDARD.

17        NOW, MR. PETERS HAS OTHER PROBLEMS BECAUSE HE'S NOT --

18   WHETHER HE CAN BE COMPELLED TO GIVE TESTIMONY IN THE

19   UNITED STATES, THAT'S A SEPARATE ISSUE.

20        AND I SAW THE OBJECTION THAT MR. PETERS FILED YESTERDAY TO

21   JUDGE VAN KEULEN'S ORDER, WE ARE NOT DEALING WITH THAT NOW.

22   BUT MR. AL-RUMAYYAN IS NOT GOING TO BE EXTRACTED FROM THE CASE.

23   HE MIGHT BE PROTECTED FROM COMING TO THE U.S. TO GIVE

24   TESTIMONY.  THAT'S A DIFFERENT ISSUE THAT MS. LAMM WILL DEAL

25   WITH, BUT HE'S NOT -- I JUST SAY, HE'S INTEGRALLY INVOLVED, AND

1    I THINK IT'S LUDICROUS TO SUGGEST OTHERWISE.

2              MR. QUINN:  YOUR HONOR, I HOPE I'M NOT GOING TO

3    SUGGEST SOMETHING LUDICROUS.

4              THE COURT:  I HOPE NOT TOO.

5              MR. QUINN:  BUT I THINK GIVING THE DEFENSE HERE THEIR

6    BEST CASE, THEY WOULD HAVE US BELIEVE THAT THERE'S A TORTIOUS

7    INTERFERENCE CASE.  THEY WOULD HAVE US BELIEVE THAT THE PIF AND

8    MR. AL-RUMAYYAN TORTIOUSLY INTERFERED WITH EXISTING CONTRACTS

9    WITH PLAYERS AND GAVE THEM LOTS OF MONEY AND LURED THEM AWAY,

10   AND THAT THAT WAS TORTIOUS INTERFERENCE.

11        IF ANY OF US HAVE THAT IMPRESSION, THAT THAT IS THEIR

12   CASE, WE WOULD BE FLAT WRONG, BECAUSE THEY COMPLETELY, IN THEIR

13   REPLY BRIEF ON THE MOTION FOR LEAVE TO AMEND, DISCLAIMED THAT

14   CASE.

15        THE PROBLEM WITH THAT CASE, IF YOU OFFER MONEY TO LEAVE,

16   THESE ARE AT-WILL CONTRACT PLAYERS, AND YOU KNOW, THAT'S A FREE

17   MARKET, THEY COULD LEAVE.  AND THERE WOULD BE NO TORTIOUS

18   INTERFERENCE CLAIM, EITHER UNDER CALIFORNIA OR FLORIDA LAW, WE

19   POINTED OUT IN THE OPPOSITION, UNLESS THEY COULD SHOW

20   INDEPENDENTLY WRONGFUL CONDUCT.

21        SO IN THE REPLY, THEY HAD TO RESHAPE THEIR TORTIOUS

22   INTERFERENCE CLAIM.  AND YOUR HONOR, THIS IS WHAT THE TORTIOUS

23   INTERFERENCE CLAIM NOW COMES DOWN TO, IT COMES DOWN TO NOT

24   ENCOURAGING PEOPLE TO LEAVE, BUT ENCOURAGING THEM TO STAY, TO

25   STAY WITH THE TOUR AND PLAY WITH LIV ON ALTERNATE WEEKENDS.

1    THAT'S IT. THAT'S WHAT WE ARE TALKING ABOUT. THE ALLEGED

2    TORTIOUS INTERFERENCE -- THIS IS THEIR CLAIM NOW, IS THAT YOU

3    TOLD PEOPLE THEY COULD STAY, THAT IT WOULD BE LEGAL, WE WILL

4    INDEMNIFY YOU, AND THEN YOUR PGA TOUR OFF-WEEKENDS, YOU CAN

5    PLAY ON LIV GOLF. IT'S THAT NARROW.

6         WE ARE TALKING ABOUT A UNIVERSE. NOW, THIS IS NOT JUST

7    THE TAIL WAGGING THE DOG, YOUR HONOR, THIS IS THE FLEA ON THE

8    TAIL OF THE DOG WAGGING THE DOG. WE ARE TALKING ABOUT A

9    UNIVERSE OF SEVEN PLAYERS WHO STAYED AND PLAYED AND SUSTAINED

10   DISCIPLINE FROM THE TOUR.

11        NOW THAT'S WHAT WE ARE TALKING ABOUT. THAT'S THE UNIVERSE

12   OF THIS CLAIM THAT THEY ARE NOW TRYING TO HOLD UP TO STOP

13   DISCOVERY, WHICH BY THE WAY, AND I WOULD LIKE TO TALK ABOUT IT,

14   HOW FAR WE HAVE COME AND HOW READY WE ARE, AND WE ARE READY TO

15   START COMPLETE DISCOVERY BY MARCH 30TH. THERE ARE SOME ODDS

16   AND ENDS, THERE ALWAYS ARE IN EVERY CASE, BUT WE HAVE ALL

17   WORKED WITH THAT, WE'VE GOTTEN HELP FROM TIME TO TIME FROM THE

18   MAGISTRATE.

19        BUT THEY ARE TALKING ABOUT HOLDING UP A CASE NOW, FOR THIS

20   NARROW CLAIM WHICH THEY HAVE ADDED WHICH INVOLVES A HANDFUL OF

21   PLAYERS, JUST ONE SEASON, ONLY THE 2021 SEASON. I CAN'T

22   IMAGINE WHAT THE DAMAGES ARE THERE, YOUR HONOR, FOR INDUCING

23   PEOPLE TO STAY WITH THE TOUR AND THEN WORK ON -- YOU KNOW, GO

24   PLAY GOLF, WORK, FOR THESE GENTLEMAN ON THEIR OFF WEEKENDS.

25        AND BY THE WAY, THE IDEA THAT WE WOULD TELL PEOPLE, BY THE

1    WAY, WE THINK THESE ARE YOUR LEGAL RIGHTS AND YOU CAN STAND UP

2    FOR THEM.  WHEN THAT'S BRIEFED, I SUSPECT THE POSITION IS GOING

3    TO BE, THAT'S PROTECTED FIRST AMENDMENT CONDUCT.

4        SO, YOU KNOW, GIVING THEM -- THERE IS NO REASON TO HOLD UP

5    THIS CASE WHERE WE HAVE NOW -- THE PARTIES HAVE PRODUCED

6    HUNDREDS OF THOUSANDS OF DOCUMENTS, THIRD PARTIES HAVE PRODUCED

7    DOCUMENTS.

8        YES, THERE ARE SOME LOOSE ENDS, THEY POINT OUT IN THEIR

9    PAPERS, THE PLAYER AGENTS HAVE SAID THEY ARE GOING TO PRODUCE

10   THE DOCUMENTS, THEY WILL DO IT BY THE DEADLINES.  SOME OF THE

11   PLAYERS SAID THEY WILL PRODUCE THE DOCUMENTS.

12       THIS IS NO DIFFERENT THAN ANY OTHER CASE.  WE WROTE THEM,

13   YOUR HONOR.  WE WROTE THEM TWO WEEKS AGO AND SAID, WE ARE

14   WINDING UP DOCUMENT PRODUCTION HERE, IT'S TIME FOR US TO START

15   SCHEDULING DEPOSITIONS, HERE'S OUR LIST OF YOUR WITNESSES, YOUR

16   EMPLOYEES, PEOPLE AFFILIATED WITH YOU WHO WE WOULD LIKE TO

17   DEPOSE, COULD YOU PLEASE LET US KNOW THEIR AVAILABILITY.

18       THE RESPONSE WE GOT, AND THIS RESPONSE IS ALL IN A

19   MICROCOSM, THEIR POSITION, WE CANNOT SCHEDULE A SINGLE

20   DEPOSITION UNLESS MR. AL-RUMAYYAN AGREES TO SIT FOR DEPOSITION

21   BY A DATE SPECIFIED.

22           THE COURT:  SO MR. QUINN, I GUESS I'M LOOKING AT THIS

23    A LITTLE DIFFERENTLY.  I'M LOOKING AT A REQUEST FOR A TRIAL

24    CONTINUANCE, IN LIGHT OF JUDGE VAN KEULEN'S ORDER ON A

25    THIRD-PARTY SUBPOENA UNDER THE PLEADINGS BEFORE I GRANTED LEAVE

1    TO AMEND.

2         I MAY NEVER LET THE AMENDED CROSS-COMPLAINT OUT THE GATE,

3    THAT HAS YET TO COME BEFORE ME.  WHAT I EVALUATED IN ALLOWING

4    IT TO BE FILED IS A VERY LOW THRESHOLD LEVEL, AND I HAVE --

5    THIS FAR IN ADVANCE OF TRIAL, YOU KNOW IT WAS VIRTUALLY

6    ORDAINED THAT I HAD TO LET THEM DO THAT.  TO FIND IT WAS FUTILE

7    WOULD BE SURPRISING, I THINK, TO MOST.  BUT IT DOESN'T MEAN

8    THAT I HAVE AGREED THAT THAT CLAIM CAN GO FORWARD.

9         BUT HERE WE HAVE, THERE NOW IS AN ORDER THAT THE THIRD

10   PARTIES PRODUCE DOCUMENTS AND SIT FOR DEPOSITION.  AND THAT NOW

11   PUTS -- IT REALLY PUTS THE BALL IN THE PLAINTIFF'S COURT AS TO

12   WHEN AND HOW THAT WILL BE COMPLIED WITH.  AND EVERYONE RESPECTS

13   YOUR CLIENT'S RIGHT TO CONTEST THAT OR THE THIRD PARTIES TO

14   CONTEST THAT.  TO THE EXTENT THAT TAKES TIME, AND THAT IS

15   ORDERED DISCOVERY IN THE PRIMARY CASE, WE CAN'T GO FORWARD.  WE

16   JUST CAN'T GO FORWARD.

17        MR. QUINN:  YOUR HONOR, FIRST OFF, IT IS A THIRD

18   PARTY.  THE AMENDED COMPLAINT CHANGED -- AS TO THE ANTITRUST

19   CLAIM, THEY ARE A THIRD PARTY.  IT'S NOT UNUSUAL FOR PARTIES TO

20   BE ADDED IN THE MIDDLE OF DISCOVERY.

21        THE COURT:  SURE.

22        MR. QUINN:  WE CAN GO FORWARD WITH DISCOVERY AND WE

23   CAN HAVE AN UNDERSTANDING THAT IF IT TURNS OUT THERE'S SOME

24   EVIDENCE THAT CHANGES THINGS OR THERE'S CAUSE TO REOPEN

25   DEPOSITION, WE ARE PERFECTLY WILLING TO --

1    THE COURT:  I GUESS WHAT I'M SAYING IS THAT IT

2  APPEARS TO ME THAT BETWEEN YOUR CLIENTS AND MS. LAMM'S CLIENTS,

3  THERE IS AN ENORMOUS WALL OF OPPOSITION TO THE DISCOVERY THAT

4  JUDGE VAN KEULEN ORDERED AND THE DEPOSITION THAT SHE ORDERED,

