**WHITE & CASE**LLP

Carolyn Lamm (*pro hac vice*)
Hansel Pham (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)
701 Thirteenth Street, NW
Washington, District of Columbia 20005
Telephone:  (202) 626-3600
Facsimile: (202) 639-9355
clamm@whitecase.com
hpham@whitecase.com
nkownacki@whitecase.com

Jack E. Pace III (*pro hac vice*)
Kimberly A. Havlin (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jpace@whitecase.com
kim.havlin@whitecase.com

Heather M. Burke (SBN 284100)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com

QUINN EMANUEL URQUHART &
SULLIVAN LLP
JOHN B. QUINN, SBN 90378
johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

JOHN BASH (*pro hac vice*)
johnbash@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, TX 78701-3901
Telephone: (737) 667 6100

ROBERT P. FELDMAN, SBN 69602
bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:  650.801.5100

*Attorneys for Non-Parties The Public Investment Fund of the*
*Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MATT JONES, BRYSON
DECHAMBEAU, PETER UIHLEIN, and
LIV GOLF INC.,

               Plaintiffs,

    v.

PGA TOUR, INC.,

               Defendant and
               Counter-Plaintiff,

    v.

LIV GOLF INC.,

               Counter-Defendant.

CASE NO. 5:22-cv-04486-BLF

**THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE**

Judge:      Hon. Beth Labson Freeman

Date Filed:  August 3, 2022

Trial Date:  January 8, 2024

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on a date and time to be determined, or as soon as the matter may be heard, before the Honorable Beth Labson Freeman of the United States District Court, Northern District of California at Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, California, non-parties The Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and His Excellency Yasir Othman Al-Rumayyan ("HE") will and do move for a de novo determination of a dispositive matter referred to Magistrate Judge or, in the alternative, for relief from nondispositive pretrial order of Magistrate Judge, pursuant to 28 U.S.C. § 636, Federal Rule of Civil Procedure 72, and Civil Local Rule 72, in connection with Magistrate Judge van Keulen's Order on (1) Motion of PGA Tour, Inc. to Compel Compliance With Subpoenas to Third Parties Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan[] . . . ; (2) Motion of Third Parties Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan's Motion to Quash Subpoenas; and (3) Administrative Motions for Leave to Supplement Motion to Compel and Motion to Quash.  Dkt. No. 265.

The motion is based upon this notice of motion, the supporting memorandum of points and authorities and exhibits thereto, the Magistrate Judge's order on these motions (Dkt. No. 265), and any such evidence as may be requested or permitted by the Court.

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

1   DATED:  February 28, 2023          Respectfully submitted,

2                                      By:  ___/s/ *Carolyn B. Lamm*___

3                                      **WHITE & CASE**LLP

4                                      Carolyn Lamm (*pro hac vice*)
                                       Hansel Pham (*pro hac vice*)
5                                      Nicolle Kownacki (*pro hac vice*)
                                       701 Thirteenth Street, NW
6                                      Washington, District of Columbia 20005
                                       Telephone:  (202) 626-3600
7                                      Facsimile: (202) 639-9355
                                       clamm@whitecase.com
8                                      hpham@whitecase.com
                                       nkownacki@whitecase.com
9
                                       Jack E. Pace III (*pro hac vice*)
10                                     Kimberly A. Havlin (*pro hac vice*)
                                       1221 Avenue of the Americas
11                                     New York, New York 10020
                                       Telephone: (212) 819-8200
12                                     Facsimile: (212) 354-8113
                                       jpace@whitecase.com
13                                     kim.havlin@whitecase.com

14
                                       Heather M. Burke (SBN 284100)
15                                     3000 El Camino Real
                                       2 Palo Alto Square, Suite 900
16                                     Palo Alto, CA  94306-2109
                                       Telephone: (650) 213-0300
17                                     Facsimile: (650) 213-8158
                                       hburke@whitecase.com
18
19                                     JOHN B. QUINN, SBN 90378
                                        johnquinn@quinnemanuel.com
20                                     DOMINIC SURPRENANT, SBN 165861
                                        dominicsurprenant@quinnemmanuel.com
21                                     KEVIN TERUYA, SBN 235916
                                        kevinteruya@quinnemanuel.com
22                                     QUINN EMANUEL URQUHART &
                                       SULLIVAN LLP
23
24
25
26
27
28
                                            iii

865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

JOHN BASH
johnbash@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, TX 78701-3901
Telephone: (737) 667 6100
Facsimile: (737) 667 6110

ROBERT P. FELDMAN, SBN 69602
bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

*Attorneys for Non-Parties The Public Investment
Fund of the Kingdom of Saudi Arabia and His
Excellency Yasir O. Al-Rumayyan.*

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

1

# <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS**................................................................................................v

**TABLE OF AUTHORITIES**........................................................................................ vi

**INTRODUCTION**..........................................................................................................1

**BACKGROUND**.............................................................................................................1

**STANDARD OF REVIEW** ...........................................................................................2

**ARGUMENT** .................................................................................................................2

I.      PIF AND HE ARE IMMUNE FROM THE JURISDICTION OF A U.S. COURT.............2

      A.      The FSIA's Commercial Activity Exception Does Not Apply To PIF.....................2

            1.      Neither The Claims Nor The Counterclaim Is "Based Upon" PIF's Conduct .................................................................................................3

            2.      The Tour Has Not Established A "Direct Effect" In The United States .................................................................................................5

      B.      Approving Another Entity's Lawsuit Is Not Waiver Under § 1605(a)(1) ................5

      C.      Common-Law Official Immunity Has No Commercial Activity Exception ............6

      D.      Sovereign Immunity Must Be Assessed Claim-By-Claim.........................................6

II.     THE COURT LACKED PERSONAL JURISDICTION OVER PIF AND HE...................7

III.    THE COURT SHOULD HEAR THE EVIDENCE OF SAUDI LAW ...............................7

IV.   THE COURT BELOW ERRED IN ITS INTERNATIONAL COMITY ANALYSIS ........................................................................................................9

