KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:    212 735 3000
Facsimile:    212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone:    312 407 0700
Facsimile:    312 407 0411

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant. | Case No. 5:22-CV-04486-BLF<br><br>**JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE**<br><br>Judge:      Hon. Beth Labson Freeman<br><br>Date Filed:  August 3, 2022<br><br>Trial Date:  January 8, 2024 |
| PGA TOUR, INC.,<br><br>Counter-Claimant,<br><br>v.<br><br>LIV GOLF, INC.,<br><br>Counter-Defendant. | **REDACTED COPY<br>FILED UNDER SEAL** |

Pursuant to this Court's guidance during the September 15, 2022 initial case management conference, the parties hereby submit the following Joint Statement requesting a case management conference to address issues related to the pretrial schedule.

## I.        PGA TOUR'S POSITION

The PGA TOUR, Inc. ("the TOUR") respectfully requests that the Court extend the March 3, 2023 cutoff for fact discovery, which is no longer feasible in light of: Plaintiffs' failure to comply with the November 18, 2022 deadline for substantial completion of document production; stonewalling by LIV, Performance 54, and the Public Investment Fund of Saudi Arabia ("PIF") that has deprived the TOUR of critical discovery from LIV's owners and management, despite LIV promising the Court that such discovery would "come together swimmingly"; and the more than 50 likely party and non-party depositions that the parties have not even begun to take, in large part because of the issues above.  Plaintiffs have frustrated the TOUR's ability to take discovery and failed to live up to the commitments they made when they persuaded the Court to enter the existing compressed discovery schedule.

Consequently, it is not practicable to complete fact discovery in the 54 remaining business days before the current cutoff.  Plaintiffs will not be prejudiced by the TOUR's proposed extension, and indeed they would benefit from it.  Plaintiffs themselves are still in the early stages of pursuing discovery from more than 20 third parties, including discovery from the DP World Tour and Royal & Ancient under the Hague Convention.

Accordingly, the TOUR requests that the Court extend the fact discovery cutoff to May 26, 2023.  As shown in the chart below, the TOUR believes the Court can enter this extension, and corresponding extensions to the remaining pretrial deadlines, without disturbing the existing January 8, 2024 trial date.

| Event | Current Deadline | Proposed New Deadline |
|---|---|---|
| Non-Expert Discovery Cut Off | March 3, 2023 | May 26, 2023 |
| Opening Expert Reports | March 10, 2023 | June 5, 2023 |
| Rebuttal Expert Reports | April 7, 2023 | July 7, 2023 |
| Close of Expert Discovery | May 1, 2023 | July 28, 2023 |

| Event | Current Deadline | Proposed New Deadline |
|---|---|---|
| Defendant's Deadline to File Motion for Summary Judgment | May 9, 2023 | August 8, 2023 |
| Deadline to Oppose Defendant's Motion for Summary Judgment/File Cross-Motion for Summary Judgment | May 23, 2023 | August 22, 2023 |
| Reply in Support of Defendant's Motion/Opposition to Cross-Motion for Summary Judgment | June 6, 2023 | September 5, 2023 |
| Reply in Support of Cross-Motion for Summary Judgment | June 13, 2023 | September 12, 2023 |
| Hearing on Cross-Motions for Summary Judgment | July 13, 2023, 9:00 a.m. | October 5, 2023 (subject to Court availability) |
| Joint Pretrial Statement and Order | September 21, 2023 | November 16, 2023 |
| Motions in Limine Deadline | September 21, 2023 | November 16, 2023 |
| Oppositions to Motions in Limine | September 28, 2023 | November 30, 2023 |
| Final Pretrial Conference | October 5, 2023, 1:30 p.m. | December 7, 2023 |
| Trial | January 8, 2024 | January 8, 2024 |

## A.   Plaintiffs promised to "move heaven and earth" to meet the expedited schedule.

As the Court has recognized, the existing case schedule is exceptionally aggressive given the breadth of Plaintiffs' 118-page, 389-paragraph Amended Complaint, their scattershot Sherman Act Section 1 allegations involving dozens of party witnesses and third parties, and the high degree of international and other complex discovery required in this case. *See* Sep. 15, 2022 Hr'g Tr. (Dkt. 99) at 9:17–20 ("[E]ven I look at [the case schedule] and say things are going to move fast.").

While Plaintiffs strenuously advocated for the expedited case schedule, the TOUR raised concerns about the parties' ability to complete discovery in such a limited time. *See* Aug. 18, 2022 Hr'g Tr. (Dkt. 76) at 8:15–11:22. The TOUR expressed serious misgivings given the significant volume of anticipated document discovery; the time-consuming process of obtaining discovery from LIV's owner, PIF, considering Saudi Arabia is not a signatory to the Hague

1   Convention; the number of other foreign persons and entities implicated by Plaintiffs' Section 1

2   claim that may require discovery; and the inherent challenges of securing all of the necessary

3   discovery on an expedited basis given the overall complexity of the case. *Id.*

4          In an effort to assuage the TOUR's concerns, Plaintiffs' counsel assured the Court that

5   they would "move heaven and earth" to keep discovery moving forward expeditiously and

6   comply with the case schedule.  Aug 18, 2022 Hr'g Tr. at 8:4–9, 14:2–4.  Plaintiffs' and PIF's

7   shared counsel promised to "find a way to cooperate" to provide discovery from PIF, assuring the

8   TOUR and the Court that such discovery "will come together swimmingly."  *Id.* at 14:12–16.

9   Plaintiffs' counsel promised to be "highly cooperative" and not to "insist on any timetables" for

10  discovery requests.  *Id.* at 14:8–11. And Plaintiffs' counsel claimed that they "know what [it]

11  takes" to meet the case schedule "and we will make it happen."  *Id.* at 15:8–10.

