KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:    212 735 3000
Facsimile:    212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone:    312 407 0700
Facsimile:    312 407 0411

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | Case No. 5:22-CV-04486-BLF <br><br> **PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COUNTERCLAIM TO ADD COUNTER-DEFENDANTS; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Date:       May 18, 2023 <br> Time:       9:00 a.m. <br> Courtroom:  3 <br> Judge:      Hon. Beth Labson Freeman <br><br> Date Filed:    August 3, 2022 <br><br> Trial Date:    January 8, 2024 |
| PGA TOUR, INC., <br><br> Counter-Claimant, <br><br> v. <br><br> LIV GOLF, INC., <br><br> Counter-Defendant. | |

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| NOTICE OF MOTION AND MOTION | iii |
| STATEMENT OF ISSUE TO BE DECIDED | 1 |
| MEMORANDUM OF LAW | 1 |
| I. INTRODUCTION | 1 |
| II. BACKGROUND | 3 |
|     A. Plaintiffs' Complaint and the TOUR's Counterclaim | 3 |
|     B. The TOUR's subpoenas to PIF and Mr. Al-Rumayyan | 4 |
|     C. The Shareholders' Agreement and other recent discovery | 5 |
| III. LEGAL STANDARD | 6 |
| IV. ARGUMENT | 7 |
|     A. Amendment will not unduly prejudice any opposing party. | 7 |
|         1. PIF and Mr. Al-Rumayyan cannot establish any prejudice. | 7 |
|         2. Plaintiffs cannot establish any prejudice. | 9 |
|     B. Amendment is not futile. | 9 |
|     C. The TOUR promptly sought leave to amend. | 10 |
|     D. There is no bad faith or dilatory motive in seeking amendment. | 10 |
|     E. The TOUR has not previously sought amendment of its counterclaim. | 10 |
| V. CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ...................................................................................................6

*De Malherbe v. Int'l Union of Elevator Constructors*,
   438 F. Supp. 1121 (N.D. Cal. 1977) .........................................................................................6

*Dean Markley USA, Inc. v. Cenveo Corp.*,
   2015 WL 1843708 (N.D. Cal. 2015) .....................................................................................6, 9

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ..................................................................................................7

*Giuliano v. SanDisk Corp.*,
   2014 WL 4685012 (N.D. Cal. Sept. 19, 2014) .........................................................................7

*Griggs v. Pace Am. Grp., Inc.*,
   170 F.3d 877 (9th Cir. 1999) ..................................................................................................10

*Hurn v. Ret. Fund Tr. of Plumbing, Heating and Piping Indus. of S. Cal.*,
   648 F.2d 1252 (9th Cir. 1981) ..................................................................................................9

*Sinclair v. San Jose Unified Sch. Dist. Bd.*,
   2021 WL 2948871 (N.D. Cal. July 13, 2021) ..........................................................................8

*In re Snap Inc. Sec. Litig.*,
   394 F. Supp. 3d 1156 (C.D. Cal. 2019) ....................................................................................6

*Story v. Midland Funding LLC*,
   2016 WL 5868077 (D. Or. Oct. 7, 2016) ...............................................................................10

*Unicorn Energy GMBH v. Tesla Inc.*,
   2022 WL 16528138 (N.D. Cal. Oct. 28, 2022) ..................................................................9, 10

**Federal Statutes**

Foreign Sovereign Immunities Act (FSIA)..................................................................................4, 5

**Rules**

Federal Rule of Civil Procedure 15 ..............................................................................6, 7, 9, 10

Federal Rule of Civil Procedure 21 ................................................................................................6

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

Please take notice that on May 18, 2023 at 9:00 a.m. or as soon thereafter as this matter can be heard, in the courtroom of District Judge Beth Labson Freeman, located at 280 South 1st Street, San Jose, CA 95113, PGA TOUR, INC. will and hereby does move, pursuant to Federal Rules of Civil Procedure 15 and 21, for an order granting leave to amend its counterclaim to add the Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan as counter-defendants.

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, all files and records in this action, oral argument, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to or at the hearing on this matter.

