| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>ELLIOT R. PETERS - # 158708<br>epeters@keker.com<br>DAVID SILBERT - # 173128<br>dsilbert@keker.com<br>R. ADAM LAURIDSEN - # 243780<br>alauridsen@keker.com<br>NICHOLAS S. GOLDBERG - # 273614<br>ngoldberg@keker.com<br>SOPHIE HOOD - # 295881<br>shood@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:   415 391 5400<br>Facsimile:   415 397 7188 | SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>ANTHONY J. DREYER - (*pro hac vice*)<br>anthony.dreyer@skadden.com<br>KAREN M. LENT - (*pro hac vice*)<br>karen.lent@skadden.com<br>MATTHEW M. MARTINO - (*pro hac vice*)<br>matthew.martino@skadden.com<br>One Manhattan West<br>New York, NY 10001<br>Telephone:   212 735 3000<br>Facsimile:   212 735 2000<br><br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>PATRICK FITZGERALD - (*pro hac vice*)<br>patrick.fitzgerald@skadden.com<br>155 North Wacker Drive<br>Chicago, Il 60606<br>Telephone:   312 407 0700<br>Facsimile:   312 407 0411 |

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PGA TOUR, INC.,<br><br>    Defendant.<br><br>PGA TOUR, INC.,<br><br>    Counter-claimant,<br><br>    v.<br><br>LIV GOLF, INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, AND YASIR OTHMAN AL-RUMAYYAN,<br><br>    Counter-defendants. | Case No. 5:22-CV-04486-BLF (SVK)<br><br>**PGA TOUR INC.'S OPPOSITION TO THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge:   Hon. Beth Labson Freeman<br><br>Date Filed:   August 3, 2022<br><br>Trial Date:   January 8, 2024<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1

II. FACTS ..................................................................................................................................2

    A. PIF and Mr. Al-Rumayyan founded and funded LIV to enter the U.S. market and compete with the TOUR in the United States. ......................................2

    B. PIF and Mr. Al-Rumayyan oversee LIV's strategic direction. ...............................3

    C. PIF and Mr. Al-Rumayyan directly involve themselves in LIV's operations. ................................................................................................................4

III. LEGAL STANDARD ..........................................................................................................5

IV. ARGUMENT ........................................................................................................................5

    A. PIF is not immune under the Foreign Sovereign Immunities Act ("FSIA"). ..........5

        1. The FSIA's commercial activity exception applies to PIF. .........................6

        2. The FSIA's waiver exception applies to PIF. ..............................................7

    B. Mr. Al-Rumayyan is not immune under the common law. .....................................8

    C. The Court has personal jurisdiction over PIF and Mr. Al-Rumayyan. ....................9

        1. PIF and Mr. Al-Rumayyan have minimum contacts with the United States that relate to the claims and counterclaim in this case. ...................10

        2. The Court's exercise of jurisdiction is reasonable. ....................................11

    D. The Court extensively scrutinized the need for discovery. ...................................15

    E. PIF and Mr. Al-Rumayyan have been properly served. ........................................15

V. CONCLUSION ...................................................................................................................15

i

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

Case 5:22-cv-04486-BLF   Document 322   Filed 03/10/23   Page 3 of 20

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*,
    211 F.R.D. 374 (C.D. Cal. 2002) ................................................................................ 12

*Andros Compania Maritima, S.A. v. Intertanker Ltd.*,
    718 F. Supp. 1215 (S.D.N.Y. 1989) .............................................................................. 8

*Consejo de Defensa del Estado de la Rep. de Chile v. Espirito Santo Bank*,
    2010 WL 2162868 (S.D. Fla. May 26, 2010) ............................................................. 14

*Dogan v. Barak*,
    932 F.3d 888 (9th Cir. 2019) ........................................................................................ 8

*Embassy of the Arab Rep. of Egypt v. Lasheen*,
    603 F.3d 1166 (9th Cir. 2010) ...................................................................................... 7

*Everard Findlay Consulting, LLC v. Rep. of Surin.*,
    831 F. App'x 599 (2d Cir. 2020) .................................................................................. 7

*Kensington Int'l Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007) ......................................................................................... 9

*Kumandan v. Google LLC*,
    2022 WL 4282622 (N.D. Cal. Aug. 25, 2022) ........................................................ 5, 12

*Moriah v. Bank of China Ltd.*,
    107 F. Supp. 3d 272 (S.D.N.Y. 2015) .......................................................................... 8

*Pablo Star Ltd. v. Welsh Gov't*,
    961 F.3d 555 (2d Cir. 2020) ......................................................................................... 7

*Perry v. Schwarzenegger*,
    268 F.R.D. 344 (N.D. Cal. 2010) ............................................................................. 1, 5

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ............................................................................... 13, 14

*Samantar v. Yousuf*,
    560 U.S. (2010) ............................................................................................................ 9

*Sakab Saudi Holding Co. v. Aljabri*,
    21-cv-10529-NMG (D. Mass. Mar. 29, 2021) ....................................................... 13, 14

