| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>ELLIOT R. PETERS - # 158708<br>epeters@keker.com<br>DAVID SILBERT - # 173128<br>dsilbert@keker.com<br>R. ADAM LAURIDSEN - # 243780<br>alauridsen@keker.com<br>NICHOLAS S. GOLDBERG - # 273614<br>ngoldberg@keker.com<br>SOPHIE HOOD - # 295881<br>shood@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: 415 391 5400<br>Facsimile: 415 397 7188 | SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>ANTHONY J. DREYER - (*pro hac vice*)<br>anthony.dreyer@skadden.com<br>KAREN M. LENT - (*pro hac vice*)<br>karen.lent@skadden.com<br>MATTHEW M. MARTINO - (*pro hac vice*)<br>matthew.martino@skadden.com<br>One Manhattan West<br>New York, NY 10001<br>Telephone: 212 735 3000<br>Facsimile: 212 735 2000<br><br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>PATRICK FITZGERALD - (*pro hac vice*)<br>patrick.fitzgerald@skadden.com<br>155 North Wacker Drive<br>Chicago, Il 60606<br>Telephone: 312 407 0700<br>Facsimile: 312 407 0411 |

Attorneys for Defendant and Counter-Claimant PGA TOUR, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU;<br>PETER UIHLEIN; and LIV GOLF, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>PGA TOUR, INC.,<br><br>        Defendant.<br><br>PGA TOUR, INC.,<br><br>        Counter-Claimant,<br><br>        v.<br><br>LIV GOLF, INC., THE PUBLIC<br>INVESTMENT FUND OF THE KINGDOM<br>OF SAUDI ARABIA, AND YASIR<br>OTHMAN AL-RUMAYYAN,<br><br>        Counter-Defendants. | Case No. 5:22-CV-04486-BLF (SVK)<br><br>**JOINT STATEMENT REGARDING DEPOSITION OF THIERRY PASCAL, NOTICED FOR MONDAY MARCH 27, 2023, IN LONDON, UNITED KINGDOM**<br><br>Judge: Hon. Susan van Keulen<br>Dept: Courtroom 6, 4th Floor<br><br>Date Filed: August 3, 2022<br><br>Trial Date: January 8, 2024 |

Defendant and Counter-Claimant PGA TOUR, Inc. ("the TOUR"), Plaintiff and Counter-Defendant LIV Golf, Inc., and Player Plaintiffs Matthew Jones, Bryson DeChambeau, and Peter Uihlein submit this joint statement pursuant to Paragraph 8 of the Court's Civil & Discovery Referral Matters Standing Order. Plaintiffs have noticed the deposition of TOUR employee Thierry Pascal for March 27 in London, England. The parties dispute the timing and location of Mr. Pascal's deposition and seek the Court's guidance. Counsel for the TOUR and Plaintiffs have met and conferred by video conference and through written correspondence but were unable to reach agreement. There are 70 days remaining until the close of fact witness depositions on May 31, 2023. Trial is set for January 8, 2024.

I.   **THE TOUR'S POSITION**

*Introduction*. Pursuant to FRCP 26(c), the TOUR seeks a protective order to reschedule the deposition of TOUR witness, Thierry Pascal, for a mutually convenient date and location. On March 17, Plaintiffs served a deposition notice purporting to notice Mr. Pascal's deposition in person on March 27 in London, England, despite the TOUR previously informing Plaintiffs that Mr. Pascal would only be available for a remote deposition on that date. The TOUR's counsel is unavailable to attend an in-person deposition in London on March 27. The TOUR has provided Plaintiffs with *seven* alternative dates that Mr. Pascal and the TOUR's counsel are available for an in-person deposition, offering locations in Florida and London. Plaintiffs have rejected each of those dates and insisted that Mr. Pascal's deposition go forward in person before an arbitrary deadline of April 5. Plaintiffs have offered no legitimate reason for why Mr. Pascal must be deposed by that date—and there is none. Document discovery is ongoing; there is still more than two months left before the fact deposition cutoff; and several other witnesses will be deposed in England in May. If Plaintiffs wish to depose Mr. Pascal before April 5, they are free to take his deposition remotely on March 27. Or they could agree to depose Mr. Pascal in London in May during the same period they have offered their own Europe-based witnesses. What Plaintiffs cannot do is unilaterally notice Mr. Pascal's deposition for a location more than 5,000 miles away on just six business days' notice, on a date they know the TOUR's counsel cannot attend in person. The Court should thus grant the TOUR's motion for a protective order.

