| | |
|---|---|
| RACHEL S. BRASS, SBN 219301<br>  rbrass@gibsondunn.com<br>LAUREN D. DANSEY, SBN 311886<br>  ldansey@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, California 94105-0921<br>Telephone: 415.393.8200<br>Facsimile:  415.393.8306<br><br>ROBERT C. WALTERS, *pro hac vice*<br>  rwalters@gibsondunn.com<br>SCOTT K. HVIDT, *pro hac vice*<br>  shvidt@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201-2911<br>Telephone: 214.698.3100<br><br>JOSHUA LIPTON, *pro hac vice*<br>  jlipton@gibsondunn.com<br>KRISTEN C. LIMARZI, *pro hac vice*<br>  klimarzi@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  20036-5306<br>Telephone: 202.955.8500 | JOHN B. QUINN, SBN 90378<br>  johnquinn@quinnemanuel.com<br>DOMINIC SURPRENANT, SBN 165861<br>  dominicsurprenant@quinnemanuel.com<br>KEVIN TERUYA, SBN 235916<br>  kevinteruya@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: 213.443.3000<br><br>ROBERT P. FELDMAN, SBN 69602<br>  bobfeldman@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, California 94065<br>Telephone:  650.801.5000 |

*Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau, Peter Uihlein, and LIV Golf Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC.,<br><br>            Plaintiffs,<br><br>      v.<br><br>PGA TOUR, INC.,<br><br>            Defendant and Counter-Plaintiff,<br><br>      v.<br><br>LIV GOLF INC.,<br><br>            Counter-Defendant. | CASE  NO. 5:22-cv-04486-BLF-SVK<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Judge: Hon. Beth Labson Freeman<br><br>Date Filed:  August 3, 2022<br><br>Trial Date: January 8, 2024 |

Pursuant to this Court's February 24, 2023 Order, *see* ECF 291, the parties hereby submit the following Joint Case Management Conference Statement.

## I.   PLAINTIFFS' POSITION

The case is proceeding full steam ahead. The parties have substantially completed document discovery; a deposition schedule is set for April and May; third party discovery is proceeding efficiently; expert discovery is underway; and mediation will occur this June. These very substantial efforts have uncovered compelling evidence of illegal conduct by the Tour. Depositions will no doubt uncover further details regarding the Tour's unlawful exclusion of new entrants, to the detriment of golfers and fans everywhere. The current case schedule allows for the earliest and most efficient resolution of the case, and best advances the public interest.

The Tour again seeks to delay the case based on hypothetical events. The Tour's request remains premature. The primary basis is its desire to take discovery from the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and Yasir Othman Al-Rumayyan, whom it recently added as counter-defendants. But the Court has not resolved their objections to providing discovery, they have not yet moved to dismiss the counterclaim, and Plaintiffs have a pending motion to bifurcate their antitrust claims from the Tour's counterclaims. Depending on the resolution of these issues, the Tour's request could be moot. There is no need for the Court to consider modifying the case schedule until—at the earliest—those motions have been resolved.

If the Court does take up the Tour's request for an indefinite postponement of trial, it should deny that request. The delay sought by the Tour would be equivalent to dismissal; it would be so lengthy and indefinite in effect as to put Plaintiffs "effectively out of court." *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007). The Tour wants to vacate the trial date and postpone all discovery (while not providing ***any*** discovery during that time: The Tour claims it "cannot proceed with depositions . . . without first obtaining PIF and Mr. Al-Rumayyan's documents"). But discovery from PIF and Mr. Al-Rumayyan may never be provided if they are found to have immunity. And if discovery is provided, it may not be until after appeals. Delaying the case under these circumstances is equivalent to "denying justice by delay" because "[e]ven if litigation may eventually resume," there is a "danger" that "plaintiffs may go

out of business awaiting recovery or face irreparable harm during the time that their suits are on ice." *Id.* This is especially so where Plaintiffs seek injunctive relief for ongoing harm. *See Torliatt v. Ocwen Loan Serv., LLC*, 2021 WL 2948868, at *5 (N.D. Cal. July 14, 2021).

Eliminating LIV is the Tour's avowed strategy for responding to the competitive threat LIV poses to the Tour's unlawful monopoly. The Tour's advisors have recommended that it " ███ ███ " with the goal of forcing LIV to " ███ " its attempt to enter the market. PGA_TOUR00030873. The Tour's Commissioner admitted that " ███ ███ " LIV from emerging as a viable competitor. Herlihy-0000067. And the Tour has repeatedly told players—including the Player Plaintiffs—that golfers who play for LIV will be banned from the Tour for life. ECF 331 at 4; ECF 331-2 at 78 (Exh. C). Nor is the harm limited to Plaintiffs: If the antitrust claims "ha[ve] merit" (as they plainly do), then the Tour's "ongoing illegal concentration of market power . . . threatens economic harm to [golf] consumers." *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005).

