1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                  **NORTHERN DISTRICT OF CALIFORNIA**

6                          **SAN JOSE DIVISION**

7

8   MATT JONES, BRYSON DECHAMBEAU,
    PETER UIHLEIN, and LIVE GOLF, INC.,          Case No.  22-cv-04486-BLF

9              Plaintiffs,
           v.                                     **ORDER DENYING THE PUBLIC**
10                                                **INVESTMENT FUND OF THE**
                                                  **KINGDOM OF SAUDI ARABIA AND**
11  PGA TOUR, INC.,                               **HIS EXCELLENCY YASIR OTHMAN**
                                                  **AL-RUMAYYAN'S MOTION FOR**
12             Defendant.                         **RELIEF FROM MAGISTRATE**
                                                  **JUDGE'S ORDER ON DISPOSITIVE**
13  ───────────────────────────────              **MOTION**

14  PGA TOUR, INC.,
                                                  [Re:  ECF 306]
15             Counterclaimant,
           v.
16
    LIV GOLF, INC., PUBLIC INVESTMENT
17  FUND OF THE KINGDOM OF SAUDI
    ARABIA, and HIS EXCELLENCY YASIR
18  OTHMAN AL-RUMAYYAN,

19             Counterdefendants.

20

21

22        The Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and its Governor,

23  His Excellency Yasir Othman Al-Rumayyan ("HE Al-Rumayyan"), seek relief from a magistrate

24  judge's order addressing subpoenas served on them by Defendant/Counterclaimant PGA TOUR,

25  Inc. ("TOUR").  PIF and HE Al-Rumayyan recently have been named as counterdefendants in this

26  suit, but they were non-parties when served with the subpoenas and when the magistrate judge

27  issued the ruling at issue here.  The subpoenas called for PIF and HE Al-Rumayyan to appear for

28  deposition and produce documents at the New York City office of TOUR's counsel.  PIF and HE

Al-Rumayyan objected to the subpoenas, after which TOUR moved to compel compliance with the subpoenas and PIF and HE Al-Rumayyan moved to quash the subpoenas.

In a 58-page order issued February 9, 2023 ("the Order"), the magistrate judge quashed the deposition portions of the subpoenas based solely on TOUR's failure to tender required witness fees, without prejudice to re-service of the subpoenas with the witness fees. *See* Order at 58, ECF 380. The magistrate judge otherwise denied the motion to quash. *See id.*

PIF and HE Al-Rumayyan seek relief from the Order under Federal Rule of Civil Procedure 72(b), governing district court review of a magistrate judge's recommended disposition of dispositive matters. *See* Mot., ECF 306. Specifically, PIF and HE Al-Rumayyan ask the Court to determine de novo whether the subpoenas should be quashed based on sovereign and common law immunities, lack of personal jurisdiction, and principles of international comity. *See id.* Ultimately, PIF and HE Al-Rumayyan ask the Court to vacate the magistrate judge's Order and to quash the subpoenas in their entirety. The Kingdom of Saudi Arabia has submitted an amicus brief in support of the motion. *See* Amicus Br., ECF 313.

In response, TOUR asserts that the Order is nondispositive and thus subject to review under the clearly erroneous or contrary to law standard of Federal Rule of Civil Procedure 72(a), not the de novo standard of Rule 72(b). However, TOUR asserts that under either standard the Court should find that the magistrate judge properly denied the motion to quash on all grounds other than the failure to tender witness fees.

The Court finds the motion to be suitable for decision without oral argument. *See* Civ. L.R. 7-1(b). The Court also finds in appropriate to resolve the motion under the de novo standard set forth in Rule 72(b). The Court DENIES the motion for the reasons discussed below.

## I.      BACKGROUND

### Complaint and First Amended Complaint

This action was filed on August 3, 2022 by a number of professional golfers asserting antitrust violations and related claims against TOUR. *See* Compl., ECF 1. The operative first amended complaint ("FAC") was filed shortly thereafter, adding LIV Golf, Inc. ("LIV") as a plaintiff. *See* FAC, ECF 83. The FAC alleges that TOUR is "an entrenched monopolist with a

1    vice-grip on professional golf," and that LIV is a new entrant to the market as the sponsor of a new

2    golf league.  *See id.* ¶¶ 1, 101-08.

3            According to Plaintiffs, TOUR has acted unlawfully to preserve its monopoly power by

4    restricting elite golfers' ability to participate in LIV golf events.  *See* FAC ¶ 2.  TOUR allegedly

5    has threatened to impose suspensions and lifetime bans on golfers who participate in a single LIV

6    event.  *See id.* ¶¶ 3-5.  The FAC asserts claims for violation of state and federal antitrust laws,

7    breach of contract, tortious interference with contract, and tortious interference with prospective

8    business relationships.  *See id.* ¶¶ 310-88.

9            *Answer and Counterclaim*

10           TOUR filed an answer to the FAC on September 28, 2022, along with a counterclaim

11   against LIV for tortious interference with contract.  *See* Answer & Countercl., ECF 108.  The

12   counterclaim alleges that LIV has interfered with TOUR's contractual relationships with golfers

13   by, among other things, paying them to breach their contracts with TOUR and funding this lawsuit

14   against TOUR.  *See id.* ¶¶ 56-62.  The counterclaim also alleges that LIV is wholly owned and

15   overseen by PIF, the Saudi sovereign wealth fund, which holds more than $500 billion in assets.

16   *See id.* ¶¶ 6, 19.

17           On February 23, 2023, the Tour amended its counterclaim to add PIF and HE Al-

18   Rumayyan as counterdefendants and to add a claim for inducing breach of contract.  *See* Answer

19   & Am'd Countercl., ECF 289.

20           *Subpoenas*

21           TOUR served subpoenas on PIF and HE Al-Rumayyan, then non-parties, requiring them to

22   appear for deposition and produce documents at the New York City office of TOUR's counsel.

