QUINN EMANUEL URQUHART &
   SULLIVAN LLP
JOHN B. QUINN, SBN 90378
   johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
   dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
   kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
   bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

RACHEL S. BRASS, SBN 219301
   rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

SCOTT K. HVIDT, *pro hace vice*
   shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

*Attorneys for Plaintiffs LIV Golf, Inc.,
   Matt Jones, Bryson DeChambeau, and Peter
   Uihlein*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br>   Plaintiffs, <br><br>   v. <br><br> PGA TOUR, INC., <br><br>   Defendant and Counter-Plaintiff, <br><br>   v. <br><br> LIV GOLF INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, and YASIR OTHMAN AL-RUMAYYAN, <br><br>   Counter-Defendants. | CASE NO. 5:22-cv-04486-BLF <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO BIFURCATE** |

**PRELIMINARY STATEMENT**

Bifurcating the Tour's counterclaims from Plaintiffs' antitrust claims remains the fairest and most practical solution to the situation the Court now faces. Plaintiffs' antitrust claims raise serious issues that deserve to be resolved as promptly as practicable. In light of the exigency, the Court scheduled an expedited trial setting. Those exigencies remain and are now more pressing. But, if the case proceeds to trial on the current schedule, the discovery the Tour seeks from PIF and HE—which the Court has found relevant to the antitrust claims—may not be available should they appeal. If the Court stays the trial for a year or more, as the Tour seeks, it could irreparably harm Plaintiffs. On the other hand, if the Court grants bifurcation and the antitrust claims are tried in January 2024, the Tour could possibly have to defend those claims without evidence the Court has found relevant.

Neither choice is perfect, but a lengthy stay of trial is by far the worst option. Discovery has disclosed the Tour's ongoing efforts to destroy LIV and squash competition. Bringing an end to the Tour's abusive and collusive practices is a matter of urgent importance to this sport and industry. PIF and HE have appealed to the Ninth Circuit; that appeal could take more than a year to resolve and a further two years if the Supreme Court reviews the decision. A delay that long would impose career-threatening hardship on the Player Plaintiffs, enterprise-threatening harm on LIV, and competition-crushing harm on the market for elite men's golf. The purported justification for this harm is the Tour's desire to take discovery from two witnesses (really, one—the discovery the Tour seeks is overwhelmingly centered on HE, not PIF) who are not parties to the antitrust claims and whom Plaintiffs are powerless to control. And the Court would have no way to mitigate that harm.

Bifurcation would get Plaintiffs' antitrust claims to trial promptly while leaving the Court with various tools to offset any prejudice the Tour might suffer in the event it does not obtain discovery from PIF and HE. That prejudice, if it exists, should not be material: The Tour's Opposition confirms it can obtain discovery of the sort it claims necessary from other parties, including LIV; indeed, the Tour has already received 13,500 PIF and HE documents from LIV and P54 that respond to *every* category in the discovery order. *See* Dkt. 333-1, ¶ 6. And if the Court determines at the time of trial that the jury should be instructed about PIF and HE's lack of participation in discovery, an appropriate instruction, if any, can be crafted then.

# ARGUMENT

## A. It Would Be Unfairly Prejudicial To Plaintiffs To Stay The Entire Case, Potentially For Years

Plaintiffs respectfully disagree that discovery of PIF and HE would be relevant to the Tour's defense of the antitrust claims, but take that as a given for this Motion. But that does not end the analysis. Whether such discovery can be obtained from other parties, and whether remedies less drastic than a potentially years-long stay can address the situation, also need to be considered. Such discovery and much fairer remedies are available.

### 1. The Tour's explanations of the relevance of antitrust discovery highlights that it could obtain such discovery from other parties

The Tour's explanations at the last CMC about the relevance of discovery from PIF and HE on antitrust issues made little sense. *See* OB at 6:20 to 7:18. The Tour (at 3:13 to 6:15) now tries to shore up its explanation, identifying the relevance as arising from PIF's and HE's alleged "recruitment of broadcasters and sponsors," "recruitment of golfers," and PIF's "funding of LIV and its viability as a powerful competitor." These justifications show ready sources for this discovery: broadcasters, sponsors, golfers, and LIV. As stated *supra,* the PIF and HE documents already produced provide the Tour with discovery on *every* one of the topics in the discovery order.

