RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

*Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, AND YASIR OTHMAN AL-RUMAYYAN, <br><br> Counter-Defendants. | CASE NO. 5:22-cv-04486-BLF <br><br> **PLAINTIFF LIV GOLF'S STATEMENT IN SUPPORT OF SEALING PORTIONS OF OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE** |

Pursuant to Civil Local Rule 79-5(f)(3), 79-5(c), Plaintiff LIV Golf, Inc. ("LIV") provides the following statement of the applicable legal standard and reasons for keeping under seal the documents provisionally filed under seal in connection with Defendant the PGA Tour Inc.'s Opposition to Plaintiffs' Motion to Bifurcate ("Opposition").  ECF No. 374.

The "good cause" standard applies for sealing here because bifurcation is only "tangentially related to the merits of a case." *See Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).  Such procedural motions "are not subject to the strong presumption of access," and parties moving to seal "need only satisfy the less exacting 'good cause' standard." *Id*. at 1097, 1099; *see Kumandan v. Google LLC*, 2022 WL 1501017, at *1 (N.D. Cal. May 12, 2022) (Freeman, J.) (applying good cause standard to a "motion regarding the case schedule").  A district court has "broad latitude" to "prevent disclosure of materials for many types of information" under this standard. *Philips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

Good cause to seal exist.  As explained in the declaration of Gary Davidson, the Tour's Opposition to Plaintiffs' Motion to Bifurcate describes and attaches LIV's highly confidential documents (summarized in the table below), disclosure of which would cause serious competitive harm to LIV.  Declaration of Gary Davidson ("Davidson Decl.") ¶¶ 2-12.  The Court has previously sealed certain of this material.  In particular, the Court previously sealed the Shareholder Agreement in its entirety, ECF No. 373 at 9, description of indemnification agreements attached and described in the Tour's Opposition, ECF No. 279 at 3-4, and documents describing negotiations with players, agents, sponsors, and broadcasters, including specific offers.  *Id*. at 5-6.  Many of the same harms and issues are implicated here.  With respect to Exhibit 19 to the Opposition, which Plaintiffs previously filed in redacted form, and for which the Court granted sealing under the "compelling reasons" standard, LIV seeks to redact the same portions of the contract (attached as **Exhibit A**).  ECF No. 86 at 2.  The sealing is narrowly tailored because the majority of the Tour's Opposition remains unredacted.  To the extent that the Court denies sealing, LIV respectfully requests that the denial be without prejudice.

Plaintiff does not seek to seal Exhibit 4 to the Opposition as it does not contain any information designated as confidential and will be filed on the public docket.

| Document | Description | Reasons for Sealing |
|---|---|---|
| Exhibits 1-2 and Lines 2:12-16 of the Opposition | Confidential service agreements related to LIV's formation and marketing, and description thereof. | Disclosure would prejudice LIV's ability to negotiate different terms for the advisor services described in the agreements, including different payments for such services. |
| Exhibits 3 and 16 and Lines 2:18-20 and 9:13-14 of the Opposition | Litigation-related documents and communications, and description thereof. | Disclosure would harm the privacy rights of individuals whose information is disclosed and intrude on LIV's confidential relationship with its counsel. Disclosure would also impinge on LIV's ability to communicate with government officials about anticompetitive conduct by potentially deterring such officials from free and open communication. |
| Exhibits 5-7 and Lines 2:5-7 and 3:26-27 of the Opposition | Documents about LIV communications with players, agents, sponsors, and broadcasters, and description thereof. | Disclosure would prejudice LIV's ability to enter into confidential negotiations by exposing individuals and entities negotiating with LIV, thereby deterring future partners from entering such negotiations. Disclosure would also allow competitors to exploit and counter LIV's messaging and strategy for their recruitment. |
| Exhibit 8 and Lines 6:11-13 of the Opposition | Presentation about LIV's formation, including financial analysis and business strategy at launch, and document about LIV's access to capital, and descriptions thereof. | Disclosure would be exploited by competitors by countering LIV's business strategy. Disclosure would also prejudice LIV's negotiations by exposing its access to capital and ability to pay. |
| Exhibit 9 and Lines 2:21, 4:19-21, and 5:3-4 of the Opposition | Highly confidential LIV Shareholder Agreement, and description thereof. | Disclosure would cause competitive harm by allowing competitors to exploit limitations on LIV's decision making, deterring outside funders and potential business partners, and hindering LIV in negotiations by exposing its access to capital, ability to pay, and capital deployment, as well as limitations on its decision making. |

| Document | Description | Reasons for Sealing |
|---|---|---|
| Exhibits 10-11 and Lines 10:4-5 and 10:12 of the Opposition | Documents describing LIV player agreements, including terms and equity stakes, and LIV's recruitment strategy, and descriptions thereof. | Disclosure would hinder LIV in future negotiations by changing the terms other players demand to match those disclosed, including specific offers and equity stakes. |
| Exhibits 12, 14-15 and Lines 4:27-28 and 9:8-9 of the Opposition | Documents describing LIV internal decision-making regarding event structure, non-financial player offers, and attempts to obtain OWGR points, and descriptions thereof. | Disclosure would allow competitors to exploit the information by countering LIV's event strategy and targeting LIV players through non-financial offers. |
| Exhibit 13 | LIV player media briefing preparation sheet. | Disclosure would cause competitive harm by allowing competitors to counter the messaging and communications strategy disclosed. |
| Exhibits 17-19 | Player contracts. | Disclosure would cause severe competitive harm to LIV by hindering its negotiation leverage, enabling future players to demand the same or better terms, and allowing competitors to make counter-offers to target LIV players. |
| Exhibit 32 and Lines 2:23-24 of the Opposition | Indemnification agreement, and description thereof. | Disclosure would cause litigation and competitive harm by allowing the Tour to drive up plaintiffs costs to exceed the amount of indemnification and structure settlement offers to exploit the limitations and procedures disclosed. |

DATED: April 6, 2023

Respectfully submitted,

*/s/ Rachel S. Brass*
RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

COUNSEL FOR PLAINTIFF LIV GOLF, INC.