RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

*Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br>Plaintiffs, <br><br>v. <br><br>PGA TOUR, INC., <br><br>Defendant and Counter-Plaintiff, <br><br>v. <br><br>LIV GOLF INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, AND YASIR OTHMAN AL-RUMAYYAN, <br><br>Counter-Defendant. | CASE NO. CASE NO. 5:22-cv-04486-BLF <br><br>**DECLARATION OF GARY DAVIDSON IN SUPPORT OF SEALING PORTIONS OF OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE** |

I, Gary Davidson, hereby declare and state:

1.  I am an Authorized Signatory for LIV Golf Inc ("LIV"). I am authorized by LIV to make this statement in support of sealing portions of the Tour's Opposition to Plaintiffs' Motion to Bifurcate (the "Opposition"). *See* ECF 374-1. I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates. If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

2.  Exhibits 1 and 2 to the Opposition are confidential service agreements related to LIV, which are described at lines 2:12-16 of the Opposition. These agreements describe plans and strategy for LIV's formation, capital expended on developing LIV, and individuals involved, disclosure of which would cause competitive harm. The services under these contracts continue to be used by LIV, which may retain other advisors in the future. Disclosure would constrain LIV's negotiating power in these negotiations by allowing future consultants and advisors to structure their negotiations and demand the same terms as those disclosed in the agreements. Disclosure would also affect financial terms demanded by these advisors by disclosing specific amounts of past payments for similar services.

3.  Exhibit 3 to the Opposition is an excerpt from LIV's privilege log, which contains personally identifiable information and describes confidential communications with counsel, that is described at lines 2:18-20 of the Opposition. Exhibit 16 to the Opposition and lines 9:13-14 of the Opposition likewise disclose LIV counsel's confidential communications. Disclosure of this information would harm the privacy rights of the individuals disclosed and intrude on LIV's confidential relationship with its lawyers. It may also hinder LIV's ability to provide information to the government regarding anticompetitive threats, as government employees may be less willing to engage with LIV's counsel if they expect that their information and identities will become public through procedural court filings.

4.  Exhibits 5, 6 and 7 to the Opposition, and lines 2:5-7 and 3:26-27 of the Opposition describe LIV investors' communications with players, agents, sponsors, and broadcasters. Disclosure would harm LIV. For example, disclosure would invite speculation about which individuals were involved in the communications described or expose the individuals and entities disclosed to unwanted

attention.  Given the Tour's efforts to threaten and tarnish the reputation of any entity and individual involved with LIV, disclosure would deter potential business partners and players from communicating with LIV for fear that the information may become public through procedural court filings.  Exhibits 5-7 further describe LIV's recruitment strategy for sponsors and broadcasters, disclosure of which would allow competitors to counter its messaging and strategy on this issue.

5.   Exhibit 8 to the Opposition is a presentation regarding LIV's formation containing information about its financials, strategy, business plan, projected returns, funding (including specific capital amounts), business deals, and corporate structure.  Lines 6:11-13 of the Opposition further describe LIV's access to capital.  This information is highly confidential, and disclosure would cause competitive harm.  LIV's financial information and business strategy are not publicly known. Disclosure would allow LIV's competitors (including the Tour) to counter the stated business strategy. Disclosure would also affect future negotiations by exposing LIV's access to capital and ability to pay. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm.

6.   Exhibit 9 to the Opposition is LIV's Shareholder Agreement ("Agreement"), which the Court previously agreed to seal in its entirety because it "[c]ontains confidential information about LIV's corporate governance, investment structure, share price, valuation, internal financial reporting, internal decision making, and budgeting process; the identities of LIV's strategic partners and pre-approved clients; LIV financials, including specific amounts of capital, the capital deployment schedule, and capital intended uses; LIV's relationships with third parties; and limitations on LIV's business conduct, disclosure of which could cause competitive harm."  ECF 373 at 9.  The Agreement is described at lines 2:21, 4:19-21, and 5:3-4 of the Opposition.  The Agreement and the description of the Agreement disclose highly confidential information about LIV's corporate governance, investment structure, share and subscription price, valuation, internal financial reporting, internal decision making, budgeting process, the identities of LIV's strategic partners and pre-approved clients.  The Agreement further discloses LIV's financials, including specific amounts of capital, the capital deployment schedule, and capital intended uses.  Last, the Agreement describes limitations on LIV's business conduct.  The Opposition describes an aspect of investor rights under the agreement.  Disclosure of this

