# EXHIBIT 19

## EXHIBIT FILED UNDER SEAL

**LIV GOLF PLAYER AGREEMENT**

| | |
|---|---|
| **Player** | **MATT JONES** |
| **Commitment Fee** | The sums referred to in Schedule 2. |
| **Company** | **LIV GOLF LIMITED** (for Tournaments held in any country other than the USA) **and LIV GOLF INCORPORATED** (for any Tournament held in the USA) – c/o LIV Golf Holdings Limited, [REDACTED] [REDACTED] |
| **LIV** | **LIV GOLF HOLDINGS LIMITED,** [REDACTED] and all of its affiliates. |
| **International Series** | Sanctioned by the Asian Tour, the International Series is a ten-event series, staged globally. The International Series counts for the Asian Tour Order of Merit and qualifies for OWGR. International Series provides qualification opportunities for LIV Golf events and creates new opportunities and pathways for global professional golfers and "**International Series Tournament"** shall mean any tournament forming part of the International Series. |
| **Invitational Series** | The series of Tournaments to be staged by the Company during each relevant year of this Agreement comprising the Tournaments. |
| **League** | The professional worldwide golf competition comprising the regular Tournaments, the Team World Championship which in [REDACTED] and [REDACTED] will comprise the Invitational Series. |
| **League Rules and Regulations** | The rules and regulations relating to Tournaments and the League (as amended from time to time). |
| **Payor Entity** | The Company or an affiliate of the Company if designated as such by the Company. |
| **Player Draft** | The process for selection of players to represent Teams in the League and **Draft Date** means the date of any such draft. |
| **Player Identification** | All of the Player's personal attributes including his name, nickname, initials, autograph, signature, endorsement, reputation, public persona, voice, video, film portrayal, computer generated or animated portrayal, avatar, caricature, photograph, image, likeness, game play data and statistics, records, biographical information and all Intellectual Property rights in connection with such personal attributes belonging to the Player and all beneficial rights and goodwill that subsist in relation to any of the above, including the right to Exhibit, Exploit or otherwise use, or create derivative works based on, any of the above. |
| **Playing Commitment** | The obligation to play in each Tournament and each International Series Tournament specified below. |
| **Prize Money** | Has the meaning in the League Rules and Regulations. |
| **Season** | The period of time during each year when each Invitational Series takes place. |
| **Services** | • Granting the right, to the Company and LIV, to publicize and use the Player's name, image and likeness in connection with the promotion of each Tournament, in accordance with this Agreement. Company and LIV agree that prior to [REDACTED]; |



HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY

| | |
|---|---|
| | • participating in each relevant Tournament (as set out below) to the best of the Player's ability in accordance with the League Rules and Regulations and otherwise adhering to the League Rules and Regulations;<br>• providing the other services detailed in Schedule 1 and any other services as may be mutually agreed between the parties. |
| **Apparel** | All apparel of any kind including training apparel, hats, patches, badges, insignia, logoed items and footwear, gloves, patches, accessories and related products of any kind (including bags, golf bags, umbrellas, golf club head covers, towels, headwear, pads, arm, wrist and similar bands, water bottles, sports performance eyewear or watches, heart, speed or distance monitoring or other biometric devices (including any device designed to measure or collect data or other biometric output), and personal digital coaching, training or monitoring tools) worn, used or displayed by the Player. |
| **Term** | The date of signature of this Agreement until 60 days following the last Tournament in the █ Season or, the final International Series Tournament to be played by the Player (if later) during █ unless the Agreement is terminated earlier as set out below. |
| **Team** | The group of players selected in accordance with a Player Draft and/or the League Rules and Regulations in each case that will represent a team in the League in accordance with the League Regulations. |
| **Tournament** | The golf tournaments comprising the LIV Invitational Series in a Season, being a number of Regular Tournaments and the Team World Championship, in each case as set out in the League Rules and Regulations. |
| **Tournament Week** | The period during which each Tournament occurs, beginning at 10.00 am local time on the date that is 2 days immediately preceding such Tournament up to and including the final day of Tournament play and, where appropriate, the day following such final day as may be specified in the League Rules and Regulations. |

