```
 1                 UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5   MATT JONES, BRYSON DECHAMBEAU,    )  C-22-04486 BLF
     PETER UIHLEIN, AND LIV GOLF       )
 6   INC.,                             )  SAN JOSE, CALIFORNIA
                                       )
 7              PLAINTIFFS,            )  APRIL 7, 2023
                                       )
 8        VS.                          )  PAGES 1-64
                                       )
 9   PGA TOUR, INC.,                   )
                                       )
10              DEFENDANT AND          )
                COUNTER-PLAINTIFF,     )
11                                     )
          VS.                          )
12                                     )
     LIV GOLF, INC., THE PUBLIC        )
13   INVESTMENT FUND OF THE KINGDOM    )
     OF SAUDI ARABIA, AND YASIR        )
14   OTHMAN AL-RUMAYYAN,               )
                                       )
15              COUNTER-DEFENDANTS.    )
     _____ )
16

17

18              TRANSCRIPT OF ZOOM PROCEEDINGS
           BEFORE THE HONORABLE BETH LABSON FREEMAN
19              UNITED STATES DISTRICT JUDGE

20

21              APPEARANCES ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:   LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2     A P P E A R A N C E S :

3

4     FOR THE PLAINTIFFS:     QUINN EMANUEL URQUHART & SULLIVAN LLP
                              BY:  JOHN B. QUINN
5                             805 SOUTH FIGUEROA STREET, 10TH FLOOR
                              LOS ANGELES, CALIFORNIA  90017
6

7     FOR DEFENDANT AND       KEKER, VAN NEST & PETERS LLP
      COUNTER-PLAINTIFF:      BY:  ELLIOT R. PETERS
8                                  NICHOLAS S. GOLDBERG
                              633 BATTERY STREET
9                             SAN FRANCISCO, CALIFORNIA  94111

10    FOR                     WHITE & CASE
      COUNTER-DEFENDANTS:     BY:  CAROLYN LAMM
11                            701 THIRTEENTH STREE, N.W.
                              WASHINGTON, D.C.  20005
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1     SAN JOSE, CALIFORNIA                    APRIL 7, 2023

 2                    P R O C E E D I N G S

 3          (ZOOM PROCEEDINGS CONVENED AT 1:04 P.M.)

 4                 THE COURT:  GOOD AFTERNOON, EVERYONE.  THANK YOU FOR

 5     JOINING ON ZOOM.

 6          LET'S CALL THE CASE AND GET YOUR APPEARANCES.

 7                 THE CLERK:  CALLING CASE 22-4486, JONES, ET AL.,

 8     VERSUS PGA TOUR, INC.

 9          COUNSEL, IF YOU COULD PLEASE STATE YOUR APPEARANCES, AND

10     IF WE COULD BEGIN WITH PLAINTIFFS AND THEN MOVE TO DEFENDANT.

11                 MR. QUINN:  YOUR HONOR, THIS IS JOHN QUINN, NOT

12     KEVIN TERUYA AS IT SAYS ON THE SCREEN.  I'M APPEARING FOR

13     LIV GOLF AND FOR MATT JONES, BRYSON DECHAMBEAU, AND

14     PETER UIHLEIN.

15                 THE COURT:  HELLO.

16                 MR. PETERS:  GOOD AFTERNOON, YOUR HONOR.

17          ELLIOT PETERS OF KEKER, VAN NEST & PETERS, APPEARING ALONG

18     WITH MY PARTNER, NICK GOLDBERG, FOR THE PGA TOUR.

19                 THE COURT:  WELCOME.

20                 MS. LAMM:  AND CAROLYN LAMM WITH WHITE & CASE

21     APPEARING FOR PIF AND HIS EXCELLENCY RUMAYYAN.

22                 THE COURT:  ALL RIGHT.  WELL, A LOT HAS HAPPENED

23     SINCE I LAST SAW YOU AND SET THIS CASE MANAGEMENT CONFERENCE.

24     I DON'T THINK THERE WAS ANYTHING THAT WAS UNPREDICTED, BUT IT

25     HAS ALL ESSENTIALLY BLOWN UP MY DOCKET.  THE WAY YOUR DISCOVERY
```

1        HAS BEEN PROCEEDING IS BEING BLOWN UP AS WELL, I ASSUME.

2            AND SOME THINGS HAVE HAPPENED EVEN SINCE YOU FILED YOUR

3        CASE MANAGEMENT REPORT, SO YOU CAN CERTAINLY FILL ME IN AS TO

4        HOW THINGS HAVE CHANGED.

5            I CERTAINLY KNOW THAT THE APPEAL OF MY ORDER REVIEWING

6        MAGISTRATE JUDGE VAN KEULEN'S ORDER HAS BEEN FILED, AND I HAVE

7        MOTIONS TO STAY DISCOVERY BASED UPON AN ANTICIPATED MOTION TO

8        DISMISS AND THE APPEAL OF THE, WHAT IS A DISPOSITIVE ORDER IN

9        THE PROCEDURAL POSTURE OF THE DISCOVERY REQUEST.

10           THERE'S A MOTION TO BIFURCATE THAT'S PENDING.

11           THIS ALL GETS -- AND MOTIONS TO SHORTEN TIME, AND MOTIONS

12       TO SET BRIEFING SCHEDULES ON MOTIONS TO DISMISS.

13           I'M ACTUALLY HOPING SOME OF THIS WE CAN ACTUALLY TALK

14       THROUGH TODAY AND MAYBE MOVE THINGS ALONG EFFICIENTLY, BECAUSE

15       WE DON'T NEED TO WAIT EXTENSIVE PERIODS OF TIME FOR SOME REALLY

16       BASIC THINGS.

17           AT THE END OF THE DAY, MR. PETERS, I UNDERSTAND AND

18       APPRECIATE THAT YOU CONTINUE TO REQUEST A MODIFICATION IN THE

19       CASE SCHEDULE AND TRIAL, AND I THINK IT MAY WELL BE THAT WITH

20       PIF AND HIS EXCELLENCY FILING THEIR NOTICE OF APPEAL, YOUR WISH

21       MAY COME TRUE BECAUSE I MAY BE QUITE LIMITED IN WHAT I CAN DO

22       AS WELL.

23           ALL RIGHT.  SO WITH THAT SORT OF OPENING, I DO WANT TO

24       HEAR FROM EACH OF YOU AS TO WHAT YOU'D LIKE TO COVER TODAY.

25           MR. QUINN, LET ME START WITH YOU FOR THE NAMED PLAINTIFFS

```
 1    IN THE CASE.
 2           MR. QUINN:  THANK YOU, YOUR HONOR.
 3       THE COURT INDICATED IT WAS GOING TO SET THIS STATUS
 4    CONFERENCE AT THE TIME, LAST TIME WE WERE TOGETHER, IN ORDER TO
 5    SEE WHERE WE WERE, INCLUDING WHERE WE WERE ON DISCOVERY.
 6           THE COURT:  UM-HUM.
 7           MR. QUINN:  AND WE HAVE MET THE DEADLINE FOR
 8    SUBSTANTIAL COMPLETION OF DOCUMENT DISCOVERY.  WE HAVE
 9    CHECKERBOARDED THE NEXT COUPLE OF MONTHS WITH DEPOSITIONS.
10    DATES HAVE BEEN CONFIRMED, WITNESSES HAVE BEEN LINED UP.
11       WE DID OUR FIRST DEPOSITION YESTERDAY.  THERE ARE FOUR
12    DEPOSITIONS SCHEDULED NEXT WEEK.
13       I MEAN, WE'RE VERY -- FROM THE PLAINTIFFS' SIDE, WE'RE
14    VERY ENCOURAGED WITH THE VERY FIRST DEPOSITION THAT WE TOOK.
15           THERE SEEMS TO BE NO DISPUTE HERE THAT THE PGA TOUR DOES,
16    IN FACT, MONOPOLIZE ELITE MEN'S GOLF.  THEY ARE A MONOPOLIST
17    FOR THE PROFESSIONAL TOUR IN ELITE MEN'S GOLF, AND THEY
18    CAN'T -- AT LEAST THE WITNESS THEY PROVIDED YESTERDAY COULDN'T
19    COME UP WITH ANY PROCOMPETITIVE JUSTIFICATIONS FOR THE KEY
20    DEBILITATING ISSUES HERE.
21           THE COURT:  WELL, IT SOUNDS LIKE WE DON'T NEED A
22    TRIAL AT ALL, MR. QUINN.
23           MR. QUINN:  NO, I THINK AT SOME POINT WE PROBABLY
24    WILL BE MOVING FOR SUMMARY JUDGMENT.
25           THE COURT:  WELL --
```

