QUINN EMANUEL URQUHART & SULLIVAN LLP
JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

SCOTT K. HVIDT, *pro hac vice*
shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

*Attorneys for Plaintiffs LIV Golf, Inc., Matt Jones, and Bryson DeChambeau*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, and LIV GOLF INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, AND YASIR OTHMAN AL-RUMAYYAN, <br><br> Counter-Defendant. | CASE NO. 5:22-cv-04486-BLF <br><br> **PLAINTIFFS' OPPOSITION TO PGA TOUR, INC.'S ALTERNATIVE CROSS-MOTION FOR STAY OF DISCOVERY** <br><br> Judge: Hon. Beth Labson Freeman <br><br> Date Filed: August 3, 2022 <br><br> Trial Date: January 8, 2024 |

**REDACTED VERSION**

**PRELIMINARY STATEMENT**

Less than a month ago, this Court rejected the Tour's request for an indefinite stay, instead ordering the Tour to proceed with depositions and admonishing it that "this case will [not] take ten years to litigate." Apr. 7, 2023 CMC Tr. at 40:22-41:9. The Court explained that taking depositions is critical to "preserve evidence" and they can be reopened later if the Tour obtains relevant materials from PIF and HE, while communications involving PIF and HE can be obtained from counterparts to the communications. *Id*. at 35:19-36:20, 38:25-39:13, 40:25-41:4. Expert reports can likewise be supplemented with newly available evidence. *Id*. at 52:22-53:1. Rather than abide by the Court's decision, the Tour has now effectively filed a motion for reconsideration in the guise of a stay motion, recycling the same arguments the Court already rejected. The Tour fails to even make pretense of complying with the Court's order: it has **not** sought discovery from third parties that communicated with PIF and HE and has **not** identified deponents for whom PIF and HE documents are necessary. Most disturbingly, discovery has recently revealed the reason behind the Tour's relentless delay tactics: Long after it determined that litigation was on the horizon, the Tour began using the ephemeral messaging app Signal to make communications unavailable for discovery.

Especially in light of that alarming revelation, the Tour offers no compelling reason for the Court to reconsider its prior ruling. Without further discovery, the importance of the PIF and HE materials to this case remains unknown, and this Court will have ample opportunity to consider potential remedies—such as a jury instruction—in the future if the PIF and HE material remain unavailable and the extent of any unavailability is established. At the same time, Plaintiffs continue to suffer ongoing and irreparable harm from the Tour's anticompetitive conduct—not to mention the harm to consumers, the public, and the golf world. A lengthy stay during appeal would allow the Tour to continue its unlawful conduct for years to come and potentially drive LIV out of the market, to the detriment of golf fans and players everywhere. Although the Tour claims it cannot obtain a fair trial without discovery from PIF and HE, it has not even attempted to seek those materials from other sources. That is because the Tour does not want a fair trial; it wants to derail the case so that its conduct evades judicial review.

# ARGUMENT

## I. THE TOUR FAILS TO MEET ITS BURDEN TO MAKE A CASE FOR A STAY.

The Tour effectively seeks reconsideration of the Court's prior rulings. The Court has already ordered discovery to proceed after PIF and HE filed a notice of appeal, and the Tour offers no reason to revisit that recent holding. Apr. 7, 2023 CMC Tr. at 37:6-8. There is none. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles a rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward" in that event if there is even a "fair possibility" of damage to someone else. *Id.* Having failed to take basic steps to obtain PIF and HE materials elsewhere or address the Court's prior rulings, the Tour fails to meet its burden to make a clear case for a stay.

### A. The Tour Has Not Complied With The Court's Orders Regarding Alternative Sources of Evidence Related to PIF and HE.

