Edward D. Greim, Esq.
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: 816-256-3181
edgreim@gravesgarrett.com

*Attorney for Designated Party*
*Clout Public Affairs, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br>  Plaintiffs, <br> v. <br><br> PGA TOUR, INC., <br><br>  Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, AND YASIR OTHMAN AL-RUMAYYAN, <br><br>  Counter-Defendant. | Case No. 5:22-cv-04486-BLF <br><br> **DESIGNATED PARTY CLOUT PUBLIC AFFAIRS, LLC'S STATEMENT IN SUPPORT OF SEALING PORTIONS OF LIV'S ALTERNATIVE CROSS-MOTION FOR STAY OF DISCOVERY** |

1

## I.    INTRODUCTION

Pursuant to Civil Local Rules 79-5(f)(3), 79-5(c)(1), and the Protective Order entered by this Court, Dkt. 111, non-party Clout Public Affairs, LLC, ("Clout") provides the following statement in support of sealing its confidential material, which Plaintiffs and Counter-Defendants LIV Golf, Inc. ("LIV"), Matt Jones, Bryson DeChambeau, and Peter Uihilein provisionally filed under seal in connection with their Opposition to PGA Tour, Inc.'s Alternative Cross-Motion for Stay of Discovery, Dkt. 423 (the "Opposition to Stay"). These materials were filed in unredacted form as attachments to Plaintiffs' and Counter-Defendants' Administrative Motion to Consider Whether Another Party's Material Should be Sealed, Dkt. 422.

The material Clout seeks to maintain under seal reflects competitively sensitive business information regarding the PGA Tour, as well as sensitive internal and external communications from Clout, a non-party consultant retained by the PGA Tour to advise and assist with competitive and strategic issues. Many of Clout's materials reflect its own internal thought processes, procedures for developing ideas and messaging, and know-how in the area of strategic communications and First Amendment-protected political advocacy and speech. These materials are designated as "Confidential" or "Confidential – Attorneys' Eyes Only" under the Protective Order. Specifically, Clout seeks to seal:

| ECF No. | Document | Text to be Sealed | Basis for Sealing |
|---------|----------|-------------------|-------------------|
| 423 | Memorandum and Points of Authority | Line 4:13 | Reflects sensitive information regarding the PGA Tour's strategic decisions and Clout's work for the PGA Tour. Disclosing this information would likely cause harm to the PGA Tour's relationships with business partners and intrude on Clout's reasonable expectation of confidentiality and privacy as a non- |

| | | | party, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First Amendment protected political speech and advocacy. Further, Clout employees have a reasonable fear of retaliation from the Kingdom of Saudi Arabia, the funder of LIV through its Public Investment Fund ("PIF"), given its track record on human rights violations and dissident retaliation. This information is sensitive and likely to provoke the Kingdom. |
|---|---|---|---|
| 423-22 | Declaration of Dominic Surprenant | Paragraphs 2, 4, 5, 6, 14, 17, 20, 21, 22 | Clout agrees to release Paragraph 2 and Paragraph 5, lines 20-22, and permit the Declaration to be filed without these portions being sealed.<br><br>The remaining portions should be sealed. They reference sensitive communications between PGA Tour and Clout employees regarding strategic advice on competitive issues. Disclosing these communications would likely cause harm to the PGA Tour's relationships with business partners, reveal the PGA Tour's strategy and decision-making processes, and intrude on Clout's expectation of confidentiality and privacy in its communications with clients, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First Amendment protected political speech and advocacy.<br><br>Further, deposition references are included that reveal sensitive information regarding the PGA Tour's strategic decisions and Clout's work for the PGA Tour. Disclosing these references would likely cause harm to the PGA Tour's relationships |

