1

**WHITE & CASE**LLP

2

Carolyn Lamm (*pro hac vice*)
Hansel Pham (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)

3

701 Thirteenth Street, NW
Washington, District of Columbia 20005

4

Telephone:  (202) 626-3600

5

clamm@whitecase.com
hpham@whitecase.com

6

nkownacki@whitecase.com

7

Jack E. Pace III (*pro hac vice*)
Kimberly A. Havlin (*pro hac vice*)

8

Hannelore Sklar (*pro hac vice*)

9

1221 Avenue of the Americas
New York, New York 10020

10

Telephone: (212) 819-8200

11

jpace@whitecase.com
kim.havlin@whitecase.com

12

hannelore.sklar@whitecase.com

13

Heather M. Burke (SBN 284100)
3000 El Camino Real

14

2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109

15

Telephone: (650) 213-0300

16

hburke@whitecase.com

17

*Attorneys for Counter-Defendants The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan.*

18

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

19

SAN JOSE DIVISION

20

MATT JONES, BRYSON DECHAMBEAU,
PETER UIHLEIN, and LIV GOLF INC.,

Case No. 5:22-cv-04486-BLF

21

Plaintiffs,

**THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN'S MOTION TO DISMISS THE AMENDED COUNTERCLAIM**

22

v.

PGA TOUR, INC.,

23

Defendant and
Counter-Plaintiff,

24

v.

Judge:  Hon. Beth Labson Freeman

25

LIV GOLF INC., PUBLIC INVESTMENT
FUND OF THE KINGDOM OF SAUDI

Date Filed: August 3, 2022

26

ARABIA, and HIS EXCELLENCY YASIR
OTHMAN AL-RUMAYYAN,

Trial Date: May 17, 2024

27

**REDACTED PUBLIC VERSION**

28

Counter-Defendants.

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on August 24, 2023, or as soon as the matter may be heard, before the Honorable Beth Labson Freeman of the United States District Court, Northern District of California at Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, California, Counter-Defendants The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir Othman Al-Rumayyan will and hereby do move to dismiss PGA Tour, Inc.'s Amended Counterclaim (Dkt. No. 289) under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted.

The motion is based upon this notice of motion, the supporting memorandum of points and authorities, the concurrently filed Second Declaration of Mr. Fahad Nasser Alarfaj Concerning Saudi Law Under Federal Rule of Civil Procedure 44.1, and such evidence as may be requested or permitted by the Court.

Dated: May 18, 2023                    By: */s/ Carolyn B. Lamm*

**WHITE & CASE**LLP
Carolyn Lamm (*pro hac vice*)
Hansel Pham (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)
701 Thirteenth Street, NW
Washington, District of Columbia 20005
Telephone:  (202) 626-3600
Facsimile: (202) 639-9355
clamm@whitecase.com
hpham@whitecase.com
nkownacki@whitecase.com

Jack E. Pace III (*pro hac vice*)
Kimberly A. Havlin (*pro hac vice*)
Hannelore Sklar (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
jpace@whitecase.com
kim.havlin@whitecase.com
hannelore.sklar@whitecase.com

Heather M. Burke (SBN 284100)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com

*Attorneys for Counter-Defendants The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. iii

TABLE OF AUTHORITIES ....................................................................................... iv

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 3

ARGUMENT ................................................................................................................ 5

I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION ...................... 5

    A.   The Court Lacks Jurisdiction Over PIF Under the FSIA .......................... 6

        1.   The "Commercial Activity Exception," 28 U.S.C. § 1605(a)(2), Does Not Apply ................................................................................. 6

            a.   The Tour's Alleged Injuries Are Not "Based Upon" PIF's Commercial Activity ............................................................. 6

            b.   The Tour Fails to Satisfy the Third Clause of § 1605(a)(2) ............................ 9

        2.   PIF Has Not "Waived" Immunity Under 28 U.S.C. § 1605(a)(1)................... 11

    B.   Common-Law Foreign Official Immunity Precludes Jurisdiction Over HE......... 12

II.   THE COURT LACKS PERSONAL JURISDICTION OVER PIF AND HE ............... 13

    A.   This Court Lacks Personal Jurisdiction Over HE ................................... 13

    B.   This Court Lacks Personal Jurisdiction Over PIF ................................. 14

III.  THE AMENDED COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF .. 16

    A.   California Choice of Law Principles Require the Application of Saudi Law ....... 16

    B.   The Tour's Claims Fail Under California Law...................................... 19

        1.   The Tour Cannot Plead a Tortious Interference Claim................... 19

            a.   The AC Fails to Allege Intentional Acts Designed to Induce Breach........... 19

            b.   The AC Fails to Allege an Independently Wrongful Act............................. 22

        2.   The Tour Cannot Plead a Claim for Inducing Breach of Contract ................. 24

    C.   The Tour's Claims Fail Under Florida Law ........................................ 25

CONCLUSION ........................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abla Abdel Baset Youssef v. Embassy of the U.A.E.*,
    2021 U.S. Dist. LEXIS 158297 (D.D.C. Aug. 23, 2021)............................................................11

*Advantage Lift Sys. v. O.ME.R. S.p.A*,
    1997 U.S. Dist. LEXIS 11355 (S.D. Cal. Mar. 19, 1997)........................................................16

*Advantor Sys. Corp. v. DRS Tech. Servs.*,
    2014 U.S. Dist. LEXIS 103354 (M.D. Fla. July 29, 2014).......................................................25

*Aldossari v. Ripp*,
    49 F.4th 236 (3d Cir. 2022)......................................................................................................11

*Archer v. Carnival Corp.*,
    2020 U.S. Dist. LEXIS 253382 (C.D. Cal. Sep. 22, 2020).......................................................22

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ....................................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................16

*Atoori v. Republic of Peru*,
    2019 U.S. Dist. LEXIS 239206 (C.D. Cal. Sep. 25, 2019).........................................................9

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017) ....................................................................................................................6

*Bowen v. Lancaster*,
    2008 U.S. Dist. LEXIS 39423 (C.D. Cal. Apr. 30, 2008).........................................................14

*Brink's Ltd. v. South African Airways*,
    93 F.3d 1022 (2d Cir. 1996)......................................................................................................18

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
    142 S. Ct. 1502 (2022) ..............................................................................................................16

*Celebrity Chefs Tour, LLC v. Macy's Inc.*,
    16 F. Supp.3d 1141 (S.D. Cal. 2014) ........................................................................................20

*Century Int'l Arms, LTD v. Fed. State Unitary Enter. State Corp. Rosvoorouzhenie*,
    172 F. Supp. 2d 79 (D.D.C. 2001) ............................................................................................18

*Chen v. L.A. Truck Ctrs., LLC*,
    7 Cal. 5th 862 (2019)................................................................................................................16

*Choi v. Consulate Gen. of Japan in Honolulu*,
   2018 U.S. Dist. LEXIS 228198 (D. Haw. Apr. 25, 2018) ...................................................5

*Cloudera, Inc. v. Databricks, Inc.*,
   2021 U.S. Dist. LEXIS 164033 (N.D. Cal. Aug. 30, 2021) ..............................................21

*Coast Hematology-Oncology Assoc. Med. Grp. Inc. v. Long Beach Mem. Med. Ctr.*,
   58 Cal. App. 5th 748 (Ct. App. 2020) ............................................................................19, 22

*Cooper v. Tokyo Elec. Power Co. Holdings*,
   960 F.3d 549 (9th Cir. 2020)....................................................................................................19

*CPS Int'l v. Dresser Indus.*,
   911 S.W.2d 18 (Tex. App. 1995) ..............................................................................................17

*Custom Mfg. & Eng'g v. Midway Servs.*,
   2005 U.S. Dist. LEXIS 45267 (M.D. Fla. May 31, 2005) ......................................................25

*Dayton v. Czechoslovak Socialist Republic*,
   834 F.2d 203 (D.C. Cir. 1987) ................................................................................................11

*Deirmenjian v. Deutsche Bank, A.G.*,
   2010 U.S. Dist. LEXIS 86957 (C.D. Cal. July 30, 2010) ......................................................18

*Delphix Corp. v. Actifio, Inc.*,
   2014 U.S. Dist. LEXIS 132310 (N.D. Cal. Mar. 19, 2014) ....................................................20

*Devengoechea v. Bolivarian Republic of Venez.*,
   889 F.3d 1213 (11th Cir. 2018)..................................................................................................9

*Doe v. Holy See*,
   557 F.3d 1066 (9th Cir. 2009).............................................................................................8, 15

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001).....................................................................................................15

*Dogan v. Barak*,
   2016 U.S. Dist. LEXIS 142055 (C.D. Cal. Oct. 13, 2016), *aff'd* 932 F.3d 888
   (9th Cir. 2019) ............................................................................................................................5

*Doğan v. Barak*,
   932 F.3d 888 (9th Cir. 2019)....................................................................................................12

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ...................................................................................................................7

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
   797 F.3d 1248 (11th Cir. 2015)................................................................................................25

-v-

*Eliahu v. State of Israel*,
    2015 U.S. Dist. LEXIS 26073 (N.D. Cal. Mar. 3, 2015) ............................................6

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
    12 F.3d 1270 (3d Cir. 1993) ...........................................................................7, 8

*Ferris v. S. Fla. Stadium Corp.*,
    926 So. 2d 399 (Fla. 3d DCA 2006) ............................................................25

*First City Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ..........................................................................................8

*Gater Assets Ltd. v. Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ...............................................................................14

*Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*,
    438 F. App'x 27 (2d Cir. 2011) ...............................................................17, 19

*Gregorian v. Izvestia*,
    871 F.2d 1515 (9th Cir. 1989) .......................................................................14

*Heavener, Ogier Servs. v. R. W. Fla. Region*,
    418 So. 2d 1074 (Fla. Dist. Ct. App. 1982) ..................................................25

*Integrated Storage Consulting Servs. v. NetApp, Inc.*,
    2014 U.S. Dist. LEXIS 93480 (N.D. Cal. July 9, 2014) ...............................23

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    470 P.3d 571 (Cal. 2020) ..................................................................19, 22, 24

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998) .............................................................21

*Kohler Co. v. Kopietzki*,
    2016 U.S. Dist. LEXIS 31736 (E.D. Wis. Mar. 11, 2016) ...........................17

*Liberty Lake Investments, Inc. v. Magnuson*,
    12 F.3d 155 (9th Cir. 1993) ..........................................................................24

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
    22 F.4th 852 (9th Cir. 2022) ..........................................................................15

*McCann v. Foster Wheeler LLC*,
    225 P.3d 516 (Cal. 2010) ...............................................................................18

*Mehr v. Féderation Internationale De Football Ass'n*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ........................................................12

*Melaleuca, Inc. v. Kot Nam Shan*,
    2018 U.S. Dist. LEXIS 71296 (D. Idaho, Apr. 24, 2018) .............................17

*Meraz v. Ford Motor Co.*,
  2014 U.S. Dist. LEXIS 199051 (C.D. Cal. June 13, 2014)......................................18

*MidCap Funding XVIII Tr. v. CSC Logic, Inc.*,
  2021 U.S. Dist. LEXIS 46992 (C.D. Cal. Mar. 12, 2021) .....................................13

*MMA Consultants 1, Inc. v. Republic of Peru*,
  719 F. App'x 47 (2d Cir. 2017)..................................................................9

*Mosafer Inc. v. Broidy*,
  2022 U.S. Dist. LEXIS 21001 (C.D. Cal. Feb. 4, 2022) .........................................5

*Nelson v. F. Hoffmann-La Roche, Inc.*,
  2022 U.S. Dist. LEXIS 214191 (N.D. Cal. Nov. 28, 2022) ....................................17

*Nestle USA, Inc. v. Crest Foods, Inc.*,
  2017 U.S. Dist. 136557 (C.D. Cal. July 28, 2017)..............................................15

*OBB Personenverkehr AG v. Sachs*,
  577 U.S. 27 (2015) ..........................................................................6, 9, 10

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  791 P.2d 587 (Cal. 1990) .................................................................22, 24

*Packsys v. Exportadora De Sal, S.A de C.V.*,
  899 F.3d 1081 (9th Cir. 2018).............................................................10, 11

*Paracor Finance, Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996)..................................................................16

*Phaneuf v. Republic of Indonesia*,
  106 F.3d 302 (9th Cir. 1997)...................................................................9

*Prudencio v. Midway Importing, Co.*,
  831 F. App'x. 808 (9th Cir. 2020)............................................................23

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015)................................................................15

*Reeves v. Hanlon*,
  95 P.3d 513 (Cal. 2004) .....................................................................22

*Rep. of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) .........................................................................10

*Richmark Corp. v. Timber Falling Consultants, Inc.*,
  937 F.2d 1444 (9th Cir. 1991)................................................................14

*Rosasen v. Kingdom of Norway*,
  2022 U.S. Dist. LEXIS 24542 (C.D. Cal. Feb. 10, 2022) ......................................12

-vii-

*Sanho Corp. v. Intelliarmor*,
  2020 U.S. Dist. LEXIS 199299 (C.D. Cal. Sept. 25, 2020)................................21, 23

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) .......................................................................................6, 8

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003)...................................................................5

*Schnaars v. Autoridad Del Canal De Pan.*,
  2003 U.S. Dist. LEXIS 27456 (N.D. Cal. Apr. 29, 2003)...........................5

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004)....................................................................13

*SEC v. Ross*,
  504 F.3d 1130 (9th Cir. 2007)..................................................................14

*Senne v. Kansas City Royals Baseball Corp.*,
  934 F.3d 918 (9th Cir. 2019)....................................................................17

*Sumotext Corp. v. Zoove, Inc.*,
  2017 U.S. Dist. LEXIS 98625 (N.D. Cal. June 26, 2017) .....................16, 21

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)....................................................................15

*Tardif v. People for the Ethical Treatment of Animals*,
  2010 U.S. Dist. LEXIS 103126 (M.D. Fla. Sep. 29, 2010)......................25

*Tensor Law P.C. v. Rubin*,
  2019 U.S. Dist. LEXIS 131942 (C.D. Cal. Apr. 10, 2019).......................22

*Terenkian v. Republic of Iraq*,
  694 F.3d 1122 (9th Cir. 2012)..................................................................10

*Virtual Countries, Inc. v. Republic of South Africa*,
  300 F.3d 230 (2d Cir. 2002).....................................................................11

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009)....................................................................20

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................13

*Weiming Chen v. Ying-Jeou Ma*,
  2013 U.S. Dist. LEXIS 118668 (S.D.N.Y. Aug. 19, 2013) ...................12, 13

*World Wide Minerals, LTD. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002)................................................................11

*Wye Oak Tech., Inc. v. Republic of Iraq*,
    24 F. 4th 686 (D.C. Cir. 2022) .......................................................................................7, 9

*Yucesoy v. Uber Techs., Inc.*,
    2015 U.S. Dist. LEXIS 152632 (N.D. Cal. Nov. 10, 2015) ...........................................23

## STATUTES AND RULES

28 U.S.C. § 1330(b) ............................................................................................................14

28 U.S.C. §§ 1602 ............................................................................................................1, 5

28 U.S.C. § 1603(b) ..............................................................................................................6

28 U.S.C. § 1605(a)(1) ........................................................................................................11

28 U.S.C. § 1605(a)(2) ................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ............................................................................................................23

Fed. R. Civ. P. 12(b) ............................................................................................................1

Fed. R. Civ. P. 45 ..............................................................................................................12

Fed. R. Civ. P. 72 ................................................................................................................9

Counter-Defendants the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and His Excellency Mr. Al-Rumayyan ("HE") hereby move to dismiss PGA Tour, Inc.'s (the "Tour") Amended Counterclaim (Dkt. No. 289, the "AC") pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 et seq. (the "FSIA"), and Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

There is nothing tortious about LIV forming a competing golf league and trying to recruit Tour players, including by offering them a better deal.  The Tour's regulations permit players to leave at any time and for any reason.  The Tour's rather unusual counterclaim for tortious interference with contract is accordingly not that players were induced to leave the Tour and play for LIV instead, but that LIV supposedly urged these players to remain with the Tour at the same time, in breach of the Tour's regulations.  That narrow theory involves the contracts of only seven golfers, without any articulation of each player's alleged inducement, and it falls well short of stating any claim at all.  The Tour's theory is still more deficient as to PIF and HE, against whom the Tour has nothing but group-pleading and conclusory allegations of "direction" and, as explained below, not a single factual allegation of urging the LIV Players to remain with the Tour.  *See, e.g.*, AC ¶¶ 3, 6, 25-27, 30-32, 38, 44, 64-66, 72; *see also infra* § III.B.

The AC should be dismissed as to PIF and HE.  ***First***, they are immune.  While certain of the applicable immunity standards were before the Court on the third-party subpoenas (Dkt. No. 382), neither the Magistrate Judge nor this Court has ruled on whether the Tour has established exceptions to immunity for these counterclaims.  The AC had not been filed at the time of the Magistrate Judge's ruling, this Court expressly did not consider it, and most important, the Tour had not yet changed the counterclaims to its new theory based on inducing Tour players to remain with (rather than leave) the Tour.  The Court must accordingly determine whether the Tour has shown that PIF's and HE's conduct—as opposed to LIV's—is the gravamen of these counterclaims as they have now been framed.  The Court's prior findings on allegations regarding the "founding" and "financing" of LIV do not answer that question.  Because the AC does not contain any non-conclusory allegations showing PIF or HE urging players to stay with the Tour, the Tour has not

---

established that any exception to their presumptive immunity applies with respect to these counterclaims.

**Second**, and similarly, there is no personal jurisdiction over PIF or HE with respect to these counterclaims.  Personal jurisdiction requires that the claims "arise out of or relate to" PIF's and HE's forum contacts.  The Tour pleads no facts to show PIF or HE trying to persuade the LIV Players to stay with the Tour, in any forum.  As above, the Tour's allegations concerning PIF's creation, funding, and oversight of LIV discussed in connection with the subpoenas do not supply those contacts for these counterclaims.  Nor can LIV's contacts be imputed to PIF—which the Tour admits invested in LIV through two separate non-U.S. corporate intermediaries (*see* AC ¶¶ 8-9)— absent a showing of an agency or alter-ego relationship or other grounds for piercing the corporate veil, which the AC does not attempt to allege.  And while the AC alleges HE has minimum contacts with California, the only contact between HE and California alleged is that he went to the Super Bowl last year.

**Third**, the counterclaims are governed by Saudi law.  Like many other countries, Saudi Arabia does not recognize tortious interference with contract as a claim.  Saudi Arabia has an overriding interest in having its law applied to claims asserted against its sovereign wealth fund and minister for conduct within its borders.  Here, the Tour fails to allege that PIF's and HE's alleged conduct took place anywhere other than Saudi Arabia, where they are located.  California's "governmental interest" test for choice of law therefore calls for the application of Saudi law, under which the Tour has no claim.

