**WHITE & CASE LLP**
Carolyn Lamm (*pro hac vice*)
Hansel Pham (*pro hac vice*)
Nicolle Kownacki (*pro hac vice*)
701 Thirteenth Street, NW
Washington, District of Columbia 20005
Telephone: (202) 626-3600
clamm@whitecase.com
hpham@whitecase.com
nkownacki@whitecase.com

Jack E. Pace III (*pro hac vice*)
Kimberly A. Havlin (*pro hac vice*)
Hannelore Sklar (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
jpace@whitecase.com
kim.havlin@whitecase.com
hannelore.sklar@whitecase.com

Heather M. Burke (SBN 284100)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109
Telephone: (650) 213-0300
hburke@whitecase.com

*Attorneys for Counter-Defendants The Public Investment Fund of the Kingdom of Saudi Arabia and His Excellency Yasir O. Al-Rumayyan.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br>Plaintiffs,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>Defendant and Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF INC., PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, and HIS EXCELLENCY YASIR OTHMAN AL-RUMAYYAN<br><br>Counter-Defendants. | Case No. 5:22-cv-04486-BLF<br><br>**SECOND DECLARATION OF MR. FAHAD NASSER ALARFAJ CONCERNING SAUDI LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 44.1**<br><br>Judge:  Hon. Beth Labson Freeman<br><br>Date Filed: August 3, 2022<br><br>Trial Date: May 17, 2024 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................2

II. DISCUSSION........................................................................................................................3

    A. INTRODUCTION TO RELEVANT ASPECTS OF THE SAUDI LEGAL SYSTEM................................................................................................................3

    B. SAUDI LAW DOES NOT RECOGNIZE A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT ............................................................4

    C. SAUDI LAW DOES NOT RECOGNIZE A CLAIM FOR INDUCING BREACH OF A CONTRACT ................................................................................6

III. CONCLUSION......................................................................................................................6

I, FAHAD NASSER ALARFAJ, declare as follows:

I.  INTRODUCTION

1. I am a lawyer licensed to practice law in the Kingdom of Saudi Arabia (the "KSA"). I have been asked by Counsel for the Public Investment Fund of the KSA (the "PIF") and its Governor, His Excellency Yasir bin Othman Al-Rumayyan (the "PIF Governor"), to provide this Declaration to address certain issues concerning Saudi law. In particular, Counsel has asked me to discuss whether Saudi law recognizes the tortious interference with contract and inducing breach of contract tort claims pled in the Amended Counterclaim of Defendant and Counter-Plaintiff, PGA Tour, Inc. ("PGA Tour").

2. I submitted an earlier Declaration in this case, in which I addressed other issues of Saudi law (Dkt. No. 306-1).

3. As stated in my earlier Declaration, I am a citizen of the KSA. I received a B.A. in Islamic Law (Sharia) from Al Imam Mohammed bin Saud University in 1998, an LL.M. in International Law from The American University Washington College of Law in 2000, and a J.D. from Valparaiso University School of Law (Indiana) in 2002. In 2005, I was admitted to the Massachusetts Bar.

4. Since 2014, I have been a Partner at Abdulaziz H. Al Fahad & Partners Lawyers Company ("Al Fahad & Partners"), which is a leading legal services provider in Riyadh. Al Fahad & Partners represents clients in litigation or arbitration (both domestic and international), and also advises on capital-market matters, joint ventures, and other categories of commercial and corporate transactions. Our clients include entities within the KSA's Government, including a number of ministries and departments, as well as private local companies and international companies and law firms. I have worked for Al Fahad & Partners since 2005. Additional details of my professional experience and biography are provided in my prior Declaration (Dkt. No. 306-1) and accompanying annex.

5. I am fluent in Arabic and English. Should I be required to provide oral testimony or sit for a deposition, I am capable of providing such testimony in English. All Saudi legal authorities and other exhibits cited herein are listed in **Annex A**.

## II. DISCUSSION

6. Counsel has informed me that the Tour's Amended Counterclaim asserts claims against PIF and the PIF Governor for (1) tortious interference with contract and (2) inducing breach of contract. Counsel has asked me to address whether either of these tort claims is recognized under Saudi law, as detailed below in **Sections II. B-C.**

7. Counsel has further informed me that that in U.S. litigation not involving foreign entities or alleged tortious conduct abroad, torts typically arise under state common law. In this respect, Counsel has instructed that I should base my Saudi law analysis on the elements of tortious interference with contract and inducing breach of contract as these claims are understood under the laws of the States of California and Florida, respectively.

