```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
     JONES, ET AL,                  )   CV-22-4486-BLF
 5                                  )
                     PLAINTIFF,     )   SAN JOSE, CALIFORNIA
 6                                  )
              VS.                   )   MAY 22, 2023
 7                                  )
     PGA TOUR, INC.,                )   PAGES 1-45
 8                                  )
                     DEFENDANT.     )
 9                                  )
     _____)
10                      TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE BETH LABSON FREEMAN
                   UNITED STATES DISTRICT JUDGE
12
                   A P P E A R A N C E S
13

14      FOR THE PLAINTIFF:    BY:  JOHN B. QUINN
                              QUINN EMANUEL URQUHART &
15                            SULLIVAN, LLP
                              865 S. FIGUEROA ST, FL 10
16                            LOS ANGELES, CA 90017

17

18      FOR THE PLAINTIFF:    BY:  RACHEL S. BRASS
                              GIBSON DUNN & CRUTCHER LLP
19                            555 MISSION STREET, SUITE 3000
                              SAN FRANCISCO, CA 94105
20

21

22           APPEARANCES CONTINUED ON THE NEXT PAGE

23      OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1           APPEARANCES CONTINUED:

 2           FOR THE DEFENDANT:      BY:  ELLIOT REMSEN PETERS
             PGA TOUR, INC.          KEKER, VAN NEST & PETERS LLP
 3                                   633 BATTERY STREET
                                     SAN FRANCISCO, CA 94111
 4

 5           FOR THE DEFENDANT:      BY:  KIMBERLY ANNE HAVLIN
             PIF, AL-RUMAYYAN             WHITE & CASE LLP
 6                                   1221 AVENUE OF THE AMERICAS
                                     NEW YORK, NY 10020
 7

 8           FOR THE DEFENDANT:      BY:  CAROLYN B. LAMM
             PIF, AL-RUMAYYAN        WHITE AND CASE LLP
 9                                   701 THIRTEENTH STREET, NW
                                     WASHINGTON, DC 20005
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        SAN JOSE, CALIFORNIA              MAY 22, 2023

2                   P R O C E E D I N G S

3        (COURT CONVENED AT 1:00 P.M.)

4            THE CLERK:  CALLING CASE 22-4486.  JONES, ET AL.

5    VERSUS PGA TOUR, INC.

6            COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

7    IF WE COULD BEGIN WITH PLAINTIFFS AND THEN MOVE TO DEFENDANT.

8            MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.

9        JOHN QUINN, QUINN EMANUEL, APPEARING FOR LIV GOLF

10   INCORPORATED.

11           MS. BRASS:  GOOD MORNING, YOUR HONOR.

12       RACHEL BRASS FROM GIBSON, DUNN & CRUTCHER ON BEHALF OF LIV

13   GOLF, INCORPORATED.

14           MR. PETERS:  GOOD AFTERNOON, YOUR HONOR.

15       ELLIOT PETERS OF KECKER, VAN NEST & PETERS ON BEHALF OF

16   THE PGA TOUR.

17           THE COURT:  HELLO, MR. PETERS.

18           MS. HAVLIN:  GOOD AFTERNOON.

19       I'M NOT HEARING YOU, MS. HAVLIN.  EVERY ONCE IN A WHILE WE

20   GET THIS GLITCH.  DO YOU HAVE ANOTHER DEVICE HANDY THAT WE

21   CAN --

22       (PAUSE IN PROCEEDINGS.)

23           THE CLERK:  MS. HAVLIN, IF YOU WOULD RUN A TEST ON

24   YOUR PHONE, IN THE LEFT HAND CORNER OF YOUR SCREEN, THERE'S A

25   MUTE BUTTON.  OH, THERE YOU GO.

1          MS. HAVLIN:  MY APOLOGIES.

2          DESPITE MUCH TESTING AND BEST EFFORTS, APOLOGIES

3     YOUR HONOR.

4          THIS IS KIM HAVLIN OF WHITE & CASE ON BEHALF OF THE PUBLIC

5     INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, AND

6     MR. AL-RUMAYYAN.

7          I'M JOINED BY MY PARTNER, CAROLYN B. LAMM.

8          THE COURT:  NICE TO SEE YOU.  I DON'T THINK YOU'VE

9     APPEARED BEFORE, SO NICE TO WELCOME TO.

10         MS. HAVLIN:  THANK YOU, YOUR HONOR.

11         THE COURT:  ALL RIGHT.  WELL, WE HAVE A NUMBER OF

12    THINGS TO TALK ABOUT.  I APPRECIATE THE COMPLEXITY OF TRYING TO

13    MANAGE DISCOVERY IN A CASE AND THE GOAL OF GETTING IT TO TRIAL

14    WHILE WE'VE GOT THE NINTH CIRCUIT DEALING WITH THE ISSUES

15    REGARDING THE PUBLIC INVESTMENT FUND.

16         SO MR. PETERS, I'M NOT INSENSITIVE TO THE COMPLEXITY, AND

17    I THINK I MAY WANT TO ADDRESS SOME OF YOUR CONCERNS DIFFERENTLY

18    FROM EACH OTHER, AND LET ME JUST GIVE YOU A HINT ON THAT, AND

19    THEN WE CAN TALK MORE GENERALLY.

20         I ISSUED MY ORDER ON THE STAYS, OBVIOUSLY THEY WERE CLEAR,

21    IT WASN'T A COMPLICATED ISSUE, AND I THINK THAT IT IS REALLY

22    ESSENTIAL THAT THE DISCOVERY CONTINUE.  BUT, I TAKE YOUR POINT

23    SERIOUSLY THAT THE EXPERT REPORTS AND THE SUMMARY JUDGEMENT

24    MOTIONS PROBABLY WOULD BE A WASTED EFFORT FOR NOT ONLY YOU,

25    WHERE I HAVE LESS CONCERN, BUT FOR ME AS WELL.

1      AND SO IT MAY BE THAT ALTHOUGH I WANT THIS DISCOVERY TO

2   CONTINUE ON THIS SCHEDULE OR THE ONE THAT WE WORK OUT TODAY,

3   BECAUSE WE WILL NEED TO WORK OUT SOME THINGS, THAT WE WILL HOLD

4   THE ACTUAL DATE FOR SUMMARY JUDGEMENT THAT'S SET, BUT REVISIT

5   THAT DATE BEFORE THE OPENING BRIEF WOULD BE DRAFTED.  SO I

6   WOULD BE LOOKING AT GETTING BACK TOGETHER IN THE EARLY FALL TO

7   SEE WHERE WE ARE WITH THE NINTH CIRCUIT.

8      IT DOESN'T DO ANYONE ANY GOOD TO HAVE A SUMMARY JUDGEMENT

9   MOTION THAT SIMPLY NEEDS TO BE RE-FILED BECAUSE NEW EVIDENCE

10  HAS COME FORWARD.  AND I TAKE THAT POINT.  AND YOU KNOW,

11  EXPERTS WILL DO ANYTHING FOR A FEE, THEY WILL REWORK THINGS,

12  AND THEY ARE WONDERFUL AND WE RELY ON THEM, BUT I DON'T KNOW

13  WHAT CAN BE GLEANED, AND I WORRY THAT AN EXPERT GIVING AN

14  OPINION THAT THEN CHANGES, IT MAY CAUSE IMPEACHMENT THAT WOULD

15  BE POTENTIALLY UNFAIR.  AND IT MAY ALSO CAUSE AN UNDUE

16  CONSUMPTION OF TIME IN A TRIAL IF WE HAVE TO GO THROUGH THAT

17  WHOLE STICKY WICKET OF THAT KIND OF IMPEACHMENT.

18      SO I'M CONSIDERING THE EXPERT DISCOVERY, SUMMARY

19  JUDGEMENT, AND OF COURSE IF SUMMARY JUDGEMENT IS DELAYED, THE

20  TRIAL IS DELAYED.  BUT I DON'T HAVE A GOOD SENSE OF WHERE WE

21  WILL BE WITH THE NINTH CIRCUIT.  I CAN'T SAY THAT THE STAY

22  WOULD CONTINUE UNTIL A MANDATE HAS ISSUED FROM THE

23  NINTH CIRCUIT, WHICH WOULD OF COURSE NOT ISSUE UNTIL ALL

24  AVENUES OF APPEAL HAVE BEEN EXHAUSTED ON THE PENDING APPEAL.  I

25  JUST DON'T -- I HAVE TO WAIT AND SEE WHAT THE NINTH CIRCUIT

1    SAYS.

2         THEY MAY, MR. PETERS, GRANT YOUR MOTION TO DISMISS, I

3    DON'T KNOW.  AND I WOULD LIKE TO HEAR FROM YOU WHAT THE

4    BRIEFING SCHEDULE ON THAT IS.  THEY MAY OVERTURN MY ORDER

5    COMPELLING THE DISCOVERY, WHICH MEANS THAT WE ARE ALL TEED UP

6    AND READY TO GO BECAUSE I'VE KEPT THE DISCOVERY MOVING.  OR

7    THEY MAY AFFIRM WHAT I RULED AND THEN WE ARE GOING TO HAVE TO

8    DEAL WITH THAT.

9         SO THAT'S MY THINKING IN GENERAL.  I'M GOING TO ROLL THIS

10   BACK.  I WANT TO HEAR FROM MR. QUINN AND MS. BRASS FIRST ON --

11   AND OF COURSE I READ YOUR SUBMISSION, BUT I JUST WANT TO HEAR

12   FROM YOU WITH THESE THOUGHTS IN MIND AS WELL.

13        MR. QUINN:  THANK YOU, YOUR HONOR.

14   THE VERY GOOD NEWS IS THAT THE DEPOSITIONS HAVE PROCEEDED

15   TO PACE.  WE EXPECT THAT -- WE THINK WE HAVE DATES NOW FOR ALL

16   THE PARTY AFFILIATED DEPOSITIONS EXCEPT FOR APEX DEPOSITIONS, I

17   BELIEVE THERE ARE THREE ON THE TOUR SIDE AND TWO ON OUR SIDE.

18   WE HAVE PROPOSED THAT WE EXCHANGE DATES, ACTUALLY, TOMORROW.

19        THE COURT:  RIGHT.

20        MR. QUINN:  WE UNDERSTAND THAT BECAUSE THERE'S A

21   NUMBER OF IMPORTANT GOLF TOURNAMENTS COMING UP, THAT THE TOUR

22   REQUESTED THAT THESE DEPOSITIONS BE POSTPONED UNTIL AUGUST,

23   WITH THE COURT'S PERMISSION, WE DON'T HAVE A PROBLEM WITH THAT,

24   WE ARE HAPPY TO ACCOMMODATE THAT.

25        THE TOUR HAS, YOU KNOW, BEEN FOLLOWING THE COURT'S

1    SUGGESTION THAT THEY SEEK DISCOVERY CONCERNING THE ROLE OF HIS

2    EXCELLENCY, YASIR AL-RUMAYYAN AND PIF.  IN THE DEPOSITIONS,

3    THERE HAVE BEEN A LOT OF EXAMINATION ABOUT THAT.

4            THE COURT:  OKAY.

5            MR. QUINN:  I'M SURE THAT MR. PETERS IS GOING TO TELL

6    US THAT IT'S ONLY DEMONSTRATED THAT THEY ABSOLUTELY -- THAT

7    THAT EVIDENCE IS ESSENTIAL.  AND IN DUE COURSE, WE ARE PREPARED

8    TO RESPOND TO THAT, YOUR HONOR.

9        WITH RESPECT TO THE SUMMARY JUDGEMENT MOTION, I DON'T

10   THINK -- I DON'T THINK WE SHOULD JUST KIND OF, WITHOUT

