KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN M. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:     212 735 3000
Facsimile:     212 735 2000

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIV GOLF, INC., <br><br> Plaintiff, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | Case No. 5:22-CV-04486-BLF <br><br> **PGA TOUR, INC.'S RENEWED STATEMENT IN SUPPORT OF SEALING REGARDING PLAINTIFFS' MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED AT DKT. 421** <br><br> Judge:        Hon. Beth Labson Freeman <br> Date Filed:   August 3, 2022 <br> Trial Date:   May 17, 2024 |
| PGA TOUR, INC., <br><br> Counter-Claimant, <br><br> v. <br><br> LIV GOLF, INC., THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA; and YASIR OTHMAN AL-RUMAYYAN, <br><br> Counter-Defendants. | |

## I.  INTRODUCTION

Pursuant to Civil Local Rules 79-5(f)(3) and 79-5(c)(1) and the Protective Order entered by this Court, Dkt. 111, Defendant and Counterclaimant PGA TOUR, Inc. (the "TOUR") provides the following renewed statement of the applicable legal standard and reasons for keeping under seal portions of three documents that Plaintiff and Counter-Defendant LIV Golf, Inc. ("LIV") provisionally filed under seal in connection with Plaintiffs' Opposition to the TOUR's Alternative Cross-Motion for Stay of Discovery (the "Opposition") at Dkt. 423.

On May 5, 2023, LIV filed an Administrative Motion to Consider Whether Another Party's Material Should be Sealed regarding the provisionally sealed memorandum and points of authorities and Declaration of Dominic Surprenant ("Surprenant Declaration") and twelve accompanying exhibits filed in connection with LIV's Opposition.  Dkt. 423. On May 11, 2023, the TOUR filed a statement supporting sealing regarding LIV's Administrative Motion at Dkt. 423, seeking to seal limited redacted portions of the memorandum and points of authorities, as well as all twelve exhibits in their entirety. Dkt. 429. In a May 22, 2023 order, the Court granted the TOUR's motion to seal with respect the memorandum and points of authorities, the declaration, and nine of the twelve exhibits, but denied without prejudice the TOUR's request to seal Exhibits F, G, and L in their entirety. Dkt. 440. In accordance with the Court's order at Dkt. 440, the TOUR now renews its statement in support of sealing Exhibits F, G, and L, now seeking to seal only the portions of those documents that reflect confidential TOUR information or sensitive communications with third parties. The disclosure of this information could result in competitive harm to the TOUR and the privacy interests of non-parties. Specifically, the TOUR seeks to seal the following information:

1

PGA TOUR, INC.'S RENEWED STATEMENT IN SUPPORT OF SEALING REGARDING PLAINTIFFS'
MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED AT DKT. 421
Case No. 5:22-CV-04486-BLF

| ECF | Document | Text to be Sealed | Basis for Sealing |
|---|---|---|---|
| 421-4 | Exhibit F | Entirety | This is a letter from a non-party to the TOUR that describes in detail the TOUR's communication practices and efforts to comply with a non-party inquiry. The non-party's inquiry and the content in Exhibit F is non-public and confidential. Disclosure of this document would reveal the internal investigative priorities of the third-party and the business strategy of the TOUR, as well as injure the privacy rights of agents of the non-party. Moreover, public disclosure of the contents of Exhibit F would reveal details regarding the TOUR's communication strategy internally, which the TOUR has kept in confidence to protect its executives' competitively sensitive and highly confidential information from exploitation, and potentially expose the TOUR and its employees to an increased risk of potential phone hacking and cyber intrusion. *See* Shetty Decl. ¶ 3-4. |
| 421-5 | Exhibit G | Highlighted portions at lines:<br>• 9:1-5<br>• 9:8<br>• 10:9-11<br>• 10:14-15<br>• 10:18-21<br>• 10:23<br>• 70:1-3<br>• 70:6<br>• 70:8-9<br>• 70:11-14<br>• 70:16-18<br>• 71:9-12<br>• 71:15-22<br>• 71:24 -72:10<br>• 72:14-20<br>• 78:1-4<br>• 78:11-80:25<br>• 88:8-89:23 | This is an excerpt of a non-final transcript of the deposition of a TOUR employee. The transcript references communications with non-party consultants who had an expectation of privacy and confidentiality in their communications with TOUR employees, as well as the TOUR's communications with government agencies and its internal board. Disclosure of the highlighted portions testimony would cause competitive harm to the TOUR and reveal the substance of the TOUR's confidential communications with the non-parties. *See* Shetty Decl. ¶ 5. |

