Tanya Forsheit (CA State Bar No. 192472)
Dana R. Green (*pro hac vice pending*)
THE NEW YORK TIMES COMPANY
Legal Department
620 8th Avenue, 13th Floor
New York, NY 10018
Telephone:   (212) 556-1234
Facsimile:   (212) 556-4634
Email: tanya.forsheit@nytimes.com
       dana.green@nytimes.com

Attorneys for Non-Party Media Entity
THE NEW YORK TIMES COMPANY

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LIV GOLF INC., <br><br> Plaintiff, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant and Counter-Plaintiff, <br><br> v. <br><br> LIV GOLF INC., PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, and YASIR OTHMAN AL-RUMAYYAN <br><br> Counter-Defendants | Case No. 5:22-cv-04486-BLF <br><br> **NOTICE OF MOTION AND MOTION OF NON-PARTY MEDIA ENTITY THE NEW YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND FOR AN ORDER UNSEALING COURT RECORDS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: July 28, 2023 <br> Time: 9:00 a.m. <br> Department: Courtroom 3 – 5th Floor |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2023, at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 3 of this Court, located at 280 South 1st Street, San Jose, CA 95113, non-party media entity The New York Times Company ("The Times") will and hereby does move this Court for an order permitting The Times to intervene in the above action for the limited purpose of enforcing the public's right of access to court records, and for an order unsealing the judicial records in *LIV Golf Inc. v. PGA Tour, Inc.*, Case No. 5:22-cv-04486 (BLF).

This Motion is made on the following grounds:

1. It is well established that the press has standing to assert the public's – and its own – right of access to sealed court records. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Phoenix Newspapers, Inc. v. United States District Court*, 156 F.3d 940, 949-50 (9th Cir. 1998) (trial court erred in failing to give press prompt hearing to challenge sealing order).

2. Under the First Amendment and the federal common law, the press and the public have a presumptive right of access to judicial records. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*").

3. There is not a countervailing interest sufficient to overcome the public's First Amendment and common law rights of access here and the extent of the sealing of records is not "narrowly tailored" to serve such interests.

This Motion is based on the attached Memorandum of Points and Authorities, all pleadings, records and papers on file in this action, all matters of which this Court may take judicial notice, and such further evidence and argument as may be presented during the hearing on this Motion.

For the reasons set forth, the Times respectfully requests this Court to grant its Motion to intervene and to unseal the court records in this matter in their entirety.

DATED: June 16, 2023

TANYA FORSHEIT
DANA R. GREEN

By: /s/ Tanya Forseheit
      Tanya Forsheit

Attorneys for Non-Party Media Entity
THE NEW YORK TIMES COMPANY

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................... 1

III.    THE TIMES SHOULD BE PERMITTED TO INTERVENE FOR THE PURPOSE OF MOVING TO UNSEAL RECORDS ............................................. 2

IV.    THE PUBLIC HAS A RIGHT OF ACCESS TO THE JUDICIAL RECORDS REQUESTED HERE ................................................................................................ 3

    A.    The Common Law Right of Access Applies to the Judicial Records at Issue ............................................................................................................. 3

    B.    The First Amendment Right of Access Applies to the Judicial Records at Issue ............................................................................................................. 4

V.    THE PARTIES' ASSERTION OF "COMPETITIVE HARM" DOES NOT OUTWEIGH THE PUBLIC INTEREST AND RIGHT OF ACCESS HERE .... 5

    A.    There Is a Substantial Public Interest in the Sealed Judicial Records ......... 5

    B.    Competitive Harm Does not Outweigh the Substantial Public Interest in the Sealed Judicial Records ........................................................................ 7

VI.    CONCLUSION ......................................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

*Aviation Ins. Servs. of Nev., Inc. v. Dewald*, 2011 U.S. Dist. LEXIS 41469
  (D. Nev. Apr. 5, 2011) ................................................................................................. 8

