QUINN EMANUEL URQUHART & SULLIVAN
LLP
JOHN B. QUINN, SBN 90378
  johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
  dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

JOHN F. BASH (*pro hac vice*)
johnbash@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, TX 78701-3901
Telephone: (737) 667 6100

ROBERT P. FELDMAN, SBN 69602
  bobfeldman@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:   650.801.5100

RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

SCOTT K. HVIDT, *pro hac vice*
shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

*Attorneys for Plaintiff LIV Golf, Inc.,*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LIV GOLF INC., | CASE  NO. 5:22-cv-04486-BLF |
| Plaintiffs, | **PLAINTIFF LIV GOLF'S OPPOSITION TO MOTION OF NON-PARTY MEDIA ENTITY THE NEW YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND FOR AN ORDER UNSEALING COURT RECORDS** |
| v. | |
| PGA TOUR, INC., | |
| Defendant and Counter-Plaintiff, | |
| v. | |
| LIV GOLF, INC., PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, and HIS EXCELLENCY YASIR OTHMAN AL-RUMAYYAN | |
| Counter-Defendants. | |

**INTRODUCTION**

Although the public enjoys a right of access to judicial records, unfettered public access to confidential information filed in civil litigation would undermine the legitimacy and effectiveness of the judicial system. *See Nixon v. Warner Commn's, Inc.*, 435 U.S. 589, 598 (1978). Such unrestricted access would disrupt the careful balance struck by the Federal Rules between broad discovery and limited confidentiality—a balance that ensures that parties can thoroughly litigate important business disputes (including antitrust actions) without fear that sensitive information will be exposed to competitors and the public. Recognizing the need to preserve that balance, the Ninth Circuit has developed a rigorous sealing test that weighs the presumption of public access (which varies in different circumstances) against the concrete harm from disclosure of specific information.

The Court and Magistrate Judge van Keulen meticulously applied that standard in the sealing orders in this case. Plaintiff LIV Golf, Inc. ("LIV") has filed 17 motions to seal supported by fact declarations and particularized explanations of the concrete harm that would result from disclosure of specific information. Most of the motions sought sealing for "good cause"—the standard that applies to non-dispositive motions—while others showed compelling reasons for confidentiality. This Court and Judge van Keulen then carefully considered each category of information and made particularized findings on the record to justify targeted sealing orders. All of the currently sealed information has been subject to their painstaking analysis and rigorous review. Far from rubber stamping the motions, the Court and Judge van Keulen rejected many sealing requests.

Now, after the parties have settled, The New York Times Corporation ("The Times") seeks to unseal the entire record. In support of that sweeping request, The Times has filed an eight-page motion that does not address any of the Court's prior findings, even though those findings are set forth in public orders. The Times effectively seeks reconsideration of the prior rulings without identifying an error in any ruling simply because this is an important case that implicates the public interest. But the importance of this case is precisely why appropriate confidentiality is needed. Without confidentiality protections, businesses would be deterred from bringing high-profile lawsuits—especially antitrust actions where parties will necessarily obtain discovery into their competitors' business strategies—to

1

the ultimate detriment of the public.  The Times' conclusory and untimely filing misstates the governing legal standards in critical respects; fails to engage with the rigorous review already undertaken by the Court; and ignores the vast majority of the publicly stated justifications for the sealing orders.  It should be denied.

## LEGAL STANDARD

The Federal Rules of Civil Procedure reflect a balance between broad discovery and necessary protection for confidentiality.  Under Rule 26(b)(1), a party can obtain discovery into virtually any "nonprivileged matter that is relevant to any party's claim or defense," a rule that is afforded "broad and liberal treatment" by the courts.  *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).  But the breadth of permissible discovery creates "significant potential for abuse."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).  "[L]itigants [can] obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy."  *Id*. at 35.  Lack of confidentiality protections can thus impede access to the courts.  *Id*. at 36 n.22.  "[R]ather than expose themselves to unwanted publicity, individuals may well forgo the pursuit of their just claims" without confidentiality, and the judicial system could become "so onerous that the people will be reluctant or unwilling to use it, resulting in frustration of a right as valuable as that of speech itself."  *Id*. (internal quotation marks omitted).  For that reason, "[t]he government clearly has a substantial interest in preventing this sort of abuse of its processes."  *Id*.  at 35.

