Tanya Forsheit (CA State Bar No. 192472)
Dana R. Green (*pro hac vice pending*)
THE NEW YORK TIMES COMPANY
Legal Department
620 8th Avenue, 13th Floor
New York, NY 10018
Telephone:    (212) 556-1234
Facsimile:     (212) 556-4634
Email: tanya.forsheit@nytimes.com
          dana.green@nytimes.com

Attorneys for Non-Party Media Entity
THE NEW YORK TIMES COMPANY

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LIV GOLF INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>    Defendant and Counter-Plaintiff,<br><br>v.<br><br>LIV GOLF INC., PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA, and YASIR OTHMAN AL-RUMAYYAN<br><br>    Counter-Defendants. | Case No. 5:22-cv-04486-BLF<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NON-PARTY MEDIA ENTITY THE NEW YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND FOR AN ORDER UNSEALING COURT RECORDS** |

The public interest in understanding these proceedings, the conduct of the parties, and the basis and merits of the Court's decisions is of unusual and national significance. Among the issues presented, this Court's determinations regarding immunity and jurisdiction have been deemed precedent-setting even by the parties themselves, with the potential to reshape this area of the law. The parties' submissions and evidence on those issues and the Court's determination of these issues were dispositive of the PGA Tour's (the "Tour") claims against the Public Investment Fund ("PIF") and Mr. Al-Rumayyan. As such, they were not tangential but central to how the case would unfold. When issues before a court are more than tangential, the good cause standard ceases to govern sealing and the parties must come forward with a compelling reason to overcome the public interest.

In opposition, the parties argue that the motion is untimely or that the right of access has been waived or is foreclosed by prior decisions. These arguments misunderstand the principles at stake. The Times seeks to vindicate a right of access that belongs to any member of the public. That right can be raised at any time and cannot be forfeited. Indeed, the court needs no intervenor to enforce that right on behalf of the public, *sua sponte*.

The parties next seek to shift the burden onto the public, arguing that The Times, as intervenor, must justify *un*sealing the records. That, too, is wrong. The parties seek to maintain sealing of records that are more than tangentially related to claims in the litigation; they bear the burden of continued justification.  Here, they argue only that disclosure will cause competitive harm—but that justification carries little weight now that the parties have decided to partner, rather than compete.

Lastly, the parties argue that The Times has not argued, with sufficient specificity, which records should be unsealed. It is The Times's position—consistent with the law—that judicial records should be public unless continued sealing is justified. Nevertheless, The Times is mindful of the volume of material under seal and the burden this imposes on the Court. In the interests of efficiency, The Times narrows its request and sets out in **Exhibit A** particular records to which it seeks access.

## I. THE TIMES'S MOTION IS TIMELY AND APPROPRIATE

LIV Golf, Inc. ("LIV") argues that The Times's "delay" in moving to unseal counsels against intervention or acts as a waiver. Dkt. 469 ("LIV Opp.") at 2. But the only case LIV relies on rejected that argument: "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records." *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999).[1] That is because "if a motion to intervene is denied as untimely, it is likely that subsequent motions to intervene will also be held untimely, stymying the public's right of access altogether." *Id.* LIV also suggests that it somehow relied on sealing and therefore it will be prejudiced by intervention. LIV Opp. 4. But that argument, too, specifically was rejected by the Ninth Circuit. *See San Jose Mercury News*, 187 F.3d 1101.

