# EXHIBIT 10

DocuSign Envelope ID: 77CE3ECC-F312-4407-B705-7FD704EB5ED9
Case 5:22-cv-04486-BLF Document 453-11 Filed 03/07/23 Page 2 of 7
Case 5:22-cv-04486-BLF Document 428-11 Filed 02/07/23 Page 1 of 6

1  RACHEL S. BRASS, SBN 219301
      rbrass@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
3  San Francisco, California 94105-0921
   Telephone: 415.393.8200
4  Facsimile: 415.393.8306

5  *Attorneys for Plaintiff LIV Golf, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| MATT JONES, BRYSON DECHAMBEAU, PETER UIHLEIN, and LIV GOLF INC., <br><br>Plaintiffs, <br><br>v. <br><br>PGA TOUR, INC., <br><br>Defendant and Counter-Plaintiff, <br><br>v. <br><br>LIV GOLF INC., <br><br>Counter-Defendant. | CASE NO. CASE NO. 5:22-cv-04486-BLF <br><br>**DECLARATION OF JOHN LOFFHAGEN IN SUPPORT OF SEALING PORTIONS OF PGA TOUR, INC.'S OPPOSITION TO THE PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |
|---|---|

I, John Loffhagen, hereby declare and state:

1. I am the Chief Legal Officer of LIV Golf. I am authorized by LIV to make this statement in support of sealing portions of the PGA Tour, Inc.'s Opposition to the Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Othman Al-Rumayyan's Motion for Relief From Nondispositive Pretrial Order of Magistrate Judge. Dkt. No. 321. I make the statements in this declaration based on personal knowledge, personal experience, and personal participation in communications with business associates. If called and sworn as a witness, I could and would testify to the facts stated in this declaration.

2. The Tour's opposition quotes and describes documents related to LIV's corporate governance, relationship with investors, and specific negotiations with players, agents, and others. Disclosure of this information would cause significant competitive harm to LIV. As described further below, LIV is a non-public company that may take outside funding in the future. Disclosure of information about its current relationship with investors would prejudice its ability to obtain outside funding, either by deterring outside funders or by influencing the terms that they demand. Disclosure would also allow competitors to exploit information for competitive gain. Last, disclosure of LIV's negotiations with players and agents, including specific terms and offers, would constrain LIV's future bargaining power, as other players and agents may demand the same or better terms as those described. None of this information is public or otherwise disclosed.

3. Lines 3:10-14 of the Tour's objections describe a Shareholder Agreement that sets out LIV's relationship with its investors, including investor rights under that agreement. I understand that the Court has previously found compelling reasons to seal this information; the same compelling reasons for sealing apply here. This information is highly sensitive, and LIV goes to great lengths to keep it confidential. Disclosure of the contents of the Shareholder Agreement would harm LIV, including by prejudicing LIV's ability to obtain outside funding. The current investment structure gives investors rights that may deter outside funders and potential business partners if disclosed. If outside funders decide to invest, they may demand changes to LIV's investor rights or demand equivalent rights as those disclosed. Potential business partners may be similarly influenced. For example, under a franchise model, potential franchisees may demand different contract terms in light

of the investor rights disclosed or may forego doing business altogether for fear of influence by LIV's investors. Potential business partners may also infer that LIV lacks authority to enter certain terms and be deterred from negotiating with LIV.

4. Lines 3:16-19, 4:11-18, 4:22-27, 5:3-10, and 10:21-23 of the opposition describe investor involvement in certain LIV decision making. Disclosure of this information would harm LIV. Although this information does not expressly refer to LIV's governing documents, investor rights under those documents would be inferred from the course of conduct disclosed in portions of the opposition. The same harms apply as for disclosure of corporate governance agreements that expressly describe investors rights. For example, prospective outside funders or business partners may be deterred from doing business with LIV, may infer that LIV lacks authority to negotiate certain terms, or may demand a change in those terms in light of the investor rights implicitly disclosed in the opposition.

