# DOCUMENT 6
# PUBLIC VERSION

KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
DAVID SILBERT - # 173128
dsilbert@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
SOPHIE HOOD - # 295881
shood@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
ANTHONY J. DREYER - (*pro hac vice*)
anthony.dreyer@skadden.com
KAREN L. LENT - (*pro hac vice*)
karen.lent@skadden.com
MATTHEW M. MARTINO - (*pro hac vice*)
matthew.martino@skadden.com
One Manhattan West
New York, NY 10001
Telephone:    212 735 3000
Facsimile:    212 735 2000

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
PATRICK FITZGERALD - (*pro hac vice*)
patrick.fitzgerald@skadden.com
155 North Wacker Drive
Chicago, Il 60606
Telephone:    312 407 0700
Facsimile:    312 407 0411

Attorneys for Defendant PGA TOUR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT JONES; BRYSON DECHAMBEAU; PETER UIHLEIN; and LIV GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PGA TOUR, INC., <br><br> Defendant. | Case No. 5:22-cv-04486-BLF <br><br> **PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF THE KINGDOM OF SAUDI ARABIA AND YASIR OTHMAN AL-RUMAYYAN'S COMPLIANCE WITH DOCUMENT AND DEPOSITION SUBPOENA; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Courtroom: 3 <br><br> Judge:    Hon. Beth Labson Freeman <br><br> Date Filed: August 3, 2022 <br><br> Trial Date: January 8, 2024 |

~~FILED UNDER SEAL~~

1

PGA TOUR, INC.,

2
                    Counterclaimant,

3
            v.

4
LIV GOLF, INC.,

5
                    Counterdefendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1 ......................................1

MEMORANDUM OF LAW .................................................................................................2

I.      INTRODUCTION ......................................................................................................2

II.     BACKGROUND .........................................................................................................4

     A.      The underlying action in the Northern District of California ...................................4

     B.      LIV's promises that PIF will cooperate with discovery ...........................................5

     C.      PIF and Mr. Al-Rumayyan's creation and control of LIV.......................................6

     D.      PIF and Mr. Al-Rumayyan's contacts with the United States and New
            York .........................................................................................................................8

     E.      PIF and Mr. Al-Rumayyan's claims of immunity ..................................................9

III.    LEGAL STANDARD ...............................................................................................11

IV.     ARGUMENT .............................................................................................................11

     A.      PIF and Mr. Al-Rumayyan control evidence that is central to the
            TOUR's defenses and counterclaim that is unavailable elsewhere ......................11

     B.      This Court has personal jurisdiction over PIF and Mr. Al-Rumayyan ..................13

            1.      This Court has personal jurisdiction over PIF under FSIA.......................13

                  a.      PIF's investment in, and management of, LIV
                         constitutes commercial activity in the United States ...................14

                  b.      PIF waived any immunity from jurisdiction by
                         consenting to the filing of LIV's lawsuit in the United
                         States. ...........................................................................................16

            2.      The Court has personal jurisdiction over PIF and Mr. Al-
                 Rumayyan under the traditional standard ..................................................17

                  a.      New York's long-arm statute gives this court a statutory
                         basis for exercising personal jurisdiction over PIF and
                         Mr. Al-Rumayyan .......................................................................17

                  b.      The exercise of specific personal jurisdiction over the
                         PIF and Mr. Al-Rumayyan comports with due process.................18

                  c.      The Court has "tag" personal jurisdiction over PIF and
                         Mr. Al-Rumayyan .......................................................................21

i

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBPOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

C.      The Court's personal jurisdiction is consistent with principles of international comity. ...............................................................................22

D.      The subpoenas are valid under Rule 45(c)...........................................................24

V.      CONCLUSION.............................................................................................................24

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBPOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
   457 F. Supp. 3d 401 (S.D.N.Y. 2020).......................................................................19

*Ambac Assurance Corp. v. U.S Bank Nat'l Ass'n*,
   2020 WL 526404, at *2 (S.D.N.Y. Feb. 3, 2020)......................................................11

*Andros Compania Maritima, S.A. v. Intertanker Ltd.*,
   718 F. Supp. 1215 (S.D.N.Y. 1989)..........................................................................20

*In re Application for Ord. Quashing Deposition Subpoenas*,
   *dated July 16, 2002*, 2002 WL 1870084, at *3 (S.D.N.Y. Aug. 14, 2002) .............22

*Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*,
   87 F.3d 413 (10th Cir. 1996) ....................................................................................19

*Ayyash v. Bank Al-Madina*,
   2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ..............................................................24

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002).................................................................................20, 21

*Broumand v. Joseph*,
   522 F. Supp. 3d 8 ......................................................................................................21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...................................................................................................18

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)...................................................................................................23

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)..................................................................................18, 19

*Embassy of the Arab Republic of Egypt v. Lasheen*,
   603 F.3d 1166 (9th Cir. 2010) ..................................................................................15

*Enzo Biochem, Inc. v. PerkinElmer, Inc.*,
   2014 WL 12789255 (S.D.N.Y. Feb. 19, 2014)..........................................................11

*Everard Findlay Consulting, LLC v. Republic of Suriname*,
   831 F. App'x 599 (2d Cir. 2020) ...............................................................................15

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBPOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir.1998) ................................................................................ *passim*

*Gucci Am., Inc. v. Weixing Li*,
  135 F. Supp. 3d 87 (S.D.N.Y. 2015)..............................................................17, 21

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) ............................................................................18, 19

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)................................................................................................18

*Jones et al. v. PGA Tour, Inc.*,
  22-cv-04486-BLF (N.D. Cal.) ................................................................................4

*Joseph v. Office of the Consulate Gen. of Nigeria*,
  830 F.2d 1018 (9th Cir. 1987) .............................................................................14

*Matar v. Dichter*,
  563 F.3d 9 (2d Cir. 2009) .....................................................................................23

*Ministry of Supply, Cairo v. Universe Tankships, Inc.*,
  708 F.2d 80 (2d Cir. 1983)...................................................................................15

*Nash v. Life Ins. Co. of N. Am.*,
  2009 WL 1181605 (N.D. Ill. Apr. 29, 2009) .....................................................19

*Negrete v. Citibank, N.A.*,
  2017 WL 3206330, at *1 (S.D.N.Y. July 26, 2017) ..........................................11

*Nike, Inc. v. Wu*,
  349 F. Supp. 3d 310 (S.D.N.Y.), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ......17

*Pablo Star Ltd. v. Welsh Gov't*,
  961 F.3d 555 (2d Cir. 2020)..................................................................................15

*Republic of Argentina v. NML Cap., Ltd.*,
  573 U.S. 134 (2014)..........................................................................................22, 23

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992)..........................................................................................14, 16

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006)....................................................................................23

*Samantar v. Yousuf*,
  560 U.S. 305 (2010).......................................................................3, 13, 14, 23

*Shapiro v. Republic of Bolivia.*,
  930 F.2d 1013 (2d Cir. 1991)................................................................................13

iv

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBPOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983)....................................................................................................23

**Federal Statutes**

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et. seq. ....................................................10

**State Statutes**

NY CPLR § 302....................................................................................................................17

**Rules**

Federal Rules of Civil Procedure Rule 26 ...................................................................11

Federal Rules of Civil Procedure Rule 45 ...................................................................11, 17, 24

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBPOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

**NOTICE OF MOTION AND MOTION**

Please take notice that PGA TOUR, INC. ("the TOUR") will and hereby does move, pursuant to the Federal Rules of Civil Procedure, Rule 45, for an Order Compelling Compliance with Subpoenas on the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and Yasir Othman Al-Rumayyan.  This motion will be heard at a time and date to be set by the Court if deemed necessary. Dkt. 144. This motion is brought pursuant to Rule 45 of the Federal Rules of Civil Procedure on the grounds that PIF and Mr. Al-Rumayyan have failed to provide deposition testimony and relevant, non-privileged documents responsive to the subpoenas served on them.