5  AND THAT YOU APPEAR TO BE WILLING TO -- FIRST, YOU ARE GOING TO

6  OBJECT TO THAT TO ME, I DO NOT EVEN HAVE BRIEFING ON IT, IT WAS

7  DUE YESTERDAY.  YOU ASKED FOR A CONTINUANCE, I GRANTED IT UNTIL

8  EARLY NEXT WEEK, JUST SO THAT WE COULD TALK ABOUT THIS TODAY.

9    MR. PETERS HAS ALREADY FILED HIS OPPOSITION, IT'S A VERY

10  NARROW ISSUE.  BUT IF YOUR CLIENT STANDS IN THE WAY OR THE

11  THIRD PARTY STANDS IN THE WAY OF THE ALREADY ORDERED DISCOVERY,

12  I DON'T KNOW HOW THE TRIAL DATE GOES FORWARD.

13    AND YOU WANT TO KEEP THE PRESSURE ON THE DEFENDANTS TO

14  SAY, LET'S SEE HOW IT PLAYS OUT.  WELL, THE THIRD PARTIES,

15  BECAUSE IT'S A DISPOSITIVE ORDER AS TO THEM AS THIRD PARTIES,

16  CAN APPEAL TO THE NINTH CIRCUIT.  ARE WE GOING TO TAKE TWO

17  YEARS?  THERE WOULD BE NO TRIAL DATE.  THAT'S A CHOICE.  THAT'S

18  A STRATEGIC DECISION THAT YOU ALL HAVE TO MAKE.

19    THERE ARE IMPORTANT SOVEREIGNTY ISSUES AND PERSONAL

20  JURISDICTION ISSUES THAT JUDGE VAN KEULEN ADDRESSED.  AND I

21  HAVEN'T YET DETERMINED, BECAUSE I DON'T HAVE BRIEFING ON IT,

22  WHETHER OR NOT SHE WAS CORRECT.  I'VE READ HER ORDER, LIKE WE

23  ALL HAVE.  IT'S VERY THOROUGH.  THAT DOESN'T SAY IT'S RIGHT OR

24  WRONG, BUT IT LAYS THE GROUND WORK, FRANKLY, FOR THE AMENDED

25  COUNTERCLAIM AS WELL, BECAUSE SHE HAS ALREADY ADDRESSED

1    PERSONAL JURISDICTION.

2         BUT AS LONG AS PLAINTIFFS PUT UP THE WALL, I DON'T KNOW

3    HOW YOU EXPECT THE DEFENDANTS TO JUST SAY, OKAY, I GUESS WE

4    HAVE TO GO TO TRIAL WITH A THREE-LEGGED STOOL INSTEAD OF WITH

5    THE DISCOVERY WE NEED.

6         MR. QUINN:  WELL, YOUR HONOR, IN THE SCHEDULE THAT

7    YOUR HONOR SET, NONE OF US BUILT IN TIME OR ANTICIPATED, MAYBE

8    WE SHOULD HAVE, TIME FOR THESE APPEALS.

9         THE COURT:  THAT'S RIGHT.

10        MR. QUINN:  AND IF THERE IS A BRIEF CONTINUANCE, SOME

11   ENLARGEMENT OF TIME IS APPROPRIATE, WE CAN UNDERSTAND THAT.

12        THE COURT:  SO LET ME TELL YOU ABOUT A BRIEF

13   CONTINUANCE, MR. QUINN.

14        MR. QUINN:  YES, YOUR HONOR.

15        THE COURT:  IF THIS WERE MY ONLY CASE, I WOULD BE

16   MORE THAN GLAD, BUT YOU DO UNDERSTAND THAT I HAVE 400 OTHER

17   CASES, AND EACH OF THE LITIGANTS IN THE OTHER 399 CASES

18   BELIEVES THEIR CASE IS AT LEAST AS IMPORTANT AS YOU BELIEVE

19   THIS CASE IS.

20        MR. QUINN:  RIGHT, YOUR HONOR.

21        THE COURT:  AND I WAS JUST SETTING CASES YESTERDAY

22   FOR TRIAL IN AUGUST OF 2025.  AND SO I DON'T KNOW HOW MANY

23   TIMES YOU EXPECT ME TO GIVE PRIORITY TO THIS CASE.  I'VE

24   ALREADY DONE IT TWICE.  THE INITIAL TRIAL SETTING AND THE

25   CONTINUED TRIAL SETTING IS ON THE BACKS OF OTHER LITIGANTS WHO

1    HAVE BEEN WAITING IN LINE AHEAD OF YOU.

2         MR. QUINN:  UNDERSTOOD, YOUR HONOR.

3         BUT MR. PETERS TRIVIALIZES IT.  BUT I REPRESENT THREE

4    INDIVIDUALS WHOSE ABILITY -- WE CAN SAY, WELL, THEY GOT BIG

5    CHECKS.  BUT IF YOU'RE A PROFESSIONAL ATHLETE, THE TIME THAT

6    YOU HAVE TO EXERCISE YOUR PROFESSION AND MAKE AN INCOME, MAKE A

7    LIVING, IS A VERY BRIEF -- IT'S A BRIEF PERIOD OF TIME.  AND WE

8    ARE LOOKING AT PEOPLE BECAUSE THEY HAVE BEEN BLACK-BALLED, WHO

9    POTENTIALLY WILL NOT BE ABLE TO PRACTICE THEIR PROFESSIONS

10   AFTER 2024.  THIS IS NOT IMAGINARY, WE HAVE PEOPLE --

11        THE COURT:  OH, I UNDERSTAND.

12        MR. QUINN:  ALL RIGHT.  SO --

13        THE COURT:  I MEAN, MR. WALTERS ADDRESSED THIS

14   THOROUGHLY AT THE MOTION FOR TEMPORARY RETRAINING ORDER.  I

15   DIDN'T AGREE.

16        MR. QUINN:  AND IT'S GOTTEN WORSE.  THE TOUR HAS

17   ACTUALLY DOUBLED DOWN, AND NOW IN RECENT RULES AND NEWLY

18   ADOPTED RULES, HAVE BANNED NOT ONLY MEMBERS, BUT NON-MEMBERS OF

19   THE TOUR WHO PLAY FOR LIV.  SO THEY HAVE ACTUALLY GOTTEN MORE

20   AGGRESSIVE.

21        LOOK, THIS IS A REALITY FOR THESE INDIVIDUALS.  FOR THIS

22   BUSINESS, THE ASSUMPTION REALLY SHOULDN'T BE THAT, YOU KNOW,

23   LIV GOLF WILL BE AROUND BECAUSE IT'S GOT A BACKER WITH DEEP

24   POCKETS THAT THEY CAN FUND ANYTHING, THEY CAN PUT UP WITH THIS.

25   THE REALITY IS THIS BUSINESS ONLY WORKS IF THEY CAN RECRUIT

1    ELITE GOLFERS.

2                THE COURT:  SURE.

3                MR. QUINN:  ALL THE EVIDENCE IS, YOUR HONOR, THAT THE

4    PIF IS A RATIONAL, DISCIPLINED INVESTOR THAT INVESTS FOR A

5    RETURN.

6          THE OTHER SIDE KNOWS THIS.  THEIR OWN CONSULTANT, WE HAVE

7    SEEN THIS IN DOCUMENTS THAT HAVE BEEN PRODUCED, THEIR OWN

8    CONSULTANT TOLD THE TOUR EXACTLY THAT, THAT THE PIF WON'T BE IN

9    THIS FOR A LONG RUN IF THEY ARE NOT GOING TO SEE AN OPPORTUNITY

10   FOR RETURN HERE.  A STARTUP ONLY HAS A CERTAIN WINDOW OF

11   OPPORTUNITY.

12         SO, YOU KNOW, YOUR HONOR, THERE IS STILL A NEED FOR SOME

13   URGENCY HERE.  WE'VE GOT NINTH CIRCUIT PRECEDENT ON THAT, THAT

14   WHEN IT COMES TO A SITUATION LIKE THIS, WHERE PEOPLE'S JOBS ARE

15   POTENTIALLY ON THE LINE, AN INJUNCTION IS SOUGHT, THAT PUTTING

16   A CASE ON ICE IS REALLY NOT WHAT OUGHT TO BE DONE.

17         AND WHAT WE ARE ASKING --

18                THE COURT:  SO IT JUST DEPENDS ON THE REASON IT'S

19   BEING PUT ON ICE.

20                MR. QUINN:  YEAH.  BUT, YOUR HONOR --

21                THE COURT:  AND THE QUESTION IS OF NOT PRODUCING

22   DOCUMENTS THAT JUDGE VAN KEULEN HAS ORDERED TO BE PRODUCED.

23   AND THAT'S --

24                MR. QUINN:  I'M SORRY, YOUR HONOR, THAT'S A THIRD

25   PARTY.

```
1              THE COURT:  THEY ARE A THIRD PARTY, THAT'S RIGHT.

2    MS. LAMM IS A THIRD PARTY.

3              MR. QUINN:  THEY ARE NOT THESE GOLFERS.  IT'S NOT

4     THESE GOLFERS.

5         SO THEY ARE A FAR AND AWAY MAJORITY INVESTOR, THEY ARE NOT

6    THE ONLY INVESTOR IN LIV GOLF, BUT WE ARE NOT RESPONSIBLE FOR

7    THE PIF'S DECISIONMAKING IN THAT REGARD.

8         SO WE HAVE THESE URGENCIES, THEY ARE REAL, WE ARE READY TO

9    START DEPOSITIONS, AND THEY SHOULDN'T BE ABLE TO SAY, TIMEOUT,

10   WE NEED PIF DOCUMENTS AND WE NEED TO EXAMINE MR. AL-RUMAYYAN

11   BECAUSE OF THIS -- FIRST OFF, THIS COUNTERCLAIM, WHICH AS I'VE

12   DESCRIBED IT IS SO RIDICULOUSLY NARROW.

13         AND ON THE ANTITRUST CASE, WHERE ALL THEY CAN SAY IN

14   RESPONSE IS, IT'S RELEVANT TO THE DEFINITION OF A MARKET, IT'S

15   RELEVANT TO THE EXISTENCE OF COMPETITION, IT'S RELEVANT TO

16   DAMAGES, I SUBMIT, YOUR HONOR, THAT TELLS YOU ALL YOU NEED TO

17   KNOW ABOUT THE DISCOVERY FROM PIF AND MR. AL-RUMAYYAN, RELEVANT

18   TO THE ANTITRUST CASE.

19         THEY WANT THIS CASE TO COME TO A HALT FOR NOTHING, REALLY.

20   THERE'S NOTHING THAT THAT TESTIMONY HAS TO CONTRIBUTE TO THOSE

21   ISSUES.

22         SO --

23              THE COURT:  ALL RIGHT.

24              MR. LIPTON:  YOUR HONOR, THIS IS JOSH LIPTON,

25    MR. QUINN'S CO-COUNSEL.
```