      A.      Compelling Discovery Undermines Important Interests of Saudi Arabia ...............9

      B.      In Assessing U.S. Interests, The Court Applied The Wrong Standard ...................11

      C.      The Court Applied The Wrong Standard In Requiring Specific Evidence Of Imminent Criminal Jeopardy.....................................................................11

      D.      The Court Failed To Scrutinize The Need For Discovery From These Parties .....................................................................................................12

V.      THE NARROW SERVICE AGREEMENT HAS EXPIRED ...........................................13

**CONCLUSION**..............................................................................................................13

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### CASES

4

*Aldossari v. Ripp*,

5
      49 F.4th 236 (3d Cir. 2022)............................................................................5, 6

6
*APL Co. Pte v. UK Aerosols Ltd.*,
      582 F.3d 947 (9th Cir. 2009)................................................................................8

7
*Arch Trading Corp. v. Republic of Ecuador*,

8
      839 F.3d 193 (2d Cir. 2016)................................................................................4

9
*Broidy Capital Mgmt. v. Qatar*,
      982 F.3d 582 (9th Cir. 2020)................................................................................7

10

11
*Calder v. Jones*,
      465 U.S. 783 (1984) ...........................................................................................7

12
*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,

13
      2013 U.S. Dist. LEXIS 85650 (S.D.N.Y. June 11, 2013)...............................11, 12

14
*De Fontbrune v. Wofsy*,

15
      838 F.3d 992 (9th Cir. 2016)............................................................................7, 8

16
*Doe v. Holy See*,
      557 F.3d 1066 (9th Cir. 2009)..........................................................................2, 4

17

18
*Dogan v. Barak*,
      932 F.3d 888 (9th Cir. 2019)................................................................................6

19
*EM Ltd. v. Republic of Argentina*,

20
      695 F.3d 201 (2d Cir. 2012)................................................................................5

21
*First City, Texas-Houston, N.A. v. Rafidain Bank*,
      150 F.3d 172 (2d Cir. 1998)...............................................................................13

22
*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*,

23
      462 U.S. 611 (1983) ...........................................................................................4

24
*In re: 3M COMBAT ARMS EARPLUG Prods. Liab. Litig.*,
      2020 U.S. Dist. LEXIS 173730 (N.D. Fla. Feb. 18, 2020) .......................................10

25

26
*In re Glob. Crossing, Ltd., Sec. Litig.*,
      2005 U.S. Dist. LEXIS 16228 (S.D.N.Y. Aug. 5, 2005) ...........................................6

27
*Leibovitch v. Islamic Republic of Iran*,

28
      188 F. Supp. 3d 734 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017)................11

*Nicolosi Distrib. v. Finishmaster, Inc.*,
   No. 18-cv-03587-BLF, 2019 U.S. Dist. LEXIS 62079 (N.D. Cal. Apr. 10, 2019)......................7

*Northrop Grumman Ship Sys. v. Ministry of Def.*,
   575 F.3d 491 (5th Cir. 2009) ................................................................................8

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) ........................................................................................3, 4

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
   899 F.3d 1081 (9th Cir. 2018) .............................................................................5

*Peterson v. Islamic Rep. of Iran*,
   627 F.3d 1117 (9th Cir. 2010) .............................................................................2

*Phaneuf v. Republic of Indon.*,
   106 F.3d 302 (9th Cir. 1997) ...............................................................................2

*PowerShare, Inc. v. Syntel, Inc.*,
   597 F.3d 10 (1st Cir. 2010) .................................................................................2

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ...................................................................9, 11, 13

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) .........................................................................................3

*Sequeira v. Republic of Nicar.*,
   2018 U.S. Dist. LEXIS 144607 (C.D. Cal. Aug. 24, 2018) ........................................8

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*,
   482 U.S. 522 (1987) .........................................................................................9

*Teco Guatemala Holdings, LLC v. Republic of Guatemala*,
   No. 17-cv-0102 (D.D.C. Jan. 22, 2020) .................................................................8

*Tiffany (NJ) LLC v. Qi Andrew*,
   276 F.R.D. 143 (S.D.N.Y. 2011)....................................................................11, 12

*U.S. v. Pangang Grp. Co. Ltd.*,
   2022 WL 580790 (N.D. Cal. Feb. 25, 2022) ...........................................................6

*United States v. Turkiye Halk Bankasi A.S.*,
   16 F.4th 336 (2d Cir. 2021) ................................................................................6

*Weiming Chen v. Ying-Jeou Ma*,
   2013 WL 4437607 (S.D.N.Y. Aug. 19, 2013) .........................................................6

*Wye Oak Tech., Inc. v. Rep. of Iraq*,
   24 F.4th 686 (D.C. Cir. 2022) ............................................................................3

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

1

# STATUTES AND RULES

2

18 U.S.C. § 1905 ....................................................................................................11

3

28 U.S.C. § 1603(b) ................................................................................................2

4

28 U.S.C. § 1605(a) ................................................................................................1

5

28 U.S.C. § 1605(a)(1) ...........................................................................................5

6

28 U.S.C. § 1605(a)(2) .......................................................................................5, 7

7

Fed. R. Civ. P. 44.1 ........................................................................................1, 7, 8

8

Fed. R. Civ. P. 72 ...................................................................................................2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

1

## INTRODUCTION

2          The Order is an extraordinary infringement on the sovereignty of a foreign state that is far

3   from justified here.  The Public Investment Fund ("PIF") and His Excellency Yasir Othman Al-

4   Rumayyan ("HE") are not ordinary third parties subject to basic discovery relevance standards.

5   They are a sovereign instrumentality of the Kingdom of Saudi Arabia and a sitting minister of the

6   Saudi government, and they cannot be compelled to provide testimony and documents in a U.S.

7   proceeding unless *their conduct*—not LIV's or anyone else's—is truly the "gravamen" of the case.