12         Unfortunately, Plaintiffs' promises to cooperate have proved empty and the TOUR's

13  concerns have come to pass.

14      **B.     Plaintiffs have reneged on their promise to facilitate discovery from PIF.**

15         Notwithstanding their promises, discovery from PIF has not "come together

16  swimmingly."  PIF and its governor Yasir Al-Rumayyan—through their lawyers at Quinn

17  Emanuel and Gibson Dunn, the same firms that represent LIV as well as the current and former

18  player plaintiffs in this lawsuit—agreed to accept service of subpoenas for document production

19  and depositions as if they had been personally served in the United States.  *See* Dkt. 147; 148.

20  After accepting service of the TOUR's subpoenas, however, PIF and Mr. Al-Rumayyan reneged

21  on their agreement to cooperate.  PIF and Mr. Al-Rumayyan refused to comply with the

22  subpoenas in any respect, failed to produce a single document, and declined to appear for

23  depositions.  Instead, PIF and Mr. Al-Rumayyan asserted a host of spurious objections based on

24  sovereign immunity, international comity, alleged burdens associated with document production,

25  and purported defects in service (despite their written agreement to accept service).  *See* Dkt. 166.

26  Instead of obtaining Plaintiffs' cooperation in facilitating discovery from PIF and Mr. Al-

27  Rumayyan, the TOUR has been forced to bring a motion to compel compliance, filed originally in

28  the Southern District of New York and now pending before Magistrate Judge van Keulen

following transfer to this Court.  To delay things even further, PIF and Mr. Al-Rumayyan even opposed the TOUR's administrative motion to expedite briefing on the TOUR's motion to compel.  *See* Dkts. 145, 149, 152.  Indeed, from their opposition to the TOUR's Motion to Compel, it is clear that PIF and Mr. Al-Rumayyan never intended to comply with the subpoena or agree that they were subject to jurisdiction in the United States.

As it stands today, more than three weeks after the deadline for substantial completion of document production, the TOUR's motion to compel is still pending and the TOUR has received exactly *zero* documents from PIF or Mr. Al-Rumayyan.  Equally troubling, PIF and Mr. Al-Rumayyan apparently have taken no steps to collect or review documents.  *See* Dkt. 166 at 18 (conceding that they have not "even set up a document collection process").  Thus, even if they are compelled by the Court to provide discovery, it will still be weeks or months before PIF and Mr. Al Rumayyan begin producing documents.

Discovery from PIF and Mr. Al-Rumayyan, LIV's creators, owners and true leaders, is critical to the TOUR's defenses and its counterclaim for tortious interference.  Indeed, LIV's own internal documents confirm that LIV was created and launched "[u]nder the instruction of H.E. [Al-Rumayyan] The Governor of PIF," and that LIV's ostensible CEO Greg Norman is just a "[f]igurehead" for LIV.  LIV000198907, LIV000198916.  The TOUR cannot complete depositions in the time allotted given PIF and Mr. Al-Rumayyan's obstruction, nor can the TOUR adequately prepare for depositions of LIV and player depositions without receiving and reviewing PIF and Mr. Al-Rumayyan's documents.

### C.     Plaintiffs have refused to facilitate discovery from Performance 54.

The TOUR has also sought discovery from Performance 54, a British entity and LIV's minority owner, who was integral to the creation of LIV.  LIV has acknowledged in its amended initial disclosures that Performance 54 and at least three of its employees have "discoverable information that Plaintiffs may use to support their claims and/or defenses."  Plfs.' Am. Initial Disclosures at 2, 12.  And now, LIV has belatedly admitted in interrogatory responses served just last week (on December 7, 2022) that employees of Performance 54 had oral and written communications with hundreds of witnesses "on behalf of [LIV]."  Moreover, LIV's contract

with Performance 54 expressly grants LIV ████████████████████████████ ████████████ by Performance 54.  LIV000201642.  But rather than cooperate to produce discovery from LIV's agent Performance 54, Plaintiffs and their counsel have resisted.

Counsel for the TOUR has sought discovery from Performance 54 since early September. Plaintiffs' counsel at Gibson Dunn informed the TOUR on October 10, 2022 that Gibson Dunn would represent Performance 54 and accept service of a subpoena.  In reliance on Gibson Dunn's agreement to accept service on Performance 54's behalf, the TOUR forewent filing a motion with the Court to authorize Letters Rogatory to Performance 54 under the Hague Convention.  But when the TOUR attempted to formalize the agreement and serve the subpoenas on Performance 54, Gibson Dunn backtracked and claimed that it no longer represented Performance 54 and referred the TOUR to separate counsel.  The TOUR then asked Performance 54's new lawyers at Squire Patton Boggs to confirm that they were authorized to accept service of a subpoena on three separate occasions in November 2022.  After not responding to multiple emails, Squire Patton Boggs finally promised Performance 54 would provide a response to the simple question of service by November 30, 2022.  But November 30 has come and gone, and the TOUR still has never received confirmation from Squire Patton Boggs.

On December 7, 2022, Plaintiffs served amended responses and objections to the TOUR's second set of interrogatories.  Those responses and objections disclosed, for the first time, that several employees of Performance 54 engaged in communications "on behalf of" LIV with respect to issues relevant in this case.  As such, Performance 54 is LIV's agent from whom LIV was required to collect and produce documents as part of its obligation to produce documents within its possession, custody or control.  FRCP 34(a)(1); *see also* Dkt. 160 (Order Re:  Player Agent Discovery Dispute).  In light of this revelation, on December 9, 2022, the TOUR wrote to Plaintiffs and asked them to confirm that they would produce responsive documents and communications from Performance 54.  As of the time of this submission, Plaintiffs have not responded to the TOUR's request.

Due to Plaintiffs' dilatory conduct, the TOUR still does not have critical documents from Performance 54 and may be forced to seek relief with the Court, delaying the necessary discovery

from Performance 54 by several months.