Dated: January 24, 2023

KEKER, VAN NEST & PETERS LLP

By: */s/ Elliot R. Peters*
ELLIOT R. PETERS
DAVID SILBERT
R. ADAM LAURIDSEN
NICHOLAS S. GOLDBERG
SOPHIE HOOD

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ANTHONY J. DREYER
PATRICK FITZGERALD
KAREN M. LENT
MATTHEW M. MARTINO

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should grant the PGA TOUR, INC. ("the TOUR") leave to add the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and Yasir Othman Al-Rumayyan ("Mr. Al-Rumayyan") as counter-defendants in light of recently produced documents demonstrating that they exercise control over LIV Golf Inc. and have participated in the tortious interference of the TOUR's contracts.

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**[1]

The TOUR respectfully requests leave to amend its counterclaim to add PIF and Mr. Al-Rumayyan as counter-defendants. The TOUR has asserted a counterclaim against counter-defendant LIV Golf Inc. for intentionally interfering with the TOUR's contracts with players, including the current Player Plaintiffs. As set forth in the existing counterclaim, LIV intentionally and knowingly caused these players to breach their contractual obligations to the TOUR by mispresenting TOUR contracts; inducing these breaches by offering highly lucrative contracts that make it impossible for players to comply with their TOUR contracts; and providing extensive indemnification and hundreds of millions of dollars to compensate LIV players for these breaches. Recently produced documents confirm that PIF and Mr. Al-Rumayyan played an active and central role in orchestrating these breaches for their own benefit and are equally liable for the harm caused to the TOUR.

LIV is the end result of a long-contrived plan known as "Project Wedge," which was a plan designed to provide a roadmap to taking over professional golf as part of the Kingdom of Saudi Arabia's Vision 2030. Project Wedge and LIV were created by PIF, the sovereign wealth fund for the Kingdom of Saudi Arabia that has amassed over half a trillion dollars in assets, and of which Mr. Al-Rumayyan is the Governor. Documents produced by LIV reveal that PIF and Mr. Al-Rumayyan were instrumental in inducing players to breach their TOUR contracts. In

---

[1] Internal citations and quotation remarks have been removed herein and emphases added, unless otherwise noted. Page citations to "Dkt." reference the document's internal pagination.

addition to exercising near absolute authority over LIV, PIF and Mr. Al-Rumayyan have personally recruited TOUR players, played an active role in contract negotiations, and expressly approved each of the player contracts—all while knowing that these deals would interfere with the players' TOUR contracts. In addition to approving player contracts that pledge to indemnify such players from breach of their contractual obligations to the TOUR, Mr. Al-Rumayyan himself has gone as far as to provide personal assurances to at least one player about his and PIF's commitment to backing such player in any legal claims by the TOUR. Leave should be granted to add both PIF and Mr. Al-Rumayyan as counter-defendants because all relevant factors weigh in favor of amendment.

*First*, no party will suffer any undue prejudice if amendment is permitted. PIF and Mr. Al-Rumayyan should not be surprised that the TOUR seeks to add them as counter-defendants as the TOUR has been seeking evidence from them since the case's inception last August. The belatedly produced Subscription and Shareholders' Agreement signed by Mr. Al-Rumayyan was the lynchpin which demonstrated PIF and Mr. Al-Rumayyan's total control over LIV and established that any LIV contract with a player *requires* authorization by PIF. For their part, the current Plaintiffs will suffer no prejudice because the counterclaim against LIV remains unchanged. And since LIV, PIF, and Mr. Al-Rumayyan are all represented by the same lawyers at Quinn Emanuel and Gibson Dunn, those lawyers need no additional time to get up to speed on the case.

*Second*, amendment is not futile because the TOUR has adequately alleged its tortious interference with contract claim against PIF and Mr. Al-Rumayyan. Moreover, PIF and Mr. Al-Rumayyan cannot meet the steep burden of demonstrating futility based on any sovereign immunity or personal jurisdiction defense since their core argument in support of both defenses no longer applies: As counter-defendants, PIF and Mr. Al-Rumayyan can no longer claim that their conduct is not at the heart of the TOUR's counterclaim. Indeed, given PIF's control over the conduct of this litigation, PIF and Mr. Al-Rumayyan have been following it closely and thus require no updating.

*Third*, the TOUR has acted promptly based on recently produced evidence, including the Subscription and Shareholders' Agreement that was produced for the first time in late December.