*SiteLock, LLC v. GoDaddy.com*, LLC,
    338 F.R.D. 146 (D. Or. 2021) ..................................................................................... 13

ii

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

*Smith v. Soc. People's Libyan Arab Jamahiriya*,
   101 F.3d 239 (2d Cir. 1996)..................................................................................................8

*U.S. v. Cordones*,
   2022 WL 815229 (S.D.N.Y. Mar. 17, 2022) ..........................................................................9

*U.S. v. Vetco Inc.*,
   691 F.2d 1281 (9th Cir. 1981) ..............................................................................................12

**Federal Statutes**

28 U.S.C. § 1605(a)(1).................................................................................................................7

28 U.S.C. § 1605(a)(2)............................................................................................................6, 7

Foreign Sovereign Immunities Act ........................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 44.1....................................................................................................................11

Fed. R. Civ. P. 72(a) ........................................................................................................1, 5, 11

**Other Authorities**

*Premier League Club Newcastle Bought by Saudi Sovereign Fund*,
   https://apnews.com/article/soccer-sports-business-premier-league-europe-
   2c3f7739fb40c13637993ee6efdb9ea5 .................................................................................13

## I. INTRODUCTION

On February 9, 2023, after four rounds of briefing, two supplemental submissions, a four-hour hearing, and more than two months of consideration, Magistrate Judge van Keulen issued a 58-page Order granting, in large part, the TOUR's Motion to Compel Compliance with its document and deposition subpoenas served on the Public Investment Fund of Saudi Arabia ("PIF") and its Governor, Yasir Al-Rumayyan. In the Order, Judge van Keulen performed a fact-intensive analysis, citing more than 50 exhibits. From this thorough assessment, she concluded that the commercial-activity exception to sovereign immunity found in the FSIA and in the common law apply to PIF and Mr. Al-Rumayyan and that this Court has personal jurisdiction over them. Judge van Keulen further concluded that, even if the TOUR's subpoenas would conflict with Saudi law, the balance of the relevant factors tilts in favor of enforcement. Finally, "to protect PIF and Mr. Al-Rumayyan, while preserving [the TOUR]'s interest in seeking information from those witnesses," Order at 57, Judge van Keulen meticulously reviewed—and modified—the TOUR's deposition topics and documents requests for relevance and burden.

Nothing in PIF and Mr. Al-Rumayyan's Motion for Relief casts doubt on Judge van Keulen's Order, much less establishes that her factual findings were "clearly erroneous" or her legal conclusions "contrary to law." Fed. R. Civ. P. 72(a); *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). **First**, PIF and Mr. Al-Rumayyan barely mention the Order's factual findings, even though those findings are critical to each of the conclusions reached in the Order. To the extent that PIF and Mr. Al-Rumayyan discuss the facts at all, they rehash their characterization—directly contradicted by the record—of their conduct as limited to "planning and oversight of an investment." Dkt. 306 ("Mot.") at 5. But Judge van Keulen properly rejected this argument as a "carefully-worded and conclusory denial" that does "not overcome the evidence" that PIF and Mr. Al-Rumayyan are not "mere investor[s]," but "the moving force behind the founding, funding, oversight, and operation of LIV." *See* Order at 16, 17.

**Second**, PIF and Mr. Al-Rumayyan fail to identify any legal conclusion that is contrary to law. Instead, they recycle arguments already explicitly considered and rejected in the Order, without citing any legal authority that contradicts Judge van Keulen's conclusions. Where they

1
PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

are not rearguing points that they already made and lost, they raise new arguments that were never before Judge van Keulen in the first place—something they are not entitled to do here.

*Third*, PIF and Mr. Al-Rumayyan cannot show that Judge van Keulen abused her discretion by excluding their late-proffered expert testimony on Saudi law or that her balancing of the factors relevant to international comity was contrary to law. Judge van Keulen was not required to accept PIF and Mr. Al-Rumayyan's belated submission of Saudi law—made four days before the hearing and more than two months after their last brief was filed. In any event, PIF and Mr. Al-Rumayyan's argument goes nowhere; Judge van Keulen assumed that the TOUR's subpoenas *were* contrary to Saudi law, but she still found that the balance of factors favored upholding the subpoenas. PIF and Mr. Al-Rumayyan's new expert declaration changes nothing. As a procedural matter, it is improper for PIF and Mr. Al-Rumayyan to attempt to supplement the record with a 15-page declaration and 32 exhibits that were not before Judge van Keulen and to which the TOUR has not had a reasonable chance to respond. As far as substance, the declaration does not come close to showing that Judge van Keulen's conclusion was contrary to law. In fact, their expert does "not express any views" as to whether any of the ordered discovery is *actually* confidential and concedes that he could find no report in the "100 volumes of the KSA's judicial practice" of the enforcement of the confidentiality laws on which PIF and Mr. Al-Rumayyan rely. Dkt. 306-1 ¶¶ 34, 41. In the end, their declaration only bolsters Judge van Keulen's conclusion.

For these reasons, the Court should deny PIF and Mr. Al-Rumayyan's motion to set aside Judge van Keulen's Order and enforce the TOUR's subpoenas on PIF and Mr. Al-Rumayyan.