***Background***. In seeking to depose Mr. Pascal, Plaintiffs have repeatedly served unilateral deposition notices without meeting and conferring in advance regarding the date and location of the deposition. Plaintiffs served their first deposition notice on March 6, without meeting and conferring, noticing Mr. Pascal's deposition for March 30 in San Francisco. The TOUR informed Plaintiffs that their unilateral deposition notice was improper because they failed to meet and confer in advance as required by the Local Rules and the noticed date was unworkable for the witness and counsel. *See* N.D. Cal. L.R. 30-1 (requiring parties to confer in advance about deposition scheduling "[f]or the convenience of witnesses, counsel, and the parties").

Plaintiffs then demanded that the TOUR offer dates for Mr. Pascal's deposition to occur before the end of March. The TOUR offered March 27 as an available date but made clear that Mr. Pascal was available on that date *only* for a remote deposition. On March 16, the TOUR reiterated that Mr. Pascal was only available on March 27 via remote deposition and that there was no reason for the parties to send lawyers to London to take and defend a single witness's deposition that Plaintiffs stated would take only two hours. To facilitate the efficient scheduling of both sides' witnesses located in Europe, the TOUR proposed to meet and confer with Plaintiffs to schedule both sides' European witnesses for in-person depositions during a mutually convenient week in London. Plaintiffs did not accept the TOUR's offer.

Instead, on the afternoon of Friday, March 17, without meeting and conferring, Plaintiffs served an Amended Deposition Notice accepting the date of March 27, but then purporting to unilaterally change the deposition to in person in London on six business days' notice. *See* Ex. A. The next business day, March 20, the TOUR objected to Plaintiffs' Amended Deposition Notice and again informed Plaintiffs that Mr. Pascal was only available remotely on March 27. The TOUR again invited Plaintiffs to meet and confer about mutually convenient dates for in-person depositions of both sides' European witnesses. Plaintiffs yet again declined to meet and confer. Instead, Plaintiffs responded with an ultimatum: Plaintiffs stated that the TOUR was required to either: (1) make Mr. Pascal available for an in-person deposition in London on March 27, even if the TOUR's counsel could not attend the deposition in person; or (2) if the TOUR did not agree to do so, Plaintiffs would take Mr. Pascal's deposition remotely on March 27, and then seek

sanctions against the TOUR, including seeking to reopen his deposition and monetary sanctions.

The TOUR again encouraged Plaintiffs to meet and confer to schedule Mr. Pascal's in-person deposition on a mutually convenient date. To that end, on March 21, the TOUR offered Plaintiffs seven additional dates on which Mr. Pascal and the TOUR's counsel are available for deposition during the discovery period—May 11 or 12 in Ponte Vedra, Florida (the location of the TOUR's headquarters), or May 15–19 in London, England. Plaintiffs rejected these dates, instead insisting that the TOUR produce Mr. Pascal before an arbitrary deadline of April 5, necessitating this motion for a protective order.

***There is Good Cause for a Protective Order***. Federal Rule of Civil Procedure 26 provides that a court may, "for good cause," issue an order to protect a party subject to discovery "from annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding the requested discovery or specifying the terms. Fed. R. Civ. P. 26(c)(1). Rule 26(c) was enacted to protect parties and witnesses in view of Rule 26(b)'s discovery rights. 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2036, at 267. Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). This includes "broad discretion" over the "timing of discovery," including depositions. *Vineberg v. Bissonnette*, 548 F.3d 50, 54 (1st Cir. 2008); *see also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming trial court's issuance of a protective order permitting postponement of a witness's deposition). Good cause exists to issue a protective order when "the party seeking protection [would suffer] specific prejudice or harm . . . if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

There is good cause for the Court to enter a protective order for four reasons:

*First*, the TOUR's counsel is unavailable to attend a deposition in person in London on March 27. Plaintiffs noticed Mr. Pascal's deposition to take place in London on just six business days' notice despite having been informed that Mr. Pascal and the TOUR's counsel were *only* available for a remote deposition on that date. Thus, a protective order is appropriate because the TOUR's counsel is not "available on the noticed days, and the relief requested is necessary to

avoid sanctions for failure to appear" at the deposition. *See Hernandez v. Cnty. of Riverside*, 2022 WL 18278627, at *1–2 (C.D. Cal. Aug. 19, 2022) (granting protective order from unilateral subpoenas and ordering the parties to "meet and confer regarding alternative deposition dates"). Moreover, Plaintiffs' deposition notice setting an international location for Mr. Pascal's deposition violated Local Rule 30-1 and the District's Guidelines for Professional Conduct, which require Plaintiffs to meet and confer with the TOUR in advance of serving their deposition notice. Courts routinely grant protective orders or quash depositions that fail this requirement. *See, e.g.*, *Rockwell v. Air & Liquid Sys. Corp.*, 2021 WL 4459663, at *3 (C.D. Cal. July 3, 2021) (granting motion to quash "unilaterally noticed" deposition and ordering the parties "to *fully* meet and confer"). Courts in this district have admonished parties that failing to meet and confer, as required by Local Rule 30-1, before serving deposition notices "may result in sanctions." *Russell v. Maman*, 2020 WL 5943844, at *4, n.7 (N.D. Cal. Oct. 7, 2020).

*Second*, there is ample time in the fact discovery period for Plaintiffs to depose Mr. Pascal in person on a mutually convenient date. The TOUR has offered Plaintiffs **seven** alternative dates for Mr. Pascal's in-person deposition—in Florida and in London—prior to the fact deposition cutoff. Plaintiffs have rejected each of these alternative dates out of hand, instead demanding an in-person deposition before an arbitrary April 5 deadline. But "[t]here is no legal precedent giving a party the right to demand discovery in a certain order" because the "Federal Rules of Civil Procedure do not permit a party to make unilateral decisions regarding the sequence and timing of depositions during discovery." *Id.* at *4. Plaintiffs have offered no legitimate reason why Mr. Pascal's deposition must occur on March 27, or before April 5. Document discovery is still ongoing and will not be completed until March 30. The parties are still meeting and conferring to set a schedule for the depositions of both sides' witnesses. And the parties and their counsel should not be forced to travel internationally on short notice for a single deposition that Plaintiffs have estimated will last two hours. It would be more efficient to cluster the depositions of both sides' witnesses based in Europe so that those depositions occur around the same time and to limit unnecessary international travel back and forth. Indeed, Plaintiffs have already proposed to cluster the depositions of their own witnesses, including their witnesses based in Europe, in May,

so they cannot argue that they would be prejudiced by deposing Mr. Pascal around the same time.

*Third*, if Plaintiffs wish to depose Mr. Pascal before April 5, they are free to do so remotely on March 27, as the TOUR originally proposed. Under FRCP 30(b)(4), the parties may stipulate, or the Court may order, "that a deposition be taken by telephone or other remote means." Plaintiffs have argued that the TOUR cannot force them to take Mr. Pascal's deposition remotely, but that is a red herring. The TOUR's counsel is not available to attend a deposition in London on March 27, and Plaintiffs cannot force the TOUR to participate in the deposition remotely any more than the TOUR can force Plaintiffs to do so. It would be inconsistent with the FRCP and unfair to allow Plaintiffs to sit in the same room with the TOUR's fact witness to take his deposition in person, while the TOUR's counsel is forced to defend the deposition remotely in a different time zone. Such an arrangement would prejudice the TOUR's defense of the deposition, and there is no reason for such inequity when the TOUR has provided *seven* available dates for an in-person deposition.

*Finally*, if Plaintiffs proceed with Mr. Pascal's deposition under the cloud of their baseless claim for sanctions while this dispute is pending, they must be precluded from using the deposition against the TOUR. "A deposition *must not* be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place—and this motion was still pending when the deposition was taken." Fed. R. Civ. P. 32(a)(5)(A) (emphasis added). This "prohibition on testimony obtained from a deposition on short notice is mandatory." *See Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2020 WL 2841517, at *7 (D. Idaho June 1, 2020); *Automated Transactions LLC v. First Niagara Fin. Grp., Inc.*, 2011 WL 13213256, at *2 (W.D.N.Y. May 10, 2011). Here, the TOUR received less than 14 days' notice because Plaintiffs did not notice Mr. Pascal's deposition for London until March 17—ten calendar days and six business days before the noticed date of March 27. Plaintiffs cannot rely on their original March 6 notice to excuse their compliance with the rule because that notice set the deposition location for **San Francisco** on a **different date**. They did not set the deposition location for London until they served the amended notice on March 17. Accordingly, if Plaintiffs

proceed with Mr. Pascal's deposition while this motion is pending, the "deposition must not be used against" the TOUR. Fed. R. Civ. P. 32(a)(5)(A).