There is no reason to risk these grave harms until the path forward is known. Should the Court order discovery from PIF and Mr. Al-Rumayyan, and neither of them provides it, the Court has other procedural tools to deal with unobtainable discovery short of delaying the case indefinitely. *See, e.g., Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212-13 (1958). If that issue ever becomes ripe, the parties can brief how best to address it. In the meantime, the case should continue towards resolution on the merits.

**A.    Discovery is on track and moving swiftly forward.**

On February 24, 2023, the Court told the parties that it "want[ed] to see that all the discovery, other than third party discovery, has been concluded" by March 30, 2023. Feb. 24, 2023 Tr. Hrg'g at 34:11–14. Plaintiffs have listened and complied.

Plaintiffs met the March 30, 2023 deadline for substantial completion of their document production by devoting enormous resources to their review effort and negotiating resolutions to the Tour's unreasonable discovery demands. For example, Plaintiffs agreed to review 140,000 documents created after the previously agreed production cut-off, even though the Tour agreed to review just 40,000 documents. The Tour complains that Plaintiffs have produced over 288,000

1  documents since the last case management conference, but **nearly 70%** of those were produced
2  because the Tour insisted that Plaintiffs produce largely nonresponsive text messages from the 96
3  hours surrounding a responsive message "for context." An additional **15%** were produced in
4  response to the Tour's overbroad and unnecessarily burdensome top off production demands.

5      The Tour's production figures are also deceptively smaller than Plaintiffs because,
6  beginning in at least August 2022, the Tour and its conspirators moved their messaging related to
7  LIV to the ephemeral messaging platform Signal. *See, e.g.*,
8
9
10
11      Due to the platform's
12  encrypted and ephemeral capabilities, the Tour has produced far fewer messages than Plaintiffs,
13  something the DOJ has similarly raised concerns about with the Tour.
14

15      Plaintiffs are on track to complete fact-witness depositions by the May 26 cutoff. This effort
16  has been hindered by the Tour's attempts to delay, notwithstanding the Court's request to have a
17  "deposition schedule" at this point. Feb. 24, 2023 Tr. Hrg'g at 46:2-3. The Tour requested dates
18  for Plaintiffs' witnesses on March 1. Plaintiffs' counsel provided dates for all witnesses they
19  represent on March 10 and provided additional dates on March 17. The Tour has only noticed four
20  depositions. In contrast, Plaintiffs requested dates for the Tour's witnesses on February 14, asking
21  for seven witnesses in March. The Tour made no witnesses available in March, forcing Plaintiffs
22  to seek relief from Court, ECF 344, and did not provide dates for most of its witnesses until more
23  than one month after Plaintiffs first requested dates. Nonetheless, Plaintiffs are ready to proceed
24  with depositions within the Court's schedule. *See* **Exhibit A**. The Tour's complaints about the
25  pace of the deposition schedule are self-inflicted: Depositions could have been begun weeks ago
26  if the Tour had timely responded to Plaintiffs' February 14 request for dates.

27      In all respects, discovery is proceeding apace in accordance with the Court's schedule. The
28  Tour's complaints regarding discovery follow its tried and true formula: first, the Tour insists on

massive discovery—over Plaintiffs' strenuous and repeated objections that such discovery is overbroad—while dragging its feet on its own discovery, including slow-rolling deposition scheduling. Then, once Plaintiffs relent to the Tour's unreasonable discovery demands, the Tour uses the discovery as an excuse to delay the case schedule. The Tour seeks to manufacture a delay through a catch-22: If Plaintiffs had failed to produce the voluminous discovery the Tour demanded, the Tour would have argued the case must be delayed. *See* ECF 180-2 at 7–10. Now that the Tour has received what it demanded, it cries that there is no way forward because of the size of the production. The Tour continues to violate the antitrust laws with the goal of destroying nascent competition. It should not be heard to delay trial indefinitely on the ground that Plaintiffs produced the overbroad discovery that the Tour demanded—particularly when the Tour has two sophisticated, well-resourced law firms to review documents and prepare witnesses for deposition.