23   *See* Subpoenas, Dooley Decl. Exs. 6 & 7, ECF 148-2.  As noted above, PIF is the Public

24   Investment Fund of the Kingdom of Saudi Arabia.  *See* HE Al-Rumayyan Decl. ¶ 1, ECF 166-5.

25   HE Al-Rumayyan is the Governor of PIF, holds the rank of Minister in the Kingdom of Saudi

26   Arabia, and resides in Saudi Arabia.  *See id.* ¶¶ 1-3.  PIF and HE Al-Rumayyan served responses

27   and objections to the subpoenas.  *See* Reponses & Objs., Dooley Decl. Exs. 36 & 37, ECF 148-5.

28

United States District Court
Northern District of California

3

1

*Motion to Compel Compliance and Motion to Quash*

In October 2022, TOUR filed a motion to compel compliance with the subpoenas in the United States District Court for the Southern District of New York, which opened a miscellaneous case. By stipulation of TOUR, PIF, and HE Al-Rumayyan, the miscellaneous case was transferred to this Court. *See PGA TOUR, Inc. v. Public Investment Fund of the Kingdom of Saudi Arabia, et al.*, No. 22-mc-80336-BLF. At the direction of the magistrate judge, TOUR refiled its motion to compel compliance in the present case. *See* Mot. to Compel, ECF 148. PIF and HE Al-Rumayyan then filed a motion to quash the subpoenas. *See* Mot. to Quash, ECF 166.

The motion to quash asserted among other things that PIF has sovereign immunity, HE Al-Rumayyan has common law immunity, the Court lacks personal jurisdiction over PIF and HE Al-Rumayyan, and enforcing the subpoenas would violate principles of international comity. *See* Mot. to Quash, ECF 166. The motion to quash also asserted that the subpoenas were deficient under Federal Rule of Civil Procedure 45 because they called for compliance outside the 100-mile limit of Rule 45(c), TOUR failed to tender witness fees as required by Rule 45(b), and the subpoenas were unduly burdensome under Rule 45(d). *See id.*

*Magistrate Judge's Order*

The magistrate judge quashed the deposition portions of the subpoenas based solely on TOUR's failure to tender witness fees, without prejudice to re-service of the subpoenas with witness fees. *See* Order at 58. The magistrate judge otherwise denied the motion to quash. *See id.* However, the magistrate judge modified the subpoenas to give PIF and HE Al-Rumayyan the option to change the place of compliance from New York City to Riyadh, Saudi Arabia. *See id.* The magistrate judge also modified the categories of documents requested in the subpoenas to alleviate any undue burden on PIF and HE Al-Rumayyan. *See id.*

The Order indicated that "[t]he Court's rulings on the motion to quash filed by PIF and Mr. Al-Rumayyan also address the arguments made in PGA's motion to compel." Order at 58.

*Motions for Relief from Magistrate Judge's Order*

On February 28, 2023, PIF and HE Al-Rumayyan filed the present motion for relief from the Order.

4

## II. LEGAL STANDARD

As noted above, the parties disagree on the legal standard this Court should apply to the present motion.  PIF and HE Al-Rumayyan ask the Court to apply the de novo standard set forth in Federal Rule of Civil Procedure 72(b), while TOUR asks the Court to apply the more deferential clearly erroneous or contrary to law standard set forth in Federal Rule of Civil Procedure 72(a).

"Section 636(b)(1) and its procedural counterpart, Federal Rule of Civil Procedure 72, create a distinction between non-dispositive pretrial motions that may be referred to a magistrate judge for a decision and case-dispositive motions that may be referred only for evidentiary hearing, proposed findings, and recommendations to the district court unless the parties agree otherwise."  *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 803-04 (9th Cir. 2022) (internal quotation marks and citation omitted).  "When a magistrate judge rules on a non-dispositive matter, a district judge may reconsider that ruling only if it is clearly erroneous or contrary to law."  *Id.* at 804 (internal quotation marks and citations omitted).  "But when a magistrate judge issues a report and recommendation on a dispositive matter, a district judge must make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.* (internal quotation marks and citations omitted).

The Ninth Circuit has "adopted a functional approach that looks to the effect of the motion, in order to determine whether it is properly characterized as dispositive or non-dispositive of a claim or defense of a party."  *CPC Pat.*, 34 F.4th at 807 (quotation marks and citation omitted).  "A decision that effectively denies the ultimate relief sought by a party or disposes of any claims or defenses is dispositive."  *Id.* (internal quotation marks and citation omitted).  Applying this approach, the Court concludes that the magistrate judge's Order effectively denied the ultimate relief sought by PIF and HE Al-Rumayyan, which was to quash subpoenas served on them in their capacities as non-parties.

The Court notes that the enforceability of the subpoenas originally was raised in a separate miscellaneous action in the Southern District of New York.  Had the cross-motions to compel and to quash been briefed in that action, a decision on the motions would have been fully dispositive of the discovery obligations between the only parties to that action, triggering application of Rule

72(b).  *See Tabet v. U.S. S.E.C.*, No. 12-CV-1596-IEG DHB, 2012 WL 3986656, at *1 (S.D. Cal. Sept. 11, 2012) ("Though a motion to quash is normally considered a non-dispositive matter, where, as here, the order denying the motion to quash disposes of the sole issue in the case, it is considered dispositive." (internal quotation marks, citations, and alterations omitted)); *Doe v. U.S. S.E.C.*, No. C 11-80209 CRB, 2011 WL 5600513, at *2 (N.D. Cal. Nov. 17, 2011) ("Because the order denying the motion to quash disposed of the sole issue in the case, the Court finds that the magistrate order was dispositive.").  It was only by stipulation of TOUR, PIF, and HE Al-Rumayyan that the motions were adjudicated in this district.