The Tour first addresses its supposed need for PIF and HE discovery with respect to sponsors and broadcasters. (Opp. at 3:23 to 4:10.) The answers to this claimed need are discovery from LIV (there is no reason to suspect that HE spoke to broadcasters and sponsors without LIV knowing about it) and third party broadcasters and sponsors—which discovery is ongoing—and the PIF and HE documents that the Tour has already received.

The Tour's argument as to golfers is even weaker. It argues such discovery would probe whether *LIV's* projected goals of signing golfers were realistic and whether provisions in *LIV's* contracts with golfers were restrictive. (Opp. at 4:11 to 5:13.) The Tour offers no reason that discovery from *LIV* and golfers, and the PIF and HE documents already produced, would not suffice.

The Tour argues that it needs discovery from PIF because PIF *may* be willing to lose endless amounts of money on its LIV investment to sport-wash Saudi's international reputation, and this

alleged but counterfactual goal of LIV's *investor* would somehow deprive *LIV* of antitrust injury. (Opp. at 5:14 to 6:15.)  Put aside that this is flatly wrong as a matter of blackletter law (*see* OB at 7:11-17).  It also has the facts backwards.  *The Tour's own documents* show that consultants advised it that PIF would not lose money to sport-wash, that PIF would turn away from its investment in LIV if not profitable, and that the Tour *agreed with* its consultants.  Plaintiffs emphasized these documents in their moving papers (OB at 7:17-23), but the Tour responds with silence.

### 2. If necessary, the Court has tools available to it to address the lack of discovery from PIF and HE at a trial of Plaintiffs' claims.

At times, courts have to address a situation where a party tries a case without the benefit of some relevant evidence.  That fact is not a showstopper.  If not a regular occurrence, it is not a rare one.  The situation before the Court is one where, given the lack any of culpability by LIV and Player Plaintiffs, either no remedial action is necessary, or a minimal one.  *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012); *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 393 (Fed. Cir. 2013).  The Court will be better positioned at the time of trial to determine if any instruction is required and to craft one, if necessary.

### 3. The Tour's arguments of unfairness turn the equities on their head.

The Tour argues (at 6:28 to 10:28) that forcing it to defend Plaintiffs' antitrust claims without discovery form PIF and HE would be "fundamentally unfair" to it.  The Tour has the real world upside-down.  It is Plaintiffs who would be unfairly prejudiced by a multi-year stay.

The issue is not really about discovery from PIF; the Tour's arguments are overwhelmingly based on lack of deposition discovery from one person, Mr. Al-Rumayyan.  The Tour wants to shut down this case because it has not gotten direct access *to one specific witness*, although it has obtained substantial discovery of that witness from the entities on every topic of the discovery order.  LIV will not burden the Court with a who-shot-John saga of all the ways its legitimate discovery from the Tour, its agents, and its co-conspirators has been frustrated.  One example suffices.  Evidence shows that in 2021 the Tour hired Clout, a PR firm, with explicit instructions to "hide the Tour's fingerprints" from a clandestine PR campaign to harm LIV.  Clout fomented and financed purported "spontaneous" demonstrations against LIV with the Tour's hidden money—demonstrations the

Tour then *told this Court justified its conduct*. *See* Dkt. No. 50 at 7:9-10 ("Fans and community members have also protested LIV's events, including, organizations seeking justice for the victims and families affected by the 9/11 attacks."). Clout's SVP, Jimmy Soni, was a key actor in manufacturing this phony evidence. Documents recently produced establish that Soni created "burner accounts" to hide his efforts on the Tour's behalf, then *deleted* those accounts, which in all likelihood cannot be recovered. LIV does not seek to claim "game over" or terminating sanctions because key evidence from a single witness who was acting as an agent for the Tour has been destroyed. The jury will be able to weigh it in the mix. The same is true with the Tour not having obtained direct discovery from Mr. Al-Rymayyan.

What would be "fundamentally unfair" is forcing LIV and Player Plaintiffs to potentially wait for years to have their claims resolved. It would punish innocent parties and potentially allow an egregious monopolist to avoid (and surely delay) answering to a jury for its misconduct.