information would cause serious competitive harm to LIV, including through prejudice to future investment and negotiations through disclosure of investor rights, LIV's access to capital, and timing of capital injection. Outside funders and potential business partners may be deterred from entering business with LIV or may demand different or better terms in light of the investor rights disclosed. Disclosure would also cause competitive harm to LIV by allowing competitors to exploit the information disclosed, such as the limitations on LIV's business conduct.

7. Exhibits 10 and 11 to the Opposition and lines 10:4-5 and 10:12 of the Opposition describe highly confidential player agreements, including specific offers, terms of agreements, and player equity stakes, as well as LIV's recruitment strategy. LIV goes to great lengths to keep this information confidential. Disclosure would seriously harm LIV. Disclosure of the terms of player agreements would affect future negotiations and allow other players to demand the same terms (including the same guaranteed fees and renewal provisions) as those disclosed. This would hamper LIV's ability to negotiate different terms and expose its willingness to pay to players, driving up its costs and limiting its business opportunities. Disclosure of its recruitment strategy would allow competitors to counter the same.

8. Exhibits 12, 14 and 15 to the Opposition and lines 4:27-28 and 9:8-9 of the Opposition disclosure internal decision making regarding LIV's event structure, player payments, structure of payments, and attempts to obtain OWGR points. Disclosure of this information would cause competitive harm to LIV by allowing competitors (such as the PGA Tour) to exploit the information to counter LIV. For example, competitors could attempt to exploit the options for event structure and player payments that LIV decided not to pursue (but may pursue in the future) and to offer better non-financial terms to potential players. LIV is a private company and its internal decision-making is confidential.

9. Exhibit 13 to the Opposition is a LIV Golf Player Media Briefing preparation sheet. Disclosure of this information would cause competitive harm to LIV by exposing LIV's communications and public relations strategy, which would be exploited by competitors (including the Tour) to counter LIV's strategy and prepare counter-messaging.

10. Exhibits 17 and 18 to the Opposition are specific LIV agreements with Plaintiffs DeChambeau and Uihlein, respectively. These documents contain highly confidential information about payments, offers, commitment fees, players rights and obligations, length of commitment, and LIV's overall relationship with its golfers. LIV goes to great lengths to keep it confidential, and disclosure would cause serious competitive harm. Disclosure would constrain LIV's future negotiating power by enabling other players to demand the same or better terms. Disclosure would also allow competitors to counter-offer terms designed to target LIV players (or potential players), thereby causing competitive harm. The Tour has gone to great lengths to choke off LIV's access to professional golfers, and these documents would be exploited for that purpose.

11. Exhibit 19 to the Opposition is the LIV agreements with Plaintiff Jones, a version of which the Court has already agreed should be sealed because the redacted portions contain "confidential business and financial information of TRO Plaintiffs and LIV Golf." *See* ECF 86 at 7-8. As explained previously, this document contains highly confidential information about payments, offers, commitment fees, players rights and obligations, length of commitment, and LIV's overall relationship with its golfers. LIV goes to great lengths to keep it confidential, and disclosure would cause serious competitive harm. Disclosure would constrain LIV's future negotiating power by enabling other players to demand the same or better terms. Disclosure would also allow competitors to counter-offer terms designed to target LIV players (or potential players), thereby causing competitive harm.