**General Terms & Conditions (which form part of this Agreement):**

(a) The Player is hereby invited to and agrees as a fundamental condition of this Agreement to participate (i) in each Regular Tournament in the Invitational Series during the █ Season and █ Season in each case in accordance with this Agreement and the League Rules and Regulations and in each Regular Tournament in the █ Season if he finishes ranked █ or better in the individual player rankings at the end of the █ Season, (ii) in each Team World Championship at the end of the █ and (if appropriate) █ Season if the Player has qualified for it (entry into the Team World Championship will occur in any relevant Season if the Player is ranked in the overall top █ players after completion of the Regular Tournaments in such Season and (iii) in █ International Series Tournaments (in total) across █ and █ and, if the Term is extended for █ the number of International Series Tournaments during that year as may be agreed between the parties ((i), (ii) and (iii) being the "**Playing Commitment**"). In consideration for the Player fully performing this Agreement, and in each case subject to this Agreement, the League Rules and Regulations the Company (or other Payor Entity as applicable) shall pay to the Player during the Term: (A) prize Money, as set out below; and (B) Commitment Fees in accordance with Schedule 2.

(b) The Player shall provide the Services to the best of his skill and ability and follow the Company's reasonable instructions in relation thereto (including as to times and locations and any changes to them). The Player acknowledges that any failure by the Player to fully and promptly provide any of the Services or to fail to comply with the provisions of this paragraph shall constitute a material breach of this Agreement. The Player shall ensure that the Player is eligible and able to play in each Tournament and to perform the Services. Should the Player be approached to and/or sign a deal to become a part of a

Team during the Term, the Company shall not, in the absence of any bona fide reason to do so otherwise, knowingly take any actions which could prevent such agreement.

(c) The Player agrees: (a) that he has been provided with the League Rules and Regulations and has familiarised himself with them and by signing this Agreement and/or by participating in each Tournament he agrees that he is bound by and shall comply fully at all times with the League Rules and Regulations.

(d) The Player hereby acknowledges and agrees that:

i. The Player's participation in and/or provision of any of the Services and any other activities (such as media interviews, etc.) may be subject to video/sound recording or still photography, and that such footage, still images or other content and materials depicting the Services and/or the Player's name, image, and likeness in connection with the advertising and promotion of each relevant Tournament (together with any advertising materials created in accordance with this Agreement, the "**Player Materials**"), may be utilized by the Company and LIV in any and all media whether now known or subsequently devised (including online and social media), and the Player hereby grants to the Company the right and license (with full right to sublicense to LIV, any sponsor or other corporate or commercial partner, or broadcaster or distributor of Tournament content) on a royalty-free, transferable, fully paid-up, worldwide basis (including on the official Tournament website and in social media) to use the Player Materials, for the following purposes: (A) in connection with the television, OTT or other internet or digital, and/or radio broadcasting of the Player's participation in each Tournament or the Services as part of the normal coverage thereof; (B) in connection with the commercialisation of LIV and/or the relevant Tournament including through arrangements with sponsors, betting partners and suppliers of products and services ; (C) by LIV in promoting its sports sponsorships generally (provided that such usage shall in no event contain any recommendations or endorsements by the Player of any particular company, product or service other than as permitted under this Agreement); (D) for the purpose of gifts/mementoes to be given to the Company's or LIV's clients/guests who may attend any Tournament or any related events; (E) for the Company's or LIV's internal use; and/or (F) as otherwise may be permitted by this Agreement or agreed by the Player (sub-paragraphs (A)-(F) (inclusive), the "**Permitted Purposes**"); and

ii. [REDACTED]. To the extent any such rights vest in Player, the Player hereby unconditionally and irrevocably assigns such rights to the Company (including by way of future assignment) and, upon any request by the Company, agrees (for no charge but at no cost to the Player) to duly execute and deliver to the Company such documents and do such acts as may be necessary to give full effect to the terms of this paragraph. The Player hereby unconditionally and irrevocably consents to usage of the Player Materials for the Permitted Purposes and waives any moral rights and/or right to any additional compensation other than that payable under this Agreement. The Player Materials may be subject to reasonable editing without Player approval provided such editing does not materially alter the manner in which Player is depicted, and further that such editing does not portray Player in a false or negative light.