1          MR. QUINN:  AND REMARKABLY, WE'VE LEARNED THAT THE

2     TOUR HAS ORCHESTRATED, THROUGH A THIRD PARTY OPPOSITION, A

3     GRASSROOTS CAMPAIGN AGAINST, AGAINST LIV GOLF, INCLUDING -- I

4     DON'T KNOW IF THE COURT REMEMBERS AT THE TIME OF THE TRO

5     HEARING, THERE WAS A REFERENCE TO PROTESTS AGAINST LIV GOLF UP

6     IN PORTLAND.

7          THE COURT:  UM-HUM.

8          MR. QUINN:  AND THAT WAS OFFERED AS AN INDICATION AS

9     TO WHY THEY NEEDED TO KEEP THE PURITY OF WHAT THEY CALL THEIR

10    ECOSYSTEM FROM THE SAUDI TAINT.

11         WHAT THEY DIDN'T TELL US AT THE TIME AND WHAT WE HAVE

12    SINCE LEARNED IS THAT THEY CHARTERED A PRIVATE JET TO FLY

13    PROTESTERS TO ORGANIZE THIS AND FLY PEOPLE, INCLUDING,

14    SHOCKINGLY, MEMBERS OF ORGANIZATIONS OF VICTIMS OF 9/11, TO

15    ORCHESTRATE THESE -- TO CONDUCT THESE PROTESTS, IN EFFECT TO

16    ACTUALLY CREATE THIS SAUDI TAINT.

17         SO WE'RE ENCOURAGED ABOUT THIS.  WE HAVE THE DEPOSITIONS

18    SCHEDULED OVER THE NEXT TWO MONTHS.  WE HAVE -- WE HAVE

19    OBVIOUSLY TROUBLED PEOPLE TO LINE UP THEIR SCHEDULES SO THAT WE

20    CAN TAKE THESE DEPOSITIONS, AND WE THINK THOSE DEPOSITIONS

21    SHOULD GO FORWARD NOW BEFORE MEMORIES FADE AND BEFORE PEOPLE

22    LEAVE THE TOUR, BEFORE PEOPLE ARE NO LONGER EMPLOYEES OF THE

23    TOUR.

24         THE COURT:  UM-HUM.

25         MR. QUINN:  NOW, WHAT THE TOUR TELLS US IS THAT THEY

1    SIMPLY CANNOT -- IT'S NOT FAIR FOR THEM TO GO FORWARD WITH

2    DEPOSITIONS, WITH DISCOVERY NOW BECAUSE THEY DON'T HAVE THE

3    TESTIMONY OF HIS EXCELLENCY AL-RUMAYYAN, AND I RESPECT --

4    RESPECTFULLY, YOUR HONOR, THAT DOESN'T SEEM TO HOLD A LOT OF

5    WATER.  THERE'S AN AWFUL LOT OF DISCOVERY THAT CAN BE, AND

6    SHOULD BE, DONE IN THE MEANTIME.

7        BUT IN EFFECT, THEY'RE SAYING YOU SHOULD -- THE COURT

8    SHOULD PUT OFF THE DISCOVERY SCHEDULE FOUR MONTHS BECAUSE OF

9    THE UNAVAILABILITY OF DISCOVERY DIRECTED TO HIS EXCELLENCY OR

10   PIF.

11       BUT I THINK WE CAN ALL ANTICIPATE THAT FOUR MONTHS FROM

12   NOW, WE WON'T BE IN ANY DIFFERENT POSITION THAN WE ARE RIGHT

13   NOW.

14       WE HAVE A NINTH CIRCUIT APPEAL.  I MEAN, LOOKING AHEAD,

15   CONCEIVABLY, THIS COULD EVEN BE AN ISSUE THAT GOES TO THE

16   UNITED STATES SUPREME COURT.

17       SO IF WE'RE GOING TO --

18           THE COURT:  YOU CAN ALWAYS FILE A CERT PETITION.

19           MR. QUINN:  YOU CAN ALWAYS FILE A PETITION.

20       SO IF WE TAKE THE TOUR AT ITS WORD HERE THAT THEY CAN'T

21   CONDUCT DISCOVERY WITHOUT -- OF OTHER PEOPLE WITHOUT ACCESS TO

22   THIS DISCOVERY, IN EFFECT, WE'RE SAYING THAT WHAT THEY'RE

23   ASKING FOR, IN EFFECT, IS A STAY.

24       THEY OBJECT TO THAT CHARACTERIZATION.  TECHNICALLY I

25   SUPPOSE IT'S NOT A STAY, BUT THAT'S WHAT IT AMOUNTS TO.

1          THINGS AREN'T GOING TO CHANGE IN FOUR MONTHS.  THINGS

2     AREN'T GOING TO CHANGE FOR FOUR MONTHS AFTER THAT.

3          SO WE SUBMIT THAT THE DISCOVERY SHOULD GO FORWARD AND THE

4     COURT WILL THEN HAVE MORE INFORMATION BEFORE IT ABOUT, YOU

5     KNOW, WHAT THIS ALLEGED MISSING INFORMATION IS THAT HIS

6     EXCELLENCY OR PIF MAY HAVE.

7               THE COURT:  WELL, HOW WOULD WE KNOW WHAT IT IS UNTIL

8     THEY GIVE IT OVER?

9               MR. QUINN:  WELL, I MEAN, THERE IS ALWAYS THE PROBLEM

10    OF THE UNKNOWN, SO I UNDERSTAND THAT FOR SURE.

11         BUT THEY HAVE SOME -- THEY HAVE THE DOCUMENTS FROM THE

12    OTHER PARTIES, OVER 200,000 DOCUMENTS.

13         AS A RESULT OF THESE DEPOSITIONS, THEY WILL GET MORE

14    INFORMATION.  THEY'LL BE ABLE TO ASK QUESTIONS ABOUT WHAT WAS

15    SAID.

16         I'M NOT SAYING THAT THEY'RE GOING TO HAVE PERFECT

17    KNOWLEDGE.  I'M NOT SAYING THAT THEY'RE GOING TO HAVE THE SAME

18    AS BEING ABLE TO DEPOSE HIS EXCELLENCY.

19         BUT IN TERMS OF THE COURT'S DECISION MAKING ABOUT GOING

20    FORWARD, WHAT SHOULD HAPPEN TO THIS CASE, THE COURT WILL HAVE

21    MORE INFORMATION AFTER THESE DEPOSITIONS ARE DONE.  THE COURT

22    WILL BE IN A BETTER POSITION, I SUBMIT, TO JUDGE WHETHER

23    THERE'S SOMETHING THAT IS ACTUALLY -- THAT'S CLEARLY MISSING

24    AND IMPORTANT, OR WHETHER THERE DOESN'T REALLY SEEM TO BE

25    ANYTHING THAT'S MISSING AND IMPORTANT.

1        SO WE SUBMIT THAT IT'S PREMATURE FOR THE COURT TO MAKE ANY

2    DECISION ABOUT CHANGING THE DISCOVERY SCHEDULE.  LET'S HOLD

3    PEOPLE'S -- LET'S HOLD PEOPLE'S FEET TO THE FIRE AND LET'S GET

4    THESE DEPOSITIONS DONE AND WE CAN REVISIT THIS AFTER THE

5    DEPOSITIONS ARE DONE.

6        THE TOUR RAISES THE OBJECTION, AND I DID WANT TO ADDRESS

7    THIS, THAT WE SUPPOSEDLY DID A DOCUMENT DUMP ON THEM, AN

8    AVALANCHE OF SOME 200,000 DOCUMENTS.

9        I REALLY HAVE TO EXPLAIN WHAT THAT IS, YOUR HONOR.

10        THEY INSISTED THAT FOR ANY RESPONSIVE TEXT, ANY RESPONSIVE

11    TEXT -- THIS IS REMARKABLE -- THAT WE PRODUCE, FOR CONTEXT,

12    QUOTE-UNQUOTE, ALL OTHER TEXTS WITHIN 96 HOURS OF THE

13    RESPONSIVE TEXT.

14        WE TOLD THEM, "YOU'RE GOING TO GET A LOT OF STUFF.  YOU'RE

15    GOING TO GET A LOT OF UTTERLY IRRELEVANT INFORMATION."

16        THEY INSISTED ON IT.

17        WE DIDN'T WANT TO BE IN THE POSITION OF BEING HERE TODAY

18    BEFORE YOUR HONOR AND THEM SAYING, "WE'VE ASKED FOR ALL THIS

19    CONTEXT INFORMATION AND THEY DIDN'T GIVE IT TO US."

20        SO WE GAVE IT TO THEM.  THAT MATERIAL IS 70 PERCENT,

21    70 PERCENT OF THOSE 280,000 DOCUMENTS THAT THEY SAY WE DUMPED

22    ON THEM AT THE LAST MINUTE.  IT'S STUFF THAT WE GAVE THEM FOR

23    CONTEXT -- 96 HOURS, I'VE NEVER HEARD OF THIS BEFORE -- AROUND

24    TEXTS BECAUSE THEY INSISTED ON IT.

25        THE OTHER STUFF IS BRING DOWN DISCOVERY, YOU KNOW, TOPPING

1     UP TO DATE THINGS THAT THEY'VE ASKED FOR AFTER DECEMBER.

2          SO THEY'RE, OF COURSE, TRYING TO PAINT THE PICTURE THAT

3     WE'VE DRAGGED OUR FEET AND MADE THIS DIFFICULT OR IMPOSSIBLE

4     FOR THEM TO TAKE DEPOSITIONS.

5          I SUBMIT THAT THERE IS REALLY NOTHING TO THAT AT ALL.

6          THEY ASKED US -- THEY TOLD US WHO THEY WANTED TO DEPOSE

7     AND ASKED FOR DATES.  WE GAVE THEM DATES FOR EVERYONE THEY

8     ASKED FOR WHO WE CONTROLLED.

9          THEY'VE BEEN DRAGGING THEIR FEET.  THEY'VE NOTICED A GRAND

10    TOTAL OF FOUR DEPOSITIONS.  I MEAN, WE TOOK ONE -- WE'VE

11    NOTICED -- WE'RE PROCEEDING WITH THE DEPOSITIONS.

12         THEY'RE TRYING TO CREATE A PICTURE THAT THIS CAN'T GO

13    FORWARD, BUT IT'S A MANUFACTURED PICTURE.  WE'LL BE TAKING FOUR

14    MORE DEPOSITIONS JUST NEXT WEEK.

15         I MEAN, WHAT SHOULD NOT HAPPEN HERE IS THAT THIS CONDUCT

16    EVADES SCRUTINY BY THE COURT.

17         SO I WOULD SUGGEST IT'S TOO SOON TO ADDRESS THE ISSUE

18    ABOUT WHETHER THE TRIAL DATE SHOULD BE VACATED.  THE COURT WILL

19    BE IN A BETTER POSITION AT THE END OF THIS DISCOVERY TO MAKE A

20    DECISION ABOUT THAT.

21         OUR CONCERN IS THAT IF THIS IS PUT OFF INDEFINITELY, WE'RE

22    GOING TO -- THAT THERE'S A POTENTIAL THAT THIS MONOPOLIST

23    BEHAVIOR WILL EVADE JUDICIAL SCRUTINY AT ALL, TO THE HARM OF

24    CONSUMERS, THE PUBLIC, AND ALL THE DIFFERENT PARTIES WHO ARE TO

25    BE PROTECTED BY THE ANTITRUST LAWS, ALL BECAUSE OF A SINGLE

1    DISCOVERY ISSUE.

2         FRANKLY, IT COMES DOWN TO ONE WITNESS, MR. AL-RUMAYYAN --

3    THEY HAVEN'T REALLY EXPRESSED INTEREST IN ANYONE ELSE -- ALL

4    BECAUSE OF THIS ONE PERSON WHO, BY THE WAY, WE DON'T CONTROL.

5    WE DON'T CONTROL HIM.

6         THERE'S OTHER, OTHER FOLKS WHO ARE GOING TO MAKE THE

7    DECISIONS ABOUT WHETHER THERE'S TESTIMONY AND WHEN THERE'S

8    TESTIMONY THERE OR NOT.

9         AND THE PROBLEM HERE IS THAT THIS IS ONCE IN A BLUE MOON

10   THAT YOU HAVE A NEW ENTRANT TO THIS MARKETPLACE, AND THIS

11   BEHAVIOR NEEDS TO SEE THE LIGHT OF DAY, IT NEEDS TO BE JUDGED

12   FOR WHAT IT IS.  AND IF LIV DROPS OUT, AND IF THIS EVADES

13   JUDICIAL SCRUTINY, WE DON'T KNOW HOW LONG IT'LL BE BEFORE THERE

14   WILL BE ANOTHER POTENTIAL NEW ENTRANT AND THESE PRACTICES WILL

15   ACTUALLY BE EXAMINED.

16        SO, YOUR HONOR, I THINK OBVIOUSLY THERE'S A POTENTIAL AT

17   THE END OF THE DAY THAT THERE MAY NOT BE EVIDENCE AVAILABLE FOR

18   THE JURY.  THAT'S NOT A RARE OCCURRENCE.  IT HAPPENS SOMETIMES.

19        I PERSONALLY HAVE TRIED A CASE IN THE NORTHERN DISTRICT

20   WHERE THE JURY GOT AN INSTRUCTION THAT THERE WAS TESTIMONY THAT

21   WAS SOUGHT AND IT WASN'T AVAILABLE AND THE JURY CAN, YOU KNOW,

22   REACH WHATEVER CONCLUSIONS IT WANTS, USE THAT FOR WHATEVER,

23   WHATEVER PURPOSE -- YOU KNOW, WHATEVER CONCLUSION IT THINKS IS

24   APPROPRIATE AND LEAVE THAT UP TO THE JURY, AND THERE'S CASE LAW

25   TO SUPPORT THAT.

1        THE COURT HAS REFERENCED THE BIFURCATION MOTION.

2        I THINK THIS CASE NEEDS TO BE PREPARED FOR TRIAL AND GO TO

3    TRIAL, YOUR HONOR, AND IT SHOULDN'T BE HELD UP BY THIS ONE

4    ISSUE.

5            THE COURT:  ALL RIGHT.

6        LET ME TURN TO MR. PETERS, AND THEN, MS. LAMM, I WILL TURN

7     TO YOU BECAUSE YOUR CLIENTS ARE IN A DIFFERENT POSITION.

8        MR. PETERS.

9            MR. PETERS:  THANK YOU, YOUR HONOR.

10       LET ME FIRST SAY, WE HAVE A VERY DIFFERENT VIEW OF THE

11    EVIDENCE THAN MR. QUINN.  AND IT'S IMPORTANT, FOR EXAMPLE, TO

12    OBSERVE THAT JUST EARLIER THIS WEEK IN THE UNITED KINGDOM, AN

13    ARBITRATION PANEL REJECTED VERY SOUNDLY THE CORE OF THE SAME

14    CLAIMS WHICH ARE BEING PRESENTED HERE, WHICH IS WHETHER OR NOT

15    THE COMMISSIONER OF THE EUROPEAN TOUR ACTED PROPERLY IN

16    FOLLOWING THE CONTRACTUAL TERMS THAT GAVE HIM THE AUTHORITY TO

17    FINE AND BAN PLAYERS WHO VIOLATED THOSE CONTRACTS.

18       AND AS YOUR HONOR IS WELL AWARE, THAT'S THE SAME ISSUE

19    PRESENTED HERE, AND SO WE FEEL VERY CONFIDENT ABOUT THE MERITS,

20    TOO, BUT THAT'S NOT REALLY WHAT WE'RE HERE TODAY TO DISCUSS.

21            THE COURT:  UM-HUM.

22            MR. PETERS:  MR. QUINN SAYS THAT THIS IS JUST ABOUT

23     THE DEPOSITION OF ONE PERSON, AND THAT'S NOT TRUE AT ALL,

24     BECAUSE PIF ISN'T AGREEING TO PRODUCE ANY DOCUMENTS, AND PIF

25     WAS LIV, OF COURSE, BEFORE LIV EXISTED.

1        AND AS THIS COURT HAS ACKNOWLEDGED IN ITS RULING ON

2    FOREIGN SOVEREIGN IMMUNITIES, THE DISCOVERY FROM PIF, DOCUMENTS

3    COVERING A SUBSTANTIAL PERIOD OF TIME, COMMUNICATIONS,

4    COMMUNICATIONS WITH GOLFERS, COMMUNICATIONS WITH SPONSORS, ALL

5    KINDS OF COMMUNICATIONS, AND WE DON'T KNOW WHAT THEY ARE.

6        BUT WE DO KNOW THAT THEY'RE RELEVANT TO ALL KINDS OF

7    ISSUES, BOTH ON THE ANTITRUST CLAIMS AND IN THE COUNTERCLAIMS.

8        AND THE COURT, IN ITS DE NOVO REVIEW OF

9    MAGISTRATE JUDGE VAN KEULEN'S ORDER, ACKNOWLEDGED AND APPEARED

10   TO AGREE THAT THIS DISCOVERY IS RELEVANT.

11       SO HERE, HERE IS THE PIF/LIV POSITION, THE SEPARATION

12   BETWEEN THEM.  YES, THEY'RE DISTINCT PARTIES, THEY'RE DISTINCT

13   ENTITIES.

14       BUT THE LAST TIME WE WERE HERE, MR. QUINN REPRESENTED BOTH

15   OF THEM.  AND AT THE BEGINNING OF THIS CASE, GIBSON, DUNN AND

16   QUINN REPRESENTED BOTH OF THEM, AND THEY BROUGHT WHITE & CASE

17   ON BOARD FAIRLY RECENTLY TO CREATE THE SENSE THAT THERE'S A

18   SEPARATION AMONG THEM ALL WHEN, IN FACT, WE KNOW FROM THE

19   AGREEMENT AND THE LITTLE BIT OF EVIDENCE THAT WE'VE BEEN ABLE

20   TO GLIMPSE THAT PIF CONTROLS LIV, PIF CONTROLS THIS LITIGATION,

21   PIF HAS THE PURSE STRINGS, PIF HAS THE ECONOMIC INTERESTS.

22       IT'S FROM PIF WHERE WE WILL GET INFORMATION THAT'S

23   RELEVANT TO THIS CLAIM OF MONOPOLY, OF COMPETITION, OF DAMAGES,

24   AND I CAN GO INTO MORE DETAIL ABOUT THAT, BUT I DON'T THINK I

25   NEED TO.

1    PIF IS THE -- PIF AND MR. AL-RUMAYYAN, SIMPLY BECAUSE HE'S

2    THE MOST SENIOR OFFICIAL THERE THAT WE'RE AWARE OF, ARE THE