The Tour has not complied with the Court's orders designed to determine the Tour's true need for PIF and HE materials. In denying the Tour's earlier request for delay, the Court gave clear directives on how to proceed. *First*, the Court ordered the Tour to identify depositions that would be "truly ineffectual" without PIF and HE materials and "make a record" of those depositions with Plaintiffs' counsel. Apr. 7, 2023 CMC Tr. at 36:15-37:10, 42:3-10. *Second*, the Court ordered the Tour to "send third party discovery" asking for "correspondence with PIF and [HE]" and then "proceed with the depositions of those people." *Id*. at 38:25-39:13, 40:23-24. The Court gave the Tour an extra week to send subpoenas, but it unequivocally overruled its objections. *See id.* at 39:15-22 ("just . . . do it"). It then allowed the Tour to reopen depositions only where the Tour was "unable to obtain recipient's emails" or needed "internal documents." *Id*. at 40:25-41:4.

The Tour has simply ignored these directives. The Tour's motion confirms it has not analyzed which witnesses cannot be effectively deposed without documents from PIF and HE. The Tour's flat insistence that *no* witness can *possibly* be deposed without PIF and HE documents strains credulity—the Court already found that it does not "actually believe every witness's testimony is affected." *Id.* at 37:6-8. The Tour fails to make the particularized showing required by the Court

that depositions cannot proceed.  Further, the Tour has not sent **any** subpoenas seeking testimony on communications with PIF and HE with witnesses on subjects they claim to need.  The Tour claims it cannot know everyone that communicated with PIF and HE, Mot. at 3:23-25, but that does not excuse its failure to subpoena even those it **does** know about.  For example, the Tour identified sponsors that allegedly communicated with PIF and HE **six months ago**.  Dkt. No. 169 at 5:14-16.  But having won its motion to compel, the Tour refuses to seek discovery from these entities.  Similarly, with respect to broadcasters, the Tour subpoenaed only two broadcasters—one of which works with LIV—neither of whom are part of LIV's case for the Tour to defend against.

The Tour's failure to comply with the Court's orders creates serious problems for the Court's ability to determine PIF's and HE's necessity to the case.  The Tour's conduct makes it impossible to know the extent of the two types of materials the Court found may warrant reopening discovery: (1) PIF and HE communications where the Tour was "unable to obtain recipient's emails," and (2) cases where the Tour "think[s] there are internal documents."  Apr. 7, 2023 CMC Tr. at 40:25-41:4.  Having failed to comply with the Court's orders, the Tour cannot meet its burden on a stay.

> **B.     The Court Has Already Found Strong Reasons To Continue Through Discovery; The Same Reasons Continue To Apply.**

The same reasons that the Court denied the Tour's previous requests for delay continue to apply.  As the Court explained at the last case management conference, Plaintiffs have a "right to preserve evidence," and the Tour will "need to preserve some [evidence] as well."  Apr. 7, 2023 CMC Tr. at 35:19-24, 36:15-16.  Rather than grinding the case to a "halt," the Court noted that depositions can be reopened if relevant material from PIF and HE later became available.  *Id*. at 40:25-41:9.  Plaintiffs further explained that expert reports can be amended if additional evidence became available.  *Id*. at 52:22-25; *see also* Dec. 16, 2022 CMC Tr. at 12:19-13:17.  And the Court explained it wanted to "see what the Ninth Circuit does," including with respect to the Tour's motion to dismiss.  Apr. 7, 2023 CMC Tr. at 43:1-4.  None of that has changed in the last month.

*First*, the Tour's request for a stay remains grossly premature.  As the Court noted before, "a lot can happen" in the next few months.  *Id*. at 31:17.  The Tour has moved to dismiss PIF's and HE's appeal, and "if [the Tour is] right that the Ninth Circuit doesn't have jurisdiction, then [] the

Ninth Circuit is going to return this right away." *Id*. at 43:2-4. PIF and HE have also not filed their motion to dismiss. *Id*. at 31:15-18. And the parties will simply know more at the end of discovery. Although the Court found their discovery relevant (which Plaintiffs do not seek to relitigate), the importance and the Tour's need for it from PIF's and HE's files will be better known after discovery.