| | | | with business partners and intrude on Clout's reasonable expectation of confidentiality and privacy as a non-party, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First-Amendment protected political speech and advocacy. Further, Clout employees have a reasonable fear of retaliation from the Kingdom of Saudi Arabia, the funder of LIV through its PIF, given its track record on human right's violations and dissident retaliation. This transcript is sensitive and likely to provoke the Kingdom. |
|---|---|---|---|
| 423-1 | Exhibit A | Entire Exhibit | Clout agrees to release this Exhibit and permit it to be filed without seal. |
| 423-3 | Exhibit C | Entire Exhibit | Reflects sensitive communications between PGA Tour and Clout employees regarding strategic advice on competitive issues. Disclosing these communications would likely cause harm to the PGA Tour's relationships with business partners, reveal the PGA Tour's strategy and decision-making processes, and intrude on Clout's expectation of confidentiality and privacy in its communications with clients, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First Amendment protected political speech and advocacy. |
| 423-4 | Exhibit D | Entire Exhibit | Reflects sensitive communications between PGA Tour and Clout employees regarding strategic advice on competitive issues. Disclosing these communications would likely cause harm to the PGA Tour's relationships with business partners, reveal the PGA Tour's strategy and decision-making processes, and intrude on Clout's expectation of |

|   |   |   | confidentiality and privacy in its communications with clients, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First-Amendment protected political speech and advocacy. |
|---|---|---|---|
| 423-5 | Exhibit E | Entire Exhibit | This is a portion of a deposition transcript that reveals sensitive information regarding the PGA Tour's strategic decisions and Clout's work for the PGA Tour. Disclosing this transcript would likely cause harm to the PGA Tour's relationships with business partners and intrude on Clout's reasonable expectation of confidentiality and privacy as a non-party, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First-Amendment protected political speech and advocacy. Further, Clout employees have a reasonable fear of retaliation from the Kingdom of Saudi Arabia, the funder of LIV through its PIF, given its track record on human right's violations and dissident retaliation. This transcript is sensitive and likely to provoke the Kingdom. |
| 423-8 | Exhibit H | Entire Exhibit | Reflects internal communications amongst Clout employees regarding the PGA Tour's strategic decisions and Clout's work for the PGA Tour. Disclosing these communications would likely cause harm to the PGA Tour's relationships with business partners, reveal the PGA Tour's strategy and decision-making processes, and intrude on Clout's reasonable expectation of confidentiality and privacy as a non-party, as well as on Clout's confidential processes and know-how for developing ideas and messaging |

| | | | |
|---|---|---|---|
| | | | for First Amendment protected political speech and advocacy. |
| 423-11 | Exhibit K | Entire Exhibit | Reflects internal communications amongst Clout employees regarding the PGA Tour's strategic decisions and Clout's work for the PGA Tour. Disclosing these communications would likely cause harm to the PGA Tour's relationships with business partners, reveal the PGA Tour's strategy and decision-making processes, and intrude on Clout's reasonable expectation of confidentiality and privacy as a non-party, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First Amendment protected political speech and advocacy. |
| 423-14 | Exhibit N | Entire Exhibit | Reflects sensitive communications both internally (amongst Clout employees) and externally (between PGA Tour and Clout employees) regarding strategic advice provided to the PGA Tour on competitive issues. Disclosing these communications would likely cause harm to the PGA Tour's relationships with business partners, reveal the PGA Tour's strategy and decision-making processes, and intrude on Clout's expectation of confidentiality and privacy in its communications with clients and its internal communications, as well as on Clout's confidential processes and know-how for developing ideas and messaging for First-Amendment protected political speech and advocacy. Further, Clout employees have a reasonable fear of retaliation from Saudi Arabia, the funder of LIV through its PIF, given its track record on human right's violations and dissident retaliation. These |

| | | | communications are sensitive and likely to provoke the Kingdom. |
|---|---|---|---|

## II.     ARGUMENT

Where a party seeks to restrict access to discovery materials attached to non-dispositive motions, the less stringent "good cause" standard applies to requests for sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1105 (9th Cir. 2016) (citing *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006)). This standard requires a particularized showing that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). Courts draw a distinction between dispositive and non-dispositive motions because information and records referenced in connection with a non-dispositive motion are often "unrelated or only tangentially related, to the underlying cause of action," and thus the public interest in accessing the information is low. *Kamakana*, 447 F.3d at 1179-80.

The materials identified above quote or characterize non-public discussions between PGA Tour employees and Clout employees related to the PGA Tour's business strategies and decisions. Clout was privy to significant sensitive information due to its role as a hired consultant. The materials also include Clout's sensitive internal and external communications in furtherance of the PGA Tour's business strategies and decisions. Many of Clout's materials reflect its own internal thought processes, procedures for developing ideas and messaging, and know-how in the area of strategic communications and First Amendment-protected political advocacy and speech. Specifically, the materials identified above include: (1) communications between PGA Tour employees and Clout employees working on strategy related to competitive issues; (2) communications amongst Clout employees regarding PGA Tour strategies and

decisions, and preparations for political advocacy and speech; and (3) statements regarding actions taken by Clout employees in furtherance of the PGA Tour's strategic decisions.