**Fourth**, the claims also fail under California or Florida law, because there are no facts pled of any Counter-Defendant urging or insisting that any LIV Player remain with the Tour.  The fact that only seven players are even at issue in the counterclaim undermines any notion that remaining with the Tour was somehow a requirement of joining LIV.  These professional golfers are independent contractors who make their own decisions about where to play.  Moreover, claims for tortious interference with at-will contracts require an "independent wrong" (in California) or a "malicious motive divorced from a legitimate competitive interest" (in Florida).  Neither is pled here.  There is nothing wrongful or malicious about competing for talent, and the Tour's varied

efforts to make LIV's competition into something wrongful fall flat.  The Tour's fallback claim for inducing breach of contract fares no better, and is not even cognizable under Florida law.

*Fifth*, even if the AC stated a viable tort claim against LIV (which it does not), it would still fail to state one against PIF or HE.  The AC relies heavily on group pleading, referring to PIF, HE, and LIV interchangeably in an attempt to blur their separate identities.  *See, e.g.*, AC ¶¶ 4-7, 41, 61-66, 70-78.  There are no allegations of PIF or HE asking or urging any of the seven golfers at issue (or any others) to stay with the Tour after joining LIV.  To the contrary, the Tour repeatedly alleges that the LIV player contracts that PIF and HE allegedly approved were "exclusive."  None of this is sufficient to state a tort claim "upstream" against PIF or HE, as opposed to against LIV itself.

For all these reasons, the AC must be dismissed as to PIF and HE.

## BACKGROUND

PIF is the sovereign wealth fund of the Kingdom of Saudi Arabia.  *See* AC ¶ 9.  HE, who holds the rank of Minister, is PIF's Governor.  *See id.* ¶ 10.  LIV is a professional golf tour that was founded to compete with the Tour.  *Id.* ¶ 8.  It is a wholly-owned subsidiary of LIV Golf Holdings, Ltd. ("LGH"), which is in turn a wholly-owned subsidiary of LIV Golf Investments, Ltd. ("LGI"). *Id.* ¶ 9.  Both LGI and LGH are entities based in Jersey, United Kingdom, not the United States.  *Id.* PIF owns 93% of LGI.  *Id.*  LIV is a global golf tour, not a U.S. one—as the AC alleges, nearly half of its events are outside the United States.  AC ¶ 40.

The AC alleges that Counter-Defendants induced seven Tour members to breach their Tour agreements by maintaining their Tour relationships despite joining LIV.  *See, e.g.*, *id.* ¶¶ 1, 4-5, 61-63, 70.  The seven Tour members are Phil Mickelson, Talor Gooch, Hudson Swafford, Matt Jones, Bryson DeChambeau, Ian Poulter, and Peter Uihlein (the "LIV Players").  *Id.* ¶ 1.  The Tour alleges that it requires its members to adhere to its Player Handbook & Tournament Regulations (the "Regulations"), which set forth the Tour's policies and procedures, and each year, Tour members agree to be bound to the renewed Regulations.  *Id.* ¶ 20.  The Regulations, which the Tour asserts are the applicable contracts (*see* AC ¶ 80) and which are incorporated by reference in the AC, include Tour eligibility requirements and conditions under which Tour membership may be terminated.  Dkt. No. 83-1 at 137-41.  They contain exclusivity requirements prohibiting players from playing

in any competing golf events, though they also permit players to seek waivers.  *Id.* at 125-28.  The Regulations also make clear that a member may resign.  *Id.* at 141.

The AC alleges that in or around late 2021, LIV began recruiting Tour golfers.  AC ¶ 41.  The AC places great emphasis on the fact that LIV offered golfers more money and better contracts than the Tour.  *Id.* ¶¶ 1, 28, 32, 36-38, 40, 60, 72.  According to the AC, LIV golfers were required to sign "exclusive contracts" with LIV, and the Tour specifically alleges that the terms of the LIV contracts prohibited LIV golfers from remaining Tour members.  *Id.* ¶¶ 41-43, 74.  The AC alleges that the seven LIV Players nevertheless did not resign their Tour memberships and were "encouraged" by LIV to remain with the Tour after they joined LIV.  *Id.* ¶¶ 5, 60, 74.  The Tour's only alleged damage is being "forc[ed] to spend its resources through this lawsuit and otherwise on discipline" and its need to "defend its reputation."  AC ¶¶ 88, 95.

Though this is the Tour's theory of liability, the AC is devoid of factual allegations that any Counter-Defendant asked or urged any Tour member—let alone these specific seven LIV Players—to stay with the Tour despite joining LIV.  Nor does it describe relevant conduct specific to either PIF or HE.  Rather, the AC either describes LIV's conduct and alleges that PIF and HE "oversaw" it, *see, e.g.*, *id.* ¶¶ 3, 6, 8, 25, 28, 30-32, 64, 72, or lumps Counter-Defendants together and asserts highly generalized factual allegations against all of them, *see, e.g.*, *id.* ¶ 70 ("Counter-Defendants told players that the TOUR's behavior was anticompetitive . . . ."); *id.* ¶ 74 ("Counter-Defendants have encouraged LIV Players to breach their contracts . . . ."); *id.* ¶ 75 ("Counter-Defendants successfully induced players to breach their contracts with the TOUR . . . .").  Nearly all of the communications the Tour relies on are those of Greg Norman, LIV's CEO, who holds no role at PIF.  *See id.* ¶¶ 44, 66-67, 71-72.

The AC alleges generally that HE has taken an interest in LIV's development and operations, attends LIV tournaments and other events, and socializes with the LIV Players and other golfers.  *Id.* ¶¶ 28, 69.  But there are no facts pled of any instance in which HE asked or urged a player to remain with the Tour despite joining LIV.  Indeed, the only specific exchange between HE and any LIV Player alleged is ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████████.

*Id.* ¶ 33. The Tour alleges HE "socializ[ed]" with unnamed golfers who breached their Tour contracts, and then makes a generalized allegation, on information and belief, that HE used such "opportunities" to "make misrepresentations" about the Tour. *Id.* ¶ 69; *see also id.* ¶ 2 (alleging "on information and belief" that PIF and HE made misrepresentations to the LIV Players and others); *id.* ¶ 66. But the AC pleads no facts on this whatsoever—not what was said, and not whom it was said to. *See id.*

As to PIF, the only allegations in the AC relate to its alleged founding, funding, and oversight of LIV, and its retention of consultants and advisers. *Id.* ¶¶ 24-27, 36-38, 72. The AC does not identify any instance of PIF recruiting or even speaking with these seven golfers (or, for that matter, any others). Instead, the AC rests on the sweeping and unsupported conclusion that PIF controls LIV's activities. *See, e.g., id.* ¶¶ 6, 14, 25-30, 63, 66, 71-72. It also pleads that PIF has approval rights ███████████████████████. *Id.* ¶¶ 25, 41, 43, 72.

## <u>ARGUMENT</u>

## I.   THE COURT LACKS SUBJECT-MATTER JURISDICTION

PIF and HE are immune from the Court's jurisdiction under the FSIA and common-law foreign official immunity, respectively. The FSIA provides "the sole basis" for jurisdiction over a foreign state and its instrumentalities in a civil action, *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989), and "a motion to dismiss for lack of subject matter jurisdiction is appropriately granted" where, as here, no exception to "the FSIA applies." *Schnaars v. Autoridad Del Canal De Pan.*, 2003 U.S. Dist. LEXIS 27456, at *3 (N.D. Cal. Apr. 29, 2003). Foreign official immunity under common law similarly "implicates the Court's jurisdiction over the controversy." *Dogan v. Barak*, 2016 U.S. Dist. LEXIS 142055, at *9 (C.D. Cal. Oct. 13, 2016), *aff'd* 932 F.3d 888 (9th Cir. 2019). The Court must assess PIF's and HE's immunity based exclusively on the allegations in the AC. *See, e.g., Choi v. Consulate Gen. of Japan in Honolulu*, 2018 U.S. Dist. LEXIS 228198, at *4 (D. Haw. Apr. 25, 2018) ("When the moving party makes a facial challenge, the court's inquiry is 'confin[ed] . . . to allegations in the complaint.'" (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003))); *Mosafer Inc. v. Broidy*, 2022 U.S. Dist.

LEXIS 21001, at \*24-26 (C.D. Cal. Feb. 4, 2022) (dismissing claims against Qatar where the "allegations presented in the [c]ounterclaim" did not bring the case within any FSIA exception).

While the Court previously considered PIF and HE's immunity defenses to non-party subpoenas in the broader action, the question of whether PIF and HE are immune from liability (and suit) for the Tour's amended counterclaims and its narrow theory of tort has not been ruled on by the Magistrate Judge or this Court.

### A.  The Court Lacks Jurisdiction Over PIF Under the FSIA

There is no dispute that PIF constitutes an instrumentality of a foreign state under § 1603(b). *See* AC ¶¶ 9, 14.  The Tour accordingly "has the 'burden of going forward with the evidence by offering proof that one of the FSIA exemptions applies." *Eliahu v. State of Israel*, 2015 U.S. Dist. LEXIS 26073, at \*11 (N.D. Cal. Mar. 3, 2015).  "Simply making a nonfrivolous argument" that an exception to immunity applies "is not sufficient." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017).  Rather, the Tour must "show (and not just arguably show)" that an FSIA exception to immunity applies. *Id.*  The Tour invokes the commercial activity and waiver exceptions, but neither applies here. *See* AC ¶ 14.