### A. INTRODUCTION TO RELEVANT ASPECTS OF THE SAUDI LEGAL SYSTEM

8. Before addressing whether Saudi law recognizes a claim for tortious interference with contract, I provide the following brief introduction and overview of certain basic Saudi law principles that are relevant to my opinion.

9. Saudi law is founded on Islamic law (*i.e.*, *Sharia*), which serves as the source of law for, as well as a constraint on, Saudi statutory laws and political culture. Sharia law has its origins in the Islamic Holy Quran and the Prophetic Traditions (*i.e.*, *Hadiths*),[1] and is expounded in the teachings and opinions of Islamic scholars.

10. Under Islamic law, the Quran and Prophetic Traditions, as well as the authoritative texts, vest the Imam (which, in the case of KSA, is the King), with broad authority to rule the country, including the ability to adopt laws and regulations.[2] Traditional Islamic laws in Saudi Arabia are supreme. These traditional laws are supplemented by modern legislation, which is enforced by the courts provided it is not inconsistent with generally accepted Islamic legal principles.

---

[1] Hadiths are reports of the deeds and sayings of the Prophet Mohammed. Each hadith is composed of two parts: a chain of authorities (*isnad*) and the text (*matn*).

[2] The Quran says "Believers, obey Allah and obey the Messenger and those in authority among you" (4:49). The Prophet Muhammad said, "whoever obeys me is obeying God and whoever disobeys me is disobeying God, and whoever obeys the Imam is obeying God and whoever disobeys the Imam is disobeying God" (Al Bukari Book).

B. SAUDI LAW DOES NOT RECOGNIZE A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

11. Counsel has instructed that under the law of the State of California, a claim for tortious interference with contract consists of the following elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional act designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Additionally, I understand from Counsel that California law requires that, where a claim for tortious interference arises with respect to an at-will contract, an "independently wrongful act"—an act proscribed by a determinable legal standard (e.g., statute, regulation, or common law)—must also be alleged. I understand from Counsel that the law of the State of Florida provides a similar five-factor test as California for the claim of tortious interference with contract. Additionally, Counsel instructed that, under Florida law, the alleged interference must have been "direct and unjustified" in the context of at-will contracts, which is akin to California's "independently wrongful act" requirement.

12. I have considered whether Saudi law recognises a claim with similar elements to the five-element test for a "tortious interference with contract claim" outlined at paragraph 11, and if so, whether Saudi law imposes a similar "independently wrongful act" requirement for the alleged acts of interference with at-will agreements.

13. With regard to the Saudi modern legislation, there are no laws or regulations which consider and/or provide for a civil claim of "tortious interference with contract."

14. Further, I am not aware of any claims which have been brought before the Saudi courts which are similar to "tortious interference with contract." I am not aware of any award of damages by the Saudi courts in respect of circumstances similar to "tortious interference with contract." I have not seen any court precedents which relate to circumstances which are similar to "tortious interference with contract." The lack of comparable claims or the Saudi courts' ruling on cases with similarity to tortious interference with contract is a clear indication that such a civil claim is not recognised under KSA law.

15. The closest scenario to interference which I have identified is where one party has negotiated or agreed to sell to another party, but a third party approaches the seller during the negotiation period or after completing the agreement to sell but during the option to sell period (*Khiyar*)[3], and concludes a more favourable exchange.  This is considered prohibited under Sharia pursuant to text from the Prophetic Traditions that states the following: "A person should not enter into a transaction when his (Muslim) brother has already negotiated, . . . except with the permission of the latter."  Riyad as-Salihin (1779G), Book 17 (Hadith 269) (Ex. 1).

16. The majority of Islamic scholars, including Saudi Muslim scholars, determine that the second transaction shall be valid, but under Sharia law, the third party's actions would be considered a sin under Sharia.  The scholars have nevertheless determined that this is not a civil claim, and that it is not something for which civil damages can be awarded.  *See* Sheikh Mohammed Bin Mohammed Al Shanqiti,[4] Lecture Excerpts, sec. 149, p. 8 (Ex. 2) (an extract from the text of a lecture by Sheikh Mohammed Bin Mohammed Al Shanqiti explaining Sharh Zad Al Mustaqnie').