11   EXAMINATION, ASSUME THAT IF THERE ISN'T EVIDENCE AVAILABLE, IF

12   WE DON'T HAVE THIS EVIDENCE, THAT THE SUMMARY JUDGEMENT MOTION

13   CAN'T BE HEARD, THAT IT'S SOME SORT OF FREE FLOATING FORM.

14       THERE IS A RULE THAT ADDRESSES THIS, AND THAT'S

15   RULE 56(D), WHICH ADDRESSES THE CIRCUMSTANCE WHERE A RESPONDING

16   PARTY TO A SUMMARY JUDGEMENT MOTION, BY THE WAY, THIS ASSUMES

17   THAT WE WOULD BE MOVING FOR SUMMARY JUDGEMENT, WHICH IS -- I'M

18   NOT GOING TO SAY IT'S A LEAP, BUT --

19           THE COURT:  IT'S UNUSUAL, YEAH.

20           MR. QUINN:  IT'S UNUSUAL, BUT LET'S HYPOTHETICALLY

21   SPEAKING NOW, THE RULE 56(D) SAYS OKAY, YOU ARE RESPONDING TO A

22   SUMMARY JUDGEMENT MOTION AND YOU THINK THERE'S SOME EVIDENCE

23   THAT IS NOT AVAILABLE AND THAT WOULD ASSIST YOU IN OPPOSING --

24   THE RULE TELLS YOU EXACTLY WHAT YOU MUST DO.  YOU HAVE TO FILE

25   AN AFFIDAVIT, YOU HAVE TO SAY WHAT YOU THINK IT IS AND YOU HAVE

1    TO LAY IT OUT.

2         AND WE WOULD SUBMIT, YOUR HONOR, THAT THAT IS SORT OF THE

3    RULE AND THE STRUCTURE THAT WE SHOULD -- THAT WHEN IT COMES TO

4    SUMMARY JUDGEMENT MOTIONS, THAT WE SHOULD BE LOOKING AT,

5    WHETHER SUMMARY JUDGEMENT MOTIONS CAN OR CANNOT BE HEARD, IF

6    THAT EVIDENCE ISN'T AVAILABLE.

7         THE COURT:  SO MR. QUINN, LET ME JUST INTERRUPT, IF I

8    MAY, TO JUST FOLLOW UP ON THIS.

9         CERTAINLY, I THINK YOU ARE EXACTLY RIGHT THAT IT MIGHT BE

10   BEST TO HAVE YOUR CLIENT GO TO THE EXPENSE, AND YOUR FIRM GO TO

11   THE EFFORT OF BRIEFING SUMMARY JUDGEMENT, AND THEN LETTING

12   MR. PETERS ADVISE THE COURT WHETHER THERE'S OTHER EVIDENCE.

13        BUT I JUST WANT TO BE CLEAR THAT IF MR. PETERS WERE TO

14   PERSUADE ME ON THAT ISSUE THAT THE SUMMARY JUDGEMENT DATE WOULD

15   BE VACATED, BUT THE TRIAL DATE GOES WITH IT.  THEY ARE

16   CONNECTED.  I WON'T HEAR THE SUMMARY JUDGEMENT ANY SOONER

17   THAN -- I NEED ENOUGH TIME TO GIVE IT FAIR CONSIDERATION.

18        SO I UNDERSTAND ON YOUR PART, NOW MR. PETERS MAY TELL ME

19   THAT HE COULDN'T EVEN WRITE HIS SUMMARY JUDGEMENT MOTION

20   WITHOUT THE EVIDENCE, I WILL LET HIM -- BUT YOUR POINT IS WELL

21   TAKEN, I THINK.

22        MR. QUINN:  YEAH.  I MEAN LOOK, THAT'S A BRIDGE TO BE

23   CROSSED.

24        THE COURT:  SURE IT IS.

25        MR. QUINN:  I UNDERSTAND THAT, YOUR HONOR.

1    SO THAT'S HYPOTHETICALLY SPEAKING, IF WE MOVE AND THE TOUR

2    BELIEVES THAT THERE'S SOME EVIDENCE THAT THEY NEED, THAT CAN BE

3    ADDRESSED, RULE 56(D).

4        THE COURT:  OKAY.

5        MR. QUINN:  SO HYPOTHETICALLY SPEAKING, LET'S SUPPOSE

6    THEY MOVE, AND SO I GUESS WHAT THEY WOULD BE SAYING IS WE CAN'T

7    MOVE FOR SUMMARY JUDGEMENT BECAUSE WE DON'T HAVE THIS EVIDENCE

8    FROM THE PIF, YOU KNOW, OR FROM HIS EXCELLENCY.

9        I MEAN -- MOTIONS ARE USUALLY DENIED BECAUSE OF DISPUTED

10   ISSUES OF FACT; AND FRANKLY, IT'S HARD FOR US TO SEE HOW

11   THAT -- WHETHER OR NOT THERE'S DISPUTED ISSUES OF FACT ARE

12   GOING TO DEPEND UPON WHETHER OR NOT THEY HAVE TESTIMONY OR

13   EVIDENCE FROM PIF OR HIS EXCELLENCY.

14       BUT AGAIN, I THINK THESE ARE BRIDGES THAT WE CAN CROSS.

15   WE HAVE RULES THAT ADDRESS THIS CIRCUMSTANCE.  AND THIS IS ALL

16   HYPOTHETICALLY SPEAKING ABOUT WHETHER IN A CASE LIKE THIS,

17   THERE WOULD BE SUMMARY JUDGEMENT MOTIONS, SOMETHING I THINK,

18   YOU KNOW, IT'S PRETTY SPECULATIVE.

19       THE COURT:  SO MR. QUINN, I'M SURE YOU ARE NOT A

20   STRANGER TO THE SITUATION WHERE A MOTION FOR SUMMARY JUDGEMENT

21   IS FILED WITH A VERY MODEST CHANCE OF PREVAILING.  SO, YOU

22   KNOW, I HAVE DENIED MANY MORE THAN I GRANT.

23       MR. QUINN:  UNDERSTOOD.

24       THE COURT:  I HAVE A LIST OF WHICH ONES SHOULD NEVER

25   HAVE BEEN FILED, AND YOU COULD GIVE ME THAT LIST AS WELL.

1          MR. QUINN:  ABSOLUTELY, YOUR HONOR.

2          THE COURT:  SO, ALL RIGHT.

3       TELL ME YOUR THINKING ABOUT THE EXPERT DISCOVERY.  I'M A

4     LITTLE CONCERNED ABOUT REALLY BEING A WASTE OF TIME.

5          MR. QUINN:  WELL, I THINK ON THE EXPERT --

6     YOUR HONOR, WE THINK A DATE IN AUGUST IS APPROPRIATE FOR EXPERT

7     REPORTS BEING DUE.

8       I MEAN, WE DON'T THINK IT'S A -- I GUESS WE ARE LESS

9     CONCERNED ABOUT THE FACT THAT IF THERE IS SUBSEQUENT DISCOVERY

10    DOWN THE ROAD, THAT THAT WOULD HAVE TO BE TAKEN INTO ACCOUNT.

11      I KIND OF THINK THAT WOULD BE PUTTING THE CART BEFORE THE

12    HORSE HERE TO SAY THAT BECAUSE OF SOME, SPECULATIVELY SPEAKING,

13    THAT THERE COULD BE SOME EVIDENCE THAT WE SHOULDN'T EVEN

14    REQUIRE EXPERTS TO DO REPORTS.

15      AND I THINK THE COURT HAS, AND WE'VE DISCUSSED BEFORE THAT

16    THERE COULD BE A REMEDY FOR THIS, THAT IF THERE WAS SOMETHING

17    SIGNIFICANT, THE REPORTS COULD BE AMENDED.

18      I HEAR YOUR HONOR ABOUT THE POTENTIAL FOR IMPEACHMENT IF

19    THE EXPERT SAYS ONE THING AND THEN THE EVIDENCE COMES IN AND

20    THE EXPERT WANTS TO SAY SOMETHING ELSE.  I THINK THAT'S

21    SOMETHING THAT IS READILY DEALT WITH.  WE UNDERSTAND, IN THAT

22    CIRCUMSTANCE, WHAT HAPPENED AND HOW THINGS GOT TO THAT POINT.

23          THE COURT:  OKAY.

24          MR. QUINN:  SO I GUESS I'M -- I'M KIND OF SURPRISED

25     THAT THE POSSIBILITY OF THIS EVIDENCE OUT THERE WOULD BE A

1       REASON NOT TO HAVE THE EXPERTS DO THE REPORTS.

2              FOR SURE, BOTH SIDES HAVE EXPERTS THAT HAVE BEEN WORKING

3       AWAY.  NOBODY IS SAYING THAT, OTHER THAN THIS ONE ISSUE, THAT

4       REPORTS CANNOT BE EXCHANGED IN AUGUST.  NOBODY IS SAYING THAT.

5              THE COURT:  OKAY.  THAT'S HELPFUL.

6              ALL RIGHT.

7              THEN LET ME TURN TO MR. PETERS.

8              MR. PETERS:  THANK YOU, YOUR HONOR.  AND THANK YOU

9       FOR YOUR REMARKS.  AND OF COURSE WE'VE CAREFULLY REVIEWED YOUR

10      OPINION ON THE STAY ISSUES AND ABSORBED THAT.  WE ARE NOT GOING

11      TO REARGUE ANY OF THAT.

12             IF IT'S OKAY WITH YOUR HONOR, I WOULD LIKE TO JUST MAKE A

13      FEW REMARKS THAT PUT OUR PROCEDURAL POSTURE IN CONTEXT, BECAUSE

14      WE MAY HAVE THOUGHT OF SOME THINGS, IT'S UNLIKELY, BUT WE MAY

15      HAVE THOUGHT OF A FEW THINGS THAT THE COURT HASN'T YET THOUGHT

16      OF, AND THEN I WOULD LIKE TO ADDRESS THE ISSUE OF EXPERTS AND

17      SUMMARY JUDGEMENT AND ALSO JUST KIND OF THE DISCOVERY CUTOFF

18      AND WHERE WE ARE.

19             BUT OBVIOUSLY THE LAWSUIT HAS CHANGED SINCE WE ORIGINALLY

20      SET THIS FAIRLY EXPEDITED SCHEDULE.  THE LAWSUIT THAT WE

21      ENCOUNTERED BACK THEN WAS BROUGHT BY ELEVEN PLAYERS, AND THAT

22      WAS IT.  THE PLAYERS ARE ALL GONE NOW.  THERE'S NO ISSUES ABOUT

23      THE PLAYERS AND THEIR PURPORTED RIGHT TO PLAY GOLF AND PURSUE

24      THEIR DREAMS, THIS IS ABOUT LIV/PIF AND THE TOUR.  AND I SAY

25      LIV/PIF BECAUSE WE KNOW THAT THEY ARE THE SAME THING.  AND IT

1    WAS CONFIRMED IN LAST FRIDAY'S DEPOSITION OF A GENTLEMAN NAMED

2    MR. KHOSLA.

3         PIF SUPPLIES THE MONEY, PIF GIVES THE DIRECTION, PIF

4    APPROVED THE FILING OF THIS LAWSUIT, AND INDEED MR. QUINN, WHO

5    TODAY REPRESENTS LIV, EARLIER IN THIS CASE WAS REPRESENTING

6    PIF, AND GIBSON DUNN, OF COURSE CREATED LIV FOR PIF.  SO LIV

7    REALLY IS PIF.

8         NOW THERE'S A PARADOX IN THE CASE SCHEDULE, OF COURSE, IN

9    THAT LIV WANTS TO GO FORWARD QUICKLY, BUT PIF MAKES DECISIONS,

10   AND I'M NOT CRITICIZING THEM FOR THIS, BUT THEY MAKE DECISIONS

11   WHICH SLOW DOWN THE CASE.

12        THEY COULD HAVE CHOSEN TO PROVIDE DISCOVERY AND COOPERATE,

13   BUT THEY HAVE CHOSEN TO ASSERT THEIR RIGHTS AND APPEAL, AND

14   THEY MAY SEEK REHEARING EN BANC AND THEY MAY SEEK A CERT

15   PETITION, THERE WAS REFERENCE TO THAT.  WE DON'T KNOW HOW LONG

16   IT'S GOING TO TAKE.  BUT THAT SIDE, IF YOU WILL, THE LIV/PIF

17   SIDE, HAS SOME CONTROL OVER THIS.

18        SO THEY SAY LET'S KEEP GOING, LET'S KEEP GOING, LET'S KEEP

19   GOING, AND THEY DO THINGS WHICH SLOW THINGS DOWN, INCLUDING

20   FILING THEIR RECENT MOTION TO DISMISS ON THE LAST POSSIBLE DAY.

21   AND THE COURT WILL REMEMBER OUR COLLOQUY WITH MS. LAMM ABOUT

22   HER RIGHT TO DO THAT AND HERE WE ARE.  OKAY.

23        SO WHAT'S GOING TO HAPPEN WITH THIS APPEAL?  THAT, WE

24   DON'T KNOW, BUT WE HAVE ALL HAD EXPERIENCE WITH THE

25   NINTH CIRCUIT.  AND THERE IS NO BRIEFING SCHEDULE NOW ON THE

1       MOTION, ON THE APPEAL FROM THE MOTION TO QUASH THE SUBPOENAS.