2

PGA TOUR, INC.'S RENEWED STATEMENT IN SUPPORT OF SEALING REGARDING PLAINTIFFS' MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED AT DKT. 421
Case No. 5:22-CV-04486-BLF

| ECF | Document | Text to be Sealed | Basis for Sealing |
|---|---|---|---|
| 421-8 | Exhibit L | Highlighted portions at bates range PGA_TOUR0516771-PGA_TOUR0516788 | This is a series of communications between TOUR employees and their external consultants. The highlighted portions of these communications contain competitively sensitive communications between TOUR executives and a non-party consultant retained by the TOUR which would reveal. The highlighted portions also contain the full names and cell phone numbers of TOUR employees and several non-parties. Unsealing of this communication will result in competitive harm to the TOUR, as well as damage to the TOUR's business relationships. *See* Shetty Decl. ¶ 6. |

## II.    ARGUMENT

Where a party seeks to restrict access to discovery materials attached to non-dispositive motions, the less stringent "good cause" standard applies to requests for sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1105 (9th Cir. 2016) (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006)). Courts draw a distinction between dispositive and non-dispositive motions because information and records referenced in connection with a non-dispositive motion are often "unrelated or only tangentially related, to the underlying cause of action," and thus the public interest in accessing the information is low. *Kamakana*, 447 F.3d at 1179-80.  Thus, "when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted[.]" *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c) (providing that if "good cause" is shown in discovery, a district court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

Exhibit F to the Surprenant Declaration qualifies for sealing under the "good cause" standard—if it is not stricken in its entirety. Exhibit F is a letter to the TOUR regarding a non-public, ongoing inquiry that describes in detail the TOUR's communication practices and efforts

3

to comply with the inquiry. It has nothing to do with the underlying motion, but LIV has attempted to inject it into the public record for the improper purpose of publicizing details of this confidential inquiry. Notably, LIV provided only a partial and misleading record—omitting the TOUR's response to the letter—thereby hoping to create a deceptive public record about the TOUR's compliance with the inquiry. Moreover, LIV has actively concealed its own involvement with the inquiry. Discovery has revealed that it was *LIV* that complained to the non-party and urged the non-party to launch the inquiry, and that LIV has communicated over *400 times* with the non-party. But LIV has designated all those communications as Confidential or Highly Confidential under the Protective Order, thereby shielding them from public view. LIV should not be permitted to selectively publicize aspects of the investigation by attaching irrelevant documents to pleadings in this action. Thus, the Court should strike Exhibit F to the Surprenant Declaration. *See* Fed. R. Civ. P. 12(f) (the Court may act "on its own" to strike "any redundant, immaterial, impertinent, or scandalous matter").

At the very least, the Court should seal Exhibit F in its entirety. Matters related to inquiries like these are generally kept confidential, a requirement which was imposed "to safeguard the rights of individuals under investigation and to protect witnesses from retaliation." *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 571 (1983); *see* 15 U.S.C. § 1313(c); *In re Air Passenger Computer Rsrv. Sys. Antitrust Litig.*, 116 F.R.D. 390, 391 (C.D. Cal. 1986) (inquiries of this nature "fall somewhere in between ordinary civil discovery and grand jury investigations[.]"). This is similar to the reasons the Supreme Court has identified for maintaining the secrecy of grand jury proceedings. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (1989) ("The Supreme Court has acknowledged that one of the reasons for maintaining the secrecy of grand jury proceedings is to 'assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.'" (citing *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979))); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6 (1958) (grand jury proceedings should remain confidential to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation).

The public disclosure of Exhibit F would reveal details regarding the TOUR's communication platforms, internal and external communication strategy, and potentially expose TOUR executives to an increased risk of potential phone hacking and cyber intrusion. *See* Shetty Decl. at ¶ 4. Indeed, one of the reasons the TOUR sought to use the messaging platform described in Exhibit F for certain communications was due to concerns related to potential hacking of TOUR communications in connection with the launch of LIV Golf. *See id.* The TOUR wanted a more secure and reliable messaging platform while its employees were traveling internationally, communicating with individuals outside of the United States and, most concerning, due to well-publicized reports of iPhone hacking allegedly perpetrated by the government of Saudi Arabia using the "Pegasus" spyware developed by Israeli company NSO Group, including hacks targeting Amazon founder Jeff Bezos and journalists critical of the Saudi Arabian government.[1] *See id.* Given such reports and the fact that the Public Investment Fund ("PIF"), the Saudi sovereign wealth fund, is the sole financial backer of LIV Golf, the TOUR is understandably concerned that its executives' competitively sensitive and highly confidential communications could be targeted by external sources for competitive gain. For this reason, public disclosure of the information in Exhibit F concerning the TOUR's communication strategy internally and with external consultants would damage the TOUR. *See, e.g. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2018 WL 9651897, at *3 (N.D. Cal. Jan. 3, 2018) (finding good cause to seal information that could be used by cyber-hackers to attempt to gain access to plaintiff's systems); *see also In re Google Inc. Gmail Litig.*, 2013 WL 5366963, at *3 (N.D. Cal.