*Bernstein Litowitz Berger & Grossmann LLP*, 2016 U.S. Dist. LEXIS 35385
  (S.D.N.Y. Mar. 18, 2016).............................................................................................. 5

*Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020) ............................................. 4, 5, 6

*Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016) ............................... 3, 4

*Dawson v. Merck & Co.*, 2021 U.S. Dist. LEXIS 12725 (E.D.N.Y. Jan. 24, 2021)....................... 6

*Does v. Univ. of Montana*, 2012 U.S. Dist. LEXIS 88519 (D. Mont. 2012) ................................ 8

*Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812 (N.D. Cal. June 1, 2020)................ 7

*Feldman v. Sacramento Bd. of Realtors, Inc.*, 119 Cal. App. 3d 739 (1981) ............................... 5

*Finsa Portafolios, S.A. de C.V. v. OpenGate Capital, LLC*, 2021 U.S. Dist. LEXIS 171370
  (C.D. Cal. Sep. 9, 2021) ................................................................................................ 8

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982)............................................. 3

*In re Granick*, 388 F. Supp. 3d 1107 (N.D. Cal. 2019)......................................................... 3

*IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 208510
  (N.D. Cal. Nov. 6, 2020) ................................................................................................ 7

*Kamakana v. City and Cty. Of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ............................. 3, 4, 7

*M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*, 2023 U.S. Dist. LEXIS 41065
  (N.D. Cal. Mar. 10, 2023) ............................................................................................. 8

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ...................................................... 3

*NML Capital Ltd. v. Republic of Arg.*, 2015 U.S. Dist. LEXIS 20722
  (D. Nev. Feb. 19, 2015)................................................................................................ 6

*Ponomarenko v. Shapiro*, 2017 U.S. Dist. LEXIS 133560 (N.D. Cal. Aug. 21, 2017)................ 7

*Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501 (1984) ................................... 6

*Richards v. Centripetal Networks, Inc.*, 2023 U.S. Dist. LEXIS 69502
 (N.D. Cal. Apr. 20, 2023) ..................................................................................................8

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) ...................................................5

*Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV04312-BLF,
 2020 U.S. Dist. LEXIS 46075 (N.D. Cal. Mar. 16, 2020) ................................................5

*United States v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982) .................................................8

*Valdivia v. Brown*, 2013 U.S. Dist. LEXIS 95005 (E.D. Cal. July 3, 2013) ......................8

*Valley Broad. Co. v. U.S. Dist. Court—D. Nev.*, 798 F.2d 1289 (9th Cir. 1986) ...............3

*White v. Chapman*, 2015 U.S. Dist. LEXIS 91433 (E.D. Va. July 14, 2015) ....................6

**Other Authorities**

Alan Blinder, *PGA and LIV Merger*, N.Y. Times (June 6, 2023) .......................................4

Aland Blinder et al., *Mickelson Among Players Interviewed in Antitrust Inquiry Into Pro Golf*,
 N.Y. Times (May 17, 2023) ..............................................................................................4

Eric Lipton, *Trump Praises the PGA and LIV Golf Merger*, N.Y. Times (June 6, 2023) ...............4

John Cassidy, *The Issues with the P.G.A. Tour-LIV Merger Go Well Beyond Golf*, The New
 Yorker (June 13, 2023) .....................................................................................................4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

This Motion seeks the unsealing of judicial records in this matter. It is well-settled that, pursuant to federal common law and the First Amendment, the public enjoys a right of access to judicial records such as those sought here. *See* Section IV, *infra*. Sealing is thus inappropriate unless the parties can present countervailing factors that overcome this right. Here, there is a substantial and legitimate public interest in these proceedings and their outcome, in understanding the important legal issues raised by the parties—which affect the public—and in understanding the litigation conduct of the parties. In contrast, it appears that the parties largely (if not exclusively) relied on "competitive harm" to justify sealing. While competitive harm can, in certain circumstances, justify sealing, the extent of the sealing in this matter and the strength of the public interest calls into question whether the scope of sealing is properly justified. In addition, the proffered justification may now be altered or limited by the passage of time and the parties' recently announced merger. The Times thus respectfully requests that the Court review and appropriately unseal records in this case as required by the Constitution and federal common law.