Accordingly, Rule 26(c) allows a court for "good cause" to shield from public scrutiny information produced in civil litigation without violating the First Amendment.  *See id*. at 37.  No common law right supersedes that Rule to require public access to such materials.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).  The "good cause" standard continues to apply where materials are attached to motions filed with the court that are "unrelated to the merits of the case," such as discovery motions.  *Id*.; *see Phillips ex rel. Est. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002).  As the Ninth Circuit has held, when materials are attached to a non-dispositive motion, "the private interests of litigants are the only weights on the scale," and public access may be denied for "good cause" alone.  *Ctr. for Auto Safety*, 809 F.3d at 1097 (citation omitted).

2

1    The analysis is different when sealed materials are attached to dispositive motions.  *Kamakana*

2    *v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006).  A "strong presumption in favor of

3    access" attaches to such materials.  *Id.* at 1178.  Even so, the public's right to access these materials is

4    "not absolute."  *Nixon*, 435 U.S. at 598.  The same concerns that limit public access to litigation

5    materials ordinarily also apply to dispositive motions.  Thus, "while protecting the public's interest in

6    access to the courts, [judges] must remain mindful of the parties' right to access those same courts upon

7    terms which will not unduly harm their competitive interest."  *Doe v. Wolf*, 2020 WL 8713814, at *1

8    (N.D. Cal. July 24, 2020) (Freeman, J.) (citation omitted).  Courts continue to have a strong interest in

9    preventing abuse of their processes by private parties; otherwise, judicial records would become a

10   "vehicle for improper purposes," such as a tool to "gratify private spite," "promote public scandal," or

11   expose "business information."  *Nixon*, 435 U.S. at 598.

12   To balance these competing considerations, the Ninth Circuit's test for sealing related to

13   dispositive motions requires courts to "conscientiously balance the competing interests of the public

14   and the party who seeks to keep certain judicial records secret."  *Kamakana*, 447 F.3d at 1179

15   (simplified).  The party seeking to seal must first "articulate compelling reasons" to seal "supported by

16   specific factual findings."  *Id*.  If the court finds that sealing is warranted, it must state "a compelling

17   reason" on the record together with "the factual basis for its ruling, without relying on hypothesis or

18   conjecture."  *Id*. (citation omitted).  This test is supplemented by this District's local rules, which

19   require a party seeking to seal to file a "specific statement" explaining the "legitimate private or public

20   interests that warrant sealing," the "injury that will result if sealing is denied," and insufficiency of

21   "less restrictive alternative," including "evidentiary support from declarations."  Civ. L. R. 79-5.

22   This standard comports with the First Amendment.  In *Courthouse News Service v. Planet*, 947

23   F.3d 581 (9th Cir. 2020), the Ninth Circuit held that the First Amendment grants a right to access

24   "***nonconfidential*** civil complaints."  *Id.* at 594 (emphasis added).  But it expressly distinguished cases

25   upholding sealing of "various civil litigation documents," including "sensitive and confidential"

26   documents subject to a protective order "filed under seal in pre-trial motions for summary judgment."

27   *Id*. at 593.  The Ninth Circuit has never held that the First Amendment compels unsealing judicial

28

3

1   records that are otherwise properly sealed.  And courts in other circuits have frequently held that the
2   same interests that warrant sealing under non-constitutional standards, including business interests,
3   suffice under the First Amendment.  *See, e.g.*, *Dawson v. Merck & Co., Inc.*, 2021 WL 242148,
4   (E.D.N.Y. Jan. 24, 2021); *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d
5   485, 510-511 (S.D.N.Y. 2015); *see also Perry v. Brown*, 667 F.3d 1078, 1088 (9th Cir. 2012) (same).