## II. THE PARTIES OPPOSING UNSEALING MISSTATE THE APPLICABLE BURDEN OF PROOF AND STANDARDS OF REVIEW

The parties argue that, because the records already have been sealed, The Times bears the burden of showing why the records should be *un*sealed. LIV Opp. 5; Dkt. 470 ("Tour Opp.") at 6. But when it comes to materials that are more than "tangentially" related to the merits of a case, public access is the "default" standard. *Kamakana v. City and Cty. Of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006). *See also Foltz v. State Farm*, 331 F.3d 1122, 1134 (9th Cir. 2003) ("In this circuit, we start with a strong presumption in favor of access to court records." (collecting cases)). As this Court previously has explained, "[c]ompelling reasons must *continue* to exist to keep judicial records sealed. Therefore, in a motion to unseal documents, the burden of demonstrating the continued need for secrecy is placed on the party opposing the motion to unseal." *Heath v. Google Inc.*, No. 15-cv-01824-BLF, 2017 U.S. Dist. LEXIS 129110, at *3 (N.D. Cal. Aug. 14, 2017) (citation omitted). LIV's claim that the public right of access to complaints and other public filings "does not require access to previously sealed portions" is simply wrong and is contrary even to the cases it cites. *See* LIV Opp. 4-5.

---

[1] LIV also asserts that after three years, "the local rules establish a strong presumption of unsealing," further demonstrating that motions to intervene can be brought at any time—even years after litigation ends. LIV Opp. 9.

It is only "when a party attaches a sealed discovery document to a nondispositive motion [that] the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released." *Phillips v. Gen Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (emphasis added). But the Ninth Circuit has cautioned that this "*Phillips* exception" is "expressly limited to the status of materials . . . attached to a *non-dispositive* motion." *Foltz*, 331 F.3d at 1135 (emphasis in original). And even when the burden is on the party seeking unsealing, the public interest must properly be considered. LIV's assertion that the "'private interests of the litigants' are 'the only weights on the scale'" is a misquotation. LIV Opp. 2. In fact, the quoted case states that "the private interests of litigants are **not** the only weights on the scale" once discovery materials are filed with the court. *Kamakana*, 447 F.3d at 1180.

Finally, when it comes to the Court's prior sealing decisions, LIV at times appears to invoke *res judicata* principles. *See, e.g.*, LIV Opp. 1, 8-9. That is, of course, not relevant here. A court may reconsider its prior sealing motions *de novo* at any time. *See* Dkt. 460 ("NYT Mot.") at 8-9 (collecting cases in which court reconsidered and reversed prior sealing *sua sponte* or in response to intervenors).

### III. THE RECORDS AT ISSUE SHOULD BE UNSEALED

The Times seeks access to pleadings, motion papers, supporting exhibits, and judicial orders that concern PIF and Mr. Al-Rumayyan's claims that they are not subject to the court's jurisdiction and are shielded by sovereign immunity.[2] Those issues were presented in essentially three contexts: 1) in opposition to discovery; 2) as part of the Tour's Counterclaim; and 3) as part of PIF and Mr. Al-Rumayyan's motion to dismiss. *See* Exhibit A.

---

[2] Non-party Clout Public Affairs, LLC has filed an opposition to unsealing certain records. Dkt. 467. The submission opposes unsealing Dkt. 423 and its exhibits, filed in connection with the parties' motions to stay discovery, and Dkt. 332-7, an exhibit to LIV's motion to bifurcate. The Times does not seek unsealing of these records. *See* Exhibit A.

### A. The Records Go to the Merits of the Counterclaim and Therefore Compelling Reasons Must Be Shown to Justify Continued Sealing

As to the first context, The Times seeks to unseal records that initially related to a November 2022 Tour motion to compel discovery from PIF and Mr. Al-Rumayyan. *See* Exhibit A (Requests Numbered 1-8, 10-11). Although framed as a discovery dispute, the substantive legal issue was whether PIF and Mr. Al-Rumayyan are subject to the Court's jurisdiction or are protected by sovereign and common law immunity. *See* Order dated February 9, 2023, Dkt. 265 ("February 9 Order"). At the time the Court sealed or redacted those records, PIF and Mr. Al-Rumayyan were not parties to the case. The records therefore concerned only the adjudication of third party discovery. Consequently, the Court subjected the parties' sealing requests to a "good cause" standard. *See*, *e.g.*, Dkts. 373, 405 (orders partially granting sealing pursuant to "good cause" standard).