5. Lines 3:21-28 of the opposition describe certain work done by consultants related to LIV. Lines 4:24-27 further disclose confidential contacts with potential sponsors and broadcasters. The consultant work and private contacts are not publicly known and would prejudice LIV's ability to obtain future business. The PGA Tour has engaged in a systematic campaign to threaten or tarnish the reputation of any party associated with LIV. In light of the Tour's anticompetitive conduct and threats to any entity doing business with LIV, LIV's ability to negotiate and obtain business confidentially is critical to its continued viability as a business. Disclosure of LIV's confidential consultant work and private contacts would prejudice LIV's ability to negotiate and obtain business by deterring potential business partners from entering into confidential negotiations or contracts with LIV in expectation that the information may become public, including through other filings in this lawsuit.

6. Lines 4:4-7, 4:15-21, 4:24-27, and 5:1-2 of the opposition describe negotiations and recruitment of certain agents, golfers, sponsors, and broadcasters, including specific amounts offered and the strategy and messaging used for recruitment. Disclosure of this information would cause competitive harm if disclosed. Players may demand the same or better financial offers as the ones disclosed or change their demands in light of LIV's ability to pay. Competitors may also seek to counter LIV's messaging and recruitment strategy, for example, by countering the strategy and messaging disclosed at lines 4:6-7, 4:19-21, and 5:1-2. Moreover, not all of the entities disclosed in

these paragraphs entered into agreements with LIV. Disclosure of the identities of these entities would invite speculation about why these entities decided to do business (or not) with LIV and would expose them to unwanted attention. It would also deter potential partners from entering into confidential negotiations with LIV for the reasons explained above, for fear that confidential communications will be later disclosed regardless of whether a deal is concluded.

7. Lines 2:26-3:1 describe the financial arrangement surrounding LIV's formation, including capital and risk allocation. This information is not publicly known. Disclosure of LIV's financial information would cause competitive harm by disclosing LIV's access to capital and risk sensitivity. This information would affect negotiations with potential business partners, who could increase the terms they demand in light of LIV's access to capital and risk sensitivity, and would prejudice LIV's ability to obtain outside funding.

8. The following table summarizes that harm that would result from disclosure:

| Document | Harm From Disclosure |
|---|---|
| Memorandum of Law (ECF 321-1) at lines 3:10-14 | Contains highly confidential information about LIV's Shareholder Agreement setting out its relationship with its investors, including investor rights, disclosure of which would prejudice LIV's ability to obtain outside funding, pursue a franchise business model in the future, and obtain future business. |
| Memorandum of Law (ECF 321-1) at lines 3:16-19, 4:11-18, 4:22-27, 5:3-10, 10:21-23 | Contains confidential information about investor involvement in decision making, which implicitly discloses certain investor rights in corporate governance documents, disclosure of which would prejudice LIV's ability to obtain outside funding, pursue a franchise business model, and obtain future business. |
| Memorandum of Law (ECF 321-1) at lines 3:21-28, 4:24-27 | Contains information about confidential consulting work and confidential contacts with potential sponsors and broadcasters, disclosure of which would prejudice LIV's ability to enter into confidential negotiations or business deals in the future by creating risk that such business or communications would become public notwithstanding LIV's assurances of confidentiality. |
| Memorandum of Law (ECF 321-1) at lines 4:4-7, 4:15-21, 4:24-27, and 5:1-2 | Contains confidential information about specific negotiations and recruitment to certain players, agents, sponsors, and broadcasters, including financial offers and messaging and strategy used for recruitment. Disclosure of this information would cause competitive harm to LIV by constraining its ability to negotiate different terms, |

| | |
|---|---|
| | allowing competitors to counter LIV's strategy and messaging, inviting speculation about why certain entities decided not to do business with LIV, and prejudicing LIV's ability to obtain future business in confidential negotiations. |
| Memorandum of Law (ECF 321-1) at lines 2:26-3:1 | Contains confidential financial information about LIV's formation, including the capital and risk allocation, disclosure of which would cause competitive harm by increasing the terms business partners demand in negotiations and prejudicing LIV's ability to obtain outside funding. |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 17, 2023.

/s/ John Loffhagen

John Loffhagen

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Executed on March 17, 2023.

                                                    /s/ Rachel Brass

                                                    Rachel Brass