This Motion is based on this Notice of Motion and Motion to Compel PIF and Mr. Al-Rumayyan's Compliance with Subpoenas, the attached Memorandum of Law, the Declaration of Brook Dooley and accompanying exhibits, all pleadings and papers on file herein, and upon such further oral and documentary evidence as may be presented at or before the hearing on this Motion.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1**

Pursuant to Local Rule 37-1 the TOUR hereby certifies that its counsel has corresponded with counsel for PIF and Mr. Al-Rumayyan both by teleconference and in writing regarding the disputed issues, including one formal meet and confer call to address these disputed issues on October 10, 2022, and that such attempts to resolve these issues were unsuccessful.  *See* Declaration of Brook Dooley ("Dooley Decl.") at ¶ 2.

1
PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

# MEMORANDUM OF LAW

The TOUR respectfully files this memorandum of law in support of its motion to compel production of documents, information, and testimony from the Public Investment Fund of the Kingdom of Saudi Arabia and Yasir Al-Rumayyan.

## I.     INTRODUCTION

The PGA TOUR ("TOUR") moves to compel testimony and documents from the Public Investment Fund of the Kingdom of Saudi Arabia ("PIF") and its Governor Yasir Othman Al-Rumayyan in response to subpoenas (the "Subpoenas") properly served on them in the United States. The Subpoenas seek evidence that is relevant to the antitrust and breach of contract action that LIV Golf, Inc. ("LIV") and several golfers who joined LIV filed against the TOUR in the United States District Court for the Northern District of California. The Subpoenas also seek discovery relevant to the TOUR's counterclaims against LIV for tortious interference.

There is no serious dispute that PIF and Mr. Al-Rumayyan possess highly relevant discovery in the underlying action. PIF created, funded, and owns LIV; PIF and Mr. Al-Rumayyan have had effective control over LIV from its inception; and LIV's own Managing Director has publicly acknowledged that Mr. Al-Rumayyan is "the boss" of LIV. PIF's role is so central that one of the lawyers for PIF and Mr. Al-Rumayyan—who also represents LIV—represented to the court in the underlying action that he would "never insist [on] any sort of formal service" and would "cooperate" with the TOUR's efforts to take discovery from PIF.

But after agreeing to accept service of the Subpoenas, PIF and Mr. Al-Rumayyan have done a complete about face. They have flatly objected to the TOUR's Subpoenas, refused to produce a single responsive document, and declined to appear for deposition. Instead, PIF and Mr. Al-Rumayyan have asserted a panoply of spurious objections to forestall critical discovery the TOUR needs from LIV's owners. Notwithstanding their prior stated willingness to cooperate with discovery, PIF and Mr. Al-Rumayyan now assert that there is no court in the United States with jurisdiction over them; claim to be immune from discovery altogether; and deny that they are relevant to LIV's lawsuit in any way. The Court should overrule PIF and Mr. Al-Rumayyan's

2

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

baseless objections and order them to comply with the Subpoena for the following reasons.

**First**, PIF and Mr. Al-Rumayyan are directly relevant to LIV's lawsuit because they own and control LIV. PIF, the sovereign wealth fund of the Kingdom of Saudi Arabia, launched LIV in 2021 after an earlier golf tour that they sponsored to compete against the TOUR folded. PIF invested over $2 billion to launch LIV to compete with the TOUR, and it now has an 85% ownership stake in LIV. ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████ Dooley Decl. Ex. 40. Further, Mr. Al-Rumayyan, along with LIV CEO Greg Norman, is the public face of LIV, appearing regularly at LIV tournaments, participating in trophy presentation ceremonies at LIV events, and even announcing at a LIV event that any player who shoots a perfect score of 54 would be awarded $54 million. *Id.* Ex. 47.

**Second**, the discovery the TOUR seeks is relevant to its claims and defenses and unlikely to be obtained from LIV. For example, the TOUR seeks evidence related to PIF's financial projections for LIV and its assessment of LIV's business plans, both of which are relevant to LIV's claims that its entrance into the market was intended to have, and has had, procompetitive effects. PIF and Mr. Al-Rumayyan are likely to have testimony and documents on these topics that LIV does not because their involvement pre-dates LIV's creation. The TOUR also seeks evidence related to the competing tour that PIF created before LIV—called the Premier Golf League ("PGL")—which Plaintiffs claim the TOUR destroyed through anticompetitive conduct. Again, LIV will not have evidence regarding the PGL.

**Third**, PIF and Mr. Al-Rumayyan's jurisdictional objections do not withstand scrutiny in light of their substantial, purposeful, and commercial contacts with the United States. PIF and Mr. Al-Rumayyan claim sovereign immunity, but the Foreign Sovereign Immunities Act ("FSIA") actually "makes personal jurisdiction [over them] automatic" because of their extensive commercial activity in the United States. *Samantar v. Yousuf*, 560 U.S. 305, 325 n.20 (2010). Likewise, they waived any immunity claim by approving LIV's lawsuit in the United States that

3

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

seeks to enforce United States antitrust laws. Finally, given their extensive contacts with the United States—PIF, for example, currently holds $40 billion of equity in more than fifty companies publicly traded in the United States, *id.* Ex. 21,—their due process objections to the Court's jurisdiction fail.

Therefore, the Court should grant the TOUR's motion to compel in its entirety, order PIF and Mr. Al-Rumayyan to substantially complete their production of documents no later than November 18, 2022 (the deadline in the Scheduling Order in the underlying action), and appear for deposition at a mutually-agreeable date and time.

## II.    BACKGROUND

### A.    The underlying action in the Northern District of California

In 2021, PIF and its Governor, Mr. Al-Rumayyan, founded and financed LIV, a new professional golf tour built to compete with the PGA TOUR. Dkt. 83 (Am. Compl.) ¶ 102.[1] PIF, the sovereign wealth fund for the Kingdom of Saudi Arabia with approximately half a trillion dollars in assets under management, owns 85% of LIV. Dooley Decl. Exs. 1-2. LIV launched its inaugural season this year by signing top TOUR golfers to lucrative guaranteed contracts and inducing them to breach their agreements with the TOUR in the process.  *Id.* Ex. 32. LIV's inaugural season consists of  eight tournaments, including five in the United States. *Id.*

On August 3, 2022, eleven professional golfers (the "Player Plaintiffs") who had recently left the TOUR to sign with LIV filed a lawsuit against the TOUR in the United States District Court for the Northern District of California asserting antitrust and breach of contract claims. Dkt. 1 (Compl.) ¶ 298-345. Plaintiffs alleged that the TOUR is an "entrenched monopolist" engaged in anticompetitive behavior, including suspending them from the TOUR in retaliation for joining LIV; "threaten[ing] sponsors, vendors, and agents to coerce players to abandon opportunities to play in LIV Golf events"; and "orchestrat[ing] a per se unlawful group boycott with the European Tour to deny LIV Golf access to" to elite golfers. *Id.* ¶¶ 1-3. Three of the Player Plaintiffs simultaneously sought a temporary restraining order seeking to force the TOUR to allow them to

---

[1] All docket references are to the underlying action, *Jones et al. v. PGA Tour, Inc.*, 22-cv-04486-BLF (N.D. Cal.).

participate in the TOUR's season-ending championship, the FedEx Cup Playoffs. Dkt. 2. The

Court denied the TRO request. Dkt. 63. Two weeks later, LIV—represented by the same two law

firms as the Player Plaintiffs—joined the lawsuit in an Amended Complaint that added claims for

tortious interference with contract. Dkt. 83. The TOUR has since counterclaimed against LIV for

tortious interference with the TOUR's contracts. Dkt. 108 (TOUR Answer).