1          MAY I BE HEARD ON A BRIEF ISSUE?

2          THE COURT:  I THINK MR. QUINN HAS DONE AN EXCELLENT

3    JOB.  DO YOU THINK HE NEEDS SOME HELP HERE, MR. LIPTON?  I

4    DON'T THINK SO.

5          MR. LIPTON:  I WANTED TO POINT OUT A COUPLE OF FACTS

6    TO CLEAR UP THE MISPERCEPTION IN THE RECORD, IF THAT'S ALRIGHT,

7    YOUR HONOR.

8          THE ISSUE WAS RAISED, YOUR HONOR, THAT THE PLAINTIFFS HAVE

9    BLOCKED THE DISCOVERY FROM PIF AND MR. AL-RUMAYYAN.  I WANTED

10   TO CORRECT THAT, BECAUSE IT'S NOT TRUE.

11         AS MR. QUINN STATED, THE PLAYER PLAINTIFFS, MATT JONES,

12   FOR EXAMPLE, HE HAS NO POWER TO BLOCK ANY DISCOVERY FROM PIF OR

13   MR. AL-RUMAYYAN.  LIV, ITSELF, HAS NOT BLOCKED ANY DISCOVERY

14   FROM PIF AND AL-RUMAYYAN.

15         AND THE TELLING POINT THERE IS LIV HAS PRODUCED MORE THAN

16   7,000 DOCUMENTS, MORE THAN 7,000 E-MAILS THAT WERE TO OR FROM A

17   PIF PERSON, FROM ITS FILE.

18         SO IF THERE'S A PIF DOCUMENT IN LIV'S FILES THAT'S

19   RESPONSIVE TO THE DOCUMENT REQUEST, IT HAS BEEN PRODUCED.  SO

20   THERE ARE THOUSANDS OF DOCUMENTS ALREADY FROM PIF IN THE

21   PRODUCTION.

22         IF THERE WAS ANY COMMUNICATION FROM MR. AL-RUMAYYAN TO ANY

23   OF THE GOLFERS, OR THEIR AGENTS, OR ANYONE AT LIV RELATED TO

24   THE CASE, IT'S GOING TO BE IN THEIR FILES.  THOSE HAVE ALL BEEN

25   SEARCHED FOR AND PRODUCED.

1    SO WHEN WE ARE TALKING ABOUT DISCOVERY FROM PIF THAT THEY

2    DON'T HAVE, IT'S NOT THE DOCUMENTS THAT HAVE COME TO LIV, TO

3    THE PLAYERS, TO THE PLAYERS' AGENTS OR ANYONE ELSE WHO IS

4    SUBJECT TO DISCOVERY, AND IT'S A VERY LARGE UNIVERSE IN THIS

5    CASE, YOUR HONOR, WE ARE ONLY TALKING ABOUT DOCUMENTS THAT

6    MIGHT BE IN PIF'S POSSESSION THAT HAVE NOT COME INTO POSSESSION

7    WITH ONE OF THE MANY CUSTODIANS.

8         THE COURT:  I REALLY THINK THE DEPOSITION IS PROBABLY

9     KEY AS WELL THOUGH, MR. LIPTON.  ALL RIGHT.

10         MR. LIPTON:  THANK YOU.

11         THE COURT:  YES.

12    MR. PETERS, I'M NOT ACTUALLY PERSUADED THAT WE NEED A

13    TRIAL CONTINUANCE AT THIS POINT.  I MAY NOT AGREE WITH

14    MR. QUINN THAT JUDGE VAN KEULEN WAS INCORRECT AND THEN THERE

15    WILL BE A MOST EXPEDITED DISCOVERY SCHEDULE IMPOSED ON THE

16    THIRD PARTIES, AS WITHIN DAYS OF A CONCLUSION.

17         THE FINAL CONCLUSION MAY NOT BE UP TO ME, I CERTAINLY

18    UNDERSTAND THAT, BUT I AM INCLINED TO RETAIN THE TRIAL DATE AND

19    REQUIRE THAT YOU COMPLETE ALL THE DISCOVERY, SEPARATE FROM

20    THESE THREE PARTIES, UNDER THE CURRENT SCHEDULE.

21         AND IN THE EVENT THAT THE DISCOVERY STILL NEEDED FROM PIF

22    AND MR. AL-RUMAYYAN IS STILL OUTSTANDING AT THE END OF MARCH OR

23    THE MIDDLE OF APRIL, I DON'T KNOW WHAT A REASONABLE TIME FRAME

24    IS, THEN WE CAN READDRESS THE TRIAL SCHEDULE.

25         AS FAR AS I'M CONCERNED, YOUR SUMMARY JUDGEMENT MOTION

1    ISN'T SET UNTIL AUGUST AND TRIAL IS NOT UNTIL NEXT JANUARY.  SO

2    THERE'S STILL A LOT OF TIME FOR THIS DISCOVERY TO TAKE PLACE.

3         AND I'M GOING TO PUT SOME LIMITATIONS ON THIS MOTION TO

4    DISMISS, IF THERE'S GOING TO BE ONE FROM THE PARTIES, BECAUSE

5    I'M NOT GOING TO HAVE HUNDREDS OF PAGES OF BRIEFING ON ALL OF

6    THIS, BECAUSE THEN I WILL CONTINUE THE TRIAL DATE, AND I WILL

7    CONTINUE IT BY YEARS BECAUSE I CAN'T KEEP UP WITH THE PAGES, SO

8    I WILL JUST LIMIT THAT.

9         BUT RIGHT NOW, I'M CONCERNED THAT THE MORE PEDESTRIAN

10   DISCOVERY THAT NEEDS TO TAKE PLACE HAS NOT BEEN CONCLUDED AND

11   HAS NOT BEEN BROUGHT TO JUDGE VAN KEULEN TO COMPEL.  THAT'S A

12   CONCERN TO ME.

13        IF THE PARTIES COULD TELL ME THAT EVERYTHING ELSE WAS

14   WRAPPED UP AND ALONG ON ITS SCHEDULE AND THIS WAS THE ONLY

15   OUTSTANDING CONCERN, THAT MIGHT BE DIFFERENT.  BUT THAT'S NOT

16   THE CASE.

17        AND SO IT'S NOT PERSUASIVE TO ME THAT YOU ARE WAITING FOR

18   THE TESTIMONY OF AL-RUMAYYAN BEFORE YOU CAN CONCLUDE THE OTHER

19   TESTIMONY.  AND DOCUMENT REQUESTS, AS MS. LAMM SUGGESTS EARLY

20   ON, YOU CAN ALWAYS COME BACK AND ASK TO REOPEN A DEPOSITION.

21   AND YOU CAN ASK THAT ONE DAY AND I CAN ORDER IT THE NEXT DAY.

22   IT'S SIMPLE, IT DOESN'T EVEN TAKE BRIEFING.

23        I JUST -- EACH OF YOU COULD SPEAK FOR THREE MINUTES ON A

24   TOPIC LIKE THAT AND WE CAN MAKE IT HAPPEN OR DENY IT AND MOVE

25   IT FORWARD.

1      SO AT THIS POINT, I THINK THAT THE PARTIES NEED TO REALLY

2   FOCUS ON GETTING -- WRAPPING UP THE DISCOVERY THAT IS SEPARATE

3   FROM THESE THIRD PARTIES.  WE WILL LITIGATE THE AMENDED

4   COUNTERCLAIM, IF THAT GETS BOLLOXED UP IN DELAY, I DO HAVE

5   REMEDIES TO BIFURCATE THAT, IT'S NOT WHAT I WANT TO DO.  AND IT

6   MAY BE THAT BECAUSE LIV HAS ITS OWN TORTIOUS INTERFERENCE

7   CLAIMS, THAT THEN THEY BECOME TOO INTERTWINED AND MR. QUINN HAS

8   TO MAKE THE DECISION OF WHETHER HE WANTS TO DISMISS, I THINK

9   IT'S CLAIM 7 AND 8 FROM THE AMENDED COMPLAINT.

10      THOSE ARE CHOICES THAT CAN BE MADE.  I DON'T NEED TO MAKE

11   THOSE DECISIONS TODAY.  AND THAT'S NEVER GOING TO -- AND YOU

12   KNOW, I JUST -- I DOUBT THOSE ARE GOING TO BE THE HOT SUBJECT

13   OF A MOTION FOR SUMMARY JUDGEMENT, BECAUSE THEY ARE SO

14   FACTUALLY INTERTWINED WITH EVERYTHING ELSE.

15      SO THAT'S HOW I'M SEEING IT, MR. PETERS.  I THINK THAT