8   This antitrust case against the Tour obviously is not "based on" PIF and HE's conduct, and neither

9   is the tortious interference counterclaim directed against LIV.  The Order erred in applying a far

10  more lenient standard than that required under 28 U.S.C. § 1605(a).  The Order then created a

11  genuinely unprecedented commercial activity exception to the common law immunity applicable to

12  foreign governmental officials.  Worse, the Order acknowledges that it requires PIF and HE to

13  *violate Saudi law* pertaining to confidential government documents, including PIF's own governing

14  law and multiple other Saudi laws that impose fines and imprisonment, but inexplicably concludes

15  that Saudi Arabia's "interests" would not be undermined by a U.S. court compelling such violations.

16  The Order also found that the evidence of these Saudi interests was lacking—but any such

17  deficiency existed because the Magistrate Judge had wrongly excluded evidence that PIF and HE

18  sought to introduce to complete the record on these exact points.  Under FRCP 44.1, sources

19  establishing foreign law may be considered at any time, including *de novo* now.  Finally, the Order

20  fails to reconcile the powerful sovereign interests at play with real need for this discovery in this

21  case, given the limited relevance of the PIF and HE to the actual claims and defenses, and the fact

22  that much of what is sought is available from LIV and from non-sovereign third parties.  This Court

23  should vacate the Order and quash the subpoenas.

24

## BACKGROUND

25          This is an antitrust lawsuit.  Plaintiff LIV Golf, Inc. ("LIV") alleges that Defendant the PGA

26  Tour, Inc. (the "Tour") is seeking to prevent the entry of a competitor golf league, including by

27  enforcing certain Tour regulations that prevent golfers from playing in other golf tours.  Dkt. No.

28  83 ¶¶ 56-88.  The Tour has counterclaimed against LIV for tortious interference with the restrictive

1

1   contracts it places on its players.  Dkt. No. 108.  PIF is LIV's indirect majority investor, which the

2   parties agree is a sovereign instrumentality under the Foreign Sovereign Immunities Act ("FSIA"),

3   28 U.S.C. § 1603(b).  HE is its governor and a high-ranking Saudi government official.  PIF and HE

4   moved to quash (Dkt. No. 166), and thereafter moved to submit additional authority on Saudi law

5   (Dkt. No. 211).  The Order largely denied the motion to quash, rejecting PIF's immunity under the

6   FSIA, HE's immunity at common law, personal jurisdiction defenses, and comity arguments, and

7   refusing to consider supplemental Saudi law material.

8                                  **STANDARD OF REVIEW**

9          The Order should be reviewed *de novo* under the dispositive matter standard because it is a

10  dispositive matter as to these third parties and their objections and defenses to the subpoenas.  Fed.

11  R. Civ. P. 72(b); *see* Feb. 24, 2023 H'rg Tr. 23:14-16.  Even if the Court applies Rule 72(a)'s

12  nondispositive matter standard, PIF and HE raise questions of law and mixed questions of law and

13  fact that should be reviewed *de novo*, and there is "no practical difference between" the "'contrary

14  to law' standard" and "Rule 72(b)'s de novo standard."  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d

15  10, 15 (1st Cir. 2010).  Immunity under the FSIA must be determined before any discovery can

16  proceed.  *Phaneuf v. Republic of Indon.*, 106 F.3d 302, 305 (9th Cir. 1997).

17                                        **ARGUMENT**

18  **I.      PIF AND HE ARE IMMUNE FROM THE JURISDICTION OF A U.S. COURT**

19          **A.      The FSIA's Commercial Activity Exception Does Not Apply To PIF**

20          The parties agree that PIF is a "foreign state" within the meaning of the FSIA.  PIF therefore

21  presumptively has immunity in U.S. courts, and the Tour bears the burden of producing evidence

22  that an exception applies before the Court may exercise jurisdiction.  *Peterson v. Islamic Rep. of*

23  *Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010).  The Tour cannot rest merely on allegations; rather, when

24  a sovereign makes a "*fact-based* challenge[] to subject matter jurisdiction," as PIF has done, the

25  court "may not construe factual allegations in favor of the plaintiff" or assume their truth.  *Doe v.*

26  *Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  The Tour asserts that the commercial activity

27  exception applies, but neither LIV's action nor the Tour's counterclaim is "based upon" PIF's

28  activity; nor did PIF's relevant "act[s]" abroad cause a "direct effect in the United States."

1          **1.  Neither The Claims Nor The Counterclaim Is "Based Upon" PIF's Conduct**

2          The "action" is not "based upon" PIF's conduct because PIF's conduct is not the gravamen

3   of either the claims or the counterclaims.  An action is "based upon" a sovereign's conduct when

4   that conduct forms the "gravamen of the complaint." *OBB Personenverkehr AG v. Sachs*, 577 U.S.

5   27, 33-34 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)).  It is not enough that the

6   conduct provides an element (even an essential element) of the claim.  *Id.* at 32, 34; *see also* Order

7   21-22.  Instead, a court must examine the "acts that actually injured" the plaintiff and focus on

8   conduct that was allegedly "wrongful," not merely acts that led to wrongful conduct.  *OBB*, 577

9   U.S. at 35 (physical injury at Austrian train station was not "based upon" initial purchase of rail pass

10  in the United States).  Only PIF's own conduct—not LIV's—is the focus of the analysis.  *See Wye*

11  *Oak Tech., Inc. v. Rep. of Iraq*, 24 F.4th 686, 700 (D.C. Cir. 2022) (The commercial activity

12  exception has long been interpreted to relate "only to the conduct of the foreign state.").