### D. Plaintiffs failed to meet the substantial completion deadline.

Plaintiffs' stonewalling on critical discovery from PIF and Performance 54 is compounded by the fact that they have failed to substantially complete their production of documents by the November 18, 2022 deadline.  The deficiencies in Plaintiffs' collections and productions are material and have not been addressed by Plaintiffs:

***The Dismissed Player Plaintiffs Failure to Substantially Complete Production.***  On September 27, 2022—the day their responses and objections to the TOUR's requests for production were due—four former player plaintiffs, including the lead named plaintiff Phil Mickelson, voluntarily dismissed their claims.  *See* Dkt. 105, 106.  Mr. Mickelson refused to accept service of a subpoena through his original counsel at Baker McKenzie and evaded personal service until his new counsel at Gibson Dunn agreed to accept service of a subpoena on October 6, 2022.  After missing the September 27, 2022 deadline for their responses and objections to the TOUR's requests for production, Mr. Mickelson and the other dismissed player plaintiffs ultimately responded and agreed to run search terms across their custodial documents.  However, the dismissed player plaintiffs have refused to comply with the substantial completion deadline and, to date, they have only produced a small fraction of the requested documents.  As a result, discovery from the dismissed player plaintiffs is lagging and the TOUR has been prejudiced by the delay.  These documents relate to core allegations in the Amended Complaint, which refers to each of the now-dismissed plaintiffs individually throughout.

***Plaintiffs' Delay in Producing Documents from Players' Agents.***  Player plaintiffs and the dismissed player plaintiffs have also delayed producing documents from their agents who negotiated with LIV on their behalf.  After several weeks of negotiations, the player plaintiffs finally relented and agreed to collect and produce responsive documents possessed by their agents.  Inexplicably, the dismissed player plaintiffs (represented by the same lawyers) refused to do the same, forcing the TOUR to bring a discovery motion to compel them to do so.  On November 17, 2022, Magistrate Judge van Keulen granted the TOUR's motion in its entirety, ordering the dismissed player plaintiffs to search for and produce responsive documents from

their agents' custodial files.  *See* Dkt. 160.  Immediately thereafter, the TOUR wrote to counsel for the dismissed player plaintiffs seeking to confirm the timely production of documents. Regrettably, however, the dismissed player plaintiffs made no effort to prepare for this production in advance of the Court's order, and promised only to produce "as much as they can" by December 2, 2022.  To date, the TOUR has received just 140 WhatsApp messages involving the agent of a single former player plaintiff, Ian Poulter.  Plaintiffs have provided no date by which they will comply fully with the Court's order and complete the compelled production.

**Plaintiffs' Failure to Collect and Produce Key Categories of Relevant Documents.**  The TOUR's review of Plaintiffs' production to date has revealed several serious issues in their collection and production efforts.  Among these critical deficiencies:

- Plaintiffs have improperly withheld text and WhatsApp messages for relevance, withholding messages from conversation threads even where other messages in the same thread have been produced as responsive.  This is contrary to the basic requirement in the Federal Rules that documents be produced in the manner in which they are ordinarily maintained.  Fed. R. Civ. P. 34.  Plaintiffs' improper production of text and WhatsApp messages has deprived the TOUR of crucial context for the messages that have been produced.

- Plaintiffs failed to collect documents from the mobile devices of three LIV custodians, despite their agreement to do so.  As a consequence, the TOUR has not received any device-level data from those three custodians that hit on the parties' agreed-upon search terms and are responsive to the TOUR's requests for production.

- Plaintiffs' production of documents from LIV's Managing Director, Majed Al Sorour, is woefully incomplete.  Plaintiffs have produced just 316 documents from Mr. Al Sorour's custodial files.  And Plaintiffs admit that they have not even completed their collection of documents from Mr. Al Sorour's relevant email accounts and mobile devices.

- Plaintiffs' production is still missing critical documents.  For example, it appears that Plaintiffs have failed to produce documents relating to LIV's agreements with the

Asian Tour and the MENA Tour, and LIV's negotiations with broadcast partners. Plaintiffs do not contest the relevance of these core documents, but have failed to produce them despite the TOUR's requests.

The TOUR is continuing to meet and confer with Plaintiffs' counsel to address the deficiencies in Plaintiffs' production. However, it is now three weeks ***after*** the deadline for substantial completion, and Plaintiffs' failure to produce these critical documents has delayed the progress of discovery and hampered the TOUR's ability to prepare for upcoming depositions.

### E. The current aggressive case schedule is unduly burdening third parties.

As a further consequence of Plaintiffs' scattershot Section 1 allegations, both sides have sought discovery from a litany of third parties. To date, Plaintiffs have served 20 subpoenas for discovery on third parties and the TOUR has served 8 (not including the 8 dismissed player plaintiffs that the TOUR served with Rule 45 subpoenas after they withdrew from the case). Many of these third parties are private individuals with limited capacity to gather, review, and produce documents on tight deadlines. The current case schedule has forced these non-parties to respond to subpoenas and produce documents on an unreasonably expedited basis. Moreover, the third parties' document production capacity constraints are likely to impact both sides' ability to prepare for the noticed depositions of each of these potential witnesses in the limited number of business days between January and March of next year.

### F. Plaintiffs' proposed schedule is unworkable and would prejudice the TOUR.

Recognizing that the existing schedule is no longer viable, Plaintiffs have proposed an alternative schedule that purports to extend the fact discovery cutoff to May 5, 2023, but provides no meaningful corresponding extensions to other critical pretrial dates, including the expert discovery cutoff, the summary judgment schedule, and pretrial filings. Plaintiffs' proposal does little to address the problems created by their failure to cooperate in discovery, introduces a host of new problems rendering their schedule unworkable, and would prejudice the TOUR.