LIV produced this document after the deadline for substantially completing document production and after repeated requests for the document from the TOUR. LIV cannot now be heard to complain about any delay when it dragged its feet in producing this and other key documents supporting the TOUR's proposed amendment. Indeed, despite assurances to the Court last August that PIF and Mr. Al-Rumayyan would cooperate in providing discovery in this case, both have refused to cooperate in any meaningful way and have delayed and stonewalled at every turn.

**Fourth**, there is no evidence whatsoever of bad faith or dilatory motive. Rather, the TOUR seeks leave to amend based on its good-faith belief that PIF and Mr. Al-Rumayyan are liable for tortious interference.

**Finally**, the TOUR has not previously sought amendment of its counterclaim.

In sum, the Court should grant the TOUR leave to amend its counterclaim.

## II.   BACKGROUND

### A.   Plaintiffs' Complaint and the TOUR's Counterclaim

In August 2022, eleven golfers sought to obtain a temporary restraining order against the TOUR based on purported antitrust and contract violations. *See* Dkt. 2 (Application for TRO). The Court denied their request. Dkt. 63 (Order). Since then, eight of the golfers dismissed their claims against the TOUR, and LIV entered the case as a plaintiff. LIV is a new professional golf tour founded, controlled, and financed by PIF and Mr. Al-Rumayyan. *See* Declaration of Maile Yeats-Rowe ("Yeats-Rowe Decl.") Ex. A ("Proposed Amended Counterclaim") ¶ 23.

Founded in 1971, PIF is the sovereign wealth fund for the Kingdom of Saudi Arabia with more than half a trillion dollars of assets under management. *See id.* ¶ 21. In 2015, PIF was "reborn" with a mandate to further Saudi Arabia's "Vision 2030"—an effort to diversify Saudi Arabia's economy, alleviate its dependence on oil, and better integrate itself with the international economy. *Id.* To that end, PIF and Mr. Al-Rumayyan created LIV in 2021 to take over the world of golf to burnish (or "sportswash") the international reputation of Saudi Arabia and its monarchy. *Id.* ¶ 23. PIF owns at least 93% of LIV and controls its board. *Id.* ██████
██████████████████████████████████████████████ *Id.* ¶ 6.

The TOUR has asserted a counterclaim against LIV for tortious interference with contract.

*See* Dkt. 108 (TOUR Counterclaim). The TOUR alleges, among other things, that "LIV paid significant sums of upfront cash and made false representations" to TOUR members (including the Player Plaintiffs) "to induce their breach of the agreements with the TOUR." *Id.* ¶ 58.

### B. The TOUR's subpoenas to PIF and Mr. Al-Rumayyan

During the first status conference on August 18, LIV's counsel stated that "to the extent there's appropriate discovery of [PIF], we will find a way to cooperate with that." Dkt. 148 (The TOUR's Motion to Compel Compliance with Subpoenas) at 5. LIV's counsel added that they would "never insist that the TOUR do any sort of formal service" and that discovery of PIF would "come together swimmingly." *Id.*

After the status conference, the TOUR promptly negotiated with counsel for PIF and Mr. Al-Rumayyan a letter agreement in which they agreed to treat the TOUR's subpoenas "as if the PGA Tour had personally delivered a copy of" the subpoenas to Mr. Al-Rumayyan or an officer or managing agent of PIF in the United States. *Id.* Consistent with this agreement, the TOUR then served the subpoenas. *Id.* The subpoenas seek evidence regarding, among other things, PIF and Mr. Al-Rumayyan's involvement in recruiting professional golfers to join LIV. *Id.*

In response, both PIF and Mr. Al-Rumayyan refused to produce any documents whatsoever or appear for deposition. *Id.* at 6. Both maintained that no court in the United States has jurisdiction over them, they are immune from compulsory process, and they have no information or documents relevant to the case. *Id.*

The TOUR then filed its Motion to Compel Compliance with the Subpoenas against PIF and Mr. Al-Rumayyan in October. *See* Dkt. 142 (Notice of Motion to Compel) at 2. PIF and Mr. Al-Rumayyan opposed the motion and sought to quash the TOUR's subpoenas based on their assertion that the Court lacks personal jurisdiction over PIF under the Foreign Sovereign Immunities Act (FSIA) and lacks personal jurisdiction over Mr. Al-Rumayyan under principles of common law immunity. Dkt. 166 (PIF and Mr. Al-Rumayyan's Motion to Quash) at 7–12. PIF argued that it was immune from suit because its "conduct [was] not the basis of the lawsuit or counterclaim." *Id.* at 9. In other words, PIF and Mr. Al-Rumayyan argued that since they were merely subpoena recipients, and not parties to the lawsuit, the FSIA immunized them and none of

the exceptions to the FSIA applied.[2] Magistrate Judge van Keulen heard argument on the motion to compel and to quash on January 13, 2023, *see* Dkt. 217 (Minute Entry), but has not yet ruled on the merits of PIF and Mr. Al-Rumayyan's jurisdictional objection.