## II.     FACTS

### A.   PIF and Mr. Al-Rumayyan founded and funded LIV to enter the U.S. market and compete with the TOUR in the United States.

Judge van Keulen found that PIF and Mr. Al-Rumayyan founded and financed LIV to target the U.S. market and compete with the TOUR in the United States. Order at 13-15. In support of these findings, Judge van Keulen cited a June 24, 2021, PIF presentation explaining that LIV was launched [REDACTED] and that PIF would [REDACTED] LIV and [REDACTED]

2
PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

1  ████ Order at 13 (quoting Dkt. 168-1 at PDF pp. 4, 25). Significantly, PIF founded LIV from the outset "**to compete with PGA**" in the United States as a ██████████ Order at 14 (citing *id.* at PDF p. 26) (emphasis added). And "[i]t follows from LIV's own allegations in the FAC that PIF's multi-billion dollar funding is an existential imperative that enabled LIV to enter and compete in the relevant markets." Order at 15.

### B. PIF and Mr. Al-Rumayyan oversee LIV's strategic direction.

The Order further found that PIF and Mr. Al-Rumayyan helped develop LIV's financial, marketing, and media strategies to enter the U.S. market and compete with the TOUR in the U.S. *See* Order at 15. Indeed, the Subscription and Shareholders' Agreement governing the relationship between PIF and LIV ██████████████ to (1) enter into any ████████████████████████ (2) ██████████████ (3) ██████ or (4) create ██████████████ Dkt. 208-1 at PDF pp. 49-52; *see also* Dkt. 208-2 (cited by Order at 25-26).

The record is replete with evidence that Mr. Al-Rumayyan retains and exercises final authority over virtually all major decisions, such as ██████ LIV ██████████ and its launch date, ██████████████ and "green light[ing]" ██████████████████. *See* Dkt. 168-3, 168-4, 168-5 (cited by Order at 15-16).

The Order also found that PIF directly engaged U.S.-based consultants to implement LIV's business and media strategy for entering the U.S. market. Order at 15. PIF hired ██████ to develop LIV's ██████████████████████ *See* Dkt. 168-24, 168-25. PIF hired U.S.-based Teneo Strategy, LLC to perform ██████████████████████████████████ Dkt. 168-26; Dkt. 169-3 at 30; Dkt. 168-5; 168-27, 168-28, 168-29. And PIF retained the U.S. firm Terakeet to perform public relations work designed to ██████████████ Dkt. 168-30, 168-31, 168-32.

3
PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

**C. PIF and Mr. Al-Rumayyan directly involve themselves in LIV's operations.**

The Order also describes PIF and Mr. Al-Rumayyan's involvement in LIV's daily operations in competing with the TOUR and entering the U.S. market. Order at 15-16. For example, Mr. Al-Rumayyan ███████████████████████████████ ██████ *See* Dkt. 168-13, 168-15, 168-16 (cited by Order at 15). LIV specifically asked Mr. Al-Rumayyan to ██████████████████████████████████████████████████████ █████████████████████████████████████ Dkt. 168-16, 168-17 (cited by Order at 15). Indeed, Wasserman's agency has since become one of "the biggest influence[s] on players who joined LIV," representing seven of the 48 players in LIV's September 2022 event, including at least one former Player Plaintiff. *See* Dkt. 169-3 at Ex. 38.

PIF also had ████████████████████████████████████ while developing LIV, and ████████████████████████████████████████ ███████ Order at 16 (quoting Dkt. 168-1 at PDF p. 4). Even after LIV was founded, PIF and Mr. Al-Rumayyan continued ████████████████████████████████. Mr. Al-Rumayyan ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████ and he instructed ██████████████████████████████████████████████ ████████████████ Dkt. 168-18, 168-19 (cited by Order at 15). And he █████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████████████████████ Dkt. 168-20 (emphasis added). █████████████████████████████████ █████████████████████████████████████████ Order at 15-16. He met with █████████████████████████████████████████████████████ Dkt. 168-21, 168-22 (cited by *id.*). He was also in direct and repeated contact with ████████ █████████████████████████████████████████████████████████ ███████████████████ Dkt. 168-23. PIF and Mr. Al-Rumayyan have also leveraged their New York office—which manages ongoing relationships with its U.S. portfolio companies,

4

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

1  *see* Dkt. 169-3 at Ex. 41—and ███████████████████████████████████████
2  ██████████████████████ *See* Dkt. 168-33, 168-34, 168-35 (cited by Order at 15-16).
3  Consistent with PIF's internal description of Mr. Norman as LIV's ████████ PIF
4  and Mr. Al-Rumayyan in fact ██████████████████████████████████████████
5  Dkt. 168-1 at PDF p. 13. LIV's ████████████████████████████████████████
6  ██████████████████████████████████ Dkt. 168-7, for which they ████████
7  ████████████████████████████████████████. 168-38 at PDF pp. 10-13
8  (cited by Order at 16). Mr. Al-Rumayyan requires PIF and LIV leadership to ████████
9  ████████ to ████████████████████████████████████████████████████
10 ████████████████████████████████ Order at 16; Dkt. 168-6.