***Conclusion***. The TOUR respectfully requests that the Court enter a protective order quashing Plaintiffs' Amended Deposition Notice and ordering Plaintiffs to meet and confer regarding a mutually convenient date and location for Mr. Pascal's deposition. If the TOUR's request for a protective order is pending and Plaintiffs proceed with Mr. Pascal's deposition on March 27, the Court must preclude Plaintiffs from using the deposition against the TOUR.

## II.     LIV'S POSITION

**<u>Mr. Pascal is an important and foundational witness.</u>**  Mr. Pascal, based in London, is a Senior Vice President International Media for the PGA Tour International.  After communication between the parties, LIV and the Tour *agreed* that Mr. Pascal would appear for deposition on Monday, March 27, 2023, though the Tour stated the deposition would be remote.  LIV promptly notified the Tour that because Mr. Pascal's deposition would be a trial deposition, LIV would take the deposition live in London, where Mr. Pascal offices (and where he will be on March 27th), consistent with the presumption of Federal Rule 34(b)(4).  Based on Tour documents and other sources, LIV believes Mr. Pascal used illegal means to dissuade numerous broadcasters in international markets from signing broadcast contracts with LIV and even from reporting about LIV events in their news content.  His typical *modus operandi* was to communicate by email or text the Tour's concern to the broadcaster about its negotiation with LIV then request a live meeting or phone call, so as to leave fewer documentary traces of his conduct.  Time and again, after the live meeting or phone call, the broadcaster did an about face and informed LIV the negotiations (in one case, a signed contract) could not proceed.  Because of his conduct and his efforts to conceal it, Mr. Pascal is a *foundational* witness whose testimony will inform later discovery in important ways.

**<u>LIV accommodated the Tour's scheduling requests.</u>**  LIV assiduously accommodated the Tour in scheduling Mr. Pascal's deposition.  In return, the Tour played cat-and-mouse.  The Tour's generalities to the contrary and its bewildering assertion that LIV failed to meet-and-confer simply ignore the following facts, including that the March 27th date was selected by *the Tour*.

On February 14, 2023, LIV emailed the Tour a list of 28 witnesses for which it sought dates, identifying seven (including Mr. Pascal) for which it sought dates in the second half of March. The Tour offered no dates, insisting instead it needed PIF and HE discovery before it would schedule depositions. At the February 24th CMC, the Court indicated the parties should begin deposition discovery irrespective of the PIF and HE discovery dispute. That day, LIV asked the Tour to provide dates in light of the Court's guidance. On March 1, the Tour emailed LIV witnesses it wanted to depose but provided no dates for its own. LIV again requested dates. On March 3, the Tour finally provided dates for six witnesses, including Mr. Pascal, in late April or May. On March 6, LIV served deposition notices for those witnesses in late March, including Mr. Pascal for March 30th (for a live deposition at counsel's office in San Francisco), explaining it could not wait until late April or May to begin depositions, and offering to work with the Tour on convenient dates. On March 10, the Tour offered three dates for Mr. Pascal, *including* March 27. On March 13, LIV requested the location for Mr. Pascal's deposition. On March 15, the Tour indicated Mr. Pascal's deposition would be remote. That day, LIV emailed the Tour that it would likely insist taking Mr. Pascal live. The Tour responded that Mr. Pascal was only available remotely. The following day, LIV asked the Tour if it had case authority that it could insist on presenting a witness remotely, and served a notice for Mr. Pascal's live deposition for March 27th, *a date the Tour requested*, in London. Having no response by March 19, LIV emailed the Tour, again asking for authority that it could insist on presenting a witness remotely. The Tour has never provided any such authority.

**LIV offered seven dates to accommodate the Tour.** The Tour has indicated March 27th is convenient for Mr. Pascal, who will be in London. In a further effort to accommodate counsel, LIV offered to take Mr. Pascal's deposition *any* business day between March 27 and April 4.

**The Tour has not explained why it is inconvenient for its counsel to attend live.** In the extensive email exchange, the Tour has failed to explain why it is inconvenient for its counsel to attend the deposition live. Twenty-seven counsel have appeared for the Tour on the pleadings. Per its website, Skadden's London office has over 230 attorneys, so should the Tour choose to defend remotely, it surely could have an attorney from that office attend live as an observer.