### B. The Tour's request to shut down the case remains premature.

At the last case management conference, the Court denied the Tour's request for a trial continuance—which was also based principally on PIF and Mr. Al-Rumayyan discovery—as "premature." Feb. 24, 2023 Tr. Hrg'g at 31:15-17. That is even more true now. There are now two motions pending that could moot the Tour's request and will be relevant to the Court's decision regardless. First, PIF and Mr. Al-Rumayyan have moved for relief from the Magistrate Judge discovery order. ECF 306. If sovereign immunity insulates PIF and Mr. Al-Rumayyan from discovery, the predicate for the Tour's stay request falls away. And if the Court finds otherwise, PIF and Mr. Al-Rumayyan will have time to decide on a response, including whether to appeal that ruling. Second, Plaintiffs have moved to bifurcate their antitrust claims from the Tour's counterclaims. ECF 331. The Tour's discovery of PIF and Mr. Al-Rumayyan is not relevant to the antitrust claims; bifurcation would obviate any need to delay trial on those claims.

Even if both motions are denied, immediate delay would not be warranted. Summary judgment is not until August; "trial is not until next January." Feb. 24, 2023 Tr. Hrg'g at 29:25-30:2. Depositions can always be reopened. There is no reason to change the schedule now.

### C. The Tour's request for indefinite delay should be denied.

If the Court chooses to consider it, the Tour's request should be denied because it amounts

to an indefinite stay. The Tour argues that the trial date should be vacated and discovery deadlines continued by four months because it lacks discovery from PIF and Mr. Al-Rumayyan. At the same time, the Tour claims it would be "manifestly unfair" to take depositions and prepare expert reports—i.e., to actually do discovery—without PIF and Mr. Al-Rumayyan documents. The reality is that the Tour does not want a continuance; it wants a stay.

The Tour's request should be denied for at least five reasons. **First**, PIF and Mr. Al-Rumayyan are not subject to discovery on Plaintiffs' antitrust claims. Magistrate Judge van Keulen found that the PIF and Mr. Al-Rumayyan's immunity was overcome only with respect to the Tour's counterclaim for tortious interference, not with respect to Plaintiffs' antitrust claims. *See* ECF 265 at 24:9-10 ("PGA's counterclaim against LIV is based upon commercial acts of PIF . . . ."). The Tour has not objected to this holding. Thus, even if that order is affirmed, PIF and Mr. Al-Rumayyan will continue to retain immunity with respect to discovery sought in connection with the Plaintiffs' antitrust claims. The Court should not delay trial for Plaintiffs' claims when PIF or Mr. Al-Rumayyan have immunity from discovery on those claims.

**Second**, Plaintiffs—a startup and three professional golfers—have no control over PIF, a trillion dollar sovereign wealth fund, or Mr. Al-Rumayyan, who holds the rank of Minister in the Saudi Arabian government. The Tour never explains, for example, how Bryson DeChambeau, a 29-year old golfer from Modesto, could force PIF to waive sovereign immunity. And while the Tour has claimed that **PIF** controls **LIV**, it has never contended that **LIV** controls **PIF** or **Mr. Al-Rumayyan**. Having repeatedly failed to show alter ego status, the Tour now claims that "PIF *was* LIV," but its own argument shows the opposite: According to the Tour, PIF hired another company, Performance54, to create "the organization that would become LIV." Far from "being" LIV, PIF did not even create it. They are separate entities, and delaying Plaintiffs' case over discovery directed to PIF and Mr. Al-Rumayyan would "subordinate[] [their] litigation rights to conduct of third parties over whom [they] have little or no control." *See Discon, Inc. v. NYNEX Cop.*, 4 F.3d 130, 134 (2d Cir. 1993) (reversing as an abuse of discretion a stay based on third-party conduct).

**Third**, the Tour's requested delay is so lengthy and indefinite as to effectively put Plaintiffs "out of court." *See Blue Cross*, 490 F.3d at 723–24. The Tour requests a four-month continuance

5
JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. 5:22-CV-04486-BLF

to discovery and to vacate the trial. But discovery from PIF and Mr. Al-Rumayyan may never be provided if this or an appellate Court decide that they have immunity. The Tour's strategy is clear: It wants a fourth-month delay now, so that it can return in three months to argue it still does not have discovery from PIF and Mr. Al-Rumayyan, warranting another continuance. Such "lengthy and indefinite" delay by four-month increments ends a case as effectively as any dismissal. *See Davis v. Walker*, 745 F.3d 1303, 1309 (9th Cir. 2014) (finding delay puts plaintiffs "effectively out of court" when it exceeds eighteen months and depends on events that may never occur).