Under these circumstances, the Court finds it most appropriate to treat the magistrate judge's Order as a non-binding recommendation subject to de novo review under Rule 72(b).  *See CPC Pat.*, 34 F.4th at 807 ("[T]he district court should have treated the magistrate judge's ruling at most as a non-binding recommendation subject to de novo review").  Under Rule 72(b), a party may make "specific written objections" to the magistrate judge's recommended disposition.  Fed. R. Civ. P. 72(b)(2).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "Only objections that reference specific portions of the report and recommendation will trigger de novo review – general or conclusory objections do not suffice."  *Ali v. Grounds*, 236 F. Supp. 3d 1241, 1249 (S.D. Cal. 2017), *aff'd*, 772 F. App'x 580 (9th Cir. 2019).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## III.   DISCUSSION

PIF and HE Al-Rumayyan assert that the magistrate judge erred in:  (1) finding that PIF is not entitled to sovereign immunity from this Court's jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq.; (2) finding that HE Al-Rumayyan is not entitled to common law immunity from this Court's jurisdiction; (3) finding that they are subject to this Court's personal jurisdiction; (4) denying their administrative motion to submit supplemental materials on Saudi law; (5) analyzing principles of international comity; and (6) holding that TOUR may re-serve the subpoenas pursuant to an expired service agreement.

The Court addresses de novo only the *specific objections* raised by PIF and Al-Rumayyan regarding the magistrate judge's determination on each of these issues. *See Ali*, 236 F. Supp. 3d at 1249 ("Only objections that reference specific portions of the report and recommendation will trigger de novo review. . . ."). The Court is not required to, and does not, conduct a wholesale de novo review of the magistrate judge's rulings on the issues listed above. *See id.* ("[G]eneral or conclusory objections do not suffice.").

Before turning to PIF and Al-Rumayyan's specific objections, the Court addresses two preliminary matters – the governing law and the impact of PIF and HE Al-Rumayyan's change in status from non-parties to parties after issuance of the magistrate judge's Order.

**A.    Governing Law**

In the Order, the magistrate judge questioned whether enforcement of the subpoenas was governed by Ninth Circuit law, Second Circuit law, or other law. *See* Order at 8. The magistrate judge did not resolve this question, instead choosing to rely on both Ninth Circuit law and Second Circuit law throughout the Order. The parties have not addressed the issue in briefing the present motion. Because the motion to compel compliance was transferred to this district and the motion to quash was filed only in this district, the Court concludes that the motions are governed by Ninth Circuit law. The Court considers out-of-circuit authority for its persuasive value.

**B.    Impact of PIF and HE Al-Rumayyan's Status as Parties**

PIF and HE Al-Rumayyan were non-parties when the subpoenas were served on them and when the magistrate judge's Order issued. TOUR added them as counterdefendants before the present motion was filed, but as of the completion of the briefing on the present motion PIF and HE Al-Rumayyan had not been served with process. The Court was advised informally on March 28, 2023 that PIF and HE Al-Rumayyan do not intend to contest service. *See* Opp. to Mot. for Alternative Service, ECF 357. However, because PIF and HE Al-Rumayyan were non-parties at all relevant times, and because the magistrate judge treated them as non-parties when ruling on the motion to compel and motion to quash, the Court will treat them as non-parties for purposes of the present motion.

In its amicus brief filed on March 2, 2023, the Kingdom of Saudi Arabia noted that PIF

United States District Court
Northern District of California

United States District Court
Northern District of California

and HE Al-Rumayyan recently have been made parties to this suit, and that upon service of process they will file motions to dismiss raising the same jurisdictional issues at issue here – sovereign immunity, personal jurisdiction, and international comity.  *See* Amicus Br. at 2.  The Kingdom of Saudi Arabia argues that "[t]hose complex issues are better evaluated after full briefing on the forthcoming motions to dismiss, rather than on the truncated briefing on the current Rule 72 objections."  *Id*.  On March 28, 2023, in the same filing advising the Court that they will not contest service of process, PIF and HE Al-Rumayyan stated their intent to file motions to dismiss the amended counterclaim, asserting lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act and common law foreign-official immunity, lack of personal jurisdiction, and failure to state a claim.  *See* Opp. to Mot. for Alternative Service.  However, PIF and HE Al-Rumayyan have not withdrawn their current motion for relief from the magistrate judge's Order.  Under those circumstances, the Court will not delay ruling on the current motion.

**(C)**   **PIF and HE Al-Rumayyan's Asserted Grounds for Relief**

**(1)**   **PIF's Immunity under the FSIA**

"The Foreign Sovereign Immunities Act provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (internal quotation marks and citation omitted).  The FSIA "provides that 'a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided' in the Act."  *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 (9th Cir. 2018) (quoting 28 U.S.C. § 1604).  "Thus, the FSIA 'shields foreign states and their agencies from suit in United States courts unless the suit falls within one of the Act's specifically enumerated exceptions.'"  *Id*. (quoting *OBB*, 577 U.S. at 29).  The exceptions are enumerated in 28 U.S.C. § 1605, titled "General exceptions to the jurisdictional immunity of a foreign state."  28 U.S.C. § 1605.

"A foreign defendant bears the initial burden to make a prima facie case that it is a foreign state."  *Packsys*, 899 F.3d at 1087 (internal quotation marks and citation omitted).  "Once the court has determined that the defendant is a foreign state, the burden of production shifts to the plaintiff to offer evidence that an exception applies."  *Id*. at 1087-88 (internal quotation marks and citation

1   omitted).  "If the plaintiff satisfies her burden of production, jurisdiction exists unless the

2   defendant demonstrates by a preponderance of the evidence that the claimed exception does not

3   apply."  *Id.* (internal quotation marks and citation omitted).

4        The magistrate judge correctly explained this burden-shifting framework in the Order.  *See*

5   Order at 10.  The magistrate judge found that PIF met its initial burden to make a prima facie case

6   that it is a foreign state, noting that the FSIA defines "foreign state" to include a state agency or

7   instrumentality, and that there was no dispute that PIF qualifies as a foreign state under this

8   definition.  *See id.* at 11; *see also OBB*, 577 U.S. at 30-31 ("The Act defines 'foreign state' to

9   include a state 'agency or instrumentality.'" (quoting 28 U.S.C. § 1603(a))).  The burden thus

10  shifted to TOUR to offer evidence that one of the exceptions enumerated in § 1605 applies.