### B. Bifurcation Is Sound Case Management.

#### 1. The Tour's amended counterclaims have to be tried on a second track

It was not until four months after the Tour filed its original counterclaim that the Tour filed its motion to add amended counterclaims against PIF and HE on January 25, 2023, a motion that was granted on February 21, 2023. Dkt. Nos. 238 & 280. The Tour is entirely responsible for that five month delay, Plaintiffs not at all.

The Tour had to know that a five-month delay would make it impossible for its amended counterclaims to be tried alongside Plaintiffs' claims. And the Tour can make no claim that PIF's relevance to the case was news to it; the Tour raised the issue of PIF's importance at the first status conference. *See* 8/19/22 Tr. at 9:16 to 10:4. The Tour chose to wait for months to amend its counterclaims. That those late-added counterclaims cannot be tried on Plaintiffs' trial schedule should not be used as a basis to prejudice Plaintiffs.

#### 2. Bifurcating would be convenient and efficient

The moving papers argued that if the antitrust claims are tried and the Tour's counterclaims are bifurcated, a jury verdict for LIV on its antitrust claims would obviate the counterclaims, because LIV could not have interfered with illegal contracts. OB at 10:19-28. The Tour concedes by not

responding. Should the Tour prevail, it is equally unlikely its counterclaims would be tried. As the Tour has narrowed them, the counterclaims involve a handful of players who played for LIV without resigning from the Tour (before the Tour suspended them). *Id.* at 10:13-18. Litigation costs would far exceed any possible recovery. Again, the Tour concedes by not responding. In short, a trial of the antitrust claims would be focused, direct, and efficient, and likely resolve the entire action.

### 3. LIV's interference claims can be bifurcated or potentially dismissed

The Amended Complaint has eight counts; the first five are antitrust, count six Player Plaintiffs' breach of contract, and seven and eight LIV's interference claims. LIV in its moving papers indicated if the Tour's interference counterclaims are bifurcated, it would stipulate that its interference claims could be bifurcated as well. OB a ii:8-9 & 1:3-4. The Tour objects to this offer, purporting to interpret the Court's comments at a prior hearing as indicating that LIV's interference claims would have to be *dismissed* if the Court granted bifurcation of the Tour's counterclaims. Opp. at 7:8-19. Plaintiffs would not purport to tell the Court what it was thinking. As a practical matter, an antitrust trial would likely moot both LIV's interference claims and the Tour's counterclaims, favoring their bifurcation. Should the Court decide to condition granting this motion on LIV's dismissal of its interference claims, LIV's counsel would discuss with its client and report promptly to the Court.

### CONCLUSION

For these reasons, Plaintiffs respectfully request that their motion to bifurcate be granted in all respects. Alternatively, in light of the present unusual procedural posture because the timing of the Court's Order regarding PIF and HE's discovery, Plaintiffs respectfully request that if the Court does not grant the motion, it deny the motion without prejudice or allow supplemental briefing as may become appropriate in the future.

| | | |
|---|---|---|
| 1 | DATED:  April 6, 2023 | Respectfully submitted, |
| 2 | | By: /s/ *Dominic Surprenant* |
| | | JOHN B. QUINN, SBN 90378 |
| 3 | | johnquinn@quinnemanuel.com |
| 4 | | DOMINIC SURPRENANT, SBN 165861 |
| | | dominicsurprenant@quinnemmanuel.com |
| 5 | | KEVIN TERUYA, SBN 235916 |
| 6 | | kevinteruya@quinnemanuel.com |
| | | QUINN EMANUEL URQUHART & |
| 7 | | SULLIVAN LLP |
| | | 865 South Figueroa Street, 10th Floor |
| 8 | | Los Angeles, California 90017 |
| | | Telephone: 213.443.3000 |

ROBERT P. FELDMAN, SBN 69602
bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:    650.801.5100

RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
LAUREN D. DANSEY, SBN 311886
ldansey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone:     415.393.8200
Facsimile:      415.393.8306

SCOTT K. HVIDT, *pro hac vice*
shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:     202.955.8500

*Attorneys for Plaintiffs LIV Golf, Inc., Matt Jones, Bryson DeChambeau, and Peter Uihlein*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Executed on April 6, 2023

/s/ Dominic Surprenant
Dominic Surprenant