12. Exhibit 32 to the Opposition is a highly confidential indemnification agreement, which is described at lines 2:23-24 of the Opposition. Disclosure would seriously harm LIV and the plaintiffs in this litigation. For example, the Tour could seek to drive up Plaintiffs' costs to exceed the amount of indemnification disclosed in Exhibit 32 to force Plaintiffs into settlement. Disclosure would also affect settlement negotiations by allowing the Tour to structure settlement offers to create divisions among Plaintiffs in light of the indemnification limitations and procedures.

13. The following table summarizes the information sought to be sealed.

| Document | Description | Reasons for Sealing |
|---|---|---|
| Exhibits 1-2 and Lines 2:12-16 of the Opposition | Confidential service agreements related to LIV's formation and marketing, and description thereof. | Disclosure would prejudice LIV's ability to negotiate different terms for the advisor services described in the agreements, including different payments for such services. |
| Exhibits 3 and 16 and Lines 2:18-20 and 9:13-14 of the Opposition | Litigation-related documents and communications, and description thereof. | Disclosure would harm the privacy rights of individuals whose information is disclosed and intrude on LIV's confidential relationship with its counsel. Disclosure would also impinge on LIV's ability to communicate with government officials about anticompetitive conduct by potentially deterring such officials from free and open communication. |
| Exhibits 5-7 and Lines 2:5-7 and 3:26-27 of the Opposition | Documents about LIV communications with players, agents, sponsors, and broadcasters, and description thereof. | Disclosure would prejudice LIV's ability to enter into confidential negotiations by exposing individuals and entities negotiating with LIV, thereby deterring future partners from entering such negotiations. Disclosure would also allow competitors to exploit and counter LIV's messaging and strategy for their recruitment. |
| Exhibit 8 and Lines 6:11-13 of the Opposition | Presentation about LIV's formation, including financial analysis and business strategy at launch, and document about LIV's access to capital, and descriptions thereof. | Disclosure would be exploited by competitors by countering LIV's business strategy. Disclosure would also prejudice LIV's negotiations by exposing its access to capital and ability to pay. |
| Exhibit 9 and Lines 2:21, 4:19-21, and 5:3-4 of the Opposition | Highly confidential LIV Shareholder Agreement, and description thereof. | Disclosure would cause competitive harm by allowing competitors to exploit limitations on LIV's decision making, deterring outside funders and potential business partners, and hindering LIV in negotiations by exposing its access to capital, ability to pay, and capital deployment, as well as limitations on its decision making. |

| Document | Description | Reasons for Sealing |
|---|---|---|
| Exhibits 10-11 and Lines 10:4-5 and 10:12 of the Opposition | Documents describing LIV player agreements, including terms and equity stakes, and LIV's recruitment strategy, and descriptions thereof. | Disclosure would hinder LIV in future negotiations by changing the terms other players demand to match those disclosed, including specific offers and equity stakes. |
| Exhibits 12, 14-15 and Lines 4:27-28 and 9:8-9 of the Opposition | Documents describing LIV internal decision-making regarding event structure, non-financial player offers, and attempts to obtain OWGR points, and descriptions thereof. | Disclosure would allow competitors to exploit the information by countering LIV's event strategy and targeting LIV players through non-financial offers. |
| Exhibit 13 | LIV player media briefing preparation sheet. | Disclosure would cause competitive harm by allowing competitors to counter the messaging and communications strategy disclosed. |
| Exhibits 17-19 | Player contracts. | Disclosure would cause severe competitive harm to LIV by hindering its negotiation leverage, enabling future players to demand the same or better terms, and allowing competitors to make counter-offers to target LIV players. |
| Exhibit 32 and Lines 2:23-24 of the Opposition | Indemnification agreement, and description thereof. | Disclosure would cause litigation and competitive harm by allowing the Tour to drive up plaintiffs costs to exceed the amount of indemnification and structure settlement offers to exploit the limitations and procedures disclosed. |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 6, 2023.

/s/ *Gary Davidson (DocuSigned)*

Gary Davidson