(e) The Player hereby grants to LIV and the Company during the Term a royalty-free, worldwide, transferable, fully paid-up irrevocable right and license (with the right to grant sublicenses) to exhibit, exploit, copy, reproduce and otherwise use the Player Identification in connection with [REDACTED], and (b) all content of any kind created, recorded or otherwise generated by or on behalf of the League and/or any Team or any licensee or assignee thereof during the Term, and create derivative works thereof, in any manner whatsoever, alone or together with any other materials or content, on, via or through any and all media of any kind (now known or subsequently developed) in connection with, related to, in furtherance of, or for the purposes of the promotion of the League, any Tournament or LIV. Following the end of the Term, Company shall be entitled to use any content created during the Term

featuring the Player Identification for any purpose including for historic reference or archive purposes providing such use doesn't imply a then-current relationship with Player.

(f) The Company shall not be entitled to imply any personal endorsement by the Player of any business, product, or service and shall use its commercially reasonable efforts to feature at least two other Tournament players when using such footage/content in connection with any sponsorship or commercial endorsement. No other advertising or promotional materials featuring the Player (other than in connection with the promotion of any Tournament and as otherwise contemplated by this Agreement) shall be used by the Company without the Player's prior consent in writing (such consent not to be unreasonably withheld, conditioned or delayed) and, if requested, any such materials shall be sent to the Player's address set out above.

(g) [redacted]

(h) In the absence of a Legitimate Excuse, any failure by the Player to participate in any Tournament shall be a material breach of this Agreement. The Player shall notify the Company immediately if he believes may not be able to participate in any Tournament for any reason. "**Legitimate Excuse**" shall mean: (i) injury or illness preventing the Player from participating in a Tournament (with an independent medical report supporting such injury or illness to be provided to the Company on request); and (ii) any event or cause which LIV in its sole discretion reasonably determines would justify not participating in such Tournament (death or serious injury/illness of a family member, or birth of a Player's child, being examples of a justifiable failure to participate).

(i) The Player agrees to comply with all policies and procedures implemented by the Company for attendees at each Tournament, including all health and safety policies and procedures to address risks associated with COVID-19 pandemic.

(j) The Company may terminate this Agreement with immediate effect by written notice if (i) the Player is or is deemed to be in material breach of this Agreement (including as referred to in paragraphs (a), (b), (d) and (g) above) or of the League Rules and Regulations or (ii) if the Player commits any act of Misconduct.

(k) "**Misconduct**" shall occur if the Player (i) makes or has made any untrue, misleading, defamatory or derogatory comments about any Tournament, the Company, LIV, any of their respective products or services or any of their respective directors, officers, employees, staff or sponsors or which become known to the public at any time; (ii) fails an officially sanctioned drug test, is charged with any doping or drug-related offence or is admitted to a drug treatment programme; (iii) commits any criminal offence (other than a minor driving offence) or any deliberate act of unlawful discrimination, harassment or victimisation, or (iv) otherwise misconducts himself during any Tournament Week (including, but not limited to, being disqualified from such Tournament in circumstances which the Company determines, in good faith, brings or is reasonably likely to bring any Tournament or any of their respective directors, officers, employees, staff or sponsors, or the game of golf, into disrepute or engages in any other conduct which is morally repugnant or shocks or offends public decency).

(l) If Company terminates this Agreement due to any breach of the Playing Commitment, the Player shall, within 21 days of such termination, be obliged to refund to the Company any sums previously paid to him by way of Commitment Fees and such termination shall be without prejudice to any other rights or remedies the Company may have under this Agreement.