3    MOST SIGNIFICANT WITNESSES ON THE PLAINTIFFS' SIDE OF THIS CASE

4    FROM OUR PERSPECTIVE, AND WE DON'T KNOW WHAT WE DON'T KNOW

5    UNTIL WE SEE IT.

6    BUT THERE'S OBVIOUSLY SOME REASON WHY THEY ARE TRYING SO

7    VERY HARD NOT TO COMPLY WITH TWO LENGTHY AND CAREFULLY REASONED

8    ORDERS BY DISTINGUISHED JURISTS IN THIS DISTRICT.

9    AND WE DON'T DENY THAT THEY HAVE A RIGHT TO APPEAL, BUT IN

10   DOING SO, THEY ARE CHOOSING NOT TO COMPLY WITH ORDERS, BUT

11   INSTEAD TO DELAY THIS CASE.

12   AND AT THE SAME TIME THAT THEY WON'T COOPERATE, THEY WON'T

13   PROVIDE DISCOVERY, AND THEY'RE REALLY THE REAL PARTY IN

14   INTEREST IN AN ECONOMIC SENSE BECAUSE, OF COURSE, EVEN THE

15   PLAYERS, YOUR HONOR, HAVE ASSIGNED CONTRACTUALLY, THEY HAVE

16   ASSIGNED, IN EXCHANGE FOR TENS OF MILLIONS OF DOLLARS, THEY

17   HAVE ASSIGNED ALL THEIR RIGHTS AND THE INTERESTS AND CONTROL OF

18   THIS LITIGATION TO LIV WHICH IS, IN TURN, CONTROLLED BY PIF.

19   SO PIF IS FUNCTIONALLY IN CHARGE OF THIS LAWSUIT AND THE

20   REAL PARTY OF INTEREST.

21   PIF AND YAR WENT SO FAR RECENTLY AS TO DUCK SERVICE OF OUR

22   COMPLAINT AND THEN SUBMIT TO YOUR HONOR FINALLY, WHEN SERVICE

23   WAS EFFECTUATED, WHAT'S PENDING BEFORE YOUR HONOR IS AN

24   ADMINISTRATIVE MOTION TO PUSH OUT THE BRIEFING ON A MOTION TO

25   DISMISS WELL INTO JULY -- I'M NOT SURE WHEN WE COULD GET A

1    HEARING DATE, I KNOW YOUR HONOR IS VERY BUSY -- BUT SO THAT

2    THEIR MOTION TO DISMISS WON'T BE DECIDED UNTIL SOMETIME IN LATE

3    SUMMER OR THE FALL, AND THEN THEY SEEK A STAY OF THE PARTY

4    DISCOVERY ON THAT BASIS EVEN THOUGH THEY'VE ALSO BEEN

5    SUBPOENAED.

6         NOW, CLEARLY THE ISSUES THAT THEY PLAN TO RAISE IN THEIR

7    MOTION TO DISMISS HAVE ALREADY BEEN LITIGATED.  AND THEY CAN

8    RAISE THEM AGAIN.  THEY HAVE THAT RIGHT.  BUT IT'S UNLIKELY

9    THAT YOUR HONOR, HAVING CAREFULLY CONSIDERED THE MATTER AND

10   RULED DE NOVO ON THE EXACT SAME QUESTION, IS GOING TO REACH A

11   DIFFERENT CONCLUSION LATER IN THE SUMMER THAN YOU REACHED

12   EARLIER IN THE WEEK.

13        SO IN SUMMARY, WHAT MR. QUINN IS PROPOSING IS THAT HIS

14   SIDE OF THE CASE GETS TO CREATE A REAL UNFAIRNESS WHERE WE

15   DON'T GET THE MOST CRITICAL DISCOVERY ON THE MOST CRITICAL

16   ISSUES FROM THE MOST CRITICAL WITNESSES.  WE MAY WELL DEPOSE

17   OTHER PIF PEOPLE BESIDES MR. AL-RUMAYYAN, BUT NOT HAVING SEEN

18   THEIR DOCUMENTS, IT'S HARD FOR US TO KNOW WHO THEY ARE.

19        SO THEY WOULD LIKE A SITUATION WHERE THEY CREATE THE

20   IMPOSSIBILITY FOR US TO COMPLETE DISCOVERY, THEY CREATE DELAY,

21   AND THEY VISIT ALL OF THE PREJUDICE CAUSED BY THEIR DECISIONS

22   ON THE PGA TOUR, ON MY CLIENT, AND THAT'S JUST NOT FAIR.

23        WE -- THEY GOT -- AND I WANT TO REMIND THE COURT OF THIS

24   BECAUSE I THINK IT'S IMPORTANT.  THEY CAME IN AND ASKED FOR AN

25   EXPEDITED SCHEDULE OF THIS CASE, AND WE DIDN'T OPPOSE THAT.

1     THE ONE THING I SAID TO YOUR HONOR, BACK IN AUGUST, WAS WE

2     NEED THE DISCOVERY FROM THE SAUDI PARTIES, FROM PIF.  WE NEED

3     THAT.

4     AND WHAT DID THEY SAY?  THEY SAID, THAT'LL GO SWIMMINGLY,

5     NO PROBLEM AT ALL.  AND THAT CAME FROM A LAWYER AT

6     GIBSON, DUNN.

7     AND GIBSON, DUNN CREATED THIS ENTIRE STRUCTURE.  PIF,

8     PERFORMANCE54, LIV, IT'S THAT LAW FIRM WHOSE NAME IS ON THE

9     AGREEMENT WHICH CREATES THIS STRUCTURE.  SO THEY WERE INVOLVED

10    FROM THE BEGINNING.  THAT LAWYER WAS SPEAKING WITH AUTHORITY ON

11    BEHALF OF PIF.

12    THE NEXT TIME WE APPEARED BEFORE YOUR HONOR, YOU'LL RECALL

13    WHAT THEY SAID.  THEY SAID, "OH, COME ON, JUST ASK FOR IT

14    VOLUNTARILY, WE'LL COOPERATE."

15    AND YOUR HONOR WILL RECALL THE DIALOGUE YOU HAD WITH

16    COUNSEL WHERE YOU SAID, "DO YOU REALLY EXPECT MR. PETERS TO

17    ACCEPT WHAT YOU SELECT AS THE DOCUMENTS IN THE CASE?"

18    BUT THEY WERE SUGGESTING, "WE'LL BE REASONABLE.  WE'LL

19    COOPERATE VOLUNTARILY."

20    NOW WE KNOW THE TRUTH, YOUR HONOR, BECAUSE THEY HAVE BEEN

21    MISLEADING THE COURT ABOUT THIS.

22    THEY WON'T PROVIDE ANYTHING.  THEY WON'T PROVIDE A SINGLE

23    SHRED OF PAPER FROM PIF.  THEY WON'T PROVIDE ANY WITNESSES FOR

24    30(B)(6) TESTIMONY.  THEY WON'T PROVIDE MR. AL-RUMAYYAN WHO, AS

25    YOUR HONOR OBSERVED, IS UP TO HIS EYEBALLS IN LEGAL MATTERS.

1          THEY'RE STONEWALLING ON THE CRITICAL ISSUES AND ASKING THE

2     COURT TO GO AHEAD IN A MANNER THAT'S JUST UNFAIR TO US.  WE

3     HAVE NOT SOUGHT DELAY.  WE HAVE NOT BEEN DRAGGING OUR FEET.

4          IN FACT, WE'VE PRODUCED ALL OF THE DOCUMENTS, WHICH IS WHY

5     MR. QUINN CAN TELL US THAT THEY'RE GOING AHEAD AND THAT THEY

6     HAVE BEEN TAKING SOME DEPOSITIONS.

7          WE CAN'T TAKE DEPOSITIONS BECAUSE WE JUST GOT 288,000

8     DOCUMENTS.

9          NOW, LET ME RESPOND TO MR. QUINN'S EXPLANATION ABOUT THAT.

10          THE RULING ABOUT HOW THESE TEXT MESSAGES WERE GOING TO BE

11     PRODUCED WAS A RULING OF THE COURT, OF JUDGE VAN KEULEN.  IT

12     WASN'T THAT WE JUST INSISTED AND THEY AGREED.

13          THEY WERE TRYING, IN OUR VIEW, TO PRODUCE TEXTS IN A WAY

14     WHICH WE FELT WOULD HIDE RELEVANT INFORMATION, AND WE WENT TO

15     COURT AND JUDGE VAN KEULEN AGREED WITH US.

16          BUT THEIR -- THEY HAVE PRODUCED MORE THAN 100,000 SEPARATE

17     DOCUMENTS IN THE LAST WEEK BASICALLY AND JUST FLOODED US WITH

18     DOCUMENTS.

19          SINCE OUR LAST CMC, THEY'VE PRODUCED OVER 590,000 PAGES OF

20     DOCUMENTS, WITH A SUBSTANTIAL COMPLETION DATE OF NOVEMBER 18TH,

21     MONTHS AGO.  IT'S JUST A COINCIDENCE?  I DON'T THINK SO.

22          THESE ARE SOPHISTICATED LAW FIRMS WHO KNOW HOW TO CONDUCT

23     A DOCUMENT DUMP.

24          WE DIDN'T DO THAT.

25          IN THE LAST -- SINCE THAT LAST CMC, WE HAVE PRODUCED A

1    TOTAL OF 32,000 DOCUMENTS, COMPARED WITH NEARLY 300,000 BY THE

2    OTHER SIDE, AND WE'RE ALL PLAYING THE SAME RULES WHEN IT COMES

3    TO TEXT STRANDS.

4         SO OUR INFERENCE FROM THAT -- AND WE'RE NOT GOING TO

5    JUDGE VAN KEULEN CRYING ABOUT IT, BUT WE HAVE TO REVIEW THESE

6    BEFORE WE CAN TAKE DEPOSITIONS.

7         NOW, THE DEPOSITIONS OF THE LIV PEOPLE AND THE

8    PERFORMANCE54 PEOPLE AND A NUMBER OF THE PLAYERS REALLY ARE

9    INFORMED BY WHAT WE CAN LEARN FROM PIF.  WE JUST -- WE COULD,

10   IF ORDERED TO DO SO, TAKE DEPOSITIONS OF SOME OF THESE PEOPLE,

11   BUT WE CAN'T REALLY FORM A COMPLETE STRATEGY WITHOUT THE KEY

12   DOCUMENTS, WE CAN'T DECIDE WHO TO DEPOSE AND THE ORDER THAT WE

13   WOULD LIKE TO GET INFORMATION IN A LOGICAL SEQUENCE UNLESS WE

14   HAVE ACCESS TO PIF AND ITS WITNESSES AND MR. AL-RUMAYYAN.

15        SO IT REALLY PUTS US IN A VERY DIFFICULT SITUATION.

16        SO WHAT WE ARE ASKING FOR IS WHAT WE ASKED FOR LAST TIME.

17   WE CAN'T HAVE A DISCOVERY CUTOFF AT THE END OF MAY WHEN WE

18   KNOW, BY THE DECISIONS OF OUR ADVERSARIES, THAT THEY SAY A

19   YEAR, TWO YEARS, WE JUST HEARD THE UNITED STATES SUPREME COURT,

20   THEY'RE -- THEY'RE PURPORTING TO APPEAL FROM THIS ORDER ABOUT

21   SUBPOENA COMPLIANCE, WE CAN'T DISCLOSE EXPERTS AND EXCHANGE

22   EXPERT REPORTS WITHOUT THIS EVIDENCE.

23        WE CAN'T MOVE FOR SUMMARY JUDGMENT OR DEFEND A SUMMARY

24   JUDGMENT MOTION WITHOUT INFORMATION FROM PIF AND AL-RUMAYYAN

25   AND WHATEVER FOLLOW-UP WE'RE GOING TO DO BASED UPON THAT.

1    SO WE CAN MOVE FORWARD, AND I GUESS MR. QUINN WANTS TO

2  MOVE FORWARD ON CERTAIN DEPOSITIONS OF OUR PEOPLE.

3    WE DON'T FEEL WE CAN RESPONSIVELY AND EFFECTIVELY DO THAT.

4  IT'S NOT THE WAY WE WOULD LIKE TO LITIGATE THIS CASE.  AND WE

5  FAIL TO SEE WHAT THE BENEFIT IS BECAUSE WE CAN'T DO THESE OTHER

6  THINGS, LIKE SUMMARY JUDGMENT, DISCOVERY CUTOFF, EXPERT

7  DISCLOSURE WITHOUT ACCESS TO THIS EVIDENCE.

8    AND, OF COURSE, WE CAN'T POSSIBLY HAVE A TRIAL WITHOUT

9  ACCESS TO ALL THE EVIDENCE.

10    SO WHAT ARE -- WHAT ARE WE TO DO?  WHAT ARE YOU TO DO,

11  YOUR HONOR?  THESE PLAINTIFFS -- AND IT REALLY IS A GROUP OF

12  PLAINTIFFS REPRESENTED BY A GROUP OF LAWYERS -- HAVE PUT YOUR

13  HONOR AND US IN THIS SITUATION BY FIRST PROMISING THAT THEY

14  WOULD COOPERATE AND THEN STONEWALLING.

15    I DON'T BELIEVE THAT THEY'RE ENTITLED TO SYMPATHY IN THAT

16  REGARD.  THE PLAYERS, WHO I UNDERSTAND THE COURT HAS CONCERNS

17  FOR AS INDIVIDUALS, HAVE RECEIVED MILLIONS AND MILLIONS OF

18  DOLLARS TO MAKE THIS CHOICE.  THEY'VE ASSIGNED THEIR RIGHTS TO

19  LIV.  THEY'RE PLAYING FOR LIV.

20    THERE HAS NEVER BEEN MORE COMPETITION IN THE GAME OF GOLF

21  THAN THERE IS TODAY.

22    AND IF PIF WANTS THIS CASE TO GO FORWARD, IT SHOULD HAVE

23  PRODUCED THE DISCOVERY.  BUT, BOY, HAS IT MADE MANIFEST THAT IT

24  HAS NO INTENTION OF DOING THAT.  IN FACT, THEY SUGGEST THEY MAY

25  NEVER DO THAT, AND I HAVE NO IDEA WHERE THAT LEADS US.

1       BUT IT DOESN'T LEAD US TO ANY PLACE THAT INVOLVES A FAIR

2       TRIAL OF THESE ISSUES.

3       SO THAT'S WHERE WE FIND OURSELVES, YOUR HONOR.

4       AND JUST TO WRAP IT UP, WE ASK YOU RESPECTIVELY --

5       RESPECTFULLY TO CONTINUE THESE VARIOUS DEADLINES THAT I'VE

6       REFERRED TO, TO VACATE THE TRIAL DATE, TO SET ANOTHER CMC AT A

7       TIME THAT SEEMS APPROPRIATE TO YOUR HONOR, ALTHOUGH IF THIS

8       APPEAL IS GOING TO GO ON FOR A YEAR OR TWO, I'M NOT SURE WHERE

9       WE'RE GOING IN THE SHORT TERM.

10       I LEAVE IT UP TO YOUR HONOR TO DECIDE WHETHER, WHETHER THE

11       PLAINTIFFS, IF THEY WANT TO, SHOULD BE ALLOWED TO CONTINUE TO

12       TAKE DEPOSITIONS OF OUR PEOPLE.

13       BUT WE ASK THAT THEY DO SO ONCE.  THEY SHOULDN'T BE ABLE

14       TO WITHHOLD EVIDENCE AND THEN AT A LATER TIME SAY, "OH, NOW,

15       YEAH, WE'D LIKE TO REDEPOSE THESE PEOPLE."  SO IF THEY WANT TO

16       DEPOSE OUR PEOPLE AND YOUR HONOR THINKS IT'S APPROPRIATE TO GO

17       AHEAD AND NOT HAVE A COMPLETE STAY OF DISCOVERY, THEN ALLOW

18       THEM TO DO THAT.

19       BUT WE CAN'T MEANINGFULLY MAKE MUCH PROGRESS ON OUR END

20       WITHOUT DOCUMENTS AND TESTIMONY FROM WHAT IS BY FAR THE MOST

21       CULPABLE WITNESS IN ALL THE ISSUES IN THIS CASE.

22       THE COURT:  SO YOU WOULD AGREE WITH MR. QUINN THAT

23       YOU ARE ASKING FOR AN INDEFINITE STAY OF THE CASE?

24       MR. PETERS:  WE ARE ASKING YOU TO VACATE THE TRIAL

25       DATE AND TO MOVE OUT THE OTHER DEADLINES.

```
 1          BUT IF THEY'RE GOING TO APPEAL, AS WE LEARNED LAST NIGHT

 2     THAT THEY HAVE, AND THAT'S GOING TO TAKE A PERIOD OF TIME, WE

 3     CAN'T MAKE ANY PROGRESS UNTIL THAT'S COMPLETED.  SO I'M NOT

 4     ASKING FOR AN INDEFINITE STAY OF THE CASE.  I THINK THAT'S

 5     WHERE WE FIND OURSELVES BECAUSE OF DECISIONS THEY HAVE MADE.

 6          IF THEY PRODUCE THE DISCOVERY TOMORROW, WE MIGHT BE

 7     DISCUSSING PUSHING BACK SOME OF THE DEADLINES SO THAT WE CAN

 8     MANAGE IT, BUT WE WOULDN'T BE ASKING FOR ANY OF THIS RELIEF.

 9     WE'RE ONLY ASKING FOR IT BECAUSE OF THE DECISIONS AND CHOICES

10     THAT THEY'VE MADE.

11          BUT I DON'T THINK THE COURT OR OUR SIDE HAS ANY CHOICE BUT

12     TO, IN ORDER TO HAVE A FAIR PROCEEDING, TO MOVE BACK THESE

13     DEADLINES.

14          I THINK IT MAKES MORE SENSE, QUITE HONESTLY, TO HAVE A

15     STAY.

16          BUT I'M ALSO AWARE OF THE COURT'S RESISTANCE TO STOPPING

17     FORWARD MOTION IN THE CASE.  THIS ISN'T OUR FIRST MATTER BEFORE

18     YOUR HONOR.  WE UNDERSTAND THAT AND WE RESPECT THAT VERY MUCH

19     AND WE'VE TRIED VERY HARD TO HONOR THAT AND COMPLY WITH IT, AND

20     WE'RE PREPARED TO CONTINUE TO DO THAT, ALTHOUGH I THINK SOME OF

21     IT IS A BIT OF A FOOL'S ERRAND ON OUR SIDE TO TRY TO PUT

22     TOGETHER A DISCOVERY STRATEGY, TO START TAKING DEPOSITIONS OF

23     PEOPLE WHEN WE DON'T REALLY KNOW MORE THAN HALF OF THE STORY

24     AND SEEN THE DOCUMENTS.

25          I MEAN, THERE'S A REASON THAT YOU READ THE DOCUMENTS AND
```