*Second*, discovery remains critical to preserving evidence. A protracted delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). That risk is magnified here because the Tour deliberately used hard-to-trace messaging tools and oral communications to carry out its conspiracy. The Tour started using the ephemeral and encrypted messaging app Signal in March 2022—long after it first anticipated this litigation—to potentially destroy messages. Surprenant Decl. ¶¶ 2-22, Ex. F. (Plaintiffs continue to investigate this conduct, and any prejudice that resulted will be the subject of future motions.) This behavior is part of an established pattern. The Tour's agents already testified to ███████████████████████████████ *Id*. ¶ 6, Ex. E. And the Tour's own documents ███████████—again, after the Tour anticipated litigation—███████████. *Id*. Ex. U. If any of this evidence is to be collected, now is the time. And documentary evidence is not all that would be lost. In deposition, numerous Tour witnesses testified that they cannot remember events that took place **one year ago**. *Id.* Exs. O-Q. Three Tour witnesses have testified that they ███████████████████████████████████. *Id*. That absurd position shows that discovery must proceed now—either to guard against the apparent amnesia epidemic or to avoid giving the Tour a colorable basis to justify its witnesses' claimed memory loss.

It would be particularly unfair to permit the Tour to benefit from its withholding of evidence while complaining that evidence from PIF and HE is not available due to good faith immunity defenses. The Tour argues that "one-way" preservation will be prejudicial, but the discovery process is not "one-way." The evidence to be preserved includes material regarding the Tour's counterclaims and defenses. For example, the Tour claims to seek evidence about LIV's "player recruitment goals," Mot. at 4:3-9, but it will be less able to do so if LIV executives change jobs during a stay. The Tour's claim that it cannot "fully prepare to take depositions," *id*. at 3, has already been rejected by the Court: "it is only some of them that [the Tour] could reasonably assume would

be affected by later discovery" and the Tour "can always come back and ask to reopen a deposition." Apr. 7, 2023 CMC Tr. at 36:16-20; Feb. 24, 2023 CMC Tr. at 30:17-22. And the Tour's concern about disclosing its "strategy and theory of the case" is inherent in all discovery; the Tour has no right to demand disclosure at a specific time. *See Russell v. Maman*, 2020 WL 5943844, at *4 (N.D. Cal. Oct. 7, 2020). The Court should order depositions to proceed for the same reasons it did before.

*Third*, expert discovery can likewise proceed subject to reopening if new evidence becomes available. The Court has considered and rejected the Tour's claims here as well. *See* Dec. 16, 2022 CMC Tr. at 12:19-13:23, 25:12-26:5. Although scheduling fact and expert discovery sequentially is typical, it is not required, and both federal and local rules contemplate doing them concurrently. *See* Fed. R. Civ. P. 26(d)(3)(A) ("methods of discovery may be used in any sequence"); Civ. L. R. 37-3 (noting "a single discovery cut-off for both fact and expert discovery"). Concurrent expert reports are common, for example, during class certification. *See Calderon v. Tulare Reg. Med. Ctr.*, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018). There is no prejudice in such cases because an expert can readily supplement a report if additional evidence become available. *See In re Cathode Ray Tube (CRT) Litig.*, 2015 WL 13756254, at *2 (N.D. Cal. Aug. 13, 2015) (allowing supplemental expert report based on "new evidence available after the close of discovery"). Underscoring this point, the Tour's own expert prepared a nearly 100-page report in this case within a week of its filing. Dkt. No. 5-16. The Court has already rejected the Tour's claimed prejudice in this regard. *See* Dkt. Nos. 181, 187. Indeed, where the challenged conduct is ongoing and competition is fluid, revisiting expert opinions can only be expected. Regardless, Plaintiffs have committed not to rely on any changes arising from PIF and HE discovery for cross-examination. The Court should deny the Tour's motion for the reasons that it denied its earlier requests.