Sealing is appropriate where court records may serve "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Accordingly, courts recognize that information related to internal business strategy and competitively sensitive decision making is appropriate for sealing, finding that the need for confidentiality outweighs the public's interest in disclosure. *See., e.g., Hetland v. LendingTree, LLC*, 2021 WL 2313386, at *1 (N.D. Cal. May 3, 2021) (sealing documents that "contain and reflect confidential business information" that may offer insight into strategic decision making); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2011 WL 864897, at *2 (S.D. Cal. Mar. 11, 2011) (sealing granted as to emails revealing business and marketing strategy."); *Adtrader, Inc. v. Google LLC*, 2020 WL 6387381, at *1-*2 (N.D. Cal. Feb. 24, 2020) (Freeman, J.) (sealing "confidential business material," including "strategic decision making"); *Zogenix, Inc. v. Fed. Ins. Co.*, 2022 WL 3908529, at *1 n.1 (N.D. Cal. May 26, 2022) (sealing "internal conversations" about corporate "decision-making process"); *Rodman v. Safeway Inc.*, 2014 WL 12787874, at *2 (N.D. Cal. Aug. 22, 2014) (sealing "internal, nonpublic information discussing . . . business decision making").

Further, courts should be diligent in maintaining the legitimate privacy interests of nonparties. *See Chloe SAS v. Sawabeh Info. Servs. Co.*, No. 11-CV-04147-MMM, 2015 WL 12734004, at *3 (C.D. Cal. Feb. 4, 2015) (finding privacy interests of nonparties sufficient to justify sealing under the good cause standard and citing cases). Protecting a nonparty's right to privacy is "a compelling reason for sealing." *Music Grp. Macao Comm. Offshore Lmtd. v. Foote*, No. 14-cv-03078, 2015 WL 3993147, at *2 (N.D. Cal. June 30, 2015). This is especially true

when the nondisclosure of information may cause harm to the nonparty. *Doyle v. Galderma, Inc.*, No. 19-cv-05678, 2021 WL 4926999, at *1 (N.D. Cal. April 17, 2021).

Finally, communications internal to Clout that are in preparation for First Amendment-protected speech and advocacy should be shielded from public disclosure (which would also include disclosure to LIV's funders at the Public Investment Fund of Saudi Arabia). *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984); *NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958). Internal breathing room is necessary for Clout's strategists to freely create, share, criticize, modify, and reject their own ideas for speech and advocacy that may never even be presented to Clout's clients. Disclosure to a litigant for its confidential review and use in litigation is chilling enough, but disclosure to the public at large threatens to freeze the flow of internal communications at speech consultants such as Clout. That is particularly true where the ideas and proposed speech is sharply critical of a foreign government and its U.S.-based agents.

In sum, the proposed sealing Clout seeks to keep in place is important to protect the PGA Tour's confidential business information, as well as the privacy and confidentiality interests of Clout, a non-party to this litigation. The legitimate confidentiality interests in these materials, attached to a non-dispositive motion, outweighs the presumption of public access. *See, e.g., In re Incretin-Based Therapies Prod. Liab. Litig.*, No. 13MD2452 AJB (MDD), 2021 WL 873290, at *2 (S.D. Cal. Mar. 9, 2021) (sealing internal "confidential regulatory strategies and communications" in case involving "avid competitors").

### III.   CONCLUSION

For the foregoing reasons, Clout respectfully requests that the Court seal the limited portions of the Opposition to Stay indicated in the chart above, in addition to the accompanying Exhibits. If the Court deems Clout's bases for sealing insufficient, Clout respectfully requests

that it be permitted to file a further statement and/or declaration supporting filing under seal prior to any of the requested sealing materials being made public.

Dated this 11th day of May, 2023.

By: */s/ Edward D. Greim*
Edward D. Greim, Esq.
Graves Garrett LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: 816-256-3181
edgreim@gravesgarrett.com

*Attorney for Designated Party Clout Public Affairs, LLC*