### 1.  The "Commercial Activity Exception," 28 U.S.C. § 1605(a)(2), Does Not Apply

Section 1605(a)(2) provides an exception to immunity only where "the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  The Tour contends its counterclaims are "based on PIF's commercial activity within and directly affecting the United States"—the first and third clauses of § 1605(a)(2). *See* AC ¶ 14.  As shown below, the Tour is incorrect.

### a.  The Tour's Alleged Injuries Are Not "Based Upon" PIF's Commercial Activity

For the first clause of § 1605(a)(2) to apply, the Tour's counterclaims must be "based upon" PIF's conduct—*i.e.*, PIF's conduct must be the "gravamen" or the "core" conduct that caused the Tour's alleged injuries. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015); *Saudi Arabia*

*v. Nelson*, 507 U.S. 349, 356-57 (1993).  The core of the Tour's narrow counterclaims is that seven of its golfers were urged to remain Tour members and breach their at-will Tour agreements despite joining LIV, not PIF's conduct in creating and financing LIV.  *See Nelson*, 507 U.S. at 358 (gravamen was the tortious conduct that injured plaintiffs, "not the arguably commercial activities that preceded" the alleged injury).  As noted, the Tour's counterclaims are not based upon PIF's conduct at all, much less any alleged commercial activity by PIF in the United States.

**PIF's Alleged Conduct Did Not "Actually Injure" the Tour:**  PIF's alleged "creation and control," financing, and oversight are not the basis of the Tour's tort claims.  *See, e.g.*, AC ¶¶ 3, 22-24, 26-29, 36-38.  In the Tour's own words, the "core theory" of the AC is Counter-Defendants' alleged "insistence that players remain with the TOUR while inducing such players to knowingly breach TOUR provisions." Dkt. No. 271 at 4-5; *see also* AC ¶¶ 61-78.  The AC does not include any factual allegations of PIF interfering with player contracts—it alleges no facts of PIF encouraging the seven LIV Players (or any others) to remain with the Tour.  *See infra* § III.B. Indeed, the AC only mentions one specific instance where HE allegedly ███████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████. AC ¶ 33.  Lacking any supporting facts, the AC's conclusory allegation that PIF had "oversight" of "golfer recruitment and contract negotiation" are insufficient.  *Id.* ¶¶ 26, 32.  Moreover, the Tour's assertion that "[g]olfers who join LIV must sign long-term exclusive contracts—each of which is specifically approved by PIF and Mr. Al-Rumayyan"—negates the inference that PIF encouraged the LIV Players to remain with the Tour after joining LIV.  *See id.* ¶ 41.  And the Tour's allegations that HE met with third-party agents, broadcasters, and sponsors (*see id.* ¶¶ 34-35) are not the core of the Tour's counterclaims.

**The Tour Conflates Legally Distinct Corporate Entities:** The Tour's efforts to group-plead and/or to impute LIV's conduct to PIF also fail.  *See, e.g.*, AC ¶¶ 9, 61-78.  The "first and third clauses" of § 1605(a)(2) "have long been interpreted to relate only to the conduct of the foreign state" itself and not a separate entity's conduct, such as a subsidiary.  *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F. 4th 686, 700-01 (D.C. Cir. 2022).  Moreover, "the text of the FSIA gives no indication that Congress intended [courts] to depart from the general rules regarding corporate formalities."

*Dole Food Co. v. Patrickson*, 538 U.S. 468, 476 (2003).  Accordingly, courts have rejected attempts to establish jurisdiction over a sovereign corporate parent based on the commercial activities of its subsidiaries.  For example, in *Fed. Ins. Co. v. Richard I. Rubin & Co.*, the Third Circuit found that the district court erred in concluding that the commercial activity exception was met because the Dutch sovereign parent corporation was "responsible" for the activities "engaged in by its related [U.S.] subsidiaries."  12 F.3d 1270, 1287 (3d Cir. 1993).  LIV and PIF are distinct legal entities separated by two tiers of corporate intermediaries (LGI and LGH).  *See* AC ¶ 9.  The AC does not assert a veil-piercing claim or advance any other basis for collapsing LIV into PIF.  *See First City Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 628 (1983); *Doe v. Holy See*, 557 F.3d 1066, 1077-79 (9th Cir. 2009) (applying *Bancec* to determine whether acts by "affiliated domestic corporations" may "render a foreign sovereign amenable to suit").

**The AC Fails to Allege PIF Carried Out Its Conduct "in the United States":** Neither the Magistrate Judge nor this Court has evaluated the location of PIF's purported commercial activity for purposes of § 1605(a)(2).  *See* Dkt. No. 265 at 19-20, 22; Dkt. No. 382 at 10 n.1.  The U.S. commercial activities of the foreign sovereign must form the basis of the suit itself.  *Nelson*, 507 U.S. at 358.  PIF's investment—through two non-U.S. intermediary companies—in a U.S.-based golf league is "insufficient commercial activity" in the United States.  *See Fed. Ins. Co.*, 12 F.3d at 1286-87 (sovereign's creation of subsidiaries that formed U.S.-based venture "was not activity undertaken directly in the United States").  The Tour's remaining allegations are generic and insufficient to show commercial activity in the United States.  The AC alleges that PIF authorized LIV's agreements, provided funding, and approved LIV's strategic decisions "while in the United States and from abroad," but it does not allege which of these purported activities took place in the United States.  The Tour's bald assertions that "PIF's acts of unlawful intervention were undertaken primarily in the United States" and that PIF "tortiously interfered with the TOUR's U.S.-based contracts with golfers" are conclusions, not facts.  *Id.* ¶ 14.  There are thus no facts pled that PIF's conduct occurred in the United States, as opposed to Saudi Arabia, where PIF is located.

**b.  The Tour Fails to Satisfy the Third Clause of § 1605(a)(2)**

Under the third clause of the commercial activity exception, jurisdiction over a foreign sovereign exists where the "action is based upon" an act outside of the United States "in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  Neither the gravamen nor "direct effect" requirements are satisfied here with respect to the Tour's amended counterclaim.

**PIF's Conduct Abroad is Not the Gravamen of the Counterclaims:**  Respectfully, this Court's analysis in the Rule 72 Order (Dkt. No. 382 at 11-12) was incorrect in holding that there is no "gravamen" requirement in the third clause of § 1605(a)(2).  This "based upon" requirement applies equally to the first and third clauses of § 1605(a)(2).  Section 1605(a)(2) starts with the general condition that "[a] foreign state shall not be immune . . . in any case—***in which the action is based***."  The following three clauses—each beginning with the word ***"upon"***—specifies categories of acts that must be the basis of the claim.  The plain language and sentence structure of section 1605(a)(2) therefore shows that the "based upon" language applies equally to all three clauses.  *See Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997) ("In interpreting the FSIA, we first look to the plain meaning of the language employed by Congress.").

Multiple federal courts in this Circuit and elsewhere have reached the same conclusion and applied the gravamen requirement to the third clause of § 1605(a)(2).  *See, e.g.*, *MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 52-54 (2d Cir. 2017) ("[T]he third clause of the FSIA's commercial activities exception . . . consists of three elements: (1) the operative act (*i.e.*, the gravamen of the complaint) must have occurred outside the United States . . ."); *Atoori v. Republic of Peru*, 2019 U.S. Dist. LEXIS 239206, at *3 (C.D. Cal. Sep. 25, 2019) ("Under [the] First and Third Clauses [of § 1605(a)(2)], a lawsuit is 'based upon' the particular conduct that constitutes the gravamen of the suit. . . . Accordingly, the First and Third Clauses apply to this action only if [the gravamen of plaintiff's claim] was either a commercial activity carried on in the United States by Peru or an act outside the territory of the United States in connection with a commercial activity of Peru that caused a direct effect in the United States."); *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1222 (11th Cir. 2018) ("All three of the commercial-activity

exception's clauses apply only when the action is 'based upon' the conduct that the exception describes. . . . That, in turn, requires us to look at 'the "particular conduct" that constitutes the "gravamen" of the suit.'" (quoting *OBB*, 577 U.S. at 34)); *Wye Oak*, 24 F. 4th at 702 n.2 (same).

The Ninth Circuit's decisions in *Terenkian* and *Packsys* are not to the contrary.  In *Terenkian*, which predates the Supreme Court's ruling in *OBB*, the Ninth Circuit expressly stated that "there is an exception to a foreign sovereign's immunity under the third clause [of § 1605(a)(2)] when (1) an act outside the United States ***forms the basis of the plaintiffs' lawsuit***"—*i.e.*, the gravamen of the claim, "(2) the act is taken in connection with a foreign sovereign's commercial activity," ***and*** "(3) there is a direct connection between the act and the effect" in the United States.  *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1135 (9th Cir. 2012) (emphasis added).  In *Packsys*, the court held that the third clause of § 1605(a)(2) did not apply for the independent reason that plaintiff failed to adequately allege the "requisite 'direct effect'" in the United States.  *Packsys v. Exportadora De Sal, S.A de C.V.*, 899 F.3d 1081, 1092 n.10 (9th Cir. 2018).  Because PIF's founding, investment in, and oversight of LIV do not constitute the "operative acts" giving rise to the Tour's counterclaims, *see supra* § I.A.1, the third clause does not apply.