17. There is no tort under Saudi Arabian Sharia law of "tortious interference with contract" and the Islamic scholars have not allocated a chapter in Sharia contract law for this issue.

18. One may find references to certain concepts of interference with a marriage in family law, but those concepts are inapplicable here in a commercial context.

19. The absence in Saudi Arabian Sharia law of a tort of "tortious interference with contract" is not surprising.  I am aware of a court decision in another case, which contains the following quotation from an affidavit on Saudi law submitted in that case:

> The American concept of tortious interference with contracts is not among the acts giving rise to a cause of action in Saudi Arabia.  The nonexistence of such a cause of action is consistent, inter alia, with the Hanbali School's emphasis on individual free will and responsibility.  If a person does not perform his contractual obligations or does not enter into a contract or breaches his duties to another, such conduct is his own responsibility, not that of anyone else.  Even if another person

---

[3] *Khiyar* is an Islamic Law rule that refers to certain rights of both the seller and/or the buyer to confirm or terminate the contract.  The Hanbali School of Jurisprudence has identified seven scenarios where *Khiyar* would be valid reason for terminating a contract at will.

[4] A Saudi Muslim Scholar who is a member of the Saudi Supreme Scholars Committee.

> persuades, requests or otherwise influences such conduct, that other person is not liable in a civil action for monetary payments to the plaintiff, in the absence of a direct contractual obligation running from that other person to the plaintiff. *CPS Int'l v. Dresser Indus.*, 911 S.W.2d 18, 32 (Tex. App. 1995) (Ex. 3).

20. I agree with that conceptual justification for the absence in Saudi Arabian Sharia law of a tort of "tortious interference with contract."

### C. SAUDI LAW DOES NOT RECOGNIZE A CLAIM FOR INDUCING BREACH OF A CONTRACT

21. Counsel has instructed that under California law, a claim for "inducing breach of contract" requires a plaintiff to prove: (1) the existence of a contract with a third party; (2) the defendant had knowledge of the contract and intended to induce its breach; (3) the third party breached the contract; (4) the defendant's unjustified or wrongful conduct caused the breach; and (5) resulting damage.

22. I have considered whether Saudi law recognises a claim with similar elements to the five-element test for a claim for "inducing breach of contract" as outlined at paragraph 21.

23. With regard to the Saudi modern legislation, there are no laws or regulations which consider and/or provide for a civil claim of "inducing breach of contract."

24. Further, I am not aware of any claims which have been brought before the Saudi courts which are similar to "inducing breach of contract." I am not aware of any award of damages by the Saudi courts in respect of circumstances similar to inducing breach of contract. I have not seen any precedents which relate to circumstances which are similar to inducing breach of contract. The lack of comparable claims or rulings by the Saudi courts on cases with similarity to inducing breach of contract is a clear indication that a civil claim of "inducing breach of contract" is not recognised in KSA.

25. There is no tort under Saudi Arabian Sharia law of "inducing breach of contract."

### III. CONCLUSION

26. For the reasons stated in this opinion, I conclude that Saudi law recognizes neither a tort for "tortious interference with contract" nor a tort for "inducing breach of contract."

\*   \*   \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on the 18th day of May, 2023 at Riyadh.

_____

Fahad Nasser Alarfaj

# ANNEX A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

*LIV Golf Inc. v. PGA Tour, Inc.*
No. 5:22-cv-04486-BLF-SVK

———————————

**SECOND DECLARATION OF MR. FAHAD NASSER ALARFAJ
CONCERNING SAUDI LAW UNDER
FEDERAL RULE OF CIVIL PROCEDURE 44.1**

———————————

EXHIBITS

May 18, 2023

| No. | Exhibit | Language Designation |
|---|---|---|
| 1. | Riyad as-Salihin (1779G), Book 17 (Hadith 269) (Excerpts) | AR-EN |
| 2. | Sheikh Mohammed Bin Mohammed Al Shanqiti, Lecture Excerpts, sec. 149 | AR-EN |
| 3. | *CPS Int'l v. Dresser Indus.*, 911 S.W.2d 18 (Tex. App. 1995) | EN |

1