2       AND THAT'S BECAUSE WE MOVED TO DISMISS IT, BECAUSE NORMALLY

3       APPEALS AREN'T PERMITTED FROM DENIALS WITH MOTIONS TO QUASH

4       SUBPOENAS.  AND IRONICALLY, THE COURT'S GRANTING THE MOTION TO

5       STAY DISCOVERY AS TO PIF, MAY HAVE REMOVED THE ONLY AVENUE THAT

6       WE ARE AWARE OF UNDER THE LAW TO MAKE THAT APPEALABLE, WHICH IS

7       THEM DEFYING THE ORDER AND BEING HELD IN CONTEMPT.  THAT'S NOT

8       GOING TO HAPPEN BECAUSE THEIR OBLIGATION TO COMPLY HAS BEEN

9       HELD IN CONTEMPT.

10          YOUR HONOR IS RIGHT, WE MOVED TO DISMISS THE APPEAL, IT

11      WAS FULLY BRIEFED, THE MOTION WAS FULLY BRIEFED, I THINK A WEEK

12      AGO FRIDAY, OR MAYBE TWO WEEKS AGO LAST FRIDAY.  WE HAVEN'T

13      HEARD ANYTHING FROM THE NINTH CIRCUIT.  THEY COULD RULE ON IT,

14      THEY COULD ROLL IT INTO THE MERITS APPEAL.

15              THE COURT:  THEY COULD.

16              MR. PETERS:  BUT THERE'S A MOTION TO DISMISS WHICH

17      WAS JUST FILED, IT RAISES MANY OF THE SAME FSIA AND PERSONAL

18      JURISDICTION ISSUES, IT SAYS SAUDI LAW SHOULD APPLY.  WE ARE

19      GOING TO OPPOSE IT, YOUR HONOR IS GOING TO RULE ON IT, AND IN

20      THE EVENT THAT THAT MOTION IS DENIED, WHICH WE THINK IS HIGHLY

21      LIKELY, THERE WILL BE AN APPEAL FROM THAT, AND THAT IS A PROPER

22      APPEAL.

23          SO AT SOME POINT THIS SUMMER, OR MAYBE IN THE FALL, THERE

24      WILL BE A SCHEDULING ORDER FROM THE NINTH CIRCUIT AND BRIEFS

25      WILL BE FILED.  WELL, HOW LONG IS IT GOING TO TAKE?  IF

1    EXPERIENCE AND STATISTICS ARE A GUIDE, THAT APPEAL PROBABLY

2    ISN'T GOING TO BE DECIDED UNTIL A YEAR FROM THIS FALL; IN OTHER

3    WORDS, THE FALL OF 2024 OR THEREABOUTS, BECAUSE APPEALS IN

4    FRONT OF THE NINTH CIRCUIT RARELY TAKE LESS THAN A YEAR.

5             THE COURT:  RIGHT.

6             MR. PETERS:  NOW WHAT'S GOING TO HAPPEN AFTER THAT,

7    ARE THEY GOING TO SEEK REHEARING EN BANC, ARE THEY GOING TO

8    FILE A CERT PETITION?  WE DON'T KNOW.  THEY MAY KNOW OR THEY

9    MAY NOT KNOW, BUT WE CERTAINLY DON'T KNOW.

10        WELL, WHAT HAPPENS THEN, YOU KNOW?  ASSUME THAT THE

11   NINTH CIRCUIT AFFIRMS YOUR HONOR, AND I DO ASSUME THAT BECAUSE

12   TWO EXCELLENT JUDICIAL OFFICERS TOOK A VERY HARD LOOK AT THIS

13   AND WROTE ORDERS, AND WE ARE FAMILIAR WITH THE LAW, AND WE

14   THINK THAT YOUR HONOR WAS A HUNDRED PERCENT RIGHT.  SO WHAT

15   HAPPENS THEN?  ONE POSSIBILITY IS THAT PIF COMPLIES WITH THE

16   ORDERS, DISCOVERY, SUBPOENAS, WHATEVER IT IS, BUT THEY START

17   PRODUCING DOCUMENTS.

18        WELL, WE ARE GOING TO NEED THEM TO PRODUCE DOCUMENTS, WE

19   ARE GOING TO HAVE DEPOSITIONS, I WOULD SAY AT LEAST SIX

20   DEPOSITIONS OF PIF WITNESSES, AND WE HAVE SUPPLIED TO THE

21   COURT, INFORMATION ABOUT THAT.  WE MAY SEEK TO REOPEN OTHER

22   DEPOSITIONS, BECAUSE THE COURT HAS WRITTEN ABOUT THAT.

23        THAT'S ALL GOING TO TAKE A COUPLE OF MONTHS BEFORE

24   DOCUMENTS ARE PRODUCED AND DEPOSITION REOPENING IS GOING TO BE

25   CONSIDERED BY THE COURT.  AND THEN PIF, I ASSUME, WHAT'S PIF

1    GOING TO SAY?  PIF IS GOING TO SAY, WE GET TO TAKE DISCOVERY

2    TOO.  THEY ARE GOING TO SAY, WE WANT 150 HOURS OF DEPOSITIONS

3    JUST LIKE THE REST OF YOU GUYS, WE WANT TO RE-DEPOSE ALL THE

4    TOUR'S WITNESSES, WE HAVE SOME INITIAL DISCOVERY REQUESTS WE

5    WANT, WE WANT OUR OWN EXPERTS.  THEY ARE NOT GOING TO BE

6    SATISFIED WITH THE EXPERTS THAT HAVE BEEN SET FORTH TODAY, I

7    WOULD ASSUME.  SO WE ARE NOW STILL IN THE MIDST OF DISCOVERY IN

8    THE FALL OF 2024 OR EARLY 2025.

9           ANOTHER POSSIBILITY, I SUPPOSE, AND IT'S BEEN TELEGRAPHED

10   BY THEIR LAWYERS, IS THAT PIF DOESN'T COMPLY, PIF SAYS NO, WE

11   ARE NOT GOING TO COMPLY WITH THESE SUBPOENAS, WE ARE NOT GOING

12   TO PARTICIPATE IN DISCOVERY, AT WHICH POINT IN TIME WE WOULD

13   MOVE FOR TERMINATING SANCTIONS.

14          THE COURT:  OF COURSE.

15          MR. PETERS:  PIF AND LIV ARE ALTER EGOS, BASICALLY,

16   AND WE MOVE FOR TERMINATING SANCTIONS, AND THEN WE ARE

17   LITIGATING THAT, AND THAT WILL TAKE A COUPLE OF MONTHS TO BRIEF

18   AND FOR YOUR HONOR TO HEAR ARGUMENT ON IT, THAT'S A VERY

19   SERIOUS MOTION TO DECIDE, ONE WAY OR THE OTHER, WE ARE WELL

20   INTO 2025, AT THAT POINT IN TIME ANYWAY.

21          AND SO LET'S TALK FOR A LITTLE BIT ABOUT WHY THE PIF

22   DISCOVERY IS SO IMPORTANT TO US, BECAUSE WE MAY WELL FILE FOR

23   SUMMARY JUDGEMENT.  AND SO IT ISN'T JUST A 56(D) ISSUE, IT'S

24   OUR ABILITY TO SEEK SUMMARY JUDGEMENT, WHICH WE HAVE THE RIGHT

25   TO DO UNDER RULE 56, AND ALSO OUR ABILITY TO PREPARE EXPERTS

1      WHO COULD WRITE REPORTS AND BE DEPOSED.

2          THAT'S BECAUSE THE PIF DISCOVERY IS SO IMPORTANT TO THE

3      CASE BECAUSE PIF CREATED THIS COMPETING GOLF LEAGUE BEFORE LIV

4      EVER EVEN EXISTED.  PIF DEVELOPED BUSINESS PLANS AND STUDIED

5      THE COMPETITIVE LANDSCAPE AND DEVELOPED BUDGETS AND HOW MUCH IT

6      WAS GOING TO COST, THEY NEGOTIATED WITH BROADCASTERS AND

7      SPONSORS, THEY HAVE UNIQUE EVIDENCE, AND MR. AL-RUMAYYAN WAS

8      THE POINT PERSON FOR ALL OF THIS, HE WAS -- AS WE LEARNED LAST

9      WEEK FROM MR. KHOSLA, MR. AL-RUMAYYAN, IN 2022, CAME TO

10     LOS ANGELES TO ATTEND THE SUPER BOWL AND RENTED A SUITE WHERE

11     HE MET WITH GOLFERS WHO HE NEGOTIATED WITH PERSONALLY, MET WITH

12     BROADCASTERS AND SPONSORS, AND THIS IS EVIDENCE THAT HE HAS AND

13     THAT PIF HAS, ALL OF WHICH IS RELEVANT TO THE ANTITRUST CLAIMS

14     AND TO THE TORTIOUS INTERFERENCE CLAIMS, SO IT'S CRITICAL.

15         SO WE CAN'T FAIRLY DEVELOP EXPERTS, HAVE EXPERT REPORTS,

16     AND MOVE FOR SUMMARY JUDGEMENT, OR MOST LIKELY DEFEND AGAINST A

17     SUMMARY JUDGEMENT MOTION FOR RULE 56(D) REASONS, WE CAN'T

18     POSSIBLY DO THAT WITHOUT THE PIF DISCOVERY.

19         SO LET ME JUST SAY ANOTHER THING ABOUT THE DISCOVERY

20     CUTOFF AND THOSE DEADLINES AS THEY EXIST NOW.

21         MR. QUINN IS RIGHT THAT WE ARE UNSURPRISINGLY DOING

22     EVERYTHING WE CAN TO COMPLY WITH YOUR HONOR'S ORDER AND MOVE

23     THE CASE FORWARD.  THERE'S A LOT WE CAN'T DO.  AND WE FEEL THAT

24     WE ARE HAMSTRUNG IN DOING OUR DISCOVERY BECAUSE OF CHOICES PIF

25     HAS MADE.  AND WE DON'T PARTICULARLY LIKE THAT, BUT HERE WE

1    ARE, WE ARE GOING AHEAD AND DOING IT.

2        THE CURRENT JUNE 30TH DISCOVERY CUTOFF IS COMPLETELY

3    IMPRACTICAL AND UNWORKABLE AND REALLY IMPOSSIBLE AND

4    UNNECESSARY, FOR THE REASONS THAT I'VE JUST DESCRIBED.  AND I

5    THINK IN A CANDID MOMENT, THAT MR. QUINN WOULD AGREE WITH THAT.

6        THERE ARE -- AS YOUR HONOR WILL RECALL, WE AGREED ON

7    150 HOURS PER SIDE FOR DEPOSITIONS.  LIV HAS TAKEN, HAS USED

8    31 HOURS, AND THEY TOLD US THAT THEY HAVE 52 MORE DEPOSITIONS

9    THAT THEY WANT TO TAKE.

10       WE HAVE USED 16 HOURS AND WE HAVE ANOTHER 35 TO 40

11   DEPOSITIONS WE WANT TO TAKE.  WELL, THAT'S 90 DEPOSITIONS

12   BETWEEN NOW AND THE END OF JUNE.  IT'S JUST -- AND IT'S NOT

13   REALLY WORKABLE.  YES, WE COULD ALL DO IT IN TRIPLE AND

14   QUADRUPLE TRACK.  BUT WHY?  FOR A CASE WHICH REALLY CAN'T BE

15   TRIED, BECAUSE OF THESE APPEALS PROBABLY, UNTIL SOME TIME IN

16   2025 ANYWAY, WHY ARE WE KILLING OURSELVES TO DO THIS?

17       AND ANOTHER FORM OF, I WON'T SAY UNFAIRNESS, BUT OF

18   CONCERN FOR US, IS WE'VE GOT 150 HOURS, WE NEED TO RESERVE A

19   CHUNK OF THAT FOR PIF.  WE DON'T KNOW WHETHER THEY ARE EVER

20   GOING TO AGREE TO BE DEPOSED IN THE FIRST PLACE.  SO WE ARE

21   KIND OF DOWN TO 100 HOURS, WITH 50 OR SO THAT WE ARE GOING TO

22   HOLD BACK TO DEPOSE PIF WITNESSES AND THEN FOLLOW UP IF WE NEED

23   TO MOVE THE DEPOSITIONS

24       THE COURT:  WELL, MR. PETERS, LET ME JUST SUGGEST

25   THAT IN THE EVENT THAT YOU'RE SCHEDULING DEPOSITIONS FOR PIF,

1    AND YOU HAVE USED YOUR HOURS, YOU WOULD -- YOU CERTAINLY MAY

2    ASK FOR ADDITIONAL HOURS CAUSED BY THE STAY.  I DON'T SEE THE

3    NEED FOR YOU TO SAVE HOURS OF YOUR DEPOSITIONS.  TYPICALLY WHAT

4    YOU WOULD DO IS GIVE ME A VERY PRECISE DISCOVERY PLAN, THE

5    REQUEST FOR NUMBER OF HOURS PER DEPOSITION, AND THEN I CAN

6    DETERMINE WHETHER THERE'S GOOD CAUSE.

7         SO I DON'T SEE -- I AGREE WITH YOU IT WOULD BE UNFAIR TO

8    HAVE TO SAVE AN UNKNOWN NUMBER OF HOURS, AND OF COURSE IF I'M

9    REVERSED AND PIF IS NEVER REQUIRED TO SIT FOR DEPOSITION, THEN

10   YOU WOULD HAVE WASTED THE OPPORTUNITY TO SPEND MORE TIME WITH