---

[1] *See, e.g.*, Marc Fisher, *U.N. Report: Saudi Crown Prince Was Involved in Alleged Hacking of Bezos Phone*, Wash. Post, Jan. 22, 2020, https://www.washingtonpost.com/politics/un-ties-alleged-phone-hacking-to-posts-coverage-of-saudi-arabia/2020/01/22/a0bc63ba-3d1f-11ea-b90d-5652806c3b3a_story.html; Miriam Berger, *Report Accuses Saudi Arabia, UAE of Probably Hacking Phones of Over Three Dozen Journalists in London, Qatar*, Wash. Post, Dec. 20, 2020, https://www.washingtonpost.com/world/2020/12/20/saudi-arabia-uae-behind-phone-hacks-more-than-three-dozen-journalists-london-qatar-report-finds/.

Sept. 25, 2013) (finding compelling reasons to seal information that, if made public, could lead to a breach in plaintiff's security systems, particularly where the material was "unlikely to be critical to the substantive issue of liability."); *Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023) ("[C]ompelling reasons exist to keep personal information confidential to protect an individual's privacy interest and to prevent exposure to harm or identity theft.").

Moreover, because this non-party inquiry is ongoing, disclosure of this material to the public could easily "'become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, [or] circulate libelous statements,"—purposes which meet the more stringent compelling reasons standard to justify sealing this document in its entirety. *Kamakana*, 447 F.3d at 1179 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). Disclosing this document to the public would reveal the internal investigative priorities of the non-party and the business strategy of the TOUR, as well as injure the privacy rights of agents of the third-party. *See* Shetty Decl. at ¶ 3; *In re Incretin-Based Therapies Prod. Liab. Litig.*, 2021 WL 873290, at *2 (S.D. Cal. Mar. 9, 2021) (sealing internal "confidential regulatory strategies and communications," including confidential FDA communications, in case involving "avid competitors"). Accordingly, there is good cause to seal Exhibit F in its entirety.

Exhibit G to the Surprenant Declaration is an excerpt of a non-final transcript of a TOUR employee. The TOUR has identified only those portions of the non-final transcript which contain commercially sensitive information about the TOUR's internal workings, including media strategy, the TOUR's relationships with its consultants, and internal communication decisions. Allowing public access to this confidential information could harm the TOUR's competitive standing and business relationships by revealing sensitive details about the way the TOUR operates including its media strategy and work with non-party consultants. *See Hetland v. LendingTree, LLC*, 2021 WL 2313386, at *1 (N.D. Cal. May 3, 2021) (documents "contain and reflect confidential business information that offers insight into [sealing party's] business model and strategy, and therefore satisfy the 'compelling reasons' standard).

Exhibit L to the Surprenant Declaration are a series of communications between the

TOUR and the employees of a non-party consultant contracted by the TOUR. The highlighted portions communications contain full names and cell phone numbers of several non-parties, which courts have found good cause to seal. *See Slot Speakers Techs., Inc. v. Apple, Inc.*, 2017 WL 386345, at *4 (N.D. Cal. Jan. 27, 2017) (finding good cause to seal the portions of documents that refer to phone numbers). The portions of the communications the TOUR seeks to seal contain sensitive information regarding the consultant's work for the TOUR that, if revealed, would reveal the TOUR and the consultant's strategy as to competitive media issues, including the consultant's internal knowledge regarding media strategy and contacts and the TOUR's public relations strategy. *See* Shetty Decl. at ¶ 6. The disclosure of this information would cause competitive harm to the TOUR and to the non-party consultant by revealing the confidential processes and strategies of both entities. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1162 (N.D. Cal. 2021) (noting that documents that can harm a parties' competitive standing include "customer information, internal reports and other such materials").

For the foregoing reasons, the TOUR requests that the Court seal the entirety of Exhibit F and the highlighted portions of Exhibits G and L to the Surprenant Declaration. If the Court deems the TOUR's bases for sealing Exhibit F in its entirety insufficient, the TOUR respectfully requests that it be permitted to file a further statement and declaration supporting filing portions of Exhibit F under seal prior to making that exhibit public.

Dated: June 5, 2023                                            KEKER, VAN NEST & PETERS LLP

                                                        By:    */s/ Nicholas S. Goldberg*
                                                               ELLIOT R. PETERS
                                                               DAVID SILBERT
                                                               R. ADAM LAURIDSEN
                                                               NICHOLAS S. GOLDBERG
                                                               SOPHIE HOOD

7

PGA TOUR, INC.'S RENEWED STATEMENT IN SUPPORT OF SEALING REGARDING PLAINTIFFS' MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED AT DKT. 421
Case No. 5:22-CV-04486-BLF

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ANTHONY J. DREYER
KAREN M. LENT
MATTHEW M. MARTINO

Attorneys for Defendant and Counter-Claimant
PGA TOUR, INC.

8

PGA TOUR, INC.'S RENEWED STATEMENT IN SUPPORT OF SEALING REGARDING PLAINTIFFS' MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED AT DKT. 421
Case No. 5:22-CV-04486-BLF