## II. FACTUAL BACKGROUND

The records at issue were filed with this Court as part of an antitrust and breach of contract case initially filed by a number of professional golfers against the PGA Tour. The PGA Tour is the largest professional golf tour in the world and, until very recently, it was the only tour for elite golfers in the United States. Plaintiffs asserted that the PGA Tour has an unlawful monopsony over elite professional golf and maintained that position by, among other things, using its regulations to exclude rival LIV Golf from the market, colluding with the European Tour to refuse to deal with LIV Golf, and threatening players with suspensions and exclusions to deter them from contracting with LIV Golf.

Defendant PGA Tour, in turn, brought counter-claims against LIV Golf, the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF"), and PIF's governor, Yasir Al-Rumayyan. PIF is Saudi Arabia's sovereign wealth fund and finances LIV Golf. Among the

interested parties that have intervened in this matter is the Kingdom of Saudi Arabia. The PGA Tour asserts that LIV Golf, PIF, and Mr. Al-Rumayyan tortiously interfered with the PGA's contracts with players and induced players to breach those contracts.

Throughout the proceedings, the parties have sought to file materials under seal or with substantial redactions. *See, e.g.*, Dkts. 86, 118, 147, 165, 168, 170, 172, 176, 180, 208, 210, 223, 229, 267-70, 272, 274, 277, 321, 332-33, 346, 352, 374, 377, 379, 383, 385, 397, 401, 406, 414, 419, 421, 422, 427-29, 455. To the extent that the parties' requests for sealing were granted, it appears that the Court did so on the basis that public disclosure would harm a party's competitive standing. *See, e.g.*, Dkt. 279 (Order dated February 21, 2023); Dkt. 372 (Order dated March 30, 2023); Dkt. 405 (Order dated April 10, 2023).

As of the date of this motion, this matter remains in active litigation. However, on June 6, 2023, the PGA Tour and LIV Golf publicly announced that they would merge to create a new entity, combining their assets and radically changing elite golf's governance in the United States. *See, e.g.*, Alan Blinder, *PGA and LIV Merger*, N.Y. Times (June 6, 2023), https://tinyurl.com/bdhxmws8. The proposed merger raises complex questions regarding the influence that Saudi Arabia—and any of LIV Golf's other unidentified investors—will wield over the sport and the ethics and even political impact of the PGA's decision, questions that transcend the sport. *See, e.g.*, John Cassidy, *The Issues with the P.G.A. Tour-LIV Merger Go Well Beyond Golf*, The New Yorker (June 13, 2023), https://tinyurl.com/5xz9v3d8; Eric Lipton, *Trump Praises the PGA and LIV Golf Merger*, N.Y. Times (June 6, 2023), https://tinyurl.com/mv3mwaw8. It also raises obvious anti-competitive and regulatory concerns. *See, e.g.,* Aland Blinder et al., *Mickelson Among Players Interviewed in Antitrust Inquiry Into Pro Golf*, N.Y. Times (May 17, 2023) (reporting on the Department of Justice's ongoing investigation of the PGA Tour for possible violations of competition statutes).

### III. THE TIMES SHOULD BE PERMITTED TO INTERVENE FOR THE PURPOSE OF MOVING TO UNSEAL RECORDS

The Times publishes The New York Times newspaper and nytimes.com. It is well established that the press has standing to challenge the sealing of judicial records. *See*, *e.g.*,

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (newspaper has right to be heard on issue of exclusion from court proceedings); *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). For these reasons, The Times's request to intervene for the limited purpose of requesting unsealing should be granted.

## IV. THE PUBLIC HAS A RIGHT OF ACCESS TO THE JUDICIAL RECORDS REQUESTED HERE

As this court previously has recognized in considering the parties' motions to file under seal, the federal common law and the First Amendment create a presumptive right of public access to judicial documents. Although that right can sometimes be overcome, the burden is on the party seeking sealing to show that it can be justified.