**ARGUMENT**

**I.    THE TIMES' MOTION TO INTERVENE IS UNTIMELY AND PREJUDICIAL.**

As a threshold matter, The Times' motion is untimely.  "In determining whether a motion for
intervention is timely, a court must consider three factors: (1) the stage of the proceeding at which an
applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the
delay."  *San Jose Mercury News, Inc. v. U.S. Dist. Ct. – N. Dist (San Jose)*, 187 F.3d 1096, 1101 (9th
Cir. 1999).  Here, The Times could have sought to unseal information long before June 2023, when the
parties settled.  This case garnered national attention and was repeatedly reported on by The Times
itself.  There is no reason why The Times could not have sought to intervene when the motions to seal
were first adjudicated.  By delaying its motion, The Times allowed the parties to rely on this Court's
rulings to file further information under seal, then suddenly demanded open access to the entire record.
Had LIV known that The Times would seek unsealing, it could have withdrawn its filings or the Court
could have chosen not to rely on them, consistent with the options provided by Civil Local Rule 79-
5(g).  The Times' delay makes this impossible and severely prejudices the parties.

The Times claims that the public has an interest in learning about the path to settlement, but its
blunderbuss motion is not tailored to that purported justification.  The Times identifies no sealed
information that would provide insight into the parties' settlement beyond what is revealed in the
complaint and other public filings.  That the public has the right to access these materials generally
does not require access to previously sealed portions.  *See Courthouse*, 947 F.3d at 592-93
(acknowledging a public right to access complaints before judicial action without addressing "sensitive
and confidential materials" of private parties); *Dawson*, 2021 WL 242148, at **4-11 (finding the

4

PLAINTIFF LIV GOLF'S OPPOSITION TO MOTION OF NON-PARTY MEDIA ENTITY THE NEW
YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND FOR AN ORDER UNSEALING
COURT RECORDS

presumption of public access "survives settlement" while applying a balancing test to seal specific documents); *White v. Chapman*, 2015 WL 4360329, at *2 (E.D. Va. July 14, 2015) (same).

## II.   THE TIMES MISSTATES THE GOVERNING LEGAL STANDARDS.

The Times seeks to unseal the entire record because this case "presents important legal issues in which the public has a legitimate interest." Mot. at 5. That argument misstates the governing legal standard in three critical respects.

*First*, The Times ignores that the vast majority of the sealing in this case was ordered under the "good cause" standard applicable to discovery and case-management matters. *See, e.g.*, Dkt. Nos. 287, 371, 373. The "private interests of the litigants" are "the only weights on the scale" for these filings, and the public lacks a presumptive right of access. *Kamakana*, 447 F.3d at 1179-80. The Times suggests that the First Amendment nonetheless demands an "overriding interest" to justify sealing, Mot. at 5, but the Ninth Circuit has never held that the First Amendment requires unsealing in these circumstances. *See Courthouse*, 947 F.3d at 592 (expressly distinguishing confidential information filed under seal). The departure from existing law would be particularly stark for nondispositive motions subject to the good cause standard. Moreover, even circuits that apply First Amendment standards to civil litigation sealing still vary its application depending on the context and type of motion. *See, e.g.*, *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001) (finding no First Amendment right of public access in discovery motions); *Spectrum Dyn. Med. Ltd. v. Gen. Elec. Co.*, 2022 WL 3910584, at *1 (S.D.N.Y. Aug. 31, 2022) (recognizing lower standard for discovery motions). The "good cause" standard thus remains good law. And because The Times has presented no argument that the relevant orders failed to meet that standard, it has forfeited any such argument.

*Second*, even as to the few sealed filings subject to the more demanding "compelling reasons" standard, The Times conflates public interest in **access**—the appropriate consideration under that standard—with public interest in the **subject matter** of the lawsuit, which is not the standard. As the Ninth Circuit has explained, "[m]atters decided in the courts are often of considerable public interest," but the question is "not one of public interest but of public access." *Forbes Media LLC v. U.S.*, 61

5

1   F.4th 1072, 1076 (9th Cir. 2023).   The sealing inquiry looks only at the "public interest in

2   **understanding the judicial process**."   *Kamakana*, 447 F.3d at 1179 (emphasis added).   That interest