But the appropriate standard of review changed once the Tour asserted claims against PIF and Mr. Al-Rumayyan. *See* Order dated February 22, 2023, Dkt. 280. Not only did PIF and Mr. Al-Rumayyan become parties to the proceedings, but the legal issues were no longer tangential but central to how the case would unfold. That is because the determinations made in the February 9 Order—in which the Court held that PIF and Mr. Al-Rumayyan *are* subject to the court's jurisdiction and are not shielded by sovereign or common law immunity—apply with equal force to the Tour's Counterclaim against PIF and Mr. Al-Rumayyan.

This change is evident in the parties' own submissions. Once they were defendants in this action, PIF and Mr. Al-Rumayyan urgently petitioned for *de novo* review of the February 9 Order, arguing it was "an extraordinary infringement on the sovereignty of a foreign state" and that the order "created a genuinely unprecedented commercial activity exception to the common law immunity applicable to foreign government officials." Dkt. 306 at 1. The Kingdom of Saudi Arabia filed an unusual intervention and similarly asserted, in favor of reconsideration, that the February 9 Order was directly relevant to PIF and Mr. Al-Rumayyan's forthcoming motion to dismiss. *See* Dkt. 307-1 at 2. When that motion for reconsideration was denied, PIF and Mr. Al-Rumayyan appealed to the Ninth Circuit. *The Public Investment Fund v. PGA Tour, Inc.*, No. 23-

15530 (9th Cir. Apr. 19, 2023). There, they argued that their claims of sovereign immunity affected not just discovery but were an issue that "must be decided before the suit can proceed." *Id.*, Dkt. 9 at 2, 4. And, indeed, personal jurisdiction and sovereign immunity were central to PIF and Mr. Al-Rumayyan's motion to dismiss. *See* Dkt. 436 (Motion to Dismiss).

As the Court cautioned when initially granting sealing to these records, "the Court may reach different conclusions regarding sealing this information under different standards or in a different context." Dkt. 373 at 2. Such a change is presented here. Although ordinarily third party discovery disputes may be subject to a "good cause" standard, that standard is no longer appropriate. *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1101–02 (9th Cir. 2016) (records "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing that outweigh the general history of access and the public policies favoring disclosure). As this Court explained in its February 21 Order, "[T]he "focus" of the inquiry regarding which standard applies to a motion to seal is *not* whether a motion is dispositive or nondispositive, but rather "whether the motion at issue is *more than tangentially related to the underlying cause of action*." Dkt. 279 at 2:19-2:22 (emphasis added). Once the counterclaim was brought, issues of jurisdiction and immunity were not just related to but were dispositive of Tour's cause of action against PIF and Mr. Al-Rumayyan.

As this Court previously held, Tour's Counterclaim, Dkt. 238, and any documents attached to it, are also subject to that heightened standard, requiring "compelling" reasons to maintain sealing. *See* Dkt. 279 at 2:18-2:19. And it is well-settled that dispositive motions, such as PIF and Mr. Al-Rumayyan's motion to dismiss, Dkt. 436, are to be public unless "compelling reasons" are shown for sealing. *Ctr. for Auto Safety*, 809 F.3d at 1098-1100.

**B.     There Is a Substantial Public Interest in the Sealed Judicial Records**

Because records concerning the Court's jurisdiction over PIF and Mr. Al-Rumayyan were dispositive of claims in this case, the parties must show "compelling reasons" for sealing that outweigh the strong presumption of public access. *Id.* at 1101–02. When it comes to the public interest, LIV argues that "[t]he sealing inquiry looks only at the 'public interest in understanding the judicial process.'" LIV Opp. 6 (quoting *Kamakana*, 447 F.3d at 1179). But LIV misquotes

*Kamakana*. What the decision actually says—and what courts repeatedly have emphasized—is that the public interest concerns "the public's understanding of the judicial process *and of significant public events*." *Kamakana*, 447 F.3d at 1179 (collecting cases) (emphasis added).