**B.      LIV's promises that PIF will cooperate with discovery**

After the Court denied Plaintiffs' TRO and shortly before LIV joined the case, the Court

held a status conference to address Plaintiffs' request for an expedited case schedule. Dkt. 71,

Dooley Decl. Ex. 4. Counsel for the TOUR expressed concern about an expedited schedule,

noting that the TOUR expected to seek discovery from PIF as an owner and "key decision maker"

for LIV, and that the TOUR was concerned about how long such discovery would take given that

Saudi Arabia is not a signatory to the Hague Convention and counsel for LIV and Plaintiffs had

not yet agreed to accept service of a subpoena. Dooley Decl. Ex. 4 at 9. Plaintiffs' counsel called

the TOUR's concern a "non issue" and accused the TOUR of "throw[ing] as much furniture in

the way [to] avoid th[e] trial for as long as possible." *Id.* at 14. Plaintiffs' counsel assured the

Court that "to the extent there's appropriate discovery of the Public Investment Fund, we will find

a way to cooperate with that," that they would "never insist that [the TOUR] do any sort of formal

service," and that discovery of PIF would "come together swimmingly." *Id.*

Following the status conference, one of the law firms representing LIV and the Player

Plaintiffs informed the TOUR that it would be representing PIF and Mr. Al-Rumayyan. The

TOUR then negotiated with counsel for PIF and Mr. Al-Rumayyan a letter agreement (the

"Service Agreement") pursuant to which they agreed to treat the TOUR's subpoenas "as if the

PGA Tour had personally delivered a copy of" the subpoenas to Mr. Al-Rumayyan or an officer

or managing agent of PIF in the United States. Dooley Decl. Ex. 5.

Consistent with the Service Agreement, the TOUR then served the "Subpoenas" on PIF

and Mr. Al-Rumayyan on September 22, 2022. *Id.* The Subpoenas seek, among other evidence,

testimony and documents related to PIF's management and promotion of LIV; its decision-

making relating to LIV; its involvement in the recruiting of professional golfers to join LIV; PIF

5
PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

and LIV's objectives in entering the market for professional golf events; and PIF's funding and
promotion of the PGL. Dooley Decl. Exs. 6-7. The Subpoenas identify New York City as the
place of compliance because PIF maintains an office there and Mr. Al-Rumayyan frequently
appears there on PIF business.

As explained in greater detail in Section II.D., notwithstanding their counsel's
representations to the Court regarding their willingness to facilitate discovery from PIF and
notwithstanding their agreement to accept service of the subpoenas, PIF and Mr. Al-Rumayyan
now refuse to produce any documents whatsoever or appear for deposition. Instead, they now
take the position that no court in the United States has jurisdiction over them, they are immune
from compulsory process, and they have no information or documents relevant to the case. That is
all incorrect, as discussed further below.

### C.    PIF and Mr. Al-Rumayyan's creation and control of LIV

Founded in 1971, PIF was "reborn" in 2015 with a mandate to further Saudi Arabia's
"Vision 2030"—an effort to diversify Saudi Arabia's economy, alleviate its dependence on oil
and better integrate itself with the international economy. Dooley Decl. Exs. 8-9. Part of PIF's
Vision 2030 strategy is to invest in sports—especially those popular among the investment class.
*Id*. Ex. 10. In addition to its investment in a Formula One team and an English Premier League
soccer club, PIF sponsored and funded the PGL in 2019. *Id*. Ex. 50. When the PGL folded, PIF
created LIV in 2021. *Id*. Ex. 10, 50. Dkt. 83 ¶ 77-78. To date, PIF holds 85% of the equity in
LIV—which is expected to increase to 90% because LIV "will not take outside money"—and has
committed at least $2 billion of funding to the upstart tour. Dooley Decl. Exs. 2, 46. LIV has used
PIF's funds to pay eight- and nine-figure advances to lure certain TOUR golfers away from the
TOUR and tens of millions of dollars in tournament purses. *Id.* Exs. 2, 11-13.

PIF's involvement in LIV is not limited to public and financial support. Documents
produced by LIV indicate that PIF and Mr. Al-Rumayyan in particular play a direct role in
managing LIV's day-to-day affairs. ████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████ *Id.* Exs. 15, 47. PIF

1 ████████████████████████████████████████████

2 ███ *Id.* Ex. 40. ████████████████████

3 █████████████████████ *id.* Ex.16, ████████████████████

4 ████████████ *id.* Ex. 17. The highest levels of LIV management report to Mr. Al-Rumayyan,

5 who has led PIF since 2015, first as managing director and now as Governor. For example, in

6 July 2022, one LIV executive wrote that they "need to show [Mr. Al-Rumayyan] how we have

7 looked to change the narrative" with respect to LIV tournaments, and that they "need to get him

8 comfortable that [they] are moving things in the right direction." *Id.* Ex. 18.  In a recent New

9 Yorker article, Majed Al-Sorour, LIV's Managing Director, was quoted as referring to Mr. Al-

10 Rumayyan as "the boss." *Id.* Exs. 19, 50.

11  Mr. Al-Rumayyan—a Harvard educated banker and reported golf enthusiast—is also the

12 public face of PIF's involvement in LIV. *Id.* Ex. 20. He has appeared at LIV tournaments in the

13 United States, including those at the Trump resort in Bedminster, New Jersey in July 2022, and in

14 Sugar Grove, Illinois, in September 2022. He has also participated in trophy ceremonies at LIV

15 events with LIV CEO Greg Norman and announced that any golfer who shot a perfect score of 54

16 would be awarded with $54 million. *Id.* Ex. 47. At those tournaments, Mr. Rumayyan has been

17 photographed in LIV-branded apparel alongside Mr. Norman, TOUR-turned-LIV players who

18 would go on to sue the TOUR in the underlying action, and other prominent figures in United

19 States golf. Pictured below, for example, is (1) Mr. Norman, Mr. Al-Rumayyan, Mr. Al-Sorour,

20 and former Player Plaintiff Pat Perez photographed at the LIV Golf Invitational in Bedminster,

21 New Jersey, on July 31, 2022,[2] (2) Former President Donald Trump with Mr. Al-Rumayyan and

22 Mr. Al-Sorour at the LIV Golf Invitational in Bedminster, New Jersey, on July 30, 2022,[3] and (3)

23 Mr. Al-Rumayyan with former Player Plaintiff Hudson Swafford, Mr. Al-Sorour, and TOUR-

24 turned-LIV player Harold Varner III at the LIV Golf Invitational in Sugar Grove, Illinois on