16   IT'S PREMATURE TO GRANT A CONTINUANCE, AND ONCE I GIVE UP THIS

17   TRIAL DATE, I'M NOT SURE WHEN I'M GOING TO BE ABLE TO RESET IT.

18      MR. PETERS:  I HEAR YOU, YOUR HONOR.

19      MAY I RESPOND TO WHAT THE COURT JUST SAID, AND TO A COUPLE

20   OTHER THINGS THAT MR. QUINN JUST SAID?

21      THE COURT:  SURE.

22      MR. PETERS:  THE CHARACTERIZATION OF THE RELEVANCE OF

23   PIF AND MR. AL-RUMAYYAN TO THE ANTITRUST CLAIMS, INCLUDES

24   NEGOTIATIONS WITH PLAYERS, IT INCLUDES NEGOTIATIONS WITH

25   BROADCASTERS, WHICH MR. AL-RUMAYYAN WAS INVOLVED IN.  IT

1    INCLUDES NEGOTIATIONS WITH SPONSORS, IT INCLUDES NEGOTIATIONS

2    WITH VENDORS, IT RELATES TO THEIR CLAIM THAT THERE WAS A

3    BOYCOTT ARRANGED AGAINST THEM.  IT'S BROADLY RELEVANT TO THE

4    ANTITRUST ISSUES, IN ADDITION TO THE NEGOTIATION WITH THE

5    PLAYERS.  SO --

6         THE COURT:  MR. PETERS, THOSE ARE ALL IMPORTANT

7    ISSUES, BUT NORMALLY THAT'S DISCOVERY TAKEN AGAINST THE

8    DEFENDANT, NOT AGAINST THE PLAINTIFF.

9         MR. PETERS:  YES.  BUT WHETHER OR NOT THERE WAS SOME

10   KIND OF ANTICOMPETITIVE EFFECT, WHETHER THERE WAS SOME KIND OF

11   BOYCOTT, MR. AL-RUMAYYAN'S TESTIMONY IN HIS DOCUMENTS ABOUT HIS

12   UNFETTERED ACTIVITIES IN THOSE AREAS, IS GOING TO BE RELEVANT

13   TO ALL OF THOSE ISSUES.

14      IT'S NECESSARY FOR US TO PROVE OUR DEFENSE AND COME

15   FORWARD WITH EVIDENCE ABOUT HOW FREELY THEY WERE ABLE TO

16   COMPETE.  YOUR HONOR RECALLS, WHEN I ARGUED BEFORE YOU IN

17   AUGUST, A BIG POINT OF OUR ARGUMENT WAS YOU WANT TO SEE

18   COMPETITION.  THERE'S COMPETITION HERE.

19      I REMEMBER SHOWING YOU A SLIDE, WHICH IT APPEARED IT

20   INTERESTED YOU, WHERE I SAID HALF OF THE TOP TEN PLAYERS NOW

21   PLAY FOR THEM.  THIS IS ROBUST COMPETITION.  SO WE WANT TO

22   DEMONSTRATE THAT.

23         AND YES, THERE IS OTHER DISCOVERY THAT CAN TAKE PLACE, BUT

24   IT MAKES IT MORE DIFFICULT FOR US IF THE MOST CRITICAL

25   WITNESSES AND REPOSITORIES OF DOCUMENTS ON THE PLAINTIFF'S SIDE

1    ARE A STONE WALL, A BIG WALL PLACED UP AGAINST -- IN FRONT OF

2    US WHILE WE ARE PROVIDING DOCUMENTS AND DISCOVERY, AS WE

3    SHOULD, PROPERLY.  THEY SAID THEY WOULD DO THIS, AND THEY

4    HAVEN'T.

5         AND I REALLY -- YOU KNOW, MR. QUINN TO TELL YOU HE

6    REPRESENTS THESE THREE GOLFERS, HE REPRESENTS PIF AND

7    MR. AL-RUMAYYAN.  HE'S THE PERSON WHO ATTEMPTED SERVICE OF THE

8    SUBPOENA.  HIS PARTNER ARGUED IN FRONT OF JUDGE VAN KEULEN.

9    QUINN EMANUEL REPRESENTS THEM.

10        NOW HE SAYS IT'S SO UNFAIR TO THESE INDIVIDUALS IF THERE'S

11   ANY DELAY IN THE TRIAL.  WELL, HE HAS THE SOLUTION TO THE

12   PROBLEM.  HE CAN TALK TO HIS CLIENTS AND SAY, WHY DON'T YOU

13   AGREE TO PRODUCE THE DISCOVERY AND AGREE TO SIT FOR DEPOSITIONS

14   AND AGREE TO COMPLY WITH JUDGE VAN KEULEN'S ORDER SO THAT THIS

15   CASE CAN MOVE FORWARD.

16        WHY SHOULD THEIR CHOICES BE IMPOSED -- VISIT AN UNFAIRNESS

17   ON THE PGA TOUR IN THIS DISPARITY OF ACCESS TO INFORMATION

18   WHILE WE GO FORWARD WITH DISCOVERY?

19        THEY HAVE THE SOLUTION TO THE PROBLEM, IF THEY WANT TO DO

20   IT.  BUT FOR THEM TO BOTH WITHHOLD OUR ACCESS TO CRITICAL

21   DISCOVERY AND THEN PLOW AHEAD WITH THE DISCOVERY THEY WANT TO

22   DO, CREATES A KIND OF IMBALANCE THAT I REALLY BELIEVE THE COURT

23   WAS NOT CONTEMPLATING WHEN THEY PROMISED THAT THEY WOULD

24   COOPERATE WITH THIS DISCOVERY AND THIS SCHEDULE WAS SET.

25             THE COURT:  ALL RIGHT.

1    WELL, TELL ME WHEN IS YOUR FACT DISCOVERY CUTOFF DATE?

2         MR. PETERS:  END OF MAY, THE DOCUMENT COMPLETION DATE

3    IS THE END OF MARCH.

4         THE COURT:  MARCH.

5         MR. PETERS:  SO WE HAVE 30 DAYS -- IT'S INCONCEIVABLE

6    THAT THE DOCUMENTS CAN BE -- THEY ARE GOING TO BE LITIGATING

7    AND APPEALING TO THE NINTH CIRCUIT.  I MEAN, YOUR HONOR, I

8    THINK IT WOULD BE HELPFUL TO KNOW, AND MAYBE MR. QUINN COULD

9    TELL US --

10         THE COURT:  I GUESS WHAT I'M REALLY -- WHERE I'M

11   REALLY GOING TO GO ON THIS IS THAT I THINK IT'S PREMATURE TO

12   CONTINUE THE TRIAL UNTIL WE REACH THE MARCH 30TH DATE.  I'M

13   GOING TO WANT TO SEE THAT ALL THE DISCOVERY, OTHER THAN THE

14   THIRD PARTY DISCOVERY, HAS BEEN CONCLUDED.

15        I DON'T WANT TO HEAR ANY MORE, MR. PETERS, THAT I NEED TO

16   WAIT UNTIL I GET THE OTHER EVIDENCE.  I WILL LET YOU REOPEN

17   THOSE DEPOSITIONS, IF YOU LATER GET EVIDENCE THAT REQUIRES YOU

18   TO GO BACK IN.  AND THOSE WITNESSES WILL BE COMPELLED TO ATTEND

19   A FURTHER DEPOSITION IF IT'S BASED UPON THE DELAY IN PRODUCING

20   THE PIF DOCUMENTS.

21        BUT I AM CONCERNED THAT EVERYONE IS DRAGGING THEIR FEET ON

22   ALL OF THE DISCOVERY.  IT GOES TO BOTH SIDES, I'M NOT POINTING

23   TO PGA TOUR ON THAT SPECIFICALLY.

24        I WANT TO SEE WHAT THE NATURE OF THE OBJECTIONS ARE TO

25   JUDGE VAN KEULEN'S ORDER.  MR. QUINN SUGGESTS IN HIS INITIAL

1   FILING ASKING FOR EXTRA PAGES, THAT THERE ARE SOME DE NOVO

2   CONSIDERATIONS I HAVE TO MAKE.  THAT MAY BE TRUE, BUT I CAN CUT

3   AND PASTE HER ORDER IF I AGREE WITH IT.  I DON'T HAVE TO -- I

4   CAN FIND IT WELL REASONED AND INDICATE THAT I'VE MADE AN

5   INDEPENDENT DETERMINATION.  I DON'T HAVE TO WRITE MY OWN

6   50-PAGE ORDER ON IT, AND I'M NOT GOING TO DELAY YOU.