13         Here, LIV's claims do not mention PIF's conduct at all; PIF is certainly not the "gravamen"

14  of those claims.  As the Order recognizes, the basis for "LIV's claim" is that "PGA has illegally

15  prevented it from entering the relevant markets."  Order 21.  The "gravamen" of LIV's antitrust

16  claim is the Tour's anticompetitive conduct—including player bans, threats to players, and a

17  conspiracy—designed to foreclose LIV's competitive entry into the market.  Dkt. No. 83 ¶¶ 3, 98.

18  That is not PIF's conduct.  The Order nevertheless concluded that PIF's conduct is the "gravamen"

19  of the antitrust claims because "LIV was designed and intended to compete with PGA."  Order 21-

20  22. Of course LIV intended to compete.  But that is not "wrongful" conduct and certainly is not the

21  gravamen of an antitrust claim—only the Tour's conduct can form the "gravamen" of a claim against

22  the Tour.  LIV's hope to compete, and PIF's support for LIV, are not the wrongful conduct at the

23  core of LIV's claims.

24         Nor is PIF's conduct the "gravamen" of the Tour's counterclaim for tortious interference,

25  even accepting the Order's factual findings.  As the Order describes, "[t]he basis for PGA's

26  counterclaim is that LIV allegedly interfered with PGA's contractual relationships with the Plaintiffs

27  who now play for LIV."  Order 21.  There is no evidence that PIF itself engaged in that conduct.

28  Rather, all the Order concludes is that "LIV has used PIF's funding" to "pay golfers to join LIV";

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

that LIV "offer[ed] players 'increased prize find and financial incentives'" to "sign long-term, exclusive contracts" that made it "impossible" for them to comply with the Tour's contracts; and that LIV operated "as PIF planned" in this regard. Order at 21, 23. Funding a business enterprise is not a "wrongful" act; nor is it the conduct that "actually injured" the Tour. Rather, the gravamen of the counterclaim is *LIV's* alleged conduct in recruiting and signing players.

Notably, the Order disclaims any reliance on an agency or alter-ego theory between PIF and LIV. *Id.* at 13, 39. Nor are there factual allegations of the day-to-day control necessary to attribute LIV's actions to PIF under the Supreme Court's precedent concerning veil piercing in the sovereign-immunity context. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 628 (1983); *Doe v. Holy See*, 557 F.3d 1066, 1078 (9th Cir. 2009) (applying *Bancec* to assess whether acts by "affiliated domestic corporation" may "render a foreign sovereign amenable to suit"); *see also Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 198 (2d Cir. 2016) (foreign sovereigns are presumed "'separate' from other distinct legal entities").

That is even clearer in light of the Tour's admissions about the "basis" of its counterclaim. The Tour's claim is limited to allegedly induced breaches by "LIV players who attempted to remain with the TOUR," and the alleged act of interference was "insist[ing] that players remain with the TOUR while inducing players to knowingly breach TOUR provisions." Dkt. No. 271 at 1, 3, 5. The Tour has presented no evidence that PIF ever attempted to persuade a Tour member to remain with the Tour while breaking its rules. The Order states only that PIF met with U.S. golfers and their agents when "PIF was developing its founding strategy for LIV"—*i.e.*, before LIV existed and could have solicited players. Order 15. The Order also describes a message from HE to a prominent golfer where HE assures him of "standing by the players rights" to address "concerns from a legal perspective." *Id.* That does not indicate that PIF encouraged the player to remain with the Tour or to break Tour rules after joining LIV. The remaining evidence concerns communications with agents, sponsors, and broadcasters—intended to "accelerate" LIV negotiations—that did not involve encouraging players to "remain" with the Tour. *Id.* at 15-16. Those communications were not the "wrongful" or injury-causing conduct at the "foundation" of the counterclaim, as the Tour itself has framed it. *OBB*, 577 U.S. at 35-36.

### 2.   The Tour Has Not Established A "Direct Effect" In The United States

The Order also errs in its conclusion under prong 3 that PIF's alleged conduct abroad had a "direct effect" in the United States.  Order 23; *see* 28 U.S.C. § 1605(a)(2).  All of the effects that the Order identifies stemmed directly from *LIV's* conduct: signing prominent golfers to long-term contracts and increasing prizes and financial incentives in order to challenge the Tour competitively. The Order again claims that PIF caused those effects because PIF "formed" LIV and "planned" for LIV to compete with the Tour for top golfers.  Order 23.  That causal relationship is by definition indirect—PIF funded and created LIV, and LIV then allegedly took actions and caused effects that the Tour now challenges.  The Order's holding means that foreign sovereign investors have a "direct effect" in the United States simply by virtue of planning and oversight of an investment (here, through three legally separate corporate entities).  That is not and should not be the law.

### B.   Approving Another Entity's Lawsuit Is Not Waiver Under § 1605(a)(1)

The Order separately opines that the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1), would be satisfied if jurisdictional discovery demonstrates "PIF's involvement (if any) in the decision to file this lawsuit."  Order 27.  This was clear legal error.  To begin with, jurisdictional discovery would be inappropriate for either waiver or the commercial activity exception (*see* Order 24, 27) given the high bar for such discovery under the FSIA.  *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 209-10 (2d Cir. 2012).  Jurisdictional discovery is proper only to "verify allegations of specific facts crucial to an immunity determination," and there are none identified here.  *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094 (9th Cir. 2018).