First, Plaintiffs' schedule would require the TOUR prepare and serve its opening and rebuttal expert reports *before* the completion of fact depositions. That is impracticable because the TOUR's experts will need to rely on the evidence and testimony generated during discovery,

1    including depositions of key witnesses that may not occur before Plaintiffs' proposed deadlines to

2    serve expert reports.

3        Second, Plaintiffs' schedule would leave the TOUR just two business days following the

4    close of both fact and expert discovery to file its summary judgment motion.  For their part,

5    Plaintiffs would have more than two weeks following the discovery cutoff to prepare their cross-

6    motion for summary judgment motion.

7        Third, Plaintiffs' schedule includes a *new* interim deadline of March 3, 2023 for

8    completion of document productions and written discovery.  But the deadline for substantial

9    completion of document productions came and went more than 3 weeks ago.  Entering Plaintiffs'

10   proposed deadline for completion of document production 11 weeks from now will only

11   encourage Plaintiffs to further delay their production of documents, and lead to yet another

12   compressed period for completing depositions.  Similarly, there is no need for the Court to enter a

13   deadline to complete written discovery.  The parties have already served several rounds of

14   requests for production and interrogatories, and to the extent additional written discovery may be

15   required, the parties are perfectly capable of serving it promptly.

16                                          * * * *

17       When the Court entered the current schedule setting a March 3, 2023 fact discovery

18   cutoff, it was an ambitious deadline dependent upon Plaintiffs' representations that they would

19   "move heaven and earth" to cooperate in discovery.  Unfortunately, Plaintiffs have not cooperated

20   in the manner they promised.  Critical document discovery remains outstanding, and depositions

21   will not even begin until mid-January at the earliest.  Assuming the parties begin taking

22   depositions on January 15, 2023, and each side uses its allotment of 150 hours of on-record time,

23   the parties would be required to conduct more than 9 hours of depositions each business day,

24   necessitating substantial double-tracking of witnesses on the same day.  As a result, the current

25   fact discovery cutoff is unworkable and should be extended without requiring an extension of the

26   trial date.  Accordingly, the TOUR respectfully requests that the Court extend the fact discovery

27   cutoff to May 26, 2023, and adjust the remaining pretrial deadlines as set forth in the chart above.

28

## II.    PLAINTIFFS' POSITION

From the moment this Court set this lawsuit on an expedited trial schedule, the Tour set its designs on extending the trial date.  The Court already extended the trial setting once at the Tour's request.  *See* Aug. 19, 2022 Hr'g Tr. at 15:15-16:21 (moving the trial date from August 2023 to January 2024 to "address[] [Defendant's] concern about having the discovery completed in time for summary judgement and motion").  The fact discovery deadline is still three months away, and the Tour has made no effort to set depositions—it has not even asked to discuss them, to see if a workable schedule can be set.  And while the Tour complains about Plaintiffs' discovery responses (based on mischaracterizations), the Tour omits to mention that the only party to fail to meet the Court's deadline for substantial completion of document productions is *the Tour* itself, which is apparently still weeks away from producing a significant portion of its email production.  And yet, the Tour is doing what it planned from the start; seeking a schedule change that pretends to preserve the existing trial date, but does so only at the expense of the Court's time to consider dispositive motions and pretrial filings—fundamentally upending the entire litigation schedule.  Because preventing a day of judgment on the Tour's collusive and monopolistic conduct has been its goal from day one, it cites a litany of manufactured and misrepresented disputes.  None of these issues is as the Tour argues, as explained below, and none justifies the drastic rewriting of the Court ordered schedule.

It is of paramount importance that the Court not move the trial date in the Court-ordered schedule.  This is because the Tour and its co-conspirators *continue to* pollute the marketplace with their anticompetitive conduct, even while this litigation is pending.   The Tour and its co-conspirators continue to threaten players, vendors, golf courses, other tours around the world, and others who might do business with LIV, all in an effort to protect the Tour's "ecosystem" from competition.  Indeed, just last weekend, the press reported that the Tour held a conspiratorial meeting with the leaders of the European Tour and the Majors to coordinate in their responses to LIV.  The Tour's litigation tactics are transparent: make unreasonable discovery demands, reject efforts at compromise, stonewall the Plaintiffs' discovery requests, and then raise manufactured discovery disputes along with a request to blow up the case schedule.  And meanwhile, its business

leaders continue unchecked in their anticompetitive efforts, hoping trial can be postponed until after they have reduced LIV to a historical footnote.

Plaintiffs have offered to work with the Tour to extend the discovery schedule in ways that do not threaten the calendar dates established by the Court, and it has requested agreement from the Tour that any discovery extensions will not be used as an excuse to postpone the trial date. The Tour has refused, leading to this dispute. Below, Plaintiffs propose the schedule modification that they proposed to the Tour. This modification accommodates the Tour's demands, while offering a far more sensible and less disruptive approach. It extends the deadline for deposition and expert discovery, while preserving the dispositive motion and pretrial deadlines set by the Court. While the schedule means fact discovery and expert reports overlap, that is neither uncommon nor unworkable.

### A.     Plaintiffs' Proposed Schedule

Despite the Tour's delay-driven discovery antics and serious failure to meet the Court's Substantial Completion Deadline (November 18, 2022), Plaintiffs believe the parties can accomplish the Court's existing deadlines through cooperation. Plaintiffs do not believe any extension is necessary; but on the condition that any agreement to modify the schedule would not be used as a basis to extend or otherwise jeopardize the trial date, Plaintiffs made offers to accommodate the Tour's request for more time for depositions.