### C. The Shareholders' Agreement and other recent discovery

After the TOUR moved to compel compliance with its subpoenas to PIF and Mr. Al-Rumayyan, it received discovery showing that LIV was not alone in inducing TOUR players to breach their contracts with the TOUR. On December 21, after the deadline for substantially completing document production, after briefing had closed on the TOUR's motion to compel, and after repeated requests from the TOUR, LIV produced the Subscription and Shareholders' Agreement ("Shareholders' Agreement").

Critically, the Shareholders' Agreement—signed by Mr. Al-Rumayyan—reveals that PIF was required to and did, in fact, approve the lucrative LIV contracts that interfered with the TOUR's contracts with its players. Proposed Amended Counterclaim ¶¶ 29-34. Indeed, under the Shareholders' Agreement, LIV ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ Dkt. 208-2 (The TOUR's Supplemental Memorandum in Support of Motion to Compel) at 3. Similarly, the Shareholders' Agreement stated that ████████████████████████ ████████████████████████████████████████ ███. *Id.* In short, PIF controls the conduct of LIV's lawsuit against the TOUR.

Other recent discovery produced by LIV in this case likewise confirms PIF and Mr. Al-Rumayyan's critical role in brokering deals with TOUR players:

- In ██████, Mr. Al-Rumayyan ██████ the Managing Director of LIV to ████████████████████████████████

---

[2] The TOUR continues to reject this argument. That said, the TOUR's current proposed amendment to its counterclaim, which renders PIF and Mr. Al-Rumayyan parties to the case, conclusively disposes of PIF and Mr. Al-Rumayyan's jurisdictional objection.

1  ██████████████████████. Dkt. 169 (Tour's Reply in Support of Motion to
2  Compel) at 4-5.

- PIF and Mr. Al-Rumayyan ████████████████████████████████████
████████████████ *Id.* at 4.
- Mr. Al-Rumayyan ███████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████ *Id.* at 5.
- PIF requested from LIV the ████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████. Yeats-Rowe Decl. Ex. C at LIV000299872.

To sum up, PIF and Mr. Al-Rumayyan recruited players; decided how much to pay them; assured them about their positions and about indemnification from suit by PIF; and controlled the conduct of this litigation undertaken by PIF's lawyers. Accordingly, the TOUR now seeks leave to amend its counterclaim to add PIF and Mr. Al-Rumayyan as counter-defendants.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 21 provides that, "[o]n motion . . . the court may at any time, on just terms, add . . . a party." The standard for amendment to add new parties under Rule 21 is identical to the standard for amendment under Rule 15(a)(2). *In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1157 (C.D. Cal. 2019). Courts "grant motions to add parties at the early stages of litigation ***almost as a matter of course*** since the liberal standard of Rule 15 also applies to Rule 21 motions." *De Malherbe v. Int'l Union of Elevator Constructors*, 438 F. Supp. 1121, 1128 (N.D. Cal. 1977); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

In deciding whether to grant leave to amend, courts consider (1) "undue prejudice to the opposing party by virtue of allowance of the amendment"; (2) "futility of amendment"; (3) "undue delay"; (4) "bad faith or dilatory motive on the part of the movant"; and (5) "repeated failure to cure deficiencies by amendments previously allowed." *Dean Markley USA, Inc. v.*

*Cenveo Corp.*, 2015 WL 1843708, at *1 (N.D. Cal. 2015). The party opposing amendment bears the "burden [of] demonstrat[ing] that leave to amend should be denied." *Giuliano v. SanDisk Corp.*, 2014 WL 4685012, at *7 (N.D. Cal. Sept. 19, 2014).

## IV. ARGUMENT

All the Rule 15 factors tip sharply in favor of granting the TOUR's motion for leave to add PIF and Mr. Al-Rumayyan as counter-defendants.