**III.   LEGAL STANDARD**

A magistrate judge's order regarding compliance with a third-party subpoena is a non-dispositive pretrial matter reviewed under the "clearly erroneous or contrary to law" standard of Rule 72(a) of the Federal Rules of Civil Procedure. *See Kumandan v. Google LLC*, 2022 WL 4282622, at *1 (N.D. Cal. Aug. 25, 2022). Under this standard, "[t]he magistrate's factual determinations are reviewed for clear error, and the magistrate's legal conclusions are reviewed to determine whether they are contrary to law." *Schwarzenegger*, 268 F.R.D. at 348. There is no legal basis for PIF and Mr. Al-Rumayyan's request for *de novo* review of Judge van Keulen's Order. Even if there were, the Order's factual findings are supported by extensive record evidence, its legal reasoning is sound, and the Court should sustain its ultimate conclusions.

**IV.   ARGUMENT**

**A.    PIF is not immune under the Foreign Sovereign Immunities Act ("FSIA").**

"Once a party makes the initial showing that a FSIA exception applies, the party claiming immunity bears the burden of proving by a preponderance of evidence that the exception does not apply." Order at 11 (cleaned up). Because PIF has failed to carry its burden of rebutting the TOUR's initial showing that the commercial activity and waiver exceptions to FSIA immunity apply to PIF, the Court should sustain Judge van Keulen's Order.

**1.     The FSIA's commercial activity exception applies to PIF.**

Judge van Keulen held that PIF's immunity under FSIA is abrogated under Clause 3 of the commercial activity exception, pursuant to which sovereign entities are not immune in actions based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The Order came just short of concluding that PIF's immunity was also abrogated under Clause 1 of the commercial activity exception, pursuant to which sovereign entities are not immune in actions "based upon" the foreign state's "commercial activity carried on in the United States," *id.*, concluding instead that jurisdictional discovery was warranted to determine which of PIF's commercial activities occurred within the United States. Order at 22. PIF's objections do not undermine Judge van Keulen's conclusions.

*"Based Upon."* PIF first objects that LIV's claims and the TOUR's counterclaim are not "based upon" PIF's conduct. Mot. at 3. But Judge van Keulen rejected this exact argument when she made specific factual findings that "PIF's conduct, particularly its financial backing of LIV, is essential to PGA's theory that LIV interfered with PGA's contracts with golfers," Order at 21, and that "PIF played an essential role in the founding, financing, oversight, and operation of LIV" and is thus equally central to the TOUR's defenses to LIV's claims, Order at 21-22. PIF points to no evidence contradicting these extensively supported conclusions. Rather, PIF newly suggests that the only relevant conduct for purposes of the commercial activity exception is the conduct "that actually injured" the plaintiff. Mot. at 3. But PIF's cramped interpretation of Section 1605(a)(2) finds no support in the statute, which applies to "any case"—not just to those where the sovereign entity is alleged to have caused harm—and inquires only about the location of the sovereign's "commercial activity"—not about the location of its harmful conduct.

Nor does PIF's case law support its argument. *OBB Personenverkehr AG v. Sachs* considered whether a lawsuit arising from a train accident in Austria could be brought in the United States on the sole ground that the passenger's rail pass was sold here. 577 U.S. 27, 29 (2015). That case had none of the evidence of U.S.-based commercial activity that the TOUR has presented regarding PIF's founding, funding, and active operation of LIV. *OBB Personenverkehr*

6

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

also explicitly limits its reasoning to Clause 1 of Section 1605(a)(2), *id.* at 31 n.1, and is thus irrelevant to Judge van Keulen's holding under Clause 3. In other, more analogous cases with similarly extensive commercial activity in the United States, courts have found the exception to apply. *See, e.g., Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 565 (2d Cir. 2020) (foreign state's distribution of promotional materials in the United States); *Everard Findlay Consulting, LLC v. Rep. of Surin.*, 831 F. App'x 599, 600 (2d Cir. 2020) (foreign state's "negotiating, entering, and allegedly breaching" an agreement with a firm in the United States); *Embassy of the Arab Rep. of Egypt v. Lasheen*, 603 F.3d 1166, 1171 (9th Cir. 2010) (foreign state's funding of an insurance plan in the United States).

***"Direct Effect."*** PIF's second objection that the Order incorrectly concluded that PIF's conduct abroad had a "direct effect" in the United States fares no better. Judge van Keulen made a specific, extensively supported factual finding that PIF had a direct effect in the United States, including by developing LIV "according to a ▮▮▮▮▮ that it knew would ▮▮▮▮▮ ▮▮▮▮ to other tours, most notably U.S.-based PGA." Order at 23. PIF cites ***no evidence at all*** contradicting these findings of fact. Instead, PIF argues that the Order improperly relies on LIV's acts and not PIF's. Mot. at 5. But PIF fails to mention that the Order dealt with precisely this argument, finding that "PIF's argument misses [] that PGA's invocation of FSIA's commercial activity exception does not rest on LIV's activities in isolation from PIF … Instead, PGA alleges and has presented evidence of ***PIF's own conduct***[.]" Order at 13. PIF does not point to a single aspect of Judge van Keulen's order that incorrectly attributes LIV activity to PIF. Nor could it, as the evidence demonstrates that PIF created LIV to compete with the U.S.-based TOUR, and PIF controls LIV's ongoing operations directed toward the United States.