**LIV has a legitimate need to take Mr. Pascal's deposition live early in discovery.** Taking Mr. Pascal's deposition live early in discovery importantly furthers four distinct goals. *First*, given Mr. Pascal's resides and offices in London, LIV plans to take his deposition as a trial deposition. Live depositions are strongly favored for trial depositions, given the importance of demeanor. *See JUUL Labs Inc. v. Chou*, 2022 WL 2165411, at *3 (C.D. Cal. Feb. 11, 2022). *Second*, deposition discovery, scheduled to end by May 26th, will not work if the Tour shoves all depositions into late April or May.[1] *Third*, given Mr. Pascal's conduct and efforts to conceal it, LIV needs to take his deposition at the outset to understand the scope of his anticompetitive conduct and the parties it affected so as to efficiently plan remaining discovery. *Fourth*, the Tour has made plain that it will request the Court stay proceedings in this matter at the April 7th CMC in the event PIF and HE appeal to the Ninth Circuit should Judge Freeman affirm this Court's discovery order. Mr. Pascal's deposition will significantly enhance Judge Freeman's insight into the harm to competition and the public interest implicated by the Tour's abuse of monopoly power, a necessary input to the Court's balancing of interests in deciding a stay; Mr. Pascal's deposition could provide important evidence to Her Honor. For example, due to the Tour's and Mr. Pascal's conduct, LIV did not obtain a domestic broadcast contract for 2022 and only isolated and marginal international contracts; the domestic contract it finally signed for 2023 is with a secondary network, with LIV being its *first* sporting event. The Tour has touted LIV's ratings as demonstrating the public is not interested in its product. LIV needs to take Mr. Pascal's deposition to get to the truth in the interest of justice, the principle behind the Federal Rules. *See* Fed. R. Civ. P. 1.

**The Federal Rules as well as proper case management support ordering Mr. Pascal to appear for a live deposition on any of the nine dates LIV has offered.**

As shown *supra* at 7:1 to 7:20, although a March 27th deposition in London is convenient to the witness and LIV, the Tour was under the misimpression that it, the party presenting the witness, could unilaterally demand that the deposition be virtual. Blackletter law is the reverse.

---

[1] The Tour may argue that LIV seeks a one-way street, and has not provided dates in April for its own witnesses. Not true. The Tour requested six witnesses for mid-April deposition. LIV provided dates for three. Two of the others are LIV golfers who are not available, the third LIV's Chief Tournament officer, will be directing operations at foreign LIV events in mid-April.

"The parties may stipulate – or the court may on a motion order – that a deposition be taken by . . . remote means." Fed. Rule Civ. P. 30(b)(4).  On its face, the Rule does not allow a remote deposition to take place without a parties' stipulation or court order.  Rather, "parties seeking a remote deposition pursuant to Rule 30(b)(4) must first establish a legitimate reason" for doing it remotely. *JUUL Labs, supra,* 2022 WL 2165411, at *3.  Then, "[t]he burden shifts to the opposing party to show prejudice if the motion is granted." *Id*.  Here, the Tour has simply asserted, with no explanation, that somehow all its 27 US lawyers on the case and Skadden's 230 lawyers in London cannot somehow together cover the deposition live.  The Tour has made no "show[ing]" whatever.

Since the COVID-19 pandemic abated, courts have often ordered depositions to proceed in person absent party agreement.  *See, e.g., Wag Hotels, Inc. v. Wag Labs, Inc.*, 2022 WL 4133297, at *2-3 (N.D. Cal. Sept. 12, 2022).  This is especially true where, as here, (1) witness credibility was a central issue in a trial deposition, and (2) there was a "high level of distrust among all parties." *Juul Labs*, 2022 WL 2165411, at *6; *Pruco Life Ins. Co. v. Cal. Energy Dev. Inc.*, 2021 WL 5043289, at *3 (S.D. Cal. Oct. 29, 2021); *see also id.* (listing pre-COVID cases).

**None of the Tour's legal arguments has merit.**  In meet-and-confer email exchanges leading to this Joint Statement, the Tour identified a series of justifications for the deposition not proceeding live on March 27th (or any business day between March 27 and April 4).  None has merit.

The Tour's opening position was it could unilaterally insist on a remote deposition.  The law is the reverse. *See supra* 8:23 to 9:14.

The Tour asserted that LIV's notice was invalid under Rule 28(b)(1).  In fact, LIV's notice complied with Rule 28(b)(1)(A) and (C).  Sub-section A requires a treaty authorizing the deposition; here, the Hague Evidence Convention, to which the US and UK are both signatories, authorizes US style deposition in the UK; sub-section C requires a court reporter authorized to administer the oath and to take the testimony be present, which LIV will arrange.  The elements of Rule 28(b)(1) are in the alternative, so LIV's notice independently satisfied Rule 28(b)(1) twice.

The Tour cited *Russell v. Maman*, 2020 WL 5943844, at *4 (N.D. Cal. Oct. 7, 2020), for the proposition that a party cannot "unilaterally" decide the "sequence and timing" of

deposition. Here, the parties have agreed upon "the sequence and timing" of the deposition.

The Tour cited *Packard v. City of New York*, 326 F.R.D. 66, 69 (S.D.N.Y. 2018) as showing the requirements a party must satisfy for a foreign deposition. In *Packard*, the court allowed the plaintiff, a native of Taiwan, to insist his deposition be taken in Taiwan against the presumption the deposition should proceed as the situs of the lawsuit. There, convenience factors strongly favored Taiwan, including the plaintiff's residence. Here, the witness resides and offices in London and even under the Tour's preferred course, the deposition will go forward there.

The Tour claimed if the deposition goes forward in London on March 27th, it will receive insufficient notice under Rule 32(a)(5)(A). Under that Rule, if a party receives less than 14 days' notice and has a motion for a protective order pending at the time of the deposition, the deposition is inadmissible. But LIV served the subpoena for Mr. Pascal's deposition on March 6 for March 30 (24 days), and changed the date to March 27 (21 days) at the Tour's request. In any event, under the case law, Rule 30(a)(5)(A)'s 14 day requirement does not apply when the date was jointly agreed upon by counsel. *See King v. O'Reilly Auto. Stores, Inc.*, 2013 WL 4511476, at *2 (W.D. Wash. Aug. 22, 2013); *McCoy v. Spidle*, No. CV-07-198-SMM, at *3 (E.D. Cal. June 6, 2011).

The Tour's complaint that LIV did not meet-and-confer before noticing Mr. Pascal's deposition for March 27th blinks reality. *The Tour requested March 27th and LIV accommodated.*

The Tour complained the 9:30 a.m. deposition London time would be highly inconvenient for its California lawyers. LIV accommodated that concern by agreeing the deposition will commence at 4 p.m. London time, 8 a.m. Pacific.

The Federal Rules, case law applying them, sound case management, the convenience of the witness, and exigent public interest, all support moving ahead efficiently with discovery, including with Mr. Pascal's live deposition on March 27th, or any business day between March 27th and April 4th. LIV respectfully requests that this Court so order.

| | | |
|---|---|---|
| Dated:  March 22, 2023 | | KEKER, VAN NEST & PETERS LLP |
| | By: | /s/ Nicholas S. Goldberg |
| | | ELLIOT R. PETERS |
| | | DAVID SILBERT |
| | | R. ADAM LAURIDSEN |
| | | NICHOLAS S. GOLDBERG |
| | | SOPHIE HOOD |

Attorneys for Defendant and Counter-Claimant PGA TOUR, INC.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ANTHONY J. DREYER
PATRICK FITZGERALD
KAREN M. LENT
MATTHEW M. MARTINO

Attorneys for Defendant and Counter-Claimant PGA TOUR, INC.

QUINN EMANUEL URQUHART & SULLIVAN LLP

| | | |
|---|---|---|
| Dated:  March 22, 2023 | By: | /s/ Dominic Surprenant |
| | | JOHN B. QUINN |
| | | ROBERT P. FELDMAN |
| | | DOMINIC SURPRENANT |
| | | KEVIN TERUYA |

GIBSON, DUNN & CRUTCHER LLP

RACHEL S. BRASS
ROBERT C. WALTERS
SCOTT K. HVIDT
JOSHUA LIPTON
KRISTEN C. LIMARZI
LAUREN D. DANSEY

Attorneys for Plaintiffs and Counter-Defendant LIV GOLF, INC., and Plaintiffs MATT JONES, BRYSON DECHAMBEAU, AND PETER UIHLEIN

**ECF ATTESTATION**

Pursuant to Local Rule 5-4.3.4, the filer of this document, Nicholas S. Goldberg, attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: March 22, 2023

KEKER, VAN NEST & PETERS LLP

By: /s/ *Nicholas S. Goldberg*
NICHOLAS S. GOLDBERG

Attorneys for Defendant and Counterclaimant PGA TOUR, INC.