**Fourth**, discovery from PIF and Mr. Al-Rumayyan is not relevant enough to warrant such a drastic outcome. For one thing, the Tour could obtain virtually all of the discovery it seeks from PIF and Mr. Al-Rumayyan from other sources. All of their communications with LIV were produced from LIV's files, and, the Tour has their communications with third-parties from subpoenas to the third parties, as well from LIV's when it was copied (for example, as in the third-party communications the Tour cites below). The only documents uniquely available from PIF and Mr. Al-Rumayyan would be purely internal communications protected by deliberative process-type privileges under Saudi or US law. *See In re Grand Jury Subpoena*, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002) ("Courts have long held that foreign governments are entitled to protect their executive deliberations. International comity dictates that courts in this country give a foreign sovereign the same protection afforded to the executive branch of the United States.") (cleaned up). Plaintiffs made clear they would facilitate discovery from PIF "to the extent there's **appropriate discovery**" (not all discovery of any kind), Aug. 19, 2022 Tr. Hrg'g at 14:12-13, which they have done by producing over **19,000** of PIF and Mr. Al-Rumayyan's documents from LIV's files.

Nor is the discovery the Tour seeks relevant to Plaintiffs' antitrust claims. The Tour's hodgepodge of arguments for the supposed relevance of discovery from Plaintiff's investor boils down to three issues, none of which holds water. First, the Tour claims the discovery is relevant to LIV's competitive viability. LIV's competitive viability is an objective fact—whether PIF and Mr. Al-Rumayyan believe LIV is viable holds no more weight than any other non-expert opinion. Second, the Tour claims Mr. Al-Rumayyan's communications with participants in the golf ecosystem will show their reasons for not doing business with LIV. These communications and

this information can be obtained directly from the participants; it makes no sense to get them from PIF and Mr. Al-Rumayyan. Nor are PIF or Mr. Al-Rumayyan likely to have documents about the Tour's threats, which generally took place behind closed doors. Third, the Tour claims that discovery from PIF and Mr. Al-Rumayyan is relevant to LIV's contracts and pricing. But the contracts—which have been produced—speak for themselves. And LIV designed these contracts and made payments, not PIF or Mr. Al-Rumayyan; the Tour has this information from LIV employees. The marginal relevance of any remaining discovery does not justify indefinite delay.

*Finally*, even if the Court were to find that this discovery were relevant, it has other tools to proceed. This is neither the first nor the last case where discovery one party claimed was "integral" to its case was not available. Courts are not paralyzed in such circumstances, nor are they required to postpone trial indefinitely. Plaintiffs have already briefed bifurcation, which would avoid much of the delay; they will address the Tour's arguments against bifurcation in their reply. If discovery relevant to the antitrust claims proved unobtainable, there would be ways of dealing with that eventuality, which can be briefed by the parties if the issue became ripe.

At bottom, permitting "collateral litigation" to derail a case "conflict[s] with one of the basic principles of the justice system—justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 1095 (9th Cir. 2021). The urgency in this case is real. Plaintiffs are experiencing ongoing, irreparable harm from the Tour's continuing violations of the antitrust laws. *See* Compl. ¶¶ 226-33, 238-41. The Tour has expanded the scope of its unlawful conduct since this lawsuit began, banning non-PGA Tour members who participate in LIV events. *See* ECF 332 at 3–5. The players have finite time to capitalize on the success of their careers as professional athletes and may not have a league to play in after the current season. LIV, too, is experiencing ongoing irreparable injury from the co-conspirators' attempts to drive it out of the golf "ecosystem."

The only way to put an end to these ongoing unlawful practices is to bring Plaintiffs' antitrust claims to trial. Every element of the Tour's litigation strategy—its dilatory conduct in discovery, its assertion of economically insignificant counterclaims, its joinder of PIF and Mr. Al-Rumayyan as counter-defendants—has been designed to blow up the trial date and run out the clock on a potential competitor. If the Tour succeeds and LIV fails, the golf ecosystem will return to the

status quo of a market dominated by a sole buyer with no incentive to innovate, no incentive to pay players their fair share, and every incentive to return to the illegal bully tactics the Supreme Court declared unlawful in *Lorain Journal Co. v. U.S.*, 342 U.S. 143, 149–50, 186 (1951).

## II. PIF AND MR. AL-RUMAYYAN'S POSITION

PIF and Mr. Al-Rumayyan were added to the case on March 28, 2023, following a stipulation regarding service that they proposed. It is the Tour that elected to pursue discovery using a subpoena, and then counterclaims, against an instrumentality of the Kingdom of Saudi Arabia and its Governor, a minister. PIF and Mr. Al-Rumayyan have done nothing other than assert the defenses afforded to them under the FSIA, the principles of common-law foreign official immunity, and the Federal Rules. PIF and Mr. Al-Rumayyan will file a motion to dismiss raising their defenses in accordance with FSIA and, in accordance with well-established law requiring that questions of sovereign immunity be resolved before discovery can proceed, also will move to stay any party discovery served on them. PIF and Mr. Al-Rumayyan disagree with the Tour's many unsupported characterizations, including as to their involvement in this litigation.