11       TOUR asserted that two statutory exceptions to immunity apply, the commercial activity

12  exception and the waiver exception.  *See* Order at 11.  The FSIA's commercial activity exception

13  provides that:

14       A foreign state shall not be immune . . . in any case . . . in which the action is based

15       [1] upon a commercial activity carried on in the United States by the foreign state;
         or
16
17       [2] upon an act performed in the United States in connection with a commercial
         activity of the foreign state elsewhere; or
18
         [3] upon an act outside the territory of the United States in connection with a
19       commercial activity of the foreign state elsewhere and that causes a direct effect in
         the United States.

20  28 U.S.C. § 1605(a)(2); *see also Packsys*, 899 F.3d at 1088.  TOUR argued that the first and third

21  clauses defeat PIF's immunity.

22       The FSIA's waiver exception provides that:  "A foreign state shall not be immune . . . in

23  any case . . . in which the foreign state has waived its immunity either explicitly or by implication,

24  notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except

25  in accordance with the terms of the waiver."  28 U.S.C. § 1605(a)(1).  TOUR argued that PIF

26  implicitly waived sovereign immunity.  *See* Order at 24.

27       The magistrate judge determined that TOUR satisfied its initial burden of production with

28  respect to the commercial activity exception and the waiver exception.  *See* Order at 12.  The

United States District Court
Northern District of California

9

1    burden therefore shifted back to PIF to demonstrate by a preponderance of the evidence that the

2    claimed exceptions do not apply.  The magistrate judge concluded that PIF failed to meet its

3    burden with respect to the third clause of the commercial activity exception, and that as a result the

4    third clause of the commercial activity exception applies to preclude sovereign immunity.  *See id*.

5    at 22-24.  The magistrate judge held that additional discovery would be required to determine

6    whether sovereign immunity also is precluded by the first clause of the commercial activity

7    exception and/or by the waiver exception.  *See id*. at 22, 27.  However, the magistrate judge

8    concluded that it was unnecessary to order such discovery in light of the determination that the

9    third clause of the commercial activity exception applies.  This Court, thus, reviews the magistrate

10   judge's ruling on the third clause.[1]

11       "The third clause of § 1605(a)(2) creates an exception to a foreign state's sovereign

12   immunity in a case in which the plaintiff's lawsuit is based 'upon an act outside the territory of the

13   United States in connection with a commercial activity of the foreign state elsewhere and that act

14   causes a direct effect in the United States.'"  *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133

15   (9th Cir. 2012).  "In analyzing the third clause, courts have focused on the language requiring that

16   the act which forms the basis of the lawsuit cause 'a direct effect in the United States.'"  *Id*.  "[A]n

17   effect is 'direct' if it follows as an immediate consequence of the defendant's . . . activity."

18   *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (internal quotation marks and

19   citation omitted, alteration in original).  "[T]he effect must also be more than 'purely trivial' or

20   'remote and attenuated.'"  *Terenkian*, 694 F.3d at 1134 (quoting *Weltover*, 504 U.S. at 618).

21       The magistrate judge determined that PIF engaged in substantial commercial activity

22   outside the United States, in Saudi Arabia, including founding LIV as a "Disruptor Business" vis a

23   vis TOUR; funding LIV with 100% of the start-up costs and backing of $2 billion; overseeing

24   LIV's operations, including strategic and financial planning; and taking a direct role in LIV's

25   operations, including negotiation of player contracts and discussion with potential sponsors.  *See*

26

27   ───────────────

28   [1] Because the magistrate judge's denial of sovereign immunity was based solely on the third clause of the commercial activity exception, the Court does not reach the parties' arguments with respect to the first clause of the commercial activity exception or the waiver exception.

Order at 13-17.  That determination was supported by an exhaustive discussion of the record evidence spanning more than five pages of the Order.  *See id*.  The magistrate judge concluded that PIF's commercial conduct outside the United States, including formation, funding, oversight, and operation of LIV, caused a direct effect inside the United States.  *See id*. at 23.  Specifically, PIF created a new professional golf league in the United States and made a concerted effort to disrupt TOUR's operations by providing large financial incentives for top golfers to sign long-term, exclusive contracts with LIV that made it impossible for those golfers to meet their contractual obligations to TOUR.  *See id*.  That conclusion is supported by extensive citations to the record evidence.  *See id*.  Finally, the magistrate judge found that TOUR's counterclaim against LIV for interference with contract is based on PIF's commercial conduct related to founding, funding, oversight, and operation of LIV.  *See id*. at 24.

PIF raises two specific objections to the magistrate judge's analysis.  First, PIF argues that "[t]he 'action' is not 'based upon' PIF's conduct because PIF's conduct is not the gravamen of either the claims or the counterclaims."  Mot. at 3.  That objection is without merit.  PIF draws the "gravamen" requirement from *OBB*, which construed the first clause of the commercial activity exception.  *See OBB*, 577 U.S. at 35.  The first clause provides that a foreign state is not entitled to immunity where "the action is based upon a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(2).  *OBB* held that for purposes of that clause, "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit."  *OBB*, 577 U.S. at 35.  The Supreme Court expressly limited that holding to the first clause of the commercial activity exception.  *See id.* at 31 n.1 ("As Sachs relies only on the first clause to establish jurisdiction over her suit, we limit our inquiry to that clause.").  PIF has not cited a single case applying the "gravamen" requirement to the third clause.

The Ninth Circuit has drawn a distinction between cases brought under the first clause of the commercial activity exception, as to which the "gravamen" requirement is the key issue, and cases brought under the third clause, as to which the "direct effect" requirement is the touchstone.  The *Terenkian*¸ the plaintiffs relied on both the first and third clauses of the commercial activity exception.  *See Terenkian*, 694 F.3d at 1132.  Before determining the applicability of the two

11

clauses, the Ninth Circuit emphasized that "[c]ourts have construed this commercial activity provision to have three independent clauses, and have used different criteria for each of the three separate clauses to assess a claimed exception." *Id*. at 1128.  The Ninth Circuit noted that with respect to the first clause, a key issue was "what it means for an action to be 'based upon' a commercial activity." *Id*. at 1132.  With respect to the third clause, however, the *Terenkian* court stated, "Instead of requiring that the legal action be 'based upon' commercial activity, as in the first clause, this clause allows the legal action to be based on an act outside of the United States so long as the act was taken 'in connection with a commercial activity of the foreign state.'" *Id*. at 1133.  The court went on to explain that "[i]n analyzing the third clause, courts have focused on the language requiring that the act which forms the basis of the lawsuit cause 'a direct effect in the United States.'" *Id*. at 1133.