(m) Payment provisions:

   a. Subject to this Agreement the Company shall pay the Prize Money to the Player after the conclusion of each relevant Tournament and the Commitment Fees as set out in Schedule 2 respectively.
   b. The Player shall be responsible for the payment of any fees, costs or other expenses incurred in connection with any tax-related administrative services performed on the Player's behalf in connection with this Agreement (including tax filings) and the Company shall not be required to

be bear any such fees, costs or other expenses. In the event that the Company meets the cost of any tax-related administrative services for the benefit of the Player, the Company shall be entitled to deduct an amount equal to such cost (together with any VAT or other taxes thereon suffered by the Company) from any amount to be paid or reimbursed to the Player under this Agreement.

c. For the avoidance of doubt, the Player accepts that it shall be solely responsible for all taxes due in respect of any amount paid to the Player under or pursuant to this Agreement, including any taxes deducted at source through withholding (in respect of which the Company shall have no obligation to make any increased payment to the Player).

d. All payments under this Agreement shall be made together with such value added tax (or equivalent) as is required by law to be charged thereon, subject to the provision to the Company by the Player of a valid value added tax (or equivalent) invoice.

e. The Player further agrees that the payment of fees under this Agreement may be subject to tax subject to applicable laws. The Company shall be entitled to deduct and remit payment of such taxes, in accordance with applicable laws, directly to the applicable taxing authority from the payment due.

f. If any deduction is made from any payment for withholding tax in accordance with the previous paragraphs, then as soon as reasonably practicable, the Company shall provide the Player with a certificate of payment of tax from the relevant local taxation authority in relation to that payment (to the extent that the Company is able, using commercially reasonable endeavours, to obtain such a certificate).

g. [REDACTED].

(n) This Agreement shall not constitute a partnership, joint venture or contract of employment and neither party shall act or hold itself out as acting on behalf of the other. Each party acknowledges that in entering into this Agreement it has not relied upon any representation, warranty or other assurance save as is expressly set out in this Agreement. Nothing in this paragraph shall limit or exclude any liability for fraud.

(o) The Player represents and warrants to the Company and LIV that they have all necessary right, title and authority to enter into and perform this Agreement including as set out in paragraphs (b), (d) and (e).

(p) All notices and other communications delivered under this Agreement shall be in writing and shall be deemed duly given on (a) the delivery date if delivered personally, (b) the delivery date if sent by email by 5:00 p.m. Eastern time on a Business Day or, if not, on the next Business Day, (c) the first Business Day following the date of dispatch if delivered via a next-day service by a recognized next-day courier service, or (d) the earlier of confirmed receipt or the fifth Business Day following the date of mailing if delivered by registered or certified mail, return receipt requested, postage prepaid. All such notices shall (i) if sent to the Company or LIV shall be accompanied by a copy of such notice to be sent to [REDACTED] and (ii) if sent to the Player shall be copied to his duly authorised agent at the address set out above or to such other address as they may specify in writing.

(q) This document constitutes the entire agreement between the parties hereto and may not be changed or modified except by separate written agreement signed by both parties.

(r) Neither party shall have the right to assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the other party, except the Company shall be entitled to assign, sub-contract, delegate or otherwise transfer this Agreement, or any of its rights or obligations under this Agreement, to any of its affiliates.

(s) The rights granted, transferred or otherwise assigned by the Player to the Company and all other obligations owed by the Player under this Agreement are given and owed to the Company for itself and separately as trustee for LIV Golf Holdings Limited and all of its affiliates including LIV Golf Incorporated, and the Company may enforce such rights for itself and as trustee for LIV Golf Holdings Limited and such affiliates as beneficiary of the same.

(t) Nothing in this Agreement is intended to create, nor shall anything in this Agreement create, any rights enforceable by any third party or person not a party to this Agreement other than LIV Golf

Holdings Limited, Live Golf Incorporated and their affiliates as contemplated in the above paragraph, each of which the Player acknowledges may enforce any of the provisions under this Agreement which confer a benefit on it and any of the Player's obligations under this Agreement as if it was a party to this Agreement. The Player acknowledges that the Player's only rights and remedies arising out of or in connection with this Agreement are against the Company.

(u) The Player shall not use any of the Company's or LIV's branding, trademarks, logos or other intellectual property or refer to the Player by any designation relating to LIV.

(v) Without prejudice to the Company's and LIV's rights set forth in paragraphs (d)i and (d)ii, the parties agree to keep the terms of this Agreement strictly confidential at all times except as required by law.

(w) The expiry or termination of this Agreement shall not affect those of the any party's obligations which are either expressed to survive or which are capable of surviving such expiry or termination.