1        THEN DECIDE WHO TO DEPOSE AND IN WHAT ORDER.

2            BUT WE HAVEN'T SEEN THE DOCUMENTS, AND THE IDEA THAT LIV

3        HAS THE DOCUMENTS IS SO DISINGENUOUS BECAUSE PIF RUNS LIV AND

4        PIF EXISTED AND WAS MAKING PLANS FOR THIS WHOLE DISRUPTIVE GOLF

5        LEAGUE BEFORE IT FORMED LIV.

6            SO THERE'S A GREAT DEAL OF EVIDENCE THAT LIV DOESN'T

7        KNOW -- LIV ONLY KNOWS WHAT HAPPENED DURING ITS EXISTENCE THAT

8        PIF CHOSE TO ALLOW IT TO KNOW.

9            FINANCIAL FORECASTS, ANALYSES OF POTENTIAL PROFITABILITY,

10       A WILLINGNESS TO EXPEND MONEY, COMMUNICATIONS WITH BROADCASTERS

11       AND COMMUNICATIONS WITH PLAYERS, PIF HAS SO MUCH MORE OF THAT

12       EVIDENCE THAN LIV DOES.

13           AND, OF COURSE, WE DON'T KNOW, AND WE WONDER, WHY ARE THEY

14       RESISTING SO HARD GIVING IT TO US?

15           BUT THERE'S A REASON.  THEY -- THERE'S A REASON THAT YOU

16       JUST HEARD MR. QUINN SAY "MAYBE WE'LL APPEAL THIS TO THE

17       SUPREME COURT" WHEN, HAVING ANALYZED IT, IN MY VIEW, AND

18       RESPECTFULLY, THE ISSUE UNDER THE FOREIGN SOVEREIGN IMMUNITIES

19       ACT AND THE COMMERCIAL ACTIVITY EXCEPTION IS FAIRLY

20       STRAIGHTFORWARD AND WAS APTLY SUMMED UP BY YOUR HONOR AS IT'S

21       HARDLY THE CONDUCT OF THE STATE FOR WHICH IT GETS IMMUNITY TO

22       FORM AND FUND A DISRUPTOR GOLF LEAGUE.  I DIDN'T -- YOU WROTE

23       IT BETTER, BUT THAT WAS THE POINT.

24           AND I DON'T -- THEY CAN GO TO THE NINTH CIRCUIT, BUT

25       THEY'RE NOT GOING TO GET A DIFFERENT OUTCOME THAN THEY GOT FROM

1   YOUR HONOR AND FROM JUDGE VAN KEULEN.  THEY'RE NOT.

2        THE COURT:  ALL RIGHT.  THANK YOU.

3        MS. LAMM?  LET ME -- YOU'RE ON MUTE.  THANK YOU.

4        MS. LAMM:  THANK YOU.

5   I THINK WE HEARD QUITE A LIST OF HISTORY THAT I WOULDN'T

6   AGREE WITH.

7   THE CENTRALITY OF THE EVIDENCE I LEAVE TO MR. QUINN TO

8   ADDRESS IN TERMS OF HIS CASE.

9   IN TERMS OF OUR DEFENSE, AT THIS POINT IN TIME, YOUR

10  HONOR, BOTH PIF AND HIS EXCELLENCY ARE LEGITIMATELY INVOKING

11  IMMUNITY, AND THEY HAVE A RIGHT TO DO THAT.

12  HE HAS, IN THIS WHOLE DISCUSSION, CONFLATED ALL OF THE

13  CORPORATE IDENTITIES THAT ACTUALLY, YOUR HONOR, YOU ARE

14  ENTITLED TO KNOW AND UNDERSTAND AS YOU DECIDE THE MOTION TO

15  DISMISS THAT WE'VE ASKED YOU TO GIVE US A BRIEFING SCHEDULE

16  FOR.

17  YOU HAVE NOTHING BEFORE YOU IN TERMS OF PIF, IN TERMS OF

18  HIS EXCELLENCY, AND THAT IS GRANULAR EVIDENCE OF THEIR CONDUCT

19  HERE WITH RESPECT TO HIS COUNTERCLAIM THAT HE WAITED FOR FIVE

20  MONTHS TO EVER FILE AGAINST US.

21  SO THE FACT OF ANY DELAY IN THAT REGARD, AS SOON AS

22  SERVICE WAS MADE, THEN WE COULD HAVE CONTESTED.  THE LITTLE

23  BITS AND PIECES THAT WE GOT ON THE 19TH OF MARCH, WE SAID WE

24  WILL TAKE IT AND WE'LL GO FORWARD AND RAISE ACCORDINGLY UNDER

25  THESE CIRCUMSTANCES OUR DEFENSES FOR DECISION.

1           I'M SORRY, WHATEVER WAS DECIDED VIS-A-VIS THE SUBPOENAED

2    ENTITY, LOOKING AT WHAT COULD BE PRODUCED WITHIN THE CONTEXT OF

3    THE FOREIGN SOVEREIGN IMMUNITIES ACT, IS ONE THING.  LIABILITY,

4    MERITS DECISIONS, OVERALL JURISDICTION, YOU HAVE TO SCRUTINIZE

5    THE CONDUCT, SCRUTINIZE WHOSE CONDUCT IT IS, SCRUTINIZE EXACTLY

6    WHAT WENT ON THAT'S OF ANY MATERIALITY.

7           THE COURT:  WELL, MS. LAMM, LET'S NOT FORGET, I'M NOT

8    GOING TO BE THE JURY HERE, AND ALL THAT YOU COMMENT ON,

9    CERTAINLY THOSE ARE ISSUES THAT A JURY WILL HAVE TO CONSIDER.

10   I ONLY HAVE TO CONSIDER THE PLEADING, AND I ONLY HAVE TO

11   CONSIDER IF IT'S ADEQUATE.

12          MS. LAMM:  WELL, YOUR HONOR, ACTUALLY --

13          THE COURT:  AND I DON'T DECIDE IF IT'S TRUE.

14          MS. LAMM:  ACTUALLY, YOUR HONOR, A FOREIGN SOVEREIGN,

15   UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT, WHETHER THERE IS

16   IMMUNITY OR NOT, HAS CERTAIN PROCEDURAL RIGHTS --

17          THE COURT:  UM-HUM.

18          MS. LAMM:  -- AND ONE OF THEM IS NOT TO GO IN FRONT

19   OF A JURY.

20       SO PIF IS NOT GOING IN FRONT OF A JURY.  ALL OF THIS WILL

21   COME TO REPOSE IN FRONT OF YOUR HONOR.

22          THE COURT:  TRUE ENOUGH.  WHETHER IT'S A SIMULTANEOUS

23   TRIAL OR NOT IS A DIFFERENT ISSUE, BUT --

24          MS. LAMM:  COMPLETELY.

25          THE COURT:  YES.

1          MS. LAMM:  AND WHETHER --

2          THE COURT:  I CERTAINLY AGREE THAT, UNDER THE ACT,

3    PIF HAS THE RIGHT TO A COURT TRIAL.

4          MS. LAMM:  AND, YOUR HONOR, I THINK PIF HAS THE RIGHT

5    AT LEAST TO BRIEF IN DETAIL THE CONDUCT THAT YOU SHOULD

6    CONSIDER IN DECIDING THE MOTION TO DISMISS BEFORE IT IS

7    PRESUMED THAT YOU'RE GOING TO DECIDE IN EXACTLY THIS SAME WAY.

8          I KNOW YOU'RE VERY CAREFUL, YOU CONSIDER THE LAW, YOU

9    CONSIDER THE EVIDENCE, AND YOU'RE GOING TO MAKE A DECISION.

10         AND --

11         THE COURT:  CAN I ASK YOU WHY YOU'RE TAKING -- YOU

12   ARE REQUESTING YOUR FULL 60 DAYS TO FILE A MOTION TO DISMISS

13   WHEN IT SEEMS AS THOUGH YOUR CLIENT'S INTEREST AND LIV'S

14   INTERESTS ARE ALIGNED IN WANTING THE CASE TO MOVE FORWARD.

15         MS. LAMM:  YOUR HONOR, THERE ARE -- THERE ARE MANY

16   INTERESTS, OF COURSE.  WE WOULD LIKE THE CASE TO MOVE FORWARD.

17         ON THE OTHER HAND, YOUR HONOR, WE HAVE RIGHTS, NUMBER ONE,

18   THAT CONGRESS HAS GIVEN TO THE FULL 60 DAYS.

19         THE COURT:  UM-HUM.

20         MS. LAMM:  THAT'S WHAT THE UNITED STATES TAKES.

21         THE COURT:  I'M NOT SUGGESTING OTHERWISE.

22         MS. LAMM:  NO, AND TO -- THIS IS NOT A BRIEF OR

23   SUBMISSIONS THAT SOME LAWYER AT WHITE & CASE SITS IN THE

24   CONFERENCE ROOM AND CRANKS OUT BEFORE WE FILE IT.

25         THIS IS SOMETHING THAT GOES BACK AND GOES THROUGH THE

1    SOVEREIGN AND HAS TO HAVE, IN FACT, THE AGREEMENT OF ALL OF THE

2    MYRIAD OF INTERESTS.

3              THE COURT:  LIKE ANY CLIENT.

4              MS. LAMM:  LIKE -- WELL, PARTICULARLY GOVERNMENTAL

5    CLIENTS.

6         WHEN YOU SPEAK FOR THE UNITED STATES, YOU HAVE A

7    UNANIMITY.  WHEN YOU SPEAK FOR -- THAT YOU CAN'T STAND UP AND

8    SAY SOMETHING JUST BECAUSE YOU THINK IT WOULD ENHANCE THE

9    INTERESTS OF ONE.

10             THE COURT:  ALL RIGHT.

11        MS. LAMM, IN DOING YOUR RESEARCH BEFORE YOU FILED YOUR

12   NOTICE OF APPEAL, DID YOU COME TO ANY CONCLUSIONS AS TO THE

13   NINTH CIRCUIT'S STANDARD TIMEFRAME FOR THAT SORT OF AN APPEAL

14   ON A SUBPOENA ISSUE, MOTION TO QUASH?

15             MS. LAMM:  YOU KNOW, THAT'S VERY HARD, YOUR HONOR,

16   BECAUSE --

17             THE COURT:  I KNOW IT IS.  THAT'S WHY I'M ASKING IF

18   YOU DID THE RESEARCH.

19             MS. LAMM:  I WISH I COULD TELL YOU.

20        THERE ARE ALMOST NO CASES ON SUBPOENAS VERSUS COMPLAINTS.

21             THE COURT:  UM-HUM.

22             MS. LAMM:  SO I DON'T KNOW THAT THERE'S ANYTHING --

23   WE WILL CONTINUE TO SCOUR THE EARTH, BUT I'M NOT GOING TO

24   REPRESENT TO YOU THERE IS A WEALTH OF AUTHORITY.

25             THE COURT:  ALL RIGHT.  SO AT THIS POINT, YOU DON'T

1       EVEN HAVE A BRIEFING SCHEDULE.  YOU JUST FILED THE NOTICE.

2              MS. LAMM:  WE JUST FILED IT.

3              THE COURT:  I MEAN, I JUST FILED THE ORDER, SO

4       CLEARLY YOU'VE BEEN VERY QUICK IN FILING THE APPEAL.

5              AND THEN YOU'LL GET A NORMAL BRIEFING SCHEDULE, THOUGH,

6       BUT TO YOUR KNOWLEDGE, DOES THE NINTH CIRCUIT GIVE EXPEDITED

7       BRIEFING SCHEDULES IN CASES LIKE THIS?  I'M JUST ASKING IF YOU

8       DID ANY RESEARCH ON WHAT THEY'VE DONE IN THE PAST.

9              MS. LAMM:  WELL, I -- NOT IN THE FSA CONTEXT IN TERMS

10      OF A SUBPOENA.  I'M TELLING YOU, THERE ARE ALMOST NO CASES.

11             WE CAN TALK WITH OUR OPPONENTS, OF COURSE, BUT THEY HAVE A

12      DECIDEDLY DIFFERENT VIEW THAN WE DO.

13             THE COURT:  UM-HUM.  ALL RIGHT.

14             WELL, THE FACT THAT YOU FILED AN APPEAL, AND OF COURSE A

15      MOTION TO STAY WITHIN THE PARAMETERS OF THE SEPARATE MOTION TO

16      QUASH AND THE DISCOVERY ORDERED BY JUDGE VAN KEULEN, IS -- IT'S

17      NOT A PARTICULARLY DIFFICULT ISSUE, FRANKLY.

18             AND I THINK I HAVE AN OPPOSITION TO THAT.  MR. PETERS, I

19      THINK YOU ALREADY FILED AN OPPOSITION TO THE MOTION TO STAY ,

20      AND I PRESUME THAT YOU'RE GOING TO FILE A REPLY.  IS THAT -- OR

21      MAYBE --

22             MR. PETERS:  YOUR HONOR, THE MOTION --

23             THE COURT:  YOU DIDN'T FILE --

24             MR. PETERS:  I'M SORRY.

25             THE COURT:  IT WAS A MOTION FOR AN ORDER SHORTENING

```
1        TIME ON BRIEFING; IS THAT RIGHT?

2              MS. LAMM:  YES, THAT'S WHAT THEY FILED.

3              THE COURT:  ALL RIGHT.  AND I DID SEE THAT.

4           ALL RIGHT.  WELL, I -- ALL RIGHT.  THAT'S HELPFUL.

5           THIS NOW BECOMES THE PIECE OF THE LITIGATION THAT MAY

6      DRIVE EVERY OTHER SCHEDULING DECISION, AND --

7              MS. LAMM:  YOUR HONOR, IF I MIGHT JUST SAY ONE MORE

8       THING ON THAT?

9              THE COURT:  OH, OF COURSE.

10             MS. LAMM:  AS I THINK YOU APPRECIATE, THAT HAS BECOME

11      ALMOST THE TAIL WAGGING THE DOG.  THEY NOW HAVE JOINED PIF AND

12      HIS EXCELLENCY AS PARTIES TO THEIR COUNTERCLAIM.

13             THE COURT:  UM-HUM, SURE.

14             MS. LAMM:  WHATEVER DISCOVERY IS NEEDED, THEY

15      OBVIOUSLY CAN ASK FOR IN PARTY DISCOVERY ONCE THE DECISIONS ARE

16      RENDERED.

17          I DON'T KNOW THAT THERE IS A LOT LEFT THAT, IN FACT, THE

18      SUBPOENA ITSELF IS LEFT TO DEAL WITH.

19             THE COURT:  SO I GUESS I'M A LITTLE -- I'VE BEEN

20       TRYING TO THINK THIS OUT MYSELF.

21          SO CLEARLY THE COUNTERCLAIM AGAINST YOUR CLIENTS MOVES

22      FORWARD, AND NORMALLY IT WILL MOVE TO A MOTION TO DISMISS, AND

23      WHETHER OR NOT I CAN EXPEDITE THE HEARING, I DON'T -- YOU'RE

24      RIGHT, I CANNOT COMPEL YOUR CLIENTS TO GIVE UP THEIR STATUTORY

25      TIMEFRAME FOR FILING A MOTION TO DISMISS, AND I ONLY SUGGESTED
```

1    THEY MIGHT WISH TO FILE EARLY, WHICH THEY'RE ALWAYS FREE TO DO,

2    BUT THAT'S -- I'M NOT ORDERING IT.

3         I THINK, MR. PETERS, IT MAKES NO SENSE TO HAVE

4    MR. AL-RUMAYYAN FILE A RESPONSE 20 DAYS BEFORE PIF FILES

5    THEIRS.  THAT WOULD BE A WASTE OF EVERYONE'S TIME.

6         AND SO IN TERMS OF THAT PIECE OF THE MOTION, I THINK

7    THAT'S PRETTY STRAIGHTFORWARD.  I DON'T KNOW THAT YOU ACTUALLY

8    REALLY WANT TO FULLY LITIGATE THAT ISSUE.  IF YOU WANT FULL

9    BRIEFING ON ALL OF THAT, I'LL ISSUE AN ORDER AS SOON AS IT'S

10   FULLY BRIEFED.

11        BUT I THINK IT'S -- I DON'T KNOW.  IT JUST SEEMED THAT

12   THAT WAS THE LEAST OF OUR CONCERNS.

13             MR. PETERS:  YOUR HONOR --

14             MS. LAMM:  YOUR HONOR --

15             MR. PETERS:  YOUR HONOR, I'LL RESPOND VERY BRIEFLY TO

16   THAT, YOUR HONOR.  I AGREE WITH YOU.  WE WERE ACTUALLY HOPING

17   TO SHAME THEM INTO MOVING MORE QUICKLY.

18             THE COURT:  WELL, SO I DID MY BEST, TOO.  WE LOST.

19   IT'S JUST THE WAY IT GOES, MR. PETERS.

20             MR. PETERS:  HERE'S WHY:  YOUR HONOR ASKED A

21   QUESTION, AND I, JUST AS AN OFFICER OF THE COURT, I WANT TO

22   TELL YOU WHAT I KNOW ABOUT THE APPEALABILITY OF THIS ORDER,

23   BECAUSE THERE IS NINTH CIRCUIT LAW ABOUT WHETHER THE DENIAL OF

24   A MOTION TO QUASH A SUBPOENA IS APPEALABLE.  IT'S PERRY V.

25   SCHWARZENEGGER, 602 F.3D 976, WHERE THE NINTH CIRCUIT SAID IT'S

```
1      NOT APPEALABLE.

2                 THE COURT:  SO YOU KNOW WHAT?

3                 MR. PETERS:  YOU HAVE TO TAKE CONTEMPT --

4                 THE COURT:  LUCKILY, IT'S OUT OF MY HANDS.  I

5      DON'T -- THE NINTH CIRCUIT DOES MAKE THAT REVIEW VERY QUICKLY

6      ON WHETHER IT HAS JURISDICTION.  MY GUESS IS YOU'VE ALREADY

7      STARTED WRITING YOUR MOTION TO DISMISS BECAUSE IT'S A

8      NON-APPEALABLE ORDER.  IT'S -- I JUST READ IT IN THE PAPERS

9      MYSELF WHEN YOU GET AN ORDER.

10                MR. PETERS:  YOUR HONOR -- I HEAR YOU.  I ACCEPT ALL

11     THAT.

12          BUT, YOUR HONOR, I HAVE A SLIGHTLY DIFFERENT POINT TO

13     MAKE.

14                THE COURT:  OKAY.

15                MR. PETERS:  WE DON'T UNDERSTAND WHY, IF THESE

16     PLAINTIFFS WANT TO MOVE AHEAD, THEY'RE DOING THIS.  THEY'VE

17     APPEALED A NON-APPEALABLE ORDER.

18          INSTEAD, THEY WOULD HAVE AN APPEALABLE ORDER IF YOUR HONOR

19     DENIED A MOTION TO DISMISS UNDER THE FSAI.  THAT IS APPEALABLE.

20          BUT THEY'RE TRYING TO PUSH THAT OUT AS FAR AS THEY CAN.

21          WHY ARE THEY TRYING TO DO THAT?  YOU ASKED MS. LAMM A

22     QUESTION ABOUT THAT AND SHE SPOKE WORDS, BUT DIDN'T REALLY

23     RESPOND TO THE QUESTION ABOUT THAT.

24          AND I DON'T REALLY UNDERSTAND, EITHER, OTHER THAN I SEE

25     LAWYERS SPEAKING OUT OF TWO SIDES OF THEIR MOUTH, AND IT'S NOT
```

1    THE FIRST TIME THEY'VE DONE THAT ABOUT ISSUES RELATING TO PIF

2    AND YAR, BECAUSE THEY ARE CREATING A SITUATION ACTUALLY WHERE

3    THEIR APPEAL WILL BE DECIDED LATER THAN THEY COULD OTHERWISE

4    GET AN APPEAL IF THEY ACCELERATED THIS MOTION TO DISMISS

5    PROCESS, WHICH REALLY RAISES NO ISSUES THAT HAVEN'T ALREADY

6    BEEN DECIDED.

7         THE COURT:  MR. PETERS, I JUST THINK -- I HEAR YOU,

8    AND IT'S JUST USELESS BECAUSE I CAN'T MAKE THEM GIVE UP A

9    STATUTORY RIGHT.  SO --

10        MR. PETERS:  YOU CAN SET THE SCHEDULE IN THIS CASE IN

11   A WAY WHICH ACKNOWLEDGES WHAT THEY'RE UP TO.

12        MR. QUINN:  NO, WAIT A SECOND.  THEY, WHO ARE YOU

13   TALKING ABOUT?

14        THE COURT:  NO, MR. QUINN IS NOT PART OF THIS.

15        BUT AS -- MS. LAMM HAS NOT FILED THE MOTION.  A LOT CAN

16   HAPPEN BETWEEN NOW, AND I THINK YOU SAID MAY 18TH WILL BE YOUR

17   DATE, YOUR FINAL DATE.  A LOT CAN HAPPEN.  HER CLIENT MIGHT

18   DIRECT HER IN A DIFFERENT WAY ON HOW THEY WANT TO PROCEED.

19        AND SO I'M NOT GOING TO SET ANY BRIEFING SCHEDULE UNTIL A

20   MOTION IS FILED, BECAUSE IT'S NOT ON MY DOCKET AND I'M NOT

21   GOING TO WASTE MY TIME.

22        BUT -- AND IF SHE CHOOSES TO FILE EARLY, THEN I'LL ADDRESS

23   IT EARLY.  IF SHE FILES ON THE LAST STATUTORY DAY, THAT'S FINE.

24        BUT I'M GOING TO GRANT THE REQUEST TO EXTEND TIME FOR

25   MR. AL-RUMAYYAN TO FILE ANY RESPONSE TO THE COUNTERCLAIM, THE

1    AMENDED COUNTERCLAIM TO COINCIDE WITH THE STATUTORY RIGHT OF

2    PIF, AND I THINK THAT THAT IS A REASONABLE THING TO DO AND IT

3    DOESN'T -- THERE'S JUST NO PREJUDICE TO ANYONE BY CHANGING

4    THAT.

5         SO, MS. LAMM, THAT WAS -- THAT WAS THE SIMPLE PART OF

6    THIS.  NOTHING ELSE SEEMS TO BE SIMPLE.

7         WHETHER THE MOTION -- THE APPEAL IS -- WHETHER THE NINTH

8    CIRCUIT HAS JURISDICTION OVER THE APPEAL THAT'S PENDING, THEY

9    WILL DECIDE THAT.  MY THOUGHTS ON IT ARE IRRELEVANT, AND YOUR

10   ARGUMENT TO ME IS A WASTE OF BREATH.

11        IN TERMS OF MOTIONS TO STAY THE DISCOVERY AGAINST PIF AND

12   HIS EXCELLENCY, I'LL WAIT FOR THAT TO BE FULLY BRIEFED.  I'LL

13   KEEP AN EYE ON THAT.  I'LL RULE AS SOON AS IT'S BRIEFED.

14        AND, YOU KNOW, MR. PETERS, IF YOU WANT TO STEP UP THE

15   BRIEFING SCHEDULE ON IT, YOU'RE WELCOME TO DO THAT.  OTHERWISE,

16   YOU KNOW, IF NO ONE IS CONCEDING TIME TO FILE PAPERS, I'M NOT

17   GOING TO SUA SPONTE SHORTEN TIME.  I THINK I HAVE THAT MOTION

18   PENDING TO SHORTEN TIME ON THE MOTION TO STAY, BUT I HAVE NO

19   PARTICULAR REASON TO DO THAT.

20        I WILL CERTAINLY BE DECIDING THE MOTION TO STAY DISCOVERY

21   OF THE MAGISTRATE JUDGE'S ORDER, ALONG WITH MOTION TO STAY

22   DISCOVERY PENDING THE MOTION TO DISMISS ONLY AS TO PIF AND

23   MR. AL-RUMAYYAN, THOUGH, NOT AS TO THE REST OF THE CASE.

24        AND SO, YOU KNOW, THAT MOTION WAS FILED.  I DON'T HAVE MY

25   DOCKET OPEN IN FRONT OF ME.

```
1              MR. PETERS, I'M SURE YOU HAVE IT.  YOU KNOW YOUR DEADLINE
2        FOR FILING.  AND IF --
3              MR. PETERS:  I DON'T HAVE IT --
4              THE COURT:  I DON'T KNOW IT, EITHER.  YOU GET 14 DAYS
5        AFTER THE MOTION WAS FILED, AND IT MUST HAVE JUST BEEN FILED.
6              MR. PETERS:  I THINK IT WAS FILED YESTERDAY, YOUR
7        HONOR, SO TWO WEEKS FROM YESTERDAY.
8              THE COURT:  OKAY.  SO YOU HAVE MOST OF TWO WEEKS.
9              ONCE THE OPPOSITION IS FILED, IF I THINK THAT I DON'T NEED
10       A REPLY, I'LL JUST ISSUE AN ORDER, UNLESS -- WELL, I'LL
11       ISSUE -- I WON'T ISSUE -- I WON'T DENY A RIGHT TO REPLY IF I
12       THINK YOU'RE LOSING, MS. LAMM.  DON'T GET ME WRONG.  IF I THINK
13       YOU'VE ALREADY NAILED THIS STAY, I'LL JUST DEAL WITH IT.  BUT I
14       WILL MOVE ALONG.
15             BUT I'M NOT GOING TO SHORTEN MY NORMAL SCHEDULE BECAUSE
16       YOU ALL ARE EXTENDING YOURS, AND SO I'M -- ALTHOUGH I'M WILLING
17       TO SHORTEN TIME ON SOME THINGS, AND THIS MOTION TO STAY
18       DISCOVERY IS ONE OF THOSE THINGS THAT I'M NOT, I'LL DECIDE IT
19       AS QUICKLY AS I CAN AFTER IT'S BRIEFED.  NORMALLY I'M NOT
20       GIVING YOU PREFERENCE IN MY CALENDAR.  I ALREADY HAVE BENT OVER
21       BACKWARDS ON THAT, AND I JUST HAVE TOO MANY OTHER LITIGANTS FOR
22       WHOM IT WOULD BE UNFAIR.
23             MS. LAMM, DID I LET YOU FINISH EVERYTHING YOU WANTED TO
24       PRESENT?
25             MS. LAMM:  NO.  I WAS JUST GOING TO SAY, YOUR HONOR,
```

```
 1         I DON'T THINK YOU SHOULD ATTRIBUTE THE MOTIVE TO MY CLIENTS
 2     THAT MR. PETERS CARES TO SMEAR.  IF THERE WERE A UNITARY
 3     OBJECTIVE, IT WOULD BE FAR EASIER.  WE WILL DO OUR BEST TO
 4     BRING EVERYONE TOGETHER TO COALESCE AND FILE SOMETHING AS SOON
 5     AS WE CAN.
 6         BUT IT IS CHALLENGING.
 7             THE COURT:  UM-HUM.
 8             MS. LAMM:  AND THE TIME IS PERMITTED BY CONGRESS.
 9             THE COURT:  SURE.  I -- I HAVE NO PROBLEM WITH THAT.
10     I ACTUALLY DON'T HAVE THE AUTHORITY TO REDUCE THAT TIME.  SO
11     I -- AND IT DOESN'T MATTER TO ME WHY YOUR CLIENTS ARE ASSERTING
12     THEIR RIGHTS UNDER THE LAW.  IT'S JUST THEIR RIGHT.
13         OKAY.  SO LET ME THEN TURN BACK TO SOME OF THE ISSUES THAT
14     MR. QUINN AND MR. PETERS WERE TALKING ABOUT.
15         MR. QUINN, I SEE THE RELEVANCE OF THE POTENTIAL DISCOVERY
16     FROM PIF AND MR. AL-RUMAYYAN DIFFERENTLY THAN YOUR CLIENTS DO.
17     I -- AND IN MY ORDER, I SAID THAT IN FEW WORDS BECAUSE IT
18     WASN'T NECESSARY TO SAY IT MORE.
19         I DO SEE THIS EVIDENCE AS POTENTIALLY RELEVANT TO ALL OF
20     THE CLAIMS AND DEFENSES THAT THE TOUR IS BRINGING, AND THAT IS
21     ITS DEFENSES TO ITS ANTITRUST CLAIM, ITS DEFENSES TO YOUR
22     CLAIMS FOR DAMAGES, AND YOUR AFFIRMATIVE INTERFERENCE CLAIM AND
23     THE COUNTERCLAIM FOR INTERFERENCE.
24         SO I CAN'T JUST IGNORE THAT RELEVANCE.  I CAN'T FORCE THE
25     DEFENDANTS TO GO FORWARD WITH ONE HAND BEHIND THEIR BACK, AND
```

```
1     IT MAY BE MORE SERIOUS THAN THAT.  WE DON'T KNOW HOW RELEVANT

2     THE MATERIALS WILL BE IF THEY'RE EVER PRODUCED.

3          SO THAT'S A BIG PROBLEM.

4          YOU HAVE ESSENTIALLY SUGGESTED THAT BIFURCATION OF THE

5     CASE COULD ADDRESS THAT PROBLEM, AND I'VE LOOKED AT THAT

6     MOTION, I BELIEVE IT'S FULLY BRIEFED, I THINK I GOT THE CLOSING

7     BRIEF JUST THIS WEEK.  AND I'M NOT RULING ON IT RIGHT NOW, BUT

8     I'M -- IT SEEMS TO ME AS THOUGH THAT IS NOT THE PROPER WAY TO

9     PROCEED TO BIFURCATE, BECAUSE I DON'T THINK IT SOLVES THE

10    PROBLEM OF THE NECESSITY OF THE VERY SAME DISCOVERY FOR THE

11    MAIN CASE, THE ANTITRUST CASE.

12         SO I KNOW YOU HAVE A HEARING DATE IN AUGUST.  IT'LL REMAIN

13    ON THE CALENDAR.  BUT YOU CAN BE SURE THAT I WILL BE RULING ON

14    THAT SOONER THAN AUGUST, AND IT'S NOT THE KIND OF ISSUE THAT

15    ACTUALLY BENEFITS FROM ORAL ARGUMENT.

16         SO I WILL TRY TO GET TO THAT AFTER I GET THROUGH THESE

17    MORE PRESSING ISSUES OF STAY OF DISCOVERY, WHICH IS, I THINK,

18    REALLY PRESSING ON YOU RIGHT NOW.

19         IN TERMS OF WHAT THAT MEANS FOR THE TRIAL DATE AND THE

20    DISCOVERY CUTOFF, I AM NOT INCLINED TO LIFT THESE CUTOFF DATES

21    AT THIS POINT.  I THINK THAT LIV MAKES AN IMPORTANT POINT THAT

22    IT HAS THE RIGHT TO PRESERVE EVIDENCE, AND I DON'T HEAR FROM

23    MR. PETERS THAT PGA TOUR IS OBJECTING TO THEIR PEOPLE BEING

24    DEPOSED.

25         WHETHER YOU COULD GET A SECOND DEPOSITION BECAUSE OF
```

1    MATERIALS THAT WERE NOT PRODUCED UNTIL LATER, THAT'S A

2    DIFFERENT ISSUE.  I'M NOT DECIDING IT.  IT WOULD DEPEND ON THE

3    CIRCUMSTANCES.

4         BUT YOU CAN BE PRETTY SURE THAT YOU'D HAVE A TALL MOUNTAIN

5    TO CLIMB TO GET -- TO GO BACK TO A WITNESS YOU'D ALREADY

6    DEPOSED GIVEN YOUR POSITION NOW THAT THE EVIDENCE ISN'T

7    RELEVANT, AND BASICALLY YOU KNOW WHAT THE EVIDENCE IS.  SO I

8    THINK IT'S UNLIKELY.

9         BUT I DO THINK PRESERVATION OF THE EVIDENCE IS VERY

10   IMPORTANT.

11        IN TERMS OF MR. PETERS' CONCERNS ABOUT HIS DEPOSITIONS OF

12   THE PLAINTIFFS' WITNESSES, THAT'S A LITTLE MORE COMPLICATED,

13   AND IT'S NOT -- IT'S A MUCH HARDER CALL AS TO WHETHER THE

14   DEFENDANT SHOULD TAKE ANY DEPOSITIONS AT THIS POINT.

15        BUT, MR. PETERS, I ACTUALLY THINK YOU'RE GOING TO NEED TO

16   PRESERVE SOME OF THIS AS WELL, AND I THINK YOU NEED TO -- I

17   THINK YOU NEED TO LOOK HARD AT THE WITNESSES YOU WANT TO

18   DEPOSE, AND IT IS ONLY SOME OF THEM THAT I THINK YOU COULD

19   REASONABLY ASSUME WOULD BE AFFECTED BY LATER DISCOVERY IF IT'S

20   ALLOWED.

21        SO I NEED YOU TO LOOK AT THAT.  AND, YOU KNOW, I WOULD BE

22   MORE WILLING TO GIVE YOU THE OPPORTUNITY TO REDEPOSE WITNESSES

23   IF YOU GET FURTHER INFORMATION.

24        SO ANY COMMENT ON THAT?

25             MR. PETERS:  YOUR HONOR, WE CAN'T COMPLY -- THE

```
1    CURRENT DISCOVERY CUTOFF IS MAY 31ST.

2            THE COURT:  YEAH.

3            MR. PETERS:  WE WILL NOT HAVE ANYTHING FROM PIF OR

4    LIV BY THEN, SO WE CAN'T -- I DON'T KNOW HOW WE COULD COMPLY

5    WITH THAT DISCOVERY CUTOFF.

6            THE COURT:  WELL, BUT MY POINT IS THAT I DON'T

7    ACTUALLY BELIEVE EVERY WITNESS'S TESTIMONY IS AFFECTED BY THE

8    DOCUMENTS FROM PIF AND AL-RUMAYYAN.  I -- I DON'T KNOW HOW BIG

9    YOUR LIST OF DEPONENTS IS.  I THINK YOU REFERENCE 80

10   DEPOSITIONS, BUT I DON'T KNOW HOW MANY ON EACH SIDE.

11       I MEAN, IT IS -- YOU ARE THE DEFENDANT.  MR. QUINN CLEARLY

12   HAS MORE WITNESSES TO DEPOSE, I WOULD THINK, TO PROVE HIS CASE

13   THAN YOU DO IN DEFENSE, BUT I COULD BE WRONG ON THAT.

14       I MEAN, YOU'RE NOT CHARGING THEM WITH ANTITRUST CONDUCT,

15   SO --

16           MR. PETERS:  NO, BUT OUR OVERALL STRATEGY IN THE

17   CASE, GIVEN THE CENTRALITY OF THE PIF DOCUMENTS AND PIF

18   WITNESSES AND MR. AL-RUMAYYAN, IT'S REALLY HARD TO FULLY

19   FORMULATE IT AND COMMENCE DISCOVERY WITHOUT HAVING THAT.

20           CAN WE TAKE SOME DEPOSITIONS?  YES, WE CAN.

21       BUT WE ARE -- WE ARE BEING PREJUDICED BY NOT HAVING ACCESS

22   TO THIS INFORMATION IN MOVING AHEAD WITH DISCOVERY, AND THAT

23   PREJUDICE IS BEING VISITED ON US ENTIRELY 100 PERCENT BY

24   DECISIONS MADE BY OUR ADVERSARY, AND THEY -- IN OUR VIEW, YOUR

25   HONOR, THEY SHOULDN'T PROFIT FROM THAT BY BEING ABLE TO MAKE US
```

1      TAKE DISCOVERY WITH ONE ARM TIED BEHIND OUR BACK.

2              ARE THERE SOME DEPOSITIONS THAT WE CAN TAKE?  PROBABLY.

3              IF ORDERED TO DO SO BY YOUR HONOR, ARE WE GOING TO?  YES.

4              BUT OUR PREFERENCE IS TO HAVE ACCESS TO WHAT WE CONSIDER

5      THE CENTRAL EVIDENCE IN THIS CASE.  THAT'S THE FORMATION OF

6      THIS WHOLE GOLF LEAGUE AND THIS WHOLE PLAN, AND IT WAS PIF THAT

7      FORMULATED IT WITH MR. AL-RUMAYYAN AT THE CENTER OF IT, AND

8      THEY BEGAN TO EXECUTE THE PLAN BEFORE THEY CREATED LIV.

9              ALL OF THAT EVIDENCE IS BEING WITHHELD FROM US.  WE CAN'T

10     POSSIBLY COMPLY WITH A MAY 31ST DISCOVERY CUTOFF.  IN OUR VIEW,

11     THAT DEADLINE HAS TO BE CONTINUED.

12             AND IF MR. QUINN IS GOING TO GO AHEAD OR HIS TEAM IS GOING

13     TO GO AHEAD AND TAKE SOME DEPOSITIONS, WE'LL PREPARE THE

14     WITNESSES AND DEFEND THEM.

15             BUT ON OUR SIDE, THERE'S VERY LITTLE THAT WE CAN DO.

16             AND WHAT'S THE JUSTIFICATION BEHIND IT?

17             THE COURT:  WELL, HOW MANY WITNESSES HAVE YOU

18      IDENTIFIED THAT YOU WISH TO DEPOSE?

19             MR. PETERS:  WE HAVE A SIGNIFICANT NUMBER BECAUSE

20      THERE'S PIF PEOPLE, THERE'S LIV PEOPLE, THERE'S PERFORMANCE54

21      PEOPLE.  THEN THERE'S THIRD PARTIES, PLAYERS.  THERE'S

22      BROADCASTERS, THERE'S SPONSORS.  WE HAVE A SIGNIFICANT NUMBER

23      OF WITNESSES TO DEPOSE, AS DOES MR. QUINN.  I THINK THE 80 IS

24      SPLIT ABOUT 50/50.

25             THE COURT:  ALL RIGHT.  THAT'S FINE.  AND DID YOU

1    SEND THIRD PARTY DISCOVERY TO ANY OF THESE ASKING THEM FOR ALL

2    OF THEIR CORRESPONDENCE WITH PIF AND AL-RUMAYYAN?

3            MR. PETERS:  WE HAVE SUBPOENAED A NUMBER OF THOSE

4    PARTIES FOR THEIR COMMUNICATIONS, AND THEY'VE, OF COURSE,

5    NEGOTIATED WITH US IN TAKING THE POSITION THAT, WELL, WE SHOULD

6    GET PARTY DISCOVERY FIRST AND WE SHOULDN'T BURDEN THEM, AND

7    WE'RE IN THE MIDST OF DOING THAT DANCE.

8        I MEAN, NORMALLY IT'S THE PARTIES WHO PROVIDE --

9            THE COURT:  SO YOU NEED TO SEND OUT DISCOVERY TO EACH

10   OF THOSE DEPONENTS AND GET EVERYTHING THEY HAVE THAT IS A

11   CORRESPONDENCE WITH PIF AND AL-RUMAYYAN.  THAT'S WHAT MR. QUINN

12   HAS BEEN SAYING FROM THE BEGINNING.  THERE ARE SOME THINGS THAT

13   YOU CAN GET AND YOU SHOULD GET THEM.

14           MR. PETERS:  AND WE'RE TRYING.

15           THE COURT:  I JUST THINK YOU NEED TO DO IT.

16           MR. PETERS:  WE'RE DOING IT, YOUR HONOR, BUT WE CAN'T

17   GET --

18           THE COURT:  IF YOU NEED A ONE WEEK EXTENSION OF TIME

19   TO GET THOSE SUBPOENAS OUT, I'LL GIVE YOU THAT IF YOUR TIME TO

20   SEND THOSE SUBPOENAS OUT HAS EXPIRED.  BUT I'LL ONLY GIVE YOU A

21   WEEK.  GET IT OUT TO EVERY ONE OF THOSE WITNESSES YOU WANT TO

22   DEPOSE AND GET EVERYTHING FROM THEM THAT IS --

23           MR. PETERS:  WE DON'T -- I'M SORRY.

24           THE COURT:  I BEG YOUR PARDON.  IT'S HARD ON ZOOM.

25   GO AHEAD.

1                MR. PETERS:  WE DON'T NECESSARILY KNOW WHO ALL THE

2      PEOPLE THEY COMMUNICATED WITH BEFORE THEY FORMED LIV ARE,

3      BECAUSE WE DON'T HAVE THEIR INTERNAL COMMUNICATIONS.  WE DON'T

4      HAVE THEIR BUSINESS PLANS.

5                THE COURT:  I UNDERSTAND.

6                MR. PETERS:  WE DON'T NECESSARILY KNOW WHO ALL THOSE

7      PEOPLE ARE.  WE'RE SHOOTING IN THE DARK BECAUSE THEY WON'T TELL

8      US WHO THOSE PEOPLE ARE.

9                THE COURT:  YOU'RE MAKING A DIFFERENT POINT.  YOU

10     HAVE CREATED A LIST OF PEOPLE YOU WISH TO DEPOSE.  THAT EXISTS

11     RIGHT NOW.

12                MR. PETERS:  WE -- THAT'S RIGHT.

13                THE COURT:  AS TO THOSE WITNESSES, SOME ARE THIRD

14     PARTIES.  PROBABLY MANY ARE.  AND IF YOU HAVE NOT SUBPOENAED

15     ALL COMMUNICATIONS THEY HAD WITH PIF AND MR. AL-RUMAYYAN, YOU

16     NEED TO DO THAT, AND THEN YOU NEED TO DEPOSE THEM.

17           AND WE WILL PRESUME THAT THEY HAVE PROVIDED TO YOU ALL THE

18     DOCUMENTS RESPONSIVE, OR YOU CAN BRING MOTIONS TO COMPEL.  BUT

19     YOU HAVE TO DO THAT.

20                MR. PETERS:  WELL, I BELIEVE WE'VE DONE THAT.  WE'LL

21     LOOK CAREFULLY AT EVERYTHING WE'VE DONE AND TAKE YOUR COURT'S

22     SUGGESTION.

23                THE COURT:  AND IF YOU'VE DONE THAT, THEN YOU NEED TO

24     PROCEED WITH THE DEPOSITIONS OF THOSE PEOPLE.

25           IF YOU HAVE SOME INDIVIDUALS FOR WHOM YOU ARE UNABLE TO

1     GET THE RECIPIENT'S EMAILS OR FOR WHOM YOU THINK THAT THERE ARE

2     INTERNAL DOCUMENTS THAT YOU MIGHT GET, THAT MAY BE DIFFERENT,

3     OR I'LL LET YOU GO BACK FOR AN EXTRA HOUR OR TWO TO REDEPOSE

4     THOSE INDIVIDUALS.

5          BUT I'M NOT -- WE'RE NOT COMING TO A HALT HERE.  THIS CASE

6     WILL TAKE TEN YEARS TO LITIGATE, AND THAT'S NOT GOING TO

7     HAPPEN.  IT MIGHT TAKE MORE THAN -- IT MIGHT TAKE MORE THAN

8     UNTIL NEXT JANUARY, MR. QUINN, BUT I -- I AGREE WITH YOU, WE'RE

9     NOT COMING TO A COMPLETE HALT.

10         AND, YOU KNOW, IF -- THE ISSUES THAT PIF AND HIS

11    EXCELLENCY RAISE ARE NOT TRIVIAL ISSUES, AND TO THE EXTENT THAT

12    THEY BELIEVE THAT THEY ARE ON THE DIPLOMATIC SIDE OF THE

13    SOVEREIGNTY THAT THEY CAN ASSERT AND THE IMMUNITY THAT THEY CAN

14    ASSERT IN THE UNITED STATES, THEY HAVE TO BE ABLE TO LITIGATE

15    THAT TO THE FULL EXTENT, AND IF THEY LOSE, THEN I WILL BE THE

16    FIRST ONE TO ENFORCE THE REQUIREMENTS AND TO -- YOU KNOW, TO

17    IMPOSE SANCTIONS, WHICH COULD BE TERMINATING SANCTIONS, AGAINST

18    THE PARTIES IN THE CASE, BECAUSE I CAN'T EXACTLY HOLD THEM IN

19    CONTEMPT OR FINE THEM OR EXPECT ANY OF THAT TO MAKE A

20    DIFFERENCE.

21         I HAVE LOTS OF TOOLS, AND OBVIOUSLY TERMINATING SANCTIONS

22    ARE ABOUT THE BEST THING YOU COULD HEAR IN A CASE WHERE YOU'RE

23    DEFENDING IT.

24         SO, YOU KNOW, THERE'S A LOT AT STAKE.  THERE MAY BE A LOT

25    AT STAKE THAT COMES DOWN ON LIV AS WELL, EVEN THOUGH IT'S NOT

```
1     THE PARTY THAT'S WITHHOLDING.
2          BUT I WOULD CERTAINLY CONSIDER ALL OF THAT.
3          SO THESE DEPOSITIONS ARE GOING TO GO FORWARD.  YOU CAN --
4     YOU CAN -- TO THE EXTENT YOU CAN IDENTIFY SOME OF THEM AS TRULY
5     INEFFECTUAL DEPOSITIONS BECAUSE OF THE ABSENCE OF MATERIALS
6     FROM PIF AND AL-RUMAYYAN, THEN YOU NEED TO MAKE A RECORD OF
7     THAT WITH MR. QUINN AND MS. LAMM, BUT IT'S REALLY WITH
8     MR. QUINN AT THIS POINT I THINK BECAUSE WE'RE NOT -- WE DON'T
9     EVEN ACTUALLY HAVE THEM IN AS PARTIES YET OFFICIALLY WITH THE
10    MOTION TO DISMISS PENDING.
11         YOU KNOW, IF YOU HAVE A PLAN FOR DEPOSITIONS AND THE
12    SCHEDULE GOES BEYOND MAY 30TH BY A REASONABLE AMOUNT, I'M MORE
13    THAN GLAD TO CONSIDER IT.  I'M NOT WILLING TO JUST LIFT THE CAP
14    OFF OF THAT MAY 31ST DEADLINE.
15         IF YOU'RE LOOKING AT EXTENDING IT INTO JUNE, THAT'S FINE.
16         THE SUMMARY JUDGMENT DATE, YOU KNOW, I RECOGNIZE THAT'S
17    NOT LOOKING VERY REALISTIC, MR. QUINN, AND I'M DISAPPOINTED
18    BECAUSE I HAVE NO TIME TO FIT IT IN UNTIL THE END OF THE YEAR.
19    I WOULD PROBABLY SLATE THAT IN AS THE DATE, THE WEEK THAT YOU
20    WOULD HAVE STARTED TRIAL AND MAKE THAT THE SUMMARY JUDGMENT
21    DATE.  IT'S A -- AND THEN LOOK FOR A TRIAL DATE AFTER THAT IF
22    WE'VE GOTTEN THERE.
23         BUT I WANT YOU TO PUT TOGETHER THIS DISCOVERY SCHEDULE.  I
24    WANT YOU TO GET DATES ON THE CALENDAR FOR THESE DEPOSITIONS AND
25    MOVE IT FORWARD.
```

 1          AND LET'S SEE WHAT THE NINTH CIRCUIT DOES.

 2          YOU KNOW, MR. PETERS, IF YOU'RE RIGHT THAT THE NINTH

 3     CIRCUIT DOESN'T HAVE JURISDICTION, THEN THIS -- THE NINTH

 4     CIRCUIT IS GOING TO RETURN THIS RIGHT AWAY.  AND I KNOW THEY,

 5     THEY LIKE MOTIONS TO DISMISS FOR LACK OF JURISDICTION.  IT

 6     CLEARS THEIR DOCKET, TOO, IF YOU'RE RIGHT.  SO I'M SURE YOU'RE

 7     ALREADY WRITING THAT MOTION.

 8          AND -- BUT IT'LL STILL COME UP ON A MOTION TO DISMISS, AND

 9     MS. LAMM WILL FILE THAT AT LEAST BY MAY 18TH, AND AT THAT POINT

10     I WILL DO MY BEST TO FIND AN EARLIER HEARING DATE FOR YOU.  BUT

11     BY SETTING -- FILING IN MAY WOULD NORMALLY BE A HEARING DATE IN

12     MAYBE SEPTEMBER OR OCTOBER.

13          NOW, YOU ACTUALLY HAVE A HEARING DATE IN AUGUST THAT I CAN

14     CERTAINLY SWAP OUT IF WE'RE NOT DOING SUMMARY JUDGMENT.  I

15     WOULD CERTAINLY TRY TO MAKE IT EARLIER.

16          THE BRIEFING -- YOU KNOW, MR. PETERS, YOU MIGHT ACTUALLY

17     BE WANTING MORE TIME TO DO THE BRIEFING IN OPPOSITION ONCE YOU

18     GET THEIR BRIEF.  YOU MAY NOT WANT A MERE 14 DAYS TO FILE YOUR

19     BRIEF.

20          SO I'M NOT GOING TO SET A HEARING DATE NOW.  I'M GOING TO

21     WAIT UNTIL IT'S FULLY BRIEFED.

22            MR. PETERS:  YOUR HONOR, THANK YOU FOR SHARING ALL OF

23      YOUR THINKING WITH US.

24          IN LIGHT OF WHAT SOUNDS LIKE A SUMMARY JUDGMENT DEADLINE

25     DATE AND TRIAL DATE WHICH ARE GOING TO SLIP, WE'RE NOT ASKING

1   FOR SOME INDEFINITE STAY.  WE WERE HERE ASKING FOR AN

2   ADDITIONAL 90 DAYS ON THE DISCOVERY CUTOFF.  MAYBE GIVE US LESS

3   IF YOU'RE SO INCLINED.

4        BUT WE DID JUST GET ABOUT HALF A MILLION PAGES OF

5   DOCUMENTS IN THE LAST WEEK OR TWO.  THERE'S 80 DEPOSITIONS TO

6   DO.

7        AND IF IT'S NOT REALISTIC TO BELIEVE THAT THE EXISTING

8   SCHEDULE COULD STAND, I THINK ALL THE PARTIES WOULD ACTUALLY

9   BENEFIT FROM AN ADDITIONAL 30, 60, 90 DAYS BEFORE THE DISCOVERY

10   CUTOFF SO THAT WE CAN DO THESE DEPOSITIONS HAVING REVIEWED THE

11   DOCUMENTS AND NOT DOUBLE, TRIPLE TRACKING THEM.  WE WOULD

12   PREFER THAT.

13        AND WE WOULD PREFER TO PRODUCE OUR WITNESSES, WE'VE MADE

14   THAT CLEAR, AND IF WE'RE GOING TO HAVE TO TAKE THE OTHER

15   WITNESSES WITHOUT ACCESS TO THE PIF DOCUMENTS, WHICH WOULD BE

16   LIKE THEM TAKING OUR PEOPLE'S DEPOSITIONS WITHOUT ACCESS TO ANY

17   OF THE PGA TOUR'S DOCUMENTS, WE'LL DO THAT IF WE'RE ORDERED TO

18   DO SO.

19        BUT, YOUR HONOR, IT IS AN UNFAIRNESS BEING VISITED ON OUR

20   SIDE BASED PURELY ON DECISIONS MADE BY THE OTHER SIDE.  I MEAN,

21   THEY ARE REALLY GETTING A TACTICAL BENEFIT FROM HAVING FIRST

22   TOLD YOU THEY'D COOPERATE WITH DISCOVERY FROM PIF, AND THEN

23   COMPLETELY STONEWALLING IT, AND NOW THEY'RE PUTTING US IN A

24   POSITION WHERE WE HAVE TO DO OUR DISCOVERY IN A WAY THAT THEY

25   PREFER.

1          THE COURT:  ALL RIGHT.

2          MR. QUINN, WHAT IS YOUR RESPONSE TO MR. PETERS' REQUEST

3     FOR A 60 TO 90 DAY EXTENSION OF THE DISCOVERY CUTOFF?

4          MR. QUINN:  I DON'T THINK IT'S NECESSARY, YOUR HONOR.

5     IF IT SLIPS INTO JUNE, THAT'S FINE.  I MEAN, THESE ARE NOT FULL

6     DAY DEPOSITIONS.  EACH SIDE HAS A CERTAIN NUMBER OF SET HOURS.

7     A LOT OF THESE DEPOSITIONS ARE GOING TO BE TWO HOUR

8     DEPOSITIONS.

9          THE COURT:  RIGHT.

10         MR. QUINN:  SO I FRANKLY DON'T THINK IT'S THAT

11    BURDENSOME.  WE'VE GOT TWO VERY FINE LAW FIRMS WITH LOTS OF

12    CAPACITY IN THE SKADDEN ARPS FIRM AND THE KEKER FIRM.  IF SOME

13    DATES NEED TO SLIP INTO JUNE -- LOOK, WE FACE THE SAME THING,

14    SO WE'RE PREPARED TO GO FORWARD AND DO IT, AND I THINK THEY CAN

15    DO IT AS WELL.

16         THE COURT:  SO I DON'T NORMALLY JUST GIVE AN

17    EXTENSION WITHOUT A PROPOSED SCHEDULE OF WHEN THE DEPOSITIONS

18    ARE SET SO THAT I CAN SEE WHETHER THE DEPONENTS ARE AVAILABLE

19    IN THE TIME REQUIRED.

20         I THINK -- MR. PETERS, I THINK THAT MR. QUINN MAKES A GOOD

21    POINT.  SLIPPING TO THE END OF JUNE IS REASONABLE.  BUT IT'S

22    ARBITRARY FOR ME TO SAY THAT BECAUSE I REALLY WANT TO -- I WANT

23    YOU TO GET THESE SCHEDULED, AND I THINK YOU GAVE ME, WITH YOUR

24    CASE MANAGEMENT STATEMENT, A CHART WHICH LOOKS LIKE THE

25    BEGINNINGS OF WORKING OUT THAT SCHEDULE, AND WHAT'S REALLY

1  MISSING IS THE ACTUAL DATE OF THE NOTICE FOR A NUMBER OF THESE

2  WITNESSES, AND I WANT TO SEE THIS FILLED IN.  I WANT TO SEE THE

3  NAMES OF THE WITNESSES WHO YOU REALLY BELIEVE COULD NOT

4  EFFECTIVELY BE DEPOSED WITHOUT THE PIF DOCUMENTS, AND THAT'S

5  NOT TO SAY THAT YOU COULDN'T GO BACK TO THEM WITH A FEW

6  FOLLOW-UP QUESTIONS LATER WHEN YOU GET DOCUMENTS.

7        SO I THINK YOU OUGHT TO PREPARE A LIST OF DEPONENTS.  IT

8  CAN BE VIRTUALLY ALL OF THE PEOPLE YOU'RE GOING TO DEPOSE.  I

9  WILL BE GENEROUS IN LETTING YOU REDEPOSE WITNESSES WHEN YOU

10  SHOW ME THAT YOU HAVE DOCUMENTS THAT WOULD BE RELEVANT TO THEIR

11  TESTIMONY.

12        AND THEY WILL -- THEY WILL NEED TO APPEAR.  AND IF THEY'RE

13  THIRD PARTIES, YOU KNOW, PRESUMABLY THEY WILL BE COOPERATING,

14  BUT I DON'T KNOW.

15        SO I WANT THE SCHEDULE.  I'M NOT LIFTING THE DISCOVERY

16  CUTOFF.

17        MR. QUINN, WHEN YOU GET THE SCHEDULE WORKED OUT WITH

18  MR. PETERS, IT WOULD BE MY HOPE THAT YOU AND MR. PETERS CAN

19  SEND ME A STIPULATION TO EXTEND THAT CUTOFF DATE, BECAUSE I

20  THINK YOU WOULD HAVE -- HOPEFULLY YOU WILL HAVE RECEIVED WHAT

21  YOU'RE LOOKING FOR, AND THAT IS KEEPING THE CASE MOVING.

22        MR. QUINN:  YES, YOUR HONOR, WE'LL DO THAT.

23        AND WHEN DISCOVERY -- AS FOR EXTENDING THE CUTOFF, IT

24  WOULD BE TO THE END OF JUNE?  DO I UNDERSTAND THAT CORRECTLY?

25          THE COURT:  I THINK THAT'S REASONABLE.  BUT ONCE YOU

1   HAVE THE SCHEDULE, IF THERE'S SOME -- IF THERE'S SOME WITNESSES

2   IN EARLY JULY -- YOU SEE, UNTIL I CAN SEE THE SCHEDULE, THEN

3   IT'S MEANINGLESS TO ME.  IT'S ARBITRARY.

4           MR. QUINN:  VERY WELL.  WE'LL DO THAT.  WE'LL WORK

5   WITH MR. PETERS AND GET THAT TO YOUR HONOR.

6           THE COURT:  OKAY.

7           MR. PETERS:  WE'RE CERTAINLY GOING TO WANT TO PUT PIF

8   AND MR. AL-RUMAYYAN ON ANY LIST OF DEPONENTS.  THEY'RE PROBABLY

9   THE MOST CRITICAL ONES.  WE CAN'T PUT THEM ON ANY SCHEDULE.

10          THE COURT:  NO.

11          MR. PETERS:  SO --

12          THE COURT:  YOU CAN BE QUITE CERTAIN THAT THE --

13  WELL, I THINK THAT THE GROUNDS FOR THE STAY PENDING THE NINTH

14  CIRCUIT RULING ARE STRONG, AND WHETHER -- AND THAT WILL HAVE

15  THE SAME EFFECT -- I MEAN, I'M NOT GOING TO STAY IT AS -- UNDER

16  THE APPEAL, AND THEN NOT STAY IT FOR THE SAME TIME PERIOD FOR

17  THE MOTION TO DISMISS.

18      SO I THINK YOU CAN BE PRETTY SURE THAT THOSE ARE GOING TO

19  BE DELAYED.

20      NOW, AS SOON -- IF THE NINTH CIRCUIT GOES THE WAY YOU

21  BELIEVE, MR. PETERS, YOU'LL LET ME KNOW RIGHT AWAY, AND I

22  SHOULD GET -- I MEAN, THEY SHOULD COMMUNICATE WITH ME AS WELL,

23  BUT LET ME KNOW AND I CAN LIFT THE STAY, AND THEN WE CAN SEE

24  WHERE WE ARE IN THE MOTION TO DISMISS.

25          MR. PETERS:  BUT AS YOUR HONOR CORRECTLY OBSERVED,

1      THEY'RE GOING TO APPEAL.  IF THEY'RE UNSUCCESSFUL ON THE MOTION

2      TO DISMISS, THEY'RE GOING TO APPEAL THAT AND SEEK A STAY FROM

3      THAT.  SO WE'RE GOING TO --

4            THE COURT:  WELL, IT'LL BE INTERESTING -- SO IF THE

5      NINTH CIRCUIT SAYS THEY DON'T HAVE JURISDICTION, THAT WOULD BE

6      AN INTERESTING CASE TO PETITION FOR CERTIORI.

7          I -- I'M SURE THAT MANY VERY SMART LAWYERS WILL THINK

8      ABOUT WHETHER THAT IS FRIVOLOUS OR HAS MERIT.  YES, THAT CAN BE

9      A BIG DELAY.

10           AND, YOU KNOW, I DON'T ASCRIBE ILL MOTIVES TO EXERCISING

11     ALL OF ONE'S RIGHTS, BUT THEY HAVE CONSEQUENCES.  IT JUST MEANS

12     THAT THINGS CAN'T GO FORWARD ON THE SCHEDULE YOU'D LIKE.

13           SO I AM STILL GOING TO PARCEL OUT MODEST CONTINUANCES,

14     MR. QUINN, SO THAT YOUR CLIENTS CAN SEE THAT THERE'S STILL A

15     PATH TO RAPID RESOLUTION OF THE CLAIMS, AT LEAST AT THE

16     DISTRICT COURT LEVEL.

17           BUT IT WON'T BE VERY LONG FROM NOW WHERE I MAY HAVE TO

18     ABANDON THAT IF THINGS GO DIFFERENTLY.  SO, YOU KNOW, IF THE

19     NINTH CIRCUIT DOESN'T DISMISS THIS -- AND I'M NOT SAYING THEY

20     SHOULD -- IT COULD TAKE TWO YEARS.  YOU'LL GET A BRIEFING

21     SCHEDULE.

22           MR. QUINN:  UNDERSTOOD, YOUR HONOR.

23           THE COURT:  ALL RIGHT.

24           MR. PETERS:  YOUR HONOR, WHAT -- WHAT SHOULD -- I

25     UNDERSTAND YOUR HONOR'S POSITION ABOUT THE DEPOSITIONS.

1      WE ALSO HAVE THE SUMMARY JUDGMENT CUTOFF, WE HAVE AN

2   EXPERT CUTOFF, AND A TRIAL DATE.  IT'S OUR VIEW, AS I'VE

3   EXPRESSED, THAT WE CAN'T ANTICIPATE BEING ABLE TO DO ANY OF

4   THOSE THINGS WITHOUT COMPLETING DISCOVERY, WHICH WOULD INCLUDE

5   PIF AND MR. AL-RUMAYYAN.  WE CERTAINLY CAN'T HAVE A TRIAL

6   WITHOUT THEM.

7      HOW WOULD YOUR HONOR -- WHERE WOULD YOUR HONOR LIKE TO

8   LEAVE THAT TODAY?

9          MR. QUINN:  WELL, YOUR HONOR, IF I MAY SUGGEST THAT

10   THAT'S SOMETHING THAT WE DON'T NEED TO ADDRESS TODAY.  WE CAN

11   DO THIS DISCOVERY AND SEE WHERE WE ARE AT THAT POINT.

12      IT MAY WELL BE THAT AT THE END OF THE DAY, THE EVIDENCE

13   FROM PIF AND H.E. IS SIMPLY NOT AVAILABLE.  AND IF THAT

14   HAPPENS --

15          THE COURT:  WHEN YOU SAY "NOT AVAILABLE," ARE YOU

16   SUGGESTING THAT EVEN IF MY ORDER IS AFFIRMED BY THE NINTH

17   CIRCUIT AND IT IS -- AND THEN PIF AND MR. AL-RUMAYYAN CHOOSE

18   NOT TO PRODUCE IT, THAT WE'RE AT THE END OF THE ROAD?  I DON'T

19   KNOW WHAT YOU MEAN BY "NOT AVAILABLE."

20          MR. QUINN:  I'M JUST SAYING THAT THERE ARE CASES

21   WHERE EVIDENCE ISN'T AVAILABLE, AND THAT DOESN'T -- THAT -- I

22   DON'T KNOW HOW THAT'LL PLAY OUT, AND I SHOULDN'T BE -- I'M NOT

23   FORECASTING --

24          THE COURT:  SO IT REALLY DEPENDS ON THE CIRCUMSTANCES

25   OF THE UNAVAILABILITY.

1           MR. QUINN:  YES.

2           THE COURT:  SO IF IT'S UNAVAILABLE BECAUSE THE NINTH

3      CIRCUIT SAYS THERE'S IMMUNITY, THAT'S ONE THING.

4           IF IT'S UNAVAILABLE BECAUSE THEY DEFY A COURT ORDER, IT'S

5      ANOTHER THING.

6           SO WE NEED TO WAIT AND SEE.

7           MR. QUINN:  YES, EXACTLY.

8           THE COURT:  OKAY.  WHEN IS YOUR EXPERT DISCLOSURE

9      DATE, MR. PETERS?  DO YOU KNOW?

10          MR. GOLDBERG:  IT'S MAY 31ST, YOUR HONOR.

11          THE COURT:  OKAY.  SO YOU'RE GOING TO MEET AND CONFER

12     ON THE DEPOSITION SCHEDULE.  YOUR DISCLOSURE DATE WAS THE SAME

13     AS YOUR FACT -- AS YOUR DEPOSITION CUTOFF DATE.  SO WHY DON'T

14     YOU ANTICIPATE REACHING AN AGREEMENT THAT WOULD MOVE OUT THE

15     EXPERT DISCLOSURE DATE TO THE SAME DAY AS ANY EXTENSION ON

16     COMPLETING THESE DEPOSITIONS?

17          I THINK THAT WE PROBABLY NEED TO GET BACK TOGETHER AGAIN

18     IN ANOTHER MONTH TO SEE WHERE WE ARE.  AND I SAY A MONTH, BUT

19     I'M ACTUALLY THINKING THAT IT MIGHT BE BETTER TO DO IT RIGHT

20     AFTER THE DEADLINE FOR PIF AND HIS EXCELLENCY TO FILE A MOTION

21     TO DISMISS.  WE MIGHT KNOW MORE THEN.

22          WHAT'S YOUR THINKING ON WHETHER IT'S THE BEGINNING OF MAY

23     OR THE MIDDLE OF MAY?

24          MR. PETERS:  YOUR HONOR, I DON'T HAVE A VIEW ABOUT

25     THAT.

```
1          BUT I JUST DON'T SEE HOW WE CAN EXCHANGE EXPERT REPORTS

2     WITHOUT ACCESS TO DISCOVERY FROM PIF AND MR. AL-RUMAYYAN.

3          THE COURT:  WELL, THE REMEDY REALLY IS THAT I REOPEN

4     THE DISCOVERY FOR YOU SO THAT YOU CAN REDESIGNATE, NOT THAT I

5     DRAW A HALT TO IT NOW.

6          MR. PETERS:  BUT IT REALLY DOES PUT US IN AN UNFAIR

7     POSITION TO HAVE TO EXCHANGE EXPERT REPORTS WHEN WHAT WE

8     CONSIDER THE MOST CRITICAL EVIDENCE IN THE CASE IS NOT

9     AVAILABLE TO OUR EXPERTS.

10         THE COURT:  SO, MR. PETERS, THERE COULD COME -- I

11    COULD BE REVERSED, AND THEN IT'S GOING TO BE UNAVAILABLE

12    BECAUSE THE LAW PROTECTS PIF AND MR. AL-RUMAYYAN FROM HAVING TO

13    PRODUCE IT, AND THEN YOU HAVE TO GO FORWARD.

14         MR. PETERS:  YES.  BUT THE CURRENT STATE OF THE CASE

15    IS THAT BOTH YOU AND JUDGE VAN KEULEN HAVE ISSUED THE RULINGS

16    THAT YOU'VE ISSUED, WE BELIEVE, CORRECTLY.

17         THE COURT:  I DO, TOO.

18         MR. PETERS:  AND IN THE MEANTIME, THEY'RE NOT

19    PREJUDICED -- THEY'RE REALLY NOT PREJUDICED IF THEY HAVE TO

20    WAIT FOR THE APPEAL BEING FILED BY THE PEOPLE FUNDING AND

21    CONTROLLING THIS LITIGATION AND WHO CREATED IT.  WHILE THEY

22    MAKE THAT TACTICAL CHOICE, THEY'RE NOT PREJUDICED BY THAT

23    BECAUSE THAT'S A CHOICE THAT THEY'RE MAKING.

24         BUT UNDER THIS SCENARIO, THEY'RE MAKING A TACTICAL CHOICE

25    WHERE THEY GET TO PURSUE ALL OF THEIR RIGHTS AND VISIT
```

1    PREJUDICE ON US BECAUSE THEY HAVE ACCESS TO ALL THE EVIDENCE

2    THEY WANT, WE DON'T HAVE ACCESS TO WHAT WE CONSIDER THE MOST

3    IMPORTANT EVIDENCE, WE HAVE TO SUBMIT EXPERT REPORTS AND

4    POTENTIALLY MOVE FOR SUMMARY JUDGMENT, DEFEND AGAINST A SUMMARY

5    JUDGMENT MOTION, TRY THE CASE WITHOUT ACCESS TO THIS EVIDENCE

6    THAT YOUR HONOR HAS RULED IS RELEVANT, AND WE VIEW IT AS

7    CRITICAL.

8         AND I RESPECTFULLY VIEW THAT AS JUST NOT A -- NOT A

9    DESIRABLE OR FAIR WAY TO MOVE FORWARD, AND ONE THAT I'M SURE

10   MR. QUINN DELIGHTS IN.

11        THE COURT:  MR. PETERS, IS YOUR EXPERT REPORT DUE

12   MAY 31ST, OR JUST A DESIGNATION?

13        MR. GOLDBERG:  THAT'S THE REPORT DATE.

14        THE COURT:  THAT'S THE REPORT DATE?

15        MR. GOLDBERG:  YES.

16        MR. PETERS:  YES.

17        THE COURT:  WELL, I CERTAINLY UNDERSTAND THAT AN

18   EXPERT CAN'T PREPARE A REPORT WITHOUT HAVING ALL OF THE

19   EVIDENCE, AND I HAVE NO -- NONE OF US HAS ANY WAY OF KNOWING

20   HOW MUCH MORE THERE MIGHT BE THAT IS DIFFERENT IN KIND THAN

21   WHAT YOU ALREADY HAVE.  THAT IS -- IT IS DIFFICULT.

22        MR. QUINN:  YOUR HONOR, AN EXPERT CAN ALWAYS AMEND A

23   REPORT, AND AS YOUR HONOR SUGGESTED, IF IT TURNED OUT THAT

24   THERE WERE SOME ADDITIONAL EVIDENCE AND IT WAS RELEVANT TO THE

25   REPORT, WE'D CERTAINLY UNDERSTAND IF THE COURT PERMITTED A

1        MODIFICATION OF THE REPORT AND CHANGE IN THE EXPERT'S OPINIONS.

2              MR. PETERS:  BUT THEN WE HAVE A REPORT OUT THERE

3        WHICH IS GOING TO BE USED TO IMPEACH THE EXPERT BECAUSE IT WAS

4        PREPARED BASED ON INCOMPLETE INFORMATION.

5            IF THE SHOE WAS ON THE OTHER FOOT AND PGA TOUR WAS LOCATED

6        IN A FOREIGN COUNTRY AND WE SAID, "HA-HA, YOU'RE NOT GETTING

7        ANY EVIDENCE FROM THE PGA TOUR, YOU'RE NOT GOING TO DEPOSE ITS

8        COMMISSIONER, YOU'RE NOT GOING TO DEPOSE ITS OFFICERS, YOU'RE

9        NOT EVEN GOING TO REALLY KNOW WHO THEY ARE," WOULD THAT SEEM

10       LIKE AN APPROPRIATE WAY TO GO FORWARD IN THIS CASE?  BECAUSE

11       THAT'S WHAT THEY'RE PROPOSING.

12             THE COURT:  WELL, IT MAY BE THAT THE BEST THING TO DO

13       AT THIS TIME IS TO CONTINUE THE SUMMARY JUDGMENT HEARING TO THE

14       FIRST WEEK IN JANUARY, WHICH IS WHEN WE HAD PLANNED TRIAL, AND

15       THEN TO ALLOW YOU TO MOVE THE ENTIRE SCHEDULE OUT THAT 60 --

16       THE FOUR MONTH PERIOD.  I THINK A LOT OF DUST WILL SETTLE BY

17       THEN.  YOU WOULD HAVE A RULING ON THE MOTION TO DISMISS, AND

18       THEN THE EXPERT REPORT -- I STILL WANT THE FACT DISCOVERY TO GO

19       FORWARD.  I'M NOT LIFTING THAT.

20           BUT ON THE EXPERTS -- WELL, I'M NOT GOING TO SET THE

21       ACTUAL SCHEDULE ON THIS.  I'M GOING TO SET SUMMARY JUDGMENT,

22       AND I'M GOING TO LET YOU DO THAT.

23           SO IF I WERE TO SET -- LET'S SEE.  IN JANUARY, YOU WERE

24       SET TO BEGIN TRIAL ON THE 8TH.

25             MR. PETERS:  YES.

```
 1              THE COURT:  MAYBE IT MAKES SENSE TO SET THE SUMMARY
 2     JUDGMENT ON JANUARY 11TH.  THAT WOULD BE MY NORMAL MOTION DAY.
 3              MR. PETERS:  OKAY.  AND WE CAN MEET AND CONFER AND
 4     FILL IN, AS WE DID PREVIOUSLY, FILL IN THE DATES PRIOR TO THAT?
 5              THE COURT:  THAT'S RIGHT.
 6              MR. PETERS:  WITH THE UNDERSTANDING THAT YOUR HONOR
 7     WANTS THE DISCOVERY CUTOFF TO REMAIN THE SAME, BUT FOR PIF AND
 8     MR. AL-RUMAYYAN AND WHATEVER FOLLOW-ON WE SEEK LEAVE FROM THE
 9     COURT --
10              THE COURT:  YES.
11              MR. PETERS:  -- FOR.
12              THE COURT:  AND WHEN YOU SET THE SCHEDULE FOR THE
13     DEPOSITIONS, AS I THINK MR. QUINN UNDERSTANDS, I'M EXPECTING
14     THAT YOU'LL BE ABLE TO WORK OUT THE NECESSARY EXTENSION OF THE
15     FACT DISCOVERY CUTOFF AS WELL, AND THAT WITH MOVING OUT THE
16     SUMMARY JUDGMENT, YOU PROBABLY -- IT LIFTS ALL OF THE CONCERNS,
17     I THINK, OR IT EASES THEM.
18         ALL RIGHT.  THAT MEANS THAT THE TRIAL DATE IS VACATED.
19         BUT I WANT YOU TO UNDERSTAND THAT YOU SHOULD EXPECT, WITH
20     SUMMARY JUDGMENT IN JANUARY, THE TRIAL WOULD FOLLOW ABOUT FOUR
21     MONTHS LATER.  AND I CAN -- I SUPPOSE I CAN -- I HAVE TO LOOK
22     AT MY CALENDAR TO SEE WHERE I CAN FIGURE OUT WHERE TO HAVE A
23     FINAL PRETRIAL CONFERENCE, THAT OFTEN GETS TO BE THE HARDEST
24     PART, AND THEN A TRIAL DATE.  BUT I THINK YOU SHOULD EXPECT
25     TRIAL NO LATER THAN JUNE OF 2024.
```

1          MR. PETERS:  SUBJECT TO THE PACE OF THE NINTH

2     CIRCUIT, I GUESS.

3          THE COURT:  IT'S ALL SUBJECT TO RECONSIDERATION.

4      I JUST DON'T BELIEVE IN LIFTING THE CAP OF WHEN THERE'S

5     GOING TO BE TRIAL.  SO CLEARLY MY HAND HAS BEEN FORCED ON THIS

6     BEFORE.  I'VE HAD TO CHANGE THE DATES, NOT BECAUSE IT'S MY

7     PREFERENCE TO DO THAT, BUT, I MEAN, MR. PETERS, YOU HAVE MADE

8     COMPELLING ARGUMENTS ON THAT.

9          ALL RIGHT.  THEN I THINK WE HAVE A WAY FORWARD AT THIS

10    POINT.  THERE'S A LOT OF WORK TO DO IN THE NEXT COUPLE OF

11    MONTHS ON THE MOTION TO DISMISS.

12         THE OTHER MOTIONS YOU HAVE PENDING ARE RELATIVELY MINOR IN

13    SCOPE, AND I'LL TAKE CARE OF THOSE.

14         SO THE SUMMARY JUDGMENT MOTION IS CONTINUED TO

15    JANUARY 11TH.  I EXPECT -- BUT LET ME TELL YOU THAT WITH THAT

16    DATE, I EXPECT IT TO BE FULLY BRIEFED -- LET ME JUST GET A DATE

17    FOR YOU.  I'M NOT GOING TO BE READING THIS ON NEW YEAR'S EVE.

18    I WOULD LIKE IT FULLY BRIEFED BY DECEMBER 15TH.  OKAY?

19         MR. QUINN:  I'M SORRY, YOUR HONOR, DECEMBER 15TH DID

20    YOU SAY?

21         THE COURT:  DECEMBER 15TH WOULD BE THE CLOSING BRIEF

22    ON SUMMARY JUDGMENT.  IF YOU ARE BOTH FILING -- I THINK I'VE

23    BEEN THROUGH THIS BEFORE.  ALL -- SO I'M NOT RECEIVING THREE

24    SEPARATE SUMMARY JUDGMENT MOTIONS, OR I'M NOT EXTENDING THE

25    PAGES.

1          MS. LAMM, IF YOUR CLIENTS WANT TO BRING SUMMARY JUDGMENT,

2    THEY'RE SHARING THE 25 PAGES WITH MR. QUINN'S CLIENTS.  YOU CAN

3    FILE YOUR OWN BRIEF, YOUR SEPARATE -- I DON'T REQUIRE -- I KNOW

4    THE ISSUES ARE DIFFERENT.  IT JUST DOESN'T WORK THAT WAY.

5          MS. LAMM:  YOUR HONOR, THE ISSUES ARE TOTALLY

6    DIFFERENT.  WE'RE DEFENDING A COUNTERCLAIM.  HE IS A PLAINTIFF.

7    IT'S ENTIRELY DIFFERENT.  I'M NOT BRINGING THIS CASE.

8          THE COURT:  I'M JUST TELLING YOU THAT YOU AND

9    MR. QUINN ARE SHARING 25 PAGES.  THAT'S ALL.  YOU CAN WRITE

10   YOUR OWN BRIEF.  OTHERWISE -- I GUESS -- LET'S JUST BE REALLY

11   CLEAR.  I'M NOT GOING TO RECEIVE 500 PAGES OF BRIEFS.  IF YOU

12   ALL WANT TO DUMP 300,000 DOCUMENTS, THAT'S FINE.  BUT I'M NOT

13   RECEIVING 300 PAGES OF BRIEFS, AND IT JUST ISN'T THE RIGHT WAY

14   TO PROCEED.

15         SO FOR MR. QUINN AND FOR -- AND SO WE WILL WORK THIS OUT,

16   BUT I DON'T WANT YOU TO BE GEARED UP FOR BRIEFING OF HUNDREDS

17   AND HUNDREDS OF PAGES.  WHETHER I EXPAND IT FROM THE 25 IS

18   SOMETHING WE CAN ADDRESS LATER.

19         MS. LAMM:  YOUR HONOR, I MUST SAY, WE DO HAVE A

20   SYSTEM OF JUSTICE AND PROCEDURE IN THIS COUNTRY, AND WHEN

21   PEOPLE ARE SUED, THEY GET TO DEFEND.

22         THE COURT:  ABSOLUTELY.

23         MS. LAMM:  MR. QUINN'S CLIENT IS THE PLAINTIFF.

24         THE COURT:  YES.

25         MS. LAMM:  MINE IS NOT.

1          THE COURT:  WELL, MR. QUINN'S CLIENT PROBABLY HAS NO

2    BASIS FOR SUMMARY JUDGMENT, SO HE WON'T EVEN -- I MEAN, HE MAY

3    TRY.

4        SO YOU CAN WASTE YOUR TIME ON A MOTION, BUT, YOU KNOW, IT

5    IS PRETTY RARE THAT ANTITRUST VIOLATION IS FOUND AS A MATTER OF

6    LAW.

7          MR. QUINN:  YES, YOUR HONOR, THERE MAY BE MOTIONS FOR

8    PARTIAL SUMMARY JUDGMENT AS WELL.  THERE MAY BE SOME ISSUES

9    THAT SHOULD BE TAKEN OFF THE TABLE.

10       BUT I REALLY DO THINK WE ARE IN A COMPLETELY DIFFERENT

11   POSTURE.  I --

12          THE COURT:  I KNOW YOU ARE.

13          MR. QUINN:  I APPRECIATE THAT THE COURT HAS SAID THAT

14   THE COURT WILL ADDRESS THE --

15          THE COURT:  ALL RIGHT.  MR. QUINN, I HEAR YOU.

16       I HEAR YOU, MS. LAMM.

17       I AM NOT SETTING A SUMMARY JUDGMENT SCHEDULE.  IT'S

18   VACATED.  I'M NOT SETTING A TRIAL.  IT'S VACATED.  AND I WILL

19   NOW LOOK AT MY SCHEDULE WHEN I CAN HEAR ALL OF YOUR MOTIONS.

20   IT MAY BE TWO YEARS FROM NOW, AND I WANT YOU TO KNOW THAT.

21       THIS IS MY BEST EFFORT TO PUT YOUR MOTIONS IN ON THE

22   SCHEDULE THAT LIV AND YOUR OTHER CLIENTS WANT, AND I HAVE DONE

23   MY BEST.

24          BUT MY SCHEDULE -- I AM SETTING TRIALS AT THE END OF 2025,

25   AND YOURS WILL NOT GET PREFERENCE.  AM I CLEAR?

```
 1          AND I WILL FIND MY NEXT DATE WHEN I CAN SET SEVERAL DAYS

 2   FOR SUMMARY JUDGMENT.  IT IS NOW IN THE MIDDLE OF 2025, AND

 3   THAT'S WHAT YOU'RE GETTING.  SO THAT -- I'M GLAD TO DO THAT.

 4          MS. LAMM, I WANT TO RESPECT YOUR CLIENT'S FULL RIGHTS TO

 5   BRIEF THE ISSUES, AND AS I SAID, THERE ARE JUST CONSEQUENCES,

 6   AND THAT'S WHERE WE ARE.

 7          MR. PETERS, THAT MUST BE MUSIC TO YOUR EARS.  I WILL GIVE

 8   YOU A NEW SCHEDULE AND YOU CAN -- AND AS I SAY, I'M SETTING IN

 9   MID-2025 FOR SUMMARY JUDGMENT, SO I'LL SEND A SCHEDULE OUT.

10          MS. LAMM:  YOUR HONOR, IF I MIGHT?

11          MR. PETERS:  YOUR HONOR -- GO AHEAD.

12          MS. LAMM:  IT REALLY -- IT'S UP TO MR. QUINN, BUT I

13   THINK THAT IS REALLY PUNITIVE ON THE BASIS OF VERY LITTLE --

14          THE COURT:  MS. LAMM, IT'S -- THIS HAS BEEN PUNITIVE

15   TO ALL OF MY OTHER LITIGANTS THAT I HAVE GIVEN THIS CASE

16   PREFERENCE, AND I AM NOW DOING WHAT I DO EVERY WEEK, WHICH IS

17   SET SUMMARY JUDGMENT ON A SCHEDULE, AND YOU ARE NOW GOING TO BE

18   TREATED LIKE EVERYONE ELSE, AND I DON'T LOOK AT THAT AS BEING

19   PUNITIVE.

20          MR. QUINN:  YOUR HONOR, I FEEL KIND OF LIKE I MUST

21   HAVE SAID SOMETHING, I MISSPOKE OR SAID SOMETHING WRONG.  I

22   MEAN, WHAT WE CARED ABOUT MOST WAS TEEING THIS CASE UP SO THAT

23   THE TOUR'S PRACTICES COULD BE EXAMINED AND SUBJECT TO JUDICIAL

24   SCRUTINY ON A RAPID BASIS, BECAUSE THE COURT KNOWS FROM THE

25   BRIEFING WHAT IS GOING ON THERE IN THE MARKETPLACE.  THEY ARE
```

1    TIGHTENING THE RULES.  NOW EVEN PARTIES WHO -- PLAYERS WHO ARE

2    NOT MEMBERS OF THE TOUR NOW, THEY'VE ADOPTED A NEW RULE, IF

3    THEY GO PLAY FOR LIV, THEY ARE SUBJECT TO A TWO SEASON BAN.

4                THE COURT:  YEAH.

5                MR. QUINN:  THEY'VE ENTERED INTO NEW AGREEMENTS WITH

6    THE KOREAN TOUR, WITH THE JAPAN TOUR, AND THIS IS ACTUALLY --

7    THIS IS HAVING A VERY REAL EFFECT ON COMPETITION, ON CONSUMERS,

8    ON THE PUBLIC.  I WON'T GO INTO THE PLAYERS.

9                THE COURT:  MR. QUINN, WHY DON'T YOU HELP ME MOVE

10   THIS CASE TO TRIAL?

11               MR. QUINN:  I WANT TO.

12               THE COURT:  YOU KNOW IT WAS SET ONE YEAR FROM THE

13   TRO.

14               MR. QUINN:  NO, AND WE UNDERSTOOD THAT AND WE

15   APPRECIATED THAT.

16         AND WE'RE PREPARED TO DO WHATEVER WE CAN TO HELP THE CASE,

17   AND IF IT'S A MATTER OF -- IT SEEMS LIKE WE GOT OFF ON THE

18   WRONG TRACK BY TALKING ABOUT THE LENGTHS OF THE BRIEFS, AND IF

19   THAT'S AN ISSUE, THEN I WITHDRAW WHATEVER I SAID.  I MEAN, THE

20   COURT SAID THAT YOU'RE PREPARED TO LOOK AT THAT.

21         LOOK, WE'LL LIVE WITH WHATEVER THE COURT --

22               THE COURT:  IF YOU GIVE ME A REASONABLE PLAN OF 30 TO

23   40 PAGES OF BRIEFING TO BE SHARED, I CAN LOOK AT IT.

24         IF MS. LAMM IS ASSERTING SOME DUE PROCESS RIGHT I'VE NEVER

25   HEARD OF TO A PAGE LIMIT, THEN I'M NOT GOING TO FIGHT HER ON

```
 1    IT --
 2              MR. QUINN:  RIGHT.  WELL, LOOK --
 3              THE COURT:  -- AT ALL.
 4              MR. QUINN:  ACTUALLY, I DON'T CONTROL MS. -- I REALLY
 5    DO NOT CONTROL MS. LAMM.
 6              THE COURT:  I UNDERSTAND.
 7              MR. QUINN:  AND MY INTEREST IS IN GETTING THIS CASE
 8    READY FOR TRIAL, AND WE'LL DO WHATEVER WE NEED TO DO TO TEE UP
 9    THOSE SUMMARY JUDGMENT MOTIONS IN THE WAY THAT'S EASIEST FOR
10    THIS COURT TO ADDRESS THEM.
11              THE COURT:  I WILL GIVE YOU THAT JANUARY 11 DATE, AND
12    YOU UNDERSTAND THAT THE BRIEF -- THAT YOU NEED TO GET MY
13    APPROVAL FOR THE NUMBER OF PAGES THAT YOU ARE FILING IN THOSE
14    MOTIONS?
15              MR. QUINN:  UNDERSTOOD, YOUR HONOR, AND WE'RE HAPPY
16    TO DO THAT.
17              THE COURT:  ALL RIGHT.
18              MR. QUINN:  WE'LL DO THAT.
19              THE COURT:  AND YOU UNDERSTAND IT HAS TO BE FULLY
20    BRIEFED BY DECEMBER 15TH?
21              MR. QUINN:  WE DO UNDERSTAND THAT.
22              THE COURT:  ALL RIGHT.  AND I'M NOT GOING TO SET A
23    TRIAL DATE NOW BECAUSE I DON'T THINK IT REALLY MAKES MUCH
24    DIFFERENCE.  I WILL -- BECAUSE I'LL BE LOOKING AT ABOUT FOUR
25    MONTHS AFTER SUMMARY JUDGMENT.  IF YOU WANT A TRIAL DATE, I'LL
```

```
1        PICK ONE OUT FOR YOU AND SEND YOU -- FILE AN ORDER.

2                MR. QUINN:  THANK YOU, YOUR HONOR.

3                THE COURT:  ALL RIGHT.

4            MR. PETERS, ANYTHING ELSE?

5                MR. PETERS:  JUST IN LIGHT OF THOSE CHANGES -- AND

6        MAYBE MR. QUINN WOULD AGREE WITH THIS -- COULD WE HAVE JUST AN

7        EXTRA 30 DAYS ON THE DISCOVERY CUTOFF?  WE'LL COMPLY -- WE'LL

8        SUBMIT A LIST OF DEPOSITIONS, AND WE'LL WORK WITH MR. QUINN.

9            BUT IT'S APRIL 7TH, AND IN LIGHT OF THE OTHER DATES

10       SLIPPING, I JUST THINK THAT GIVES US A LITTLE BIT MORE

11       BREATHING ROOM TO DIGEST ALL THESE DOCUMENTS WE'VE GOTTEN, TO

12       SCHEDULE THESE WITNESSES, MANY OF WHOM ARE THIRD PARTIES, AND

13       NOT HAVE TO COME BACK TO THE COURT, WHEREAS NEITHER YOUR HONOR

14       NOR JUDGE VAN KEULEN REALLY WANT TO REFEREE THAT IF WE CAN WORK

15       IT OUT.  I THINK IF WE GET A LITTLE BIT MORE TIME, WE CAN.

16               THE COURT:  MR. QUINN, DO YOU HAVE ANY OBJECTION TO

17       THAT 30 DAYS?

18               MR. QUINN:  WELL, I UNDERSTOOD WE WERE TO THE END OF

19       JUNE.  I'M SURE IF MR. PETERS NEEDS SOME MORE TIME, I'M HAPPY

20       TO TALK TO MR. PETERS ABOUT THAT.

21               THE COURT:  SO YOU DON'T -- YOU DON'T OBJECT TO HIS

22       REQUEST TO NOW EXTEND THE DISCOVERY -- THE FACT DISCOVERY

23       CUTOFF TO JUNE 30TH?

24               MR. QUINN:  I DO NOT.

25               THE COURT:  OKAY.
```

1          MR. PETERS:  THANK YOU.

2          MR. QUINN:  I DO NOT.  BUT, I MEAN, DID WE LEAVE

3    HANGING THE ISSUE ABOUT WHEN EXPERT REPORTS WOULD BE DUE?

4    SHOULD THAT BE JUNE 30TH AS WELL?

5          THE COURT:  WHAT I HAD ASKED WAS THAT BECAUSE I HAVE

6    RESET YOUR SUMMARY JUDGMENT DATE, THAT YOU AND MR. PETERS TALK

7    ABOUT A REASONABLE SCHEDULE FOR THE EXPERT REPORTS TO BE

8    PRODUCED.

9          MR. QUINN:  OKAY.

10          THE COURT:  SO I THINK YOU CAN DO THAT OFFLINE, OKAY,

11    AND THEN YOU CAN JUST SEND ME A STIP AND ORDER.

12          MR. PETERS:  AND THEN THE ISSUE THAT WAS HANGING,

13    YOUR HONOR, WHEN WE GOT SIDETRACKED A LITTLE BIT, IS WHEN WE

14    CAN COME BACK AND HAVE ANOTHER CASE MANAGEMENT CONFERENCE.

15          THE COURT:  SO I ACTUALLY THINK IT MAKES MORE SENSE

16    FOR YOU TO COME BACK AFTER PIF AND MR. AL-RUMAYYAN FILE THEIR

17    MOTION TO DISMISS SO THAT I CAN SEE IT.  YOU WOULD HAVE A

18    BRIEFING SCHEDULE BY THEN.  I SHOULD BE ABLE TO GIVE YOU A

19    HEARING DATE BY THEN.

20        SO I JUST THINK THAT WILL BE MORE PRODUCTIVE.  AND SO --

21          MR. PETERS:  THAT SOUNDS GOOD.  SO LATER, AFTER

22    MAY 18TH, I GUESS?

23          THE COURT:  YEAH.  I JUST WANT TO SEE -- WELL, LET'S

24    SEE.  SO THE ONLY -- OH, I COULD ACTUALLY DO THIS ON -- NO.

25          WELL, ACTUALLY, MAY 18TH IS THE DAY I'D LIKE TO DO IT.

1    THAT IS THE DAY THAT YOUR BRIEF WOULD BE DUE.  I DON'T KNOW

2    WHETHER YOU'RE PLANNING TO TAKE IT UP TO THE VERY LAST SECOND

3    IN PREPPING IT.  I UNDERSTAND THAT GETS TO BE DIFFICULT, BUT

4    WOULD THAT BE AVAILABLE?  I'M IN TRIAL THAT WEEK, AND SO IT

5    WOULD -- AND THEN I'M AWAY THE NEXT WEEK, SO I WOULDN'T

6    OTHERWISE BE ABLE TO DO IT UNTIL TUESDAY, THE 30TH.  I COULD DO

7    THE 18TH, OR TUESDAY, THE 30TH.

8         SO, MS. LAMM, I'M NOT TRYING TO PRESS YOU ON GETTING A

9    BRIEF DONE.  I KNOW THOSE LAST HOURS CAN BE CRITICAL.  I KNOW

10   THAT.

11             MS. LAMM:  RIGHT.

12             MR. QUINN:  EITHER OF THOSE DATES WOULD WORK FOR US,

13   YOUR HONOR.

14             THE COURT:  OKAY.

15             MS. LAMM:  IF YOU NEED US TO BE THERE, WE WILL BE

16   THERE.

17             THE COURT:  OKAY.

18             MR. PETERS:  BUT IF YOUR HONOR WANTS TO HAVE TAKEN A

19   LOOK AT THEIR BRIEFING AND THEY'RE NOT GOING TO FILE IT UNTIL

20   THE 11TH, THEN THAT DOESN'T HELP, SO PROBABLY THE 30TH JUST

21   MAKES MORE SENSE.  WE'RE AVAILABLE EITHER DATE.

22             THE COURT:  OKAY.  I'M JUST LOOKING HERE.  YOU KNOW,

23   I ACTUALLY COULD DO THE 22ND.  I JUST DON'T WANT TOO MUCH TIME

24   TO GO BY.

25             MS. LAMM:  THAT'S GOOD.

```
1              THE COURT:  ALL RIGHT, GOOD.

2              MS. LAMM:  THAT WAY YOU'LL HAVE THE BRIEF.

3              THE COURT:  YEAH.  ALL RIGHT.  WHY DON'T WE SET IT --

4      WHY DON'T -- IS THIS 1:00 O'CLOCK HOUR GOOD FOR ALL OF YOU?

5              MS. LAMM:  IT'S FINE.

6              THE COURT:  TIFFANY, DOES THAT WORK?

7              THE CLERK:  YES, YOUR HONOR.

8              THE COURT:  OKAY.  MAY 22ND AT 1:00 O'CLOCK FOR

9      FURTHER CASE MANAGEMENT.

10          I APPRECIATE THE JOINT STATEMENT, AND TO THE EXTENT YOU

11     WISH TO SUGGEST ISSUES THAT YOU NEED ADDRESSED, FEEL FREE TO

12     JUST LIST THEM OUT LIKE AN AGENDA.  THAT IS ALWAYS HELPFUL.

13          ALL RIGHT.  WELL, HOPEFULLY WE'LL KNOW A LITTLE BIT MORE

14     FROM THE NINTH CIRCUIT BY THEN, BUT MAYBE NOT.  YOU KNOW, I

15     DON'T ACTUALLY TRACK HOW LONG THEY TAKE WITH THINGS.  WHEN

16     THEY'RE OUT OF MY HANDS, I WAIT TO HEAR FROM THEM.

17          ALL RIGHT.  I THINK THAT'S EVERYTHING THEN.  THANK YOU

18     ALL, AND I WILL SEE YOU IN MAY.

19             MR. QUINN:  THANK YOU, YOUR HONOR.

20             MR. PETERS:  THANK YOU, YOUR HONOR.

21             MR. GOLDBERG:  THANK YOU, YOUR HONOR.

22             MR. PETERS:  THANK YOU, YOUR HONOR.

23             THE CLERK:  COURT IS ADJOURNED.

24          (THE PROCEEDINGS WERE CONCLUDED AT 2:34 P.M.)

25
```

1

2

3                           CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18          DATED:  APRIL 14, 2023

19

20

21

22

23

24

25