## II.   THE BALANCE OF FACTORS WEIGHS HEAVILY AGAINST A STAY.

The Tour's motion should be denied because the stay factors strongly favor the Plaintiffs. As the Court recognized when it first expedited the schedule, this is an "important case." Aug. 9, 2023 Hr'g Tr. at 90:15-16. Professional golf has been monopolized for decades, and this is the first serious challenge to that monopoly in decades. If the case is allowed to die on the vines over discovery from third parties related to antitrust *Plaintiffs*, it may be years before another challenger

5

emerges, and the Tour's conduct may evade judicial review. The public and the golf world will suffer irreparable harm while the Tour's conduct continues. To prevent that inequitable outcome, the Court has a menu of remedial measures to mitigate any prejudice that the Tour can demonstrate after discovery concludes. Plaintiffs will work constructively with the Court and the Tour to fashion a solution, but respectfully submit that a stay causing irreparable harm would be inappropriate.

> **A.    A Stay Is Not Warranted Because The Prejudice to Plaintiffs and the Public Outweighs Any Prejudice To the Tour.**

A request for a discretionary stay requires weighing "the competing interests which will be affected by the granting or refusal to grant a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254). These interests include "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

Here, Plaintiffs and the public will suffer severe harm from a stay. Plaintiffs, the golf world, and consumers face ongoing and irreparable damage from the Tour's anticompetitive conduct. The Tour has banned golfers who play for LIV, denied them playing opportunities, and conspired with and threatened others to exclude LIV from the entire golf "ecosystem." Dkt. No. 83 ¶ 11. The Tour's deliberate strategy is to "███████" LIV "██████████████" to make it "████████" its nascent entry. Surprenant Decl. Ex. R. The longer this conduct continues, the greater the chance that it will succeed. Plaintiffs thus need injunctive relief as soon as possible to stop the Tour's unlawful conduct, which constitutes strong reasons against a stay. *See Lockyer*, 398 F.3d at 1112 (seeking "injunctive relief against ongoing and future harm" weighs against a stay). And Plaintiffs are not the only ones harmed by delay. Plaintiffs challenge the Tour's monopoly in professional golf markets, which has increased prices for consumers, decreased wages for professional golfers, and fostered stagnation in the game of golf. Dkt. No. 83 ¶¶ 43-55. If the Tour succeeds in driving

LIV out of business, the Tour's conduct may evade judicial review. In *Lockyer*, the Ninth Circuit reversed a stay because if the antitrust claims "ha[ve] merit," defendant's conduct "is an ongoing illegal concentration of market power that threatens economic harm to . . . consumers." 398 F.3d at 1112. The same harms apply here and weigh heavily against a stay.

In relation to the "urgency of the claims presented to the court," PIF's and HE's appeal will likely not conclude in the immediate future. *See Leyva*, 593 F.2d at 864. The Tour suggests the appeal will take 13 months, but this Court and the Ninth Circuit may first need to resolve motions to dismiss, and PIF and HE have raised seeking Supreme Court review. The Tour itself seeks a trial 374 days after the final disposition of PIF's and HE's appeal and thus admits a stay will permit the Tour's conduct to continue for *years*. Surprenant Decl. Ex. S. Such extended delay far exceeds the eighteen months the Ninth Circuit previously held puts plaintiffs "effectively out of court." *See Davis v. Walker*, 745 F.3d 1303, 1309 (9th Cir. 2014). The very real prospect that a stay will allow the Tour's unlawful conduct to continue unabated for years weighs strongly against it. *See White v. U.S. Army Corps. of Eng'gs*, 2023 WL 2347379, at *8 (N.D. Cal. Mar. 3, 2023) (denying a stay that would "allow Defendants 'to engage in unlawful behavior with no concrete end date'"); *Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *13 (N.D. Cal. May 10, 2022) (denying a stay that would "allow Defendant unhindered ability to continue its unlawful business practices for years").

On the other side of the scale, the Tour argues prejudice absent a stay from having to litigate the case without evidence from PIF and HE. Plaintiffs acknowledge that the Court has found their materials relevant to the antitrust case and counterclaims. But relevance is not the standard. "In evaluating prejudice [from missing evidence], the court must consider a wide number of factors," including (1) "the centrality of the evidence to the case and its importance," (2) "the probative value and reliability of the secondary or substitute evidence," (3) "the nature and probable weight of factual inferences of other demonstrations and kinds of proof allegedly lost," and (4) "the probable effect on the jury from absence of the evidence." *U.S. v. Sivilla*, 714 F.3d 1168, 1173-74 (9th Cir. 2013) (citation omitted) (considering the criminal context). The Tour has not analyzed these factors, but each category of information it identifies has strong "secondary or substitute evidence" or can be inferred from other evidence. *See Laub v. Horbaczewski*, 2020 WL 9066078, at *8 (C.D. Cal.

July 22, 2020) (finding no prejudice because "the missing evidence would [not] significantly alter the *type* of evidence at Defendants' disposal or its persuasiveness").

As this Court previously found, communications between PIF and HE and sponsors, broadcasters, and players can be obtained from those entities and have ready substitutes (if only the Tour seeks them through discovery). PIF's "financial and strategic goals for LIV" were all communicated to LIV and third-party entities. Indeed, the Tour has claimed that PIF and HE did not work in isolation in these matters: It has argued that PIF hired consultants to "prepare LIV's financial model" and "approved" LIV's financial planning. Dkt. No. 147 at 18:10-13, 3:6-8. PIF's financial expectations for LIV can be inferred directly from the financial models that it received from consultants and approved for LIV, which should be pursued to determine if any evidence is actually lacking. Similarly, early drafts of player agreements can be obtained from Performance54. The Tour has claimed that PIF hired Performance54 to create "the organization that would become LIV," Dkt. No. 375 at 2:11-13, and its services included analysis of player agreements. Dkt. No. 375-2 at LIV00201657. The Tour even has a 30(b)(6) deposition topic on that subject. Surprenant Decl. T. And PIF's purported approval of player contracts and payments would necessarily have been communicated to LIV; PIF could not have approved LIV's conduct otherwise.

The information the Tour identifies thus has strong "substitute and secondary evidence." The Tour claims the "full" story is somehow "significantly different," but that is pure speculation. Mot. at 4. Without seeking thus evidence, the Tour cannot meet its burden to "establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to [PIF and HE] material would have produced evidence favorable to its cause." *Galicia v. Nat'l Railroad Passenger Corp.*, 2018 WL 6314191, at *4 (C.D. Cal. July 20, 2018). As described above, the Tour has refused to obtain necessary evidence. And even where the Tour obtained documents from Performance54 and consultants, it refused to proceed with their depositions, claiming that it needs materials from PIF and HE first. The Tour's failure to exhaust the process shows that its prejudice stems, at least in part, from its own lack of diligence. It cannot show prejudice based on its *true* need for PIF and HE materials, which the Court indicated could only extend to documents where the Tour is "unable to obtain recipient's emails" and "internal documents." Apr. 7, 2023 CMC Tr. at 40:25-41:4.

Last, the orderly course of justice does not fully favor either party, but is far more consistent with Plaintiffs' approach. Plaintiffs recognize that inefficiency may result if the Ninth Circuit denies immunity and orders PIF and HE to provide discovery later in the case. But the Tour's approach is far worse: It would stay the antitrust case for *years* pending collateral litigation over a single third-party discovery issue. The Ninth Circuit has recognized that such "tail wagging the dog" litigation "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied." *See Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021) (months-long remand dispute). The Tour's approach of denying justice through delay over a single discovery issue is disproportionate. As for the counterclaims, PIF and HE will plainly not be tried *in absentia*, as the Tour suggests. Mot. at 5. The counterclaims are proceeding against LIV, while those against PIF and HE will be subject to a motion to dismiss and resolved then or after a potential appeal if the Ninth Circuit holds PIF and HE lack immunity from suit. Should the Court wish to try the counterclaims against all counter defendants together, it may reconsider bifurcation. But those issues need not be decided now. At this point, the course most consistent with the orderly administration of justice is to direct the parties to complete as much discovery as possible.

### B. If Prejudice Is Established At the Close of Discovery. The Case Could Proceed With A Jury Instruction Or Other Potential Remedy.

Because the stay factors favor Plaintiffs, the case should proceed to trial as currently ordered and without further delay. Plaintiffs recognize that the Court has found PIF and HE materials relevant to the claims and counterclaims and may consider the Tour to be prejudiced from trying the case without them. The case can still proceed to trial on current schedule because the Court has alternatives to mitigate any prejudice the Tour can demonstrate at the end of discovery. *See Sartor v. Cty. of Riverside*, 2022 WL 18278597, at *7 (C.D. Cal. Nov. 30, 2022) (denying a stay because "there are less drastic alternatives" to "facilitate truth-seeking"). The simplest and most effective remedy might be a jury instruction that informs the jury that PIF and HE have asserted sovereign immunity instead of providing discovery and (for example) allows the Tour to argue that their evidence would disprove Plaintiffs' case. That is a superior remedy for three reasons.

***First***, an instruction represents the likely remedy if PIF and HE simply refused to provide discovery. The Tour has suggested terminating sanctions in this scenario, but such sanctions are inappropriate because LIV and the players have not refused to provide discovery and cannot be sanctioned for something not under their control. *See Conn. Gen. Life Ins. Co. v. New Images of Bev. Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007); *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209-12 (1958) (reversing sanctions that exceed limitations on "dismiss[ing] an action without affording a party the opportunity for a hearing on the merits of his cause" because discovery was not provided due to foreign law). Because the only remedy if PIF and HE refused to provide discovery is to proceed on the merits with a lesser "sanction," that is also proper here, where they are seeking a good faith appeal.

***Second***, a jury instruction acknowledges the procedural posture of the case. As the Court noted in *Rogers*, unavailable discovery does not mean that a plaintiff "will profit through its inability to tender" evidence because it "carries the ultimate burden of proof." *Id.* at 212. Any gap in the evidence favors the Tour and allows it to cast doubt on Plaintiffs' case. For example, the Tour is free to argue that PIF and HE discovery would have shown that they had noneconomic goals for LIV, which may prevent Plaintiffs from meeting their burden to show antitrust injury. A jury instruction leaves "ample room [for the Tour] to argue [its] theory of the case to the jury" and will mitigate any prejudice. *See Brewer v. City of Napa*, 210 F.3d 1093, 1097 (9th Cir. 2000).

***Last***, a jury instruction preserves the fact-finding function of the jury. "Emphasizing arguable inference to jurors is the job of advocates, not courts." *Grazier ex rel. White v. City of Phil.*, 328 F.3d 120, 127 (3d Cir. 2003). Although the Tour has made sweeping claims about PIF and HE materials, many of those claims are contradicted by evidence. The jury should be allowed to hear argument from both sides to determine the truth of the matter. *See Issa v. Del. State Un.*, 2019 WL 1883768, at *1 (D. Del. Apr. 26, 2019) (finding that the jury "will be assisted in fulfilling its obligations by hearing the contested evidence from both sides" about missing evidence). The Court need not decide on an exact instruction (or other remedy) now; the existence and sufficiency of alternatives shows that the case can proceed without PIF and HE materials.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Tour's motion be denied.

DATED: May 4, 2023                              Respectfully submitted,

By: _____/s/ Dominic Surprenant_____
JOHN B. QUINN, SBN 90378
 johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
 dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
 kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

ROBERT P. FELDMAN, SBN 69602
 bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

RACHEL S. BRASS, SBN 219301
 rbrass@gibsondunn.com
LAUREN D. DANSEY, SBN 311886
 ldansey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

SCOTT K. HVIDT, *pro hac vice*
 shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
 jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
 klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP

1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:     202.955.8500
*Attorneys for Plaintiffs LIV Golf, Inc.,
Matt Jones, and Bryson DeChambeau*

PLAINTIFFS' OPPOSITION TO PGA TOUR, INC.'S  ALTERNATIVE CROSS-MOTION FOR STAY OF DISCOVERY * CASE NO. 5:22-CV-04486-BLF

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Executed on May 4, 2023.

*/s/ Dominic Surprenant*
Dominic Surprenant