**The Tour Alleges No "Direct Effect":**  The Tour also fails to show that PIF's alleged conduct abroad caused a "direct effect" in the United States that, "without any intervening object, cause, or agency," harmed the Tour.  *Terenkian*, 694 F.3d at 1135.  An effect is "direct" if it follows "as an immediate consequence of the defendant's activity," *Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992), meaning that "no intervening act breaks 'the chain of causation leading from the asserted wrongful act to its impact in the United States.'"  *Terenkian*, 694 F.3d at 1133.  Here, the Tour's alleged injury from the purported breaches is contingent on actions by multiple other "intervening" actors, particularly LIV itself and each of the LIV Players, and therefore cannot be a "direct effect" of any purported conduct by PIF abroad.  PIF—through two corporate intermediaries—created and funded LIV.  LIV then allegedly took various actions, *i.e.*, recruiting and signing seven Tour golfers while urging them to remain with the Tour.  For example, the Tour alleges that LIV CEO "Greg Norman promised that LIV, with PIF's money, would offer financial protections to [] player[s]."  *Id.* ¶ 71 (emphasis added); *see also id.* ¶ 44 (███████████)

██████████████████████████████████).  The LIV Players then took further independent action in allegedly electing to remain with the Tour.  To permit jurisdiction over a sovereign because its acts "precipitate reactions by third parties, which [] then have an impact on a plaintiff, would foster uncertainty" and undermine Congress's intent in adopting the FSIA.  *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 237-38 (2d Cir. 2002).

### 2.   PIF Has Not "Waived" Immunity Under 28 U.S.C. § 1605(a)(1)

Section 1605(a)(1) applies where the foreign state "has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  This "requires strong evidence—in the form of 'clear and unambiguous' language or conduct—that the foreign state intended to waive its sovereign immunity."  *Aldossari v. Ripp*, 49 F.4th 236, 250 (3d Cir. 2022); *see also Packsys*, 899 F.3d at 1093 ("[C]ourts rarely find" waiver "without *strong evidence* that this is what the foreign state *intended*.").  The Tour's allegations that "PIF explicitly consented to LIV initiating this litigation in this District, pays the legal fees for all Plaintiffs' attorneys in this litigation, and otherwise exercises control over the ongoing conduct of this litigation" (AC ¶ 14), even if they were true, do not meet this high bar.  Neither the Magistrate Judge nor this Court ruled that § 1605(a)(1) applied to the third-party subpoenas.  *See* Dkt. No. 265 at 27; Dkt. No. 382 at 10 n.1.

The Tour's allegation that PIF consented to LIV's initiation of this lawsuit is based solely on a provision in a shareholders' agreement between PIF and P54—the two shareholders in LIV's corporate grandparent, LGI—alleging that ████████████████████████████ ██████████████  *Id.* ¶ 25.  But the Tour misstates the terms of this agreement, which actually ████████████████████████████████████████████ ████████.  *See* Dkt. No. 208-1 at 44, 47, 66; *see also Abla Abdel Baset Youssef v. Embassy of the U.A.E.*, 2021 U.S. Dist. LEXIS 158297, at *5 n.3 (D.D.C. Aug. 23, 2021) (in a "facial challenge to jurisdiction under the FSIA, this Court can consider 'documents incorporated by reference' in the complaint" (quoting *World Wide Minerals, LTD. v. Republic of Kazakhstan*, 296 F.3d 1154, 1157 (D.C. Cir. 2002)).  LGI's shareholders' agreement does not ████████████████████ ████████.  Nor would PIF consenting to LIV filing this lawsuit plead PIF's clear and unambiguous waiver of its ***own*** immunity to suit in the United States.  *Cf. Dayton v. Czechoslovak*

-11-

1  *Socialist Republic*, 834 F.2d 203, 205 (D.C. Cir. 1987) ("[N]o intelligent waiver of a foreign

2  sovereign's immunity is fairly extracted from endowment of" another entity's "capacity to sue and

3  be sued").

4      **B.  Common-Law Foreign Official Immunity Precludes Jurisdiction Over HE**

5      "Common-law foreign sovereign immunity extends to individual foreign officials for acts

6  performed in their official capacity if the effect of exercising jurisdiction would be to enforce a rule

7  of law against the state."  *Doğan v. Barak*, 932 F.3d 888, 893-94 (9th Cir. 2019).  Such immunity

8  applies where: (1) the actor is a public minister, official, or agent of the state; (2) the relevant acts

9  were performed in an official capacity; and (3) the effect of exercising jurisdiction would be to

10  enforce a rule of law against the state.  *See id.* at 893-94.  HE satisfies all three requirements.

11  Although this Court found the third factor was not met for purposes of the Rule 45 subpoenas, the

12  Court must now consider HE's immunity from suit and potential liability.  The Court has already

13  observed that the third "factor would be satisfied if exercise of jurisdiction over the foreign official

14  would result in a draw on the foreign state's treasury."  Dkt. No. 382 at 16.  That is precisely what

15  would happen here if HE were subjected to suit and, potentially, to a damages award.  *See Rosasen*

16  *v. Kingdom of Norway*, 2022 U.S. Dist. LEXIS 24542, at *16-17 (C.D. Cal. Feb. 10, 2022) (finding

17  third factor satisfied where "any potential damages would be paid by the government of Norway").

18      Moreover, in ruling that HE was not immune from providing non-party discovery due to a

19  "commercial activity exception" to common-law foreign official immunity, this Court did not reach

20  the separate issue of whether foreign officials could be subject to suit and liability under the same

21  exception.  Dkt. No. 382 at 15.  They should not; common-law foreign official immunity "exceed[s]

22  that of the state: even if the state could be sued for an official's acts" under the FSIA "the official

23  himself could not be."  *See, e.g.*, *Weiming Chen v. Ying-Jeou Ma*, 2013 U.S. Dist. LEXIS 118668,

24  at *11-12 (S.D.N.Y. Aug. 19, 2013) ("[T]he [FSIA's] commercial activity exception does not apply

25  to a foreign official who has undertaken a commercial transaction on behalf of his state.").  Even if

26  such an exception to common law immunity existed, which it does not, it would be coterminous

27  with the FSIA's commercial activity exception, and is not met here for the same reasons stated

28  above.  *See supra* § I.A.1.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER PIF AND HE

The Tour "bears the burden of demonstrating that the court may properly exercise jurisdiction," *Mehr v. Féderation Internationale De Football Ass'n*, 115 F. Supp. 3d 1035, 1047 (N.D. Cal. 2015), and it has not done so here.  Neither PIF nor HE is "at home" in the United States or California, and the Tour cannot establish specific jurisdiction over either PIF or HE for these counterclaims.

### A.  This Court Lacks Personal Jurisdiction Over HE

Specific jurisdiction—which is all that the Tour alleges (*see* AC ¶¶ 13-14)—requires (1) that the non-resident defendant "purposefully direct[ed] his activities" at the forum; (2) that the claim at issue "arises out of or relates to the defendant's forum-related activities"; and (3) that the exercise of jurisdiction is "reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The AC alleges that HE has minimum contacts with California (*see* AC ¶ 13), but the Tour makes no specific allegations linking HE to California, much less that HE purposefully directed any conduct there.  The Tour does not allege that HE took any actions regarding LIV or any of the LIV Players in California; indeed, none of the Tour's generalized allegations about HE's purported involvement in player recruitment has anything to do with California.  *See, e.g.*, AC ¶ 69 (referring to interactions at the "LIV London Invitational Series"); *see also id.* 32-33, 66, 72.  Only one of the LIV Players, Phil Mickelson, is a California resident, and there are no allegations of HE interacting with him at all.  The AC's lone allegation of HE (a citizen and resident of Saudi Arabia) contacting a LIV Player, █████████████████████████████████████████████████████████████ ██████████████████████████.  *See also Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his *own affiliation* with the State, not based on the 'random fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").  The AC also refers to HE's isolated visits to other states (*id.* ¶¶ 27-28) and to the United States as a whole (*id.* ¶ 27), never to California.  In fact the only apparent contact between HE and California anywhere in the AC is HE's purported promotion of LIV at the 2022 Super Bowl, which happened to have taken place in California.  *Id.* ¶ 28.

1    The Tour's counterclaims also do not "arise out of" contacts between HE and California.

2    "The Ninth Circuit applies a 'but for' test to determine whether claims relate to forum-related

3    activities." *MidCap Funding XVIII Tr. v. CSC Logic, Inc.*, 2021 U.S. Dist. LEXIS 46992, at *21

4    (C.D. Cal. Mar. 12, 2021) ; *see also Bowen v. Lancaster*, 2008 U.S. Dist. LEXIS 39423, at *12-13

5    (C.D. Cal. Apr. 30, 2008) (tortious interference claim did not arise out of defendant's forum contacts

6    because "even in the absence of Defendants' contacts with California, the allegedly tortious business

7    practices could have nevertheless occurred").   As explained above, the AC alleges virtually no

8    contacts between HE and California at all, and therefore does not even remotely show that HE's

9    California contacts are the "but-for" cause of the counterclaims.

10    Left with nothing else, the Tour claims that this Court can exercise personal jurisdiction over

11    HE because "LIV initiated this litigation in this District with Mr. Al-Rumayyan's explicit

12    consent. . . ."   *See* AC ¶ 13.   Even if this were true, the "explicit consent" for LIV to file a lawsuit

13    is not consent, because HE never consented to the Court's exercise of jurisdiction over himself.   The

14    Ninth Circuit has held that consent to personal jurisdiction does not exist "where a party has filed a

15    timely and unambiguous objection to the court's jurisdiction."   *SEC v. Ross*, 504 F.3d 1130, 1149

16    (9th Cir. 2007).   Here, where HE "'objected to in personam jurisdiction as effectively as [he] could

17    have' at every turn," it is clear that no such consent was given.   *Id.* at 1149-50.

18    **B.  This Court Lacks Personal Jurisdiction Over PIF**

19    The Tour alleges that the Court has personal jurisdiction over PIF under the FSIA.  AC ¶ 14.

20    Because there is no jurisdiction over PIF under the FSIA, this Court necessarily lacks personal

21    jurisdiction as well.   *See supra* § I.A; 28 U.S.C. § 1330(b).   Furthermore, "[p]ersonal

22    jurisdiction under the FSIA is determined by resorting to the traditional minimum contacts tests,"

23    separate from and in addition to the Court's subject-matter jurisdiction analysis under the FSIA.

24    *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1446 (9th Cir. 1991); *Gater*

25    *Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) ("[I]nstrumentalities of foreign sovereigns

26    retain their status as 'separate legal persons,' [28 U.S.C.] § 1603(b)(1), and receive protection from

27    the exercise of personal jurisdiction under the Due Process Clause.").   Thus, even if sovereign

28    instrumentality "defendants are *not* entitled to immunity under the FSIA," a court must nonetheless

-14-

also consider "whether the constitutional constraints of the Due Process clause preclude the assertion of personal jurisdiction over them." *Gregorian v. Izvestia*, 871 F.2d 1515, 1529-30 (9th Cir. 1989).

As discussed above (*supra* § I.A.), while the Tour alleges that PIF founded and funded LIV to compete with the Tour, it does not allege that PIF took any actions to induce the LIV Players to stay with and breach their Tour relationship.  The Tour's narrow tort claims accordingly do not "arise out of or relate to" PIF's conduct. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022).  And while the AC references the fact that PIF has investments in other U.S. companies, and a subsidiary in New York that is not alleged to have been involved with LIV (AC ¶¶ 9, 23), none of these relate to the Tour's counterclaims either.  The Tour's allegation that PIF sent "hundreds of emails" into the United States (*id.* ¶ 26) is also insufficient. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[C]onclusory allegations that '[defendants] directed communication into the [forum] . . .' are insufficient to establish a prima facie showing of personal jurisdiction.").

PIF's alleged active "involvement" in and "oversight" of LIV as its indirect majority investor (*e.g.*, AC ¶¶ 22-35) also does not establish personal jurisdiction over PIF.  For example, in *Ranza v. Nike, Inc.*, the Ninth Circuit affirmed dismissal for lack of personal jurisdiction over a parent that was "heavily involved in [subsidiary's] operations," including "exercis[ing] control over [the subsidiary's] overall budget and ha[ving] approval authority over large purchases." 793 F.3d 1059, 1074 (9th Cir. 2015).  Likewise in *Doe v. Unocal Corp.*, the Ninth Circuit affirmed dismissal for lack of personal jurisdiction for an "active parent corporation involved directly in decision-making about its subsidiaries' holdings." 248 F.3d 915, 927-28 (9th Cir. 2001).  And as noted, none of PIF's alleged "involvement" included any action towards any of the LIV Players urging them to remain with the Tour in breach of Tour regulations.

Allegations that LIV undertook activities at the "direction and approval" of PIF (*see, e.g.*, AC ¶¶ 43-44, 64) are likewise inadequate. *See, e.g.*, *Nestle USA, Inc. v. Crest Foods, Inc.*, 2017 U.S. Dist. 136557, at *21-24 (C.D. Cal. July 28, 2017) (no personal jurisdiction where Swiss parent was alleged to have "directed the strategies, policies and actions of its U.S. subsidiary," and the

subsidiary reported to the Swiss parent and purportedly "sought [its] approval prior to taking certain business actions").  There is also no allegation of veil-piercing or alter ego, nor could there be.  *See Doe*, 248 F.3d at 927-28 ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego.").  Court have thus rejected efforts to bring non-U.S. investors into lawsuits involving their portfolio companies.  *See, e.g.*, *Advantage Lift Sys. v. O.ME.R. S.p.A*, 1997 U.S. Dist. LEXIS 11355, at *17-20 (S.D. Cal. Mar. 19, 1997) (allegations that Italian investor "direct[ed]" corporate decisions and oversaw operations of U.S. investment company were insufficient to establish specific jurisdiction over the investor because "[a]bsent the application of the alter ego doctrine," the U.S. activities of the investment company were "not the activity of [the investor] himself, but the activity of the [held] corporations").

## III.  THE AMENDED COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true," to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sumotext Corp. v. Zoove, Inc.*, 2017 U.S. Dist. LEXIS 98625, at *8 (N.D. Cal. June 26, 2017).  Here, the Tour's tort claims are unsupported by sufficient factual allegations as to PIF and HE, and the AC fails as a matter of Saudi, California, and Florida law.

### A.  California Choice of Law Principles Require the Application of Saudi Law

A federal court exercising supplemental jurisdiction over state claims applies the choice of law rules of the forum state.  *Paracor Finance, Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996); *see also Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1506 (2022) (to identify the "applicable substantive law" in FSIA cases, courts should apply "whatever choice-of-law rule the court would use if the defendant were not a foreign-state actor, but instead a private party").  To resolve choice of law issues, California employs a "governmental interest" test, which first assesses whether the laws of the potentially affected jurisdictions are different, and then

1   compares the nature and strength of each jurisdiction's interest in applying its own law to the

2   dispute.  *See, e.g.*, *Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. 5th 862, 867-68 (2019).

3   Though the issue was raised on the Tour's motion to amend, the Tour declined to take any

4   position on which law governs the counterclaims, noting only that Florida law "may" apply, rather

5   than California law, and calling this an "open question."   Dkt. No. 271 at 3-4.   In fact, the

6   counterclaims should be governed by Saudi law.

7   Saudi law differs from both Florida and California on tortious interference claims: like a

8   number of non-U.S. jurisdictions, Saudi Arabia does not recognize claims for tortious interference

9   with contract or inducing breach of contract.   *See* Second Decl. of Mr. Fahad Nasser Alarfaj

10  Concerning Saudi Law Under Federal Rule of Civil Procedure 44.1 ¶¶ 11-25 (explaining that there

11  are no tort or other civil claims for tortious interference with contract or inducing breach of contract

12  under Saudi law); *see also, e.g.*, *Kohler Co. v. Kopietzki*, 2016 U.S. Dist. LEXIS 31736, at *5 (E.D.

13  Wis. Mar. 11, 2016) ("[A]ccording to [defendant's] expert in Saudi Arabian law, Saudi Arabian law

14  does not recognize a claim for tortious interference with contract."); *CPS Int'l v. Dresser Indus.*,

15  911 S.W.2d 18, 32 (Tex. App. 1995) ("The American concept of tortious interference with contracts

16  is not among the acts giving rise to a cause of action in Saudi Arabia. . . . If a person does not perform

17  his contractual obligations or does not enter into a contract or breaches his duties to another, such

18  conduct is his own responsibility, not that of anyone else.  Even if another person persuades, requests

19  or otherwise influences such conduct, that other person is not liable in a civil action . . ."); *Glenwood*

20  *Sys., LLC v. Med-Pro Ideal Sols., Inc.*, 438 F. App'x 27, 29 (2d Cir. 2011) (tortious interference

21  claims "not recognized under Indian law"); *Melaleuca, Inc. v. Kot Nam Shan*, 2018 U.S. Dist.

22  LEXIS 71296, at *17 (D. Idaho Apr. 24, 2018) ("Chinese legal expert stated Chinese law does not

23  specifically recognize the tort of tortious interference with contract.").

24  Given this difference, the Court must assess the strength of the respective governmental

25  interests, and Saudi Arabia has the strongest interest in the application of its laws to these claims by

26  far.  PIF and HE are in Saudi Arabia, *see* AC ¶ 9, and there are no factual allegations of either party

27  acting from anywhere else.   *See supra* § II.   "Under California's choice-of-law principles, 'a

28  jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its

borders.'"  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 933-34 (9th Cir. 2019); *see also Nelson v. F. Hoffmann-La Roche, Inc.*, 2022 U.S. Dist. LEXIS 214191, at *38-39 (N.D. Cal. Nov. 28, 2022) ("California's interest in having its laws applied are subordinate to the interests of New Jersey" where "any alleged wrongful conduct would have emanated from New Jersey.").  And in particular, "when the law of the other state limits or denies liability for the conduct engaged in by the defendant in its territory," as here, "that state's interest is predominant and California's legitimate interest in providing a remedy for . . . a current California resident properly must be subordinated because of this state's diminished authority over activity that occurs in another state." *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 536 (Cal. 2010).

Moreover, that PIF and HE are an instrumentality of the Kingdom of Saudi Arabia and its Governor, respectively, "tilt[s] the balance decidedly in favor of" Saudi law.  *See Century Int'l Arms, LTD v. Fed. State Unitary Enter. State Corp. Rosvoorouzhenie*, 172 F. Supp. 2d 79, 94 (D.D.C. 2001) ("Russia has an extremely strong interest in ensuring that its state-controlled agencies are not subjected to laws that may contravene its own."); *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1032 (2d Cir. 1996) ("South Africa certainly has a greater interest than New York in the alleged willful misconduct or gross negligence of . . . an instrumentality of its government . . . .").

By contrast, there is no strong basis for the interests of either California or Florida.  Certainly the Tour articulated none, despite the opportunity; the Tour has said only that Florida "may" have an interest because the Tour and LIV have their principal places of business in Florida.  *See* Dkt. No. 271 at 3-4.  But the fact that a plaintiff resides in a state—especially a plaintiff like the Tour, which operates across the United States and indeed around the world—does not create a compelling interest for application of that state's laws.  *See, e.g.*, *Deirmenjian v. Deutsche Bank, A.G.*, 2010 U.S. Dist. LEXIS 86957, at *60-61 (C.D. Cal. July 30, 2010) (applying Turkish law to claims by California residents where the acts giving rise to the suit occurred in Turkey because, in such cases, California's interest in providing a remedy to resident plaintiffs is subordinate); *Meraz v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 199051, at *19-24 (C.D. Cal. June 13, 2014) (California's interest was subordinate to Georgia's where the "majority of conduct at issue occur[ed]" in Georgia, even though plaintiffs were California residents and claimed to have incurred harm there).

California's interest, for its part, appears tied to the fact that the case is filed here and that the Tour has operations here, though it also has operations in any number of other states and internationally. *See* AC ¶¶ 11, 21, 56.  There is no conduct by PIF or HE alleged in either Florida or California. Applying Saudi law will cause minimal impairment to these states' respective interests.

The Court should accordingly apply Saudi law to the Tour's tort claims against PIF and HE, and because Saudi law does not recognize the counterclaims that the Tour asserts, the AC must be dismissed as to PIF and HE.  *See Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 564 (9th Cir. 2020) (affirming dismissal of tort claims where "application of Japanese law requires dismissal of all claims"); *Glenwood Sys., LLC*, 438 F. App'x at 29 (affirming dismissal of tortious interference claims "not recognized under Indian law").

### B. The Tour's Claims Fail Under California Law

#### 1. The Tour Cannot Plead a Tortious Interference Claim

The Tour agrees that Tour golfers are "independent contractors."  *See, e.g.*, Answer ¶ 2, Dkt. No. 289.  The Tour's contracts with players are at-will—players may resign from the Tour at any time.  *See* Ex. A (2021-2022 PGA Tour Tournament Regulations), Dkt. No. 83-2 at 141 ("A player shall cease to be a member of the PGA TOUR . . . [i]f he resigns"); *Coast Hematology-Oncology Assoc. Med. Grp. Inc. v. Long Beach Mem. Med. Ctr.*, 58 Cal. App. 5th 748, 767 (Ct. App. 2020) ("An at-will contract may be terminated, by its terms, at the prerogative of a single party, perhaps because that party found a better offer from a competitor.").  In addition to the ordinary requirements for a tortious interference claim—*i.e.* the existence of a valid contract between the plaintiff and a third party, the defendant's knowledge of that contract, the defendant's intentional acts designed to induce a breach, actual breach or disruption of the contract, and damages—the California Supreme Court has specifically held that "tortious interference with at-will contracts requires independent wrongfulness." *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 575, 590 (Cal. 2020).

#### a. The AC Fails to Allege Intentional Acts Designed to Induce Breach

The AC alleges that PIF and HE had involvement in recruiting players to join LIV, but that does not constitute a breach of the Tour's at-will contracts.  Despite suggestions to the contrary in the AC (*see* ¶¶ 2, 43, 44, 56), joining LIV is not itself a breach of Tour regulations, because Tour

-19-

players can resign their Tour membership at any time for any reason.  Dkt. No. 83-2 at 141.  The Tour concedes this in the AC (¶ 60) and implicitly by suing based only on the seven LIV Players. So while the Tour alleges at length that with PIF's financing, LIV has been competing with the Tour by recruiting Tour players and offering them a better deal, that does not transform LIV's recruitment of at-will independent contractors into a tort.

As a result, the Tour is limited to its narrow and unsupported claim that the LIV Players remained with the Tour despite joining LIV, and did so because "Counter-Defendants" urged them to.  But as alleged by the Tour, LIV's contracts—supposedly approved by HE and PIF—were "exclusive" LIV contracts.  AC ¶¶ 41, 56, 74.  Having pled that LIV required the LIV Players to sign these agreements, the Tour cannot plausibly allege that Counter-Defendants simultaneously insisted on the opposite.  The notion that Counter-Defendants were pushing players to stay with the Tour is also rendered implausible by the fact that only seven LIV players are alleged to have done so.  That would be rather ineffective urging.

In any case, the Tour has not pled a single instance of interference by PIF or HE with any specific LIV Player's Tour contract.  *See Celebrity Chefs Tour, LLC v. Macy's Inc.*, 16 F. Supp.3d 1141, 1157-58 (S.D. Cal. 2014) (dismissing tortious interference claim where plaintiff failed to allege the acts defendant purportedly undertook to induce breach).  There are no references to PIF or HE having any communication with six of the seven LIV Players at all.  The only communication that the AC identifies from HE or PIF to a LIV Player is ██████████████████████ ████████████████████████████████████████████████ ██████████████████████.  *Id.* ¶ 33.  In fact, the Tour makes no allegations of specific communications between LIV and any of the seven LIV Players either; the only factual allegations of communications from LIV's CEO Greg Norman are with golfers not among the seven identified LIV Players (AC ¶ 67), or do not identify with whom LIV was communicating at all (AC ¶¶ 64, 67).  All other alleged communications from HE or PIF are pled "on information and belief," which is manifestly insufficient to plead a factual basis on this critical issue.  *See id.* ¶ 69; *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (finding insufficient allegations based "upon information and belief"); *Delphix Corp. v. Actifio, Inc.*, 2014 U.S. Dist. LEXIS 132310, at *5 (N.D.

Cal. Mar. 19, 2014) (declining to credit allegations "qualified" with the phrase "'on information and belief'" which "creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree"); *Cloudera, Inc. v. Databricks, Inc.*, 2021 U.S. Dist. LEXIS 164033, at *17-18 (N.D. Cal. Aug. 30, 2021) (finding "conclusory 'information and belief' allegations" that defendant "induced" plaintiff's employees "to breach their contractual obligations with [plaintiff] to recruit current [plaintiff's] employees" to do the same "are not sufficient allegations to plausibly support" tortious interference claim).

The AC also relies heavily on impermissible group pleading, "improperly lump[ing] multiple defendants together and fail[ing] to allege a factual basis for each defendant's liability." *Sumotext Corp.*, 2017 U.S. Dist. LEXIS 98625, at *23-24. For example, the Tour claims "Counter-Defendants" interfered with and induced the breach of its contracts with "each LIV Player," but does not plead any facts specifying which Counter-Defendant allegedly interfered with or induced breach by which of the seven LIV Players, or how. AC ¶¶ 79-95; *see also id.* ¶ 41 ("All LIV Players were recruited by LIV, PIF, and Mr. Al-Rumayyan. . . ."); *id.* ¶¶ 61-66 (allegations of conduct by "Counter-Defendants" and/or "LIV, PIF, and Mr. Al-Rumayyan"). In fact, when it amended the counterclaims to add PIF and HE as defendants, the Tour simply replaced "LIV" with "Counter-Defendants" or "LIV, PIF, and Mr. Al-Rumayyan" 49 times. *See* Dkt. No. 289-1. The Tour thus fails to meet its obligation to plead, as to each defendant, "the conduct that forms the basis of the tortious interference claim against it." *Sumotext Corp.*, 2017 U.S. Dist. LEXIS 98625, at *23-24 (dismissing group-pled tortious interference claims against "interrelated" defendant entities).

The Tour's allegations that LIV's actions were "directed" or "authorized" by PIF and HE fare no better. *See* AC ¶¶ 3, 43, 44, 64, 66, 72. Merely alleging that tortious conduct was taken "at the direction of defendants" cannot show that the "defendants actually orchestrated the allegedly tortious conduct" in the absence of "factual specificity indicating how each of the . . . defendants participated in the allegedly tortious conduct or what role they each played." *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324-26 (S.D.N.Y. 1998); *see also Sanho Corp. v. Intelliarmor*, 2020 U.S. Dist. LEXIS 199299, at *10-13 (C.D. Cal. Sept. 25, 2020) (dismissing complaint alleging only

1  that defendant "directed" the misconduct because "these conclusory allegations fail to describe

2  [defendant's] personal role in the [misconduct]").

3      Nor can the Tour rely on actions of LIV to state a claim against PIF or HE.  LIV and PIF are

4  distinct entities separated by multiple corporate intermediaries.  *See* AC ¶¶ 9-10.  In an attempt to

5  blur the distinction between them, the AC makes conclusory statements that PIF closely controls

6  LIV and that such control is carried out by HE.  *See id.* ¶¶ 27-35.  But the Tour has never asserted

7  any veil-piercing theory, nor could it, as there are no facts to overcome the presumption of multiple

8  layers of corporate separateness between PIF, LGI, LGH, and LIV.  Courts regularly reject efforts

9  to add investors or shareholders as defendants in tort claims against their portfolio companies based

10  on consultation, decision-making, oversight, and the like, where the corporate veil has not been

11  pierced.  *See, e.g., Archer v. Carnival Corp.*, 2020 U.S. Dist. LEXIS 253382, at *14-15 (C.D. Cal.

12  Sept. 22, 2020) (dismissing claims against shareholder for torts of portfolio company where

13  allegations of shareholder's "directing" and "supervision" fell short of piercing the corporate veil).

14          **b.  The AC Fails to Allege an Independently Wrongful Act**

15      The Tour also fails to plead independent wrongfulness.  "[A]n act is independently wrongful

16  if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law,

17  or other determinable legal standard."  *Ixchel*, 470 P.3d at 576.  Here, the Tour does not plead any

18  independently wrongful acts by PIF or HE, nor could it.  Offering at-will golfers more money to

19  play for a new market entrant is legitimate competition.  *Pac. Gas & Elec. Co. v. Bear Stearns &*

20  *Co.*, 791 P.2d 587, 598 (Cal. 1990) (noting "the dangers inherent in imposing tort liability for

21  competitive business practices"); *Long Beach Mem. Med. Ctr.*, 58 Cal. App. 5th at 767 ("The law

22  thus has been careful to draw liability lines to maximize areas of competition unburdened by legal

23  penalties.").  A competitor in the market is "free, for his own competitive advantage, to obtain the

24  future benefits for himself by causing the termination" and "may offer better contract terms, as by

25  offering an employee of the plaintiff more money to work for him . . . and he may make use of

26  persuasion or other suitable means, all without liability."  *Reeves v. Hanlon*, 95 P.3d 513, 519 (Cal.

27  2004); s*ee also Tensor Law P.C. v. Rubin*, 2019 U.S. Dist. LEXIS 131942, at *29-30 (C.D. Cal.

28

Apr. 10, 2019) ("merely competitive conduct intended to convince [another party] to hire Defendant" is insufficient to sustain claim for tortious interference with an at-will contract).

The Tour nevertheless makes a host of allegations in the hopes of contriving an independent wrong where none exists.  Initially, the Tour claimed independent wrongfulness from supposedly false representations made to Tour members.  *See* Dkt. No. 271 at 4.  For example, the AC makes the group-pled allegation that "Counter-Defendants" told Tour members that it believed the Tour Regulations were anti-competitive and that the Tour could not or would not enforce them (AC ¶ 66). But the Tour has not pled any facts of misrepresentations, most notably who made the statements and to whom they were made.  *See, e.g.*, AC ¶ 69.  If the Tour relies on misrepresentation for the requisite "independent wrongfulness," it is subject to the heightened pleading requirements of Rule 9(b), which the Tour does not come close to meeting.  *See Yucesoy v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 152632, at *9 (N.D. Cal. Nov. 10, 2015) (dismissing tortious interference claim for failure to plead with particularity under Rule 9(b) where claim was based on alleged misrepresentations).  Moreover, expressing a view about the anticompetitive nature of the Tour's restrictive regulations, or whether the Tour would try to enforce them, is not a misrepresentation at all.  *See Integrated Storage Consulting Servs. v. NetApp, Inc.*, 2014 U.S. Dist. LEXIS 93480, at *32 (N.D. Cal. July 9, 2014) ("Expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action.").

The Tour has also claimed independent wrongfulness based on its allegation that Counter-Defendants required LIV players to try to recruit other Tour members to join LIV.  *See* Dkt. No. 271 at 4 (citing AC ¶ 75).  That, too, is just further competition for talent—it does not require or imply breach of any agreement, and certainly is not independent wrongfulness.  In any case, the AC makes clear that LIV, not PIF or HE, entered into the contracts with the LIV Players.  *Id.* ¶ 75.

As to the Tour's contentions that "PIF and Mr. Al-Rumayyan authorized LIV" to indemnify LIV Players and to encourage them to join this lawsuit (AC ¶ 6), those are again "conclusory allegations that the [defendants were] 'responsible for' and 'authorized'" the alleged misconduct, which are insufficient.  *See Prudencio v. Midway Importing, Co.*, 831 F. App'x. 808, 810-11 (9th Cir. 2020); *Sanho Corp*, 2020 U.S. Dist. LEXIS 199299, at *11 ("[T]he allegation that [defendant]

'authorized or directed' the infringing conduct is conclusory and cannot form the basis of the requested relief."). As above, the AC alleges that "LIV entered into indemnification agreements with LIV Players," not PIF or HE. AC ¶ 44; *see id.* ¶ 71 ("LIV also specifically provided what it described as 'greater payments and extensive indemnification' and 'hundreds of millions of dollars to compensate LIV Players for the risks they incur in punishments to facilitate these breaches.'").

Moreover, inducing and even funding viable litigation is not wrongful. *See Liberty Lake Investments, Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993). Indeed, the California Supreme Court has squarely precluded any tort claim based on support for litigation like this, finding that "it would defeat the purpose of assuring free access to the courts, and cause a flood of oppressive derivative litigation, to assess tort liability" against persons "who induced [plaintiffs] to bring the action, and who provided financial assistance in support of the lawsuit." *PG&E.*, 791 P.2d at 597. "If any person who induced another to bring a lawsuit involving a colorable claim could be liable in tort, free access to the courts could be choked off with an assiduous search for unnamed parties." *Id.* In short, supporting a challenge to the Tour's monopoly is not a wrongful act that could support a claim for tortious interference with at-will contracts either.

## 2. The Tour Cannot Plead a Claim for Inducing Breach of Contract

Likely recognizing that it cannot allege an independently wrongful act, the Tour added a fallback claim for inducing breach of contract, which the Tour argues "does not require alleging an independently wrongful act." Dkt. No. 271 at 4. In *Ixchel*, the California Supreme Court reasoned that proof of independent wrongfulness is required for claims for interference with at-will contracts because, for such agreements, "the expectation of future relations is weaker and the interest in maintaining open competition is stronger," and so plaintiffs must plead an independent wrong to "maximize[] areas of competition free of legal penalties." 470 P.3d at 579. The logic of *Ixchel* applies with equal force to a claim for inducing breach of an at-will contract, and there is no principled reason to require an independent wrong for one of these torts but not the other. This claim also fails because, as set forth above, the AC does not allege any intentional acts taken by PIF or HE designed to induce any of the seven LIV Players to remain with (rather than leave) the Tour.

1

### C.  The Tour's Claims Fail Under Florida Law

The result is the same under Florida law.  Florida law, like California, requires interference that is "direct and unjustified" to adequately plead a claim for tortious interference with at-will contracts.  *See Ferris v. S. Fla. Stadium Corp.*, 926 So. 2d 399, 402 (Fla. 3d DCA 2006); *Custom Mfg. & Eng'g v. Midway Servs.*, 2005 U.S. Dist. LEXIS 45267, at *17-18, *22 (M.D. Fla. May 31, 2005) ("[W]hen a contract is terminable at will, it is only direct and unjustified interference that is actionable.").  Conduct is unjustified when, as in California, there is additional wrongdoing alleged. *Ferris*, 926 So. 2d at 402; *Tardif v. People for the Ethical Treatment of Animals*, 2010 U.S. Dist. LEXIS 103126, at *25 (M.D. Fla. Sep. 29, 2010) ("The direct and unjustified conduct, such as fraud, coercion, or other wrongdoing, must be alleged in the complaint.").  "[E]ven if the plaintiff has an existing, terminable-at-will contract, the defendant's interference to protect its economic interests is privileged unless the plaintiff alleges 'a purely malicious motive' divorced from any 'legitimate competitive economic interest.'"  *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (quoting *Heavener, Ogier Servs. v. R. W. Fla. Region*, 418 So. 2d 1074, 1077 (Fla. Dist. Ct. App. 1982)).  Accordingly, "when plaintiffs have failed to adequately allege improper methods, [federal courts applying Florida law] have followed the Florida courts and dismissed these claims."  *Id.* at 1280-81.

As shown above, the Tour has not alleged inducement to breach, or the requisite fraud, coercion, wrongdoing, or malice by PIF and HE.  *See supra* § III.B.1.a.  *See, e.g.*, *Advantor Sys. Corp. v. DRS Tech. Servs.*, 2014 U.S. Dist. LEXIS 103354, at *9-10 (M.D. Fla. July 29, 2014) (alleged interference was not "improper or motivated by malice" because "[r]ecruiting competitor's employees is a regular business practice").

The Tour's counterclaim for inducing breach of contract fails because Florida does not recognize this cause of action.  And even if it did, it would fail as a matter of law for the host of reasons discussed above.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Tour's counterclaims against PIF and HE.

1  Dated: May 18, 2023                 By:  /s/ Carolyn B. Lamm

2                                      WHITE & CASE LLP

3                                      Carolyn Lamm (*pro hac vice*)
                                       Hansel Pham (*pro hac vice*)
4                                      Nicolle Kownacki (*pro hac vice*)
                                       701 Thirteenth Street, NW
5                                      Washington, District of Columbia 20005
                                       Telephone:  (202) 626-3600
6                                      Facsimile: (202) 639-9355
                                       clamm@whitecase.com
7                                      hpham@whitecase.com
                                       nkownacki@whitecase.com
8

9                                      Jack E. Pace III (*pro hac vice*)
                                       Kimberly A. Havlin (*pro hac vice*)
10                                     Hannelore Sklar (*pro hac vice*)
                                       1221 Avenue of the Americas
11                                     New York, New York 10020
                                       Telephone: (212) 819-8200
12                                     Facsimile: (212) 354-8113
                                       jpace@whitecase.com
13                                     kim.havlin@whitecase.com
                                       hannelore.sklar@whitecase.com
14

15                                     Heather M. Burke (SBN 284100)
                                       3000 El Camino Real
16                                     2 Palo Alto Square, Suite 900
                                       Palo Alto, CA  94306-2109
17                                     Telephone: (650) 213-0300
                                       Facsimile: (650) 213-8158
18                                     hburke@whitecase.com

19
                                       *Attorneys for Counter-Defendants The Public Investment*
20                                     *Fund of the Kingdom of Saudi Arabia and His Excellency*
                                       *Yasir O. Al-Rumayyan*
21

22

23

24

25

26

27

28