11   OTHERS.  SO THAT GOES PART AND PARCEL WITH MOVING THINGS ALONG

12   NOW.

13         MR. PETERS:  WELL, I APPRECIATE THAT, YOUR HONOR,

14   BECAUSE WE KNOW FROM EXPERIENCE THAT YOUR HONOR CAN BE VERY

15   EXACTING AND WE ARE GOING TO HAVE TO DEMONSTRATE CAUSE, WE ARE

16   NOT COMPLAINING ABOUT THAT, WE JUST EXPECT TO BE HELD TO THAT

17   STANDARD, AND WE KNOW --

18         THE COURT:  MR. PETERS, I KNOW YOU READ MY ORDER AND

19   YOU APPRECIATE THIS, BUT IT IS VERY IMPORTANT TO PRESERVE THE

20   EVIDENCE NOW.  AND IF YOU'RE RIGHT THAT THIS CASE WON'T GO TO

21   TRIAL UNTIL 2025, IT'S THAT MUCH MORE IMPORTANT TO PRESERVE

22   THIS EVIDENCE.  IF THERE ARE ALL OF THESE INDIVIDUALS WHO WILL

23   BE DEPOSED, THEY WON'T REMEMBER ANYTHING IN 2025.

24         SO MR. QUINN MADE THE POINT, I FELT IT WAS ABSOLUTELY SPOT

25   ON, AND THAT'S WHY THIS NEEDS TO GO FORWARD.  SO THE LONGER IT

1      TAKES TO GET TO TRIAL, THE MORE IMPORTANT IT IS TO DO THIS

2      DISCOVERY NOW.

3              MR. PETERS:  YOUR HONOR, I UNDERSTAND THAT.

4          WHAT I'M SUGGESTING IS THAT THE CURRENT CUTOFF OF JUNE

5      MAKES NO SENSE.  IT'S JUST UNWORKABLE, AND THAT WE CAN HAVE A

6      LONGER WINDOW FOR DISCOVERY DURING WHICH TIME THE PARTIES ARE

7      TAKING DEPOSITIONS AND WE ARE TAKING THEM.  WE HAVE A VERY,

8      VERY BUSY JUNE, BUT WE CAN'T DO IT IN JUNE.  I MEAN, THE

9      PARTIES HAVE HAD CONVERSATIONS ABOUT JULY AND AUGUST.

10             THE COURT:  MR. PETERS, I UNDERSTAND.  IF YOU WERE

11     ABLE TO SHOW ME THAT YOU HAVE PROPOUNDED ALL OF THE DISCOVERY

12     WITHIN THE CURRENT SCHEDULE, THE REQUEST FOR DOCUMENTS, THE

13     DEPOSITION NOTICES, AND THE ISSUE IS FITTING IT ALL IN BY

14     JUNE 30TH, THAT'S A VERY DIFFERENT MATTER THAN EXTENDING THE

15     DATE TO PROPOUND THE DISCOVERY AND SEND THE NOTICES OF

16     DEPOSITION.

17         I WANT THAT PART DONE, AND THEN AGAIN, YOU CAN COME TO ME

18     AND SAY, THESE ELEVEN WITNESSES HAVE INDICATED AN INABILITY TO

19     BE AVAILABLE WITHIN THE DISCOVERY CUTOFF AND THESE ARE THE

20     SPECIFIC DATES THAT ARE PROPOSED, AND THEN I CAN APPROVE THAT.

21         I MEAN, I'M CONCERNED THAT YOU'VE GOT FOUR DIFFERENT

22     MOTIONS TO QUASH IN DIFFERENT DISTRICT COURTS, AND ANY ONE OF

23     MY COLLEAGUES IS GOING TO RESPECT MY SCHEDULING ORDER.  SO --

24     AND THAT'S GOING TO CAUSE A PROBLEM.

25             SO I UNDERSTAND WE NEED TO MODIFY THE SCHEDULING ORDER TO

1    EASE THAT PROBLEM, AND I DON'T THINK THERE'S ACTUALLY ANY

2    OBJECTION ON THAT, WE CAN MAKE THAT HAPPEN, YOU CAN GIVE ME A

3    PROPOSED ORDER THAT I CAN SIGN IMMEDIATELY TO PUT THAT TO REST.

4         BUT I NEED -- I'M NOT GOING TO LEAVE THE CAP OFF OF THE

5    DATE FOR YOU TO GET ALL THAT DISCOVERY PROPOUNDED.  AND THAT

6    GOES FOR MR. QUINN AS WELL, OF COURSE.

7         MR. PETERS:  AND IT CAME UP LAST TIME, HAVE WE SERVED

8    THE SUBPOENAS, AND WE SENT YOU A LIST OF ALL THE SUBPOENAS WE

9    HAD ALREADY SERVED PRIOR TO THE LAST CONFERENCE.

10        I MEAN, THE PARTIES ARE BEING DILIGENT ABOUT THAT, THERE

11   MAY BE SOME NOTICES THAT HAVEN'T GONE OUT BECAUSE WE ARE

12   NEGOTIATING ABOUT DATES AND THERE'S SOME ISSUES WITH THIRD

13   PARTIES, BUT I WOULD -- I THINK BOTH SIDES WOULD APPRECIATE

14   HAVING A LITTLE BIT OF BREATHING ROOM TO GET THINGS DONE THIS

15   SUMMER, NOT BY JUNE 30TH, BUT BY A LATER DATE, HOWEVER

16   YOUR HONOR WANTS TO DO THAT, I WOULD PROPOSE JUST GIVING US A

17   LITTLE BIT MORE TIME TO DO IT.  WE CAN RESPONSIBLY GET IT DONE.

18   THE SCHEDULE IS JUST REALLY A BEAR RIGHT NOW.

19             THE COURT:  SURE.

20             MR. QUINN:  YOUR HONOR?

21             THE COURT:  YES, MR. QUINN.

22             MR. QUINN:  IF I COULD RESPOND TO THAT.

23        WE AGREED AT THE LAST CONFERENCE, I THINK ON APRIL 7TH, WE

24   READILY AGREED TO A CONTINUANCE TO THE END OF JUNE OF DISCOVERY

25   CUTOFF.  AND MY UNDERSTANDING IS THAT WE HAVE DATES AGREED NOW

1    ON BOTH SIDES FOR EVERY PARTY WITNESS.  THE ONLY EXCEPTION

2    BEING THESE APEX, I THINK THREE ON THEIR SIDE, TWO ON OUR SIDE,

3    WHICH WILL SLIP INTO AUGUST.  SO WE NOT ONLY BELIEVE THAT THE

4    DEPOSITION SCHEDULE CAN BE DONE WITHIN WHAT HAS ALREADY BEEN

5    AGREED TO AND THE COURT ORDERED, WITH A MODIFICATION FOR A

6    COUPLE OF DEPOSITIONS IN JULY AND POTENTIALLY AUGUST, BUT THE

7    PARTIES HAVE ACTUALLY ALREADY AGREED TO IT AND OFFERED UP DATES

8    AND LOCATIONS.

9            THE COURT:  SO MR. QUINN, YOU WERE LOOKING FOR A

10    MODIFICATION OF THE SCHEDULING ORDER TO ALLOW PROPOUNDING

11    SUBPOENAS TO THIRD PARTIES BY MAY 26TH; IS THAT CORRECT?

12            MR. QUINN:  YES, YOUR HONOR.

13        THERE WAS SOME CONFUSION, SOME OTHER DISTRICT COURTS READ

14    THE ORDER RELATING TO THE LAST DATE FOR PRODUCTION OF DOCUMENTS

15    BY PARTIES AS APPLYING TO THIRD PARTIES, SO THAT BECAME A

16    HANGUP.

17        I UNDERSTAND THAT THE TOUR DOES NOT DISPUTE THAT THAT WAS

18    A MISREADING OF THE COURT'S ORDER.

19            THE COURT:  ALL RIGHT.  THEN YOU CAN JUST SUBMIT A

20    STIPULATION AND PROPOSED ORDER FOR ME TO SIGN.  I CAN SIGN IT

21    AS SOON AS YOU SEND IT IN.

22        I WILL LET YOU DRAFT IT BECAUSE YOU KNOW THE FOUR

23    DIFFERENT SUBPOENAS AND THE DIFFERENT COURTS YOU ARE DEALING

24    WITH, I WANT TO MAKE SURE THE LANGUAGE IS EXACTLY WHAT YOU NEED

25    TO ADDRESS THE MOTIONS TO QUASH ON THAT ISSUE.  THERE MAY BE

1      OTHER --

2                MR. QUINN:  SURE.

3                THE COURT:  YEAH.  OKAY.

4           MR. PETERS, I WANT ALL THE DISCOVERY PROPOUNDED.  AND I

5      REALLY THINK JUST LIKE THESE SIX DEPOSITIONS THAT MR. QUINN

6      MENTIONED, YOU'VE COME TO AN AGREEMENT ON LATER DATES IN THE

7      SUMMER FOR THOSE DEPONENTS, AND I THINK YOU CAN DO THE SAME.  I

8      WANT ALL THOSE NOTICES OUT.  AND IF I SET MAY 26TH AS THE

9      DEADLINE, YOU'VE JUST GOT UNTIL THE END OF THE WEEK TO GET ALL

10     THOSE SUBPOENAS OUT.

11          YOU KNOW, IF FOR SOME REASON YOU WANTED UNTIL JUNE 5TH,

12     JUST TO EASE THAT, IT'S NOT -- IT DOESN'T MATTER TO ME,

13     PARTICULARLY, IF YOU JUST NEED ANOTHER COUPLE OF DAYS, OR I

14     GUESS THAT'S -- LET'S SEE, THAT WOULD BE JUNE 2ND, THAT WOULD

15     GIVE YOU AN ADDITIONAL WEEK, JUST SO THAT YOU CAN MAKE SURE

16     YOU'VE GOT EVERYTHING COVERED.  THAT'S MODEST, BUT --

17               MR. QUINN:  WE WILL DEFER TO MR. PETERS ON THAT.

18               THE COURT:  OKAY.

19               MR. PETERS:  I THINK THE ISSUE ABOUT THE SUBPOENAS IS

20     MR. QUINN'S ISSUE RELATING TO OTHER DISTRICTS WHERE THEY ARE

21     LITIGATING MOTIONS TO QUASH.

22               THE COURT:  OKAY.  YOU ARE NOT LITIGATING MOTIONS TO

23     QUASH, OKAY.

24          SO MR. PETERS, DO YOU NEED ANY MORE TIME TO PROPOUND

25     DISCOVERY?

1          MR. PETERS:  WE MAY NEED TO SERVE SOME NOTICES IN

2     CONNECTION WITH DATES THAT ARE BEING NEGOTIATED, BUT WE CAN

3     CERTAINLY PROPOUND OUR DISCOVERY BY JUNE 30TH.  I DON'T THINK

4     THAT ALL THE DEPO'S, AS MR. QUINN JUST INDICATED, CAN BE TAKEN

5     BY THE END OF JUNE.  THERE ARE SOME THAT ARE GOING TO SLIP

6     OVER, I'M JUST LOOKING AT MY CALENDAR HERE, I THINK THAT

7     THERE'S FIVE OR SIX WHICH ARE KIND OF PENCILLED IN IN JULY AND

8     AUGUST.

9          THE COURT:  SO -- BUT MR. PETERS, IF I SET A FACT

10    DISCOVERY CUTOFF DATE OF JUNE 30TH, THAT'S NOT THE DEADLINE TO

11    PROPOUND DISCOVERY, THAT'S THE DEADLINE FOR THE RESPONSE TO BE

12    DUE.  SO I DON'T -- I MEAN, I DON'T HAVE THE SCHEDULING ORDER

13    ON THE -- LET'S SEE WHAT I HAVE ACTUALLY IN FRONT OF ME HERE.

14         MR. PETERS:  YOUR HONOR, THE ONLY THING I'M REFERRING

15    TO ABOUT DEPOSITION NOTICES IS WITH RESPECT TO SOME OF THE

16    PLAYERS WHOSE DEPOSITIONS WE HAVE NOTICED WHO HAVE NOW

17    DISMISSED THEMSELVES FROM THE CASE, THEY ARE NO LONGER PARTIES,

18    WE NOW HAVE TO RE-SERVE THEM WITH SUBPOENAS AND RENEGOTIATE

19    DATES FOR THEM, THAT WE WILL TRY TO NEGOTIATE DATES WITH THEIR

20    LAWYERS BEFORE WE LAY SUBPOENAS ON THEM, BUT WE HAVE BEEN AND

21    WILL CONTINUE TO BE DILIGENT ABOUT SUBPOENAING PARTIES AND

22    NOTICING DEPOSITIONS.

23         ALL I'M ASKING FOR IS A LITTLE BIT OF LEEWAY, IN THAT SOME

24    OF THESE DEPOSITIONS TAKE PLACE IN JULY AND AUGUST.  AND IT

25    SEEMS LIKE MR. QUINN IS IN AGREEMENT ABOUT THAT.

```
1              THE COURT:  I DON'T THINK THAT'S A BIG DEAL, I JUST

2     DON'T WANT MASSIVE DOCUMENT REQUESTS GOING ON JUNE 29TH, THAT'S

3     NOT WHAT YOU ARE TALKING ABOUT.

4              MR. PETERS:  WE ALREADY PASSED THAT DEADLINE,

5     YOUR HONOR.

6              THE COURT:  THAT'S GREAT.  SO IT'S ONLY DEPOSITION

7     NOTICES.

8              MR. PETERS:  WELL, SUBPOENAS --

9              THE COURT:  SUBPOENAS.  THANK YOU, YES.

10        I THINK THAT -- THIS SHOULD BE SOMETHING YOU AND MR. QUINN

11    CAN WORK OUT, THAT THERE IS A LIST OF PEOPLE THAT YOU WILL BE

12    DEPOSING, AND I DON'T SEE THIS AS BEING SUCH A BIG PROBLEM

13    HERE.

14        MR. QUINN, I WANT TO MAKE SURE THAT WE KEEP THINGS GOING,

15    BECAUSE I WANT THIS TO GET WRAPPED UP.

16              MR. QUINN:  NO, NO, I DON'T THINK THERE'S A PROBLEM.

17        AS MR. PETERS SAID, I THINK THERE ARE MAYBE SEVEN

18    WITNESSES THAT, BETWEEN COUNSEL, THAT WE HAVE EXCHANGED

19    PROPOSED DATES, AND I THINK MOST ARE AGREED TO, IN JULY AND

20    AUGUST.

21              THE COURT:  GOOD.

22              MR. QUINN:  THAT IS BEYOND THE JUNE 30TH CUTOFF, BUT

23    IT'S SOMETHING THAT I THINK WE ARE PREPARED TO ACCEPT, AND WE

24    UNDERSTAND THE TOUR IS PREPARED TO ACCEPT, IN PART, BECAUSE

25    THERE ARE SOME MAJOR GOLF TOURNAMENTS COMING UP AND SENIOR
```

1    PEOPLE ARE GOING TO BE VERY INVOLVED IN GOLF.

2          THE COURT:  ABSOLUTELY.  ALL RIGHT.

3          MR. PETERS:  AND THERE'S ALSO THE ISSUE OF THE

4    PLAYERS.  I DON'T WANT TO REPEAT MYSELF BUT I WANT TO BE CLEAR,

5    THERE ARE ISSUES OF PLAYERS WHO RECENTLY DISMISSED THEMSELVES

6    FROM THE LAWSUIT WHO WE NOW HAVE TO SUBPOENA AND SCHEDULE AND

7    WHO MAY BE PLAYING IN SOME OF THESE GOLF TOURNAMENTS.

8          THE COURT:  AND WE ARE GOING TO WORK AROUND THAT.

9          SO I JUST WANT TO MAKE SURE -- AND IT MAY BE AS SIMPLE

10   AS -- I WANT THOSE SUBPOENAS TO GO OUT.  THIS CAN BE A SUBPOENA

11   WITH A DATE CERTAIN OR TO BE NEGOTIATED AMONG THE PARTIES KIND

12   OF DATE.

13         I WILL CERTAINLY -- I HAVE NO PROBLEM WITH YOU ACTUALLY

14   SITTING DOWN AT A DEPOSITION LATER IN THE SUMMER.  AND IF THEY

15   ARE NOT PARTIES, THEN WE OWE THEM SOME DEFERENCE IN THEIR

16   SCHEDULING AS WELL.  EVEN PARTIES, WE OWE SOME DEFERENCE.  SO I

17   DON'T HAVE A PROBLEM WITH THAT.

18         I THINK THE JUNE 30TH DISCOVERY CUTOFF DATE, GENERALLY, IS

19   GOING TO STAY IN PLACE, AND THERE WILL BE THIS FLEXIBILITY IN

20   ACCOMMODATING WITNESS SCHEDULES, THAT CAN LAST INTO JULY AND

21   AUGUST.  AND IT SOUNDS LIKE THIS IS WELL UNDER WAY.

22         MR. QUINN, I DON'T THINK THAT HARMS YOUR POSITION.

23         MR. QUINN:  NO.  I THINK THAT'S BASICALLY MY

24   UNDERSTANDING, YOUR HONOR, THAT'S WHERE WE ARE NOW.

25         THE COURT:  ALL RIGHT.  THAT'S GREAT.  ALL RIGHT.

1    SO I AM INCLINED TO LEAVE THE SUMMARY JUDGEMENT AND TRIAL

2    DATES AS SET, WITH AN UNDERSTANDING THAT WE NEED TO LOOK AT

3    THIS IN THE EARLY FALL.  NONE OF US HAS A CRYSTAL BALL INTO

4    WHAT THE NINTH CIRCUIT WILL BE DOING, THEY CERTAINLY ISSUE

5    ORDERS ON MOTIONS TO DISMISS WITHOUT HEARING IN MANY CASES,

6    THIS IS NOT LIKE MANY CASES, THEY MAY HANDLE THIS ONE

7    DIFFERENTLY.

8    IF YOU DON'T EVEN HAVE A BRIEFING SCHEDULE ON THE MERITS,

9    THAT'S A LITTLE CONCERNING TO ME BECAUSE YOU ARE MONTHS AWAY

10   FROM THAT EVEN BEING FULLY BRIEFED, AND I DON'T KNOW WHAT

11   PRIORITY THE NINTH CIRCUIT WOULD GIVE THIS CASE, IT'S NOT A BIG

12   RECORD, BUT IT'S NOT AN EASY ISSUE EITHER.

13   SO I THINK WE HAVE A PLAN AT THIS POINT ON DISCOVERY.  YOU

14   ARE GOING TO SEND ME A PROPOSED ORDER THAT ADDRESSES THE

15   MOTIONS TO QUASH YOU HAVE.  THERE'S AN AGREEMENT THAT

16   DEPOSITIONS CAN BE SCHEDULED INTO THE SUMMER AT THE CONVENIENCE

17   OF ALL PARTIES, AND YOU WILL WORK OUT THAT AGREEMENT.

18   IF YOU WANT ME TO SIGN AN ORDER, THAT'S GREAT.  IF YOU CAN

19   DO IT BY STIPULATION WITHOUT AN ORDER, THAT'S OFTEN WHAT'S

20   DONE, AND YOU JUST CAN MEMORIALIZE IT.  BUT I THINK WE -- I

21   THINK THAT GIVES US SOME REAL PROGRESS HERE.

22            MR. PETERS:  YOUR HONOR?

23            THE COURT:  YES, GO AHEAD, PLEASE.

24            MR. PETERS:  THE CURRENT EXPERT REPORT DATE IS

25   SEPTEMBER 1ST.  WE HAVE ASKED TO MOVE THAT FOR THE REASONS

1    INDICATED AND THAT YOUR HONOR IDENTIFIED AT THE BEGINNING THAT

2    WE CAN'T REALLY FINALIZE EXPERT REPORTS IN THE ABSENCE OF

3    COMPLETE DISCOVERY, PARTICULARLY GIVEN THE SIGNIFICANCE IN THIS

4    CASE.

5        SO WHAT WE WOULD PROPOSE IS THAT MAYBE IN LATE

6    SUMMER/EARLY FALL, WE HAVE ANOTHER CMC AND WE CAN COME BACK TO

7    YOU WITH INFORMATION ABOUT THE STATUS OF THE NINTH CIRCUIT

8    APPEAL, WHETHER IT'S BEEN BRIEFED, WHETHER ARGUMENT HAS BEEN

9    SET, ANYTHING LIKE THAT.

10       I THINK IT'S INCONCEIVABLE THAT THOSE APPEALS WILL BE

11   DECIDED IN 2023, AND IF WE COME BACK IN SEPTEMBER WITH -- WE

12   CAN REPORT TO YOU, HAVE ALL THE DEPOSITIONS -- RIGHT AROUND THE

13   BEGINNING OF SEPTEMBER, HAVE THE DEPOSITIONS BEEN COMPLETED,

14   WHERE ARE WE ON THE NINTH CIRCUIT, AND THEN WE CAN DISCUSS THE

15   EXPERT SCHEDULING DATES AND THE SUMMARY JUDGEMENT DATES AT THAT

16   TIME.  TO LEAVE THOSE DATES IN PLACE, PARTICULARLY THAT EXPERT

17   DATE ON SEPTEMBER 1ST, AND THEN THE SUMMARY JUDGEMENT DEADLINE

18   AS EARLY NOVEMBER, I THINK WE WOULD BE REALLY WORKING ON THAT

19   BY SOME TIME IN SEPTEMBER.

20       IT'S GOING TO TAKE A GREAT DEAL OF WORK, AND AS YOUR HONOR

21   OBSERVED IN THE BEGINNING, IT'S GOING TO BE -- THEY ARE GOING

22   TO HAVE TO BE REDONE.  AND I'M NOT SURE WHAT THE EXIGENCY IS

23   THAT WOULD DRIVE DOING THAT.

24       SO WOULD THE COURT CONSIDER SEEING US IN EARLY SEPTEMBER,

25   GETTING A REPORT ON, YOU'VE COMPLETED THE DEPOSITIONS, WE

1    SHOULD HAVE, WHERE ARE WE ON THE APPEAL, AND WHAT SHOULD WE DO

2    ABOUT EXPERTS AND SUMMARY JUDGEMENT DATES, THAT WOULD SEEM TO

3    ME TO MAYBE BE A PRUDENT WAY TO PROCEED.

4          THE COURT:  WELL, BEFORE I HEAR FROM MR. QUINN, LET

5    ME JUST ASK A QUESTION.  IF I WERE TO AGREE WITH YOU, AND I'M

6    NOT SAYING I WOULD, FROM THE DATE I PUT THE EXPERT REPORTS BACK

7    ON THE FRONT BURNER, HOW LONG WOULD IT TAKE YOU TO PRODUCE THE

8    REPORT?

9          MR. PETERS:  WELL, IT DEPENDS ON, CAN WE PRODUCE A

10   REPORT THAT'S NOT GOING TO GET IMPEACHED IN A DEPOSITION

11   BECAUSE WE DON'T HAVE ALL THE EVIDENCE?  I MEAN, HOW LONG WOULD

12   IT TAKE US, THAT DEPENDS ON WHEN WE ARE GOING TO GET THE PIF

13   EVIDENCE.  BUT ASSUMING WE HAVE ALL THE EVIDENCE WE NEED TO

14   WRITE A REPORT, I WOULD SAY 60 DAYS.

15         THE COURT:  YEAH, THAT'S THE PROBLEM.

16      SO, AGAIN, YOU'VE POSTPONED MY TRIAL BY A YEAR BY DOING

17   THAT, BECAUSE THAT'S JUST THE OPENING REPORT, AND THEN THERE

18   ARE THE REBUTTAL REPORTS, AND THEN THERE ARE THE DEPOSITIONS,

19   AND THEN THERE'S THE SUMMARY JUDGEMENT MOTION.  I LOSE A YEAR

20   AGAIN.  SO THAT IS THE DILEMMA HERE.

21      AND YOU KNOW, THE ORIGINAL TRIAL DATE WAS CERTAINLY

22   AMBITIOUS TO BRING IT TO TRIAL WITHIN A YEAR, BUT IT WAS ON THE

23   HEELS OF A TEMPORARY RESTRAINING ORDER BEING DENIED AND

24   TYPICALLY SOME URGENCY ASSIGNED TO TRIAL WHEN THERE'S SOME

25   CONCERN WITH THE HARM TO THE PARTIES.

1        YOU ARE RIGHT, THAT HAS CLEARLY CHANGED, AND LIV CAN BE

2    MADE WHOLE FINANCIALLY, IT'S NOT GOING TO AGE OUT OF BEING A

3    PROFESSIONAL GOLFER THE WAY THE PLAYERS WILL EVENTUALLY AGE

4    OUT.

5        SO I JUST AM NOT REALLY HAPPY ABOUT THE PROPOSAL OF TAKING

6    THE EXPERT REPORTS OFF THE FRONT BURNER AT THIS POINT.

7            MR. PETERS:  YOUR HONOR, I HAVE BEEN REMINDED HERE

8    THAT THERE ISN'T AN EXPERT REPORT DATE, THAT WAS JUST LIV'S

9    PROPOSAL WAS SEPTEMBER 1ST.

10           MR. QUINN:  YES, ACTUALLY MR. PETERS IS CORRECT.

11           THE COURT:  OKAY.  THANK YOU.

12           MR. QUINN:  YOUR HONOR, ON APRIL 7TH, ASKED US TO

13    MEET AND CONFER ABOUT A DATE FOR EXPERT REPORTS.

14           THE COURT:  OKAY.  THANK YOU.

15           MR. QUINN:  I GUESS WHAT I WOULD SAY, YOUR HONOR

16    IS --

17           THE COURT:  YES.

18           MR. QUINN:  -- THERE IS PLENTY OF MATERIAL FOR

19    EXPERTS TO WORK WITH, RATHER THAN BEFORE, HAVING TO GET INTO

20    THE HYPOTHETICAL WORLD OF WHAT MIGHT BE THE TESTIMONY FROM PIF

21    AND MR. AL-RUMAYYAN.  BUT THAT EVIDENCE WOULD BE COMPLETELY

22    IRRELEVANT TO THE TOUR'S PLAYER BANS, TO THE TOUR'S THREATS TO

23    VENDORS, THREATS TO BROADCASTERS, THREATS TO THE AGENTS, THEIR

24    CONDUCT, WE THINK CONSPIRACY WITH THE EUROPEAN TOUR, THE

25    LONG-TERM EXCLUSIVE CONTRACTS WITH BROADCASTERS, THE IMPACT OF

```
1        THE TOUR'S FALL SEASON ON MARKETS.

2            YOU KNOW, THEY KEEP TALKING ABOUT HOW THE -- LIV IS THE

3    CREATION OF PIF AND THAT PIF FUNDS IT.  BUT LET'S REMEMBER THIS

4    IS A PLAINTIFF'S SIDE ANTITRUST CASE.  AND I UNDERSTAND THE

5    COURT HAS RULED THAT THIS EVIDENCE IS RELEVANT TO THE ANTITRUST

6    CASE, BUT AS TO THE CORE COMPETITIVE ISSUES HERE, IT SURELY,

7    WHATEVER IT IS, IT'S SURELY, AT BEST, PERIPHERAL.

8            SO WE WOULD SUBMIT THAT THE DATE OF THE EXCHANGE THAT WE

9    PROPOSE FOR EXPERT REPORTS IS IMMINENTLY DOABLE.  AND IF IT

10   TURNS OUT THERE'S SOMETHING ELSE THAT COMES UP AND THAT NEEDS

11   TO BE REVISITED, IT CAN BE REVISITED.

12           MR. PETERS:  OUR EXPERTS WOULD HAVE TO DEVELOP

13   REPORTS WITHOUT HAVING ACCESS TO A LOT OF INFORMATION THAT WE

14   BELIEVE AND OUR EXPERTS BELIEVE IS CRITICAL ABOUT THE OVERALL

15   COMPETITIVE LANDSCAPE IN THE SPORT OF GOLF AND ABOUT PIF'S OWN

16   ANALYSIS OF THAT, AS WELL AS THEIR ACTUAL NEGOTIATION WITH

17   BROADCASTERS AND SPONSORS AND PLAYERS.

18           AND THE ONLY REASON THAT WE WOULD BE DEPRIVED OF THAT

19   INFORMATION IS BECAUSE PIF/LIV BOTH WANTS TO MOVE FORWARD WITH

20   THE SCHEDULE AND HAS CHOSEN TO DECLINE TO SUBMIT TO THE COURT'S

21   JURISDICTION AND COMPLY WITH SUBPOENAS AND SUBMIT ITSELF TO

22   DISCOVERY.

23           SO BASED ON CHOICES THAT THEY MAKE, I MEAN, I'M SURE

24   MR. QUINN WOULD LIKE OUR EXPERTS TO HAVE TO SIT FOR DEPOSITION

25   BASED ON REPORTS WHERE THEY HAVEN'T HAD ACCESS TO A LOT OF
```

1    INFORMATION THAT THEY THINK IS RELEVANT AND THAT THE COURT

2    THINKS IS RELEVANT, BUT IT REALLY IS A SUBSTANTIAL PREJUDICE TO

3    US TO HAVE TO DO THAT.

4         AND I'M SENSITIVE TO YOUR HONOR'S CONCERNS ABOUT THE

5    SCHEDULE, WHICH IS WHY I TRIED TO POINT OUT THAT THE

6    NINTH CIRCUIT IS NOT GOING TO HAVE RESOLVED THIS APPEAL ON THE

7    MERITS OF THE FSIA ISSUE BY OCTOBER, NOVEMBER, DECEMBER OF THIS

8    YEAR, AND EVEN IF THEY DID, THERE WOULD BE ANOTHER FOUR MONTHS

9    OR SO OF DISCOVERY WHICH WOULD HAVE TO TAKE PLACE BEFORE WE CAN

10   DO EXPERT REPORTS AND SUMMARY JUDGEMENT.

11        WE ARE NOT TRYING TO DELAY THIS CASE.  WE ARE SIMPLY

12   TRYING TO HAVE ACCESS TO THE INFORMATION WE NEED TO LITIGATE

13   IT.  AND I DO THINK THIS IS ONE OF THOSE SITUATIONS WHERE HASTE

14   MAKES WASTE.  WE ARE GOING TO END UP WITH EXPERT REPORTS, IF WE

15   DON'T ALLOW, IF WE DON'T GIVE US SOME MORE TIME TO SEE WHERE

16   THINGS STAND, WHERE OUR EXPERTS ARE NOT IN THE POSITION TO

17   INCORPORATE CRITICAL EVIDENCE INTO THEIR REPORTS, SO THEY ARE

18   GOING TO HAVE TO GET REDONE, AND WE ARE NOT GOING TO BE ABLE TO

19   FILE SUMMARY JUDGEMENT MOTIONS, AND WE ARE GOING TO HAVE TO

20   FILE A RULE 56(D) MOTION WITH YOUR HONOR IF THEY MOVE FOR

21   SUMMARY JUDGEMENT, AND WE ARE GOING TO TAKE UP YOUR TIME AND

22   OUR CLIENT'S MONEY FOR NO GOOD REASON.  I SIMPLY DON'T SEE HOW

23   THAT MOVES THE CASE FORWARD.

24        AND WE ARE HAPPY TO MOVE THE CASE FORWARD, BUT WE REALLY

25   DO WANT TO DEAL WITH IT ON THE MERITS.  AND THE MOST CRITICAL

1    CORE EVIDENCE IT'S NOT JUST MR. AL-RUMAYYAN.  MR. QUINN ACTS

2    LIKE IT'S SOME PERIPHERAL THING.  THERE'S SIX KEY WITNESSES

3    FROM PIF.  THERE'S DOCUMENTS THEY HAVE WHICH LIV DOESN'T HAVE

4    BECAUSE PIF WAS DOING THIS WORK BEFORE THEY CREATED LIV.  THE

5    MOST SIGNIFICANT EVIDENCE TO US IN THE ENTIRE CASE IS BEING

6    WITHHELD FROM US, AND OKAY, WE WILL GO AHEAD AND DO THE

7    DISCOVERY, BUT TO THEN HAVE TO PUT TOGETHER EXPERT REPORTS

8    LATER ON, MR. QUINN AND MS. BRASS ARE GOING TO BE IMPEACHING

9    OUR EXPERTS WITH THE FACT THAT, YOU CHANGED YOUR REPORT, YOU

10   DIDN'T SAY THIS AND YOU DIDN'T SAY THAT.

11          THE COURT:  SO LET ME ASK YOU, IS THERE A WAY TO

12   MITIGATE THIS IMPEACHMENT BY SIMPLY NOT ALLOWING OBJECTIONS

13   BASED UPON THE PROVISION OF ADDITIONAL DISCOVERY WHICH CAUSES

14   THE EXPERT TO MODIFY THE OPINION?

15          MS. BRASS:  YOUR HONOR, WE INITIALLY OFFERED THAT TO

16   THE TOUR, AND MEETING AND CONFERRING ON.  MR. PETERS WASN'T ON

17   THOSE CALLS, SO HE MAY NOT KNOW, BUT WE HAVE OFFERED TO DO

18   THAT.

19          AND I DISAGREE WITH THE SUBSTANCE OF WHAT HE'S SAYING

20   ABOUT WHETHER THESE DOCUMENTS ARE ALREADY ONLY WITH PIF OR IF

21   HE HAS THEM ALREADY.  BUT IF HE'S RIGHT, WE HAVE OFFERED

22   EXACTLY WHAT YOUR HONOR IS PROPOSING, AND WE ARE HAPPY TO

23   STIPULATE IT, WE ARE HAPPY TO HAVE IT BE SO ORDERED.  YOU KNOW,

24   WE HAVE TRIED TO TAKE THIS ISSUE OFF THE TABLE.

25          MR. PETERS:  BUT OUR EXPERTS ARE NOT GOING TO BE IN A

1    POSITION IT RENDER COMPLETE OPINIONS WITHOUT ACCESS TO THE

2    EVIDENCE THAT'S MOST CRITICAL TO THE FORMATION OF THEIR

3    OPINIONS.  AND WHY SHOULD THEY HAVE TO?  WHY SHOULD WE?

4            THE COURT:  MR. PETERS, YOU AND I MIGHT BE WRONG ON

5    PIF'S OBLIGATION TO PRODUCE THIS AND THEN YOUR CASE GOES

6    FORWARD WITHOUT IT ANYWAY.

7        I MEAN, I THINK I WAS RIGHT OR I WOULD NEVER HAVE SIGNED

8    AN ORDER SAYING SO, BUT I'M NOT SO ARROGANT TO THINK THAT THE

9    NINTH CIRCUIT MIGHT NOT SEE IT DIFFERENTLY.  THESE ARE

10   IMPORTANT ISSUES.

11           MR. PETERS:  I UNDERSTAND THAT.  AND I'M NOT

12   TRIVIALIZING THE ISSUES AND I'M NOT SAYING THAT PIF DOESN'T

13   HAVE THE RIGHT TO APPEAL, WHAT I'M SAYING IS KIND OF ANOMALOUS

14   AND NOT EVEN, IS THAT THEY GET TO BOTH DEMAND THAT WE GO AHEAD

15   WITH A VERY AGGRESSIVE CASE SCHEDULE, WHILE THROUGH THE APPEAL,

16   DEPRIVING US OF EVIDENCE THAT IS CRITICAL TO OUR EXPERTS.

17       AND GIVEN THE FACT THAT THE NINTH CIRCUIT IS GOING TO TAKE

18   SOME TIME TO DECIDE THIS, WHATEVER THEY DECIDE, THEY ARE GOING

19   TO TAKE SOME TIME.  WHY NOT COMPLETE THE FACT DISCOVERY THIS

20   SUMMER, COME AND HAVE ANOTHER CMC ON SEPTEMBER, THE COURT

21   PICKS, WE REPORT, WE HAVE COMPLETED THE DEPO'S, HERE'S THE

22   STATUS OF THE NINTH CIRCUIT.  THE BRIEFS WON'T EVEN HAVE ALL

23   BEEN FILED BY THEN.  AND THEN YOUR HONOR CAN REVISIT THIS

24   QUESTION OF EXPERT DISCLOSURE DATES AND SUMMARY JUDGEMENT, WITH

25   A MORE FULL PROCEDURAL AND SUBSTANTIVE RECORD, AND THEN WE CAN

1    GO AHEAD.

2         AND THERE'S NO RISK THAT THE TRIAL DATE IS GOING TO BE

3    MOVED ANY FURTHER -- THERE'S NO RISK THAT IT'S GOING TO CHANGE,

4    BECAUSE ONCE THE NINTH CIRCUIT DECIDES, IT'S GOING TO TAKE SOME

5    TIME ANYWAY.

6         SO I JUST -- YEAH THE POSSIBILITY, THERE'S A POSSIBILITY

7    THAT THEY REVERSE, YOUR HONOR, I'M NOT SURE WHAT YOUR HONOR'S

8    REVERSAL RATE, I DON'T THINK IT'S VERY HIGH.

9              THE COURT:  NOT BAD.

10             MR. PETERS:  I BET IT'S NOT.

11        AND ON THIS ISSUE WHICH WE ARE ALL VERY FAMILIAR WITH

12   BECAUSE I'VE ARGUED IT MULTIPLE TIMES, I THINK IT'S LIKELY THAT

13   THEY ARE GOING TO AFFIRM.  BUT WE DON'T HAVE TO PREDICT THAT,

14   BECAUSE WE CAN -- WE'VE GOT LOTS OF WORK TO DO THIS SUMMER,

15   LET'S COME BACK AND ADDRESS EXPERT DATES AND SUMMARY JUDGEMENT

16   DATES AND YOUR HONOR CAN GOING OUT WHAT TO DO WITH THE SCHEDULE

17   THEN.

18        TO LOCK THEM IN NOW AND MAKE OUR EXPERTS GO TO WORK, SPEND

19   A LOT OF MONEY AND TIME ON REPORTS WHICH ARE NECESSARILY GOING

20   TO BE INCOMPLETE, JUST SEEMS TO ME TO BE UNNECESSARY

21   YOUR HONOR, I DON'T THINK IT'S ADVANCING THE BALL.  AND WE WANT

22   TO ADVANCE THE BALL, BUT WE DON'T WANT TO DO IT IN A WAY WHICH

23   PREJUDICES US.  SO THAT'S MY SUGGESTION.

24             THE COURT:  SO I THINK IT'S MORE LIKELY THAT IF THE

25   PIF DISCOVERY COMES ABOUT, THAT IT WILL BE MORE -- IT MAY

1   BOLSTER YOUR THEORIES, BUT IT IS UNLIKELY TO DRAMATICALLY

2   CHANGE THEM.

3       I THINK THAT THE PROPOSAL FOR THE EXPERT REPORTS SUGGESTED

4   BY MR. QUINN MAKES SENSE.  I WILL GLADLY HAVE ANOTHER CMC THE

5   WEEK BEFORE THAT DEADLINE SO THAT IF THERE'S SOME CHANGE THAT

6   WOULD CAUSE THE REPORTS NOT TO BE EXCHANGED, I WOULD STILL BE

7   ABLE TO DO THAT.

8       BUT I THINK THAT WE NEED TO MOVE THIS ALONG.  THE DATES

9   THAT YOU HAVE PROVIDED, MR. QUINN, OF SEPTEMBER 1ST WITH THE

10  OPENING EXPERT REPORTS, SEPTEMBER 29TH WITH THE REBUTTAL, AND

11  THE CLOSE OF EXPERT DISCOVERY OCTOBER 27TH, THAT WOULD BE THE

12  CLOSE OF THE DEPOSITIONS ON THOSE REPORTS.  I THINK THAT MAKES

13  SENSE.

14          MR. PETERS:  YOUR HONOR, CAN WE HAVE 60 DAYS TO

15  RESPOND TO THEIR REPORTS SO THAT THE REBUTTAL EXPERT REPORTS

16  ARE 30 DAYS LATER?  THEY HAVE HAD YEARS TO WORK ON THEIR

17  REPORTS, THEY ARE GOING TO SERVE THEM ON US, WE WON'T --

18          THE COURT:  BUT I'M NOT GOING TO CHANGE THE SUMMARY

19  JUDGEMENT DATE BECAUSE THEN THE TRIAL DATE GOES.

20      I MEAN, MR. QUINN HAS UNDERSTOOD IN HIS PROPOSAL HOW EACH

21  OF THESE PUZZLE PIECES FITS TOGETHER AND HE'S PROVIDED A RAMP

22  THAT WOULD ALLOW THE EXPERT DISCOVERY TO CONCLUDE BEFORE THE

23  SUMMARY JUDGEMENT MOTION IS WRITTEN, A LITTLE BIT OVERLAPPING,

24  I WOULD SAY, BUT IT'S -- A PROPER SCHEDULE.

25          MR. PETERS:  28 DAYS TO RESPOND TO THESE ANTITRUST

1    EXPERTS' LENGTHY REPORTS, IS REALLY VERY LITTLE TIME.  AND

2    THAT'S WHAT HE'S PROPOSED.  AND I'M ASKING FOR AN ADDITIONAL

3    30 DAYS TO RESPOND.

4         OUR EXPERTS ARE TELLING US THAT GIVEN THE LIKELY LENGTH OF

5    THEIR REPORTS AND THE COMPLEXITY OF THE REPORTS, THAT 28 DAYS

6    JUST ISN'T ENOUGH.  SO WITH YOUR SCHEDULE, WE HAVE LONGER

7    BETWEEN THE OPENING AND EXPERT REBUTTAL REPORTS.

8         THE COURT:  I UNDERSTAND.  IT'S NOT UNREASONABLE, BUT

9    THEN YOU'RE TELLING ME YOU ARE WILLING TO FILE YOUR SUMMARY

10   JUDGEMENT MOTION BEFORE THE EXPERT DISCOVERY IS CONCLUDED.

11   BECAUSE I CAN'T MOVE THAT DATE.  I'M NOT WILLING TO BECAUSE

12   THEN THE TRIAL DATE MOVES.

13        MR. PETERS:  WELL, I WOULD LIKE TO SEE IF WE COULD --

14   I WOULD LIKE TO SEE IF THERE'S A WAY TO GIVE US MORE TIME.

15        THE COURT:  WE JUST WON'T HAVE CONCLUDED EXPERT

16   DISCOVERY BEFORE YOU FILED YOUR BRIEF FOR SUMMARY JUDGEMENT.

17   AND THAT DOESN'T MATTER TO ME, QUITE FRANKLY.

18        MR. PETERS:  WELL, I THINK WE WOULD NEED TO DEPOSE

19   THEIR EXPERT, BUT I GUESS IF WE CAN GET AN AGREEMENT THAT WE

20   CAN -- I WILL AGREE TO THAT, YOUR HONOR, AND THEN TRY TO DEPOSE

21   THEIR EXPERT BEFORE WE HAVE TO FILE OUR SUMMARY JUDGEMENT

22   BRIEF.  BUT HAVING AN EXTRA 30 DAYS FOR THE REBUTTAL EXPERT

23   REPORTS IS REALLY CRITICAL TO OUR EXPERTS.

24        THE COURT:  MR. QUINN, IF THE SUMMARY JUDGEMENT

25   BRIEFING DATES ARE MAINTAINED, WHICH ALLOWS THE TRIAL DATE TO

```
1    BE MAINTAINED, DO YOU OBJECT TO GIVING THE TOUR AN EXTRA

2    30 DAYS TO RESPOND TO PROVIDE REBUTTAL REPORTS?  IT WOULD GIVE

3    YOU THE SAME.

4           MR. QUINN:  AND IF THE OTHER DATES DON'T CHANGE,

5    YOUR HONOR, WE WOULDN'T HAVE A PROBLEM WITH THAT.

6           THE COURT:  OKAY.

7        SO WE WILL THEN MAKE THAT OCTOBER 29TH.  AND THEN THE

8    CLOSE OF EXPERT DISCOVERY WOULD BE NOVEMBER, LET'S SEE,

9    NOVEMBER 29TH.

10          MR. BRASS:  YOUR HONOR?

11          THE COURT:  YES.

12          MR. BRASS:  I APOLOGIZE, BUT IS THERE ANY WAY TO DO A

13   COMPROMISE OF TWO WEEKS?  I APOLOGIZE FOR UNDERMINING, A

14   COMPROMISE, THAT WOULD ALLOW US TO ACTUALLY GET THE DEPOSITIONS

15   DONE.  OTHERWISE WE ARE NOT COMPLETING DEPOSITION DISCOVERY

16   BEFORE OUR MOTION IS FILED, AND I DON'T THINK THAT WOULD BE

17   INTENDED.

18          THE COURT:  YOU HAVE A VERY TIGHT SCHEDULE FOR YOUR

19   SUMMARY JUDGEMENT BRIEFING.

20          MS. BRASS:  WE DO, INDEED.  BUT IF WE GAVE THEM TWO

21   EXTRA WEEKS ON REBUTTAL REPORTS, WE COULD KEEP THE OCTOBER 27TH

22   DEADLINE AND WE WOULD ALL JUST HAVE TWO WEEKS TO PREPARE AND

23   TAKE THE DEPOSITIONS.

24          THE COURT:  IT WOULDN'T MAINTAIN -- OH, I SEE WHAT

25   YOU ARE SAYING.
```

```
1              MR. PETERS:  WE REALLY NEED THE 60 DAYS, BUT IF
2       MS. BRASS WANTS THAT, WHY DON'T THEY JUST SERVE THEIR EXPERT
3       REPORTS TWO WEEKS EARLIER?
4              MS. BRASS:  ALL THE ORIGINAL CASE SCHEDULES WE AGREED
5       TO, THIS WAS THE EXPERT SCHEDULE.  YOUR HONOR, WE HAD 30 DAYS
6       SINCE DAY ONE.
7              MR. QUINN:  AND I'M REMINDED, YOUR HONOR, THAT THERE
8       WERE EXPERT REPORTS AT THE TIME OF THE TEMPORARY RESTRAINING
9       ORDER PROCEEDING.
10             THE COURT:  THERE WERE.
11             MR. QUINN:  AND THEY RESPONDED TO A 70-PAGE EXPERT
12      REPORT IN A MUCH SHORTER PERIOD OF TIME.
13             THE COURT:  SUCCESSFULLY.
14             MR. QUINN:  SUCCESSFULLY.
15          NO, I WOULD JOIN.  LOOK, IF WE CAN WORK OUT SOMETHING LESS
16      THAN, MAYBE TWO WEEKS, THAT WOULD GIVE EVERYBODY, I THINK,
17      ADEQUATE TIME AND WOULD FIT INTO THE SCHEDULE BETTER.
18             THE COURT:  ALL RIGHT.
19          I WILL EXTEND IT TO OCTOBER 20TH FOR THE REBUTTAL.  AND I
20      WILL THEN REQUIRE THE CLOSE OF EXPERT DISCOVERY TO BE
21      NOVEMBER 1ST.  LINE UP THOSE EXPERTS FOR DEPOSITIONS.
22             MR. PETERS:  YOUR HONOR --
23             THE COURT:  AND THEN YOU HAVE A WEEK TO PULL THOSE
24      TRANSCRIPTS.
25             MR. PETERS:  -- HOW WAS THE COURT PLANNING TO DECIDE
```

1      WHETHER THE SCHEDULE IS GOING TO HOLD, IN TERMS OF THE SUMMARY

2      JUDGEMENT --

3              THE COURT:  WE WILL HAVE A FURTHER CMC IN AUGUST

4      BEFORE THE OPENING REPORT WOULD BE DUE.  IT MAY BE WRITTEN, BUT

5      IT'S THE DISCLOSURE OF IT THAT I KNOW YOU ARE CONCERNED ABOUT.

6          WE WILL GET BACK TOGETHER THE LAST WEEK IN AUGUST, IN FACT

7      I WILL BE SEEING YOU IN -- ON THE -- ON, WAS IT AUGUST 24TH, I

8      THINK IS THE DATE FOR THE MOTION TO DISMISS, ISN'T THAT RIGHT?

9              MS. HAVLIN:  YES, YOUR HONOR.

10             MR. PETERS:  I THINK AUGUST 22ND WAS THE NOTICE DATE.

11             THE COURT:  OKAY.  WHATEVER THAT THURSDAY IS.

12             THE CLERK:  AUGUST 24TH, YOUR HONOR.

13             THE COURT:  24TH.

14             MR. PETERS:  AND WHAT ABOUT PIF'S EXPERTS,

15     YOUR HONOR, WILL THEY HAVE TO SUBMIT REPORTS THEN ALSO?

16             THE COURT:  WHEN I FINISH WITH YOU, I WAS GOING TO

17     THEN TURN TO MS. HAVLIN.  WE HAVE COVERED A LOT HERE AND I DO

18     WANT TO HEAR FROM HER, IF SHE WANTS TO SAY ANYTHING.

19         YOU KNOW, WHEN YOU CONTEST PERSONAL JURISDICTION, YOU

20     MIGHT CHOOSE NOT TO WEIGH IN AT ALL AND JUST LISTEN.  I DON'T

21     KNOW WHAT HER VIEW IS.  SO LET ME TURN TO MS. HAVLIN.

22             MS. HAVLIN:  SO THANK YOU, YOUR HONOR.

23         AS YOUR HONOR MAY IMAGINE, THERE ARE A NUMBER OF THINGS

24     THAT MR. PETERS HAVE SAID THAT WE, IN FACT, DISAGREE WITH QUITE

25     STRONGLY, BUT NONE OF THEM BEAR ON THE ISSUES THAT HAVE BEEN

1    ROLLING TOWARDS RESOLUTION AMONG THE OTHER PARTIES, SO I'M

2    CONTENT TO HOLD MY FIRE FOR THE MOMENT, WHICH I EXPECT TO BE

3    BEST FOR ALL.

4              THE COURT:  OKAY.

5         SO BECAUSE OF THE, IT'S A STAY OF DISCOVERY, I HAVE ONE

6    QUESTION FOR YOU, MS. HAVLIN.  I WAS CONCERNED THAT MR. PETERS

7    REPRESENTED IN HIS PAPERS THAT PIF HAS NOT ACKNOWLEDGED ITS

8    OBLIGATION TO PRESERVE DOCUMENTS PENDING THE STAY.  AND I NEED

9    TO KNOW WHETHER PIF IS ACCEPTING THAT OBLIGATION AND IS

10   PRESERVING EVIDENCE.

11             MS. HAVLIN:  YOUR HONOR, PIF ACCEPTS THAT OBLIGATION.

12   NOTICES HAVE BEEN SENT OUT, I'M HAPPY TO CONFIRM THAT TO YOU.

13             THE COURT:  GOOD.  THAT'S IMPORTANT.  THANK YOU.

14             MS. HAVLIN:  OF COURSE.

15             THE COURT:  ALL RIGHT.  I THINK WE ACTUALLY HAVE A

16   SCHEDULE THAT'S GOING TO WORK HERE, AND I THINK I'M GOING TO

17   HAVE THE PARTIES SUBMIT TO ME THIS REVISED SCHEDULE.  BUT FROM

18   WHAT I -- MY NOTES SHOW, THE DISCOVERY CUTOFF DATE, FACT

19   DISCOVERY WILL REMAIN JUNE 30TH OF 2023, WITH THE UNDERSTANDING

20   THAT CERTAIN DEPOSITIONS WILL ACTUALLY BE CONDUCTED IN JULY AND

21   AUGUST AT THE CONVENIENCE OF THE WITNESSES AND COUNSEL.

22        THE DEADLINE FOR PROPOUNDING THAT DISCOVERY IS GOING TO BE

23   MOVED TO ADDRESS THE ISSUE IN THE MOTIONS TO QUASH.  MR. QUINN

24   SAID HE WOULD -- HE KNOWS EXACTLY WHAT HE NEEDS FOR THAT.

25        I WILL REQUIRE OPENING EXPERT REPORTS ON SEPTEMBER 1ST OF

1    2023, REBUTTAL REPORTS ON OCTOBER 20TH OF 2023, CLOSE OF EXPERT

2    DISCOVERY ON NOVEMBER 1ST OF 2023, AND THEN MAINTAIN THE

3    BRIEFING SCHEDULE ON SUMMARY JUDGEMENT, WITH THE HEARING DATE

4    THAT I HAD ASSIGNED ON JANUARY 11TH.  AND THEN WE HAVE THE

5    DATES LEADING UP TO TRIAL THAT ARE STANDARD INTERVALS FOR

6    TRIAL, SET FOR MAY 17TH OF 2024.

7          WE WILL SET A FURTHER CMC, I SUPPOSE WE CAN JUST DO IT ON

8    AUGUST 24TH WHEN YOU ARE GOING TO BE HERE FOR THAT MOTION

9    ANYWAY, DOES THAT MAKE SENSE?

10          MR. PETERS:  THAT'S FINE, YOUR HONOR.

11          I GUESS IF THAT MOTION IS -- THE MOTION TO DISMISS IS

12    DENIED, THERE WILL BE AN APPEAL TO THE NINTH CIRCUIT FROM THAT.

13          THE COURT:  THAT'S BEEN PROMISED, BUT WHO KNOWS WHAT

14    WILL HAPPEN.

15          AT THE LAST HEARING, MS. LAMM HAD INDICATED THAT THERE

16    WOULD BE DIFFERENT ISSUES RAISED OR RAISED IN A DIFFERENT WAY

17    IN THE MOTION, AND I SET THIS HEARING SO THAT I WOULD HAVE THE

18    OPPORTUNITY TO TAKE A PRELIMINARY PEEK AT THE MOTION.

19          SHE CERTAINLY DELIVERED ON THAT IN BRIEFING ADDITIONAL

20    ISSUES AND ADDRESSING SOME OF THE ISSUES GEARED TOWARD THE

21    CROSS-COMPLAINT OR THE COUNTERCLAIM ITSELF, AS OPPOSED TO THE

22    SUBPOENAS FOR THIRD PARTY, WHICH HAD BEEN ADDRESSED PREVIOUSLY.

23    WE CERTAINLY HAVE THE ISSUE OF SAUDI LAW AND SOME OTHER TYPICAL

24    12(B)(6) ISSUES.

25          SO THAT DOES -- I'M NOT GOING TO JUST CUT AND PASTE MY

1    LAST ORDER, AND NOR DID I EXPECT THAT I WOULD, BUT CERTAINLY

2    THERE ARE ADDITIONAL ISSUES.

3        AND MR. PETERS, I'M SURE YOU AND YOUR TEAM ARE ALREADY

4    WORKING ON SOME OF THESE ISSUES, THEY ARE -- CHOICE OF LAW IS

5    VERY COMPLEX AND I WILL RELY ON BOTH SIDES TO GIVE ME VERY

6    THOROUGH, THOUGHTFUL BRIEFING ON CHOICE OF LAW.  AND A LOT OF

7    THE LEGAL ISSUES ON THE PERSONAL JURISDICTION AND FSIA ARE THE

8    SAME BUT WE ARE NOW GEARING IT TO DISTINCTLY DIFFERENT CLAIMS

9    AS OPPOSED THIS THIRD PARTY SUBPOENAS, AND THAT MAY BE MORE

10   NUANCED RATHER THAN DISTINCTLY DIFFERENT, BUT CERTAINLY NEEDS

11   TO BE ADDRESSED.  SO I WILL LOOK FORWARD TO THAT BRIEFING.

12       I THINK WE MAY HAVE COVERED EVERYTHING.  IT WOULD BE MY

13   INTENTION TO HAVE YOU APPEAR PERSONALLY IN THE COURTROOM ON

14   AUGUST 24TH.  I THINK IT'S AN IMPORTANT MOTION.  I THINK IT'S

15   TIME TO GET BACK INTO THE COURTROOM.  IT WOULD BE LOVELY TO SEE

16   YOU ALL, PLENTY OF TIME TO BUY AN AIRPLANE TICKET, SO I THINK

17   YOU SHOULD PLAN ON THAT.

18       I DON'T THINK I HAVE ANY OTHER ISSUES I NEED TO COVER.

19   MR. QUINN, WAS THERE ANYTHING ELSE YOU WERE HOPING I WOULD

20   ADDRESS THIS AFTERNOON?

21           MR. QUINN:  NO, I DON'T THINK SO, YOUR HONOR.

22   THANK YOU.

23           THE COURT:  OKAY.  MR. PETERS, ANYTHING ELSE YOU

24   NEEDED?

25           MR. PETERS:  NO, YOUR HONOR.

1    THE COURT:  MS. HAVLIN, ANYTHING ELSE?

2    MS. HAVLIN:  NO, YOUR HONOR.  THANK YOU.

3    THE COURT:  ALL RIGHT.

4    SO MR. QUINN, I'M GOING TO ASK YOU TO TAKE THE LABORING

5    ORE ON THIS ORDER THAT IS GOING TO CREATE THE CASE SCHEDULE,

6    AND HOPEFULLY WHEN YOU WRITE IT, MR. PETERS WILL SAY I DON'T

7    LIKE IT, BUT THAT'S WHAT SHE SAID, AND HE WILL APPROVE IT AS TO

8    FORM SO THAT YOU CAN SUBMIT IT TO ME.

9    AND IT MAY BE THAT YOU WANT THAT CERTAIN PIECE THAT DEALS

10   WITH THE MOTIONS TO QUASH TO COME SEPARATELY BECAUSE YOU WANT

11   IT QUICKLY, AND I'M MORE THAN GLAD TO DO THAT.  I WILL LEAVE

12   THAT IN YOUR HANDS.  IT SEEMS LIKE THAT WOULD BE DIFFICULT, BUT

13   I WANT YOU TO BE COMFORTABLE THAT YOU ARE GETTING WHAT YOU NEED

14   SO THAT THESE OTHER JUDGES FEEL COMFORTABLE THAT THEY ARE

15   WORKING WITHIN MY CASE SCHEDULE.

16   MR. QUINN:  THANK YOU, YOUR HONOR.  THAT ONE WE

17   PROBABLY WILL SUBMIT SEPARATELY RIGHT AWAY.

18   THE COURT:  OKAY.  THAT WOULD BE GREAT.

19   ALL RIGHT.  I THINK -- AND WE'VE GOT A NEW DATE.  WE ARE

20   GOING TO -- ON AUGUST 24TH FOR THE CMC, THERE IS SOME

21   POSSIBILITY THAT I MIGHT MOVE THE HEARING TO THE AFTERNOON SO

22   THAT YOU ARE NOT COMPETING WITH ALL THE REST OF MY MOTIONS.

23   I'M GOING TO WAIT AND SEE ON THAT, IT WOULD JUST BE A COUPLE OF

24   HOURS SHIFT, AND I WILL LET YOU KNOW WELL IN ADVANCE, BUT JUST

25   IN LOOKING AT MY CALENDAR, I'M NOT SURE HOW BUSY THAT'S GOING

1      TO BE, SO I WILL TAKE A LOOK AT THAT.

2          ALL RIGHT.  THEN I THINK WE ARE DONE.  THANK YOU ALL.  I

3      WILL LOOK FORWARD TO SEEING YOU IN AUGUST AND TO GETTING THESE

4      DRAFTS FOR THE CASE SCHEDULE SO THAT WE CAN KEEP MOVING.  I

5      KNOW YOU ARE ALL WORKING HARD ON THIS.

6          ALL RIGHT.  THANK YOU ALL.

7              MR. QUINN:  THANK YOU, YOUR HONOR.

8              MR. PETERS:  THANK YOU, YOUR HONOR.

9          (THE PROCEEDINGS WERE CONCLUDED AT 2:05 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8             I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 5/23/23