**A.    The Common Law Right of Access Applies to the Judicial Records at Issue**

It is well-settled that the public has a presumptive right of access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Kamakana v. City and Cty. Of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (Judicial "records are public documents almost by definition, and the public is entitled to access by default."). "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (internal quotations and citation omitted).

This presumption of openness "promot[es] the public's understanding of the judicial process and of significant public events." *Valley Broad. Co. v. U.S. Dist. Court—D. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) ("The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." (quotation omitted)); *In re Granick*, 388 F. Supp. 3d 1107, 1115 (N.D. Cal. 2019) (finding that "promoting the public's understanding … of significant public events" weighs in favor of finding a public access right).

Under the common law presumption of access, a party seeking closure of a judicial record "bears the burden of overcoming this strong presumption by … articulat[ing] compelling reasons supported by specific factual findings … that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178 (internal alterations, quotations, and citations omitted).[1] Access to motions and their attachments that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety*, 809 F.3d at 1101–02. Filings that are tangentially related to the merits still require a showing of "good cause." *Id.* at 1097. Even where a harm is articulated, the court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (internal quotation marks and alterations omitted).

**B.     The First Amendment Right of Access Applies to the Judicial Records at Issue**

In addition to the well-established common law right, the First Amendment provides an independent right of access to court records. *See, e.g.*, *Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020) (First Amendment right of access extends to filings in civil proceedings). Under the First Amendment right of access, if an item filed with the court "is relevant to the judicial function and useful in the judicial process" then "[a]bsent a showing that there is a substantial interest" in sealing, "once documents have been filed in judicial proceedings, a presumption arises that the public has a right to know the information they contain." *Id.* at 591-92 (citations omitted). This is because "The public has a right to know how its resources are being used—courts are funded by the public, judges are evaluated by the public, officials who appoint and approve judges are voted on by the public, and the laws under which parties sue may be refined, rescinded, or strengthened based on the public's views of the ways in which they play out in court." *Id.* at 592 (quotation omitted).

This right of access attaches even if the Court has not yet relied on the submissions to make an adjudication and applies even if the parties reach settlement. *Id.* at 592-93. This is

---

[1] In addition, the party seeking sealing must comply with Civil Local Rule 79-5.

because "[w]hen a complaint is filed, and the authority of the people of the United States is thereby invoked, even if only as a threat to induce settlement, the American people have a right to know that the plaintiff has invoked their power to achieve his personal ends." *Id.* at 593 (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 U.S. Dist. LEXIS 35385 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016). This constitutional presumption can be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise II*, 478 U.S. at 9.

## V.  THE PARTIES' ASSERTION OF "COMPETITIVE HARM" DOES NOT OUTWEIGHT THE PUBLIC INTEREST AND RIGHT OF ACCESS HERE

### A. There Is a Substantial Public Interest in the Sealed Judicial Records

This case presents important legal issues in which the public has a legitimate interest. At issue are allegations that a major professional sport has been illegally maintained as a monopoly. The purpose of antitrust laws are to protect the public. *Feldman v. Sacramento Bd. of Realtors, Inc.*, 119 Cal. App. 3d 739, 748 (1981) ("[T]he purpose of antitrust laws is primarily to protect the consuming public by healthy competition, and only secondarily to protect the individual competitor."). The public thus has a direct interest in understanding the claims, defenses, and outcome of these proceedings.

Also at issue are claims that a foreign state, using the immense power and wealth of a sovereign investment fund, may have tortiously interfered with a United States enterprise—and, apparently, arguments by those counterclaim defendants that they are not subject to the full jurisdiction of U.S. courts. *See, e.g.*, Dkts. 148, 230 & 255. As the court previously has held, who controls LIV goes to the heart of the merits of the counterclaim thus rendering the public interest in access to the information especially great. Dkt. 279 at 5 (*citing Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV04312-BLF, 2020 U.S. Dist. LEXIS 46075 (N.D. Cal. Mar. 16, 2020). Also at issue are allegations that PIF and Mr. Al-Rumayyan misled the court, *see* Dkts. 225 & 230, matters that go to the heart of the purpose of public access. *See, e.g.*, *Richmond Newspapers v. Virginia*, 448 U.S. 555, 569 (1980) (public access discourages "misconduct of

1  participants."). Nevertheless, the relevant records are in large part sealed. This includes, for
2  example, all of LIV's Subscription and Shareholder Agreement ("Shareholder Agreement") and
3  even portions of counterclaims discussing or quoting the Shareholder Agreement. *See* Dkt. 279.

4  Only adding to these interests are President Trump and members of his former administration's close business ties to LIV Golf and PIF and the political and diplomatic impact of Saudi Arabia's involvement. These are precisely the kinds of public concerns—allegations of harm to the public, affecting an international sport, implicating a sovereign state and the court's jurisdiction—that weigh heavily in favor of disclosure. *See, e.g.*, *NML Capital Ltd. v. Republic of Arg.*, 2015 U.S. Dist. LEXIS 20722, **18-25 (D. Nev. Feb. 19, 2015) (allegations that Argentina engaged in tortious conduct, damaging the global bond market, "cannot be litigated in secret. Doing so would limit the public's understanding of the court's final decision and, therefore, risk weakening the judicial power, which depends upon public access and trust.").

Moreover, in cases such as this, involving the interests of very powerful and influential litigants, there is a particular value in transparency and public oversight of the judicial process. *Planet*, 947 F.3d at 589 (9th Cir. 2020) ("Openness in judicial proceedings 'enhances both the basic fairness of the proceeding and the appearance of fairness so essential to public confidence in the system.'" (quoting *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508 (1984)).

Given the parties' announced merger, it appears likely that the parties may at some point seek to terminate this litigation. As the Ninth Circuit has explained, settlement does not moot the public's right of access. *Planet*, 947 F.3d at 592-93 ("Some civil complaints may never come up for judicial evaluation because they may prompt the parties to settle. The public still has a right to know that the filing of the complaint in our courts influenced the settlement of the dispute."). *See also, e.g.*, *Dawson v. Merck & Co.*, 2021 U.S. Dist. LEXIS 12725, at *14-17 (E.D.N.Y. Jan. 24, 2021) (explaining why settlement does not moot the public's right of access and collecting cases from the Second Circuit); *White v. Chapman*, 2015 U.S. Dist. LEXIS 91433, at *7 (E.D. Va. July 14, 2015) (setting out the same principles and collecting cases from the Fourth Circuit). Here, were the parties to settle, it would not alter any of the legitimate public interests set out

above and would only elevates the need for the public to see what has happened to date and to understand more fully what drove a decision that will affect the public.

## B.     Competitive Harm Does Not Outweigh the Substantial Public Interest in the Sealed Judicial Records

Because of the extent of the sealing, The Times cannot fully engage with the arguments presented by the parties in support of their various motions to seal. However, it appears that sealing was largely—if not exclusively—justified based on alleged harm to competitive interests. While competitive harm can in appropriate circumstances serve as a justification for sealing, the extent of the sealing here calls into question the legitimacy of that claimed harm. For example, information about a company's governance or corporate structure is commonly made public and is not, on its face, the kind of competitive information akin to "license agreements, financial terms, details of confidential licensing negotiations, and business strategies" that may justify sealing. *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020).

Similarly, it appears that LIV Golf previously argued that disclosure of its major investors might cause competitors to "seek to influence those investors." Dkt. 287 at 5. Again, the major investors in an enterprise of LIV Golf's prominence is the kind of information that commonly is public. And it is unclear what "influence" was of concern but, first, speculative harms are not sufficient to overcome the public's right of access. *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 208510, at *26-27 (N.D. Cal. Nov. 6, 2020) ("A lot of things 'could' happen—but such a mere possibility, without more factual explanation substantiating its plausibility, is insufficient to hide the information from the public record."). Second, embarrassment is not sufficient to overcome the public's right of access. *Kamakana*, 447 F.3d. at 1179 ("The mere fact that the [disclosure] of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."); *Ponomarenko v. Shapiro*, No. 16-cv-02763-BLF, 2017 U.S. Dist. LEXIS 133560, at *11 (N.D. Cal. Aug. 21, 2017) ("[P]otential embarrassment alone is not a compelling reason to seal or redact the Court's records." (citation omitted)). To the extent that

1  LIV Golf claimed that investors might be subject to public criticism for their involvement in the
2  organization, that is not an appropriate basis for sealing.

3  Furthermore, even where competitive information is at stake, if that information is the
4  basis for a claim or counterclaim, sealing is not appropriate. *See, e.g.*, *Richards v. Centripetal*
5  *Networks, Inc.*, 2023 U.S. Dist. LEXIS 69502, **4-5 (N.D. Cal. Apr. 20, 2023) (denying sealing
6  of "investor reports, capitalization and financial information, and a settlement agreement with
7  Plaintiff" of a non-public company because the proposed redactions were "critical to Plaintiff's
8  claims" and therefore sealing would not "ensur[e] the public's understanding of the judicial
9  process and of significant public events."); *M.A. Silva Corks USA, LLC v. M.A. Silva Holdings,*
10 *Inc.*, 2023 U.S. Dist. LEXIS 41065, at *5 (N.D. Cal. Mar. 10, 2023) (denying sealing of portions
11 of claims detailing defendant's "business conduct, sales practices, and competitive positions,"
12 and how it sabotaged plaintiff's business because the information was "critical (even central) to
13 Plaintiff's claims.").

14 Finally, to the extent that competitive harm existed at the time of sealing, those
15 justifications may not apply with the same force today—or upon completion of the parties'
16 anticipated merger. Sealing is a decision that can and should be revisited as facts change and
17 circumstances require. *See, e.g.*, *United States v. Brooklier*, 685 F.2d 1162, 1172 (9th Cir. 1982)
18 (holding that "transcripts of properly closed proceedings must be released when the danger of
19 prejudice has passed" because "[e]ven where denial of access is appropriate, it must be no
20 greater than necessary to protect the interest justifying it"); *Valdivia v. Brown*, 2013 U.S. Dist.
21 LEXIS 95005, at *6 (E.D. Cal. July 3, 2013) (noting the court may revisit a sealing
22 determination "if subsequent developments . . . demonstrate that the public interest in reviewing
23 sealed documents outweighs those interests which presently support sealing."); *Finsa*
24 *Portafolios, S.A. de C.V. v. OpenGate Capital, LLC*, 2021 U.S. Dist. LEXIS 171370, at *15
25 (C.D. Cal. Sep. 9, 2021) (revisiting anew the "extensive sealing that has already been allowed");
26 *Does v. Univ. of Montana*, 2012 U.S. Dist. LEXIS 88519 (D. Mont. 2012) (revisiting sealing and
27 unsealing records); *Aviation Ins. Servs. of Nev., Inc. v. Dewald*, 2011 U.S. Dist. LEXIS 41469, at
28 *5-6 (D. Nev. Apr. 5, 2011) (revisiting as improvidently granted sealing orders in prior related

lawsuit). The common law and First Amendment thus require that the Court consider whether the sealing that has been permitted continues to be justified.

## VI. CONCLUSION

For all of the reasons set out above, The Times respectfully requests that the Court grant its motion to intervene and issue an order unsealing all records in this case. To the extent that there are interests that continue to justify sealing, The Times respectfully requests that the Court consider whether redaction of specific portions of the records may be a more appropriate remedy than wholesale sealing.

DATED: June 16, 2023

TANYA FORSHEIT
DANA GREEN

By: /s/ Tanya Foresheit
      Tanya Forsheit

Attorneys for Non-Party Media Entity
THE NEW YORK TIMES COMPANY