3   "does not extend to mere curiosity about the parties' confidential information where that information

4   is not central to a decision on the merits."   *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228

5   (Fed. Cir. 2013).   The Times, however, suggests that newsworthiness alone can warrant unsealing.[1]

6   For example, it claims that "President Trump and members of his former administration's close

7   business ties to LIV Golf and PIF . . . weigh heavily in favor of disclosure," as do the "immense power

8   and wealth" of a foreign state and "the interests of very powerful and influential litigants."   Mot. at 5-

9   6.   But those claims are not relevant to any judicial decision in this case.   They do not reflect the **type**

10   of public interest that weighs against sealing.   Indeed, if The Times' interpretation were correct, judicial

11   records would quickly become weapons for exposure of rivals' confidential business information

12   because an opposing party could always attach it to a motion and claim its newsworthiness.

13        *Third*, The Times overlooks significant public interests weighing in favor of sealing under the

14   balancing test.   "[G]reater public attention does not inevitably mean greater disclosure when competing

15   interests are at stake."   *Forbes*, 61 F.4th at 1076.   "Every judicial proceeding, indeed every

16   governmental process, arguably benefits from public scrutiny to some degree, in that openness leads to

17   a better informed citizenry and tends to deter government officials from abusing the powers of

18   government," but "complete openness would undermine important values."   *Times Mirror Co. v. U.S.*,

19   873 F.2d 1210, 1213 (9th Cir. 1989).   These countervailing public interests include protecting the

20   judicial process from abuse and providing open access to the courts, as well as preserving the policies

21   of the Federal Rules of Civil Procedure.   Parties have a "right to access . . . courts upon terms which

22   will not unduly harm [their] competitive interest."   *Apple*, 727 F.3d at 1228.   Willingness to expose

23   entire business operations should not be a prerequisite for access to the judicial system.

24        Courts also have an interest in preventing abuse of their processes.   *Rhinehart*, 467 U.S. at 34-

25   35.   Total openness would undermine the judicial system by allowing it to be hijacked by private parties

26

27   _____

28   [1]   The Times also emphasizes "regulatory concerns," Mot. at 2, but the Department of Justice has
      mechanisms other than unsealing in civil litigation to obtain materials

   6

for "improper purposes," such as to blackmail opponents into settlement.  *See Nixon*, 435 U.S. at 598.

Nor would such openness be effective: it would shift the locus of the dispute from sealing to discovery.

Parties would be reluctant to provide discovery into sensitive aspects of their business for fear of

disclosure, and courts would be inundated by needless discovery disputes.  The better course, adopted

by the Federal Rules, is to allow broad discovery while using sealing to limit the resulting harm.

The point is not that these interests always outweigh the public interest in access.  Rather, it is

that the decision itself cannot be made except in a specific factual context.  The Times' motion does

not address any specific filing, which makes the balancing of competing interests required by the Ninth

Circuit impossible.  LIV fully agrees with The Times that antitrust cases serve the public interest.  But

that is precisely why a strict application of balancing is required.  Antitrust lawsuits promote

competition in the markets, but they also allow competitors to obtain discovery into their opponents'

business.  If filing an antitrust case required disclosure of this information, plaintiffs will file fewer

antitrust suits, undermining the very interests The Times cites.  A balancing of the interests is thus

required; simply asserting public interest in the overall lawsuit does not suffice.

### III.   THE TIMES PROVIDES NO BASIS TO RECONSIDER PRIOR SEALING ORDERS.

#### A.    The Times Fails to Address The Rigorous Review Already Undertaken By The Court and Magistrate Judge Van Keulen.

The Times moves to unseal the entire public record "unless the parties can present

countervailing factors that overcome this right."  Mot. at 1.  But LIV has already presented

countervailing interests in its 17 statements in support of sealing, buttressed by witness declarations

providing evidence of concrete harm that will result from disclosure of specific information.  And the

Court agreed after a careful analysis.  In numerous orders analyzing sealing, this Court and Judge van

Keulen rigorously followed the Ninth Circuit standard to find "compelling reasons" or a "good cause"

to seal grounded in a "factual basis," not "hypothesis or conjecture."  *Kamakana*, 447 F.3d at 1179.

These were not rubber stamps:  The Court and Judge van Keulen denied numerous sealing requests

when they found the proffered justifications insufficient.  *See, e.g.*, Dkt. Nos. 86, 245, 279, 287, 432.

The Times now claims that this Court's process was flawed because "the extent of the sealing

in this matter and the strength of the public interest calls into question whether the scope of sealing is

7

properly justified." Mot. at 1.  This generalized, broad-brush approach is legally insufficient.  The Times identifies no actual finding by the Court or Judge van Keulen that it considers to be incorrect or legally flawed, no specific filing that it claims to be over-sealed, and no evidence of harm that it disputes.  Absent specificity, the Ninth Circuit standard for balancing the public interest against harm from disclosure of specific information cannot be applied.  Unsealing the record on these facts would eviscerate the Ninth Circuit standard because it would mean that no matter how "conscientiously" the Court applies the test, a third-party can undo the work by generically claiming that sealing is excessive. That is not the law.  Sealing in this District is already more rigorous than in most other courts, and decisions under its standards should not be lightly cast aside.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 747 F. App'x 463, 466 (9th Cir. 2018) (affirming denial of advocacy group's motion to unseal where the court performed a "meticulous" examination of the materials and, "[a]fter painstakingly applying a balancing test," found compelling reasons to seal "in a well-reasoned order").

The Times argues that it "cannot fully engage with the arguments presented by the parties in support of the various motions to seal" because of the "extent of the sealing."  Mot. at 7.  That does not justify The Times' failure to address the prior orders:  Every statement supporting sealing is public. Every declaration explaining the evidence for concrete harm that will result from disclosure is public. Every order granting sealing is public.  The Times could have challenged the justifications set forth in those documents, but it chose not to do so.  In reality, LIV's prior sealing filings (which it incorporates here by reference) provide compelling reasons or good cause to seal, as this Court already concluded. Dkt. Nos. 70, 158, 174, 177, 188, 222, 240, 259, 260, 272, 277, 333, 377, 385, 397, 419, 450.  If The Times could reverse this Court's sealing orders through such a conclusory filing, sealing orders would be virtually meaningless and subject to vacatur whenever a third party asks for unsealing.

**B.**     **The Times' Handful Of Criticisms Are Either Irrelevant Or Unjustified.**

In the few instances where The Times actually addresses the Court's and Judge van Keulen's prior rulings, its criticisms are unfounded.  In addition to ignoring precedent, The Times advances arguments the Court has already *accepted* and cited as a basis to *deny* sealing, and other arguments that are factually unsupported.  It also ignores the *actual* grounds that this Court concluded were sufficient.

8

1    *First*, The Times claims that "information about a company's governance or corporate

2    structure" is not "the kind of competitive information . . . that justifies sealing." Mot. at 7. But

3    precedent from this District—including this Court—supports sealing precisely this type of information.

4    Dkt. No. 260 (citing *Pinnacle Vent. LLC v. Bertelsmann Educ. Servs*., 2018 WL 11392741, at *1 (N.D.

5    Cal. Aug. 1, 2018) (Freeman, J.) (sealing "internal governance procedures and corporate details").

6    *Second*, The Times criticizes as "speculative" the justification that disclosure of investors could

7    cause competitors to "seek to influence those investors." Mot. at 7. But this Court already agreed with

8    that argument and ***denied*** sealing under the compelling reasons standard on this basis. *See* Dkt. No.

9    279 at 4-5. The Times also argues that "embarrassment" is not a basis to seal, a justification that LIV

10   has never even advanced.

11   *Third*, The Times argues that "even where competitive information is at stake," sealing should

12   be denied when "that information is the basis for a claim or counterclaim." Mot. at 8. Again, the Court

13   already ***denied*** sealing for precisely this reason under the compelling reasons standard. LIV sought to

14   seal numerous documents on the ground that they revealed LIV's investors' involvement in decision

15   making, and the Court rejected that argument because "HE's alleged control over LIV goes to the heart

16   of the counterclaim." Dkt. No. 279 at 4. The Times identifies no information other than what the Court

17   already determined goes to the "heart" of the counterclaim and unsealed as necessary to understand

18   "the basis for a claim or counterclaim." *Id.*

19   *Fourth,* The Times claims that even if "competitive harm existed at the time of sealing," those

20   reasons "may not apply" with the passage of time. Mot. at 8. But most sealing orders were issued in

21   the last few months. Absent some explanation about why the justifications have become stale, this

22   generic argument cannot override the Court's prior determinations. Moreover, the local rules establish

23   a strong presumption of unsealing after three years, which addresses concerns over staleness in due

24   course. *See* Civ. L. R. 79-5(g)(3). And the parties' announced, but as-yet unfinalized, merger does not

25   create a basis for accelerating that timeline or suggest that the Court's and Judge van Keulen's orders

26   have become stale; The Times identifies no prior ruling affected by that change.

27   *Last*, the only specific sealed material identified by The Times is the Subscription and

28

9

Shareholder Agreement, which The Times claims should be unsealed because it allegedly shows PIF's control over LIV.   Mot. at 5-6.   But multiple reasons supported sealing the Subscription and Shareholder Agreement, including because it contains information about:

> LIV's corporate governance, investment structure, share price, valuation, internal financial reporting, internal decision making, and budgeting process; the identities of LIV's strategic partners and pre-approved clients; LIV financials, including specific amounts of capital, the capital deployment schedule, and capital intended uses; LIV's relationships with third parties; and limitations on LIV's business conduct.

Dkt. No. 267-1 at 18 (citing Dkt. No. 222-1 ¶ 2).   Disclosure of that information has obvious potential for abuse but The Times fails to address these justifications.   *See id.*

In sum, the weakness of The Times' handful of criticisms of the sealing orders—most of which are simply irrelevant—confirm that the Court and Judge van Keulen conscientiously and correctly applied the demanding sealing standard required by the Ninth Circuit.   And even if these criticisms were somehow valid,  LIV raised numerous other grounds to seal that The Times does not even address, such as where disclosure would constrain LIV's bargaining power in future negotiations, change the terms that business partners demand, deter potential business partners from dealing with LIV, or expose LIV's recruitment strategy.   Dkt. Nos. 267-1, 279.   Those reasons continue to justify sealing, and The Times has forfeited any argument to the contrary by failing to address them.

## CONCLUSION

For the foregoing reasons, LIV respectfully requests that The Times' motion be denied.

DATED:  July  11, 2023

Respectfully submitted,

*/s/ John Bash*
JOHN B. QUINN, SBN 90378
 johnquinn@quinnemanuel.com
DOMINIC SURPRENANT, SBN 165861
 dominicsurprenant@quinnemmanuel.com
KEVIN TERUYA, SBN 235916
 kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000

10

PLAINTIFF LIV GOLF'S OPPOSITION TO MOTION OF NON-PARTY MEDIA ENTITY THE NEW YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND FOR AN ORDER UNSEALING COURT RECORDS

JOHN F. BASH, *pro hac vice*
 johnbash@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
300 West 6th Street, Suite 2010
Austin, TX 78701-3901
Telephone: (737) 667 6100

ROBERT P. FELDMAN, SBN 69602
 bobfeldman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone:  650.801.5000
Facsimile:    650.801.5100

RACHEL S. BRASS, SBN 219301
 rbrass@gibsondunn.com
LAUREN D. DANSEY, SBN 311886
 ldansey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

SCOTT K. HVIDT, *pro hac vice*
 shvidt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: 214.698.3100

JOSHUA LIPTON, *pro hac vice*
 jlipton@gibsondunn.com
KRISTEN C. LIMARZI, *pro hac vice*
 klimarzi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:     202.955.8500

*Attorneys for Plaintiff LIV Golf, Inc.,*

---

11

PLAINTIFF LIV GOLF'S OPPOSITION TO MOTION OF NON-PARTY MEDIA ENTITY THE NEW
YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND FOR AN ORDER UNSEALING
COURT RECORDS