It is obvious that this case concerns "significant public events": in the blunt words of the Tour Commissioner Jay Monahan, "you'd have to be living under a rock not to know there are significant implications." PGA Tour, Twitter (June 12, 2022), https://tinyurl.com/3rb7375d. At issue are allegations that a major professional sport was run as an illegal monopsony; allegations that a foreign state, using its sovereign wealth fund and claiming the privileges of sovereign immunity, committed torts; and allegations that both parties attempted to coopt the American political process in their favor. Arguably, it appears that the parties' mutual claims of anti-competitive behavior were settled in order to create an even less competitive market. Such conduct only increases the public interest in understanding the litigation.

Moreover, the records The Times seeks access to *are* specific to understanding the judicial process. The records concern the Court's determination that PIF and Mr. Al-Rumayyan are subject to jurisdiction and are *not* shielded by sovereign immunity. Had the Court reached a different outcome, it would have ended the Tour's Counterclaim. The parties have repeatedly emphasized in court proceedings and in public statements that this is a matter of first impression and the Court's determination set important legal precedent with far-reaching implications. *See, e.g.*, No. 23-15530 (9th Cir. Apr. 19, 2023), Dkt. 9. at 2 (PIF and Mr. Al-Rumayyan arguing that this Court engaged in a "novel interpretation" of the law, raising "issues of first impression as to the scope of sovereign immunity."); U.S. Senate, Homeland Sec. and Gov't Affairs Comm., Statement of PGA Tour COO (July 11, 2003) at 1, https://tinyurl.com/yzw2n6vy ("As part of the litigation, we were successful in securing a court ruling that [PIF] was not protected under sovereign immunity with respect to litigation discovery and potentially liability, something which had never been done before in the United States.").

The determination of this issue is not only dispositive to the Counterclaim in this case but impacts other jurisdictions and proceedings. For example, as part of its acquisition of English soccer club Newcastle United, PIF made legally binding representations in the United Kingdom

1  that it is not controlled by the Saudi state. *See, e.g.*, David Hytner and Ed Aarons, *Angry Premier
2  League clubs to demand talks over Newcastle ownership*, Guardian (Mar. 2, 2023),
3  https://tinyurl.com/yfukdzze. Those representations are obviously at odds with the PIF's
4  representations to this court.[3] And how PIF's investment activities implicate sovereign immunity
5  is an issue that has been and continues to be at issue in other litigation. *See, e.g.*, *Sakab Saudi
6  Holding Co. et al. v Al Jabri, et al.*, 2023 ONSC 2754, ¶¶ 10-14 (Can.), *available at*:
7  https://tinyurl.com/42uasb47; *In re Terrorist Attacks*, 349 F. Supp. 2d. 765 (SDNY 2005).
8         Nevertheless, the sealing in this case prevents the public from fully understanding the
9  merits of this Court's determination of these issues and the decision's impact. This is reflected,
10 for example, in academic analysis of the February 9 Order. *See, e.g.*, Prof. Ingrid Weuth Brunk,
11 *PGA v. LIV: Golf, Discovery, Immunity and PIF*, Transnat'l Lit. Blog (Mar. 9, 2023),
12 https://tinyurl.com/yzc6kkkd (analyzing why "the February 9 opinion . . . raises issues with
13 enduring significance for this case and others" but repeatedly noting that redaction and sealing
14 prevent full analysis of the issues). The Court's determination of key issues such as jurisdiction,
15 waiver, and immunity turned on sealed *facts* presented to the court. And among those factual
16 submissions, it appears that the Shareholder Agreement carried particular weight. *See, e.g.*, Dkt.
17 225 at 1-2 (asserting that the Shareholder Agreement "directly contradicted" PIF and Mr. Al-
18 Rumayyan's claims regarding sovereign immunity) & 4 (arguing the Shareholder Agreement
19 was "conclusive proof" that the court has jurisdiction over PIF and Mr. Al-Rumayyan). Without
20 access to the factual premise for the Court's decisions, the public cannot fully evaluate the
21 Court's reasoning or the parties' positions.

22     C.     **The Parties Fail to Show a Compelling Interest that Overcomes the Public Right of Access**
23
24        It appears that the primary (if not exclusive) basis for sealing the records at issue is the
25 asserted risk of competitive harm. But, contrary to the Tour and LIV's arguments, *see* Tour Opp.

---

[3] Whether PIF and Mr. Al-Rumayyan misled the court also is at issue in the records to which The Times seeks access, *see* Dkts. 225 & 230, matters that go to the heart of the purpose of public access. *See, e.g.*, *Richmond Newspapers v. Virginia*, 448 U.S. 555, 569 (1980) (public access discourages "misconduct of participants.").

8; LIV Opp. 9, it cannot reasonably be disputed that the parties are in a radically different competitive posture now to when the sealing orders were granted. A year ago, the Tour accused Saudi Arabia of using PIF and LIV to "sportswash the recent history of Saudi atrocities." Dkt. 108 at 54. The Tour Commissioner linked LIV to the 9/11 terrorist attacks. *See* PGA Tour, Twitter (June 12, 2022), https://tinyurl.com/3znfk4by. The Tour directly lobbied Congress to wield political influence against LIV and PIF's business activities, citing Saudi Arabia's record of human rights abuses. Sen. Chris Murphy. Twitter (June 6, 2023), https://tinyurl.com/3wsek66x. And LIV, for its part, asserted that "[e]liminating LIV is the Tour's avowed strategy" via "illegal bully tactics," Dkt. 378 at 2, 8, and also lobbied Congress. Stephanie Kirchgaessner, *US congressman accuses LIV CEO Greg Norman of pushing Saudi 'propaganda,'* Guardian (Sept. 22, 2022), https://tinyurl.com/mr3yetpj.

Now, the parties have announced that the Tour, LIV, and the European Tour will merge into a unified, for-profit LLC. *See* Press Release, PGA Tour, *PGA TOUR, DP World Tour and PIF announce newly formed commercial entity to unify golf* (June 6, 2023), https://tinyurl.com/mrxxjfmd. The parties have given joint statements and interviews in glowing terms about their "transformational partnership." *Id*. The Tour has asserted "[t]his will engender a new era in golf, for the better," and praised Mr. Al-Rumayyan for his "vision and collaborative and forward-thinking approach." *Id.* Mr. Al-Rumayyan, in turn, has praised the "partnership" for "unifying" golf, *id*., saying "instead of competing, we're going to be complemented" and confirming that PIF will invest "potentially billions of dollars" in the partnership. CNBC, *Full Transcript: CNBC's David Faber Speaks with PIF Governor Yasir Al-Rumayyan & PGA Tour Commissioner Jay Monahan on Announcement of LIV Golf Merging with PGA Tour* (June 6, 2023), https://tinyurl.com/ybpbunst. Tour leadership repeatedly has publicly emphasized how "circumstances changed" between the parties "from a confrontation to now being partners." ASAP Sports, *PGA Tour Media Conference Transcript* (June 6, 2023), https://tinyurl.com/3pczbf3f. As the Tour's Commissioner stated when announcing the deal, "We were competing against LIV" but the partnership will "take the competitor off the board, to have them exist as a partner." *Id.* The parties' attempts to distance themselves from these statements

are unavailing.

Finally, to the extent that sealed information already has been made public, the risk of harm obviously is mooted and the records should be unsealed. *Forbes Media LLC v United States*, 548 F. Supp. 3d 872, 882 (N.D. Cal. 2021) (denying sealing to information already made public: "[T]he cat's out of the bag. Secrecy is a one-way street: Once information is published, it cannot be made secret again." (quotation omitted)). For example, at a hearing on January 13, 2023, the Tour handed up to the court a Power Point presentation in support of its arguments that PIF and Mr. Al-Rumayyan are subject to jurisdiction and not shielded by immunity. A redacted copy of the presentation is available to the public. Dkt. 224-1. But it appears that certain information already has been disclosed. *Compare* Dkt. 224-1 at 7 (redacting the year LIV was founded and PIF's percentage ownership) *with* Dkt. 221 at 10:7-10:12 (transcript of proceedings); *and* Dkt. 238 at 3 ("PIF and Mr. Al-Rumayyan created LIV in 2021 . . . PIF owns at least 93% of LIV and controls its board"). The Times is troubled to see that the parties sought sealing for such high-level information, with no plausible likelihood of competitive harm. But to the extent that this and other redacted information already is publicly available, it should be unredacted.

## IV. CONCLUSION

For all of the reasons set out above, The Times respectfully requests that the Court grant its motion to intervene and issue an order unsealing the records in this case. To the extent that there are interests that continue to justify sealing, The Times respectfully requests that the Court consider whether redaction of specific portions of the records may be a more appropriate remedy than wholesale sealing.

DATED: July 18, 2023                                   THE NEW YORK TIMES COMPANY

                                                                By: /s/ Tanya Forsheit
                                                                    TANYA FORSHEIT
                                                                    DANA R. GREEN

                                                        *Attorneys for Non-Party Media Entity*
                                                        *The New York Times Company*

**Exhibit A**

For the court's convenience, The Times identifies below the lead docket number of the sealed or redacted records to which it seeks access, the date the records were filed with the court, a brief description of the records at issue, the nature of the sealing, the docket number of the parties' motion(s) requesting seal, and the docket number of the Court's order granting sealing.

| | Dkt No | Date filed | Description | Nature of the Sealing | Motion to Seal | Sealing Order |
|---|---|---|---|---|---|---|
| 1. | 148 | 11/9/22 | PGA Motion to Compel PIF/YAR's subpoena compliance and attachments filed under seal | Redacted and sealed | 147 | 373 |
| 2. | 166 | 11/22/22 | PIF/YAR Motion to Quash and Opposition to Dkt 148 Motion to Compel and attachments filed under seal | Redacted and sealed | 165 | 373 |
| 3. | 169 | 12/2/22 | PGA Response to Dkt. 166 PIF/YAR's Motion to Quash and attachments filed under seal | Redacted and sealed | 168 174 | 373 |
| 4. | 173 | 12/6/22 | PIF/YAR Reply iso Dkt. 166 Motion to Quash | Redacted | 172 177 | 373 |
| 5. | 209 | 1/9/23 | PGA Supplemental Brief iso Dkt. 148 Motion to Compel PIF/YAR's Subpoena Compliance and attachments filed under seal | Redacted | 208 222 | 373 |
| 6. | 223-1 | 1/17/23 | PGA Presentation from Hearing re Motion to Compel | Redacted | 223 240 | 373 |
| 7. | 225 | 1/17/23 | PGA Supplemental Memorandum iso Dkt. 148 Motion to Compel and attachment filed under seal | Redacted | | |
| 8. | 230 | 1/20/23 | PIF/YAR Response to Dkt. 225 PGA Supplemental Memorandum iso Dkt. 148 Motion to Compel | Redacted | 229 259 | 373 |
| 9. | 238 | 1/24/23 | PGA Motion to Add Counterclaim and attachments, including redacted Counterclaim | Redacted | 237 260 | 279 |
| 10. | 265/ 380 | 2/9/23 | Order Granting Motion to Compel and Denying Motions to Quash | Redacted | 277 281 | 266 |
| 11. | 322 | 3/10/23 | PGA Opposition to Dkt. 306 PIF/YAR's Motion for De Novo Review of February 9 Order | Redacted | 321 333 | 405 |
| 12. | 436 | 5/18/23 | PIF/YAR Motion to Dismiss | Redacted | 435 450 | N/A |