---

25 [2] Mr. Al-Rumayyan (in blue jacket) with Greg Norman, Mr. Al-Sorour, Pat Perez at Bedminster,

26 Getty Images, available at: https://www.gettyimages.com/detail/news-photo/greg-norman-ceo-and-commissioner-of-liv-golf-his-excellency-news-photo/1412089248?adppopup=true

27 [3] Mr. Al-Rumayyan with others at Bedminster, Getty Images, available at:

28 https://www.gettyimages.com/detail/news-photo/former-president-donald-trump-yasir-al-rumayyan-governor-of-news-photo/1242204646?adppopup=true

7

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

1  September 15, 2022.[4]

  

### D.  PIF and Mr. Al-Rumayyan's contacts with the United States and New York

In furtherance of its mission to advance Saudi Arabia's "Vision 2030," PIF has invested heavily in the United States in recent years. As of June 2022, PIF had invested over $40 billion in more than 50 companies publicly traded in the United States. *Id*. Ex. 21. This includes a $17 billion stake in Lucid, an electric vehicle manufacturer, a $1.5 billion stake in Uber, where PIF has a board seat, and substantial investments in Costco, Starbucks, and Microsoft among others. *Id*. Exs. 21, 41, 48. PIF has also committed $20 billion to Blackstone's Infrastructure Fund Program, which is principally invested in infrastructure assets in the United States. *Id*. Ex. 21. To manage its United States investments, PIF created a wholly owned United States-based subsidiary, and it announced in February 2019 that it intended to open offices in New York and San Francisco. *Id.* Exs. 23-24. By February of this year, PIF's New York offices had opened. *Id.* Ex. 24.

Mr. Al-Rumayyan himself regularly conducts PIF-related business in the United States, and New York in particular. *Id.* Exs. 25-27. For example, in addition to his July 2022 trip to Bedminster, N.J. for the LIV event (located 43 miles from New York City), Mr. Al-Rumayyan spoke at a summit hosted by a PIF-run organization in New York City in September 2022, and later appeared at the U.S. Chamber of Commerce. *Id.* Exs. 28, 29. In November 2022, Mr. Al-Rumayyan is expected to appear yet again in New York at a dinner hosted in his honor, where he

---

[4] Mr. Al-Rumayyan with others in Chicago, Getty Images, available at:
https://www.gettyimages.co.uk/detail/news-photo/harold-varner-iii-of-niblicks-gc-putts-on-the-third-green-news-photo/1424000044?phrase=yasir%20al-rumayyan&adppopup=true

8

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

will receive an award in recognition of his "proven commitment to positive professional cooperation between the U.S. and the Middle East and North Africa." *Id.* Ex. 30.

LIV—funded and operated by PIF and Mr. Al-Rumayyan—also has a substantial presence in the United States. LIV is a Delaware corporation with its principal place of business in New York City, it has recruited 20 American golfers to join the LIV tour, and five of the eight LIV events held in 2022 were located in the United States. *Id.* Ex. 31-32. Of the fourteen LIV tournaments currently scheduled for 2023, nine will occur in the United States. *Id.* Ex. 33. In fact,

*Id.* Ex. 17.

*Id.*

*Id.*

*Id.* Ex. 17. Indeed, the central claim in LIV's Compliant is that the TOUR is frustrating its attempts to enter the market for elite golf events in the United States, and LIV alleges that, because of the TOUR, it "has been unable to broadcast its events in the United States." Dkt. 83 ¶¶ 266, 331.

PIF and Mr. Al-Rumayyan conduct other business related to PIF's investments in golf in the United States, and in New York in particular. In October 2021, for example, Mr. Al-Rumayyan personally invited LIV CEO Greg Norman to an ARAMCO event in New York City. Dooley Decl. Ex. 34. And later this month, another PIF-backed golf tournament will take place at the Trump Golf Links at Ferry Point in the Bronx. *Id.* Ex. 35.

### E.    PIF and Mr. Al-Rumayyan's claims of immunity

On October 3, 2022, despite their earlier promises to cooperate with discovery, PIF and

9

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

Mr. Al-Rumayyan responded to the TOUR's Subpoenas by refusing to produce a single document or appear for a deposition. Instead, they flatly objected to the Subpoenas and asserted that (1) they are not subject to the personal jurisdiction of any United States court in connection with the Subpoenas; (2) it would be unreasonable for any United States court to exercise personal jurisdiction over them under the principles of international comity; and (3) the deposition subpoenas did not comply with the 100-mile rule of Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure because neither PIF nor Mr. Al-Rumayyan regularly transacts business in person within 100 miles of New York City. *Id.* Exs. 36-37. Both PIF and Mr. Al-Rumayyan declined to testify at a deposition and refused to search for or produce documents in response to each document request.

On October 10, counsel the TOUR met and conferred with counsel for PIF and Mr. Al-Rumayyan regarding their refusal to respond to the Subpoenas. *Id.* ¶ 2; Ex. 38. They confirmed their position that they are not subject to the jurisdiction of any United States court in connection with the Subpoenas, that they did not regularly transact business in person within 100 miles of New York City for purposes of Rule 45(c)(1)(A), and that principles of international comity precluded any compulsory production. *Id.* They added that the discovery that the TOUR seeks is in no way relevant to its defenses or claims in the LIV lawsuit and raised, for the first time, the objection that they are immune under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et. seq. Although PIF and Mr. Al-Rumayyan suggested that they would consider voluntarily producing certain categories of documents, they did not identify a single category of documents that they were willing to produce. *Id.* ¶ 2; Ex. 39.

In an effort to reach some compromise, the TOUR agreed on October 12, 2022, to withdraw over half of its document requests to both PIF and Mr. Al-Rumayyan and to withdraw five deposition topics to PIF. *Id.* PIF and Mr. Al-Rumayyan have continued to refuse to comply even with these narrowed requests. Accordingly, the TOUR now brings this motion to compel, seeking an order requiring PIF and Mr. Al-Rumayyan to comply with the subpoenas as

10

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

1  narrowed.[5]

2  **III.   LEGAL STANDARD**

3       Upon the filing of a motion to compel, the party objecting to the discovery requests "bears

4  the burden of showing why discovery should be denied." Negrete v. Citibank, N.A., 2017 WL

5  3206330, at *1 (S.D.N.Y. July 26, 2017). The scope of permissible discovery for subpoenas

6  issued under Rule 45 of the Federal Rules of Civil Procedure is equivalent to other discovery

7  promulgated under Rule 26. Ambac Assurance Corp. v. U.S Bank Nat'l Ass'n, 2020 WL 526404,

8  at *2 (S.D.N.Y. Feb. 3, 2020). The "allowable scope of discovery has been construed broadly to

9  encompass any matter that bears on, or that reasonably could lead to other matter that could bear

10  on, any issue that is or may be in the case." *Enzo Biochem, Inc. v. PerkinElmer, Inc.*, 2014 WL

11  12789255, at *2 (S.D.N.Y. Feb. 19, 2014) (cleaned up).

12  **IV.   ARGUMENT**

13       **A.   PIF and Mr. Al-Rumayyan control evidence that is central to the TOUR's
              defenses and counterclaim that is unavailable elsewhere**

14

15       Though not named as parties to the underlying litigation, PIF and Mr. Al-Rumayyan are,

16  by all indications, the money and the authority behind LIV, its entry into the United States golf

17  market, and the underlying lawsuit. Accordingly, the discovery the TOUR seeks is not only

18  relevant, but central, to the underlying litigation.[6]

19       ***First,*** the TOUR seeks evidence concerning PIF's financial projections for LIV. Dooley

20  Decl., Exs. 6-7. This evidence is relevant to LIV's claim that its entrance into the market has

21  produced pro-competitive effects on golf and player compensation. The TOUR, on the other

22  hand, contends that PIF's commitment of billions of dollars to LIV without any discernible plan

23  for recouping its investment reflects other motivations. *Id*., Exs. 11-13. PIF and Mr. Al-

24  ───────────────────────

25  [5] PIF and Mr. Al-Rumayyan did reach agreement with the TOUR that this Motion to Compel is
    suitable for transfer to the Northern District of California, where the underlying action is pending,
26  under Rule 45(f) of the Federal Rules of Civil Procedure. Accordingly, concurrently with the
    filing of this Motion, the TOUR has filed an unopposed Motion to Transfer.

27  [6] For its part, LIV—represented by the same counsel as PIF and Mr. Al-Rumayyan—has
    conceded the relevance of PIF and Mr. Al-Rumayyan, first by telling the Court that it would
28  facilitate discovery from LIV and then by agreeing to produce documents and communications
    related to PIF and Mr. Al-Rumayyan without objection.  Dooley Decl. Exs. 6, 49.

11
PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

Rumayyan's reasons for backing LIV are thus relevant to assessing whether the compensation paid to golfers by LIV reflects competitive pricing or reflects Saudi Arabia's attempt at "sportswashing,"—a strategy by which governments use sports to improve their reputation for human rights abuses and other atrocities—with no real expectation of profitability. Given PIF and Mr. Al-Rumayyan's central role in conceiving and approving of LIV's financial model, they are likely to have evidence relevant to these issues not in the possession of LIV.

*Second,* the TOUR seeks evidence relating to PIF's communications with PGA TOUR golfers and the compensation and agreements offered to them. *Id.* Exs. 6-7. This evidence is integral to the TOUR's tortious-interference-with-contract counterclaim against LIV because those communications cover the former TOUR members that were induced to breach their contracts with the TOUR. Relevant evidence of PIF and LIV's courting of these players will not be exclusively in LIV's custody. Indeed, PIF and Mr. Al-Rumayyan appear to have established personal relationships with PGA TOUR golfers, including those that went on to sue the TOUR, and recruited TOUR members to join a competing tour prior to the formal establishment of LIV. Dooley Decl. Exs. 50, 52; Dkt. 83 ¶ 79.

*Third*, the TOUR seeks evidence related to PIF's communications with other golf tours and with potential broadcasters, advertisers, sponsors, and vendors, all of which is relevant to LIV's claim that the TOUR conspired to keep LIV out of the "golf ecosystem." Indeed, LIV's Amended Complaint alleges that PIF met with the DP World Tour (formerly the European Tour) in July 2021, to discuss a partnership, at which meeting the DP World Tour acknowledged its fear of reprisal from the TOUR.  Dkt. 83 (Am. Compl.) ¶ 138. PIF cannot deny the relevance of, or its involvement in, these communications.

*Fourth,* the TOUR seeks evidence that its enforcement of its Regulations serves the pro-competitive purpose of protecting the TOUR's reputation from association with LIV and LIV players' controversial Saudi Arabian backers. The TOUR thus seek documents and testimony relating to reasons and concerns given by sponsors, media corporations, advertisers, and tournament hosts for why they did or did not agree to work with LIV or PIF. Dooley Decl., Exs. 6-7. Such evidence will illustrate the kind of fallout from which the TOUR is trying to insulate

1  itself by distancing itself from LIV and LIV players. This evidence is also likely to be uniquely in

2  PIF and Mr. Al-Rumayyan's hands given their proximity to the Saudi government, their

3  sponsorship of LIV, and their recruiting efforts on behalf of LIV.

4       **Fifth**, the TOUR seeks evidence related to LIV's allegation that it blocked the entrance

5  into the market of the PGL, the first startup golf tour funded by PIF. Plaintiffs allege in the

6  Complaint that PIF funded the PGL as competitor to the TOUR, but the TOUR destroyed its

7  viability. Dkt. 83 ¶¶ 77-81. The TOUR is entitled to defend itself against these allegations by

8  seeking discovery regarding PIF's involvement in PGL and the true reasons for PGL's collapse.

9  Evidence regarding these allegations will be exclusively in PIF's—and not LIV's—custody.

10      PIF and Mr. Al-Rumayyan's burden objections, which are supported by nothing more

11 than attorney say-so, are meritless. Their refusal to identify even a single category of documents

12 they are willing to produce (even after the TOUR withdrew more than half of its requests) shows

13 that these objections are not made in good faith. PIF and Mr. Al-Rumayyan's true position is not

14 that it would be too burdensome to produce the requested documents but that they are beyond the

15 authority of any court of the United States. As explained below, they are not.

16     **B.**    **This Court has personal jurisdiction over PIF and Mr. Al-Rumayyan**

17         **1.**    **This Court has personal jurisdiction over PIF under FSIA**

18      The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602, *et seq.*,

19 provides that foreign states, as well as their "agenc[ies]" and "instrumentalit[ies]" are immune

20 from the jurisdiction of United States courts, subject to certain exceptions. 28 U.S.C. § 1604,

21 1603(a). Importantly, when one of those exceptions applies, FSIA "***makes personal jurisdiction***

22 ***over a foreign state automatic***" in federal courts, so long as there was valid service of process.

23 *Samantar v. Yousuf*, 560 U.S. 305, 325 n.20 (2010) (citing 28 U.S.C. § 1330) (emphasis added);

24 *see also Shapiro v. Republic of Bolivia.*, 930 F.2d 1013, 1020 (2d Cir. 1991). Service may be

25 obtained under FSIA through the delivery of documents "in accordance with any special

26 arrangement for service between the plaintiff and the agency or instrumentality" of the foreign

27 state. 28 U.S.C. § 1608(b)(1).

28

Both elements necessary to establish jurisdiction under FSIA are met here as to PIF.[7]

***First***, there is no question that PIF was validly served. PIF agreed to accept service of the Subpoena and treat it as if it had been "personally delivered" to an officer or managing agent of PIF "in the United States." Dooley Decl., Ex. 5. ***Second***, PIF is subject to at least two FSIA exceptions: the "commercial activities exception" set out in 28 U.SC. § 1605(b), and the waiver exception set out in 28 U.SC. § 1605(a). In light of the evidence offered below that these FSIA exceptions apply, it is PIF's burden to prove otherwise, which it cannot carry. *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1021 (9th Cir. 1987).

### a.   PIF's investment in, and management of, LIV constitutes commercial activity in the United States

Under the commercial activities exception, no foreign state, agency, or instrumentality of the state is immune from the jurisdiction of United States courts for any action based upon (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Whether a state's activities are commercial in nature is determined "by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* § 1603(d); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). To constitute "commercial activity carried on in the United States by a foreign state," the commercial activity must have "substantial contact with the United States." 28 U.S.C. § 1603(e).

PIF's creation and control of LIV is quintessential "commercial activity carried on in the United States." PIF has invested ***billions of dollars*** into LIV, a United States company with its principal place of business in the New York City. LIV has used PIF's funding to enter the market for "the purchase of services of professional golfers for elite events in the United States." Dkt. 83 ¶ 266. PIF has funded LIV's headline-grabbing contracts with former TOUR golfers, many of

---

[7] Individual foreign officials such as Mr. Al-Rumayyan (to the extent he is in fact an "official" and not merely a state-employed investor) are not foreign states entitled to immunity from suit under FSIA. *Samantar*, 560 U.S. at 325.

1    whom live in the United States, as well as the large purses, free tickets and the "festival-like"

2    atmosphere at LIV's United States events. Dooley Decl. Ex. 3. And, as discussed above, far from

3    being a passive investor, PIF actively manages LIV's day-to-day activities and maintains a

4    prominent in-person presence at LIV's events in the United States.

5            Courts uniformly find that PIF's activities—directing advertisements and services at the

6    United States public and entering into or funding contracts carried out in the United States—meet

7    the "substantial contact" standard of section 1603(e). For example, the Second Circuit held that

8    the commercial activities exception applied to a foreign government's distribution of national

9    promotional materials for display in the United States where those materials were printed under

10   contract with New York companies and directed at the United States public. *See Pablo Star Ltd.*

11   *v. Welsh Gov't*, 961 F.3d 555, 565 (2d Cir. 2020); *see also Everard Findlay Consulting, LLC v.*

12   *Republic of Suriname*, 831 F. App'x 599, 601 (2d Cir. 2020) (applying the commercial activities

13   exception where the foreign government "chose to deal with an American company," "the

14   contract targeted the U.S. travel market," and "many aspects of the contract were performed in

15   New York.").

16           Even in circumstances where there is no evidence of the foreign entity's *direct*

17   involvement in the commercial activity underlying the action, evidence that the foreign entity

18   *financed* the commercial activity is sufficient to apply the commercial activities exception.

19   *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1171 (9th Cir. 2010)

20   (applying commercial activities exception to insurance dispute where the premiums were paid by

21   Egypt, the insurance plan was otherwise funded by the Egyptian Government, and the

22   Government of Egypt approved all documents related to the administration of the plan.). Indeed, a

23   foreign state's substantial contact with the United States "can be met by as little activity as

24   receiving financing from a private or public lending institution located in the United States."

25   *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir. 1983) (cleaned

26   up). If the receipt of financing from the United States is sufficient to meet the commercial

27   activities exception, then the billions of dollars that PIF has invested into LIV's United States-

28   based operations and its active management of LIV surely subjects PIF to the same exception.

To the extent that PIF insists that its relationship to LIV is merely that of a foreign investor to a United States subsidiary, its actions in the United States and evidence of its close control over LIV belie that position. Indeed, there is plenty of evidence that PIF has exercised control over LIV in the United States, including Mr. Al-Rumayyan's repeated appearance at LIV events in the United States. But even if PIF's management of LIV mostly occurs abroad, such activity nevertheless constitutes commercial activity that "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2)(3). Thus, whatever commercial activity PIF has carried out in connection with LIV *outside* of the United States still grants this Court jurisdiction to enforce these Subpoenas.

Finally, PIF's actions in creating, funding and overseeing LIV are fundamentally commercial even if PIF is funding LIV in order to burnish its national reputation rather than to make a profit. FSIA directs courts to consider the *nature* of the state's activity—and not its purpose—in determining the activity's commercial status. 28 U.S.C. 1603(d); *Republic of Argentina*, 504 U.S. at 614."[T]he question is not whether the foreign government is acting with a profit motive… Rather, the issue is whether the particular actions that the foreign state performs… are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.*

b.   **PIF waived any immunity from jurisdiction by consenting to the filing of LIV's lawsuit in the United States.**

FSIA also establishes automatic personal jurisdiction over any foreign state, agency, or instrumentality that "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). On information and belief, PIF waived its immunity by authorizing LIV and several players to file their lawsuit against the TOUR in the Northern District of California. LIV and several players—represented by the same lawyers—filed a lawsuit against the TOUR *(1) in the United States, (2) invoking United States antitrust law, (3) seeking entry into a market that it defines, in part, as "the purchase of services of professional golfers for elite events in the United States."* Dkt. 83 ¶ 266 (emphasis added). In the few documents that LIV has produced thus far, it is apparent that PIF has taken a controlling hand in LIV's every move—almost certainly to include its decision to file the underlying lawsuit. Indeed, ██████████████

16

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

1

2

3 ██████ Dooley Decl. Ex. 2, 40. PIF should not be permitted to seek out the protection of

4 United States courts and United States law only to disclaim United States courts' authority to

5 compel discovery necessary to the TOUR's defenses and claims. Whether it was aware of,

6 authorized, or directed the filing of the underlying litigation, PIF has subjected itself to the

7 authority of United States courts in connection with LIV's lawsuit.

8 **2.    The Court has personal jurisdiction over PIF and Mr. Al-Rumayyan under the traditional standard**

9

10 Both Saudi Parties are also subject to the Court's jurisdiction under the traditional test for

11 personal jurisdiction. Courts must satisfy three requirements to exercise personal jurisdiction over

12 a nonparty for purposes of enforcing a Rule 45 subpoena: "(1) the [nonparty] must have been

13 properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and

14 (3) the exercise of personal jurisdiction must comport with constitutional due process." *Gucci*

15 *Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citing *Licci ex rel. Licci v.*

16 *Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59–60 (2d Cir. 2012)). Here, PIF and Mr. Al-

17 Rumayyan were properly served, and the other two elements are easily met here.

18 **a.    New York's long-arm statute gives this court a statutory basis for exercising personal jurisdiction over PIF and Mr. Al-Rumayyan**

19

20 New York's long-arm statute authorizes personal jurisdiction over foreign third parties in

21 the context of Rule 45 subpoenas where (1) the non-domiciliary in person or through an

22 agent transacts any business within the state, and (2) there is a "connection between the

23 nonparty's contacts with the forum and the discovery order at issue." *Nike, Inc. v. Wu*, 349 F.

24 Supp. 3d 310, 328 (S.D.N.Y.), *aff'd,* 349 F. Supp. 3d 346 (S.D.N.Y. 2018); N.Y. CPLR § 302.

25 The second prong of this analysis "does not require a causal relationship between the business

26 transaction and legal claim asserted, only that the latter is not completely unmoored from the

27 former." *Id.* (cleaned up).

28 PIF and Mr. Al-Rumayyan transact business within New York, and those transactions

17

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

have a connection to the legal claims asserted by LIV and the evidence the TOUR seeks. PIF has

invested tens of billions of dollars into companies traded on New York exchanges. Dooley Decl.

Ex. 41. PIF created a United States subsidiary based in New York City to manage these

investments, and it maintains a New York City office. Dooley Decl. Exs. 24, 42. Mr. Al-

Rumayyan regularly visits New York to speak publicly on PIF's behalf, attending PIF-organized

events in at least 2017, 2018,  2019, 2021, and 2022. *See* Dooley Decl., Exs. 25-28 ("New York:

As the clocks ticked to midnight in New York's Plaza Hotel, Yasir Al-Rumayyan was nearing the

end of a busy day in a hectic week.").

  Moreover, PIF and Mr. Al-Rumayyan regularly transact business specifically related to

LIV in New York. LIV established its principal place of business in New York. Dkt. 83 ¶ 23. T

. Dooley Decl. Ex. 15. The documents also reference PIF's "New York lawyers." *Id.*

The strong connection between PIF and Mr. Al-Rumayyan's business conduct in New York, the

subject of this litigation, and the TOUR's discovery requests satisfies the New York long-arm

statute and confers this court with personal jurisdiction.

    **b. The exercise of specific personal jurisdiction over the PIF and Mr. Al-Rumayyan comports with due process**

  Due process traditionally requires a defendant—or here, subpoenaed party—have

sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014).

Jurisdiction exists where those contacts are directed "purposefully" at the forum, and the

litigation arises from those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In assessing specific jurisdiction over nonparties, the Second Circuit looks *first* to "the connection

between the nonparty's contacts with the forum and the [discovery] order at issue" and *second,*

"decide[s] whether exercising jurisdiction for the purposes of the [discovery] order would

comport with fair play and substantial justice." *In re del Valle Ruiz*, 939 F.3d 520, 529 (2d Cir.

18

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

1  2019) (quoting *Gucci Am.*, 768 F.3d at 137).

2  When a case arises under federal antitrust law, the relevant forum for determining whether

3  a court has personal jurisdiction is the United States as a whole. *Allianz Glob. Invs. GmbH v.*

4  *Bank of Am. Corp.*, 457 F. Supp. 3d 401, 408 (S.D.N.Y. 2020) (subsequent history omitted); *see*

5  *also Gucci Am., Inc.*, 768 F.3d at 142 n.21 (collecting cases) ("when a civil case arises under

6  federal law and a federal statute authorizes nationwide service of process, the relevant contacts

7  for determining personal jurisdiction are contacts with the United States as a whole.") Under this

8  approach, "[s]pecific contacts with the district in which enforcement is sought . . . are

9  unnecessary." *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87

10  F.3d 413, 417 (10th Cir. 1996). The underlying case here arises from federal antitrust law.

11  Accordingly, the Court should look to PIF and Mr. Al-Rumayyan's contacts with the entire

12  United States to determine whether personal jurisdiction over them comports with due process.

13  In creating, funding, and overseeing LIV, PIF and Mr. Al-Rumayyan have had abundant,

14  purposeful contact with the United States, which far exceed the requirement for "some *causal*

15  relationship" between PIF and Mr. Al-Rumayyan's United States contacts and the underlying

16  litigation. *In re del Valle Ruiz*, 939 F.3d at 530. As noted above, PIF founded and funded LIV.

17  PIF manages LIV closely, ███████████████████████████

18  ████████████████████████████████████████████ Dooley Decl., Exs.

19  40, 45. The highest levels of LIV management seek Mr. Al-Rumayyan's ███████████

20  ████████████████████████████████████████████

21  Dooley Decl., Exs. 18, 44. Moreover, PIF created LIV to recruit elite United States golfers, host

22  golf tournaments in the United States, and compete with the TOUR in the United States.

23  Indeed, LIV brought this lawsuit in the United States seeking to enforce United States

24  antitrust laws in connection with its "nascent entry into the markets" of the United States. Dkt. 83

25  (Am. Compl.) ¶ 9. And in that lawsuit, ***LIV is represented by the same counsel as PIF and Mr.***

26  ***Al-Rumayyan***. LIV, PIF, and Mr. Al-Rumayyan's "actions in concert along with their

27  representation by the same counsel only underscores the relevancy of their relationship." *See*

28  *Nash v. Life Ins. Co. of N. Am.*, 2009 WL 1181605, at *3 (N.D. Ill. Apr. 29, 2009) (compelling

19

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496

1   discovery of a nonparty where there was evidence that the nonparty had acted in concert with the

2   defendant). And here, all indications are that PIF and Mr. Al-Rumayyan knew of, authorized, and

3   even directed the filing of the underlying litigation against the TOUR in the United States. There

4   is perhaps no way to purposefully avail oneself of a forum more than by initiating a lawsuit in

5   United States federal court. *Andros Compania Maritima, S.A. v. Intertanker Ltd*., 718 F. Supp.

6   1215, 1217 (S.D.N.Y. 1989) ("seeking affirmative relief from the Court is the paradigm of" a

7   waiver of a personal jurisdiction defense).

8          Given PIF and Mr. Al-Rumayyan's role in creating and controlling LIV—and likely in

9   bringing this lawsuit—the discovery sought from them is central to the TOUR's defenses and

10  counterclaim in the underlying action brought by LIV. As explained above, the TOUR seeks from

11  PIF (1) evidence of PIF's financial projections to establish whether PIF ever anticipated profiting

12  from LIV; (2) evidence relating to PIF's communications with TOUR golfers and employees to in

13  support of the TOUR's tortious-interference-with-contract counterclaim; (3) evidence of the PIF's

14  communications with golf tours and potential partners to test LIV's allegations that the TOUR

15  kept LIV out of the "golf ecosystem"; (4) evidence that the TOUR's regulations serve a pro-

16  competitive purpose, which will be established by PIF's communications with potential media

17  outlets, tournament hosts, and advertisers who opted out of LIV partnerships due to its

18  controversial backing; and (5) evidence related to LIV's allegation that the TOUR blocked the

19  PGL's entrance into the market.

20         At the second stage of the due process analysis, *the party challenging jurisdiction* bears

21  the burden of establishing "a compelling case" that "jurisdiction [is] unreasonable," *Bank*

22  *Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002), which PIF

23  and Mr. A-Rumayyan cannot do here. To determine whether exercising personal jurisdiction

24  would comport with "traditional notions of fair play and substantial justice," courts generally

25  consider five factors: (1) "the burden that the exercise of jurisdiction will impose on the [entity],"

26  (2) "the interests of the forum state in adjudicating the case," (3) "the [moving party's] interest in

27  obtaining convenient and effective relief," (4) "the interstate judicial system's interest in

28  obtaining the most efficient resolution of the controversy," and (5) "the shared interest of the

states in furthering substantive social policies." *Id.*

Where "the national contacts approach is involved," many courts "effectively assume that a party's 'minimum contacts' with the United States automatically satisfy due process." *Broumand v. Joseph*, 522 F. Supp. 3d 8, 20-21 (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987)). But even applying the traditional five factors, PIF and Mr. Al-Rumayyan cannot carry their burden of showing that exercising personal jurisdiction here is unreasonable. ***First***, the exercise of jurisdiction here will impose minimal burden on PIF and Mr. Al-Rumayyan. PIF already has a physical office located in New York City, and Mr. Al-Rumayyan regularly travels and stays in New York City to conduct business. There would thus be minimal burden imposed on two parties who often or already are "physically present in the forum." *Gucci Am.*, 135 F. Supp. 3d at 100. Also, PIF and Mr. Al-Rumayyan are represented by United States counsel with offices in New York who are already representing the Plaintiffs in this litigation. ***Second***, New York has a strong interest in PIF and Mr. Al-Rumayyan's compliance with their discovery obligations relating to federal claims made by and against LIV—a corporation with its principal place of business in New York. *See id.* (describing New York's strong interest in discovery compliance when relating to claims under a federal statute). ***Third***, the TOUR has a powerful interest in obtaining compliance with its Subpoenas because—as explained above—the evidence sought is relevant to its defenses and counterclaim and may be under the exclusive control of PIF and Mr. Al-Rumayyan. ***Fourth***, enforcing the subpoena request here would serve the interstate judicial system's interest in efficient case resolution, providing the "fastest and most practical means of resolving this dispute." *Id.* ***Finally***, the TOUR's interest in compelling PIF and Mr. Al-Rumayyan to comply with the subpoenas outweighs any interest they may have in resisting compliance after their counsel explicitly agreed to "cooperate" and facilitate discovery.

### c.    The Court has "tag" personal jurisdiction over PIF and Mr. Al-Rumayyan

A district court can establish personal jurisdiction over an individual for purposes of nonparty discovery if the individual is properly served while in the court's district—i.e., via "tag"

1944496

1  jurisdiction. *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20–21 (2d Cir.1998)

2  (holding that *Burnham v. Superior Court*, 495 U.S. 604 (1990), which held that "tag" jurisdiction

3  does not violate due process, applies to non-U.S. citizens).

4        PIF and Mr. Al-Rumayyan both agreed to treat the service of subpoena as if a copy of the

5  subpoena had been "personally delivered" to them "in the United States." Dooley Decl., Ex. 5.

6  Since proper service of a person within a forum subjects the person to the forum's jurisdiction,

7  PIF and Mr. Al-Rumayyan's agreements regarding acceptance of service subject them to the

8  Court's personal jurisdiction. *See In re Application for Ord. Quashing Deposition Subpoenas,*

9  *dated July 16, 2002*,  2002 WL 1870084, at *3 (S.D.N.Y. Aug. 14, 2002). Given that PIF and Mr.

10  Al-Rumayyan "may be subjected to liability by the exercise of so-called 'tag' jurisdiction far

11  from home without the Due Process Clause being violated, there is no reason why service of a

12  subpoena under Rule 45(b)(2), 'which is simply a discovery mechanism and does not subject

13  [them] to liability, requires more.'" *Id.* (quoting *In re Edelman*, 295 F.3d 171, 179 (2d Cir.

14  2002)). Accordingly, tag jurisdiction provides an independent basis for the Court to exercise

15  jurisdiction over PIF and Mr. Al-Rumayyan.

16       **C.**    **The Court's personal jurisdiction is consistent with principles of international**
   **comity.**

17        PIF and Mr. Al-Rumayyan also invoke the "principles of comity" in their objections, but

18  there is no principle of comity that calls for the Court to abstain from exercising personal

19  jurisdiction over PIF or Mr. Al-Rumayyan. Rather, United States law calls for the exercise of

20  jurisdiction in precisely the circumstances presented here.

21        As a preliminary matter, the "principles of comity" that PIF and Mr. Al-Rumayyan invoke

22  in their objections derive from "the old executive-driven, factor intensive, loosely common-law

23  based immunity regime," which was "replaced" by FSIA's "comprehensive set of legal standards

24  governing claims of immunity in every civil action against a foreign state." *Republic of*

25  *Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 140-141 (2014). Accordingly, "after the enactment of

26  FSIA, the Act—and not the pre-existing common law—indisputably governs the determination of

27  whether a foreign state is entitled to sovereign immunity." *Id.* (cleaned up). Because PIF and Mr.

28

Al-Rumayyan's comity-based immunity defense does not "stand on the Act's text," the Supreme Court has declared that "it must fall." *Id.* at 141-142. This Court should thus ignore any aspect of their immunity defense that seeks protection beyond what FSIA extends. And as explained above, FSIA does not confer PIF and Mr. Al-Rumayyan with *any* immunity to the Subpoenas.

To the extent that any common-law comity principles may be considered in the case of Mr. Al-Rumayyan who, as an individual, is not protected by FSIA at all, they counsel *in favor* of exercising jurisdiction. *First*, doctrines of abstention based on international comity are highly disfavored. The Supreme Court has instructed that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given" to them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006). In the few cases in which courts do invoke comity-based abstention, they do so because of parallel foreign proceedings, which are not present here, and even then only in "exceptional circumstances." *Royal & Sun All. Ins. Co. of Canada*, 466 F.3d at 93.

*Second*, the common law regime of international comity and sovereign immunity that FSIA replaced contains the same exception for commercial activity. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983) ("immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts."); *see also Samantar*, 560 U.S. at 312; *Matar v. Dichter*, 563 F.3d 9, 13 (2d Cir. 2009). For the reasons given above, there is no question that Mr. Al-Rumayyan's activities giving rise to the Subpoenas were commercial.

*Finally,* setting aside the above mandates from the common law principles of comity, the circumstances here simply do not implicate any traditional comity concerns, for example, the concern about dragging an independent foreign entity unwillingly into a court of the United States. As explained above, LIV—by all indications with PIF and Mr. Al-Rumayyan's permission and potentially at their direction—chose to file this lawsuit in the United States. LIV—and by extension PIF—sought out United States' courts, not the other way around. No principle of comity in such circumstances calls for abstention or immunity.

23

1944496

**D.     The subpoenas are valid under Rule 45(c)**

A subpoena may command a person to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Similarly, it may command production of documents "within 100 miles of where the person resides, is employed, or regularly transacts in person." Fed. R. Civ. P. 45(c)(2)(A).

As detailed above in the discussion of personal jurisdiction, both PIF and Mr. Al-Rumayyan "regularly transact[]" in person in and around New York City. In addition to those regular transactions, Mr. Al-Rumayyan spent multiple days in July 2022 conducting LIV-related business at the LIV Golf Invitational Bedminster hosted in Bedminster, New Jersey, less than 50 miles from Manhattan. See supra, pg. 9. All of these regular, in-person transactions suffice to satisfy the 100-mile requirement, and New York City is an appropriate location to command the attendance of deposition witnesses and production of documents by PIF and Mr. Al-Rumayyan.[8]

**V.     CONCLUSION**

For the foregoing reasons, the Court should compel PIF and Mr. Al-Rumayyan to comply with the Subpoenas as narrowed by the TOUR. The Court should order PIF and Mr. Al-Rumayyan to substantially complete their document productions no later than November 18, 2022 (the same deadline in the Scheduling Order in the underlying action) and sit for deposition at a mutually agreeable date and time.

---

[8] The evidence cited herein is sufficient to establish personal jurisdiction over PIF and Mr. Al-Rumayyan and compliance with Rule 45's 100-mile rule. But should the Court harbor any doubts, jurisdictional discovery—which requires only "a threshold showing" of "facts that would support a colorable claim of jurisdiction"—should be ordered, as that minimal standard is far surpassed here. *Ayyash v. Bank Al-Madina*, 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) (cleaned up).

1    Dated:  November 9, 2022                    KEKER, VAN NEST & PETERS LLP

2

3                                      By:    /s/ Elliot R. Peters
                                              ELLIOT R. PETERS
4                                             DAVID SILBERT
                                              R. ADAM LAURIDSEN
5                                             NICHOLAS S. GOLDBERG
                                              SOPHIE HOOD
6
                                              Attorneys for Defendant
7                                             PGA TOUR, INC.

8                                             SKADDEN, ARPS, SLATE, MEAGHER
                                              & FLOM LLP
9
                                              ANTHONY J. DREYER
10                                            PATRICK FITZGERALD
                                              KAREN M. LENT
11                                            MATTHEW M. MARTINO

12                                            Attorneys for Defendant
                                              PGA TOUR, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PGA TOUR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PUBLIC INVESTMENT FUND OF
SAUDI ARABIA AND YASIR AL-RUMAYYAN'S SUBOENA COMPLIANCE
Case No. 5:22-cv-04486-BLF

1944496