7       SHE HAS DONE THE BACK-BREAKING WORK OF WORKING THROUGH

8   THIS, AND I WILL PERFORM BY OBLIGATION.  BUT HERS WAS NOT A

9   TRIAL RUN, IT IS THE PRIMARY ORDER, AND I AM THERE TO DETERMINE

10  WHETHER IT WAS CORRECT OR INCORRECT, AND THE ELEMENTS I HAVE TO

11  CONSIDER DE NOVO, I MOST CERTAINLY WILL.

12      BUT I'M GOING TO MOVE THAT ALONG AND I'M GOING TO SET A

13  NEW CASE MANAGEMENT CONFERENCE FOR EARLY APRIL SO THAT WE CAN

14  SEE WHERE WE ARE.  AND I WOULD LIKE TO MOVE ON TO THE ISSUE OF

15  SCHEDULING OF THE BRIEFING.

16      MR. QUINN, I HAVE LIMITED YOU TO 15 PAGES FOR YOUR

17  OBJECTIONS, AND THEY ARE -- AT THIS POINT, THEY ARE DUE ON

18  TUESDAY OF NEXT WEEK.  ARE YOU PREPARED FILE THE OBJECTIONS BY

19  TUESDAY?

20      MR. QUINN:  YOUR HONOR, PERHAPS AT THIS POINT IT IS

21  TRUE THAT THE CASE HAS TAKEN SOME TURNS, AND SO NOW THE PIF AND

22  MR. AL-RUMAYYAN HAVE SEPARATE COUNSEL, AND THAT'S WHY --

23      THE COURT:  HAVE YOU WITHDRAWN AS THEIR COUNSEL?

24      MR. QUINN:  WE ARE STILL OF RECORD.

25      THE COURT:  SO YOU ARE STILL THEIR COUNSEL.  THEY

1    HAVE ADDITIONAL COUNSEL?

2    MR. QUINN: YES, WHO ONLY REPRESENT THEM. SO WE ARE

3    STILL COUNSEL.

4    THE COURT: OKAY. AND I WELCOME THE EXTRA, BUT IF

5    YOU'RE COUNSEL, THEN YOU ARE COUNSEL. YOU CAN WITHDRAW AND

6    THEY CAN BE SEPARATELY REPRESENTED, BUT IT SOUNDS LIKE YOU

7    HAVEN'T DONE THAT YET.

8    MS. LAMM: JUDGE, IF I MIGHT JUST SAY, OUR APPEAL IS

9    READY TO FILE. WE CAN FILE IT TODAY OR TOMORROW.

10   THE COURT: OKAY.

11   MS. LAMM: WE ALSO WILL ACCOMPANY THAT WITH A MOTION

12   FOR STAY UNTIL YOU DECIDE THE ISSUES. AND YOU CAN -- WE WILL

13   HAVE THAT IMMEDIATELY AS WELL. SO YOU CAN TAKE THIS UP.

14   THE COURT: ALL RIGHT.

15   AND MS. LAMM, I RECEIVED A LETTER FROM A LAW FIRM

16   REPRESENTING THE KINGDOM OF SAUDI ARABIA, AND SUGGESTING THAT

17   THEY MIGHT WANT TO FILE AN AMICUS BRIEF.

18   I GAVE 15 PAGES FOR THE OBJECTION. IF YOU WANT TO WORK

19   THEIR COMMENTS INTO YOUR 15 PAGES, THAT'S FINE. THEY CAN FILE

20   SEPARATELY, BUT IT'S A TOTAL OF 15 PAGES. AND I DON'T KNOW

21   WHAT THEIR INTENTION WAS OTHERWISE.

22   MS. LAMM: YOUR HONOR, I THINK THEY ARE -- I KNOW

23   THEY ARE SEPARATE FROM US.

24   THE COURT: I KNOW THEY ARE SEPARATE FROM YOU. I'M

25   JUST SAYING IT'S 15 PAGES, THAT'S ALL I'M SAYING. I DO THIS

1    ALL THE TIME, THERE IS A PAGE LIMIT, AND YOU CAN SHARE IT WITH

2    THEM, OR WORK IT OUT, OR GIVE THEM THE WHOLE 15 PAGES, I DON'T

3    ACTUALLY CARE.  I'M NOT ENLARGING THE PAGES.

4         MS. LAMM:  I DON'T KNOW THAT THEY WILL BE READY

5    BECAUSE OURS IS ONLY BETWEEN --

6         THE COURT:  THE BRIEFING -- THEY HAVE TO COMPLY WITH

7    THE BRIEFING.  THEY CAN FILE A MOTION TO FILE AN AMICUS BRIEF.

8    YOU CAN LET THEM KNOW.  AND I RECEIVED THIS LETTER FROM --

9         MS. LAMM:  YES, I KNOW.  RIGHT.  FROM

10   MICHAEL KELLOGG.

11        THE COURT:  RIGHT.  LET HIM KNOW, IF HE WANTS TO FILE

12   A REQUEST FOR AMICUS FILING, IF YOU LEAVE SOME PAGES, I'M

13   TELLING YOU NOW, AND MAYBE HE'S ON THE LINE, OR YOU CAN CALL

14   HIM THIS AFTERNOON, 15 PAGES TOTAL.  IF YOU WANT TO GIVE UP

15   SOME PAGES, YOU CAN GIVE IT TO HIM, OTHERWISE I WILL JUST BE

16   DENYING HIS MOTION.

17   HE CAN GIVE YOU A TWO-PAGE DECLARATION IF HE WANTS TO

18   SUBMIT IT, THAT MAY BE HELPFUL.  IT LOOKS LIKE THE KINGDOM

19   READ, OR YOU ALL READ JUDGE VAN KEULEN'S ORDER AND SAID, OOPS,

20   WE FORGOT TO GET THE KINGDOM TO SUBMIT THEIR CONCERNS TO HER,

21   BECAUSE SHE COMMENTED THAT THEY HAD NOT.

22   I MEAN, TO ME, THAT'S ALL THAT THAT LETTER TELLS ME, THAT

23   THEY WERE BEHIND THE GAME HERE AND THEY ARE TRYING TO MAKE UP

24   FOR IT.  THEIR TIME TO APPEAR WAS BEFORE HER, AND I DON'T

25   GENERALLY ACCEPT ADDITIONAL EVIDENCE ON AN APPEAL AND

1    OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER.

2        SO I'M NOT INCLINED TO EVEN ACCEPT IT, BUT I CERTAINLY

3    WANT TO SEE THEIR GROUNDS FOR ASKING ME TO DO SO.

4            MS. LAMM:  I WILL SUGGEST THAT THEY ADDRESS IT IN A

5    MOTION, YOUR HONOR, BUT THE KINGDOM WAS NOT INVOLVED EARLIER,

6    AND THEIR --

7            THE COURT:  ARE YOU TELLING ME PIF DOESN'T

8    COMMUNICATE WITH THE KINGDOM?  I THOUGHT THEY WERE PART OF THE

9    SOVEREIGNTY.

10           MS. LAMM:  THEY ARE PART OF THE SOVEREIGNTY.  I AM

11   TELLING YOU, YOUR HONOR, I HAVE NOT LOOKED INTO HOW THE

12   COMMUNICATIONS GO AND I AM NOT MAKING RANDOM REPRESENTATIONS TO

13   THE COURT.

14           THE COURT:  I UNDERSTAND.

15       I'M NOT IN A POSITION TO ACCEPT ADDITIONAL EVIDENCE.  AND

16   AN AMICUS BRIEF GENERALLY TELLS ME THEY WANT TO MAKE THE SAME

17   ARGUMENTS YOU COULD MAKE, OR THAT THEY WANT TO MAKE ARGUMENTS

18   THAT THEY SHOULD HAVE MADE TO JUDGE VAN KEULEN, IN WHICH CASE,

19   SOMETIMES IF IT'S IMPORTANT, I WOULD CONSIDER REMANDING IT TO

20   THE MAGISTRATE JUDGE.  I'M NOT INCLINED TO DO THAT HERE.

21       WHO IS -- THIS FEEDS INTO, I JUST WANT TO COMMENT, THIS

22   FEEDS INTO MR. PETERS COMMENTS ABOUT WHO IS CAUSING THE DELAY.

23   YOU CAN'T HAVE IT BOTH WAYS.

24       SO YOUR CLIENTS AREN'T TECHNICALLY PARTIES YET BECAUSE

25   THERE DOESN'T APPEAR TO BE SERVICE, THEY ARE THIRD PARTIES.

1    AND YOU KNOW, THE KINGDOM, I DON'T KNOW WHAT THEY WANT TO

2    DO, THE LETTER WAS INTERESTING.  I READ THE LETTER AFTER I READ

3    JUDGE VAN KEULEN'S ORDER, AND SO I RECALLED THAT SHE MADE THE

4    COMMENT THAT, HELLO KINGDOM, I HAVEN'T HEARD FROM YOU.  AND

5    THEN ALL OF THE SUDDEN WE GET A LETTER, BECAUSE THEY READ THE

6    ORDER AS WELL, SAYING OOPS, WE FORGOT TO TELL YOU THIS REALLY

7    MATTERS TO US.

8         SO IT'S FALLING A LITTLE BIT ON DEAF EARS, MS. LAMM, I

9    MUST SAY.

10         SO YOUR PAPERS WILL BE FILED BY TUESDAY, THE OBJECTION.

11              MS. LAMM:  YES.

12              THE COURT:  AND LIV HAS NO REASON TO FILE ANYTHING

13    THEN.  AND MR. QUINN, YOU ARE NOT FILING SOMETHING SEPARATE.

14         SO MR. PETERS, YOU WILL HAVE THE SAME 15 PAGES.  WHEN WILL

15    YOU FILE YOUR -- I WILL LET THIS BE BRIEFED -- WHEN WILL YOU

16    FILE YOUR OPPOSITION?

17              MR. PETERS:  IF THEY ARE ALL FILING ON TUESDAY, CAN

18    WE HAVE UNTIL A WEEK FROM THE FOLLOWING FRIDAY, SO WE WOULD

19    HAVE TEN DAYS TO RESPOND?

20              THE COURT:  I THINK THAT'S REASONABLE.

21              MS. LAMM:  YOUR HONOR --

22              THE COURT:  MS. LAMM, IN CASE YOU HAVEN'T HAD THE

23    OPPORTUNITY TO READ MY STANDING ORDERS, PLEASE REVIEW YOUR

24    PAPERS BEFORE YOU FILE THEM, I THINK I'VE ALREADY SAID NO

25    FOOTNOTES, SO PLEASE MAKE SURE THERE ARE NONE.

1          MS. LAMM:  ALL RIGHT.

2          YOUR HONOR, ONE OTHER COMMENT THOUGH.  I SEE YESTERDAY, IN

3     FACT, MR. PETERS FILED A MOTION ABOUT THE AL-RUMAYYAN

4     DEPOSITION, AND I DO WANT TO RESPOND TO THAT.

5          THE COURT:  OF COURSE.  THAT'S SEPARATE.  THAT WILL

6     BE SEPARATE.  HE FILED A SEVEN-PAGE FILING, AND YOU MAY HAVE

7     THE SAME SEVEN PAGES.

8          MR. PETERS:  SO YOUR HONOR, STICKING WITH THE

9     CALENDAR, I THINK THEY ARE FILING ON TUESDAY THE 28TH, IF WE

10    COULD RESPOND ON FRIDAY THE 10TH.

11         MS. LAMM:  AND WE WOULD WANT AN EQUAL AMOUNT OF TIME

12    TO --

13         THE COURT:  ALL OPPOSITIONS WILL BE DUE MARCH 10TH.

14         MS. LAMM:  ALL RIGHT.

15         THE COURT:  AND THERE ARE NO REPLIES.

16    I NORMALLY DON'T HAVE HEARINGS ON THESE.

17    NO INCORPORATION BY REFERENCE TO ALL THE OTHER PAPERS IS

18    ALLOWED, PLEASE UNDERSTAND THAT.  SO YOU MAY HAVE BRIEFED THIS

19    OVER 30 PAGES TO JUDGE VAN KEULEN, AND IF YOU HAVE A SENTENCE

20    THAT SAYS IT'S INCORPORATED BY REFERENCE, YOU CAN BE ASSURED I

21    WILL NOT READ IT AND YOUR ARGUMENT WILL FAIL.

22    IF THERE ARE DOCUMENTS YOU ARE RELYING ON, YOU MUST

23    DELIVER THEM TO ME IN HARD COPY.  I DO READ THEM, THEY'RE NOT

24    WASTED.  I KNOW THEY MAY BE STREWN THROUGHOUT THE DOCKET, BUT

25    WE ARE AT DOCKET ENTRY 288 RIGHT NOW, I'M NOT GOING TO SPEND MY

1      TIME READING THE DOCKET.  SO PLEASE SEND ME NEW COPIES OF

2      EVERYTHING, TABBED AND DELIVERED TO MY CHAMBERS.

3          I THINK THAT TAKES CARE OF THE BRIEFING ON THE OBJECTIONS.

4          THE OTHER ISSUE THAT I HAD ON MY LIST WAS WHERE WE WERE ON

5      SERVING THE AMENDED ANSWER.  AND MS. LAMM, I THINK, HAS

6      ANSWERED THAT, IS THAT IN HER VIEW, THERE HAS NEVER BEEN

7      CONSENT TO ACCEPT SERVICE THROUGH COUNSEL.

8          AND SO MR. PETERS, I'M GOING TO HAVE TO LEAVE THAT IN YOUR

9      HANDS AS TO HOW YOU EFFECTUATE SERVICE.  RULE FOUR DOES NOT

10     CONTROL SERVICE ON FOREIGN PARTIES, SO THERE ISN'T EVEN A

11     90-DAY RULE THERE.  AND I DON'T BELIEVE SAUDI ARABIA IS PART OF

12     THE HAGUE CONVENTION, MAYBE THEY ARE, I'M NOT FAMILIAR, SO I --

13     THOSE ARE COMPLICATED THINGS THAT LUCKILY JUDGES DON'T HAVE TO

14     WORRY ABOUT SO MUCH.

15          MS. LAMM:  WELL, YOUR HONOR, I MIGHT SAY, IN OUR

16     VIEW, MR. PETERS SHOULD READ THE FOREIGN SOVEREIGN IMMUNITIES

17     ACT, 28 USC 1608(B)(3), HE WILL FIND A WAY, BUT WHAT WE CAN'T

18     DO IS E-MAIL COUNSEL, PUBLIC VERSIONS THAT ARE REDETECTED, IT

19     HAS NO EFFECT.

20          MR. PETERS:  WELL, THANK YOU FOR EDUCATING ME,

21     MS. LAMM, I REALLY DO APPRECIATE IT.  WE WILL CERTAINLY LOOK AT

22     THE STATUTE.  BUT COUNSEL DID FILE NOTICES OF APPEARANCE IN

23     THIS COURT WHICH EXPRESSLY STATED THAT ANY SERVICE OF ANY

24     PAPERS FILED WITH THE COURT ON THEM WOULD BE EFFECTUATED

25     THROUGH FILING THEM WITH THE COURT AND E-FILING.  THEY DIDN'T

1    CARVE OUT SOMETHING FOR THE SERVICE OF THE SUBSEQUENT

2    COMPLAINT.  AND SO I WILL LOOK AT THE FOREIGN SOVEREIGN

3    IMMUNITIES ACT AGAIN, BUT I BELIEVE THAT THEY ALREADY

4    CONSENTED, EXPLICITLY, TO ACCEPTING SERVICE THROUGH COUNSEL.

5            THE COURT:  SO MR. PETERS, THIS WILL COME UP, THAT IF

6    YOU BELIEVE YOU'VE ADEQUATELY SERVED PIF AND MR. AL-RUMAYYAN,

7    THEN YOU WILL COUNT THE DAYS UNTIL THEIR ANSWER IS DUE AND YOU

8    WILL FILE A REQUEST FOR DEFAULT, AND THE CLERK WILL EITHER

9    GRANT YOUR DEFAULT OR NOT.

10       THIS IS NOT A MATTER THAT'S GOING TO COME TO ME.  I MEAN,

11   THAT'S JUST THE WAY IT WORKS.  AND YOU KNOW, I'M NOT WADING

12   INTO THIS THICKET RIGHT NOW.

13           MR. PETERS:  UNDERSTOOD.

14           THE COURT:  AND MS. LAMM I DON'T THINK YOU WISH IT

15   ANY OTHER WAY AT THIS POINT, DO YOU?

16           MS. LAMM:  I THINK WHAT HE SHOULD DO IS SERVE

17   APPROPRIATELY AND WE WILL MAKE THE APPROPRIATE MOTIONS.  AND HE

18   KNOWS FULL WELL, HE'S A VERY BRIGHT GUY.

19           THE COURT:  OKAY.  ALL RIGHT.

20       SO IT DOESN'T -- I'M NOT ANTICIPATING THAT LIV WILL BE

21   FILING A MOTION TO DISMISS OR THE PLAYERS ON THE AMENDED

22   COUNTERCLAIM, IT DOESN'T AFFECT THEM.

23           MR. QUINN:  THAT'S CORRECT, YOUR HONOR.

24           THE COURT:  OKAY.  THAT'S GOOD.

25       ALL RIGHT.  SO I AM, TO A CERTAIN EXTENT, IGNORING THE

1    FACT OF THE AMENDED PLEADING BY PGA TOUR.  I'M FOCUSING ON THE

2    ORDER OF JUDGE VAN KEULEN, BECAUSE IT COVERS THE DISCOVERY,

3    DIFFERENT FACTORS MIGHT BE AT ISSUE ON THE WHERE AND WHEN AND

4    SCOPE OF DISCOVERY OR WHETHER IT'S EVEN ALLOWED, BUT DID SHE

5    GIVE A DATE BY WHICH THE DOCUMENTS NEEDED TO BE PRODUCED UNDER

6    HER ORDER.

7           MR. PETERS:  SHE INSTRUCTED US, YOUR HONOR, TO

8    RESERVE SUBPOENAS, TO RESERVE THE SUBPOENAS.

9           THE COURT:  OH, YEAH --

10          MR. PETERS:  WHICH WE HAVE DONE WITH THE WITNESS

11   FEES.  AND I CAN'T RECALL WHAT THE SPECIFIC DATE IS, MAYBE

12   MR. GOLDBERG COULD HELP ME, BUT THERE'S A COMPLIANCE DATE ON

13   THOSE SUBPOENAS.

14       I UNDERSTOOD MS. LAMM TO SAY THAT SHE'S GOING TO FILE,

15   WITH HER OBJECTION, A MOTION FOR A STAY.  AND AS I UNDERSTOOD

16   IT, MAYBE I'M WRONG, THAT'S ASKING YOUR HONOR TO STAY THEIR

17   COMPLIANCE WITH THOSE SUBPOENAS, BECAUSE I THINK THE COMPLIANCE

18   DATE IS GOING TO COME UP PRIOR TO THE TIME THAT THIS IS FULLY

19   BRIEFED.

20          MS. LAMM:  THAT IS CORRECT.  WELL, FULLY BRIEFED AND

21   DECIDED.

22          THE COURT:  WELL, YOU KNOW, JUDGE VAN KEULEN WORKED

23   ON IS THIS FOR QUITE A WHILE.  WHEN I READ HER ORDER, I

24   REALIZED WHAT AN ENORMOUS JOB IT WAS.  SHE LEARNED ABOUT THE

25   FOREIGN SOVEREIGN IMMUNITIES ACT, AND NOW I'M GOING TO HAVE TO

1    LEARN ABOUT IT MYSELF.  AS YOU CAN IMAGINE, I DIDN'T SHADOW HER

2    WORK WHILE SHE WAS DOING THAT.

3         AND IT IS -- WHAT I NEED TO DETERMINE -- I HAVE TO

4    DETERMINE THE ISSUES YOU ARE GOING TO PRESENT TO ME, THEN I

5    HAVE TO DETERMINE HOW -- WHAT SCOPE OF AN ORDER YOU ARE

6    ENTITLED TO.

7         AND IN LIGHT OF HER LENGTHY ORDER, I'M HOPING THAT I

8    CAN -- THE WRITING IS OFTEN WHAT BOGS US DOWN, NOT THE

9    DECIDING, SO I WILL HAVE TO TAKE A LOOK AT THAT.

10        ALL RIGHT.  WE HAVE A SCHEDULE.  I WILL HAVE THIS ISSUE

11   FULLY BRIEFED BY MARCH 10TH.  I DON'T ANTICIPATE A HEARING ON

12   IT.  YOU WILL SEND ME COURTESY COPIES OF EVERYTHING, AND YOU

13   UNDERSTAND THE FORMATTING.

14        THAT ACTUALLY COVERED MY ISSUES.  MR. PETERS, DID YOU HAVE

15   ANYTHING ELSE YOU WANTED TO ADDRESS THIS MORNING?

16          MR. PETERS:  YOUR HONOR, YOU DID MENTION SETTING A

17   FURTHER CMC FOR EARLY APRIL, AND I DON'T KNOW IF THAT'S

18   SOMETHING THE COURT WANTS TO DO NOW.

19          THE COURT:  I THINK WE SHOULD GET IT ON CALENDAR

20   BECAUSE I WANT TO SEE WHERE WE ARE WITH MY RULING ON THE

21   OBJECTIONS AND YOUR COMPLETION OF SERVICE OF THE AMENDED

22   ANSWER.

23        I KNOW THE POSITIONS OF THE PARTIES NOW, IT WILL MATURE IN

24   THE NEXT 30 DAYS.  SO THAT -- I THINK IT'S JUST BETTER FOR US

25   TO HAVE A SCHEDULED DATE.

1      LET ME JUST LOOK AT MY CALENDAR.  I WOULD -- TIFFANY, DO

2  WE HAVE TRIAL ON APRIL 7TH?

3          THE CLERK:  APRIL 7TH.  NO, YOUR HONOR -- OH, I'M

4  SORRY.  JUST A MOMENT.  WE ARE SCHEDULED FOR JURY SELECTION IN

5  THE WANG CASE ON APRIL 7TH.

6          THE COURT:  OKAY.  MAYBE THE AFTERNOON THEN OF

7  APRIL 6TH.  IF YOU COULD LOOK AT YOUR CALENDARS FOR APRIL 6TH

8  AT 1:30.  I THINK YOU ARE ALL PACIFIC TIME, AREN'T YOU?  I'M

9  LOOKING AT FACES HERE, I THINK YOU ARE ALL IN CALIFORNIA,

10  AREN'T YOU?

11          MS. LAMM:  NO, NO.  I AM EAST COAST.

12          THE COURT:  OH, YOU ARE.  I'M SORRY, MS. LAMM.

13          MS. LAMM:  IT DOESN'T MATTER.

14          THE COURT:  IT'S STILL GENERALLY WITHIN THE BUSINESS

15  DAY IF I SET IT AT 1:30.

16          MS. LAMM:  THAT IS CORRECT.  I'M HAPPY TO DO IT.

17          THE COURT:  ALL RIGHT.

18      SO LET'S SET A FURTHER CASE MANAGEMENT CONFERENCE FOR

19  APRIL 6TH.  THE ISSUE THAT I WANT TO ADDRESS IS THE STATUS OF

20  DISCOVERY, BECAUSE THE DOCUMENT PRODUCTION DEADLINE WILL HAVE

21  PASSED.

22      I EXPECT THAT YOU WILL HAVE COMPLETED ALL OF THE DOCUMENT

23  DISCOVERY, SEPARATE FROM THE THIRD PARTIES.  MAYBE THERE WILL

24  BE SOME PENDING MOTIONS TO COMPEL.  OBVIOUSLY YOU HAVE -- I'M

25  SURE YOU HAVE THE NORMAL 14 DAYS AFTER THE CLOSE OF DISCOVERY

1    TO FILE THOSE.  YOU WILL BE ABLE TO GIVE ME AN UPDATE ON THAT.

2    I WILL WANT TO KNOW WHAT YOUR DEPOSITION SCHEDULE LOOKS LIKE, I

3    WILL EXPECT THAT YOU HAVE A DEPOSITION SCHEDULE BY THEN AND

4    THAT YOU WILL BE MOVING FORWARD ON -- TO MEET THE SUMMARY

5    JUDGEMENT DEADLINE.

6         I WANT TO JUST HIGHLIGHT THAT IF YOU ARE LOOKING AT

7    CROSS-MOTIONS FOR SUMMARY JUDGEMENT, AND WE CAN DISCUSS THIS IN

8    APRIL, I ONLY ALLOW FOUR BRIEFS AND CROSS-MOTIONS, BECAUSE THE

9    ISSUES OVERLAP.  I JUST DON'T NEED SIX BRIEFS TO TELL ME THE

10   SAME THING SIX DIFFERENT TIMES.  I THINK YOU ALL KNOW THE

11   FORMATTING ON CROSS MOTIONS, SO I WILL LEAVE IT AT THAT.

12        THE CLERK:  YOUR HONOR, I'M SORRY TO INTERRUPT.  I DO

13   HAVE FINAL PRETRIAL CONFERENCE ON APRIL 6TH FOR THE WANG V.

14   EHANG CASE.

15        THE COURT:  THEN -- I THOUGHT YOU SAID I HAD WANG

16   JURY SELECTION ON THE 7TH?

17        THE CLERK:  THAT IS FOR --

18        THE COURT:  THE DIFFERENT WANG CASE.

19        THE CLERK:  THE DIFFERENT WANG CASE, YES.  THAT IS

20   FOR WANG V. FORENSIC PROFESSIONAL GROUP.

21        THE COURT:  SO THAT'S NOT A JURY CASE.

22        THE CLERK:  OH, HAS THAT BEEN CHANGED TO A PRETRIAL?

23   THEN WE WOULDN'T HAVE JURY SELECTION ON THE 7TH, IF IT'S A

24   BENCH TRIAL.

25        THE COURT:  ALL RIGHT.

1        I GUESS -- SO I DO NOTE THAT APRIL 7TH IS GOOD FRIDAY.

2    I'M GLAD TO DO THIS -- I WOULD DO IT IN THE MORNING.  I WILL

3    HAVE TO CHECK MY CALENDAR AGAIN.  BUT WOULD THE 7TH AT 9:00 BE

4    AVAILABLE?

5            MR. PETERS:  YOUR HONOR, FOR ME, THAT'S MUCH MORE

6    DIFFICULT THAN THE 6TH.  I WILL DO IT IF YOUR HONOR SETS IT,

7    NEEDLESS TO SAY.

8            THE COURT:  I'M NOT AVAILABLE ON THE 6TH, I HAVE

9    SOMETHING ELSE SET.  THAT'S MY PROBLEM.  I JUST DON'T WANT TO

10   LET MORE TIME GO BY.

11       WE COULD DO IT ON THE 31ST, I SUPPOSE.  TIFFANY, HOW DOES

12   THAT LOOK?

13           MR. PETERS:  WOULD IT BE THE AFTERNOON OF THE 7TH,

14   YOUR HONOR?

15           THE COURT:  I'M SORRY, MR. PETERS, WHAT WAS THAT?

16           MR. PETERS:  THE AFTERNOON OF THE 7TH?

17           THE COURT:  WELL, I'M SENSITIVE TO THE FACT THAT

18   THAT'S EASTER WEEKEND, AND I DON'T KNOW WHETHER PEOPLE HAVE

19   FAMILY PLANS.

20           THE CLERK:  MARCH 31ST IS AVAILABLE, YOUR HONOR.

21           MR. QUINN:  YOUR HONOR, I HAVE A CONFLICT -- I HAVE A

22   PROBLEM ON MARCH 31ST.

23           THE COURT:  OKAY.

24           MR. QUINN:  I CAN DO THE 6TH OR THE 7TH OR ANY DAY

25   THAT WEEK.

1          THE COURT:  MR. PETERS, WHEN DOES YOUR CONFLICT ON

2     THE 7TH CONCLUDE?

3          MR. PETERS:  AT 1:00 P.M.

4          THE COURT:  OH, WELL THAT'S GETTING AWFULLY LATE FOR

5     EAST COAST APPEARANCE BY MS. LAMM.

6          MS. LAMM:  DID HE SAY 1:00?

7          MR. PETERS:  1:00 PACIFIC.

8          MS. LAMM:  YEAH, THAT'S FINE.

9          THE COURT:  ALL RIGHT.  SO WE ARE BACK ON APRIL 7TH

10    AT 1:00 P.M. PACIFIC TIME.

11         OKAY.  I WILL HAVE TO LOOK AT MY CALENDAR.  WHEN I'M ON

12    ZOOM, I DON'T HAVE TWO SCREENS, SORRY.  I WANT TO LOOK AND SEE

13    WHAT THOSE CASES ARE.  I DON'T WANT TO LEAVE THAT ON TIFFANY'S

14    SHOULDERS.

15         SO IF THERE'S ANY CHANGE, I WILL BE IN TOUCH WITH YOU,

16    OTHERWISE I WILL PUT OUT AN ORDER FOR FURTHER CASE MANAGEMENT

17    ON APRIL 7TH.

18         AND WE WILL EXPECT A BRIEF STATEMENT, JOINT STATEMENT FROM

19    THE PARTIES ON THE STATE OF DISCOVERY.  IT WAS A PLEASURE TO

20    READ 28 PAGES OF YOUR JOINT STATEMENT THIS TIME, BUT LET'S KEEP

21    IT AT 15 PAGES NEXT TIME.  I JUST DON'T NEED THAT MUCH.  AND

22    YOU CAN FILE THAT ONE WEEK IN ADVANCE, BY THE 31ST.

23         ALL RIGHT.  I WILL WAIT TO RECEIVE YOUR BRIEFING ON -- ON

24    JUDGE VAN KEULEN'S ORDER, AND THEN I WILL PROCEED TO WORK ON

25    THAT.

1    MR. QUINN?

2         MR. QUINN:  YOUR HONOR, MAY I CORRECT ONE THING?

3         THE COURT:  SURE.

4         MR. QUINN:  YOU ASKED ME WHETHER LIV WOULD BE FILING

5    A MOTION TO DISMISS ON THE AMENDED COUNTERCLAIM.  I SAID

6    DEFINITIVELY NO, AND I GOT A POKE THAT SOMEBODY WAS STILL

7    LOOKING AT THAT.  THE ANSWER IS PROBABLY.

8         THE COURT:  THAT'S FINE.  THAT'S FINE.  AND THAT'S

9    FINE, AND THANK YOU FOR THAT.

10        OF COURSE I'M NOT RESTRICTING YOU.  IF A MOTION TO DISMISS

11   IS FILED, ALL PARTIES WILL SHARE THE 25 PAGES.  THAT'S WHAT I

12   WANT YOU TO KNOW.  YOU CAN FILE SEPARATE BRIEFS, I'M NOT

13   SUGGESTING OTHERWISE, BUT 25 PAGES TOTAL, OKAY.

14        AND I MEAN, YOU KNOW, I KNOW THERE ARE PERSONAL

15   JURISDICTION ISSUES, LIV MAY DECIDE THAT IT CAN JUST SIMPLY

16   JOIN THE ARGUMENTS ON THE ADEQUACY, THE 12(B)(6) ISSUES, THE

17   ADEQUACY OF THE PLEADING, BUT I'M JUST -- I DON'T NEED IT SAID

18   TWICE.

19        OKAY.  THANK YOU FOR THAT.  I THINK WE ARE -- BUT SERVICE

20   HAS TO TAKE PLACE FIRST ON THAT AMENDED -- WELL, NOT FOR YOU, I

21   GUESS, MR. QUINN.  LIV HAS BEEN SERVED, SO I DON'T KNOW WHERE

22   WE ARE ON THE BRIEFING ON A MOTION TO DISMISS.  PLEASE WORK

23   THAT OUT.  COORDINATE IT.  I DON'T NEED THIS TO BE ASKEW.

24        MR. QUINN:  VERY WELL, YOUR HONOR.

25        THE COURT:  THANK YOU VERY MUCH.

1          ALL RIGHT.  THANK YOU ALL.  WE HAVE A LOT OF ISSUES

2     BROILING, I THINK WE ALL WANT THIS CASE TO MOVE TO TRIAL AS

3     QUICKLY AS POSSIBLE, BUT IT'S GOT TO BE DONE IN THE RIGHT WAY.

4          MR. QUINN:  THANK YOU, YOUR HONOR.

5          MR. PETERS:  THANK YOU.

6          MS. LAMM:  THANK YOU.

7          THE COURT:

8     (THE PROCEEDINGS WERE CONCLUDED AT 11:11 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8         I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13         THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185        DATED: 2/27/23