In any event, "virtually unanimous precedent . . . construes the waiver exception strictly and requires strong evidence—in the form of 'clear and unambiguous' language or conduct—that the foreign state intended to waive its sovereign immunity."  *Aldossari v. Ripp*, 49 F.4th 236, 250 (3d Cir. 2022).  Here, PIF and HE consistently disputed that authorizing another party to file a lawsuit could ever qualify as FSIA waiver.  *See* Dkt. No. 166 at 11; Jan. 13, 2023 H'rg Tr. 62:17-21.  And no direct evidence of consent was offered, while PIF and HE showed no such consent had been provided.  Dkt. No. 166-6 ¶ 2.  Nevertheless, the Order erroneously concluded that the Tour "has made an initial showing that" § 1605(a)(1) applies by pointing to a shareholder agreement for LIV's

5

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

grandparent corporation requiring "Investor Consent" for major litigation.   Order 26.   That agreement requires only that two out of five PIF-appointed directors of the grandparent consent to litigation, not that PIF itself do so.   Dkt. No. 225-1 at 44, 66; *see In re Glob. Crossing, Ltd., Sec. Litig.*, 2005 U.S. Dist. LEXIS 16228, at *31-36 (S.D.N.Y. Aug. 5, 2005).   Regardless, this comes nowhere close to a foreign sovereign's "clear and unambiguous" intent to waive its immunity, as mere 'involvement' in initiating a lawsuit does not suffice.   *See Aldossari*, 49 F.4th at 250.

### C.      Common-Law Official Immunity Has No Commercial Activity Exception

The FSIA (and its exceptions to immunity) do not apply to foreign officials; they enjoy immunity under the common law for "acts performed in [their] official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."   *Dogan v. Barak*, 932 F.3d 888, 983-94 (9th Cir. 2019).   The Order correctly found that HE, the Governor of PIF and a government Minister, meets the "requirements for conduct-based immunity."   Order 31.   However, the Order then concludes HE's common-law immunity is subject to the same commercial activity exception codified in the FSIA.   Order 31-33.   No case has ever so held: this would be the first.   At least one court has rejected any commercial-activity exception to common-law foreign official immunity, reasoning that such immunity "exceed[s] that of the state: even if the state could be sued for an official's acts . . . the official himself could not be."   *Weiming Chen v. Ying-Jeou Ma*, 2013 WL 4437607, at *4 (S.D.N.Y. Aug. 19, 2013).

The Order relies on two cases that involved foreign state instrumentalities, not officials, and that simply recite that before the FSIA, common-law foreign-sovereign immunity had an exception for commercial activity.   *See United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 351 (2d Cir. 2021) ("[A]ny foreign sovereign immunity at common law also had an exception for a foreign state's commercial activity"); *U.S. v. Pangang Grp. Co. Ltd*., 2022 WL 580790, at *13 (N.D. Cal. Feb. 25, 2022).   Those cases do not address whether common-law foreign-official immunity has such an exception.   Regardless, to the extent any such exception exists, the Order's reasoning incorporated its FSIA analysis (Order 33) and is flawed for the reasons discussed above.   *See* § I.A, *supra*.

### D.      Sovereign Immunity Must Be Assessed Claim-By-Claim

Immunity under the FSIA is evaluated on a claim-by-claim basis, and a court may not "assert

6

1   jurisdiction over [an] entire action" if only "*one* of th[e] claims fits within an exception in

2   the FSIA." *Broidy Capital Mgmt. v. Qatar*, 982 F.3d 582, 590 n.2 (9th Cir. 2020) (citation omitted).

3   Here, the Order found a sovereign immunity exception based only on the counterclaim (Order 24),

4   then erred in failing to limit discovery to matters relevant to that counterclaim. *See* Order Ex. A.

5   ## II.   THE COURT LACKED PERSONAL JURISDICTION OVER PIF AND HE

6       The Order's analysis on personal jurisdiction turned almost exclusively on the Court's

7   (erroneous) conclusions regarding § 1605(a)(2) (*see* Order 36, 39), and for the same reasons stated

8   above, PIF and HE lack the necessary "minimum contacts" with the United States to support specific

9   jurisdiction.  Looking solely at PIF's own conduct, the founding and funding of LIV—through two

10  intermediary entities—are not sufficient contacts for specific jurisdiction as to PIF.  "[M]eetings

11  with the top golf players and their agents in Saudi Arabia and the US" (Order 36) before LIV was

12  created, and PIF's purported role as "the driving force in establishing LIV in the United States,"

13  cannot provide the necessary minimum contacts to exercise specific jurisdiction over PIF.  *See*

14  *Nicolosi Distrib. v. Finishmaster, Inc.*, No. 18-cv-03587-BLF, 2019 U.S. Dist. LEXIS 62079, at

15  *27-28 (N.D. Cal. Apr. 10, 2019) (shareholder's "mere funding of a subsidiary corporation or aiding

16  in corporate strategy" was not purposeful direction and was insufficient "to establish minimum

17  contacts with the forum").  As for HE, the Order points to two isolated U.S. trips, along with some

18  communications with players, with "possible sponsors and broadcasters," and status updates HE

19  received.  It supplies no analysis for why these constitute "activities in the United States."  *See* Order

20  15-16, 38.  It also does not consider how the claims at issue "arise out of" those contacts, and instead

21  refers only back to the discussion of PIF's alleged commercial activity under the FSIA.  Order 39.

22  This cannot satisfy the basic requirement that jurisdictional contacts "must be assessed

23  individually."  *Calder v. Jones*, 465 U.S. 783, 790 (1984).

24  ## III.   THE COURT SHOULD HEAR THE EVIDENCE OF SAUDI LAW

25      The Court below improperly denied PIF and HE's administrative motion to submit

26  supplemental materials on Saudi law (Dkt. No. 211) as untimely.  *See* Order 8-9.  Under FRCP 44.1,

27  the Court has an "independent obligation to adequately ascertain foreign law," including through

28  review of foreign legal expert testimony and excerpts of relevant foreign law.  *De Fontbrune v.*

7

*Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016).  Foreign law, including expert testimony, is routinely admitted and considered at the motion to dismiss stage in FSIA cases.  *See, e.g.*, *Sequeira v. Republic of Nicar.*, 2018 U.S. Dist. LEXIS 144607, at *10 (C.D. Cal. Aug. 24, 2018).  And "such material and testimony may be considered '***at any time***.'"  *De Fontbrune*, 838 F.3d at 998 (emphasis added).  Thus courts have admitted foreign law evidence despite far longer delays than anything here.  *See Northrop Grumman Ship Sys. v. Ministry of Def.*, 575 F.3d 491, 496-98 (5th Cir. 2009) (district court "abused its discretion by relying solely on the length of [an 18 month] delay" in denying Venezuela's Rule 44.1 notice to rely on Venezuelan law).  "Rule 44.1 is intended to prevent '*unfair* surprise,' not to impose any specific time limit."  *Id.*

While it was error to exclude this evidence below, that evidence can and should now be considered by this Court under Rule 44.1, which requires only "reasonable notice" of PIF and HE's "intent to invoke" issues of Saudi law.  *APL Co. Pte v. UK Aerosols Ltd.*, 582 F.3d 947, 955-56 (9th Cir. 2009).  All three of the *APL* factors courts use in assessing the reasonableness of such notice support the admission of supplemental Saudi law materials in this case.

**Stage of the Case at Time of Notice:** The Tour was on notice of PIF and HE's intent to invoke Saudi law since at least the initial filing of the Motion to Quash on November 22, 2022.

**Reasons Proffered:** PIF and HE initially raised key issues of Saudi law with their opening Motion to Quash.  The Tour later contested those arguments (Dkt. No. 169 at 14-15), after which PIF and HE sought to provide additional Saudi law materials to assist the Court.  Due to the significance and complexity of the Saudi law issues implicated by the Tour's subpoenas, PIF and HE retained separate counsel, who required time to translate and analyze relevant Saudi law in coordination with a Saudi law expert, as well as to communicate with its foreign sovereign clients. This is not unexpected in proceedings involving foreign sovereigns.  *See, e.g.*, Min. Order, *Teco Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-cv-0102 (D.D.C. Jan. 22, 2020) ("[T]he Court needs to ensure that Respondent—a foreign sovereign—has adequate time to confer with counsel and has a full opportunity to present its arguments to the Court").

**Importance to the Case:** Saudi law is central to this discovery dispute, as PIF is an important instrumentality of Saudi Arabia with a material interest in complying with its own laws

8

that prohibit disclosure of confidential information concerning the internal workings of governmental operations.  The Order itself is the best evidence on this point, as the Magistrate Judge referenced the purported lack of evidence showing Saudi Arabia's interest in the current dispute, and the secrecy of the specific information sought in the subpoenas, which is precisely the type of information that PIF and HE sought (and seek) to introduce.  *See* Order 41-43.

The supplemental materials on Saudi law should be admitted and considered so that there is a proper record for the Court to assess, *de novo*, the complex international comity issues at play.

## IV.    THE COURT BELOW ERRED IN ITS INTERNATIONAL COMITY ANALYSIS

### A.    Compelling Discovery Undermines Important Interests of Saudi Arabia

In "deciding whether or not foreign statutes excuse noncompliance with discovery orders," courts must assess (among other things) the extent to which "compliance with the request would undermine important interests of the state where the information is located,'" and the "hardship" or "effect that a discovery order is likely to have" on the target of the discovery.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475, 1477 (9th Cir. 1992) (quoting *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.28 (1987)). The "factor requiring the Court to balance the national interests of each nation is 'the most important factor.'"  Order 42.  The Order erred as a matter of law in concluding that Saudi Arabia's interests did not weigh strongly against disclosure of the confidential information sought, overlooking the fact that the Saudi government speaks through its laws.  Having declined to admit relevant evidence of Saudi law, the Magistrate Judge reached these incorrect conclusions without a full record.

Saudi Arabia has a significant interest in enforcing the PIF Law—and multiple other Saudi laws—that specifically preclude disclosure of the confidential information implicated by the Tour's subpoenas.  *See* Decl. of Mr. Fahad Nasser Alarfaj Concerning Saudi Law Under Federal Rule of Civil Procedure 44.1 (Ex. 1) ¶¶ 20-27, 31 (summarizing Saudi laws, decrees, and regulations that prohibit disclosure of PIF's confidential documents and preclude depositions of government officials).  Under *Richmark*, this important factor weighs strongly against compelling discovery that is prohibited by Saudi law and compromises Saudi national interests.  *See* 959 F.2d at 1476.

First, the nature and status of PIF under Saudi law demonstrate that PIF's interests are those

9

of the Saudi government.  PIF is a part of the government of Saudi Arabia, regulated directly by the Council of Economic and Development Affairs—a subcabinet of the Council of Ministers—and it is governed pursuant to an administrative framework that applies only to governmental entities. Ex. 1 ¶¶ 7-13.  PIF's Board of Directors is comprised entirely of Saudi Arabia's highest-ranking public officials, all appointed directly by the head of state, King Salman.  *Id.* ¶ 10.  PIF plays an essential role in accomplishing Saudi Arabia's Vision 2030 "economic security" reform, which is designed to promote and preserve the public interest by transitioning the Saudi economy away from petroleum dependency.  *Id.* ¶¶ 14-19 (quoting the Government's policy documentation).  "One of the principal goals of Vision 2030 is to 'give Saudi citizens greater economic security.'"  *Id.* ¶ 18. Accordingly, PIF has been charged by Saudi Arabia's policymakers with establishing "new pillars of the economy" through strategic partnerships with investors across the globe and "attracting the best talents" to Saudi Arabia.  *Id.* ¶ 19.  Further, the PIF Law and PIF's declaration (Dkt. No. 166-4) evidenced that PIF is an "exceptional organization inextricably intertwined with the [Saudi] government such that [PIF's] objectives may be indistinguishable" from Saudi Arabia's own interests.  *See In re: 3M COMBAT ARMS EARPLUG Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 173730, *25 (N.D. Fla. Feb. 18, 2020) (denying motion to compel where non-party French-German research institute's charter showed that it was "inextricably intertwined" with the French government's objectives).  For example, under Article 3 of the PIF Law, PIF invests "for the purpose of serving [the] public interest; promoting economic development in the Kingdom and diversifying its sources of income; and maintaining the interest of future generations."  Dkt. No. 166-4 ¶ 12.

Second, the PIF Law prohibits disclosure of "any confidential information" obtained by PIF's Board members or employees obtained during their course of employment.  *See* Dkt No. 166-4 ¶ 10.  The inclusion of this specific confidentiality provision in the PIF Law itself demonstrates that Saudi Arabia places great weight on confidentiality in PIF's operations and through the course of achieving PIF's public objectives.  And multiple other Saudi laws mandate that records of PIF—as governmental documents that implicate Saudi government deliberations, interests, and policies—must remain confidential and cannot be disclosed. Ex. 1 ¶¶ 20-27.  Many governments, including that of the United States, provide similar protections for matters of state beyond those pertaining to

national security.  *See, e.g.*, 18 U.S.C. § 1905 (prohibiting U.S. government employees from disclosing confidential information obtained in the course of their employment or official duties on pain of fines and imprisonment).  In this regard, the Order's premise that only confidentiality restrictions that expressly implicate national security or other highly-protected state secrets will preclude discovery is misguided, and ignores actual Saudi law that the Magistrate Judge barred from the record.  *See* Order 43.  The national economic interests raised here—which relate specifically to the economic security and growth of Saudi Arabia—weigh heavily against compelling discovery. *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 156-58 (S.D.N.Y. 2011) (China's bank secrecy laws, "adopted to create confidence in a relatively new banking system," "appear[ed] more significant" compared to U.S. interests in "enforcing its [discovery] orders").

## B.    In Assessing U.S. Interests, The Court Applied The Wrong Standard

The Magistrate Judge incorrectly assessed the U.S. interests in discovery as if PIF and HE were defendants, rather than (sovereign) non-parties.  The Order cites the interest of the United States "in 'vindicating the rights of American parties'" and "ensuring that its courts are able to adjudicate controversies involving American citizens," Order 43, the standard applied when a foreign discovery target is a party to the suit.  *See Richmark*, 959 F.2d at 1477.  With respect to discovery from a foreign ***non-party***, however, the U.S. "interest" is merely "a generalized interest in 'fully and fairly adjudicating matters before its courts,'" and courts "allocate relatively less weight to the United States in this analysis."  *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 U.S. Dist. LEXIS 85650, at *38 (S.D.N.Y. June 11, 2013); *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 757-58 (N.D. Ill. 2016) ("[S]tatus as non-parties does attenuate the United States interest in enforcing discovery obligations."), *aff'd*, 852 F.3d 687 (7th Cir. 2017).

## C.    The Court Applied The Wrong Standard In Requiring Specific Evidence Of Imminent Criminal Jeopardy

The Magistrate Judge correctly stated that the threat of "criminal prosecution in a foreign country for complying with the United States court order . . . constitutes a 'weighty excuse' for nonproduction," and "accept[ed]" the fact "that PIF's governing law and Saudi law prohibit disclosure of the information sought by the subpoenas."  Order 41, 43.  But the Court nonetheless

1  dismissed this factor, incorrectly, because PIF and HE "have not provided evidence that the Saudi

2  government has actually ordered them to withhold the information."  Order 43.  As noted, multiple

3  laws order PIF and HE to keep this information confidential and not to produce it.  *See* Ex. 1 ¶¶ 20-

4  27.  A party objecting to U.S. discovery on these grounds "need not prove that they will certainly

5  be punished if forced to comply with plaintiffs' subpoenas," but rather "that the possibility of civil

6  and/or criminal punishment for disclosure is more than speculative."  *See Tiffany (NJ) LLC*, 276

7  F.R.D. at 158; *CE Int'l Res. Holdings, LLC*, 2013 U.S. Dist. LEXIS 85650, at *41-42 (declining to

8  require "evidence of or statistics on" enforcement).

9        PIF and HE have already submitted specific laws showing that providing testimony or

10  documents in response to the Tour's subpoenas could subject them to criminal penalties, including

11  fines and imprisonment.  *See* Dkt. 166-4.  And the specific examples of enforcement that the

12  Magistrate Judge thought were necessary are in the Saudi legal materials that she refused to admit.

13  For example, at least two circulars prepared by the Saudi Ministry of Justice specifically reference

14  enforcement of laws and regulations regarding confidentiality, in particular "the importance of

15  preserving the confidentiality of information and documents," as disclosure would expose the actor

16  to "strict and aggravated penalties," including fines or imprisonment.  *See* Ex. 1 ¶¶ 37-38; *id.* ¶¶ 20-

17  27 (describing laws and regulations pertaining to confidentiality obligations and attendant

18  penalties).  But even without the excluded evidence, the excerpted provisions of Saudi law and

19  sworn testimony of HE as a government minister were more than sufficient to show what is needed

20  for the comity analysis—that the possibility of criminal penalties is more than speculative.  *See CE*

21  *Int'l Res. Holdings, LLC*, 2013 U.S. Dist. LEXIS 85650, at *41-42 (deputy prime minister's prior

22  statement that "the penalties for violating the secrecy laws are the 'biggest penalty of the Banking

23  Act'" showed that potential for prosecution was not "merely 'slight and speculative'").

24      **D.      The Court Failed To Scrutinize The Need For Discovery From These Parties**

25        The Magistrate Judge correctly found that other *Richmark* factors weighed "against

26  disclosure," in particular the "fact that most or all of the information sought is located in a foreign

27  country," and—as presented in the Tour's subpoenas—the degree of specificity of the requests and

28  importance of the information requested.  *See* Order 42.  The Magistrate Judge failed, however, to

12

1    articulate the specific relevance of the discovery sought from these parties to the claims and defenses

2    in the case, relying instead on generalizations about the fact that LIV originated with PIF, and HE

3    had various degrees of "involvement" with LIV activities over time.  *See* Order 42, 56-57; *Richmark*,

4    959 F.2d at 1475.  The Order does not explain why the discovery sought is necessary for the Tour's

5    proof—something counsel for the Tour again struggled to articulate in last Friday's hearing—let

6    alone so critical as to justify ordering these sovereign non-parties to violate the laws to which they

7    are subject and risk criminal sanctions.  The Order does not consider that any communications with

8    golfers, sponsors, etc. could also (necessarily) be obtained from non-sovereign third parties.  *Cf.*

9    *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172 (2d Cir. 1998) (directing district

10   court first to permit discovery against nonimmune party and then consider whether discovery against

11   immune sovereign entity was necessary).  And the Order does not consider whether the material

12   sought is already addressed by the approximately 100,000 documents LIV already produced,

13   including thousands of communications with the PIF, or otherwise require the Tour to make a

14   showing that it truly cannot get material it needs in party discovery or elsewhere.  These errors

15   render the Order's *Richmark* analysis fundamentally incomplete and erroneous.

16   **V.    THE NARROW SERVICE AGREEMENT HAS EXPIRED**

17         The Order states that the Tour can use the inapplicable and expired service agreement to

18   serve PIF and HE with a subpoena or subpoenas issued after the service agreement expired on

19   September 22, 2022.  Order 47.  That was error.  The service agreement reserves all legal rights and

20   unambiguously applies to (a) only the subpoenas attached to it as "Exhibits A and B," and (b) service

21   of said subpoenas "[i]n this instance only."  Dkt. 148-2 at 19.  By its plain terms, that agreement

22   does not apply to subpoenas that were not attached, nor to any service not in the same "instance,"

23   and does not provide the Tour with open access to all discovery.  The Magistrate Judge had no basis

24   or precedent to re-write the parties' specific and limited written agreement.

25                                **CONCLUSION**

26         For the foregoing reasons, PIF and HE respectfully request that the Court set aside the Order

27   and quash the subpoenas at issue.

28

1
                                                  Respectfully submitted,

2
DATE: February 28, 2023        By:     */s/ Carolyn B. Lamm*

3
                                              **WHITE & CASE**LLP

4
                                              Carolyn Lamm (*pro hac vice*)
Hansel Pham (*pro hac vice*)

5
                                              Nicolle Kownacki (*pro hac vice*)
701 Thirteenth Street, NW

6
                                              Washington, District of Columbia 20005
Telephone:  (202) 626-3600

7
                                              Facsimile: (202) 639-9355
clamm@whitecase.com

8
                                              hpham@whitecase.com
nkownacki@whitecase.com

9

10
                                              Jack E. Pace III (*pro hac vice*)
Kimberly A. Havlin (*pro hac vice*)

11
                                              1221 Avenue of the Americas
New York, New York 10020

12
                                              Telephone: (212) 819-8200
Facsimile: (212) 354-8113

13
                                              jpace@whitecase.com
kim.havlin@whitecase.com

14

15
                                              Heather M. Burke (SBN 284100)
3000 El Camino Real

16
                                              2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109

17
                                              Telephone: (650) 213-0300
Facsimile: (650) 213-8158

18
                                              hburke@whitecase.com

19

20
                                              JOHN B. QUINN, SBN 90378
 johnquinn@quinnemanuel.com

21
                                              DOMINIC SURPRENANT, SBN 165861
 dominicsurprenant@quinnemmanuel.com

22
                                              KEVIN TERUYA, SBN 235916
 kevinteruya@quinnemanuel.com

23
                                              QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor

24
                                              Los Angeles, California 90017
Telephone: 213.443.3000

25

26
                                              JOHN BASH, *pro hac vice*
 johnbash@quinnemanuel.com

27
                                              QUINN EMANUEL URQUHART & SULLIVAN, LLP

28
                                              300 West 6th Street, Suite 2010

14

Austin, TX 78701-3901
Telephone: (737) 667 6100

ROBERT P. FELDMAN, SBN 69602
bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

*Attorneys for Non-Parties The Public Investment
Fund of the Kingdom of Saudi Arabia and His
Excellency Yasir O. Al-Rumayyan.*

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

2      Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that

3  concurrence in the filing of the document has been obtained from each of the other signatories to

4  this document.

5

6      Executed on February 28, 2023.

7                                                    /s/ Carolyn B. Lamm_____

8                                                    Carolyn B. Lamm

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA'S AND HIS EXCELLENCY
YASIR O. AL-RUMAYYAN'S MOTION FOR DE NOVO REVIEW OF OR, IN THE ALTERNATIVE, FOR
RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE * CASE NO. 5:22-CV-04486-BLF