With trial scheduled for January 8, 2024, there is ample room in the schedule to extend the time for the parties to conduct depositions—party and non-party—while respecting the Court's summary judgment, pre-trial and trial schedule. With this extension of the deadline to conduct depositions, the parties will be conducting depositions concurrent with expert discovery. Federal court's schedules often require parties to conduct depositions while expert discovery is ongoing. *See Calderon v. Tulare Reg'l Med. Ctr.*, No. 1:17-CV-0040-BAM, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018) ("It is not uncommon for fact discovery and expert discovery to proceed simultaneously and there is no reason to avoid that procedure in this case."). This approach is particularly sensible here, where both Plaintiffs and Defendant have already submitted full expert reports in connection with the TRO papers, making clear that the experts do not have to wait until

1    every deposition is concluded to prepare their opinions.  Moreover, the experts can supplement

2    their reports, if needed, with information discovered in depositions occurring after the report

3    deadlines.

4            Plaintiffs' proposed schedule (a) avoids changing the summary judgment schedule that the

5    Court set; (b) avoids compressing the time the Court has to consider any summary judgment motion

6    prior to trial; and (c) preserves the Court's pretrial schedule.  And it avoids postponing the existing

7    trial date, a critical day of judgment given Defendant's ongoing and increasingly collusive

8    anticompetitive conduct.

9            Responding briefly to the Tour's statement regarding Plaintiffs' counter-proposal, in the

10   meet and confer, Plaintiffs were and are flexible in their good faith compromise proposal.  Plaintiffs

11   offered to increase the gap between the expert and the Motion for Summary Judgment deadline,

12   but the Tour responded that it needed all of May for fact discovery and would not entertain an

13   earlier fact discovery deadline.  But because the Tour would not consider a schedule that does not

14   change the dispositive motion deadline, compromise could not be found.  Similarly, Plaintiffs

15   included the proposed written discovery and document production deadline so the parties could

16   have a deadline for third-party productions to encourage urgency from non-parties because the Tour

17   argued in seeking to overhaul the case schedule that the ongoing third-party discovery justifies their

18   need for more time.  Now, the Tour states that the parties and third parties do not need a document

19   deadline because they actually can and will timely produce information, further underscoring that

20   this is all about an attempt to move the trial date.

| Event | Current Deadline | Defendant's Proposed New Deadline | Plaintiffs' Proposed New Deadline |
|---|---|---|---|
| Non-Expert Discovery Cut Off | March 3, 2023 | May 26, 2023 | Modified below |
| Written Discovery & Document Production Cutoff | March 3, 2023 | May 26, 2023 | March 3, 2023 |
| Fact Witness Deposition Cutoff | March 3, 2023 | May 26, 2023 | May 5, 2023 |
| Opening Expert Reports | March 10, 2023 | June 5, 2023 | April 3, 2023 |
| Rebuttal Expert Reports | April 7, 2023 | July 7, 2023 | April 21, 2023 |
| Close of Expert Discovery | May 1, 2023 | July 28, 2023 | May 5, 2023 |
| Defendant's Deadline to File | May 9, 2023 | August 8, 2023 | Unchanged |

| Event | Current Deadline | Defendant's Proposed New Deadline | Plaintiffs' Proposed New Deadline |
|---|---|---|---|
| Motion for Summary Judgment | | | (May 9, 2023) |
| Deadline to Oppose Defendant's Motion for Summary Judgment/File Cross-Motion for Summary Judgment | May 23, 2023 | August 22, 2023 | Unchanged (May 23, 2023) |
| Reply in Support of Defendant's Motion/Opposition to Cross-Motion for Summary Judgment | June 6, 2023 | September 5, 2023 | Unchanged (June 6, 2023) |
| Reply in Support of Cross-Motion for Summary Judgment | June 13, 2023 | September 12, 2023 | Unchanged (June 13, 2023) |
| Hearing on Cross-Motions for Summary Judgment | July 13, 2023, 9:00 a.m. | October 5, 2023 (subject to availability) | Unchanged (July 13, 2023) |
| Joint Pretrial Statement and Order | September 21, 2023 | November 16, 2023 | Unchanged (September 21, 2023) |
| Motions in Limine Deadline | September 21, 2023 | November 16, 2023 | Unchanged (September 21, 2023) |
| Oppositions to Motions in Limine | September 28, 2023 | November 30, 2023 | Unchanged (September 28, 2023) |
| Final Pretrial Conference | October 5, 2023, 1:30 p.m. | December 7, 2023 | Unchanged (October 5, 2023, 1:30 p.m.) |
| Trial | January 8, 2024 | January 8, 2024 | Unchanged (January 8, 2024) |

**B. Defendant's Mischaracterized Discovery Concerns**

Plaintiffs respond to Defendant's mischaracterizations of ongoing discovery disputes.

**Public Investment Fund:** The Tour's complaints against PIF are of its own making. Prior to the Tour's subpoena, PIF offered to *voluntarily* provide discovery in response to appropriate requests. The Tour ignored this offer and insisted on a subpoena, for which PIF agreed to accept service. After the Tour served overly broad and unduly burdensome requests, PIF again offered to *voluntarily* provide appropriate discovery. ECF 166-1 ¶¶ 2-8.

The Tour flatly rejected these offers and insisted that it would *only* discuss the bounds of discovery if PIF and its governor waived sovereign immunity and jurisdictional defenses. *Id.* ¶ 5. As explained at length in cross-motions pending in this Court, those defenses cannot be waived;

they implicate issues broader than the case.  *See* ECF 166 (explaining implications of jurisdictional waiver for PIF's other U.S. investments).  PIF nonetheless offered to provide discovery as part of a cooperative effort, and even offered to explore enforcement mechanisms, but the Tour shut down the discussions in favor of filing a motion to compel.  *Id.* at 6-7.

In short, the Tour has refused to discuss anything but complete compliance with its 161 requests for production with full jurisdictional waiver.  PIF promised to find a way to cooperate, not to accede to ultimatums.  The Tour's lack of discovery from PIF stems solely from its own failure to negotiate a reasonable scope of voluntary production.

The Tour's complaints about PIF's document collection process are particularly telling in this regard.  PIF has not been able to begin document collection because *the Tour has not identified what it truly needs*.  ECF 166-1 ¶ 15.  Had the Tour identified the documents that it seeks (and could not obtain from the parties) rather than standing on complete compliance with overbroad subpoenas, PIF and its governor could have begun the document collection process.  The Tour did not do so because its true motive was to delay the discovery and harass PIF.

The Tour should not be permitted to profit from its unreasonable positions and refusal to meet and confer.  The Tour's intransigence in the face of PIF's repeated offers for voluntary discovery are the reason for any delay in discovery.  And any discovery from PIF is not relevant to the Tour's counterclaims, in any case, because PIF's conduct is not at issue.

**Performance54** is a separate and independent private company based in London, United Kingdom.  Yet the Tour has not initiated letters rogatory proceedings or otherwise acted to swiftly obtain international discovery.  And while the Tour makes it sound like LIV Golf's December 7, 2022 Interrogatory Response took it by surprise as to Performance54, an email from the Tour's counsel sent more than two months ago, on October 7, 2022, contains the very same characterization of Performance54's role.  Here too, in other words, the Tour's delay in discovery of Performance54 is of its own design.

The Tour's finger pointing is also contrary to the discovery positions it has taken with respect to its own business partners.  The Tour has refused to engage in discovery as to members of its board, *see* ECF 175 at 2, to provide any interrogatory responses without court order, *see id.*,

ECF 125, or to even agree to more than 7 document custodians until after Plaintiffs sent a letter brief on the topic, *see* Oct. 13, 2022 email from A. Dryer to L. Dansey.  And the Tour continues to refuse to facilitate discovery of its alliance partner and co-conspirator in attacking LIV—the European Tour—asserting that it will not produce discovery from a third party based in the UK.  *See* ECF 159; *PGA European Tour v. LIV Golf, Inc.*, Case No. 3:22-mc-00016; Oct. 7, 2022 email from R. Walters to B. Dooley.  It is thus remarkable that the Tour has simultaneously refused to provide any discovery from these other entities, hiding behind its claim that it will not produce discovery from anyone other than its own employees (not even directors and alliance partners), while attacking LIV for "refus[ing] to facilitate discovery" from a non-party in the UK.  But LIV has not come running to the Court to complain about the Tour's refusal to accept that sauce for the goose is sauce for the gander.  Instead, LIV has timely pursued multiple alternative mechanisms to obtain discovery (through the Hague Convention and through subpoena to the European Tour, which the European Tour is resisting in the Middle District of Florida).

Moreover, Plaintiffs have not sought to forestall discovery of Performance54 as the Tour argues.  Plaintiffs have simply asked the Tour for the same courtesies they have provided third-parties in discovery.  For example, when Royal & Ancient presented LIV Golf with a  demand to see LIV's discovery requests before agreeing to accept service, LIV Golf immediately provided its proposed discovery requests.  When Royal & Ancient refused to accept service, LIV Golf timely pursued discovery through the Hague Convention.  For Performance54, the Tour refused to do the same—and continues to refuse.  Performance54, a United Kingdom-based non-party, was not willing to agree to give the Tour carte blanche for unfettered discovery, and merely requested the list of document requests before it authorized counsel to accept service.  But the Tour refused.

Performance54 is not LIV Golf.  And it is not LIV Golf's agent, as their contractual relationship makes clear.  Nor does LIV Golf have any contractual right to force Performance54 to turn over its documents to produce them *in United States litigation*, as the Tour suggests.  Rather, that quoted provision applies to the narrow right that LIV Golf has to ensure Performance54 is actually doing the work for which it invoices LIV Golf and does not give LIV Golf the right to force Performance54 to turn over to LIV Golf all its files to produce in US litigation.  The provision

states:



LIV000201642.

Notably, the Tour adopts a wholly different view of discovery from its business partners and LIV's. ECF 175 at 4 (Defendant arguing "Because the Independent Directors are third parties . . . the TOUR could not compel them to respond because it does not control them."). Moreover, while the Tour has steadfastly refused to provide any interrogatory responses about actions by third parties—even when the information is known to the Tour—LIV has provided good-faith responses about information it has about Performance54 that was requested in the Tour's interrogatories. Plaintiffs' willingness to provide good-faith interrogatory responses—which stands in sharp contrast to the Tour's continued stonewalling–should not be turned against them.

Performance54, as is its right, is not voluntarily agreeing to the Tour's demand that it accept service of a subpoena sight unseen. That the Tour has neither agreed to a courtesy pre-service disclosure nor sought discovery through the Hague Convention is its choice—one that does not justify the change in the discovery schedule that the Tour seeks.

**Agents and Dismissed Players**: The Tour confusingly says that Plaintiffs have delayed production from dismissed non-party players. The players who dismissed their claims voluntarily without prejudice are non-parties. Plaintiffs' counsel is collecting and producing from both those non-party players they also represent and their sports agents as quickly as possible. Contrary to Defendant's gross misstatement, three of the four dismissed player plaintiffs whom Defendant had served with requests for production in September met the substantial completion deadline for parties. The fourth will substantially complete production by the end of next week.

In any event, here the Tour could also have avoided any delay about which it complains. Knowing the non-party plaintiffs opposed collecting documents from their agents, the Tour could have simultaneously served subpoenas. It did not, and instead elected to engage in a lengthy and

time-consuming dispute over the issue—one that took more time than service of a subpoena would have required.  Nonetheless, the players are complying with the Court's November 18, 2022 as quickly as possible, and hope to substantially complete the production of the compelled non-party players' agents by the end of this month.

**Plaintiffs Met the Substantial Completion Deadline**:  Contrary to Defendant's assertions, Plaintiffs met the substantial competition deadline and have responded fully to Defendant's purported concerns.  Plaintiffs substantially completed production by:  (a) producing over 100,000 documents and more than 278,560 pages of documents (which does not include the more than 18,000 documents produced by non-party players), (b) substantially completing production of 10 LIV Golf custodian emails, 3 player plaintiffs' emails, 3 non-plaintiff players' emails, (c) substantially completing production of the cell phones of all but 1 LIV Golf custodians from whom they reasonably suspected responsive documents, and (d) substantially completing production of non-custodial documents.  The Tour, on the other hand, did not.  *See Section C below*.  Defendant's choice to mischaracterize the parties' ongoing discussions is disingenuous, misrepresents the status of those discussions and wastes this Court's time.  Plaintiffs are willing to provide full descriptions of each item if the Court requests, but provide here top-line responses:

- *Text Messages* – As Plaintiffs told Defendant, Plaintiffs' review is entirely consistent with the federal rules and the Court's ESI Protocol (to which the Tour stipulated).  Plaintiffs reviewed entire text message threads for any thread with search term hits and produced the full conversation regarding the responsive information—exactly what the ESI Protocol requires.  Still, to address any actual dispute or issue, Plaintiffs asked Defendant for an example of any text chain it believed was problematic and volunteered to check if there is any text that is needed to complete the conversation.  Defendant has not provided Plaintiffs any example, just ongoing *post hoc* complaints about the procedure to which the Tour agreed.

- *Mobile devices* – As Plaintiffs told Defendant, during custodial interviews, three LIV Golf custodians informed counsel they did not use their personal cell phones for substantive LIV Golf work.  Defendant presumably did not collect documents

from its own custodians' personal electronic devices—and it has not represented otherwise.  Nonetheless, when Defendant asked last week for Plaintiffs to collect these custodians' personal phones nonetheless, LIV Golf agreed and review those devices as soon as possible for responsive information, and by no later than December 30, 2022.  There is no issue.

- ***Majed Al Sorour*** – Defendant claims it has only 300 documents from the file of Majed Al Sorour, who is the managing director of LIV Golf.  That is not true.  Plaintiffs produced more than 1,300 documents from his custodial files—including substantial competition of his LIV Golf email.  As Plaintiffs told Defendant, LIV Golf also identified and collected Mr. Al Sorour's secondary email housed by a foreign-based non-party entity and will complete that production within a matter of days.  Lastly, Mr. Al Sorour is foreign-based, does not have a LIV Golf-issued phone, and has work for other foreign-based companies on that device, which has made it difficult to collect material from this device.  (Notably, the Tour itself has failed to produce all relevant documents from its foreign-based custodians, claiming that additional time was needed to collect those documents.  *See* Dec. 1, 2022 email from Z. Siegler to L. Dansey.)  Despite all this, Plaintiffs' counsel has worked tirelessly to collect the device, and hope to substantially complete production of responsive documents from Mr. Al Sorour's mobile device by January 6, 2023.  There is no reason for this issue to result in months of additional discovery—particularly when the Tour did not produce its own international custodian's mobile device by the close of substantial completion.

- ***Supposedly missing "critical documents"*** – The Tour claims LIV Golf has failed to produce and refused to produce certain "critical documents."  That is not true.  LIV Golf has not only produced those documents, *it identified them to the Tour by bates number*.  And LIV has agreed to produce the other "go-get" documents raised by the Tour.  This too is a non-issue, and certainly no basis to require more time for depositions the Tour has not yet requested.

**Third Party Subpoenas**:  Discovery of third parties is ongoing, but does not affect the Court's deadlines three months before the deadline.  Plaintiffs initiated third-party subpoenas in September.  The Tour waited several weeks before starting discovery.  And they have not identified a single third-party that has said it cannot produce documents in time for discovery on the Court's extant schedule, much less the extension LIV proposes.  This too is no basis to upend the Court's schedule.

### C.  Defendant's Delay Tactics

On August 9, 2022, the Court set this lawsuit for trial on August, 7, 2023 "in what I consider to be an important case."  Aug. 9, 2022 Hr'g Tr. at 90:14-18.  Immediately, the Tour sought extension to Spring 2024.  The Court granted, in part, the Tour's request and set the trial for January 2024.  *See* Aug. 19, 2022 Hr'g Tr. at 15:15-16:21.  Since then, the Tour's game has been delay.

The Tour dragged its feet on negotiating an initial list of custodians and search terms.  It listed a mere five people at the Tour in its initial disclosures.  It refused to provide a substantive response to LIV Golf's Interrogatory No. 1, which sought to understand who at the Tour had communications underlying Plaintiffs' cause of action, until ordered by the Court to do so. ECF 125.   The Tour then refused to produce documents from the people it identified as having those key communications—until ordered by the Court to do so.  ECF 140.  And, despite telling the Court "as individuals emerge from that [document production] process, as we said in our interrogatory response, we will update our interrogatory response and our disclosures" that Tour has refused on multiple occasions to do so, even in the face of plain documentary evidence.  Oct. 10, 2022 Hr'g Tr. 20:24-21:4; *see also* ECF 175 at 2-3 (summarizing examples of salient individuals that are not identified in the Tour's interrogatory responses).

Nor did the Tour meet the substantial competition deadline.  A week after the substantial completion deadline, Plaintiffs' counsel discovered that the Tour produced zero documents from almost all custodians during a critical month of the Tour's monopolistic and conspiratorial conduct.  That "gap" month is the period immediately preceding Plaintiffs' initiation of this litigation, in which Plaintiffs allege that the Tour:  (a) suspended the Player Plaintiffs and others, (b) entered an illegal agreement with a potential competitor to boycott LIV Golf and golfers who

play in LIV Golf, (c) coordinated suspensions of golfers who played in LIV Golf events without releases, (d) encouraged the Official World Golf Rankings to not review LIV Golf's application for ranking points at its July 2022 meeting, (e) encouraged and leaned on others in the golf "ecosystem" to cast doubt that golfers who play in LIV Golf would qualify for future Major Championships, and (f) breached the Tour's Regulations to deny appealing members a stay of their suspension pending appeal.  Plaintiffs have since learned that the Tour was also colluding with its competitors on other axes of competition in this same window.  The Tour has produced *zero Tour communications from all but 2 custodians* during that thirty-day period (and only a handful of communications for a 75-day period).  Notably, the Tour has produced earlier documents in which it advises recipients of the "need[] to be careful and not put anything in writing."  PGA_TOUR0018387.  Perhaps that is why the Tour apparently did not notice this gap, and certainly did not disclose it, leaving Plaintiffs to raise the issue.  And the Tour continues to refuse to answer LIV's questions about what it did, and what it asked others to do in its efforts to harm LIV.  Perhaps the Tour hoped that Plaintiffs would use this latest discovery blunder to request more time; not so.  Plaintiffs still believe they can timely complete discovery—and do so easily on the extended schedule they propose.  There is no reason to reward the Tour for its discovery conduct by blowing up the existing schedule; the modification Plaintiffs propose provides ample time to complete discovery.

1  DATED:  December 14, 2022          KEKER, VAN NEST & PETERS LLP
2                                     By: _____/s/ Nicholas S. Goldberg_____

3
4                                     ELLIOT R. PETERS, SBN 158708
                                         epeters@keker.com
5                                     DAVID SILBERT, SBN 173128
                                         dsilbert@keker.com
6                                     R. ADAM LAURIDSEN, SBN 243780
                                         alauridsen@keker.com
7                                     NICHOLAS S. GOLDBERG, SBN 273614
                                         ngoldberg@keker.com
8                                     SOPHIE HOOD, SBN 295881
                                         shood@keker.com
9                                     KEKER, VAN NEST & PETERS LLP
10                                    633 Battery Street
                                      San Francisco, CA 94111-1809
11                                    Telephone:     (415) 391-5400
                                      Facsimile:     (415) 397-7188
12

13                                    ANTHONY J. DREYER, admitted *pro hac vice*
                                         anthony.dreyer@skadden.com
14                                    KAREN M. LENT, admitted *pro hac vice*
                                         karen.lent@skadden.com
15                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM
16                                    LLP
                                      One Manhattan West
17                                    New York, Ny 10001
                                      Telephone:     (212) 735-3000
18                                    Facsimile:     (212) 735-2000/1

19                                    PATRICK FITZGERALD, admitted *pro hac vice*
20                                       patrick.fitzgerald@skadden.com
                                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM
21                                    LLP
                                      155 North Wacker Drive
22                                    Chicago, Il 60606
                                      Telephone: 312 407 0700
23                                    Facsimile: 312 407 0411

24
                                      *Attorneys for Defendant and Counterclaimant*
25                                    *PGA Tour, Inc.*

26

27

28

JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE
Case No. 5:22-CV-04486-BLF

1    Dated:  December 14, 2022                          Respectfully submitted,

2                                                       By: _____ */s/ Rachel S. Brass* _____

3                                                       RACHEL S. BRASS, SBN 219301

4                                                         rbrass@gibsondunn.com
                                                        LAUREN D. DANSEY, SBN 311886

5                                                         ldansey@gibsondunn.com
                                                        GIBSON, DUNN & CRUTCHER LLP

6                                                       555 Mission Street, Suite 3000
                                                        San Francisco, California 94105-0921

7                                                       Telephone: 415.393.8200
                                                        Facsimile:  415.393.8306

8                                                       ROBERT C. WALTERS, *pro hac vice*

9                                                         rwalters@gibsondunn.com
                                                        SCOTT K. HVIDT, *pro hac vice*

10                                                        shvidt@gibsondunn.com
                                                        GIBSON, DUNN & CRUTCHER LLP

11                                                      2001 Ross Avenue, Suite 2100
                                                        Dallas, Texas 75201-2911

12                                                      Telephone: 214.698.3100

13                                                      JOSHUA LIPTON, *pro hac vice*
                                                          jlipton@gibsondunn.com

14                                                      KRISTEN C. LIMARZI, *pro hac vice*
                                                          klimarzi@gibsondunn.com

15                                                      GIBSON, DUNN & CRUTCHER LLP
                                                        1050 Connecticut Avenue, N.W.

16                                                      Washington, DC  20036-5306
                                                        Telephone: 202.955.8500

17
                                                        JOHN B. QUINN, SBN 90378

18                                                        johnquinn@quinnemanuel.com
                                                        DOMINIC SURPRENANT, SBN 165861

19                                                        dominicsurprenant@quinnemmanuel.com
                                                        KEVIN TERUYA, SBN 235916

20                                                        kevinteruya@quinnemanuel.com

21                                                      QUINN EMANUEL URQUHART & SULLIVAN LLP
                                                        865 South Figueroa Street, 10th Floor

22                                                      Los Angeles, California 90017
                                                        Telephone: 213.443.3000

23

24

25

26

27

28

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:    650.801.5100

*Attorneys for Plaintiffs Matt Jones, Bryson
DeChambeau, Peter Uihlein, and Plaintiff and
Counterclaim Defendant LIV Golf Inc.*

JOINT STATEMENT REGARDING REQUEST FOR CASE MANAGEMENT CONFERENCE
Case No. 5:22-CV-04486-BLF

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

DATED:  December 14, 2022                KEKER, VAN NEST & PETERS LLP


By:        */s/ Nicholas S. Goldberg*
                 Nicholas S. Goldberg