### A. Amendment will not unduly prejudice any opposing party.

"The consideration of prejudice to the opposing party . . . carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Because PIF, Mr. Al-Rumayyan, and Plaintiffs cannot establish any prejudice, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original).

#### 1. PIF and Mr. Al-Rumayyan cannot establish any prejudice.

PIF and Mr. Al-Rumayyan cannot show any prejudice for at least three reasons.

***First***, an amendment to include PIF and Mr. Al-Rumayyan as counter-defendants should come as no surprise given their direct involvement in the actions underlying the TOUR's tortious interference counterclaim and the TOUR's diligent efforts to obtain documents from them since the first status conference in August. The counterclaim turns on LIV's unlawful efforts to recruit TOUR members and induce them to breach their contracts with the TOUR through extravagant guaranteed contracts. The recently produced Shareholders' Agreement—signed by Mr. Al-Rumayyan—confirms that PIF was required to and did, in fact, approve these LIV contracts.

Other documents in this case confirm that PIF and Mr. Al-Rumayyan brokered business deals for LIV by recruiting players in the United States and deciding on the terms of their LIV contracts. Mr. Al-Rumayyan ███████████████████████████████████████████████████. *See* Section II.C., *supra*. PIF and Mr. Al-Rumayyan also ███████████████████████████████████. *Id.* Moreover, Mr. Al-Rumayyan ███████████████████████████████████████████████████████████ *Id.*

***Second***, any prejudice that PIF and Mr. Al-Rumayyan might claim from being added as counter-defendants is mitigated by the fact that (1) PIF controls the conduct of this litigation and (2) both are represented by the ***same attorneys*** from Quinn Emanuel and Gibson Dunn for Plaintiff LIV. In other words, LIV's attorneys can readily update PIF and Mr. Al-Rumayyan on the status of the case and help them mount a defense against the same tortious interference counterclaim being asserted against Plaintiffs.

To the extent that LIV, PIF, or Mr. Al-Rumayyan complain about any delay in adding them, that delay is solely attributable to PIF and Mr. Al-Rumayyan's ongoing foot-dragging in complying with the subpoenas and producing relevant discovery. Indeed, according to LIV, PIF has expressly refused to comply with a request from LIV to provide documents necessary for LIV to fulfill its discovery obligations in responding to the TOUR's documents requests to LIV. *See* Dkt. 228 (Joint Status Report) at Ex. C, p. 3 ("LIV asked PIF and [Mr. Al-Rumayyan] whether they would be willing to produce documents and information as you have requested, and PIF and [Mr. Al-Rumayyan] said they would not . . .").

***Third***, to the extent that PIF and Mr. Al-Rumayyan complain about the burden of complying with their discovery obligations once added as parties, "the need for additional discovery is insufficient by itself to deny a proposed amended pleading." *Sinclair v. San Jose Unified Sch. Dist. Bd.*, 2021 WL 2948871, at *3 (N.D. Cal. July 13, 2021). In any event, PIF and Mr. Al-Rumayyan will need to participate in discovery in this case. During a status conference, the Court previously expressed its "hope[] that . . . [LIV] can find a way to assure [the TOUR] that they are getting the documents that they are entitled to as if it were a subpoena and it had the same force and consequences as if it were a subpoena." Dec. 16, 2022 H'rg Tr. at 17:22–18:1. LIV's assertion that it "will produce documents" based on its own choosing "only goes so far, because [the TOUR's counsel] is still going to be trying a case based on what . . . [PIF] deigned to let [the TOUR's counsel] see." *Id.* at 18:2–5. Thus, any additional burden that PIF and Mr. Al-Rumayyan might face will not be undue given their importance to the TOUR's counterclaim.

In sum, PIF and Mr. Al-Rumayyan cannot claim any prejudice given their significant involvement with inducing TOUR members to breach their contracts with the TOUR, their

counsel's role in the litigation from its inception, and Plaintiffs' false assurances to the Court that they would cooperate in discovery. Any "[b]ald assertions of prejudice" by them "cannot overcome the strong policy reflected in Rule 15(a) to facilitate a proper disposition on the merits" of the TOUR's counterclaim. *Hurn v. Ret. Fund Tr. of Plumbing, Heating and Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

### 2. Plaintiffs cannot establish any prejudice.

Likewise, Plaintiffs cannot establish any prejudice. The TOUR's proposed amendments do not change the "theories of the case or the claims asserted" against Plaintiffs. *Dean Markley*, 2015 WL 1843708, at *2. Indeed, the TOUR is advancing its same counterclaim for tortious interference against PIF and Mr. Al-Rumayyan.

Insofar as Plaintiffs complain that the addition of PIF and Mr. Al-Rumayyan will affect the case schedule, that is a problem of LIV's own making. LIV acted along with, and at the direction of, PIF and Mr. Al-Rumayyan in interfering with the TOUR's contracts. And it was LIV that belatedly produced the Shareholders' Agreement—the key document confirming PIF's and Mr. Al-Rumayyan's significant role in inducing TOUR players to breach their contracts. Any effect that the addition of PIF and Mr. Al-Rumayyan as parties may have on the case schedule is a result of PIF, Mr. Al-Rumayyan's, and LIV's decisions. Thus, the prejudice factor weighs in favor of granting leave to amend.

### B. Amendment is not futile.

"[A] proposed amendment is futile . . . only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid claim or defense." *Unicorn Energy GMBH v. Tesla Inc.*, 2022 WL 16528138, at *2 (N.D. Cal. Oct. 28, 2022). PIF and Mr. Al-Rumayyan cannot meet this high standard. As detailed in the proposed amended counterclaim, PIF and Mr. Al-Rumayyan knowingly induced various TOUR members to breach their TOUR contracts. These allegations are sufficient. Indeed, LIV did not move to dismiss the TOUR's counterclaim against it, based on the same allegations, for failure to state a claim.

To the extent that PIF and Mr. Al-Rumayyan re-assert their sovereign immunity and personal jurisdiction defenses, such an assertion on its own is not enough to meet the "heavy

burden of proving futility of amendment." *Id.* Moreover, PIF's main argument in support of its claim to sovereign immunity in response to the TOUR's motion to compel is that its conduct was "not the basis of the lawsuit or counterclaim." Section II.B., *supra*. Because the TOUR now seeks to add PIF as a party to the counterclaim, PIF's core arguments in support of its immunity defense no longer apply. In other words, the TOUR ***does*** allege a "set of facts . . . that would constitute a valid claim" against PIF and Mr. Al-Rumayyan, and they cannot establish futility of amendment. *Unicorn Energy*, 2022 WL 16528138, at *2. As the TOUR will demonstrate in response to any motion to dismiss the counterclaim (and has already demonstrated in its Motion to Compel), PIF and Mr. Al-Rumayyan's sovereign immunity defenses lack merit due to their commercial activity in the United States and the waiver exceptions to sovereign immunity. *See* Dkts. 148, 169, 225.

### C. The TOUR promptly sought leave to amend.

The TOUR's motion is timely and is based on discovery belatedly produced by LIV, including the Shareholders' Agreement produced in late December. Amending a complaint based on "information . . . received during discovery . . . does not cause undue delay." *Story v. Midland Funding LLC*, 2016 WL 5868077, at *4 (D. Or. Oct. 7, 2016). Moreover, the Court has not yet set a deadline for amending the pleadings. Thus, the TOUR's motion is timely.

### D. There is no bad faith or dilatory motive in seeking amendment.

Bad faith exists where the proposed amendment "will not save the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999). The TOUR has brought this motion in good faith to ensure that its adequately alleged tortious interference counterclaim is decided on the merits, particularly in view of the recently produced evidence reflecting PIF and Mr. Al-Rumayyan's intentional interference with TOUR contracts.

### E. The TOUR has not previously sought amendment of its counterclaim.

Because this is the first time that the TOUR has sought to add two counter-defendants, the final Rule 15 factor likewise favors granting leave to amend.

## V. CONCLUSION

For all these reasons, the Court should grant the TOUR's motion for leave to amend.

| | | |
|---|---|---|
| Dated: January 24, 2023 | | KEKER, VAN NEST & PETERS LLP |
| | By: | /s/ Elliot R. Peters |
| | | ELLIOT R. PETERS |
| | | DAVID SILBERT |
| | | R. ADAM LAURIDSEN |
| | | NICHOLAS S. GOLDBERG |
| | | SOPHIE HOOD |

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ANTHONY J. DREYER
PATRICK FITZGERALD
KAREN M. LENT
MATTHEW M. MARTINO

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.