### 2. The FSIA's waiver exception applies to PIF.

Judge van Keulen also stopped just short of concluding that the waiver exception to FSIA immunity, 28 U.S.C. § 1605(a)(1), applies in light of (a) the evidence that PIF's approval was required for LIV to file this lawsuit and (b) PIF's failure to rebut that evidence. Instead, Judge van Keulen decided that jurisdictional discovery would be appropriate to determine whether PIF had *in fact* authorized the lawsuit, but she declined to order it since she concluded that the commercial

7
PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

activity exception applies. Order at 27. PIF argues that its authorization for the filing of this lawsuit in the United States is insufficient to invoke the waiver exception. Mot. at 5. But PIF is wrong on the law. "[S]eeking affirmative relief from the Court is the paradigm of" jurisdictional waiver. *Andros Compania Maritima, S.A. v. Intertanker Ltd.*, 718 F. Supp. 1215, 1217 (S.D.N.Y. 1989); *Smith v. Soc. People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1996) (foreign state's "agreement to arbitration in another country" impliedly waives FSIA immunity).

Judge van Keulen also correctly noted that she would be "justified in finding that PIF had failed to carry its burden of showing that the waiver exception does not apply." Order at 27. PIF has not only failed to rebut the TOUR's evidence that it consented to U.S. jurisdiction, it has conspicuously avoided arguing that it did not authorize this lawsuit. Instead, PIF has deployed artfully worded assertions that it did not "direct" the filing of the lawsuit, Dkt. 172-2 at 4, or pointed to the TOUR's purported lack of evidence of its authorization. Considering PIF's failure to rebut the TOUR's evidence, the Court should hold outright that PIF waived its FSIA immunity.

**B.     Mr. Al-Rumayyan is not immune under the common law.**

Judge van Keulen held that Mr. Al-Rumayyan, to whom FSIA does not apply, meets the common law requirements of conduct-based foreign official immunity, but that he is not immune under the commercial activity exception thereto. Order at 31, 33. Mr. Al-Rumayyan now abandons his prior argument that there is no common law commercial activity exception, Dkt. 165-3 at 12 n. 5, and newly objects that such an exception applies only to "foreign state instrumentalities, not officials." Mot. at 6. But there is no support for his position and regardless, the Court need not reach the commercial activity exception at all because Mr. Al-Rumayyan should not be subject to conduct-based immunity to begin with.

To establish entitlement to conduct-based immunity, Mr. Al-Rumayyan must show that enforcement of the subpoena will "enforce a rule of law against the state." *Dogan v. Barak*, 932 F.3d 888, 893-94 (9th Cir. 2019). He has not. Subpoenas meet this requirement when they relate "solely to political acts that implicate [a nation's] diplomatic relations with other nations" and could be used "to pass judgment on the propriety of [a nation's] actions," *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 280 (S.D.N.Y. 2015); Order at 30. Here, far from "political

acts" implicating "diplomatic relations," the subpoenas seek information about the ***establishment of a golf league***, an obviously commercial act that any sufficiently wealthy private person or entity could undertake. Indeed, PIF and Mr. Al-Rumayyan's new expert declaration, though improperly submitted, underscores the extent to which PIF is an economic actor. *See, e.g.,* Dkt. 306-1 at ¶ 19 (describing PIF's directions to build "deep connections with top-tier international investors and partners" and expand "its investments to North America, Asia, Latin America, and Africa"). Mr. Al-Rumayyan should not be permitted to use PIF's near limitless funds to participate in, and disrupt, U.S. markets, only to turn around and hide behind its status as a sovereign wealth fund when those commercial investments result in litigation that he authorized.

Even if Mr. Al-Rumayyan is subject to conduct-based immunity, Judge van Keulen correctly held that he is not immune under the common law commercial activity exception. Where "an instrumentality of a sovereign is not entitled to immunity," as PIF is not, "an agent, acting on that sovereign's behalf, cannot be entitled to immunity." *U.S. v. Cordones*, 2022 WL 815229, at *5 (S.D.N.Y. Mar. 17, 2022). The sole case Mr. Al-Rumayyan cites in support of his attempt to carve out conduct-based foreign official immunity from the commercial activity exception is *Weiming Chen v. Ying-Jeou Ma*, which considered the immunity of a ***sitting head of state***. 2013 WL 4437607, at *4 (S.D.N.Y. Aug. 19, 2013). But head-of-state immunity (which Mr. Al-Rumayyan does not and cannot claim) is status-based, and subject to different exceptions than the conduct-based immunity he claims. *See Samantar v. Yousuf*, 560 U.S. at 305, 322 n. 15 (2010). Moreover, the language Mr. Al-Rumayyan quotes from *Weiming Chen* is not from that court at all, but from an amicus brief of the United States suggesting immunity in a different case. *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 160 (2d Cir. 2007). Notably, Mr. Al-Rumayyan has not obtained a suggestion of immunity from the State Department in this case. *See* Order at 28.

### C. The Court has personal jurisdiction over PIF and Mr. Al-Rumayyan.

After examining the extensive record, the Order concluded that "by their own direct contacts, PIF and Mr. Al-Rumayyan purposefully directed their activities at the United States." Order at 39. It then found that "the claims and counterclaim in this case 'arise out of or relate to' the contacts between PIF, Mr. Al-Rumayyan, and the United States." *Id.* Finally, the Order found

9

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

that PIF and Mr. Al-Rumayyan "have not carried their burden of making a 'compelling case' that the exercise of personal jurisdiction over them would be unreasonable." *Id.* at 44. PIF and Mr. Al-Rumayyan have not meaningfully challenged the Order's findings, and their new evidence to support their comity claims is improper and irrelevant in any event.

> 1. **PIF and Mr. Al-Rumayyan have minimum contacts with the United States that relate to the claims and counterclaim in this case.**

PIF and Mr. Al-Rumayyan's half-page challenge to the Order's findings on "minimum contacts" rests on arguments already repeatedly rejected by the Order's thorough analysis. *See, e.g.*, Mot. at 7 ("Looking solely at PIF's own conduct, the founding and funding of LIV—through two intermediary entities—are not sufficient contacts for specific jurisdiction as to PIF."); Order at 37 ("[P]ersonal jurisdiction here is not based on PIF's contacts with [LIV]. It is instead **based on PIF's own activities.**") (emphasis added).

Contrary to PIF and Mr. Al-Rumayyan's assertion that the Order "supplies no analysis" to support its findings of purposeful availment, Mot. at 7, the Order thoroughly addresses purposeful availment and cites evidence of PIF and Mr. Al-Rumayyan's "extensive activities . . . in founding, funding, overseeing, and operating LIV." Order at 36. Indeed, PIF's stated purpose for founding LIV was to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮—the core issues in this antitrust case. *Id.* at 36-37 (citing Dkt. 168-1 at PDF p. 26).

Judge van Keulen also found that "Mr. Al-Rumayyan was personally involved in and himself carried out many of PIF's activities in connection with the establishment, funding, oversight, and operation of LIV . . . in the United States." Order at 38. He personally ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Order at 36; 168-20; 168-14; 168-17 & 168-38 168-18 & 168-19. These contacts relate to the issues raised in LIV's claims, including its ability to compete in the alleged market for player services, as well as the TOUR's tortious interference and inducement of breach counterclaims. Mr. Al-Rumayyan also personally ▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. 168-21, 168-22, 168-23, 168-33, 168-34, 168-35. These contacts are also relevant to LIV's claim that the TOUR prevented

10
PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

LIV "from contracting with agencies, vendors, sponsors, advertisers and players needed to offer an elite professional golf entertainment product." See Dkt. 83 ¶¶ 314, 322, 333. In addition, PIF ███████████████████████████████████████████████████████████████████ See Dkt. 168-1 at PDF p. 4; Dkt. 168-24; 168-25; 169-3, Ex. 40 at 30; Dkt. 168-5, 168-26, 168-27, 168-28, 168-29, 168-30.

### 2. The Court's exercise of jurisdiction is reasonable.

Judge van Keulen correctly determined that PIF and Mr. Al-Rumayyan did not "present a compelling case" that exercising jurisdiction would be unreasonable. Order at 44. Indeed, PIF and Mr. Al-Rumayyan cite no case—and the TOUR has located no case—where a court determined the commercial activity exception to apply but then rejected jurisdiction on comity grounds. This case should not be the first. As the Order found, the information sought by the subpoenas "is directly relevant and not available elsewhere," does not "involve matters of national security or other information the disclosure of which would adversely affect Saudi Arabia," and would advance the interests of the United States in ensuring that its courts are able to adjudicate its controversies. *See* Order at 42-44 (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992)). None of PIF and Mr. Al-Rumayyan's arguments show that these findings were "clearly erroneous" or "contrary to law." *See* Fed. R. Civ. P 72(a).

*First,* Judge van Keulen did not abuse her discretion by excluding PIF and Mr. Al-Rumayyan's late evidence on Saudi law. Rule 44.1, which pertains only to "notice" of a party's intention "to raise an issue about" foreign law, is beside the point because Judge van Keulen did not deny their request to introduce additional evidence of Saudi law—submitted four days before the hearing— based on a lack of notice but on unjustified delay. *See* Hr'g Tr. at 12:14-24, Jan. 13, 2023, Dkt. 221 ("The impact of Saudi law is not new. It's something that has . . . been pending for a couple of months now. . . [T]here was ample time to raise any additional evidence."). PIF and Mr. Al-Rumayyan were first served with the TOUR's motion to compel on October 22, 2022, and concede that they should have submitted foreign law when they "raised key issues of Saudi law with their opening Motion to Quash." *See* Mot. at 8. In any event, Judge van Keulen did not need to accept the belatedly-proffered evidence because she "accept[ed], for purposes of the

11

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

present motions, the contention . . . that PIF's governing law and Saudi law prohibit disclosure of the information sought," before still concluding "PIF and Mr. Al-Rumayyan have not established that international comity concerns should prevent the Court from ordering them to comply with PGA's subpoenas." Order at 41, 44.

***Second,*** the Court should disregard PIF and Mr. Al-Rumayyan's expert declaration because this new evidence is improper and irrelevant. This Court already indicated that it does not "generally accept additional evidence on an appeal and objections to the magistrate judge's order." Hr'g Tr. at 37:24-38:1, Feb. 24, 2023, Dkt. 298.; *see also Kumandan*, 2022 WL 4282622, at *2 (rejecting the non-party's "improper invitation to grant relief from Judge van Keulen's order based on evidence that was not before her").

Even if the Court were to consider PIF and Mr. Al-Rumayyan's new evidence, it does not carry their burden as the parties "relying on foreign law . . . of showing that such law bars production." *See U.S. v. Vetco Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981). Their expert does "not express any views" as to whether any of the specific documents or testimony at issue is ***actually*** confidential. Dkt. 306-1 ¶ 41. He does not explain how disclosure of communications with golfers, agents, broadcasters, and sponsors regarding a U.S.-incorporated golf tour would "adversely affect Saudi Arabia" or implicate "matters of national security," particularly when "PIF itself attempts to portray [the information as stemming from] typical investor activities." *See* Order at 43 (cleaned up). Nor does he "explain how documents produced under an appropriate protective order would impinge on [Saudi Arabia's] interests in secrecy." *See In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 379 (C.D. Cal. 2002); *see also* Order at 43 (same). He also admits that he could find scant evidence that the KSA enforces the confidentiality laws he cites. Dkt. 306-1 ¶ 32. So even with the benefit of four additional months to prepare an expert declaration, PIF and Mr. Al-Rumayyan have still not shown that complying with the TOUR's subpoenas would threaten the KSA's interests.

The KSA's amicus brief is even less relevant to the comity analysis. Apparently responding to the Order's observation that PIF and Mr. Al-Rumayyan had not "presented evidence that Saudi Arabia has expressed an interest in the outcome of the current disputes,"

Order at 42-43, the KSA submitted an amicus brief in support of PIF and Mr. Al-Rumayyan. Yet the KSA **still does not** express an interest in the outcome of the current disputes. *See* Dkt. 313. Instead, it devotes its brief to the new legal argument that "private foreign entities and 'foreign nationals are beyond the court's subpoena power.'" *Id.* at 2. This argument is both wrong and at odds with PIF and Mr. Al-Rumayyan's own position. A court's authority to enforce a Rule 45 subpoena against a foreign entity is simply a matter of personal jurisdiction. *SiteLock, LLC v. GoDaddy.com*, LLC, 338 F.R.D. 146, 152 (D. Or. 2021). And even PIF and Mr. Al-Rumayyan refused to "say[] categorically" that the FSIA's commercial activity exception could never apply to a third party. Hr'g Tr. at 50:23-25, Jan. 13, 2023, Dkt. 221.

**Third,** if the Court is inclined to consider PIF and Mr. Al-Rumayyan's additional evidence, it should also consider recent evidence contradicting their claims regarding PIF's commercial activities and the confidentiality of its information. To begin, PIF has taken inconsistent positions regarding whether it is a sovereign instrumentality of the KSA. When PIF sought to buy English Premier League soccer club Newcastle United, it gave "legally binding assurances that the Kingdom of Saudi Arabia will not control" the team. *Premier League Club Newcastle Bought by Saudi Sovereign Fund*, https://apnews.com/article/soccer-sports-business-premier-league-europe-2c3f7739fb40c13637993ee6efdb9ea5 (last visited Mar. 9, 2023). Based on these assurances, PIF's ownership was approved under the theory that "there was sufficient separation between PIF and the Saudi state." *Id.* This claim is, of course, the opposite of PIF and Mr. Al-Rumayyan's position here that "PIF is a part of the government of Saudi Arabia." Mot. at 10. It thus appears that PIF will cast its relationship to the KSA in whatever light is most expedient for its commercial aims.

Moreover, when it benefits PIF's interests, PIF has "not object[ed] to the voluntary disclosure of [the type of] information [sought here]. It is only now, when disclosure [is involuntarily commanded by litigation], that [PIF] has asserted its interest in confidentiality." *Richmark*, 959 F.2d at 1476. For example, PIF voluntarily disclosed documents and information about its internal deliberations when one of its wholly owned subsidiary corporations filed a lawsuit in the United States. *See* Notice of Removal, *Sakab Saudi Holding Co. v. Aljabri*, 21-cv-

13

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299

10529-NMG (D. Mass. Mar. 29, 2021) Dkt. 1. In that case, the PIF subsidiary sued a "political rival" of the current KSA regime, *id.* at 2 ¶ 1, in Massachusetts state court for alleged financial misconduct, *see id.* at Ex. 3 ¶¶ 14-15, Dkt. 1-3. During that lawsuit, PIF and its subsidiary disclosed due diligence and audit reports describing PIF's "process of assuming" ownership of a company and detailed financial transactions between PIF and the defendant. *Id.* ¶¶ 56-57, Ex. 5 at 107, Dkt. 1-5, Ex. 4 at 23, 153, 200, Dkt. 1-4. PIF cannot immunize itself from unwanted discovery in this case based on the claim that "records of PIF . . . must remain confidential and cannot be disclosed," Mot. at 10, but willingly disclose similar information in other litigation when doing so suits its interests.

***Finally***, PIF and Mr. Al-Rumayyan's few legal arguments are unavailing. PIF and Mr. Al-Rumayyan's attempt to distinguish foreign non-parties from foreign parties is unconvincing because the United States "has a substantial interest in fully and fairly adjudicating matters before its courts, which is only possible with complete discovery," regardless of whether the foreign entity is a non-party. *See Consejo de Defensa del Estado de la Rep. de Chile v. Espirito Santo Bank,* 2010 WL 2162868, at *2 (S.D. Fla. May 26, 2010). Their argument about the possibility of criminal prosecution also fails because when "the hardship [of a risk of criminal prosecution] is self-imposed, or if [they] could have avoided it, the fact that [they] find[] [themselves] in an undesirable position will not work against disclosure of the requested information." *See Richmark*, 959 F.2d at 1477. In other words, PIF and Mr. Al-Rumayyan cannot hide critical evidence from the TOUR based on the ostensible fear of prosecution when they voluntarily put themselves in this position by engaging in extensive commercial activity in the United States and then orchestrating and approving this litigation filed by their own lawyers for their benefit. *See* Order at 44; *see also Richmark*, 959 F.2d at 1478–79 (foreign entity "undertook an obligation to comply with the lawful orders of United States courts" when it "availed itself of business opportunities in this country"). As LIV's founders, funders, and operators, PIF and Mr. Al-Rumayyan had every opportunity to avoid "having to violate either the district court's orders or the [KSA's] laws." *Richmark*, 959 F.2d at 1477 (ordering disclosure despite risk of criminal prosecution because foreign party could take steps to avoid the situation).

### D. The Court extensively scrutinized the need for discovery.

LIV's objection that the Order fails to account for the necessity of discovery from PIF and Mr. Al-Rumayyan, Mot. at 12-13, flies in the face of the Order itself. Judge van Keulen made detailed factual findings regarding the centrality of PIF and Mr. Al-Rumayyan to both LIV's claims and the TOUR's counterclaim. She found that discovery from PIF and Mr. Al-Rumayyan was necessary specifically because "LIV does not have access to all of the same information and documents as PIF and Mr. [Al-]Rumayyan." Order at 42. And she went so far as to line-edit the TOUR's RFPs. *Id.* at Ex. A. It is difficult to imagine how the Order could have more closely scrutinized and finely tailored the requested discovery.

### E. PIF and Mr. Al-Rumayyan have been properly served.

Despite Judge van Keulen's Order that the TOUR's amended subpoenas were "not subject to further objection," Order at 55, PIF and Mr. Al-Rumayyan appear to object to service on the grounds that their earlier agreement to accept service has expired. But there is no question that they have been properly served with the amended subpoenas. Counsel for PIF and Mr. Al-Rumayyan accepted service of the original subpoenas, and Judge van Keulen properly held that the amended subpoenas—just narrower versions of the original subpoenas—could be served under the parties' agreement. *Id.* at 58. Even aside from the service agreement, PIF and Mr. Al-Rumayyan's counsel have appeared in this action and *specifically requested* on behalf of their clients to be served with "all pleadings and notices" in this case. *See* Dkt. 212. Accordingly, on February 16, 2023, the TOUR served the amended subpoenas on PIF and Mr. Al-Rumayyan's counsel via email and FedEx. Their frivolous objection to service is further evidence that PIF and Mr. Al-Rumayyan—the actual authority behind LIV's lawsuit—are more interested in concealing evidence about their conduct than resolving this case on the merits.

### V. CONCLUSION

For the foregoing reasons, the TOUR respectfully requests that the Court deny PIF and Mr. Al-Rumayyan's motion for relief from Judge van Keulen's Order.

| | |
|---|---|
| Dated: March 10, 2023 | KEKER, VAN NEST & PETERS LLP |
| | By:  */s/ Elliot R. Peters* |
| | ELLIOT R. PETERS |
| | DAVID SILBERT |
| | R. ADAM LAURIDSEN |
| | NICHOLAS S. GOLDBERG |
| | SOPHIE HOOD |
| | |
| | Attorneys for Defendant and Counter-Claimant |
| | PGA TOUR, INC. |
| | |
| | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | |
| | ANTHONY J. DREYER |
| | PATRICK FITZGERALD |
| | KAREN M. LENT |
| | MATTHEW M. MARTINO |
| | |
| | Attorneys for Defendant and Counter-Claimant |
| | PGA TOUR, INC. |

16

PGA TOUR INC.'S OPPOSITION MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 5:22-CV-04486-BLF (SVK)

2099299