## III. PGA TOUR'S POSITION

Plaintiffs once again seek to falsely assure the Court that discovery is proceeding "swimmingly," but the reality is that *their* discovery abuses, coupled with the intransigence of LIV's owners and decision makers, has rendered the current case schedule unworkable. The Public Investment Fund of Saudi Arabia ("PIF") and its Governor, Yasir Othman Al-Rumayyan—who created LIV and who fund and control this litigation—have not produced a shred of evidence and concede below that they will not do so until they have exhausted their appeals—and maybe not even then. PIF and Mr. Al-Rumayyan possess evidence that is essential to the TOUR's defenses to Plaintiffs' antitrust claims and the TOUR's counterclaims. *See* Dkt. 327 at 4 ("The Court recognizes the importance of the discovery at issue"). They had no qualms approving and orchestrating a lawsuit in this Court, but now refuse to accept the Court's jurisdiction when it comes to their basic reciprocal discovery obligations. Instead, they have erected every conceivable barrier to discovery.

Moreover, Plaintiffs themselves admit that they have produced over 288,000 new

documents since the last case management conference on February 24, 2023—more than doubling their total production within a month of the document production cutoff. Just last Thursday, March 30, the final day of document discovery, Plaintiffs produced more than 300,000 pages of additional documents. Because of Plaintiffs' eleventh-hour document dump, it is inconceivable that the parties will be able to take the *more than 80 outstanding depositions* that are anticipated before the May 26 fact deposition cutoff.

Plaintiffs claim that this case "is going full steam ahead." For Plaintiffs, that may be true because the TOUR has complied with its discovery obligations. But for the TOUR, Plaintiffs' discovery abuses and PIF and Mr. Al-Rumayyan's wholesale refusal to participate have stalled the TOUR's ability to defend against Plaintiffs' antitrust claims and pursue its counterclaims. Allowing Plaintiffs to press forward on the current schedule, with a skewed and incomplete factual record, would be manifestly unfair to the TOUR. Given the current posture of the case, it is not possible for the parties to complete fact discovery, prepare expert reports, litigate summary judgment, and prepare for trial under the current schedule. The Court should vacate the trial date, continue all discovery deadlines, and set a further case management conference in three months to evaluate next steps. Plaintiffs blatantly mischaracterize the TOUR's position as a request for a stay. That is false; the TOUR seeks only a reasonable four-month extension of the discovery schedule to obtain critical evidence from PIF and Mr. Al-Rumayyan and to process the avalanche of documents Plaintiffs produced exceedingly late in the current discovery window.

A.   **PIF and Mr. Al-Rumayyan have failed to produce critical discovery.**

This case cannot proceed without the critical discovery from PIF and Mr. Al-Rumayyan, which is directly relevant and proportional to the needs of the case. LIV is a creation of PIF, which had been seeking to launch a competing golf tour even before LIV's existence. PIF did not just found LIV. Until very recently, PIF *was* LIV. It was PIF, not LIV, that

LIV00055567.

1  ███ LIV000163200. Plaintiffs' own privilege log includes entries from August 2021, before LIV
2  existed as an entity, reflecting communications between Mr. Al-Rumayyan and other PIF
3  employees related to "this litigation." PIF's internal analyses of the competitive market for golf,
4  its internal financial calculations, and its internal discussions and expectations regarding LIV's
5  launch and performance are highly relevant to the TOUR's defense of the antitrust claims. LIV's
6  core claims turn on its ability to enter and successfully compete in the market for competitive golf
7  promotion; plainly, LIV's creators' assessment of that ability is central to the TOUR's defense.
8        Likewise, PIF and Mr. Al-Rumayyan's communications with sponsors, broadcasters,
9  vendors, and other participants in the golf ecosystem are directly relevant to LIV's claims that the
10 TOUR conspired with others to orchestrate a supposed group boycott of LIV. *See, e.g.*, First Am.
11 Compl. (FAC), Dkt. 83, ¶¶ 3, 11, 93-100, 108, 131-163, 242-262. Discovery has already shown,
12 for example, that PIF employees directly communicated with ██████████████████
13 ██████████████ LIV00313232. PIF's communications with sponsors may
14 show, among other things, that participants in the golf ecosystem had a wide variety of reasons
15 for declining to do business with LIV, none of which had anything to do with the TOUR.
16       Similarly, discovery has shown that Mr. Al-Rumayyan ████████████
17 ████████████████████████████████████████████
18 ████████████████ *See* LIV269629-31. PIF and Mr. Al-Rumayyan's negotiations
19 with potential broadcast partners for LIV events relate to LIV's claims that the TOUR's
20 regulations "compromised LIV Golf's ability to secure a television broadcast contract," *id.* ¶ 61,
21 and that the TOUR supposedly orchestrated a boycott of LIV among broadcasters, *id.* ¶¶ 3, 11,
22 108. PIF's documents will show why broadcasters declined to air LIV's product, which is directly
23 relevant to liability, LIV's competitiveness, and alleged damages.
24       In the same vein, PIF and Mr. Al-Rumayyan's negotiations with potential advertisers and
25 sponsors for LIV events bear directly on the competitiveness of LIV's product and LIV's
26 potential antitrust damages. *Id.* ¶¶ 48, 55, 103, 105, 107, 262, 268-278. Discovery has revealed
27 that Mr. Al-Rumayyan required ██████████████████████████████
28 ██████ *see* LIV000033150, and personally ████████████████████ *see*

1  LIV000383533-35. And ████████████████████████████████
2  ██████ LIV000304954. PIF and Mr. Al-Rumayyan's communications with professional
3  golfers (and their agents) recruiting them to play for LIV go directly to the merits of LIV's claim
4  that it was forced to pay supra-competitive wages to golfers to entice them to leave the TOUR. *Id.*
5  ¶¶ 12, 14, 171, 178, 281, 332. PIF and Mr. Al-Rumayyan's role in designing and approving LIV's
6  contracts with players—which contain provisions more restrictive than the TOUR's
7  Regulations—is directly relevant to whether the TOUR's Regulations are reasonable and pro-
8  competitive. PIF's negotiation and imposition of contractual restrictions on LIV golfers—
9  including mandating participation in every LIV tournament, assigning exclusive media rights, and
10 long-term tie-ups—bear directly on LIV's challenges to the TOUR's Regulations. *See* Aug, 9,
11 2022 Hr'g Tr. at 83:19-20 (the Court noting that LIV's "contracts lockup these players in ways
12 the PGA TOUR never imagined. They are so restrictive."); *see also* FAC ¶¶ 304-309.

13         PIF and Mr. Al-Rumayyan's reasons for backing LIV and their financial projections
14 related to that decision also bear on issues related to LIV's competitive viability and the
15 competitive pricing of LIV's contracts with professional golfers. FAC ¶¶ 12, 14, 171, 332. In
16 other words, PIF and Mr. Al-Rumayyan's strategic plans for competing with the TOUR,
17 including their reasons for continuing to fund LIV, bear directly on whether LIV has been or will
18 be harmed by the TOUR. *Id.* ¶¶ 2, 12, 14, 101-108, 119, 171, 332.

19         These categories of relevant, discoverable information from PIF and Mr. Al-Rumayyan
20 reflect only those which are readily apparent based on the materials LIV has already produced in
21 this case. The TOUR cannot know what other evidence in PIF's and Mr. Al-Rumayyan's
22 possession, custody, or control may be central to its defenses and counterclaims until they
23 actually produce the discovery. The TOUR should not be compelled to proceed with depositions
24 of key current and former LIV personnel without first obtaining PIF and Mr. Al-Rumayyan's
25 documents. The same is true of the depositions of executives from LIV's minority owner
26 Performance54, whose dealings with PIF and Mr. Al-Rumayyan pre-date LIV.
27         PIF and Mr. Al-Rumayyan acknowledge that they will appeal an order from this Court
28 affirming Judge van Keulen's ruling compelling their compliance with the TOUR's subpoenas.

*See* Dkt. 331 at 1 ("it is likely that PIF and [Mr. Al-Rumayyan] would immediately appeal any adverse ruling from this Court to the Ninth Circuit"). So, this critical discovery will not arrive within the current case schedule. PIF and Mr. Al-Rumayyan likewise engaged in rigorous efforts to evade and frustrate service of the TOUR's amended counterclaim naming them as parties—and thus making them subject to party discovery—caving only when the TOUR filed a motion seeking the Court's authorization to proceed with alternative service. As it stands, PIF and Mr. Al-Rumayyan have not responded to the TOUR's party discovery requests and have made clear they will not do so until their appeals are exhausted.

Equally troubling, Plaintiffs' statement makes clear that PIF and Mr. Al-Rumayyan will defy *any* order from this Court requiring them to produce discovery. Plaintiffs obliquely assert that the Court has unspecified "procedural tools to address" a situation where "the Court orders discovery from PIF and Mr. Al-Rumayyan, and neither of them provides it[.]" It is unclear what "procedural tools" Plaintiffs are contemplating, and the cases they cite are unilluminating. Regardless, if Plaintiffs wanted to proceed expeditiously to trial, PIF and Mr. Al-Rumayyan— who control and fund LIV and this litigation—could have complied with the Court's orders and produced discovery. But they prefer to continue resisting discovery. As the Court noted during the last case management conference, "that's a choice" they can make. Feb. 24, 2023 Hr'g Tr., Dkt. 298, at 23:13-18. But that "strategic decision" will necessarily result in "no trial date[.]" *Id.*

### B. Bifurcation is not a viable alternative.

Plaintiffs concede that all of the parties' claims and counterclaims cannot be resolved on the current case schedule. Nevertheless, they contend that an adjustment of the case schedule and a continuance of the trial date is "premature" because they have moved to bifurcate the TOUR's counterclaims *and* their own tortious interference claims. But Plaintiffs' motion to bifurcate is meritless and its pendency does not support Plaintiffs' request to maintain a case schedule that they admit is unworkable given the current posture of the case.

Plaintiffs' bifurcation motion proceeds from the false premise that discovery from PIF and Mr. Al-Rumayyan is relevant *only* to the TOUR's counterclaims. For all the reasons explained above and in the TOUR's opposition to the bifurcation motion, that is wrong. PIF and Mr. Al-

Rumayyan possess discovery that is critical to the TOUR's defenses to Plaintiffs' antitrust claims, much of which is uniquely in their possession. Indeed, *all* of the claims and counterclaims in this case arise from the same nucleus of operative facts. Thus, bifurcation would prejudice the TOUR's defense and will only result in inefficiency and additional expense, with many witnesses testifying twice about the same facts. This is particularly true where LIV has proposed to bifurcate its *own* tortious interference claims, notwithstanding the Court's admonition that it was "certainly *not* bifurcating the case [LIV] filed." Feb. 24, 2023 Hr'g Tr. at 13:10-11 (emphasis added). Bifurcation is inappropriate where, as here, a separate trial of one issue "would involve extensive proof and substantially the same facts or witnesses as the other issues in the case[.]" *Bates v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 11777838, at *1 (W.D. Wash. May 18, 2015).

Moreover, bifurcation would prejudice the TOUR. The TOUR's counterclaims are inextricably linked with LIV's antitrust claims, and the same jury should hear all of the facts related both to the purported antitrust issues and LIV, PIF, and Mr. Al-Rumayyan's interference with TOUR members' contracts. "Bifurcation should be ordered only when the separation will result in judicial economy and will not unduly prejudice any party." *Datel Holdings LTD. v. Microsoft Corp.*, 2010 WL 3910344, at *2 (N.D. Cal. Oct. 4, 2010). That is not the case here.

### C. The current status of discovery necessitates a continuance.

Although the TOUR has complied with its discovery obligations, PIF and Mr. Al-Rumayyan have continued to stonewall all discovery and Plaintiffs have inundated the TOUR with a mountain of documents right at the March 30 cutoff for document production. The volume of Plaintiffs' recent document productions, coupled with the remaining time to complete fact depositions, makes the current case schedule unrealistic. Since the last case management conference held on February 24, 2023, Plaintiffs admit they have produced more than 288,000 documents—more than doubling their total production in the final thirty days of a period that was meant to substantially conclude in *November 2022*. The TOUR is working diligently, but it is infeasible to review this volume of materials and adequately prepare for depositions under the current compressed schedule. Plaintiffs somehow suggest that their late-breaking landslide of documents is the TOUR's fault, but that does not withstand scrutiny. Plaintiffs were forced to

1 produce additional text messages only because they wrongly withheld them to begin with; indeed, the TOUR was ultimately forced to seek the Court's intervention on this issue. *See* Dkt. 314. Unlike Plaintiffs, the TOUR did not bury Plaintiffs beneath a mountain of late-produced documents at the document production cutoff.

Meanwhile, PIF and Mr. Al-Rumayyan have done everything possible to stonewall discovery and delay. PIF and Mr. Al-Rumayyan have failed to produce a single document; have not agreed to sit for deposition; and have indicated that they will pursue every possible avenue to avoid discovery in this case. After unsuccessfully attempting to evade service, PIF and Mr. Al-Rumayyan have now stated that they will move to dismiss the TOUR's amended counterclaims, rehashing the same meritless sovereign immunity and personal jurisdiction defenses that Judge van Keulen already rejected. But PIF and Mr. Al-Rumayyan are in no hurry to resolve those issues—they proposed a schedule that would not complete briefing on the motion until *July 10, 2023*. Dkt. 357-3. They have also failed to respond to the TOUR's requests for production, even though the Court's limited stay order makes clear that it does *not* apply to "future discovery against them" as parties. *See* Dkt. 327 at 2 n.2.

Finally, in compliance with the Court's direction at the last case management conference, the TOUR has worked with Plaintiffs in good faith to develop a tentative deposition schedule. However, because of Plaintiffs' belated production of a mountain of documents, the TOUR needs several additional weeks to review Plaintiffs' documents before proceeding with depositions. The deposition schedule contemplates more than 80 party and third-party depositions, and up to 300 hours of total depositions. The TOUR does not believe that it is feasible to complete these fact depositions by May 26, as the current schedule contemplates.

### D. Plaintiffs' remaining arguments are meritless.

Plaintiffs offer a variety of unpersuasive justifications for retaining the current case schedule. ***First***, they contend that the lack of injunctive relief in this case mandates an expedited trial schedule. But the Court *denied* Plaintiffs' request for a TRO because the Player Plaintiffs *failed* to establish irreparable harm. *See* Dkt. 63 at 9. Just like their dismissed co-plaintiffs, the three remaining Player Plaintiffs have lined their pockets with millions of LIV's dollars; are

contractually obligated to play golf in LIV's events; and can continue playing for the foreseeable future on the Asian and MENA tours that PIF and LIV control. Moreover, Player Plaintiffs have ███████████████████████████████████████████████████████████████ LIV000307982. The three remaining Player Plaintiffs are just stalking horses for LIV (who in turn is a stalking horse for PIF). In other words, only PIF stands to benefit from this case.

**Second**, Plaintiffs' suggestion that LIV may fail before its antitrust claims can be tried is hypocritical, given that PIF and Mr. Al-Rumayyan are shielding LIV's true financial standing from discovery. Setting aside that hypocrisy, according to LIV's CEO, LIV is "not going anywhere" and is "going to be around for a long period of time, because of [PIF's] investment." See https://tinyurl.com/mukvyyu5.

**Finally**, none of Plaintiffs' authorities are remotely relevant or support their proposal to maintain the current unworkable case schedule, while depriving the TOUR of the discovery it needs to defend itself and pursue its counterclaims. *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, 490 F.3d 718, 723 (9th Cir. 2007), involved an indefinite stay of civil proceedings pending resolution of a parallel criminal investigation, and remanded the stay order to the district court for further consideration. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1096 (9th Cir. 2021) is a case about the standard governing removal jurisdiction. *Torliatt v. Ocwen Loan Servicing, LLC*, 2021 WL 2948868, at *5 (N.D. Cal. July 14, 2021), addressed a motion to stay pending resolution of an appeal of a separate case that "would not impact" the claim at issue.

\* \* \* \*

In light of PIF and Mr. Al-Rumayyan's discovery stonewalling and the current status of discovery, the parties cannot complete fact depositions, prepare expert reports, litigate summary judgment, and prepare for trial on the current schedule. The TOUR respectfully requests that the Court: (1) vacate the current trial date; (2) continue all discovery deadlines by four months; and (3) set a further case management conference in approximately three months.

| | | |
|---|---|---|
| 1 | DATED:  March 31, 2023 | KEKER, VAN NEST & PETERS LLP |

By: */s/ Elliot R. Peters*

ELLIOT R. PETERS, SBN 158708
  epeters@keker.com
DAVID SILBERT, SBN 173128
  dsilbert@keker.com
R. ADAM LAURIDSEN, SBN 243780
  alauridsen@keker.com
NICHOLAS S. GOLDBERG, SBN 273614
  ngoldberg@keker.com
SOPHIE HOOD, SBN 295881
  shood@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

ANTHONY J. DREYER, admitted *pro hac vice*
  anthony.dreyer@skadden.com
KAREN M. LENT, admitted *pro hac vice*
  karen.lent@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, Ny 10001
Telephone:     (212) 735-3000
Facsimile:     (212) 735-2000/1

PATRICK FITZGERALD, admitted *pro hac vice*
  patrick.fitzgerald@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Il 60606
Telephone: 312 407 0700
Facsimile: 312 407 0411

*Attorneys for Defendant and Counterclaimant PGA Tour, Inc.*

| | |
|---|---|
| Dated: March 31, 2023 | Respectfully submitted, |

By: */s/ Rachel S. Brass*

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
LAUREN D. DANSEY, SBN 311886
  ldansey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

ROBERT C. WALTERS, *pro hac vice*
  rwalters@gibsondunn.com
SCOTT K. HVIDT, *pro hac vice*
  shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
  jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
  klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500

JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

| | |
|---|---|
| 1 | ROBERT P. FELDMAN, SBN 69602 |
| 2 | bobfeldman@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN LLP |
| 3 | 555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, California 94065 |
| 4 | Telephone:  650.801.5000<br>Facsimile:    650.801.5100 |

*Attorneys for Plaintiffs Matt Jones, Bryson DeChambeau, Peter Uihlein, and Plaintiff and Counterclaim Defendant LIV Golf Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

DATED: March 31, 2023                    GIBSON, DUNN & CRUTCHER LLP

                                        By:    */s/ Rachel S. Brass*
                                                  Rachel S. Brass