In a more recent case, *Packsys*, the Ninth Circuit concluded that the conduct at issue was "insufficiently connected to the United States to satisfy any of the three clauses of the exception." *Packsys*, 899 F.3d at 1092 n.10.  The Ninth Circuit reasoned that the first and second clauses did not apply because the "gravamen" requirement was not met, and that the third clause did not apply "because the requisite 'direct effect' is lacking." *Id*.  Based on *Terenkian* and *Packsys*, and absent case law extending the "gravamen" requirement to the third clause of the commercial activity exception, the Court concludes that the gravamen requirement need not be met here.  The touchstone for application of the third clause of the commercial activity exception is whether the act which forms the basis of the lawsuit caused a direct effect in the United States.  The magistrate judge applied this standard.

Second, PIF argues that the magistrate judge failed to identify any "direct effect" in the United States flowing from PIF's conduct abroad rather than LIV's conduct.  Mot. at 5.  This argument simply ignores the magistrate judge's express findings regarding the disruption to TOUR's contractual relationships with its players resulting from PIF's conduct in founding, funding, and participating in LIV's operations.  *See* Order at 23.  The magistrate judge specifically stated that the ruling was based in PIF's own conduct rather than on LIV's conduct.  *See* Order at 13 ("What PIF's argument misses is that PGA's invocation of FSIA's commercial activity

1    exception does not rest on LIV's activities in isolation from PIF or on the mere fact that PIF

2    invested in LIV.  Instead, PGA alleges and has presented evidence of **PIF's own conduct**[.]").

3    PIF's commercial activities outside the United States in founding, funding, and directing LIV were

4    substantial acts that had a direct effect in the United States.  Having reviewed the record evidence

5    de novo, the Court fully agrees with and adopts the magistrate judge's findings on this point.  *See*

6    Fed. R. Civ. P. 72(b)(3) ("The district judge may accept . . . the recommended disposition[.]").

7            PIF further asks the Court to evaluate the applicability of the commercial activity

8    exception on a claim by claim basis in the event the Court does not find that PIF is entitled to

9    sovereign immunity.  PIF asserts that because the magistrate judge applied the commercial activity

10   exception based only on the counterclaim, the magistrate judge erred in failing to limit discovery

11   to matters relevant to that counterclaim.  In making this assertion, PIF relies on *Broidy Cap.*

12   *Mgmt., LLC v. State of Qatar*, 982 F.3d 582 (9th Cir. 2020).  In *Broidy*, the Ninth Circuit held that

13   a district court could assert jurisdiction in a civil action over a foreign state only as to those claims

14   for which the foreign state was not entitled to sovereign immunity.  *See id.* at 589.  The Ninth

15   Circuit rejected the plaintiffs' suggestion that the district court could assert jurisdiction over all

16   claims against the foreign state if even one claim was not entitled to sovereign immunity.  *See id.*

17   at 590 n.2.

18           It is not at all clear that *Broidy* can be extended to impose a claim by claim requirement on

19   discovery requests served on non-parties.  Even if it can, the Court finds that the commercial

20   activity exception applies to both the main action and the counterclaim.  While the section of the

21   Order finding applicability of the commercial activity exception refers to the counterclaim but not

22   the FAC, other parts of the Order make clear that the magistrate judge viewed PIF's involvement

23   in LIV to be inextricably intertwined with both the FAC and the counterclaim.  *See* Order at 21

24   ("PIF's argument that the claims in this case have nothing to do with it relies on an overly narrow

25   reading of Plaintiffs' claims . . . as discussed above, PIF played an essential role in the founding,

26   financing, oversight, and operation of LIV.").  And this Court agrees.  De novo review of the

27   evidence and arguments amply support the conclusion that the commercial exception applies to

28   both the antitrust claims and TOUR's defenses thereto, and to TOUR's counterclaim.

1    Accordingly, PIF's request for a limitation on discovery under *Broidy* is denied.

2          In summary, having considered de novo PIF's two specific objections to the magistrate

3    judge's application of the third clause of the commercial activity exception, the Court finds that

4    those objections are without merit.  After reviewing the evidentiary record and the body of case

5    law on the FSIA, the Court concludes that the FSIA provides great deference to foreign sovereign

6    states and the diplomatic work of their officials conducted in the United States for the benefit of

7    the sovereign.  However, it does not immunize the expenditure of billions of dollars in the United

8    States to launch a "Disruptor" golf league.

9                    **(2)    HE Al-Rumayyan's Immunity under the Common Law**

10         "Common-law foreign sovereign immunity extends to individual foreign officials for 'acts

11   performed in their official capacity if the effect of exercising jurisdiction would be to enforce a

12   rule of law against the state.'"  *Dogan v. Barak*, 932 F.3d 888, 893-94 (9th Cir. 2019) (quoting

13   Restatement (Second) of Foreign Relations Law § 66(f) (1965)).  The Supreme Court has

14   articulated a two-step process for resolving a claim of common law foreign sovereign immunity.

15   *See Samantar v. Yousuf*, 560 U.S. 305, 311-12 (2010).  The first step involves requesting a

16   "suggestion of immunity" from the U.S. State Department.  *See id*.  However, in the absence of a

17   determination on a suggestion of immunity from the State Department, the district court has

18   authority to decide whether the requirements for immunity exist.  *See id*.

19         "At the second step of foreign official immunity, courts distinguish between status-based

20   immunity and conduct-based immunity."  *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d

21   649, 664 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021).  "Status-based

22   immunity is reserved for diplomats and heads of state and attaches 'regardless of the substance of

23   the claim."  *Id*. (internal quotation marks and citation omitted).  Conduct-based immunity is

24   afforded to a public minister, official, or agent of the state "with respect to acts performed in his

25   official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against

26   the state."  *Id*. (internal quotation marks and citation omitted).  Courts in this district have adopted

27   a three factor test for such immunity:  "First, whether the actor is a public minister, official, or

28   agent of the foreign state.  Second, whether the acts were performed in her official capacity.  And

United States District Court
Northern District of California

14

1  third, whether exercising jurisdiction would serve to enforce a rule of law against the foreign

2  state." *Id*. (internal quotation marks and citation omitted).

3      The magistrate judge correctly summarized this legal framework. *See* Order at 27-29.  The

4  magistrate judge indicated that HE Al-Rumayyan had not requested a suggestion of immunity at

5  the first step, and that he sought conduct-based immunity at the second step.  *See id*. at 28-29.

6  Although the magistrate judge found that HE Al-Rumayyan satisfied all three factors of the test

7  for conduct-based immunity, the magistrate judge concluded that he is not entitled to immunity

8  because his conduct falls within the commercial activity exception to common law immunity.  *See*

9  *id.* at 31-33.

10      HE Al-Rumayyan raises two specific objections to the magistrate judge's analysis, both

11  without merit.  First, he asserts that there is no commercial activity exception to common law

12  official immunity.  This Court simply disagrees with HE Al-Rumayyan's view of the law.  "[A]ny

13  foreign sovereign immunity at common law also had an exception for a foreign state's commercial

14  activity." *United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 351 (2d Cir. 2021).  This

15  approach is consistent with cases holding that "[c]onduct-based immunity recognizes an individual

16  official's entitlement to immunity for acts performed in his official capacity" and is derivative of

17  the immunity afforded to the foreign sovereign.  *United States v. Cordones*, No. 11 CR. 205

18  (AKH), 2022 WL 815229, at *5 (S.D.N.Y. Mar. 17, 2022).  Thus, "if an instrumentality of a

19  sovereign is not entitled to immunity, an agent, acting on that sovereign's behalf, cannot be

20  entitled to immunity."  *Id*. (internal quotation marks and citations omitted).  As discussed above,

21  PIF is not entitled to immunity because its conduct falls within the commercial activity exception

22  to the FSIA.

23      Second, HE Al-Rumayyan asserts that if there is a commercial activity exception to

24  common law official immunity, it does not apply for the same reasons that the commercial activity

25  exception to the FSIA does not apply to PIF.  This argument fails because the commercial activity

26  exception to the FSIA *does* apply to PIF.

27      Even if the Court were to find HE Al-Rumayyan's arguments regarding the commercial

28  activity exception persuasive (which it does not), the Court concludes that there is a second,

United States District Court
Northern District of California

1   independent basis to find that he is not entitled to immunity.  While the magistrate judge found

2   that HE Al-Rumayyan satisfies all three factors of the test for conduct-based immunity, on de

3   novo review this Court finds that he does not satisfy the third factor – whether exercising

4   jurisdiction would serve to enforce a rule of law against the foreign state.  "That element, as

5   understood through the lens of the small number of decisions speaking to the existence and scope

6   of common-law immunity, would allow for immunity when a judgment against the official would

7   bind (or be enforceable against) the foreign state."  *Lewis v. Mutond*, 918 F.3d 142, 146 (D.C. Cir.

8   2019).  For example, the factor would be satisfied if exercise of jurisdiction over the foreign

9   official would result in a draw on the foreign state's treasury or force the state to take specific

10  action.  *Id*. at 147.  Alternatively, the factor would be satisfied if the subpoenaed information

11  related "solely to 'political acts' that implicate Israel's diplomatic relations with other nations."

12  *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 280 (S.D.N.Y. 2015).  None of those

13  circumstances are present here, where TOUR seeks information from HE Al-Rumayyan about a

14  golf league.

15                    **(3)      Personal Jurisdiction**

16          The magistrate judge engaged in an intensive evaluation of the Court's personal

17  jurisdiction over PIF and HE Al-Rumayyan under the familiar three-prong test articulated by the

18  Ninth Circuit in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

19  The magistrate judge devoted a full twelve pages of the Order to the personal jurisdiction analysis,

20  reciting the correct legal standards and applying them to the factual record.  *See* Order at 33-44.

21  The magistrate judge concluded that "by their own direct contacts, PIF and Mr. Al-Rumayyan

22  purposefully directed their activities at the United States," Order at 39; that "the claims and

23  counterclaim in this case 'arise out of or relate to' the contacts between PIF, Mr. Al-

24  Rumayyan, and the United States," *id.*; and that "PIF and Mr. Al-Rumayyan, the parties objecting

25  to jurisdiction, have not carried their burden of making a 'compelling case' that the exercise of

26  personal jurisdiction over them would be unreasonable," *id*. at 44.

27          PIF and HE Al-Rumayyan devote less than a page to challenging the magistrate judge's

28  personal jurisdiction analysis, and much of that consists of scattershot statements disputing the

United States District Court
Northern District of California

16

United States District Court
Northern District of California

magistrate judge's evaluation of the evidence.  To the extent PIF and Al-Rumayyan are simply asserting that the magistrate judge got it wrong, that assertion is too general to be evaluated.  *See Ali*, 236 F. Supp. 3d at 1249 ("Only objections that reference specific portions of the report and recommendation will trigger de novo review – general or conclusory objections do not suffice.").

PIF and HE Al-Rumayyan do make a specific objection that "[t]he Order's analysis on personal jurisdiction turned almost exclusively on the Court's (erroneous) conclusions regarding § 1605(a)(2)," and that "for the same reasons stated above, PIF and HE Al-Rumayyan  lack the necessary 'minimum contacts' with the United States."  Mot. at 7.  To the extent PIF and HE Al-Rumayyan are attempting to piggyback on their objections to the magistrate judge's sovereign immunity analysis, that attempt is unavailing because their objections to the magistrate judge's sovereign immunity analysis are without merit as discussed above.

It also appears that PIF and Al-Rumayyan assert that the magistrate judge failed to assess the jurisdictional contacts of each of them separately.  They cite *Calder v. Jones*, 465 U.S. 783, 790 (1984), with a pin cite to the holding that "[e]ach defendant's contacts with the forum State must be assessed individually."  The Order addresses PIF's contacts under the subheading "PIF," and HE Al-Rumayyan's contacts under the subheading "Mr. Al-Rumayyan."  Order at 35-38.  PIF contends that the magistrate judge erroneously attributed to it conduct carried out by LIV.  But that is a mischaracterization of the Order.  The Order meticulously details PIF's own activities in and directed to the United States regarding founding, funding, overseeing, and operating LIV.  Order at 36-38.  This Court also finds upon de novo review that PIF's own contacts with the United States related to establishing a competing golf league are sufficient.

After discussing PIF's contacts, the magistrate judge expressly recognized that "[t]he fact that PIF satisfies the purposeful direction test does not mean that Mr. Al-Rumayyan automatically satisfies the test."  *Id*. at 38.  The Order identifies HE Al-Rumayyan's own activities in and directed to the United States relating to establishment, funding, oversight, and operation of LIV.  *See id.* at 38.  The magistrate judge acknowledged HE Al-Rumayyan's attempt to downplay those activities as "social," but found his statements conclusory and undercut by evidence that the events in question clearly involved promotion of LIV.  *See id.*  This Court finds upon de novo review that

United States District Court
Northern District of California

1    HE Al-Rumayyan's contacts with the United States relating to LIV are sufficient.  Accordingly,

2    the objection that the magistrate judge failed to consider the contacts of PIF and HE Al-Rumayyan

3    separately is without merit.

4         Having reviewed the record evidence and the relevant case law addressing the governing

5    three-part test for personal jurisdiction, the Court determines de novo that PIF and HE Al-

6    Rumayyan have sufficient minimum contacts with the United States to support this Court's

7    exercise of personal jurisdiction over them.  The Court approves and adopts the factual findings

8    and legal conclusions of the magistrate judge on this point.  *See* Fed. R. Civ. P. 72(b)(3) ("The

9    district judge may accept . . . the recommended disposition[.]").

10              **(4)        Exclusion of Supplemental Materials**

11        PIF and HE Al-Rumayyan contend that the magistrate judge erred in excluding certain

12   supplemental materials on Saudi law as untimely.  They ask this Court to consider the materials

13   now under Federal Rule of Civil Procedure 44.1, which provides in relevant part that "A party

14   who intends to raise an issue about a foreign country's law must give notice by a pleading or other

15   writing."  PIF and HE Al-Rumayyan contend that they have provided adequate notice of their

16   intent to submit the materials in the context of the present motion, and that admission of the

17   materials at this time is reasonable under the three factor test set forth in *APL Co. Pte. v. UK

18   Aerosols Ltd.*, 582 F.3d 947, 955-56 (9th Cir. 2009).  According to PIF and HE Al-Rumayyan, the

19   materials are crucial to meaningful consideration of international comity principles, discussed

20   below.

21        In opposition, TOUR points out that the magistrate judge did not exclude the materials for

22   failure to provide adequate notice under Rule 44.1, but rather excluded the materials on the basis

23   of unjustified delay.  The magistrate judge made that ruling on the record, as follows:

24        I also received an administrative motion from PIF and Mr. Al-Rumayyan with a
         request for additional briefing relating to the impact of Saudi law or the impact of
25        the subpoenas, how that may interact with Saudi law, and that motion I deny for the
         following reasons:
26
         The subpoenas in this case were served by agreement of the parties on September
27        22nd. So to the extent this issue was known or ripe, we'll take it at that date.

28

Also then a motion to compel was filed by PGA on October 28th, and the motion to quash in which these issues of the Saudi law specifically come up were filed here in this district pursuant to agreement of the parties on November 22nd.

So this issue is -- the impact of Saudi law is not new.  It's something that has -- was already presented to the court, argued, it has been pending for a couple of months now, almost two months, and there's no showing that there's either some new development in the law or some new facts. There's just a request for yet further briefing on the issue, and we are under somewhat of an expedited schedule in this case.

I think there was ample time to raise any additional evidence or bring it to the court's attention or seek leave of court to bring it to the court's attention, and certainly in advance of four days before the hearing on these issues.

So I do not find good cause to support the administrative motion by PIF and Mr. Al-Rumayyan, and that motion will be denied.

Jan 13, 2023 Hrg. Tr. 12:14-24, ECF 221.

On this record, this Court concurs with the magistrate judge's determination that the request to submit additional materials was subject to denial for undue delay.  Consequently, the arguments regarding the reasonableness of the notice given by PIF and HE Al-Rumayyan under Rule 44.1, and the *APL* case construing Rule 44.1, are beside the point.  The Court finds that the magistrate judge did not err in excluding the materials.

However, on de novo review, this Court concludes that consideration of those materials will aid the Court and thus it has reviewed the materials submitted by PIF and HE Al-Rumayyan, as discussed below.

### (5)    International Comity

When determining whether exercise of personal jurisdiction over PIF and HE Al-Rumayyan would be reasonable, the magistrate judge engaged in a thorough analysis of considerations of international comity.  *See* Order at 40-44.  For purposes of that analysis, the magistrate judge accepted "the contention in PIF and Mr. Al-Rumayyan's main briefs on the subpoena-related motions that PIF's governing law and Saudi law prohibit disclosure of the information sought by the subpoenas."  Order at 41.  The magistrate judge balanced that consideration against others under the correct legal standard, set forth in *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992).

Under that test, the following factors are relevant in deciding whether or not foreign

statutes excuse noncompliance with discovery orders:

> the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Richmark*, 959 F.2d at 1475 (citation omitted).  Other relevant factors include:  "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person" and "the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state."  *Id.* (internal quotation marks and citation omitted).

The magistrate judge considered these factors in turn and made factual findings regarding the applicability of each one.  *See* Order at 42-44.  The magistrate judge determined that the information requested by the subpoenas is directly relevant to the litigation and not available elsewhere.  *See id.* at 42.  On de novo review, this Court also finds that the requested discovery is relevant both to the antitrust claims and TOUR's defenses thereto, and to TOUR's counterclaim. The magistrate judge further recognized that some of the document and deposition topics in the subpoenas were overbroad, and so narrowed them.  *See id.*  The magistrate judge expressly rejected an argument advanced by PIF and HE Al-Rumayyan that the information was available from LIV, finding that LIV does not have access to all of the same information and documents they do.  *See id.*

Recognizing that balancing the national interests of each nation is the most important factor, the magistrate judge found that PIF and HE Al-Rumayyan had not presented evidence that Saudi Arabia had expressed an interest in keeping the information sought in the subpoenas secret. *See* Order at 42-43.  After the Order was filed, the Kingdom of Saudi Arabia submitted a letter and amicus brief expressing its strong opposition to the Order.  *See* Letter, ECF 285; Amicus Br., ECF 313.  Primarily, Saudi Arabia expressed concern that there is no source of authority for a court to enforce a subpoena against a foreign sovereign or official.  That argument is not persuasive for two reasons:  first, the Court does not anticipate noncompliance, and second, the Court would

1   have many tools available short of fines and contempt, such as evidence and claims exclusion

2   against PIF and HE in the likely event they formally appear as parties to the counterclaim.  Thus,

3   nothing in Saudi Arabia's statement of concern changes the correctness of the Order.

4           The magistrate judge also noted that a characterization of the information as confidential

5   was at odds with arguments made by PIF and HE Al-Rumayyan that their involvement with LIV

6   constituted typical investor activities.  *See* Order at 43.  The magistrate judge found that PIF and

7   HE Al-Rumayyan had not shown that the information at issue, relating to a commercial golf

8   league, would involve matters of national security or other matters that would adversely affect

9   Saudi Arabia if disclosed.  *See id.*

10          PIF argues that the magistrate judge applied too narrow a standard and that the subpoenaed

11  information is related to Saudi Arabia's "Vision 2030 'economic security' reform."  Mot. at 10.

12  PIF relies on *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL

13  5578428, at *8 (N.D. Fla. Feb. 18, 2020), to support its argument that "an exceptional

14  organization inextricably intertwined with the [Saudi] government such that [PIF's] objectives

15  may be indistinguishable" from Saudi Arabia's own interests.  *See* Mot. at 10.  But PIF's

16  development of a competing golf league in the United States is a far cry from the research institute

17  in 3M that was created to develop military weaponry for the French and German governments.

18  *See 3M*, 2020 WL 5578428, at *1.

19          Moreover, the requested discovery does not pertain to Saudi Arabia's development of its

20  long term strategy to diversify the economy and reduce dependence on oil.  *See* Alarfaj Decl. ¶ 17-

21  18, ECF 306-1.  The discovery is limited to golf in the United States.  Thus, although this Court

22  recognizes and respects Saudi Arabia's broad confidentiality laws, those laws must be considered

23  in the context of the development of a golf league.

24          Finally, PIF argues that the magistrate judge wrongly concluded that there was no threat of

25  criminal prosecution in Saudi Arabia for compliance with an order in the United States.  *See* Mot.

26  at 11.  PIF provides evidence of Saudi law and its expert's opinions.  This Court has reviewed the

27  supplemental evidence.  First, the magistrate judge reached the correct conclusion that Saudi law

28  deems the information confidential.  But the expert declaration only goes so far as to say that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Council of Political and Security Affairs ("CPSA") had decided to "to impose 'strict and

2    aggravated penalties, according to the law'" in relation to "leaks of some official documents."

3    Alarfaj Decl. ¶ 37.  Nothing in the supplemental evidence suggests that there would be criminal

4    enforcement against Saudi officials who release documents under a protective order in compliance

5    with a valid court order.

6            On the other side of the coin, the magistrate judge determined that the United States has an

7    interest in vindicating the rights of American parties.  *See* Order at 43-44.  The magistrate judge

8    considered PIF's intent to benefit from the United States market by launching a professional golf

9    league in competition with TOUR to weigh heavily against Saudi Arabia's sovereign concerns.

10   *See id.*  PIF argues that the magistrate judge applied the wrong legal standard because PIF and HE

11   Al-Rumayyan are not parties and thus the United States interests are more attenuated.  But even

12   reevaluating this factor de novo, this Court concludes that the magistrate judge correctly

13   determined that sovereign considerations are significantly diminished by "PIF's intent 'to benefit

14   from the United States market' by launching a professional golf league that would engage U.S.-

15   based players, play numerous tournaments in the United States, and compete with the U.S.-based

16   PGA Tour."  Order at 44.

17           PIF and HE Al-Rumayyan contend that the magistrate judge did not sufficiently scrutinize

18   the need for discovery, but the magistrate judge expressly determined that the subpoenaed

19   materials, as narrowed by the Order, were directly relevant to the claims and counterclaims, and

20   that LIV does not have access to all the same material.

21           Having applied the *Richmark* test de novo to the record evidence, the Court concludes that

22   considerations of international comity do not warrant quashing the subpoenas as narrowed.  The

23   Court concurs with and adopts the magistrate judge's rulings on this issue.  *See* Fed. R. Civ. P.

24   72(b)(3) ("The district judge may accept . . . the recommended disposition[.]").

25                   **(6)**    **Service Agreement**

26           The magistrate judge ordered that TOUR could re-serve the subpoenas with witness fees

27   pursuant to the same service agreement the parties entered into for service of the original

28   subpoenas.  PIF and HE Al-Rumayyan object to this aspect of the order on the basis that, in their

view, the service agreement extended only to service of the original subpoenas.  PIF and HE Al-Rumayyan have not cited any legal authority for the proposition that the magistrate judge was without discretion to direct re-service of the subpoenas with witness fees under the original service agreement.  The Court therefore finds this objection to be without merit.

**IV.   ORDER**

> (1)   PIF and HE Al-Rumayyan's motion for relief from the magistrate judge's Order DENIED; and

> (2)   This order terminates ECF 306.

Dated:  April 3, 2023

_____

BETH LABSON FREEMAN
United States District Judge