(x) This Agreement and any dispute or claim arising out of or in connection with it or its subject matter, or formation (including non-contractual disputes or claims), shall:

(i) in respect of any Tournament held in the US, be governed and construed in accordance with the laws of the State of New York, without regard to the Laws of the State of New York governing conflicts of law or the laws of any other jurisdiction that might be applied because of the conflicts of laws principles of any state, and shall be determined by arbitration in New York before one arbitrator; and

(ii) in respect of any Tournament outside of the US or in respect of any other dispute or claim under this Agreement, be governed and construed in accordance with the laws of England and Wales, and shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said Rules.

**PLAYER**

DocuSigned by:
By:______ 1D1E5FF9E7764D1...
Name: Matt Jones

Date: 5/31/2022

**LIV GOLF LIMITED:**

DocuSigned by: Louise Savage
By:______ 0EC96367430240C...
Name: Louise Savage
Title: Director

Date: 5/31/2022

**LIV GOLF INCORPORATED**

DocuSigned by: Atul Khosla
By:______ 27098D0B7D5141A...
Name: Atul Khosla
Title: COO

Date: 5/31/2022

**SCHEDULE 1**

**Services**

**Content Creation**

- On one occasion a Season, be available for a half-day content creation session;
- Participating in a pre-Tournament photoshoot and/or video content session lasting up to thirty (30) minutes at a location to be agreed by the Company;
- Participating in a photoshoot and/or video content session lasting up to 30 minutes during each Tournament Week;
- Participate in a mini-series / documentary series (to the extent one is planned by LIV and/or Company);
- Be included in any Company (or other LIV Golf entity) marketing collateral alongside no less than two (2) additional players in any piece of content (being three (3) players including the Player).

**Social Media**

- Subject to having the necessary rights to do so, Company will provide content to the Player on his request for use on his owned and controlled social platforms however, as between the parties, Company retains any and all rights in such content.



**Interviews**

Player shall participate in interviews with the media in support of each Tournament (90 mins, envisaged to be 2 x 30 minutes and 2 x 15 minutes interviews) and shall cooperate with the Company in other mutually agreed promotional activities in advance of and during each Tournament.

**Appearances**

- Ad-hoc sponsorship activation for any Company sponsor, at all Tournaments, on four (4) occasions per Season during the relevant Tournament Week or at another time as mutually agreed by the Player and Company;



HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY 

- Player to take ambassadorial role hosting at Team World Championship if not selected/eligible to play (hosting in hospitality etc) (subject to Player being incapacitated for a Legitimate Excuse);
- Participate in a Pro-Am event at each Tournament that the Player is participating in;
- attending and participating in each "Draft Event" taking place at the location designated by the Company for no less than five (5) hours;
- participating in the "Photo Call & Welcome Reception";
- participating in a LIV "Meet and Greet" during each Tournament Week (at a date and time to be confirmed);attending the prize giving if the Player or its Team finishes in the top 3;
- additional LIV "Meet and Greet" if the Player or its team wins a Tournament.

**Other obligations**

- During each Tournament Week, conduct 1 x 30 minute hospitality/junior clinic;
- At the Team World Championship, if not selected to participate, act as an ambassador and commit to ten (10) hours of hosting (or similar) across a Tournament Week;
- Attend and participate in each Player Draft as either a Captain or a 'Pick';
- Fulfil captain duties – see document 'Captain Responsibilities';
- [REDACTED]
- Signing a reasonable number of autographs/memorabilia items.

**SCHEDULE 2**

**Commitment Fees**

**1. Payment of Commitment Fee**

1.1 Subject as provided in this Agreement and the League Regulations, the Payor Entity shall pay the following Commitment Fees to the Player: (a) [REDACTED] on signature of this Agreement and (b) [REDACTED] on the Player's first participation in a Regular Tournament in [REDACTED]

1.2 [REDACTED].

1.3 The Commitment Fees shall be paid in cash.

1.4 No Commitment Fee Payments shall become due following the termination of this Agreement.

**2. Default**

2.1 [REDACTED]

2.2 [REDACTED]

3.1 [REDACTED]



HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY